UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REV. PAUL A. EKNES-TUCKER; BRIANNA BOE, individually and on behalf of her minor son, MICHAEL BOE; JAMES ZOE, individually and on behalf of his minor son, ZACHARY ZOE; MEGAN POE, individually and on behalf of her minor daughter, ALLISON POE; KATHY NOE, individually and on behalf of her minor son, CHRISTOPHER NOE; JANE MOE, Ph.D.; and RACHEL KOE, M.D., <br><br> *Plaintiffs*, <br><br> v. <br><br> KAY IVEY, in her official capacity as Governor of the State of Alabama; STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama; DARYL D. BAILEY, in his official capacity as District Attorney for Montgomery County; C. WILSON BAYLOCK, in his official capacity as District Attorney for Cullman County; JESSICA VENTIERE, in her official capacity as District Attorney for Lee County; TOM ANDERSON, in his official capacity as District Attorney for the 12th Judicial Circuit; and DANNY CARR, in his official capacity as District Attorney for Jefferson County, <br><br> *Defendants*. | Civil Action No. 2:22-CV-184-LCB |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION
<u>FOR LEAVE TO PROCEED PSEUDONYMOUSLY</u>**

I.  **INTRODUCTION**

The dispute between the parties regarding Plaintiffs' motion to proceed pseudonymously has narrowed to a single proposed Plaintiff: Dr. Rachel Koe.

The State Defendants do not oppose the request of the Children and Parent Plaintiffs in this case to proceed pseudonymously "*provided* that these Plaintiffs provide identifying information subject to a protective order if their identities become relevant to this litigation." (Resp. at 11) (emphasis in original). The Children and Parent Plaintiffs agree to disclose their names to Defendants if their identities become relevant to this litigation, subject to a mutually agreeable protective order. The Children and Parent Plaintiffs, therefore, ask the Court to grant their <u>unopposed</u> Motion to proceed pseudonymously.

Plaintiff Dr. Moe, a healthcare provider affiliated with UAB, hereby withdraws her request to participate pseudonymously and, therefore, asks the Court to dismiss her request as moot.

For the reasons stated below and in Plaintiffs' opening brief, Plaintiff Dr. Koe, who works in a rural medical practice, has more than met the test for showing sufficiently exceptional circumstances to warrant permitting a plaintiff to proceed pseudonymously. Dr. Koe provides general pediatric care—including to transgender children—in her practice. As set forth in her original and supplemental declarations, she has a well-founded concern that being identified publicly as a plaintiff in this

case will put her safety and privacy—as well as that of her family, coworkers, and young patients—at risk. That concern is based on her specific knowledge and experience of how strongly some local community members oppose medical treatments for transgender children, as well as her recent experience of being physically threatened—and having her children harassed and threatened—because of her public comments about other sensitive medical issues.

These well-founded fears for her physical safety and that of her family and patients warrant granting Dr. Koe's petition to proceed pseudonymously. Plaintiffs "should be permitted to proceed anonymously. . . in cases involving matters of a highly sensitive and personal nature [or] real danger of physical harm," both of which are present here. *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).

In addition, as set forth in Dr. Koe's initial Declaration, dated April 19, 2022, the circumstances of this case put her at risk of "being compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)); (Doc. 8-10, Koe Decl. ¶¶ 11-13).

Dr. Koe is in an untenable position: if she complies with the Act, she will be in violation of federal anti-discrimination laws and in violation of her professional and ethical duties to patients. If she complies with federal anti-discrimination laws

2

and her professional and ethical duties, she will be subject to criminal prosecution under the Act. In addition, due to the vague and uncertain language in the Act, Dr. Koe may unwittingly be admitting to acts, such as administering medications or educating patients and their parents, that the Defendants could use to initiate criminal proceedings against her.

## II. DR. KOE SHOULD BE PERMITTED TO PROCEED PSEUDONYMOUSLY

Dr. Koe has shown that her circumstances put her, her family, co-workers, and patients at such high risk of physical harm that she cannot proceed as a plaintiff without the relief sought. She has also shown that due to the Act's conflict with federal law and its vagueness, she cannot be publicly identified as a plaintiff without being compelled to admit an intent to engage in illegal conduct, regardless of her desire and intent to comply with the Act. For both of these reasons, she should be permitted to proceed pseudonymously.

### A. Dr. Koe Has Such Grave Concerns About Her Safety and That of Others That She Cannot Proceed as a Plaintiff Without the Relief Sought.

A court may order anonymity where filing suit may reveal "personal belief and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). In her declarations, Dr. Koe has shown that she—and her family, coworkers, and patients—will be subject to significant opprobrium and the very real threat of

3

physical harm given the controversial nature of the lawsuit and her community's reactions to this and other politically divisive medical issues.

Specifically, as detailed in her supplemental declaration, Dr. Koe is aware of the very strong negative views some people in her community hold regarding the transgender community and the provision of medically necessary treatment to transgender youth. (Koe Supp. Decl. ¶ 2, attached as Exhibit A). In addition to hearing these views espoused on the local news and on social media, Dr. Koe has been approached by members of her community in a combative manner to state their opposition to providing medical treatment to transgender young people and has even been asked directly how she would treat a transgender young person if she were to encounter such a patient in her practice. (Koe Supp. Decl. ¶ 2, 3). Dr. Koe has answered these questions in very broad terms because of her legitimate fear about the negative reaction some members of the community have to her position about the issue.

In addition to concerns about her own safety, Dr. Koe is concerned for the safety of the nurses and staff employed by her practice group. (Koe Supp. Decl. ¶ 7). Given how strongly some people in her community—and, because of the reach of social media, those outside of it—feel about the issues in this case, Dr. Koe is worried that a person who learns about her involvement in this case and disagrees with Dr. Koe's position may physically enter her practice and try to harm Dr. Koe,

4

her pediatric patients, or staff members, or otherwise try to harass her practice group. (Koe Supp. Decl. ¶ 7, 9, 10).

These fears are not merely theoretical. Dr. Koe has first-hand experience of being physically threatened and harassed—and having her children harassed and threatened—because of her position about other sensitive medical issues. (Koe Supp. Decl. ¶ 4, 5). For example, Dr. Koe and her practice group faced harassment from community members because of her practice group's recommendation of vaccinations for children. (Koe Supp. Decl. ¶ 8). After learning about her practice's position on this issue, some people in the community posted false, negative reviews of Dr. Koe's practice—falsely claiming to be patients—in an effort to intentionally harm Dr. Koe and her practice group's professional reputation. *Id*. On another occasion, a uniformed police officer had to escort Dr. Koe out of a public meeting about mask wearing to slow the spread of COVID-19 to protect Dr. Koe from likely physical violence. (Koe Supp. Decl. ¶ 4). And, following her comments at the meeting, someone in Dr. Koe's neighborhood posted personal information about her children on social media and encouraged others to taunt and harass them due to Dr. Koe's comments regarding public health and masks. (Koe Supp. Decl. ¶ 5). Dr. Koe was able to get the posts removed from the websites quickly, but this experience frightened her and left her keenly aware of how disagreements about politically

5

sensitive medical issues can result in serious harassments, threats, or even violence. (Koe Supp. Decl. ¶ 5, 6).

In addition, Dr. Koe is worried that public attention surrounding this case may threaten the privacy of all her pediatric patients, whether or not they are transgender, and will in turn threaten Dr. Koe's livelihood. (Koe Supp. Decl. ¶ 11). She currently has a busy medical practice and, due to her practice group's strict privacy protocols, very few people know that Dr. Koe has patients that she cares for who are transgender. If Dr. Koe's involvement in this lawsuit becomes public, people opposed to Dr. Koe's position may attempt to discern the identities of her transgender patients or their parents, threatening the privacy of all her patients. (Koe Supp. Decl. ¶ 11).

Based on these personal experiences and her knowledge of the negative views held by some in her community regarding the sensitive issues involved in this case, Dr. Koe has legitimate and well-founded fears about her safety and the safety of her family, staff, and patients if she is not permitted to proceed pseudonymously.[1]

---

[1] Defendants' argument that two UAB-affiliated medical providers filed a since-dismissed lawsuit using their own names bears no weight here. Dr. Koe, unlike those providers, works in a small community, not in a large, university-based healthcare system.

6

**B.    Due to Her Obligations Under Federal Law and to the Vagueness of the Act, Dr. Koe, Absent Anonymity, Will Be Compelled To Admit an Intent to Engage In Illegal Conduct**

Defendants concede, as they must, that the Eleventh Circuit has allowed plaintiffs to proceed anonymously where they "would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." (Resp. at 5) (citing *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020)). But Defendants essentially argue that this factor could *never* weigh in favor of a plaintiff bringing a pre-enforcement challenge to a criminal law or penalty because it would be "illegitimate on its face" to seek anonymity to "more easily violate" the law. (Resp. at 9–10). Defendants do not, however, cite a single case in which a court applied this factor so narrowly. Instead, other courts are in accord that pseudonymity may be appropriate when a plaintiff "allege[s] that they would like to engage in certain behaviors that may be considered proscribed under [a law's] vague provisions" and "[t]hey are unsure … whether certain activities in which they would like to engage are in fact prohibited." *Doe v. Strange*, No. 2:15-CV-606, 2016 WL 1168487, at *2 (M.D. Ala. Mar. 24, 2016) (Watkins, C.J.) (granting motion to proceed anonymously by plaintiffs challenging constitutionality of Alabama's sex offender registration law); *Free Speech v. Reno,* No. 98 Civ. 2680, 1999 WL 47310, at *3 (S.D.N.Y. Feb. 1, 1999) (holding plaintiffs challenging constitutionality of federal statute with criminal enforcement mechanism could

proceed pseudonymously in part because "plaintiffs have established that disclosure of their actual identities may expose them to criminal prosecution and civil penalties" and "[t]o deny them permission to proceed by pseudonym would either expose plaintiffs to further penalties and prosecution or, more likely than not, discourage them from pursuing their constitutional challenge").

In her Declaration, Dr. Koe enunciates clear concerns about facing criminal prosecution for providing care consistent with the prevailing standards of care. (Doc. 8-10, Koe Decl. ¶ 11-13; Koe Supp. Decl. ¶ 11). In that regard, Dr. Koe explained that, if enforced as it is written, the Act would prohibit her from, among other things, providing proven effective treatments to patients, answering parent questions and educating parents about current standards of care, and from making appropriate referrals to providers who can offer specialized care that transgender young people need. (Koe Decl. ¶¶ 11-12).

Defendants brush aside this very real concern by stating that Defendants "assume that Provider Plaintiffs intend to, and will, follow the law, even if they disagree with it." (Resp. at 9). Defendants ignore two real ways in which Dr. Koe nonetheless is at risk of criminal prosecution under the Act. First, the Act places Dr. Koe in an untenable position: On the one hand, if she does not comply with the Act's prohibitions, then she will be prosecuted and face up to 10 years imprisonment or a fine of up to $15,000 under the Act. (Compl. ¶ 42; Answer ¶ 42). On the other

hand, if she does as Defendants suggest and complies with the Act's prohibitions, then she will have violated federal anti-discrimination laws and "risk losing federal funding, civil enforcement proceedings brought by the federal government, civil lawsuits, debarment from doing business with the federal government, False Claims Act lawsuits, and criminal penalties." (Doc. 8, Mem. in Supp. of Pls.' Mot. for TRO & Prelim. Inj. at 43; Doc. 8-10, Koe Decl. ¶ 13).

Second, as much as Dr. Koe might "intend to . . . follow the [Act]," (Resp. at 9), "the Act fails to provide any standard to determine what an individual must do to 'cause' a treatment 'to be performed upon a minor.'" (Doc. 8, Mem. in Supp. of Pls.' Mot. for TRO & Prelim. Inj. at 39). Dr. Koe could unintentionally violate the Act if she "is aware of, refers to, discusses, talks about, recommends, or expresses an opinion about a transgender minor's healthcare . . . so long as the speech or behavior has *any* effect on a minor taking a prohibited medication to treat gender dysphoria." *Id.* at 40. For example, even if Dr. Koe does not herself prescribe or administer the medications proscribed by the Act, she nonetheless potentially risks prosecution under the Act merely for referring patients to specialists inside—or outside—Alabama who might prescribe those medications, (*see* Doc. 8-10, Koe Decl. ¶¶ 5, 9), or for performing regular blood tests and lab work, the results of which could be used by other medical providers to prescribe those medications, *id.* ¶¶ 6, 9. If the Act were to take effect while this litigation proceeds, Dr. Koe could be compelled to

9

explain how the Act has changed her treatment of transgender patients and thereby risk admitting to actual or intended conduct that the State deems sufficiently within the chain of causation prohibited by the Act.

### III. CONCLUSION

In deciding whether to allow a party to proceed anonymously, the trial court "should carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Doe v. Frank,* 951 F.2d at 323. Here, all the relevant factors support granting Dr. Koe's petition. She meets all three of the criteria in *Southern Methodist University Ass'n v. Wynne & Jaffe (SMU)*, 599 F.2d 707 (5th Cir. 1979). She is suing to challenge "the constitutional, statutory or regulatory validity of government activity"—namely, enforcement of the Act. *Id* at 713. Prosecution of the suit requires her to disclose information "of the utmost intimacy" relating to the nature of her pediatric medical practice, the fact that she has transgender children among her patients, and her treatment of those children. *Id*. And prosecution of the suit also compels her to admit her intention to engage in illegal or potentially illegal conduct. *Id*.

In addition, Dr. Koe has credibly alleged that disclosing her identity publicly will put her—and her family, coworkers, and pediatric patients—at risk of "possible threatened harm and serious social ostracization." *Doe v. Stegall*, 653 F.2d 180, 186

10

(5th Cir. 1981); *see also Doe v. Frank*, 951 F.2d at 324 (citing "danger of physical harm"). And while Dr. Koe herself is not a minor, disclosing her identity will put her own minor children and her minor patients at risk. *Stegall*, 653 F.2d at 186 (noting that the gravity of the danger posed by potential threats "must also be assessed in light of the special vulnerability of these child-plaintiffs.").

Finally, Dr. Koe's anonymity does not pose "a unique threat of fundamental unfairness to the defendant." *In re Chiquita Brands*, 965 F.3d at 1247. She is challenging the validity of a state law, not filing a civil action that casts aspersions on the Defendants as individuals or that "may cause damage to their good names and reputation." *SMU*, 599 F.2d at 713.

Considering "all of the circumstances" of this case, Dr. Koe respectfully asks that this Court grant her motion to proceed pseudonymously.

Respectfully submitted this 28th day of April, 2022.

>*/s/ Melody H. Eagan*
>Melody H. Eagan (ASB-9780-D38M)
>Jeffrey P. Doss (ASB-4212-R62D)
>Amie A. Vague (ASB-4113-Q46I)
>LIGHTFOOT, FRANKLIN & WHITE LLC
>The Clark Building
>400 20th Street North
>Birmingham, AL 35203
>205.581.0700
>meagan@lightfootlaw.com
>jdoss@lightfootlaw.com
>avague@lightfootlaw.com

11

J. Andrew Pratt (ASB-3507-J56P)
Misty L. Peterson (GA Bar No. 243715) (*pro hac vice* application pending)
Adam Reinke (GA Bar No. 510426) (*pro hac vice* application pending)
Gilbert Oladeinbo (GA Bar No. 669340) (*pro hac vice* application pending)
KING & SPALDING LLP
1180 Peachtree Street Northeast, Suite 1600
Atlanta, GA 30309
404.572.4600
apratt@kslaw.com
mpeterson@kslaw.com
areinke@kslaw.com
goladeinbo@kslaw.com

Brent P. Ray (IL Bar No. 6291911) (*pro hac vice* application pending)
Abigail Hoverman Terry (IL Bar No. 6327057) (*pro hac vice* application pending)
KING & SPALDING LLP
110 North Wacker Drive, Suite 3800
Chicago, IL 60606
312.995.6333
bray@kslaw.com
ahoverman@kslaw.com

Michael B. Shortnacy (CA Bar No. 277035) (*pro hac vice* application pending)
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
213.443.4355
mshortnacy@kslaw.com

Asaf Orr (CA Bar No. 261650) (*pro hac vice* application pending)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
415.392.6257
aorr@nclrights.org

Jennifer L. Levi (MA Bar No. 562298) (*pro hac vice* application pending)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
617.426.1350
jlevi@glad.org

Scott D. McCoy (FL Bar No. 1004965) (*pro hac vice* application pending)
SOUTHERN POVERTY LAW CENTER
P.O. Box 12463
Miami, FL 33101
334.224.4309
scott.mccoy@splcenter.org

Diego A. Soto (ASB-3626-Y61S)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
334.604.1414
diego.soto@splcenter.org

Jessica L. Stone (GA Bar No. 275567) (*pro hac vice* application pending)
SOUTHERN POVERTY LAW CENTER

150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
404.221.5837
jessica.stone@splcenter.org

Sarah Warbelow (MI Bar No. P66690) (*pro hac vice* application pending)
Cynthia Weaver (NY Bar No. 5091848) (*pro hac vice* application pending)
HUMAN RIGHTS CAMPAIGN FOUNDATION
1640 Rhode Island Ave., NW
Washington, DC 20036
202.628.4160
sarah.warbelow@hrc.org
cynthia.weaver@hrc.org

## **CERTIFICATE OF SERVICE**

I certify that, on April 28, 2022, I electronically filed the foregoing Reply and accompanying Declaration with the Clerk of Court using the CM/ECF filing system, which will provide notice of such filing to all counsel of record.

>*/s/ Melody H. Eagan*
>*Attorney for Plaintiffs*