
ACT #2022 - 289



1  SB184

2  216600-4

3  By Senators Shelnutt and Allen

4  RFD: Healthcare

5  First Read: 03-FEB-22



SB184

SB184

ENROLLED, An Act,

Relating to public health; to prohibit the performance of a medical procedure or the prescription of medication, upon or to a minor child, that is intended to alter the minor child's gender or delay puberty; to provide for exceptions; to provide for disclosure of certain information concerning students to parents by schools; and to establish criminal penalties for violations; and in connection therewith would have as its purpose or effect the requirement of a new or increased expenditure of local funds within the meaning of Amendment 621 of the Constitution of Alabama of 1901, as amended by Amendment 890, now appearing as Section 111.05 of the Official Recompilation of the Constitution of Alabama of 1901, as amended.

BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

Section 1. This act shall be known and may be cited as the Alabama Vulnerable Child Compassion and Protection Act (V-CAP).

Section 2. The Legislature finds and declares the following:

(1) The sex of a person is the biological state of being female or male, based on sex organs, chromosomes, and

SB184

1  endogenous hormone profiles, and is genetically encoded into a
2  person at the moment of conception, and it cannot be changed.
3  (2) Some individuals, including minors, may
4  experience discordance between their sex and their internal
5  sense of identity, and individuals who experience severe
6  psychological distress as a result of this discordance may be
7  diagnosed with gender dysphoria.
8  (3) The cause of the individual's impression of
9  discordance between sex and identity is unknown, and the
10 diagnosis is based exclusively on the individual's self-report
11 of feelings and beliefs.
12 (4) This internal sense of discordance is not
13 permanent or fixed, but to the contrary, numerous studies have
14 shown that a substantial majority of children who experience
15 discordance between their sex and identity will outgrow the
16 discordance once they go through puberty and will eventually
17 have an identity that aligns with their sex.
18 (5) As a result, taking a wait-and-see approach to
19 children who reveal signs of gender nonconformity results in a
20 large majority of those children resolving to an identity
21 congruent with their sex by late adolescence.
22 (6) Some in the medical community are aggressively
23 pushing for interventions on minors that medically alter the
24 child's hormonal balance and remove healthy external and

SB184

internal sex organs when the child expresses a desire to appear as a sex different from his or her own.

(7) This course of treatment for minors commonly begins with encouraging and assisting the child to socially transition to dressing and presenting as the opposite sex. In the case of prepubertal children, as puberty begins, doctors then administer long-acting GnRH agonist (puberty blockers) that suppress the pubertal development of the child. This use of puberty blockers for gender nonconforming children is experimental and not FDA-approved.

(8) After puberty blockade, the child is later administered "cross-sex" hormonal treatments that induce the development of secondary sex characteristics of the other sex, such as causing the development of breasts and wider hips in male children taking estrogen and greater muscle mass, bone density, body hair, and a deeper voice in female children taking testosterone. Some children are administered these hormones independent of any prior pubertal blockade.

(9) The final phase of treatment is for the individual to undergo cosmetic and other surgical procedures, often to create an appearance similar to that of the opposite sex. These surgical procedures may include a mastectomy to remove a female adolescent's breasts and "bottom surgery" that removes a minor's health reproductive organs and creates an

SB184

artificial form aiming to approximate the appearance of the genitals of the opposite sex.

(10) For minors who are placed on puberty blockers that inhibit their bodies from experiencing the natural process of sexual development, the overwhelming majority will continue down a path toward cross-sex hormones and cosmetic surgery.

(11) This unproven, poorly studied series of interventions results in numerous harmful effects for minors, as well as risks of effects simply unknown due to the new and experimental nature of these interventions.

(12) Among the known harms from puberty blockers is diminished bone density; the full effect of puberty blockers on brain development and cognition are yet unknown, though reason for concern is now present. There is no research on the long-term risks to minors of persistent exposure to puberty blockers. With the administration of cross-sex hormones comes increased risks of cardiovascular disease, thromboembolic stroke, asthma, COPD, and cancer.

(13) Puberty blockers prevent gonadal maturation and thus render patients taking these drugs infertile. Introducing cross-sex hormones to children with immature gonads as a direct result of pubertal blockade is expected to cause irreversible sterility. Sterilization is also permanent for those who undergo surgery to remove reproductive organs, and

SB184

such persons are likely to suffer through a lifetime of complications from the surgery, infections, and other difficulties requiring yet more medical intervention.

(14) Several studies demonstrate that hormonal and surgical interventions often do not resolve the underlying psychological issues affecting the individual. For example, individuals who undergo cross-sex cosmetic surgical procedures have been found to suffer from elevated mortality rates higher than the general population. They experience significantly higher rates of substance abuse, depression, and psychiatric hospitalizations.

(15) Minors, and often their parents, are unable to comprehend and fully appreciate the risk and life implications, including permanent sterility, that result from the use of puberty blockers, cross-sex hormones, and surgical procedures.

(16) For these reasons, the decision to pursue a course of hormonal and surgical interventions to address a discordance between the individual's sex and sense of identity should not be presented to or determined for minors who are incapable of comprehending the negative implications and life-course difficulties attending to these interventions.

Section 3. For the purposes of this act, the following terms shall have the following meanings:

SB184

1           (1) MINOR. The same meaning as in Section 43-8-1,
2      Code of Alabama 1975.
3           (2) PERSON. Includes any of the following:
4           a. Any individual.
5           b. Any agent, employee, official, or contractor of
6      any legal entity.
7           c. Any agent, employee, official, or contractor of a
8      school district or the state or any of its political
9      subdivisions or agencies.
10          (3) SEX. The biological state of being male or
11     female, based on the individual's sex organs, chromosomes, and
12     endogenous hormone profiles.
13          Section 4. (a) Except as provided in subsection (b),
14     no person shall engage in or cause any of the following
15     practices to be performed upon a minor if the practice is
16     performed for the purpose of attempting to alter the
17     appearance of or affirm the minor's perception of his or her
18     gender or sex, if that appearance or perception is
19     inconsistent with the minor's sex as defined in this act:
20          (1) Prescribing or administering puberty blocking
21     medication to stop or delay normal puberty.
22          (2) Prescribing or administering supraphysiologic
23     doses of testosterone or other androgens to females.
24          (3) Prescribing or administering supraphysiologic
25     doses of estrogen to males.

   (4) Performing surgeries that sterilize, including castration, vasectomy, hysterectomy, oophorectomy, orchiectomy, and penectomy.

   (5) Performing surgeries that artificially construct tissue with the appearance of genitalia that differs from the individual's sex, including metoidioplasty, phalloplasty, and vaginoplasty.

   (6) Removing any healthy or non-diseased body part or tissue, except for a male circumcision.

  (b) Subsection (a) does not apply to a procedure undertaken to treat a minor born with a medically verifiable disorder of sex development, including either of the following:

   (1) An individual born with external biological sex characteristics that are irresolvably ambiguous, including an individual born with 46 XX chromosomes with virilization, 46 XY chromosomes with under virilization, or having both ovarian and testicular tissue.

   (2) An individual whom a physician has otherwise diagnosed with a disorder of sexual development, in which the physician has determined through genetic or biochemical testing that the person does not have normal sex chromosome structure, sex steroid hormone production, or sex steroid hormone action for a male or female.

  (c) A violation of this section is a Class C felony.

SB184

Section 5. No nurse, counselor, teacher, principal, or other administrative official at a public or private school attended by a minor shall do either of the following:

(1) Encourage or coerce a minor to withhold from the minor's parent or legal guardian the fact that the minor's perception of his or her gender or sex is inconsistent with the minor's sex.

(2) Withhold from a minor's parent or legal guardian information related to a minor's perception that his or her gender or sex is inconsistent with his or her sex.

Section 6. Except as provided for in Section 4, nothing in this act shall be construed as limiting or preventing psychologists, psychological technicians, and master's level licensed mental health professionals from rendering the services for which they are qualified by training or experience involving the application of recognized principles, methods, and procedures of the science and profession of psychology and counseling.

Section 7. Nothing in this section shall be construed to establish a new or separate standard of care for hospitals or physicians and their patients or otherwise modify, amend, or supersede any provision of the Alabama Medical Liability Act of 1987 or the Alabama Medical Liability Act of 1996, or any amendment or judicial interpretation of either act.

SB184

1   Section 8. If any part, section, or subsection of
2   this act or the application thereof to any person or
3   circumstances is held invalid, the invalidity shall not affect
4   parts, sections, subsections, or applications of this act that
5   can be given effect without the invalid part, section,
6   subsection, or application.
7   Section 9. This act does not affect a right or duty
8   afforded to a licensed pharmacist by state law.
9   Section 10. Although this bill would have as its
10  purpose or effect the requirement of a new or increased
11  expenditure of local funds, the bill is excluded from further
12  requirements and application under Amendment 621, as amended
13  by Amendment 890, now appearing as Section 111.05 of the
14  Official Recompilation of the Constitution of Alabama of 1901,
15  as amended, because the bill defines a new crime or amends the
16  definition of an existing crime.
17  Section 11. This act shall become effective 30 days
18  following its passage and approval by the Governor, or its
19  otherwise becoming law.

SB184

_____
President and Presiding Officer of the Senate

*Mac McCutcheon*
_____
Speaker of the House of Representatives

SB184
Senate 23-FEB-22
I hereby certify that the within Act originated in and passed the Senate, as amended.

                        Patrick Harris,
                        Secretary.

_____

House of Representatives
Passed: 07-APR-22

_____

By: Senator Shelnutt

APPROVED 4-8-2022
TIME 2:10 pm

*Kay Ivey*
GOVERNOR

Alabama Secretary Of State
Act Num....: 2022-289
Bill Num...: S-184
Recv'd 04/08/22   02:23pmSLF

Page 10

| SPONSOR | |
|---|---|
| 1 | Shelnutt |
| 2 | Allen |
| CO-SPONSORS | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |
| 31 | |
| 32 | |
| 33 | |
| 34 | |
| 35 | |

I hereby certify that the Resolution as required in Section C of Act No. 81-889 was adopted and is attached to the Bill, SB 184

yeas 24  nays 4  abstain 0

PATRICK HARRIS,
Secretary

I hereby certify that the notice & proof is attached to the Bill, SB _____ as required in the General Acts of Alabama, 1975 Act No. 919.

PATRICK HARRIS,
Secretary

**CONFERENCE COMMITTEE**

Senate Conferees
_____
_____
_____

DATE: 2-24
RD 1 RFD Judy

**REPORT OF STANDING COMMITTEE**

This bill having been referred by the House to its standing committee on _____ was acted upon by such committee in session, and returned therefrom to the House with the recommendation that it be Passed, w/amend(s) _____ w/sub _____

This 2 day of March 20 22.

_____ Chairperson

DATE: 3-2
RF     RD 2

DATE: _____
RE-REFERRED ☐   RE-COMMITTED ☐
Committee _____

I hereby certify that the Resolution as required in Section C of Act No. 81-889 was adopted and is attached to the Bill, SB _____

YEAS _____  NAYS _____

JEFF WOODARD,
Clerk

**FURTHER HOUSE ACTION (OVER)**