DEFENDANT'S EXHIBIT 30

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| REV. PAUL A. EKNES-TUCKER; BRIANNA BOE, individually and on behalf of her minor son, MICHAEL BOE; JAMES ZOE, individually and on behalf of his minor son, ZACHARY ZOE; MEGAN POE, individually and on behalf of her minor daughter, ALLISON POE; KATHY NOE, individually and on behalf of her minor son, CHRISTOPHER NOE; JANE MOE, Ph.D; and RACHEL KOE, M.D. | CIVIL ACTION # 2:22-cv-00184-LCB-SRW  **Declaration of John Doe\* In Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction** |
| Plaintiffs, | |
| v. | |
| KAY IVEY, in her official capacity As Governor of the State of Alabama; STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama; DARYL D. BAILEY, in his official capacity as District Attorney for Montgomery County; C. WILSON BAYLOCK, in his official capacity as District Attorney for Cullman County; JESSICA VENTIERE, in her official capacity as District Attorney for Lee County; TOM ANDERSON in his official capacity as District Attorney for the 12th Judicial Circuit; and DANNY CARR, in his official Capacity as District Attorney for Jefferson County. | |
| Defendants | |

I, John Doe[1], declare as follows:

1.      I am over the age of 18 years and am not a party to this action. I have actual knowledge of the following facts and if called upon to testify to them could and would do so competently. I am submitting this Declaration in support of Defendants' opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

2.      I am the father of two sons including a 17-year-old, C. (a pseudonym), who is being seen by Dr. Stephen Rosenthal and his team at UCSF, who is an expert witness who has been retained by the Plaintiffs in this case.

3.      I have read Dr. Rosenthal's Declaration. I can testify that his statements regarding the standard of care for transgender children, and particularly his claims that parents have the opportunity to exercise informed consent regarding medical interventions for their child are not true with regard to my son.

4.      Dr. Rosenthal claims that medical treatment is done in consultation with the patient's family. In my case this is not true. Dr. Rosenthal's institution has actively worked to prevent my participation in my son's care to the point of providing information to the attorney representing my son in family court aimed at

---

[1]     Declarant is submitting this Declaration using a pseudonym for himself and his son to protect the privacy of his child and family.

stripping me of custody because I would not affirm my son in a discordant gender identity.

5. In fact, I knew nothing about my son receiving life-altering medical interventions until I received a statement from my insurance carrier showing that it had paid more than $209,000 to a child and adolescent gender clinic at UCSF. Even then, I did not know what the payment was for until I asked my ex-wife. She emailed me that she was "pleased" to report that our son had been given an implant of Supprelin (used to suppress testosterone) and was receiving estradiol (estrogen) pills.

6. My research on these substances showed that they chemically castrate patients and are even used specifically for that purpose in some cases for sex offenders. Yet here my 17-year-old son was receiving these drugs from Dr. Rosenthal ostensibly to improve his health and well-being.

7. I have learned that Supprelin is Dr. Rosenthal's preferred method for administering puberty blockers for adolescents like my son. Supprelin requires surgical implantation, meaning that it is a surgical intervention administered to children under the age of 18, which is contrary to Dr. Rosenthal's testimony that surgical interventions are not prescribed for minors and not recommended by the "Standards of Care."

8. I contend that Dr. Rosenthal's surgical implantation of Supprelin into my son also violates the family court's custody order, which UCSF has a copy of, which states that my son is not permitted to "undergo any gender identity related surgery" until he is 18 absent a written agreement of **both parents** or order of the court. I did not agree to the surgical implantation, nor is there any court order permitting it, yet C.'s records show a surgical procedure performed on him to insert the Supprelin. This further calls into question Dr. Rosenthal's testimony regarding the "standards of care" employed in "gender-affirming" interventions.

9. Dr. Rosenthal's testimony also contradicts his actions with my son in that after UCSF surgically implanted my 17 year old son with Supprelin LA (without my knowledge or consent but paid for by my health insurance), Dr. Rosenthal discussed follow-up surgical options with him without both parents present. Dr. Rosenthal discussed breast implants, facial feminization and bottom surgery with my son at age 17 years and 5 months.

10. Rosenthal claims to "provide the patient and their family the information they need to make an informed decision about whether to proceed with the treatment." Again, that is not true regarding the treatment prescribed for my son. When I sought information about alternatives, such as "watchful waiting," and whether patients are assessed by Ray Blanchard's typology of transsexuals, instead

of receiving an answer I was subjected to actions in the family court aimed at stripping me of custody because of my questioning of the protocols at UCSF.

11. Similarly, when I provided Dr. Rosenthal with research that I had found which suggests that puberty blockers can cause cognitive harm and asked questions I received no response, contrary to his testimony that parents are involved to ensure everyone involved has the information they need to make an informed decision.

12. Further contradicting his claim of "informed" decision-making is seen in the form presented to and discussed with my then 16 year old son. The form did not indicate that permanent and irreversible sterility is a potential and likely outcome of the recommended treatment, particularly when puberty blockers are combined with estrogen as is the case with C.

13. Dr. Rosenthal's actions with regard to the treatment of my son differ significantly from the "safe and effective" protocols that he claims are part of "gender-affirming" treatments. His refusal to respond to my questions as the concerned father of his patient belie his testimony about the information-rich and collaborative environment he claims is part of the "gender-affirming" care he provides.

14. My experiences with Dr. Rosenthal instead point to an ideologically driven conveyor belt onto which vulnerable children like my son are placed and processed without the safeguards usually inherent in medical procedures.

5

15. Parental participation is tolerated only so long as it is affirming of the ideology. If, as in my case, the parent asks questions instead of immediately affirming the agenda, then that parent is disregarded even to the point, as in my case, of having their rights stripped away.

16. The availability of "gender-affirming" medical interventions for vulnerable children experiencing distress about changes in their bodies enables the ideological conveyor belt to proceed unhindered, leaving in its wake sterilized, drug-dependent and dysfunctional young adults, shattered relationships, and distrust in the medical profession.

17. Alabama's efforts to ban these treatments for minors in the VCCAP is necessary to prevent the irreversible and incalculable harms caused by the unchecked gender medicine machine. The VCCAP law will save Alabama families from similar devastation.

Dated:  April  28, 2022.

_____
John Doe (pseudonym)