

**DEFENDANT'S EXHIBIT 32**

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| REV. PAUL A. EKNES-TUCKER; BRIANNA BOE, individually and on behalf of her minor son, MICHAEL BOE; JAMES ZOE, individually and on behalf of his minor son, ZACHARY ZOE; MEGAN POE, individually and on behalf of her minor daughter, ALLISON POE; KATHY NOE, individually and on behalf of her minor son, CHRISTOPHER NOE; JANE MOE, Ph.D; and RACHEL KOE, M.D. | CIVIL ACTION # 2:22-cv-00184-LCB-SRW |
| | **Declaration of Kristine W.*** |
| | **In Support of Defendants'** |
| | **Opposition to Plaintiffs'** |
| | **Motion for Preliminary Injunction** |
| Plaintiffs, | |
| v. | |
| KAY IVEY, in her official capacity As Governor of the State of Alabama; STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama; DARYL D. BAILEY, in his official capacity as District Attorney for Montgomery County; C. WILSON BAYLOCK, in his official capacity as District Attorney for Cullman County; JESSICA VENTIERE, in her official capacity as District Attorney for Lee County; TOM ANDERSON in his official capacity as District Attorney for the 12th Judicial Circuit; and DANNY CARR, in his official Capacity as District Attorney for Jefferson County. | |
| Defendants | |

I, Kristine W.[1] declare as follows:

    1.    I am over the age of 18 years and am not a party to this action. I have actual knowledge of the following facts and if called upon to testify to them could and would do so competently. I am submitting this Declaration in support of Defendants' opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

    2.    Alabama's Vulnerable Child Compassion and Protection Act ("VCCAP") provides parents necessary protections against manipulation and coercion on the part of health care providers and children to comply with demands for medical and surgical interventions aimed at "affirming" a child's professed discordant gender identity under threats of alienation or loss of a child to suicide and pitting children against their parents.

    3.    Because there is no such parent and child-protective law in place in my home state, I have been subjected to coercion, manipulation, alienation from my daughter and blatant disregard for my parental right to make medical and mental health decisions. The VCCAP will prevent parents and children in Alabama from suffering similar harms. It will actually restore the rights of all parents, not just those who agree with demands for "gender-affirming" medical interventions, to make

---

[1] Declarant is submitting this Declaration using a pseudonym to protect the privacy of her children and other family members.

2

medical and mental health care decisions for their children that are in the best interests of their children and their healthy development into adulthood.

4. My daughter, S., had been diagnosed with OCD, Tourette's Syndrome and bulimia when she began intensive outpatient psychiatric treatment for suicidal ideation. She had spent copious amounts of time online during the pandemic lockdown and was influenced by transgender ideology presentations on the internet.

5. At age 13, S. suddenly declared, in a manner which sounded scripted, that she believed she was a boy and wanted to use a male name. When I spoke to her caregivers, they focused on S. wanting to go by a male name and pronouns. I asked them to address S.'s self-harm, anxiety and bulimia, but they refused. Instead, they told me that I needed to ask, "How can we help you with your gender identity?"

6. The staff told me that "transgender identity is very trendy in the hospital setting right now." They continued to confirm S's obsessive thoughts. During one visit, with S present, the caregivers stated that "trans" people are more likely to commit suicide if not affirmed. In another instance, staff at the hospital said, "You must affirm or she will kill herself. Do you want live son or dead daughter?" The school counselor made similar statements.

7. Following the psychiatric treatment, S. returned to seeing psychiatrists and counselors that she had previously been seeing. Her medication was adjusted, she stopped self-harming and her tics were better controlled.

8. After doing more research and believing it important to ground our child in reality, S's father and I no longer used her preferred male name and pronouns at home. I told S. that she could change her name if she desired when she was an adult but until then she did not get to choose her name.

9. S.'s pediatrician told her father, *in front of S.*, that he needed to use the "chosen" name and to not do so was damaging to her emotionally. That conversation put a wedge between father and daughter. We have switched her to our adult practice so we would not have to deal with doctors pushing the transgender agenda on our child.

10. S. asked why her own parents would not use her new name but everyone else did. She felt that we cared more about the name than her feelings of suicide because of the comments made by doctors about how fragile trans kids are. I explained to her that no one loved her as much and cared about her mental health more than do her father and I, who want to do what was best for her in the long run, which was to hold reality for her.

11. S. had asked for testosterone, but after doing my own research I became concerned about the potential harms to my female child and resisted. S. has since announced "I'm not a boy – boys are awful" and is dressing on and off as a girl. Her mental health is improving.

12. S. has a few separate friend groups across three different schools. Of 10-15 children, only one identifies as her natal sex. These numbers mimic known social contagions such as anorexia and cutting behavior. It is statistically impossible and improbable that all these children will continue to identify as another gender into adulthood.

13. S uses a "chosen" name at school. When enrolling her, I had no choice but to go along with it because the school's policy was to do whatever the child wanted regardless of parental wishes. So I registered her with the "chosen" name as a nickname. (The counselor has since confided to me that it is a huge problem for those who change the whole name when applying to college because the transcripts have different names). I believe that if the school and teachers used her given name, it would be easier for her to completely drop the trans narrative.

14. To allow the medical establishment to push children into irreversible treatments and to pit objecting parents against their children is a great tragedy. Families are being ruined. "Gender-affirming" medical interventions should not be available for children.

15. The VCCAP Act prevents coercive manipulation and potential harm against Alabama's vulnerable children and should be upheld for the protection of children and their families.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 28, 2022.

_____
Kristine W. (pseudonym)

6