
**DEFENDANT'S EXHIBIT 36**

# UNITED STATES DISTRICTCOURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| REV. PAUL A. EKNES-TUCKER; BRIANNA BOE, individually and on behalf of her minor son, MICHAEL BOE; JAMES ZOE, individually and on behalf of his minor son, ZACHARY ZOE; MEGAN POE, individually and on behalf of her minor daughter, ALLISON POE; KATHY NOE, individually and on behalf of her minor son, CHRISTOPHER NOE; JANE MOE, Ph.D; and RACHEL KOE, M.D. | CIVIL ACTION # 2:22-cv-00184-LCB-SRW |
| Plaintiffs, | **Declaration of Jeanne Crowley\* In Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction** |
| v. | |
| KAY IVEY, in her official capacity As Governor of the State of Alabama; STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama; DARYL D. BAILEY, in his official capacity as District Attorney for Montgomery County; C. WILSON BAYLOCK, in his official capacity as District Attorney for Cullman County; JESSICA VENTIERE, in her official capacity as District Attorney for Lee County; TOM ANDERSON in his official capacity as District Attorney for the 12th Judicial Circuit; and DANNY CARR, in his official Capacity as District Attorney for Jefferson County. | |
| Defendants | |

I, Jeanne Crowley[1] declare as follows:

1.  I am over the age of 18 years and am not a party to this action. I have actual knowledge of the following facts and if called upon to testify to them could and would do so competently. I am submitting this Declaration in support of Defendants' opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

2.  Alabama's Vulnerable Child Compassion and Protection Act ("VCCAP") provides parents necessary protections against manipulation and coercion on the part of health care providers and children to comply with demands for medical and surgical interventions aimed at "affirming" a child's professed discordant gender identity under threats of alienation or loss of a child to suicide and without providing parents and children the information needed to understanding the long-term implications and potential harms to children's developing bodies.

3.  Because there is no such parent and child-protective law in place in my home state, I have been subjected to coercion, manipulation, alienation from my daughter and blatant disregard for my parental right to make medical and mental health decisions for my child. The VCCAP will prevent parents and children in Alabama from suffering similar harms. It will actually restore the rights of all

---

[1] Declarant is submitting this Declaration using a pseudonym to protect the privacy of her children and other family members.

2

parents, not just those who agree with demands for "gender-affirming" medical interventions, to make medical and mental health care decisions for their children that will protect their children's developing bodies and long-term mental health.

4.  My husband and I were repeatedly told that the puberty blockers our pre-teen daughter, M., was clamoring for were the answer for her anxiety and distress about her changing body. We were advised that children like M. had high rates of suicide and self-harm and puberty blockers would help by stopping the development of secondary sex characteristics that cause children distress and "give the children time to explore their identity."

5.  Gender-affirming mental health and medical professionals assured us that acceding to our daughter's demand for puberty blockers was necessary for her mental health. We were repeatedly assured that the puberty blockers were nothing more than a "pause button" and completely reversible. We were not told that these treatments could cause harm to our child's developing bones or that there were no clinical studies establishing them to be safe and effective as a "treatment" for gender dysphoria in children.

6.  Based on these assurances we consented to M. receiving a long-lasting puberty-blocking implant. Once the implant was in place, there was no follow up. I had to initiate contact with the clinic to replace the implant and get necessary lab work.

7. M. previously had psychological evaluations that revealed depression, Autism Spectrum Disorder (ASD) with sensory issues, dyslexia, and dysgraphia. M. had also experienced social trauma. However, none of these issues was addressed by health care professionals once they determined M. had gender dysphoria. Nor did they offer any other treatment options.

8. I learned through my own research that puberty blockers were shown to cause loss of bone density and diminished cognitive development. Healthcare professionals did not inform my husband and me about those harms. When we raised the issue, the doctors responded that they have been prescribing the blockers for many years to treat precocious puberty and the reported bone loss was "nothing to worry about."

9. I had a bone density scan done for M. It revealed that M. has an 11 percent loss of bone density in one hip, 14 percent loss in the other, and a 7 percent loss in the lumbar region. She has developed osteopenia at a time in her life when her bone density should be increasing and her body building a reservoir of strong developing bones as an important protection against osteoporosis in adulthood.

10. When my husband and I confronted the physician to have the puberty blocker implant removed, the doctor recommended that M. continue on to cross-sex hormones, *i.e.,* testosterone. We were not informed this would very likely *sterilize*

our child. I declined, pointing out to the doctor that it is estrogen, not testosterone, that improves bone density.

11.     Throughout the time that M. was on puberty blockers, we had difficulty finding a therapist to explore M.'s underlying mental health issues. Therapists were unwilling to address anything other than affirming M. as transgender. M. is currently improving working with a psychotherapist we were finally able to find that is willing to explore the underlying issues with M. However, she continues to have loss of bone density that will significantly affect her physical health and growth and having lasting effects possibly for the rest of her life.

12.     The availability of these medical interventions for a pre-teen girl distressed by changes in her body meant that neither M nor her healthcare providers would consider other alternatives. VCCAP can overcome that obstacle for parents in Alabama.

13.     The VCCAP Act prevents coercive manipulation and potential harm against Alabama's vulnerable children and should be upheld for the protection of children and their families.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 28, 2022.

_____
Jeanne Crowley (pseudonym)