



# USPATH Position Statement on Legislative and Executive Actions Regarding the Medical Care of Transgender Youth

The US Professional Association for Transgender Health (USPATH) believes that decision making regarding the use of hormone therapy or puberty blocking medicine in transgender adolescents should involve physicians, psychologists, and other health personnel, parents or guardians, adolescents, and other community stakeholders identified on a case-by-case basis. Decision making should be informed by current guidelines from the World Professional Association for Transgender Health (WPATH), and the Endocrine Society.  This standard of care has been endorsed by the American Academy of Pediatrics, the American Medical Association, the American Psychiatric Association, the American Academy of Child & Adolescent Psychiatry, and the US Department of Health and Human Services Office of Population Affairs.

USPATH opposes recent efforts in several states to restrict parental rights and direct the practice of medicine through legislative or executive action. These efforts lack scientific merit, and in some cases misinterpret or distort available data, or otherwise lend credence to individual opinions in the literature that are at odds with the overwhelming majority of experts and publications in this field. Specifically, the justification included in recent Florida Department of Health guidelines claiming that such treatment confers an "unacceptably high risk of doing harm" has numerous such misinterpretations and distortions. As such, USPATH wishes to make several clarifying statements regarding this matter. These statements build on a prior joint USPATH/WPATH statement regarding executive action in Texas on this matter.

1. A claim is made that Ristori & Steensma (2016) demonstrated 80% of children seeking clinical care will "lose their desire" to transition. This paper, which was not a research study but a review of numerous other studies, did not look at medical care. It looked at studies of pre-pubertal children presenting with gender dysphoria at younger ages, when hormones would not be prescribed.  Any such children who cease to experience dysphoria and revert to identifying with their birth assigned sex at the time of puberty would not be a candidate for hormone therapy or pubertal blockade.  So in effect, this review suggests at most that the current guidelines, which require persistence of gender dysphoria upon reaching puberty Tanner stage 2 prior to initiation of any medical treatment, are appropriate.  This same paper stated that with regards to social transition prior to puberty, it was clear that reparative therapy or other efforts encourage identification with or behavior consistent with the birth assigned sex were unethical.

2. A reference is made to Chew et al (2018), also a review article, which the Florida statement claims concluded that "hormonal treatments for transgender adolescents can achieve their intended physical effects, but evidence regarding their psychosocial and cognitive impact is generally lacking".  However, the paper also states in the final paragraph of the discussion, "Notwithstanding these limitations, collectively, the studies reviewed provide qualified support for the use of [puberty blocking medications], [gender affirming hormones], cyproterone acetate and, to a lesser extent, lynestrenol in transgender youth. Overall, these hormonal treatments appear to provide some therapeutic benefits in terms of physical effects and are generally well-tolerated on the basis of current evidence."  The Chew et al paper included studies only through 2017 and does not include 2 subsequent published studies with more solid evidence.  Turban et al (2020) found 70% lower odds of suicidality in trans youth treated with hormones vs those who did not receive this treatment, and Achille et al (2020), which found significant improvements in a range of mental health and quality of life measures among those trans youth prescribed hormone therapy or puberty blockers.

3. It is important to clarify that a statement of "low quality evidence" means neither "poor quality research" nor "evidence of harm". Instead, this term typically means that larger, prospective randomized trials are lacking.  Randomized and blinded trials of gender affirming hormones would neither be feasible nor ethical.  There are many areas of medicine where commonly prescribed treatment recommendations are made based on "low quality" evidence due to similar practical limitations, for example the use of antidepressants during pregnancy.

4. The statement "Based on the currently available evidence, "encouraging mastectomy, ovariectomy, uterine extirpation, penile disablement, tracheal shave, the prescription of hormones which are out of line with the genetic make-up of the child, or puberty blockers, are all clinical practices which run an unacceptably high risk of doing harm" is not an original statement from the Florida DOH. Instead, it is a direct quote from the linked resource, which is not a research paper, but an opinion piece published by a single author who is a private practice psychotherapist with no published background in research in this area, and who in the same document advocates for reparative treatment modalities.

5. The Florida DOH statement provided links to documents from four European countries (Sweden, Finland, The United Kingdom, and France), which are presented as supporting evidence for Florida's position.  However, the referenced Finnish, British, and French links and policies still permit hormone therapy and puberty blockade after appropriate assessment, and in appropriate care centers. The Swedish policy falls victim to the same misinterpretations and distortions as does the Florida guideline.  The Florida guideline also presents a Centers for Medicare and Medicaid Services (CMS) document as evidence of US Federal policy regarding such treatment. In fact, this document pertains only to payments for these treatments under Medicare. It is neither a clinical practice guideline nor a position statement.

6. Arkansas Act 626, which makes the prescribing of hormones or puberty blockers to transgender youth a felony, was vetoed by the sitting governor, overridden by the legislature, and currently is under a stay by the courts. The bill wording provides no citations to support claims made about medical and psychological risks and harms.

Fortunately, there are state governments which have examined this issue and have come to a more scientifically grounded conclusion. Specifically, we applaud the Idaho State Senate Majority Caucus, who, when recently presented with proposed legislation from the Idaho State House of Representatives (HB675) which would outlaw all hormone therapy and puberty blockade for transgender minors, declined to act and issued a [statement](#) that such a law would interfere with parental rights and decision making that should be based on discussions between physicians, parents, and children, and would be out of step with the recommendations of the Idaho Medical Association.

We encourage other state legislative and executive bodies and agencies to follow Idaho's lead on this matter and defer setting policy and practice guidelines to clinicians, scientists, and researchers in this field.

##