IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REV. PAUL A. EKNES-TUCKER et al., <br><br> Plaintiffs, <br><br> v. <br><br> KAY IVEY, et al. <br><br> Defendants. | Case No. 2:22-cv-184-LCB-SRW |

**MOTION OF AMERICAN ACADEMY OF PEDIATRICS AND ADDITIONAL NATIONAL AND STATE MEDICAL AND MENTAL HEALTH ORGANIZATIONS FOR LEAVE TO FILE BRIEF OF AMICI CURIAE**

*Amici curiae* are: the American Academy of Pediatrics ("AAP"), the Alabama Chapter of the American Academy of Pediatrics ("AL-AAP"), the Academic Pediatric Association, the American Academy of Child and Adolescent Psychiatry ("AACAP"), the American Academy of Family Physicians ("AAFP"), the American Academy of Nursing ("AAN"), the American Association of Physicians for Human Rights, Inc. d/b/a GLMA: Health Professionals Advancing LGBTQ Equality ("GLMA"), the American College of Obstetricians and Gynecologists ("ACOG"), the American College of Osteopathic Pediatricians ("ACOP"), the American College of Physicians ("ACP"), the American Medical Association ("AMA"), the American Pediatric Society ("APS"), the American Psychiatric Association ("APA"), the Association of American Medical Colleges ("AAMC"),

1

the Association of Medical School Pediatric Department Chairs ("AMSPDC"), the Endocrine Society, the National Association of Pediatric Nurse Practitioners ("NAPNAP"), the Pediatric Endocrine Society ("PES"), the Society for Adolescent Health and Medicine ("SAHM"), the Society for Pediatric Research ("SPR"), the Society of Pediatric Nurses ("SPN"), the Societies for Pediatric Urology, and the World Professional Association for Transgender Health ("WPATH"). *Amici* have been informed that Plaintiffs and Plaintiff-Intervenor have consented to this motion; Defendants have not consented to this motion.

As a group of well-respected medical and mental health organizations, *amici* seek to offer this Court their scientific views and insights regarding: (1) the serious medical condition known as gender dysphoria; (2) the accepted standard of care—known as gender-affirming care—for treating adolescents suffering from gender dysphoria; and (3) the medical, including mental health, consequences of denying gender-affirming care to such adolescents as would be required by Alabama Senate Bill 184 ("the Healthcare Ban").

## INTERESTS OF *AMICI CURIAE*

*Amici* are a group of 23 professional medical and mental health organizations seeking to ensure that all children and adolescents, including transgender youth, receive the optimal medical and mental health care they need to thrive both physically and emotionally. *Amici* include both national and state organizations and

represent thousands of health care providers who have specific expertise with the issues raised in the *amicus* brief.

### *AMICI* MEDICAL AND MENTAL HEALTH ORGANIZATIONS FULFILL THE CLASSIC ROLE OF *AMICI CURIAE*

By submitting an amicus brief in this matter, *amici* seek to assist this Court on an issue of great importance to many transgender adolescents, their families, and the medical professionals who treat them—the prevention and treatment of gender dysphoria. *Amici* intend to provide this Court with an empirically grounded view regarding: (1) gender dysphoria; (2) gender-affirming care, which is the accepted standard of care for treating adolescents at risk of or suffering from gender dysphoria; and (3) the irreparable harm that would be caused to both adolescent patients if the Healthcare Ban is not enjoined. *Amici* thus fulfill the quintessential role for amici curiae, and courts routinely authorize the filing of amicus briefs in such circumstances. *See, e.g.*, *Maples v. Thomas*, No. 5:03-CV-2399-SLB-MHH, 2013 WL 5350669 (N.D. Ala. Sept. 23, 2013) ("Amicus briefs are particularly helpful . . . in cases where . . . the amicus has a unique perspective or specific information that can assist the court beyond what the parties can provide.") (internal quotations omitted).

The Plaintiffs in this case seek to enjoin the enforcement of the Healthcare Ban, which prohibits healthcare providers from providing gender-affirming care to adolescents who are at risk of or suffering from gender dysphoria, and similarly

3

prohibits medical providers from even referring these patients for gender-affirming treatment of gender dysphoria.  Gender dysphoria is a serious medical condition characterized by clinically significant distress and/or impairment in relationships, school performance, or other important areas of functioning caused by the incongruence between a patient's gender identity and sex assigned at birth.  Gender-affirming medical care is the well-recognized, accepted standard of care for adolescents at risk of or suffering from gender dysphoria.  This standard of care is roundly endorsed by the medical community and empirically proven to effectively treat adolescents at risk of or suffering from gender dysphoria.

Because the Healthcare Ban would prevent health care providers from providing crucial medical care, it is antithetical to the mission and values of *amici*, all of whom are committed to ensuring that all patients, including transgender adolescents, receive the best possible medical care and the opportunity to thrive both physically and emotionally.  Drawing on empirical research and *amici*'s extensive experience and expertise in their respective fields, the proposed *amicus* brief explains that the Healthcare Ban:  (i) rests on incorrect facts and outdated and discredited theories about how to treat gender dysphoria; (ii) prohibits health care providers from treating patients in accord with the accepted standard of care when they are at risk for or suffering from gender dysphoria; and (iii) needlessly prolongs

4

these patients' distress and materially heightens the risk of adverse outcomes—including suicide—by denying patients such care.

Courts regularly permit *amici* to file *amicus curiae* briefs to offer their unique expertise and insight on issues of physical and mental health and welfare, including with respect to transgender youth. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 n.1 (4th Cir. 2020) (crediting "leading medical, public health, and mental health organization[]" amici, including AAP, AACAP, AMA, APA AMSPDC, GLMA: PES, SAHM, and WPATH, with helping the court to "develop[] a fact-based understanding of what it means to be transgender"); *Adams by Kasper v. Sch. Bd. of St. Johns Cnty.*, 318 F. Supp. 3d 1293, 1298 n.14 (M.D. Fla. 2018) (granting AAP, AACAP, AMA, AMSPDC, GLMA, Endocrine Society and PES leave to file an amicus brief in support of a transgender male student, and noting that "the position of [amici] as to the appropriate standard of care for gender dysphoria is useful to understanding that diagnosis").

Moreover, there is no downside to granting *amici*'s motion for leave to file the *amicus* brief. Courts have recognized that "it is preferable to err on the side of" permitting *amicus* briefs. *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 133 (3d Cir. 2002) (Alito, J.); *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1501 (S.D. Fla. 1991) (describing participation of amicus curiae as "the strongly preferred option"). This is so because "[i]f an amicus brief that turns out to

be unhelpful is filed, the [court], after studying the case, will often be able to make that determination without much trouble and can then simply disregard the amicus brief." *Neonatology Assocs.*, 293 F.3d at 133. "On the other hand, if a good brief is rejected, the [court] will be deprived of a resource that might have been of assistance." *Id*.

## CONCLUSION

For the foregoing reasons, *amici* respectfully request that this Court grant their motion for leave to file their proposed amicus curiae brief (attached hereto) in support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

| | |
|---|---|
| Dated: May 4, 2022 | Respectfully submitted, |
| | */s/ Barry A. Ragsdale* |
| | Barry A. Ragsdale<br>ASB 2958-A23B |
| Cortlin H. Lannin (CA Bar No. 266488)<br>(*pro hac vice* application forthcoming)<br>COVINGTON & BURLING LLP<br>Salesforce Tower<br>415 Mission St., Suite 5400<br>San Francisco, CA 94105<br>Phone: (415) 591-6000<br>clannin@cov.com<br><br>Barry A. Ragsdale (ASB 2958-A23B)<br>Robert S. Vance III (ASB 9916-B11Q)<br>DOMINICK FELD HYDE, P.C.<br>1130 22nd Street South Ridge Park<br>Suite 4000<br>Birmingham, AL 35205<br>Phone: (205) 536-8888<br>BRagsdale@dfhlaw.com | D. Jean Veta (D.C. Bar No. 358980)<br>(*pro hac vice* application forthcoming)<br>William Isasi (D.C. Bar No. 470878) (*pro hac vice* application forthcoming)<br>Elizabeth Baia (D.C. Bar No. 1645169) (*pro hac vice* application forthcoming)<br>COVINGTON & BURLING, LLP<br>One CityCenter<br>850 Tenth St., N.W.<br>Washington, D.C. 20001<br>Phone: (202) 662-6000<br>jveta@cov.com<br>wisasi@cov.com<br>ebaia@cov.com<br><br>Michael Lanosa (CA Bar No. 301241) (*pro hac vice* application forthcoming)<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars<br>Los Angeles, CA 90067<br>Phone: (424) 332-4800<br>mlanosa@cov.com<br>*Counsel for Amici Curiae* |

7

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Barry A. Ragsdale*
Of Counsel