1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE MIDDLE DISTRICT OF ALABAMA
2                            NORTHERN DIVISION

3

4        REV. PAUL A. EKNES-TUCKER,    *
         et al.,                       *
5                                      *
                 Plaintiffs,           *   2:22-cv-00184-LCB
6                                      *   July 12, 2022
         vs.                           *   Montgomery, Alabama
7                                      *   9:30 a.m.
         KAY IVEY, in her official     *
8        capacity as Governor of the   *
         State of Alabama, et al.,     *
9                Defendant.            *
         *****************************

10

11

12                       TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE LILES C. BURKE
13                  UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23       Proceedings recorded by OFFICIAL COURT REPORTER, Qualified
         pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies
24          and Procedures Vol. VI, Chapter III, D.2.  Transcript
                    produced by computerized stenotype.

25

                    *CHRISTINA K. DECKER, RMR, CRR*
                      Federal Official Court Reporter
                   256-506-0085/ChristinaDecker.rmr.crr@aol.com

```
1                              APPEARANCES

2
        FOR THE PLAINTIFFS:
3       Amie Vague, Esq.
        LIGHTFOOT, FRANKLIN & WHITE, LLC
4       The Clark Building
        400 20th Street North
5       Birmingham, Alabama 35203

6
        Asaf Orr, Esq.
7       NATIONAL CENTER FOR LESBIAN RIGHTS
        870 Market Street
8       Suite 370
        San Francisco, California 94102
9
10      FOR THE DEFENDANTS:
        James W. Davis, Esq.
11      OFFICE OF THE ATTORNEY GENERAL
        501 Washington Avenue
12      P.O. Box 300152
        Montgomery, Alabama 36130-0152
13      (334) 242-7300

14
        INTERVENOR PLAINTIFFS:
15      Jason R. Cheek, Esq.
        Lane Woodke, Esq.
16      Margaret Marshall, Esq.
        US ATTORNEYS OFFICE, NDAL
17      1801 Fourth Avenue North
        Birmingham, Alabama 35203
18
        Kaitlin Toyama, Esq.
19      DOJ-Crt
        Civil Rights Division
20      950 Pennsylvania Avenue
        Washington, DC  20530
21
        Stephen Wadsworth, Esq.
22      US Attorneys Office - MD of Alabama
        131 Clayton St
23      Montgomery, AL 36104-3429

24

25
```

1          COURTROOM DEPUTY:  Wanda Robinson

2

3          COURT REPORTER:  Christina K. Decker, RMR, CRR

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **P R O C E E D I N G S**

2                  (In open court.)

3        THE COURT:  Good morning, everyone.

4      Well, I think we can make this a quick hearing today, but

09:41:12 5  I thought it wouldn't hurt for us just to all get together and

6  talk through just a few things.

7      Why don't we start with the Rule 26 report and just kind

8  of walk through that.  I know that we have a couple of -- looks

9  like maybe agreed-upon motions with some differences.

09:41:31 10      As soon as we get through this, we'll take that up, as

11  well.  I've got my staff printing those off.  Somehow I left

12  that on my desk in Huntsville.

13      Okay.  So after reviewing this, everybody agrees on

14  everything regarding where discovery is focused on each side.

09:42:00 15      On interrogatories, it looks like we have a difference.

16      So let me have one question here before we get started.  I

17  know the State has taken the position that plaintiffs are all

18  to be treated as one plaintiff for the position of all that.

19  That did seem to be the line when the plaintiffs all asked me

09:42:23 20  to consolidate.

21      So has something changed that private plaintiffs would

22  need -- that we would need a lot more discovery on the

23  plaintiffs' side basically than what we would have on the

24  defense side?

09:42:36 25      Who wants to address that?

```
 1              MR. CHEEK:  Good morning, Your Honor.

 2              THE COURT:  Good morning.

 3              MR. CHEEK:  Jason Cheek.

 4        I would say that, no, nothing has changed.  We would just

 5   request that the United States be permitted to prove the equal

 6   protection claim, as is necessary.  So that's why we're asking

 7   for a reduced number of interrogatories.  But we also don't

 8   want to do anything that adversely affects the private

 9   plaintiffs' case since they have, I think, three or four

10   additional claims.

11              THE COURT:  I'm just thinking out loud.  Obviously,

12   you know, everybody's got the same number of claims that have

13   to be proven.

14        And so just -- and I'm just talking about right now

15   whether we are going to treat you guys as one entity or two

16   entities for the purpose of discovery.  But it would seem to be

17   more fair and more in line with what we have talked about, if

18   however many interrogatories that we have, the combined

19   plaintiffs have the same amount that the defense has.

20              MR. CHEEK:  Okay.

21              THE COURT:  Does anybody have a serious objection to

22   that if we operate that way?

23              MS. VAGUE:  No.  I don't believe that we do, Your

24   Honor.

25              THE COURT:  Okay.
```

The timestamps in the left margin are: 09:42:45 (line 5), 09:43:07 (line 10), 09:43:24 (line 15), 09:43:42 (line 20), 09:43:48 (line 25).

1            MS. VAGUE:  I will just echo what Mr. Cheek has said,

2   which is we do still believe that our positions are aligned,

3   and we plan to coordinate and avoid any sort of duplication.

4       In proposing these limits for discovery, our only

09:44:01 5   intention was just to make sure that there was room for the

6   United States to be able to prove their claims, as well,

7   without interfering with ours.

8            THE COURT:  Right.

9            MS. VAGUE:  That's what we were looking for there,

09:44:11 10   Your Honor.

11            THE COURT:  All right.

12       All right.  So now we're down to interrogatories.  The

13   State says, you know, we need 30, and we'll give the other side

14   30.  Y'all had said 20.

09:44:26 15       If I am going to treat you as one entity, would you rather

16   have 30?

17            MR. CHEEK:  So, Your Honor, what has -- I can't speak

18   for the private plaintiffs, but the United States has requested

19   that it be allowed to serve 20 interrogatories.

09:44:40 20       If Your Honor would prefer to treat private plaintiffs and

21   the United States as a collective party, the United States

22   would be okay with 40 total interrogatories.

23            MS. VAGUE:  Uh-huh.

24            MR. CHEEK:  I don't know if the State has an objection

09:44:57 25   do that.

1           MR. DAVIS:  We can live with that.

2           THE COURT:  All right.

3           MR. DAVIS:  I don't think anybody is going to ask

4   interrogatories that they don't need and try to be burdensome

09:45:03 5   on each other.  And we are going to have to work together if we

6   bump up on problems.

7           MR. CHEEK:  Agreed.

8           MS. VAGUE:  We would be fine with that.

9           THE COURT:  All right.  Let's do 40 per side, then.

09:45:13 10   And, again, we will treat the private plaintiffs, just for

11   purposes of discovery, as one with the government.

12      Okay.  Requests for Admission.  Plaintiffs propose 40.

13   Defendants propose 25.  Same thought process?  40 to a side?

14   Does anybody have an objection to that?

09:45:37 15           MR. CHEEK:  Your Honor, the United States feels pretty

16   strongly about the number of RFAs, and the fact that they can

17   really streamline some things for trial and later.

18      And so what we had proposed was the United States have 40

19   RFAs.  If we could go with no more than 60 for plaintiffs

09:45:59 20   total, are you okay with that?

21           MS. VAGUE:  I'm fine with that.

22           MR. CHEEK:  And 60 for the State.  Are you okay with

23   that, Mr. Davis?

24           MR. DAVIS:  I don't want to cause a problem, but

09:46:08 25   that's an awful lot.

1          MR. CHEEK:  My -- I'm sorry.

2          MR. DAVIS:  I'm more interested in the things be

3    balanced.

4          MR. CHEEK:  So my intention is to not serve 60 RFAs.

09:46:24 5    I hope I don't need to do that many.  But I also don't want to

6    find myself in a position where, you know, we're getting pretty

7    close and we really could have made a dent in narrowing issues

8    for the trial, and having to go back to ask --

9          THE COURT:  So educate me a little bit.  Where would

09:46:42 10    you be heading on these RFAs?  Look, I may well give you all

11    you want, but that does seem like a lot.  So educate me on why

12    we would need that many, and what would the subject of those be

13    specifically.

14          MR. CHEEK:  Sure.  So the Rule itself doesn't have a

09:46:56 15    limit.  And as someone who was once served with 270 RFAs on the

16    eve of discovery closing, I learned my lesson the hard way on

17    that.

18       So where I think it can really be effective is

19    authentication of documents.  Hopefully, we don't get into

09:47:13 20    those types of issues, you know, narrowing substantive issues

21    in the case, particularly because we are going to be doing, I

22    assume, a lot of medical expert testimony.  You know, is gender

23    dysphoria a -- does the State -- does the defendant -- do the

24    defendants acknowledge that gender dysphoria is a legitimate

09:47:37 25    medical condition, for example.

1        And I'm totally speaking off the cuff here.

2             THE COURT:  My recollection is that they did at the

3   last hearing.  Am I correct?

4             MR. DAVIS:  Right.  We disagree about how to be

09:47:47 5   treated, but we don't disagree that it exists.

6             THE COURT:  So one thing you mentioned was

7   authentication of documents.  It seems to me that you ought to

8   be able to do that easily without RFAs, just by conferring?

9             MR. CHEEK:  I certainly hope so, Your Honor.

09:48:02 10       And let me be very clear that the defense counsel have

11   been outstanding to work with.  We've got a good relationship.

12   And I think private plaintiffs' counsel will agree with that.

13       I have also been burned in the past with counsel who have

14   not wanted to agree to authentication, which leads to a whole

09:48:23 15   host of issues as you're nearing trial.  Do you need to

16   subpoena a custodian from Tennessee, for example, to come in

17   and testify.  If so, there's a lot of legwork that goes into

18   those types of mechanics.

19       That's what I am trying to avoid.

09:48:37 20            THE COURT:  Okay.  All right.  All right.  Idea:  40

21   Requests for Admission per side, but, you know, either side may

22   seek -- either side can seek more for good cause shown.

23       All right.  Depositions.  I've got plaintiffs proposing

24   15, defendants 25.  Plaintiff, since I am going to treat you as

09:49:21 25   one entity, does that change your opinion about the 15, or no?

1          MS. VAGUE:  Your Honor, I think our position is still
2     that 15 -- and that's for fact witnesses, that's excluding
3     experts -- is still sufficient for our needs and for the
4     State's needs.  We think that 25 for fact witnesses in a case
09:49:41  5     like this is excessive.
6          MR. DAVIS:  Judge, we anticipate that under the
7     standard that the Court's preliminary injunction order held us
8     to -- applying strict scrutiny -- we have got a lot of work to
9     do.
09:49:54 10     We have -- it essentially shifted some of the burden to
11     us.  And while we hope to persuade Your Honor that a different
12     standard should apply at trial, we want to build a record
13     because we think we can win under strict scrutiny, as well.
14     But that's going to mean third-party discovery involving some
09:50:11 15     clinics.  UAB is not the only one giving these treatments.
16          It is going to mean some medical providers.  It's going to
17     mean some patients.
18          The medical associations' views were given a lot of weight
19     at the preliminary injunction stage.  We need to explore that.
09:50:24 20     Is there any basis for their view?  How political are these
21     organizations?
22          So we think 25 may actually be a little scarce for the job
23     that we need to do to defend this law.
24          THE COURT:  All right.  Just because of the magnitude
09:50:41 25     of this case, I probably lean toward the high side rather than

1    the low side, so let's go with 25 per side on this.

2        All right.  The length of depositions.  Ms. Vague, is your

3    position affected by the fact I'm treating you as one entity?

4    Does that affect your position on that?

09:51:10 5        MS. VAGUE:  Your Honor, I think that we still would

6    like to be granted a little bit of leeway on the length of

7    depositions, particularly if we're treated as one entity just

8    to ensure, as the State has pointed out -- there's some

9    extensive issues to go into here -- just to ensure that

09:51:27 10    everyone has time to ask the questions that they feel like they

11    need to prove their case.

12        THE COURT:  Is there a witness or two in particular

13    that you think that you would need more than seven hours on?

14        MS. VAGUE:  I'm not aware of one sitting here today.

09:51:40 15    And that's certainly something, as we put in our report, that

16    we would discuss with the State before going into that

17    deposition so that they're not caught off guard.  And if they

18    view a problem with that, we could come back to the Court and

19    talk about that.  But, hopefully, that's something we would be

09:51:54 20    able to negotiate ahead of time.

21        We don't anticipate walking into a deposition and not

22    giving the State any sort of heads-up that we anticipate this

23    one may be going a little over seven hours.

24        THE COURT:  What's the State's thoughts on that?

09:52:07 25        MR. DAVIS:  No matter how many plaintiffs there are,

```
 1  we're always open to discussing things like that.

 2       All I want for the State is for them to work together and

 3  coordinate, and for this not to be more burdensome simply

 4  because there are two parties over there instead of one.  If

 5  they're really one, then they ought to work together ahead of

 6  time and sort out what needs to be asked.

 7            MS. VAGUE:  And I will just add briefly on top of

 8  that.  Of course, we will work together.  We have no intention

 9  of asking duplicative questions or going into the same topics.

10       We just want a little leeway to ensure that if the United

11  States has some additional areas of inquiries, that they're

12  given that leeway without cutting into our time to ask

13  questions.

14            MR. CHEEK:  I was just going to say we are

15  committed -- the United States is committed to working with the

16  private plaintiffs to do this.  And, in fact, I believe we

17  inserted language in the 26(f) that we submitted to the Court

18  stating that, that we'll coordinate discovery requests so we're

19  not issuing duplicative requests.

20       And we'll share discovery so that the State doesn't have

21  to undergo an additional burden because they are -- because

22  it's facing multiple parties.

23            THE COURT:  All right.  Let's do this.  We'll go with

24  the seven hours for both sides.  And I will let you guys decide

25  how you want to split your seven hours among yourselves.
```

```
 1        That said, again, for good cause shown, if y'all need
 2   another hour or two on a specific witness for a reason, then,
 3   you know, file a motion, or talk to the State.  I'm not going
 4   to be stingy about that.
 5        All right.  Plaintiffs say this should last six days.
 6   State says it should last two weeks.  I guess my question to
 7   both sides would be are both of you talking about the whole
 8   trial, or just your side of the case?
 9             MS. VAGUE:  Your Honor, we're talking about the entire
10   trial.  We believe it can be completed in six days.
11        We actually think it could be completed in less time, but
12   the six days we landed on was through negotiations with the
13   State, and understanding that they thought that their case
14   might last a little bit longer.
15             THE COURT:  All right.  And of that six days, how much
16   are you allocating to yourself?
17             MS. VAGUE:  We would think two to three days, Your
18   Honor.
19             THE COURT:  State?
20             MR. DAVIS:  We think we'll probably need about a week
21   to put on our case, Judge.  We're guessing.  That's a long way
22   away.
23             THE COURT:  Right.
24             MR. DAVIS:  But looking at how things are going, how
25   the hearing went, how many witnesses we would have liked to
```

```
 1  have called versus how many we did call, we think a week is a
 2  reasonable estimate of how long the defense will need to put on
 3  its case at trial.
 4          THE COURT:  Let's do this.  I am going to hold
 5  two weeks.  I would think that probably would be on the high
 6  side of what we would want to accomplish.  But I bet that by
 7  the time we get to next February or March, we'll have a lot
 8  better idea of where that sits.  So maybe we just revisit that.
 9      And look, when we get to trial, I am going to give
10  everybody limits.  And we are going to talk it through.  We are
11  going to talk about who your witnesses are, how long you need,
12  all that sort of stuff.
13      But, you know, based on what your evidence is going to be,
14  we are going to set a time for each side, and we are going to
15  stick to it.  It is going to be a fair time, and one that lets
16  everybody get their stuff in.  But just have that in mind, as
17  well.
18      And I find that, you know, if I just leave things
19  open-ended, we start asking questions of witnesses that really
20  don't really bear on the facts.
21      All right.  Let's talk about these protective orders.
22  Looks like maybe one is completely agreed on.  One may not be.
23      Who wants to address that?
24          MR. DAVIS:  I don't remember disagreements in this.
25          MS. VAGUE:  Yeah.  My understanding was we had reached
```

09:55:13   5
09:55:35  10
09:55:49  15
09:56:02  20
09:56:39  25

1  an agreement on both of those.

2          THE COURT:  Okay.  Then maybe I'm misstating.  So both

3  of those are completely by agreement.  All I need to do is

4  adopt the proposed order; is that right?

09:56:51 5          MS. VAGUE:  I believe so.

6          MR. DAVIS:  That's the State's understanding, Judge,

7  yes.

8          MS. VAGUE:  Ours, as well.

9          THE COURT:  All right.  That makes that easy.

09:57:02 10     All right.  Is there anything about the 26(f) report that

11  we needed to discuss that we haven't?

12          MR. DAVIS:  I don't think so, Judge.

13      There are going to be issues that come up as we go along.

14  Based on the way things are going, I'm really confident that

09:57:21 15  we're going to be able to work out 99.9 percent of whatever

16  comes up, and hopefully bring very little of it to you.

17          THE COURT:  Okay.  All right.

18      All right.  Do y'all have anything you wanted to add to

19  that?

09:57:34 20          MR. CHEEK:  Nothing from the United States.

21          MS. VAGUE:  Nothing, Your Honor.

22          THE COURT:  While we're all here, is there anything

23  else we ought to talk about?  Any issues you see that may

24  arise?  Anything we can work through while we're all in the

09:57:45 25  room together?

```
 1              MS. VAGUE:  I don't believe so.

 2              MR. DAVIS:  None for us.

 3              MR. CHEEK:  None at this time, Your Honor.

 4              THE COURT:  Okay.  Well, that's all good news.

 5         All right.  Thank you very much.  And I will get all of

 6    this entered.  I will get an order out on -- well, let me ask

 7    you this:  Would you rather just amend your own 26(f) report to

 8    talk about what we have said today?  Or do you want me to do

 9    it?

10              MS. VAGUE:  Whichever your preference is, Your Honor.

11    We completely defer to you.  We are happy to work together to

12    amend that, or have an order entered by you.

13              THE COURT:  I love the idea of you amending it

14    yourselves.  And that way you will be happy with the language.

15              MS. VAGUE:  Understood.

16              MR. DAVIS:  We'll take care of that.

17              THE COURT:  Y'all have a great day.

18              MR. DAVIS:  End of the week okay for this amended

19    report?

20              THE COURT:  Oh, absolutely.  I would say seven days if

21    you need it.

22              MS. VAGUE:  Thank you.

23              MR. DAVIS:  Thank you, Judge.

24              THE COURT:  Absolutely.  Thank you.

25              (Whereupon, the above proceedings were concluded at
```

09:57:51 (line 5)
09:58:05 (line 10)
09:58:16 (line 15)
09:58:26 (line 20)
09:58:28 (line 25)

1        9:58 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

```
 1                        CERTIFICATE

 2

 3

 4        I certify that the foregoing is a correct

 5   transcript from the record of proceedings in the

 6   above-entitled matter.

 7

 8

 9

10

11                                          07-15-2022

12   Christina K. Decker, RMR, CRR              Date

13   Federal Official Court Reporter

14   ACCR#:  255

15

16

17

18

19

20

21

22

23

24

25
```