# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| Rev. Paul A. Eknes-Tucker, *et al.,* | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| United States of America, | ) ) | |
| *Intervenor Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 2:22-cv-184-LCB |
| Hon. Steve Marshall, in his official capacity as Attorney General, of the State of Alabama, *et al.,* | ) ) ) ) | |
| *Defendants.* | ) ) | |

## DEFENDANTS' MOTION TO DISMISS
## AMENDED COMPLAINT (DOC. 146) IN PART

## TABLE OF CONTENTS

Table of Contents ................................................................................ i

Table of Authorities ........................................................................... ii

Introduction ........................................................................................1

Statement of the Case .........................................................................3

Legal Standard ...................................................................................6

Argument............................................................................................6

    I.    The Law Is Not Void For Vagueness ......................................8

    II.   Criminal Conduct Is Not Protected By The First Amendment .............15

    III.  Plaintiffs' Preemption Claim Fails ......................................18

    IV.  Plaintiff Eknes-Tucker Lacks Standing ...............................27

Conclusion ........................................................................................29

Certificate of Service .........................................................................30

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) .......................................................................21

*Am. Dental Ass'n v. Cigna Corp.,*
  605 F.3d 1283 (11th Cir. 2010).........................................................6

*Arizona v. United States,*
  567 U.S. 387 (2012) .......................................................................24

*Armstrong v. Exceptional Child Ctr.,*
  575 U.S. 320 (2015) .......................................................... 19, 20, 21

*Bankshot Billiards, Inc. v. City of Ocala,*
  634 F.3d 1340 (11th Cir. 2011).........................................................8

*Bates v. Dow Agrosciences LLC,*
  544 U.S. 431 (2005) .......................................................................27

*Cannon v. Univ. of Chicago,*
  441 U.S. 677 (1979) .......................................................................20

*Chamber of Com. of U.S. v. Whiting,*
  563 U.S. 582 (2011) .......................................................................24

*Cheshire Bridge Holdings, LLC v. City of Atlanta,*
  15 F.4th 1362 (11th Cir. 2021)................................................... 17, 18

*Citizens Concerned About Our Children v. Sch. Bd. of Broward Cnty.,*
  193 F.3d 1285 (11th Cir. 1999).......................................................28

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,*
  6 F.4th 1247 (11th Cir. 2021)............................................................6

*Cummings v. Premier Rehab Keller, PLLC,*
  142 S. Ct. 1562 (2022)................................................................ 22, 26

*Expressions Hair Design v. Schneiderman,*
  137 S. Ct. 1144 (2017).....................................................................9

*Fla. E. Coast Ry. Co. v. City of W. Palm Beach*,
266 F.3d 1324 (11th Cir. 2001) ....................................................... 22, 27

*Fresenius Med. Care Holdings, Inc. v. Tucker*,
704 F.3d 935 (11th Cir. 2013) ...............................................................27

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949) ...............................................................................16

*Gonzales v. Carhart*,
550 U.S. 124 (2007) ..................................................................... 12, 14, 15

*Graham v. R.J. Reynolds Tobacco Co.*,
857 F.3d 1169 (11th Cir. 2017) ...................................................... 21, 22

*Hill v. Cundiff*,
797 F.3d 948 (11th Cir. 2015) ............................................... 2, 6, 19, 20

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ......................................................................... 12, 13, 14

*Legal Env't Assistance Found., Inc. v. Pegues*,
904 F.2d 640 (11th Cir. 1990) ...............................................................19

*Little v. Strange*,
796 F. Supp. 2d 1314 (M.D. Ala. 2011) ................................................27

*Lord Abbett Mun. Income Fund, Inc. v. Tyson*,
671 F.3d 1203 (11th Cir. 2012) ...............................................................6

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) ..............................................................26

*Myers v. TooJay's Mgmt. Corp.*,
640 F.3d 1278 (11th Cir. 2011) .............................................................24

*Nat'l Mining Ass'n v. United Steel Workers*,
985 F.3d 1309 (11th Cir. 2021) ...............................................................9

*Packingham v. North Carolina*,
137 S. Ct. 1730 (2017)............................................................................16

*Rice v. Paladin Enterprises, Inc.*,
    128 F.3d 233 (4th Cir. 1997) ................................................................16

*Rose v. Locke*,
    423 U.S. 48 (1975) ................................................................................13

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996) ................................................................................20

*Stardust, 3007 LLC v. City of Brookhaven*,
    899 F.3d 1164 (11th Cir. 2018) ..............................................................9

*United States v. Fleury*,
    20 F.4th 1353 (11th Cir. 2021) .............................................................16

*United States v. Hays*,
    515 U.S. 737 (1995) ..............................................................................28

*United States v. Matus-Leva*,
    311 F.3d 1214 (9th Cir. 2002) ..............................................................11

*United States v. Rabinowich*,
    238 U.S. 78 (1915) ................................................................................12

*United States v. Williams*,
    553 U.S. 285 (2008) ....................................................................... passim

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) ..............................................................................11

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*,
    535 U.S. 635 (2002) ..............................................................................20

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) ..............................................................25

*Virginia v. Black*,
    538 U.S. 343 (2003) ..............................................................................16

*Virginia Uranium, Inc. v. Warren*,
    139 S. Ct. 1894 (2019) .................................................................... 23, 25

**Statutes**

20 U.S.C. § 1681 .................................................................................19

42 U.S.C. § 18041(d) ............................................................... 22, 24, 27

42 U.S.C. § 18116(a) ........................................... 19, 20, 21, 22

Ala. Code § 13A-2-4(b) ............................................... 7, 12, 14

Ala. Code § 13A-2-5 ...........................................................11

Ala. Code § 13A-2-5(a) ...........................................................7, 11

Ala. Code § 13A-2-23 .........................................................14

Ala. Code § 13A-2-24 .........................................................14

Ala. Code § 13A-4-3 ............................................... 11, 14

Ala. Code § 13A-4-4 .........................................................14

Ala. Code § 26-26-2 .........................................................3

Ala. Code § 26-26-4(a) ............................................... 4, 8, 15

Ala. Code § 26-26-4(b) .........................................................4

Ala. Code § 26-26-4(c) .........................................................4

Ala. Code § 26-26-6.........................................................4, 17

Ala. Code § 40-23-60 .........................................................12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................1

**Other Authorities**

Merriam-Webster Unabr. Dictionary (3d ed. 2002) ................................10

# INTRODUCTION

Defendants move under Federal Rule of Civil Procedure 12(b)(6) for dismissal of Counts III, IV, and V of Plaintiffs' First Amended Complaint (Doc. 146, "Am. Compl.") and dismissal of Plaintiff Eknes-Tucker for lack of standing.

The Alabama Vulnerable Child Compassion and Protection Act seeks to protect minors from unstudied medical treatments that cannot be reversed and carry significant risks of long-term infertility and other harms. The State's effort to protect children has been attacked by many groups of plaintiffs on many legal theories. The latest set of plaintiffs advances no less than five theories in their Amended Complaint. At least three of these—Plaintiffs' vagueness, First Amendment, and preemption claims—fail to state a claim and should be dismissed. As this Court recognized at the preliminary injunction stage, a standard causation requirement is not void for vagueness, criminal conduct is not protected by the First Amendment, and federal law does not confer a *right* to receive funds. And Plaintiff Eknes-Tucker's only remaining claim is based on equal protection, but he is not a minor with standing; thus, he must be dismissed.

First, Plaintiffs' vagueness challenge cannot be sustained. Plaintiffs allege that the word "cause" is unconstitutionally vague. This Court recognized, however, that word has a "plain-language definition" and is used throughout the law. Op., Doc. 112-1 at 26 [hereafter "Op."]. Any purported vagueness in that common legal term

would be alleviated by "[t]he fact that the Act has a scienter requirement," which "greatly weighs against Plaintiffs' void-for-vagueness claim." *Id.* at 25. In all events, Plaintiffs cannot sustain a vagueness challenge because there is no question that the conduct they want to engage in is forbidden. Providing puberty blockers or cross-sex hormones to a minor for the purpose of gender transition is clearly outlawed. Plaintiffs' vagueness claim fails.

Second, Plaintiffs' First Amendment claim fails. As this Court explained, "the Act targets conduct (administration and prescription), not speech." Op. 28. Conduct that "causes" a crime—such as writing a prescription for an illegal use of a drug—has no First Amendment protection.

Third, Plaintiffs' preemption claim, which even the United States does not press, fails as a matter of law. As this Court explained, "Section 1557—by incorporating the enforcement mechanism of Title IX—'is enforceable against institutions and programs that receive federal funds, but does not authorize suits against individuals.'" Op. 28 (quoting *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015)). Further, the Affordable Care Act expressly preserves state regulations, and Section 1557 is a mere limitation on federal funding to such institutions and programs. It does not give any institution a *right* to receive funds for gender transition interventions, much less to violate generally applicable state laws.

Last, Plaintiff Eknes-Tucker's sole remaining claim is based on equal protection, but he is not a minor with standing to challenge the Act's classifications. Absent standing, he must be dismissed.

Thus, the Court should dismiss Counts III, IV, and V of the Amended Complaint, and dismiss Plaintiff Eknes-Tucker.

## STATEMENT OF THE CASE

The Alabama Vulnerable Child Compassion and Protection Act was enacted in response to increasing evidence showing that medical interventions used for gender transitioning in minors carry significant risks of permanent harm, with no proven benefits. Among other risks, giving children puberty blockers followed by cross-sex hormones—the typical intervention pushed by medical interest groups—"is expected to cause irreversible sterility." Ala. Code § 26-26-2. And "[s]everal studies demonstrate that hormonal and surgical interventions often do not resolve the underlying psychological issues affecting the individual." *Id.* "Minors, and often their parents, are unable to comprehend and fully appreciate the risk and life implications, including permanent sterility, that result from the use of puberty blockers, cross-sex hormones, and surgical procedures." *Id.*

Given this evidence, the Legislature chose to prohibit the administration of certain treatments for minors:

> [N]o person shall engage in or cause any of the following practices to
> be performed upon a minor if the practice is performed for the purpose

3

of attempting to alter the appearance of or affirm the minor's perception of his or her gender or sex, if that appearance or perception is inconsistent with the minor's [biological sex]:

> (1) Prescribing or administering puberty blocking medication to stop or delay normal puberty.

> (2) Prescribing or administering supraphysiologic doses of testosterone or other androgens to females.

> (3) Prescribing or administering supraphysiologic doses of estrogen to males.

> (4) Performing surgeries that sterilize, including castration, vasectomy, hysterectomy, oophorectomy, orchiectomy, and penectomy.

> (5) Performing surgeries that artificially construct tissue with the appearance of genitalia that differs from the individual's sex, including metoidioplasty, phalloplasty, and vaginoplasty.

> (6) Removing any healthy or non-diseased body part or tissue, except for a male circumcision.

*Id.* § 26-26-4(a). A violation is a Class C felony. *Id.* § 26-26-4(c).

The above prohibitions do not apply "to a procedure undertaken to treat a minor born with a medically verifiable disorder of sex development," including an individual both with irresolvable ambiguous external sex characteristics and an individual who has been diagnosed with a "disorder of sexual development." *Id.* § 26-26-4(b). And apart from the Act's express prohibitions, "nothing in this act shall be construed as limiting or preventing psychologists, psychological technicians, and master's level licensed mental health professionals from rendering the services for which they are qualified." *Id.* § 26-26-6.

Governor Ivey signed the Act into law on April 8, 2022. Various plaintiffs filed and refiled lawsuits. *See* Op. 6-8. In the penultimate iteration of this lawsuit, Plaintiffs asserted claims involving substantive due process, equal protection, preemption, free speech, and vagueness. Doc. 1. The United States intervened, asserting only an equal protection claim. Doc. 92.

After a hearing, this Court entered a preliminary injunction against enforcement of certain provisions of the Act. Doc. 112-1. The Court found that Plaintiffs are likely to succeed on their substantive due process and equal protection claims only. *Id.* at 21, 24. And it specifically held that Plaintiffs are *not* likely to succeed on any of their other claims.

On vagueness, the Court found no indeterminacy in "the modern, plain-language definition of the word cause," and emphasized the Act's "scienter requirement," which "greatly weighs against Plaintiffs' void-for-vagueness claim." *Id.* at 25-26.

On free speech, the Court held that "the only speech criminalized by Act is that which compels the administration or prescription of transitioning medications to minors." *Id.* at 28. "Accordingly, the Act targets conduct (administration and prescription), not speech," and does not implicate the First Amendment. *Id.*

And on preemption, the Court noted that Section 1557 "is enforceable against institutions and programs that receive federal funds, but does not authorize suits

against individuals." *Id.* at 28 (quoting *Cundiff*, 797 F.3d at 977). Thus, the Court considered it "unclear how Plaintiffs may bring their preemption claim against Defendants who are state officials, not institutions." *Id.* at 29.

Plaintiffs have now filed an amended complaint, alleging the same legal theories on behalf of a new third group of plaintiffs. Doc. 146.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (cleaned up). Courts do not "accept as true a complaint's conclusory allegations or legal conclusions." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021). "[C]ourts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (cleaned up).

## ARGUMENT

As this Court has all but held, Plaintiffs' vagueness, free speech, and preemption claims fail as a matter of law. First, Plaintiffs' void for vagueness claim rests on the proposition that the term "cause" in the phrase "engage in or cause" cannot be understood or consistently applied. But "cause" has a well-understood plain

6

meaning, and similar formulations litter the law. Courts routinely find that causation requirements eliminate undue vagueness. Moreover, Alabama law specifically articulates the "modified but-for" causation test that applies *and* imposes a *mens rea* requirement. *See* Ala. Code §§ 13A-2-5(a), 13A-2-4(b). And Plaintiffs' vagueness claim would fail regardless, for they desire to engage in the heartland conduct prohibited by the Act: transitioning minors using unproven medical interventions. Whether or not that prohibition violates *other* rights (a question not at issue here), it is not vague.

Second, as this Court already recognized, the Act proscribes only certain conduct, and the First Amendment does not protect criminal conduct. Simply because conduct might be carried out through speech—say, hiring a hitman, or writing a prescription—does not give it First Amendment protection. Any suggestion that the Act prevents seeking medical advice or religious counseling misapprehends the Act's terms and settled causation rules.

Third, the Act is not preempted by federal law. Section 1557 does not provide a cause of action against state officials, the Affordable Care Act contains a savings clause preserving state regulation, and federal funding restrictions do not confer on potential recipients a *right* to that funding with which state regulations could interfere.

Fourth, Plaintiff Eknes-Tucker lacks standing. His only remaining claim is equal protection, but he is not a minor allegedly injured by the Act's classifications.

Therefore, the Court should dismiss Counts III, IV, and V of the Amended Complaint, and Plaintiff Eknes-Tucker.

## I.    The Law Is Not Void For Vagueness.

Plaintiffs' vagueness claim rests on the assertion that "the Act does not provide sufficient definiteness to ordinary people, including Plaintiffs, of what actions constitute 'caus[ing]' any of the proscribed activities upon a minor." Am. Compl. ¶ 142. Vagueness arises when a law either "fails to provide a person of ordinary intelligence fair notice of what is prohibited" or "is so standardless that it authorizes or even encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). A vagueness challenge may be raised only "as a defense during an actual prosecution" or if an individual is being "chilled from engaging in constitutional activity." *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1349-50 (11th Cir. 2011).

The Act here provides that, absent exception, "no person shall engage in or cause any of the following practices to be performed upon a minor if the practice is performed for the purpose of attempting to alter the appearance of or affirm the minor's perception of his or her gender or sex, if that appearance or perception is inconsistent with the minor's sex." Ala. Code § 26-26-4(a). Covered practices are

"[p]rescribing or administering" various drugs, "[p]erforming" certain "surgeries," and "[r]emoving any healthy or non-diseased body part or tissue." *Id.*

Plaintiffs challenge only the word "cause." This claim fails, for multiple reasons. *First*, "[t]o succeed on a claim that an ordinance is void for vagueness, the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1176 (11th Cir. 2018) (cleaned up); *see Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1326 (11th Cir. 2021) (holding that mining regulation was not unconstitutionally vague because it was not "impermissibly vague in all of its applications"); *contra* Doc. 89 at 40 (relying on dicta from a 2015 case and ignoring this circuit law). In addition, "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Stardust*, 899 F.3d at 1176 (cleaned up); *accord, e.g.*, *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1151-52 (2017).

Here, there is no question that Plaintiffs seek the right for their doctors to violate the law's core prohibition on prescribing puberty blockers and hormones for the purpose of changing gender. *See, e.g.*, Am. Compl. ¶¶ 49-50 (appointment for "medical treatment to address the mismatch between his body and his gender identity"), 56-58 (use of puberty blockers and cross-sex hormones for gender transitioning "will be disrupted"), 65-66 ("hormone replacement therapy"—cross-sex

9

hormones—"will be disrupted"), 74 ("obtain" "puberty blockers"), 83-84 (same), 87 ("[Dr. Koe] and her staff provide support to patients who need assistance in self-administering injectable medications like testosterone."). This is the heartland conduct prohibited by the law, so Plaintiffs' vagueness claim fails at the outset, regardless of whether their other claims have merit.

*Second*, there is no impermissible vagueness in the phrase "engage in or cause." "[A] word is given more precise content by the neighboring words with which it is associated," *Williams*, 553 U.S. at 294, and there can be no doubt about whether a person has "engage[d] in" conduct prohibited by the Act. Directly administering a testosterone shot to transition a young girl is clearly prohibited—the doctor has "engaged in" the administration of the shot and thereby violated the law. So too if the doctor orders a nurse to give the shot instead: the doctor might not be "engaging in" administering the shot, but she has "caused" the shot to be administered just the same. A parent merely driving her child to the doctor, on the other hand, or a minister encouraging a friend to seek help at a gender clinic would not be "engaging in or causing" the prescription or administration of prohibited transitioning treatments.

As this Court already recognized, "cause" too has a "modern, plain-language definition": "to 'effect by command, authority, or force' or 'bring into existence' an action." Op. 26 (quoting *Cause*, Merriam-Webster Unabr. Dictionary (3d ed. 2002)).

10

Though endless law school hypotheticals can be devised about "causation," the Alabama Code specifically states which form of causation matters: "A person is criminally liable if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the actor clearly insufficient." Ala. Code § 13A-2-5(a); Op. 25. This modified but-for test is the same used in "other modern criminal codes." Ala. Code § 13A-2-5 Commentary. "To be sure, it may be difficult in some cases to determine whether" this test has "been met." *Williams*, 553 U.S. at 306. "But courts and juries every day pass upon" causation. *Id.*; *id.* at 304 ("[P]erfect clarity and precise guidance have never been required."); *e.g.*, *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013) (but-for test in many contexts). Indeed, courts consider "causation requirement[s]" as *eliminating* any vagueness problem by adequately "put[ting] persons of ordinary intelligence on notice" of the possibility of criminal sanctions. *United States v. Matus-Leva*, 311 F.3d 1214, 1219 (9th Cir. 2002). This law is not void for vagueness.

The same statutory phrase—"engage in or cause"—has littered American criminal codes for centuries. Take Alabama's criminal conspiracy statute: "A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons *to engage in or cause* the performance of such conduct." Ala. Code § 13A-4-3 (emphasis added); *see also, e.g.*,

11

*United States v. Rabinowich*, 238 U.S. 78, 88 (1915) (common law definition, "[f]or two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws"). Or take Alabama's use tax laws, which define a "business" as "[a]ll activities engaged in, or caused to be engaged in, with" certain objects. Ala. Code § 40-23-60. The State is unaware of any decision suggesting that the term "cause" is so vague that every statute using it is unconstitutional.[1]

Moreover, Alabama law provides that "[a] statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability." Ala. Code § 13A-2-4(b). As this Court has recognized, "that the Act has a scienter requirement greatly weighs against Plaintiffs' void-for-vagueness claim." Op. 25. The Supreme Court "has made clear that scienter requirements alleviate vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149-50 (2007). When "a doctor" performing a practice "will not face criminal liability if he or she" engages in the practice "by mistake, the [law] cannot be described as a trap for those who act in good faith." *Id.* (cleaned up). Thus, the culpability required by this Act, in addition to its limitation based on "the purpose" for which the prohibited conduct was performed, further eviscerate Plaintiffs' vagueness claim.

---

[1] Tellingly, "[P]laintiffs themselves have repeatedly used the term[]" "cause" without apparent confusion as to its meaning. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 22 (2010); *see* Am. Compl. ¶¶ 27, 29, 58, 79, 98, 130.

In their previous arguments, Plaintiffs ignored the first half of the statutory term ("engage in") and then provided a laundry list of hypotheticals that are supposedly challenging. *See* Doc. 8 at 48; *id.* at 43; Doc. 89 at 38. As shown above and below, Alabama law speaks to their hypotheticals. But more fundamentally, Plaintiffs' "basic mistake" "lies in the belief that the mere fact that close cases can be envisioned renders a statute vague." *Williams*, 553 U.S. at 305. "That is not so. Close cases can be imagined under virtually any statute." *Id.* at 305-06. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* at 306.

For instance, courts have "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Holder*, 561 U.S. at 20. And courts have upheld phrases like "crimes against nature," holding that phrase "no more vague than many other terms used to describe criminal offenses at common law and now codified in state and federal penal codes." *Rose v. Locke*, 423 U.S. 48, 50 (1975); *id.* ("The phrase has been in use among English-speaking people for many centuries, and a substantial number of jurisdictions in this country continue to utilize it.").

Here, "cause" is much more specific than any of these examples, for Alabama law defines the relevant causation—and imposes a scienter requirement for good measure. Ala. Code § 13A-4-3; *id.* § 13A-2-4(b). Causation in the law is not some wholly subjective question. The relevant factual question is known, even if it "will sometimes be difficult to determine whether [causation] has been proved." *Williams*, 553 U.S. at 306. Further, Alabama law speaks even more specifically to Plaintiffs' various hypotheticals. It speaks to out-of-state conduct. Ala. Code § 13A-4-4. It speaks to aiding-and-abetting liability. *Id.* § 13A-2-23. And it speaks to the absurd suggestion that the victim (a vulnerable child) would be prosecuted (Doc. 8 at 43): "a person shall not be legally accountable for behavior of another constituting a criminal offense if" "[h]e is a victim of that offense." Ala. Code § 13A-2-24. In all events, "[i]t is apparent with respect to these [hypotheticals] that gradations of fact or charge would make a difference as to criminal liability, and so adjudication of the reach and constitutionality of the statute must await a concrete fact situation." *Holder*, 561 U.S. at 25 (cleaned up).

The Act thus also "establish[es] minimal guidelines to govern law enforcement." *Gonzales*, 550 U.S. at 150. Like the judiciary, law enforcement is used to applying basic causation tests. And "scienter requirements narrow the scope of the Act's prohibition and limit prosecutorial discretion." *Id.* Any "arguments concerning arbitrary enforcement, furthermore, are … speculative": "This is a preenforcement

14

challenge, where no evidence has been, or could be, introduced to indicate whether the Act has been enforced in a discriminatory manner or with the aim of inhibiting constitutionally protected conduct." *Id.* (cleaned up).

Unless most of American law is void for vagueness, this Act is not either. Plaintiffs' vagueness claim fails as a matter of law.

## II.   Criminal Conduct Is Not Protected By The First Amendment.

Plaintiffs' First Amendment claim fails for related reasons. Plaintiffs allege that "[t]he Act creates an unlawful restriction on speech." Am. Compl. ¶ 136. But on its face, the Act makes it a crime for any person to "engage in or cause any of [several practices]" for the purpose of gender transitioning a minor. Ala. Code § 26-26-4(a). The only "speech" that would be criminalized is speech that "causes" a crime—for example, writing a prescription for an illegal use of a drug. *See id.* § 26-26-4(a)(1)-(3). As this Court has held, because "the only speech criminalized by Act is that which compels the administration or prescription of transitioning medications to minors," "the Act targets conduct (administration and prescription), not speech." Op. 28. And the First Amendment "offers no protection to words that incite or constitute criminal activity." *Id.* at 27.

"Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech (commercial or not) that is intended to induce or commence illegal activities." *Williams*, 553 U.S. at 298.

"[S]peech integral to criminal conduct" is one of the "long recognized," "well-de-fined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *United States v. Fleury*, 20 F.4th 1353, 1365 (11th Cir. 2021). "[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949); *see, e.g.*, *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017) ("Specific criminal acts are not protected speech even if speech is the means for their commission."); *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233, 244 (4th Cir. 1997) ("*[E]very* court that has addressed the issue, including this court, has held that the First Amendment does not necessarily pose a bar to liability for aiding and abetting a crime, even when such aiding and abetting takes the form of the spoken or written word.").

To say the Act is "content-based" (Am. Compl. ¶ 43) underscores the point: "It is precisely because" "the content of [the] speech" causes a crime that the speech is unprotected. *Fleury*, 20 F.4th at 1364. "Content-based restrictions are permitted when they are confined to [this] categor[y] of speech." *Id.* at 1365; *see Virginia v. Black*, 538 U.S. 343, 361-62 (2003) ("When the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable,

no significant danger of idea or viewpoint discrimination exists." (cleaned up)); *accord* Op. 27.

Further, as this Court has explained and as shown above, "the Act does not criminalize speech that could indirectly lead to a minor taking transitioning medications." Op. 28. And the Act expressly provides that "nothing in this act shall be construed as limiting or preventing psychologists, psychological technicians, and master's level licensed mental health professionals from rendering the services for which they are qualified by training or experience involving the application of recognized principles, methods, and procedures of the science and profession of psychology and counseling." Ala. Code § 26-26-6. In the course of treating children with gender dysphoria, practitioners remain free to pursue any model of treatment except the prohibited interventions.

Finally, Plaintiffs' facial First Amendment claim fails because the Act is not substantially overbroad. "Overbreadth is 'strong medicine' that courts should employ sparingly and only as a last resort." *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1370 (11th Cir. 2021) (cleaned up). An overbreadth plaintiff must "show that the overbreadth of the challenged provisions is substantial, not only in an absolute sense, but also relative to their plainly legitimate sweep." *Id.* (cleaned up). Plaintiffs "bear the burden of demonstrating from the text of the challenged provisions and from actual fact that a substantial number of instances exist in which

17

the provisions cannot be applied constitutionally." *Id.* at 1370-71 (cleaned up). "The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Fleury*, 20 F.4th at 1362 (cleaned up). "Perfection is not required to survive an overbreadth challenge—a law that shields most protected activity is permissible." *Cheshire Bridge*, 15 F.4th at 1378.

Here, "the statute does not target speech; rather, it targets conduct." *Fleury*, 20 F.4th at 1363. In that circumstance, courts generally "decline[] to employ the 'strong medicine' of overbreadth." *Id.* And Plaintiffs do not allege a *single* unconstitutional application of the statute as properly defined, much less a substantial number. Plaintiffs' First Amendment claim fails. *See Cheshire Bridge*, 15 F.4th at 1371 (explaining that if the law does not "reach[] a substantial amount of constitutionally protected conduct," "the overbreadth challenge must fail").

## III.   Plaintiffs' Preemption Claim Fails.

Invoking Section 1557 of the Affordable Care Act, Plaintiffs allege that the Act is preempted because it "conflicts with the non-discrimination requirements of Section 1557" and makes it "impossible" "to comply" with both laws. Am. Compl. ¶¶ 126, 128.  Section 1557 provides that "an individual shall not, on the ground prohibited under" various civil rights statutes "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program

or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). The only incorporated statute relevant here is Title IX, which generally prohibits educational programs that receive federal funds from discriminating "on the basis of sex." 20 U.S.C. § 1681.

Plaintiffs' preemption claim fails at least twice over: (1) Plaintiffs have no cause of action by which to raise it, and (2) a federal funding limitation does not confer a right that could possibly preempt state law. On the first point, as this Court already explained, "Section 1557—by incorporating the enforcement mechanism of Title IX—'is enforceable against institutions and programs that receive federal funds, but does not authorize suits against individuals.'" Op. 28 (quoting *Cundiff*, 797 F.3d at 977). Thus, it is "unclear how Plaintiffs may bring their preemption claim against Defendants who are state officials." *Id.* at 29.

Plaintiffs purport to state a "Preemption" claim, Am. Compl. Count III, presumably invoking the Constitution's Supremacy Clause. But "the Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 324-25 (2015) (cleaned up); *accord Legal Env't Assistance Found., Inc. v. Pegues*, 904 F.2d 640, 643-44 (11th Cir. 1990) ("While th[e Supremacy Clause] clause is the reason why a state law that conflicts with a federal statute is invalid, it is the federal statute that confers whatever rights the individual is seeking to vindicate." (cleaned up)). And although

individuals may sometimes seek equitable relief on the basis of preemption, "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *See Armstrong*, 575 U.S. at 327-28. Thus, Congress may "implicitly preclude[]" equitable relief by statute for a preemption claim. *See id.* at 328; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996).

Here, Section 1557 reflects "Congress's 'intent to foreclose' equitable relief" against individual state officials for Plaintiffs' preemption claim. *See id.* (quoting *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002)). Section 1557(a) provides that "[t]he enforcement mechanisms provided for and available under … title IX … shall apply for purposes of violations of" Section 1557's non-discrimination bar, 42 U.S.C. § 18116(a). Title IX provides only an implied cause of action, and when the Supreme Court recognized that cause of action, it spoke only of a "private cause of action for victims of the prohibited discrimination." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 703 (1979). And that cause of action "is enforceable against institutions and programs that receive federal funds, but does not authorize suits against individuals." *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015). Thus, Title IX's private cause of action allows a victim of discrimination in education to sue the government institution or program that discriminated, and Section 1557 (at most) allows a patient to sue a healthcare provider that discriminates in the

provision of healthcare. But Section 1557 does not give patients, much less healthcare providers, the right to sue law enforcement officials like the Defendants here, who do not operate the "health program or activity" from which patients fear they will be excluded. 42 U.S.C. § 18116(a). Through the "'express provision'" of enforcement by individuals against institutions that discriminate in violation of Section 1557, the statutory text "'suggests that Congress intended to preclude others'" from seeking equitable relief through a preemption claim against individual state officials who have not violated—and could not violate—the statute. *See Armstrong*, 532 U.S. at 290 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). Plaintiffs thus lack a cause of action.

Second, Plaintiffs fail to state a preemption claim. They assert only implied conflict preemption. "A party asserting conflict preemption faces a high bar": "In all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied"—like health and safety—courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1186 (11th Cir. 2017) (en banc). That is because "[s]tate governments retain their historic police powers to protect public health." *Id.* at 1190. "It is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a

laboratory; and try novel social and economic experiments without risk to the rest of the country." *Id.* (cleaned up).

"Thus, if the statute's terms can be read sensibly not to have a pre-emptive effect, the presumption controls and no pre-emption may be inferred." *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1328 (11th Cir. 2001) (cleaned up). And "[w]hen Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation." *Graham*, 857 F.3d at 1189.

Here, Congress expressly provided in the ACA a statement of its preemptive intent, entitled "No interference with State regulatory authority": "Nothing in this title shall be construed to preempt any State law that does not prevent the application of the provisions of this title." 42 U.S.C. § 18041(d).

Both this express admonition and the default presumption against preemption shed light on Section 1557. That section places conditions on "Federal financial assistance" for "any health program or activity." 42 U.S.C. § 18116(a); *see Cummings v. Premier Rehab Keller, PLLC*, 142 S. Ct. 1562, 1569 (2022) (explaining that Section 1557 "prohibit[s] recipients of federal financial assistance from discriminating based on certain" grounds). But Section 1557 neither requires healthcare providers

to accept federal funds, nor creates a federal *right* to those funds free of state regulation if the conditions are followed.

Plaintiffs' various allegations of the supposed conflict elide this point. For instance, they assert "impossibility" preemption by claiming that "complying with the Act would subject the Healthcare Plaintiffs to civil liability for discrimination under Section 1557." Am. Compl. ¶ 128. Even assuming that were true, federal law does not *require* them to accept or give them a *right* to receive federal monies for performing gender transition medical interventions. The Doctor Plaintiffs themselves decide whether they will be subject to Section 1557. It makes no sense to say that a private party's decision to provide certain services and accept federal funds subject to a funding restriction preempts a state law that makes it harder or even impossible for that party to comply with the funding restriction. "[F]ederal regulation of certain activities does not mean that States must authorize activities antecedent to those federally regulated." *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1916 (2019) (Ginsburg, J., concurring in judgment); *id.* at 1908 (plurality opinion) (similar).

Ignoring the statute's express savings clause, Plaintiffs also claim that the Act is "an obstacle" to Congress's "objective of preventing discrimination in the provision of healthcare." Am. Compl. ¶ 129. "A sound preemption analysis cannot be as simplistic as that." *Virginia Uranium*, 139 S. Ct. at 1907 (plurality). "[P]reemption

analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (plurality) (cleaned up). "As the Supreme Court and [the Eleventh Circuit] have explained, purpose-driven statutory interpretation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action." *Myers v. TooJay's Mgmt. Corp.*, 640 F.3d 1278, 1286 (11th Cir. 2011) (cleaned up).

Like every piece of legislation, the ACA is a compromise. Here, the statutory text shows that "Congress made a deliberate choice" *not* to preempt state law. *Arizona v. United States*, 567 U.S. 387, 405 (2012). The Act expressly states it does not "preempt any State law that does not *prevent* the application of the provisions of this title." 42 U.S.C. § 18041(d) (emphasis added). And Section 1557 in turn merely prohibits discrimination by *recipients* of federal funds. The Act neither requires all healthcare providers to accept federal funds, nor gives healthcare providers who comply with its conditions on federal funding an unfettered right to operate free of state regulation. Therefore, nothing in Alabama law "prevent[s] the application of" Section 1557. *See id.* § 18041(d). Under the plain terms of the Act, there is no "obstacle to the regulatory system Congress chose." *Arizona*, 567 U.S. at 406.

"That compromise may not be the only permissible or even the most rationally attractive one, but it is surely both permissible and rational to think that Congress

might have chosen to regulate" recipients of federal funding "while leaving to States their traditional function of" protecting the public health. *Virginia Uranium*, 139 S. Ct. at 1908 (plurality). And the Court's "job is to follow the text even if doing so will supposedly undercut a basic objective of the statute." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016) (cleaned up); *see id.* ("Elevating general notions of purpose over the plain meaning of the text is inconsistent with our judicial duty to interpret the law as written."); *Virginia Uranium*, 189 S. Ct. at 1907 (plurality) (emphasizing that "the Supremacy Clause" may not "be deployed … to elevate abstract and unenacted legislative desires above state law"); *id.* at 1915 (Ginsburg, J., concurring in judgment) (similar).

Multiple circuit precedents confirm this analysis. First consider the Eleventh Circuit's en banc decision in *Graham*. There, cigarette manufacturers argued for preemption of state law based on their cigarettes' compliance with "a handful of federal labeling requirements." *Id.* at 1191. The court rejected this argument, distinguishing between "a rule that requires a certain label when and if cigarettes are sold" and "Congress establish[ing] a *right* to sell cigarettes." *Id.* at 1188, 1191 (emphasis added). States could impose limitations on cigarette labels—or even "mak[e] it a crime to sell cigarettes"—notwithstanding compliance with federal labeling law. *Id.* at 1190.

Likewise, in *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1095 (11th Cir. 2021), the Eleventh Circuit recently considered a preemption claim involving a federal rule that permitted grains of paradise to be added to alcohol and a state law that prohibited it. The Court held that there was no impossibility preemption: "the fact that grains of paradise can be included in alcohol under federal law does not mean that federal law mandates individual states to allow the sale of alcohol containing grains of paradise." *Id.* at 1095. "Defendants could comply with both federal law and state law by selling [their product] without grains of paradise in Florida." *Id.* And the Court rejected a purposes-and-objectives claim like the one here, reasoning that "[e]vidence of pre-emptive purpose, whether express or implied, must … be sought in the text and structure of the statute at issue." *Id.* at 1096 (cleaned up). Congress's purpose was "not to prevent states from regulating or banning food additives, even if the FDA recognizes such additives" as safe. *Id.*

The same analysis applies here. Section 1557 does not give the Doctor Plaintiffs any rights at all. It merely imposes "a condition on the grant of federal moneys." *Cummings*, 142 S. Ct. at 1570. A state law regulating the Doctor Plaintiffs cannot impede a federal right that they do not have. The Doctor Plaintiffs can "comply with both federal and state law by" declining to accept federal funds. *Marrache*, 17 F.4th at 1095. Frustrating their "business model" is not the same as "frustrat[ing] the purposes of" federal law. *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935,

941 (11th Cir. 2013). Because "the statute's terms can be read sensibly not to have a pre-emptive effect, the presumption [against preemption] controls and no pre-emption may be inferred." *Fla. E. Coast Ry.*, 266 F.3d at 1328; *accord Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 432 (2005) (emphasizing the judicial "duty to accept the reading disfavoring pre-emption"). The Act does not "prevent the application of" Section 1557, so by statutory command, it is not preempted. 42 U.S.C. § 18041(d). Plaintiffs' preemption claim fails.

## IV.   Plaintiff Eknes-Tucker Lacks Standing.

Finally, Plaintiff Eknes-Tucker lacks standing and should be dismissed. For the reasons given above, his vagueness and free speech claims fail, so he lacks standing to assert a chill on his "pastoral work." Am. Compl. ¶ 103; *see Little v. Strange*, 796 F. Supp. 2d 1314, 1329 (M.D. Ala. 2011) ("[I]f no credible threat of prosecution looms, the chill is insufficient to sustain the burden that Article III imposes, and a litigant's subjective fear will not be held to constitute an injury for standing purposes." (cleaned up)). He does not assert substantive due process or preemption claims. *See* Am. Compl. ¶¶ 105, 122. And though he apparently alleges an equal protection claim, he is neither a "transgender minor[]" nor a "non-transgender minor[]." *Id.* ¶¶ 111, 114; *see* Op. 21 n.15 (this Court noting that it is not "readily apparent" "how [Eknes-Tucker] ha[s] standing to bring an Equal Protection claim").

27

"[T]he irreducible constitutional minimum of standing contains three elements." *United States v. Hays*, 515 U.S. 737, 742 (1995). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 742-43 (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of." *Id.* at 743 (cleaned up). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (cleaned up).

Courts "have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *Id.* "The rule against generalized grievances applies with as much force in the equal protection context as in any other." *Id.* Thus, "even if a governmental actor is discriminating" in violation of equal protection, "the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." *Id.* at 743-44; *see, e.g.*, *Citizens Concerned About Our Children v. Sch. Bd. of Broward Cnty.*, 193 F.3d 1285, 1290 (11th Cir. 1999) (holding that plaintiffs did not have standing to sue over inferior conditions at schools that they did not attend).

Because Plaintiff Eknes-Tucker does not allege that he has been personally denied equal treatment, and he has no other valid claims, he lacks standing and must be dismissed.

## CONCLUSION

This Court should dismiss Counts III, IV, and V of Plaintiffs' Amended Complaint, and Plaintiff Eknes-Tucker.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on August 23, 2022, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
*Counsel for Defendants*