## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
## NORTHERN DIVISION

| | | |
|---|---|---|
| **REV. PAUL A. EKNES-TUCKER; et al.;** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No.** |
| | ) | **2:22-cv-00184-LCB** |
| **vs.** | ) | |
| | ) | |
| **STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama; et al.;** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## NON-PARTY EAGLE FORUM OF ALABAMA'S OBJECTION TO AND MOTION TO QUASH DOCUMENT SUBPOENA, OR IN THE ALTERNATIVE MOTION TO MODIFY SUBPOENA

Eagle Forum of Alabama ("EFA"), which is not a party to this case, hereby objects to and moves to quash the subpoena directed to it which was issued by the U.S. Attorney's office and received by EFA on August 10, 2022.  In the alternative, EFA moves the Court to modify the subpoena as discussed further below.  A copy of the subpoena and cover letter received by EFA from Asst. U.S. Attorney Jason R. Cheek is attached hereto as Exhibit A.  A copy of e-mail correspondence with Mr. Cheek extending EFA's deadline to file the present objection and motion is attached as Exhibit B.  The grounds for EFA's objection and motions are as follows:

2

1.      Eagle Forum of Alabama ("EFA") is a grassroots, non-profit Alabama corporation devoted to the cause of protecting Alabama's families in public policy initiatives and reform efforts.  It is a 501(c)(4) organization under the U.S. Internal Revenue Code.  EFA has only one full-time paid employee, along with one part-time paid administrative assistant.   Nearly all of the work done by EFA is done by volunteers.  <u>See</u> the Declarations of Becky Gerritson and Margaret S. Clarke (Exhibits C and D hereto).

2.      For several years, EFA and its membership have been very concerned about the provision of gender-altering medical treatment to minors in Alabama with gender dysphoria, and the permanent and adverse effects of such medical procedures on those minors.  EFA put feet to its concerns by, among other things, speeches to various groups, communications to members of the Alabama Legislature about its concerns and possible legislation on this subject, informing its membership and encouraging members to contact their legislators about this subject, joining with other grassroots organizations with similar concerns in these efforts, assisting in drafting possible legislation to be considered by sponsoring legislators, and arranging for witnesses who could testify at legislative committee hearings.  These efforts by EFA and other similar grassroots organizations occurred over several

years and particularly during the Alabama Legislature's sessions in 2020, 2021, and 2022.  See the Declarations of Becky Gerritson and Margaret S. Clarke.

3.      As the Court is aware, the "VCAP" statute (Alabama Vulnerable Child Compassion and Protection Act) – the constitutionality of which is the subject of this lawsuit -- was passed by both houses of the Alabama legislature during the 2022 legislative session, signed by Governor Kay Ivey, and became effective May 8, 2022.  Again, EFA is not a party to this case, for the obvious reason that -- while it advocated for the legislation that was passed, and wholeheartedly believes that it was and is good policy -- EFA is a completely private association of concerned citizens that itself has no lawmaking capacity whatsoever.  Indeed, this Court's May 13, 2022, Opinion and Order (Doc. 107, pp. 4-6) recognizes that the VCAP statute was the product of the Alabama Legislature which made the findings and conclusions contained in the statute.

4.      The non-party document subpoena to EFA in this case was issued by Asst. U.S. Attorney Jason R. Cheek on August 9, 2022, and received by EFA on August 10, 2022.  The subpoena purports to require production from EFA of eleven (11) broad categories of documents of information, over a multiple-year period of time from January 1, 2017, through the present.  In general terms, the requested documents are EFA's own work product and communications arising from its

4

concerns about gender-altering medical treatment to minors and the VCAP legislation for which it and its membership was advocating.  The subpoena is objectionable and due to be quashed in its entirety on several grounds.

5.     First, the subpoena seeks documents which are outside the general scope of permissible discovery under Fed. R. Civ. P. 26(b)(1).  As the Court is aware, that rule sets the outside limits of discovery as follows:

> "… Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and <u>proportional to the needs of the case</u>, considering the importance of the issues at stake in the action, the amount in controversy, <u>the parties' relative access to</u> **relevant** <u>information</u>, the parties' resources, <u>the importance of the discovery in resolving the issues</u>, and <u>whether the burden or expense of the proposed discovery outweighs its likely benefit</u>. …"

The issues in this case are simply whether, and to what extent, the VCAP statute passed by the Alabama Legislature and signed into law by Governor Ivey is Constitutional.   EFA's work product and communications concerning gender-altering medical treatment to minors and the VCAP legislation for which EFA and its membership advocated (as did a number of other like-minded similar organizations and numerous private citizens of this State) are simply not relevant to this case in any way.

To the extent that the U.S. argues that these documents from EFA could somehow be relevant to the Alabama Legislature's (or individual legislators') intent

in enacting the VCAP statute, there are three answers to such an argument.  First, EFA's documents are not in fact relevant to such legislative intent, and the U.S. Attorney has not shown otherwise.  Second, the intent of the Alabama Legislature, much less the intent of individual legislators, <u>itself</u> is not relevant to this case.  As the U.S. Supreme Court has historically and quite recently again recognized:

> "[I]nquiries into legislative motives 'are a hazardous matter.'  Even when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to the legislative body as a whole. 'What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it.'"

Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228, 2256 (2022) (quoting U.S. v. O'Brien, 391 U.S. 367, 384 (1968)).[1]  Third, even assuming purely *arguendo* that the U.S. is able to show some slight, theoretical relevance to some of EFA's documents, production of these documents -- particularly from a non-party[2] -- does not meet the proportionality test of Rule 26 under the factors underlined above.

---

[1]    Accord, e.g., CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001) ("We have also said just as frequently that '[w]hen the import of words Congress has used is clear ... we need not resort to legislative history, and we certainly should not do so to undermine the  plain meaning of  the statutory language.'") (internal citations omitted); and State v. 223,405.86, 203 So. 3d 816, 831 (Ala. 2016) (internal citations omitted) ("'The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the Legislature or individual members in voting for its passage ....'"  Likewise, "[t]he motives or reasons of an individual legislator are not relevant to the intent of the full legislature in passing the bill.").

[2]    When a subpoena is directed to a non-party, the scope of discovery "must be limited even more.  …  Bystanders should not be drawn into the parties' dispute without some good reason,

6.      Second, compliance with this subpoena would impose an undue burden on EFA, including an undue burden on its <u>volunteer</u> General Counsel as well as an undue burden on its Executive Director.  For more detail on the nature and extent of this undue burden, see the attached Declaration of Margaret S. Clarke (para. 7, 9) and the attached Declaration of Becky Gerritson (para. 9-10).  The subpoena is thus due to be quashed for that reason as well under Fed. R. Civ. P. 45(d)(3)(iv).

7.      Third, the subpoena is also due to be quashed under Fed. R. Civ. P. 45(d)(3)(iii) because compliance with the subpoena would require disclosure of privileged or other protected matter.  There are two categories of privilege protection to consider here.

First, the entire set of documents sought by the U.S. from EFA is protected by First Amendment privilege.  The United States Constitution guarantees a right to associate to engage in activities which the First Amendment protects, including speech, assembly, and the exercise of religion.  <u>See</u>, <u>e.g.</u>, <u>Roberts v. U.S. Jaycees</u>,

---

even if they have information that falls within the scope of party discovery.  …  A more demanding variant of the proportionality analysis therefore applies ….  [C]ourts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." <u>Va. Dep't of Corrs. v. Jordan</u>, 921 F.3d 180, 189 (4th Cir. 2019) (quoting <u>In re Pub. Offering PLE Antitrust Litig.</u>, 427 F.3d 49, 53 (1st Cir. 2005). The Court must consider: (1) the requesting party's need for the information sought, "meaning that the information likely (not just theoretically) … offer[s] some value over and above what the requesting party already has"; (2) whether the requesting party can obtain the same or comparable information that would satisfy its needs from other sources; and (3) whether the request will impose a cognizable burden on the nonparty. <u>Id.</u> at 189-90.

468 U.S. 609, 618 (1984); <u>National Ass'n for the Advancement of Colored People</u>

<u>v. Alabama</u>, 357 U.S. 449, 460-61 (1958).  In the <u>NAACP</u> case, the Supreme Court

noted as follows:

> Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between freedom of speech and freedom of assembly. … It is beyond debate that freedom to engage in association for advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. … <u>Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and **state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny**</u>.

<u>Id.</u> (emphasis added).  The Court went on hold that the NAACP (which the State had

made a party to the case) was constitutionally protected from having to disclose its

membership.  <u>NAACP</u>, 357 U.S. at 460-67.

Nor is it just membership lists that are constitutionally protected from

disclosure.  In the context of discovery, the First Amendment creates a qualified

privilege from disclosure of certain associational information.   <u>See</u> <u>Perry v.</u>

<u>Schwarzenegger</u>, 591 F.3d 1147, 1159-61 (9th Cir. 2010).  The facts and background

pertinent to the discovery dispute in <u>Perry</u> were as follows:

> Proposition 8 amended the California Constitution to provide that only marriage between a man and a woman is valid or recognized in California.  Two same-sex couples filed this action in the district court

> alleging that Proposition 8 violates the Due Process and Equal
> Protection Clauses of the Fourteenth Amendment.  The official
> proponents of Proposition 8 ("Proponents") intervened to defend the
> suit.  Plaintiffs served a request for production of documents on
> Proponents, seeking, among other things, production of Proponents'
> internal campaign communications relating to campaign strategy and
> advertising.  Proponents objected to disclosure of the documents as
> barred by the First Amendment.

Id. at 1152.  In evaluating the Proponents' assertion of First Amendment Privilege

to disclosure of their internal campaign communications, the court in Perry applied

a burden-shifting analysis.  The party objecting to the subpoena must make a *prima*

*facie* showing that the privilege applies by demonstrating that enforcement of the

discovery requests "will result in (1) harassment, membership withdrawal, or

discouragement of new members, or (2) other consequences which objectively

suggest an impact on, or 'chilling' of, the members' associational rights."  Id. at

1160 (internal citations omitted).  If such a *prima facie* showing is made by the

objecting party, "the evidentiary burden will then shift to the government ... [to]

demonstrate that the information sought through the [discovery] is rationally related

to a compelling governmental interest ... [and] the 'least restrictive means' of

obtaining the desired information."  Id. (internal citations omitted).  Applying that

standard to the facts before it, the court in Perry ruled that Proponents had shown

that the requested discovery "would likely have a chilling effect on political

9

association and the formulation of political expression," and granted Proponents' petition for a writ of mandamus on the basis of First Amendment privilege.

Similarly, EFA has demonstrated that production of the documents sought by the U.S. in the non-party document subpoena at issue here are protected by First Amendment privilege because they would have a chilling effect on the membership of EFA as well as other citizens in fully engaging in the political process and exercising their constitutional rights to free speech, assembly, and to petition the government.  See the attached Declaration of Margaret S. Clarke; and the attached Declaration of Becky Gerritson.

Second, in addition to the First Amendment privilege which should be a basis to quash the entire subpoena, a number of the documents sought by the non-party subpoena are covered or potentially covered by the attorney-client and/or work product privileges.  See the attached Declaration of Margaret S. Clarke, para. 7.  The subpoena should therefore also be quashed or modified on that basis.

8.     In the alternative, to the extent the Court rules that any part of this document subpoena should be complied with, EFA requests that the subpoena be modified as follows:  (a) produce non-privileged documents responsive to only those categories, if any, of the subpoena that this Court deems relevant to the issues before it and proportional to the needs of the case; (b) allow for the redaction from the

10

documents to be produced of all references to the names of witnesses, potential witnesses, and other private citizens with whom EFA communicated; (c) to not require production of documents referencing communications with single legislators or multiple legislators that were not provided to all members of the Alabama Legislature; and (d) allow for more time for compliance – at least twenty-one (21) days after the Court rules on EFA's present objection and motions.

/s/ John M. Graham
John M. Graham
ASB-5616-G70J

Attorney for Eagle Forum of Alabama

OF COUNSEL:

PHELPS DUNBAR LLP
Renasant Tower, Suite 700
2001 Park Place North
P. O. Box 830612
Birmingham, AL  35283-0612
Telephone:  (205) 716-5200
Facsimile:  (205) 716-5389
E-Mail:  John.Graham@phelps.com

11

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this 7th day of September, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record in this case.

/s/ John M. Graham
OF COUNSEL