## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
## NORTHERN DIVISION

| | |
|---|---|
| REV. PAUL A. EKNES-TUCKER; et al.; )<br>)<br>Plaintiffs, )<br>)<br>)<br>vs. )<br>)<br>STEVE MARSHALL, in his )<br>official capacity as Attorney )<br>General of the State of Alabama; )<br>et al.; )<br>)<br>Defendants. ) | Civil Action No.<br>2:22-cv-00184-LCB |

## DECLARATION OF MARGARET S. CLARKE

I, Margaret S. Clarke, pursuant to 28 U.S.C.A. § 1746 (pertaining to declarations), declare under penalty of perjury that the following statements by me are true and correct to the best of my knowledge:

1. I am Margaret S. Clarke, and I am over the age of nineteen (19) years and in no way disqualified from making this declaration, which is made from personal knowledge. I am a licensed Alabama attorney.

2. Since 2018, I have served in a volunteer role for Eagle Forum of Alabama ("EFA") as its General Counsel. EFA is a non-profit Alabama 501(c)(4) social welfare advocacy organization under the U.S. Internal Revenue Code. EFA

2

has only one full-time paid employee (Executive Director Becky Garritson), along with one part-time paid administrative assistant. Nearly all of the work done by EFA is done by volunteers.

3. EFA has been dedicated to supporting and protecting strong families, constitutional liberty, personal responsibility, the sanctity of life, and the principle of free government in the State of Alabama for over forty-five (45) years. EFA advocates for these principles through the education of citizens and government officials including legislators, grassroots public policy initiatives and advocacy of legislative reform. In over 45 years of policy and legislative reform efforts, to my knowledge, EFA has never been subpoenaed to produce documents pertinent to its legislative reform efforts.

4. For several years, EFA and its membership have been very concerned regarding issues surrounding the provision of gender-altering medical treatments to minors in Alabama with gender dysphoria, and the permanent and adverse effects of such medical procedures on those minors. EFA began a public policy initiative and legislative reform effort by educating the public and legislators and offering proposed draft legislation and amendments to address its concerns. Those efforts were joined by other advocates including various Alabama and national associations, organizations, doctors, lawyers, counselors, psychiatrists, parents, de-transitioners

3

and individual Alabama citizens. It should be noted that an aggressive campaign was initiated by those who opposed VCAP. This occurred over several years and particularly during the Alabama Legislature's sessions in 2020, 2021, and 2022.

5. As the Court is aware, the Alabama Vulnerable Child Compassion and Protection Act ("VCAP"), the constitutionality of which is the subject of this lawsuit, was passed by both houses of the Alabama Legislature during the 2022 legislative session, signed by Governor Kay Ivey, and became effective May 8, 2022. The Alabama Legislature debated, amended and passed VCAP after extensive consideration over three successive legislative sessions, including seven public hearings (three Alabama Senate committee hearings and four Alabama House committee hearings) with expert testimony from all sides. Opponents and proponents were heavily involved in email campaigns to communicate with legislators. Both opponents and proponents were allowed an equal number of witnesses in every hearing. In addition, there was extensive floor debate in both the House and the Senate before final passage by large majorities in both chambers.

6. As (volunteer) General Counsel for EFA, I communicated with various EFA leadership and members from time to time as well as with Alabama legislators on this subject. I was involved in proposing draft legislation or amendments and submitting legal memos to legislators for their consideration over this three-year

4

period.  I also interviewed and helped prepare numerous expert and fact witnesses, including parents of minor children,[1] to testify in these seven public hearings or to offer written testimony to the legislators.

7. On my personal computer, which I use for my volunteer work with EFA, are nearly 500 Word/PDF documents and over 2,000 email messages potentially related to the VCAP campaign.  This does not include countless hard copies of documents saved in boxes and binders.  These documents include personal notes reflecting my thoughts and impressions, surveys, brochures, opinion letters from attorneys, white papers, medical research and many other forms of documentation.  I consider many of these documents to be my work product and covered by the attorney-client and work product privileges.

8. I also consider all of these documents to be protected and privileged by the First Amendment to the U.S. Constitution and the rights it guarantees to citizens of this country to free speech, assembly, and to petition the government.  I consider the subpoena in this case issued by the federal government to be contrary to and an undermining of those fundamental values and recognized rights.

---

[1] During EFA's public policy initiative on this issue, a number of witnesses spoke with EFA regarding their experiences.  Some of these potential witnesses – including parents, a doctor, and a de-transitioner -- were unwilling to go public and testify for fear of reprisal.

5

9. I have reviewed the non-party document subpoena issued by Asst. U.S. Attorney Jason R. Cheek and directed to Eagle Forum of Alabama which I understand is Exhibit A to the Objection and Motion to Quash which is being filed on behalf of Eagle Forum of Alabama. It would be a massive and undue burden for me as a volunteer to comply with this subpoena. I have no administrative assistant. I am a wife, mother and active church member, among other roles of service in our community. I also work on other issues. Compliance with this subpoena by EFA would (in addition to significant and unnecessary work it would impose on others associated with EFA) require me to open and read through each of the thousands of the documents in my personal files referenced above. It would be necessary, for each individual document of those thousands of documents, for me to: (a) determine whether it is responsive or possibly responsive to one of the eleven (11) broad categories of documents listed in the subpoena; (b) determine whether it is privileged or possibly privileged by the attorney-client or work product privileges (aside from the First Amendment issues and privilege referenced above); (c) make any necessary redactions; and (d) produce any such document which this Court might order to be produced. This task would easily take weeks of my time, as well as causing me to incur personal expense.

6

10. Another major problem with this subpoena is its irrelevance to the constitutional question of VCAP before this Court. Laws are written and passed by the legislature. The VCAP statute was the product of the Alabama Legislature's deliberations over three protracted years. Many opposing views were expressed. As stated by the Alabama Attorney General's office during the preliminary injunction hearing, the author of VCAP is simply the Alabama Legislature. Neither the intent of legislators nor that of others in the legislative process, whether opponents or proponents, are relevant to the constitutional question before this Court. Certainly, my private research, private communications with legislators, and other private documents are not relevant to this question, either.

11. In addition to the undue and unnecessary burden that it would place on me and others associated with Eagle Forum of Alabama, compliance with the federal government subpoena would also have a chilling effect on me and other citizens who choose to engage in our constitutional rights to free speech, free association, and freedom to petition the government, when our views happen to be contrary to the political views of the current Administration in Washington. I consider this subpoena to be political harassment. If this subpoena is enforced it will have a chilling effect on historically protected constitutional rights and legislative advocacy in Alabama and possibly around the country. It would certainly increase the chilling

7

effect in Alabama on others who already feel threatened or fear political harassment by either the government or private parties simply because they support VCAP. Others may choose not to become members of EFA, not associate with EFA or other similar grassroots organizations, or simply not participate in the political process at all.

12. Further, if this subpoena is enforced, EFA legislative advocacy efforts will be jeopardized. Disclosing my personal private thoughts and communications on policy matters or legislative efforts would subject me to further political harassment. As noted above, I communicated privately with many individuals and experts in various fields, including legislators, doctors, parents, teachers, counselors, psychiatrists, policy advocates and other potential witnesses, including some who were only willing to communicate confidentially. Many of those persons will feel betrayed and some will be less likely to participate in the political process in the future if they learn that the Department of Justice can obtain discovery of private documents and private communications of confidential information in controversial cases. America needs more not less citizen participation to make our Republic function at its best. Several witnesses who testified at the first committee hearing in 2020 refused to return to participate in later legislative sessions because they were harassed and put in fear of bodily harm by the opposition on the first day of

committee hearings.  Other witnesses have asked for their names to be redacted from communications.  The State House Security was notified and provided supporting affidavits of this harassments, and, in response, proponent VCAP witnesses were sequestered and given additional protection at all future hearings by State House Security.  Since then, I have had genuine concerns for the physical well-being of anyone who publicly supports the VACP.  My concern will increase if this subpoena is enforced.

      13.    If this subpoena is enforced, I will certainly be more reticent to volunteer and be much more cautious when I participate in the advocacy of controversial issues due to the burdensome impact this has had on me and my family.  At a minimum, I will be less likely to communicate with EFA membership or legislators and will not preserve relevant documents related to my responsibilities even if it is privileged and valuable for making future decisions.  I will also eliminate protected work product simply in order to assure confidentiality of myself and others.  I will certainly need to limit the number of documents I preserve related to political issues, and I will have to consider that anything I write in any note, letter, etc. may one day be read and used for political purposes by a governmental administration which has a different political view, even if my communications were covered by privileges and constitutional protections.  This is an unwarranted and

9

entirely improper burden to place on those who are exercising their constitutional rights to political free speech, freedom of association, and freedom to petition the government.

14.   For all these reasons, I respectfully urge the Court to quash the subpoena in its entirety.

Signed this 2nd day of September, 2022.

By: *Margaret S. Clarke*
Margaret S. Clarke