**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION**

| | | |
|---|---|---|
| REV. PAUL A. EKNES-TUCKER; et al.; | ) ) ) | |
| Plaintiffs, | ) ) ) ) | Civil Action No. 2:22-cv-00184-LCB |
| vs. | ) ) | |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama; et al.; | ) ) ) ) ) ) | |
| Defendants. | ) | |

**NON-PARTY SOUTHEAST LAW'S OBJECTION TO AND MOTION TO QUASH DOCUMENT SUBPOENA, OR IN THE ALTERNATIVE MOTION TO MODIFY SUBPOENA**

Southeast Law Institute ("SLI"), which is not a party to this case, hereby objects to and moves to quash the subpoena directed to it which was issued by the U.S. Attorney's office and received by it on August 10, 2022. In the alternative, SLI moves the Court to modify the subpoena as discussed further below. A copy of the subpoena and cover letter received from Asst. U.S. Attorney Jason R. Cheek is attached hereto as Exhibit A. A copy of e-mail correspondence with Mr. Cheek extending SLI's deadline to file the present objection and motion is attached as Exhibit B. The grounds for its objection and motions are as follows:

2

1. SLI is a non-profit Alabama corporation devoted to providing legal services without charge on the issues of sanctity of life, religious freedom, family issues and others. SLI has no employees and uses the services of volunteer lawyers. It is a 501(c)(3) organization under the U.S. Internal Revenue Code. See the Declaration of A. Eric Johnston (Exhibit C hereto).

2. SLI volunteer lawyers provide legal advice and legislative bill drafting assistance to Alabama Legislators. They have done so for over 30 years. SLI has never received a subpoena to produce its documents relating to this assistance, until the present case.

3. SLI lawyers frequently provide legal assistance to groups including Eagle Forum of Alabama. It did so on the Vulnerable Child Compassion and Protection Statute ("VCAP"), which is the subject of this lawsuit.

4. During the Alabama Legislature's 2020, 2021, and 2022 sessions, a SLI lawyer, A. Eric Johnston, provided bill drafting assistance and legal research for VCAP. These efforts including discussions with Margaret Clark, General Counsel of Eagle Forum of Alabama, other lawyers and legislators. Except for published legal memoranda, these communications were privileged, work product and common legal interest.

3

5. As the Court is aware, the "VCAP" statute -- the constitutionality of which is the subject of this lawsuit -- was passed by both houses of the Alabama legislature during the 2022 legislative session, signed by Governor Kay Ivey, and became effective May 8, 2022. Again, SLI is not a party to this case, for the obvious reason that it engaged only in providing legal guidance through a volunteer lawyer and has no lawmaking capacity whatsoever. Indeed, this Court's May 13, 2022, Opinion and Order (Doc. 107, pp. 4-6) recognizes that the VCAP statute was the product of <u>the Alabama Legislature</u> which made the findings and conclusions contained in the statute.

6. The non-party document subpoena to SLI in this case was issued by Asst. U.S. Attorney Jason R. Cheek on August 9, 2022, and received by SLI on August 10, 2022. The subpoena purports to require production from SLI of eleven (11) broad categories of documents of information, from January 1, 2017, through the present. In general terms, the requested documents are SLI's own work product and privileged communications arising from its concerns about gender-altering medical treatment to minors and the legality of the VCAP legislation. The subpoena is objectionable and due to be quashed in its entirety on several grounds.

4

7. First, the subpoena at issue seeks documents which are outside the general scope of permissible discovery under Fed. R. Civ. P. 26(b)(1). As the Court is aware, that rule sets the outside limits of discovery as follows:

> "… Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and <u>proportional to the needs of the case</u>, considering the importance of the issues at stake in the action, the amount in controversy, <u>the parties' relative access to</u> **relevant** <u>information</u>, the parties' resources, <u>the importance of the discovery in resolving the issues</u>, and <u>whether the burden or expense of the proposed discovery outweighs its likely benefit</u>. …"

The issues in this case are simply whether, and to what extent, the VCAP statute passed by the Alabama Legislature and signed into law by Governor Ivey is constitutional. SLI's lawyer work product and privileged communications concerning gender-altering medical treatment to minors and the VCAP legislation are simply not relevant to this case in any way.

To the extent that the U.S. argues that these documents from SLI could somehow be relevant to the Alabama Legislature's (or individual legislators') intent in enacting the VCAP statute, there are three answers to such an argument. First, SLI's documents would not in fact be relevant to such legislative intent, and the U.S. Attorney has not shown otherwise. Second, the intent of the Alabama Legislature, and individual legislators, <u>itself</u> is not relevant to this case. As the U.S. Supreme Court has historically and quite recently again recognized:

5

> "[I]nquiries into legislative motives 'are a hazardous matter.' Even when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to the legislative body as a whole. 'What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it.'"

Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228, 2256 (2022) (quoting U.S. v. O'Brien, 391 U.S. 367, 384 (1968)).[1]  Third, even assuming purely *arguendo* that the U.S. is able to show some slight, theoretical relevance to some of SLI's documents, production of these documents -- particularly from a non-party[2] -- does not meet the proportionality test of Rule 26 under the factors underlined above.

---

[1]     Accord, e.g., CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001) ("We have also said just as frequently that '[w]hen the import of words Congress has used is clear ... we need not resort to legislative history, and we certainly should not do so to undermine the  plain meaning of  the statutory language.'") (internal citations omitted); and State v. 223,405.86, 203 So. 3d 816, 831 (Ala. 2016) (internal citations omitted) ("'The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the Legislature or individual members in voting for its passage ....'"  Likewise, "[t]he motives or reasons of an individual legislator are not relevant to the intent of the full legislature in passing the bill.").

[2]     When a subpoena is directed to a non-party, the scope of discovery "must be limited even more. … Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery. … A more demanding variant of the proportionality analysis therefore applies …. [C]ourts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." Va. Dep't of Corrs. v. Jordan, 921 F.3d 180, 189 (4th Cir. 2019) (quoting In re Pub. Offering PLE Antitrust Litig., 427 F.3d 49, 53 (1st Cir. 2005). The Court must consider: (1) the requesting party's need for the information sought, "meaning that the information likely (not just theoretically) … offer[s] some value over and above what the requesting party already has"; (2) whether the requesting party can obtain the same or comparable information that would satisfy its needs from other sources; and (3) whether the request will impose a cognizable burden on the nonparty.  Id. at 189-90.

6

8. Second, the subpoena is also due to be quashed under Fed. R. Civ.P. 45(d)(3)(iii) because compliance with the subpoena would require disclosure of privileged or other protected matter. There are two categories of privilege protection to consider here.

First, the entire set of documents sought by the U.S. from SLI is protected by First Amendment privilege. The United States Constitution guarantees a right to associate to engage in activities which the First Amendment protects, including speech, assembly, and the exercise of religion. See, e.g., Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984). National Ass'n for the Advancement of Colored People v. Alabama, 357 U.S. 449, 460-61 (1958). In the NAACP case, the Supreme Court noted as follows:

> Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between freedom of speech and freedom of assembly. … It is beyond debate that freedom to engage in association for advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. … <u>Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and **state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny**</u>.

7

Id. (emphasis added).  The Court went on hold that the NAACP (which the State had made a party to the case) was constitutionally protected from having to disclose its membership.  NAACP, 357 U.S. at 460-67.

Nor is it just membership lists that are constitutionally protected from disclosure.  In the context of discovery, the First Amendment creates a qualified privilege from disclosure of certain associational information.  See Perry v. Schwarzenegger, 591 F.3d 1147, 1159-61 (9th Cir. 2010).  The facts and background pertinent to the discovery dispute in Perry were as follows:

> Proposition 8 amended the California Constitution to provide that only marriage between a man and a woman is valid or recognized in California.  Two same-sex couples filed this action in the district court alleging that Proposition 8 violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  The official proponents of Proposition 8 ("Proponents") intervened to defend the suit.  Plaintiffs served a request for production of documents on Proponents, seeking, among other things, production of Proponents' internal campaign communications relating to campaign strategy and advertising.  Proponents objected to disclosure of the documents as barred by the First Amendment.

Id. at 1152.  In evaluating the Proponents' assertion of First Amendment Privilege to disclosure of their internal campaign communications, the court in Perry applied a burden-shifting analysis.  The party objecting to the subpoena must make a *prima facie* showing that the privilege applies by demonstrating that enforcement of the discovery requests "will result in (1) harassment, membership withdrawal, or

8

discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." Id. at 1160 (internal citations omitted). If such a *prima facie* showing is made by the objecting party, "the evidentiary burden will then shift to the government ... [to] demonstrate that the information sought through the [discovery] is rationally related to a compelling governmental interest ... [and] the 'least restrictive means' of obtaining the desired information." Id. (internal citations omitted). Applying that standard to the facts before it, the court in Perry ruled that Proponents had shown that the requested discovery "would likely have a chilling effect on political association and the formulation of political expression" and granted Proponents' petition for a writ of mandamus on the basis of First Amendment privilege.

Similarly, SLI has demonstrated that production of the documents sought by the U.S. in the non-party document subpoena at issue here are protected by First Amendment privilege because they would have a chilling effect on the efforts of SLI lawyers to provide legal guidance and engage in association with others in fully engaging in the political process and exercising their constitutional rights to free speech, assembly, and to petition the government. See the attached Declaration of A. Eric Johnston.

9

Second, in addition to the First Amendment privilege which should be a basis to quash the entire subpoena, a number of the documents sought by the non-party subpoena are covered or potentially covered by the attorney-client and/or work product privileges.  <u>See</u> the attached Declaration of A. Eric Johnston.  The subpoena should therefore also be quashed or modified on that basis.

9. In the alternative, to the extent the Court rules that any part of this document subpoena should be complied with, SLI requests that the subpoena also be modified as follows:  (a) produce non-privileged documents responsive to only those categories, if any, of the subpoena that this Court deems relevant to the issues before it and proportional to the needs of the case; (b) allow for the redaction from the documents to be produced of all references to the names of witnesses, potential witnesses, and other private citizens with whom SLI communicated; (c) to not require production of documents referencing communications with single legislators or multiple legislators that were not provided to all members of the Alabama Legislature; and (d) to allow for more time for compliance – at least until twenty-one (21) days after the Court rules on SLI's present objection and motions.

10

/s/ John M. Graham
John M. Graham
ASB-5616-G70J
Attorney for Southeast Law Institute

OF COUNSEL:

PHELPS DUNBAR LLP
Renasant Tower, Suite 700
2001 Park Place North
P. O. Box 830612
Birmingham, AL  35283-0612
Telephone:  (205) 716-5200
Facsimile:  (205) 716-5389
E-Mail:  john.graham@phelps.com

## CERTIFICATE OF SERVICE

I hereby certify that this 7th day of September, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record in this case.

/s/ John M. Graham
OF COUNSEL