# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| Rev. Paul A. Eknes-Tucker, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| United States of America, | ) ) | |
| *Intervenor Plaintiff*, | ) ) | |
| v. | ) ) | Civil Action No. 2:22-cv-184-LCB |
| Hon. Steve Marshall, in his official capacity as Attorney General, of the State of Alabama, *et al.*, | ) ) ) ) ) | |
| *Defendants*. | ) | |

## DEFENDANTS' MOTION FOR PARTIAL JUDGMENT
## ON THE UNITED STATES' PLEADINGS (DOC. 92)

# TABLE OF CONTENTS

Table of Contents ................................................................................... i

Table of Authorities .............................................................................. ii

Introduction ...........................................................................................1

Background ............................................................................................2

Legal Standard ......................................................................................7

Argument................................................................................................8

    I.    The United States Has Failed To Plausibly Allege Intentional
Discrimination By The Alabama Legislature .........................................8

    II.    The Claim Pled By The United States Does Not Require Or Permit
Discovery Of Legislators' Private Communications ............................12

Conclusion ...........................................................................................18

Certificate of Service ..........................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Artistic Ent., Inc. v. City of Warner Robins*,
    223 F.3d 1306 (11th Cir. 2000)................................................................18

*Barnwell v. Douglas Cnty.*,
    390 F. App'x 862 (11th Cir. 2010) ...........................................................7

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*,
    496 U.S. 226 (1990)................................................................................18

*Bogan v. Scott-Harris*,
    523 U.S. 44 (1998) .................................................................................17

*Chestnut v. Merrill*,
    377 F. Supp. 3d 1308 (N.D. Ala. 2019) .....................................................7

*Coleman v. Miller*,
    117 F.3d 527 (11th Cir. 1997)................................................................18

*Dep't of Agriculture v. Moreno*,
    413 U.S. 528 (1973)................................................................................16

*Dep't of Commerce v. New York*,
    139 S. Ct. 2551 (2019) ...........................................................................11

*Dep't of Homeland Security v. Regents of the University of California*,
    140 S. Ct. 1891 (2020) ..............................................................................8

*FCC v. Beach Commc'ns, Inc.*,
    508 U.S. 307 (1993) ...............................................................................15

*Gemini Ins. Company v. Castro*,
    723 Fed. App'x 797 (11th Cir. 2018).........................................................7

*Greater Birmingham Ministries v. Sec'y of State for State of Alabama*,
    992 F.3d 1299 (11th Cir. 2021)..............................................................17

*Griffin Indus., Inc. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007)..............................................................15

*Haves v. City of Miami*,
    52 F.3d 918 (11th Cir. 1995).................................................................... 13, 15

*In re Hubbard*,
    803 F.3d 1298 (11th Cir. 2015).............................................................. 17, 18

*Jackson v. BellSouth Telecommunications*,
    372 F.3d 1250 (11th Cir. 2004)..................................................................7, 9

*McCreary County v. ACLU of Ky.*,
    545 U.S. 844 (2005) ....................................................................................18

*Mississippi University for Women v. Hogan*,
    458 U.S. 718 (1982) ............................................................................... 13, 14

*NetChoice, LLC v. Att'y Gen., Fla.*,
    34 F.4th 1196 (11th Cir. 2022)...................................................................18

*Palmer v. Thompson*,
    403 U.S. 217 (1971) ....................................................................................17

*Payne v. Doco Credit Union*,
    734 F. App'x 623 (11th Cir. 2018) ..............................................................7

*Perez v. Wells Fargo N.A.*,
    774 F.3d 1329 (11th Cir. 2014).....................................................................7

*Romer v. Evans*,
    517 U.S. 620 (1996) ....................................................................................16

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ................................................................................16

*United States v. Castillo*,
    899 F.3d 1208 (11th Cir. 2018)...................................................................15

*United States v. O'Brien*
    391 U.S. 367 (1968) ....................................................................................17

*United States v. Virginia*,
    518 U.S. 515 (1996) ............................................................................... 12, 13

*United States v. Windsor*,
    570 U.S. 744 (2013) ...................................................................... 16, 17

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
    429 U.S. 252 (1977) .................................................... 8, 11, 14, 17

*Washington v. Davis*,
    426 U.S. 229 (1976) ........................................................................17

*Weinberger v. Wiesenfeld*,
    420 U.S. 636 (1975) .......................................................... 13, 14, 15

## Statutes

Ala. Code § 26-26-2 ...................................................................................2

Ala. Code § 26-26-6 ...................................................................................3

Ala. Code § 26-26-4(a) ..............................................................................3

Ala. Code § 26-26-4(b) ..............................................................................3

Ala. Code § 26-26-4(c) ..............................................................................3

## Other Authorities

Alabama House Judiciary Committee, Mar. 2, 2022, 1:34:28 PM,
    https://vimeo.com/683940881/4edaeefda2 .......................................10

Kiara Alfonseca, *Alabama Governor Signs 'Don't Say Gay,' Trans Care,
    and Bathroom Ban* ..........................................................................11

Tony Perkins, *Wes Allen Discusses Upcoming Alabama Senate Vote on
    Vulnerable Child Compassion and Protection Act*, YouTube
    (Feb. 15, 2021), https://www.youtube.com/watch?v=E9Q_b22cUWw..........10

Wright & Miller, 5C Federal Practice & Procedure (3d ed.)....................................8

iv

## INTRODUCTION

Looming on the horizon in this case is a discovery battle involving significant questions of government privilege, First Amendment rights, and principles of federalism—all due to the federal government's apparent, yet unpled, theory that the Legislators of Alabama enacted the Vulnerable Child Compassion and Protection Act with the subjective intent of discriminating against transgender persons. As revealed this month, the federal government fired the opening salvo by issuing third-party subpoenas to demand all documents exchanged between private citizens and any person within the Alabama government. More rounds will almost certainly be incoming given the apparent desire of the federal government to root through the files of every single government official in Alabama.

But there is nothing in the federal government's complaint (Doc. 92) that even remotely comes close to plausibly alleging a claim that would justify these discovery requests. This Court should not permit the harassment of Alabama's elected legislators, its government officials, or its citizens on a theory with no grounding whatsoever in the pleadings. Although this discovery strategy should be stopped based on governmental privileges, the First Amendment, and principles of federalism, the more straightforward approach is to hold that the federal government has not plausibly alleged any claim to justify this discovery. The Court should grant Defendants' motion for partial judgment on the United States' pleadings.

## BACKGROUND

The Alabama Vulnerable Child Compassion and Protection Act was enacted in response to increasing evidence showing that medical interventions used for gender transitioning in minors carry significant risks of permanent harm, with no proven benefits. Among other risks, giving children puberty blockers followed by cross-sex hormones—the typical intervention pushed by medical interest groups—"is expected to cause irreversible sterility." Ala. Code § 26-26-2. And "[s]everal studies demonstrate that hormonal and surgical interventions often do not resolve the underlying psychological issues affecting the individual." *Id.* "Minors, and often their parents, are unable to comprehend and fully appreciate the risk and life implications, including permanent sterility, that result from the use of puberty blockers, cross-sex hormones, and surgical procedures." *Id.*

Given this evidence, the Legislature chose to prohibit the administration of certain treatments for minors:

> [N]o person shall engage in or cause any of the following practices to be performed upon a minor if the practice is performed for the purpose of attempting to alter the appearance of or affirm the minor's perception of his or her gender or sex, if that appearance or perception is inconsistent with the minor's [biological sex]:
>
> (1) Prescribing or administering puberty blocking medication to stop or delay normal puberty.
>
> (2) Prescribing or administering supraphysiologic doses of testosterone or other androgens to females.

(3) Prescribing or administering supraphysiologic doses of estrogen to males.

(4) Performing surgeries that sterilize, including castration, vasectomy, hysterectomy, oophorectomy, orchiectomy, and penectomy.

(5) Performing surgeries that artificially construct tissue with the appearance of genitalia that differs from the individual's sex, including metoidioplasty, phalloplasty, and vaginoplasty.

(6) Removing any healthy or non-diseased body part or tissue, except for a male circumcision.

*Id.* § 26-26-4(a). A violation is a Class C felony. *Id.* § 26-26-4(c).

The above prohibitions do not apply "to a procedure undertaken to treat a minor born with a medically verifiable disorder of sex development," including an individual both with irresolvable ambiguous external sex characteristics and an individual who has been diagnosed with a "disorder of sexual development." *Id.* § 26-26-4(b). And apart from the Act's express prohibitions, "nothing in this act shall be construed as limiting or preventing psychologists, psychological technicians, and master's level licensed mental health professionals from rendering the services for which they are qualified." *Id.* § 26-26-6.

Governor Ivey signed the Act into law on April 8, 2022. Various plaintiffs filed and refiled lawsuits. *See* Doc. 112-1 at 6-8. Here, the Plaintiffs brought five claims—a substantive due process claim, an Equal Protection claim, a preemption claim, a free speech claim, and a void-for-vagueness claim. *See* Doc. 1 ¶¶ 93-132. The entirety of the Plaintiffs' complaint rested on the *effect* of the Act based on the

3

face of the law. *See, e.g., id.* ¶ 2 (The Act "prohibit[s] parents from seeking and obtaining appropriate medical care."); *id.* ¶ 3 ("The Act also targets transgender minors by imposing criminal penalties[.]"); *id.* ¶ 103 ("The Act singles out transgender minors[.]"); *id.* ¶ 104 ("The Act also treats transgender minors differently and less favorably[.]").

The federal government moved to intervene and filed an intervenor complaint alleging only an Equal Protection claim. *See* Doc. 58; Doc. 58-3 ¶¶ 55-61. In moving for intervention, the federal government promised that its claim was "based on the same facts" as Plaintiffs' claims, Doc. 58-1 at 9 n.2, and that it would "not raise any new claims," Doc. 65 at 3; *see* PI Trans. 8 (telling the Court that "there is no substantial difference" in terms of "substance here that matters to this case as to what you would present or what relief you're looking for"); *id.* at 15-16 ("The United States isn't expanding proceedings," so "we don't think there's any prejudice to the State."); *id.* at 31 ("We consider our cause to be the same as the claim brought by the private plaintiffs."). In accord with these representations, the entirety of the federal government's complaint, like Plaintiffs' complaint, rested on the *effect* of the Act based on the face of the law. *See, e.g.,* Doc. 58-3 ¶ 58 ("*Section 4 of S.B. 184* discriminates both on the basis of sex and on the basis of transgender status, each in violation of the Equal Protection Clause." (emphasis added)); *id.* ¶ 1 ("This lawsuit challenges a state statute that denies necessary medical care to children based solely

4

on who they are."); *id.* ¶ 55 ("the law prevents transgender minors from accessing gender-affirming care"); *id.* (the law "prevents healthcare providers from considering the recognized standard of care").

At the preliminary-injunction stage, however, the federal government's brief seemingly attempted to inject a claim of intentional discrimination by the Alabama Legislature. There, the federal government asserted that—despite the Alabama Legislature's express legislative findings regarding its purpose of protecting children from experimental and life-altering treatments—the Legislature's enactment actually represented a "forbidden desire" to harm "people whose gender identity is inconsistent with the sex they were assigned at birth." Doc. 62-1 at 18. The federal government offered no citation to either its initial intervenor complaint or Plaintiffs' initial complaint to support this theory. Instead, the federal government supported its argument with citations of public statements. *Id.* at 7-8. Plaintiffs, for their part, did not argue that the Act's legislative findings were merely a pretext to any "forbidden desire" in the minds of Alabama's legislators.

After the preliminary-injunction briefing, both Plaintiffs and the federal government amended their complaints. *See* Doc. 92 ("U.S. Compl."); Doc. 146. This Court granted Plaintiffs leave to amend their complaint a second time to withdraw their preemption, First Amendment, and void for vagueness claims. *See* Doc. 155. Like the initial complaints, the operative complaints rest exclusively on the *effect* of

the Act based on its plain text. Neither the federal government nor Plaintiffs make any reference to "pretext" or intentional discrimination in their amended complaints. They allege no facts related to the motives—public or private—of Alabama's legislators or government officials. And they do not even mention the public statements the federal government cited in its preliminary-injunction memorandum or allege any comparable facts.

The federal government has now served discovery requests seeking to sift through all private communications sent to or from Alabama's government officials, including elected legislators and their staff. For example, the federal government has issued third-party subpoenas demanding "[a]ny communications between" two non-profit organizations "and any employee, agent, assign, or member of the Alabama State Legislature, Alabama Governor's office, Alabama Lieutenant Governor's office, Alabama Attorney General's office, or any employee, agent, or assign of a District Attorney's office within Alabama concerning" the Act "and/or any predecessor bills." *See* Doc. 151-1 at 7; Doc. 152-1 at 7.

Defendants have filed this motion for judgment on the United States' pleadings to make clear that the federal government has alleged no facts supporting a theory that would justify these discovery requests. Therefore, to the extent the United States' claim is based on a pretextual purpose theory, judgment on the pleadings should be entered.

**LEGAL STANDARD**

Judgment on the pleadings under Rule 12(c) "is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (cleaned up). "In determining whether a party is entitled to judgment on the pleadings, [courts] accept as true all material facts alleged in the non-moving party's pleading." *Id.* Because "[t]he court analyzes a Rule 12(c) motion for judgment on the pleadings the same way as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted," "to survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that it plausible on its face." *Chestnut v. Merrill*, 377 F. Supp. 3d 1308, 1312 (N.D. Ala. 2019) (cleaned up). "[U]nsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1271 (11th Cir. 2004).

Though some courts have declined to consider *partial* motions for judgment on the pleading, the Eleventh Circuit routinely affirms grants of such motions. *E.g.*, *Payne v. Doco Credit Union*, 734 F. App'x 623, 627 (11th Cir. 2018); *Gemini Ins. Company v. Castro*, 723 Fed. App'x 797 (11th Cir. 2018); *Barnwell v. Douglas Cnty.*, 390 F. App'x 862, 864 (11th Cir. 2010). As Wright and Miller notes, "many federal courts have entertained a motion for partial judgment on the pleadings with

respect to individual claims," a disposition that "seems sound in terms of giving the district judge greater flexibility and promoting efficiency and economy." 5C Federal Practice & Procedure § 1369 (3d ed.).

## ARGUMENT

### I. The United States Has Failed To Plausibly Allege Intentional Discrimination By The Alabama Legislature.

The United States' complaint fails to plausibly alleges a claim that would justify discovery of legislators' or government officials' private communications. The only claim that would even arguably support discovery requests like those propounded by the federal government would be an intentional-discrimination claim under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). In *Arlington Heights*, the Supreme Court described several types of evidence that help demonstrate intentional discrimination, including "[t]he legislative or administrative history" such as "contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Id.* at 268. In "some extraordinary instances," plaintiffs may seek evidence beyond these enumerated categories of publicly available documents. *Id.* "To plead" an *Arlington Heights* claim, however, "a plaintiff must raise a plausible inference that an 'invidious discriminatory purpose was a motivating factor' in the relevant decision." *Dep't of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1915 (2020) (quoting *Arlington Heights*, 429 U.S. at 266).

8

Here, the United States' complaint is utterly devoid of *any* facts that would support an inference of invidious discrimination. Indeed, it does not even offer the bare legal conclusion that the Alabama Legislature passed the Act with a discriminatory motive. "Pleadings must be something more than an ingenious academic exercise in the conceivable," and "[t]he liberal standard of notice pleading still requires a plaintiff to provide the defendant with fair notice of the factual grounds on which the complaint rests." *Jackson*, 372 F.3d at 1271; *see id.* at 1263 ("To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."). The federal government therefore has no basis whatsoever to seek the private communications of legislators, their staff, or other officials within the Alabama government.

Even if this Court were to treat the federal government's preliminary-injunction brief as a pleading, that document still would not raise a plausible inference of invidious discrimination. The United States' edited quotations in no way undermine the Legislature's expressly stated purpose of protecting children. For instance, as an example of alleged pretext and animus, the United States accused Representative Allen of referring "to gender-affirming care, when provided to transgender youths as 'child abuse.'" Doc. 62-1 at 7. He explained why: "In my opinion, administering these powerful medications to minors whose mind is not made up and is not

developed enough to make these long-term decisions about how it affects their body, it is not good for these children. Yes, I consider it child abuse."[1]

Likewise, the United States said that Representative Allen's motivation for sponsoring the bill was that he thought "if children 'are born male, that they're a male.'" Doc. 62-1 at 6. Again, the context provides a fuller picture. In response to a radio host's request in a previous legislative term to respond to the argument "that you are primarily motivated by bigotry," Representative Allen explained: "That is the furthest thing from the truth. We just want to protect kids, and, you know, I don't believe we're protecting children when we allow them to take these powerful drugs that are used off-label that blocks puberty because puberty is not a disease.… [W]e need to be protecting these kids and showing them compassion, but at the same time affirming that if they are born male, that they're male, if they're born female, they're female. And we don't need to be allowing the prescription of these powerful drugs that we don't know the long-term ramifications of."[2]

Last, accusing the Governor of "express[ing] moral disapproval of gender-affirming care for transgender youth" (Doc. 62-1 at 8), the United States edited out the most relevant sentence: "We should especially protect our children from these

---

[1] Alabama House Judiciary Committee, Mar. 2, 2022, 1:34:28 PM, https://vimeo.com/683940881/4edaeefda2.

[2] Tony Perkins, *Wes Allen Discusses Upcoming Alabama Senate Vote on Vulnerable Child Compassion and Protection Act*, YouTube (Feb. 15, 2021), https://www.youtube.com/watch?v=E9Q_b22cUWw.

radical, life-altering drugs and surgeries when they are at such a vulnerable stage in life."[3]

In sum, the only claim that would arguably justify the discovery requests propounded by the federal government is a claim that no party has alleged. Only an *Arlington Heights* claim would even arguably justify the discovery requests served by the United States. And even then, the federal government would have to plead facts demonstrating the "extraordinary circumstances" where this type of discovery would be necessary under *Arlington Heights*. *See also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573-74 (2019) (requiring "a strong showing of bad faith or improper behavior" for "extra-record discovery" to challenge an administrative decision (internal quotation marks omitted)). It has not even attempted to do so here. Indeed, the federal government's complaint contains precisely zero facts related to any sort of discriminatory motive by the Legislature. The Court should grant judgment on the United States' pleadings to the extent any claim in the complaint attempts to allege an intentional discrimination claim, and the Court should hold that there is no basis for discovery into the private communications of Alabama's legislators, legislative staff, or other government officials and employees.

---

[3] Kiara Alfonseca, *Alabama Governor Signs 'Don't Say Gay,' Trans Care, and Bathroom Ban Bills*, ABC News (Apr. 8, 2022), https://perma.cc/6ESP-A8E9.

## II.   The Claim Pled By The United States Does Not Require Or Permit Discovery Of Legislators' Private Communications.

The claim actually pled in the federal government's complaint would not justify the discovery requests either. The federal government argues that the Act triggers heightened scrutiny.  U.S. Compl. ¶ 58. And to be sure, if the Act were subject to intermediate scrutiny, Defendants must demonstrate that the Legislature's justification for the Act was "genuine, not hypothesized or invented *post hoc* in response to litigation." *United States v. Virginia*, 518 U.S. 515, 533 (1996).

But this showing turns on publicly observed facts, not inquiry into legislators' private correspondence. For example, *Virginia* itself held that the State's proffered justifications were not the "actual state purposes" of its policy at VMI based on numerous publicly observed facts, including "recent [and] distant history" in Virginia, *id.* at 536-37; the practice of other colleges and universities within Virginia, *id.* at 539; the practical realities of VMI's position within Virginia's education system, *id.*; and expert testimony regarding the ability of women to participate in the activities required of VMI's cadets, *id.* at 540-41. At no point did the Court suggest that intermediate scrutiny's requirement of a genuine (as opposed to post-hoc) justification turned on—or permitted discovery of—the contents of legislators' private communications or privately held motives.

Indeed, Chief Justice Rehnquist made this point clearly. He noted that the dissenting opinion equated the majority's "conclusion that VMI's 'asserted interest in

12

promoting diversity' is not "genuine,"' with a 'charge' that the diversity rationale is 'a pretext for discriminating against women.'" *Id.* at 562 n.* (Rehnquist, C.J., concurring). "Of course those are not the same thing," he responded. *Id.* Rather than require proof that government officials who created the policy were motivated by "'antifeminism,'" the requirement that a State's justification be "genuine" simply "require[s] that the proffered purpose for the challenged gender classification be the actual purpose, although not necessarily recorded," as opposed to the hypothetical purposes that can support a law under rational basis review. *Id.*; *see also Haves v. City of Miami*, 52 F.3d 918, 923 (11th Cir. 1995) ("[T]he actual purposes of [an enactment] are not relevant to a rational-basis equal protection inquiry."). Therefore, the application of *Virginia*'s actual-purpose requirement does not require discovery into legislators' private communications.

The cases from which *Virginia* derived the actual-purpose requirement show the same. In *Mississippi University for Women v. Hogan*, the Supreme Court acknowledged "that 'the mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme." 458 U.S. 718, 728 (1982) (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 (1975)). That case involved a challenge to a nursing school's women-only admissions policy, and the government's proffered justification for the policy was to compensate for past discrimination against women in the

nursing field. *Id.* at 727. But the Court determined that this could not have been the "actual purpose underlying" the Act because—based on the federal government's published labor statistics and census data—women did not "lack[] opportunities to obtain training in the field of nursing or to attain positions of leadership in that field." *Id.* at 729-30. Thus, as in *Virginia*, the analysis of this asserted interest turned on publicly observed facts, not a judicial determination of invidious "antifeminism" by the government officials who enacted the policy.

The case that *Hogan* quoted for the "actual purpose" requirement, *Wiesenfeld*, likewise looked only to publicly observed facts. *See Hogan*, 58 U.S. at 728 (quoting *Wiesenfeld*, 420 U.S. at 648). That case concerned a constitutional challenge to a Social Security scheme that paid benefits to a widow based on a deceased male's earnings but not on a deceased female's earnings. *Wiesenfeld*, 420 U.S. at 637-38. The government attempted to justify the sex-based classification on the ground that it merely "compensate[d] women beneficiaries as a group for the economic difficulties which still confront women who seek to support themselves and their families." *Id.* at 648. But the Court did not accept that justification because "it [wa]s apparent both from the statutory scheme itself and from the legislative history of [the provision] that Congress' purpose" was something entirely different. *Id.* For the "legislative history," the Court looked only to publicly available documents, including reports from the Advisory Council on Social Security, documents in the congressional

record, and testimony during congressional hearings. *Id.* at 648-50. Again, the Court did not suggest that the analysis for determining a statute's "actual purpose" turned on—or permitted discovery of—the contents of the private communications of the Senators and Representatives who voted on the relevant Social Security provision.

The federal government's one-sentence reference to rational basis in its complaint would not justify this discovery either. *See* U.S. Compl. ¶ 60. First, this claim was not adequately pled. A plaintiff's "bald assertion that the defendants acted without any rational basis" does not relieve the plaintiff's requirement to plead *facts* to support that assertion. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). The rational basis standard "ask[s] only whether a rational basis exists for the enacting governmental body to believe that the legislation would further [a] hypothesized purpose." *United States v. Castillo*, 899 F.3d 1208, 1213 (11th Cir. 2018) (cleaned up). "[T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993) (cleaned up). Therefore, "[a]s long as the [Defendants] can present at least one plausible, arguably legitimate purpose for the" Act, judgment as a matter of law is required. *Haves*, 52 F.3d at 923. Even if the federal government had "evidence of improper motive," it would make no difference: "the actual purposes of [the Act] are not relevant to a rational-basis equal protection inquiry." *Id.* Here, as the federal government's complaint concedes,

15

the Act prohibits medical interventions on minors that the Alabama Legislature found to be "unproven" and "experimental," with "numerous harmful effects." U.S. Compl. ¶¶ 41, 43. That is enough to satisfy rational basis review, and the Defendants are entitled to judgment on that claim.

Even if the federal government had pled relevant facts in support of its rational basis claim, that claim still would not justify the demanded discovery. "On the few occasions where" the Supreme Court has held that a law fails rational basis, the "common thread has been that the laws at issue lack *any* purpose other than a 'bare . . . desire to harm a politically unpopular group.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018) (quoting *Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973)) (emphasis added); *see also Romer v. Evans*, 517 U.S. 620, 632, 635 (1996). But when the Supreme Court has applied cases like *Moreno* and *Romer* to enactments by a legislature, it has limited the inquiry to publicly available documents. The Court's decision in *United States v. Windsor*, 570 U.S. 744 (2013)—cited in the federal government's preliminary-injunction brief, Doc. 62-1 at 17—is a good example. There, the Court concluded that there was "strong evidence" that the Defense of Marriage Act (DOMA) "ha[d] the purpose an effect of disapproval of" same-sex couples. *Id.* at 770. The "evidence" to support this conclusion, however, was *not* the private communications of the Senators and Representatives who voted for DOMA. Instead, it was the "history of DOMA's enactment," the law's "own text," and its

16

"operation in practice." *Id.* at 770-71. And the historical evidence was limited to the House Report for the law. *See id.* Thus, nothing in the Court's rational-basis cases requires or permits discovery into the internal communications of legislators who voted for a law.

It makes sense that discovery into legislators' private subjective motivations would be limited to "extraordinary circumstances" under *Arlington Heights*. As a general matter, "it simply is not consonant with our scheme of government for a court to inquire into the motives of legislators." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (cleaned up). "In *United States v. O'Brien*, the Supreme Court held that, as a 'principle of constitutional law,' courts cannot 'strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.'" *In re Hubbard*, 803 F.3d 1298, 1312 (11th Cir. 2015) (quoting 391 U.S. 367, 383 (1968)); *see Palmer v. Thompson,* 403 U.S. 217, 224 (1971) ("[N]o case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it."); *Washington v. Davis*, 426 U.S. 229, 243 (1976) (explaining *Palmer*: "the legitimate purposes of the ordinance to preserve peace and avoid deficits were not open to impeachment by evidence that the councilmen were actually motivated by racial considerations."); *Greater Birmingham Ministries v. Sec'y of State for State of Alabama*, 992 F.3d 1299, 1321 (11th Cir. 2021).

In adjudicating constitutional questions, "what is relevant is the legislative *purpose* of the statute," not the "*motives* of the legislators who enacted the law." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*, 496 U.S. 226, 249 (1990) (plurality op.). "[A]n understanding of official objective emerges from readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of hearts." *McCreary County v. ACLU of Ky.*, 545 U.S. 844, 862 (2005). Thus, the Eleventh Circuit has repeatedly held that plaintiffs cannot sustain "a challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it." *Hubbard*, 803 F.3d at 1312; *see NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1224 (11th Cir. 2022); *Artistic Ent., Inc. v. City of Warner Robins*, 223 F.3d 1306, 1309 (11th Cir. 2000); *Coleman v. Miller*, 117 F.3d 527, 531 n.8 (11th Cir. 1997). And courts should not "void" legislation that "could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it." *O'Brien*, 391 U.S. at 384. Here, there is no basis in the complaints for seeking discovery of the private communications of Alabama's legislators, legislative staff, or other government officials.

## CONCLUSION

The Court should grant judgment on the United States' pleadings to the extent any claim in the federal government's complaint attempts to allege intentional discrimination or a rational basis claim, and hold that there is no basis in the complaint

for discovery of the private communications or motives of Alabama's legislators,

government officials, or employees.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

19

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF

system on September 19, 2022, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
*Counsel for Defendants*
