# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| Rev. Paul A. Eknes-Tucker, | ) | |
| *et al.,* | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Intervenor Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-184-LCB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General, | ) | |
| of the State of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTIONS TO QUASH FILED BY NON-PARTIES EAGLE FORUM OF ALABAMA (DOC. 151) AND SOUTHEAST LAW INSTITUTE (DOC. 152)

## TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Introduction ...........................................................................................1

Background .............................................................................................1

Legal Standard .......................................................................................2

Argument................................................................................................3

    I.      The Subpoenas Violate The First Amendment......................................3

    II.    The Subpoenas Are Barred By Legislative Privilege. ..........................11

    III.   The Subpoenas Seek Irrelevant Information. .......................................15

Conclusion .............................................................................................17

Certificate of Service

# TABLE OF AUTHORITIES

## CASES

*Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538 (11th Cir. 1985) ................................................................. 4, 5, 6

*All. of Auto. Mfrs., Inc. v. Jones*, No. 4:08CV555-MCR/CAS, 2013 WL 4838764 (N.D. Fla. Sept. 11, 2013) ............................................. 8, 9

*Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021) .................... 6, 7

*Ass'n of Equip. Manufacturers v. Burgum*, 427 F. Supp. 3d 1082 (D.N.D. 2019) ................................................................................10

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*, 496 U.S. 226 (1990) ...............................................................16

*BellSouth Telecomms., Inc. v. Town of Palm Beach*, 252 F.3d 1169 (11th Cir. 2001) ...........................................................................4

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998) .............................................16

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021).............................17

*Curling v. Raffensperger*, No. 1:17-cv-2989-AT, 2021 WL 5162576 (N.D. Ga. Nov. 5, 2021) ............................................................10

*Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019) .........................................7, 17

*Doe v. McMillan*, 412 U.S. 306 (1973) .....................................................14

*Dyas v. City of Fairhope*, No. 08-0232-WS-N, 2009 WL 3151879 (S.D. Ala. Sept. 24, 2009) ...........................................................14

*Fla. v. United States*, 886 F. Supp. 2d 1301 (N.D. Fla. 2012) ...............................12

*Flynn v. Square One Distrib., Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673 (M.D. Fla. May 25, 2016) ....................................................10

*Free Enter. Fund v. Pub. Accounting Oversight Bd.*, 561 U.S. 477 (2010).............8

*Gravel v. United States*, 408 U.S. 606 (1972) ...........................................13

*In re Grand Jury Proceeding*, 842 F.2d 1229 (11th Cir. 1988) ...........................6, 7

*In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015) ....................................... 11, 12, 15

*Knox v. Roper Pump Co.*, 957 F.3d 1237 (11th Cir. 2020) ..................................15

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ...................................5

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ............................................5

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) .......................................7

*Primary Care Physicians Grp., P.C. v. Ledbetter*, 102 F.R.D. 254
(N.D. Ga. 1984) ..................................................................................................10

*QBE Ins. Corp. v. Griffin*, No. 2:08-cv-949-MEF, 2009 WL 2913478
(M.D. Ala. Sept. 4, 2009) ..................................................................................15

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) .........................................................5

*Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014) ........................4, 5

*Snyder v. Phelps*, 562 U.S. 443 (2011) ....................................................................5

*Supreme Ct. of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719
(1980) ..................................................................................................................14

*Thompson v. Merrill*, No. 2:16-CV-783-ECM, 2020 WL 2545317
(M.D. Ala. May 19, 2020) ............................................................................ 13, 14

*United States v. Johnson*, 337 F.2d 180 (4th Cir. 1964) ........................................13

*United States v. Johnson*, 383 U.S. 169 (1966) .....................................................13

*Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252
(1977) .......................................................................................................... 11, 12, 16

*Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975) ......................................................8

*Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018) ................... 4, 6, 10

**STATUTE**

Ala. Code § 36-15-12 ...............................................................................................12

**OTHER AUTHORITY**

The Federalist No. 28 ................................................................................................3

**RULES**

Fed. R. Civ. P. 26 .....................................................................................................3

Fed. R. Civ. P. 45 .....................................................................................................3

iii

## INTRODUCTION

The federal government's unprecedented subpoenas on private Alabama citizens demanding both internal and legislative policy communications must be quashed. First, the subpoenas threaten core First Amendment rights of speech and association by punishing private citizens for exercising their right to petition their government for redress. Second, the subpoenas are an end-run around the settled privilege protecting legislative process communications. Third, as the Defendants just explained in their motion for partial judgment on the United States' pleadings (Doc. 157), the federal government has pled no pretext claim, and these private communications with individual legislators—or with other private citizens—would be irrelevant even if it had. In this respect, the federal government's subpoenas are themselves a pretext: they have no legitimate purpose other than to intimidate ordinary citizens whose policy views the current Administration's Department of Justice disdains. Enforcing the subpoenas would set a dangerous precedent against citizens of all political stripes. The subpoenas must be quashed.

## BACKGROUND

Relevant background is in the Defendants' recent motion for partial judgment on the United States' pleadings. *See* Doc. 157. As explained there, neither Plaintiffs nor the federal government has pled any pretext claim, instead focusing their equal protection claims on the *effect* of the Act based on its facial language. *See, e.g.*, Doc.

58-3 ¶ 58 (U.S. Compl.) ("*Section 4 of S.B. 184* discriminates both on the basis of sex and on the basis of transgender status" (emphasis added)). In seeking intervention, the federal government assured this Court that its claim is "based on the same facts" as Plaintiffs' claims, Doc. 58-1, at 9 n.2, and that it "isn't expanding proceedings," PI Trans. (Doc. 103) 15-16.

Despite these assurances, the federal government's preliminary injunction motion and now its discovery demands have focused on a different, unpled theory of liability based on supposed pretext. In apparent pursuit of this new theory, the federal government has served intrusive third-party subpoenas on several private groups of Alabama citizens, Eagle Forum of Alabama and Southeast Law Institute (SLI). These subpoenas demand five years' worth of correspondence to or from Alabama's government officials, including elected legislators and their staff, as well as Eagle Forum's and SLI's communications with other private parties, "minutes of meetings," "records," "newsletters," and "social media postings," all pertaining to the challenged Act and "predecessor bills." Docs. 151-1, 152-1. Eagle Forum and SLI each moved to quash the subpoenas. Docs. 151, 152.

## LEGAL STANDARD

Under Rule 26(b)(1), discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering "the importance of the discovery in resolving the issues" and "whether

the burden or expense of the proposed discovery outweighs its likely benefit." The Court "must limit" discovery "outside the scope" of these parameters. Fed. R. Civ. P. 26(b)(2)(C).

Under Rule 45(d)(1) governing third-party subpoenas, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the Court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." The Court also "must quash" a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

## ARGUMENT

### I.   The Subpoenas Violate The First Amendment.

Quashing the subpoenas is necessary to prevent serious constitutional damage to private citizens' First Amendment rights. The federal government's apparent infringement on Alabamians' First Amendment rights is of great concern to the State. *Cf.* The Federalist No. 28 (Alexander Hamilton) ("If [the people's] rights are invaded by either [the federal or state government], they can make use of the other, as the instrument of redress."). "In any First Amendment case it is the duty of this Court to ensure that a constitutionally permissible end, such as discovery, is not achieved in

ways that unduly infringe the protected freedom[s] at stake." *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985) (cleaned up). But it is hard to understand the subpoenas' demands for private groups' meeting minutes, newsletters, and the like except as an attempt to punish those groups for advocating public policies that the federal government dislikes. "[F]orced disclosure of [policy groups'] internal communications as the price for [their] testimony on a matter of intense concern to the public and [their] members" is a grave affront to First Amendment rights. *Whole Woman's Health v. Smith*, 896 F.3d 362, 374 (5th Cir. 2018). Because the subpoenas will inevitably chill protected speech and association, and cannot be justified by any compelling interest, enforcing them would violate the First Amendment. Avoiding this constitutional conundrum favors quashing the subpoenas. *See BellSouth Telecomms., Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1176 (11th Cir. 2001) ("[F]ederal courts should avoid reaching constitutional questions if there are other grounds upon which a case can be decided.").

The federal government's subpoenas "implicate[] significant constitutional guarantees and values of an exceptionally high order; specifically, the right to freedom of speech and the right to petition the government for redress of grievances." *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1356 (11th Cir. 2014). "The Supreme Court has repeatedly extolled the importance of the freedom of speech, explaining that the First Amendment expresses 'a profound national commitment to

the principle that debate on public issues should be uninhibited, robust, and wide-open,' *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), and that 'speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection,' *Snyder v. Phelps*, [562 U.S. 443, 452] (2011)." *Id.* Likewise protected are the First Amendment rights of association, assembly, and petitioning the government for redress. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984) ("[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, [and] petition for the redress of grievances. . . . The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties."); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 461 (1958) (characterizing free speech, press, and association as "indispensable liberties").

"Freedoms such as these are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference," including through discovery. *Coors*, 777 F.2d at 1541 (cleaned up). That is because "important First Amendment rights to free speech and to petition the government" should not be "chilled by the threat of being dragged into onerous judicial proceedings by improper" discovery. *Harris*, 756 F.3d at 1357.

The requirement to show a First Amendment threat from discovery is minimal. "In all cases the presumption is that speech and association are privileged." *Coors*, 777 F.2d at 1541. Thus, discovery that "tread[s] even arguably on protected speech or association rights" is enough for the person to have "clearly" "met their burden" in showing a First Amendment infringement. *Id.*; *accord In re Grand Jury Proceeding*, 842 F.2d 1229, 1236 (11th Cir. 1988) (explaining that "the showing required to establish an infringement of freedom of association" is likely "lenient," because "the government investigation itself may indicate the possibility of harassment"). Even a "*possible* deterrent effect" suffices. *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2388 (2021) (cleaned up); *see id.* at 2385 (rejecting the proposition that "narrow tailoring is required only for laws that impose severe burdens"). And "disclosure requirements can chill association even if there is no disclosure to the general public." *Id.* at 2388 (cleaned up).

That "the activities of" the groups here would be "'chilled' by enforcement of th[ese] subpoena[s] seems self-evident." *Smith*, 896 F.3d at 373. These are organizations "whose very heart and soul are protected political activity." *In re Grand Jury Proceeding*, 842 F.2d at 1234. "[C]ommunications within such a group must be permitted to be broad, uninhibited, and fearless," and "protecting such deliberations is a seminal aspect of the freedom to associate." *Smith*, 896 F.3d at 372. "[T]he burden here comes from compelling" these groups "to produce internal communications as

6

the price for" engaging in policy advocacy, "and subjecting [them] to a threat of sanctions, ranging from monetary to striking the witness to contempt, if [they] fail[] to comply." *Id.* at 371. "[I]n addition to the significant cost of complying," the subpoenas "discourage[]" these groups and others "from engaging in other public policy activities" and undermine their "ability to conduct frank internal dialogue and deliberations." *Id.* at 373. "Even more disturbing," the subpoenas would force the groups "to turn over *to a public policy opponent* its internal communications, setting a precedent that may be replicated in litigation anywhere." *Id.* "[I]t would be naive not to recognize that the disclosure of" such communications would chill future speech and association. *In re Grand Jury Proceeding*, 842 F.2d at 1236; *cf. Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575 (2019) (Courts "are not required to exhibit a naiveté from which ordinary citizens are free." (cleaned up)). The groups' sworn testimonies confirm these chilling effects. *E.g.*, Doc. 151-4 ¶¶ 11-13; Doc. 152-3 ¶¶ 9-10.

Once an infringement on First Amendment rights is shown, the burden shifts to the subpoena's proponent to show that it is (at minimum) "narrowly tailored" "to a compelling interest." *Americans for Prosperity*, 141 S. Ct. at 2383 (first quote); *In re Grand Jury Proceeding*, 842 F.2d at 1236 (second quote). The federal government cannot come close to making such a showing here, for it seeks information irrelevant to any claim. *Infra* Part III; *see also Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010) (noting that when First Amendment rights are implicated, "the party

seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)"). Moreover, the federal government has more direct routes to seek any relevant information about legislation at issue.

The subpoenas' unprecedented nature is a final reason to question their constitutional propriety. *Cf. Free Enter. Fund v. Pub. Accounting Oversight Bd.*, 561 U.S. 477, 505 (2010) ("Perhaps the most telling indication of the severe constitutional problem . . . is the lack of historical precedent" (cleaned up)). Courts in similar cases have repeatedly rejected such efforts to harass private non-parties for engaging in protected advocacy that led to laws that a litigant dislikes. For instance, in one case a plaintiff sought similar evidence from the non-party Florida Automobile Dealers Association about its internal efforts and communications with legislators before laws were passed. *All. of Auto. Mfrs., Inc. v. Jones*, No. 4:08CV555-MCR/CAS, 2013 WL 4838764, at *1 (N.D. Fla. Sept. 11, 2013). The court noted that even in cases involving heightened scrutiny, the Supreme Court has looked to "views expressed concerning the proposed legislation" in "published report[s], not to the unpublished views of proponents or opponents of the legislation." *Id.* at *2 (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648-50 (1975)). "[T]here is no indication that consideration included the personal opinions of those lobbying for or against the

law as to their understanding of the purposes or rationales for the law, the meaning of the interpretation, the extent of any lobbying efforts, communications concerning that lobbying, or facts which would divulge support for legislative candidates and campaign contributions." *Id.* at *3. Finally, the court noted that where discovery demands implicate First Amendment rights, "[t]he burden in making [a] *prima facie* case [of a First Amendment right] is light," and "[t]he burden then shifts and the opposing party must demonstrate a compelling need for the requested information." *Id.* at *4 (cleaned up). The court held that the plaintiff had "not met" that burden because "[t]he information is not relevant to the heart of the matter":

> Questions concerning the constitutionality of state law are not decided upon review of campaign contributions, candidate support, a citizen's view of the law, or the like. Information which helps form legislative opinion will be relevant to a statute's purpose and intent, but such information is gleaned from legislative history as available through the public records of the State of Florida. A decision on the merits of these claims does not hinge on the opinions or activities of FADA or even the motives or opinions of the legislators passing the Amendments.

*Id.*; *see id.* at *5 (noting that the plaintiff "has not pointed to any case which permitted discovery into a proponent of legislation's understanding or interpretation of the proposed legislation, the proponent's communications concerning 'supporting, opposing, lobbying for or otherwise seeking passage of the' legislation, the extent of the proponent's involvement in the legislative process, support for political candidates, or campaign contributions").

9

Courts have widely adopted this analysis. *See, e.g.*, *Ass'n of Equip. Manufacturers v. Burgum*, 427 F. Supp. 3d 1082, 1099 (D.N.D. 2019); *Flynn v. Square One Distrib., Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673, at *2, 4 (M.D. Fla. May 25, 2016); *Primary Care Physicians Grp., P.C. v. Ledbetter*, 102 F.R.D. 254, 257 (N.D. Ga. 1984) (finding non-party's lobbying documents were irrelevant to whether there is any conceivable purpose which may justify the statute); *cf. Smith*, 896 F.3d at 370 ("[W]e have found no case directly on point on the issue of compelling discovery of internal communications within a religious body concerning its activities in the public square to advance and protect its position on serious moral or political issues."); *Curling v. Raffensperger*, No. 1:17-cv-2989-AT, 2021 WL 5162576, at *1 (N.D. Ga. Nov. 5, 2021) (applying this analysis even with respect to a party).

The same analysis applies here. The federal government cannot show any compelling need for irrelevant information. And subjecting private citizens to compulsory process merely for joining to speak out on matters of public concern is a stark infringement of First Amendment rights. This Court should put a stop to the federal government's unfortunate tactic of using the Department of Justice to hassle private citizens who participate in the political process and hold views contrary to the current Administration. The Alabama citizens who offer time and resources to participate in the State's political process should be applauded and protected, not

pursued and investigated by the federal government's law-enforcement agencies. The Court should quash these unconstitutional subpoenas.

## II.   The Subpoenas Are Barred By Legislative Privilege.

Even if the federal government had alleged an intentional discrimination claim (*but see infra* Part III), such claims are normally adjudicated by reference to the official "legislative or administrative history," like "contemporary statements by members of the decisionmaking body" and "minutes of its meetings." *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977). And even when "extraordinary" evidence from individual legislators might otherwise be justified about such a claim, such evidence "frequently will be barred by privilege." *Id.* So it is here: the legislative privilege would block these subpoenas' demands for legislative communications even if the evidence sought were relevant to any claim.

"The legislative privilege is important," with "deep roots in federal common law." *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015). "The privilege applies whether or not the legislators themselves have been sued." *Id.* at 1308 (cleaned up). "The privilege protects the legislative process itself, and therefore covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation." *Id.* The "privilege protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts*." *Id.* at 1310 (emphasis in original).

11

Here, as in *Hubbard*, "[t]he subpoenas' only [apparent] purpose [i]s to support the lawsuit's inquiry into the motivation behind [the] Act," "an inquiry that strikes at the heart of the legislative privilege." *Id.* Demands 1, 4, and 5 specifically pertain to such motivations. Doc. 151-1, Attach. A ¶¶ 1, 4-5; Doc. 152-1, Attach. A ¶¶ 1, 4-5. And the other demands—largely pertaining to each groups' own conduct—are only "relevant" to the extent they inform the federal government's apparent legislative "motivation" inquiry. But as shown below and in the Defendants' motion for partial judgment on the pleadings, *see* Doc. 157, that inquiry is wholly irrelevant. To the extent it is somehow relevant, it is barred by legislative privilege. In short, "[n]one of the [supposedly] relevant information sought in this case could [be] outside of the legislative privilege." *Hubbard*, 803 F.3d at 1311.[1]

---

[1] Because all "the documents are requested to support a claim" that is "at its core and in its entirety an inquiry into the subjective motivation that lawmakers had in passing legislation," there is no need for "a document-by-document invocation of the legislative privilege." *Hubbard*, 803 F.3d at 1311; *see id.* ("Because the only remaining claim in [the] lawsuit struck at the heart of the legislative privilege, and none of the information sought could have been outside the privilege, there was no need for the lawmakers to peruse the subpoenaed documents, to specifically designate and describe which documents were covered by the legislative privilege, or to explain why the privilege applied to those documents."). For the same reason, and also because individual legislators could not know whether their protected communications might be subject to the federal government's sweeping third-party demands, the privilege here may be invoked by the State Defendants and need not invoked by specific legislators. *Cf.* Ala. Code § 36-15-12 ("The Attorney General is authorized to institute and prosecute, in the name of the state, all civil actions and other proceedings necessary to protect the rights and interests of the state."). Forcing individual legislators to guess what documents a third party possesses would defeat one of the "principal purposes" of the privilege: "ensur[ing] that lawmakers are allowed to focus on their public duties" *Hubbard*, 803 F.3d at 1310 (cleaned up). Last, "even if the state legislative privilege is qualified" in other respects, it applies to "equal-protection challenges": as shown by *Arlington Heights*, "there is nothing unique about the issues of legislative purpose and privilege" in equal protection cases. *Fla. v. United States*, 886 F. Supp. 2d 1301, 1303-04 (N.D. Fla. 2012).

The only remaining question, then, is whether the federal government may obtain indirectly—via third-party subpoena—information that it cannot obtain directly from a legislator or aide. It may not. First, "the legislative privilege is not waived simply because a legislator has communicated with third parties, if the communication was part of the formulation of legislation." *Thompson v. Merrill*, No. 2:16-CV-783-ECM, 2020 WL 2545317, at *3 (M.D. Ala. May 19, 2020) (Marks, C.J.). "[A]ctivity engaged in by legislators is still protected by the legislative privilege even if there are communications with non-legislators, as long as the communications were pursuant to the proposal, formulation, and passage of legislation." *Id.* And the information demanded by the federal government's subpoenas specifically pertains to communications with legislators and the Governor about various "bills."

Second, a litigant cannot make an end-run around this protection by demanding the protected communications from the third party rather than the legislator. The Supreme Court has held that legislative privilege "clearly proscribes" compelling testimony on protected matters from legislators, aides, and third parties. *United States v. Johnson*, 383 U.S. 169, 173-76 & nn.4-7 (1966); *see id.* at 173 n.4 (citing questions directed toward a third party, "a public relations man," *United States v. Johnson*, 337 F.2d 180, 198 (4th Cir. 1964)); *accord Gravel v. United States*, 408 U.S. 606, 660 (1972) (Brennan, J., dissenting) ("As we held in *United States v.*

*Johnson*, 383 U.S. 169 (1966), neither a Congressman, nor his aides, *nor third parties* may be made to testify concerning privileged acts or their motives." (emphasis added)).

This protection against indirect attacks on the absolute legislative privilege makes sense. "The principles which underlie the legislative privilege" include "the respect due a coordinate branch of government" and "the chilling effect" that compulsory disclosure "might impose on legislators when considering proposed legislation and discussing it with staff members." *Thompson*, 2020 WL 2545317, at *4. The privilege "assure[s] a co-equal branch of the government wide freedom of speech, debate and deliberation without intimidation" and "has been read broadly to effectuate [this] purpose[]." *Doe v. McMillan*, 412 U.S. 306, 311 (1973); *see Supreme Ct. of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980).

"Interference with an independent legislative branch—whether by dissuading citizens from becoming legislators, discouraging legislators from examining controversial issues, restricting the free flow of information and discussion concerning the issues, or channeling time, energy and resources away from legislative tasks—does not occur only when a legislator is questioned about his or her vote or discussions of the issue while the body is in session." *Dyas v. City of Fairhope*, No. 08-0232-WS-N, 2009 WL 3151879, at *8 (S.D. Ala. Sept. 24, 2009). Those same chilling effects

14

exist if the protected communications are demanded from a third party. As Judge Steele explained:

> A privilege that prohibits a plaintiff from asking a legislator what was said in the decisive meeting but allows questions concerning any potential influences on his or her decision—such as conversations with constituents, review of documents and other information-gathering, as well as potential bias—offers a legislator no protection worth having. Independence is equally threatened by the scrutiny, motives are probed by indirection, and the hassle and distraction are if anything enhanced.

*Id.*

This same rule against indirect demands for protected communications applies in other privilege contexts. *See Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248 (11th Cir. 2020) (explaining that the attorney-client privilege can be overcome only by waiver); *QBE Ins. Corp. v. Griffin*, No. 2:08-cv-949-MEF, 2009 WL 2913478, at *3 (M.D. Ala. Sept. 4, 2009) (noting that the work-product privilege "belongs to both" the attorney and the client, and neither can unilaterally waive the privilege).

In sum, "[a]ny material, documents, or information" demanded by the federal government that does "not go to legislative motive [i]s irrelevant," and any that *does* go to motivation is still irrelevant and is otherwise "covered by the legislative privilege." *Hubbard*, 803 F.3d at 1311. The subpoenas should be quashed.

## III. The Subpoenas Seek Irrelevant Information.

A plaintiff cannot sustain "a challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it." *Id.* at 1312. In

adjudicating constitutional questions, "what is relevant is the legislative *purpose* of the statute," not the "*motives* of the legislators who enacted the law." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*, 496 U.S. 226, 249 (1990) (plurality op.); *see Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) ("[I]t simply is not consonant with our scheme of government for a court to inquire into the motives of legislators." (cleaned up)). Here, the legislative purpose appears on the face of the Act. Because the motives of individual legislators are irrelevant to the constitutional questions raised, private citizens' communications with their elected officials are equally irrelevant—as are citizen groups' internal communications.

As explained in the Defendants' motion for partial judgment on the pleadings, *see* Doc. 157, neither Plaintiffs nor the federal government has plausibly alleged intentional discrimination by the Alabama Legislature. Regardless, such a claim would focus on the official "legislative or administrative history," including "contemporary statements by members of the decisionmaking body" and "minutes of its meetings." *Arlington Heights*, 429 U.S. at 268. The same is true when adjudicating heightened scrutiny. *See* Defendants' Motion for Partial Judgment on the United States' Pleadings 12-18. Only in "extraordinary instances" "might" legislators "be called to the stand at trial to testify concerning the purpose of the official action," and "even then such testimony frequently will be barred by privilege." *Arlington Heights*, 429 U.S. at 268; *see supra* Part II. The federal government has come

nowhere close to making the "strong showing of bad faith or improper behavior" that would be a prerequisite for any such discovery, *Dep't of Com.*, 139 S. Ct. at 2573-74, instead trotting out a handful of deceptively edited quotations that do nothing to undermine the official legislative purpose stated in the Act of protecting children from experimental medical procedures. *See* Defendants' Motion for Partial Judgment on the United States' Pleadings 9-11. These misleading snippets do not justify asking even legislators for the subpoenaed information, much less serving intrusive and irrelevant demands on private citizens. That end-run around legislative privilege would fail even if the information sought were relevant. But "the legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021). Thus, neither speech between these private parties about public policies nor their correspondence with government officials is relevant to any legal issue before this Court. The federal government's subpoenas should be quashed in their entirety.

## CONCLUSION

Enforcing the federal government's intrusive demands would result in subpoenas and depositions for every person and group interested in every piece of enacted legislation later challenged in court. On the Department of Justice's apparent theory, one need not even plead a pretext claim to turn inside out the private communications of any citizen who dared speak about public policy. Such an

extraordinary abuse of the judicial process cannot be justified by practically any legal claim (much less one presented here), and it would violate core free speech rights and the legislative privilege. The Court should grant the motions to quash.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

18

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF

system on September 19, 2022, which will serve all counsel of record.


s/ Edmund G. LaCour Jr.
*Counsel for Defendants*