## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, individually and on behalf of her minor son, MICHAEL BOE; *et al.*, | Case No. 2:22-cv-184-LCB-CWB |
| Plaintiffs, | Honorable Liles C. Burke |
| and | |
| UNITED STATES OF AMERICA, | |
| Plaintiff-Intervenor, | |
| v. | |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama; *et al.*, | |
| Defendants. | |

## RESPONSE IN OPPOSITION TO EAGLE FORUM OF ALABAMA AND SOUTHEAST LAW INSTITUTE'S MOTIONS TO QUASH DOCUMENT SUBPOENAS

## INTRODUCTION

To facilitate efficient discovery relevant to its equal protection claim, the United States issued narrowly tailored document subpoenas to Eagle Forum of Alabama ("EFA") and Southeast Law Institute ("SLI"). The subpoenas were issued for the singular purpose of understanding the origins and development of Alabama's Vulnerable Child Compassion and Protection Act ("VCAP"). EFA and SLI filed motions to quash the subpoenas in their entirety without attempting to meet and confer, and have rebuffed the United States' subsequent efforts to seek informal resolution and limit the issues brought before this Court, including offers to narrow the subpoenas and accept production on a rolling basis.

The motions before the Court are not only premature but are also without merit. First, the origins and development of VCAP are plainly relevant to the United States' equal protection claim, which requires close examination of the justifications for enacting a statute that criminalizes medically necessary treatments for certain Alabamians based on their sex and transgender status. In their motions, EFA and SLI acknowledge that they assisted in drafting legislation, provided legislation to the bill sponsors, and educated and communicated with legislators about the bill. Courts routinely order discovery of materials pertaining to these types of activities, such as external communications and lobbying with legislators, in equal protection cases like this without infringing on First Amendment rights.

This Court recognized the relevance of the information the United States seeks when, during the preliminary injunction proceedings on May 6, 2022, the Court asked where the bill resulting in VCAP came from and who wrote it. At that time, no party had an answer to those critical questions. Quashing these subpoenas hampers the United States' efforts to obtain an answer to those questions.

For these reasons, and because the organizations' blanket arguments regarding First Amendment infringements, attorney client privilege, and work product doctrine are not fully articulated or legally or factually justified, the motions to quash should be denied.

## BACKGROUND

I.     <u>The United States' Subpoenas and Efforts to Seek Cooperation from EFA and SLI</u>

Based on public statements made by or on behalf of EFA and SLI asserting that they drafted VCAP,[1] the United States subpoenaed these organizations for information. The subpoenas asked for 11 categories of documents concerning the organizations' involvement in Alabama state legislation related to gender dysphoria and transgender persons. The United States' requests sought to confirm

---

[1] *See, e.g.*, WXJC Radio, *Priority Talk: Becky Gerritson*, One News Page (last viewed Sept. 19, 2022), https://www.onenewspage.com/video/20220307/14469464/Priority-Talk-Becky-Gerritson.htm [https://perma.cc/6TRY-4XUU] ("Eagle Forum drafted the bill . . . . Our general counsel scoured the nation and came up with this bill."); Erin Brewer, *The Truth About VCAP: The Vulnerable Child Compassion and Protection Act*, YouTube (Dec. 16, 2020), https://www.youtube.com/watch?v=wBMr7AT7JI0 [https://perma.cc/REF9-V5BW] (describing Eric Johnston of SLI as "one of the people who really helped to write the Alabama VCAP").

their involvement in creating VCAP, as well as the basis for the legislation.

Prior to service, the United States made multiple attempts to contact representatives for the organizations in order to work together cooperatively. On August 4, 2022, the United States emailed contacts for EFA and SLI notifying them that it would soon be issuing subpoenas and asking if the organizations would accept FedEx service and confirm their addresses. Neither EFA nor SLI responded to those emails. Ex. A (Aug. 4, 2022 United States' emails to EFA and SLI).

On August 9, 2022, the United States provided notice and copies of the subpoenas to Defendants and Private Plaintiffs. Ex. B (Aug. 9, 2022 United States' email to Parties). Later that day, the United States sent its subpoenas to EFA and SLI via FedEx, and they were delivered the next day. Accompanying the subpoenas were cover letters explaining why the subpoenas were being issued, and providing contact information for the United States should the organizations have any questions or concerns. *See* ECF Nos. 151-1, 152-1. On August 11, 2022, the United States again emailed contacts at EFA and SLI to follow up on the delivered subpoenas. The United States asked if the organizations required the subpoenas to be delivered by alternate means or to different addresses. Ex. C (Aug. 11, 2022 United States' emails to EFA and SLI). Having received no response, the United States served the subpoenas on EFA and SLI via in-person delivery by a process server under Federal Rule of Civil Procedure ("Rule") 45 on August 15, 2022. Ex.

D (United States' Subpoenas to EFA and SLI with Proof of Service).

Four days later, the United States received a call from counsel representing EFA and SLI, who requested more time to respond. The United States indicated that it could grant an extension and agreed to get back to counsel regarding the extension's length. After this phone call, counsel sent an email to the United States clarifying that in his request for an extension to respond to the subpoenas, EFA and SLI's responses would likely include objections and that by seeking an extension for their "response" they did not necessarily mean "producing." Ex. E (Aug. 19-Sept. 7, 2022 email correspondence between the United States and representatives for EFA and SLI). The United States thanked counsel for the clarification, and requested the responses by September 7, 2022. Ex. E.

The following Monday, on August 22, 2022, counsel responded back that they planned to object to and move to quash the subpoenas by September 7, 2022. Ex. E. Counsel provided no other information, and did not communicate with the United States again until filing EFA and SLI's motions to quash on September 7, 2022. ECF Nos. 151, 152. The United States learned of the bases for the organizations' objections only through the public filings.

## II.     The United States' Subsequent Attempts to Meet and Confer

Upon receiving EFA and SLI's filings, the United States again contacted EFA and SLI's counsel asking to discuss their motions to quash. Ex. E. The parties

spoke on September 8, 2022. On the call, counsel for EFA and SLI confirmed the organizations' position that their First Amendment argument applies to all categories requested in the subpoenas, and to all of their documents. Counsel also confirmed the organizations' position that the attorney-client privilege and work product doctrine apply to all categories requested as well, but counsel did not believe every document was covered by those protections. Counsel noted that they had not yet reviewed all potentially responsive documents.

The United States asked if EFA and SLI would provide a privilege log or any of the categories of information listed in the Court's "Guidelines to Civil Discovery Practice in the Middle District of Alabama" ("Discovery Guidelines") so the United States could understand and assess the claims of privilege. Counsel responded that the organizations would not produce a privilege log, in part because he and his clients felt that the subpoenas were "political harassment."

The United States emphasized in that call that it does not seek the names of EFA or SLI's members or membership lists. The United States also attempted to explain the requested documents' relevance given the organizations' role in drafting the law, and the need to assess whether the law's purported justifications were factually supported. Counsel reiterated that his clients were not in the "mood to compromise." The United States concluded by informing counsel that it was willing to discuss a proposal for a more limited production at any time.

On September 14, 2022, after a closer review of the motions to quash, the United States again contacted counsel for EFA and SLI, and noted that because EFA and SLI confirmed that they drafted or directly assisted in drafting VCAP, the United States was offering to withdraw most of its requests. Specifically, the United States indicated that it would accept a limited production in response to only categories 1, 2, 4, 5, and 6 of the subpoenas—requests focused on the drafting of VCAP and the organizations' communications with legislators and other groups concerning the legislation. Ex. F (Sept. 14-16, 2022 email correspondence between the United States and representatives for EFA and SLI). The United States also offered to accept production on a rolling basis. Ex. F. The United States reiterated that the subpoenas do not seek membership lists or other protected information, and emphasized its willingness to discuss any counter proposals, questions, or other suggestions for ways to limit the issues before the Court. Ex. F. Counsel for EFA and SLI responded that his clients' position had not changed. Ex. F.

Under the Court's Discovery Guidelines, discovery disputes (including between a party and a subpoenaed non-party[2]) should be resolved informally prior to court intervention via a "meaningful exchange" by telephone or in-person meeting. Discovery Guidelines, § I(A). EFA and SLI have made no attempt to

---

[2] *Tyndall Fed. Credit Union v. Darty*, No. 1:17-CV-00111-WC, 2018 WL 3015379, at *2 (M.D. Ala. May 15, 2018) (reminding parties to a motion to quash a subpoena, including a non-party to the litigation, to follow the Middle District of Alabama's Guidelines for Civil Discovery).

resolve their concerns with the United States' subpoenas before or after filing their motions to quash. As reflected in statements and press releases made at the time of their filings and soon after[3]—EFA and SLI's stance is absolute non-cooperation.[4]

## LEGAL STANDARD

The scope of discovery available via a subpoena mirrors the scope of discovery available under Rule 26. *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 218CV01479KOBHNJ, 2019 WL 4686352, at *4 (N.D. Ala. Feb. 12, 2019). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly, and "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26(b)(1) 2000 advisory committee's note. Relevant information "encompasses any matter

---

[3] The Absolute Truth, *Interview with Becky Gerritson – Eagle Forum of Alabama*, Frankspeech.com (Sept. 15, 2022), https://frankspeech.com/video/absolute-truth-interview-becky-gerritson-eagle-forum-alabama (interview with Becky Gerritson of EFA where she stated, with respect to the subpoena, "we are seeing this all across the country. This kinda [sic] . . . lawfare that our government is using against its citizens and it's got to stop and we will continue to stand up against it."); Providence Forum, *Podcast on Important First Amendment Case in Alabama* (Sept. 12, 2022), https://providenceforum.org/blog/podcast-on-important-first-amendment-case-in-alabama/ [https://perma.cc/9MAU-EDTG] (interview with Becky Gerritson of EFA, characterizing the subpoena as intended "to sideline us from what we are doing" and to "weaponize government against citizens"); Eagle Forum of Alabama, *DOJ Issues Outrageous Subpoena to Eagle Forum of AL* (Sept. 7, 2022), https://alabamaeagle.org/2022/09/doj-subpoena-to-efa/ [https://perma.cc/576J-JLFC].

[4] This provides yet another reason why the motions should be denied. *See Parker v. Parker*, 829 F. App'x 389, 392 (11th Cir. 2020) (failure to comply with local rule requiring meet and confer prior to filing a motion is grounds to deny that motion); *Tyndall*, 2018 WL 3015379, at *2.

that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Proctor & Gamble*, 758 F.2d 1545, 1547 (11th Cir. 1985).

A recipient may seek to quash a subpoena if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). To assert a privilege in their motions to quash, EFA and SLI must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see, e.g.*, *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015) (third party failed to meet his burden under Rule 26(b)(5)(A) because he "did not describe the nature of the undisclosed communications in a manner that allowed the plaintiffs and the district court to evaluate his claimed privilege. Nor did he give a reason why the work-product doctrine should apply to all of the communications.").

Offering generalized, blanket assertions of privilege to a third-party subpoena is strongly disfavored. *Johnson*, 661 F. App'x at 547 ("Blanket assertions of privilege before a district court are usually unacceptable . . . Instead,

[a non-party] must present himself with his records for questioning, and as to

. . . *each* record elect to raise or not to raise the defense."); *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 699 (N.D. Ga. 2007) (third-party "cannot assert the work product privilege in a blanket fashion and must provide a detailed list of the documents it claims are covered").

## ARGUMENT

**I.**    **Discovery Concerning VCAP's Origins, Development, and Purported Justifications Is Relevant to the United States' Equal Protection Claim.**

The United States alleges that VCAP violates the Equal Protection Clause by discriminating on the basis of sex and transgender status, subjecting the statute to heightened scrutiny. To survive heightened scrutiny, Defendants must show that the law "serves important governmental objectives" and that "the discriminatory means employed are substantially related to achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 533 (1996). "The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation." *Id.* A classification does not withstand heightened scrutiny when the "alleged objective" differs from its "actual purpose." *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 730 (1982). Plaintiffs are able to introduce evidence of pretext as part of (not independent to) an equal protection claim, especially in cases where defendants dispute that their classification facially discriminates on the basis of sex. *See, e.g.*, *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272, 274-75 (1979). The

equal protection inquiry in this case demands that the origin, purpose, and purported justifications for VCAP be closely examined. If Defendants' proffered justification for VCAP is merely hypothesized, is inconsistent with what the record shows was the purpose for its enactment, or if the legislative history shows that the proffered justification is mere pretext for invidious discrimination, the statute cannot survive heightened scrutiny.[5] Further, while the public justifications offered in support of VCAP have varied, if the proponents of the bill provided the legislature with incorrect or misleading medical information, that too would be relevant. This information is therefore critical to the Court's inquiry on the United States' equal protection claim.

During the preliminary injunction proceedings on May 6, 2022, the Court asked the parties where the bill came from and who wrote the bill. This Court made clear it was not asking about the bill's sponsors. Indeed, in equal protection challenges, courts routinely consider a statute's (or policy's) origins and legislative history as evidence of its purpose, particularly where, as here, a statute is unconstitutional on its face. *See, e.g.*, *Brandt v. Rutledge*, 551 F. Supp. 3d 882, 891 (E.D. Ark. 2021), *aff'd sub nom. Brandt by & through Brandt v. Rutledge*, No. 21-

---

[5]  Additionally, the legislative history of VCAP would be relevant if the Court were to apply rational basis review. *See, e.g.*, *United States Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973) (in equal protection case applying rational basis review, relying on legislative history to strike down an amendment to the federal food stamp program's definition of "household," because it was found to have been enacted to prevent so-called "hippies" and "hippie communes" from participating in the food stamp program).

2875, 47 F.4th __, 2022 WL 3652745, at *3 (8th Cir. Aug. 25, 2022) ("The State's goal in passing [Arkansas law banning gender affirming care] was not to ban a treatment. It was to ban an outcome that the State deems undesirable.").

It is no surprise, therefore, that courts often consider the involvement of third-party actors in the enactment of a law or policy when conducting an equal protection analysis. *See, e.g.*, *Stout by Stout v. Jefferson Co. Bd. of Education*, 882 F.3d 988, 1008 (11th Cir. 2018) (the actions and "statements of those who played a primary role in lobbying for the state action" translated into "official action" and "directly b[ore] on the purpose of the" government action); *Jackson v. City of Auburn, Ala.*, 41 F. Supp. 2d 1300, 1311-12 (M.D. Ala. 1999) (noting that if "a zoning board's response to political pressure amounts to implementation of local residents' discriminatory impulses, then the board's actions may give rise to a cause of action for intentional discrimination.").

For example, in *City of S. Miami v. DeSantis*, 561 F. Supp. 3d 1211, 1271-72 (S.D. Fla. 2021), the court explained that the "specific sequence of events" leading up to a bill's passage, such as legislator statements, meetings, reports, or staff analyses, "can be relevant to show that a legislative body took certain action to effectuate the discriminatory motives of private third parties." The court detailed the interactions between a state bill's sponsors and third-party advocacy groups, such as e-mail exchanges between advocates and legislators that included

"strategic points on how to advocate for the bill, advice on proposed amendments to [the bill], and input on modifications to the bill that would strengthen its effect," and noted such involvement was distinguishable from "random, unsolicited commentary by uninvolved third-party advocacy groups." *Id*. at 1272. The court concluded that "the sequence of events and the pattern of communication between [the bill's] sponsors and [third-party advocates] strongly suggest that the Legislature ratified the racially discriminatory views of [two third-party advocacy organizations] and enacted [the bill] to effectuate those motives." *Id*. (citing *Stout by Stout*, 882 F.3d at 1007-08; *Hallmark Devs., Inc. v. Fulton Cnty., Ga.*, 446 F.3d 1276, 1284 (11th Cir. 2006)).

The extensive legislative involvement described by EFA and SLI in their motions tracks closely to those considered persuasive by the court in *DeSantis*. VCAP's origins and development—including legislators' interactions with third-parties like EFA and SLI—are clearly relevant to the equal protection inquiry demanded in this case and fit squarely within the permissible scope of discovery.

## II.   <u>EFA and SLI Fail to Meet Their Burden to Quash the Subpoenas.</u>

### A.   <u>EFA and SLI Fail to Justify their First Amendment Objections.</u>

In their motions to quash, EFA and SLI evoke freedom of speech, assembly, exercise of religion, and petition to the government, but do not identify which requests are implicated, nor which specific documents or categories of documents

are so protected. EFA and SLI's position appears to be that any amount of cooperation with the subpoenas infringes on their protected First Amendment activities. This argument fails. Materials such as those sought by the United States are routinely ordered to be produced despite First Amendment privilege claims, and EFA and SLI fail to justify their objections.

Generally, "[t]he First Amendment does not prohibit discovery into legitimate, relevant matters, even when such discovery may produce a chilling effect on a party's First Amendment rights." *United States v. Duke Energy Corp.*, 218 F.R.D 468, 473 (M.D.N.C. 2003) (citing *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 53 (4th Cir. 1981)). "As the Supreme Court made clear [in the seminal First Amendment case of *Herbert v. Lando*, 441 U.S. 153 (1979)] . . . the answer is not to suppress such evidence, but rather to exercise judicial discretion by providing protection short of suppression." *Id.*

The only two cases cited by EFA and SLI that address the intersection between the First Amendment and discovery, *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449 (1958) and *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), dealt with the disclosure of members' names, addresses, and internal communications concerning strategy and messaging, not communications with third parties or lobbying materials provided to the government. As noted above, the United States does not seek information on EFA or SLI's members, rendering the

Supreme Court's analysis in *Patterson* inapplicable. EFA and SLI point to no requests that could be interpreted as seeking this information. Moreover, the United States does not oppose the redaction of personally identifiable information, which EFA and SLI could have raised in a meet and confer.

*Perry* is also inapplicable here. There, the court determined that supporters of a California state proposition had established a prima facie case showing that disclosure of their "internal campaign communications concerning strategy and messaging" would result in infringement of their members' associational rights. *Perry*, 591 F.3d at 1153, 1163. But, similar to *Patterson*, "*Perry* and its progeny have all dealt with the disclosure of either the identity of association members or internal communications—not communications with third parties, let alone public officials." *Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2013 WL 12098752, at *3 (D. Ariz. Dec. 11, 2013); *see also, e.g.*, *In re Anonymous Online Speakers*, 661 F.3d 1168, 1174 (9th Cir. 2011) (stating that *Perry* "was limited to private internal campaign communications concerning the formulation of campaign strategies and messages"). The United States is not seeking such internal communications or any other proprietary information like membership lists that could reasonably be perceived as chilling members' activities.

There is no "law that protects from public view communications with public officials in their official capacity about a matter of public concern." *Sol*, 2013 WL

12098752, at *2. "[W]hile citizens plainly have a right to 'communicate with public officials on a matter of public concern,' that does not mean they have a right to protect these communications from public view." *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, No. A-15-CV-134-RP, 2016 WL 5922315, at *7 (W.D. Tex. Oct. 11, 2016). Courts therefore reject the argument "that there is a First Amendment right not only to lobby the government, but to do so secretly." *Id.*

This is not an instance of everyday Alabamians petitioning their elected representatives. EFA engages in lobbying and is incorporated as a 501(c)(4) registered organization. ECF No. 151-3, at ¶ 3. Every declarant for EFA is a registered lobbyist.[6] SLI is a 501(c)(3) registered organization and communicated with multiple legislators on medical treatments for minors with gender dysphoria upon invitation. ECF No. 152-3, at ¶¶ 2-5. Both acknowledge that they participated in drafting VCAP (*see* ECF Nos. 151, at ¶ 2; 152, at ¶ 4), yet now claim a veil of secrecy over those activities. These two interest groups are not akin to everyday, private citizens contacting their elected representatives. By their own admission, they wrote the text of Alabama state law, something that goes further than mere

---

[6] Alabama Ethics Commission, *Lobbyist Registration Statement* (Jan. 13, 2022), https://ethics.alabama.gov/search/ViewReports.aspx?lid=13778&rpt=rptLobbyistRegistration [https://perma.cc/NH58-G46Q] (Lobbyist Registration Statement of Becky Gerritson for EFA); Alabama Ethics Commission, *Lobbyist Registration Statement* (Jan. 14, 2022), https://ethics.alabama.gov/search/ViewReports.aspx?lid=14081&rpt=rptLobbyistRegistration [https://perma.cc/ANR8-7NRJ] (Lobbyist Registration Statement of Margaret Clarke for EFA); Alabama Ethics Commission, *Lobbyist Registration Statement* (Jan. 3, 2022).

lobbying, of which courts routinely require disclosure. *See, e.g.*, *Wal-Mart Stores, Inc.*, 2016 WL 5922315 at *5-6 ("the Court's research has located many cases where non-parties have been compelled to produce lobbying conversations").[7]

EFA and SLI offer no authority justifying a blanket First Amendment privilege covering any and all requests and documents. Where courts have considered infringement of the First Amendment right to association as a valid discovery objection, the individual or group must show "with an 'objectively reasonable probability'—that 'compelled disclosure will chill associational rights.'" *Flynn v. Square One Distribution, Inc.*, No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673, at *2 (M.D. Fla. May 25, 2016). "The movant bears the burden of making this prima facie showing." *Id.* "[T]o show an 'objectively reasonable probability,' a movant must go beyond conclusory statements and demonstrate through proofs 'a basis for the assertions made.'" *Id.*

In cases where a party has met its burden to prove a "First Amendment privilege," courts consider far more both in terms of quantity and detail than that provided by EFA and SLI. *Id.* at *3 (citing cases where organizations submitted "at least 6 declarations from staff and members," "declarations from several

---

[7] *See also, e.g.*, *Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021) (ordering third-party to comply with subpoena seeking "Documents and Communications reflecting, discussing, or otherwise relating to any rationale(s) for enacting [the state bill]," including documents and communications with the Governor and any member of the state legislature); *Duke Energy Corp.*, 218 F.R.D. at 472 (denying third party's motion for a protective order over communications with government agency in rulemaking proceedings).

individuals," "specific evidence of hostility," "multiple affidavits," "two letters, three declarations, deposition testimony from two witnesses, and minutes," and "three declarations by [organization's] members, detailing the adverse effects of the summons on [the organization's] organizational and fundraising activities."). Here, EFA and SLI fail to show a credible fear of harassment if the subpoenas are not quashed because the United States does not seek any members' names or information. Declarants, who are EFA and SLI leadership, already revealed their identities through their motion and public statements. And their declarations simply make assertions without evidence. Such self-serving motions are not enough. *See Duke Energy Corp.*, 218 F.R.D. at 473 (organization's "claim that enforcement of the discovery order could likely cause current members to withdraw is conclusory. There is no showing that this would be as a result of fear that exposure of their ideas or beliefs could lead to some type of harm, harassment, or reprisal. Self-serving declarations are not sufficient.").

Additionally, EFA and SLI assert this privilege generally and untethered to any particular request or category of documents, thus "fail[ing] to demonstrate how disclosure of the *specific* information [requested]—[the organization's] external communications with government officials related to [a] Senate Bill []—would subject its members to 'threats, harassment, or reprisals' from the Government or private individuals." *Fla. State Conf. of Branches & Youth Units of NAACP*, 568 F.

Supp. 3d at 1307 (denying organization's First Amendment privilege claim in response to a third-party subpoena).

Even if this Court follows the framework of *Perry* as EFA and SLA argue, and finds that EFA and SLI have met their burden of showing infringement on their members' associational rights, the United States has already "demonstrated an interest in obtaining the [information] it seeks which is sufficient to justify the deterrent effect [.]" *Perry*, 591 F.3d at 1161. The United States has shown that information on VCAP's origins and development is critical to the equal protection inquiry demanded in this case. *See* Section I, *supra*. And as SLI confirms, "[t]he Alabama Legislature has no formal reporting or record keeping system," making alternative options for obtaining this information unlikely. ECF No. 152-3 ¶ 7. The United States' interest in this discovery would thus overcome EFA and SLI's failed First Amendment objections even if they were legitimate.[8]

### B. EFA and SLI Provide No Information to Assess Their Claims of Attorney-Client Privilege and Work Product.

EFA and SLI object to producing potentially responsive documents to the

---

[8] For these same reasons, the United States has demonstrated an interest in the information that outweighs any claim of undue burden by EFA. *Sullivan v. PJ United, Inc.*, No. 7:13-CV-01275-LSC, 2017 WL 11675693, at *5 (N.D. Ala. Dec. 15, 2017) ("in deciding whether a subpoena imposes an undue burden courts balance 'the requesting party's need for the discovery against the burden imposed on the subpoenaed party.'"). SLI confirmed that production was not burdensome. ECF No. 152-3 ¶ 6 ("The problem is not producing documents, but the basis for doing so."). And the organizations rejected the United States' attempt to limit any potential burden by offering to accept a rolling production.

United States based on vague assertions of attorney-client privilege and work product. *See* ECF No. 151, at ¶ 7 ("a number of the documents sought by the non-party subpoena are covered or potentially covered by the attorney-client and/or work product privileges") (citing Declaration of Margaret S. Clarke); ECF No. 151-4 (Declaration of Margaret S. Clarke), at ¶ 7 ("I consider **many** of these documents to be my work product and covered by the attorney-client and work product privileges.") (emphasis added); ECF No. 152, at ¶ 8 (same language and citing generally to the Declaration of A. Eric Johnston).

The United States agrees that EFA and SLI need not produce materials covered by the attorney-client and work product privileges, but EFA and SLI must provide information about what is being withheld and on what basis. EFA and SLI have not provided any information to explain or justify their claims of these privileges. The party invoking the attorney-client privilege "bears the burden of proving its existence." *Steele v. Birmingham Jefferson Civic Ctr. Auth.*, No. 2:17-CV-02139-SGC, 2019 WL 12447342, at *3 (N.D. Ala. Sept. 12, 2019). "The elements of the attorney-client privilege are: (1) Where legal service advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived." *E.E.O.C. v. DiMare*

*Ruskin, Inc.*, No. 2:11-CV-158-FTM-99, 2012 WL 12067868, at *6 (M.D. Fla. Feb. 15, 2012). Similarly, "the party invoking the work-product privilege bears the burden of establishing that the privilege applies." *Johnson*, 611 F. App'x at 547. The work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). It is impossible to assess the merits of EFA or SLI's privilege claims without any of this information.

The United States requested that EFA and SLI produce a privilege log, or otherwise provide any detail regarding their claims of privilege, as described in the Court's Discovery Guidelines, § I(J). Counsel for EFA and SLI declined, asserting that doing so was not necessary. When asked if they claim these privileges with respect to every request and every document, counsel admitted that the privileges do not apply to every document. *See* Background, Section II, *supra*. When asked for basic details, such as dates or number of documents implicated, counsel noted that he had not reviewed the documents and did not have that information.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny EFA and SLI's motions to quash the subpoenas. In the alternative, the United States requests that the Court order the parties to meet and confer about the subpoenas with the benefit of a privilege log.

Dated: September 21, 2022

Respectfully submitted,

SANDRA J. STEWART
United States Attorney
Middle District of Alabama

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

PRIM F. ESCALONA
United States Attorney
Northern District of Alabama

JOHN POWERS (DC Bar No. 1024831)
Counsel to the Assistant Attorney General
Civil Rights Division

LANE H. WOODKE
Chief, Civil Division
Northern District of Alabama

CHRISTINE STONEMAN
Chief, Federal Coordination and Compliance
Section

 */s/ Jason R. Cheek*
JASON R. CHEEK
Deputy Chief, Civil Division
MARGARET L. MARSHALL
Assistant U.S. Attorney
U.S. Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, AL 35203
Tel.: (205) 244-2104
Jason.Cheek@usdoj.gov
Margaret.Marshall@usdoj.gov

COTY MONTAG (DC Bar No. 498357)
Deputy Chief, Federal Coordination and
Compliance Section

 */s/ Kaitlin Toyama*
ALYSSA C. LAREAU (DC Bar No. 494881)
RENEE WILLIAMS (CA Bar No. 284855)
KAITLIN TOYAMA (CA Bar No. 318993)
Trial Attorneys
United States Department of Justice
Civil Rights Division
Federal Coordination and Compliance
Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 305-2994
Alyssa.Lareau@usdoj.gov
Renee.Williams3@usdoj.gov
Kaitlin.Toyama@usdoj.gov

STEPHEN D. WADSWORTH
Assistant United States Attorney
U.S. Attorney's Office
Middle District of Alabama
Post Office Box 197
Montgomery, AL 36101-0197
Tel.: (334) 223-7280
Stephen.Wadsworth@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Respectfully submitted,

<u>s/ *Kaitlin Toyama*</u>
Trial Attorney
U.S. Department of Justice

22