**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION**

| | | |
|---|---|---|
| **BRIANNA BOE, et al.;** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **UNITED STATES OF** | ) | **Civil Action No.** |
| **AMERICA,** | ) | **2:22-cv-00184-LCB** |
| | ) | |
| **Plaintiff-Intervenor,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **STEVE MARSHALL, in his** | ) | |
| **official capacity as Attorney** | ) | |
| **General of the State of Alabama;** | ) | |
| **et al.;** | ) | |
| | ) | |
| **Defendants.** | ) | |

**NON-PARTIES EAGLE FORUM OF ALABAMA'S AND SOUTHEAST
LAW INSTITUTE'S REPLY TO THE U.S.'S RESPONSE IN OPPOSITION
TO THEIR OBJECTIONS TO AND MOTIONS TO QUASH DOCUMENT
SUBPOENA, OR IN THE ALTERNATIVE MOTIONS TO MODIFY
SUBPOENA**

Eagle Forum of Alabama ("EFA") and Southeast Law Institute ("SLI"), which

are not parties to this case, hereby reply to the United States' Response in Opposition

(Doc. 168) to EFA's and SLI's motions to quash (or in the alternative, to modify)

the non-party document subpoenas issued by the U.S. Attorney's office (Docs. 151

and 152).

**I.** **The DOJ's "meet and confer" procedural argument is contrary to the facts and law and ignores the communications between counsel as well as the nature and scope of EFA's and SLI's substantive objections to the subpoenas.**

The DOJ, apparently amazed that EFA and SLI stand on principle and oppose the subpoenas <u>in their entirety</u> on the First Amendment privilege and other grounds set out in the Motions to Quash, spends substantial energy in its opposition brief on a procedural argument that EFA and SLI failed to properly "meet and confer" with the DOJ and, thus, that the motions to quash are "premature."  This argument is a "red herring" and without merit.

As Exhibit E to the DOJ's own filing shows (Doc. 168-5), on Friday, August 19, 2022 (just over a week after EFA and SLI first received copies of the subpoenas by FedEx and just four days after actual service of the subpoenas), a lawyer for EFA and SLI (attorney Mike Hurst, a partner of the undersigned) spoke with Asst. U.S. Attorney Jason Cheek and received an extension of EFA's and SLI's deadlines to respond to the subpoenas.  Subsequent emails that day and the following Monday clarified that EFA and SLI intended to object to and move to quash the subpoenas <u>in their entirety</u>.  Mr. Cheek did not ask what EFA's and SLI's grounds would be for their objections and motions to quash (apparently already generally understanding what those would be), nor did he ask at that time to discuss same.

As per the agreed-upon deadline extension, EFA and SLI filed their Objections and Motions to Quash the subpoenas on September 7, 2022. The motions were clear that both EFA and SLI object to and are seeking to have the subpoenas quashed in their entirety, on two basic grounds common to both and a third ground for EFA: (1) the documents sought from these non-parties are neither relevant nor proportional to the issues in this lawsuit and, thus, not within the scope of generally proper discovery under Fed. R. Civ. P. 26(b)(1); (2) even assuming <u>arguendo</u> that some of the documents sought might have some potential marginal relevance and proportionality to this case, discovery from these non-parties is prohibited by First Amendment privilege; and (3) compliance with this subpoena would impose an undue burden on EFA in violation of Fed. R. Civ. P. 45(d)(1) and 45(d)(3)(iv). The motions further asserted that some of the documents responsive to the subpoenas would also be covered or potentially covered by attorney-client and work product privileges.

On September 8, 2022, Mr. Cheek along with one of his numerous co-counsel from the DOJ, Kaitlin Toyama, had a telephone conference with the undersigned to discuss EFA's and SLI's objections and motions to quash. Thus, contrary to DOJ's present argument, <u>a "meet and confer" conference</u> (to the extent one was even required of these non-parties at this stage, which EFA and SLI do not concede) <u>has</u>

4

in fact already been held.  The conference was cordial, but not productive.  Without

making any specific proposal, Mr. Cheek asked if EFA and SLI would agree to

produce any documents responsive to the eleven (11) categories of documents

sought in the subpoena.  The undersigned responded that he would pass along any

to EFA and SLI any specific proposal that the DOJ might have, but that he was not

optimistic that there was room or a basis to compromise given the important First

Amendment privilege issues and the other significant problems (lack of relevance,

undue burden on EFA as a non-party,[1]  attorney-client and work product privileges)

with the subpoenas and EFA/SLI's position that the subpoenas should be quashed in

their entirety.  Mr. Cheek declined to make any specific compromise proposal at that

time.

During this "meet and confer" conference Ms. Toyama inquired about EFA

and SLI's attorney-client privilege assertions and asked whether EFA and SLI would

---

[1]     In Progressive Emu Inc. v. Nutrition & Fitness Inc., 785 F. App'x 622 (11th Cir. 2019), the
Eleventh Circuit upheld sanctions against a party which (like the DOJ here) had issued a
unreasonable document subpoena that would have imposed an undue burden on the responding
party.  Pertinent to the "meet and confer" (non-)issue now raised by the DOJ, the Eleventh Circuit
held as follows:  "Anderson Weidner maintains that Defendant's failure to move the court for a
show cause order or consult with them to narrow Plaintiff's subpoena before filing its motion to
quash 'alone precludes the district court's grant of attorneys' fees.' But Federal Rule of Civil
Procedure 45 imposes no such obligation.  Instead, it requires those serving a subpoena to take
reasonable steps to avoid imposing undue burden and expense on the recipient of the subpoena
and authorizes sanctions on a party or attorney who fails to comply.  Fed. R. Civ. P. 45(d)(1). Rule
45 leaves no room for a party or attorney to issue an untimely, facially overbroad and unduly
burdensome subpoena and expect to work out the details later…."  Id. at 629 n. 10.

agree to produce a privilege log.  The undersigned declined, stating that he knew of no reason why EFA and SLI (particularly as non-parties) should have to produce a privilege log in a case like this where they had clearly asserted privilege to <u>every</u> potentially responsive document and had already described the nature of the documents and the basis (First Amendment) for that overall privilege assertion as well as the basis for additional privilege assertions (attorney-client and work product privilege) as to some of the documents.[2]  Ms. Toyama had no response to that, as she and Mr. Cheek clearly understood and still understand the nature of the documents to which EFA and SLI are claiming First Amendment (as well as attorney-client and work product) privilege and the basis of those privilege assertions, as well as the lack of relevance objection and EFA's undue burden objection.  Thus, the DOJ already had the description of the privilege assertions contemplated by Fed. R. Civ. P. 45(e)(2)(A).

In addition to the more mundane legal discussion between lawyers described above, during the "meet and confer" conference the undersigned explained to Mr. Cheek and Ms. Toyama that one of the reasons why EFA, SLI, and the undersigned

---

[2]      Indeed, given the descriptions of the voluminous documents at issue in the Declarations of Margaret Clarke and Becky Gerritson (Docs. 151-4 and 151-3) and the lack of relevance and First Amendment privilege objections which EFA has asserted, to be required to produce a detailed privilege log such as Ms. Toyama was inquiring about would <u>itself</u> be an undue and completely unnecessary burden on a non-party (particularly at this stage), which is one of the bases for EFA's objection to the subpoena to begin with under Fed. R. Civ. P. 45(d)(3)(iv).

felt so strongly about their position (underscoring the importance of the First Amendment privilege assertion) was that they viewed the subpoenas as a form of political harassment from the DOJ.  Notably, neither Mr. Cheek nor Ms. Toyama even attempted to deny this.

On September 14, 2022, Mr. Cheek again emailed the undersigned and said that after further review the DOJ was "willing" to narrow the categories of documents sought in both subpoenas to Request Nos. 1, 2, 4, 5, and 6.  However, as the undersigned pointed out in his reply email, all of the numerous problems with the subpoenas that were outlined in the motions to quash – including but certainly not limited to the First Amendment privilege issues – still apply to the subpoenas even as narrowed to the topics listed in Mr. Cheek's email.  (Doc. 168-6).

The DOJ's procedural complaint that EFA and SLI failed to have a "meaningful exchange" with it about the subpoenas is thus refuted by the facts. Indeed, the DOJ's complaint is predicated on a disrespect of EFA's and SLI's First Amendment rights, a disregard of the undue burden compliance with the subpoenas would place on EFA as a non-party volunteer-driven organization (particularly given the lack of relevance and lack of proportionality of EFA's documents to this case), and the erroneous premise that EFA and SLI somehow had a duty to disregard principle and instead roll over and compromise just because the DOJ was demanding

it.  To the contrary, no reasonable "compromise" was or is possible, and none is required.

Further, the DOJ's argument ignores the alternative relief which EFA and SLI sought to the extent that the Court does not quash the subpoenas in their entirety (Doc. 151, para. 8; Doc. 152, para. 9).  No privilege log concerning to which individual documents EFA and SLI would claim attorney-client or work product privilege is necessary or should be required before this Court resolves the overarching issues of First Amendment privilege, relevance and proportionality of the documents sought, and undue burden on EFA as a non-party.[3]  Specifically, the first step should be for the Court to resolve whether <u>any</u> of the eleven (11) categories of the documents sought by the subpoenas are generally discoverable, particularly from non-parties, and survive EFA's and SLI's First Amendment privilege assertions as well as EFA's undue burden objection and, if so, which categories.

## II.   <u>The DOJ does not even attempt to show how most of the documents sought by the non-party subpoenas would be relevant and proportional to the issues in this case; in fact, none of them are.</u>

---

[3]      The DOJ cites <u>Tyndall Fed. Credit Union v. Darty</u>, No. 1:17-CV-00111-WC, 2018 WL 3015379, at * 2 (M.D. Ala. 2018), for the proposition that the court there "remind[ed] parties to a motion to quash a subpoena, including a non-party to the litigation, to follow [the Guidelines]." Opposition, at p. 6, n.2.  However, the DOJ fails to acknowledge that Magistrate Capel's reminder to follow the Guidelines in that case was only <u>after</u> a motion to quash had been filed (by a <u>party</u>, not by the non-party) and denied, and, further, that the reminder to the non-parties after the initial motion to quash had been denied was <u>only with respect to the non-party's invocation of attorney-client and work product privileges</u>.  Obviously, no such initial ruling on EFA's and SLI's motions to quash has been entered here.

Contrary to the DOJ's laughable characterization of the non-party document subpoenas before the Court as "narrowly tailored" (Doc. 168, p. 1) , the subpoenas are in fact stunningly broad and purport to require production from EFA and SLI of eleven (11) broad categories of documents and information, over a multiple-year period from January 1, 2017, through the present.  For the Court's convenience, the eleven categories of EFA's and SLI's documents since 2017 which the DOJ seeks are quoted here:

> 1. Any draft legislation, proposed legislation, or model legislation relating to VCAP, SB 184, HB 266, or their predecessor bills that [EFA or SLI] wrote, assisted in writing, provided feedback on, or reviewed.
>
> 2. Any materials considered by [EFA or SLI] in preparing legislation, draft legislation, proposed legislation, or model legislation relating to VCAP, SB 184, HB 266, or their predecessor bills, including (1) any model or sample legislation from other third-party organizations or jurisdictions; and (2) medical studies, opinions, or evidence.
>
> 3. Any documents concerning [EFA's or SLI's] legislative or policy goals, initiatives, and/or strategies relating to medical care or treatment of transgender minors, or minors with gender dysphoria.
>
> 4. Any documents provided to the Alabama State Legislature or any employee or member thereof in support of VCAP, SB 184, HB 266, or any predecessor bills, including written testimony, letters, emails, draft legislation, model legislation, or proposed legislation, reports, summaries, analyses, fact sheets, and/or talking points.
>
> 5. Any communications between [EFA or SLI] and any employee, agent, assign, or member of the Alabama State Legislature, Alabama Governor's office, Alabama Lieutenant Governor's office, Alabama Attorney General's office, or any employee, agent, or assign of a District Attorney's office within Alabama concerning VCAP, SB 184, HB 266, and/or any predecessor bills

6. Any communications between [EFA or SLI] and any other nongovernmental organization, consultant, or lobbyist concerning VCAP, SB 184, HB 266, and/or any predecessor bills.

7. Any records or minutes of meetings concerning VCAP, SB 184, HB 266, and/or any predecessor bills.

8. Any polling or public opinion data related to or concerning VCAP, SB 184, HB 266, predecessor bills, and/or legislation relating to medical care or treatment for transgender minors or youth.

9. Any records or documents relating to presentations, videos, interviews, and/or speeches [EFA or SLI] representatives have given or participated in regarding medical care or treatment related to gender identity, transgender minors or youth, "trans-identifying" minors or youth, or minors or youth with gender dysphoria.

10. Any mass letters, newsletters, or emails that [EFA or SLI] sent to members of a mailing or email list related to or concerning VCAP, SB 184, HB 266, and/or any predecessor bills.[4]

11. Any social media postings that EFA or SLI] issued concerning VCAP, SB 184, HB 266, and/or any predecessor bills.

Obviously, these multi-year, multi-category document subpoenas are **not** in fact "narrowly tailored" for the purpose of "understanding the origins and development" of Alabama's 2022 VCAP statute as the DOJ asserts (which stated purpose itself is irrelevant to the issues in this case, as discussed below). Rather, the subpoenas in fact purport to demand EFA's and SLI's files and communications -- not only communications to the legislators, but also communications to the public and communications to EFA membership -- referencing their concerns generally

---

[4]     The DOJ protests that in its communications with the undersigned following the filing of the motions to quash that it clarified that it does not seek the names of EFA or SLI's members or membership lists. Yet topic number 10 of the subpoenas themselves suggested otherwise.

about the permanent and damaging effects of gender-altering medical treatment to minors.  Indeed, as noted above, prior to filing its response in opposition to the motions to quash, the DOJ had already conceded the overbreadth of its subpoenas by narrowing them to document category nos. 1, 2, 4, 5, and 6.  Even as narrowed, however, insurmountable problems with the subpoenas remain.

In its opposition brief, the DOJ does not attempt to specifically address or justify the relevance of any of the underlined individual document categories in the 11-part subpoenas, including document category nos. 1, 2, 4, 5, or 6.  Instead, the DOJ argues that the Alabama Legislature's underlined subjective intent in passing the VCAP statute (i.e., whether the text of the statute was merely a pretext by the Legislature for "invidious discrimination") is relevant to the DOJ's Equal Protection claim, and that documents reflecting legislators' communications with or information received from private citizens or organizations such as EFA and SLI concerning the proposed legislation should therefore be discoverable.[5]  In fact, even if those relevance arguments by the DOJ were correct (which they are not), only document category nos. 4 and 5 of the subpoenas could even pass the initial "smell test" of being remotely potentially

---

[5]    The DOJ's opposition brief also completely ignores the underlined proportionality requirement of Rule 26 and specifically ignores the law discussed in EFA's and SLI's motions to quash, fn. 2 (quoting Va. Dep't of Corrs. v. Jordan, 921 F.3d 180, 189 (4th Cir. 2019) and In re Pub. Offering PLE Antitrust Litig., 427 F.3d 49, 53 (1st Cir. 2005)) that the test of proportionality of the proposed discovery from non-parties to the litigation is more demanding than discovery propounded to parties.

discoverable (not even addressing for the moment the weighty First Amendment privilege issues involved here and the improper undue burden even compliance with just those two document categories would place on EFA).[6]

In fact, however, not even document category nos. 4 and 5 of the subpoenas can pass the relevance test even if the DOJ was requesting them directly from the State – much less the proportionality test from these non-parties.  First, EFA and SLI are in agreement with the Defendants' extensive briefing already before the Court on why legislative intent is irrelevant to this case in Defendants' Motion for Partial Judgment on the United States' Pleadings (Doc. 171), and, specifically why the non-party discovery which the DOJ seeks from EFA and SLI is improper as discussed in Defendants' Brief (Doc. 158-1) in support of EFA's and SLI's Motions to Quash.  EFA and SLI are also in agreement with the discussion in the *amicus curiae* briefs (Docs. 164-1 and 165-1) in favor of their motions to quash which were recently filed by over 50 groups (including private organizations and citizens as

---

[6]      For example, regarding document category no. 1 in the subpoenas, how could just any draft legislation existing in the files of EFA or SLI that was not provided to the Alabama Legislature meet even the DOJ's erroneous theory of relevance?  Similarly, on category no. 2, any materials considered by EFA and SLI in drafting proposed legislation could never be relevant even under the DOJ's theory.  Similarly, on category no. 6, how could communications between EFA and other non-governmental entities be relevant even under the DOJ's present theory?  The DOJ does not address those questions, because the answer is obvious.  Such documents are not and could never be relevant to this case.  On the other categories of documents in the subpoenas (nos. 3, 7, 8, 9, 10, and 11) which the DOJ has already abandoned, the lack of any relevant connection between the documents which the DOJ demanded and any legitimate issue in this case is even more apparent.

well as six of the seven U.S. Congressmen from Alabama), including the discussion in those *amicus* briefs why the DOJ's purported justification for these subpoenas of legislative intent is irrelevant to this case.  EFA and SLI would refer the Court to those excellent discussions.  EFA and SLI would further respond to the DOJ's relevance argument as follows.

As relied on and quoted in EFA's and SLI's motions to quash, the U.S. Supreme Court very recently once again rebuffed "legislative intent" arguments such as asserted by the DOJ here in Dobbs v. Jackson Women's Health Organization, 142 S. Ct. 2228 (2022):

> This Court has long disfavored arguments based on alleged legislative motives ….the Court has recognized that inquiries into legislative motives are "a hazardous matter". …  Even when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to a legislative body as a whole. "What motivates one legislator to make a speech about his statute is not necessarily what motivates scores of others to enact it."

Dobbs, at 2255-56.  Tellingly, the DOJ completely ignores Dobbs in its opposition brief.[7]

---

[7]     The DOJ makes much of an apparently off-handed question that the Court posed to the parties during Day 3 of the preliminary injunction proceedings back in May when the Court (after first saying that he wouldn't be offended if no one wanted to address it), asked where the bill resulting in VCAP came from and who wrote it.  However, contrary to the DOJ's statement in its opposition brief (p. 2) that at that time no party had an answer to those questions, in fact the Court's question was quickly and accurately answered at the hearing by Mr. LaCour on behalf of the State: "Your Honor, it was a bill introduced into the Legislature, considered by the Legislature, enacted, so this is the work product of the Legislature."  Trans., p. 251.

Further, when the language of a law in question is clear, as in the Alabama VCAP statute made the basis of this lawsuit, the Supreme Court has been clear that there is no reason to look back at ambiguous legislative history.  E.g., Azar v. Allina Health Services, __ U.S. ___, 139 S. Ct. 1804, 1814, 204 L. Ed. 2d 139 (2019) ("'But legislative history is not the law.'  …  And even those of us who believe that clear legislative history can 'illuminate ambiguous text' won't allow 'ambiguous legislative history to muddy clear statutory language.'") (internal citation omitted).[8]

Notwithstanding the above, the DOJ relies on Stout by Stout v. Jefferson County Board of Education, 88 F. 3d 988 (11th Cir. 2018) and the district court case of City of South Miami v. DeSantis, 561 F. Supp. 3d 1211, 1271-72 (S.D. Fla. 2021) to argue that documents provided to the Legislature or individual legislators from EFA and SLI in relation to the VCAP bill are relevant and discoverable.  Stout was an Equal Protection case challenging the City of Gardendale's right to establish a separate public school system.  The legislation was facially neutral on racial grounds.

---

[8]    Accord, e.g., CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001) ("We have also said just as frequently that '[w]hen the import of words Congress has used is clear ... we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.'") (internal citations omitted).  Since ambiguous legislative history would not be relevant to determine the intent behind the plain language of a statute, it is not surprising that evidence of a private citizen's view of the law would be even less relevant to the constitutionality question.  See, e.g., Alliance of Auto. Mfr., Inc. v. Julie L. Jones, 2013 WL 4838764, * 4 (N.D. Fla. Sept. 11, 2013) (discovery from non-parties objecting on First Amendment privilege was denied and noting that "[q]uestions of constitutionality … are not decided upon review of … a citizen's view of the law or the like.")

Similarly, <u>South Miami</u> involved anti-"sanctuary city" legislation that was race-neutral on its face.  The difference between <u>Stout</u> and the case at bar is that in <u>Stout</u> there was evidence of a hidden (but unquestionably constitutionally impermissible) unstated agenda behind the legislation, *viz.*, to create a new public school system with fewer black school children.  Similarly, in <u>South Miami</u>, the district court found that there was evidence that the legislation was racially motivated, i.e. obviously unconstitutional if true.

By contrast, and far from a pretext, the Alabama Legislature in enacting VCAP was quite plain in its legislative findings stated <u>in the statute</u> (section 2, consisting of 16 paragraphs) that gender-altering treatments to minors result in many harmful and permanent effects (physical as well as psychological) to those minors, that a substantial majority of minors with gender dysphoria outgrow that discordance and eventually identify with their biological gender, and that minors are unable to comprehend and fully appreciate the risks and life implications from the use of puberty blockers, cross-sex hormones, and surgical procedures.  "For these reasons," section 2(16) of the statute plainly says, "the decision to pursue a course of hormonal and surgical interventions to address a discordance between the individual's sex and sense of identity should not be presented to or determined for minors who are

incapable of comprehending the negative implications and life-course difficulties attending to these interventions."

Unlike Stout and South Miami, the question here is not whether the Alabama Legislature passed facially-neutral legislation with the secret intent and belief that it would have the effect of reducing or eliminating gender-altering medications or procedures on minors.  To the contrary, the VCAP statute is clear on its face in prohibiting those medications and procedures.  The only question is whether the Legislature's plainly-stated prohibitions are unconstitutional.

The DOJ also cites Judge Thompson's opinion in Jackson v. City of Auburn, Ala., 41 F. Supp. 2d 1300, 1311-12 (M.D. Ala. 1999) for the proposition that "if a zoning board's response to political pressure amounts to implementation of local residents' discriminatory impulses, then the board's actions may give rise to a cause of action for intentional discrimination."  Opposition, p. 11.  Judge Thompson in City of Auburn was addressing the substantive merits of the case (and granted the City's motion for summary judgment and thus rejected the plaintiffs' discrimination claim there) and not whether discovery from a non-party was relevant or proportional to the case.  Of note, however, in addressing the merits, Judge Thompson explained that under this theory one of the elements plaintiffs would have to prove (but did not prove) is that the decision-making body acted for the "sole

purpose" of effectuating the desires of private citizens.  Id. at 1312 (quoting U.S. v. Yonkers, 837 F.2d 1181, 1225 (2d Cir. 1987)).  The Second Circuit's "sole purpose" test from Yonkers was later adopted by the Eleventh Circuit in Hallmark Devs., Inc. v. Fulton Cty., Ga., 466 F.3d 1276, 1284 (11th Cir. 2006).  Similarly, in this case there is not even an allegation – much less a shred of evidence – that the "sole purpose" of the Alabama Legislature in enacting VCAP was to effectuate the desires of EFA or its members.

Further, the DOJ asserts that the VCAP statute is unconstitutional "on its face."  DOJ opposition, p. 10.[9]  If that is true, then the DOJ does not need any discovery in the case at all, much less five years' worth of documents from volunteer-driven non-party organizations.  Indeed, the private plaintiffs in this case on whose behalf the DOJ purportedly intervened have already acknowledged to the Eleventh Circuit that "[t]here is no need to do a pretext analysis; the [Legislature's]

---

[9]     The DOJ has also asserted to the Eleventh Circuit in the appeal from the preliminary injunction order that the VCAP statute "facially" discriminates on the basis of sex and transgender status.  Brief for the United States as Intervenor-Appellee to the Eleventh Circuit (filed 8/10/22), pp. 2, 28, 33 (n. 14).  The DOJ also cited public comments from Alabama Rep. Wes Allen (a sponsor of the VCAP bill) and Governor Kay Ivey concerning VCAP which the DOJ characterizes as showing the Legislature's and Governor's "moral disapproval of transgender persons and hostility toward the medical needs of transgender youth."  Brief for the United States as Intervenor-Appellee to the Eleventh Circuit (filed 8/10/22), pp. 48-49.  While EFA and SLI disagree that the cited comments from Rep. Allan and Governor Ivey indicate a constitutionally impermissible purpose behind VCAP, the DOJ's reliance on those direct statements from public officials further shows that the DOJ does not need and is not entitled to documents from private citizen groups such as EFA and SLI who have no lawmaking authority whatsoever.

intent is clear on the face of the Act."[10] While obviously the State of Alabama defendants in this case (as do these non-parties) strongly disagree with the position of the DOJ and the private plaintiffs on whether VCAP is unconstitutional, the point here is that DOJ's asserted reason for the proposed discovery to these non-parties – to find evidence of a "pretext" on the part of the Alabama Legislature – is bogus.

### III.   EFA's and SLI's documents potentially responsive to the non-party subpoenas are protected by First Amendment privilege.

In addition to the First Amendment privilege discussion in their Motions to Quash, EFA and SLI again are in agreement with the Defendants' Brief (Doc. 158-1) in support of EFA's and SLI's Motions to Quash which addresses the First Amendment issue and other incurable defects with these subpoenas.  EFA and SLI are also in agreement with the extensive discussion of the First Amendment issues at stake here in the *amicus curiae* briefs (Docs. 164-1 and 165-1) which were recently filed in favor of their motions to quash.  EFA and SLI would again refer the Court to those excellent discussions.  EFA and SLI further respond as follows to the DOJ's discussion of the First Amendment privilege issue in its opposition brief.

---

[10]   Response Brief for Plaintiffs-Appellees to the Eleventh Circuit (also filed 8/10/22), p. 56.

The DOJ dismisses EFA's and SLI's citation of the Supreme Court's holding in National Ass'n for the Advancement of Colored People v. Alabama, 357 U.S. 449 (1958) by saying that its subpoenas do not seek information on EFA or SLI's members. That was not clear from the text of the subpoenas themselves (see document category no. 10), although EFA and SLI accept the DOJ's subsequent limitation on the scope of its subpoenas. Nevertheless, the DOJ's argument misses the larger point of NAACP that "state action [sadly, federal government executive branch action in this case] which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." Id. at 460-461 (emphasis added). Thus, "[t]he existence of a prima facie case turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." Perry v. Schwarzenegger, 591 F.3d 1147, 1162 (9th Cir. 2010) (citing NAACP, emphasis added).[11]

---

[11]    The list of cases in the NAACP/Perry line upholding the First Amendment privilege against the chilling effect of discovery disclosure outside the context of membership lists is voluminous. See, e.g., Whole Woman's Health v. Smith, 896 F.3d 362 (5th Cir. 2018) (in case arising from constitutional challenge to Texas abortion laws, the Fifth Circuit held that district court abused its discretion in denying non-party organization's motions to quash document subpoenas from private-party plaintiffs where the subpoenas demanded "[a]ll [d]ocuments concerning [embryonic and fetal tissue remains], miscarriage, or abortion," including all communications on those topics between members of the organization and Texas public officials; the Court held that the chilling effect of the subpoenas on First Amendment activities was "self-evident"); Australia/Eastern U.S.A. Shipping Conference v. United States, 537 F. Supp. 807, 810, 812 (D.D.C. 1982), dismissed as moot 1986 WL 1165605 (preserving the First Amendment privilege in external communications with a federal agency from civil discovery by a federal agency - "there can be little doubt that petitioning the government is ... central to first amendment values.... [F]irst

19

The movants' burden to make a prima facie showing of their First Amendment privilege assertion is "light," given "the crucial place speech and associational rights occupy under our constitution." <u>Christ Covenant Church v. Town of Sw. Ranches</u>, 2008 WL 2686860, at * 6 (S.D. Fla. June 29, 2008) (quoting <u>Schiller v. City of New York</u>, 2006 WL 3592547 (S.D.N.Y. Dec. 7, 2006)). <u>E.g.</u>, <u>Pulte Home Corp. v.</u>

---

amendment analysis has always embraced a healthy scrutiny of governmental action, and protected against possible misuse of government power to take reprisals against political activity or expression.... [T]he Antitrust Division undoubtedly has power over the petitioners, for example to conduct investigations such as this one, and to bring legal action, and the potentiality for harassment exists. This is a cognizable basis for a chilling effect even without any factual showing...."); <u>Curling v. Raffensperger</u>, 2021 U.S. Dist. LEXIS 214202 (N.D. Ga. 2021) (preserving the privilege against discovery of "conversations with other individuals, including elected officials, and organizations" - "Plaintiffs also will not be required to disclose any information that could potentially reveal the identities of individuals, organizations, or officeholders with whom they spoke, such as the county in which an individual was elected or the divisions of the state in which an individual was employee"); <u>Muslim Cmty. Ass'n v. Pittsfield Twp.</u>, 2014 U.S. Dist. LEXIS 184684, at *14-15 (E.D. Mich. 2014) (quashing subpoena for third party's communications with neighbors and local officials re: a town ordinance) ("permitting third-party discovery into a private citizen's lawful actions on a matter of public debate would clearly cause her and other individuals to be hesitant about becoming involved in the political process. Indeed protecting against such a chilling effect is one of the First Amendment's very purposes"); <u>AFL-CIO v. Federal Election Commission</u>, 333 F.3d 168 (D.D.C. 2003) (striking down FEC automatic disclosure regulations re: material including "documents containing detailed descriptions of meetings with elected officials," out of concern that political opponents would use agency complaints to gain access to a group's "strategic documents") ("the automatic disclosure regulation 'encourages political opponents to file charges against their competitors to serve the dual purpose of "chilling" the expressive efforts of their competitor and learning their political strategy so that it can be exploited to the complainant's advantage'").

The DOJ makes a passing reference in its brief to <u>Herbert v. Lando</u>, 441 U.S. 153 (1979) (Opposition, p. 13), but that reliance is not well founded. Opposition at 13. <u>Herbert</u> was a defamation case against a news organization, where the Court determined that discovery into the editorial processes of the defendant media organization (obviously, a party to the case) was necessary for plaintiff to establish the elements of the tort. That is a far cry from the context of these non-parties' motions to quash.

Montgomery Cty., MD, 2017 WL 1104670, at * 4 (D. Md. March 24, 2017) ("To demonstrate an objectively reasonable probability of a chilling effect, the party asserting the privilege does not need to prove to a certainty that disclosure will result in chilling.  Instead, the party 'need only show that there is some probability that disclosure will lead' to a chilling effect.'") (citation omitted); Alliance of Auto. Mfr., Inc. v. Julie L. Jones, 2013 WL 4838764 (N.D. Fla. Sept. 11, 2013) (holding that the association met its burden by offering affidavits of two members in support of its argument).  In this case, EFA and SLI have more than met their burden to show that enforcement of the DOJ subpoenas would have a deterrent effect on the exercise of First Amendment activities through the facts established in the Declaration of Margaret Clarke (Doc. 151-4, para. 11-13), the Declaration of Becky Gerritson (Doc. 151-3, para. 12), and the Declaration of Eric Johnston (Doc. 152-3, para. 9-10).[12]

Among other things, as Mrs. Clarke's declaration establishes, due to the current political environment, a number of potential witnesses who supported VCAP were not willing to ever go public and testify before the Legislature.  Several

---

[12] Indeed, the fact that these subpoenas are from the DOJ with its vast powers and resources (rather than from private parties) is further indication of the likely chilling effect that enforcement would have on First Amendment rights.  Further, the extreme overbreadth of the subpoenas – which the DOJ does not even attempt to deny but implicitly concedes – and the substantial costs and burden of compliance which would be put on a small, grassroots organization such as EFA and its volunteers such as Margaret Clarke is also further evidence that not only will a chilling effect on First Amendment activity happen if these subpoenas are enforced, such an effect is likely what was intended by the DOJ in issuing the subpoenas in the first place.

21

witnesses who did testify at the first committee hearing in 2020 refused to return to participate in later legislative sessions because they were harassed and put in fear of bodily harm by the opposition on the first day of the hearing.  Other witnesses have asked for their names to be redacted from communications.  The State House Security was notified and provided supporting affidavits of this harassment, and, in response, proponent VCAP witnesses were sequestered and given additional protection at all future hearings by State House Security.  Under this undisputed evidence and the current political environment, for the DOJ to assert that EFA and SLI "fail to show a credible fear of harassment" is not only asking this Court to (like the ostrich) bury its head in the sand, but to also disregard the specific evidence before it to boot.

Further illustrating its apparent disdain for First Amendment rights (at least those of citizens who disagree with the current Administration on policy matters), the DOJ then ignores both the facts and the law when it asserts (twice) that "[t]his is not an instance of everyday Alabamians petitioning their elected representatives" and implies – albeit with absolutely no legal authority for its position --  that therefore the First Amendment privilege should not apply.  (Doc. 168, p. 15).  To "support" its insulting and absurd characterization of Becky Gerritson, Margaret Clarke, and Eric Johnston, and the thousands of Alabamians who are members of

EFA (not to mention the many more Alabamians who share their views) as somehow not being "everyday Alabamians,"[13] the DOJ notes that both Mrs. Gerritson and Mrs. Clarke are registered lobbyists with the Alabama Ethics Commission – as if there was something sinister about that. In fact, Mrs. Gerritson, Mrs. Clarke, and Mr. Johnston are longtime private citizens of Alabama who love their State and Country and wish to exercise their Constitutional rights and do what they can to make both better. Again, the undisputed facts are that EFA is a grassroots, volunteer-driven organization who has one full-time employee (Mrs. Gerritson). Mrs. Clarke, who was particularly involved in EFA's legislative efforts regarding VCAP, is and was a volunteer and not paid at all. Similarly, Mr. Johnston's legal work in this case through SLI was all done on a volunteer basis. The kind of free speech and political activity engaged in by these "everyday Alabamians" is at the very heart of why the First Amendment exists and why it is so important. That activity should be protected accordingly.

Finally, the DOJ briefly argues that, assuming EFA and SLI have met their prima facie burden of showing an infringement on their members' First Amendment associational rights (which EFA and SLI unquestionably have done, see above), the

---

[13] This absurdity is particularly ironic given the large number of DOJ lawyers from Washington, D.C. who are actively involved in pushing this case against the State of Alabama.

U.S.'s interest in this non-party discovery would overcome those First Amendment rights because the documents sought from EFA and SLI are "critical" to the Equal Protection inquiry in this case.  The DOJ then merely points to its previous argument on why it says EFA's and SLI's documents are relevant to the case.  Opposition, p. 18.  As discussed above, however, EFA's and SLI's documents are not in fact relevant to this case at all, much less proportional.  Further, even if *arguendo* some of the documents could have some marginal relevance, the relevance standard when faced with a First Amendment objection to discovery is more exacting than the minimal showing of relevance under Rule 26(b)(1).  Instead, the DOJ must show that the information sought is of "crucial relevance" to its case and that the information is "actually needed to prove its claims."  E.g., Pulte Home Corp. v. Montgomery Cty., MD, 2017 WL 1104670, at * 4 (D. Md. March 24, 2017).  DOJ has not even come close to demonstrating this, as demonstrated above.

## IV.   Compliance with the subpoena would impose an undue burden on EFA, in violation of Fed. R. Civ. P. 45(d)(1) and 45(d)(3)(iv).

The DOJ's only "argument" in its brief against the undue burden objection raised by EFA is pointing out that SLI (through the Declaration of Eric Johnston, Doc. 152-3, para. 6) has stated that the problem for SLI is not producing documents but the basis for doing so.  Opposition, p. 18, n. 8.  Obviously, EFA has many more documents potentially responsive to these overly broad subpoenas than does SLI,

and the significant burden on and expense to EFA (and its volunteer General Counsel, Margaret Clarke, in particular) in producing responsive documents is established by the Declarations of Becky Gerritson and Margaret Clarke (Docs. 152-3, paras. 9-10; and 152-4, para. 9).  The fact that producing responsive documents might not be an undue burden for SLI obviously says nothing about whether it would be for EFA.  The DOJ's complete failure to meaningfully respond to EFA's undue burden objection confirms that EFA's objection is well-taken, and further illustrates the DOJ's general disregard for the rights of a non-party which has a different view of the world than the Administration.

## CONCLUSION

For the reasons set out above and in their Motions to Quash, EFA and SLI urge the Court to grant their Motions to Quash the subpoenas.  In the alternative, EFA and SLI seek alternative relief as set out in their Motions, or such relief as the Court deems proper.[14]

---

[14] While EFA and SLI obviously believe that their motions to quash should be granted, another alternative option to the Court would be to defer ruling on the motions until after the Eleventh Circuit has ruled on the State's appeal from the Court's May 13, 2022, Opinion and Order that entered a preliminary injunction against the State's enforcement of sections 4(a)(1-3) of the VCAP statute.

/s/ John M. Graham
_____
John M. Graham
ASB-5616-G70J

Attorney for Eagle Forum of Alabama
and Southeast Law Institute

OF COUNSEL:

PHELPS DUNBAR LLP
Renasant Tower, Suite 700
2001 Park Place North
P. O. Box 830612
Birmingham, AL  35283-0612
Telephone:  (205) 716-5200
Facsimile:  (205) 716-5389
E-Mail:  John.Graham@phelps.com

## CERTIFICATE OF SERVICE

I hereby certify that this 28th day of September, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record in this case.

/s/ John M. Graham
_____
OF COUNSEL