# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, individually and on behalf of her minor son, MICHAEL BOE; *et al.*,<br><br>        Plaintiffs,<br><br>and<br><br>UNITED STATES OF AMERICA,<br><br>        Plaintiff-Intervenor,<br><br>      v.<br><br>STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama; *et al.*,<br><br>        Defendants. | Case No. 2:22-cv-184-LCB-CWB<br><br>Honorable Liles C. Burke |

## RESPONSE TO DEFENDANTS' BRIEF IN SUPPORT OF EAGLE FORUM OF ALABAMA AND SOUTHEAST LAW INSTITUTE'S MOTIONS TO QUASH DOCUMENT SUBPOENAS

At issue before this Court are motions to quash two narrowly tailored document subpoenas that the United States served on Eagle Forum of Alabama ("EFA") and Southeast Legal Institute ("SLI") to support its equal protection challenge to Alabama's Vulnerable Child Compassion and Protection Act

("VCAP").[1]

Defendants cannot invoke legislative privilege to prevent third parties EFA and SLI from responding to routine discovery subpoenas for documents that directly bear on the questions before this Court. In attempting to assert an inapplicable privilege, Defendants rely heavily on the Eleventh Circuit's decision in *Alabama Education Association v. Bentley (In re Hubbard)*, 803 F.3d 1298 (11th Cir. 2015), but that decision provides them no shelter here.

As a threshold matter, as the Eleventh Circuit has held, the legislative privilege is held by *legislators*. *See In re Hubbard*, 803 F.3d at 1309 (opining that certain state legislators "unquestionably hold *their own* legislative privilege" (emphasis added)). Here, the United States has not sought any discovery from Alabama legislators. Instead, the United States seeks discovery from non-governmental third parties, and unlike for governmental officials, there is no basis

---

[1] The United States has addressed Defendants' relevance and First Amendment arguments in its response in opposition to EFA and SLI's motions to quash the subpoenas (ECF No. 168) and will not repeat them here. With respect to the First Amendment argument specifically, Defendants fail to cite to any controlling Eleventh Circuit or Supreme Court precedent demonstrating that the two subpoenas at issue in these discovery motions are violative of the First Amendment. For example, Defendants rely heavily on *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), in which the Fifth Circuit only held that the lower court abused its discretion in compelling discovery on a religious organization because the court acted "in unnecessary haste." *Smith*, 896 F.3d at 376. Defendants quote portions of the opinion that are mere dicta, where the court opines on a hypothetical discovery request to a fictitious group called "Abortion Rights Unlimited." *Id.* at 374.

for organizations such as EFA or SLI to assert a legislative privilege. Nothing in *In re Hubbard* or any other case law cited by Defendants suggest that legislative privilege serves as a complete bar for all third parties who communicate with state legislators or officials.

Additionally, even if the legislative privilege could extend to non-governmental third parties, the Eleventh Circuit has recognized that the legislative privilege itself is not boundless. The privilege "covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation" when the "sole" inquiry before the court goes to the subjective motivations of legislators when supporting a facially valid state statute. *Id.* at 1308 & 1310. Contrary to the suggestion of Defendants, the privilege does not prohibit discovery when sought for reasons other than establishing legislative motive. *See id.* at 1311. Here, the United States seeks to understand the basis for VCAP, as well as the materials relied upon by the very organizations that conceived of or drafted some version of the legislation.

But overcoming these insurmountable hurdles still would not be enough to quash the subpoenas to EFA and SLI. That is so because, as the Eleventh Circuit has opined, the legislative privilege is not absolute and "must yield" when, as here, it is "necessary to vindicate important federal interests." *Id.* at 1311. The United

3

States has an important constitutional interest in ensuring that the Equal Protection Clause is applied equally to its citizens. Because VCAP criminalizes certain medical treatments based on a person's sex, any consideration of legislative privilege should give way to the important federal interest at stake.

## BACKGROUND

The United States previously recounted much of the procedural history relating to these subpoenas in its brief opposing EFA's and SLI's motions to quash. *See* ECF No. 168 at 2-8. Relevant here, on August 9, 2022, the United States notified Defendants and Private Plaintiffs, pursuant to Federal Rule of Civil Procedure 45(a)(4), that the United States would soon be issuing document subpoenas to two third-party organizations, and provided copies of these subpoenas. ECF No. 168-2 (Aug. 9, 2022 United States' email to Parties). Defendants' only response was to give notice of subpoenas they planned to issue to other third-party organizations. They did not raise any concerns regarding the subpoenas to EFA and SLI prior to requesting consent to seek leave to file a brief in support of the motions to quash. This request for consent came less than two days before the United States' opposition to the motions to quash was due, per the Court's scheduling order. ECF No. 156. The United States has received no objection or claim of legislative privilege related to these subpoenas from

Defendants or any other individual or entity, apart from what has been filed with the Court.

## ARGUMENT

### I.  Eleventh Circuit Precedent Does Not Support Defendants' Argument that Legislative Privilege Applies to Materials Held by Third Parties.

Defendants rely principally on the Eleventh Circuit's decision in *In re Hubbard* to argue that the legislative privilege precludes the production of any materials from a third party. But that reliance is misplaced. In *In re Hubbard*, the Eleventh Circuit discussed the basis for the legislative privilege: to "ensure lawmakers are allowed to 'focus on their public duties,'" free from the distraction of a discovery request that "detracts from the performance of official duties." 803 F.3d at 1310.[2] As the Eleventh Circuit made clear, the legislative privilege is held by legislators, not third parties. *Id.* at 1309.

---

[2] The legislative privilege may be best understood in conjunction with "the parallel concept of legislative immunity." *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180-81 (4th Cir. 2011) (the legislative privilege "exists to safeguard this legislative immunity and to further encourage the republican values it promotes."). Legislative immunity grants legislators "common law immunity *from liability* for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech and Debate Clause." *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (emphasis added). The purpose of legislative immunity is to "free legislators from such worries and distractions" of the "inconsiderable inconveniences and distractions of a trial." *Id.* at 1256; *see also Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) (recognizing "[t]he privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings"); *United States v. Gillock*, 445 U.S. 360, 372 n.10 (1980) (noting that *Tenney* "was grounded on its interpretation of federal common law").

All of the case law cited by Defendants, including *In re Hubbard*, concerns discovery or testimony demands lodged against legislators themselves. Here, the United States has not issued any subpoena to a legislator or state employee. Instead, it has issued subpoenas to two non-governmental organizations that acknowledge that they had some involvement in researching and drafting VCAP and communicating with the legislature about it.[3] The subpoenas specifically seek communications in possession of those organizations that they had with certain state employees or legislators about VCAP. In any event, because the subpoenas seek materials possessed by third-party organizations, the requested communications in no way implicate the basis for the legislative privilege; they do not detract from any legislators' performance of their official duties. An extension of the legislative privilege to private, non-governmental third parties is without legal basis.

Tellingly, Defendants have not cited a single case that extends the legislative privilege to private, non-governmental third parties. To the contrary, "because confidentiality is not the legislative privilege's animating concern, the privilege

---

[3] To be clear, the United States' subpoenas do not seek communications from EFA or SLI membership to their elected representatives or legislators. Instead, the subpoenas only seek communications between the organizations and state officials.

would not prevent Plaintiffs from asking the third parties with which the Legislators communicated about those communications." *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 454 n.2 (N.D. Fla. 2021).

Unable to extend the legislative privilege to private actors, Defendants next claim that *In re Hubbard* precludes any inquiry into the motivations behind VCAP. *See* Defs' Br. 12, ECF No. 158-1. But that assertion overreads *In re Hubbard*. The case pertained to whether a state law banning payroll deductions from public employees' paychecks to a public union violated the First Amendment. The court rejected the plaintiff's attempt to explore legislative motive, and held that subpoenas for documents to Alabama legislators should be quashed based on legislative privilege.

The court's analysis, however, did not end there. In analyzing legislative motive—a concept that is closely intertwined with legislative privilege—the Eleventh Circuit noted: "In *United States v. O'Brien*, the Supreme Court held that, as a "'principle of constitutional law,'" courts cannot "'strike down an *otherwise constitutional statute* on the basis of an alleged illicit legislative motive.'" *In re Hubbard*, 803 F.3d at 1312 (quoting *United States v. O'Brien*, 391 U.S. 367, 383 (1968) (emphasis added). The court was careful to distinguish between facially constitutional laws and those that are not. In the latter scenario involving facially

deficient statutes—a scenario that VCAP squarely presents—the court left open the possibility that legislative motive may be properly explored. *Id.* at 1313. Stated differently:

> The *In re Hubbard* court suggested that the outcome may have been different had the statute explicitly singled out a specific group. The *O'Brien* rule applied because the law was facially constitutional. The Eleventh Circuit also noted that the *O'Brien* Court itself acknowledged that inquiry into legislative motive is permissible in certain classes of cases outside the free-speech context, and thus limited its holding in *In re Hubbard* to a free-speech retaliation challenge to an otherwise constitutional statute.

*O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1374 (S.D. Fla. 2016) (citations and quotation marks omitted)).

Further, *In re Hubbard* was careful to note that the legislative materials that were being sought had a singular purpose: to evaluate the subjective motivations of legislators in a facially valid statute. *In re Hubbard*, 803 F.3d at 1310. Here—in addition to dealing with a facially deficient statute—the United States' subpoenas were not issued for that lone purpose. Instead, the communications sought are important in order to evaluate the need for the law, materials that support the law's legislative findings, and the rationale for VCAP. These items will assist the United States in evaluating whether the law is substantially related to any claimed important government interest.

8

## II.     Defendants Cannot Assert Legislative Privilege Over the Subpoenas Issued to Third Parties EFA and SLI.

Defendants cite no precedent—and the United States is unaware of any—where the legislative privilege has been applied in a standalone fashion similar to how Defendants present it in their brief. Like any other privilege raised in the context of discovery, legislative privilege must be asserted by an individual or entity with standing to do so.[4] No one with standing has done so here.

Unquestionably, state legislators could move to quash a subpoena directed to them as legislators.[5] *See In re Hubbard*, 803 F.3d at 1309. But no state legislators have been subpoenaed. Additionally, high-ranking government officials also hold a legislative privilege that they could raise in response to a subpoena directed at the officials. But the Defendants here have not moved to quash or sought any relief themselves from the subpoenas.

---

[4] As noted in its response in opposition to EFA and SLI's motions to quash, the United States requests that the third parties produce a privilege log. The United States has requested categories of documents from EFA and SLI that do not involve communications with Alabama legislators (unlike the subpoenas at issue in *In re Hubbard*). Because EFA and SLI have refused to provide a privilege log, it is impossible to assess which documents the claimed legislative privilege might apply to—and which documents it cannot.

[5] Several members of the Alabama state legislature did file an amicus brief regarding this discovery dispute, but the brief does not assert any legislative privilege. ECF No. 165-1.

Instead, the United States served subpoenas on two non-governmental, third party groups, which, as discussed above, do not hold any legislative privilege. Legislative privilege "is a personal one and may be waived or asserted by each individual legislator." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992). And, unlike for governmental officials, there is no common law root that gives rise to asserting the legislative privilege to bar subpoenas on third-party organizations such as EFA and SLI.

Defendants cite no authority which could suggest that Defendants may invoke legislative privilege over subpoenas issued to a third party, nor could they.[6] "[N]either the Governor, nor the Secretary of State or the State [] has standing to assert the legislative privilege on behalf of any legislator or staff member that may be deposed." *Gilby v. Hughes*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020) (internal quotation marks omitted). In cases where a legislator has appropriately asserted the legislative privilege, the discovery requests and/or subpoenas were propounded on the individual legislators themselves. *See, e.g.*, *Thompson v. Merrill*, No. No. 2:16-cv-783-ECM, 2020 WL 2545317, at *1 (M.D. Ala. May 19, 2020) (considering

---

[6] In a footnote, Defendants assert that they may invoke legislative privilege on behalf of unnamed legislators, citing the Attorney General's general enforcement authority, Ala. Code § 36-15-12 (Defs' Br. 12 n.1, ECF No. 158-1). The United States disagrees that this authority authorizes Defendants to invoke the privilege broadly on behalf of legislators, and Defendants cite no case to support this proposition.

motion to quash by legislators who were served subpoenas to testify at depositions and produce documents).

Although typically only the recipient of the subpoena has standing to object to a third-party subpoena, a narrow exception exists if a party alleges a "personal right or privilege with respect to the materials subpoenaed." *Stevenson v. Stanley Bostitch*, Inc., 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001) (internal quotation marks omitted). But Defendants make no such claim here. Defendants cannot assert a personal right or privilege in the documents the subpoenas seek. And these third-party subpoenas raise no risk of liability for governmental officials and pose no risk of distraction that could take governmental officials away from legislative duties. These third-party subpoenas also do not "harass" or place any burden on legislators by asking them to search for documents. *Lee*, 340 F.R.D. at 454. Moreover, even if such a personal right or privilege were asserted, the underlying basis for the legislative privilege—to ensure that legislators can focus on their official duties—does not weigh in favor of barring the production of all materials sought here.

Similarly, third parties such as EFA and SLI also cannot invoke legislative privilege, and they have not done so here. Defendants cite no authority to the contrary.

11

III.   **Even if Legislative Privilege Could Be Applied, it Does Not Provide a Basis to Quash the Subpoenas in Their Entirety.**

      Even if the legislative privilege could apply, the privilege does not provide a basis to quash the subpoenas in their entirety. The Supreme Court has explicitly rejected the notion that the privilege covers all matters involving legislative goals or the legislative process, holding that the privilege can extend to "matters beyond pure speech or debate in either House, but '*only* when necessary to prevent indirect impairment of [the] deliberation[s]'" of the legislature. *Gravel v. United States*, 408 U.S. 606, 625 (1972) (emphasis added). In fact, courts have repeatedly denied requests to extend the legislative privilege to many of the categories of documents sought in the subpoenas to EFA and SLI, such as communications between legislators and third parties. *See, e.g.*, *N.C. State Conf. of the NAACP v. McCrory*, No. 1:13CV658, 2015 WL 12683665, at *7 (M.D.N.C. Feb. 4, 2015) (noting there is no reasonable expectation of privacy for communications between legislators and their constituents and citing cases).

      The categories of documents requested include information beyond any legislative work product, including EFA's and SLI's communications with and documents provided to the Legislature. Information provided by EFA and SLI to the Legislature certainly falls outside of any purported legislative privilege.

12

**IV.    Even if Legislative Privilege Could Be Invoked, it Should Give Way to the Important Federal Constitutional Interests at Issue in this Litigation.**

Lastly, even if the legislative privilege could be invoked, the privilege is not absolute and must yield to the critical federal interests at hand. The legislative privilege is qualified, and "a state lawmaker's privilege may give way to important federal interests such as the enforcement of federal criminal statutes." *Lee*, 340 F.R.D. at 455 (internal quotation marks omitted); *see United States v. Gillock*, 445 U.S. 360, 373 (1980) (holding that legislative privilege yields "where important federal interests are at stake, as in the enforcement of federal criminal statutes"). In this vein, courts have found that legislative privilege "gives way in private civil cases concerning important, federally guaranteed public rights"—after all, "some civil cases implicate federal interests that are at least as important—if not more important—than the enforcement of federal criminal statutes, where the privilege undoubtedly gives way." *Lee*, 340 F.R.D. at 456; *see In re Hubbard*, 803 F.3d at 1313-14 (suggesting, in civil case, that the outcome may have been different had the statute in question explicitly singled out a specific group) (discussing *Ga. Ass'n of Educators v. Gwinnett Cnty. Sch. Dist.*, 856 F.2d 142 (11th Cir. 1988)).

Many courts apply a five-factor balancing test to determine whether legislative privilege would give way to the federal interests at hand: "(1) whether

the evidence Plaintiffs seek is relevant, (2) whether other evidence is available, (3) whether the litigation is sufficiently 'serious,' (4) whether the government is involved in the litigation, and (5) whether upholding the subpoena defeats the legislative privilege's purpose."[7] *Lee*, 340 F.R.D. at 456. All of the federal-interest factors weigh overwhelmingly against the application of legislative privilege here.

With respect to the first factor, the information sought by the subpoenas is highly relevant to the United States' equal protection claim. Indeed, in *Lee*, the court recognized that the subjective motivations of the legislation's leading sponsors were highly relevant. *Id.* at 457; *see also Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 339 (E.D. Va. 2015) (in an Equal Protection Clause case, "proof of a legislative body's discriminatory intent is relevant and extremely important as direct evidence"); *S.C. State Conf. of NAACP v. McMaster*, 584 F. Supp. 3d ---, 2022 WL 425011, at *6 (D.S.C. Feb. 10, 2022) ("[I]t is clear discriminatory intent contained within legislative documents and communications is relevant to the intentional discrimination element of Plaintiffs' *prima facie* case.").

---

[7] Courts throughout the country have embraced a substantially similar analytical framework when evaluating an assertion of legislative privilege. *See, e.g.*, *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 666 (E.D. Va. 2014); *Doe v. Nebraska*, 788 F. Supp. 2d 975, 985-86 (D. Neb. 2011); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003).

As explained in the United States' response in opposition to EFA and SLI's motions to quash, the equal protection inquiry in this case demands that the origin, purpose, and purported justifications for VCAP be closely examined. If Defendants' proffered justification for VCAP is merely hypothesized or if the legislative history reveals that the proffered justification is biased or a mere pretext for invidious discrimination, it would be extremely difficult for the statute to survive heightened scrutiny.[8] Further, legislators' communications to EFA or SLI may provide important context for VCAP. EFA and SLI readily admit that they communicated with the legislature about VCAP and the need for the statute. At the outset of VCAP, the statute lists no less than sixteen legislative findings including references to "numerous studies" while also asserting that the treatments at issue are "experimental." The basis for these assertions and where they originated have particular relevance to the issues in controversy here. Whether such legislative pronouncements are based on sound medical science, and the weight that the legislature gave these assertions bear on whether the statute is substantially related to an important government interest. Thus, the information sought in the

---

[8] *Eknes-Tucker v. Marshall*, --- F. Supp. 3d ---, 2022 WL 1521889, at *10 (M.D. Ala. May 13, 2022) (finding that Defendants' proffered justifications for VCAP were hypothesized). Additionally, as the United States previously explained, the legislative history of VCAP would be relevant if the Court were to apply rational basis review. *See, e.g.*, *USDA v. Moreno*, 413 U.S. 528, 534 (1973).

subpoenas—communications between EFA and SLI and elected officials- about the bill in question—is directly relevant to the United States' claim that VCAP is not based on generally accepted scientific norms and is not substantially related to the state's purported interest.

The next factor—the availability of the requested evidence elsewhere—also weighs in the United States' favor. Defendants assert that the evidence in the public record is limited but seek to deny the parties an opportunity to obtain additional information about the genesis of VCAP. *See Bethune-Hill*, 114 F. Supp. 3d at 341 (noting that although public sources of information may be available, "[p]laintiffs need not confine their proof to 'circumstantial' evidence."); *McMaster*, 2022 WL 425011, at *7 (finding this factor favors federal interests because "discriminatory intent is, for obvious reasons, often difficult to obtain" and "direct evidence" would be "highly probative of Plaintiff's claims"). As EFA and SLI acknowledged that they worked hand-in-hand to craft VCAP, this information cannot be sought elsewhere.

The seriousness factor also weighs strongly in the United States' favor. The protections afforded by the Equal Protection Clause are among the most important and consequential issues that could be litigated in the federal courts. *See, e.g.*, *Eknes-Tucker v. Marshall*, --- F. Supp. 3d ---, 2022 WL 1521889, at *9 (M.D. Ala.

May 13, 2022) (recognizing the purpose of the Equal Protection Clause to protect persons against intentional and arbitrary discrimination). As in *Bethune-Hill*, which also alleged an equal protection claim, the United States has alleged "an undoubtedly serious deprivation of rights." 114 F. Supp. 3d at 341. The deprivation is so serious that, in criminalizing medical care for transgender youth, Alabama's law is unprecedented in this country. Thus, the seriousness factor weighs strongly against legislative privilege.

The fourth factor cuts sharply in the United States' favor because, as noted above, the subpoenas are directed toward non-governmental third parties—EFA and SLI—not the Legislature itself or any individual Alabama lawmakers. *Id.* at 341; *see also McMaster*, 2022 WL 425011, at *7 ("This is not a case where individual legislators are targeted by a private plaintiff seeking damages."). And the fifth factor also weighs in favor of disclosure because none of the common-law purposes of legislative privilege (protecting the legislative process itself, refraining from "harassing" legislators for doing their jobs, and not haling legislators into court regarding legislative matters) are implicated by the subpoenas at issue. Thus, even if Defendants had shown that legislative privilege could be invoked here, the federal-interest balancing test employed by courts nationwide facing the same

17

exact issue weighs strongly in the United States' favor and against the application of legislative privilege.

## CONCLUSION

For the reasons set forth above, and in the United States' response in opposition to EFA and SLI's motions to quash the subpoenas (ECF No. 168), the United States respectfully requests that the Court deny EFA and SLI's motions to quash the subpoenas.

Dated: September 28, 2022      Respectfully submitted,

SANDRA J. STEWART
United States Attorney
Middle District of Alabama

PRIM F. ESCALONA
United States Attorney
Northern District of Alabama

LANE H. WOODKE
Chief, Civil Division
Northern District of Alabama

   /s/ Jason R. Cheek

JASON R. CHEEK
Deputy Chief, Civil Division
MARGARET L. MARSHALL
Assistant U.S. Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

JOHN POWERS (DC Bar No. 1024831)
Counsel to the Assistant Attorney General
Civil Rights Division

CHRISTINE STONEMAN
Chief, Federal Coordination and Compliance
Section

COTY MONTAG (DC Bar No. 498357)
Deputy Chief, Federal Coordination and
Compliance Section

   /s/ Kaitlin Toyama

ROBERT C. PICKREN
Assistant U.S. Attorney
U.S. Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, AL 35203
Tel.: (205) 244-2104
Jason.Cheek@usdoj.gov
Margaret.Marshall@usdoj.gov


STEPHEN D. WADSWORTH
Assistant United States Attorney
U.S. Attorney's Office
Middle District of Alabama
Post Office Box 197
Montgomery, AL 36101-0197
Tel.: (334) 223-7280
Stephen.Wadsworth@usdoj.gov

ALYSSA C. LAREAU (DC Bar No. 494881)
RENEE WILLIAMS (CA Bar No. 284855)
KAITLIN TOYAMA (CA Bar No. 318993)
Trial Attorneys
United States Department of Justice
Civil Rights Division
Federal Coordination and Compliance
Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 305-2994
Alyssa.Lareau@usdoj.gov
Renee.Williams3@usdoj.gov
Kaitlin.Toyama@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Respectfully submitted,

<u>s/ *Jason R. Cheek*</u>
Assistant U.S. Attorney