**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **BRIANNA BOE, *et al*.** | ) |
| ***Plaintiffs*,** | ) |
| | ) **Civil Action No. 2:22 cv-184-LCB-CWB** |
| **and** | ) |
| | ) **Honorable Liles C. Burke** |
| **UNITED STATES OF AMERICA,** | ) |
| ***Plaintiff-Intervenor*,** | ) |
| ***vs*.** | ) |
| | ) |
| **STEVE MARSHALL, *et al*.,** | ) |
| ***Defendants*.** | ) |

**BRIEF OF AMICUS CURIAE TEA PARTY PATRIOTS FOUNDATION, INC. IN SUPPORT OF NON-PARTY EAGLE FORUM OF ALABAMA'S OBJECTION TO AND MOTION TO QUASH DOCUMENT SUBPOENA**

Kurt R. Hilbert
(*pro hac vice* forthcoming)
Ga Bar No. 352877
Christopher J. Gardner
(*pro hac vice* forthcoming)
VA Bar No. 89191
GA Bar No. 163932
The Hilbert Law Firm, LLC
205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770)551-9311
khilbert@hilbertlaw.com
cgardner@hilberlaw.com

Algert S. Agricola, Jr.
Agricola Law, LLC
Ala. Bar No. 0364R79A
127 South 8th Street
Opelika, AL 36801
T: (334) 759-7557
F: (334) 759-7558
al@agricolalaw.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS……………………………………………………...i

TABLE OF AUTHORITIES………………………………………………ii

CONFLICT DISCLOSURE STATEMENT………………………………1

IDENTITY AND INTEREST OF *AMICUS CURIAE*……………………..1

SUMMARY……………………………………………………………… 3

I. THE FOURTH AMENDMENT'S PROHIBITION ON UNREASONABLE SEARCHES APPLIES IN THE CIVIL CONTEXT OF NON-PARTY SUBPOENAS…………………………………4

II. PHYSICAL INTRUSION BY GOVERNMENT AGENTS IS NOT REQUIRED FOR GOVERNMENT CONDUCT TO BE CONSIDERED A SEARCH……………………………………………………………6

III. SEARCH OF THE RECORDS OF EAGLE FORUM IS UNREASONABLE AND IF ALLOWED SETS A DANGEROUS PRECEDENT ………………………………………………………9

CONCLUSION ……………………………………………………….11

CERTIFICATE OF SERVICE…………………………………………11

# TABLE OF AUTHORITIES

## CASES

*Carpenter v. United States*, 138 S. Ct. 2206 (2018)……………………..………..8

*Kyllo v. United States*, 533 U.S. 27 (2001)……………………………….…..………..6

*Florida v. Jimeno*, 500 U.S. 248 (1991)……………………….………..………. 9

*Marshall v. Barlow's, Inc*., 436 U.S. 307 (1978)……………………...…..………….5

*United States v. Miller*, 425 U.S. 435 (1976)………………………….…………….7

*Katz v. United States*, 389 U.S. 347 (1968)……………………...………..5, 6, 7

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984)……………………………7

*Semayne's Case* 5 Co. Rep. 91a, 77 Eng. Rep. 194 (K. B. 1603)……………….….5

*Entick v. Carrington* 19 Howell's State Trials 1029, 95 Eng. 807 (1705)…….…...5

## U.S. CONSTITUTION

U.S. Const. amend. IV……………………………………………4, 5, 6, 8, 9, 10

## STATUTES/RULES

Fed. R. Civ. P. Rule 45(e) and (g)……………………………………………..7, 9

Local Rule 7.1…………………………………………...…………………… 1

## MISCELLANEOUS

Congressional Research Service, The Constitution of the United States of America 1377 (2016)……………………………………………………………………....5

10 Works of John Adams (C. Adams ed. 1856). …………………………….……….5

*Remarks by President Biden on the Continued Battle for the Soul of the Nation*, Independence Hall, Philadelphia September 1, 2021 (available at https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/09/01/remarks-by-president-bidenon-the-continued-battle-for-the-soul-of-the-nation/)……………………………………………………………3

## CONFLICT DISCLOSURE STATEMENT

Pursuant to Local Rule 7.1, *Amicus Curiae* Tea Party Patriots Foundation, Inc. for purposes of its Conflict Disclosure Statement, is affiliated with the following, organizations: Tea Party Patriots Action, Inc.

## IDENTITY AND INTERESTS OF *AMICUS CURIAE*[1]

*Amicus Curiae*, Tea Party Patriots Foundation, Inc. (*hereinafter* "TPPF"), submits the following Brief of *Amicus Curiae* in support of non-party Eagle Forum of Alabama's Objection to and Motion to Quash Document Subpoena (*hereinafter* the "Motion"). TPPF participates in and provides training opportunities and educational resources to the largest network of grassroots Tea Party groups around the country and other Americans interested in personal freedoms, economic freedom, and a debt-free future. The core of TPPF's mission is to teach people that as a country, we are most free when the plain text of the Constitution is followed in the manner understood by our Founding Fathers, including rights of free speech, assembly and petitioning of the Government.

In our society, all Americans are free to choose to live life as they want, as long as they do not harm or infringe upon the rights of others. TPPF strives to address key Constitutional matters of policy that affect the preservation of a nation where

[1] No party or counsel for any party has authored this brief in whole or in part, nor made any monetary contribution to fund the preparation or submission of this brief.

the principles of individual liberty are cherished and maximized, where the Constitution is revered and upheld, and where Americans are free to pursue their American Dream.

Fundamental to this aim is the ability to interact with voters and legislators as well as the right to petition our governments at the federal, state and local level without fear that a government bureaucrat with policy preferences different from those of TPPF, its members and donors, will improperly seek to use court processes to scrutinize and chill such legal activities and conversations. Further still, the TPPF itself has already once been specifically targeted by the Government for its views and political positions during the IRS scandal of 2010.

This brief will endeavor to aid the Court by exploring the previously unraised Fourth Amendment prohibition of the Government's attempt to subpoena irrelevant documents and communications from non-parties to litigation, especially non-profit organizations endeavoring to participate in free speech activities, such as open discourse with legislators through petition and organizing, without fear of reprisal from federal investigation and abuse of the civil subpoena process.

## SUMMARY

On September 1, 2022, in a speech ironically on the steps of Independence Hall in Philadelphia, President Joe Biden declared "Donald Trump and the MAGA Republicans represent an extremism that threatens the very foundations of our republic." President Joseph R. Biden, *Remarks by President Biden on the Continued Battle for the Soul of the Nation*, Independence Hall, Philadelphia September 1, 2021 (available at https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/09/01/remarks-by-president-bidenon-the-continued-battle-for-the-soul-of-the-nation/). In doing so, the chief executive and law enforcement officer called his predecessor, and the approximately seventy-four million (74,000,000) people who voted for his predecessor ostensibly enemies of the state. A President's words matter. Thus, it is not surprising that the U.S. Department of Justice would seek to obtain through the use of a non-party subpoena voluminous records including email lists and communications of an organization that is considered by many to be on the political right, for if they were truly engaged in an effort to destroy the republic, it would be a dereliction of duty not to do so.[2] However, no evidence of this nefarious plot exists because, of course, there is no

[2] In light of broad and fervent opposition to its subpoena, the Government has recently narrowed its demands. However, absent judicial recognition that its actions were impermissible, the Government is free to make further end runs around the Fourth Amendment's protections and may set a dangerous precedent.

such plot. Regardless, the Government has nonetheless sought to investigate a non-party organization whose views are currently contrary to, or at least not in line with, the current administration. The Government seeks to conduct its investigation through the abuse of civil discovery.

Here, the Government is attempting to accomplish through civil procedural means what it cannot do through criminal processes without overcoming substantial legal protections and hurdles. The Government has attempted to impose an unfettered litigation demand for production of documents from an organization that is a non-party to the litigation, but with whom the current administration may have a policy disagreement. This Court should not allow the Government to abuse civil discovery procedures to seek unchecked confidential and protected documents of non-profit organizations that participate in free speech, assembly and political activity. Such an invasion of fundamental core protections enables the Government to compile, ostensibly, what amounts to a political enemies list by scouring an organization's documents, communications and individuals who, as of yet, are accused of no crime other than promoting an alleged disfavored view about whether sterilization of children should be illegal.

## I. THE FOURTH AMENDMENT'S PROHIBITION ON UNREASONABLE SEARCHES APPLIES IN THE CIVIL CONTEXT OF NON-PARTY SUBPOENAS.

Typically, the Fourth Amendment's protections are analyzed in a criminal context. However, by its terms the Fourth Amendment is not limited to criminal investigations. Indeed, the Supreme Court has long held that the right to be secure in one's person, papers, houses and effects applies to all government searches, subject to a few narrowly defined exceptions to the warrant requirement. *Marshall v. Barlow's, Inc*., 436 U.S. 307, 312-13 (1978) (holding that the Fourth Amendment prohibition against unreasonable searches protects against warrantless, arbitrary intrusions by government officials during civil as well as criminal investigations.) The United States Supreme Court has further recognized that the protections extend beyond the home and into commercial settings. *Id.* at 311; *Katz v. United States,* 389 U.S. 347, 351 (1968) (holding the Fourth Amendment protects people, not places).

This would have been no surprise to the framers of the Fourth Amendment or the public at the time it was ratified. English common law had long protected against unreasonable searches, *Semayne's Case* 5 Co. Rep. 91a, 77 Eng. Rep. 194 (K. B. 1603) (holding "that the house of everyone is to him as his castle and fortress…"); *Entick v. Carrington* 19 Howell's State Trials 1029, 95 Eng. 807 (1705) (holding general warrants to be invalid). Indeed, the writs of assistance issued by the crown were considered general warrants and became a major point of contention in the lead up to the American Revolution, and exactly what the Fourth Amendment of the United States Constitution was designed to protect against. Congressional Research

Service, The Constitution of the United States of America 1377 (2016); 10 Works of John Adams 247-248 (C. Adams ed. 1856).

Based on the foregoing, it is anomalous to state that a legal person (including organizations) and its private property are only protected under the Fourth Amendment when a person is suspected of criminal conduct. Accordingly, the Fourth Amendment applies and should be imposed to protect against unreasonable governmental searches through the use of a non-party civil subpoena. The Government's effort to circumvent the protections guaranteed by the Fourth Amendment in this context is a serious threat to the fundamental rights of political organizations and their members regardless of their views or position.

## II.  PHYSICAL INTRUSION BY GOVERNMENT AGENTS IS NOT REQUIRED FOR GOVERNMENT CONDUCT TO BE CONSIDERED A SEARCH.

Since the Fourth Amendment protects legal persons in their commercial endeavors, the Court must determine if the Government's conduct constitutes a search. It has been established since *Katz* that the physical intrusion by a government agent is not required for a search to have occurred. This "people not places" approach was expounded upon in *Kyllo v. United States*, 533 U.S. 27, 32–33 (2001) (holding the warrantless use of a thermal imaging device to detect activity within a home unreasonable, and noting that a contrary holding would permit developments in police technology "to erode the privacy guaranteed by the Fourth Amendment.")

As Justice Potter Stewart stated in *Katz*, "Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures." 389 U.S. 359 (1968).

Here, the Government has sought to use a civil subpoena as a procedural mechanism to conduct a search of Eagle Forum's papers and communications by conscripting Eagle Forum to conduct the search for it under threat of sanction by the Court for non-compliance. The only difference here between the typical execution of a search and what the Government has proposed here, is that rather than use its own power, the executive branch seeks to use this Court's power to compel production. "If a litigant fails to comply with an appropriate discovery request, the Court may have to interject itself and order compliance, enforceable by the court's contempt powers." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984). Thus, there is government compulsion involved.

Even the face of the subpoena warns about Federal "Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so." The question then becomes, does Eagle Forum of Alabama have a reasonable expectation of privacy in its communications, email lists, *etc.*, and is that expectation one society is willing to accept as reasonable. *Katz* at 361 (Harlan, J. concurring).

Eagle Forum of Alabama certainly had, and has, a legitimate subjective expectation of privacy in many of its documents and communications. One such category of documents which establishes a privacy interest of the organization is internal communications. The majority of the documents responsive to the subpoena were internal documents which were never intended to be shared with outsiders or third-parties. *Cf. United States v. Miller*, 425 U.S. 435 (1976). The United States Supreme Court has held that when there is a legitimate privacy interest in a record, a subpoena is not sufficient to compel its production. *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) (holding that a subpoena is insufficient to compel the production of cell phone information location due to the privacy expectations of the cell phone owner).

The original subpoena at issue irrefutably sought information and documents that were subject to privacy protections under the Fourth Amendment. It is axiomatic that the Government cannot simply conduct a warrantless search of documents from persons without running afoul of the Fourth Amendment. Here, the Government attempts to circumvent the protections from government overreach afforded by the Fourth Amendment by improperly using the Court's subpoena authority. Such an effort is an abuse of the civil discovery process and should also run afoul of Fourth Amendment protections.

## III. SEARCH OF THE RECORDS OF EAGLE FORUM IS UNREASONABLE AND IF ALLOWED SETS A DANGEROUS PRECEDENT.

Eagle Forum of Alabama is not a party to the instant litigation, and indeed the United States is an intervenor, not an original party. The use by the Government as an intervenor of the civil discovery process with its extremely broad scope for its own potentially nefarious purposes is repugnant to the protections of the Fourth Amendment. The original unfettered demand for documents/communications from a politically active non-party is violative enough, but when the subpoena is issued by a Governmental intervenor, TPPF respectfully submits that the Court should heavily scrutinize the subpoena and place a "check" on the civil process, especially when it becomes an effrontery to the Fourth Amendment. The conduct of the Government here compounds the fear of TPPF that the Government will routinely join civil lawsuits nationwide simply to compel search of documents from non-party organizations whose views are not aligned with those of the current administration through the civil subpoena process merely to harass them. This tactic creates a slippery slope and dangerous precedent that should not be permitted by this Court under the Fourth Amendment. It is a bed rock foundation of United States constitutional law that the touch stone of the Fourth Amendment is reasonableness.

*Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Discovery compelled via subpoena is coerced production, subject to severe penalty. Fed. R. Civ. P. 45 *et seq*.

All searches in the absence of a warrant are presumptively unreasonable. Thus, the Government must overcome that presumption in order to enforce the subpoena. This is true even if the search is executed during civil discovery as here. The contention that the Government can obtain an organization's private information simply by intervening in a lawsuit involving someone else is repugnant and could never be considered reasonable at any time in American history. Non-profit political organizations that are dragged before the court as non-parties by Government intervenors should be afforded an absolute expectation that their private information is sacrosanct and free from unreasonable searches under the Fourth Amendment absent probable cause. The Court should not entertain such sweeping constructive or actual intrusion into private and confidential matters, no matter where an organization appears on the political spectrum. Further, fundamental notions of reasonableness must be most heavily weighed against Government civil subpoena processes involving non-parties that may be deemed political targets of any administration. The Government's power to compel information merely as an intervenor in a civil case simply should not outweigh non-party Constitutional rights lest the aegis of the Fourth Amendment be entirely eroded.

## CONCLUSION

The intervenor Government's attempt to use the civil subpoena process to obtain records of Eagle Forum of Alabama, as a non-party, presents a direct attack on the Fourth Amendment's prohibition against unlawful searches and seizures and should be disallowed by this Honorable Court.

Respectfully submitted, this 13th day of October 2022.

/s Algert S. Agricola, Jr.
Algert S. Agricola, Jr.
Agricola Law, LLC
Ala. Bar No. 0364R79A
127 South 8th Street
Opelika, AL 36801
T: (334) 759-7557
F: (334) 759-7558
al@agricolalaw.com

Kurt R. Hilbert
(*pro hac vice* forthcoming)
Ga Bar No. 352877
Christopher J. Gardner
(*pro hac vice* forthcoming)
VA Bar No. 89191
GA Bar No. 163932
The Hilbert Law Firm, LLC
205 Norcross Street
Roswell, GA 30075
T: (770) 551-9310
F: (770)551-9311
khilbert@hilbertlaw.com
cgardner@hilberlaw.com

## CERTIFICATE OF SERVICE

I certify that on October 13, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s Algert S. Agricola, Jr.
Counsel for *Amicus Curiae* Tea Party Patriots Foundation, Inc.