UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **BRIANNA BOE,** *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 2:22-cv-184-LCB |
| **STEVE MARSHALL,** *et al.*, | ) |
| Defendants. | ) |

## **OPINION & ORDER**

This case raises a constitutional challenge to the Alabama Vulnerable Child Compassion and Protection Act. During the course of discovery, the United States Government, an intervenor plaintiff, issued subpoenas to two nonparties, Eagle Forum of Alabama and Southeast Law Institute. The nonparties now move to quash those subpoenas under Federal Rules of Civil Procedure 26 and 45. Because the subpoenas exceed the scope of discovery, the Court grants the nonparties' motions.

**I.    BACKGROUND**

In August 2022, the Government issued substantively identical subpoenas to two nonparties, Eagle Forum of Alabama and Southeast Law Institute. (Doc. 151-1 at 1); (Doc. 152-1 at 1).[1] The subpoenas, which generally seek to probe whether the

---

[1] Eagle Forum of Alabama is a nonprofit and "social welfare advocacy organization." (Doc. 151-4 at 1. Southeast Law Institute, also a nonprofit organization, provides pro bono legal assistance "to churches, non-profit organizations, some for profit businesses, and individuals,

nonparties helped research and draft the Act, commanded the nonparties to produce eleven categories of evidence: (1) draft and proposed legislation;[2] (2) materials the nonparties considered when preparing such legislation;[3] (3) documents concerning the nonparties' policy goals;[4] (4) documents provided to the Alabama Legislature;[5] (5) communications with the Alabama Legislature;[6] (6) communications with nongovernmental organizations;[7] (7) records and minutes of meetings;[8] (8) polling

---

including legislators." (Doc. 152-3 at 2). Both Eagle Forum and Southeast Law Institute are staffed almost entirely by volunteers and are receiving pro bono legal assistance in this matter. (Doc. 151-4 at 1–2); (Doc. 152-3 at 1–2); (Doc. 191 at 25).

[2] "Any draft legislation, proposed legislation, or model legislation relating to VCAP, SB 184, HB 266, or their predecessor bills that [the nonparties] wrote, assisted in writing, provided feedback on, or reviewed." (Doc. 151-1 at 6); (Doc. 152-1 at 6).

[3] "Any materials considered by [the nonparties] in preparing legislation, draft legislation, proposed legislation, or model legislation relating to VCAP, SB 184, HB 266, or their predecessor bills, including (1) any model or sample legislation from other third-party organizations or jurisdictions; and (2) medical studies, opinions, or evidence." (Doc. 151-1 at 6); (Doc. 152-1 at 6).

[4] "Any documents concerning [the nonparties'] legislative or policy goals, initiatives, and/or strategies relating to medical care or treatment of transgender minors, or minors with gender dysphoria." (Doc. 151-1 at 6); (Doc. 152-1 at 6).

[5] "Any documents provided to the Alabama State Legislature or any employee or member thereof in support of VCAP, SB 184, HB 266, or any predecessor bills, including written testimony, letters, emails, draft legislation, model legislation, or proposed legislation, reports, summaries, analyses, fact sheets, and/or talking points." (Doc. 151-1 at 6); (Doc. 152-1 at 6).

[6] "Any communications between [the nonparties] and any employee, agent, assign, or member of the Alabama State Legislature, Alabama Governor's office, Alabama Lieutenant Governor's office, Alabama Attorney General's office, or any employee, agent, or assign of a District Attorney's office within Alabama concerning VCAP, SB 184, HB 266, and/or any predecessor bills." (Doc. 151-1 at 7); (Doc. 152-1 at 7).

[7] "Any communications between [the nonparties] and any other nongovernmental organization, consultant, or lobbyist concerning VCAP, SB 184, HB 266, and/or any predecessor bills." (Doc. 151-1 at 7); (Doc. 152-1 at 7).

[8] "Any records or minutes of meetings concerning VCAP, SB 184, HB 266, and/or any predecessor bills." (Doc. 151-1 at 7); (Doc. 152-1 at 7).

and public opinion data;[9] (9) documents related to presentations, videos, interviews and speeches given by the nonparties' representatives;[10] (10) mass letters, newsletters, and emails;[11] and (11) social media postings.[12]

The nonparties moved to quash the subpoenas on the grounds that the requested material falls outside the scope of discovery. (Doc. 151 at 4); (Doc. 152 at 4). The Court set a hearing on the motions for October 14, 2022. (Doc. 163). One week before the hearing, the Government filed a notice that it "now only seeks any medical studies or literature referenced in" the Act's legislative findings. (Doc. 184 at 2). In response, the nonparties filed a supplemental motion to quash, maintaining that the Government's request—even as narrowed—is overly broad. (Doc. 186 at 6 & n.7). The nonparties' motions are now ripe for review.[13]

---

[9] "Any polling or public opinion data related to or concerning VCAP, SB 184, HB 266, predecessor bills, and/or legislation relating to medical care or treatment for transgender minors or youth." (Doc. 151-1 at 7); (Doc. 152-1 at 7).

[10] "Any records or documents relating to presentations, videos, interviews, and/or speeches [the nonparties'] representatives have given or participated in regarding medical care or treatment related to gender identify, transgender minors or youth, 'trans-identifying' minors or youth, or minors or youth with gender dysphoria." (Doc. 151-1 at 7); (Doc. 152-1 at 7).

[11] "Any mass letters, newsletters, or emails that [the nonparties] sent to members of a mailing or email list related to or concerning VCAP, SB 184, HB 266, and/or any predecessor bills." (Doc. 151-1 at 7); (Doc. 152-1 at 7).

[12] "Any social media postings that [the nonparties] issued concerning VCAP, SB 184, HB 266, and/or any predecessor bills." (Doc. 151-1 at 7); (Doc. 152-1 at 7).

[13] In addition to the briefs submitted by the Government, Eagle Forum, and Southeast Law Institute, the Court has received and considered *amicus* briefs from the Free Speech Coalition, (Doc. 164-1 at 1); fifty-three organizations, federal and state legislators, and individual citizens, (Doc. 177 at 1); the National Republican Redistricting Trust, (Doc. 178-1 at 1); and the Tea Party Patriots Action, Inc., (Doc. 188-1 at 1).

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 26 establishes the general scope of discovery. Under that rule, a party may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Relevant discovery includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978).

During the course of discovery, a party may subpoena information from a nonparty. *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). The issuing party, however, "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). A district court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter," or that "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(iii)–(iv). A court may also quash a subpoena that seeks material outside the scope of discovery. *Jordan*, 947 F.3d at 1329 & n.4 (collecting cases).

4

## III.  DISCUSSION

The Government's nonparty subpoenas seek material outside the scope of discovery. The subpoenas command Eagle Forum and Southeast Law Institute to produce eleven broad categories of evidence, ranging from draft legislation, to communications with the Alabama Legislature, to polling or public opinion data, to social media postings. (Doc. 151-1 at 6–7); (Doc. 152-1 at 6–7). These materials are unlikely to reveal or lead to any information that would help resolve the fundamental issue in this case, which is whether Section 4(a)(1)–(3) of the Alabama Vulnerable Child Compassion and Protection Act is constitutional under the Fourteenth Amendment. Thus, the requested material has little—if any—relevance for purposes of discovery.

Furthermore, the burden of the requested material greatly outweighs any slight relevance it may have. Eagle Forum and Southeast Law Institute are nonprofit organizations staffed almost entirely of volunteers. (Doc. 151-4 at 1–2); (Doc. 152-3 at 1–2). The nonparties' counsel, John Graham, represents them pro bono in this matter. (Doc. 191 at 25). To produce the requested material, the nonparties' volunteer staff and pro bono counsel would first have to review thousands of documents, determine which, if any, of those documents are responsive, and then omit or redact any privileged information contained in those

documents. (Doc. 151-3 at 4); (Doc. 151-4 at 5). Accordingly, the burden of the requested material outweighs any slight relevance it may have.

The Government has provided neither evidence nor argument to refute these conclusions. To the contrary, the Government's eleventh-hour "narrowing" of the requested material suggests that the subpoenas, as written, are overly broad and unduly burdensome given the limited resources of the nonparties.[14] Considering the relevance (or lack thereof) of the requested material, the burden of production, the nonparties' resources, and the Government's own conduct, the Court finds that the subpoenas exceed the scope of discovery.[15]

## IV. CONCLUSION

The Court therefore grants the nonparties' motions (Docs. 151, 152 & 186) and quashes the Government's nonparty subpoenas in accordance with Federal Rules of Civil Procedure 26 and 45. Nothing in this order prohibits the Government from issuing a new subpoena that is far more narrowly tailored, as the Court orally

---

[14] The Court would also note that the Government's narrowed request—i.e., "any medical studies or literature referenced in" the Act's legislative findings—does not fit squarely into any of the eleven categories of evidence listed in the subpoenas. *Compare* (Doc. 151-1 at 6–7) (subpoena issued to Eagle Forum), *and* (Doc. 152-1 at 6–7) (subpoena issued to Southeast Law Institute), *with* (Doc. 184 at 2) (notice regarding the Government's nonparty subpoenas). The Court takes no position on whether the Government's narrowed request falls within the scope of discovery.

[15] Because the subpoenas, as written, fall outside the scope of discovery, the Court declines to address the nonparties' argument that the subpoenas "require disclosure of privileged or other protected matter." (Doc. 151 at 6); (Doc. 152 at 6).

suggested at the hearing. Alternatively, if they so choose, the parties may conduct any such discovery informally.

    **DONE** and **ORDERED** October 24, 2022.

                                              _____
                                              **LILES C. BURKE**
                                              UNITED STATES DISTRICT JUDGE