IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| **BRIANNA BOE, et al.;** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| and ) | |
| ) | |
| **UNITED STATES OF** ) | **Civil Action No.** |
| **AMERICA,** ) | **2:22-cv-00184-LCB** |
| ) | |
| **Plaintiff-Intervenor,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **STEVE MARSHALL, in his** ) | |
| **official capacity as Attorney** ) | |
| **General of the State of Alabama;** ) | |
| **et al.;** ) | |
| ) | |
| **Defendants.** ) | |

### EAGLE FORUM OF ALABAMA'S AND SOUTHEAST LAW INSTITUTE'S MOTION FOR SANCTIONS AGAINST THE UNITED STATES OF AMERICA

Non-parties Eagle Forum of Alabama ("EFA") and Southeast Law Institute ("SLI") move the Court, pursuant to Fed. R. Civ. P. 45(d)(1), to impose an appropriate sanction on the United States of America, intervenor plaintiff, because of the non-party document subpoenas served on these organizations this past August by the U.S. Department of Justice ("DOJ" or "Government") – in particular, the DOJ's established breach of its duty under Rule 45(d)(1) to "take reasonable steps

to avoid imposing undue burden or expense" on non-parties through the subpoena process.

This Court has already established the impropriety of the subpoenas issued by the DOJ, both in the Court's comments at the October 14, 2022, hearing on these non-parties' Motions to Quash the subpoenas (Docs. 151 and 152), and in the Court's October 24, 2022, Opinion and Order granting the motions to quash (Doc. 191). The Court specifically held in its Opinion and Order that the subpoenas "exceed the scope of discovery" under Rule 26; that the materials which the DOJ had sought by the subpoenas were "unlikely to reveal or lead to any information" that would help resolve the fundamental issue in this case (i.e, whether the Vulnerable Child Compassion and Protection Act ("VCAP") enacted into law by the Alabama Legislature is constitutional), and, thus, that "the requested material has little – if any – relevance for purposes of discovery;" and, further, that "the burden of the requested material greatly outweighs any slight relevance it may have." (Doc. 192, pp. 1, 5-6.)[1]

Under the circumstances of this case, EFA and SLI submit that the DOJ's breach of its duty under Rule 45(d)(1) and its abuse of the subpoena process was

---

[1] Because the subpoenas fell outside the scope of discovery and thus were due to be quashed anyway, the Court declined to address EFA's and SLI's arguments that the subpoenas were also due to be quashed due to First Amendment privilege. (Doc. 192, p. 6, fn. 15.).

particularly egregious and deserving of compensatory as well as significant punitive sanctions.

### I. Pertinent Facts of the Government's Misconduct and Its Evolving Position Regarding these Subpoenas

This Court's October 24, 2022, Opinion and Order outlined the breathtakingly broad scope of the document subpoenas which the Court went on to quash in their entirety. (Doc. 192, pp. 1-3). Those subpoenas demanded production from these non-parties of eleven (11) broad categories of documents going back to 2017 regarding EFA's and SLI's concerns about gender-altering medical treatment to minors and the VCAP legislation that was debated in and ultimately enacted by the Alabama Legislature, for which EFA and its membership had advocated. (Docs. 151-1 and 152-1). Notwithstanding these eleven (11) broad categories of documents which they were demanding over several years, however, Mr. Cheek's cover letter with the subpoenas provided one (1) narrow, purported rationale – and a highly dubious one at that -- for why the DOJ was dragging these non-parties into the litigation:

> During the preliminary injunction hearing the Court asked who drafted the bill that resulted in VCAP. Several public statements suggest that [EFA or SLI] staff may have had some involvement in drafting the legislation or its predecessor bills.[2]

---

[2] Thus, the DOJ rested its entire justification for these non-party document subpoenas on an apparently off-handed question that the Court posed to the parties during Day 3 of the preliminary injunction proceedings back in May when the Court (after first saying that he wouldn't be offended if no one wanted to address it), asked where the bill resulting in VCAP came from and who wrote

(Doc. 151-1, p. 1; Doc. 152-1, p. 1).  Clearly, the broad range of documents which the DOJ demanded in these subpoenas was not relevant and not proportional to that narrow question, even if that question was itself relevant to the constitutionality issue before the Court (which, for the reasons discussed in EFA's and SLI's previous filings, as well as those of the State of Alabama defendants, it is not).

EFA and SLI objected and moved to quash the subpoenas in their entirety on September 7, 2022, on the basic grounds of:  (1) the lack of relevance as well as proportionality of the documents sought, in violation of Fed. R. Civ. P. 26(b)(1); (2) First Amendment privilege, in violation of Fed. R. Civ. P. 45(d)(3)(A)(iii); and (3) undue burden on EFA, in violation of Fed. R. Civ. P. 45(d)(1) and 45(d)(3)(iv). (Docs. 151 and 152).  The Declarations filed as exhibits to the Motions to Quash (among other things) confirmed what the DOJ already knew pertinent to the question it had asserted as a justification for the subpoenas – that, while of course the VCAP after thorough vetting and debate was ultimately the product of the Alabama Legislature, EFA (with some assistance from SLI) had provided some proposed legislation and amendments and that EFA and its membership had advocated to members of the Alabama Legislature over a several-year period for this kind of

---

it.  The Court's question was quickly and accurately answered at the hearing by Mr. LaCour on behalf of the State:  "Your Honor, it was a bill introduced into the Legislature, considered by the Legislature, enacted, so this is the work product of the Legislature." Trans., p. 251.

4

legislation. (Docs. 151-3, 151-4, and 152-3). The Declarations further established – although the DOJ had to have already understood this also just by the sheer breadth of the subpoenas – what a massive burden would be imposed on EFA (including its volunteer general counsel, Margaret Clarke, as well as its executive director, Rebecca Gerritson) if it had to comply with the subpoenas. (Id.). Finally, the Declarations established the basis for the First Amendment privilege which EFA and SLI were asserting and the importance of that principle. (Id.).[3]

The next day, September 8, 2022, the undersigned on behalf of EFA and SLI had a "meet and confer" conference with two DOJ attorneys.[4] Despite having been provided in the Motions to Quash with the information pertinent to the purported (albeit itself irrelevant) question in Mr. Cheek's original cover letter served with the subpoenas, the DOJ did not withdraw the subpoenas and made no offer at that time to even compromise or narrow the subpoenas. Further, in addition to the more mundane legal discussion between lawyers about issues of relevance, proportionality, undue burden, etc., during the "meet and confer" conference the undersigned discussed the First Amendment privilege issue and explained to the DOJ lawyers that one of the reasons why EFA, SLI, and the undersigned felt so

---

[3] EFA also noted its special statutory protection as a 501(c)(4) social welfare organization.

[4] Asst. U.S. Attorney Jason Cheek, under whose signature the subpoenas were issued, and Kaitlin Toyama with the DOJ's Civil Rights Division in Washington, D.C.

5

strongly about their position was that they viewed the subpoenas as a form of political harassment from the DOJ.  Notably, the DOJ lawyers did not even attempt to deny this.   (Doc. 176, pp. 3-6).

On September 14, 2022, Mr. Cheek on behalf of the Government again emailed the undersigned and said that after further review the DOJ was "willing" to narrow the categories of documents sought in both subpoenas to Request Nos. 1, 2, 4, 5, and 6.  (Doc. 168-6).  However, as the undersigned pointed out in his reply email, all of the numerous problems with the subpoenas that were outlined in the motions to quash – including but not limited to the First Amendment privilege issues – still applied even assuming the subpoenas were narrowed to the topics listed in Mr. Cheek's email. (Doc. 168-6).

The DOJ filed its response in opposition to EFA's and SLI's motions to quash the subpoenas on September 21, 2022.  (Doc. 168).  The DOJ doubled down on its position at that time, even absurdly asserting to this Court that the document subpoenas as issued were "narrowly tailored." (Doc. 168, p. 2).  Tellingly, however, the DOJ did not even attempt to show in its opposition brief– because it could not show -- <u>how</u> most of the documents it demanded in its subpoenas could possibly be

relevant or proportional to the issues in this case.[5]  Nor did the DOJ make a meaningful response to EFA's undue burden objection.

In fact, as EFA and SLI discussed in their reply brief filed September 28, 2022, <u>none</u> of the multiple categories of documents demanded by the DOJ could pass the relevance test much less the proportionality test under Rule 26(b)(1). EFA's and SLI's reply further demonstrated how all of the documents which the DOJ was demanding are protected by First Amendment privilege, and also discussed further the undue burden compliance with the subpoena would impose on EFA. (Doc. 176).

On October 7, 2022, the Friday night before the scheduled hearing on the Motions to Quash, the DOJ effectively conceded the impropriety of its subpoenas by filing a Notice informing the Court that it had "narrowed" the scope of the subpoenas at issue to only one (1) category of documents so as "to reduce the burden of production on EFA and SLI." (Doc. 184). The DOJ stated that it was now seeking from these private non-parties only "any medical studies or literature referenced in

---

[5]  For example, regarding document category no. 1 in the subpoenas, the DOJ made no attempt to explain how could just subpoena any draft legislation existing in the files of EFA or SLI that was not provided to the Alabama Legislature meet even the DOJ's (erroneous) theory of relevance. Similarly, on category no. 2, any materials considered <u>by EFA and SLI</u> in drafting proposed legislation could never have been relevant, much less proportional, even under the DOJ's theory. Similarly, on category no. 6, the DOJ made no attempt to defend its request for communications between EFA and <u>other non-governmental entities.</u> The DOJ did not address those questions, because the answer is obvious and illustrates the clear impropriety of the subpoenas. On other categories of documents in the original subpoenas (e.g., nos. 3, 7, 8, 9, 10, and 11), the lack of any relevant connection or proportionality between the documents which the DOJ demanded and any legitimate issue in this case is even more apparent.

Section 2 of VCAP" (id.), although in fact that category of documents was a new request and thus procedurally improper under Rule 45. EFA and SLI responded to the DOJ's 11th-hour pivot from its original subpoenas by filing a Supplement to their Motions to Quash in which they addressed the problems with the DOJ's latest request for documents. (Doc. 186).

At the October 14th hearing, the Court asked Mr. Cheek to explain what had changed between the original "absolutely asking for everything we can think of" subpoenas back in August and September, to "we just really actually need only one thing" (i.e., "1 percent" of the original subpoena) as evidenced by the October 7th Friday night filing. (Trans. pp. 6, 8). Mr. Cheek briefly tried to defend the DOJ's "team subpoena[s]," asserting that they had sought relevant information (Trans. pp. 8-9, 14), when the Court asked him again: "*how in the world* could what the Department of Justice is asking for be relevant to this case and its outcome?" (Trans. p. 9). Mr. Cheek then asserted that the reason for the original subpoenas was that the DOJ was looking "first and foremost to pin down who wrote the statute" (again not attempting to address how the overwhelming majority of what the DOJ had demanded in the subpoenas could be relevant and proportional to even that question, which again itself is irrelevant) and that, while the DOJ had had some suspicions or information about who was involved in drafting the legislation, "we didn't know that

for certain until we got the declarations that were attached to the motions to quash." (Trans. pp. 9-10).[6]

While conceding that EFA and SLI were well within their rights to file motions to quash, Mr. Cheek further tried to justify the DOJ's issuance of the original 11-category document subpoenas by saying that it expected more of a "dialogue" with these non-parties about the subpoenas before such a motion would be filed. (Trans., pp. 11, 30). However, Mr. Cheek did not try to explain why, if that was the DOJ's thought process (inadequate a justification as it was for the reasons discussed infra), it had initially doubled down on its position after EFA and SLI had filed their motions to quash before finally effectively withdrawing the original subpoenas (while still asserting one new document request to EFA).

After a brief discussion of the DOJ's (new) request for the medical studies or literature referenced by the Alabama Legislature in the VCAP statute, the Court then returned to the subject of the original subpoenas and asked Mr. Cheek: "I want to know how the Department of Justice thought that those were relevant and how were you going to use that information if you got it. … So where were you really headed with this?" (Trans. pp. 16-17). Mr. Cheek's response came no closer to justifying

---

[6] While in fact the DOJ already knew this before it issued the subpoenas and shouldn't have issued them to begin with, if all the DOJ was really looking for was to know who was involved in drafting the VCAP legislation why didn't the DOJ withdraw the subpoenas immediately upon receiving the Declarations filed with EFA's and SLI's Motions to Quash?

the original 11-category, multi-year subpoenas than had his previous response:  1) "a big piece of it was to identify the origins of the statute;"[7] 2) "[i]t could provide circumstantial evidence of the Legislature's intent;"[8] and 3) "it can lead to different areas for us to explore."[9] (Trans. pp. 17-18).

The Court recognized the danger that the DOJ could in the future weaponize the subpoena process to go after other political advocacy groups, and articulated to Mr. Cheek the Court's concern about the direction the Department was taking:  "So, you know, is the new standard going to be that these kind of subpoenas … go out in legislation to any advocacy organization, and they want e-mails to their members, they want social media posts, they want things that the group just considered in their advocacy.  <u>And that's all the things you're asking for</u>."  (Trans. p. 18).  The Court concluded the hearing by admonishing the DOJ, through Mr. Cheek, that "I hope we're not going to go down this road with any organization in addition to Eagle

---

[7]     This explanation is hollow for the reasons discussed above.

[8]     Mr. Cheek never attempted to explain how any of the 11 categories of these non-party document subpoenas were reasonably calculated to do that, because they were not.  Further, this attempted justification for the subpoenas is contrary to the DOJ's own position (as well as that of the private, original plaintiffs) that the VCAP statute is unconstitutional "on its face."  See further discussion in EFA's and SLI's reply brief on the motions to quash (Doc. 176), pp, 16-17.

[9]     That nebulous rationale also ignores not only the relevance and proportionality requirements of Rule 26(b)(1) but also the DOJ's obligation under Rule 45(d)(1) to avoid imposing undue burdens on non-parties through a subpoena.

Forum in this case. Because that subpoena certainly was very overly broad. I understand why they're here today, and they should be here today."

### II. Under Rule 45(d)(1), sanctions should be entered against the Government for its misconduct here.

As noted above, at the October 14th hearing Mr. Cheek attempted to justify the DOJ's issuance of these improper and overly broad subpoenas by saying that the DOJ expected more of a "dialogue" with EFA and SLI before motions to quash were filed and that, had this "dialogue" occurred, perhaps motions to quash could have been avoided. (Trans., pp. 11, 30). In other words, according to Mr. Cheek's rationale, the DOJ with its vast resources and governmental power thought it was appropriate to use an incredibly broad subpoena to then, through subsequent "dialogue" (i.e., coercion), pressure a small, grassroots, volunteer-driven organization to compromise and produce what the Government was really after.

To the contrary, Rule 45 squarely prohibits such a use of the subpoena:

> A party or attorney responsible for issuing and serving a subpoena **must** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1) (emphasis added). Thus, contrary to the DOJ's position, it had an affirmative duty *before issuing the subpoenas* to avoid an undue burden on

11

these non-parties. The DOJ utterly failed to comply with that duty. Sanctions are thus clearly called for by the text of the rule and the undisputed facts of this matter.

In <u>Progressive Emu Inc. v. Nutrition & Fitness Inc.</u>, 785 F. App'x 622 (11th Cir. 2019), the Eleventh Circuit Court of Appeals upheld sanctions under Rule 45 against a law firm which (like the DOJ here) had issued an unreasonable document subpoena that would have imposed an undue burden on the responding party. One of the sanctioned law firm's arguments on appeal was essentially the same "we just wanted a dialogue" argument which the DOJ asserted at the October 14th hearing in this case. The Eleventh Circuit squarely rejected that argument:

> Anderson Weidner maintains that Defendant's failure to move the court for a show cause order or consult with them to narrow Plaintiff's subpoena before filing its motion to quash 'alone precludes the district court's grant of attorneys' fees.' But Federal Rule of Civil Procedure 45 imposes no such obligation. Instead, it requires those serving a subpoena to take reasonable steps to avoid imposing undue burden and expense on the recipient of the subpoena and authorizes sanctions on a party or attorney who fails to comply. Fed. R. Civ. P. 45(d)(1). **Rule 45 leaves no room for a party or attorney to issue an untimely, facially overbroad and unduly burdensome subpoena and expect to work out the details later**…."

<u>Id.</u> at 629 n. 10 (emphasis added). For the same reason, even putting aside for the moment the political context of this case and the clear indications of government harassment and bad faith, sanctions would be due in this case due to the DOJ's unquestionable breach of its duty under Rule 45(d)(1).

Unlike the facts of <u>Progressive Emu</u>, however, this is not a case of a small law firm that, in the heat of trial preparation, was simply negligent in issuing an overly broad and unreasonable document subpoena to a non-party.  Nor is this case about private commercial contract rights, as important as those are.  Rather, this case is about the Government of the United States, through the DOJ (the largest law firm in the world), issuing ridiculously broad document subpoenas to volunteer-driven private organizations who were not parties to the case and had simply exercised their First Amendment rights – our most cherished and fundamental rights under the Constitution -- to petition their State Legislators and advocate for legislation that the current Administration in Washington, D.C. does not like.  Thus, the branch of the federal government that should have been concerned with protecting the First Amendment rights of private organizations and citizens such as EFA and its membership instead has been dismissive of and punitive against those rights.  At the very least, the DOJ's utter failure (already recognized by this Court) to comply with its Rule 45 duty to avoid imposing an undue burden on non-parties through subpoenas is much more egregious because of the politically-charged nature of this case and the fact that the documents demanded by the DOJ only existed in the first place because of these private entities' exercise of their First Amendment rights.

In fact, evidence of bad faith by the DOJ here is abundant, as demonstrated above.  In particular, the rationale asserted by the DOJ for the subpoenas – to find

13

out who was involved in drafting the VCAP legislation – is itself irrelevant to the issues in this case. But beyond that, the glaring disconnect between even that slender purported rationale for the subpoenas, and the broad scope of what the subpoenas actually demanded, is strong evidence of bad faith by the DOJ.

Indeed, there is ample evidence just from the known facts of the Government's conduct outlined above to infer that the issuance of these subpoenas was in fact political <u>harassment</u> and that the Government's true intent in issuing these subpoenas was to try to intimidate EFA and other like-minded groups of citizens into silence and to stay out of the political process going forward.[10] The intimidation effort is well summarized by the amicus brief of 53 Organizations:

> "[T]he United States served a subpoena on Eagle Forum of Alabama ("EFA") with no legitimate purpose but instead to intimidate and chill the free speech, associational, and petitioning rights of an organization whose views are currently contrary to those of the United States Government. In so doing, the government seeks to force a small non-profit with only one full-time employee to pony up the resources to fight the Department of Justice, the world's largest law firm. The government's message is clear and unmistakable: exercise your rights and participate in the political process at your own peril."

(Doc. 165-1, pg. 3.)

---

[10] The Biden administration openly threatened Alabama legislators at a press conference back in April for enacting the VCAP. President Biden's then-press secretary Jen Psaki warned, "…Alabama's lawmakers and other legislators who are contemplating these [bills protecting children] have been put on notice by the *Department of Justice*…President Biden has committed in both words and actions to fight..." (Emphasis added.). The facts pertinent to this subpoena dispute outlined above show that the Biden Administration's obsession to overturn the law of this State as expressed in the VCAP statute was not limited to only fighting again Alabama lawmakers, but also against private citizens and organizations who had advocated for that legislation.

### III. Appropriate Sanctions

The appropriate amount of the sanctions here is obviously within this Court's good discretion. However, EFA and SLI submit that the analysis should start with an amount that includes compensation for the significant time that their personnel incurred in fighting the DOJ's improper and illegitimate subpoena. For details, see the attached Third Declaration of Margaret Clarke (Exhibit A hereto); the Second Declaration of Rebecca Gerritson (Exhibit B), the Declaration of Eunie Smith (Exhibit C), and the Declaration of Eric Johnston (Exhibit D; the value of Mr. Johnston's professional time and expenses incurred in this subpoena dispute at his normal, reasonable rate is $13,765.38). Rule 45(d)(1) also expressly contemplates sanctions to include a reasonable attorney's fee. In this case, as the Court is aware, the undersigned along with his law firm has provided legal services to EFA and SLI on a *pro bono* basis because of the important First Amendment principles at stake in this case which, as the Court recognized at the October 14th hearing, do not change depending on what political party currently occupies the White House. EFA and SLI submit that reasonable sanctions against the Government should include a reasonable attorney's fee. See the attached Declaration of John M. Graham (Exhibit E) for the amount of time and expenses incurred by him and other personnel with his law firm in this matter and the value of that time at a reasonable rate, the total of which is $46,873.83.

EFA and SLI also submit that punitive sanctions should be entered here, due to: a) the egregious nature of the Government's misconduct outlined above; b) the chilling effect the subpoenas if enforced would have had on constitutionally protected First Amendment activity; and c) the need for a deterrent against future Government overreach.

Respectfully submitted this 3rd day of November, 2022.

/s/ John M. Graham
John M. Graham
ASB-5616-G70J
Attorney for Eagle Forum of Alabama
and Southeast Law Institute

OF COUNSEL:
PHELPS DUNBAR LLP
Renasant Tower, Suite 700
2001 Park Place North
P. O. Box 830612
Birmingham, AL  35283-0612
Telephone:  (205) 716-5200
Facsimile:  (205) 716-5389
E-Mail: John.Graham@phelps.com

**CERTIFICATE OF SERVICE**

I hereby certify that this 3rd day of November, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record in this case.

/s/ John M. Graham
OF COUNSEL