## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| Brianna Boe, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Intervenor Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-184-LCB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General, | ) | |
| of the State of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL
## JUDGMENT ON THE UNITED STATES' PLEADINGS (DOC. 157)

# TABLE OF CONTENTS

Table of Contents ............................................................................. i

Table of Authorities ......................................................................... ii

Introduction .....................................................................................1

Summary of the Argument...............................................................2

Argument..........................................................................................4

I.     This Court May Issue Partial Judgment................................4

II.    The United States Has Failed To Plausibly Allege Intentional
       Discrimination By The Alabama Legislature .........................6

       A.    The United States' Rational Basis Claim Fails..............7

       B.    The United States' Unpled *Arlington Heights* Claim Fails ..........10

       C.    The United States' Facial Discrimination Claim Fails To
             The Extent It Is Based On Legislative Pretext..............13

III.   Discovery Is Not A Substitute For Inadequate Allegations .................14

Conclusion ....................................................................................17

Certificate of Service ....................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................15

*Barmapov v. Amuial*,
   986 F.3d 1321 (11th Cir. 2021) ..............................................................5, 15

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*,
   496 U.S. 226 (1990) ..................................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................15

*Dep't of Com. v. New York*,
   139 S. Ct. 2551 (2019)...............................................................................12

*DHS v. Regents of the Univ. of Cal.*,
   140 S. Ct. 1891 (2020)......................................................................... 11, 12

*Dobbs v. Jackson Women's Health Org.*,
   142 S. Ct. 2228 (2022)...............................................................................14

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993) ............................................................................ 7, 8, 9

*FEC v. Adams*,
   558 F. Supp. 2d 982 (C.D. Cal. 2008).........................................................6

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ....................................................................................9

*Haves v. City of Miami*,
   52 F.3d 918 (11th Cir. 1995) .......................................................................8

*Holm v. Pollack*,
   2000 WL 1689710 (E.D. Pa. Nov. 1, 2000)................................................6

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) ................................................................. 11, 15

*Johnson v. Bd. of Regents of Univ. of Ga.*,
  263 F.3d 1234 (11th Cir. 2001) ...........................................................10

*Lenhart v. Printing Indus. Ins. & Health Care Plan*,
  818 F. Supp. 331 (M.D. Fla. 1993) ........................................................6

*McLaughlin Transp. Sys., Inc. v. Rubinstein*,
  390 F. Supp. 2d 50 (D. Mass. 2005) ......................................................6

*Panama City Med. Diagnostic Ltd. v. Williams*,
  13 F.3d 1541 (11th Cir. 1994) ...............................................................8

*S. All. for Clean Energy v. Fla. Power & Light Co.*,
  2018 WL 4829218 (S.D. Fla. Aug. 10, 2018), *adopted*,
  2018 WL 4828434 (S.D. Fla. Sept. 12, 2018) .......................................6

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ..........................................................................9

*United States v. Windsor*,
  570 U.S. 744 (2013) ..............................................................................9

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
  429 U.S. 252 (1977) ..................................................................... passim

*Williams v. Morgan*,
  478 F.3d 1316 (11th Cir. 2007) .........................................................8, 9

*Wolf Designs LLC v. Five 18 Designs LLC*,
  2022 WL 10551564 (D. Ariz. Oct. 18, 2022) .......................................5

**Statutes**

Ala. Code § 26-26-2................................................................9, 13

Ala. Code § 26-26-2(6)...................................................9

Ala. Code § 26-26-2(16).................................................9

**Rules**

Fed. R. Civ. P. 10(b)......................................................5

Fed. R. Civ. P. 12(c).......................................................4

Fed. R. Civ. P. 12(d)......................................................6

Fed. R. Civ. P. 56(a)....................................................3, 6

**Other Authorities**

Wright & Miller, 5C *Federal Practice & Procedure* (3d ed. 2022) ........................5

## INTRODUCTION

Until now, this litigation has focused on the proper legal standard to apply to the Alabama Vulnerable Child Compassion and Protection Act based on its terms, and the medical and scientific evidence that supports the Act. As this Court noted, the parties have known what they "are going to have to prove." Motion to Quash Tr. (Doc. 189) 16 ("Tr."); *see* Motion for Partial Judgment (Doc. 171) 3-6 ("Motion").

But now, for the first time, the United States' opposition announces that it is pursuing an *Arlington Heights* claim—that the Act is "facially neutral" but "purposefully discriminates." Response in Opposition (Doc. 196) 6-7 ("Opp."). The private Plaintiffs have not alleged or pursued any such claim. And the United States moved for and received intervention here based on promises that its claim would be "based on the same facts" as Plaintiffs' claim, Doc. 58-1 at 9 n.2, and that it "isn't expanding proceedings," PI Tr. (Doc. 103) 15-16 ("PI Tr.").

Six months later, a different reality has emerged. Rather than pursue the sole equal protection claim alleged in its complaint and shared with Plaintiffs, the United States has served what this Court called "vastly overbroad and unduly burdensome" subpoenas on private citizens in a futile quest to unearth supposed pretext. Tr. 10. This Court rejected that effort, explaining that it was untethered from "the fundamental issue in this case." Doc. 192 at 5. But the United States has pledged to find "different avenues" "to get at" the irrelevant information this Court stopped them

1

from pursuing once: "we're not … dropping this altogether." Tr. 35.

The United States' opposition never sees fit to acknowledge this episode, instead insisting that it "must be permitted to conduct discovery" and that this Court should do nothing until another "discovery dispute" becomes "pending." Opp. 11, 16. The United States hints at more demands for "emails between legislator[s] and advocacy organizations," "emails from legislators," and other "private correspondence." Opp. 15-16 n.8.

But a plaintiff that cannot state a claim does not get discovery. And the United States does not and cannot state any claim based on pretext. Thus, this Court should not permit the United States to hijack these proceedings with pointless discovery and trial disputes to pursue its new, unpled claims. Instead, the Court should issue partial judgment on the pleadings for the State and confine the United States to the sole equal protection claim its complaint adequately alleges. Otherwise, the United States will continue to drag this litigation down irrelevant paths toward unpled claims about imaginary pretext.

## SUMMARY OF THE ARGUMENT

In its opposition, the United States first contends that partial judgment cannot be granted because it chose to lump several equal protection claims—for the first time here, they recite three—into a single count. That cannot be the law. The United States agrees that courts routinely issue judgment on individual claims. The United

States' choice to vaguely plead Hydra-like claims in an omnibus count could not prevent the State and this Court from disposing of discrete claims that are inadequately pled. The United States' vehicle objection is even more meritless because the Court could simply provide notice and issue a partial judgment under Rule 56(a).

Turning to the merits, the United States announces that it has three discrete equal protection claims: a rational basis claim, a new *Arlington Heights* claim that the Act is "facially neutral" but "purposefully discriminates," and the claim (shared with Plaintiffs) that the Act "facially discriminates." Opp. 6-7. Defendants are entitled to judgment on the first two and partial judgment on the third.

On rational basis, actual legislative purpose is irrelevant, and the United States does not plead facts that, if proved, would negate every possible basis for the Act. The United States' complaint even alleges that the State Legislature found that the regulated treatments are unproven and harmful, and the United States pleads no facts that would show that limiting such treatments is irrational.

On the United States' new claim under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), not only does it exceed the scope of the United States' permitted intervention, it is without basis in the United States' complaint. That complaint contains no factual allegations that would tend to show intentional discrimination. The United States cannot point to any either; in the single sentence its opposition devotes to the subject, the most it can muster is

that the complaint "contains allegations to support its contention that the statute purposefully discriminates." Opp. 8. Yet all it cites is a complaint heading labeled "Impact of S.B. 184," which discusses the supposed *effects* of the Act based on its facial text. *Id.* Because the United States alleges *no* facts that, if proved, would enable it to succeed on its hitherto-unannounced *Arlington Heights* claim, that claim fails.

Last, on the United States' facial discrimination claim, it pleads no facts that would show that the Act's expressly-stated interests are mere pretexts. Thus, partial judgment is warranted on that claim too, to the extent that it is based on the State's interests being pretextual.

## ARGUMENT

### I.   This Court May Issue Partial Judgment.

The United States first argues that seeking partial judgment here "is an improper use of a Rule 12(c) motion." Opp. 3. But the United States concedes that courts routinely grant partial judgment on the pleadings, at least about individual claims, and the Eleventh Circuit has affirmed those grants. *See* Opp. 5-6; Motion 7. And the United States acknowledges that it makes (at least) three different equal protection claims here: it "claims that [the] statute facially discriminates," it alternatively "claims that [the] facially neutral statute purposefully discriminates," and it also claims that the Act "fails even rational basis review." Opp. 6-7. So the only question about the propriety of granting partial judgment is whether a plaintiff can

avoid such judgment by lumping multiple legal claims into a single technical count in its complaint. For three reasons, a plaintiff cannot so avoid partial judgment.

*First*, it would make no sense for a defendant's entitlement to partial judgment to turn on whether the plaintiff pled its claims in one conglomerate count or in separate counts. Many plaintiffs might have pled the government's three equal protection claims in separate counts; they are, after all, dependent on different facts and legal theories. *Cf.* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim … must be stated in a separate count or defense."); *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (a complaint that "does not separate 'each cause of action or claim for relief' into a different count" is a forbidden shotgun pleading). The United States' choice to plead its shotgun claims "[i]n the alternative" in one count (U.S. Compl. (Doc. 92) ¶ 60) cannot force all other litigants and this Court to engage in pointless litigation, including discovery and trial. That approach would defeat the point of Rule 12(c)—to weed out inadequate claims. As Wright & Miller explained, partial judgment on the pleadings "giv[es] the district judge greater flexibility and promot[es] efficiency and economy." 5C *Federal Practice & Procedure* § 1369 (3d ed. 2022); *see, e.g.*, *Wolf Designs LLC v. Five 18 Designs LLC*, 2022 WL 10551564, at *5 (D. Ariz. Oct. 18, 2022) (granting partial judgment on the pleadings where the "Plaintiff chose to allege a single" count for three "independent" claims); *accord Barmapov*, 986 F.3d at 1324 ("Besides violating the rules, shotgun pleadings

also waste scarce judicial resources, inexorably broaden the scope of discovery, …
and undermine the public's respect for the courts.").

*Second*, precedents support this approach. Other courts, including in this circuit, have granted partial judgment on the pleadings as to a portion of a claim. *See*, *e.g.*, *S. All. for Clean Energy v. Fla. Power & Light Co.*, 2018 WL 4829218, at *3 (S.D. Fla. Aug. 10, 2018), *adopted*, 2018 WL 4828434 (S.D. Fla. Sept. 12, 2018).[1]

*Third*, if necessary, this Court may treat Defendants' Motion as a motion for partial summary judgment under Rule 12(d). Under Rule 56(a), such motions can be directed to "part of [a] claim." *See* Opp. 5 (conceding this point). The result, of course, is the same: the State is entitled to partial judgment. Whether the Court labels it a partial judgment on the pleadings or a partial summary judgment (after providing notice) is immaterial; the United States' procedural objections are meritless.

## II.   The United States Has Failed To Plausibly Allege Intentional Discrimination By The Alabama Legislature.

The United States now states that its complaint contains three distinct legal claims: a rational basis claim, an *Arlington Heights* claim, and a facial discrimination claim. But the United States' complaint does not allege sufficient facts that, if true, would prove either of the first two claims. Nor does the complaint allege sufficient

---

[1] *See also FEC v. Adams*, 558 F. Supp. 2d 982, 987 (C.D. Cal. 2008) ("Judgment on the pleadings may be granted as to fewer than all of the claims, *or as to part of a claim*." (emphasis added)); *Holm v. Pollack*, 2000 WL 1689710, at *3 (E.D. Pa. Nov. 1, 2000); *Lenhart v. Printing Indus. Ins. & Health Care Plan*, 818 F. Supp. 331, 333 (M.D. Fla. 1993); *McLaughlin Transp. Sys., Inc. v. Rubinstein*, 390 F. Supp. 2d 50, 57-59 (D. Mass. 2005).

facts to show that the State's asserted interests are pretextual. Thus, judgment is warranted in full on the rational basis and *Arlington Heights* claims, and in part on the facial discrimination claim.

### A.   The United States' Rational Basis Claim Fails.

As explained in Defendants' Motion (at 15-16), the United States' complaint makes a single reference to a rational basis claim and pleads no facts that would support that claim. The federal government has no real response to this argument, instead irrelevantly noting that its single rational basis sentence "cross-reference[s] all the allegations." Opp. 7 n.4 (cleaned up). But that response does not identify a single factual allegation relevant to the specific question of whether the federal government will be able to carry its burden on rational basis review of "negat[ing] every conceivable basis which might support" the Act. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993) (cleaned up).

The United States also points to a section heading in its complaint, "Impact of S.B. 184" (Opp. 7), as if that were a factual allegation or even relevant to the rational basis inquiry. Yet the United States concedes that it is not bringing any claim that the statute "is being administered in a discriminatory manner." Opp. 6-7. And the allegations under the heading "Impact" just reiterate the United States' facial heightened scrutiny claim, as they set forth contentions about the Act's effects based on its prohibitions. Thus, even proving any factual allegations in that section would not

show that the Act could not plausibly be related to any legitimate government inter-est—the only question on rational basis review.

On that question, "[a]s long as the [State] can present at least one plausible, arguably legitimate purpose for the" Act, judgment is required for the State. *Haves v. City of Miami*, 52 F.3d 918, 923 (11th Cir. 1995). "[T]he burden is on the chal-lenger to disprove every conceivable basis," "whether or not the basis has a founda-tion in the record." *Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1547 (11th Cir. 1994) (cleaned up). And the federal government's own cases say that "rational basis review" does not "inquir[e] into actual state purposes." Opp. 12 (cleaned up); *see also Haves*, 52 F.3d at 923 ("[T]he actual purposes of [the Act] are not relevant to a rational-basis equal protection inquiry."); *Williams v. Morgan*, 478 F.3d 1316, 1320-21 (11th Cir. 2007) ("[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually moti-vated the legislature." (quoting *Beach*, 508 U.S. at 315)).

The United States does not dispute—and indeed *alleges*—that the Act prohib-its medical interventions on minors that the Alabama Legislature found to be "un-proven" and "experimental," with "numerous harmful effects." U.S. Compl. ¶¶ 41, 43; *see also* Doc. 116 ¶ 41 (Answer). So cases involving claims that "the laws at issue lack any [legitimate] purpose" (Opp. 13) are inapt, for the federal government has affirmatively alleged that the Legislature stated a legitimate purpose of

protecting children from harmful interventions.[2] This legitimate legislative purpose is express in the Act. *See* Ala. Code § 26-26-2(16). And the rational relation between this purpose and prohibiting the administration of these interventions to minors is self-evident—and again explained in the Act itself. *See id.* § 26-26-2.[3]

Given the United States' own allegations, and the rationales appearing on the face of the Act, "[i]t cannot be said that it is impossible to 'discern a relationship to legitimate state interests' or that the [Act] is 'inexplicable by anything but animus.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2420-21 (2018). "A statute is constitutional under rational basis scrutiny so long as 'there is *any reasonably conceivable state of facts* that could provide a rational basis for the statute.'" *Williams*, 478 F.3d at 1320 (cleaned up). And "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach*, 508 U.S. at 315. By reference to the Alabama Legislature's own findings and express purposes, the pleadings establish that the Act is constitutional under rational basis review. That would be the case even if the United States' factual allegations

---

[2] Moreover, the majority's decision in *United States v. Windsor*, 570 U.S. 744 (2013), does not expressly apply rational basis review. Whatever standard that decision applied, the federal government does not dispute that the *Windsor* Court relied solely on publicly available documents to inform its inquiry—not some hidden private purpose that the federal government seems intent on pursuing here. *See* Motion 17. And again, the federal government does not make factual allegations that, taken as true, would permit it to succeed on its rational basis claim.

[3] The State also has a valid interest in regulating the medical profession. *E.g.*, *Gonzales v. Carhart*, 550 U.S. 124, 157 (2007) (recognizing that states have "a significant role to play in regulating the medical profession"). Again, the Act makes this purpose express. Ala. Code § 26-26-2(6).

were true. Defendants are entitled to judgment on this rational basis claim.[4]

## B.    The United States' Unpled *Arlington Heights* Claim Fails.

For the first time, the United States says that it is asserting a claim that the Act is "facially neutral" but "purposefully discriminates." Opp. 6. Defendants understood that the United States was *not* advancing such a claim, for at least three reasons: the United States never said it was making an *Arlington Heights* claim, it promised it was making the same claim as the private Plaintiffs (Motion 3-6), and nothing in its complaint would provide the factual foundation for an *Arlington Heights* claim. Issuing judgment against this newfound claim would be appropriate based on the United States' departure from its representation—relied on by this Court in granting intervention—that its claim was "the same as the claim brought by the private plaintiffs." PI Tr. 31; *see id.* at 25, 34 (this Court understanding the United States to argue "we just want to join with the plaintiffs' only existing claim" and granting intervention "traveling under the original cause of action of the plaintiffs, as opposed to an independent one"); *cf. Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("courts have broad authority to limit the ability of intervening parties to expand the scope of a proceeding").

---

[4] The United States argues that "[b]y continuing to argue that rational basis review is the appropriate standard to analyze VCAP in its appeal of this Court's preliminary injunction order," "Defendants have conceded that evidence of pretext is relevant in this case." Opp. 14. Nonsense. As just shown, evidence of actual purpose is irrelevant to rational basis review. And it would remain the United States' burden to allege facts sufficient to prove pretext; they allege no such facts, so any pretext claim fails.

In any event, as Defendants already explained—and as the United States does not seem to contest—"the federal government's complaint contains precisely zero facts related to any sort of discriminatory motive by the Legislature." Motion 11. "To plead" an *Arlington Heights* claim, "a plaintiff must raise a plausible inference that an 'invidious discriminatory purpose was a motivating factor' in the relevant decision." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020) (quoting *Arlington Heights*, 429 U.S. at 266). But the United States makes no factual allegations that would support such an inference. Its *Arlington Heights* claim thus fails.

The United States has only one apparent response (in the single sentence it devotes to the subject): that the section heading in its complaint, "Impact of S.B. 184," "support[s] its contention that the statute purposefully discriminates." Opp. 8. That section heading is not a "specific factual bas[i]s," as required to avoid judgment. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004). And as suggested by the United States' reliance on the section heading instead of any specific allegation, nothing that follows the section heading alleges anything about the Legislature's purpose or motive. That section alleges that "the sex a minor was assigned at birth determines the legality and availability of medically necessary treatments" (U.S. Compl. ¶ 52)—in other words that the Act facially discriminates. That is not an *Arlington Heights* allegation. The issue is not, as the United States suggests, whether it pled "specific legal theories" (Opp. 8), but whether it pled

factual allegations that, taken as true, would prove that the Act was motivated by an "invidious discriminatory purpose." *DHS*, 140 S. Ct. at 1915. Because it did not, its unpled *Arlington Heights* claim fails.

Even if the United States had alleged an *Arlington Heights* claim, that claim would fail to the extent it is premised on legislative pretext. As this Court already suggested, what "the authors of the legislation"—or other individual legislators—"had in mind" when they drafted and enacted the Act does not "bear on whether the statute is constitutional." Tr. 28. In *Arlington Heights*, the Supreme Court considered "[t]he legislative or administrative history" such as "contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." 429 U.S. at 268. Only in "extraordinary instances" "might" a plaintiff go beyond such publicly available documents, *id.*, and only if it can make a "strong showing of bad faith or improper behavior," *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573-74 (2019). Yet the United States fails to allege invidious discrimination at all, much less plead the extraordinary circumstances necessary to go beyond public materials.[5]

Because the United States does not plead the basic facts necessary for an *Arlington Heights* claim, and pleads nothing that would show pretext, judgment for

---

[5] The United States' opposition here vaguely alludes to an "opaque" "legislative process," while conceding that videos are available of relevant legislative hearings. Opp. 11 & n.6. That a state legislature "does not produce" formal "legislative history" (Opp. 11 n.6) is far from an extraordinary showing of improper behavior—especially when the relevant statute contains express findings and statements of purpose, as this Act does.

Defendants on this newfound claim is required.

### C. The United States' Facial Discrimination Claim Fails To The Extent It Is Based On Legislative Pretext.

For similar reasons, Defendants are entitled to partial judgment on the United States' third claim—facial discrimination triggering heightened scrutiny—to the extent that the United States asserts that the Act's stated interests are pretextual. The United States might continue to contest tailoring, assuming heightened scrutiny applies. But it does not plead facts that, if proved, would show that the State's interests in protecting children and regulating medicine are pretextual.

The United States says that it could at some future point "argue that Defendants' purported justifications for [the Act] were not genuine, were hypothesized, [or] were invented post hoc in response to litigation." Opp. 10. But the United States offers no factual allegations that would prove the State's interests were pretextual. Such allegations would be futile, for what the United States calls "purported justifications" appear on the face of the Act—as the United States' complaint alleges. U.S. Compl. ¶¶ 41, 43; *see* Ala. Code § 26-26-2. Thus, the Act's justifications were *not* "hypothesized" "in response to litigation," and the United States cannot show (and has not pled) otherwise.

In all events, questions about the Act's justifications could not turn on individual legislators' emails, reading lists, or Google searches. Though the United States describes several cases probing the "actual purpose of the statute," Opp. 10-

11, it has no response to the Defendants' showing that those cases relied on public evidence of legislative purpose—not private evidence bearing only on the contents of individual legislators' minds. Motion 12-15. Yet, now relying on an appealed district court decision and dicta in a Ninth Circuit footnote, the United States insists that "legislators' private correspondence" are "highly relevant." Opp. 15 n.8. The Supreme Court and the Eleventh Circuit have said otherwise: "[W]hat is relevant is the legislative *purpose* of the statute," not the "*motives* of the legislators who enacted the law." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens ex rel. Mergens*, 496 U.S. 226, 249 (1990) (plurality op.); *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2255 (2022); Motion 17-19 (many more cases).[6]

In sum, the United States might contest whether the Act's regulations are sufficiently tailored to its stated justifications, and the United States might even contest whether protecting children from dangerous medical interventions is a sufficiently important interest. But it offers no allegations that would show that those justifications were pretextual, and partial judgment on the pleadings is required.

## III.   Discovery Is Not A Substitute For Inadequate Allegations.

The United States' overarching theme is that partial judgment should not be issued against it until it makes undefined "future inquir[ies]" "into the legislative

---

[6] Contrary to the United States' suggestion, the prohibition on individual motive inquiries is not a "discovery rule" (Opp. 15 n.8) but a rule of interpretation. That rule, of course, means that discovery demands geared toward individual motives are irrelevant under Rule 26.

purpose" through discovery. Opp. 1. But a plaintiff whose "complaint is deficient" "is not entitled to discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). "[E]xpos[ing]" "basic deficienc[ies]" "at the point of minimum expenditure of time and money by the parties and the court" is a central purpose of pleading requirements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (cleaned up). Yet in the United States' view, a plaintiff can plead a generic equal protection claim—one that fails to put the parties and Court on notice as to what issues will be raised or facts questioned—and immediately be entitled to demand from state defendants, legislators, advocacy organizations, and citizens private "emails," "social media posts," what "the group[s] just considered," and much else. Tr. 18. As this Court recognized, that is neither the law nor where it "need[s] to go." *Id.*; *see Jackson*, 372 F.3d at 1271 ("[N]otice pleading still requires a plaintiff to provide the defendant with fair notice of the factual grounds on which the complaint rests."); *Barmapov*, 986 F.3d at 1324.

## CONCLUSION

The Court should grant the Defendants judgment on the United States' rational basis claim, its new *Arlington Heights* claim, and its facial discrimination claim to the extent that claim is based on pretextual purpose.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

*Counsel for Defendants*

16

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF

system on November 14, 2022, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
*Counsel for Defendants*

17