## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, individually and on behalf of her minor son, MICHAEL BOE; *et al.*, | Case No. 2:22-cv-184-LCB-CWB<br><br>Honorable Liles C. Burke |
| Plaintiffs, | |
| and | |
| UNITED STATES OF AMERICA, | |
| Plaintiff-Intervenor, | |
| v. | |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama; *et al.*, | |
| Defendants. | |

## RESPONSE IN OPPOSITION TO EAGLE FORUM OF ALABAMA AND SOUTHEAST LAW INSTITUTE'S MOTION FOR SANCTIONS AGAINST THE UNITED STATES OF AMERICA

# INTRODUCTION

The United States acted in good faith and for a proper purpose when issuing the subject subpoenas in this litigation and took reasonable steps to meet and confer at every stage, and to mitigate any burden and cost of compliance. The United States issued the subpoenas in a good faith attempt to frame the central issues before the Court in this case. The United States believed that the documents sought through these subpoenas would contain information relevant to its claim under the Fourteenth Amendment's Equal Protection Clause—specifically, information regarding the origins of Alabama's Vulnerable Child Compassion and Protection Act ("VCAP"), the legislative purpose and motive underlying the law at issue, and the factual bases for the justifications asserted by the State in support of its passage.

Before and after issuing the subpoenas to Eagle Forum of Alabama ("EFA") and Southeast Law Institute ("SLI"), the United States reached out to and attempted to work with EFA and SLI on multiple occasions. After obtaining important information through declarations attached to EFA and SLI's motions to quash and after learning—for the first time—of the organizations' concerns about burden, the United States immediately responded to the concerns of EFA and SLI: it notified EFA and SLI that the information they provided in their motion and declarations actually sufficed to resolve six of the 11 categories in the subpoenas,

and it offered to narrow the subpoenas' scope and to accept production of any documents on a rolling basis. After that offer, the United States ultimately withdrew nearly all of the requests. The United States' good faith, as demonstrated throughout these actions, renders sanctions inappropriate.

The United States remains committed to pursuing discovery in a respectful manner that avoids burdening non-party organizations like EFA and SLI. Therefore, the United States respectfully requests that the Court deny the pending motion for sanctions.

## BACKGROUND

The United States alleges that VCAP discriminates on the basis of sex and transgender status in violation of the Equal Protection Clause of the Fourteenth Amendment. Based on public statements made by EFA and SLI representatives suggesting that the organizations wrote VCAP, on August 15, 2022, the United States issued subpoenas to the organizations seeking documents to help illuminate the drafting of and purpose underlying the bill and to help frame factual issues in the litigation. *See* ECF No. 192 at 2-3.

Prior to serving the subpoenas, the United States reached out to EFA and SLI to notify them of the forthcoming subpoenas, and asked for their preferred service method. After they were served with the subpoenas, EFA and SLI, through counsel, sought more time to respond, and the United States readily agreed to an

extension, which counsel later described in an email as "courteous." ECF Nos. 151-2, at 1; 168-5, at 3. On August 19, counsel for EFA and SLI emailed counsel for the United States, clarifying that EFA and SLI would be objecting to "some, if not all," of the subpoenas because they requested "improper items." ECF No. 151-2, at 2. During this email exchange, counsel for EFA or SLI did not specifically assert that the subpoenas sought privileged documents or that compliance would be unduly burdensome.

On September 7, 2022, EFA and SLI filed motions to quash. *See* ECF Nos. 151, 152. Upon receiving the motions, the United States immediately reached out to counsel for EFA and SLI. *See* ECF No. 168-5 at 2-3. The parties spoke on September 8, 2022. On the call, counsel for EFA and SLI asserted that all documents requested in the subpoenas were protected from disclosure under the First Amendment and on the basis of relevance, and that some also were protected under the attorney-client and work-product privileges. ECF No. 168 at 5. The United States asked if EFA and SLI would provide a privilege log or information about the documents such as the number of documents, authors, or dates, so that the United States could assess the claims of privilege. Counsel responded that the organizations would not produce a privilege log, in part because counsel and his clients felt that the subpoenas were a form of harassment. In response, the United States emphasized that it was not seeking any membership-related information,

3

explained the requested documents' relevance given the organizations' role in

drafting the law at issue in this case, and the need to assess the factual basis for the

law's purported justifications. The United States informed counsel that it was

willing to discuss a proposal for a more limited production at any time. Counsel for

EFA and SLI declined that invitation.

On September 14, 2022, the United States followed up with counsel for EFA

and SLI. *See* ECF No. 168-6 at 3. Counsel for the United States explained that, in

light of the information provided by the organizations in the declarations attached

to their motions to quash, the United States was prepared to substantially narrow

the scope of the materials sought in both subpoenas. The United States stated that it

would accept a more limited production in response to only categories 1, 2, and 4-6

of the subpoenas—requests focused on the drafting of VCAP as well as the

purpose and rationale for the bill presented to the legislature by VCAP's writers.

*Id.* The United States also sought to minimize any burden by offering to accept

production on a rolling basis. Finally, counsel for the United States stated that if

EFA or SLI had "any counter proposals or questions, or any other suggestions for

ways to narrow the issues before the Court, [the United States was] happy to

discuss." *Id.* Counsel for EFA and SLI responded that his clients' position had not

changed. *Id.* at 2.

On October 6, 2022, counsel for the United States informed EFA and SLI that it was only seeking medical studies and literature specifically referenced in VCAP and the studies and literature provided to the Alabama State Legislature in support of VCAP. The United States confirmed that it was no longer seeking any other documents or information from EFA or SLI and that it would withdraw the subpoenas if EFA and SLI agreed to produce the aforementioned studies. On October 7, 2022, counsel for EFA and SLI informed the United States that it would decline this offer. In response, the United States advised counsel for EFA and SLI that it would file a notice informing the Court of the narrowed scope of the subpoenas to reduce the issues before the Court at the October 14, 2022 hearing.[1] *See* ECF No. 184.

The Court held a hearing on the motions to quash on October 14, 2022, and granted the motions on October 24, 2022. *See* ECF No. 192 at 6-7. The Court did not address the organizations' claim of harassment, nor their First Amendment or other privilege arguments. The Court pointed out, however, that the United States was not prohibited from issuing a more narrowly-tailored subpoena to EFA and SLI seeking previously-unidentified medical studies supporting the need for VCAP. ECF No. 192 at 6-7; *see also* Tr. of October 14, 2022 hearing, ECF No.

---

[1] The Court found that this narrowed request does not "fit squarely into any of the eleven categories of evidence listed in the subpoenas." ECF No. 192 at 6 n.14.

191 at 40-41 (stating that such studies "may well be relevant to the ultimate outcome" of the case).

## ARGUMENT

### I.    The United States Issued the Subpoenas in Good Faith and for a Proper Purpose.

"A court may . . . impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-md-2885, 2020 WL 5578428, at *9 (N.D. Fla. Feb. 18, 2020). The Court should deny EFA and SLI's request to sanction the United States under Federal Rule of Civil Procedure ("Rule") 45(d)(1) because the United States did not issue subpoenas to those organizations in bad faith, for an improper purpose, or in a manner inconsistent with existing law. Absent clear evidence of the contrary, courts generally presume that government officials have properly discharged their official duties. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties") (quotations omitted); *see also Wynn v. City of Griffin, Georgia*, No. 19-10479, 2021 WL 4848075, at *8 (11th Cir. Oct. 18, 2021) ("In the absence of evidence indicating otherwise, we presume that [the government

official] was acting in good faith and accomplishing her duties in an appropriate manner.").

Rule 45 provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The "failure to take such reasonable steps" to avoid undue expense and burden "can lead to sanctions, including the award of attorneys' fees in favor of the non-party" subpoena recipient. *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000-RDP, 2018 WL 11425554, at \*2 (N.D. Ala. Oct. 24, 2018).

The Court has discretion in applying Rule 45(d)(1), even where it finds that a discovery request was overly broad. *Legal Voice*, 738 F.3d at 1185 (recognizing that "such overbreadth may sometimes result from normal advocacy, which . . . should not give rise to sanctions"); *United States ex rel. Willis v. SouthernCare, Inc.*, No. CV410-124, 2015 WL 5604367, at \*10 n.25 (S.D. Ga. Sept. 23, 2015). Sanctions are "in no way supported merely because a party advocated a position in seeking discovery that lost in the end." *In re Subpoena issued to Birch Commc'ns, Inc.*, No. 1:14-cv-3904-WSD, 2015 WL 2091735, at \*6 (N.D. Ga. May 5, 2015) ("The scope of permissible sanctions . . . should not be so broad as to chill or deter the vigorous advocacy on which our civil justice system depends.") (quoting

*Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429-430 (9th Cir. 2012)); *see also In re 3M*, 2020 WL 5578428, at *9.

Whether a subpoena is issued in bad faith or for an improper purpose in violation of Rule 45 is a heavily fact- and context-specific inquiry. *See*, *e.g.*, *Legal Voice*, 738 F.3d at 1185-86. Practices that suggest bad faith or improper purpose include (1) issuing a subpoena that willfully violates a court order, *see id.*; *see also In re Air Crash at Charlotte, N.C.*, 982 F. Supp. 1092, 1095 (D.S.C. 1997); (2) issuing a subpoena after the close of discovery, *see Progressive Emu Inc. v. Nutrition & Fitness Inc.*, 785 F. App'x 622, 627 (11th Cir. 2019); or (3) allowing an obviously unreasonable amount of time for the recipient to comply with the request, *id.* at 629 n.10; *see also Dika-Homewood, LLC v. Office Max, Inc.*, No. 22-mc-80766, 2022 WL 3682214, at *1 (S.D. Fla. June 16, 2022). None of those scenarios happened here.

By contrast, sanctions are not warranted where a party issues a subpoena "for a proper discovery purpose," *Boyington v. Percheron Field Servs., LLC*, No. 3:14-cv-90, 2016 WL 2758293, at *3 (W.D. Pa. May 12, 2016); where the propounding party "made significant compromises without a court order," *see In re Am. Kidney Fund, Inc.*, No. TDC-17-1787, 2019 WL 1894248, at *6 (D. Md. Apr. 29, 2019); or where a party issues a subpoena based on a misunderstanding of the

law concerning an issue of first impression, *see In re Subpoena issued to Birch Commc'ns, Inc.*, 2015 WL 2091735, at *6.

Here, the United States has not acted in bad faith or for an improper purpose. The United States sought documents relating to VCAP's legislative history and purpose; the United States reasonably believes the history and purpose of the bill are relevant to the core factual issues and the equal protection claim in this case. Alabama does not provide significant publicly-available information reflecting the official legislative history of legislation, including VCAP, and the United States therefore sought to understand the origins of and the need for VCAP by issuing the subject subpoenas. The Supreme Court has held that the motivations for passing a law are relevant to equal protection claims. *See, e.g.*, *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973). And courts within this circuit have recognized that the "specific sequence of events" leading to a bill's passage, such as legislator statements, minutes of meetings, or reports, "can be relevant to show that a legislative body took certain action to effectuate the discriminatory motives of private third parties." *City of S. Miami v. DeSantis*, 561 F. Supp. 3d 1211, 1271-72 (S.D. Fla. 2021), *appeal docketed*, No. 21-13657 (11th Cir.); *see also Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1321 (11th Cir. 2021). The United States also understood that this Court was interested in

ascertaining where VCAP came from and who wrote it during the preliminary

injunction proceedings. Tr. of May 6, 2022 hearing, ECF No. 105.

Even if the Court ultimately determines that documents relating to

legislative purpose are not relevant, sanctions are not warranted because the United

States reasonably believed, based on precedent such as that cited above, that

subpoenas concerning the drafting of, factual basis for, and motive underlying

VCAP would yield relevant information. *See*, *e.g.*, *In re Subpoena issued to Birch

Commc'ns, Inc.*, 2015 WL 2091735, at *6; *In re 3M Combat Arms Earplug Prod.

Liab. Litig.*, 2020 WL 5578428, at *9; *Alabama Educ., Ass'n v. Bentley*, No. CV-

11-S-761-NE, 2013 WL 12419638, at *2-*4 (N.D. Ala. Jan. 29, 2013) (denying

motion to quash subpoenas and granting plaintiffs' motion to compel because

subpoenas were issued to ascertain information about legislative purpose). This is

particularly true in light of the Court's observation that the United States is not

prohibited from issuing a more narrowly tailored subpoena to EFA and SLI

seeking documents relating to medical studies supporting a need for VCAP or from

conducting such discovery informally in the future. *See* ECF No. 192 at 6-7.[2]

For the reasons stated above, the Court should conclude that the United

States did not issue subpoenas to EFA and SLI in bad faith, for an improper

purpose, or in a manner contrary to law.

---

[2] The United States does not intend to serve any further subpoenas on EFA or SLI.

**II.**   **The United States Took Reasonable Efforts to Avoid Imposing an Undue Burden on EFA and SLI.**

Sanctions are unwarranted for the additional reason that the United States took reasonable efforts to avoid imposing an undue burden on EFA and SLI. Rule 45(d)(1)'s "undue burden" standard "is limited to harms inflicted by *complying* with the subpoena." *See Mount Hope Church*, 705 F.3d at 428 (emphasis added). EFA and SLI never complied with the United States' subpoenas, nor were they compelled to. EFA and SLI instead argue that sanctions are warranted because the United States "had an affirmative duty" under Rule 45 "to avoid an undue burden on EFA and SLI "before issuing the subpoenas." ECF No. 198 at 11-12. But at the time it served the subpoenas, the United States did not know if the volume of responsive documents would be extensive, details concerning how EFA and SLI were staffed, or whether producing the documents would be burdensome to EFA and SLI. At every stage, the United States engaged in good faith efforts to meet and confer and negotiate with counsel.

Prior to the motions to quash, counsel for EFA and SLI had informed the United States that the organizations objected to production of "some, if not all" of the categories of documents on unspecified grounds. *See* ECF No. 151-2, at 2. The United States had no notice that EFA and SLI considered its requests to be burdensome until the organizations filed their motions to quash, which were accompanied by declarations confirming that EFA and SLI were involved in

11

drafting VCAP. Once it was aware of EFA and SLI's concerns, the United States advised them that it had already obtained much of the information sought in the subpoenas through their motions and declarations, and it offered to narrow the scope of the subpoenas. Though its efforts were rebuffed in this regard, the United States ultimately withdrew nearly all of its requests prior to the hearing on the motion to quash. *See* ECF Nos. 168-6; 184. These efforts reflect good faith attempts to respond to EFA and SLI's concerns while also endeavoring to obtain information relevant to the United States' claim and factual issues before the court in this case.

Courts have recognized that attempts to meet and confer and offers to narrow the scope of discovery requests are reasonable steps to avoid subjecting recipients of subpoenas to undue burdens under Rule 45. "Where a serving party engages in good faith negotiations to resolve a conflict over its subpoena and to avoid imposing an undue burden, courts have declined to impose Rule 45 sanctions absent a showing that the subpoena was issued in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *In re Am. Kidney Fund, Inc.*, 2019 WL 1894248, at *6; *see also Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (finding that the defendant had engaged in sufficient good faith efforts to negotiate reasonable parameters on the subpoena to preclude sanctions); *Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 23 (D.D.C. 2015) (finding that a party

complied with its duty to avoid undue burden where it attempted to resolve a matter in good faith for six weeks, clearly stated it would not seek confidential source information, and attempted to narrow the issues informally); *Centuria, Inc. v. Regiment Sec., LLC*, No. 8:11-mc-125-T-33EAJ, 2012 WL 695850, at *1 (M.D. Fla. Feb. 14, 2012) (plaintiff attempted to reduce undue burden by reaching out to discuss an extension and attempting to resolve the matter informally).

EFA and SLI's reliance on *Progressive Emu Inc.*, 785 F. App'x 622, is misplaced. In that case, the plaintiff served a subpoena after discovery had closed on the last business day before trial demanding documents spanning a ten-year period, and demanded production in less than one business day. *Id.* at 626, 628. The Eleventh Circuit affirmed the award of sanctions, stating that "Rule 45 leaves no room for a party or attorney to issue an untimely, facially overbroad and unduly burdensome subpoena and expect to work out the details later, *especially when the subpoena requires compliance in less than one business day, as was the case here*." *Id.* at 629 n.10 (emphasis added). Such vexatious conduct bears no resemblance to the United States' efforts in this case. *See In re ATIF, Inc.*, 622 B.R. 127, 132-33 (Bankr. M.D. Fla. 2020) (distinguishing *Progressive Emu* on similar grounds).

In granting the motion for sanctions, the court in *Progressive Emu* focused on the timing of the subpoena in relation to the offer to meet and confer; it did not

reject outright the proposition that a meet and confer process can reduce undue burden. Because the subpoena in *Progressive Emu* was issued well after the close of discovery and demanded compliance in less than one business day, the Eleventh Circuit understandably found the plaintiff's offer to meet and confer to be disingenuous. *Progressive Emu*, 785 F. App'x at 629 n.10. *Progressive Emu* is consistent with other cases holding that a party may be sanctioned for issuing a subpoena after the close of discovery, or for giving the subpoenaed party an obviously insufficient time to comply. *See, e.g.*, *Black v. Yongue*, 2014 WL 7335030, at *3-4 (W.D. Pa. Dec. 19, 2014) (finding bad faith for engaging in discovery after the deadline had passed); *Mid-Atl. Constructors, Inc. v. Stone & Webster Constr. Inc.*, 231 F.R.D. 465, 467-68 (E.D. Pa. 2005) (party served a subpoena after the discovery deadline without notice to opposing counsel); *Dika-Homewood, LLC*, 2022 WL 3682214, at *1 (subpoena required recipient to appear for deposition and to produce documents one business day after it was served).

Those circumstances are not present here. The United States issued the subpoena well before the end of the discovery period. And far from cabining EFA and SLI's time to respond, the United States agreed to provide EFA and SLI with an extension to respond to the subpoenas as requested. *See* ECF No. 152-2 at 1-3. The United States also stated that it would accept production on a rolling basis. ECF No. 168-6, at 3.

14

While the review and response to any subpoena may impose some small measure of burden on the recipient, more is required to merit the extraordinary step of imposing Rule 45(d)(1) sanctions. Because the United States undertook reasonable steps to avoid imposing an undue burden on the organizations, a finding of a Rule 45(d)(1) violation is not warranted.

## III.   The Balancing of the Equities Does Not Support the Imposition of Costs or Attorneys' Fees.

EFA and SLI have failed to establish that imposing costs and attorneys' fees on the United States is appropriate here. To determine whether to shift costs from one party to another under Rule 45, courts have considered: "(1) whether the non-party has an interest in the outcome of the case; (2) whether the non-party's financial status allows it to more easily bear the costs than the requesting party; and (3) whether the litigation is of public importance." *In re ATIF, Inc.*, 622 B.R. at 132 (quoting *In re Am. Kidney Fund*, 2019 WL 1894248, at *8).[3] Here, each of those factors weigh against imposing costs or attorneys' fees.

First, when the nonparty producing materials has a potential interest in the underlying litigation, courts have weighed that interest against shifting the costs of production to the requesting party. *Bell Inc. v. GE Lighting, LLC*, No. 6:14-CV-00012, 2014 WL 1630754, at *13 (W.D. Va. Apr. 23, 2014). EFA and SLI plainly

---

[3] Some courts have applied this test as an alternative to the undue burden test under Rule 45(d)(1). *In re ATIF, Inc.*, 622 B.R. at 131-32.

have an interest in the outcome of the case, as they assisted with drafting VCAP, provided information and research, and advocated in support of its passage. EFA and SLI have acknowledged their interest in this case. *See* ECF Nos. 151-3, 151-4, 152-3. Courts have found that when a nonparty is involved in conduct at the center of a dispute, this type of interest matters to the cost-shifting analysis. *See In re Am. Kidney Fund*, 2019 WL 1894248, at *9; *see also Behrend v. Comcast Corp*., 248 F.R.D. 84, 85-87 (D. Mass. 2008).

Second, the financial status prong also weighs in the United States' favor. While EFA and SLI are small organizations that might have been burdened if they undertook action to identify and locate a voluminous number of documents, produced a privilege log, or more, that did not occur here. Courts have interpreted "undue burden" with respect to the tangible costs or burdens that flow from *compliance* with the subpoena, not the adjudication of follow-on issues, such as privilege or litigating motions to quash. *Mount Hope Church*, 705 F.3d at 423, 427-29 (reversing a sanction imposed after a third party had succeeded in quashing a subpoena); *see also Goldberg*, 123 F. Supp. 3d at 23 (granting motion to quash but denying request for attorneys' fees); *In re Am. Kidney Fund*, 2019 WL 1894248, at *6; *Scherer v. GE Capital Corp.*, 185 F.R.D. 351, 352 (D. Kan. 1999 (finding that sanctions were not appropriate simply for the expense of filing the motion to quash). Here, counsel for EFA and SLI consistently said they would not

produce any documents and would not create a privilege log. *See* ECF Nos. 168, 168-6, 176. The United States did not file a motion to compel and courts have recognized that the expenses associated with successfully litigating a motion to quash do not justify the imposition of sanctions under Rule 45 because those expenses are not incurred as part of compliance with a subpoena. *See Mount Hope Church*, 705 F.3d at 427-28. *Cf. In re Blue Cross Blue Shield Antitrust Litigation*, 2018 WL 11425554, at *2-3 (expenses "resulting from compliance" with a subpoena "do not include 'attorneys' fees incurred *resisting* a subpoena' . . . [or] 'attorneys' fees for litigating a subpoena' . . ." in case interpreting Rule 45(d)(2)(B)(ii) (quoting Fed. R. Civ. P. 45(d)(B)(ii) and *Stormans Inc. v. Selecky*, No. C07-5374 RBL, 2015 WL 224914 at *5 (W.D. Wash. Jan. 15, 2015)) (emphasis in original). In any event, it appears that the actual costs incurred were limited as counsel represented EFA and SLI on a pro bono basis. ECF No. 198-5 ¶ 3.[4]

---

[4] EFA and SLI have asked the Court to impose sanctions for their "time and reasonable costs," ECF No. 198-1, "compensatory damages," ECF No. 198-2, and their "losses," ECF No. 193-3, but only the SLI president's declaration attempts to calculate any expenses actually incurred by the organizations, asserting that SLI accrued $13,765.38 in costs. *See* ECF No. 198-4 ¶ 7. However, all but $105.38 of that total represent attorneys' fees generated by SLI's president. *Id.* The SLI president's declaration identifies his "usual rate" but does not claim that he charged EFA and SLI separately for those services. *Id.* Moreover, that declaration does not provide a basis for cost shifting because it does not identify expenses associated with complying with the subpoena.

Third, and finally, this case involves a matter of public importance. *See* ECF No. 58-2. It concerns the incarceration of physicians for providing the established standard of medical care for certain patients as well as the State's role in decision-making between a doctor and a patient. And, of course, the case has constitutional implications. The public importance of the case weighs against cost shifting in this case. *See Jeune v. Westport Axle Corp.*, No. 7:14-cv-617, 2016 WL 1430065, at *3 (W.D. Va. Apr. 8, 2016) (issue of religious discrimination is of public importance).[5]

Because the equities weigh in favor of the United States, the Court should decline to impose costs and attorneys' fees.

## IV.    <u>Punitive Sanctions are not Authorized or Appropriate</u>.

The Court should decline EFA and SLI's invitation to impose unprecedented "significant punitive sanctions" against the United States. ECF No. 198 at 3. Rule 45's text does not authorize such sanctions, stating instead that an "appropriate sanction" "may include lost earnings and reasonable attorney's fees." Fed. R. Civ. P. 45(d)(1). Additionally, the Advisory Committee notes to Rule 45 provide only that "[t]he liability may include the cost of fees to collect attorneys' fees owed as a result of a [misuse of the subpoena]." Fed. R. Civ. P. 45(c)(1) advisory

---

[5] Courts "have varied in how the importance of a case [a]ffects the decision on whether to shift costs from one party to another." *In re ATIF, Inc.*, 622 B.R. at 132 (quoting *In re Am. Kidney Fund*, 2019 WL 1894248, at *9).

committee's notes to 1991 amendment (addressing the section now re-numbered as 45(d)(1)). EFA and SLI do not identify any case in which a court imposed punitive sanctions pursuant to Rule 45 and the United States is not aware of any. Even in factually inapposite cases involving extreme abuses of the subpoena process, such as *Progressive Emu*, courts awarded costs and attorneys' fees but not punitive sanctions. *See* 785 F. App'x at 632. Therefore, an award of punitive sanctions would be inappropriate.[6]

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny EFA and SLI's motion for sanctions against the United States of America.

Dated: November 23, 2022                    Respectfully submitted,

SANDRA J. STEWART                         KRISTEN CLARKE
United States Attorney                    Assistant Attorney General
Middle District of Alabama                Civil Rights Division

PRIM F. ESCALONA                          JOHN POWERS (DC Bar No. 1024831)
United States Attorney                    Counsel to the Assistant Attorney General
Northern District of Alabama              Civil Rights Division

LANE H. WOODKE                            CHRISTINE STONEMAN
Chief, Civil Division                     Chief, Federal Coordination and Compliance

---

[6] EFA and SLI's motion is directed to the United States, not individual attorneys. *See In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000) ("[D]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions.") (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)) (emphasis in original); *Markus v. Rozhkov*, 615 B.R. 679, 707-08 (S.D.N.Y. 2020); *In re Engle Cases*, 283 F. Supp. 3d 1174, 1203 (M.D. Fla. 2017).

Northern District of Alabama        Section

JASON R. CHEEK  
Deputy Chief, Civil Division  
MARGARET L. MARSHALL  
Assistant U.S. Attorney  
U.S. Attorney's Office  
Northern District of Alabama  
1801 Fourth Avenue North  
Birmingham, AL 35203  
Tel.: (205) 244-2104  
Jason.Cheek@usdoj.gov  
Margaret.Marshall@usdoj.gov  

STEPHEN D. WADSWORTH  
Assistant United States Attorney  
U.S. Attorney's Office  
Middle District of Alabama  
Post Office Box 197  
Montgomery, AL 36101-0197  
Tel.: (334) 223-7280  
Stephen.Wadsworth@usdoj.gov  

*/s/ Coty Montag*  
COTY MONTAG (DC Bar No. 498357)  
Deputy Chief, Federal Coordination and  
Compliance Section  

ALYSSA C. LAREAU (DC Bar No. 494881)  
RENEE WILLIAMS (CA Bar No. 284855)  
KAITLIN TOYAMA (CA Bar No. 318993)  
Trial Attorneys  
United States Department of Justice  
Civil Rights Division  
Federal Coordination and Compliance  
Section  
950 Pennsylvania Avenue NW – 4CON  
Washington, DC 20530  
Tel.: (202) 305-2994  
Alyssa.Lareau@usdoj.gov  
Renee.Williams3@usdoj.gov  
Kaitlin.Toyama@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Respectfully submitted,

*/s/ Coty Montag*
Deputy Chief
U.S. Department of Justice

21