# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA,
# NORTHERN DIVISION

| | | |
|---|---|---|
| **BRIANNA BOE, et al.;** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **Civil Action No.** |
| | ) | **2:22-cv-00184-LCB** |
| | ) | |
| **Plaintiff-Intervenor,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **STEVE MARSHALL,** in his official capacity as Attorney General of the State of Alabama; et al.; | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

### EAGLE FORUM OF ALABAMA'S AND SOUTHEAST LAW INSTITUTE'S REPLY TO THE U.S.'S RESPONSE IN OPPOSITION TO THEIR MOTION FOR SANCTIONS

Non-parties Eagle Forum of Alabama ("EFA") and Southeast Law Institute ("SLI") hereby reply to the United States of America Department of Justice's[1] Response In Opposition (Doc. 201) to EFA's and SLI's Motion for Sanctions (Doc. 198). Contrary to the DOJ's argument, sanctions are appropriate and called for under the clear language of Fed. R. Civ. P. 45(d)(1) due to the improper subpoenas issued

---

[1] Referred to hereafter as the "DOJ" or "Government."

by the DOJ (as well as its subsequent conduct) because it utterly failed to comply with its duty to take reasonable steps to avoid imposing undue burden and expense on these non-parties.

The DOJ argues that, notwithstanding its misconduct in issuing the incredibly broad 11-category document subpoenas to these non-parties (the impropriety of which the Court has already recognized by quashing the subpoenas in their entirety), the DOJ should avoid sanctions because it issued the subpoenas "in good faith and for a proper purpose."  The DOJ's argument is legally off base from the start as it ignores the plain language of Rule 45(d)(1) and its affirmative duty to non-parties under that rule, and instead implies that its misconduct should be judged by a "good faith" standard that is not in fact the law.  That argument is also factually incorrect for reasons discussed in EFA's and SLI's Motion for Sanctions, and further addressed below, as in fact the subpoenas could not possibly have been issued in good faith or for a proper purpose in the first place.  Thus, even under the erroneous standard for sanctions which the DOJ asserts, sanctions are still appropriate.

**I.     The DOJ's breach of its duty under Rule 45(d)(1) to avoid imposing undue burden or expense on these non-parties is not excused by its alleged "good faith," even if that existed here which it does not.**

The starting place to determine the DOJ's duty when it improperly issued the subpoenas and whether sanctions should be imposed as a result should obviously be

2

the text of the pertinent rule that defines that duty and provides for sanctions for breach of that duty. The text of the controlling rule is as follows:

> A party or attorney responsible for <u>issuing</u> and serving a subpoena must take reasonable steps to avoid imposing <u>undue burden or expense</u> on a person subpoena to the subpoena. The court for the district where compliance is required <u>must</u> enforce this duty and impose an appropriate sanction – which may <u>include</u> lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1) (emphasis added). Nowhere in the rule is there any provision for a party such as the DOJ here which has violated its duty under the rule to non-parties and failed (egregiously so, in this case) to take reasonable steps to avoid imposing undue burden or expense on them to nonetheless avoid sanctions due to the party's alleged "good faith."

Similar to the DOJ's subpoena here, the subpoena at issue in <u>Progressive Emu Inc. v. Nutrition & Fitness Inc.</u>, 785 F. App'x 622 (11th Cir. 2019) was "facially overbroad and unduly burdensome," demanding "any and all documents" from 10 categories of documents over a period of multiple years. <u>Id.</u> at 627-29. Much like the DOJ here, the law firm in that case which had been sanctioned by the district court under Rule 45(d)(1) tried to avoid those sanctions on appeal by arguing that it had issued the subpoena "in good faith." The Eleventh Circuit upheld the sanctions, noting that among other things the "good faith" argument did not account for the "enormous breadth" of the documents it had improperly demanded from the non-party. <u>Id.</u> at 629. The Court further observed that "[e]ven if Plaintiff had a legitimate

need to issue a trial subpoena for some documents covered by its subpoena, that does not negate the overly broad and unduly burdensome nature of the subpoena" and then quoted the language of Rule 45(d)(1) that imposed a duty on the law firm to avoid doing just that. Id. at 629 n. 8.[2]  Similarly, the DOJ's claimed "good faith" in this case, even if it existed which it does not, does not begin to account for the enormous breadth of the (irrelevant) documents the DOJ demanded from EFA and SLI. Nor does the DOJ even now acknowledge the significant First Amendment privilege issues implicated by its subpoenas.[3]  Thus, as discussed further in the Motion for Sanctions, Doc. 198, pp. 12-13, the DOJ's conduct in this case is more egregious – not less egregious -- than that which the Eleventh Circuit sanctioned in Progressive Emu.

Rather than the standard imposed by the text of the rule itself, the DOJ cites a non-controlling Ninth Circuit case, Legal Voice v. Stormans Inc., 738 F.3d 1178 (9th Cir. 2013) to erroneously imply to this Court that sanctions can only be issued under Rule 45(d)(1) when a party issues a subpoena "in bad faith, for an improper purpose,

---

[2] While it is true that there were also other problems with the subpoena in Progressive Emu (e.g., demanding compliance in less than one business day), the DOJ's attempt to limit the case's holding to those problems is inconsistent with the Eleventh Circuit's plain language.

[3] Again, because the DOJ subpoenas fell outside the scope of discovery and thus were due to be quashed anyway, this Court ruled that it did not need to address EFA's and SLI's further arguments that the subpoenas were also due to be quashed due to First Amendment privilege. (Doc. 192, p. 6, fn. 15.).

or in a manner inconsistent with existing law." See the DOJ's response brief, pp. 6, 10.  However, as the Sixth Circuit recognized in New Prod. Corp. v. Dickinson Wright PLLC, 890 F.3d 244 (6th Cir. 2018), the Ninth Circuit in Legal Voice did not purport to impose a bad-faith requirement to the rule.  "In fact, the passage quoted from *Legal Voice* explained that 'failure narrowly to tailor a subpoena may be a ground for sanctions.'"  890 F.3d at 251.  The Sixth Circuit in New Prod. Corp. affirmed the imposition of sanctions by the court below for reasons which certainly apply to this case as well:

> … the subpoenas issued to the non-parties were unduly burdensome for reasons that included the undisputedly broad scope of the requests in terms of the number of categories, the breadth of each category, and the temporary reach of the requests.  Also, as an experienced commercial litigator, [the sanctioned party attorney in that case] would have known that complying with such subpoenas would involve considerable time and resources, implicate significant concerns about customer privacy for [one of the non-parties], and require review for privileged communications and attorney work product regarding matters for which [non-party's law firm] had been retained.

890 F.3d at 251. Similarly, the DOJ is not only the largest law firm in the world, but also the most experienced law firm in the world in constitutional litigation.  It had to know that its "team subpoena[s]"[4] were certainly not "narrowly tailored" and would impose significant burden and expense on EFA and SLI, as well as raise significant concerns about EFA's and SLI's First Amendment rights as well as other privileges.

---

4       Transcript of 10/14/22 hearing, p. 8.

## II.    Sanctions are appropriate because the DOJ Did Not Take Reasonable Steps to Avoid Imposing Undue Burden or Expense on EFA and SLI.

The DOJ's attempt to avoid sanctions and slide its hand back out of the cookie jar after the spotlight was turned on ignores the incredibly broad scope of the multi-year, multi-category document subpoenas it issued, as well as the evolving and bogus rationale it has advanced to justify them. At the risk of some repetition, the categories of those documents <u>since 2017</u> which the DOJ was demanding in native format are repeated for the Court's convenience:

> 1. Any draft legislation, proposed legislation, or model legislation relating to VCAP, SB 184, HB 266, or their predecessor bills that [EFA or SLI] wrote, assisted in writing, provided feedback on, or reviewed.
>
> 2. Any materials considered by [EFA or SLI] in preparing legislation, draft legislation, proposed legislation, or model legislation relating to VCAP, SB 184, HB 266, or their predecessor bills, including (1) any model or sample legislation from other third-party organizations or jurisdictions; and (2) medical studies, opinions, or evidence.
>
> 3. Any documents concerning [EFA's or SLI's] legislative or policy goals, initiatives, and/or strategies relating to medical care or treatment of transgender minors, or minors with gender dysphoria.
>
> 4. Any documents provided to the Alabama State Legislature or any employee or member thereof in support of VCAP, SB 184, HB 266, or any predecessor bills, including written testimony, letters, emails, draft legislation, model legislation, or proposed legislation, reports, summaries, analyses, fact sheets, and/or talking points.
>
> 5. Any communications between [EFA or SLI] and any employee, agent, assign, or member of the Alabama State Legislature, Alabama Governor's office, Alabama Lieutenant Governor's office, Alabama Attorney General's office, or any employee, agent, or assign of a District Attorney's office within Alabama concerning VCAP, SB 184, HB 266, and/or any predecessor bills

6. Any communications between [EFA or SLI] and any other nongovernmental organization, consultant, or lobbyist concerning VCAP, SB 184, HB 266, and/or any predecessor bills.

7. Any records or minutes of meetings concerning VCAP, SB 184, HB 266, and/or any predecessor bills.

8. Any polling or public opinion data related to or concerning VCAP, SB 184, HB 266, predecessor bills, and/or legislation relating to medical care or treatment for transgender minors or youth.

9. Any records or documents relating to presentations, videos, interviews, and/or speeches [EFA or SLI] representatives have given or participated in regarding medical care or treatment related to gender identity, transgender minors or youth, "trans-identifying" minors or youth, or minors or youth with gender dysphoria.

10. Any mass letters, newsletters, or emails that [EFA or SLI] sent to members of a mailing or email list related to or concerning VCAP, SB 184, HB 266, and/or any predecessor bills.

11. Any social media postings that EFA or SLI] issued concerning VCAP, SB 184, HB 266, and/or any predecessor bills.

This Court has already established the impropriety of the subpoenas issued by the DOJ, quashing the subpoenas <u>in their entirety</u>.[5] The DOJ now attempts to avoid sanctions and justify its misconduct in issuing these document subpoenas to these non-parties because it says it "reasonably believed … that subpoenas concerning the drafting of, factual basis for, and motive underlying VCAP would yield relevant

---

[5] The Court specifically held in its October 24, 2022, Opinion and Order granting EFA's and SLI's Motions to Quash that the subpoenas "exceed the scope of discovery" under Rule 26; that the materials which the DOJ had sought by the subpoenas were "unlikely to reveal or lead to any information" that would help resolve the fundamental issue in this case of whether the VCAP statute enacted into law by the Alabama Legislature is constitutional, and, thus, that "the requested material has little – if any – relevance for purposes of discovery;" and, further, that "the burden of the requested material greatly outweighs any slight relevance it may have."  (Doc. 192, pp. 1, 5-6.)

7

information." Doc. 201, p. 10.⁶ DOJ thus attempts to gloss over and would ask the Court to ignore the incredibly broad nature of the subpoenas it issued, the irrelevance of the documents demanded from these non-parties and disproportionality to any legitimate issue in this lawsuit, the significant First Amendment privilege issues implicated by the subpoenas, and the burden and expense on these grass-roots, volunteer-driven organizations that the DOJ **had to know** would result from the subpoenas.⁷ Under these circumstances, there was not and could not have been good faith on the part of the DOJ when it issued the subpoenas. More to the point, however, the DOJ completely abdicated its affirmative duty under Rule 45(d)(1) to these non-parties discussed above. Sanctions are thus absolutely warranted.

While its conduct in originally issuing and serving the subpoenas was inexcusable, DOJ attempts to avoid or lessen sanctions for its misconduct because it says that after the filing of the motions to quash the DOJ "attempted to work with"

---

⁶ When it issued the subpoenas, the DOJ's narrow stated rationale (although itself irrelevant) for demanding these broad eleven (11) categories of documents since 2017 was simply to find out "who drafted the bill that resulted in VCAP." Doc. 151-1, p. 1; Doc 152-1, p. 1. See further discussion in the Motion for Sanctions.

⁷ The DOJ weakly attempts to turn its duty under Rule 45 on its head by asserting that it "had no notice that EFA and SLI considered its requests to be burdensome until the organizations filed their motions to quash." Doc. 201, p. 11. This is akin to the bully on the street who is caught by the police and protests that he did not realize that the people he was bullying would not like it. Regardless, the fact that DOJ had no substantive discussions with EFA and SLI before the motions to quash were filed certainly does not excuse DOJ's breach of its affirmative duty under Rule 45. Again, as the Eleventh Circuit held in the Progressive Emu case, "Rule 45 leaves no room for a party or attorney to issue a … facially overbroad and unduly burdensome subpoena and expect to work out the details later." 785 F. App'x at 629 n. 10.

EFA and SLI and subsequently narrowed the subpoenas. The pertinent facts and timeline pertinent to the communications between DOJ and these non-parties about these subpoenas are set out in EFA's and SLI's Motion for Sanctions, Doc. 198, pp. 3-11. Those facts do not help the DOJ's cause.

It is true that on September 14, 2022 (a week after EFA and SLI filed their motions to quash), the DOJ offered an initial compromise and said it was "willing" to narrow the categories of documents sought in both subpoenas to Request Nos. 1, 2, 4, 5, and 6. (Doc. 168-6). That offer was unacceptable because even those "narrowed" categories were still incredibly broad and would have imposed enormous burden and expense on EFA and SLI, as well as being irrelevant and certainly disproportional to any legitimate issue in this case. For example, category no. 2 demanded any materials since 2017 that had been "considered" by EFA or SLI in preparing draft legislation, and category no. 6 demanded any communications since 2017 between EFA or SLI and any other non-governmental (private) entity regarding the proposed legislation. Further, the documents sought by those "narrowed" categories were also covered by EFA's and SLI's First Amendment privilege. Sadly, the DOJ has been and remains consistently dismissive of EFA's and SLI's Constitutional rights and privileges as well as their rights as subpoenaed non-parties under Rule 45.

Further, when the DOJ filed its opposition to the motions to quash on September 21, 2022, the DOJ doubled down on its position and even absurdly asserted to this Court that the document subpoenas as issued were "narrowly tailored." (Doc. 168, p. 2). That was still the DOJ's position when EFA and SLI were forced to file their reply brief on the motions to quash on September 28, 2022 (Doc. 176), which filing itself imposed significant additional burden and expense on EFA, SLI, and their counsel.

Finally, on October 6, 2022, the DOJ offered to significantly narrow its subpoena to what was actually a new category of documents, "any medical studies or literature referenced in Section 2 of VCAP." That offer, which effectively constituted a belated withdrawal of the entire original subpoenas, was reflected in the DOJ's filing on October 7, 2022, the Friday night before the scheduled hearing on the motions to quash. (Doc. 184). At the hearing on October 14, 2022, the Court stated that the DOJ would be allowed to issue a new subpoena adopting this language if it wanted, although the Court expressed its skepticism that EFA has in its possession any study of which the DOJ is not already aware. (Trans. of 10/14/22 hearing, p. 40).[8] The Court's skepticism has apparently proved correct, as to date the DOJ has not issued any new subpoena to EFA or SLI.

---

[8] In addition, since the VCAP statute as passed by the Alabama Legislature nowhere specifically designates which particular studies the Legislature had in mind as supporting the law

10

Contrary to DOJ's effort to paint itself as reasonable and "attempting to work" with EFA and SLI, the facts show that the DOJ miserably failed to comply with its affirmative duty under Rule 45(d)(1) to "take reasonable steps to avoid imposing undue burden or expense" on these non-parties. Sanctions should therefore be imposed.

### III. The DOJ's "balancing of the equities" argument is both legally inapposite under the language of Rule 45(d)(1) and certainly incorrect under the facts of this case anyway.

Citing a couple of non-binding district court cases, the DOJ in section III of its brief asserts that "[t]o determine whether to shift costs from one party to another under Rule 45, courts have considered: '(1) whether the non-party has an interest in the outcome of the case; (2) whether the non-party's financial status allows it to more easily bear the costs than the requesting party; and (3) whether the litigation is of public importance.'" Doc. 201, p. 15. Actually, as the Sixth Circuit Court of Appeals's opinion in New Prod. Corp. v. Dickinson Wright PLLC, 890 F.3d 244 (6th Cir. 2018) makes clear, "cost-shifting" is a separate concept under Fed. R. Civ. P. 45(d)(2)(B)(iii) and only applies where, after the non-party has objected to a subpoena, the court orders the non-party to nevertheless comply with part or all of the subpoena but provides for costs to be shifted to the demanding party issuing the

---

it was enacting, neither EFA nor SLI have any way of identifying those particular studies either. See further EFA's and SLI's supplement to their motions to quash, filed 10/12/22 (Doc. 186).

11

subpoena so as to protect the non-party from significant expense with compliance. That provision is distinct from Rule 45(d)(1), which imposes sanctions on a party or attorney issuing and serving a subpoena that fails to take reasonable steps to avoid imposing undue burden or expense on the non-party subject to the subpoena. Thus, since Rule 45(d)(1) sanctions are what is before the Court, this three-part test suggested by the DOJ is irrelevant. Nevertheless, EFA and SLI will briefly address those three cost-shifting factors.

First, EFA and SLI as private organizations certainly have no legal interest in the outcome of this case (although, of course, as with most civic-minded Alabamians, they do have strong opinions about the need for and merit of the VCAP statute and therefore have a "rooting interest" in the outcome of the statute). In the primary case cited by DOJ on this point, Bell Inc. v. GE Lighting, LLC, 2014 WL 1630754 (W.D. Va. 2014), the Court adopted the definition from Black's Law Dictionary of "interested party" as one "who has a recognizable stake (and therefore standing) in a matter." Id. at * 13.[9] The Court noted that the non-party in that case (a patent dispute) could be involved in future litigation itself over the same issues in that case, and that one of the non-party's officers was the inventor of the product at issue. Id. Thus, the Bell court held that the non-party was an "interested party" to

---

[9]   Accord In re American Kidney Fund, Inc., 2019 WL 1894248, * 9 (D. Md. 2019) (also adopting Black's Law Dictionary definition of an "interested party").

12

the litigation for cost-shifting purposes (id.), although, under the facts before it, the court nevertheless shifted some of the costs of compliance with the subpoena back on the party which issued the subpoena. Id. at * 14-17. By contrast, EFA and SLI as private organizations of private citizens certainly have no standing to defend the constitutionality of the VCAP statute. They are not "interested parties" for purposes of any cost-shifting analysis, which is not properly before the Court anyway.

Second, in a truly unbelievable argument, the DOJ asserts that "the financial status prong [of cost-shifting, again not before the Court anyway] also weighs in the United States' favor." Doc. 201, p. 16. While it should go without saying, clearly the United States of America can much more easily bear the costs of this subpoena dispute (as well as any compliance with the subpoena that was needed, had the subpoenas been legitimate which they were not) than can these private, volunteer-driven, grassroots organizations.

Third, EFA and SLI agree that the issue of the constitutionality of VCAP and the Alabama Legislature's laudable efforts to protect minors from permanent and harmful effects of gender-altering treatment, when they are often unable to comprehend and fully appreciate the risks and life implications of such treatment, is a matter of public importance. That hardly justifies, however, the DOJ's ignoring its duties to non-parties under Rule 45(d)(1). Further, the DOJ's dismissive attitude toward the legitimate First Amendment issues raised by their subpoenas and these

13

private organizations' First Amendment privileges is itself a matter of "public importance" which only highlights the need for sanctions to be imposed here, not diminish it.

### IV. Both compensatory and punitive sanctions are appropriate and should include the costs to these non-parties and their counsel of resisting the DOJ's improperly-issued subpoena.

The DOJ cites a Ninth Circuit case (Mount Hope Church v. Bash Back, 705 F.3d 418 (9th Cir. 2012))[10], and a few district court cases for the proposition that only costs of compliance with a subpoena can be considered for sanctions, and that, since the EFA and SLI never had to comply with the subpoenas (because this Court quashed them in their entirety), the significant costs to EFA and SLI and their counsel in resisting the government subpoenas should not be considered. Doc. 201, pp. 16-17. This position is certainly not justified by the language of the rule. It is also illogical, since if correct it would eliminate the possibility of sanctions from the most egregious violations of Rule 45(d)(1) that should be sanctioned.

---

[10] But see In re Shubov, 253 B.R. 540, 547-48 (B.A.R. 9th Cir. 2000) ("When a subpoena should not have been issued, literally everything done in response to it constitutes "undue burden or expense" within the meaning of Civil Rule 45(c)(1). It is similarly "undue" to have to contend with a motion to compel compliance with an illegitimate subpoena. It is apparent that appellants breached their duty to avoid undue burden or expense. The subpoena should never have issued. Nobody should have been required to read it or to do anything else in connection with it. Nor should anybody have been required to contend with the motion to compel. … It follows that all of Rakita's expenses in response to the subpoena, including attorney's fees, are eligible to be awarded.")

Further, DOJ's position is certainly not the law in the Eleventh Circuit, as it is contrary to the Progressive Emu case discussed supra. The non-party receiving the subpoena there never had to comply with the improper subpoena, yet Rule 45(d)(1) sanctions were imposed and upheld on the offending law firm that issued the subpoena. The same goes here.

Indeed, at the October 14th hearing on the Motions to Quash, this Court (after discussing its own initial reaction that the subpoenas were "vastly overbroad and unduly burdensome," Trans., p. 9), asked EFA's and SLI's attorney what their costs were in preparing for the hearing and putting forth the motion to quash. Trans., p. 9. That question would have been irrelevant if DOJ's present position – that only costs associated with compliance with a subpoena, rather than resisting the subpoena, should be included as part of a sanctions award – was correct. But, as noted above, DOJ's position is not correct.

Further, DOJ's position that punitive sanctions are not authorized by Rule 45(d)(1) is not correct. Rather, the rule states only that the appropriate sanction "may include" lost earnings and reasonable attorney's fees. That hardly is a basis to restrict the Court's authority to impose punitive sanctions where the violation of the subpoena-issuing party of the duty imposed by the rule is egregious, as it is here. Indeed, the very definition of the word "sanctions" is punitive in nature. See, e.g.,

Black's Law Dictionary ("a 'sanction' is a penalty or punishment provided as a means of enforcing obedience to a law").

The declarations attached to the Motion for Sanctions as Exhibits A-C establish the very significant time and effort that EFA personnel were forced to incur in resisting the DOJ's improperly-issued subpoena. The facts that neither Margaret Clarke or Eunie Smith as volunteers were paid for their time, and that Rebecca Gerritson as the one full-time employee of EFA is paid a salary, should not be used as a basis for the DOJ to avoid or diminish sanctions for its egregious conduct. Rather, the amount of the sanctions should reflect and include an amount to compensate EFA for that significant time lost by its executive director and volunteers.

Similarly, the Third Declaration of Eric Johnston (Exhibit D to the Motion for Sanctions) establishes the value of his time and expenses incurred in resisting the subpoena to SLI, based on his usual billing rate. While Mr. Johnston's services in this regard as most of his volunteer work for SLI was not charged to SLI, it is certainly a fair amount to include in the sanctions that should be imposed on the DOJ, whether viewed as compensatory or punitive sanctions.

Finally, the Declaration of John M. Graham (Exhibit E to the Motion for Sanctions) establishes the value of the significant time and expenses incurred by him and others from his law firm in representing EFA and SLI in this matter up through

October 24, 2022 (the date of the Court's Opinion and Order granting the Motions to Quash the subpoenas).[11]  While again those legal services have been provided to these small, grassroots organizations on a *pro bono* basis because of the important First Amendment principles which were at stake, that fact should not result in a windfall to DOJ and reduce the sanctions it should have to pay.  Again, the value of the legal services provided by Mr. Graham and others from his firm is certainly a fair amount to include in the sanctions to be imposed on the DOJ, whether viewed as compensatory or punitive sanctions.

       Respectfully submitted this 5th day of December, 2022.

/s/ John M. Graham
  John M. Graham
  ASB-5616-G70J
  Attorney for Eagle Forum of Alabama
  and Southeast Law Institute

OF COUNSEL:
PHELPS DUNBAR LLP
Renasant Tower, Suite 700
2001 Park Place North
P. O. Box 830612
Birmingham, AL  35283-0612
Telephone:  (205) 716-5200
Facsimile:  (205) 716-5389
E-Mail: John.Graham@phelps.com

---

[11] Of course, since then additional time has been incurred by Mr. Graham and others from his law firm, as well as representatives of EFA and SLI, in preparing the Motion for Sanctions and this reply brief.

## **CERTIFICATE OF SERVICE**

I hereby certify that this 5th day of December, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record in this case.

/s/ John M. Graham
OF COUNSEL