## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

BRIANNA BOE, et al.,

    Plaintiffs,

    v.

STEVE MARSHALL, et al.,

    Defendants

No. 2:22-cv-00184-LCB-CWB

---

## DECLARATION OF CORTLIN H. LANNIN IN SUPPORT OF JOINT MOTION OF NONPARTIES AMERICAN ACADEMY OF PEDIATRICS, WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, AND ENDOCRINE SOCIETY TO QUASH RULE 45 SUBPOENAS

I, Cortlin H. Lannin, hereby declare as follows:

1.     I am an attorney in the law firm of Covington & Burling LLP, counsel for American Academy of Pediatrics ("AAP"), World Professional Association for Transgender Health ("WPATH"), and Endocrine Society ("Endocrine Society") (collectively, "*amici*"). The matters set forth herein are true and correct of my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

2.     Attached hereto as **Exhibit 1** is a true and correct copy of the subpoena issued by the State of Alabama ("State") to AAP on August 10, 2022.

3.    Attached hereto as **Exhibit 2** is a true and correct copy of AAP's Responses & Objections to the subpoena, served on September 9, 2022.

4.    Attached hereto as **Exhibit 3** is a true and correct copy of the subpoena issued by the State to WPATH on October 13, 2022.

5.    Attached hereto as **Exhibit 4** is a true and correct copy of WPATH's Responses & Objections to the subpoena, served on November 1, 2022.

6.    Attached hereto as **Exhibit 5** is a true and correct copy of the subpoena issued by the State to the Endocrine Society on December 1, 2022.

7.    Attached hereto as **Exhibit 6** is a true and correct copy the Endocrine Society's Responses & Objections to the subpoena, served on December 15, 2022.

8.    After serving the above-referenced Responses & Objections, counsel for *amici* engaged in good-faith meet-and-confer discussions with the State in an attempt to narrow the subpoenas.  These meet-and-confer discussions occurred via teleconference on October 11, 2022, November 18, 2022, December 16, 2022, and December 23, 2023.  Attached hereto as **Exhibit 7** is a true and correct copy of the parties' correspondence via email.

9.    During the October 11, 2022 teleconference, counsel for *amici* expressed concerns over the relevance of the documents requested, as well as the burdens associated with complying with the subpoena as drafted.  Counsel

2

for the State asserted that *amici* had opened the door to the subpoenas by submitting their *amici* brief. Counsel for the State also claimed that the requested documents were relevant to assess *amici*'s credibility.

10. On October 14, 2022, counsel for the State sent counsel for *amici* an email organizing the State's requests into three tiers for prioritization purposes. Counsel for the State did not, at that time, offer to withdraw any of its requests. *See* **Exhibit 7**.

11. After a subsequent meet-and-confer teleconference on November 18, 2022, counsel for the State offered to withdraw requests 9, 12, 16, 17, 19, 20, 21, 24, 25 and narrow request 23 from the AAP subpoena, and withdraw requests 13, 17, 22, 25, 26, 27, 29, 30, 36, 37, 38, 39, 42, 45, 46 and narrow request 41 from the WPATH subpoena. *See* **Exhibit 7**. The State has not offered to withdraw any of the requests in the Endocrine Society subpoena.

12. At the next meet-and-confer teleconference on December 16, 2022, the parties again conferred regarding the AAP and WPATH subpoenas, and also conferred about the Endocrine Society subpoena. During that teleconference, counsel for *amici* again noted their concerns as to the relevance of the remaining requests and the burden that would be imposed by complying with them.

3

13. That same day, counsel for *amici* sent counsel for the State an email highlighting those concerns, but offering "in the spirit of compromise and without waiving any … objections … to produce the studies relied on in crafting [*amici*'s clinical] guidelines and policy positions," insofar as they exist. *See* **Exhibit 7**.

14. On December 21, 2022, counsel for the State emailed counsel for *amici* declaring "[i]t's unfortunate, but I think we have reached an impasse" and offering to participate in "one last call." *See* **Exhibit 7**.

15. On December 23, 2022, counsel for *amici* and the State participated in a final meet-and-confer teleconference, whereupon a final impasse was reached and the parties agreed the Court's assistance may be required. Counsel for *amici* also advised the State that *amici* reserved their rights to seek sanctions in the event the Court ultimately agreed with them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration is executed this 26th day of December, 2022, in Playa del Carmen, Mexico.

_____

Cortlin H. Lannin

# Exhibit 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents. Information. or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Middle District of Alabama

Paul A. Eknes-Tucker, et al.

*Plaintiff*

v.

Governor of the State of Alabama, et al.

*Defendant*

Civil Action No.  2:22-cv-184-LCB

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Mark Del Monte, American Academy of Pediatrics, 345 Park Blvd., Itasca, IL 60143

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A.

| Place: Office of the Attorney General, State of Alabama, 501 Washington Avenue, Montgomery, AL, 36130 | Date and Time: 09/09/2022 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    08/10/2022

*CLERK OF COURT*

OR  _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Governor of the State of Alabama, et al. _____ , who issues or requests this subpoena, are:
A. Barrett Bowdre, Deputy Solicitor General, (Address Listed Above), 334-242-7300, Barrett.Bowdre@AlabamaAG.gov

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:22-cv-184-LCB

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____                                   _____
                                                                                          *Server's signature*

                                                                             _____
                                                                                          *Printed name and title*

                                                                             _____
                                                                                          *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A
## SUBPOENA FOR PRODUCTION OF DOCUMENTS DIRECTED TO
## AMERICAN ACADEMY OF PEDIATRICS

YOU ARE COMMANDED, pursuant to Federal Rule of Civil Procedure 45, to produce to the Office of the Attorney General, State of Alabama, 501 Washington Avenue, Montgomery, AL, 36130, at the time and place noted on the subpoena to which this document is attached, the following documents, electronically stored information, or objects, and to permit inspection and copying of the same:

### INSTRUCTIONS

Your responses should include all information, knowledge, or belief available not only to You, but also to any attorneys, investigators, consultants, agents, and other representatives acting on Your behalf. Please respond in accordance with the following instructions:

1.     **Claims of Privilege and Exception to Discovery.** If any claim of privilege is asserted, in whole or in part, with respect to any Request, or if You refuse to disclose any requested information or Document, in whole or in part, based on any claim of privilege or immunity, please identify the specific privilege or protection claimed and state the basis for the claim, identifying the pertinent circumstances with sufficient specificity to permit Defendants to assess the basis of any such claim for privilege or protection.

2.     **Continuing Nature.** These Requests are intended to be and shall be answered or responded to fully as of the date of response and shall be deemed to be continuing thereafter until the conclusion of this matter. If You should subsequently acquire any further responsive information or Documents called for by these Requests, You should promptly furnish such information or Documents to the undersigned counsel.

1

3.    **Answer to the Fullest Extent Possible.** If any of the Requests cannot be fulfilled in full, please answer to the fullest extent possible, explaining why you cannot answer the remainder of the Request, and stating any information or knowledge which You have concerning the unanswered portion.

4.    **Objections.** If You have a good-faith objection to any of these Requests, or any part thereof, the specific nature of the objection and whether it applies to the entire Request or to a certain portion thereof shall be clearly stated. If there is an objection to any part of a Request, then the part or parts objected to should be indicated and information responsive to the remaining unobjectionable parts should be provided.

5.    **Language.** The use of the singular form of any word includes the plural and vice versa. Reference to one gender includes the other gender. The word "all" means any and all. The word "including" means "including without limitation."

6.    **Patient Confidentiality.** These Requests do not seek the names or other personally-identifying information regarding individual patients, and any responsive Documents or Communications may be redacted to remove such information.

## DEFINITIONS

1.    The word "**Communication**" refers to any transmission, receipt, or exchange of information, whether orally, electronically, or in writing, including, without limitation, any conversation or discussion by means of Documents, letters, notes, in-person conversations, memoranda, reports, statements, voicemail, audio or video transmission, telephone calls, telegraph, telex, telecopier, facsimile, email, text message, electronic or other instant message, cable, Social Media post or message, Internet post or message, or any other form or medium of transmission or exchange.

2

2. The words "**Document**" and "**Documents**" are used in the most comprehensive and inclusive sense permitted by Rule 34 of the Federal Rules of Civil Procedure and therefore include, but are not limited to, all forms of recorded information in Your actual or constructive possession, custody, or control, whether handwritten, typed, printed, recorded or stored on computer or personal data storage devices, diskettes, videotapes, audio tapes, or photographic film, as well as electronically stored information and data compilations. The terms "Document" and "Documents" also include any drafts or versions thereof, and all copies on which any mark, alteration, writing, attachment, or any other change from the original appears. By way of example and not limitation, the terms "Document" and "Documents" include: letters, correspondence, memoranda, email and other electronic communications, voice-mail recordings, facsimile transmissions, telegrams, film or photographic prints, video or audio recordings, blueprints, drawings, charts, specimens, models, word processing files, PowerPoint files, spreadsheets, images, metadata, programs, databases and data compilations.

3. The terms "**regarding**," "**with regards to**," "**relate**," "**relating**," "**relating to**," "**concerning**," and/or "**related to**" mean recording, summarizing, embodying, constituting, reflecting, digesting, referring to, commenting upon, describing, reporting, listing, analyzing, studying, or otherwise discussing in any way a subject matter identified in the Request, and is defined so as to reach all matters within the scope of discovery under the Federal Rules of Civil Procedure, including all information which, though inadmissible at trial, is reasonably calculated to lead to the discovery of admissible evidence.

4. The terms "**You**" and "**Your**" refer to the American Academy of Pediatrics as well as its agents, employees, representatives, present or former counsel, and other persons acting on its behalf.

3

5. The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each of the Requests any and all information and Documents that might otherwise be construed to be outside of their scope.

6. "**Alabama Vulnerable Child Compassion and Protection Act**" (or "**Act**") shall mean Alabama Act No. 2022-289, introduced in the Alabama Legislature as Senate Bill 184 and signed into law on or around April 8, 2022.

7. "**Sex**" or "**Biological Sex**" shall mean the biological state of being male or female, based on the individual's sex organs at birth, chromosomes, and endogenous hormone profiles.

8. "**Transitioning**" shall mean the administration of medicines such as Puberty Blockers, Cross-Sex Hormones, and surgical interventions to change the physical appearance of a Minor in a way that is not consistent with the patient's Biological Sex. This includes changing the appearance to appear as a cross-sex identification as well as non-cross-sex identifications such as "non-binary."

9. "**Puberty Blockers**" shall mean medication administered to Minors to delay or prevent the onset or continuation of puberty, or otherwise to prevent the formation or maturation of secondary sex characteristics consistent with the patient's Biological Sex. This includes, but is not limited to, common puberty blockers such as histrelin acetate and leuprolide acetate if administered for the purpose of Transitioning. For purposes of these Requests, "Puberty Blockers" does not include GnRH agonists administered to young children (7 and younger) for the treatment of central precocious puberty or to adult men (19+) for the treatment of prostate cancer.

10. "**Cross-sex Hormones**" shall mean hormones administered to induce the physical characteristics of a sex or gender profile other than the Biological Sex of the patient (including non-cross-sex gender identities such as "non-binary"). It includes, but is not limited to,

4

administering androgenic hormones such as testosterone, fluoxymesterone, and methyltestosterone to a biological female, and estrogenic hormones such as estrogen and estradiol to a biological male. It also includes the administration of hormone blockers and anti-androgens such as flutamide, spironolactone, and cyproterone if used as part of Transitioning.

11. **"Minor"** shall mean a person under the age of 19.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce all Communications and Documents regarding Resolution #33 introduced at the AAP Annual Leadership Forum in 2021.

2. Produce all Communications and Documents regarding a resolution entitled "Addressing Alternatives to the Use of Hormone Therapies for Gender Dysphoric Youth," introduced in 2021.

3. Produce all Communications and Documents regarding Resolution 27, entitled "In Support of a Rigorous Systematic Review of Evidence and Policy Update for Management of Pediatric Gender Dysphoria," introduced at the AAP Annual Leadership Forum in 2022.

4. Produce all Communications and Documents from the AAP Leadership Conference regarding the above resolutions.

5. Produce all Communications and Documents from the AAP Chapter Forum Management Committee regarding the above resolutions.

6. Produce all Communications and Documents from the AAP Section on LGBT Health and Wellness regarding the above resolutions.

7. Produce all Communications and Documents dated after January 1, 2021, regarding Your refusal to permit AAP members from commenting on so-called "unsponsored" resolutions introduced at the AAP Annual Leadership Forum.

8.      Produce all Communications and Documents regarding the attempted registration of the Society for Evidence Based Gender Medicine for a booth at the AAP National Conference & Exhibition held in Philadelphia in October 2021.

9.      Produce all Communications and Documents regarding registrations for booths at the AAP National Conference & Exhibition held in Philadelphia in October 2021.

10.     Produce all Communications and Documents regarding James Cantor or the following article: James M. Cantor, *Transgender and Gender Diverse Children and Adolescents: Fact-Checking of AAP Policy*, Journal of Sex & Marital Therapy, DOI: 10.1080/0092623X.2019.1698481 (2019).

11.     Produce all Communications and Documents regarding the impetus for, preparation of, discussion of, drafting of, or adoption as AAP's official Policy Statement of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, PEDIATRICS Volume 142, number 4, October 2018:e20182162.

12.     Produce all Communications and Documents regarding the funding of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, PEDIATRICS Volume 142, number 4, October 2018:e20182162.

13.     Produce all Communications and Documents regarding Your post-publication consideration, review, analysis, or reconsideration of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, PEDIATRICS Volume 142, number 4, October 2018:e20182162.

14.     Produce all Communications and Documents regarding the impetus for, preparation of, discussion of, drafting of, or adoption as AAP's official Policy Statement of a forthcoming

6

statement now or previously entitled "Providing Affirmative Clinical Care to Transgender and Gender-Diverse Children and Adolescents."

15.     Produce all Communications and Documents regarding the impetus for, preparation of, discussion of, drafting of, or adoption as AAP's official Policy Statement of a forthcoming statement now or previously entitled "Care of Transgender Youth, Clinical Report."

16.     Produce all Communications and Documents regarding the following article: Jack L. Turban et al., *Sex Assigned at Birth Ratio Among Transgender and Gender Diverse Adolescents in the United States*, PEDIATRICS, August 2022: e2022056567.

17.     Produce all Communications between You and other medical organizations, associations, or societies regarding gender dysphoria or Transitioning for minors.

18.     Produce all Communications and Documents regarding the impetus for, preparation of, discussion of, drafting of, or adoption by AAP of a document entitled "Supporting & Caring for Transgender Children" (Sept. 2016).

19.     Produce all non-privileged Communications and Documents regarding the following filings by AAP: Brief of Amici Curiae American Academy of Pediatrics et al., *Brandt v. Rutledge*, E.D. Ark. No. 21-cv-450, Dkt. 23 (filed June 23, 2021); Brief of Amici Curiae American Academy of Pediatrics et al., *Brandt v. Rutledge*, 8th Cir. No. 21-2875 (filed Jan. 25, 2022); Response to FRAP 28(j) Letter in *Brandt v. Rutledge* (No. 21-2875) by Counsel for AAP (filed March 11, 2022); Response to FRAP 28(j) letter in *Brandt v. Rutledge* (No. 21-2875) by Counsel for AAP (filed April 19, 2022); Brief of Amici Curiae American Academy of Pediatrics et al., *Eknes Tucker v. Ivey*, M.D. Ala. No. 22-cv-184, Dkt. 91-1 (filed May 4, 2022).

20. Produce all non-privileged Communications and Documents regarding *Eknes Tucker v. Ivey*, M.D. Ala. No. 22-cv-184; *Ladinsky v. Ivey*, N.D. Ala. No. 22-cv-447; and, *Walker v. Marshall*, M.D. Ala. No. 22-cv-167.

21. Produce all non-privileged Communications and Documents regarding the following filings by AAP: Brief of Amici Curiae American Academy of Pediatrics et al., *Hecox v. Little*, 9th Cir. Nos. 20-35813, 20-35815, Dkt. 75 (filed December 21, 2020); Brief of Amici Curiae American Academy of Pediatrics et al., *Soule v. Connecticut Association of Schools, Inc.*, 2d Cir. No. 21-1365, Dkt. 106 (filed Oct. 12, 2021); Brief of Amici Curiae Medical, Public Health, and Mental Health Organizations, *Grimm v. Gloucester County School Board*, 4th Cir. No. 19-1952, Dkt. 32-1 (Nov. 25, 2019).

22. Produce all Communications and Documents regarding a News Release issued by AAP on April 2, 2021, entitled "Frontline Physicians Oppose Legislation That Interferes in or Penalizes Patient Care."

23. Produce all Communications and Documents dated after January 1, 2020, regarding AAP's review or consideration of the following: Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria* (2021); Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria* (2021); Abigail Shrier, *Irreversible Damage* (2020); Abigail Shrier, *Top Trans Doctors Blow the Whistle on 'Sloppy' Care*, Common Sense (Oct. 4, 2021); William J. Malone et al., *Proper Care of Transgender and Gender-diverse Persons in the Setting of Proposed Discrimination*, 106 J. Clinical Endocrinology & Metabolism e3287 (2021); Abigail Shrier, *A Pediatric Association Stifles Debate on Gender Dysphoria*, Wall St. Journal (Aug. 9, 2021); Stephen Levine et al.,

8

*Reconsidering Informed Consent for Trans-Identified Children, Adolescents, and Young Adults*, J. Sex & Marital Therapy, 7 (Mar. 2022); Socialstyrelsen, *Care of children and adolescents with gender dysphoria* (Feb. 2022); Académie Nationale de Médecine, *Medicine and gender transidentity in children and adolescents* (Feb. 2022).

24.     Produce all Communications and Documents regarding the Sept. 2015 AAP presentation referenced in Kim LaCapria, Did American Pediatricians Issue a Statement That Transgenderism Is 'Child Abuse'?, Snopes (May 20, 2016).

25.     Produce all Communications and Documents regarding Your efforts to develop a statement on care for transgender children between 2016 and 2018.

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| REV. PAUL A. EKNES-TUCKER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, et al.,<br><br>Defendants. | No. 2:22-cv-00184-LCB-CWB |

## AMERICAN ACADEMY OF PEDIATRICS' RESPONSES AND OBJECTIONS TO RULE 45 SUBPOENA TO PRODUCE DOCUMENTS

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, non-party American Academy of Pediatrics ("AAP"), through its undersigned counsel, hereby responds and objects to the subpoena for the production of documents ("Requests") served by the State of Alabama ("Defendant") in the above-captioned proceeding.

## GENERAL OBJECTIONS

The following General Objections are incorporated in full into all Specific Objections set forth below:

1.      These responses are made solely for the purpose of this action.  By responding to the Requests, AAP does not waive any objections that it may have to

admission into evidence of these responses or any documents produced in response to the Requests on any applicable grounds.

2.    AAP objects to the Requests to the extent that they impose obligations that go beyond, or that are otherwise inconsistent with, the Federal Rules of Civil Procedure, the Local Rules of the Court, any Order of the Court, or any other applicable law, rule, or order (collectively "Discovery Rules").

3.    AAP objects to the Requests to the extent they seek discovery beyond any relevant, responsive, non-privileged, and non-duplicative information or documents in its possession, custody, or control that would be located after a reasonable search proportional to the needs of the case.  AAP will respond to these Requests in good faith, but observes that the Requests on their face appear to seek information that is not relevant to any party's claims or defenses.  *See, e.g.*, *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51–52 (D.D.C. 2005) (holding that "[t]he mere filing of an amicus brief … does not open oneself to broad discovery demands, nor does it make one's bias, if any, relevant to the underlying action" and that "imposing such a burden on amici would undoubtedly discourage entities from making amicus filings at all, so as to avoid subjecting themselves to severe scrutiny and onerous discovery requests.").

4.    AAP objects to the Requests as overly broad and unduly burdensome, particularly the burden of requiring a non-party to respond to 25 Requests, many

with multiple sub-parts, which demand "*all* Communications and Documents" (emphasis added) and are unbounded by time or any other limiting criteria. The cumulative burden of responding to these Requests is not proportional to the needs of the case, particularly because AAP is not a party to the case. Indeed, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" under Rule 45 of the Federal Rules of Civil Procedure. *See, e.g.*, *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (holding that a "a more demanding variant of the proportionality analysis" applies, and that courts "must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally.").

5.     AAP objects to the Requests, and to the definitions and instructions included in the Requests, to the extent that they assume facts and events, include characterizations that are assumed to be accurate, or contain legal conclusions. By responding to the Requests, AAP does not admit or concede that any fact, event, characterization, or legal conclusion is correct or accurate, and AAP reserves the right to contest all assumed facts, events, characterizations, and legal conclusions.

6.     AAP objects to the Requests, and to the definitions and instructions included in this set of Requests, to the extent that they purport to require that AAP identify and provide discovery with regard to "each," "all," "any," or similar all-

3

encompassing wording on the grounds that the Requests are individually and collectively overly broad and unduly burdensome and seek discovery not relevant to the parties' claims and defenses nor proportional to the needs of the case. To the extent that the Requests seek information or documents that are not reasonably accessible because they cannot be retrieved or produced without undue burden or cost, AAP objects because the Requests are overly broad and unduly burdensome.

7.      AAP objects to the Requests to the extent that they seek information that can be obtained from the parties to this case, publicly-available sources, or other third parties, including from the parties' experts.

8.      AAP objects to the Requests to the extent they seek documents no longer reasonably obtainable by AAP due to the passage of time, employee turnover, or because the information is not stored on active systems.

9.      AAP objects to the Requests to the extent that they seek production of confidential or other sensitive information, and to the extent they seek discovery of sensitive non-public information or disclosure of information protected by any confidentiality obligation owed a third party.

10.      AAP objects to the Requests to the extent that they seek production of documents that are protected by the attorney-client privilege, the work product doctrine, the joint-defense or common interest privilege, privacy laws (including patient and healthcare privacy laws), any other applicable privilege, protection, or

immunity, or that are otherwise exempted from discovery.  AAP hereby asserts all applicable privileges and protections to the extent implicated by each Request, whether based on statute or regulation or recognized at common law.  In the event that any privileged document is produced by AAP, its production is inadvertent and does not constitute waiver of any privilege, protection, or immunity.

11.    AAP objects to the Requests to the extent that they seek production of documents that are protected by the First Amendment privilege, including but not limited to associational information.  *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010) (recognizing that where "discovery would have the practical effect of discouraging the exercise of First Amendment associational rights, the party seeking such discovery must demonstrate a need for the information sufficient to outweigh the impact on those rights").

12.    AAP's objections are made to the best of its knowledge, information, and belief.  AAP reserves the right to revise, correct, clarify, supplement, and/or amend the objections set forth herein, and reserve its right to assert any and all other defenses or objections, including those permitted by the Discovery Rules and the case law.

## OBJECTIONS TO DEFINITIONS

13.     AAP objects to the definitions of "You" and "Your" on the grounds that they are overly broad, vague, ambiguous, and unduly burdensome to the extent they seek production of information from entities other than AAP.

14.     AAP objects to the definition of "Document" and "Documents" to the extent that they seek to impose obligations on AAP beyond those imposed by the Discovery Rules and/or seek information or documents not in AAP's possession, custody, or control.

15.     AAP objects to the definition of "Communication" and "Communications" to the extent that they seek to impose obligations on AAP beyond those imposed by the Discovery Rules and/or seek information or documents not in AAP's possession, custody, or control.

16.     AAP objects to the definitions of "Sex," "Biological Sex," "Transitioning," "Cross-sex Hormones," and "Puberty Blockers" as argumentative and inaccurate. However, solely for purposes of responding to the subpoena, AAP will interpret the Requests consistent with the provided Definitions, to the extent that they can be understood.

## OBJECTIONS TO INSTRUCTIONS

17.     AAP objects to Instruction No. 1 to the extent that it imposes obligations that go beyond, or that are otherwise inconsistent with the Discovery Rules.

18.     AAP objects to Instruction No. 2 as overly broad and unduly burdensome to the extent it seeks to impose a continuing obligation on AAP to conduct discovery and produce documents responsive to the Requests.  To the extent AAP produces any material in response to the subpoena, it will be material that existed as of the date of service of the subpoena.

19.     AAP objects to Instruction No. 3 to the extent that it imposes obligations that go beyond, or that are otherwise inconsistent with the Discovery Rules.

20.     AAP objects to Instruction No. 4 to the extent that it imposes obligations that go beyond, or that are otherwise inconsistent with the Discovery Rules.

21.     AAP objects to Instruction No. 5 as inaccurate to the extent that it attempts to define "gender."

22.     AAP objects to Instruction No. 6 to the extent that it is insufficiently protective of confidential or sensitive patient information.

## SPECIFIC RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1**:

Produce all Communications and Documents regarding Resolution #33 introduced at the AAP Annual Leadership Forum in 2021.

**RESPONSE TO REQUEST NO. 1:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding," and because it is unbounded by time. AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege. AAP further objects to this Request as duplicative of, *inter alia*, Request Nos. 2, 4, 5, and 6.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 2:**

Produce all Communications and Documents regarding a resolution entitled "Addressing Alternatives to the Use of Hormone Therapies for Gender Dysphoric Youth," introduced in 2021.

**RESPONSE TO REQUEST NO. 2:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding," and because it is unbounded by time. AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege. AAP further objects to this Request as duplicative of, *inter alia*, Request No. 1, 4, 5, and 6.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 3:**

Produce all Communications and Documents regarding Resolution 27, entitled "In Support of a Rigorous Systematic Review of Evidence and Policy Update for Management of Pediatric Gender Dysphoria," introduced at the AAP Annual Leadership Forum in 2022.

**RESPONSE TO REQUEST NO. 3:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding," and because it is unbounded by time. AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege. AAP further objects to this Request as duplicative of, *inter alia*, Request Nos. 4, 5, and 6.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 4:**

Produce all Communications and Documents from the AAP Leadership Conference regarding the above resolutions.

**RESPONSE TO REQUEST NO. 4:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the phrase "from the AAP Leadership Conference," and because it is unbounded by time. AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege. AAP further objects to this Request as duplicative of, *inter alia*, Request Nos. 1, 2, 3, 5, and 6.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

11

**REQUEST NO. 5:**

Produce all Communications and Documents from the AAP Chapter Forum Management Committee regarding the above resolutions.

**RESPONSE TO REQUEST NO. 5:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein.  AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "from," and because it is unbounded by time.  AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.  AAP further objects to this Request as duplicative of, *inter alia*, Request Nos. 1, 2, 3, 4, and 6.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 6:**

Produce all Communications and Documents from the AAP Section on LGBT Health and Wellness regarding the above resolutions.

**RESPONSE TO REQUEST NO. 6:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein.  AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "from," and because it is unbounded by time.  AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.  AAP further objects to this Request as duplicative of, *inter alia*, Request Nos. 1, 2, 3, 4, and 5.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 7:**

Produce all Communications and Documents dated after January 1, 2021, regarding Your refusal to permit AAP members from commenting on so-called "unsponsored" resolutions introduced at the AAP Annual Leadership Forum

**RESPONSE TO REQUEST NO. 7:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, argumentative, and unduly burdensome, particularly as to the phrases "all Communications and Documents," "refusal to permit," "so-called 'unsponsored'," and the word "regarding." AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 8:**

Produce all Communications and Documents regarding the attempted registration of the Society for Evidence Based Gender Medicine for a booth at the AAP National Conference & Exhibition held in Philadelphia in October 2021.

**RESPONSE TO REQUEST NO. 8:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein.  AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding," and because it is unbounded by time.  AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 9:**

Produce all Communications and Documents regarding registrations for booths at the AAP National Conference & Exhibition held in Philadelphia in October 2021.

**RESPONSE TO REQUEST NO. 9:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding," and because it is unbounded by time. AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 10:**

Produce all Communications and Documents regarding James Cantor or the following article: James M. Cantor, *Transgender and Gender Diverse Children and Adolescents: Fact-Checking of AAP Policy*, Journal of Sex & Marital Therapy, DOI: 10.1080/0092623X.2019.1698481 (2019).

**RESPONSE TO REQUEST NO. 10:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding," and because it is unbounded by time. AAP further objects to the Request to the extent the cited article speaks for itself. AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 11:**

Produce all Communications and Documents regarding the impetus for, preparation of, discussion of, drafting of, or adoption as AAP's official Policy Statement of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, PEDIATRICS Volume 142, number 4, October 2018:e20182162.

**RESPONSE TO REQUEST NO. 11:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein.  AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the words "regarding," "impetus," and "preparation," and because it is unbounded by time.  AAP further objects to the Request to the extent the cited document speaks for itself.  AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

18

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 12:**

Produce all Communications and Documents regarding the funding of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, PEDIATRICS Volume 142, number 4, October 2018:e20182162.

**RESPONSE TO REQUEST NO. 12:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein.  AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding," and because it is unbounded by time.  AAP further objects to the Request to the extent the cited article speaks for itself.  AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

19

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 13:**

Produce all Communications and Documents regarding Your post-publication consideration, review, analysis, or reconsideration of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, PEDIATRICS Volume 142, number 4, October 2018:e20182162.

**RESPONSE TO REQUEST NO. 13:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "post-publication consideration, review, analysis, or reconsideration," and the word "regarding." AAP further objects to the Request to

the extent the cited article speaks for itself.  AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 14:**

Produce all Communications and Documents regarding the impetus for, preparation of, discussion of, drafting of, or adoption as AAP's official Policy Statement of a forthcoming statement now or previously entitled "Providing Affirmative Clinical Care to Transgender and Gender-Diverse Children and Adolescents."

**RESPONSE TO REQUEST NO. 14:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein.  AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the words "regarding," "impetus," and "preparation," and because

21

it is unbounded by time. AAP further objects to the Request to the extent the cited document speaks for itself. AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 15:**

Produce all Communications and Documents regarding the impetus for, preparation of, discussion of, drafting of, or adoption as AAP's official Policy Statement of a forthcoming statement now or previously entitled "Care of Transgender Youth, Clinical Report."

**RESPONSE TO REQUEST NO. 15:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the words "regarding," "impetus," and "preparation," and because

it is unbounded by time.  AAP further objects to the Request to the extent the cited document speaks for itself.  AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 16:**

Produce all Communications and Documents regarding the following article: Jack L. Turban et al., *Sex Assigned at Birth Ratio Among Transgender and Gender Diverse Adolescents in the United States*, PEDIATRICS, August 2022: e2022056567.

**RESPONSE TO REQUEST NO. 16:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein.  AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and

Documents" and the word "regarding." AAP further objects to the Request to the extent the cited article speaks for itself. AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 17:**

Produce all Communications between You and other medical organizations, associations, or societies regarding gender dysphoria or Transitioning for minors.

**RESPONSE TO REQUEST NO. 17:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications" and the words "regarding" and "other medical organizations, associations, or societies," and because it is unbounded by time. AAP further objects to this

Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 18:**

Produce all Communications and Documents regarding the impetus for, preparation of, discussion of, drafting of, or adoption by AAP of a document entitled "Supporting & Caring for Transgender Children" (Sept. 2016).

**RESPONSE TO REQUEST NO. 18:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the words "regarding," "impetus," and "preparation," and because it requests documents from many years ago. AAP further objects to the Request to the extent the cited document speaks for itself. AAP further objects to this Request

to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 19:**

Produce all non-privileged Communications and Documents regarding the following filings by AAP: Brief of Amici Curiae American Academy of Pediatrics et al., *Brandt v. Rutledge*, E.D. Ark. No. 21-cv-450, Dkt. 23 (filed June 23, 2021); Brief of Amici Curiae American Academy of Pediatrics et al., *Brandt v. Rutledge,* 8th Cir. No. 21-2875 (filed Jan. 25, 2022); Response to FRAP 28(j) Letter in Brandt v. Rutledge (No. 21-2875) by Counsel for AAP (filed March 11, 2022); Response to FRAP 28(j) letter in *Brandt v. Rutledge* (No. 21-2875) by Counsel for AAP (filed April 19, 2022); Brief of Amici Curiae American Academy of Pediatrics et al., *Eknes Tucker v. Ivey*, M.D. Ala. No. 22-v-184, Dkt. 91-1 (filed May 4, 2022).

**RESPONSE TO REQUEST NO. 19:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither

relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding." AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege. AAP further objects to this Request because, notwithstanding the purported limitation to "non-privileged" documents, it clearly calls for documents protected by at least the attorney-client and/or work product privilege.

AAP will not produce documents in response to this improper Request.


**REQUEST NO. 20:**

Produce all non-privileged Communications and Documents regarding *Elmes Tucker v. Ivey*, M.D. Ala. No. 22-cv-184; *Ladinsky v. Ivey*, N.D. Ala. No. 22-cv-447; and, *Walker v. Marshall*, M.D. Ala. No. 22-cv-167.

**RESPONSE TO REQUEST NO. 20:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the

case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding." AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege. AAP further objects to this Request because, notwithstanding the purported limitation to "non-privileged" documents, it clearly calls for documents protected by at least the attorney-client and/or work product privilege.

AAP will not produce documents in response to this improper Request.


**REQUEST NO. 21:**

Produce all non-privileged Communications and Documents regarding the following filings by AAP: Brief of Amici Curiae American Academy of Pediatrics et al., *Hecox v. Little*, 9th Cir. Nos. 20-35813, 20-35815, Dkt. 75 (filed December 21, 2020); Brief of Amici Curiae American Academy of Pediatrics et al., *Soule v. Connecticut Association of Schools, Inc.*, 2d Cir. No. 21-1365, Dkt. 106 (filed Oct. 12, 2021); Brief of Amici Curiae Medical, Public Health, and Mental Health Organizations, *Grimm v. Gloucester County School Board*, 4th Cir. No. 19-1952, Dkt. 32-1 (Nov. 25, 2019).

**RESPONSE TO REQUEST NO. 21:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding." AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege. AAP further objects to this Request because, notwithstanding the purported limitation to "non-privileged" documents, it clearly calls for documents protected by at least the attorney-client and/or work product privilege.

AAP will not produce documents in response to this improper Request.

**REQUEST NO. 22:**

Produce all Communications and Documents regarding a News Release issued by AAP on April 2, 2021, entitled "Frontline Physicians Oppose Legislation That Interferes in or Penalizes Patient Care."

**RESPONSE TO REQUEST NO. 22:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding." AAP further objects to the Request to the extent the cited document speaks for itself. AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 23:**

Produce all Communications and Documents dated after January 1, 2020, regarding AAP's review or consideration of the following: Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria* (2021); *Nat'l Inst. for Health and Care Excellence, Evidence Review: Gonadotrophin Releasing Hormone Analogues for*

*Children and Adolescents with Gender Dysphoria* (2021); Abigail Shrier,
*Irreversible Damage* (2020); Abigail Shrier, *Top Trans Doctors Blow the Whistle
on 'Sloppy' Care, Common Sense* (Oct. 4, 2021); William J. Malone et al., *Proper
Care of Trans gender and Gender-diverse Persons in the Setting of Proposed
Discrimination*, 106 J. Clinical Endocrinology & Metabolism e3287 (2021); 
Abigail Shrier, *A Pediatric Association Stifles Debate on Gender Dysphoria*, Wall
St. Journal (Aug. 9, 2021); Stephen Levine et al., *Reconsidering Informed Consent
for Trans-Identified Children, Adolescents, and Young Adults*, J. Sex & Marital
Therapy, 7 (Mar. 2022); Socialstyrelsen, *Care of children and adolescents with
gender dysphoria* (Feb. 2022); Academie Nationale de Medecine, *Medicine and
gender transidentity in children and adolescents* (Feb. 2022).

**RESPONSE TO REQUEST NO. 23:**

AAP incorporates the foregoing General Objections, Objections to
Definitions, and Objection to Instructions as if fully set forth herein.  AAP further
objects to this Request on the ground that it seeks information that is neither
relevant to any claim or defense in this case nor proportional to the needs of the
case, particularly in light of AAP's status as a non-party.  *See Leake*, 231 F.R.D. at
51–52.  AAP further objects to this Request as vague, ambiguous, overly broad,
and unduly burdensome, particularly as to the phrase "all Communications and
Documents" and the words "regarding" and "review or consideration."  AAP

further objects to the Request to the extent the cited documents speak for themselves.  AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 24:**

Produce all Communications and Documents regarding the Sept. 2015 AAP presentation referenced in Kim LaCapria, Did American Pediatricians Issue a Statement That Transgenderism Is 'Child Abuse'?, Snopes (May 20, 2016).

**RESPONSE TO REQUEST NO. 24:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein.  AAP further objects that this Request is unintelligible as worded.  Taking the Request at face value, AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  AAP further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "all Communications and Documents" and the word "regarding."

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

**REQUEST NO. 25:**

Produce all Communications and Documents regarding Your efforts to develop a statement on care for transgender children between 2016 and 2018.

**RESPONSE TO REQUEST NO. 25:**

AAP incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. AAP further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of AAP's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. AAP further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "statement on care," and the words "regarding" and "efforts." AAP further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

33

Subject to and without waiving the foregoing objections, AAP is willing to meet and confer about this Request and to discuss what, if any, responsive documents AAP may agree to produce.

Dated:  September 9, 2022

Respectfully submitted,

*/s/ Cortlin H. Lannin*

Cortlin H. Lannin
Dylan M. Silva
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-6000
clannin@cov.com

*Counsel for Non-Party American Academy of Pediatrics*

34

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify that copies of the foregoing **American Academy of Pediatrics' Responses and Objections to Rule 45 Subpoena to Produce Documents** were delivered to the following parties by electronic mail:

Barrett Bowdre
Deputy Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
Montgomery, AL 36130
Barrett.Bowdre@AlabamaAG.gov

Dated:  September 9, 2022

_/s/ Dylan M. Silva_____
Dylan M. Silva
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-7007
dsilva@cov.com

# Exhibit 3

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Middle District of Alabama

| | | |
|---|---|---|
| Brianna Boe, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:22-cv-184-LCB |
| Governor of the State of Alabama, et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Veritas Meeting Solutions, Inc., World Professional Association for Transgender Health,
1061 E. Main St., Suite 300, E. Dundee, IL 60118

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Office of the Attorney General, State of Alabama, 501 Washington Avenue, Montgomery, AL, 36130 | Date and Time: 11/12/2022 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  10/13/2022

| CLERK OF COURT | | |
|---|---|---|
| | OR | B. W. B |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Governor of the State of Alabama, et al.                                                          , who issues or requests this subpoena, are:
Brian Barnes, Cooper & Kirk, PLLC, 1523 New Hampshire Ave. NW, Washington, DC, 20036, bbarnes@cooperkirk.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:22-cv-184-LCB

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SUBPOENA FOR PRODUCTION OF DOCUMENTS DIRECTED TO
WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH &
UNITED STATES PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH**

YOU ARE COMMANDED, pursuant to Federal Rule of Civil Procedure 45, to produce to the Office of the Attorney General, State of Alabama, 501 Washington Avenue, Montgomery, AL, 36130, at the time and place noted on the subpoena to which this document is attached, the following documents, electronically stored information, or objects, and to permit inspection and copying of the same:

### INSTRUCTIONS

Your responses should include all information, knowledge, or belief available not only to You, but also to any attorneys, investigators, consultants, agents, and other representatives acting on Your behalf. Please respond in accordance with the following instructions:

1.      **Claims of Privilege and Exception to Discovery.** If any claim of privilege is asserted, in whole or in part, with respect to any Request, or if You refuse to disclose any requested information or Document, in whole or in part, based on any claim of privilege or immunity, please identify the specific privilege or protection claimed and state the basis for the claim, identifying the pertinent circumstances with sufficient specificity to permit Defendants to assess the basis of any such claim for privilege or protection.

2.      **Continuing Nature.** These Requests are intended to be and shall be answered or responded to fully as of the date of response and shall be deemed to be continuing thereafter until the conclusion of this matter. If You should subsequently acquire any further responsive information or Documents called for by these Requests, You should promptly furnish such information or Documents to the undersigned counsel.

1

3.   **Answer to the Fullest Extent Possible.** If any of the Requests cannot be fulfilled in full, please answer to the fullest extent possible, explaining why you cannot answer the remainder of the Request, and stating any information or knowledge which You have concerning the unanswered portion.

4.   **Objections.** If You have a good-faith objection to any of these Requests, or any part thereof, the specific nature of the objection and whether it applies to the entire Request or to a certain portion thereof shall be clearly stated. If there is an objection to any part of a Request, then the part or parts objected to should be indicated and information responsive to the remaining unobjectionable parts should be provided.

5.   **Language.** The use of the singular form of any word includes the plural and vice versa. Reference to one gender includes the other gender(s). The word "all" means any and all. The word "including" means "including without limitation."

## DEFINITIONS

1.   The word "**Communication**" refers to any transmission, receipt, or exchange of information, whether orally, electronically, or in writing, including, without limitation, any conversation or discussion by means of Documents, letters, notes, in-person conversations, memoranda, reports, statements, voicemail, audio or video transmission, telephone calls, telegraph, telex, telecopier, facsimile, email, text message, electronic or other instant message, cable, Social Media post or message, Internet post or message, or any other form or medium of transmission or exchange.

2.   The words "**Document**" and "**Documents**" are used in the most comprehensive and inclusive sense permitted by Rule 34 of the Federal Rules of Civil Procedure, as elaborated by the official Comment on the 2006 Amendment. The terms "Document" and "Documents" also

2

include any drafts or versions thereof, and all copies on which any mark, alteration, writing, attachment, or any other change from the original appears.

3.     The terms "**regarding**," "**with regards to**," "**relate**," "**relating**," "**relating to**," "**concerning**," and/or "**related to**" mean recording, summarizing, embodying, constituting, reflecting, digesting, referring to, commenting upon, describing, reporting, listing, analyzing, studying, or otherwise discussing in any way a subject matter identified in the Request, and is defined so as to reach all matters within the scope of discovery under the Federal Rules of Civil Procedure.

4.     The terms "**You**" and "**Your**" refer to the World Professional Association for Transgender Health (WPATH) and the United States Professional Association for Transgender Health (USPATH) as well as the officers, agents, employees, members, representatives, present or former counsel, and all other persons acting on behalf of WPATH and USPATH.

5.     The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each of the Requests any and all information and Documents that might otherwise be construed to be outside of their scope.

6.     "**Alabama Vulnerable Child Compassion and Protection Act**" (or "**Act**") shall mean Alabama Act No. 2022-289, introduced in the Alabama Legislature as Senate Bill 184 and signed into law on or around April 8, 2022.

7.     "**Sex**" or "**Biological Sex**" shall mean the biological state of being male or female, based on the individual's chromosomes and reproductive organs at birth.

8.     "**Male**" shall mean the biological state of being male, based on the individual's chromosomes and reproductive organs at birth.

3

9.     "**Female**" shall mean the biological state of being female, based on the individual's chromosomes and reproductive organs at birth.

10.     "**Gender Dysphoria**" is the diagnosis of Gender Dysphoria under the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). "**Related Conditions**" include "gender incongruence" as defined by the ICD-11 and any other issues concerning trans (or transgender), gender diverse, and non-binary gender identities.

11.     "**Puberty Blockers**" shall mean medication administered to Minors to delay or prevent the onset or continuation of puberty, or otherwise to delay or prevent the formation or maturation of secondary sex characteristics. This includes, but is not limited to, common puberty blockers such as histrelin acetate and leuprolide acetate if administered for the purpose of Transitioning. For purposes of these Requests, "Puberty Blockers" does not include GnRH agonists administered to young children (7 and younger) for the treatment of central precocious puberty or to adult men (19+) for the treatment of prostate cancer.

12.     "**Cross-sex Hormones**" shall mean hormones administered to induce the physical characteristics of a sex or gender profile other than the Biological Sex of the patient (including non-cross-sex gender identities such as "non-binary"). It includes, but is not limited to, administering androgenic hormones such as testosterone, fluoxymesterone, and methyltestosterone to a biological female, and estrogenic hormones such as estrogen and estradiol to a biological male. It also includes the administration of hormone blockers and anti-androgens such as flutamide, spironolactone, and cyproterone if used as part of Transitioning.

13.     "**Desistance**" shall mean the resolution of diagnosed Gender Dysphoria or Related Conditions in a Minor without the continued administration of Puberty Blockers, Cross-Sex Hormones, or surgical interventions.

4

14.   "**Transitioning**" shall mean the administration of medicines such as Puberty Blockers, Cross-Sex Hormones, and surgical interventions to change the physical appearance of a Minor in a way that is not consistent with the patient's Biological Sex. This includes changing the appearance to appear as a cross-sex identification as well as non-cross-sex identifications such as "non-binary."

15.   "**Detransitioning**" shall mean any actions taken to conceal or reverse the effects of Transitioning, including the administration of medicines, surgical interventions, and social actions such as changing pronouns, dress, or other forms of gender expression.

16.   "**Minor**" shall mean a person under the age of 19.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.   Produce all Communications and Documents relating to the application and selection process for the WPATH Guideline Steering Committee, the Co-Chairs of the Standards of Care 8 (SOC-8) Revision Committee, each of the Chapter Leads for the SOC-8, each of the Chapter Workgroup Members for the SOC-8, each of the Chapter Stakeholder Members for the SOC-8, and each member of the WPATH Standards of Care 8th Version Evidence Review Team. *See generally* SOC-8 at S247-48 (Overview of SOC-8 development process).

2.   Produce all Communications and Documents relating to the decision regarding what chapters to include and not include in SOC-8, including but not limited to the decision not to include a chapter on Detransitioning.

3.   Produce all Communications and Documents relating to the development and approval of chapters 6 (Adolescents), 7 (Children), 8 (Nonbinary), 9 (Eunuchs), 12 (Hormone Therapy), 13 (Surgery and Postoperative Care), 14 (Voice and Communication), 15 (Primary Care), 16 (Reproductive Health), 17 (Sexual Health), and 18 (Mental Health) of SOC-8.

5

4.     Produce all Communications and Documents relating to the Delphi process for the SOC-8 chapters listed in Request #3, including who participated and voted in the Delphi process. *See, e.g.*, SOC-8 at S247, 250.

5.     Produce all Communications and Documents relating to the systematic review, "evidence tables[,] and other results of the systematic reviews" that the Evidence Review Team presented related to the chapters listed in Request #3. *See* SOC-8 at S249 ("The Evidence Review Team presented evidence tables and other results of the systematic reviews to the members of the relevant chapter for feedback.")

6.     Produce all Communications and Documents relating to the Evidence Review Team's search criteria, study selection results, and data extraction for the chapters listed in Request #3. *See* SOC-8 at S249.

7.     Produce all Communications and Documents relating to the evidence grades assigned by the Evidence Review Team for all studies, research questions, and statements for the chapters listed in Request #3. *See* SOC-8 at S250 ("The Evidence Review Team assigned evidence grades using the GRADE methodology.").

8.     Produce all Communications and Documents relating to the value factors that were included in the GRADE review process, including "the balance of potential benefits and harms" and "values and preferences of providers and patients." SOC-8 at S250.

9.     Produce all Communications and Documents comprising comments and survey responses to the draft SOC-8. *See* SOC-8 at S251 ("A final SOC-8 draft was made available for comments.... A total of 1,279 people made comments on the draft with a total of 2,688 comments.").

6

10.     Produce all Communications and Documents relating to revisions of SOC-8 as a result of, or in response to, comments received on the draft SOC-8. *See* SOC-8 at S251 ("The Chapters Leads and Guideline Steering Committee considered the feedback and made any necessary revisions....").

11.     Produce all Communications and Documents relating to the minimum age for treatments in SOC-8, including the initial decision to include minimum ages for treatments and the later decision not to include minimum ages for treatments. *See, e.g.*, "New Standards of Transgender Health Care Raises Eyebrows," *The Economist* (Sept. 23, 2022), https://www.economist.com/united-states/2022/09/22/new-standards-of-transgender-health-care-raise-eyebrows ("Known as SOC8, they originally included a list of minimum ages for treatments—14 for cross-sex hormones, 15 for removal of breasts, 17 for testicles. Hours later, a 'correction' eliminated the age limits.").

12.     Produce all Communications and Documents relating to the role played by, and the identities of, non-professional "stakeholders" in the development and approval of SOC-8 and, in particular, the chapters listed in Request #3. *See, e.g.*, SOC-8 at S248 ("Each chapter also included stakeholders as members who bring perspectives of transgender health advocacy or work in the community....").

13.     Produce all Communications and Documents identifying funding sources for SOC-7 and SOC-8.

14.     Produce all Communications and Documents relating to the development, review, and approval of the "Assessment and Treatment of Children and Adolescents with Gender Dysphoria" chapter in SOC-7.

7

15.     Produce all Communications and Documents regarding Dr. Lisa Littman, her article, *Rapid-Onset Gender Dysphoria in Adolescents an Young Adults: A Study of Parental Reports*, and any subsequent revisions to that article.

16.     Produce all Communications and Documents relating to the September 2018 WPATH public statement entitled, "WPATH POSITION ON 'Rapid-Onset Gender Dysphoria (ROGD)."

17.     Produce all Communications with the journal PLOS One, its officers, agents, employees, or other representatives dated after July 1, 2017.

18.     Produce all Communications and Documents relating to the article by Abigail Shrier entitled "Top Trans Doctors Blow the Whistle on 'Sloppy' Care," *available at* https://www.commonsense.news/p/top-trans-doctors-blow-the-whistle.

19.     Produce all Communications and Documents relating to the October 2021 "Joint Letter from USPATH and WPATH," *available at* https://www.wpath.org/media/cms/Documents/Public%20Policies/2021/Joint%20WPATH%20USPATH%20Letter%20Dated%20Oct%2012%202021.pdf.

20.     Produce all Communications and Documents regarding the resignation of Dr. Erica Anderson from USPATH.

21.     Produce all Communications and Documents related to the article by Dr. Laura Edwards-Leeper and Dr. Erica Anderson entitled, "The Mental Health Establishment Is Failing Trans Kids," and published in The Washington Post, *available at* https://www.washingtonpost.com/outlook/2021/11/24/trans-kids-therapy-psychologist/.

8

22.     Produce all Communications and Documents related to the drafting of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), and any subsequent editions or revisions.

23.     Produce all Communications and Documents related to the drafting of the ICD-11 coding for gender identity-related health.

24.     Produce all Communications and Documents relating to Dr. Kenneth Zucker's participation in the February 2017 USPATH conference, including Communications and Documents relating to any review and acceptance of any papers or presentations by Dr. Zucker and any decision to cancel any part of his planned participation.

25.     Produce all Communications and Documents related to the review, scoring, and acceptance of all presentations for the February 2017 USPATH conference.

26.     Produce all Communications and Documents relating to the review, scoring, and acceptance of all presentation submissions for the WPATH 27th Scientific Symposium held in September 2022.

27.     Produce all Communications and Documents relating to the review, scoring, and acceptance of all presentation submissions for the USPATH 2021 Scientific Symposium.

28.     Produce all video recordings of the sessions (including any "town-hall" or informal sessions) of any USPATH or WPATH conference since January 1, 2015.

29.     Produce all Communications and Documents distributed to attendees or participants of any USPATH or WPATH conference since January 1, 2017.

30.     Produce all Communications between You and other medical organizations, associations, or societies regarding Gender Dysphoria, Related Conditions, and Transitioning for minors.

31.     Produce all Communications regarding the drafting of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, Pediatrics (Oct. 2018).

32.     Produce all Communications regarding the drafting of Wylie C. Hembree, *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, J. Clin. Endocrinol. Metab (Nov. 2017).

33.     Produce all Communications and Documents relating to any perceived change in the last ten years in the proportion of female minors to male minors who are diagnosed with Gender Dysphoria or Related Conditions.

34.     Produce all Communications and Documents relating to the possibility of Desistance among Minors diagnosed with Gender Dysphoria or Related Conditions.

35.     Produce all Communications and Documents relating to the possibility of individuals Detransitioning after receiving either puberty blockers or cross-sex hormones.

36.     Produce all Communications and Documents relating to the risks of Transitioning.

37.     Produce all Communications and Documents relating to the effects on minors of medications used to effect Transitioning.

38.     Produce all Communications and Documents relating to the appropriate age for beginning Transitioning treatments in Minors.

39.     Produce all Communications and Documents relating to the informed consent process for minors considering or undergoing Transitioning treatments.

40.     Produce all Communications with the Plaintiffs in this lawsuit, including the United States of America and any agencies, departments, or employees thereof.

41.     Produce all Communications and Documents dated after February 1, 2019[1], regarding consideration or evaluation of the following as part of the drafting or evidence review process of SOC-8: Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria* (2021); Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria* (2021); Abigail Shrier, *Irreversible Damage* (2020); William J. Malone et al., *Proper Care of Transgender and Gender-diverse Persons in the Setting of Proposed Discrimination*, 106 J. Clinical Endocrinology & Metabolism e3287 (2021); Diane Chen *et al.*, *Consensus Parameter: Research Methodologies to Evaluate Neurodevelopmental Effects of Pubertal Suppression in Transgender Youth*, Transgender Health, Vol. 5, No. 4, 2020, DOI: 10.1089/trgh.2020.0006; The Cass Review, *Independent Review of Gender Identity Services for Children and Young People: Interim Report* (Feb. 2022), https://cass.independent-review.uk/publications/interim-report/; Stephen Levine et al., *Reconsidering Informed Consent for Trans-Identified Children, Adolescents, and Young Adults*, J. Sex & Marital Therapy, 7 (Mar. 2022); Socialstyrelsen, *Care of children and adolescents with gender dysphoria* (Feb. 2022); Académie Nationale de Médecine, *Medicine and gender transidentity in children and adolescents* (Feb. 2022); Jack L. Turban et al., *Sex Assigned at Birth Ratio Among Transgender and Gender Diverse Adolescents in the United States*, Pediatrics (Aug. 3, 2022); Jack L. Turban et al., *Pubertal Suppression for Transgender Youth and Risk of Suicidal Ideation*, Pediatrics (2020); Jack L. Turban et al., *Access to Gender-Affirming Hormones During Adolescence and Mental Health Outcomes Among Transgender Adults*, PLoS ONE (Jan. 12, 2022); Diana M. Tordoff et al., *Mental Health*

---

[1] *See* SOC-8 at S247 (noting that the Evidence Review Team started conducting systematic reviews in March 2019).

*Outcomes in Transgender and Nonbinary Youths Receiving Gender-Affirming Care*, JAMA Network Open (Feb. 25, 2022); Division of Florida Medicaid, *Generally Accepted Professional Medical Standard Determination on the Treatment of Gender Dysphoria* (June 2022), https://ahca.myflorida.com/letkidsbekids.

42.     Produce all Documents identifying types of participation in WPATH and USPATH meetings and/or committees by members and nonmembers.

43.     Produce all Communications and Documents regarding the Society for Evidence Based Gender Medicine ("SEGM"), the American College of Pediatricians, 4th Wave Now, Transgender Trend, Michael Laidlaw, MD, William Malone, MD, Paul Hruz, MD, Quentin Van Meter, MD, Julie Mason, MD, Stephen Levine, MD, Andre Van Mol, MD, Michelle Cretella, MD, Deborah Soh, Abigail Schrier, Jesse Singal, and Hilary Cass.

44.     Produce all Communications and Documents regarding Transitioning treatments in Alabama.

45.     Produce all Communications and Documents regarding advertisements for Transitioning treatments.

46.     Produce all Communications and Documents regarding funding for patients seeking Transitioning treatments, funding for research concerning Transitioning treatments, income earned from providing Transitioning treatments, and costs associated with providing Transitioning treatments.

47.     Produce all Communications and Documents related to the Coalition for the Advancement & Application of Psychological Science's Position Statement on Rapid Onset Gender Dysphoria (https://www.caaps.co/rogd-statement) that You signed.

# Exhibit 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, et al., | No. 2:22-cv-00184-LCB-CWB |
| Plaintiffs, | |
| v. | |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, et al., | |
| Defendants. | |

## <u>WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH'S RESPONSES AND OBJECTIONS TO RULE 45 SUBPOENA TO PRODUCE DOCUMENTS</u>

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, non-party World Professional Association for Transgender Health ("WPATH"), through its undersigned counsel, hereby responds and objects to the subpoena for the production of documents ("Requests") served by the State of Alabama ("Defendant") in the above-captioned proceeding.

## GENERAL OBJECTIONS

The following General Objections are incorporated in full into all Specific Objections set forth below:

1.      These responses are made solely for the purpose of this action.  By responding to the Requests, WPATH does not waive any objections that it may have to admission into evidence of these responses or any documents produced in response to the Requests on any applicable grounds.

2.      WPATH objects to the Requests to the extent that they impose obligations that go beyond, or that are otherwise inconsistent with, the Federal Rules of Civil Procedure, the Local Rules of the Court, any Order of the Court, or any other applicable law, rule, or order (collectively "Discovery Rules").

3.      WPATH objects to the Requests because the subpoena violates Federal Rule of Civil Procedure 45, as it commands WPATH, an Illinois-based organization, to produce documents in Alabama, more than 100 miles from where WPATH resides.

4.      WPATH objects to the Requests to the extent they seek discovery beyond any relevant, responsive, non-privileged, and non-duplicative information or documents in its possession, custody, or control that would be located after a reasonable search proportional to the needs of the case.  WPATH will respond to these Requests in good faith, but observes that the Requests on their face appear to seek information that is not relevant to any party's claims or defenses.  *See Boe v. Marshall*, No. 2:22-CV-184-LCB, 2022 WL 14049505, at *2 (M.D. Ala. Oct. 24, 2022) (finding materials sought from a third party were irrelevant to this case,

reasoning that the "materials are unlikely to reveal or lead to any information that would help resolve the fundamental issue in this case, which is whether Section 4(a)(1)–(3) of the Alabama Vulnerable Child Compassion and Protection Act is constitutional under the Fourteenth Amendment. Thus, the requested material has little—if any—relevance for purposes of discovery."); *see also North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51–52 (D.D.C. 2005) (holding that "[t]he mere filing of an amicus brief … does not open oneself to broad discovery demands, nor does it make one's bias, if any, relevant to the underlying action" and that "imposing such a burden on amici would undoubtedly discourage entities from making amicus filings at all, so as to avoid subjecting themselves to severe scrutiny and onerous discovery requests.").

5.     WPATH objects to the Requests as overly broad and unduly burdensome, particularly the burden of requiring a non-party to respond to 47 Requests, many with multiple sub-parts, which demand "*all* Communications and Documents" (emphasis added) and are unbounded by time or any other limiting criteria.  The cumulative burden of responding to these Requests is not proportional to the needs of the case, particularly because WPATH is not a party to the case.  Indeed, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" under Rule 45 of the Federal Rules of Civil Procedure.  *See, e.g.*, *Va. Dep't of*

3

*Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (holding that "a more demanding variant of the proportionality analysis" applies, and that courts "must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally.").

6.      WPATH objects to the Requests, and to the definitions and instructions included in the Requests, to the extent that they assume facts and events, include characterizations that are assumed to be accurate, or contain legal conclusions.  By responding to the Requests, WPATH does not admit or concede that any fact, event, characterization, or legal conclusion is correct or accurate, and WPATH reserves the right to contest all assumed facts, events, characterizations, and legal conclusions.

7.      WPATH objects to the Requests, and to the definitions and instructions included in this set of Requests, to the extent that they purport to require that WPATH identify and provide discovery with regard to "each," "all," "any," or similar all-encompassing wording on the grounds that the Requests are individually and collectively overly broad and unduly burdensome and seek discovery not relevant to the parties' claims and defenses nor proportional to the needs of the case.  To the extent that the Requests seek information or documents that are not reasonably accessible because they cannot be retrieved or produced

without undue burden or cost, WPATH objects because the Requests are overly broad and unduly burdensome.

8.      WPATH objects to the Requests to the extent that they seek information that can be obtained from the parties to this case, publicly available sources, or other third parties, including from the parties' experts. For example, many of the materials sought by the Requests are available on the WPATH website.

9.      WPATH objects to the Requests to the extent they seek documents no longer reasonably obtainable by WPATH due to the passage of time, employee turnover, or because the information is not stored on active systems.

10.     WPATH objects to the Requests to the extent that they seek production of confidential or other sensitive information, and to the extent they seek discovery of sensitive non-public information or disclosure of information protected by any confidentiality obligation owed a third party.

11.     WPATH objects to the Requests to the extent that they seek production of documents that are protected by the attorney-client privilege, the work product doctrine, the joint-defense or common interest privilege, privacy laws (including patient and healthcare privacy laws), any other applicable privilege, protection, or immunity, or that are otherwise exempted from discovery. WPATH hereby asserts all applicable privileges and protections to the extent

implicated by each Request, whether based on statute or regulation or recognized at common law.  In the event that any privileged document is produced by WPATH, its production is inadvertent and does not constitute waiver of any privilege, protection, or immunity.

12.    WPATH objects to the Requests to the extent that they seek production of documents that are protected by the First Amendment privilege, including but not limited to associational information.  *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010) (recognizing that where "discovery would have the practical effect of discouraging the exercise of First Amendment associational rights, the party seeking such discovery must demonstrate a need for the information sufficient to outweigh the impact on those rights").

13.    WPATH's objections are made to the best of its knowledge, information, and belief.  WPATH reserves the right to revise, correct, clarify, supplement, and/or amend the objections set forth herein, and reserves its right to assert any and all other defenses or objections, including those permitted by the Discovery Rules and the case law.

## OBJECTIONS TO DEFINITIONS

14.    WPATH objects to the definitions of "You" and "Your" on the grounds that they are overly broad, vague, ambiguous, and unduly burdensome to

6

the extent they seek production of information from entities other than WPATH.

In responding to these Requests, WPATH will construe "You" and "Your" to refer

to WPATH.

15.    WPATH objects to the definition of "Document" and "Documents" to

the extent that they seek to impose obligations on WPATH beyond those imposed

by the Discovery Rules and/or seek information or documents not in WPATH's

possession, custody, or control.

16.    WPATH objects to the definition of "Communication" and

"Communications" to the extent that they seek to impose obligations on WPATH

beyond those imposed by the Discovery Rules and/or seek information or

documents not in WPATH's possession, custody, or control.

17.    WPATH objects to the definitions of "Sex," "Biological Sex,"

"Transitioning," "Cross-sex Hormones," "Puberty Blockers," "Male," "Female,"

"Related Conditions," "Desistance," and "Detransitioning" as argumentative and

inaccurate.  However, solely for purposes of responding to the subpoena, WPATH

will interpret the Requests consistent with the provided Definitions, to the extent

that they can be understood.

## OBJECTIONS TO INSTRUCTIONS

18.     WPATH objects to Instruction No. 1 to the extent that it imposes obligations that go beyond, or that are otherwise inconsistent with the Discovery Rules.

19.     WPATH objects to Instruction No. 2 as overly broad and unduly burdensome to the extent it seeks to impose a continuing obligation on WPATH to conduct discovery and produce documents responsive to the Requests.  To the extent WPATH produces any material in response to the subpoena, it will be material that existed as of the date of service of the subpoena.

20.     WPATH objects to Instruction No. 3 to the extent that it imposes obligations that go beyond, or that are otherwise inconsistent with the Discovery Rules.

21.     WPATH objects to Instruction No. 4 to the extent that it imposes obligations that go beyond, or that are otherwise inconsistent with the Discovery Rules.

22.     WPATH objects to Instruction No. 5 as inaccurate to the extent that it attempts to define "gender."

## SPECIFIC RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1**:

Produce all Communications and Documents relating to the application and selection process for the WPATH Guideline Steering Committee, the Co-Chairs of the Standards of Care 8 (SOC-8) Revision Committee, each of the Chapter Leads for the SOC-8, each of the Chapter Workgroup Members for the SOC-8, each of the Chapter Stakeholder Members for the SOC-8, and each member of the WPATH Standards of Care 8th Version Evidence Review Team. *See generally* SOC-8 at S247-48 (Overview of SOC-8 development process).

**RESPONSE TO REQUEST NO. 1:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the application and selection process" and because it is unbounded by time.  WPATH further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.  WPATH further

9

objects to the Request to the extent it seeks information subject to a third-party's right of privacy or protection.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.


**REQUEST NO. 2:**

Produce all Communications and Documents relating to the decision regarding what chapters to include and not include in SOC-8, including but not limited to the decision not to include a chapter on Detransitioning.

**RESPONSE TO REQUEST NO. 2:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the decision what chapters to include and not include" and because it is unbounded by time.  WPATH further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 3:**

Produce all Communications and Documents relating to the development and approval of chapters 6 (Adolescents), 7 (Children), 8 (Nonbinaty), 9 (Eunuchs), 12 (Hormone Therapy), 13 (Surgery and Postoperative Care), 14 (Voice and Communication), 15 (Primary Care), 16 (Reproductive Health), 17 (Sexual Health), and 18 (Mental Health) of SOC-8.

**RESPONSE TO REQUEST NO. 3:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the development and approval of" and because it is unbounded by time.  WPATH

11

further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.


**REQUEST NO. 4:**

Produce all Communications and Documents relating to the Delphi process for the SOC-8 chapters listed in Request #3, including who participated and voted in the Delphi process. *See, e.g.*, SOC-8 at S247, 250.

**RESPONSE TO REQUEST NO. 4:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the Delphi process" and "participated," and because it is unbounded by time.  WPATH

further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 5:**

Produce all Communications and Documents relating to the systematic review, "evidence tables[,] and other results of the systematic reviews" that the Evidence Review Team presented related to the chapters listed in Request #3. *See* SOC-8 at S249 ("The Evidence Review Team presented evidence tables and other results of the systematic reviews to the members of the relevant chapter for feedback.")

**RESPONSE TO REQUEST NO. 5:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "relating to the systematic review" and because it is unbounded by time.  WPATH further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.  WPATH further objects to this Request as duplicative of, *inter alia*, Request Nos. 6 and 7.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 6:**

Produce all Communications and Documents relating to the Evidence Review Team's search criteria, study selection results, and data extraction for the chapters listed in Request #3. *See* SOC-8 at S249.

**RESPONSE TO REQUEST NO. 6:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "relating to …

search criteria, study selection results, and data extraction" and because it is

unbounded by time.  WPATH further objects to this Request to the extent that it

seeks documents that are publicly available and therefore equally available to all

parties.  WPATH further objects to this Request as duplicative of, *inter alia*,

Request Nos. 5 and 7.

Subject to and without waiving the foregoing objections, WPATH is willing

to meet and confer about this Request and to discuss what, if any, responsive

documents WPATH may agree to produce.


**REQUEST NO. 7:**

Produce all Communications and Documents relating to the evidence grades

assigned by the Evidence Review Team for all studies, research questions, and

statements for the chapters listed in Request #3.  *See* SOC-8 at S250 ("The

Evidence Review Team assigned evidence grades using the GRADE

methodology.").

**RESPONSE TO REQUEST NO. 7:**

WPATH incorporates the foregoing General Objections, Objections to

Definitions, and Objections to Instructions as if fully set forth herein.  WPATH

further objects to this Request on the ground that it seeks information that is

neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "all studies, research questions, and statements" and because it is unbounded by time.  WPATH further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.  WPATH further objects to this Request as duplicative of, *inter alia*, Request Nos. 5 and 6.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.


**REQUEST NO. 8:**

Produce all Communications and Documents relating to the value factors that were included in the GRADE review process, including "the balance of potential benefits and harms" and "values and preferences of providers and patients." SOC-8 at S250.

**RESPONSE TO REQUEST NO. 8:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH

further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the value factors" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 9:**

Produce all Communications and Documents comprising comments and survey responses to the draft SOC-8. *See* SOC-8 at S251 ("A final SOC-8 draft was made available for comments .... A total of 1,279 people made comments on the draft with a total of 2,688 comments.").

**RESPONSE TO REQUEST NO. 9:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of

the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "comprising

comments and survey responses" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing

to meet and confer about this Request and to discuss what, if any, responsive

documents WPATH may agree to produce.

**REQUEST NO. 10:**

Produce all Communications and Documents relating to revisions of SOC-8

as a result of, or in response to, comments received on the draft SOC-8. *See* SOC-8

at S251 ("The Chapters Leads and Guideline Steering Committee considered the

feedback and made any necessary revisions .... ").

**RESPONSE TO REQUEST NO. 10:**

WPATH incorporates the foregoing General Objections, Objections to

Definitions, and Objections to Instructions as if fully set forth herein.  WPATH

further objects to this Request on the ground that it seeks information that is

neither relevant to any claim or defense in this case nor proportional to the needs of

the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "relating to

revisions of SOC-8 as a result of, or in response to, comments receive on the draft

SOC-8" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing

to meet and confer about this Request and to discuss what, if any, responsive

documents WPATH may agree to produce.

**REQUEST NO. 11:**

Produce all Communications and Documents relating to the minimum age

for treatments in SOC-8, including the initial decision to include minimum ages for

treatments and the later decision not to include minimum ages for treatments. *See,*

*e.g.*, "New Standards of Transgender Health Care Raises Eyebrows," *The*

*Economist* (Sept. 23, 2022), https://www.economist.com/united-

states/2022/09/22/new-standards-of-transgender-health-care-raise-eyebrows

("Known as SOC8, they originally included a list of minimum ages for treatments-

14 for cross-sex hormones, 15 for removal of breasts, 17 for testicles. Hours later,

a 'correction' eliminated the age limits.").

**RESPONSE TO REQUEST NO. 11:**

WPATH incorporates the foregoing General Objections, Objections to

Definitions, and Objections to Instructions as if fully set forth herein.  WPATH

further objects to this Request on the ground that it seeks information that is

neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "initial decision," "later decision," and "treatments," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 12:**

Produce all Communications and Documents relating to the role played by, and the identities of, non-professional "stakeholders" in the development and approval of SOC-8 and, in particular, the chapters listed in Request #3. *See, e.g.*, SOC-8 at S248 ("Each chapter also included stakeholders as members who bring perspectives of transgender health advocacy or work in the community ....").

**RESPONSE TO REQUEST NO. 12:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

20

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the role played by … non-professional 'stakeholders' in the development and approval of SOC-8" and because it is unbounded by time.  WPATH further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.  WPATH further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 13:**

Produce all Communications and Documents identifying funding sources for SOC-7 and SOC-8.

**RESPONSE TO REQUEST NO. 13:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "identifying funding sources" and because it is unbounded by time.  WPATH further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 14:**

Produce all Communications and Documents relating to the development, review, and approval of the "Assessment and Treatment of Children and Adolescents with Gender Dysphoria" chapter in SOC-7.

**RESPONSE TO REQUEST NO. 14:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "relating to the development, review, and approval" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 15:**

Produce all Communications and Documents regarding Dr. Lisa Littman, her article, *Rapid-Onset Gender Dysphoria in Adolescents and Young Adults: A Study of Parental Reports*, and any subsequent revisions to that article.

**RESPONSE TO REQUEST NO. 15:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "regarding" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 16:**

Produce all Communications and Documents relating to the September 2018 WPATH public statement entitled, "WPATH POSITION ON 'Rapid-Onset Gender Dysphoria (ROGD)."

**RESPONSE TO REQUEST NO. 16:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. WPATH further objects to this Request because it is unbounded by time. WPATH further objects to the Request to the extent that the document speaks for itself.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

24

**REQUEST NO. 17:**

Produce all Communications with the journal PLOS One, its officers, agents, employees, or other representatives dated after July 1, 2017.

**RESPONSE TO REQUEST NO. 17:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "journal PLOS One, its officers, agents, employees, or other representatives" and because it seeks "all Communications" over a time period of more than five years.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 18:**

Produce all Communications and Documents relating to the article by Abigail Shrier entitled "Top Trans Doctors Blow the Whistle on 'Sloppy' Care," *available at* https://www.commonsense.news/p/top-trans-doctors-blow-the-whistle.

**RESPONSE TO REQUEST NO. 18:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the article" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 19:**

Produce all Communications and Documents relating to the October 2021 "Joint Letter from USPATH and WPATH," *available at*

https://www.WPATH.org/media/cms/Documents/Public%20Policies/202l/Joint%2

0WPATH%20U SWPATH%20Letter%20Dated%20Oct%2012%202021.pdf.

**RESPONSE TO REQUEST NO. 19:**

WPATH incorporates the foregoing General Objections, Objections to

Definitions, and Objections to Instructions as if fully set forth herein.  WPATH

further objects to this Request on the ground that it seeks information that is

neither relevant to any claim or defense in this case nor proportional to the needs of

the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "relating to the

[letter]" and because it is unbounded by time.  WPATH further objects to the

Request to the extent that the document speaks for itself.

Subject to and without waiving the foregoing objections, WPATH is willing

to meet and confer about this Request and to discuss what, if any, responsive

documents WPATH may agree to produce.


**REQUEST NO. 20:**

Produce all non-privileged Communications and Documents regarding the

resignation of Dr. Erica Anderson from USPATH.

**RESPONSE TO REQUEST NO. 20:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "regarding the resignation" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 21:**

Produce all Communications and Documents related to the article by Dr. Laura Edwards-Leeper and Dr. Erica Anderson entitled, "The Mental Health Establishment Is Failing Trans Kids," and published in The Washington Post, *available at* https://www.washingtonpost.com/outlook/2021/11/24/trans-kids-therapy-psychologist/.

**RESPONSE TO REQUEST NO. 21:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "related to the article" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 22:**

Produce all Communications and Documents related to the drafting of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), and any subsequent editions or revisions.

**RESPONSE TO REQUEST NO. 22:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is

neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "related to the drafting" and "any subsequent editions or revisions," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.


**REQUEST NO. 23:**

Produce all Communications and Documents related to the drafting of the ICD-11 coding for gender identity-related health.

**RESPONSE TO REQUEST NO. 23:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "related to the

drafting" and "gender identity-related health," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 24:**

Produce all Communications and Documents relating to Dr. Kenneth Zucker's participation in the February 2017 USPATH conference, including Communications and Documents relating to any review and acceptance of any papers or presentations by Dr. Zucker and any decision to cancel any part of his planned participation.

**RESPONSE TO REQUEST NO. 24:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "relating to

Dr. Kenneth Zucker's participation" and "any decision to cancel any part of his planned participation," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 25:**

Produce all Communications and Documents related to the review, scoring, and acceptance of all presentations for the February 2017 USPATH conference.

**RESPONSE TO REQUEST NO. 25:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "related to the review, scoring, and acceptance of all presentations" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 26:**

Produce all Communications and Documents relating to the review, scoring, and acceptance of all presentation submissions for the WPATH 27th Scientific Symposium held in September 2022.

**RESPONSE TO REQUEST NO. 26:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "related to the review, scoring, and acceptance of all presentation submissions" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 27:**

Produce all Communications and Documents relating to the review, scoring, and acceptance of all presentation submissions for the USPATH 2021 Scientific Symposium.

**RESPONSE TO REQUEST NO. 27:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "related to the review, scoring, and acceptance of all presentation submissions" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 28:**

Produce all video recordings of the sessions (including any "town-hall" or informal sessions) of any USPATH or WPATH conference since January 1, 2015.

**RESPONSE TO REQUEST NO. 28:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "video recordings of the sessions" and because it seeks all recordings over a time period of more than five years.  WPATH further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.

35

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 29:**

Produce all Communications and Documents distributed to attendees or participants of any USPATH or WPATH conference since January 1, 2017.

**RESPONSE TO REQUEST NO. 29:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "distributed to attendees or participants" and because it seeks "all Communications and Documents" over a time period of more than five years.  WPATH further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.

36

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 30:**

Produce all Communications between You and other medical organizations, associations, or societies regarding Gender Dysphoria, Related Conditions, and Transitioning for minors.

**RESPONSE TO REQUEST NO. 30:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "You and other medical organizations, associations, or societies" and "regarding Gender Dysphoria, Related Conditions, and Transitioning for minors," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 31:**

Produce all Communications regarding the drafting of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, Pediatrics (Oct. 2018).

**RESPONSE TO REQUEST NO. 31:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "regarding the drafting" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

38

**REQUEST NO. 32:**

Produce all Communications regarding the drafting of Wylie C. Hembree,

*Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An*

*Endocrine Society Clinical Practice Guideline*, J. Clin. Endocrinol. Metab (Nov.

2017).

**RESPONSE TO REQUEST NO. 32:**

WPATH incorporates the foregoing General Objections, Objections to

Definitions, and Objections to Instructions as if fully set forth herein.  WPATH

further objects to this Request on the ground that it seeks information that is

neither relevant to any claim or defense in this case nor proportional to the needs of

the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "regarding the

drafting" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing

to meet and confer about this Request and to discuss what, if any, responsive

documents WPATH may agree to produce.

**REQUEST NO. 33:**

Produce all Communications and Documents relating to any perceived change in the last ten years in the proportion of female minors to male minors who are diagnosed with Gender Dysphoria or Related Conditions.

**RESPONSE TO REQUEST NO. 33:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to any perceived change in the last ten years in the proportion of female minors to male minors who are diagnosed with Gender Dysphoria or Related Conditions" and because it seeks "all Communications and Documents" over a time period of at least ten years.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 34:**

Produce all Communications and Documents relating to the possibility of Desistance among Minors diagnosed with Gender Dysphoria or Related Conditions.

**RESPONSE TO REQUEST NO. 34:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the possibility of Desistance among Minors diagnosed with Gender Dysphoria or Related Conditions" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 35:**

Produce all Communications and Documents relating to the possibility of individuals Detransitioning after receiving either puberty blockers or cross-sex hormones.

**RESPONSE TO REQUEST NO. 35:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the possibility of individuals Detransitioning after receiving either puberty blockers or cross-sex hormones" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.


**REQUEST NO. 36:**

Produce all Communications and Documents relating to the risks of Transitioning.

**RESPONSE TO REQUEST NO. 36:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to" the risks of Transitioning" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 37:**

Produce all Communications and Documents relating to the effects on minors of medications used to effect Transitioning.

**RESPONSE TO REQUEST NO. 37:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein. WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of

43

the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "relating to the

effects on minors of medications used to effect Transitioning" and because it is

unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing

to meet and confer about this Request and to discuss what, if any, responsive

documents WPATH may agree to produce.


**REQUEST NO. 38:**

Produce all Communications and Documents relating to the appropriate age

for beginning Transitioning treatments in Minors.

**RESPONSE TO REQUEST NO. 38:**

WPATH incorporates the foregoing General Objections, Objections to

Definitions, and Objections to Instructions as if fully set forth herein.  WPATH

further objects to this Request on the ground that it seeks information that is

neither relevant to any claim or defense in this case nor proportional to the needs of

the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "relating to the

appropriate age for beginning Transitioning treatments in Minors" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 39:**

Produce all Communications and Documents relating to the informed consent process for minors considering or undergoing Transitioning treatments.

**RESPONSE TO REQUEST NO. 39:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "relating to the informed consent process for minors considering or undergoing Transitioning treatments" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 40:**

Produce all Communications with the Plaintiffs in this lawsuit, including the United States of America and any agencies, departments, or employees thereof.

**RESPONSE TO REQUEST NO. 40:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications with the Plaintiffs in this lawsuit" and "United States of America and any agencies, departments, or employees thereof," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH states that it does not have possession, custody, or control of any documents responsive to this Request.

**REQUEST NO. 41:**

Produce all Communications and Documents dated after February 1, 2019, regarding consideration or evaluation of the following as part of the drafting or evidence review process of SOC-8: Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria* (2021); Nat'l Inst. for Health and Care Excellence, Evidence Review: *Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria* (2021); Abigail Shrier, *Irreversible Damage* (2020); William J. Malone et al., *Proper Care of Transgender and Gender-diverse Persons in the Setting of Proposed Discrimination*, 106 J. Clinical Endocrinology & Metabolism e3287 (2021); Diane Chen et al., *Consensus Parameter: Research Methodologies to Evaluate Neurodevelopmental Effects of Pubertal Suppression in Transgender Youth*, Transgender Health, Vol. 5, No. 4, 2020, DOI: 10.1089/trgh.2020.0006; The Cass Review, *Independent Review of Gender Identity Services for Children and Young People: Interim Report* (Feb. 2022), https://cass.independent-review.uk/publications/interim-report/; Stephen Levine et

47

al., *Reconsidering Informed Consent for Trans-Identified Children, Adolescents, and Young Adults*, 1. Sex & Marital Therapy, 7 (Mar. 2022); Socialstyrelsen, *Care of children and adolescents with gender dysphoria* (Feb. 2022); Academie Nationale de Medecine, *Medicine and gender transidentity in children and adolescents* (Feb. 2022); Jack L. Turban et al., *Sex Assigned at Birth Ratio Among Transgender and Gender Diverse Adolescents in the United States*, Pediatrics (Aug. 3, 2022); Jack L. Turban et al., *Pubertal Suppression for Trans gender Youth and Risk of Suicidal Ideation*, Pediatrics (2020); Jack L. Turban et al., *Access to Gender-Affirming Hormones During Adolescence and Mental Health Outcomes Among Transgender Adults*, PLoS ONE (Jan. 12, 2022); Diana M. Tordoff et al., *Mental Health Outcomes in Transgender and Nonbinary Youths Receiving Gender-Affirming Care*, JAMA Network Open (Feb. 25, 2022); Division of Florida Medicaid, *Generally Accepted Professional Medical Standard Determination on the Treatment of Gender Dysphoria* (June 2022), https://ahca.myflorida.com/letkidsbekids.

**RESPONSE TO REQUEST NO. 41:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of

the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, and unduly burdensome, particularly as to the phrase "regarding

consideration or evaluation of the following as part of the drafting or evidence

review process."

Subject to and without waiving the foregoing objections, WPATH is willing

to meet and confer about this Request and to discuss what, if any, responsive

documents WPATH may agree to produce.


**REQUEST NO. 42:**

Produce all Documents identifying types of participation in WPATH and

USPATH meetings and/or committees by members and nonmembers.

**RESPONSE TO REQUEST NO. 42:**

WPATH incorporates the foregoing General Objections, Objections to

Definitions, and Objections to Instructions as if fully set forth herein.  WPATH

further objects to this Request on the ground that it seeks information that is

neither relevant to any claim or defense in this case nor proportional to the needs of

the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231

F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous,

overly broad, unintelligible, and unduly burdensome, particularly as to the phrase

49

"identifying types of participation in … meetings and/or committees" and because it is unbounded by time.  WPATH further objects to this Request to the extent that it seeks documents that are publicly available and therefore equally available to all parties.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 43:**

Produce all Communications and Documents regarding the Society for Evidence Based Gender Medicine ("SEGM"), the American College of Pediatricians, 4th Wave Now, Transgender Trend, Michael Laidlaw, MD, William Malone, MD, Paul Hruz, MD, Quentin Van Meter, MD, Julie Mason, MD, Stephen Levine, MD, Andre Van Mol, MD, Michelle Cretella, MD, Deborah Soh, Abigail Schrier, Jesse Singal, and Hilary Cass.

**RESPONSE TO REQUEST NO. 43:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of

the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "regarding" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 44:**

Produce all Communications and Documents regarding Transitioning treatments in Alabama.

**RESPONSE TO REQUEST NO. 44:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "regarding Transitioning treatments in Alabama" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 45:**

Produce all Communications and Documents regarding advertisements for Transitioning treatments.

**RESPONSE TO REQUEST NO. 45:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "regarding advertisements for Transitioning treatments" and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 46:**

Produce all Communications and Documents regarding funding for patients seeking Transitioning treatments, funding for research concerning Transitioning treatments, income earned from providing Transitioning treatments, and costs associated with providing Transitioning treatments.

**RESPONSE TO REQUEST NO. 46:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "regarding funding for patients seeking Transitioning treatments," "funding for research concerning Transitioning treatments," "income earned from providing Transitioning treatments," and "costs associated with providing Transitioning Treatments," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

**REQUEST NO. 47:**

Produce all Communications and Documents related to the Coalition for the Advancement & Application of Psychological Science's Position Statement on Rapid Onset Gender Dysphoria (https://www.caaps.co/rogd-statement) that You signed.

**RESPONSE TO REQUEST NO. 47:**

WPATH incorporates the foregoing General Objections, Objections to Definitions, and Objections to Instructions as if fully set forth herein.  WPATH further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of WPATH's status as a non-party.  *See Leake*, 231 F.R.D. at 51–52.  WPATH further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrase "related to" and because it is unbounded by time.  WPATH further objects to the Request to the extent that the document speaks for itself.

Subject to and without waiving the foregoing objections, WPATH is willing to meet and confer about this Request and to discuss what, if any, responsive documents WPATH may agree to produce.

Dated:  November 1, 2022          Respectfully submitted,

                                  */s/ Cortlin H. Lannin*
                                  Cortlin H. Lannin

                                  Covington & Burling LLP
                                  Salesforce Tower
                                  415 Mission St., Suite 5400
                                  San Francisco, CA 94105
                                  Phone: (415) 591-6000
                                  clannin@cov.com

                                  *Counsel for Non-Party World
                                  Professional Association for
                                  Transgender Health*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify that copies of the foregoing **World Professional Association for Transgender Health's Responses and Objections to Rule 45 Subpoena to Produce Documents** were delivered to the following parties by electronic mail:

Barrett Bowdre
Deputy Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
Montgomery, AL 36130
Barrett.Bowdre@AlabamaAG.gov

Dated:  November 1, 2022

___*/s/ Dylan M. Silva*_____
Dylan M. Silva
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-7007
dsilva@cov.com

# Exhibit 5

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Alabama

| | | |
|---|---|---|
| Brianna Boe, et al | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   2:22-cv-184-LCB |
| Governor of the State of Alabama, et al. | ) | |
| | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                     Endocrine Society
c/o CT Corporation System, 1015 15th Street, NW, Suite 1000, Washington, DC 20005

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attachment.

| Place: Office of the Attorney General, State of Alabama, 501 Washington Avenue, Montgomery, AL, 36130 | Date and Time:<br><br>01/03/2022 12:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/01/2022

|  CLERK OF COURT | OR | |
|---|---|---|
| | | B— W. B⟶ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Governor of the State of Alabama, et al. _____ , who issues or requests this subpoena, are:

Brian Barnes, Cooper & Kirk, PLLC, 1523 New Hampshire Ave. NW, Washington, DC, 20036, bbarnes@cooperkirk.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:22-cv-184-LCB

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SUBPOENA FOR PRODUCTION OF DOCUMENTS DIRECTED TO ENDOCRINE SOCIETY

YOU ARE COMMANDED, pursuant to Federal Rule of Civil Procedure 45, to produce to the Office of the Attorney General, State of Alabama, 501 Washington Avenue, Montgomery, AL, 36130, at the time and place noted on the subpoena to which this document is attached, the following documents, electronically stored information, or objects, and to permit inspection and copying of the same:

## INSTRUCTIONS

Your responses should include all information, knowledge, or belief available not only to You, but also to any attorneys, investigators, consultants, agents, and other representatives acting on Your behalf. Please respond in accordance with the following instructions:

1. **Claims of Privilege and Exception to Discovery.** If any claim of privilege is asserted, in whole or in part, with respect to any Request, or if You refuse to disclose any requested information or Document, in whole or in part, based on any claim of privilege or immunity, please identify the specific privilege or protection claimed and state the basis for the claim, identifying the pertinent circumstances with sufficient specificity to permit Defendants to assess the basis of any such claim for privilege or protection.

2. **Continuing Nature.** These Requests are intended to be and shall be answered or responded to fully as of the date of response and shall be deemed to be

1

continuing thereafter until the conclusion of this matter. If You should subsequently acquire any further responsive information or Documents called for by these Requests, You should promptly furnish such information or Documents to the undersigned counsel.

3.    **Answer to the Fullest Extent Possible.** If any of the Requests cannot be fulfilled in full, please answer to the fullest extent possible, explaining why you cannot answer the remainder of the Request, and stating any information or knowledge which You have concerning the unanswered portion.

4.    **Objections.** If You have a good-faith objection to any of these Requests, or any part thereof, the specific nature of the objection and whether it applies to the entire Request or to a certain portion thereof shall be clearly stated. If there is an objection to any part of a Request, then the part or parts objected to should be indicated and information responsive to the remaining unobjectionable parts should be provided.

5.    **Language.** The use of the singular form of any word includes the plural and vice versa. Reference to one gender includes the other gender(s). The word "all" means any and all. The word "including" means "including without limitation."

## DEFINITIONS

1.    The word **"Communication"** refers to any transmission, receipt, or exchange of information, whether orally, electronically, or in writing, including,

without limitation, any conversation or discussion by means of Documents, letters, notes, in-person conversations, memoranda, reports, statements, voicemail, audio or video transmission, telephone calls, telegraph, telex, telecopier, facsimile, email, text message, electronic or other instant message, cable, Social Media post or message, Internet post or message, or any other form or medium of transmission or exchange.

2.    The words "**Document**" and "**Documents**" are used in the most comprehensive and inclusive sense permitted by Rule 34 of the Federal Rules of Civil Procedure, as elaborated by the official Comment on the 2006 Amendment. The terms "Document" and "Documents" also include any drafts or versions thereof, and all copies on which any mark, alteration, writing, attachment, or any other change from the original appears.

3.    The terms "**regarding**," "**with regards to**," "**relate**," "**relating**," "**relating to**," "**concerning**," and/or "**related to**" mean recording, summarizing, embodying, constituting, reflecting, digesting, referring to, commenting upon, describing, reporting, listing, analyzing, studying, or otherwise discussing in any way a subject matter identified in the Request, and is defined so as to reach all matters within the scope of discovery under the Federal Rules of Civil Procedure.

4.    The terms "**You**" and "**Your**" refer to the Endocrine Society and any journals or publications of the Endocrine Society (including *Endocrine Reviews*, *Endocrinology*, *Journal of the Endocrine Society*, *The Journal of Clinical*

3

*Endocrinology & Metabolism*, and *JCEM Case Reports*), as well as the officers, agents, employees, members, representatives, present or former counsel, and all other persons acting on behalf of Endocrine Society.

5.      The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each of the Requests any and all information and Documents that might otherwise be construed to be outside of their scope.

6.      **"Alabama Vulnerable Child Compassion and Protection Act"** (or **"Act"**) shall mean Alabama Act No. 2022-289, introduced in the Alabama Legislature as Senate Bill 184 and signed into law on or around April 8, 2022.

7.      **"Sex"** or **"Biological Sex"** shall mean the biological state of being male or female, based on the individual's chromosomes and reproductive organs at birth.

8.      **"Male"** shall mean the biological state of being male, based on the individual's chromosomes and reproductive organs at birth.

9.      **"Female"** shall mean the biological state of being female, based on the individual's chromosomes and reproductive organs at birth.

10.     **"Gender Dysphoria"** is the diagnosis of Gender Dysphoria under the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). **"Related Conditions"** include "gender incongruence" as defined by the ICD-11 and

4

any other issues concerning trans/transgender, gender diverse, and/or non-binary gender identities.

11.   **"Puberty Blockers"** shall mean medication administered to Minors to delay or prevent the onset or continuation of puberty, or otherwise to delay or prevent the formation or maturation of secondary sex characteristics. This includes, but is not limited to, common puberty blockers such as histrelin acetate and leuprolide acetate if administered for the purpose of Transitioning. For purposes of these Requests, "Puberty Blockers" does not include GnRH agonists administered to young children (7 and younger) for the treatment of central precocious puberty or to adult men (19+) for the treatment of prostate cancer.

12.   **"Cross-sex Hormones"** shall mean hormones administered to induce the physical characteristics of a sex or gender profile other than the Biological Sex of the patient (including non-cross-sex gender identities such as "non-binary"). It includes, but is not limited to, administering androgenic hormones such as testosterone, fluoxymesterone, and methyltestosterone to a biological female, and estrogenic hormones such as estrogen and estradiol to a biological male. It also includes the administration of hormone blockers and anti-androgens such as flutamide, spironolactone, and cyproterone if used as part of Transitioning.

5

13.    **"Desistance"** shall mean the resolution of Gender Dysphoria or a Related Condition in a Minor without the continued administration of Puberty Blockers, Cross-Sex Hormones, or surgical interventions.

14.    **"Transitioning"** shall mean the administration of medicines such as Puberty Blockers, Cross-Sex Hormones, and surgical interventions to change the physical appearance of a Minor in a way that is not consistent with the patient's Biological Sex. This includes changing the appearance to appear as a cross-sex identification as well as non-cross-sex identifications such as "non-binary."

15.    **"Detransitioning"** shall mean any actions taken to conceal or reverse the effects of Transitioning, including the administration of medicines, surgical interventions, and social actions such as changing pronouns, dress, or other forms of gender expression.

16.    **"Minor"** shall mean a person under the age of 19.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Produce all Communications and Documents relating to the application and selection process the Clinical Guidelines Subcommittee of the Endocrine Society used to "appoint[] a task force to formulate evidence-based recommendations" for the "diagnosis and treatment of individuals with GD/gender incongruence." Wylie C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice*

6

*Guideline*, J. Clin. Endocrinol. Metab., Nov. 2017, 102(11) at 3872 [hereafter 2017 ES Guideline].

2.    Produce all Communications and Documents between You and the cosponsoring associations—including the American Association of Clinical Endocrinologists, American Society of Andrology, European Society for Pediatric Endocrinology, European Society of Endocrinology, Pediatric Endocrine Society, and World Professional Association for Transgender Health—regarding the need for and development of the 2017 ES Guideline.

3.    Produce Communications and Documents sufficient to identify all people who participated in the development of the 2017 ES Guideline.

4.    Produce all Documents and Communications relating to any systematic reviews that were commissioned or used for the development of the 2017 ES Guideline. *See* 2017 ES Guideline at 3873.

5.    Produce all Documents and Communications relating to the drafting and inclusion of Table 5, Criteria for Gender-Affirming Hormone Therapy for Adolescents, in the 2017 ES Guideline.

6.    Produce all Documents and Communications relating to the drafting and inclusion of the "Treatment of Adolescents" section, pp. 3880-3885, in the 2017 ES Guideline.

7.    Produce all Documents and Communications relating to the "values

and preferences" used in crafting the "Treatment of Adolescents" section, pp. 3880-3885, in the 2017 ES Guideline.

8.    Produce all Communications and Documents reflecting comments on drafts of the 2017 ES Guideline by Endocrine Society committees, members, and co-sponsoring organizations. *See* ES 2017 Guideline at 3869 ("Endocrine Society committees, members and cosponsoring organizations reviewed and commented on preliminary drafts of the guidelines.").

9.    Produce all Documents and Communications relating to any debate, consideration, or approval process for the 2017 ES Guideline by Endocrine Society committees or the membership at large.

10.    Produce all Documents and Communications relating to the impetus for, creation of, and approval of Your "Position Statement on Transgender Health" (Dec. 16, 2020), https://www.endocrine.org/advocacy/position-statements/transgender-health. This request includes, but is not limited to, Documents and Communications reflecting the impetus for the statement; the selection process used for determining who would draft the statement; who the drafters were; the revision process used; whether members commented on the statement and, if so, what those comments were; and who approved the statement and how.

11.    Produce all Communications and Documents You sent to the National

8

Institutes of Health in support of, or commenting on, Dr. Johanna Olson's research application for "The Impact of Early Medical Treatments in Transgender Youth," NIH Project #1R01HD082554.

12.   Produce all Communications and Documents reflecting Endocrine Society members' criticisms or concerns of the 2017 ES Guideline and/or Your "Position Statement on Transgender Health."

13.   Produce all Communications and Documents relating to the article by Abigail Shrier entitled "Top Trans Doctors Blow the Whistle on 'Sloppy' Care," *available at* https://www.commonsense.news/p/top-trans-doctors-blow-the-whistle.

14.   Produce all Communications and Documents related to the article by Dr. Laura Edwards-Leeper and Dr. Erica Anderson entitled, "The Mental Health Establishment Is Failing Trans Kids," and published in The Washington Post, *available at* https://www.washingtonpost.com/outlook/2021/11/24/trans-kids-therapy-psychologist/.

15.   Produce all Communications and Documents related to the drafting of the ICD-11 coding for gender identity-related health.

16.   Produce all Communications regarding the drafting of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, Pediatrics (Oct. 2018).

17.   Produce all Communications regarding the drafting of E. Coleman et

al., *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8* (2022) ("WPATH SOC-8").

18.     Produce all Communications and Documents since January 1, 2017, relating to any perceived change in the last ten years in the proportion of female minors to male minors who are diagnosed with Gender Dysphoria or Related Conditions.

19.     Produce all Communications and Documents since January 1, 2017, relating to the possibility of Desistance among Minors diagnosed with Gender Dysphoria or Related Conditions.

20.     Produce all Communications and Documents since January 1, 2017, relating to the possibility of individuals Detransitioning after receiving either puberty blockers or cross-sex hormones.

21.     Produce all Communications and Documents since January 1, 2017, relating to the risks of Transitioning.

22.     Produce all Communications and Documents since January 1, 2017, relating to the effects on minors of medications used to effect Transitioning.

23.     Produce all Communications and Documents since January 1, 2017, relating to the appropriate age for beginning Transitioning treatments in Minors.

24.     Produce all Communications and Documents since January 1, 2017, relating to the informed consent process for minors considering or undergoing

10

Transitioning treatments.

25. Produce all Communications with the Plaintiffs in this lawsuit, including the United States of America and any agencies, departments, or employees thereof.

26. Produce all Communications and Documents regarding any updates to or revisions of the 2017 ES Guideline.

27. Produce all Communications and Documents since January 1, 2017, regarding Your consideration or evaluation of the following as part of any consideration or discussion to update or revise the 2017 ES Guideline: Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria* (2021); Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria* (2021); Abigail Shrier, *Irreversible Damage* (2020); The Cass Review, *Independent Review of Gender Identity Services for Children and Young People: Interim Report* (Feb. 2022), https://cass.independent-review.uk/publications/interim-report/; Socialstyrelsen, *Care of children and adolescents with gender dysphoria* (Feb. 2022); Académie Nationale de Médecine, *Medicine and gender transidentity in children and adolescents* (Feb. 2022); Division of Florida Medicaid, *Generally Accepted Professional Medical Standard Determination on the Treatment of Gender*

11

*Dysphoria* (June 2022), https://ahca.myflorida.com/letkidsbekids.

28.    Produce all Communications and Documents regarding Transitioning treatments in Alabama.

29.    Produce all Communications and Documents regarding advertisements for Transitioning treatments.

# Exhibit 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

BRIANNA BOE, et al.,

      Plaintiffs,

      v.

STEVE MARSHALL, et al.,

      Defendants.

No. 2:22-cv-00184-LCB-CWB

## ENDOCRINE SOCIETY'S RESPONSES AND OBJECTIONS TO RULE 45 SUBPOENA TO PRODUCE DOCUMENTS

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, non-party Endocrine Society ("Endocrine Society"), through its undersigned counsel, hereby responds and objects to the subpoena for the production of documents ("Requests") served by the State of Alabama ("Defendant") in the above-captioned proceeding.

## GENERAL OBJECTIONS

The following General Objections are incorporated in full into all Specific Objections set forth below:

1.     These responses are made solely for the purpose of this action. By responding to the Requests, Endocrine Society does not waive any objections that

it may have to admission into evidence of these responses or any documents produced in response to the Requests on any applicable grounds.

2. Endocrine Society objects to the Requests to the extent that they impose obligations that go beyond, or that are otherwise inconsistent with, the Federal Rules of Civil Procedure, the Local Rules of the Court, any Order of the Court, or any other applicable law, rule, or order (collectively "Discovery Rules").

3. Endocrine Society objects to the Requests to the extent that the subpoena would violate Federal Rule of Civil Procedure 45 by commanding it to produce documents more than 100 miles from where it resides.

4. Endocrine Society objects to the Requests to the extent they seek discovery beyond any relevant, responsive, non-privileged, and non-duplicative information or documents in its possession, custody, or control that would be located after a reasonable search proportional to the needs of the case. Endocrine Society will respond to these Requests in good faith, but observes that the Requests on their face appear to seek information that is not relevant to any party's claims or defenses. *See, e.g.*, *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51–52 (D.D.C. 2005) (holding that "[t]he mere filing of an amicus brief … does not open oneself to broad discovery demands, nor does it make one's bias, if any, relevant to the underlying action" and that "imposing such a burden on amici

2

would undoubtedly discourage entities from making amicus filings at all, so as to avoid subjecting themselves to severe scrutiny and onerous discovery requests.").

5.     Endocrine Society objects to the Requests as overly broad and unduly burdensome, particularly the burden of requiring a non-party to respond to 25 Requests, many with multiple sub-parts, which demand "*all* Communications and Documents" (emphasis added) and are unbounded by time or any other limiting criteria.  The cumulative burden of responding to these Requests is not proportional to the needs of the case, particularly because Endocrine Society is not a party to the case.  Indeed, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" under Rule 45 of the Federal Rules of Civil Procedure.  *See, e.g.*, *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (holding that a "a more demanding variant of the proportionality analysis" applies, and that courts "must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally.").

6.     Endocrine Society objects to the Requests, and to the definitions and instructions included in the Requests, to the extent that they assume facts and events, include characterizations that are assumed to be accurate, or contain legal conclusions.  By responding to the Requests, Endocrine Society does not admit or concede that any fact, event, characterization, or legal conclusion is correct or

accurate, and Endocrine Society reserves the right to contest all assumed facts, events, characterizations, and legal conclusions.

7.      Endocrine Society objects to the Requests, and to the definitions and instructions included in this set of Requests, to the extent that they purport to require that Endocrine Society identify and provide discovery with regard to "each," "all," "any," or similar all-encompassing wording on the grounds that the Requests are individually and collectively overly broad and unduly burdensome and seek discovery not relevant to the parties' claims and defenses nor proportional to the needs of the case.  To the extent that the Requests seek information or documents that are not reasonably accessible because they cannot be retrieved or produced without undue burden or cost, Endocrine Society objects because the Requests are overly broad and unduly burdensome.

8.      Endocrine Society objects to the Requests to the extent that they seek information that can be obtained from the parties to this case, publicly-available sources, or other third parties, including from the parties' experts.

9.      Endocrine Society objects to the Requests to the extent they seek documents no longer reasonably obtainable by Endocrine Society due to the passage of time, employee turnover, or because the information is not stored on active systems.

10.     Endocrine Society objects to the Requests to the extent that they seek production of confidential or other sensitive information, and to the extent they seek discovery of sensitive non-public information or disclosure of information protected by any confidentiality obligation owed a third party.

11.     Endocrine Society objects to the Requests to the extent that they seek production of documents that are protected by the attorney-client privilege, the work product doctrine, the joint-defense or common interest privilege, privacy laws (including patient and healthcare privacy laws), any other applicable privilege, protection, or immunity, or that are otherwise exempted from discovery. Endocrine Society hereby asserts all applicable privileges and protections to the extent implicated by each Request, whether based on statute or regulation or recognized at common law.  In the event that any privileged document is produced by Endocrine Society, its production is inadvertent and does not constitute waiver of any privilege, protection, or immunity.

12.     Endocrine Society objects to the Requests to the extent that they seek production of documents that are protected by the First Amendment privilege, including but not limited to associational information. *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010) (recognizing that where "discovery would have the practical effect of discouraging the exercise of First Amendment associational rights, the party seeking such discovery must

5

demonstrate a need for the information sufficient to outweigh the impact on those rights").

13.     Endocrine Society's objections are made to the best of its knowledge, information, and belief.  Endocrine Society reserves the right to revise, correct, clarify, supplement, and/or amend the objections set forth herein, and reserve its right to assert any and all other defenses or objections, including those permitted by the Discovery Rules and the case law.

## OBJECTIONS TO DEFINITIONS

14.     Endocrine Society objects to the definitions of "You" and "Your" on the grounds that they are overly broad, vague, ambiguous, and unduly burdensome to the extent they seek production of information from entities other than Endocrine Society.

15.     Endocrine Society objects to the definition of "Document" and "Documents" to the extent that they seek to impose obligations on Endocrine Society beyond those imposed by the Discovery Rules and/or seek information or documents not in Endocrine Society's possession, custody, or control.

16.     Endocrine Society objects to the definition of "Communication" to the extent that it seeks to impose obligations on Endocrine Society beyond those imposed by the Discovery Rules and/or seek information or documents not in Endocrine Society's possession, custody, or control.

17.     Endocrine Society objects to the definitions of "Sex," "Biological Sex," "Male," "Female," "Gender Dysphoria," "Puberty Blockers," "Cross-sex Hormones," "Desistance," "Transitioning," and "Detransitioning," as argumentative and inaccurate.  However, solely for purposes of responding to the subpoena, Endocrine Society will interpret the Requests consistent with the provided Definitions, to the extent that they can be understood.

## OBJECTIONS TO INSTRUCTIONS

18.     Endocrine Society objects to Instruction No. 1 to the extent that it imposes obligations that go beyond, or that are otherwise inconsistent with the Discovery Rules.

19.     Endocrine Society objects to Instruction No. 2 as overly broad and unduly burdensome to the extent it seeks to impose a continuing obligation on Endocrine Society to conduct discovery and produce documents responsive to the Requests.  To the extent Endocrine Society produces any material in response to the subpoena, it will be material that existed as of the date of service of the subpoena.

20.     Endocrine Society objects to Instruction No. 3 to the extent that it imposes obligations that go beyond, or that are otherwise inconsistent with the Discovery Rules.

21.   Endocrine Society objects to Instruction No. 4 to the extent that it imposes obligations that go beyond, or that are otherwise inconsistent with the Discovery Rules.

22.   Endocrine Society objects to Instruction No. 5 as inaccurate to the extent that it attempts to define "gender."

23.   Endocrine Society objects to Instruction No. 6 to the extent that it is insufficiently protective of confidential or sensitive patient information.

## SPECIFIC RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1**:

Produce all Communications and Documents relating to the application and selection process the Clinical Guidelines Subcommittee of the Endocrine Society used to "appoint[] a task force to formulate evidence-based recommendations" for the "diagnosis and treatment of individuals with GD/gender incongruence." Wylie C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, J. Clin. Endocrinol. Metab., Nov. 2017, 102(11) at 3872 [hereafter 2017 ES Guideline].

**RESPONSE TO REQUEST NO. 1:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "the application and selection process," and because it is unbounded by time.

Endocrine Society further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 2:**

Produce all Communications and Documents between You and the cosponsoring associations—including the American Association of Clinical Endocrinologists, American Society of Andrology, European Society for Pediatric Endocrinology, European Society of Endocrinology, Pediatric Endocrine Society, and World Professional Association for Transgender Health—regarding the need for and development of the 2017 ES Guideline.

**RESPONSE TO REQUEST NO. 2:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly

burdensome, particularly as to the phrases "all Communications and Documents,"

"cosponsoring associations," and "regarding the need for and development of the

2017 ES Guideline," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, Endocrine Society

is willing to meet and confer about this Request and to discuss what, if any,

responsive documents Endocrine Society may agree to produce.


**REQUEST NO. 3:**

Produce Communications and Documents sufficient to identify all people

who participated in the development of the 2017 ES Guideline.

**RESPONSE TO REQUEST NO. 3:**

Endocrine Society incorporates the foregoing General Objections,

Objections to Definitions, and Objection to Instructions as if fully set forth herein.

Endocrine Society further objects to this Request on the ground that it seeks

information that is neither relevant to any claim or defense in this case nor

proportional to the needs of the case, particularly in light of Endocrine Society's

status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further

objects to this Request as vague, ambiguous, overly broad, and unduly

burdensome, particularly as to the phrase "all people who participated in the

development of the 2017 ES Guideline," and because it is unbounded by time.

11

Endocrine Society further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 4:**

Produce all Documents and Communications relating to any systematic reviews that were commissioned or used for the development of the 2017 ES Guideline. *See* 2017 ES Guideline at 3873.

**RESPONSE TO REQUEST NO. 4:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Documents and Communications"

and "commissioned or used for the development of the 2017 ES Guideline," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.


**REQUEST NO. 5:**

Produce all Documents and Communications relating to the drafting and inclusion of Table 5, Criteria for Gender-Affirming Hormone Therapy for Adolescents, in the 2017 ES Guideline.

**RESPONSE TO REQUEST NO. 5:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Documents and Communications" and "relating to the drafting and inclusion," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 6:**

Produce all Documents and Communications relating to the drafting and inclusion of the "Treatment of Adolescents" section, pp. 3880-3885, in the 2017 ES Guideline.

**RESPONSE TO REQUEST NO. 6:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Documents and Communications" and "relating to the drafting and inclusion," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 7:**

Produce all Documents and Communications relating to the "values and preferences" used in crafting the "Treatment of Adolescents" section, pp. 3880-3885, in the 2017 ES Guideline.

**RESPONSE TO REQUEST NO. 7:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Documents and Communications" and "relating to the 'values and preferences' used in crafting," and because it is unbounded by time. Endocrine Society further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, Endocrine Society

is willing to meet and confer about this Request and to discuss what, if any,

responsive documents Endocrine Society may agree to produce.


**REQUEST NO. 8:**

Produce all Communications and Documents reflecting comments on drafts

of the 2017 ES Guideline by Endocrine Society committees, members, and co-

sponsoring organizations. See ES 2017 Guideline at 3869 ("Endocrine Society

committees, members and cosponsoring organizations reviewed and commented

on preliminary drafts of the guidelines.").

**RESPONSE TO REQUEST NO. 8:**

Endocrine Society incorporates the foregoing General Objections,

Objections to Definitions, and Objection to Instructions as if fully set forth herein.

Endocrine Society further objects to this Request on the ground that it seeks

information that is neither relevant to any claim or defense in this case nor

proportional to the needs of the case, particularly in light of Endocrine Society's

status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further

objects to this Request as vague, ambiguous, overly broad, and unduly

burdensome, particularly as to the phrases "all Documents and Communications"

and "reflecting comments on drafts of the 2017 ES Guideline by Endocrine Society

committees, members, and co-sponsoring organizations," and because it is unbounded by time.    Endocrine Society further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 9:**

Produce all Documents and Communications relating to any debate, consideration, or approval process for the 2017 ES Guideline by Endocrine Society committees or the membership at large.

**RESPONSE TO REQUEST NO. 9:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52.  Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Documents and Communications"

and "relating to any debate, consideration, or approval process" and because it is unbounded by time.    Endocrine Society further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 10:**

Produce all Documents and Communications relating to the impetus for, creation of, and approval of Your "Position Statement on Transgender Health" (Dec. 16, 2020), https://www.endocrine.org/advocacy/position-statements/transgender-health. This request includes, but is not limited to, Documents and Communications reflecting the impetus for the statement; the selection process used for determining who would draft the statement; who the drafters were; the revision process used; whether members commented on the statement and, if so, what those comments were; and who approved the statement and how.

**RESPONSE TO REQUEST NO. 10:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks

information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Documents and Communications" and "relating to the impetus for, creation of, and approval" and because it is unbounded by time. Endocrine Society further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.


**REQUEST NO. 11:**

Produce all Communications and Documents You sent to the National Institutes of Health in support of, or commenting on, Dr. Johanna Olson's research application for "The Impact of Early Medical Treatments in Transgender Youth," NIH Project #1R01HD082554.

**RESPONSE TO REQUEST NO. 11:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein.

Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" "sent to the National Institutes of Health in support of, or commenting on, Dr. Johanna Olson's research application," and because it is unbounded by time. Endocrine Society further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 12:**

Produce all Communications and Documents reflecting Endocrine Society members' criticisms or concerns of the 2017 ES Guideline and/or Your "Position Statement on Transgender Health."

**RESPONSE TO REQUEST NO. 12:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "reflecting Endocrine Society members' criticisms or concerns of," and because it is unbounded by time. Endocrine Society further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 13:**

Produce all Communications and Documents relating to the article by Abigail Shrier entitled "Top Trans Doctors Blow the Whistle on 'Sloppy' Care," available at https://www.commonsense.news/p/top-trans-doctors-blow-the-whistle.

**RESPONSE TO REQUEST NO. 13:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "relating to the article," and because it is unbounded by time. Endocrine Society further objects to this Request to the extent it seeks information that is protected by the First Amendment privilege.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 14:**

Produce all Communications and Documents related to the article by Dr. Laura Edwards-Leeper and Dr. Erica Anderson entitled, "The Mental Health Establishment Is Failing Trans Kids," and published in The Washington Post, *available at* https://www.washingtonpost.com/outlook/2021/11/24/trans-kids-therapy-psychologist/.

**RESPONSE TO REQUEST NO. 14:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "related to the article," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 15:**

Produce all Communications and Documents related to the drafting of the ICD-11 coding for gender identity-related health.

**RESPONSE TO REQUEST NO. 15:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "related to the drafting of," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 16:**

Produce all Communications regarding the drafting of Jason Rafferty et al., *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, Pediatrics (Oct. 2018).

**RESPONSE TO REQUEST NO. 16:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications" and "regarding the drafting of," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 17:**

Produce all Communications regarding the drafting of E. Coleman et al.,

*Standards of Care for the Health of Transgender and Gender Diverse People*,

Version 8 (2022) ("WPATH SOC-8").

**RESPONSE TO REQUEST NO. 17:**

Endocrine Society incorporates the foregoing General Objections,

Objections to Definitions, and Objection to Instructions as if fully set forth herein.

Endocrine Society further objects to this Request on the ground that it seeks

information that is neither relevant to any claim or defense in this case nor

proportional to the needs of the case, particularly in light of Endocrine Society's

status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further

objects to this Request as vague, ambiguous, overly broad, and unduly

burdensome, particularly as to the phrases "all Communications" and "regarding

the drafting of," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, Endocrine Society

is willing to meet and confer about this Request and to discuss what, if any,

responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 18:**

Produce all Communications and Documents since January 1, 2017, relating to any perceived change in the last ten years in the proportion of female minors to male minors who are diagnosed with Gender Dysphoria or Related Conditions.

**RESPONSE TO REQUEST NO. 18:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "relating to any perceived change in the last ten years in the proportion of female minors to male minors who are diagnosed with Gender Dysphoria or Related Conditions," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 19:**

Produce all Communications and Documents since January 1, 2017, relating to the possibility of Desistance among Minors diagnosed with Gender Dysphoria or Related Conditions.

**RESPONSE TO REQUEST NO. 19:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "relating to the possibility of Desistance among Minors diagnosed with Gender Dysphoria or Related Conditions," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 20:**

Produce all Communications and Documents since January 1, 2017, relating to the possibility of individuals Detransitioning after receiving either puberty blockers or cross-sex hormones.

**RESPONSE TO REQUEST NO. 20:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "relating to the possibility of individuals Detransitioning after receiving either puberty blockers or cross-sex hormones," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 21:**

Produce all Communications and Documents since January 1, 2017, relating to the risks of Transitioning.

**RESPONSE TO REQUEST NO. 21:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "relating to the risks of Transitioning," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 22:**

Produce all Communications and Documents since January 1, 2017, relating to the effects on minors of medications used to effect Transitioning.

**RESPONSE TO REQUEST NO. 22:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "relating to the effects on minors of medications used to effect Transitioning," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 23:**

Produce all Communications and Documents since January 1, 2017, relating to the appropriate age for beginning Transitioning treatments in Minors.

**RESPONSE TO REQUEST NO. 23:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "relating to the appropriate age for beginning Transitioning treatments in Minors," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 24:**

Produce all Communications and Documents since January 1, 2017, relating to the informed consent process for minors considering or undergoing Transitioning treatments.

**RESPONSE TO REQUEST NO. 24:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "relating to the informed consent process for minors considering or undergoing Transitioning treatments," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

33

**REQUEST NO. 25:**

Produce all Communications with the Plaintiffs in this lawsuit, including the United States of America and any agencies, departments, or employees thereof.

**RESPONSE TO REQUEST NO. 25:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications with the Plaintiffs in this lawsuit" and "United States of America and any agencies, departments, or employees thereof," and because it is unbounded by time.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

34

**REQUEST NO. 26:**

Produce all Communications and Documents regarding any updates to or revisions of the 2017 ES Guideline.

**RESPONSE TO REQUEST NO. 26:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "regarding any updates to or revisions of," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 27:**

Produce all Communications and Documents since January 1, 2017,

regarding Your consideration or evaluation of the following as part of any

consideration or discussion to update or revise the 2017 ES Guideline: Nat'l Inst.

for Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones*

*for Children and Adolescents with Gender Dysphoria* (2021); Nat'l Inst. for Health

and Care Excellence, *Evidence Review: Gonadotrophin Releasing Hormone*

*Analogues for Children and Adolescents with Gender Dysphoria* (2021); Abigail

Shrier, *Irreversible Damage* (2020); The Cass Review, *Independent Review of*

*Gender Identity Services for Children and Young People: Interim Report* (Feb.

2022), https://cass.independent-review.uk/publications/interim-report/;

Socialstyrelsen, *Care of children and adolescents with gender dysphoria* (Feb.

2022); Académie Nationale de Médecine, *Medicine and gender transidentity in*

*children and adolescents* (Feb. 2022); *Division of Florida Medicaid, Generally*

*Accepted Professional Medical Standard Determination on the Treatment of*

*Gender Dysphoria* (June 2022), https://ahca.myflorida.com/letkidsbekids.

**RESPONSE TO REQUEST NO. 27:**

Endocrine Society incorporates the foregoing General Objections,

Objections to Definitions, and Objection to Instructions as if fully set forth herein.

Endocrine Society further objects to this Request on the ground that it seeks

information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "regarding Your consideration or evaluation of the following as part of any consideration or discussion to update or revise the 2017 ES Guideline," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

**REQUEST NO. 28:**

Produce all Communications and Documents regarding Transitioning treatments in Alabama.

**RESPONSE TO REQUEST NO. 28:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor

proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "regarding Transitioning treatments in Alabama," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.


**REQUEST NO. 29:**

Produce all Communications and Documents regarding advertisements for Transitioning treatments.

**RESPONSE TO REQUEST NO. 29:**

Endocrine Society incorporates the foregoing General Objections, Objections to Definitions, and Objection to Instructions as if fully set forth herein. Endocrine Society further objects to this Request on the ground that it seeks information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case, particularly in light of Endocrine Society's status as a non-party. *See Leake*, 231 F.R.D. at 51–52. Endocrine Society further

objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, particularly as to the phrases "all Communications and Documents" and "regarding advertisements for Transitioning treatments," and because it covers a substantial period of time spanning many years.

Subject to and without waiving the foregoing objections, Endocrine Society is willing to meet and confer about this Request and to discuss what, if any, responsive documents Endocrine Society may agree to produce.

Dated:  December 15, 2022

Respectfully submitted,

*/s/ Cortlin H. Lannin*

Cortlin H. Lannin
Dylan M. Silva
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-6000
clannin@cov.com

*Counsel for Non-Party Endocrine Society*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify that copies of the foregoing **Endocrine Society's Responses and Objections to Rule 45 Subpoena to Produce Documents** were delivered to the following parties by electronic mail:

Barrett Bowdre
Deputy Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
Montgomery, AL 36130
Barrett.Bowdre@AlabamaAG.gov

Dated:  December 15, 2022

    */s/ Dylan M. Silva*
Dylan M. Silva
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-7007
dsilva@cov.com

40

# Exhibit 7

| | |
|---|---|
| **From:** | Brian Barnes |
| **To:** | Silva, Dylan; John Ramer |
| **Cc:** | Bowdre, Barrett; Davis, Jim; Lannin, Cortlin; BRagsdale@dfhlaw.com; Bernick, Daniel |
| **Subject:** | RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP |
| **Date:** | Thursday, December 22, 2022 11:39:13 AM |
| **Attachments:** | image001.jpg |

<mark>[EXTERNAL]</mark>
Se below for dial-in information we can use for tomorrow's call.

| | |
|---|---|
| Date: | December 23, 2022 |
| Time: | 1:00 PM EST |
| Dial-in No.: | +1 800-567-5900 |
| Access Code: | 2359207 |

**From:** Brian Barnes <BBarnes@cooperkirk.com>
**Sent:** Wednesday, December 21, 2022 5:49 PM
**To:** Silva, Dylan <DSilva@cov.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>;
Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** Re: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Thanks, Dylan. That time works — I will circulate a dial in in the AM.

Get Outlook for iOS

---

**From:** Silva, Dylan <DSilva@cov.com>
**Sent:** Wednesday, December 21, 2022 2:19:12 PM
**To:** Brian Barnes <BBarnes@cooperkirk.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>;
Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com <BRagsdale@dfhlaw.com>; Bernick,
Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Brian,

I'm sorry to hear that.  Does Friday at 1pm ET work for you?  If so, will you please circulate a dial-in?

Thanks,
Dylan

---

**From:** Brian Barnes <BBarnes@cooperkirk.com>
**Sent:** Wednesday, December 21, 2022 11:07 AM
**To:** Silva, Dylan <DSilva@cov.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>;
Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

**[EXTERNAL]**
Hi Dylan,

Thanks for the note below. It's unfortunate, but I think we have reached an impasse. That said, we're happy to have one last call, as you suggest. Would you be available either tomorrow or Friday? I'll be tied up tomorrow after 4pm Eastern, but any time before 4pm Eastern tomorrow or on Friday would work on our end.

Best regards,

Brian

---

**From:** Silva, Dylan <DSilva@cov.com>
**Sent:** Friday, December 16, 2022 7:13 PM
**To:** Brian Barnes <BBarnes@cooperkirk.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Brian and John,

Thanks again for taking the time today to discuss Alabama's subpoenas to AAP, WPATH, and the Endocrine Society.

As I explained during the call, although you have agreed to withdraw some of the requests, the remaining requests still seek documents that are (1) irrelevant to any claims or defenses in this case, and (2) beyond the scope of the limited third party discovery that the Court has deemed potentially relevant and appropriate.  Additionally, we have conferred with our clients and understand that complying with the remaining requests would impose substantial and undue burdens on these organizations.

That said, in the spirit of compromise and without waiving any of our objections to the subpoena, I explained that my clients would agree to produce the studies relied on in crafting their guidelines and policy positions cited in the amicus brief.  We agreed that before (and if) the parties reach an impasse on this subpoena and/or seek the assistance of the Court in resolving this dispute, we would have one final meet-and-confer to assess our positions.

Please let me know when you are available for our next meet and confer.  If we don't talk next week, I hope you both have a wonderful holiday.

Regards,
Dylan

---

**From:** Brian Barnes <BBarnes@cooperkirk.com>

**Sent:** Tuesday, December 13, 2022 8:49 AM
**To:** Silva, Dylan <DSilva@cov.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>;
Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

[EXTERNAL]
See below for dial-in information we can use at 1pm Eastern on Friday.

Date:           Friday, December 16, 2022
Time:           1:00 p.m. EST
Dial-in No.:    +1 800-567-5900
Access code:   2359207

**From:** Brian Barnes
**Sent:** Tuesday, December 13, 2022 11:32 AM
**To:** Silva, Dylan <DSilva@cov.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>;
Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Dylan,

1pm on Friday works on our end. I'll send a dial in we can use shortly.

Brian

**From:** Silva, Dylan <DSilva@cov.com>
**Sent:** Tuesday, December 13, 2022 11:23 AM
**To:** Brian Barnes <BBarnes@cooperkirk.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>;
Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Brian,

We unfortunately have a conflict at that time now.  Are you free Friday at 1pm ET?

Thanks,
Dylan

**From:** Brian Barnes <BBarnes@cooperkirk.com>
**Sent:** Tuesday, December 13, 2022 4:47 AM
**To:** Silva, Dylan <DSilva@cov.com>; John Ramer <jramer@cooperkirk.com>

**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

**[EXTERNAL]**
Hi Dylan,

Does 4.30pm Eastern on Wednesday still work for you? If so, we'll go ahead and send around a dial-in number we can use for that time.

Best regards,

Brian

---

**From:** Silva, Dylan <DSilva@cov.com>
**Sent:** Friday, December 9, 2022 7:47 PM
**To:** Brian Barnes <BBarnes@cooperkirk.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Brian,

Of course.  How about Wednesday at 4:30 pm ET?  We will aim to send you our responses to the Endocrine Society subpoena by Tuesday night so we can meet and confer about that subpoena as well.

Have a nice weekend,
Dylan

---

**From:** Brian Barnes <BBarnes@cooperkirk.com>
**Sent:** Friday, December 9, 2022 7:24 AM
**To:** Silva, Dylan <DSilva@cov.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

**[EXTERNAL]**
Hi Dylan,

Would it make sense to set up a call for early next week to discuss the proposal below? We're still hopeful that it will be possible to reach an agreement on these subpoenas, but one way or another we think it's important to bring these discussions to a close by the end of the year. My schedule is pretty flexible next week, so please let us know a time or two that works well on your end.

Best regards,

Brian

_____

**From:** Brian Barnes
**Sent:** Monday, December 5, 2022 4:43 PM
**To:** Silva, Dylan <[DSilva@cov.com](mailto:DSilva@cov.com)>; John Ramer <[jramer@cooperkirk.com](mailto:jramer@cooperkirk.com)>
**Cc:** Bowdre, Barrett <[Barrett.Bowdre@AlabamaAG.gov](mailto:Barrett.Bowdre@AlabamaAG.gov)>; Davis, Jim <[Jim.Davis@AlabamaAG.gov](mailto:Jim.Davis@AlabamaAG.gov)>;
Lannin, Cortlin <[clannin@cov.com](mailto:clannin@cov.com)>; [BRagsdale@dfhlaw.com](mailto:BRagsdale@dfhlaw.com); Bernick, Daniel <[DBernick@cov.com](mailto:DBernick@cov.com)>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Dylan,

As discussed during our last call, we've gone back and taken a hard look at ways to narrow the third-party document requests directed to AAP and WPATH. If your clients would be willing to work with us in good faith to provide responsive documents with respect to the other RFPs, Defendants would be willing to withdraw or narrow the RFPs as outlined below.

## AAP
1. We are willing to withdraw the following RFPs: 9, 12, 16, 17, 19, 20, 21, 24, 25.

2. We are willing to narrow RFP 23 so that it would only request materials dated after January 1, 2020, regarding AAP's review or consideration of the following: Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria* (2021); Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria* (2021); Abigail Shrier, *Irreversible Damage* (2020); Abigail Shrier, *Top Trans Doctors Blow the Whistle on 'Sloppy' Care*, Common Sense (Oct. 4, 2021);; Abigail Shrier, *A Pediatric Association Stifles Debate on Gender Dysphoria*, Wall St. Journal (Aug. 9, 2021); Socialstyrelsen, *Care of children and adolescents with gender dysphoria* (Feb. 2022); Académie Nationale de Médecine, *Medicine and gender transidentity in children and adolescents* (Feb. 2022).

## WPATH
1. We are willing to withdraw the following RFPs: 13, 17, 22, 25, 26, 27, 29, 30, 36, 37, 38, 39, 42, 45, 46.

2. We are willing to narrow RFP 41 so that it would only request materials dated after February 1, 2019, regarding consideration or evaluation of the following as part of the drafting or evidence review process of SOC-8: Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gender-Affirming Hormones for Children and Adolescents with Gender Dysphoria* (2021); Nat'l Inst. for Health and Care Excellence, *Evidence Review: Gonadotrophin Releasing Hormone Analogues for Children and Adolescents with Gender Dysphoria* (2021); The Cass Review, *Independent Review of Gender Identity Services for Children and Young People: Interim Report* (Feb. 2022), [https://cass.independent-review.uk/publications/interim-report/](https://cass.independent-review.uk/publications/interim-report/); Socialstyrelsen,

*Care of children and adolescents with gender dysphoria* (Feb. 2022); Académie Nationale de Médecine, *Medicine and gender transidentity in children and adolescents* (Feb. 2022); Division of Florida Medicaid, *Generally Accepted Professional Medical Standard Determination on the Treatment of Gender Dysphoria* (June 2022), https://ahca.myflorida.com/letkidsbekids.

Best regards,

Brian W. Barnes
Cooper & Kirk, PLLC
(202) 220-9623

---

**From:** Silva, Dylan <DSilva@cov.com>
**Sent:** Friday, November 11, 2022 1:32 PM
**To:** Brian Barnes <BBarnes@cooperkirk.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Brian,

How about any time after 11am PT Friday?

Thanks,
Dylan

---

**From:** Brian Barnes <BBarnes@cooperkirk.com>
**Sent:** Friday, November 11, 2022 4:34 AM
**To:** Silva, Dylan <DSilva@cov.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

[EXTERNAL]
Hi Dylan,

Are there any times on Friday that you'd be able to make work? Wednesday and Thursday are both tough on our end, though we can come back with some times on Thursday if Friday is no good for you.

Best regards,

Brian

---

**From:** Silva, Dylan <DSilva@cov.com>

**Sent:** Thursday, November 10, 2022 1:41 PM
**To:** Brian Barnes <BBarnes@cooperkirk.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>;
Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Brian,

Hope you're well too.  Monday and Tuesday unfortunately do not work for us -- could you please
propose some times on Wednesday or Thursday?

Thanks,
Dylan

---

**From:** Brian Barnes <BBarnes@cooperkirk.com>
**Sent:** Thursday, November 10, 2022 5:30 AM
**To:** Silva, Dylan <DSilva@cov.com>; John Ramer <jramer@cooperkirk.com>
**Cc:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>; Davis, Jim <Jim.Davis@AlabamaAG.gov>;
Lannin, Cortlin <clannin@cov.com>; BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

<mark>[EXTERNAL]</mark>
Hi Dylan,

I hope all is well. Would you be able to do another call on both the AAP and WPATH subpoenas on
either Monday afternoon or Tuesday afternoon of next week? We could make any time either of
those afternoons work.

Best regards,

Brian W. Barnes
Cooper & Kirk, PLLC
(202) 220-9623

---

**From:** Silva, Dylan <DSilva@cov.com>
**Sent:** Tuesday, November 1, 2022 8:09 PM
**To:** John Ramer <jramer@cooperkirk.com>
**Cc:** Brian Barnes <BBarnes@cooperkirk.com>; Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>;
Davis, Jim <Jim.Davis@AlabamaAG.gov>; Lannin, Cortlin <clannin@cov.com>;
BRagsdale@dfhlaw.com; Bernick, Daniel <DBernick@cov.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi John,

Thanks for providing the below.  Can you please let me know some convenient times on your side to

discuss further?

Thanks,
Dylan

---

**From:** John Ramer <jramer@cooperkirk.com>
**Sent:** Friday, October 14, 2022 6:44 AM
**To:** Silva, Dylan <DSilva@cov.com>
**Cc:** Brian Barnes <BBarnes@cooperkirk.com>; Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>;
Davis, Jim <Jim.Davis@AlabamaAG.gov>; Lannin, Cortlin <clannin@cov.com>;
BRagsdale@dfhlaw.com
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

[EXTERNAL]
Dylan,

Thank you for taking the time to speak with us earlier this week. We appreciated having
the opportunity to hear your concerns so that we can try to find a way to work together to
move things forward. Based on your suggestion, we have organized our requests into three
tiers with Tier 1 being the most important, Tier 2 being the next most important, and Tier 3
being the third most important. We've also narrowed the requests to relevant time periods
to address your concerns about the lack of a timeframe. Unless otherwise indicated below,
the narrowed timeframe would be for responsive documents and communications from
January 1, 2017, to the present. We look forward to hearing your thoughts.

Tier 1
- Request Nos. 1 through 7
- Request No. 10
- Requests Nos. 11 through 15
- Request No. 23

Tier 2
- Request Nos. 8-9
- Request No. 17
- Request No. 20
- Request No. 22

Tier 3
- Request No. 16
- Request No. 18 from January 1, 2015, to the present.
- Request No. 19
- Request No. 21

- Request No. 24 from January 1, 2015, to the present.
- Request No. 25 from January 1, 2015, to the present.


All the best,

John

John D. Ramer
Cooper & Kirk, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
202.220.9621

**From:** Brian Barnes <BBarnes@cooperkirk.com>
**Sent:** Thursday, October 6, 2022 8:17 PM
**To:** Silva, Dylan <DSilva@cov.com>; Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>
**Cc:** Lannin, Cortlin <clannin@cov.com>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; John Ramer
<jramer@cooperkirk.com>; Barry A. Ragsdale <BRagsdale@dfhlaw.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Dylan,

Tuesday at 3.30pm Eastern works well on our end. We'll send around a dial-in we can use at that
time.

Best regards,

Brian

**From:** Silva, Dylan <DSilva@cov.com>
**Sent:** Wednesday, October 5, 2022 12:45 PM
**To:** Brian Barnes <BBarnes@cooperkirk.com>; Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>
**Cc:** Lannin, Cortlin <clannin@cov.com>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; John Ramer
<jramer@cooperkirk.com>; Barry A. Ragsdale <BRagsdale@dfhlaw.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Brian,

Nice to meet you.  How about Tuesday at 3:30 pm ET?

Thanks,
Dylan

**From:** Brian Barnes <BBarnes@cooperkirk.com>
**Sent:** Wednesday, October 5, 2022 4:55 AM
**To:** Silva, Dylan <DSilva@cov.com>; Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>
**Cc:** Lannin, Cortlin <clannin@cov.com>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; John Ramer
<jramer@cooperkirk.com>; Barry A. Ragsdale <BRagsdale@dfhlaw.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

[EXTERNAL]
Hi Dylan,

I hope this message finds you well. I represent the defendants in *Boe v. Marshall* (formerly *Eknes-Tucker v. Marshall*), and I'm writing to see if there would be a good time next week to schedule a call to meet and confer regarding your responses and objections to our Rule 45 subpoena. Would there be a time on either on Tuesday afternoon or after 2.30pm on Wednesday that would work for you? If not, please let me know if there are any alternative times that would work on your end.

Best regards,

Brian W. Barnes
Cooper & Kirk, PLLC
(202) 220-9623

---

**From:** Silva, Dylan <DSilva@cov.com>
**Sent:** Friday, September 9, 2022 7:05 PM
**To:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>
**Cc:** Lannin, Cortlin <clannin@cov.com>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; Brian Barnes
<BBarnes@cooperkirk.com>; John Ramer <jramer@cooperkirk.com>; Barry A. Ragsdale
<BRagsdale@dfhlaw.com>
**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

Hi Barrett,

Thank you again for granting us the brief extension.  Please see attached AAP's objections and responses to the subpoena.  As noted in the attached, we are available to meet and confer about the requests.

Best,
Dylan

---

**From:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>
**Sent:** Wednesday, August 17, 2022 11:37 AM
**To:** Silva, Dylan <DSilva@cov.com>
**Cc:** Lannin, Cortlin <clannin@cov.com>; Davis, Jim <Jim.Davis@AlabamaAG.gov>; Brian Barnes
<BBarnes@cooperkirk.com>; John Ramer <jramer@cooperkirk.com>

**Subject:** RE: Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

[EXTERNAL]
Yes, September 9 is fine with us. Thanks Dylan.

Barrett

Barrett Bowdre
Deputy Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
Post Office Box 300152
Montgomery, AL 36130
334.353.8892 Office
334.353.8400 Fax

---

**From:** Silva, Dylan <DSilva@cov.com>
**Sent:** Wednesday, August 17, 2022 10:40 AM
**To:** Bowdre, Barrett <Barrett.Bowdre@AlabamaAG.gov>
**Cc:** Lannin, Cortlin <clannin@cov.com>
**Subject:** Eknes-Tucker v. Alabama: Non-Party Subpoena to AAP

This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Dear Mr. Bowdre,

We are in receipt of the Rule 45 document subpoena you issued to our client, the American Academy of Pediatrics (AAP), dated August 10, 2022.  To afford us sufficient time to assess the scope of the subpoena and what responsive documents, if any, AAP may be able to produce, we would appreciate an extension of our time to serve the responses and objections that are currently due on August 24, 2022.  Will you please extend us the courtesy of agreeing to extend the deadline for responses and objections to September 9, 2022?

Thanks, and please feel free to call my office line below if you would like to discuss any of this further.

Best,
Dylan

**Dylan Silva**

Covington & Burling LLP
Salesforce Tower, 415 Mission Street, Suite 5400
San Francisco, CA 94105-2533

T +1 415 591 7007 | dsilva@cov.com
www.cov.com

Confidentiality Notice: The information contained in this email and the documents attached hereto contain confidential information intended only for the use of the intended recipients. If the reader of the message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the information contained herein is strictly prohibited. If you have received this communication in error, please immediately notify me by reply email.

NOTICE: This e-mail is from the law firm of Cooper & Kirk, PLLC ("C&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of C&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to C&K in reply that you expect to be held in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of C&K, you should maintain its contents in confidence in order to preserve any attorney-client or work product privilege that may be available to protect confidentiality.

NOTICE: This e-mail is from the law firm of Cooper & Kirk, PLLC ("C&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of C&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to C&K in reply that you expect to be held in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of C&K, you should maintain its contents in confidence in order to preserve any attorney-client or work product privilege that may be available to protect confidentiality.

NOTICE: This e-mail is from the law firm of Cooper & Kirk, PLLC ("C&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of C&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to C&K in reply that you expect to be held in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of C&K, you should maintain its contents in confidence in order to preserve any attorney-client or work product privilege that may be available to protect confidentiality.

NOTICE: This e-mail is from the law firm of Cooper & Kirk, PLLC ("C&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of C&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to C&K in reply that you expect to be held in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of C&K, you should maintain its contents in confidence in order to preserve any attorney-client or work product privilege that may be available to protect confidentiality.

NOTICE: This e-mail is from the law firm of Cooper & Kirk, PLLC ("C&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of C&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to C&K in reply that you expect to be held in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of C&K, you should maintain its contents in confidence in order to preserve any attorney-client or work product privilege that may be available to protect confidentiality.

NOTICE: This e-mail is from the law firm of Cooper & Kirk, PLLC ("C&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of C&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to C&K in reply that you expect to be held in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of C&K, you should maintain its contents in confidence in order to preserve any attorney-client or work product privilege that may be available to protect confidentiality.

NOTICE: This e-mail is from the law firm of Cooper & Kirk, PLLC ("C&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of C&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to C&K in reply that you expect to be held in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of C&K, you should maintain its contents in confidence in order to preserve any attorney-client or work product privilege that may be available to protect confidentiality.

NOTICE: This e-mail is from the law firm of Cooper & Kirk, PLLC ("C&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this

e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of C&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to C&K in reply that you expect to be held in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of C&K, you should maintain its contents in confidence in order to preserve any attorney-client or work product privilege that may be available to protect confidentiality.


NOTICE: This e-mail is from the law firm of Cooper & Kirk, PLLC ("C&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of C&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to C&K in reply that you expect to be held in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of C&K, you should maintain its contents in confidence in order to preserve any attorney-client or work product privilege that may be available to protect confidentiality.