# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| United States of America, | ) |
| | ) |
| *Intervenor Plaintiff*, | ) |
| | ) |
| v. | ) Civil Action No. 2:22-cv-184-LCB |
| | ) |
| Hon. Steve Marshall, in his official | ) |
| capacity as Attorney General, | ) |
| of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

## DEFENDANTS' MOTION TO COMPEL PRODUCTION OF
## PLAINTIFF-INTERVENOR'S RECORDS

# TABLE OF CONTENTS

Table of Contents ............................................................................. i

Table of Authorities ......................................................................... ii

Introduction ..................................................................................... 1

Background ....................................................................................... 3

Legal Standard ................................................................................. 7

Argument ........................................................................................... 7

    I.   Defendants Seek Relevant Documents And Communications In The Possession, Custody, Or Control Of The United States. ............................. 7

        A.   Materials Held by HHS Regarding the Safety and Efficacy of the Treatments at Issue Are Highly Relevant. .................................... 8

        B.   The United States Has Possession, Custody, or Control of Material Held by HHS. ................................................... 13

    II.  The United States' Burdensomeness Objections Are Meritless. ............... 19

    III. The United States' Deliberative-Process Objections Are Premature. ....... 19

Conclusion ........................................................................................ 20

Certificate of Service ....................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Bank Line v. United States*,
    76 F. Supp. 801 (S.D.N.Y. 1948) ...................................................................... 19

*Coker v. Duke & Co., Inc.*,
    177 F.R.D. 682 (M.D. Ala. 1998) ..................................................................... 8

*Damus v. Nielsen*,
    328 F.R.D. 1 (D.D.C. 2018) ............................................................................. 19

*Deane v. Dynasplint Sys., Inc.*,
    No. 10-2085, 2015 WL 1638022 (E.D. La. Apr. 13, 2015) ...................... 15, 16

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
    561 U.S. 477 (2010) ......................................................................................... 18

*Ghana Supply Comm'n v. New England Power Co.*,
    83 F.R.D. 586 (D. Mass. 1979) ........................................................................ 18

*Harvey Aluminum, Inc. v. NLRB*,
    335 F.2d 749 (9th Cir. 1964) ...................................................................... 17, 18

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ......................................................................... 20

*New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*,
    233 F.R.D. 259 (N.D.N.Y. 2006) .................................................................... 17

*North Dakota v. United States*,
    No. 1:19-cv-150, 2021 WL 6278456 (D.N.D. Mar. 24, 2021) ....................... 15

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ........................................................................................... 8

*Reporters Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ........................................................................... 20

*Rosen v. Provident Life & Accident Ins. Co.*,
  308 F.R.D. 670 (N.D. Ala. 2015) .........................................................................7

*Trane Co. v. Klutznick*,
  87 F.R.D. 473 (W.D. Wis. 1980) ......................................................... 15, 16, 17

*Tri-State Hosp. Supply Corp. v. United States*,
  226 F.R.D. 118 (D.D.C. 2005) ..........................................................................15

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
  141 S. Ct. 777 (2021) .......................................................................................20

*United States v. Am. Tel. & Tel. Co.*,
  461 F. Supp. 1314 (D.D.C. 1978) .............................................................. 16, 17

*United States v. UBS Securities LLC*,
  No. 1:18-cv-6369, 2020 WL 7062789 (E.D.N.Y. Nov. 30, 2020) ........... 15, 16

**Rules**

Fed. R. Civ. P. 37(a)(3)(B)(iv) ...............................................................................7

Fed. R. Civ. P. 26(b)(1) ...........................................................................................7

Fed. R. Civ. P. 34(a)(1)(A) ......................................................................................7

**Constitutional Provisions**

Ala. Const. Art. V, § 114 ........................................................................................17

**Statutes**

42 U.S.C. § 2000h-2 ............................................................................................3, 14

**Other Authorities**

8B Wright & Miller, FED. PRAC. & PROC. CIV. § 2218
   (3d ed. Apr. 2022 update).................................................................19

AAP NEWS, *Risks of pseudotumor cerebri added to labeling for gonadotropin-releasing hormone agonists*,
   https://www.fda.gov/media/159663/download#:~:text=The%20Food%20and
   %20Drug%20Administration%20(FDA)%20has%20added%20a%20warning,
   precocious%20puberty%20in%20pediatric%20patients. (July 1, 2022).........12

Christina Jewett, *Women Fear Drug They Used To Halt Puberty Led To Health Problems*, KAISER HEALTH NEWS, https://khn.org/news/women-fear-drug-they-used-to-halt-puberty-led-to-health-problems/ (Feb. 2, 2017) .........12

Department of Health and Human Services' Office of Population Affairs,
   *Gender-Affirming Care and Young People*,
   https://opa.hhs.gov/sites/default/files/2022-03/gender-affirming-care-young-people-march-2022.pdf.................................................................12

HHS, *Health and Human Services Agencies and Offices*,
   https://www.hhs.gov/about/agencies/hhs-agencies-and-offices/index.html.....9

Johanna Olson-Kennedy et al., *Impact of Early Medical Treatment for Transgender Youth: Protocol for the Longitudinal, Observational Trans Youth Care Study*, doi:10.2196/14434, National Institutes of Health Project # 1R01HD082554-01A1 .....................................................................10

Johanna Olson-Kennedy et al., *Physiologic Response to Gender-Affirming Hormones Among Transgender Youth*, J. OF ADOLESCENT HEALTH, 62(4), 397-401, https://doi.org/10.1016/j.jadohealth.2017.08.005.............................11

Letter from Kristen Clarke, Assistant Attorney General for Civil Rights,
   U.S. Dep't of Justice, to State Attorneys General (Mar. 31, 2022),
   https://go.usa.gov/xuR8w) .................................................................9

Natalie J. Nokoff, *Pubertal Blockade and Estradiol Effects on Cardiometabolic Health for Transitioning Youth*, Projects # K23-HL-151868-01, -02, -03 ......11

Natalie J. Nokoff, *Trans Health: Evaluation of Markers of Cardio-metabolic Health and Well-being in Transgender Youth*, https://clinicaltrials.gov/ct2/show/NCT02550431 ...........................................11

## INTRODUCTION

The federal government parachuted into this case to intervene under the banner of "the United States." Not content with merely filing an amicus brief, it chose to insert itself in this litigation, as a party, to stand side by side with Plaintiffs. But when faced with the most basic (and foreseeable) obligation of any party in a civil lawsuit—the duty to produce non-privileged documents relevant to the claims in the case—the federal government promptly began to backpedal.

No longer was it the full "United States" government—and its accompanying expertise and credibility—that intervened here. Instead, according to the federal government, the intervenor-plaintiff was merely the specific offices of the litigating attorneys. On this theory, the United States has steadfastly refused to even search for indisputably relevant material held by the U.S. Department of Health and Human Services because, in its view, "HHS is not a part of the United States for purposes of this case." Bowdre Decl., Ex. 3, at 4. Instead, the United States believes it is obligated to produce only those documents in the possession, custody, or control of the three offices within the Justice Department that are litigating this case.

This argument is meritless. The federal Constitution, the statute under which the United States intervened, and a basic understanding of the structure of the federal government show that the intervenor-plaintiff in this case is the executive branch—in its entirety. Therefore, the federal government may not limit its search for

1

responsive documents to the individual offices that the United States selected to litigate the case. And Defendants are specifically entitled to documents and communications in the possession, custody, or control of HHS related to the scientific evidence regarding the treatments at the center of this case.

Separately, throughout the parties' months-long conferral process, the federal government raised three other objections to Defendants' requests. First, it said the requests are not relevant. But on their face, the requests seek material regarding the safety and efficacy of the treatments at issue—a centerpiece of Plaintiffs' and the United States' arguments here. And HHS is the federal agency most likely to hold material related to the scientific evidence surrounding these treatments. Second, the United States said Defendants' requests are overly burdensome. But all along, Defendants have proposed the use of custodians and search terms to reduce any burden. And the United States has not even begun *searching* for responsive documents, let alone determined that producing them would be unduly burdensome. Lastly, it asserted the deliberative-process privilege. But that privilege does not apply to factual information, can be overcome based on a showing of need, and the United States may not assert that privilege in blanket fashion—even segregable material in a document otherwise subject to the privilege must be produced.

The United States strung along discovery negotiations for months by suggesting it would *consider* producing documents from HHS if Defendants narrowed their

requests. Responding in good faith, Defendants offered to withdraw ten requests, clarify or narrow others, work collaboratively to identify custodians and search terms, and listen to counterproposals. But after months of exchanging numerous emails and calls, the United States has not identified a single custodian, run a single search, or produced a single document. Given the United States' refusal to recognize that HHS has *any* obligation to produce documents, the parties have agreed they are at an impasse. This Court should hold that HHS is part of the United States and order immediate production of responsive documents for the substantially narrowed requests, *see infra* 10-12, that are the subject of this motion to compel.

## BACKGROUND

At the preliminary-injunction stage, the United States moved to intervene in this case. Doc. 58. In support of its motion, it explained that "[t]his case implicates the United States' ability to protect its sovereign interest." Doc. 58-1 at 8.[1] The United States based its right to intervene on 42 U.S.C. § 2000h-2, which permits the Attorney General to intervene "for or in the name of the United States."

Once in the case, the United States put the safety and efficacy of the prohibited treatments at the center of its claim. Its filings repeatedly assert that the treatments at issue here are "medically necessary." *See, e.g.*, Doc. 92 at ¶¶ 4, 6-9, 45, 48, 52-54. The Court credited this assertion and preliminarily enjoined enforcement of the

---

[1] Citations are to the ECF-stamped page number.

Act based in part on the Court's determination that the prohibited treatments were "medically accepted." Doc. 112-1 at 21. In addition, the Court's preliminary-injunction opinion stated that Defendants had thus far "fail[ed] to produce evidence showing that transitioning medications jeopardize the health and safety of minors suffering from gender dysphoria." *Id.* at 19.

To fill the evidentiary gap this Court found at the preliminary injunction stage, Defendants served requests for production on the United States on September 20. *See* Bowdre Decl., Ex. 1. As relevant here, Defendants sought documents and communications concerning the following topics:[2] the Act (RFPs 1-5); the scientific and medical evidence surrounding transitioning and treatments of minors for gender dysphoria (RFPs 6-8, 25-28, and 34-36); the federal government's relationship to expert witnesses and organizations on which Plaintiffs rely (RFPs 37-43); and studies, rules, and litigation positions supported or issued by the federal government concerning transitioning and treatments of minors for gender dysphoria (RFPs 9-24, 29-33, and 44-45).

After Defendants agreed to an extension, the United States served its responses and objections on November 3. Bowdre Decl., Ex. 2. The United States

---

[2] In a good-faith compromise, Defendants later offered to withdraw RFPs 2, 3, 17, 21, 26, 27, 32, 33, 44, and 45. Bowdre Decl., Ex. 3, at 7. In addition, Defendants have also expressed a willingness to accept the administrative record that has been assembled for RFPs 11, 12, and 13 so long as the United States produces documents in response to the RFPs on which Defendants are moving to compel a response, *see id.* at 1-2, 7.

objected that Defendants' requests sought discovery from "the vast federal government" and stated that it would respond to requests based only "on information within the possession, custody, or control of the three offices acting as counsel and handling this litigation on behalf of the United States—that is, the United States Department of Justice, Civil Rights Division, Federal Coordination & Compliance Section; the United States Attorney's Office for the Northern District of Alabama, Civil Division; and the United States Attorney's Office for the Middle District of Alabama, Civil Division." *Id.* at 2-3. The United States also objected that the requests were "overly broad" and that requested documents were protected by "attorney-client privilege, investigatory files privilege, deliberative process privilege, the common interest privilege, and/or the attorney work product doctrine." *Id.* at 3-4.

The parties engaged in a months-long conferral process by both email and phone. *See generally* Bowdre Decl., Ex. 3. Through that process, the parties' positions with respect to several issues became clear.

First, Defendants seek only HHS documents related to the safety and efficacy of the treatments at issue. To ease any concerns of burdensomeness, Defendants agreed "to focus only on HHS (with the understanding that this includes the agencies within HHS such as the FDA and the NIH)." Bowdre Decl., Ex. 3, at 11-12. As Defendants explained, "the medical and scientific evidence surrounding the treatments at issue here is highly relevant to the claims in this case." *Id.* Since "the federal

government employs healthcare and medical professionals who research, study, and make decisions based upon that evidence," Defendants seek "documents and communications in the possession, custody, or control of those professionals." *Id.* at 11.

Second, the United States takes the firm position that "HHS is not a part of the United States" and thus not subject to discovery as a party. *Id.* at 4; *see also id.* at 8 ("[W]e reaffirm that HHS is not a party to the case[.]"). But, "in the interest of cooperation and efficiency," the United States says it is "willing to consider facilitating a production through HHS if [Defendants] narrow [their] requests so that [the United States] may have a productive conversation with agency counsel." *Id.* at 8.

Third, the United States will not commit to producing—or even searching for—any HHS documents. Through months of back and forth, the United States has said only that it is "willing to *consider*" having a "conversation" with HHS officials. *Id.* (emphasis added). Defendants have repeatedly asked the United States whether it would be "willing to identify custodians at HHS . . . that would be the most likely to possess documents and communications concerning the scientific evidence surrounding the safety and efficacy of the treatments at issue in this case." *Id.* at 12. The United States has steadfastly refused to answer this question directly, opting instead to repeat its refrain that it is "*open* to the *possibility* of *attempting* to facilitate a production." *See id.* at 4 (emphasis added).

Defendants repeatedly tried to bridge the gap. When the United States said it

refused to identify custodians and search terms based on the scope of Defendants' requests, Defendants withdrew ten requests completely and worked in good faith to clarify and limit the scope of the remaining requests. *Id.* at 7. But after months of back and forth—during which Defendants withdrew requests, narrowed others, limited the disputed discovery to HHS alone, and offered to work in good faith with the United States on identification of appropriate custodians and search terms—the United States' position did not move an inch. On January 19, the parties agreed they were at an impasse. This motion to compel followed.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 37(a)(3)(B)(iv) permits a party to move to compel discovery responses. "The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information." *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680 (N.D. Ala. 2015) (cleaned up).

**ARGUMENT**

**I.    Defendants Seek Relevant Documents And Communications In The Possession, Custody, Or Control Of The United States.**

Under Rule 34(a)(1)(A), Defendants are entitled to relevant, non-privileged material in "the possession, custody or control" of the United States. Here,

7

Defendants seek material regarding the safety and efficacy of the treatments at issue held by the agency of the United States most likely to possess this information. These requests seek information that is highly relevant given the arguments made by both Plaintiffs and the United States, and Defendants are entitled to this discovery.

### A.    Materials Held by HHS Regarding the Safety and Efficacy of the Treatments at Issue Are Highly Relevant.

In civil discovery, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case," no matter if the material itself would be admissible. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of discovery is broad "in order to provide parties with information essential to the proper litigation of all relevant facts." *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (citations omitted).

Here, the requests seek highly relevant information held by Plaintiff-Intervenor, the United States. The United States and Plaintiffs have both made the safety and efficacy of the treatments at issue a centerpiece of their claims. From the outset, the United States has built its case around the idea that the use of puberty blockers and cross-sex hormones for minors seeking to medically transition are safe and even "medically necessary." *See, e.g.*, Doc. 92 at ¶¶ 4, 6-9, 45, 48, 52-54. And in this Court's preliminary-injunction opinion, it stated that Defendants had "fail[ed] to produce evidence showing that transitioning medications jeopardize the health and

safety of minors suffering from gender dysphoria." Doc. 112-1 at 19. Defendants'
requests are targeted at providing such evidence.

Moreover, the United States and Plaintiffs have both acknowledged that HHS
is a repository of the federal government's expertise related to the science surround-
ing these treatments. HHS's sub-agencies include the Food & Drug Administration,
the National Institutes of Health, and the Agency for Healthcare Research and Qual-
ity. *See* HHS, *Health and Human Services Agencies and Offices*, *available at*
https://www.hhs.gov/about/agencies/hhs-agencies-and-offices/index.html. And the
United States, Plaintiffs, and their experts have all relied on material issued by HHS
throughout this litigation. *See, e.g.*, Doc. 62-1 at 20 n.1; Doc. 62-2 at 8 n.2, 9. They
have also cited documents that, in turn, relied on material issued by HHS. For ex-
ample, Plaintiffs and the United States have both cited a letter from Assistant Attor-
ney General Clarke to State Attorneys General where DOJ suggested it may be un-
lawful to deny puberty blockers and cross-sex hormones to minors. *See* Doc. 8 at 44;
Doc. 62-1 at 27 n.23 (citing Letter from Kristen Clarke, Assistant Attorney General
for Civil Rights, U.S. Dep't of Justice, to State Attorneys General (Mar. 31, 2022),
https://go.usa.gov/xuR8w). That letter contains numerous citations of HHS docu-
ments. *See* Letter at 1 n.1, 3 nn. 15-16.

Because HHS is the agency within the United States most likely to possess
relevant material, Defendants seek documents and communications in the

possession, custody, or control of HHS related to the safety and efficacy of the treatments at issue. Specifically, Defendants ask this Court to compel HHS to respond to the following requests:

- RFP 6: All Communications and Documents since January 1, 2017, concerning Transitioning or the treatment of Minors for Gender Dysphoria or a Related Condition.

- RFP 7: All Communications and Documents since January 1, 2017, concerning the effects of Transitioning or the treatment of Minors for Gender Dysphoria or a Related Condition on the well-being or health of Minors.

- RFP 8: All Communications and Documents since January 1, 2017, concerning the informed consent process for treating Minors for Gender Dysphoria or a Related Condition.

- RFP 18: All Communications and Documents concerning research published as Johanna Olson-Kennedy et al., Impact of Early Medical Treatment for Transgender Youth: Protocol for the Longitudinal, Observational Trans Youth Care Study, doi:10.2196/14434, National Institutes of Health Project # 1R01HD082554-01A1, including without limitation the grant proposal (including appendices), study protocol, all records of its implementation, all informed consent documents, all IRB approval forms, all educational materials, all minutes and notes from any meetings with any NIH staff, all progress reports, all board meeting minutes, all FCOI requests, all letters of support, all funding documents, all outcome data, all extensions or requests for extensions, and Communications regarding a letter dated on or about Apr 5, 2019 requesting a moratorium on this research signed by Michael Laidlaw, William Malone, and/or Hacsi Horvath.

- RFP 19: All Communications and Documents concerning research published as Johanna Olson-Kennedy et al., Physiologic Response to Gender-Affirming Hormones Among Transgender Youth, Journal of Adolescent Health, 62(4), 397-401. https://doi.org/10.1016/j.jadohealth.2017.08.005, including without limitation the grant proposal (including appendices), all study

protocols, all records of its implementation, all informed consent documents, all IRB approval forms, all educational materials, all minutes and notes from any meetings with any NIH staff, all progress reports, all board meeting minutes, all FCOI requests, all letters of support, all funding documents, all outcome data, and all extensions or requests for extensions.

- RFP 20: All Communications and Documents concerning research by Natalie J. Nokoff regarding Transitioning or Gender Dysphoria or a Related Condition, including without limitation all study protocols, all records of implementation, all informed consent documents, all IRB approval forms, all educational materials, all minutes and notes from any meetings with any NIH staff, all progress reports, all board meeting minutes, all FCOI requests, all letters of support, all funding documents, and all outcome data, about all of the following NIH-funded projects and any other projects concerning Transitioning or Gender Dysphoria or a Related Condition: Trans Health: Evaluation of Markers of Cardio-metabolic Health and Well-being in Transgender Youth, https://clinicaltrials.gov/ct2/show/NCT02550431; Pubertal Blockade and Estradiol Effects on Cardiometabolic Health for Transitioning Youth, Projects # K23-HL-151868-01, -02, -03; and, Project # K12-HD-057022.

- RFP 22: All Communications and Documents concerning the Food & Drug Administration's or any other agency's consideration of medical devices, drugs, or medical requirements related to Transitioning or the treatment of Minors for Gender Dysphoria or a Related Condition.

- RFP 23: All Communications and Documents concerning the Food & Drug Administration's decision to add a warning about the risk of pseudotumor cerebri (idiopathic intracranial hypertension) to the labeling for gonadotropin-releasing hormone agonists as generally discussed in Risk of pseudotumor cerebri added to labeling for gonadotropin-releasing hormone agonists, AAP, https://www.fda.gov/media/159663/download#:~:text=The%20Food%20and%20Drug%20Administration%20(FDA)%20has%20added%20a%20warning,precocious%20puberty%20in%20pediatric%20patients. (July 1, 2022), including without limitation reporting of adverse events by diagnosis, primary data, Communications between You and AAP, and Communications between Your agencies.

11

- RFP 24: All Communications and Documents concerning the FDA review of Puberty Blockers referenced in Christina Jewett, Women Fear Drug They Used To Halt Puberty Led To Health Problems, Kaiser Health News, https://khn.org/news/women-fear-drug-they-used-to-halt-puberty-led-to-health-problems/ (Feb. 2, 2017).

- RFP 25: All Communications and Documents concerning reporting of adverse events for Puberty Blockers and Cross-sex Hormones.

- RFP 28: All Communications and Documents relating to the appropriate age for beginning Transitioning treatment in Minors.

- RFP 29: All Communications and Documents concerning reports on the quality of care for the treatment of Minors for Gender Dysphoria or a Related Condition, including without limitation Communications and Documents involving the Agency for Healthcare Research and Quality and its Topic Brief: Treatments for Gender Dysphoria in Transgender Youth, https://effectivehealthcare.ahrq.gov/system/files/docs/topic-brief-gender-dysphoria.pdf (Jan. 8, 2021).

- RFP 30: All Communications and Documents concerning the following document published by the Department of Health and Human Services' Office of Population Affairs: Gender-Affirming Care and Young People, https://opa.hhs.gov/sites/default/files/2022-03/gender-affirming-care-young-people-march-2022.pdf.

- RFP 36: All Communications and Documents reflecting incidences or evidence of desistance or detransition.

As is evident from the face of these requests, they seek highly relevant material regarding the safety and efficacy of the prohibited treatments from the agency within the United States most likely to hold that material. RFPs 6-8, 25, 28, and 36 seek communications and documents concerning the evidence regarding transitioning treatments, the effects of those treatments, the informed-consent process required before such treatments can begin, and the existence of persons who later come to

12

regret receiving such treatments. RFPs 18-20 seek communications and documents concerning research run, published, funded, or supported by HHS regarding transitioning or treatment of minors for gender dysphoria. RFPs 22-24 seek communications and documents held by FDA regarding the safety and efficacy of the drugs at issue. RFP 29 seeks communications and documents concerning the quality of the evidence supporting these treatments, including a topic brief published by HHS's Agency for Healthcare Research and Quality. And RFP 30 seeks communications and documents concerning a document published by HHS's Office of Population Affairs regarding gender-affirming care and minors. Because these requests clearly seek material relevant to the United States' and Plaintiffs' claims from the agency within the United States most likely to have it, Defendants are entitled to this discovery, and the Court should order HHS to respond to Defendants' requests.

**B.      The United States Has Possession, Custody, or Control of Material Held by HHS.**

The federal government intervened in this case based on its assertion that the treatments at issue are safe, effective, and even "medically necessary" for minors suffering from gender dysphoria. *See, e.g.*, Doc. 92 at ¶¶ 4, 6-9, 45, 48, 52-54. The United States now says it intervened based *not* on the collective expertise of the federal government—and the agencies that actually study the science around these treatments—but rather on the judgment of particular attorneys within a particular

section of a particular division of the Department of Justice and attorneys within local U.S. Attorney's Offices. *See* Bowdre Decl., Ex. 2, at 3.

But Congress created a right to intervene for "the United States" *as a whole*, not for subsidiary offices located somewhere within executive agencies. The statute under which the United States intervened permits the Attorney General to intervene "for or in the name of the United States." 42 U.S.C. § 2000h-2. As is evident from the text, Congress permitted the executive branch to intervene in cases "of general public importance" cloaked with the imprimatur of "the United States" and the associated credibility and expertise that comes with it. In other words, the reason the United States' intervention is meaningful is the collective expertise that the United States federal government purports to hold.

This case illustrates the point. The United States' own filings demonstrate that the evidentiary basis for its claim and intervention are based on assertions of *scientific and medical judgment* regarding the safety and efficacy the treatments at issue. *See supra* at 3-4. And within the federal government, most of the research and analysis regarding that scientific and medical evidence is performed by HHS. With all respect due to the components of the Department of Justice that are litigating this case, Congress granted *the United States* the right to intervene under Section 2000h-2 because of the federal government's *collective* expertise. And the United States'

filings have expressly drawn on that collective expertise by citing HHS numerous times. Thus, the party discovery in this case extends to HHS.

Several courts have recognized that federal agencies with documents relevant to an action brought by the United States are parties. For "purposes of party discovery," the "definition of 'United States' also includes agencies that inform the policies, rules, and regulations that the executive branch sets." *United States v. UBS Securities LLC*, No. 1:18-cv-6369, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020) (citing *Deane v. Dynasplint Sys., Inc.*, No. 10-2085, 2015 WL 1638022, at *5 (E.D. La. Apr. 13, 2015); *Trane Co. v. Klutznick*, 87 F.R.D. 473, 476-77 (W.D. Wis. 1980)); *see also North Dakota v. United States*, No. 1:19-cv-150, 2021 WL 6278456, at *4 (D.N.D. Mar. 24, 2021) (holding that "the United States' obligation to respond to discovery requests is not limited to an agency named in the action"); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 127 (D.D.C. 2005) (holding that a plaintiff suing one government agency was not "precluded from seeking discovery about actions taken by other agencies that were not named").

This principle will be familiar to HHS. In *Deane*, the United States "intervened as prosecuting plaintiff" in a case under the False Claims Act, seeking the recovery of improperly submitted claims for reimbursement under the Medicare program. 2015 WL 1638022, at *1. The defendant moved to compel the production of materials from agencies that regulated in the areas relevant to the Medicare

reimbursement. *See id.* at *4-5. The court granted the motion to compel with respect to "those components of the United States Department of Health and Human Services (HHS) and the Centers for Medicare & Medicaid Services (CMS) that have or had responsibility for the administration or oversight of the Medicare program that is the subject of the United States' complaint." *Id.* at *5. Other courts have reached similar conclusions. *E.g.*, *UBS Sec. LLC*, 2020 WL 7062789, at *6 (permitting discovery of Treasury Department and Department of Housing and Urban Development in case brought by DOJ ); *United States v. Am. Tel. & Tel. Co.*, 461 F. Supp. 1314, 1333-34 (D.D.C. 1978) (permitting discovery into various agencies in an action brought by DOJ); *Trane Co.*, 87 F.R.D. at 477-78 (permitting discovery of State Department and Treasury Department in case brought against the President).

Nevertheless, the United States has steadfastly insisted that "HHS is not a part of the United States for purposes of this case." Bowdre Decl., Ex. 3, at 4. Based on this assertion, the United States has concluded that documents held by HHS are not in the "possession, custody, or control" of the United States under Rule 34. Thus, the United States believes it has no obligation to produce relevant, non-privileged material held by HHS. Instead, as the United States sees it, its discovery obligations extend *only* to the material in the possession or custody of "the United States Department of Justice, Civil Rights Division, Federal Coordination & Compliance Section; the United States Attorney's Office for the Northern District of Alabama, Civil

Division; and the United States Attorney's Office for the Middle District of Alabama, Civil Division." Bowdre Decl., Ex. 2 at 3.

This argument is meritless. As one district court explained, "it simply makes no sense to hold that the Department of Justice, which essentially is a law office, alone comprises the United States" for purposes of discovery. *Am. Tel. & Tel. Co.*, 461 F. Supp. at 1333. HHS is part of "the United States" here because both HHS and the Department of Justice are under the control of the President. "The President has the constitutional and executive power to order the executive agencies to comply with any lawful directive he may issue." *Trane Co.*, 87 F.R.D. at 477.[3] "If, for example, the head of an Executive Department refused to produce documents required to assist the Department of Justice to prosecute this litigation to its conclusion, the Attorney General could then enlist the aid of the President, who, presumably, would direct their release." *Am. Tel.*, 461 F. Supp. at 1335; *see also Harvey Aluminum, Inc. v. NLRB*, 335 F.2d 749, 754 (9th Cir. 1964) (ordering NLRB to produce material from other agencies because "the President" could "compel them to produce documents"), *abrogated on other grounds*. Because "Article II confers on the President

---

[3] Unlike the United States Attorney General, the Attorney General of Alabama is an elected constitutional official. *See* Ala. Const. Art. V, § 114. Under Alabama's separation of powers, the Alabama Attorney General does not have possession, custody, or control of material held by state agencies controlled by the Governor or other elected officials. *See New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 263-65 (N.D.N.Y. 2006) (recognizing that similar separation of powers doctrine under New York Constitution limited which organs of the New York government were parties to the case for purposes of discovery).

the general administrative control of those executing the laws," *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 492 (2010) (cleaned up), the Plaintiff-Intervenor United States, headed by the President, controls the material held by HHS.

Indeed, the United States made clear it was intervening "to protect *its sovereign interest*." Doc. 58-1 at 8 (emphasis added). There can be little doubt, then, that the Plaintiff-Intervenor in this case is more than merely the Department of Justice because "the United States is a sovereignty separate from the States," and "the Department[] of Justice" is "not sovereign." *Harvey Aluminum*, 335 F.2d at 754 .

Any other result would significantly prejudice Defendants. The United States' claim—as evidenced by its reliance on HHS documents in its filings, *supra* at 3-4, 9—rests at least in part on evidence and analysis held by HHS. The Court should not permit the United States to invoke the expertise of its own agency and then "deny[] the opposing party access" to material held by that agency. *Harvey Aluminum*, 335 F.2d at 755. "If the government sues through one of its agencies and another agency possesses the information that must be disclosed, it is only fair that the government or other agency decide whether secrecy of the materials is worth dismissal of the lawsuit." *Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586, 595 (D. Mass. 1979) (citing *Bank Line v. United States*, 76 F. Supp. 801, 804 (S.D.N.Y. 1948)). As long as the United States is a party, it must disclose relevant, non-

privilege material held by HHS. The Court should grant Defendants' motion to compel.

## II.        The United States' Burdensomeness Objections Are Meritless.

During the parties' conferral process, the United States asserted that Defendants' requests to HHS are unduly burdensome. But any *undue* burden is entirely relieved by Defendants' proposal of identifying the custodians at HHS who are most likely to hold relevant documents and using search terms to search those custodians' electronically stored information (ESI). *See* 8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2218 (3d ed. Apr. 2022 update) (noting that the use of keyword searches "can materially reduce the cost of" e-discovery). Given the United States' significant delay and the impending discovery deadlines necessary to accommodate an August 21 trial, the Court should order the United States immediately to identify the ten HHS custodians who are most likely to hold responsive documents and begin searching those custodians' ESI for responsive documents using reasonable search terms.

## III.       The United States' Deliberative-Process Objections Are Premature.

In addition, the United States has suggested that all material responsive to Defendants' requests would be subject to the deliberative-process privilege. *See* Bowdre Decl., Ex. 2, at 3-92; *id.*, Ex. 3, at 4. But this argument is premature for several reasons. First, a "blanket application of deliberative-process privilege" is "insufficient to support withholding." *Damus v. Nielsen*, 328 F.R.D. 1, 6 (D.D.C.

2018) (cleaned up). And the United States has not even begun *searching* for documents, let alone reviewed them to see if they are privileged.[4] Second, even if a document is privileged, agencies still must disclose non-privileged "parts of the documents" that "are segregable." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 789 n.5 (2021). For example, because the privilege generally does not apply to "factual information," any part of responsive documents otherwise subject to the privilege that contain factual information surrounding the treatments at issue here "must be disclosed." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 365 (D.C. Cir. 2021) (cleaned up). Third, an agency waives the deliberative process privilege for documents it reveals to third parties. *In re Sealed Case*, 121 F.3d 729, 741-42 (D.C. Cir. 1997). Finally, the "deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need." *Id.* at 737. Because the United States has put the safety and efficacy of these treatments at the center of their claims, Defendants would clearly have a critical need for this material sufficient to overcome the privilege.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion to compel.

---

[4] The United States' position—that the *litigating offices* are the appropriate subjects of discovery—raises an additional problem. Any discovery requests targeted at government offices responsible for litigation will inevitably cover a vast amount of privileged information. The effort required to review documents simply for the purpose of logging them would likely make the requests disproportionate and unduly burdensome on their face.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

21

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF

system on January 24, 2023, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
*Counsel for Defendants*
