## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

BRIANNA BOE, *et al.*,

     *Plaintiffs*,

and

UNITED STATES OF AMERICA,

     *Plaintiff-Intervenor*,

v.

STEVE MARSHALL, *et al*.,

     *Defendants*.

Civil Action No.
2:22-cv-00184-184-LCB

Honorable Liles C. Burke

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
## PRODUCTION OF MINOR PLAINTIFFS' MEDICAL RECORDS

**INTRODUCTION**

This case involves a constitutional challenge to Alabama's blanket ban of transitioning medications for transgender youth. The minor Plaintiffs have brought claims for violations of the Equal Protection and Due Process Clauses of the U.S. Constitution because the Act criminalizes these medical treatments for transgender minors.

During the hearing relating to the United States' subpoenas to Eagle Forum of Alabama and Southeast Law Institute on October 14, 2022, this Court pinpointed the core issue: "[W]e're talking about whether this statute is constitutional or not … That's really just all we're talking about." Oct. 14, 2022 Hearing Tr. at 16.  During that same hearing, the Defendants seemingly agreed and articulated how "inquiries," such as this one, "usually proceed":

> Like in any challenge to a statute, if you're trying to determine its purpose, the best place and oftentimes the only place you even need to look is the text of the statute. That's the only thing everyone has voted on, agreed upon, and ultimately enacted. And here we have extensive set of legislative purposes laid out in Section 1. And then if you look at how the statute operates, you can see how those purposes are advanced. So that's why we don't think that what they're requesting is relevant.
>
> …
>
> **We're looking at publicly available information. That's how these inquiries usually proceed, just like they proceeded at the preliminary injunction, where we came forward with expert testimony.** They cited certain studies. We produced certain studies as exhibits. Plaintiffs and the Department of Justice did the same thing. That's how we think that this case will ultimately be adjudicated when

we get to final judgment. You will hear from experts. Studies will be put forward. Our experts will explain why we think some studies are stronger than others. Their experts will presumably have some contrary opinion on some of those issues. Maybe we'll find some issues of agreement, as well. **That's how these things go.**

*Id.* at 36-38 (emphasis added).

Contrary to "how these inquiries usually proceed," Defendants have served far-reaching and intrusive discovery requests. Defendants' motion asserts that the minor Plaintiffs "refuse to turn over the medical records necessary to assess their claims." Defs.' Br. at 1. This assertion is, at best, misleading. Defendants bury in their brief that the minor Plaintiffs have ***already offered*** to produce medical and mental health records reflecting their evaluation, diagnosis, and treatment for gender dysphoria (notwithstanding their irrelevance to Plaintiffs' legal claims).

Despite the minor Plaintiffs' generous offer, Defendants insist on more—well beyond "how these things go," as Defendants previously put it. Although their motion is not specific as to what medical and mental health records they seek beyond what the minor Plaintiffs have already offered, it appears that Defendants are seeking the minor Plaintiffs' ***entire*** mental health files and expansive—yet undefined— medical files, regardless of whether the records contained in those files have anything to do with gender dysphoria.

Defendants' motion should be denied. First, because the Act categorically bans transitioning medications for transgender youth, the minor Plaintiffs' medical

and mental health records are not relevant and are not proportional to the needs of the case. Second, the minor Plaintiffs' mental health records are privileged, and the minor Plaintiffs have not waived that privilege. Simply put, Defendants should not be given *carte blanche* access to the minor Plaintiffs' entire medical and mental health files simply because the minor Plaintiffs filed this lawsuit.

## FACTUAL BACKGROUND

### I.   The Act is a Categorical Ban.

As the Eleventh Circuit explained, "[t]he scope of allowable discovery is determined by the claims (and defenses) raised in the case." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997). Relevant to that inquiry, Sections 4(a)(1)–(3) of the Alabama Vulnerable Child Compassion and Protection Act ("the Act"), which the minor Plaintiffs are challenging, state:

> Section 4. (a) … [N]o person shall engage in or cause any of the following practices to be performed upon a minor if the practice is performed for the purpose of attempting to alter the appearance of or affirm the minor's perception of his or her gender or sex, if that appearance or perception is inconsistent with the minor's sex as defined in this act:
>
> > (1)  Prescribing or administering puberty blocking medication to stop or delay normal puberty.
> >
> > (2) Prescribing or administering supraphysiologic doses of testosterone or other androgens to females.
> >
> > (3) Prescribing or administering supraphysiologic doses of estrogen to males.
> >
> > …

(c)  A violation of this section is a Class C felony.

S.B. 184, ALA. 2022 REG. SESS. § 4 (Ala. 2022).

The Act categorically bans transitioning medications for transgender minors because of their gender nonconformity. It makes no exception for medical necessity, nor does it differentiate according to the unique circumstances of a particular minor's condition. Thus, it does not matter if a physician determines that these treatments are medically necessary or, alternatively, if the Defendants argue that, for a given situation, the treatments are unnecessary; the Act makes them a felony in *all* cases.

Defendants have not suggested that, under certain circumstances, the Act *could* be constitutional. Instead, Defendants maintain (and, therefore, must prove at trial) that no transgender minor—regardless of the circumstances, in this case or otherwise—should receive transitioning medications.

## II.   Defendants Issued Broad Requests for Production of the Minor Plaintiffs' Medical Records and the Minor Plaintiffs Offered to Produce Certain Records.

Defendants served their first requests for production on July 18, 2022, seeking, among other things, "[a]ll medical records" relating to the treatment of "Gender Dysphoria or a Related Condition" and "[a]ll Documents" concerning "any mental health treatment provided to a child of yours who has been treated for Gender Dysphoria or a Related Condition." *See* Defs.' Mot., Ex. 1, at 7–8.

In response, Plaintiffs objected on various grounds, including that the requests are "not relevant to the parties' claims or defenses" and are "overly broad, unduly burdensome, unbounded as to the timeframe for materials sought, and seek[ ] materials protected by the mental health provider-patient privilege." *See id.* Ex. 2, at 6–13. Plaintiffs subsequently met and conferred with Defendants via various telephone conferences and e-mail exchanges, seeking to reach agreement with respect to these requests. S*ee generally id.* Ex. 3.

During the parties' meet and confer efforts, the minor Plaintiffs offered (without waiving any of their objections) to produce records relating to the evaluation, diagnosis, and treatment of gender dysphoria, as follows:

> (1) medical records that reflect an evaluation and diagnosis of gender dysphoria for each of the minor plaintiffs;
>
> (2) medical records that assess the medical need for treatment of gender dysphoria for each of the minor plaintiffs; and
>
> (3) medical records that reflect the provision of medical treatment for gender dysphoria and ongoing monitoring and evaluation of the condition for each of the minor plaintiffs.

*Id*. at 8.

As part of this offer, Plaintiffs agreed to request copies of the minor Plaintiffs' records that fall into the categories set forth above and to produce any responsive records they obtained. In addition, Plaintiffs proposed the following procedure for obtaining additional medical records that Defendants may desire following their review of the records Plaintiffs offered to produce:

> [I]f the State wishes to obtain additional medical records for the minor plaintiffs, the State will provide the name of the medical provider to private plaintiffs' counsel who (a) will obtain copies of the medical records (through authorization or subpoena), (b) will redact any information that does not fall within the three categories above, and (c) will produce copies of the redacted medical records to the State. The State will agree not to issue subpoenas for medical records so that the parties can avoid needless motion practice.

*Id*.

On December 20, Defendants rejected Plaintiffs' proposal, asserting that the medical records relevant to Plaintiffs' claims "go well beyond" the records outlined in Plaintiffs' proposal. *Id*. at 4. According to Defendants' e-mail, Defendants maintain that a central issue in this case is whether the use of transitioning medications "can be justified given the risk of harm," notwithstanding the fact that the Act categorically bans them. *Id*. On the issue of mental health records, Defendants argued that such records are "critical" to assess "Plaintiffs' history of gender expression and identity; if they have suffered from mental health comorbidities, … whether they experienced and were treated for past psychiatric illness or trauma; and what their school, community, and family environments are and have been like." *Id*. Defendants concluded by stating: "In short, we think ***all*** of Plaintiffs' mental healthcare records are relevant to the as-applied challenge." *Id*. (emphasis added).

On December 26, Plaintiffs responded to Defendants' arguments by standing by the original proposal and highlighting the fact that "the State passed a categorical

ban and not something more narrowly tailored to its purported concerns of either individual misdiagnoses or individual harms from treatment." *Id*. at 2. Indeed, as Plaintiffs explained, Defendants' position has been that "there are ***no circumstances*** where transitioning medications are justified for minors with gender dysphoria." *Id.* (emphasis added). As such, Defendants do not need individual medical records because it is "irrelevant whether an individual minor has a correct diagnosis or particularized need." *Id*. Defendants did not substantively respond to Plaintiffs' December 26 e-mail and filed this motion to compel on January 5, 2023.

## ARGUMENT

Parties may obtain discovery regarding relevant, nonprivileged information that is proportional to the needs of the case, considering, among other factors, "the importance of the issues at stake in the action … the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1). Although the scope of discovery is broad, it is not unlimited. The information "sought must be relevant and … tailored to the issues involved in the particular case." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir. 1992) (internal citation omitted). Moreover, the discovery sought must be proportional to the needs of the case. *See* Fed. R. Civ. 26(b)(1). These limitations are particularly important when there are strong privacy interests at play, such as here, where Defendants seek

7

incredibly broad and intrusive medical records. Defendants "may not engage in a fishing expedition by inquiring into matters totally irrelevant" to the issues in this case. *Cameron v. Supermedia, LLC*, 2016 WL 1572952, at *1 (N.D. Fla. Apr. 19, 2016) (citation omitted); *see also, e.g.*, *Prado v. Equifax Information Servs. LLC*, 331 F.R.D. 134, 137 (N.D. Cal. 2019) (recognizing that "legitimate privacy interests are a consideration in evaluating proportionality" and denying the defendant's "speculative requests" for "private and highly sensitive" medical records); *Thomas v. Foley Hospital Corp.*, 2019 WL 13217331, at *2 (S.D. Ala. Jan. 24, 2019) (recognizing the "privacy interest" in "personal medical records" and concluding that such interest "outweighs any potential relevancy").

## I.    The Records Defendants Seek Are Outside the Scope of Discovery.

This case involves a constitutional challenge to Alabama's blanket ban on transitioning medications for transgender minors. Given the categorical nature of the Act's treatment ban, an individual Plaintiff's particular circumstances are not at issue. The Act prohibits the use of transitioning medications for ***all*** transgender minors, ***regardless of their individual circumstances***.

Consistent with the categorical nature of the Act's treatment ban, Defendants have maintained that there are ***no circumstances*** where transitioning medications are justified for transgender minors. In other words, by Defendants' own admission, this case is not about whether medical treatment was necessary or appropriate for

any particular Plaintiff. Instead, this case is about whether such treatments should be categorically banned—*i.e.* whether such treatments should be prohibited ***without regard*** to the individual circumstances of any transgender patient.

Defendants nonetheless insist that they are entitled to examine each of the minor Plaintiffs' entire medical files, including ***all or virtually all*** medical records and their ***entire*** mental health records, regardless of whether such records relate to the evaluation, diagnosis, and treatment of the minor Plaintiffs' gender dysphoria. Defs.' Br. at 14.

Defendants offer several purported justifications for their request, but none establishes that Defendants are entitled to a broad and intrusive look into the minor Plaintiffs' entire medical and mental health files.

***First***, Defendants contend that the minor Plaintiffs' medical records and mental health records are relevant because the minor Plaintiffs are challenging the law as applied to them. But the Act is a categorical ban on transitioning medications for all transgender youth. Thus, according to Defendants, whether a treatment is or is not constitutional in a particular patient's case does not turn on the specifics of that patient's physical or mental health history; the Act bans the treatments without regard to individualized consideration. Indeed, the Act would criminalize such treatments even if it was indisputable that treating a particular patient's gender dysphoria with puberty-blocking medications and/or hormones was safe, effective,

and medically necessary. The minor Plaintiffs are challenging the constitutionality of that ***categorical ban***, which applies to them because they are transgender, thus making their individual medical and mental health records irrelevant.

***Second***, Defendants make much of the fact that the standard of care requires a comprehensive, holistic look at an individual patient's mental and physical health before determining whether the patient is an appropriate candidate for puberty-blocking medication or hormone treatments.[1] The fact that a transgender youth's doctor should perform a holistic assessment of a patient before diagnosing or treating gender dysphoria, however, says nothing about the relevance of the minor Plaintiffs' medical and mental health records in this case. The Defendants' brief obscures their true aim: instead of defending the Act's categorical ban, Defendants hope to put the minor Plaintiffs' physicians on trial by scrutinizing each diagnostic step and converting this case from one about the Act's constitutionality to one about a physician's performance. The constitutionality of the Act does not turn on whether the minor Plaintiffs' doctors performed a complete, adequate, sufficient, or appropriate assessment before prescribing puberty-blocking medications or

---

[1] To the extent Defendants argue that there are not, in fact, careful protocols for diagnosing gender dysphoria, that argument likewise does not justify requiring the minor Plaintiffs to produce their complete medical and mental health records. Whether such protocols exist (and whether UAB has adopted such protocols) are not affected by whether the standard of care was followed for an individual patient.

hormones because, even if they did, the Act would still make it a felony to prescribe such treatments.

The question instead is whether Defendants can show that the Act is substantially related to an important state interest. *See* PI Order (Dkt. 107), at 23. And Defendants must do so by presenting evidence demonstrating a sufficient justification for the Act ***at the time the Act was enacted***. *See id.* (explaining that Defendants must come forth with "[a]n exceedingly persuasive justification" supporting the Act's categorical ban, *i.e.*, a justification that is "'genuine, not hypothesized or invented *post hoc* in response to litigation'") (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). As was the case at the preliminary injunction hearing, Defendants will likely attempt to meet their burden at trial by presenting expert evidence as to the standard of care for treating youth with gender dysphoria. Defendants, however, cannot seek to justify the Act retroactively by attempting to backfill evidence on whether the standard of care was followed for a particular patient.

***Third***, Defendants contend that they are entitled to an intrusive examination of all the minor Plaintiffs' medical and mental health records because "Plaintiffs must establish standing under Article III." Defs.' Br. at 20. This justification is pretext. This case has been pending since May 2022, and the Defendants have never raised any serious concerns about standing with this Court or with the Eleventh

Circuit, while the appeal has been pending. Regardless, the minor Plaintiffs are not required to produce their private medical and mental health records to show that they have standing to sue.

To establish Article III standing, Plaintiffs must show that their claims are based on an actual or imminent injury that is concrete, particularized, and can be redressed by the court. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). A transgender minor is harmed by a statute that prohibits them from getting medical treatment because they are transgender, regardless of what Defendants can show about the accuracy of the individual's diagnosis or treatment plan. The "injury in fact element of standing in an equal protection case is the denial of equal treatment resulting from the imposition of the barrier." *American Freedom Law Ctr. v. Obama*, 821 F.3d 44, 51 (D.C. Cir. 2016).

In conjunction with ruling on Plaintiffs' motion for preliminary injunction, the Court found that the Act "categorically prohibits transgender minors from taking transitioning medications due to their gender nonconformity," and that by singling out transgender minors, the law "places a special burden on transgender minors." PI Order, at 23. Given the minor Plaintiffs' declarations attesting that they fall within the group that the Act targets (*i.e.*, that they are transgender minors), the Court has already correctly found that the minor Plaintiffs have Article III standing to sue. *Id.* at 21 n.16. Defendants have not questioned that finding with this Court or with the

Eleventh Circuit. Thus, the requirement that the minor Plaintiffs demonstrate standing does not mandate them to produce their private and highly sensitive medical and mental health records.

## II.    The Minor Plaintiffs' Mental Health Records Are Privileged.

Apart from the records' irrelevance to this litigation, the minor Plaintiffs' mental health records are protected by the psychotherapist-patient privilege, which protects against the disclosure of confidential communications between a patient and a psychiatrist, psychologist, social worker, or other mental health provider. *Jaffee v. Redmond*, 518 U.S. 1, 15-17 (1996). In *Jaffee*, the Supreme Court recognized the importance of maintaining the confidentiality of the communications between a patient and a mental health provider because of the "transcendent importance" of the "mental health of our citizenry." *Id.* at 11. The psychotherapist-patient privilege is absolute and does not depend on a balancing of "the patient's interest in privacy and the evidentiary need for disclosure," as such a balancing test "would eviscerate the effectiveness of the privilege." *Id.* at 11, 17. Thus, no showing of purported "need" can overcome the privilege.

Defendants do not dispute that mental health records reflecting confidential communications between the minor Plaintiffs and their mental health providers are privileged.  Instead, and narrowly, Defendants assert only that the minor Plaintiffs have waived the privilege by "put[ting] [their] mental or emotional state at issue."

13

Defs.' Br. at 24. Yet Defendants have cited no case supporting waiver of the privilege in circumstances even remotely close to those present here.

In each of the cases Defendants have cited, the plaintiffs put their mental state at issue by seeking to recover damages for emotional distress and/or a "specific mental or psychiatric injury or disorder." *See J.P. ex rel. A.W. v. Elmore Cnty. Bd. of Educ.*, 2021 WL 6926819, at *3 (M.D. Ala. Aug. 26, 2021) (plaintiff asserted claims for mental and emotional distress and sought damages for anxiety he suffered as a result of the defendant's alleged conduct); *Oldaker v. Giles*, 2021 WL 3412551, at *3 (M.D. Ga. Aug. 4, 2021) (plaintiffs brought claims for intentional and negligent infliction of emotional distress); *Hansen v. Uber Technologies, Inc.*, 2018 WL 7361084, at *3 (M.D. Fla. Aug. 13, 2018) (plaintiff sought damages for "extreme pain and suffering … and mental anguish").

Here, the minor Plaintiffs are not seeking damages for emotional distress and have not otherwise put their mental health at issue. They are seeking only to vindicate their constitutional rights. And while the minor Plaintiffs must allege that they are transgender, as they have done, to have standing to challenge the Act, doing so does not somehow "put … at issue" the confidential communications between the minor Plaintiffs and their mental health providers, nor does it otherwise constitute a waiver of the privilege.

In short, Defendants suggest that a transgender plaintiff who constitutionally challenges this Act may do so only if he or she impliedly waives any privilege over communications with mental health providers. They cite no authority for that novel proposition—one which no court, in any jurisdiction, has endorsed. Accordingly, this Court should sustain the minor Plaintiffs' objections and deny the Motion.

## III.   Solely In Order to Resolve This Dispute Without Court Involvement, Plaintiffs Offered to Produce the Transgender Minor Plaintiffs' Medical Records Reflecting the Evaluation, Diagnosis, and Treatment for Gender Dysphoria.

Even though the transgender minor Plaintiffs' medical and mental health records are not relevant to the constitutionality of Alabama's categorical treatment ban, and despite the privileged nature of the minor Plaintiffs' mental health records, in the interest of resolving this discovery dispute without court intervention, Private Plaintiffs offered to produce the following categories of medical records:

> (1) medical records that reflect an evaluation and diagnosis of gender dysphoria for each of the minor plaintiffs;
>
> (2) medical records that assess the medical need for treatment of gender dysphoria for each of the minor plaintiffs; and
>
> (3) medical records that reflect the provision of medical treatment for gender dysphoria and ongoing monitoring and evaluation of the condition for each of the minor plaintiffs.

Defs.' Mot., Ex. 3, at 8.

Despite this offer, Defendants filed this motion to compel. Yet, Defendants have not articulated what additional medical records and mental health records they

seek, much less why such records are relevant and proportional to the needs of the case. While Defendants devote much of their brief to claiming that they need medical records that "reflect the inputs" into the "multidisciplinary assessment" involved with evaluating, diagnosing, and treating an individual's gender dysphoria, *see, e.g.*, Defs.' Br. at 17, Defendants ignore that these are precisely the types of records that the minor Plaintiffs have already offered to produce. Similarly, Defendants contend that they are entitled to records that "reflect side effects" of any medications the minor Plaintiffs have been prescribed. Any such side effects, however, would likely be reported to the prescribing physician and thus would fall within the records the minor Plaintiffs have already offered to produce.

## CONCLUSION

For the reasons explained above, Defendants' motion to compel should be denied.  None of the medical or mental health records Defendants seek are relevant or proportional to the needs of the case. Moreover, the minor Plaintiffs' mental health records are indisputably protected by the psychotherapist-patient privilege, and the minor Plaintiffs have not waived the privilege by filing this lawsuit or otherwise.

Respectfully submitted this 26th day of January, 2023.


 */s/ Melody H. Eagan*
Melody H. Eagan (ASB-9780-D38M)

16

Jeffrey P. Doss (ASB-4212-R62D)
Amie A. Vague (ASB-4113-Q46I)
LIGHTFOOT, FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
205.581.0700
meagan@lightfootlaw.com
jdoss@lightfootlaw.com
avague@lightfootlaw.com

J. Andrew Pratt (ASB-3507-J56P)
Adam Reinke (GA Bar No. 510426) (*pro hac vice*)
Misty L. Peterson (GA Bar No. 243715) (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street Northeast, Suite 1600
Atlanta, GA 30309
404.572.4600
apratt@kslaw.com
areinke@kslaw.com
mpeterson@kslaw.com

Brent P. Ray (IL Bar No. 6291911) (*pro hac vice*)
Abigail Hoverman Terry (IL Bar No. 6327057) (*pro hac vice*)
KING & SPALDING LLP
110 North Wacker Drive, Suite 3800
Chicago, IL 60606
312.995.6333
bray@kslaw.com
ahoverman@kslaw.com

Michael B. Shortnacy (CA Bar No. 277035) (*pro hac vice*)
KING & SPALDING LLP

17

633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
213.443.4355
mshortnacy@kslaw.com

Rachel H. Berg (NY Bar No. 5396197) (*pro hac vice* motion pending)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
415.343.7679
rberg@nclrights.org

Jennifer L. Levi (MA Bar No. 562298) (*pro hac vice*)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
617.426.1350
jlevi@glad.org

Scott D. McCoy (FL Bar No. 1004965) (*pro hac vice*)
SOUTHERN POVERTY LAW CENTER
P.O. Box 12463
Miami, FL 33101
334.224.4309
scott.mccoy@splcenter.org

Diego A. Soto (ASB-3626-Y61S)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
334.604.1414
diego.soto@splcenter.org

Jessica L. Stone (GA Bar No. 275567) (*pro hac vice*)

SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
404.221.5837
jessica.stone@splcenter.org

Sarah Warbelow (MI Bar No. P66690) (*pro hac vice*)
Cynthia Weaver (NY Bar No. 5091848) (*pro hac vice*)
HUMAN RIGHTS CAMPAIGN FOUNDATION
1640 Rhode Island Ave., NW
Washington, DC 20036
202.628.4160
sarah.warbelow@hrc.org
cynthia.weaver@hrc.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on January 26, 2023, which will serve all counsel of record.

s/ *Melody H. Eagan*