# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

BRIANNA BOE,          )
*et al.,*                     )
                           )
*Plaintiffs*,               )
                           )
and                       )     Civil Action No. 2:22-cv-184-LCB
                           )
UNITED STATES OF AMERICA,    )
                           )
*Plaintiff-Intervenor*,       )
                           )
                           )
STEVE MARSHALL, *et al.*,   )
                           )
 *Defendants*.              )

**[PROPOSED] ORDER REGARDING
THE PROTOCOL GOVERNING PRODUCTION OF DOCUMENTS
AND ELECTRONICALLY STORED INFORMATION ("ESI")**

This Order Regarding the Protocol Governing Production of Documents and Electronically Stored Information ("ESI") (the "ESI Protocol") shall govern the Parties in the above captioned case.

**I.    GENERAL PROVISIONS**

A.    "Parties" shall mean the named plaintiffs, the intervenor-plaintiff, and named defendants in the case captioned above, whether named at the time of this

1

Order or added later.

B.      "Electronically stored information" or "ESI," as used herein, means electronically stored information as defined in Fed. R. Civ. P. 34(a) and relevant interpretive jurisprudence, and refers to computer generated information or data of any kind or document of any kind stored in or on any storage media located on computers, personal drives, file servers, discs, tape, cloud-based storage devices, or other real or virtualized devices or media.

C.      "Native format" or "Native file" means and refers to the format of ESI in which it was generated and/or as used by the producing Party in the usual course of its business and in its regularly conducted activities.

D.      "Metadata" means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

E.      "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and

printed on standard computer systems.

F.      "Documents" has the meaning contemplated in the Federal Rules of Civil Procedure and applicable case law and includes, but is not limited to, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records, or data compilations.

G.      "Media" means an object or device, including but not limited to a disc, tape, drive, computer or other device, whether or not in the producing Party's physical possession, on which data is or was stored.

H.      "Custodian" means an individual, department, or shared resource that possesses, has custody of, or controls potentially responsive documents. Custodians are not limited to personnel with administrative decision-making authority regarding the data or documents.

## II.    SCOPE OF THE AGREEMENT

A.      Absent special circumstances, and in addition to the Stipulated Protective Order entered by the Court in this litigation (Dkt. # 137), the specifications set forth below shall govern the production of all documents, testimony, exhibits, electronically stored information ("ESI"), and any other materials and information (including, to avoid any ambiguity, any unique copies, summaries, or derivations thereof) produced by the Parties during discovery. Without limiting the generality of the foregoing, the Parties will confer in good faith

regarding proposed changes to this ESI Protocol in view of specific discovery requests made during the course of this litigation and/or in view of issues arising after a Party commences collection of ESI and other documents and information. In the absence of agreement between the Parties to modify this ESI Protocol, any Party may apply to the Court for relief. Nothing in this ESI Protocol constitutes the waiver or estoppel of a Party's right to seek amendments to this ESI Protocol for good cause, including changed circumstances not known to the Party at the time the Parties entered this ESI Protocol. Nor does anything in this ESI Protocol waive the right of any Party to object to the production of certain documents or ESI, including on the basis of relevance, proportionality, undue burden, privilege and/or inaccessibility. In addition, the inclusion or identification of certain types of ESI shall not be read to suggest or imply that any particular form of ESI is relevant or that the production of that form of ESI is necessary or proportionate to the needs of the case. The Parties agree that, notwithstanding any provisions of this protocol, discovery must be proportionate to the needs of the case as provided for in Fed. R. Civ. P. 26(b)(1) and relevant interpretive jurisprudence.

B.     <u>Disputes</u>.   The Parties shall meet and confer in good faith on any disputes that arise under this ESI Protocol , including any relating to Custodians and data sources. In the event the Parties cannot reach an agreement on a disputed matter, the Parties shall submit the matter to the Court. In the meet and confer, both

sides should be prepared to discuss the relevance and proportionality of the specific information sought, other sources of similar information, the burden of producing the information, and the parameters of any disputed search.

## III.   PRESERVATION AND PRODUCTION OF DOCUMENTS

A.   <u>Preservation</u>.  This ESI Protocol does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law, pursuant to a court order or administrative order, any prior agreement, or in response to other anticipated litigation.

B.   <u>Limitations on Obligation to Preserve and Produce</u>:  For purposes of this action, the Parties agree to limit the scope of preservation as described in this section.

1.   The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation the following categories of ESI:

a.   Delivery or read receipts of e-mail;

b.   Logs or other data from video-conferencing (including, *e.g.*, Skype or Zoom) or instant messaging tools involving (i) attorneys for the Plaintiffs; (ii) attorneys for the Plaintiff-Intervenor United States (and their staff); and/or (iii) attorneys for Defendant(s) in this case (and their staff);

5

c.      Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

d.      Internally facing server system logs;

e.      Externally facing or hosted file sharing system logs;

f.      System data from photocopiers or fax machines;

g.      Auto-saved copies of electronic documents;

h.      Deleted, slack, fragmented, or other data only accessible by forensics; and

i.      Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

j.      Logs of or other data from audio calls (including, *e.g.*, landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP")) made to or from (i) attorneys for the Plaintiffs; (ii) attorneys for Plaintiff-Intervenor United States (and their staff); and/or (iii) attorneys for Defendant(s) in this case (and their staff);

k.      Voicemail messages on the voicemail systems of (i) attorneys for the Plaintiffs; (ii) attorneys for Plaintiff-Intervenor United States (and their staff); and/or (iii) attorneys for Defendant(s) in this case (and their staff);

2.      When duplicate copies[1] of relevant ESI exist in more than one location, this ESI Protocol does not require a Party to preserve all duplicates as follows:

a.      ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order *provided that* duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

b.      ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order *provided that* duplicate copies of relevant ESI have been preserved in another reasonably accessible location.  However, if a Party knows that relevant ESI exists *only* on a Party's Backup System, the Party will take reasonable steps to preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced.  If

---

[1] "Duplicates" in the context of ESI are copies of identical documents identified with matching MD-5 hashes, which is a mathematically-calculated 128 bit value used to create a unique identifier for an electronic file.

the Parties cannot reach agreement, they will seek a ruling from the Court.

3.     The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created by and, if shared with any other(s), exchanged *solely among*: (i) attorneys for Plaintiffs (and their staff); (iii) attorneys for Plaintiff-Intervenor United States (and their staff); and/or (iv) attorneys for the Defendants (and their staff).

The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to this section.  The Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

## IV.    SEARCH AND RETRIEVAL OF ESI

The Parties will meet and confer as to the use of search methodologies to locate relevant electronic Documents. In the absence of agreement between the Parties as to the methodology or scope of a reasonable electronic search for relevant electronic Documents, any Party may apply to the Court for relief. To the extent the producing Party identifies, in the course of its collection or review, any non-privileged Document that it knows to be responsive to the claims and defenses in

this litigation that such Document(s) falls outside of the agreed upon search methodology or is not captured by the search procedure shall not be a basis to exclude the Document from production .

## V.   PRODUCTION OF ESI AND HARD COPY DOCUMENTS

A.   <u>TIFFs</u>. Responsive ESI and hard copy documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number. Original document orientation should be maintained (*i.e.,* portrait to portrait and landscape to landscape), and Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder.If ESI has hidden text (*e.g.*, track changes, hidden columns, comments, notes, markups, etc.) associated with it, the Parties shall produce the ESI in a form showing such hidden text to the extent reasonably practicable.  If producing hidden text is not reasonably practicable, the Parties shall meet and confer regarding possible alternatives.

B.   <u>Unitizing of Documents</u>. When scanning paper documents for purposes of this litigation, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will make their best efforts to have their vendors unitize documents as set forth in this Order.

C.   <u>OCR Text Files</u>.   Optical Character Recognition ("OCR") text files shall be provided as a single text file for each hard copy document, not one text file per page. OCR text files should be provided in ASCII/ANSI format.  Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by .txt.  OCR text tiles should be provided in a self-identified "Text" directory.  To the extent a document is redacted, OCR text tiles for such a document shall not contain text for redacted portions.

D.   <u>Database Load Files/Cross-Reference Files</u>.   Documents should be provided with image and data load files (*i.e.*, .OPT and DAT files) compatible with an Industry Standard Review Platform ("ISRP"), (*e.g.*, Concordance), using ISRP delimiters.  Image and data load files should be provided in a self-identified "Data" folder.  Images should be accompanied by a Concordance Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.

E.   <u>Production of Documents Containing Redactions</u>.  The Parties further agree that when producing Documents and ESI, privileged material contained within an otherwise discoverable Document or ESI record should be redacted. Native documents that require redaction for privilege may be produced in the same PDF format as hard-copy paper documents above; provided, however, that the redacting

party will also provide a electronic spreadsheet index corresponding with the produced document's unique file name, beginning Bates number, ending Bates number, and all non-privileged metadata fields (e.g., Author, Recipient(s), Date, Subject, etc.) associated with the native file in separate columns. If a document contains information that is redacted, the parties agree such documents may be produced in PDF format.

F.   <u>Native File Format</u>. All spreadsheets (e.g., Excel files), Multimedia (e.g., audio/video files), and presentation files (e.g., PowerPoint presentations) will be produced in Native format, except where such files are redacted in accordance with applicable law or Court order. All documents produced solely in Native format should: (i) have an assigned document level Bates number, (ii) be renamed according to the assigned Bates number, and (iii) have a "nativepath" populated along with the metadata load file pursuant to the guidelines outlined below. Native file productions shall also be accompanied by a TIFF image with the Bates number and original filename endorsed ("burned") onto the image, as well as any confidentiality designation associated with that document. The Parties agree that compliance with these provisions shall not constitute spoliation. The Parties agree to meet and confer regarding any other file format to be produced natively.

G.   <u>Document Unitization</u>. For files produced as TIFF images, each page of a document shall be electronically saved as an image file. If a document consists

of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files. The producing Party shall produce a unitization file ("load file") for all produced documents in accordance with this Protocol.

      H.   <u>Deduplication</u>. The Parties will meet and confer regarding deduplication of all Documents, email threading, and any additional filtering techniques. The parties may globally deduplicate (i.e., within and across custodians) using commercially acceptable e-Discovery software that utilizes either MD5 or SHA1 cryptographic hash values to de-duplicate ESI at the document family or parent level. The identity of the primary custodian and other disclosed custodians that possessed all de-duplicated items at the time of production shall be provided in the custodian and duplicate custodian fields of the single record that is produced. The parties may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain ("email thread suppression"). If a producing party elects to utilize such email thread suppression for its productions, it shall use commercially acceptable e-discovery software to do so (e.g., Relativity). Any party opting to de-duplicate in a different manner from the foregoing procedures shall disclose its de-duplication methodology to the receiving party. If the receiving party objects to the methodology, it shall timely raise those concerns with the producing party.

I.      <u>Color</u>.   At the producing Party's option, hard copy documents and documents reduced to TIFF may be produced in black and white in the first instance. Notwithstanding the foregoing, the producing Party will endeavor to produce in a color format any documents reduced to TIFF that contain color in instances where the producing Party is aware that the color is necessary to the meaning, context, or content of the document.   In addition, the producing Party will honor reasonable requests made in good faith for the production of a color image of the document (and, in the case of a hard copy document, a color hard copy) where the requesting Party determines the color is necessary to decipher the meaning, context, or content of the document.

J.      <u>Bates Numbering and Other Unique Identifiers</u>. For files produced in the document image format, each page of a produced document, shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in such a manner that information from the source document is not obliterated, concealed, or interfered with.  There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of a protective order entered by this Court in this litigation, or has been redacted in accordance with applicable law or Court order.   In the case of confidential information or highly confidential information, as defined in a protective order, or materials redacted in accordance with applicable law or Court

order, a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

      K.    <u>Production Media</u>.  Documents shall be produced on external hard drive (with standard PC compatible interface), SFTP link, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"), subject to all applicable protective orders, including the Court's HIPAA Qualified Protective Order and Order to Disclose Protected Health Information, granted on July 19, 2022, Doc. 138.  In the case of documents and ESI produced by the United States, responsive information will be produced via .zip file(s) uploaded to the Justice Enterprise File Sharing System (JEFS) / USAfx File Exchange.

      L.    <u>Electronic Text Files</u>.  Where documents maintained in the ordinary course of business contain searchable text, text files shall be produced reflecting the full text that has been electronically extracted from the documents ("Extracted Text"), including any hidden text.  Where such documents are no longer searchable because they have been converted to Static Images by the producing Party, the producing Party shall provide OCR text files.  With respect to emails, the Extracted Text shall include email header information, including to, from, cc, bcc, subject, date, and the names of attachment files.  The Extracted Text shall be labeled and produced on Production Media in accordance with the provisions of paragraph V.I.

above, "Production Media."  The text files shall be produced in multi-page text file format and will be named in such a way that they can be associated with their corresponding Static Images in databases utilized by commercially available document management or litigation support software.

      M.   <u>Metadata</u>.  Unless otherwise mutually agreed upon by the Parties, the Parties agree to produce the following metadata fields (to the extent available, reasonably accessible, and not burdensome) to accompany each produced ESI file. All metadata must be encoded in UTF-8.

- BegDoc (beginning Bates number of the first page of a document)
- EndDoc (ending Bates number of the last page of the document)
- BegAttach (Bates number associated with the first page of a parent document)
- EndAttach (Bates number associated with the last page of the last attachment to a parent document)
- Attach Count (number of attachments to an email or electronic doc)
- File size (the file size of a document including embedded attachments)
- DocTitle (electronic docs only)
- File/folder path (the full path to the file at its original location, including emails)
- Filename
- ParentID/Group Identifier (beginning Bates number for the parent email or e-doc)
- Email Conversation Index (ID used to tie together e-mail threads)
- FamilyID/Group Identifier (An ID that is unique to the entire family

group (email and attachments)

- Family Date/Parent Create Date (for emails and attachments only, corresponding to the sent or received date of the email to which the attachment is linked)
- MessageID (emails only)
- Sent Date (for emails and calendar invitations)
- Sent Time (for emails and calendar invitations)
- Last Modified Date (all documents)
- Last Modified Time (all documents)
- Created Date (all documents)
- Created Time (all documents)
- Received Date (for emails only)
- Received Time (for emails only)
- Last Accessed Date (all documents)
- Last Accessed Time (all documents)
- Last Print Date (for e-docs)
- Author (e-docs only)
- From ("From" field in emails)
- Recipients ("To" field in emails)
- cc: (for emails only)
- bcc: (for emails only)
- Subject ("Subject" field in emails)
- Attach Title (email attachments title list)
- Application (type of application used to generate the document)
- Custodian
- Duplicate/Global Custodian/Secondary Custodian (the name of any Custodian whose duplicate file was removed during production)

- MD-5 Hash Value or SHA-1 Hash Value
- Page Count (number of pages in a document)
- Original File Name/File Name (the original file name of an electronic doc or attachment to an email)
- Doc extension (the file extension of a document)
- Record type (the record type of a document)
- Designation (Confidential, highly confidential, etc.)
- Time Zone Processed (the time zone the document was processed in)
- Full Text (the full path to the OCR/extracted text file on Production Media)
- NativeLink (the full path to the native file produced)

Notwithstanding the foregoing, the Parties will meet and confer in good faith prior to the production of documents, with technical experts as needed, to clarify or resolve any issues (*e.g.*, definitions of metadata fields, inconsistencies, burden) concerning the production of metadata.

N.   <u>Attachments</u>.  Email attachments and embedded files or links must be mapped to their parent by the Document or Production number.  If attachments and embedded files are combined with their parent documents, then "BeginAttach" and "EndAttach" fields (or the functional equivalent, depending on the production format chosen) listing the unique beginning and end number for each attachment or embedded document must be included, when possible.  Bates numbering for any Attachments must sequentially follow the Bates number(s) for the parent record.

O.  <u>Load Files</u>.  The Parties agree to produce the following load files to accompany each production volume:

<u>Native Productions</u>
- Filenames should be in the form:
  "<Bates num>.<ext>," where <Bates num> is the BATES number of the page and <ext> is the appropriate extension for the Native format
- Each searchable Native file should have an extracted text file as described below.  Each non-searchable native file containing text should have a multi-page OCR text file as described below
- Each file requiring redaction has group IV single page TIFFs at 300 dpi, a unique identifier number applied to images matching the Bates number, and there should be OCR for redacted files in multipage .txt format
- Load file(s) for natives should be in ISRP-compatible format
- Data file including the extracted metadata fields designated above

<u>OCR and Extracted Text Files (.TXT Files)</u>:
- Single text file per document containing all the document's pages
- Pages separated by form feed character (decimal 12, hex 0xC)
- Filenames should be of the form:
  <Bates num>.txt
  Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.

<u>Image Files</u>:
- Single page per image

- TIFF is Group IV compression, 300 dpi unless color or grayscale image is necessary, then .JPG would be acceptable

- Filenames should be of the form:

  "<Bates num>.<ext>," where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

Index Files:

- ISRP default delimited text file utilizing the pipe carat as the delimiter
- First line must contain the column/field names
- Every row must have the same number of columns/fields (empty values are acceptable)
- All records must contain the quote "þ" character and the comma "¶" character for every entry.
- DATE Fields (cannot contain zeros such as, 00/00/0000 or 11/00/2012 value)
- Text must be encoded in UTF-8

P.    Variations to Production Format.  In certain circumstances, variations to the Production Format specified in this Protocol may be necessary. In such circumstances, the Parties will meet and confer regarding the Production Format.

Q.    Password-protected files.  The Producing Party will make reasonable efforts to open and access password-protected files that are identified during processing, or otherwise provide such passwords.

## VI.   BATES NUMBERING

Each TIFF image should be assigned a Bates number that: (1) is unique across

the entire document production; (2) maintains a constant length across the entire production padded to the same number of characters; (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

## VII. ENCRYPTION

To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

## VIII. OBJECTIONS TO ESI PRODUCTION

A.    If either Party objects to producing the requested ESI on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, the Party, at or before the time the production is due under the Federal Rules of Civil Procedure, agreement of the Parties, or order of the Court, shall describe the nature of the objection and undue burden with reasonable particularity  and indicate whether the producing Party is willing to offer an alternative.  The Parties will promptly meet and confer in an attempt to resolve the objections if necessary.

B.     Any privilege log shall include Bates document number (or document identification), date of the document, author(s), recipient(s), the subject of the document, a description of the document, and an explanation of privilege(s) being asserted with respect to the document. A single document containing multiple e-mails in an e-mail chain may be logged as a single entry containing the information from the most recent email in the chain.  The Parties are not required to log redacted documents provided they state the reason for the redaction in the text of the redaction box (e.g., Attorney-Client Privilege, Work Product, etc.)  Privilege logs shall be produced only in accordance with the Federal Rules of Civil Procedure, governing jurisprudence, and any orders of the Court.

## IX.    NON-PARTY DOCUMENTS

A.     A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein, if reasonably practicable. For non-party subpoenas that have already issued, the Parties agree to submit this ESI protocol to those non-parties and request that the non-party  make reasonable efforts to produce documents in accordance with the specifications set forth herein if reasonably practicable.

B.     Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties

to object to a subpoena.

## X.      MISCELLANEOUS PROVISIONS

A.      Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents.  All productions are subject to any protective orders entered by the Court in this action.

B.      The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol.  If a producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such Party shall inform the requesting Party in writing, in a reasonable time before the date of production, as to why compliance with the ESI Protocol is impossible or unreasonable.  No Party may seek relief from the Court concerning compliance with the ESI Protocol unless it has first conferred with the requesting Party.

C.      Any practice or procedure set forth herein may be varied by agreement of Plaintiffs and all affected Defendants, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of ESI.  Any Party that seeks to deviate from or exceed the discovery

parameters set forth herein, must obtain leave of Court to do so unless all Plaintiffs and all affected Defendants otherwise consent in writing.  Before seeking Court intervention, all Plaintiffs and all affected Defendants shall meet and confer in good faith regarding any modification.


   **IT IS SO ORDERED.**


DATED: _____          _____
                                  Hon. Liles C. Burke
                                  United States District Judge