# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| United States of America, | ) |
| | ) |
| *Intervenor Plaintiff*, | ) |
| | ) |
| v. | ) Civil Action No. 2:22-cv-184-LCB |
| | ) |
| Hon. Steve Marshall, in his official | ) |
| capacity as Attorney General, | ) |
| of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF PLAINTIFFS' MEDICAL RECORDS (DOC. 215)**

## TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Introduction .........................................................................................................1

Argument.............................................................................................................3

    I.    The Requested Medical Records Are Highly Relevant .............................3

    II.    Plaintiffs Lack A Valid Reason To Withhold The Medical Records ........9

    III.    Plaintiffs Continue To Withhold Responsive Records ...........................10

Certificate of Service .........................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*,
    68 U.S. 737 (1984) ..................................................................................9

*Am. Freedom L. Ctr. v. Obama*,
    21 F.3d 44 (D.C. Cir. 2016) ....................................................................8

*AMSCME Council 79 v. Scott*,
    17 F.3d 851 (11th Cir. 2013)...................................................................7

*Ayotte v. Planned Parenthood*,
    46 U.S. 320 (2006) ..................................................................................4

*Bates v. State Bar of Ariz.*,
    33 U.S. 350 (1977) ..................................................................................5

*Blake v. City of Montgomery*,
    2020 WL 6804456 (M.D. Ala. Feb. 14, 2020)......................................10

*Brandt v. Rutledge*,
    No. 21-450 (E.D. Ark. Oct. 24, 2022) .....................................................3

*Doe #6 v. Miami-Dade Cnty.*,
    974 F.3d 1333 (11th Cir. 2020)...............................................................5

*Free Speech Coal., Inc. v. Att'y Gen.*,
    974 F.3d 408 (3d Cir. 2020)....................................................................6

*Harris v. Mexican Specialty Foods, Inc.*,
    564 F.3d 1301 (11th Cir. 2009)...............................................................4

*J.P. as Next Friend of A.W. v. Elmore Cnty. Bd. of Educ.*,
    2021 WL 6926819 (M.D. Ala. Aug. 26, 2021).................................9, 10

*Jacobson v. Fla. Sec'y of State*,
    974 F.3d 1236 (11th Cir. 2020)...............................................................8

*Miller v. Johnson*,
    515 U.S. 900 (1995) ............................................................................................6

*Schultz v. Alabama*,
    42 F.4th 1298 (11th Cir. 2022) ........................................................................4, 6

*United States v. Williams*,
    553 U.S. 285 (2008) ............................................................................................1

*Williams v. Pryor*,
    240 F.3d 944 (11th Cir. 2001) ............................................................................6

## Other Authorities

BLACK'S LAW DICTIONARY (11th ed. 2019) ...............................................................1

## INTRODUCTION

Plaintiffs' opposition to turning over highly relevant, essential medical records ultimately rests on a single legal assertion: that Defendants "must prove at trial" "that no transgender minor—regardless of the circumstances, in this case or otherwise—should receive transitioning medications." Doc. 232 at 5 ("Opp.").[1] Plaintiffs have it exactly backwards. To succeed on their facial challenge, *they* must prove that Alabama's law is unconstitutional in every application. And to succeed on their as-applied challenge (most relevant here), *they* must prove that Alabama's law is unconstitutional "in its application to a particular party" based "on the facts of a particular case." *As-Applied Challenge*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Individualized facts are thus key to as-applied challenges. A plaintiff bringing an as-applied challenge to a blanket ban on child obscenity, for instance, wouldn't get very far without offering as evidence the video he claims is a documentary protected by the First Amendment rather than something more sinister. *E.g.*, *United States v. Williams*, 553 U.S. 285, 302 (2008). This is presumably why Plaintiffs here included in their complaint individualized factual allegations detailing why they think the prohibited sterilizing interventions are "essential" "medical care" *for them*. Doc. 159 ¶¶ 2-3. For their as-applied claims to succeed, it matters whether those allegations are true—whether Plaintiffs can prove that supraphysiologic doses of

---

[1] Page references are to the ECF-stamped pagination.

1

estrogen are "essential" "medical care" for Allison Poe, or whether puberty blockers are "essential" for Melissa Roe. *Id.* ¶¶ 55, 72. If each Plaintiff does not prove these allegations at trial, then the law can be constitutionally applied to him or her—even if someone *else* could show that the law could not constitutionally be applied to her.

Plaintiffs could have avoided this particularized burden by resting only on their facial challenge. They chose not to. And because they chose not to, they necessarily placed in dispute the appropriateness of the treatments they seek. To determine that, Plaintiffs' own preferred guidelines note that a comprehensive biopsychosocial analysis is required that accounts for all other mental health comorbidities. Defendants are thus entitled to all the medical records needed for that analysis, including the mental health records Plaintiffs refuse to turn over (but which they do not dispute pertain to such comorbidities). To be sure, and as Plaintiffs point out, these private records are generally protected from disclosure. But courts have universally held that plaintiffs waive that privilege when they put their mental health into question. That is just what Plaintiffs have done here.

As for Plaintiffs' final assertion—that they already agreed to produce these documents—it suffices to say that Plaintiffs would not be opposing Defendants' motion if they were willing to produce the requested records. Instead, Plaintiffs offered only "medical records that reflect an evaluation and diagnosis of gender dysphoria" and "the medical need for treatment of gender dysphoria." But a focus of this

litigation is that gender dysphoria typically presents with other mental health conditions, and the primary studies Plaintiffs rely on treated those other conditions before administering transitioning treatments. And again, Plaintiffs' own preferred standards suggest a *comprehensive* mental health evaluation. To limit production to documents directly about gender dysphoria would prevent Defendants from meaningfully contesting what Plaintiffs must *prove*: that each minor requires puberty blockers and cross-sex hormones instead of other, safer therapies. Such medical records were disclosed and introduced at trial in the Arkansas case raising related constitutional questions.[2] They should be disclosed here, too.

## ARGUMENT

### I.       The Requested Medical Records Are Highly Relevant.

Plaintiffs concede that their own favored "standard of care requires a comprehensive, holistic look at an individual patient's mental and physical health." Opp. 11; *see* Doc. 215 at 7 ("Mot.") (WPATH recommending consideration of "complicating mental health histories"). Yet Plaintiffs turn around and insist that "says nothing about the relevance of the minor Plaintiffs' medical and mental health records." Opp. 11. But the Minor Plaintiffs' as-applied claims hinge on their individualized need for the medical treatments they consider "essential." If the treatments for any individual Plaintiff are not, in fact, "essential," then that Plaintiff's as-applied claim

---

[2] *Brandt v. Rutledge*, No. 21-450, Doc. 219 at 12-13, 20 (E.D. Ark. Oct. 24, 2022).

fails. Thus, analyzing the need for the treatments requires *all* the records that Plaintiffs say should be used when determining appropriate care. It is hard to imagine what documents could be *more* relevant to an as-applied challenge regarding medical treatments than those medical records. Presumably that is why such medical records were disclosed and introduced in the similar Arkansas case. *See supra* note 2.

Plaintiffs fall back on their repeated contentions that "[g]iven the categorical nature of the Act's treatment ban, an individual Plaintiff's particular circumstances are not at issue." Opp. 9. Again, that is not how as-applied challenges work. Begin with the basics: a Plaintiff (with standing) must prove that the Act is unconstitutional. One of the ways Plaintiffs here propose to do that is by an as-applied challenge. Such a challenge "asserts that a statute cannot be constitutionally applied *in particular circumstances*." *Schultz v. Alabama*, 42 F.4th 1298, 1319 (11th Cir. 2022) (cleaned up, emphasis added). "Because such a challenge asserts that a statute cannot be constitutionally applied in particular circumstances, it necessarily requires the development of a factual record for the court to consider." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009); *Ayotte v. Planned Parenthood*, 546 U.S. 320, 329 (2006) ("It is axiomatic that a statute may be invalid as applied to one state of facts and yet valid as applied to another." (cleaned up)).

Thus, on Plaintiffs' as-applied challenge, Defendants may prevail by showing that the statute is valid as applied to individual Plaintiffs. Practically the only way

for Defendants to make that argument—or for the Court to adjudicate it—is with the records that Plaintiffs agree are critical to determining the appropriate course of treatment. Lest there be any doubt, Defendants are indeed "suggest[ing] that, under certain circumstances, the Act *could* be constitutional." Opp. 5.[3]

Plaintiffs have no response supported by legal authority. They simply repeat the assertion that "by Defendants' own admission, this case is not about whether medical treatment was necessary or appropriate for any particular Plaintiff." Opp. 9-10. Of course, they cite nothing for this "admission," for Defendants can make multiple arguments in defense of the law—and one of their responses to Plaintiffs' as-applied challenges may be that the law is valid as applied to an individual Plaintiff. If Plaintiffs' theory were right, every plaintiff with an as-applied challenge could claim that the law sweeps more broadly and thus that the defendant should have to defend all its applications—despite the fact that the defendant does not have to defend all applications even in a facial challenge (as discussed below). Plaintiffs cite no precedent supporting such an upside-down approach to as-applied challenges, and many precedents refute it. *E.g.*, *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380 (1977) ("[A] person may not challenge a statute on the ground that it might be

---

[3] In similar circumstances, the Eleventh Circuit has noted that a defendant not on notice of an as-applied claim suffers prejudice because on such a claim, the defendant presumably "would have cross-examined the Does more extensively, introduced more evidence to impeach the Does, asked the Does to undergo physical or mental examinations, hired expert witnesses to evaluate the Does[]," and "called as witnesses the professionals who treated the Does." *Doe #6 v. Miami-Dade Cnty.*, 974 F.3d 1333, 1341 (11th Cir. 2020). That is true here too.

applied unconstitutionally in circumstances other than those before the court.").[4]

Naturally Plaintiffs wish that Defendants "must prove" the law constitutional in all applications, Opp. 4, but that is not Defendants' burden. Plaintiffs always have the ultimate "burden of proof at trial." *Miller v. Johnson*, 515 U.S. 900, 916 (1995). On their as-applied challenge, Plaintiffs must prove that the law is invalid *as to a particular individual*. That is true even if heightened scrutiny applies: heightened "scrutiny does not change the individualized inquiry required for an as-applied claim." *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 422 (3d Cir. 2020); *see, e.g.*, *Williams v. Pryor*, 240 F.3d 944, 955 (11th Cir. 2001). To correct Plaintiffs' hypothetical, if Defendants show "that treating a particular patient[]" "with puberty-blocking medications and/or hormones [i]s [un]safe, [in]effective, and medically [un]necessary" (Opp. 10-11), Defendants would prevail in showing that the law is closely tailored to protecting *that child*. This has nothing to do with "retroactively" "backfill[ing] evidence on whether the standard of care was followed for a particular

---

[4] Plaintiffs dwell on an out-of-context statement by Defendants that the focus of any *legislative purpose* inquiry is on "publicly available information." Opp. 2. The focus of an *as-applied challenge*, by contrast, is on the plaintiff's "particular circumstances." *Schultz*, 42 F.4th at 1319. Adjudicating these Plaintiffs' as-applied challenges will require references to both publicly available information (such as studies and guidelines) and each Plaintiff's individual circumstances. Again, that is due to the nature of as-applied challenges and the fact that the studies and guidelines require such individualized consideration. *See* Mot. 6-14, 23-24. Hence the extensive preliminary injunction testimony by Plaintiffs about a Plaintiff's medical history and treatments.

6

patient," whatever that might mean. Opp. 12. Instead, the evidence pertains to whether the law is sufficiently tailored to protecting a particular child.[5]

Moreover, even on Plaintiffs' facial challenge, Defendants do not bear the burden of proving the law constitutional in all applications. Just the opposite. *Plaintiffs* "bear[] the burden of proving that the law could *never* be applied in a constitutional manner." *AMSCME Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) (emphasis added). Thus, the medical records are relevant to show that the law is valid in at least some circumstances. They are also relevant, as previously explained and as Plaintiffs ignore, to Plaintiffs' claims about how transitioning treatments are prescribed and monitored in Alabama generally. Mot. 20.[6]

Finally, the medical records are relevant to standing. Plaintiffs first argue that "Defendants have never raised any serious concerns about standing." Opp. 12. But standing is an Article III jurisdictional requirement that cannot be waived and "must be supported with the manner and degree of evidence required at the successive

---

[5] The requested medical records are also relevant to the antecedent question of whether heightened scrutiny applies. Plaintiffs' expert Dr. Hawkins said that some patients are not "truly transgender" and that she relies on "a 360 assessment" with a complete biopsychosocial history to determine this. PI Transcript at 19, 22. Thus, whether an individual Plaintiff is a member of an alleged protected class remains open. Plaintiffs say that the Court can simply credit "the minor Plaintiffs' declarations" regarding the persistence of their gender identity, Opp. 13, but untested declarations must be supported by evidence at trial—and even Plaintiffs' experts decline to simply credit such a statement. *See id.* at 15 (conceding that Plaintiffs must "allege"—and thus prove at trial—that their gender identity is likely to persist).

[6] They could, for example, "show[] that medical providers are pushing transitioning medications on minors," Doc. 112-1 at 24, or that the treatments "jeopardize the health and safety of minors," *id.* at 19.

stages of the litigation." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (cleaned up). And Plaintiffs' point is particularly puzzling given that they refused to even disclose the identities of the individual Plaintiffs until months after the preliminary injunction hearing. Nor have they produced a *single* medical record, even though Defendants requested the records last July—*six months ago*.

Plaintiffs also insist that "[a] transgender minor" is somehow injured "by a statute that prohibits them from getting medical treatment because they are transgender," even if they would not otherwise receive the treatment. Opp. 13. But as the case Plaintiffs rely on explains, if a Plaintiff's treatment would not be "subject" to the law "in the first place," the law does not serve as a "barrier" and the Plaintiff would lack standing. *Am. Freedom L. Ctr. v. Obama*, 821 F.3d 44, 51 (D.C. Cir. 2016); Opp. 13. Regardless, Plaintiffs simply assume something they have not proved and that, according to Plaintiffs' experts, the medical records are necessary to assess: whether any individual Plaintiff has gender dysphoria that is likely to persist. *Supra* note 5. Plaintiffs say that the Court can just credit "the minor Plaintiffs' declarations attesting" to those facts. Opp. 13. But even Plaintiffs' experts would not do that, and "[i]f an action proceeds to trial, the facts necessary to establish standing must be supported adequately by the evidence adduced at trial." *Jacobson*, 974 F.3d at 1245 (cleaned up). Plaintiffs' argument would confer automatic standing in every case alleging an equal protection claim—and that is not the law. *See Allen v. Wright*,

8

468 U.S. 737, 755-56 (1984) (explaining that "[i]f [an] abstract stigmatic injury were cognizable," federal courts would be "transform[ed]" "into no more than a vehicle for the vindication of the value interests of concerned bystanders" (cleaned up)). These medical records are highly relevant.

## II. Plaintiffs Lack A Valid Reason To Withhold The Medical Records.

Plaintiffs do not argue that production would be unduly burdensome. Instead, they contend that their records remain privileged because the Minor Plaintiffs have not "put their mental health at issue." Opp. 15. That contention is difficult to comprehend. Their complaint and case are permeated by assertions about the Minor Plaintiffs' mental health and what treatments they allege are necessary *for them*. Mot. 6-14. As shown, cases raising similar health claims—especially as-applied ones—require disclosure of medical records. *Id.* at 26-28. Plaintiffs cite *no* case supporting their position, much less one suggesting that mental health records are relevant only when claims are for "damages for emotional distress." Opp. 15. The reason any privilege protecting such records is waived in those cases applies here: allowing a plaintiff to seek judicial relief "based upon [medical] claims and, at the same time, hide all relevant records behind the psychotherapist-patient privilege, would be manifestly unfair." *J.P. as Next Friend of A.W. v. Elmore Cnty. Bd. of Educ.*, 2021 WL 6926819, at *4 (M.D. Ala. Aug. 26, 2021). Thus, "[c]ourts in this circuit generally recognize [that] a plaintiff can place his mental condition at issue and waive the

9

privilege" by (for instance) "alleging a specific mental or psychiatric injury or disorder." *Id.* at *2 (collecting cases); *e.g.*, *Blake v. City of Montgomery*, 2020 WL 6804456, at *2 (M.D. Ala. Feb. 14, 2020) ("By making this factual allegation in his complaint, Blake has squarely placed his mental condition at issue and waived the privilege."). Because Plaintiffs' case depends on their claimed diagnoses of gender dysphoria (and what treatments are "necessary" to treat those diagnoses), they waived any privilege. Of course, their records would remain subject to any protective orders entered by the Court, *see* Docs. 137 & 138, but they still must be produced.

### III.  Plaintiffs Continue To Withhold Responsive Records.

For six months, since Defendants first asked for the records last July, Plaintiffs have refused to produce a single page of a single medical record. Now, they claim they "have already offered" to disclose all relevant records. Opp. 17. But the reason they oppose this motion, and the purported reason they spent six months doing nothing, was that they do not want to provide information about mental health comorbidities faced by the individual Plaintiffs. Doc. 215-1 at 60 (asserting that it is "irrelevant" whether "Plaintiffs [we]re misdiagnosed"). Their "offer" to provide records limited to evaluation of gender dysphoria leaves out the crucial records necessary to fully understand Plaintiffs' history of gender expression. Plaintiffs insisted that their counsel would redact this relevant history. Mot. 16-18. That insistence led to this motion, which should be granted.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on February 3, 2023, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
*Counsel for Defendants*
