## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| Brianna Boe, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Plaintiff-Intervenor*, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00184-LCB-CWB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General of the | ) | |
| State of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF PLAINTIFF-INTERVENOR'S RECORDS

# INTRODUCTION

Defendants' demands are based on the premise that a lawsuit brought by the Department of Justice and authorized by the Attorney General is somehow brought on behalf of every federal agency within the executive branch. That is not accurate. By intervening in this lawsuit on behalf of the United States, the Attorney General did not open the doors of every federal agency to an unfettered exploration of their records. Such a rule is not supported by the relevant legal precedent and, as a practical matter, would grind operations of the federal government to a halt if uniformly applied in every civil action in which the United States is a party. While courts have sometimes permitted discovery from non-party federal agencies—in situations, for example, where there was a joint investigation or the non-party agency was otherwise heavily involved in the litigation—none of those special circumstances are present here.

Defendants seek an order compelling the United States to: (1) require the Attorney General to respond to discovery requests on behalf of non-party federal agencies that he does not represent and that are not involved in this action, and (2) wade through millions of pages of records, the vast majority of which are pre-decisional drafts and communications, so that it may produce information that is publicly available or has already been produced.

Defendants demand the United States satisfy these unwieldy requests for communications and documents that do not speak to the constitutionality of the Alabama Vulnerable Child Compassion and Protection Act (VCAP). This Court has observed that this case "rises and falls" on certain documents issued by the World Professional Association for Transgender Health. February 8, 2023 Tr. of Motion Hearing at 64. The same *cannot* be said for documents within the Department of Health and Human Services (HHS), as HHS does not establish or maintain medical standards of care for transgender youth experiencing gender dysphoria. And it most certainly cannot be said for the categories of documents Defendants seek here, including "all informed consent forms, all educational materials, all minutes and notes from any meetings with any NIH staff," "all board meeting minutes, all FCOI requests," of three specific studies (*see* Ex. A, Requests 18, 19, & 20) or all "primary data" concerning the "Food and Drug Administration's decision to add a warning about the risk of pseudotumor cerebri (idiopathic intracranial hypertension) to the labeling for gonadotropin-releasing hormone agonists" (*Id.* at Request 23).

The United States has been transparent about its position and cooperated fully throughout discovery. To date, the United States has produced nearly 2,000 pages of documents and remains committed to producing all non-privileged, responsive information and records properly within the scope of discovery.

For the reasons set forth herein, the United States requests that the Court deny Defendants' motion.

## DEFENDANTS' REQUESTS FOR PRODUCTION

Defendants served 45 requests for production on the United States, which seek vast amounts of information from the United States that go far beyond the parameters of this case. Defendants seek, for example, all *communications* and documents in every single one of their 45 requests, even though internal emails, memoranda, and other similar communications are privileged and irrelevant. *See generally* Ex. A. Most of Defendants' requests impose no limitations on timeframe while some seek to reach back six years, far before the passage of VCAP. *See id.* Many of the requests cover a broad subject matter area without limitation—seeking for example, all communications and documents generally on "Transition or the treatment of Minors for Gender Dysphoria or a Related Condition." *See id.* at Request 6. Defendants' requests are not only overbroad but they expect responses from HHS and *any* executive agency or department where responsive information may be found. *See id.* at "Definitions," ¶4.

In its objections and responses to Defendants' requests for production, the United States agreed to produce non-privileged, responsive records within its

possession, custody, and control,[1] but objected to producing documents from other agencies since they are not parties to this litigation. *See generally* Ex. B. After the parties reached agreement on the ESI protocol, the United States produced nearly 2,000 pages of documents.

After reviewing the United States' objections and responses, Defendants raised only one concern in their Motion to Compel: that the United States had not committed to producing documents on behalf of other federal agencies— specifically, HHS, including two of its sub-agencies, the Food and Drug Administration (FDA) and the National Institutes of Health (NIH). During meet and confer discussions, the United States repeatedly and consistently made clear that HHS is not a party to the case and that it does not have control over its records. *See* ECF No. 227-1, Ex. 3. Notwithstanding, in an effort to continue good-faith discussions with Defendants, the United States sought to understand what, specifically, Defendants were seeking from HHS through their broad requests. *See id.* To that end, Defendants confirmed that HHS was being asked to respond to all but two requests for production. *See id.* But when asked to articulate what they were specifically looking for, Defendants only stated that they sought "evidence

---

[1] The United States responded to each of Defendants' requests for production based on information within the possession, custody, and control of the three offices within the Department of Justice acting as counsel and handling this litigation on behalf of the United States. Defendants have not raised any concerns with this definition in meet and confer discussions.

relevant to the safety and efficacy of the treatments that are the subject of the lawsuit" and failed to provide any specifics or further guidance. *See id.* Nonetheless, in the interest of facilitating a resolution and heading off motion practice, the United States reiterated that it remained open to the possibility of attempting to facilitate a production of responsive documents on behalf of HHS if the parties were able to come to an agreement on reasonable boundaries of a narrowed scope of requests. *See id.*

During meet and confer discussions, Defendants agreed to withdraw 10 requests for production.[2] *See id.* However, they continued to insist that HHS and its sub-agencies must respond to the 33 remaining requests. *See id.* Defendants suggested that the United States start by identifying HHS custodians and search terms for seven requests that they wanted to prioritize, which are now included in the group of 14 that are the subject of their motion.[3] *See id.* However, Defendants made clear that this prioritization was only intended to guide the meet and confer discussions and that they were not withdrawing any other requests.[4] *See id.* Because Defendants were unable to narrow their overly broad requests or provide

---

[2] Specifically, Defendants agreed to withdraw Requests 2, 3, 17, 21, 26, 27, 32, 33, 44, and 45.
[3] The seven requests for production that Defendants suggested should be used to identify custodians are Requests 18, 19, 20, 23, 24, 29, and 30.
[4] Defendants only moved to compel on 14 requests for production: the seven requests they asked to prioritize, *see supra* n.3, plus Requests 6, 7, 8, 22, 25, 28, and 36. At no time during meet and confer discussions did Defendants indicate they would accept production of only these requests.

any specificity as to what materials they were actually seeking, the parties were

unable to reach agreement.

## ARGUMENT

I.   <u>**The United States' Discovery Obligations in this Case Do Not Extend to Federal Agencies Beyond the Department of Justice.**</u>

Defendants contend that their requests for production are proper because the

entire federal government is a party to this lawsuit and that the records of every

federal agency are within the Attorney General's possession, custody, or control.

The Court should reject these arguments.

### A.   The Attorney General, and Not the Entire Federal Government, is the Party to the Lawsuit.

The Attorney General did not intervene in this matter on behalf of the entire

federal government. The Attorney General intervened in this lawsuit under the

authority set forth in Section 902 of the Civil Rights Act of 1964, which states:

"Whenever an action has been commenced . . . seeking relief from the denial of

equal protection of the laws under the fourteenth amendment . . . *the Attorney*

*General for or in the name of the United States* may intervene in such action. . . ."

42 U.S.C. § 2000h-2 (emphasis added).[5] For a district court to permit party

---

[5] Defendants contend that Congress conferred the authority granted by 42 U.S.C. § 2000h-2 "because of the federal government's *collective* expertise," ECF No. 227 at 14 (emphasis in original), but they offer no support for this interpretation, which belies the text and legislative history of the statute. The text of the statute clearly distinguishes between the United States and the Attorney General as to which will be acting on behalf of the federal government (the

discovery on other federal agencies that are not parties to this lawsuit, special

circumstances—germane to their involvement—must be present.

Indeed, when the United States files or intervenes in a lawsuit to enforce

federal law, the *Department of Justice* is the plaintiff even though the case is titled

in the name of the United States. *See United States v. City of New York*, No. 07-

CV-2067, 2012 WL 1999860, *11 (E.D.N.Y. Jun. 3, 2012) (in case brought under

Title VII of the Civil Rights Act of 1964, "[i]t is the Department of Justice that, for

all practical effect, is the Plaintiff in this case, not the United States government in

a collective sense."). During the compensatory relief phase of *City of New York*, a

dispute arose over which party should bear the cost for information from the Social

Security Administration (SSA), which was necessary for calculating monetary

damages. *Id.* The City argued that obtaining the information from SSA was akin to

party discovery since both SSA and DOJ were agencies of the federal government.

*Id.* The court concluded, however, that since SSA was not a party to the lawsuit

and the two agencies did not share information freely with one another, that the

---

Attorney General) and which entity (the United States) is entitled to relief. Further, the
legislative history of the statute makes clear that the purpose for the Attorney General's authority
to intervene in equal protection cases was to assign responsibility for enforcing the Civil Rights
Act of 1964. As Senator Hubert Humphrey, a major proponent of the language in Section 902,
noted in committee, "it permits a responsible officer or instrumentality of Government to seek
out the areas of difficult[y], and to propose remedies, solutions or adjustments. I think that if you
really want to get at the problem you have got to have that kind of authority." *Hearings Before
the Subcommittee on Employment and Manpower, Committee on Labor and Public Welfare*, 88th
Cong. 144 (1963), https://congressional.proquest.com/congressional/docview/t29.d30.hrg-1963-
lpw-0024?accountid=14740.

records were third-party materials and the cost should fall on the party with the burden of proof on damages—the City. *Id.* When one federal agency files suit, other federal agencies do not automatically become parties to the litigation simply by virtue of being part of the executive branch. *See SEC v. Biopure Corp.*, No. 05-506, 2006 WL 2789002, *4 (D.D.C. Jan. 20, 2006) ("finding no support for Biopure's proposition that because the SEC [Government] is a party, then other branches of the Government such as the FDA should also be treated as a party") (brackets in original); *cf. Texas v. Holder*, No. 1:12-cv-128, 2012 WL 13070110, *2 (D.D.C. June 8, 2012) (plaintiff fails to meet burden of establishing Attorney General has legal right to obtain documents from federal agencies that are not parties to the litigation).

When courts *have* permitted party discovery of non-party federal agencies, special circumstances have been required, such as a close coordination among certain agencies or a joint investigation involving case-specific issues. Such circumstances are not present here. For instance, in *United States v. UBS Securities LLC*, which Defendants rely upon, the district court found that the Departments of Housing and Urban Development and Treasury were part of the United States for discovery purposes because these agencies had a close working relationship in addressing the financial fraud at issue in the case, including serving on an interagency task force where they shared information and coordinated enforcement

efforts. No. 1:18-cv-6369, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020). As discussed below, this type of coordination between the Department of Justice and HHS was not present here.

The other cases Defendants cite can be similarly distinguished. In *Deane v. Dynasplint Systems*, the district court ordered that the United States included HHS and the Centers for Medicare & Medicaid Services (CMS) for purposes of responding to discovery because the Department of Justice had itself identified that HHS and CMS had responsibility for the program at issue in the complaint. No. 10-2085, 2015 WL 1638022, *5 (E.D. La. Apr. 13, 2015). Likewise, in *Tri-State Hospital Supply Corp. v. United States*, the district court found that the plaintiff was entitled to discovery about resources spent by agencies other than Customs, the defendant, because it related directly to Customs employees' motives for allegedly pursuing the baseless penalty claim. 226 F.R.D. 118, 127-28 (D.D.C. 2005); *see also North Dakota v. United States*, No. 1:19-cv-150, 2021 WL 6278456, *3 (D.N.D. Mar. 24, 2021) (plaintiff permitted discovery where four federal agencies were alleged to have acted in concert leading to civil unrest that required large expenditures of State of North Dakota's resources to contain); *Trane Co. v. Klutznick*, 87 F.R.D. 473, 477 (W.D. Wis. 1980) (ordering the President to provide supplemental interrogatory responses from non-party federal agencies because the President "benefited from information provided by the [Departments]"

9

in setting policies, rules, and regulations under the Act at issue in the case).

Defendants also rely on the oft-quoted holding in *United States v. American Telephone & Telegraph Co.*, 461 F. Supp. 1314 (D.D.C. 1978), but that case also involved special circumstances not present here. *AT&T* was an antitrust case in which the court found that the "theory of the government's case and the relief requested [were] national in scope" and that it was "likely to involve the documents and the activities of a great number of government departments." *Id*. at 1334. But the court made clear that its holding was limited to the specific circumstances of that case. *Id.* ("The Court today holds only that on these peculiar facts, which involve massive and wide-ranging allegations, and in this peculiar action, which involves many departments and their evidence, the United States, having filed the action, cannot claim to be merely the Department of Justice.").

The special circumstances involved in the cases cited by Defendants are not present here. This lawsuit is challenging an Alabama law and is not national in scope. The Attorney General exercised his independent authority to intervene in this action and was not acting on behalf of any other executive agency. The Department of Justice did not conduct a joint investigation with HHS, FDA, or NIH, nor did these agencies refer this matter to the Department of Justice for enforcement. Contrary to Defendants' assertion, the Attorney General did not rely heavily on the scientific expertise of HHS, FDA, and NIH in his decision to

intervene and in the United States' various pleadings. Indeed, the decision to

intervene and the ensuing pleadings have been informed by the overwhelming

evidence in the medical and scientific community that the treatments at issue in

this case are both appropriate and safe for minors suffering from gender dysphoria.

HHS and its sub-agencies are not part of the United States' Complaint in

Intervention (ECF No. 58-3) or Amended Complaint in Intervention (ECF No. 92),

nor are any individuals who work for these agencies listed as potential witnesses

on the United States' Rule 26(a) disclosures, Exs. C and D. The United States

simply cited some of the agencies' publicly available work,[6] to which Defendants

have equal access.

### B.     The Attorney General Does Not Control Other Federal Agencies' Records.

Information available to HHS, FDA, and NIH, and records created or

maintained by these agencies, are not within the "possession, custody, or control"

of the Department of Justice. *See* Fed. R. Civ. 34(a). "Control is defined not only

---

[6] Defendants' claim that the United States is relying on HHS materials or work product is simply false. A non-exhaustive list of sources the United States has reviewed include the clinical practice guidelines of the American Academy of Child and Adolescent Psychiatry, American Psychiatric Association, American Psychological Association, World Health Organization, World Professional Association for Transgender Health; public statements made by representatives of the American Academy of Pediatrics, the American Medical Association, World Professional Association for Transgender Health; and studies found in major publications such as Journal of Pediatrics, Journal of Clinical Endocrinology and Metabolism, Yale School of Medicine, Archives of Sexual Behavior, European Child and Adolescent Psychiatry, and International Journal of Transgender Health. While it would be impossible to assign a value to represent the weight each of these sources has on the overall picture, HHS, FDA, and NIH are but three sources in a very long list.

as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). There is no basis for Defendants' contention that the Attorney General has legal authority to direct an agency to produce documents to him in response to discovery requests in litigation to which those agencies are not parties. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992) ("We need not linger over the dissent's facially impracticable suggestion . . . that one agency of the Government can acquire the power to direct other agencies by simply claiming that power . . . in litigation to which the other agencies are not parties."); *see Texas*, 2012 WL 13070110 at *2 (Department of Justice does not have legal right to obtain documents on demand from other federal agencies).

Because the Attorney General is the only proper plaintiff-intervenor in this action and does not have possession, custody, or control of information that resides with non-party agencies, the Court should deny Defendants' motion.[7]

---

[7] Because HHS is not a part of the United States for purposes of this litigation, Rule 34 does not apply here, but rather Rule 45. A litigant seeking information from a non-party federal agency must subpoena that federal agency and comply with the *Touhy* regulations that govern the agency's participation in litigation to which it is not named a party. *See Moore v. Armour Pharma. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (acknowledging validity of the *Touhy* regulations).

II.   **Defendants Seek Irrelevant Communications and Records that are Disproportional to the Needs of the Case.**

Defendants' requests for production pursue discovery that is neither relevant nor proportional to the needs of this litigation. Discovery, "like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Defendants' requests are plainly beyond the bounds of permissible discovery.

A.   **Defendants Seek Communications and Records That Are Not Relevant to Any Party's Claim or Defense.**

While courts construe relevance broadly, *see, e.g.*, *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998), much of what Defendants request fails even this low bar. The question of whether "discovery material is relevant is ultimately a fact-specific inquiry." *McCreight v. AuburnBank*, No. 3:19-cv-865, 2021 WL 6926816, at *2 (M.D. Ala. Mar. 10, 2021). In this case, the Court has considered questions of relevance and recognized that it is limited: "[W]e're talking about whether this statute is constitutional or not . . . That's really just all we're talking about." Oct. 14, 2022 Tr. of Hearing at 16; *see also* ECF No. 192, at 5 (the "fundamental issue in this case, which is whether Section 4(a)(1)-(3) of [VCAP] is constitutional under the Fourteenth Amendment."). Defendants have seemingly agreed and articulated how they believe cases like this are to proceed:

> We're looking at publicly available information. That's how these inquiries usually proceed, just like they proceeded at the preliminary

> injunction, where we came forward with expert testimony. They cited
> certain studies. We produced certain studies as exhibits. Plaintiffs and
> the Department of Justice did the same thing. That's how we think
> that this case will ultimately be adjudicated when we get to final
> judgment. You will hear from experts. Studies will be put forward.

Oct. 14, 2022 Tr. at 37-38.

But through their discovery requests and this motion, Defendants

contradict themselves. Every request seeks "[a]ll *Communications* and

Documents" (emphasis added). *See generally* Ex. A. With "Communication"

broadly defined as "any transmission, receipt, or exchange of information,

whether orally, electronically, or in writing," *id.* at "Definitions," ¶1,

Defendants' requests extend beyond publicly available information to

include pre-decisional, deliberative, internal agency exchanges.

As noted earlier, the United States' equal protection claim is informed by the

overwhelming evidence in the medical and scientific community that supports

gender-affirming care for transgender youth. Scientific studies and other resources

put forth by the parties in this case speak for themselves, including the conclusions

that those studies or resources provide. HHS's internal communications about

agency grant programs have absolutely no bearing on VCAP's constitutionality,

and neither do internal deliberative exchanges made in advance of the agency

issuing a public document. *Cf.* Oct. 14, 2022 Tr. at 37 (Defendants noting that

cases such as this "usually proceed" through looking at "publicly available

information"). This case simply does not rise or fall on non-party federal agencies'

internal communications and documents.

The compelling public policy reasons for protecting internal federal agency

communications and documents from disclosure underscore their lack of relevance

to this lawsuit.[8] Discussing the deliberative process privilege under the Freedom of

Information Act, the Supreme Court observed that in order to "protect agencies

from being forced to operate in a fishbowl, . . . the deliberative process privilege

shields from disclosure documents reflecting advisory opinions, recommendations

and deliberations comprising part of a process by which governmental decisions

and policies are formulated." *United States Fish & Wildlife Serv. v. Sierra Club,*

*Inc.*, 141 S. Ct. 777, 785 (2021). The privilege "blunts the chilling effect that

accompanies the prospect of disclosure" to encourage candor that in turn improves

agency decision-making. *Id*. The open dialogue between individual HHS staff

should remain in the safety of thoughtful and informed agency decision-making; it

would be misleading and damaging to remove and individually assess these

communications and documents outside the context in which they were made.

Internal agency materials are not on par with official publications or peer-reviewed

---

[8] In *Coker*, the court denied a request to compel production of personnel files where there was a strong public policy reason against disclosure, as the party seeking the information "ma[de] only a general showing of relevance and no showing as to why the material which they seek [was] not available from other sources." 177 F.R.D. at 685. Defendants similarly have not made a sufficient showing to justify compelling production in light of these public policy concerns with releasing internal federal agency documents.

studies, and they certainly have no relation to the constitutionality of VCAP.

HHS's decisions, and the processes to form them, are not at issue in this case.

Beyond seeking internal agency deliberations, Defendants' requests stretch to the outermost boundaries of conceivable relevance, capturing records of minimal, if any, importance to the core issue of VCAP's constitutionality. Defendants demand far-flung categories of documents regarding work by specific researchers such as "all minutes and notes from any meetings with any NIH agency staff," "all board meeting minutes," "all letters of support," "all funding documents," and "all extensions or requests for extensions." *See* Ex. A, Requests 18, 19, 20. In their motion, Defendants make no attempt to explain how these *specific* types of records are at all relevant to VCAP's constitutionality, or bear on the claims or defenses in this case. *See Ham-Let, USA, Inc. v. Guthrie*, No. 3:18-CV-679, 2020 WL 5755764, at *3 (M.D. Ala. Jan. 13, 2020) (the party seeking discovery "has the threshold burden of demonstrating that the discovery requested is relevant."); *see also Coker*, 177 F.R.D. 685-86 (the requesting party had "made no showing of specific relevance" for personnel files and that a "general statement does not translate into an entitlement [to] the broad information").

Request 6, for example, seeks "[a]ll Communications and Documents since January 1, 2017, concerning Transitioning or the treatment of Minors for Gender Dysphoria or a Related Condition." Ex. A, Request 6. By the request's own

wording, Defendants seek any communication or document since 2017 related to "transitioning"—not the *efficacy* or *safety* of gender-affirming care as Defendants maintain—just the very notion of transitioning itself. Not only is this request incredibly expansive, but it is also deeply invasive as it would demand production of personal, private medical information about individual DOJ and HHS employees. *Cf. In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000, 2017 WL 11681948, at *2  (N.D. Ala. Aug. 30, 2017) (noting that, in a case with "gigantic monetary and social stakes" the court was "not persuaded that discovery of every expense transaction, every general ledger entry, every income notation, every payment, and every assumption made in calculating [insurer's] annual financial statement for each of the last ten years is proportionate to the needs of this case"). Similarly, Defendants are seeking from HHS "[a]ll Communications and Documents relating to the *appropriate age* for beginning Transitioning treatment *in Minors*" (emphasis added). Ex. A, Request 28. Even assuming such communications and documents would fall under a liberal definition of relevance, this information would be of little importance to the claims and defenses of this case since VCAP prohibits medical transitioning treatment for *all* transgender minors under 19 in Alabama.

Defendants' requests for internal communications and documents seek information that is not relevant to any party's claims or defenses and their motion

should be denied. *See McConico v. Wal-Mart Stores, Inc.*, No. 7:19-CV-1600, 2020 WL 10223232, at *1 n.1 (N.D. Ala. Dec. 2, 2020) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'").

## B. The Sweeping Discovery Defendants Seek Would Be Unduly Burdensome.

Defendants' requests for production to HHS, including FDA and NIH, fail Rule 26's proportionality requirement. *See* Fed. R. Civ. P. 26(b)(1). Proportionality concerns "include the importance of the requested discovery, the parties' relative access to the information, and 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Taylor v. Farm Credit of N. Fla. ACA*, No. 21-13807, 2022 WL 4493044, at *3 (11th Cir. Sept. 28, 2022). A court must weigh these proportionality factors "in conjunction with the potential relevance of the requested information." *Garber v. Nationwide Mut. Ins. Co.*, No. 5:21-cv-00546, 2022 WL 1420916, at *9 (N.D. Ala. Mar. 24, 2022). The lesser an information's relevance, the more likely its discovery will be found disproportionate. *Cf. id*.

Defendants discount the complications that discovery coordination between the Department of Justice, HHS, FDA, and NIH would involve. According to HHS's Chief Information Officer, responding to even just the subset of requests at issue in the instant motion would pose vast technical and resource obstacles. Ex. E

(Declaration of Dr. Karl Mathias). HHS cannot conduct one single HHS-wide search because every sub-agency (or "Operating Division"), like NIH and FDA, has their own data storage systems run by their own technical personnel who cannot access information beyond their specific Operating Division. *Id.* at ¶¶ 12-19, 24-25. Each Operating Division will need to run searches of their multiple storage systems, and each will need to assemble their own team of attorneys and support staff to screen the documents for information such as trade secrets and confidential commercial information which cannot be disclosed by law. *Id.* at ¶¶ 13-19, 21, 31, 34-37. The act of collecting data will impact the performance capacity of each particular system—for example, running a large collection of emails will interrupt email access for all personnel, and so such searches must be conducted in multiple rounds after hours to minimize disruption to agency functions. *Id.* at ¶ 20. As many of Defendants' requests lack a timeframe, staff will also have to manually search for and process hardcopy documents that predate current data storage systems. *Id.* at ¶ 26. Collecting and processing the information sought will likely take months and result in several terabytes of data, comprising multiple millions of pages of documents. *Id.* at ¶¶ 8-9, 23, 27-30, 39.

The burden of this monumental endeavor massively outweighs any possible need for this information. While "the safety and efficacy of the treatment at issue" as a general concept certainly touches on this case, Defendants provide no hint as

to what specifically they are looking for that is not already publicly available. To the extent that Defendants question HHS's publicly available information and are trying to pierce internal communications, that is not a legitimate reason to force HHS's technology teams to halt their normal operations and spend months of time and resources to collect a mountain of information that no party could feasibly review before the August trial date. It is not enough to rely on a "mere suspicion," without more, that already available materials fail to provide the information Defendants need to present their case. *See In re Blue Cross Blue Shield Antitrust Litig.*, 2017 WL 11681948, at *2 (denying motion to compel underlying financial data used to calculate insurer's annual financial statements, as the "burden and expense of such a massive discovery request outweighs the speculative belief that the requested financial data may reveal a rosier picture of [the insurer] than it lets on in its annual statements.").

Given the nature of Defendants' requests, the burden of production on the United States substantially outweighs any marginal benefit that the overly broad swath of HHS communications and documents would have to resolving the question of VCAP's constitutionality.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Defendants' motion to compel.

Dated: February 13, 2023

Respectfully submitted,

SANDRA J. STEWART
United States Attorney
Middle District of Alabama

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

PRIM F. ESCALONA
United States Attorney
Northern District of Alabama

JOHN POWERS (DC Bar No. 1024831)
Counsel to the Assistant Attorney General
Civil Rights Division

LANE H. WOODKE
Chief, Civil Division
Northern District of Alabama

CHRISTINE STONEMAN
Chief, Federal Coordination and Compliance
Section

JASON R. CHEEK
Deputy Chief, Civil Division
MARGARET L. MARSHALL
Assistant U.S. Attorney
U.S. Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, AL 35203
Tel.: (205) 244-2104
Jason.Cheek@usdoj.gov
Margaret.Marshall@usdoj.gov

COTY MONTAG (DC Bar No. 498357)
Deputy Chief, Federal Coordination and
Compliance Section

RENEE WILLIAMS (CA Bar No. 284855)
KAITLIN TOYAMA (CA Bar No. 318993)
Trial Attorneys
United States Department of Justice
Civil Rights Division
Federal Coordination and Compliance Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 305-2222
Renee.Williams3@usdoj.gov
Kaitlin.Toyama@usdoj.gov

STEPHEN D. WADSWORTH
Assistant United States Attorney
U.S. Attorney's Office
Middle District of Alabama
Post Office Box 197
Montgomery, AL 36101-0197
Tel.: (334) 223-7280
Stephen.Wadsworth@usdoj.gov

s/ Amie S. Murphy
AMIE S. MURPHY (NY Bar No. 4147401)
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 353-1285
Amie.Murphy2@usdoj.gov

21

*Attorneys for Plaintiff-Intervenor United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2023, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to counsel of record.

Respectfully submitted,

s/ *Amie Murphy*
Trial Attorney, Housing and Civil
Enforcement Section
Civil Rights Division
U.S. Department of Justice
