## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| United States of America, | ) |
| | ) |
| *Intervenor Plaintiff*, | ) |
| | ) |
| v. | ) Civil Action No. 2:22-cv-184-LCB |
| | ) |
| Hon. Steve Marshall, in his official | ) |
| capacity as Attorney General, | ) |
| of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL
PRODUCTION OF PLAINTIFF-INTERVENOR'S RECORDS (DOC. 227)**

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................... i

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION ................................................................................. 1

ARGUMENT ........................................................................................ 2

    I.   The Plaintiff-Intervenor Is The United States, Which Has Possession, Custody, Or Control Of HHS Material ........................................................ 2

    II.  Defendants' Requests Seek Targeted And Highly Relevant Material Held By HHS ...................................................................................... 6

        A.   Material Regarding the Safety and Efficacy of the Treatments at Issue Is Highly Relevant ............................................................ 6

        B.   The Targeted Requests Do Not Impose an Undue Burden ............... 9

CONCLUSION ..................................................................................... 12

CERTIFICATE OF SERVICE ............................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Crawford & Co. v. Apfel*,
  235 F.3d 1298 (11th Cir. 2000)..........................................................................4

*Deane v. Dynasplint Sys., Inc.*,
  No. 10-2085, 2015 WL 1638022 (E.D. La. Apr. 13, 2015).............................2

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
  561 U.S. 477 (2010) .........................................................................................4

*SEC v. Biopure Corp.*,
  No. 05-506, 2006 WL 2789002 (D.D.C. Jan. 20, 2006)..................................4

*Texas v. Holder*,
  No. 1:12-cv-128, 2012 WL 13070110 (D.D.C. June 8, 2012) .....................3, 4

*Trane Co. v. Klutznick*,
  87 F.R.D. 473 (W.D. Wis. 1980) ......................................................................5

*United States v. City of New York*,
  No. 07-cv-2067, 2012 WL 19998680 (E.D.N.Y. June 3, 2012)...................3, 4

*United States v. UBS Securities LLC*,
  No. 1:18-cv-6369, 2020 WL 7062789 (E.D.N.Y. Nov. 30, 2020) ...............2, 5

*Zelaya v. United States*,
  781 F.3d 1315 (11th Cir. 2015).........................................................................4

## Statutes

42 U.S.C. § 2000e-5(f)(1) .................................................................................3

42 U.S.C. § 2000h-2...........................................................................................2

52 U.S.C. § 10304(a) .........................................................................................3

ii

**Rules**

Fed. R. Civ. P. 26(b)(1)..................................................................................7

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ..........................................................3

# INTRODUCTION

If the United States did not want to comply with the rules governing party discovery, it should not have intervened as a party. But it *chose* to become a plaintiff in this case. And now, when faced with the basic obligation of producing relevant, non-privileged material in its possession, custody, or control, the United States asks this Court to adopt a rule—exclusively for the federal government—that the United States must comply with its discovery obligations only when "special circumstances are present."

The Court should reject that request. There is no basis in text or precedent for this newly fashioned "special circumstances" test. The discovery rules create no carveout for the federal government. And precedent shows that, when "the United States" is the party, its discovery obligations extend to the executive branch agencies that hold material relevant to the claims in the case.

Here, under the United States' own theory of the case—that the treatments at issue are "medically necessary"—HHS holds relevant material. And Defendants have consistently expressed their commitment to avoid imposing an undue burden by agreeing to conduct searches using keywords and to search only the electronically-stored information of the custodians most likely to hold responsive material. Defendants are entitled to this discovery, and the Court should grant the motion to compel.

**ARGUMENT**

**I.  The Plaintiff-Intervenor Is The United States, Which Has Possession, Custody, Or Control Of HHS Material.**

As even a glance at the case caption demonstrates, the plaintiff-intervenor in this case is the United States. When the federal government intervened, it did so under a statute that permitted intervention by the Attorney General "for or in the name of the United States." 42 U.S.C. § 2000h-2. Therefore, *the United States* is the party, and *the United States* must produce relevant non-privileged material in its possession, custody, or control. As numerous cases have recognized, that duty extends to the "agencies that inform the policies, rules and regulations that the executive branch sets." *United States v. UBS Securities LLC*, No. 1:18-cv-6369, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020). Here, in a case that the United States says turns on scientific and medical evidence, HHS informs the positions and policies of the United States. And this would not be the first case where the discovery obligations of "the United States" extend to HHS. *Deane v. Dynasplint Sys., Inc.*, No. 10-2085, 2015 WL 1638022, at *5 (E.D. La. Apr. 13, 2015).

The United States argues that the *real* party in this lawsuit is the Attorney General, not the United States. But that argument cannot be squared with the text of the provision under which the United States intervened, which permits the Attorney General to intervene only "for or in the name of the United States," 42 U.S.C. § 2000h-2. As the federal government put it, the Attorney General is thus "acting *on*

2

*behalf of*" the United States, Doc. 247 at 7 n.6 (emphasis added),[1] meaning the Attorney General is acting "as the agent or representative of" the United States. *See Behalf*, BLACK'S LAW DICTIONARY (11th ed. 2019). Or more precisely here: The Attorney General is the lawyer; the United States is the client.

The federal government has no answer to this statutory text. Indeed, its own cases underscore the point. The United States cites *United States v. City of New York*, No. 07-cv-2067, 2012 WL 19998680, at *11 (E.D.N.Y. June 3, 2012), for the proposition that, "when the United States files or intervenes in a lawsuit to enforce federal law, the Department of Justice is the plaintiff even though the case is titled in the name of the United States." Doc. 247 at 8. But in that case, the statute did *not* state that the Attorney General was suing "for or in the name of the United States." *See City of New York*, 2012 WL 1999860, at *11 (citing 42 U.S.C. § 2000e-5(f)(1)). Instead, the statute stated only that "the Attorney General . . . may bring a civil action." *See* 42 U.S.C. § 2000e-5(f)(1). The same goes for *Texas v. Holder*, No. 1:12-cv-128, 2012 WL 13070110 (D.D.C. June 8, 2012), where the Attorney General was *the named party* because the State of Texas sued in relation to Section 5 of the Voting Rights Act, which confers authority on "the Attorney General" specifically. *See* 52 U.S.C. § 10304(a). Neither case suggests that the United States is not the party when the Attorney General intervenes "for or in the name of the United States."

---

[1] Citations are to the ECF-stamped page number.

The United States' other cases likewise undermine its argument. Indeed, the captions alone show that some cases are simply irrelevant. In *SEC v. Biopure Corp.*, the party was the Securities and Exchange Commission, not "the United States." *See* No. 05-506, 2006 WL 2789002 (D.D.C. Jan. 20, 2006). And (again), in *Texas v. Holder*, the party was Attorney General Eric Holder. Neither case says anything about the scope of discovery where, as here, the party is "the United States."

Moreover, the United States' two primary cases—*City of New York* and *Biopure*[2]—involved not only specific federal agencies (not the United States itself), but *independent* agencies: the Social Security Administration and the SEC. *See Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.12 (11th Cir. 2000) (SSA is "an independent agency in the executive branch."); *Zelaya v. United States*, 781 F.3d 1315, 1331 (11th Cir. 2015) (The "SEC is an independent agency."). In these cases, then, it was at least arguable that the President would *not* have control over the agencies' materials. In this case, by contrast, HHS is not an independent agency and is thus subject to the President's "general administrative control of those executing the laws." *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 492 (2010) (cleaned up).

---

[2] The United States does not wholeheartedly rely on *Texas v. Holder*, offering it instead merely as a "*Cf.*" citation.

The United States fails to distinguish the line of cases requiring discovery in this context. The best it can offer is a newly fashioned standard that discovery is permitted only when "special circumstances" are present. Doc. 247 at 8. But there is no "special circumstances" provision in the Rules of Civil Procedure that excuses the federal government from complying with the basic demands of party discovery.

Nor does this standard come from the caselaw. For example, the court in *UBS Securities* ordered discovery from the "agencies that inform the policies, rules and regulations that the executive branch sets." *See* 2020 WL 7062789, at *6. And it expressly rejected the United States' argument that discovery extends only to "agencies that engage in joint investigations." *Compare id.*, *with* Doc. 247 at 2.

But even on the United States' own articulation of its self-made "special circumstances" test, Defendants are still entitled to the discovery of HHS material. For example, the United States says that "special circumstances" were present in *Trane Co. v. Klutznick*, 87 F.R.D. 473, 476-77 (W.D. Wis. 1980), "because the President benefited from information provided by the Departments in setting policies, rules, and regulations under the Act at issue in the case," Doc. 247 at 10-11. Yet the same is true here: The United States "benefited from the information" held by HHS in formulating the federal government's position regarding the constitutional claim "at issue in the case." From the very beginning, the United States has *repeatedly* insisted that the treatments at issue in this case are "medically necessary"—which is an

assertion at the heart of the United States' claim. And in support of that assertion, the United States and its experts have *repeatedly* cited HHS documents.[3] *See* Doc. 227 at 15 (collecting examples). Under any test, the United States is a party; the United States has "control" over material held by HHS; and thus HHS material is a proper subject of discovery.

## II.   Defendants' Requests Seek Targeted And Highly Relevant Material Held By HHS.

The United States itself put the medical evidence for these treatments at the center of its claim. Therefore, Defendants' motion to compel the production of HHS documents related to the safety and efficacy of the treatments at issue indisputably seeks relevant material. And Defendants' offer to limit its requests to searches with specified search terms of material held by the custodians most likely to hold responsive material eliminates any potential for an undue burden.

### A.   Material Regarding the Safety and Efficacy of the Treatments at Issue Is Highly Relevant.

Throughout its filings, the United States has asserted that the Act fails heightened scrutiny in part because it prohibits "medically necessary" treatment. *See, e.g.,* Doc. 92 at ¶¶ 4, 6-9, 45, 48, 52-54. In order to defend against that claim, Defendants

---

[3] It is a mystery how the United States can say it "is simply false" that "the United States is relying on HHS materials"—especially on the very same page the United States acknowledges it "cited some of the agencies'" documents. *See* Doc. 247 at 11 & n.6. That the United States has relied on other sources too does not mean it has not relied on HHS.

have requested material held by the United States that concerns the safety and effi-cacy of these treatments to demonstrate that they are not, in fact, "medically neces-sary." That material is thus clearly relevant to a "claim or defense" in this case. Fed. R. Civ. P. 26(b)(1).

The United States' primary argument for why the requested material is irrel-evant is not really a relevance argument at all. Instead, the United States attempts to repackage its premature assertion of the deliberative-process privilege as an argu-ment about relevance. Doc. 247 at 15-17. But if relevant documents are indeed pro-tected by the privilege, then the United States must identify those documents and explain why they are privileged so that Defendants may assess the assertion of priv-ilege. The United States cannot flip the burden of asserting the deliberative-process privilege by recasting it as an issue of relevance. Moreover, as previously explained in Defendants' motion, the United States cannot assert the privilege in blanket fash-ion to conclusively shut down discovery. Doc. 227 at 25-26.

The United States also attempts to compare itself to Eagle Forum and the Southeast Law Institute. Specifically, it quotes from the argument for those two sub-poenas to contend that Defendants are somehow estopped from seeking discovery beyond publicly available documents. Doc. 247 at 14-15. But as Defendants ex-plained when the medical organizations attempted the same maneuver, "the evidence sought here is nothing like the evidence the United States demanded" from Eagle

Forum or SLI because Defendants "are not asking for communications with legislators to unearth imagined legislative motives," which are "irrelevant to what the law is." Doc. 219 at 30. Instead, Defendants seek material concerning the scientific and medical evidence related to these treatments because Plaintiffs and the United States have made this evidence the centerpiece of their case.

In addition, the United States highlights requests that, it says, are irrelevant. For example, it argues that documents "relating to the appropriate age" for beginning transitioning treatments are somehow potentially irrelevant. Doc. 247 at 18. That argument is baffling because the claims brought by Plaintiffs and the United States *turn entirely* on whether these treatments are indeed "appropriate" and, if so, when—as the United States' very next sentences acknowledges. *Id.* (emphasizing that the law protects "minors under 19").

The United States next asserts that documents related to "Transitioning" are irrelevant. Specifically, it says that RFP 6 seeks material related to "the very notion of transitioning itself" and "not the efficacy or safety of gender-affirming care." *Id.* (emphasis omitted). But the United States overlooks that "Transitioning" is *defined* by the requests for production as "the administration of medicines such as Puberty Blockers, Cross-Sex Hormones, and surgical interventions to change the physical appearance of a Minor in a way that is not consistent with the patient's Biological sex." *See* Doc. 227-1 at 10. Therefore, the request does not simply seek material

8

regarding the "notion of transitioning itself" but rather *the administration of medicines and surgical interventions* for transitioning minors. This request too seeks relevant information.

The United States again misunderstands the requests when objecting to RFPs 18, 19, and 20. Doc. 247 at 17. Those requests seek material related to *three specific articles* that were funded by the United States. Merely looking at the titles of those articles reveals their relevance here: "Impact of Early Medical Treatment for Transgender Youth: Protocol for the Longitudinal, Observational Trans Youth Care Study"; "Physiologic Response to Gender-Affirming Hormones Among Transgender Youth"; and "Physiologic Response to Gender-Affirming Hormones Among Transgender Youth." *See* Doc. 227-1 at 14-15. With respect to these three targeted studies, Defendants seek to understand the process behind the studies' development and implementation to ensure that the studies fairly and accurately portray the information that is in the possession, custody, or control of HHS.

The Defendants seek material that goes to the heart of the claims as articulated by Plaintiffs and the United States—that these treatments are safe and effective for minors. The requests seek relevant information.

## B.    The Targeted Requests Do Not Impose an Undue Burden.

From the beginning of the prolonged meet-and-confer process, Defendants have expressed their commitment to avoid imposing an undue burden. To that end,

Defendants have told the United States that they would agree to limit searches to the ESI of the custodians most likely to hold relevant material. In addition, Defendants have told the United States that they would agree to keyword searches of that ESI. *See* Doc. 227-1 at 131, 134. These two limitations—the use of search terms and custodians—would eliminate any potential for an undue burden.

The United States ignores this point entirely in its response. It instead gives the impression that Defendants insist on an "HHS-wide search" for "a mountain of information." Doc. 247 at 20-21.[4] But the United States has steadfastly refused to use search terms to search the ESI of *any* custodian. And once the use of custodians and search terms is contemplated, any concern regarding an undue burden is eliminated. The United States says Defendants' requests would require "HHS's technology teams" to change "their normal operations." Doc. 247 at 21. But that merely describes the burden associated with *any* discovery request. The United States has failed to show the requests would impose an undue burden.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion to compel.

---

[4] This argument is an echo of the United States' assertion that Defendants seek to "open the doors of every federal agency to an unfettered exploration of their records." Doc. 247 at 2. To the contrary, and as Defendants have explained, they seek only documents directly related to the claims in the case held by specific custodians at a single agency.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

A. Barrett Bowdre (ASB-2087-K29V)
Thomas A. Wilson (ASB-1494-D25C)
  *Deputy Solicitors General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

11

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on February 27, 2023, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
*Counsel for Defendants*