# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, | ) |
| | ) |
|    *Plaintiffs*, | ) |
| | ) |
| and | ) |
| | ) |
| United States of America, | ) |
| | ) |
|    *Plaintiff-Intervenor*, | ) |
| | ) |
| v. | )   No. 2:22-cv-00184-LCB-CWB |
| | ) |
| Hon. Steve Marshall, in his official capacity as Attorney General of the State of Alabama, *et al.*, | ) |
| | ) |
|    *Defendants*. | ) |

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES

## INTRODUCTION

In their latest motion, Defendants continue to assert that the Department of Health and Human Services (HHS) and its sub-agencies are subject to party discovery in this case. They are not. The Attorney General's intervention in a lawsuit does not submit every federal executive agency to discovery in that case. As more fully discussed in the United States' prior briefing on this issue, *see* ECF No. 247, at 18-20,[1] such a rule would not be workable and would have disastrous consequences, given the United States' unique position as a litigant.

The information Defendants seek from HHS is irrelevant to this case. Information concerning how HHS tracks certain topics or funds studies has no bearing on the constitutionality of Alabama's Vulnerable Child Compassion and Protection Act (VCAP). And, even if some piece of information might have marginal relevance, it plainly fails the proportionality requirement of Federal Rule of Civil Procedure (Rule) 26(b)(1).

Defendants' motion elides the fact that the United States has already agreed to produce approximately 2.3 million pages of HHS documents in the interest of limiting the issues before this Court.[2] The United States remains committed to a

---

[1] Page numbers for ECF documents refer to the page number of the document itself, not the ECF stamp.
[2] The United States is producing these documents without waiving its objections, including that it is not required to produce documents on behalf of HHS. Ex. C.

1

cooperative discovery process and to continuing to work with Defendants to resolve discovery disputes informally where possible while complying with the federal rules governing party discovery.

For the reasons stated above, the United States requests that this Court deny the instant motion to compel.

## DEFENDANTS' INTERROGATORIES

Defendants served the United States with 18 interrogatories on December 20, 2022. The interrogatories use the terms "You" and "Your," defined as referring to "the United States of America, any executive agency or department in which documents responsive to these Requests may be found, and the officers, agents, employees, present or former counsel, and all other persons acting on behalf of those agencies or departments." Ex. A, at "Definitions," ¶ 2.

On January 19, 2023, the United States timely served its responses and objections to Defendants' interrogatories. Ex. B. Defendants did not raise any issues with the United States' interrogatory responses until nearly a month later, on February 14, 2023. Even then, Defendants did not attempt to meet and confer,[3] but rather informed the United States by email that Defendants would be moving to

---

[3] *Cf. Guidelines to Civil Discovery Practice in the Middle District of Alabama* (Feb. 3, 2015), at § I(I) ("Before a motion to compel may be filed, the parties are required to confer about the matters concerning the dispute either by telephone or at a face to face meeting (i.e. - in person, by Skype, video conference or the like) where a meaningful exchange can be had."). A failure to meet and confer provides an alternative ground to deny a motion to compel. *Ross v. Sejin Am., Inc.*, No. 3:18-cv-537, 3:18-cv-734, 2021 WL 6973863, at *2 (M.D. Ala. May 26, 2021).

2

compel more complete responses on Interrogatory Nos. 11 through 18. ECF No. 250-1, Ex. 3. Prior to that communication, Defendants had not indicated which federal agencies they were seeking further responses from, or that Defendants even took issue with any of the interrogatory responses provided. *Id.*[4]

In parallel, on February 15, 2023, without waiving prior objections such as relevance, the United States offered to produce the administrative record for a 2020 HHS rulemaking in response to Defendants' Request for Production No. 12.[5] Ex. C, at 1-3. The United States did so in the interests of limiting the issues before the Court and because the very specific circumstances of those documents significantly limited the burdensomeness of production.[6] The United States is currently finalizing that production of approximately 2.3 million pages, and anticipates producing these documents during the week of March 13, 2023, barring any unanticipated delays with the vendor assisting with production.

---

[4] On February 14, 2023, the United States asked Defendants via email:

> [. . .] Can you be more specific about the basis for your motion to compel regarding the United States' responses to the interrogatories? This is the first time you are raising any concern with them. Are Defendants planning to move to compel responses from HHS, FDA, and NIH, or is there more to it than that? [. . . ]

ECF No. 250-1, Ex. 3.

[5] Request for Production No. 12 was not included in the Defendants' prior motion to compel filed against the United States.

[6] HHS had produced the voluminous administrative record in separate litigation, and therefore, the files had already had been previously assembled by HHS staff.

## ARGUMENT

**I.     <u>The United States' Discovery Obligations in this Case Do Not Extend to Federal Agencies Beyond the Department of Justice.</u>**

Defendants' argument that the United States' interrogatory responses are deficient because they do not include responses from HHS and its sub-agencies threatens to extend the reach of discovery far beyond the scope of Rule 33(b)(1). Defendants fail to consider the United States' unique position as a litigant. The federal government includes many federal agencies that impact a variety of aspects of our society. It is therefore facially unreasonable to expect that parties can compel discovery from all federal agencies in every litigation where the United States is a named party.

Interrogatories must be answered "by the *party* to whom they are directed" or "if that party is . . . a governmental agency, by any officer or agent, who must furnish the information available to the *party*." Fed. R. Civ. P. 33(b)(1) (emphasis added). In this case challenging the constitutionality of a state statute under the Equal Protection Clause, the United States is not required to respond on behalf of HHS, the Food and Drug Administration (FDA), the National Institutes of Health (NIH), or any other HHS sub-agencies because they are not parties to this lawsuit.

As explained in its prior brief addressing this issue,[7] ECF No. 247, when the United States files or intervenes in a lawsuit to enforce federal law, the Department of Justice (Department) is the plaintiff for purposes of discovery even though the case is titled in the name of the United States. *See United States v. City of New York*, No. 07-cv-2067, 2012 WL 1999860, at *11 (E.D.N.Y. June 3, 2012) (Title VII case holding "[i]t is the Department of Justice that, for all practical effect, is the Plaintiff in this case, not the United States government in a collective sense."). In an attempt to contrast *City of New York*, Defendants draw a false distinction between the Attorney General's authority to initiate suit pursuant to 42 U.S.C. § 2000e-5 to enforce Title VII against state entities (upon referral from the Equal Employment Opportunity Commission) and his authority to intervene under 42 U.S.C. § 2000h-2. While the language of §§ 2000e-5 and 2000h-2 may differ slightly, they are the same in the most important respect for purposes of the instant motion: both statutes authorize the Attorney General to bring suit *in the name of the United States*. The Attorney General's authority is no different here than it was in *City of New York*, where the court made clear that the Department was the

---

[7] For the sake of brevity, the United States refers the Court to Section I of its Response in Opposition to Defendants' Motion to Compel Production of Plaintiff-Intervenor's Records for a complete explanation of its position that it does not represent HHS and its sub-agencies for purposes of discovery in this litigation. ECF No. 247. The Attorney General does not have custody or control over the documents or information of every federal agency, nor are there special circumstances—such as a joint investigation or close collaboration in litigation—which would warrant permitting discovery on a non-party federal agency.

5

"party" for purposes of discovery.

Nor is there any obligation on the Department under Rule 33(b)(1) to respond on behalf of a *non*-party. The only time courts permit party discovery on non-party federal agencies is when there are special circumstances such as close coordination among the agencies or a joint investigation. *See, e.g.*, *United States v. UBS Secs. LLC*, No. 1:18-cv-6369, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020) (finding the Department of Housing and Urban Development and the Department of Treasury part of United States for discovery because the two agencies worked closely with the Department to address financial fraud at issue in the case, including serving on interagency task force specific to the issues in the case); *see also* ECF No. 247, at 8-11 (discussing additional cases). The Department has not relied on the scientific expertise of HHS, FDA, or NIH any more than any other source within the medical and scientific community, nor is it relying on internal, non-public information behind published studies or data of these three agencies to prove its Equal Protection claim.[8] The special circumstances required for the Court to order the Department to respond on behalf of these agencies in discovery simply do not exist here.

---

[8] The Department has disclosed and produced to Defendants numerous published studies which it may use to support its Equal Protection Claim. *See* ECF No. 247-4 (First Supplemental Initial Disclosures). It has also disclosed its experts to Defendants under Rule 26(a)(2).

6

The United States' consistent position throughout discovery—including Defendants' previous requests for production—has been that the information that Defendants seek is not available to the Department or otherwise known by any entity under the Department's control. Such information thus may not be properly obtained through Rules 33 and 34. *Ecometry Corp. v. Profit Ctr. Software, Inc.*, No. 06-80083, 2007 WL 9706934, at *6-7 (S.D. Fla. Mar. 15, 2007) (motion to compel denied where the moving party "made no showing that Plaintiff has failed to produce information within its control" since "in answering interrogatories, a party is only required to provide information that is available to it and can be produced without undue labor and expense").

Moreover, "[a] responding party is generally not required to perform extensive research to acquire requested information." *See Lincoln Rock, LLC v. Tampa*, No. 8:15-cv-1374, 2016 WL 6138653, at *14 (M.D. Fla. Oct. 21, 2016) (citing *L.H. v. Schwarzenegger*, No. S-06-2042, 2007 WL 2781132, at *2 (E.D. Cal. Sept. 21, 2007). The information sought by Defendants' interrogatories is neither readily available to the Department nor within its control; thus, it would require extensive, time-consuming efforts for the Department to obtain it from the other agencies. This is particularly true given that the Department and HHS are not acting in concert for purposes of this litigation. Such a demand from Defendants

7

would put the United States in an impossible position disproportionate to the needs of this case.

## II. Defendants Again Seek Information That Is Outside the Scope of Rule 26(b)(1).

Defendants, as the party seeking discovery, have the burden of proving that the United States' interrogatory responses are inadequate. *McNeal v. Macon Cnty. Bd. of Educ.*, No. 3:19-cv-00122, 2021 WL 6883429, at *2 (M.D. Ala. May 26, 2021). They have failed to do so here. Similar to their requests for production,[9] Defendants seek information through their interrogatories that is simply not relevant to any party's claims or defenses in this case. *See* Fed. R. Civ. P. 33(a)(2) (cross-referencing Rule 26(b)). And even if this Court should disagree and find that some of the materials Defendants seek are relevant, any relevance is so marginal that it fails the Rule 26 proportionality requirement.

---

[9] To avoid repetition to the extent possible, the United States also refers to Section II of its Response in Opposition to Defendants' Motion to Compel Production of Plaintiff-Intervenor's Records, ECF No. 247 at 13-20. Defendants' assertion, ECF No. 252, at 7, that the United States' primary relevance argument for the prior motion was actually a premature assertion of privilege misunderstands the argument. Internal exchanges are generally shielded from disclosure because such exchanges are not agency findings or conclusions but rather reflect the open discourse within agencies, which is the same reason why public policy requires they be protected from disclosure. The circumstances surrounding internal exchanges cut against assigning them any relevance, as this litigation centers on the views of the scientific and medical communities regarding gender-affirming care, not on the communications of individual federal agency employees.

### A. Defendants' Interrogatories Seek Irrelevant Information.

HHS's internal decision-making and activities have no bearing on whether VCAP is constitutional. Defendants fail to demonstrate any particularized need or likely relevance for the internal information they are seeking from HHS, but instead make the conclusory assertion that "it takes little imagination" to see why their interrogatories "are all highly relevant to the claims and defenses here." ECF No. 250, at 8-9 (citing brief where Defendants assert that the United States has discovery relevant to the safety and efficacy of gender-affirming care).[10] *See Taylor v. Farm Credit of N. Fla. ACA*, No. 21-13807, 2022 WL 4493044, at *4 (11th Cir. Sept. 28, 2022) (noting that the mere "possibility that loose and sweeping discovery might turn up something" does not show "particularized need and likely relevance" justifying the discovery request's sweeping scope) (quotations and citation omitted). Defendants' interrogatories, like their requests for production, are based upon Defendants' incorrect premise that because the United States has discussed the established safety and efficacy of gender-affirming care, or cited publicly available HHS resources, the United States must therefore

---

[10] Further confusing their assertion is Defendants' citation to their opposition to the Motion to Quash, which focuses on a slightly different rationale—that the United States has stated that gender-affirming medical care is "'widely recognized within the medical community.'" ECF No. 219, at 21. Again, Defendants make no connection specific to the interrogatories between the topic of medical consensus and the internal information from HHS that they seek. Like the topic of safety and efficacy of gender-affirming medical care, the United States has never supported its position on medical consensus by referring to internal information held by HHS.

9

be relying in this litigation upon HHS information that is exclusively available to the federal government. This is not so. The United States has been clear throughout this litigation about the scientific and medical evidence that supports its claim, which does not include non-public information or materials from HHS.[11] HHS's externally facing documents and publications speak for themselves; the tracking or reviewing activities of individual HHS employees that Defendants request shed no further light on issues relevant to the case. And, in any event, Defendants are not prejudiced if denied access to internal HHS information to which the Department does not have access.

### 1. Defendants Seek Irrelevant Information About How HHS and Its Sub-Agencies Monitor, Track, or Review Information (Interrogatories 11, 12, 13, 15).

Defendants want HHS to identify how it monitors, tracks, or reviews (or has monitored, tracked, or reviewed) certain information regarding gender-affirming care. *See* Ex. A, Interrog. Nos. 11, 12, 13, 15.[12] Any HHS internal monitoring, tracking, or reviewing of information related to gender-affirming care would simply have no bearing on the overwhelming scientific and medical literature that

---

[11] Defendants assert that the United States offered "blanket, unspecific relevancy objections" to the interrogatories. ECF No. 250, at 8. However, when the United States submitted its objections and responses, Defendants had not indicated the interrogatories were narrowed to HHS and its sub-agencies. *See generally* Ex. A.

[12] In its responses to Interrogatories Nos. 11 and 12, the United States additionally noted that it was not challenging VCAP's provisions related to surgical intervention. *See* Ex. B, at 12-13. For Interrogatory No. 11, the United States also objected on the grounds that the term "monitor" was vague, but Defendants did not address this vagueness objection in their motion.

10

supports the safety and efficacy of such care, and is therefore not relevant. Defendants would not be prejudiced, ECF No. 227, at 18, if they were limited to HHS's externally facing documents and publications, since what is relevant in this case is the vast body of scientific and medical support for gender-affirming care, not whether individual HHS employees monitor, track, or review information about gender-affirming care. The United States is relying upon expert testimony, along with the scientific literature that supports the provision of gender-affirming care, to prove its Equal Protection Claim—in the same way a private litigant would. The information Defendants seek thus is not relevant and not necessary for Defendants to evaluate and critique the evidence that the United States is putting forward.

### 2. Defendants Seek Irrelevant Information About HHS Activities (Interrogatories 15, 16, 17, 18).

Defendants' interrogatories also seek irrelevant information about HHS activities. For example, Defendants want HHS to identify any studies it has funded or conducted (or helped to fund or conduct) regarding gender-affirming care in minors. Ex. A, Interrog. No. 16. Whether HHS has funded studies related to gender-affirming care has absolutely no bearing on the question of VCAP's constitutionality. The fact that HHS—as opposed to another entity—has funded or conducted a given study regarding gender-affirming care in itself says nothing about the safety or efficacy of gender-affirming care. As noted previously,

published studies and works related to gender-affirming care speak for themselves. *See generally* ECF No. 247, at 14-15. Such works can be evaluated and critiqued on the basis of publicly available information. For published journal articles, authors often disclose their sources of funding and other information.[13] These works generally include a study's methodology, findings, and any limitations—all of which are publicly available to be examined by the parties' experts.[14] *Cf*. Fed. R. Civ. P. 26(b)(1) (considering the "parties' relative access to relevant information"). Similarly, identifying "any ways" in which HHS has provided "funding for Transitioning Minors," *see* Ex. A, Interrog. No. 18, has no relevance to the central issue in this case, given that the safety and efficacy of gender-affirming care is not reliant upon whether HHS, or any other entity, has provided funding for "Transitioning Minors." It is not the source of the funding for transitioning treatments, but again, the vast body of scientific and medical literature that supports the provision of gender-affirming care. Defendants have also offered no connection or explanation of how the extent to which HHS has worked with

---

[13] *See, e.g.*, Ex. D, at 1 (including funding and conflict of interest disclosures); Plaintiffs' PI Ex. 43 (Diana M. Tordoff, et al., *Mental Health Outcomes in Transgender and Nonbinary Youths Receiving Gender-Affirming Care*, 5(2) JAMA Netw. Open. 1-13 (2022)), at 11 (detailing author affiliations, conflict of interest disclosures, funding/support, and role of the funder/sponsor).

[14] Defendants have also attempted to justify several requests for production by asserting that "Defendants seek to understand the process behind the studies' development and implementation to ensure that the studies fairly and accurately portray the information that is in the possession, custody, or control of HHS." ECF No. 252, at 9. However, published studies include details such as what population is being studied, the methodology, and the results, which can be evaluated and critiqued. Whether HHS funded a study is irrelevant to those details.

outside organizations regarding gender-affirming care for minors, *see id.* at Interrog. 17, would at all be relevant to VCAP's constitutionality. Finally, whether HHS is using the World Professional Association for Transgender Health (WPATH) Standards of Care Version 8 (SOC-8) to update HHS's own agency guidance documents or practices, *see id.* at Interrog. 15, has no bearing on VCAP's constitutionality, as it is Defendants' actions with respect to VCAP that are at issue in this case, *not* HHS's work or activities.

### B. Defendants' Interrogatories Fail the Rule 26 Proportionality Requirement.

In addition, the information sought by Defendants is so attenuated to the claims and defenses of this case that Defendants' interrogatories necessarily fail the proportionality requirement of Rule 26. *See* Fed. R. Civ. P. 26(b)(1) (Parties can obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."); *see also Williams v. Am. Int'l Grp., Inc.,* No. 15-cv-554, 2016 WL 3156066, at *1-2 (M.D. Ala. June 3, 2016) (concluding that the court's consideration did not end at "simple relevance" and that "[p]roportionality considerations weigh strongly against

disclosure" when compared with "limited relevance" in light of privacy concerns in that case).[15]

Among the Rule 26 proportionality considerations are the "importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Both of these considerations weigh against Defendants. As detailed in Section II(A), *supra*, the United States does not rely upon internal HHS information to assert its claim. Furthermore, HHS has informed the Department that, if, in the "likely" scenario that "multiple, distinct Operating Divisions house information that is potentially responsive to a particular Interrogatory . . . each particular Operating Division will have to search for, locate, collect, review, and produce the responsive information." Ex. E, ¶ 13 (Dec. of Lisette Taylor).[16] It is HHS's understanding that "that Interrogatories 11-18 seek a plethora of information from multiple Operating Divisions," and that interrogatories "of this nature are likely to result in a wide range of potentially responsive data and information that would need to be collected individually from each of the HHS's various, diverse Operating

---

[15] Like Defendants' requests for HHS's internal documents, there may be public policy considerations against disclosure of certain information sought by the interrogatories, much like in the case of privacy concerns. *See* ECF No. 247, at 15-16.

[16] HHS has 12 operating divisions, "including nine agencies in the U.S. Public Health Service and three human services agencies." *Health and Human Services Agencies and Offices*, https://www.hhs.gov/about/agencies/hhs-agencies-and-offices/index.html. NIH and FDA are examples of Operating Divisions.

Divisions." Ex. E, ¶ 7. Given the negligible or non-existent relevance of the sought-after information, compelling responses from HHS's Operating Divisions would be disproportionate to the needs of the case. *See id.*, ¶ 13 (noting that there is "no unified HHS entity that would be able to conduct searches across the Agency but rather multiple teams of personnel would have to individually respond to each Interrogatory").

Defendants also assert that any objections regarding burden are non-specific and conclusory. This argument also fails. The United States concedes its initial response was not specific to HHS but that was for good reason: Defendants had not at that point limited the interrogatories' scope to HHS. Nor had Defendants taken issue with the United States' interrogatory responses prior to stating their intention to move to compel. The United States thus provides that specificity here. HHS has informed the Department that "*each* Interrogatory served on 'HHS' would actually constitute multiple Interrogatories served on each particular Operating Division in that each Operating Division that might have responsive information would have to search, individually, for anything responsive *to a given Interrogatory*." *Id.*, ¶ 14 (emphasis added).[17] Here, the burden of responding to these interrogatories

---

[17] As each interrogatory in practice constitutes multiple interrogatories served on multiple HHS Operating Divisions, Defendants' requests exceed the 40 interrogatories agreed to by the parties. *See* ECF No. 134, at 5. The attached HHS declaration lists "FDA, NIH, the Centers for Medicare & Medicaid Services ("CMS"), the Centers for Disease Control and Prevention ("CDC"), the Indian Health Service ("IHS"), [and] the Health Resources and Services Administration

outweighs any possible nominal relevance the information sought would have, and thus Defendants' requests are disproportionate to the needs of this case.

The Court should therefore reject Defendants' continued attempts to obtain this information from HHS.

### III. Defendants' Interrogatory No. 14 Remains Vague and Unclear.

Interrogatory 14 is vague and unclear for at least two reasons. First, the interrogatory is vague because Defendants fail to define the term "disinformation." Defendants point to a letter written to the Attorney General but that letter also does not define the term "disinformation." The United States is therefore left to guess as to what Defendants and the outside organizations that wrote the letter meant by "disinformation." Furthermore, Defendants' reference in their motion—for the first time—to a speech by HHS official Admiral Rachel Levine is outside the scope of the United States' response because the Department of Justice is not representing HHS in this litigation.[18] *See* Section I, *supra*.

Second, the information sought by Defendants through this interrogatory remains unclear. Defendants assert in their motion that correspondence received by

---

("HRSA")," noting that nearly all of these offices would be expected to have potentially responsive information. Ex. E, ¶ 11. Even just counting these six HHS Operating Divisions multiplied by only the eight interrogatories upon which Defendants are moving to compel is already 48 interrogatories.

[18] Defendants also fail to explain how what Defendants characterize as "Federal instructions to state medical boards that they should regulate what can be said about the treatments at issue as directed by the federal government" are, as they assert, "relevant to multiple issues" in this litigation. ECF No. 250, at 10.

16

the Attorney General from outside organizations and individuals is responsive to Interrogatory No. 14. *See* ECF No. 250, at 10-11 (referencing correspondence received by the Attorney General and concluding that "there is obviously responsive information"). However, the interrogatory asks for identification of "any ways" taken to "identify, define, monitor, track, and/or discourage" the "disinformation." It is unclear how the Department's receipt of correspondence from third parties bears on an interrogatory asking for any efforts *taken by the Department* to "identify, define, monitor, track, and/or discourage" disinformation.

Taken together, Defendants still fail to clearly articulate the information they seek for Interrogatory No. 14, and the Court should therefore not compel any further response from the United States.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Defendants' second motion to compel.

Dated: March 13, 2023                      Respectfully submitted,

SANDRA J. STEWART                          KRISTEN CLARKE
United States Attorney                     Assistant Attorney General
Middle District of Alabama                 Civil Rights Division

PRIM F. ESCALONA                           JOHN POWERS (DC Bar No. 1024831)
United States Attorney                     Counsel to the Assistant Attorney General
Northern District of Alabama               Civil Rights Division

| | |
|---|---|
| LANE H. WOODKE<br>Chief, Civil Division<br>Northern District of Alabama | CHRISTINE STONEMAN<br>Chief, Federal Coordination and Compliance Section |
| JASON R. CHEEK<br>Deputy Chief, Civil Division<br>MARGARET L. MARSHALL<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>Northern District of Alabama<br>1801 Fourth Avenue North<br>Birmingham, AL 35203<br>Tel.: (205) 244-2104<br>Jason.Cheek@usdoj.gov<br>Margaret.Marshall@usdoj.gov | COTY MONTAG (DC Bar No. 498357)<br>Deputy Chief, Federal Coordination and Compliance Section<br><br> /s/ *Renee Williams*<br>RENEE WILLIAMS (CA Bar No. 284855)<br>KAITLIN TOYAMA (CA Bar No. 318993)<br>Trial Attorneys<br>United States Department of Justice<br>Civil Rights Division<br>Federal Coordination and Compliance Section<br>950 Pennsylvania Avenue NW – 4CON<br>Washington, DC 20530<br>Tel.: (202) 305-2222<br>Renee.Williams3@usdoj.gov<br>Kaitlin.Toyama@usdoj.gov |
| STEPHEN D. WADSWORTH<br>Assistant United States Attorney<br>U.S. Attorney's Office<br>Middle District of Alabama<br>Post Office Box 197<br>Montgomery, AL 36101-0197<br>Tel.: (334) 223-7280<br>Stephen.Wadsworth@usdoj.gov | AMIE S. MURPHY (NY Bar No. 4147401)<br>Trial Attorney<br>United States Department of Justice<br>Civil Rights Division<br>Housing and Civil Enforcement Section<br>950 Pennsylvania Avenue NW – 4CON<br>Washington, DC 20530<br>Tel.: (202) 353-1285<br>Amie.Murphy2@usdoj.gov<br><br>*Attorneys for Plaintiff-Intervenor United States of America* |

CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Respectfully submitted,

/s/ *Renee Williams*
Renee Williams
Trial Attorney
U.S. Department of Justice
