# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| United States of America, | ) |
| | ) |
| *Intervenor Plaintiff*, | ) |
| | ) |
| v. | ) Civil Action No. 2:22-cv-184-LCB |
| | ) |
| Hon. Steve Marshall, in his official | ) |
| capacity as Attorney General, | ) |
| of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL
PLAINTIFF-INTERVENOR TO ANSWER INTERROGATORIES**

## TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................. ii

Introduction ..........................................................................................................1

Argument ..............................................................................................................1

    I.   Defendants Seek Information Held By The United States ..........................1

    II.  HHS Information About The Treatments Is Highly Relevant ....................5

    III. HHS's Generic Burdensomeness Objection Is Baseless ............................9

    IV. Interrogatory No. 14 Is Not Vague ...............................................................10

Conclusion ..........................................................................................................10

Certificate of Service ..........................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Essex Builders Grp., Inc. v. Amerisure Ins. Co.*,
   230 F.R.D. 682 (M.D. Fla. 2005) .......................................................................4

*Lincoln Rock, LLC v. City of Tampa*,
   No. 8:15-CV-1374, 2016 WL 6138653 (M.D. Fla. Oct. 21, 2016)....................10

*McNeal v. Macon Cnty. Bd. of Educ.*,
   No. 3:19-cv-00122, 2021 WL 6883429 (M.D. Ala. May 26, 2021) ...................3

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978).............................................................................................5

*Panola Land Buyers Ass'n v. Shuman*,
   762 F.2d 1550 (11th Cir. 1985) ..........................................................................9

*Rosen v. Provident Life & Accident Ins. Co.*,
   308 F.R.D. 670 (N.D. Ala. 2015) .......................................................................5

*United States v. City of New York*,
   No. 07-cv-2067, 2012 WL 1999860 (E.D.N.Y. June 3, 2012) ..........................2

*United States v. Nixon*,
   418 U.S. 683 (1974).............................................................................................6

**Rules**

Fed. R. Civ. P. 26(a)(3).............................................................................................5

Fed. R. Civ. P. 26(b) .................................................................................................7

Fed. R. Civ. P. 33(b)(1).............................................................................................4

Fed. R. Civ. P. 37(a)(4).............................................................................................5

**Constitutional Provisions**

U.S. Const. art. II, § 1 ...................................................................................................4

**Other Authorities**

8B Wright & Miller, Federal Practice & Procedure § 2171 (3d ed.) .........................4

Chen et al., *Psychosocial Characteristics of Transgender Youth Seeking Gender -Affirming Medical Treatment*, at 3, https://tinyurl.com/4txyvtpb (author manuscript 2020) .......................................................................................7

Chen et al., *Psychosocial Functioning in Transgender Youth after 2 Years of Hormones*, 388 N. Eng. J. of Med. 240, 240 (2023) ............................................8

Amanda Seitz, *Disinformation board to tackle Russia, migrant smugglers*, Associated Press, https://tinyurl.com/22seyywy (Apr. 28, 2022) ......................10

Jesse Singal, *On Scientific Transparency, Researcher Degrees Of Freedom, And That NEJM Study On Youth Gender Medicine*, https://tinyurl.com/3wfsxz4s (Jan. 31, 2023)..........................................................................................................8

# INTRODUCTION

Doggedly sticking to the fiction that the United States Department of Health and Human Services "is not a part of the United States," Doc. 250-1 at 43, the United States seems to think that it can avoid disclosing highly relevant information from its agents because it will not use that information at trial. That is not how relevancy works. That the United States might consider the information unhelpful to its case makes it *more* relevant. Given that HHS is deeply involved in most issues here—funding studies, monitoring medical information, collaborating with outside groups, and funding treatments—its information is overwhelmingly relevant. The United States' generic burdensomeness objections come nowhere close to showing that disclosing this information would be disproportionate to the case. And again, the United States cannot come up with any authority giving it a "unique" exemption from discovery rules. HHS is part of the United States. The Court should compel its answers.

# ARGUMENT

## I. Defendants Seek Information Held By The United States.

The United States' response to the basic point that the Department of Health and Human Services is part of the federal government continues to be that it is "unique" and thus does not have to follow the discovery rules. Doc. 254 at 2, 5. But the United States still cannot point to a case adopting the rule it proposes: that "special circumstances [are] required for the Court to order the [United States] to respond

1

on behalf of [HHS]." Doc. 254 at 7. Defendants have already addressed that argument at length. *See* Doc. 227 at 19-25; Doc. 250 at 9-12; Doc. 252 at 6-10.

The United States again fixates on one sentence from one unpublished order that was not even about discovery, *United States v. City of New York*, No. 07-cv-2067, 2012 WL 1999860 (E.D.N.Y. June 3, 2012). As Defendants have explained, the statute there "did not state that the Attorney General was suing 'for or in the name of the United States.'" Doc. 252 at 7; *see* Doc. 250 at 10-11. The United States concedes the point—"the language…may differ slightly"—but insists that "both statutes authorize the Attorney General to bring suit *in the name of the United States*." Doc. 254 at 6. But only the statute invoked by the United States *in this case* authorizes that; the statute in *City of New York* did not. That is the point.

*City of New York* is irrelevant anyway: the quoted discussion was about which party "should bear the burden of paying for obtaining earnings information from the Social Security Administration," not a discovery dispute. 2012 WL 1999860, at *11. In holding that the City should pay—and could obtain the records upon payments— the court emphasized that "the SSA requires the Department of Justice to obtain the consent of claimants and pay a fee." *Id.*; *see* Doc. 252 at 8 (explaining that SSA is an independent agency). The United States makes no similar suggestion about HHS. Indeed, HHS provides a declaration here and promises to turn over 2.3 million pages

2

(of a compiled administrative record for a repealed rulemaking, in response to an unrelated document request not before the Court). Doc. 254 at 2, 4, 15.

Given that HHS's information is available to the United States, the United States has an obligation to answer the interrogatories with that information. *See McNeal v. Macon Cnty. Bd. of Educ.*, No. 3:19-cv-00122, 2021 WL 6883429, at *5, 9 (M.D. Ala. May 26, 2021) ("A party cannot limit its answers to matters within its own knowledge and ignore information immediately available to it or under its control," including information "known by the party's agents." (cleaned up)).[1]

The United States says that it is "facially unreasonable to expect that parties can compel discovery from all federal agencies in every litigation." Doc. 254 at 5. But Defendants are seeking discovery from *one* agency: HHS. And if the United States did not wish to conduct discovery, it need not have intervened.

The United States also says "that it does not represent HHS and its sub-agencies for purposes of discovery in this litigation." Doc. 254 at 6 n.7. Put aside that the United States manages to provide "2.3 million pages" from HHS and even a declaration from an HHS employee. Doc. 254, at 2, 15-16. The question is not whether the attorneys who have appeared here "represent HHS" "for purposes of discovery"

---

[1] As previously explained, Defendants would be entitled to discovery answers from HHS even under the United States' novel "special circumstances" test. *See* Doc. 252 at 9-10. But this Court should not adopt a test with no basis in rule or precedent. More, *that* test "would not be workable and would have disastrous consequences," Doc. 254 at 2, permitting the United States alone to strategically choose litigating offices to avoid providing relevant information in discovery.

3

(whatever that means), but whether HHS is an agency of a party: the United States. It is. And though the United States ignores the point, Defendants are not *allowed* to "direct[]" interrogatories at a party's attorney. Doc. 250 at 11 (quoting 8B Wright & Miller, Federal Practice & Procedure § 2171 (3d ed.)).

Last, the United States argues that "obtain[ing]" the requested information from HHS "would put the United States in an impossible position" because "the Department and HHS are not acting in concert for purposes of this litigation." Doc. 254 at 8-9. To the extent this is a burdensomeness argument, it is addressed below. To the extent this is an argument about whether HHS is part of the United States, DOJ and HHS are both agencies of the United States, directed by the same executive. *See* U.S. Const. art. II, § 1. Asking a party to obtain information available to it or from its agents is not "impossible"; it is *required* under Rule 33(b)(1). And somehow, obtaining "2.3 million pages" and an HHS declaration was not "impossible." The United States "must make an effort to" "obtain the requested information" from its "investigators," "agents[, and] representative[s]," *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005), including HHS.[2]

---

[2] The United States suggests that it was unaware that Defendants "took issue with any of the interrogatory responses provided." Doc. 254 at 3-4. As previously explained, "[t]he United States' primary objection to all the interrogatories (including 11-18) was that the agencies like HHS are not part of the United States." Doc. 250 at 7. Defendants participated in exhaustive meet-and-confers trying to resolve that objection, *see generally* Doc. 227-1, Ex. 3, an objection that the United States concedes has been its "consistent position throughout discovery—including Defendants' previous requests for production." Doc. 254 at 8.

4

## II.  HHS Information About The Treatments Is Highly Relevant.

The United States' relevancy objections are equally meritless.[3] The core of the United States' argument seems to be that because the United States is not (publicly) "relying in this litigation upon HHS information that is exclusively available to the federal government," that information is "irrelevant." Doc. 254 at 11. Nonsense. Parties rarely rely on the materials they want to avoid turning over in discovery. Rule 26(a)(3) generally requires a party to disclose "information about the evidence that it may present at trial," but relevancy is not limited to that narrow information. Instead, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Adopting the United States' theory that party discovery is confined to information that will be relied on at trial would make discovery all but meaningless.

The United States concedes that it has relied and will continue to rely on the claimed "established safety and efficacy of gender-affirming care" and "publicly

---

[3] The United States asserts that Defendants "have the burden of proving that the United States' interrogatory responses are inadequate." Doc. 254 at 9. The responses are self-evidently "inadequate," for they offer "evasive or incomplete" answers from a few attorneys' offices. Fed. R. Civ. P. 37(a)(4); *see* Doc. 250 at 8, 13-15 (pointing out deficiencies). The question here is whether the United States' objections—that HHS is not part of the United States, that the information is irrelevant, and that disclosure is unduly burdensome—are meritorious. And on that question, "[t]he party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information." *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680 (N.D. Ala. 2015) (cleaned up).

available HHS resources." Doc. 254 at 9. The requested information goes straight to the soundness and validity of those claims and resources. Naturally the United States would prefer that everyone accept "HHS's externally facing documents and publications" as "speak[ing] for themselves," Doc. 254 at 11, just as every party in litigation would prefer not to divulge any information that might shed light on their public statements or conduct. But obtaining that information is the point of party discovery: "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive," for "[t]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *United States v. Nixon*, 418 U.S. 683, 709 (1974).

Turning to the United States' specific responses, it claims that "HHS internal monitoring, tracking, or reviewing of information related to gender-affirming care" and how HHS "has funded or conducted (or helped to fund or conduct) [studies]" "have no bearing on the overwhelming scientific and medical literature that supports the safety and efficacy of such care." Doc. 254 at 11-12. But the background of published studies—including HHS assessments—is obviously relevant to a full consideration of those studies. The United States' retort—that "[f]or published journal articles, authors often disclose their sources of funding and other information" (Doc. 254 at 13)—misses the point. To put it bluntly, Defendants are interested in what HHS and authors chose *not* to disclose, because that information is likely to be highly

relevant to a complete understanding of the evidence.

Defendants are also interested in studies that were discouraged by HHS, and HHS's own reviews of the scientific evidence and guidelines, including in the context of providing funding for transitioning children. If HHS chose to only fund studies that reached certain outcomes—which is unknowable absent discovery—that information is highly relevant. If HHS disbelieved or discounted the studies it *did* fund, or conducted internal reviews exposing the dearth of evidence supporting transitioning children, that information too is relevant.

An example helps show that the United States' theory is divorced from Rule 26(b)'s broad understanding of relevance. "In 2015, the National Institutes of Health (NIH) funded four pediatric academic medical centers to conduct a prospective, longitudinal study to provide a critical evidence base to inform medical treatment of youth [gender dysphoria]."[4] According to the authors of a recent, highly publicized paper stemming from that research, the design of existing studies prevented "isolat[ing] the effects of [cross-sex hormones] on mental health," and "many questions remain regarding the psychosocial outcomes of early medical treatment."[5] The research intended to fill that gap, with researchers trumpeting conclusions in the *New England Journal of Medicine* that after two years, taking cross-sex hormones

---

[4] Chen et al., *Psychosocial Characteristics of Transgender Youth Seeking Gender-Affirming Medical Treatment*, at 3, https://tinyurl.com/4txyvtpb (author manuscript 2020).
[5] *Id.* at 2-3.

7

"improved appearance congruence and psychosocial functioning."[6] Immediately, severe methodological issues with the study came to light, including that six of the eight key variables the researchers set out to study "are not reported in the *NEJM* paper."[7] Because the authors obscured variables and refuse to provide underlying data, no one can know whether the data point to a different conclusion.[8] (The United States' and Plaintiffs' experts rely on this study, without qualification.)

How does the United States factor into all of this? Because HHS has been deeply involved at each step. Researchers came to HHS and said that more research is needed and that they would study certain outcomes. HHS reviewed those requests, decided to fund studies experimenting on children, and received (and still receives) progress updates and data. Even as it funds studies premised on a lack of evidence, HHS publicly states that the Science is settled and pressures state medical boards and tech companies to enforce the Science. *See* Doc. 250 at 14. Then, the initial fruits of HHS's funding come out and suspiciously omit most relevant variables—but HHS and major medical groups add it as an entry in the supposed "vast body of scientific and medical support." Doc. 254 at 12. Now, HHS wants to avoid disclosing relevant information, including its reviews of the research, data, recruitment,

---

[6] Chen et al., *Psychosocial Functioning in Transgender Youth after 2 Years of Hormones*, 388 N. Eng. J. of Med. 240, 240 (2023).
[7] Jesse Singal, *On Scientific Transparency, Researcher Degrees Of Freedom, And That NEJM Study On Youth Gender Medicine*, https://tinyurl.com/3wfsxz4s (Jan. 31, 2023).
[8] *See id.*

methodology, and consents, because the Science is settled.

All this is why Defendants have repeatedly asked about the underlying NIH-funded network study. *See* Doc. 250-1 at 12 (ROGs 12, 16); Doc. 227-1 at 14-15 (RFPs 18-19). For the United States to pretend that the public version of studies like this already "include" the "methodology, findings, and any limitations" (Doc. 254 at 13) could hardly be more mistaken. And HHS's information about studies like this could hardly be more relevant to assessing the claims made here about scientific evidence. Likewise, HHS's collaboration with and reviews of major medical groups and their guidelines are relevant to the statements and credibility of all involved.[9]

### III. HHS's Generic Burdensomeness Objection Is Baseless.

The United States' abbreviated burden argument is a "conclusory" "recitation of expense and burdensomeness" no different than what could be offered by any large entity. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985). As shown, the requested information is highly relevant. If HHS has a lot of relevant information, HHS also has many employees (and lawyers). *Cf. Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374, 2016 WL 6138653, at *14 (M.D.

---

[9] The United States asserts that it is "relying upon expert testimony, along with the scientific literature that supports the provision of gender-affirming care, to prove its Equal Protection Claim—in the same way a private litigant would." Doc. 254 at 12. The private litigant comparison does not help the United States. If a private plaintiff conducted extensive reviews and monitoring of pertinent literature, chose what studies to fund, received progress reports, and had a hand in what outcomes should be published, information about those activities would be blindingly relevant and obviously discoverable. The United States' identical information should be treated the same.

9

Fla. Oct. 21, 2016) ("[R]easonableness is determined by…the resources that a responding party has available to put to the case." (cleaned up)). The declaration that the United States somehow obtained from HHS merely offers bureaucratic generalities about "multiple" and "diverse" "Operating Divisions," "a wide range of potentially responsive data," and "teams of personnel." Doc. 254 at 15-16. These vague gestures do not carry the United States' burden to avoid producing relevant information, particularly since the parties can identify custodians and search terms.[10]

### IV. Interrogatory No. 14 Is Not Vague.

The United States says it is "left to guess as to what" "disinformation" means. Doc. 254 at 17. Yet less than a year ago, the United States formed a much-publicized "Disinformation Governance Board,"[11] and HHS officials have specifically decried disinformation in this context, Doc. 250 at 10. Given that the United States' litigating attorneys "remain[] unclear" about the meaning, Doc. 254 at 17, they should ask HHS to answer Interrogatory No. 14, along with the other interrogatories.

## CONCLUSION

The Court should grant Defendants' motion to compel full and complete answers from HHS and its components to Defendants' Interrogatories 11-18.

---

[10] The United States (at n.17) argues it need not respond because it has many subparts. But Rule 33 interrogatories go to a "party." If a party could avoid interrogatories by subdividing itself, sending them out to each agent, then "multipl[ying]" by the number of agents, Rule 33 has no meaning, and large entities could avoid most discovery. The United States cites nothing for this absurdity.

[11] Amanda Seitz, *Disinformation board to tackle Russia, migrant smugglers*, Associated Press, https://tinyurl.com/22seyywy (Apr. 28, 2022).

<table>
<tr><td>

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

</td><td>

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
  *Deputy Solicitor General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on March 16, 2023, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
*Counsel for Defendants*
