**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

BRIANNA BOE, et al.,

     Plaintiffs,

     v.

STEVE MARSHALL, et al.,

     Defendants

No. 2:22-cv-00184-LCB-CWB

**DECLARATION OF CORTLIN H. LANNIN IN SUPPORT OF MOTION
OF NONPARTY WORLD PROFESSIONAL ASSOCIATION FOR
TRANSGENDER HEALTH TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL**

I, Cortlin H. Lannin, hereby declare as follows:

1.     I am an attorney in the law firm of Covington & Burling LLP, counsel for

Nonparty World Professional Association for Transgender Health ("WPATH").

The matters set forth herein are true and correct of my own personal knowledge

and, if called as a witness, I could and would testify competently thereto.

2.     Attached hereto as **Exhibit 1** is a true and correct copy of the Appellees'

Response in Opposition to Appellants' Emergency Motion For a Stay Pending

Appeal, filed March 8, 2023 by the Appellees Florida Agency for Health Care

Administration and its Secretary, Jason Weida, in the appeal styled *In re*

*Subpoenas Served On American Academy of Pediatrics*, *et al.*, Appeal No. 23-7025 (D.C. Cir. Mar. 8, 2023).

I declare under penalty of perjury that the foregoing is true and correct.  This declaration is executed this 6th day of April, 2023, in San Francisco, California.

_____

Cortlin H. Lannin

# EXHIBIT 1

No. 23-7025

_____

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

IN RE SUBPOENAS SERVED ON AMERICAN ACADEMY OF PEDIATRICS, et al.,

_____

On Appeal from the United States District Court for the District of Columbia, No. 1:23-mc-00004-CJN
Before the Honorable Carl J. Nichols

_____

## APPELLEES' RESPONSE IN OPPOSITION TO APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL

_____

Mohammad O. Jazil
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 274-1690
*Counsel for Appellees*

_____

# TABLE OF CONTENTS

Table of Contents ........................................................................ i

Glossary .................................................................................... iii

Table of Authorities .................................................................. iv

Introduction ............................................................................... 1

Background ................................................................................ 1

    I. The Underlying Case: *Dekker v. Weida* ............................. 2

    II. The State Seeks Discovery from the Nonparty Groups ............ 3

    III. The Nonparty Groups File a Motion to Quash ................... 5

    IV. The Nonparty Groups Produce Documents ...................... 7

    V. The State and the Nonparty Groups Seek Additional 8
    Guidance from the District Court ........................................ 8

    VI. The Nonparty Groups Seek a Stay .................................. 9

Legal Standard ........................................................................ 10

Argument ................................................................................ 10

    I. This Court Must Assess Whether It Has Jurisdiction .......... 10

    II. The Nonparty Groups Are Unlikely to Succeed on Appeal ...... 11

        A. The Nonparty Groups' First Amendment Concerns
        Are Overstated ........................................................... 12

        B. The State Needs Discovery ..................................... 15

    III. Absent a Stay, the Nonparty Groups Would Not Be Harmed .......... 18

i

IV. With a Stay, the State Would be Substantially Injured ............................19

V. Public Interest Weighs Against the Nonparty Groups.............................20

Conclusion ........................................................................................21

Certificate of Compliance ..................................................................22

Certificate of Service .........................................................................23

Addendum ........................................................................................A-1

Certificate as to Parties ......................................................................A-1

# GLOSSARY

| Shorthand | Full Name |
| --- | --- |
| AACAP | American Academy of Child & Adolescent Psychiatry |
| AAP | American Academy of Pediatrics |
| ES | Endocrine Society |
| Nonparty Groups | Appellants Medical Organizations |
| State | Appellees Secretary Weida and the Florida Agency for Health Care Administration |
| WPATH | World Professional Association for Transgender Health |

## TABLE OF AUTHORITIES

**Cases**

*Abdelfattah v. U.S. Dep't of Homeland Security*,
    787 F.3d 524 (D.C. Cir. 2015)................................................................11

*Black Panther Party v. Smith*,
    661 F.2d 1243 (D.C. Cir. 1981)................................................. 12, 14-15

*Campaign Legal Ctr. v. U.S. Dep't of Justice*,
    34 F.4th 14 (D.C. Cir. 2022)................................................................11

*Carey v. Hume*,
    492 F.2d 631 (D.C. Cir. 1974)................................................................12

*Cuomo v. U.S. Nuclear Reg. Comm'n*,
    772 F.2d 972 (D.C. Cir. 1985)................................................................10

*In re Motor Fuel Temperature Sales Practices Litig.*,
    641 F.3d 470 (10th Cir. 2011) ................................................................10

*In re Sealed Case (Medical Records)*,
    381 F.3d 1205 (D.C. Cir. 2004)................................................................11

*In re Subpoena Duces Tecum*,
    439 F.3d 740 (D.C. Cir. 2006)................................................................14

*Leopold v. CIA*,
    987 F.3d 163 (D.C. Cir. 2021)................................................................11

*Maryland v. King*,
    567 U.S. 1301 (2012)................................................................ 19-20

*NAACP v. Ala. ex rel. Patterson*,
    357 U.S. 449 (1958)................................................................12

iv

*Nken v. Holder*,
    556 U.S. 418 (2009)...............................................................10-11, 20

*Ohio A. Philip Randolph Inst. v. Larose*,
    761 F. App'x 506 (6th Cir. 2019)................................................10

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ....................................................11

*Rush v. Parham*,
    625 F.2d 1150 (5th Cir. 1980) ......................................................2

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977)....................................................12

**Statutes**

28 U.S.C. § 1291 ............................................................................10

28 U.S.C. § 1292 ............................................................................11

Fla. Stat. § 409.905. ......................................................................20

**Other Sources**

AAP Policy Statement,
    AAP, https://bit.ly/41TMuC4 ....................................................17

Advocacy in Action,
    ES (Feb. 24, 2023), https://bit.ly/2LqCfkh ................................14

Clinical Guidelines & Training for Providers, Professionals, and Trainees,
    AACAP, https://bit.ly/3Zo0mmy ..............................................16

v

## INTRODUCTION

Fact discovery in the underlying case ends on Friday, March 10, 2023. *See Dekker v. Weida*, 4:22-cv-325, Doc. 107 (N.D. Fla. Feb. 12, 2022). After months of back and forth, late last week, the Nonparty Groups sought a stay of the district court's discovery-related orders based on an alleged infringement of their First Amendment rights. The district court denied the motion. Now, with discovery closing, the Nonparty Groups rely on the same cases and marshal the same facts to seek a stay before this Court. A stay is not warranted.

Stays are the rare exception, not the rule. First Amendment rights are qualified, not absolute. The Nonparty Groups' First Amendment concerns are overstated, especially since the district court modified the State's original subpoenas and where the supporting declarations concern the original—and not the modified—subpoenas. Regardless, the State's interests in obtaining discovery from the Nonparty Groups outweigh their asserted First Amendment rights.

For these reasons, and the reasons that follow, this Court should deny the Nonparty Groups' emergency motion to stay.

## BACKGROUND

As context to the Nonparty Groups' motion to stay, the State provides a more comprehensive account of the underlying Northern District of Florida case, the third-party discovery, and the proceedings below.

1

## I.     The Underlying Case: *Dekker v. Weida*

The Plaintiffs in the underlying case challenge a Florida rule that denies Medicaid reimbursement for certain treatments for gender dysphoria—puberty blockers, cross sex hormones, surgeries, and procedures that alter primary and secondary sex characteristics. In framing the case, the *Dekker* court relied on binding circuit precedent, *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980), and narrowed the central issue to "whether, based on current medical knowledge," the State "reasonabl[y]" "determin[ed]" that the at-issue treatments are "experimental." Doc. 11-1 at 1; *see also Dekker v. Weida*, 4:22-cv-325, Doc. 64 at 4 (N.D. Fla. Oct. 24, 2022).

The *Dekker* Plaintiffs maintain that the Nonparty Groups represent the medical consensus on treatments for gender dysphoria. In their complaint, they state that the at-issue treatments are "the prevailing standard of care, accepted and supported by every major medical organization in the United States," principally, members of the Nonparty Groups. Doc. 11-1 at 368-80.

The *Dekker* Plaintiffs continued their reliance on the Nonparty Groups during the *Dekker* preliminary injunction hearing. There, the State put its expert witness, Dr. Laidlaw, on the stand. To discredit him, the *Dekker* Plaintiffs asked Dr. Laidlaw if he was "aware that" his "opposition to gender-affirming care for the treatment of gender dysphoria in youth and adults is contrary to the vast majority of medical

2

associations' recommendations?" *Id.* at 902-15. The *Dekker* Plaintiffs pursued this line of questioning for approximately fifteen transcript pages, marching through different medical organizations' guidelines and policy statements. *Id.* Those groups included the American Academy of Child & Adolescent Psychiatry, the American Academy of Family Physicians, the American College of Obstetricians and Gynecologists, the American Medical Association, the Endocrine Society, and Pediatric Endocrine Society. *Id.*

The Nonparty Groups also attempted to file an amicus brief in the *Dekker* case. In it, they stated that the "widely accepted recommendation of the medical community, including that of the respected professional organizations participating here as *amici*, is the standard of care for treating gender dysphoria is 'gender-affirming care.'" *Id.* at 456. When discussing the medical consensus on the "treatment protocols for gender dysphoria," the Nonparty Groups expressly relied on guidelines and standards from the World Professional Association for Transgender Health and Endocrine Society, among other Nonparty Group members. *Id.* at 482-83.

## II.      The State Seeks Discovery from the Nonparty Groups

Given the *Dekker* court's focus on the current-medical-knowledge standard, and given the *Dekker* Plaintiffs' position that the Nonparty Groups embody the

current medical consensus on treatments for gender dysphoria, the State sought discovery from the Nonparty Groups. It did so nearly four months ago.

On November 8, 2022, the State served three Nonparty Groups—World Professional Association for Transgender Health (herein "WPATH"), Endocrine Society (herein "ES"), and American Academy of Pediatrics (herein "AAP")—with a subpoena for depositions and document production. In particular, the State sought:

> **Request No. 1**: Any documents that state the total number of your membership.
>
> **Request No. 2**: Any documents that describe how you establish guidelines, standards, best-practices, or policy positions.
>
> **Request No. 3**: Any documents describing how you established guidelines, standards, best-practices, or policy positions on gender-affirming care for gender dysphoria. Any documents and communications showing the individuals or committees that proposed, reviewed, modified, or voted on your guidelines, standards, best-practices, or policy positions on gender-affirming care for gender dysphoria.
>
> **Request No. 4**: Any communications with your membership concerning your guidelines, standards, best-practices, or policy positions on gender-affirming care for gender dysphoria.
>
> **Request No. 5**: Any documents and communications detailing your intention to file an amicus brief in *Dekker v. Marstiller*, 4:22-cv-00325-RH-MAF (N.D. Fla.).
>
> **Request No. 6**: Any documents and communications with consultants, federal or Florida government officials, lobbyists, researchers, scholars, members of the public, or any other person relating to gender dysphoria or your guidelines, standards, best practices, or policy positions on gender-affirming care for gender dysphoria.
>
> **Request No. 7**: Any documents and communications showing any side effects and risks associated with the treatments recommended

4

through your guidelines, standards, best-practices, or policy positions
on gender-affirming care for gender dysphoria.

*E.g.*, Doc. 1-4 at 2-16. The deposition topics mirrored the document requests. On

December 2, 2022, WPATH, ES, and AAP responded and objected to the deposition

requests and requested documents. *E.g.*, Doc. 1-22 at 2-25.

On November 15, 2022, the State served the fifteen remaining Nonparty

Groups with a subpoena for documents only. *E.g.*, Doc. 1-19 at 2-15. The documents

sought were the same as the documents sought for WPATH, ES, and AAP. On

December 19, 2022, the remaining Nonparty Groups responded and objected to the

document requests. Doc. 1-25 at 2-20.

Both the State and the Nonparty Groups conducted several good-faith meet

and confers. The State agreed to narrow several document requests, and the State

agreed that the Nonparty Groups could mark documents as confidential and redact

member names, member lists, and other member-specific identifying information in

the produced documents. Still, the Nonparty Groups contended that neither

depositions nor document productions should occur.

### III.       The Nonparty Groups File a Motion to Quash

On January 13, 2023, the Nonparty Groups filed a motion to quash the State's

subpoenas. Doc. 1. They alleged in relevant part that the subpoenas encroached on

their First Amendment rights. Doc. 1-1. On January 20, 2023, the State responded, Doc. 11, and on January 25, 2023, the Nonparty Groups replied, Doc. 14.

On January 26, 2023, the district court held a hearing on the motion. During the hearing, the district court decided to grant in part, deny in part, and hold in abeyance in part the motion. After considering the Nonparty Groups' First Amendment rights, and after considering the State's need for discovery, the district court narrowed the requests for documents as follows:

> **Request No. 1**. Documents sufficient to show the Nonparty Groups' total number of members.
>
> **Request No. 2**. Documents sufficient to show how they establish guidelines or, if they do not establish guidelines, policy positions.
>
> **Request No. 3**. Their guidelines or policy positions (if any) on gender-affirming care for gender dysphoria.
>
> **Request No. 4**. Documents sufficient to show how they established guidelines or, if they have not established guidelines, their policy positions (if any) on gender-affirming care for gender dysphoria.
>
> **Request No. 5**. Any official communications with their membership concerning their guidelines or, if they have not established guidelines, their policy positions (if any) on gender-affirming care for gender dysphoria.

Doc. 18 (alternations made). The district court ordered the Nonparty Groups to produce documents responsive to these requests. As for the depositions, the district court held that decision in abeyance, reasoning that a sufficient document production might negate the need for depositions. *Id.*

## IV.      The Nonparty Groups Produce Documents

On February 9, 2023, the eighteen Nonparty Groups produced a total of 387 documents. Sixteen of the Nonparty Groups produced less than five documents each. Some produced public newsletters and press releases that were marked confidential. And none adequately responded to modified Request 4, which required the production of documents sufficient to show *how* the Nonparty Groups established guidelines or, if they have not established guidelines, their policy positions (if any) on gender-affirming care for gender dysphoria.

During ensuing meet and confers, the State and the Nonparty Groups took different positions on this issue. For the State, documents showing *how* a medical organization establishes guidelines and policy positions would include communications with decisionmakers on the guidelines and policy positions, drafts of the guidelines and policy positions themselves, and any internal dissent from members about the guidelines and policy positions. In other words, documents responsive to this modified request should be substantive in nature.

The Nonparty Groups took the opposite position. They said that documents responsive to modified Request 4 need only be procedural in nature—documents evidencing what procedures the Nonparty Groups complied with when establishing their guidelines and policy positions on treatment for gender dysphoria.

7

Moreover, the State and the Nonparty Groups disagreed on the necessity and the scope of conducting WPATH, ES, and AAP depositions.

## V.     The State and the Nonparty Groups Seek Additional Guidance from the District Court

On February 27, the district court held a hearing on these discovery disputes and provided further clarification. Regarding modified Request 4, the district court explained that:

> In producing documents sufficient to show "how" the Nonparty Groups established guidelines or policy positions on gender-affirming care for the treatment of gender dysphoria, the Nonparty Groups shall produce documents sufficient to show both (a) the process by which any such guidelines or policy positions were adopted, and (b) the substantive materials and opinions that were considered and relied upon, as well as the materials and opinions that were considered and rejected, in adopting the guidelines or policy positions. This includes, but is not limited to, documents that would be sufficient to show what studies were considered in adopting the guidelines or policy positions and why a particular study was relied upon or rejected. It also includes documents that would be sufficient to show whether any dissenting views were otherwise acknowledged, whether such views were considered in adopting guidelines or policy positions, and why such views were rejected.

Doc. 26. And regarding the WPATH, ES, and AAP depositions, the district court ordered the three Nonparty Groups to sit for limited depositions and discuss the following:

> a. The organization's total number of members.
>
> b. How the organization establishes guidelines or policy positions.
>
> c. The organization's guidelines or policy position on gender-affirming care for gender dysphoria.

d. How the organization established its guidelines or policy position on gender-affirming care for gender dysphoria (as clarified by this Order and the Court's oral instructions).

e. Official communications with the organization's membership concerning its guidelines or policy position on gender-affirming care for gender dysphoria.

*Id.* (alterations made).

## VI.      The Nonparty Groups Seek a Stay

On March 2, 2023, The Nonparty Groups moved to stay the district court's discovery orders. Doc. 27. They again argued that the orders encroached upon their First Amendment rights. Doc. 27-1. On March 3, 2023, the State responded, arguing that the Nonparty Groups' First Amendment concerns were misplaced, given the State's agreement to redact member names and member-specific information, and given the district court's modification of the State's original subpoenas. Doc. 30-1. The State also argued that the district court correctly weighed the Nonparty Groups' First Amendment rights against the State's need for discovery. *Id.*

On March 3, 2023, the district court denied the stay and extended the document production and deposition deadlines to March 10. Doc. 31. Now, the Nonparty Groups appeal the district court's decisions and seek a stay before this Court.

## LEGAL STANDARD

A stay pending appeal depends on four factors: (1) the likelihood that the moving party will prevail on the merits; (2) the prospect of irreparable injury to the moving party if relief is withheld; (3) the possibility of harm to other parties if relief is granted; and (4) the public interest. D.C. Cir. Local Rule 8(a). The first two stay factors are the most crucial. *Nken v. Holder*, 556 U.S. 418, 434 (2009). And the moving party bears the heavy burden to show that the "exercise of the court's extraordinary injunctive powers is warranted." *Cuomo v. U.S. Nuclear Reg. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam).

## ARGUMENT

The Nonparty Groups fail to meet *any* of the four stay factors. They are unlikely to succeed on the merits or suffer irreparable harm, and a stay pending appeal will harm the State and undermine the public interest.

## I.     This Court Must Assess Whether It Has Jurisdiction

Before assessing the stay factors, however, this Court must satisfy itself that it has jurisdiction over this matter. Several appellate courts have held that they do not have jurisdiction under 28 U.S.C. § 1291 to review orders compelling discovery—even over supposedly privileged materials. *See, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 482 (10th Cir. 2011); *Ohio A. Philip Randolph Inst. v. Larose*, 761 F. App'x 506, 511 (6th Cir. 2019); *see also*

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010). This Court seemingly came to the opposite conclusion in *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1209 (D.C. Cir. 2004). The State notes this circuit-split and preserves its right to further brief the issue should the need arise.

To be sure, the Nonparty Groups cannot avail themselves of other appellate avenues. Neither 28 U.S.C. § 1292(a)(1) nor this Court's decision in *Leopold v. CIA*, 987 F.3d 163 (D.C. Cir. 2021), serves as a basis for appellate jurisdiction. *Leopold* stands only for the proposition that "orders requiring disclosure of documents [*in FOIA cases*] are appealable injunctions" for purposes of § 1292(a)(1). *Campaign Legal Ctr. v. U.S. Dep't of Justice*, 34 F.4th 14, 22 (D.C. Cir. 2022) (quoting *Leopold*, 987 F.3d at 169) (alteration in original, emphasis added). Mandamus arguments buried in a footnote "need not" be "consider[ed]," either. *Abdelfattah v. U.S. Dep't of Homeland Security*, 787 F.3d 524, 532 (D.C. Cir. 2015).

## II.    The Nonparty Groups Are Unlikely to Succeed on Appeal

Assuming jurisdiction exists, the Nonparty Groups cannot meet the first stay factor—strong showing of success on the merits. This first factor requires more than a negligible chance of success. *Nken*, 556 U.S. at 434 (cleaned up). The chance of success must be "substantial," with "questions going to the merits so serious," "difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Wash. Metro. Area Transit Comm'n v. Holiday*

*Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (cleaned up). Given the outsized

importance of this factor, failing to satisfy it is likely "fatal." *CREW v. Fed. Election*

*Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam). And it is fatal here.

## A.   The Nonparty Groups' First Amendment Concerns Are Overstated

The Nonparty Groups contend that, if they are subject to depositions and are

required to produce additional documents, such measures would violate their First

Amendment rights, namely "frustrating their ability to organize, entertain

uninhibited and candid internal debates, make well-reasoned decisions and generate

work product that is useful to the public." Mot. to Stay at 18. Not so.

**1.**   As an initial matter, First Amendment rights are not absolute. When

invoked in discovery disputes, these qualified constitutional rights are subject to a

balancing test. That test requires that courts balance one party's "First Amendment

claim[s]" with an opposing party's "need for the information sought." *Black Panther*

*Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981). If the latter outweighs the

former, then disclosure is required. *See Carey v. Hume*, 492 F.2d 631, 639 (D.C. Cir.

1974) (holding that the First Amendment is not an absolute bar to discovery).

True, disclosing member lists and member names does encroach upon First

Amendment rights, and usually tilts the balance against disclosure. *See NAACP v.*

*Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958). In this case, however, the State has

already agreed that member lists and member names should be redacted, as the

Nonparty Groups have already done so in their limited production. The State has also repeatedly explained that it does not care about the *whos*—the names of members who created guidelines or policies. The State's focus remains on the *hows* and *whats*—namely how the Nonparty Groups created their guidelines and policy positions on gender-affirming care, what evidence they disregarded, and what dissent, if any, was expressed. The chilling effect that comes with naming names is thus absent and has been further minimized by the district court's repeated narrowing of the State's discovery requests.

**2.**    In addition, the Nonparty Groups must substantiate their First Amendment fears. The only substantive evidence that they rely on here are declarations from a single AAP member, a single ES member, and a single WPATH member. Mot. at 18. These declarations are not enough for four reasons.

*First*, these declarations address concerns over the original subpoenas. *E.g.*, Doc. 1-1, ¶ 16; Doc. 1-2, ¶ 15; Doc. 1-3, ¶ 13. The district court modified the original subpoenas and narrowed them to the Nonparty Groups' benefit. Therefore, the concerns expressed in the declarations are outdated and do not express the concerns with the now-modified, narrowed subpoenas.

*Second*, the AAP, ES, and WPATH declarations themselves do not demonstrate "substantial" First Amendment harms to the organizations; the declarations certainly do not demonstrate that the harms are "probabl[e]." *Black*

13

*Panther Party*, 661 F.2d at 1267-68. The declarations mostly illustrate speculative, future concerns. Doc.1-1, ¶ 19; Doc. 1-2, ¶¶ 14-15; Doc. 1-3, ¶ 13. There is also no explanation for why the speculative beliefs of one member of AAP, ES, and WPATH should apply to the organizations as a whole. Doc. 1-1, ¶ 16; 1-2, ¶ 13.

*Third*, to the extent that they demonstrate First Amendment concerns, the declarations concern only three of eighteen Nonparty Groups. The fifteen remaining Nonparty Groups offer no facts, none whatsoever, to support their First Amendment concerns. These unstated concerns cannot be weighed and measured. "It is well established that the proponent of a privilege bears the burden of demonstrating *facts* sufficient to establish a privilege's applicability." *In re Subpoena Duces Tecum*, 439 F.3d 740, 750 (D.C. Cir. 2006) (emphasis added).

And *fourth*, there is no indication that "disclosure of the substance of each organization's internal deliberative processes—including to one of the principal *public policy opponents*"—would lead to chilling of member participation and "damage to each organization's ability to organize and operate effectively." Mot. to Stay at 20 (emphasis in the original). In fact, the Nonparty Groups' recent actions contradict this concern. Just two weeks ago—which is *after* ES produced internal documents to the State—ES announced that it is now intensifying its advocacy actions, including lobbying Congress. *See* Advocacy in Action, ES (Feb. 24, 2023), https://bit.ly/2LqCfkh. These actions show the opposite of a chilling effect.

14

### B.     The State Needs Discovery

**1.**     Even if the Nonparty Groups had substantiated their First Amendment fears, the State's need for depositions and documents outweighs those fears. The information being sought goes to "the heart of" the underlying case against the State currently pending before the Northern District of Florida. *Black Panther Party*, 661 F.2d at 1268.

As explained above in the background section, the *Dekker* court narrowed the central issue in that case to "whether, based on current medical knowledge," the State's "determination that" the at-issue treatments for gender dysphoria "are experimental is reasonable." During the preliminary injunction hearing, the *Dekker* Plaintiffs repeatedly asked the State's expert witness whether he was aware that his views on treatments for gender dysphoria did not mirror the views of many of the Nonparty Groups—including those who promulgate treatment guidelines and those that take policy positions on the issue. What is more, the Nonparty Groups themselves claimed, when they tried to file an amicus brief in *Dekker*, that they represent the medical consensus. In short, the discovery that the State seeks from the Nonparty Groups is at the heart of the *Dekker* case. The Nonparty Groups' arguments to the contrary do not change that conclusion.

**2.**     The Nonparty Groups contend that "the State is not seeking evidence of consensus *among* the purported medical establishment—the very issue that it

claims goes to the 'heart of the matter.' Rather, it is seeking evidence of alleged dissent *within* individual organizations." Mot. to Stay at 22 (emphasis in the original). This false distinction misses the point.

If the organizations represent the views of only a handful of their members, or otherwise ignore the perspective of some substantial subset of their members, then they cannot represent the medical consensus. It is only through documents (with names redacted) and questioning (limited to the district court's parameters) that the State can determine these facts.

Exploring the consensus *among* the Nonparty Groups is also important. In their motion, the Nonparty Groups significantly downplay how their organizations' guidelines and policy positions are interlocked. Consider, for example, Nonparty Group American Academy of Child & Adolescent Psychiatry (herein "AACAP"). It wholesale adopts the guidelines and policy positions of other Nonparty Groups— AAP, ES, and WPATH—on treatments for gender dysphoria. *See* Clinical Guidelines & Training for Providers, Professionals, and Trainees, AACAP, https://bit.ly/3Zo0mmy (last visited Mar. 7, 2023). Accordingly, the State should be able to see documents showing why and how AACAP decided to wholesale adopt those guidelines and positions. Was it through a well-reasoned, thorough, thoughtful decisionmaking process, or was it just an executive decision made by two AACAP board members? The same is true for AAP: in its 2018 policy position on gender-

16

affirming care, it relies on WPATH's guidelines. AAP Policy Statement, AAP, https://bit.ly/41TMuC4 (last visited Mar. 7, 2023). But it is unclear why AAP relied on WPATH. All of those questions go to the central issue in *Dekker*.

    **3.**    The Nonparty Groups suggest examples of alternative sources of information that the State could have obtained. The Nonparty Groups, however, do not realize that the State has already exhausted those alternative sources.

    The Nonparty Groups argue that the State should have sought out views from members of the American College of Pediatricians. Mot. to Stay at 22. The State already did that: Dr. Andre Van Mol, a member, wrote a declaration for the State during the *Dekker* preliminary injunction phase of litigation. 4:22-cv-00325, Doc. 49-3 at 138 (N.D. Fla. 2022).

    The Nonparty Groups then contend that the State should also try members from the Society of Evidence Based Gender Medicine. Mot. to Stay at 22. But the State already did that: Dr. Michael Biggs, a member, has written an expert report for the State in *Dekker*.

    Not satisfied, the Nonparty Groups claim that the State "could speak with individuals who have publicly dissented from the policies" of the Nonparty Groups. Mot. to Stay at 22. The State already did that, too. As the district court acknowledged, the State spoke with Dr. Joseph Zanga, an AAP member, who stated

that the organization might have suppressed member views that ran contrary to AAP's position on gender-affirming care. Doc. 31 at 4.

After exhausting these alternative sources, the State determined that it did not have sufficient information to rebut the *Dekker* Plaintiffs' reliance on the Nonparty Groups' guidelines and policy positions on treatments for gender dysphoria. The district court was thus correct in stating that "there is no plausible alternative sources—the Nonparty Groups, and the Nonparty Groups alone, possess the requested information." *Id.*

In sum, even if the Nonparty Groups have a fact-specific First Amendment concern, which they do not, the State's interests outweigh those concerns. The Nonparty Groups thus have no likelihood of success on the merits.

## III. Absent a Stay, the Nonparty Groups Would Not Be Harmed

The Nonparty Groups' failure to satisfy the irreparable harm factor is equally fatal. Irreparable harm must be "both certain and great," "likely" "and actual," and not merely "theoretical." *CREW*, 904 F.3d at 1019 (cleaned up). The Nonparty Groups cannot show such harm. As noted above, the district court has already allowed redactions of member names and member lists after modifying the State's original subpoenas. The Nonparty Groups' declarations also do not demonstrate facts that show certain, great, likely, or actual First Amendment injuries. This is so because the declarations express concerns rooted in the original subpoenas, not the

18

district-court-modified subpoenas; they focus on future, speculative, and individual First Amendment concerns; and at best, they discuss First Amendment concerns for three out of eighteen organizations. The State refuted the Nonparty Groups' reliance on their declarations below, and the Nonparty Groups fail to even address the State's arguments here. All told, the Nonparty Groups have not carried their burden on the second factor. Their harms are, at best, "theoretical." *Id.*

## IV. With a Stay, the State Would Be Substantially Injured

Again, in the *Dekker* court's framing of the issue, the State must be allowed to determine *how* the Nonparty Groups—the self-professed guardians of medical expertise—created their guidelines and policy positions on treatments for gender dysphoria. Absent this substantive information, the State remains in the dark. Should this secret science result in the State's rule being stricken, the State would be irreparably harmed. *See generally Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (a state suffers irreparable harm when it is not allowed to enforce its laws).

To be more precise, any stay would harm the State with fact discovery in the underlying case ending on March 10. The Nonparty Groups speculate that the *Dekker* court might extend the discovery deadline, but it is unknown whether or not the court would extend fact discovery *for a third time*. The *Dekker* court, at the *Dekker* Plaintiffs' request, fast-tracked this case. *See* Doc. 67 at 2, 4:22-cv-00325

19

(N.D. Fla. 2022) ("This [scheduling] order sets an aggressive schedule because the claims are of a kind that should be resolved as promptly as feasible."). The State is bound to complete discovery by the current deadline set by the *Dekker* court. The time to conduct nonparty discovery is now, and the State is harmed in its absence.

## V.   Public Interest Weighs Against the Nonparty Groups

Finally, the public interest weighs in the State's favor, not the Nonparty Groups'. As noted above, the district court correctly concluded that the Nonparty Groups' asserted First Amendment concerns are outweighed by the State's need for the sought-after discovery. This information will go toward proving (or disproving) the experimental nature of the at-issue treatments for gender dysphoria. Having this information furthers the State's goal in ensuring that its Medicaid program reimburses only non-experimental services, and not for services that might pose significant (and unknown) medical risks or otherwise do more harm than good. *See* Fla. Stat. § 409.905(9) (stating the State' Medicaid agency "shall not pay for" Medicaid" "services that are" "experimental"); *Nken*, 556 U.S. at 436 (public interest in enforcing laws); *King*, 567 U.S. at 1303 (same).

The Nonparty Groups present an additional argument: they say that an open, robust, scientific dialogue on treatments for gender dysphoria—behind closed doors—furthers the public interest. Mot. to Stay at 25. Not so. Any dialogue behind closed doors necessarily excludes voices from the debate. Such exclusions are not

in the public interest when seeking to steer the scientific consensus on this or any other issue. Such exclusions foster mistrust and sow the seeds of misinformation. Transparency serves the public better than secrecy. Here, transparency comes with the safeguards the district court already imposed. *See generally CREW*, 904 F.3d at 1019-20 (citing cases for the proposition that transparency is beneficial in the election-campaign-disclosure context).

## CONCLUSION

None of the four stay factors favors the Nonparty Groups. The district court agreed. This Court should similarly deny the Nonparty Groups' motion, for the reasons expressed above.

Dated: March 8, 2023

Respectfully submitted,

/s/ Mohammad O. Jazil
Mohammad O. Jazil
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 391-0503
mjazil@holtzmanvogel.com

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A). The document has 4,658 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6); this document has been prepared using 14-Times New Roman font in Microsoft Word 2016.

Dated: March 8, 2023

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I certify that on March 8, 2023, the foregoing was filed on the CM/ECF system, which sent it to counsel of record.

Dated: March 8, 2023                         /s/ Mohammad O. Jazil
                                                              Mohammad O. Jazil

**ADDENDUM**

**CERTIFICATE AS TO PARTIES**

All parties and amici appearing before the district court and this court are

listed in the Appellants' motion to stay at 32.

Dated: March 8, 2023          /s/ Mohammad O. Jazil
                              Mohammad O. Jazil