**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

BRIANNA BOE, et al.,

      Plaintiffs,

        v.

STEVE MARSHALL, et al.,

      Defendants.

No. 2:22-cv-00184-LCB-CWB

**MOTION OF WORLD PROFESSIONAL ASSOCIATION FOR
TRANSGENDER HEALTH FOR LIMITED STAY OF DISCOVERY
ORDER PENDING APPEAL**

# TABLE OF CONTENTS

I.     BACKGROUND ........................................................................................ 2

II.    ARGUMENT ............................................................................................. 4

      A.     WPATH Is Likely To Succeed on the Merits Because Its First Amendment Interest in Protecting Internal Deliberations From Disclosure Outweighs the State's Purported Need for the Information. ......................................................................................... 4

      B.     WPATH Would Be Irreparably Injured Absent a Stay. ........................ 8

      C.     A Stay Will Not Harm the State. ......................................................... 10

      D.     A Stay Would Further the Public Interest. .......................................... 10

III.   CONCLUSION ...................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFL-CIO v. FEC*,
  333 F.3d 168 (D.C. Cir. 2003)................................................................5

*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012) ...........................................................10

*Black Panther Party v. Smith*,
  661 F.2d 1243 (D.C. Cir. 1981), *vacated as moot sub nom. Moore
  v. Black Panther Party*, 458 U.S. 1118 (1982)................................5, 7

*Cate v. Oldham*,
  707 F.2d 1176 (11th Cir. 1983) ...........................................................10

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006)................................................................9

*Drummond Co. v. Collingsworth*,
  2015 WL 13768169 (N.D. Ala. Dec. 7, 2015)........................................3

*Elrod v. Burns*,
  427 U.S. 347 (1976)................................................................................9

*In re Fosamax Prods. Liab. Litig.*,
  2009 WL 2395899 (S.D.N.Y. Aug. 4, 2009).................................11, 12

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
  23 F.3d 1071 (6th Cir. 1994) ...............................................................10

*Nken v. Holder*,
  556 U.S. 418 (2009)................................................................................4

*Northeastern Fla. Chapter of Ass'n of Gen. Contractors v.
  Jacksonville*,
  896 F.2d 1283 (11th Cir. 1990) .............................................................8

*Perry v. Schwarzenegger,*
     591 F.3d 1147 (9th Cir. 2010) ...................................................................5, 6, 7, 8

*Rosa v. City of Seaside,*
     2009 WL 2382760 (N.D. Cal. July 29, 2009) ...................................................7, 8

*Whole Woman's Health v. Tex. Cath. Conf.,*
     896 F.3d 362 (5th Cir. 2018) ........................................................................6, 10

**Statutes**

28 U.S.C. § 1292(b) ...........................................................................................1, 3

Alabama Vulnerable Child Compassion and Protection Act ...................................2

**Other Authorities**

Const. Art. VI cl. 2 .................................................................................................10

Non-party World Professional Association for Transgender Health

("WPATH") moves for a limited stay of this Court's Order dated March 27, 2023

(Doc. 263) ("Order") requiring WPATH to produce documents reflecting its

confidential internal communications and deliberations pending the disposition of

WPATH's efforts to appeal the Order.  WPATH is filing this motion concurrently

with a motion to certify the Order for interlocutory appeal pursuant to 28 U.S.C.

§ 1292(b) ("Motion to Certify").[1]

WPATH is likely to succeed on the merits of its appeal because its First

Amendment interests in protecting its internal deliberations from disclosure

substantially outweigh the State's alleged need for discovery.  In addition,

disclosure of the material at issue would irreparably harm WPATH and would

substantially harm the public interest by, *inter alia*, impeding dialogue in a field

that requires uninhibited scientific debate.  Finally, any harm the State claims from

a stay could be readily mitigated.

WPATH is not seeking a blanket stay of the Order.  Rather, it seeks an order

staying only its obligation to *produce* to the State the materials that are the subject

---

[1] As described in the Motion to Certify, the Order is appealable under Section
1292(b) because it involves a controlling question of law as to which there is
substantial ground for difference of opinion, and an immediate appeal from the
order may materially advance the ultimate termination.  WPATH may file a
petition for mandamus relief with the Eleventh Circuit if this Court declines to
certify the Order for interlocutory appeal.

of its attempted appeal.  In the interim, WPATH will continue to meet and confer in good faith with the State about the scope and parameters of any production that may become necessary if WPATH's efforts to appeal the Order are ultimately unavailing.

## I.   BACKGROUND

This proceeding involves a subpoena served on WPATH by the State of Alabama.  On April 8, 2022, Alabama's governor signed the Alabama Vulnerable Child Compassion and Protection Act, which prohibits any person from obtaining or providing certain medical treatments consistent with the standard of care for transgender minors.  Soon after, Plaintiffs challenged the Act's constitutionality. WPATH, together with other organizations, filed an *amicus* brief articulating the medical consensus that gender-affirming care is the appropriate treatment for gender dysphoria.  ECF No. 91–1.

On August 10, 2022, the State served WPATH with a Rule 45 subpoena seeking, among other things, materials reflecting the substance of WPATH's confidential internal communications and deliberations regarding the creation, review, and adoption of its clinical guidelines for the treatment of individuals with gender dysphoria ("Standards of Care").  Doc. No. 208–2, Ex. 3 at 12.  On December 27, 2022, WPATH moved to quash the subpoena, arguing that the

State's requests infringed on WPATH's First Amendment rights, sought irrelevant discovery, and imposed undue burdens on WPATH.  (Doc. 208).

On March 27, 2023, this Court issued its Order denying WPATH's Motion to Quash.  It concluded that "WPATH has failed to make a *prima facie* showing that compliance with Defendants' subpoena infringes its First Amendment rights" and that "WPATH's First Amendment rights are uninfringed by production here." Doc. 263 at 9.  This Court ordered WPATH to produce documents reflecting its internal communications and deliberations.  *Id.* at 2.

In a Motion for Certification filed concurrently herewith, WPATH is asking this Court to certify its Order for immediate review pursuant to 28 U.S.C. § 1292(b).  In this Motion, WPATH asks this Court to stay WPATH's obligation to produce documents pursuant to the Order so that the Eleventh Circuit may have an opportunity to address WPATH's First Amendment privilege claims before WPATH is required to produce the material at issue and the proverbial train has left the station.[2]

---

[2]  There is authority for staying a discovery pending interlocutory appeal.  In *Drummond Co. v. Collingsworth*, the Northern District of Alabama considered whether the attorney-client privilege protected evidence from disclosure.  2015 WL 13768169 (N.D. Ala. Dec. 7, 2015).  The Court ruled on that question, but offered to stay its own decision in the event the parties sought to certify the order under § 1292(b).  *Id.*

## II.   ARGUMENT

In assessing whether to grant a stay pending appeal, courts look to four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation omitted).  In this case, all four factors favor issuance of a stay.

> **A.   WPATH Is Likely To Succeed on the Merits Because Its First Amendment Interest in Protecting Internal Deliberations From Disclosure Outweighs the State's Purported Need for the Information.**

Courts have routinely quashed subpoenas that would infringe on associational rights guaranteed by the First Amendment by, for example, discouraging members from joining or participating in organizations, chilling the robust and uninhibited exchange of ideas that organizations require to do their work, or otherwise damaging their effectiveness.  In this case, disclosure of WPATH's internal deliberations would undermine its First Amendment rights, while the State's interest in disclosure is nonexistent or weak at best.  As such, WPATH is likely to succeed on the merits of an appeal challenging the Order.

Courts addressing First Amendment challenges to discovery requests perform a balancing test: one party's First Amendment interests are balanced

4

against the other party's need for the information sought.  If the former outweigh

the latter, the claim of privilege is upheld.  *See, e.g.*, *Perry v. Schwarzenegger*, 591

F.3d 1147, 1161 (9th Cir. 2010); *Black Panther Party v. Smith*, 661 F.2d 1243,

1266 (D.C. Cir. 1981), *vacated as moot sub nom. Moore v. Black Panther Party*,

458 U.S. 1118 (1982).

Here, WPATH's First Amendment interests are substantial.  This Court's

holding that "WPATH's First Amendment rights are uninfringed by production

here" rested on the proposition that the First Amendment protects only against

disclosures that might result in "'threats, harassment, or reprisals from either

Government officials or private parties.'"  Doc. 263 at 9 (quoting *Fla. Branches &*

*Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021)).  In

fact, courts protect First Amendment rights from harm caused by compelled

disclosures that threaten to undermine an organization's effectiveness, *regardless*

of the specific materials requested.

For example, the D.C. Circuit concluded that the AFL-CIO and Democratic

National Committee asserted "substantial First Amendment interests in the

disclosure of their own internal materials" by showing that "compelled disclosure

of internal planning material" would "frustrate those groups' decisions as to 'how

to organize . . . [themselves], conduct . . .[their] affairs, and select . . . [their]

leaders.'"  *AFL-CIO v. FEC*, 333 F.3d 168, 177–78 (D.C. Cir. 2003) (*quoting Eu v.*

*San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 230–21 & n.21 (1989)).  The Court explained that "disclosure of an association's confidential internal materials . . . intrudes on the 'privacy of association and belief guaranteed by the First Amendment,' as well as seriously interferes with internal group operations and effectiveness."  *Id.* at 177–78 (*quoting Buckley v. Valeo*, 424 U.S. 1, 64 (1976)).  Similarly, in vacating an order permitting discovery similar to the discovery at issue here, the Fifth Circuit concluded that communications within associations "must be permitted to be broad, uninhibited, and fearless, and [] protecting such deliberations is a seminal aspect of the freedom to associate." *Whole Woman's Health v. Tex. Cath. Conf.*, 896 F.3d 362, 372 (5th Cir. 2018); *see also Perry*, 591 F.3d at 1162 ("The first Amendment privilege, however, has never been limited to the disclosure of the identities of rank-and-file members.").

In this case, the undisputed record demonstrates that enforcement of the Order would impede WPATH's freedom of association and speech and thus its effectiveness, including by frustrating its ability to organize, entertain uninhibited and candid internal debates, make well-reasoned decisions, and generate work product that is useful to the public.  (Doc. 208-4 at 6–9).  While the Court suggested in its Order that WPATH could redact member names and produce documents pursuant to a protective order, that does not address the fundamental First Amendment concern here: that the disclosure of the substance of WPATH's

6

internal deliberative process will profoundly chill participation in the organization,

impede members' willingness to voice unpopular or critical views that could be

disclosed and used against WPATH by its opponents, and damage the

organization's ability to organize and operate effectively.  Redacting member

names cannot and will not mitigate these harms.  *See Perry*, 591 F.3d at 1163–64

(protective orders "cannot eliminate" the First Amendment injury resulting from

compelled disclosure).

On the other side of the scale, the State's purported need for the information

sought—attempting to show WPATH's Standards of Care reflect "ideology, self-

interest, [and] organizational politicking," *see* State's Opp. to Mot. to Quash (Doc.

219) at 3—is insufficient to justify infringing WPATH's First Amendment rights.

Even if such information were relevant here, the State has not shown any

likelihood that WPATH's internal deliberations contain the information it seeks,

and "mere speculation" does not justify infringing First Amendment interests.

*Black Panther Party*, 661 F.2d at 1268; *see also Rosa v. City of Seaside*, 2009 WL

2382760, at *2 (N.D. Cal. July 29, 2009) ("The reliance of the opposing party on a

study does not entitle the moving part to a fishing expedition in order to attack a

report it dislikes.").  In addition, "[e]ven when the information sought is critical to

a litigant's case, disclosure should be compelled only after the litigant has shown

that he has exhausted every reasonable alternative source of information." *Black*

7

*Panther Party*, 661 F.2d. at 1268.  Here, the State has never explained why it needs

access to WPATH's internal deliberations to attack the Standards of Care.  If the

State wants to impeach the Standards of Care, it can examine the medical literature

and secure its own experts.  *See, e.g.*, *Perry*, 591 F.3d at 1161 (court should

consider "the existence of less intrusive means of obtaining the information");

*Rosa*, 2009 WL 2382760, at *2 (holding that there was no substantial need to

depose the author of such issues where the report disclosed the relied-upon sources

and methodology).

Because WPATH has shown that its First Amendment interests in the

requested material substantially outweigh the State's purported need for that

information, WPATH has demonstrated a strong likelihood of success on the

merits of an appeal.  This factor weighs in favor of a stay.

**B.     WPATH Would Be Irreparably Injured Absent a Stay.**

A party moving for a stay must show an irreparable injury.  The injury must

be "neither remote nor speculative, but actual and imminent." *Northeastern*

*Florida Chapter of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1285

(11th Cir. 1990).  A party injured irreparably usually lacks "adequate

compensatory or other corrective relief … in the ordinary course of litigation." *Id.*

The Supreme Court has held that infringement of a First Amendment right

constitutes irreparable harm in and of itself, and that temporary relief is warranted

when "First Amendment interests [are] being threatened or in fact being impaired

at the time relief [is] sought." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also*

*id.* ("The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury.").

In this case, WPATH has submitted unrefuted evidence that the compelled

disclosure of its internal deliberations in compliance with the Order is having and

would have a chilling effect on its exercise of its free speech and associational

rights under the First Amendment. *See* WPATH Decl. (Doc. 208-4, ¶¶ 11–16).

The irreparable injury factor is thus satisfied in this case. *See Chaplaincy of Full*

*Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) ("Within the

irreparable harm analysis itself . . . [a court should] examine only whether [the

alleged infringement of First Amendment rights] if true, inflicts irremediable

injury.").

Even apart from the special First Amendment concerns the Supreme Court

recognized in *Elrod v. Burns*, this case is different from many others in which a

party seeks to stay discovery of contested material pending an appeal.  In other

cases, a party might have a post-trial remedy if a trial court improperly admits

evidence that is later found to be improper.  For example, the appellate court might

order a new trial that excludes the contested material.  By contrast, WPATH's only

interest in this case is in preventing the harm to First Amendment rights that it will

suffer if it is required to produce their internal deliberations.  *See Whole Woman's Health*, 896 F.3d at 367 (holding that "the consequence of forced discovery [from a nonparty asserting First Amendment privilege] is 'effectively unreviewable' on appeal from the final judgment").  In this case, absent a stay, no remedy could undo those harms—WPATH's injuries would be irreparable.

**C.    A Stay Will Not Harm the State.**

The third factor also supports a stay.  If the Eleventh Circuit holds that these subpoenas violate the First Amendment, the State's interests would be *furthered*, because states have an duty to avoid violating the Constitution.  *See* Const. Art. VI cl. 2.  If the Eleventh Circuit allows the subpoenas to stand, the only harm to the State would be delayed discovery, which would be minimal, transient, and vastly outweighed by the potential harm WPATH would suffer in the absence of a stay.  Consequently, this factor weighs in favor of granting a stay.

**D.    A Stay Would Further the Public Interest.**

Finally, the public interest strongly favors granting a stay to protect WPATH's First Amendment rights.  The Eleventh Circuit has expressly held that the public has a "strong … interest in protecting First Amendment values." *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("It is always in the public interest to prevent a violation of a party's constitutional rights." (internal quotation omitted)); *G & V*

10

*Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.

1994) (same).

 The public interest also strongly favors granting a stay in this case because

the prospect of compelled disclosure is already chilling WPATH's educational and

scientific efforts and disclosure would have a still greater destructive effect.

WPATH's mission is "to promote evidence-based care, education, research, public

policy, and respect in transgender health."  WPATH Decl. (Doc. 208-4, ¶ 4).  It

engages in a variety of activities, including "educational symposia, courses, and

workshops to improve access to and-up-to information and research."  *Id.* ¶ 6.

Already, the subpoena has "created a notable chill on [WPATH's] educational

efforts."  *Id.* ¶ 15.  The prospect that internal deliberations might be disclosed

threatens to disrupt WPATH's work with the dozens of medical experts who

volunteer their expertise to help WPATH "to understand the latest science, and to

review and edit [its] publications, educational materials, curriculum, and public

statements," because WPATH's ability to receive "candid feedback" from those

experts "depends on the confidence that peer reviews and communications within

WPATH will not be publicly disclosed."  *Id.* ¶ 16.

 In similar contexts, courts have recognized the public interest in protecting

third-party experts from discovery. "Compelling testimony from a third party

researcher risks chilling participation in beneficial public research."  *In re*

*Fosamax Prods. Liab. Litig.*, 2009 WL 2395899, at \*4 (S.D.N.Y. Aug. 4, 2009).

Permitting such discovery "'inevitably tend[s] to check the ardor and fearlessness

of scholars, qualities at once so fragile and so indispensable for fruitful academic

labor.'" *Id.* (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957)

(Frankfurter, J., concurring)).

In short, the public interest in protecting WPATH's First Amendment rights

and the interest in promoting rather than chilling educational and scientific efforts

weigh strongly in favor of a stay.

## III.   CONCLUSION

For the reasons set forth above, WPATH respectfully requests that the Court

stay its obligation to produce any materials pursuant to the Order pending the

disposition of its efforts to appeal that Order.

April 7, 2023

Respectfully submitted,

*/s Barry A. Ragsdale*

Barry A. Ragsdale
ASB 2958-A23B

Cortlin H. Lannin (CA Bar No. 266488)
(admitted pro hac vice)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-6000
clannin@cov.com

Barry A. Ragsdale (ASB 2958-A23B)
Robert S. Vance III (ASB 9916-B11Q)
DOMINICK FELD HYDE, P.C.
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Phone: (205) 536-8888
BRagsdale@dfhlaw.com
RVance@dfhlaw.com

D. Jean Veta (D.C. Bar No. 358980)
(admitted pro hac vice)
Noah S. Goldberg (D.C. Bar No.
90003045) (admitted pro hac vice)
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, DC 20001
Phone: (202) 662-6000
jveta@cov.com
ngoldberg@cov.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2023, electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record.

Respectfully submitted,

/s Noah S. Goldberg
Noah S. Goldberg
Admitted Pro Hac Vice