## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| Brianna Boe, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Intervenor Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-184-LCB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General, | ) | |
| of the State of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER

# TABLE OF CONTENTS

Table of Contents ............................................................................. i

Table of Authorities ....................................................................... ii

Introduction ...................................................................................... 1

Background ........................................................................................ 4

    I.  United States ............................................................................. 4

    II.  WPATH ...................................................................................... 6

    III. Plaintiffs ................................................................................... 8

    IV. Current Status ....................................................................... 10

Argument ......................................................................................... 10

    I.  An extension is necessary for a full and fair adjudication ......................... 11

    II.  Defendants have made diligent efforts to finish discovery ...................... 13

    III. Plaintiffs and the United States would suffer no undue prejudice ........... 15

Conclusion ...................................................................................... 15

Certificate of Service ................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Akridge v. Alfa Mut. Ins. Co.*,
 1 F.4th 1271 (11th Cir. 2021) .................................................. 11, 13, 14

*Batton v. Oak Inv. Grp. Corp.*,
 No. 2:18-cv-1361-JEO, 2019 WL 13131388
 (N.D. Ala. May 1, 2019) ......................................................................15

*Hickman v. Taylor*,
 329 U.S. 495 (1947)..............................................................................11

*Hunting Energy Servs., Inc. v. Kavadas*,
 No. 3:15-cv-228 JD, 2018 WL 4539818 (N.D. Ind. Sept. 20, 2018) .................14

*Johnson v. Charter Commc'ns, Inc.*,
 No. 5:20-CV-2056-LCB, 2022 WL 4285726
 (N.D. Ala. Sept. 14, 2022) ......................................................... 13, 14

*Malautea v. Suzuki Motor Co.*,
 987 F.2d 1536 (11th Cir. 1993) ................................................. 11, 14

*Nobles v. Rural Cmty. Ins. Servs.*,
 303 F. Supp. 2d 1279 (M.D. Ala. 2004)............................................15

*Romero v. Drummond Co.*,
 552 F.3d 1303 (11th Cir. 2008) .........................................................13

## Rules

Fed. R. Civ. P. 16 ...................................................................................10

## Other Authorities

6A Wright & Miller, Federal Practice & Procedure § 1522.2 (3d ed.) ...................14

# INTRODUCTION[1]

From the start of this case, the Defendants have made clear that they would move expeditiously while recognizing that "there is a fair amount of discovery" relevant to the complex issues here. Doc. 105 at 413. When the Court asked the parties at the end of the preliminary injunction hearing in May of last year whether this case should be "on a regular trial track" or "an expedited track," the Plaintiffs pressed for expedition and "a six-month discovery window." *Id.* at 414. Recognizing this Court's preference for an expedited track—and agreeing with that approach in light of the Court's preliminary injunction against enforcement of the Act—the Defendants agreed with Plaintiffs and the United States to propose that fact discovery be completed by February 17, 2023 and expert discovery by April 10, with trial after dispositive motions in August 2023. Doc. 134 at 5, 7; Doc. 135 (ordering this schedule). The parties subsequently asked the Court to amend the scheduling order for discovery to close on June 9, with trial for October, Doc. 199, and the Court later moved the trial date up to August, with discovery closing June 30. Docs. 216, 225, 270.

Since then, however, it has become clear that, due to circumstances outside their control, Defendants cannot fairly litigate this case under the existing schedule.

---

[1] Defendants notified the Private Plaintiffs and the United States of this motion and asked the other parties to state their position concerning the motion within 24 hours. A day-and-a-half later, the United States stated that it is considering the proposal but does not yet have a position. Defendants have not heard from the Private Plaintiffs.

The Defendants sought highly relevant discovery from HHS, WPATH, and Plaintiffs over six months ago. After negotiations broke down, Defendants were forced to engage in motions practice this past January, and the Court entered orders at the end of March requiring these entities to produce almost all the discovery Defendants had requested.

That discovery process is finally now proceeding. Defendants and HHS are having fruitful discussions about discovery with HHS—which entities within HHS are likely to have relevant material, how to identify custodians, which search terms to use, and the like. But this is a complex process and will take time. Based on representations by HHS, it is apparent that HHS cannot produce what it has been ordered to produce by the end of June—and that if it did, there would be no way for Defendants to review that large set of documents to make use of them for dispositive motions two weeks later or for trial the following month.

As for WPATH, despite an order from this Court requiring them to turn over documents, WPATH has refused to do so. Conversations have continued while WPATH awaits this Court's ruling on its pending motions, but those conversations have demonstrated it is highly unlikely that a full production can be made on the current schedule. WPATH is preparing to make a limited initial production that is only partially responsive to some of the document requests this Court ordered WPATH to fulfill, but WPATH has thus far declined to identify custodians or begin

2

negotiating search terms, which this Court had previously suggested could be the "starting point" for WPATH's production. Doc. 246 at 68. It appears that WPATH may wait until its pending motions have been ruled on and its appellate options have been exhausted before beginning earnest negotiations over that starting point.

The Defendants do not want to delay this case. They have tried to move forward as quickly as possible. They have diligently engaged in discovery since last summer, trying to negotiate to avoid motions practice and quickly move through such practice when necessary. They asked for all the information here over six months ago. And as the only party that would be harmed by further delay—since it would mean that Alabama's law protecting children would continue to go unenforced—Defendants do not make this request lightly. But at this point, Defendants do not believe it possible to obtain a full, fair adjudication at a trial in August. The Defendants cannot prepare their case without information that this Court found to be critical. They cannot take meaningful depositions without that information. And their experts cannot provide full analysis without that information. All this means that any trial that happens in August would not provide Defendants a full and fair adjudication. Defendants thus respectfully request that the trial date be moved to March 2024 or as soon as the Court is available thereafter, with interim deadlines adjusted by approximately six months in accordance with the proposed order attached to this motion.

## BACKGROUND

While Defendants have continually pushed this case forward since the Court's preliminary injunction hearing, due to circumstances beyond their control, it is apparent that necessary discovery cannot be completed on the current schedule.

### I.   United States

Defendants served requests for production on the United States on September 20. *See* Doc. 227-1 at 4-23. After the United States sought an extension, it eventually served facially deficient responses and objections on November 3. *Id.* at 24-121. It likewise provided incomplete answers to the Defendants' interrogatories. *See generally* Doc. 250 at 5-8. The parties then engaged in a months-long conferral process, during which the United States refused to budge, insisting that the United States Department of Health and Human Services "is not a part of the United States." Doc. 227-1 at 126; *see* Doc. 227-1 at 123-35.

Once the United States and the Defendants reached an impasse, the Defendants promptly moved to compel responses to the requests for information on January 24. Doc. 227. Recognizing the urgency of the situation, the Defendants asked the Court to schedule the motion for the hearing on February 8, which would have given the United States 10 days to respond. Doc. 228. The United States opposed, stating that allowing additional time to respond "should not further delay discovery in this case or affect any deadlines." Doc. 229 at 3. The Court set the motion to be heard on

March 8. Doc. 231. The Defendants also had to move to compel responses to their interrogatories. Doc. 250.

At the hearing, after months of asserting that "HHS is not part of the United States," the federal government abandoned the argument. Doc. 261 at 4 n.4. This Court entered an order on March 27 largely rejecting the United States' other arguments and granting both of the Defendants' motions to compel. Docs. 261, 262. The Court held that the requests for production were "reasonably likely to reveal evidence pertaining" to "whether puberty blockers and hormone therapies are a safe and effective way to treat gender dysphoria in minors," an issue on which the Court said "[t]his case turns, at least in part." Doc. 261 at 4-5; Doc. 262 at 4. And the Court found that the United States "puts forth no persuasive evidence or argument that producing the requested documents would be unduly burdensome." Doc. 261 at 5.

Well over a month later, with the end of discovery looming, the United States has not yet begun running any searches for electronically-stored information nor supplemented their interrogatory responses (though Defendants understand the supplemental responses may come soon). The parties have, however, had fruitful conversations about discovery. They have spent hours on the phone discussing which divisions at HHS are likely to have discoverable information (and which can be marked off the list to make the discovery process less burdensome); they are near an agreement on which search terms to use for an initial search across the identified

divisions to get an idea of how many documents might be returned (and thus whether the search terms need to be further refined); and they have discussed ways to reduce the burdensomeness in divisions where ESI searching might not make sense. HHS representatives have indicated that this initial process will take a significant amount of time.

## II.   WPATH

Given the centrality of WPATH's guidelines to the claims alleged and evidence offered—as well as public information casting doubt on how those guidelines were created, *see* Doc. 219 at 19-24—Defendants served a tailored subpoena on WPATH seeking information about the guidelines' development on October 13, 2022. Doc. 208-2 at 56-70. During extensive meet-and-confers, Defendants further narrowed their requests to address WPATH's concerns, Doc. 263 at 7-8, but WPATH refused to respond and instead moved to quash two months after service of the subpoena, Doc. 208.

This Court held a hearing on February 8. The Court explained that the State's subpoena was directed at information "around the very heart of what plaintiffs think is the core of their case," and WPATH conceded that there was no "dispute whatsoever that the WPATH guidelines are relevant to this case." Doc. 246 at 64. The Court accordingly suggested that WPATH again try to reach an agreement with the State to disclose relevant information. *See id.* at 68 (referring to "search terms" and

"representative e-mails" as "a starting point"). WPATH stated it would be willing to "look[] for a compromise" at the "sensible place" reached by Judge Nichols in the unrelated Florida litigation discussed above. *Id.* at 54.

But WPATH ultimately abandoned Judge Nichols's approach in the Florida Medicaid litigation. Doc. 266 at 15. Even though developments in that litigation "had no material bearing" on these issues, Doc. 263 at 3 n.2, WPATH's delay forced the Court to convene a second hearing six weeks later, on the eve of Defendants' expert reports being due.

Soon after, on March 27, this Court denied WPATH's motion to quash. Doc. 263. The Court found that "the information WPATH seeks to withhold will likely have an immensely important effect on resolution of th[e] central issues" in this case. *Id.* at 8. The Court also found that any "burden of production is not disproportionate to the needs of this case," given both "the requested information's crucial import" and Defendants' "reasonable measures to … ensure that its subpoena imposes upon WPATH no *undue* burden." *Id.* at 7-8. According to the Court, "[p]roscription of the discovery Defendants seek would, in essence, amount to acceptance of WPATH's standards as 'established, evidence-based clinical guidelines' on WPATH's word alone, and without further inquiry." *Id.* at 10.

Weeks went by—even though Defendants' expert reports were then due on April 10. Eventually WPATH filed a motion to certify the denial of its motion to

quash for interlocutory appeal and a motion to stay. The Court has not granted any stay. Yet even though WPATH told the Court that it had a subset of responsive materials already compiled on a hard drive, Doc. 266 at 11, it has yet to make that production, though WPATH suggests it may do so soon. And it has signaled that it may refuse to turn over responsive emails from the actual drafters of WPATH's latest standards.

Defendants are still in discussions with WPATH and looking for a way to proceed with discovery once WPATH becomes willing to follow the Court's order. Defendants have proposed ten possible custodians for ESI searches, but WPATH has (thus far) refused to agree or to suggest alternatives. WPATH has discussed ways to produce *some* of the information this Court has ordered the organization to produce, but not nearly all of it. In other words, as with HHS, it appears that WPATH will be unable to satisfy its obligations under the Court's order on the current schedule. Because the documents Defendants have requested are necessary to their case, Defendants reluctantly seek an extension of the discovery deadline.

## III.    Plaintiffs

On July 18, 2022, Defendants served their requests for production on Plaintiffs, requesting (among other things) relevant medical records. *See* Doc. 215-1 at 1-17. On August 22, Plaintiffs responded to these requests, objecting that "Plaintiffs[ ] challenge on its face the constitutionality of the Act." *Id.* at 25. For four months, the

parties met and conferred, by telephone conference and email. *See generally id.* at 58-95. Within a few days of the Plaintiffs' final refusal on December 26, 2022, the Defendants moved to compel production of the relevant medical records. Doc. 215 (filed Jan. 5, 2023). After a February 8 hearing, this Court granted the motion on March 27, explaining that "Plaintiffs' medical records are almost certainly necessary to resolve the important issues presented in this action." Doc. 260 at 5.

The Plaintiffs produced most of the medical records on April 14, and the parties set depositions of the Parent Plaintiffs to take place between May 2 and 12. On April 27, in response to an inquiry by Defendants, Plaintiffs acknowledged that some of the Plaintiffs' medical providers were not fully cooperative in the discovery process and the records they produced were incomplete—some records were redacted, others were missing completely, and many of the records had not been updated since Plaintiffs first received them in the fall. Plaintiffs have since made supplemental productions and requested updated records from certain providers. Defendants have also had to subpoena other records from providers.

All this means that the Defendants have been forced to depose the Plaintiffs without full and complete records about them. The Defendants' experts have also been trying to analyze incomplete records, with their reports due on May 19. And the Defendants have had to urgently send multiple third-party subpoenas to the medical providers that were not cooperating with the Plaintiffs. Given the tight timing

before the close of discovery on June 30, it is unclear whether the Defendants will be able to obtain all relevant records, much less in time for appropriate deposition inquiry, expert analysis, or follow-up discovery.

## IV.   Current Status

Defendants lack the responsive materials discussed above from the United States, WPATH, and Plaintiffs. Yet on the current schedule, Defendants' expert reports are due on May 19, Plaintiffs' and the United States' rebuttal expert reports are due on June 16, all discovery (including depositions) must be completed by June 30, dispositive motions must be filed by July 14, and trial is scheduled to begin August 21. Doc. 270. Even though Defendants lack complete medical records, depositions of the Plaintiffs have begun, and most expert depositions are clustered between May 19 and June 30.

## ARGUMENT

Rule 16(b)(4) permits the schedule to be modified "for good cause." Such modification is proper if the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes. Courts consider several factors when assessing whether good cause exists, including the importance of the issues, the diligence of the party seeking an extension, and any prejudice to the other parties. All those factors support extending the schedule here.

I.   **An extension is necessary for a full and fair adjudication.**

The Federal Rules "strongly favor full discovery whenever possible." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (cleaned up). "[A] civil litigant is generally entitled to any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* (cleaned up). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," so "either party may compel the other to disgorge whatever facts [it] has in [its] possession." *Id.* at 1277-78 (cleaned up) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). These rules "promote the search for truth that is the heart of our judicial system." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993).

The Court already held that the relevant discovery materials—medical records from the Plaintiffs, HHS information from the United States, and background on WPATH's standards—are crucial to the proper resolution of this case. As the Court said, "Plaintiffs' medical records are almost certainly necessary to resolve the important issues presented in this action." Doc. 260 at 5. HHS's information is "reasonably likely to reveal evidence pertaining" to "whether puberty blockers and hormone therapies are a safe and effective way to treat gender dysphoria in minors." Doc. 261 at 4-5. And forcing Defendants to litigate this case without WPATH's materials would be "making them try this with a hand behind their back." Doc. 266 at

17; *see also* Doc. 263 at 8 (explaining that "the information WPATH seeks to with-hold will likely have an immensely important effect on resolution of th[e] central issues").

Defendants cannot obtain, analyze, and follow up on these crucial materials absent an extension. The United States has not committed to being able to fully com-ply with this Court's order compelling production on the existing deadline. WPATH has not committed to fully complying on the current schedule either. And though the Plaintiffs are continuing to turn over medical records—even as Plaintiff depositions are happening—the lack of cooperation from Plaintiffs' medical providers has forced Defendants to serve several more third-party subpoenas on providers. For all of this information, it is doubtful that the Defendants would even *obtain* critical ma-terials before discovery closes and dispositive motions are due.

Even if Defendants could obtain some of this information, they cannot mean-ingfully analyze and follow up on the information with the looming deadlines. Again, the Plaintiffs' records are a perfect example: Defendants are trying to depose multiple Plaintiffs—knowing that over a dozen expert depositions must be done be-fore June 30—without having full medical records for those Plaintiffs. Defendants' experts are trying to process the incomplete records and explain what they say about the Plaintiffs with less than two weeks until their reports are due. And Defendants would have no time to develop more evidence in response to whatever materials

Plaintiffs or their providers eventually turn over. Likewise, the materials the Court ordered the United States and WPATH to produce will provide critical inputs for the analyses of Defendants' experts, and Defendants' experts obviously cannot begin to analyze those materials until they are produced.

For all these reasons, failing to extend the schedule would deprive the Defendants—and this Court—of critical information necessary for a thorough adjudication of the merits. An extension is required.

## II.   Defendants have made diligent efforts to finish discovery.

A primary factor that courts consider for scheduling order extensions is whether the party seeking the extension "ha[s] been diligent." *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008); *e.g.*, *Johnson v. Charter Commc'ns, Inc.*, No. 5:20-CV-2056-LCB, 2022 WL 4285726, at *1 (N.D. Ala. Sept. 14, 2022). Here, Defendants sought this information "from the outset of discovery," *Akridge*, 1 F.4th at 1278, and have followed up with repeated meet-and-confers, timely motions to compel, compromise negotiations, and finally this motion. *See supra* pp. 4-10. The Defendants have repeatedly sought to push forward discovery, notwithstanding the other parties' reluctance, and have requested faster hearings and shorter motion deadlines. This motion itself was filed well before the close of discovery, as soon as it became apparent that complete production from Plaintiffs, the United States, and WPATH would not happen before that deadline.

Defendants are not at fault for the need to extend the schedule. Defendants do not contest the rights of the other parties to vigorously litigate this case. But that litigation must be conducted consistent with the Federal Rules' requirement for full discovery. *See Akridge*, 1 F.4th at 1276. And it remains true that the other parties' "resistance to discovery [has] required [the Court] to issue [four] orders compelling the production of information that should have been produced without any judicial prompting." *Malautea*, 987 F.2d at 1545. That sustained resistance led directly to the problems Defendants now face, as the other parties' tactics would (even if unintentionally) cause "the time for discovery to end before the [Defendants] had obtained the discovery material that [they] need[] to litigate this case." *Id.* (cleaned up); *see Johnson*, 2022 WL 4285726, at *2 (emphasizing apparent "attempt[] to 'run out the clock' on discovery"); 6A Wright & Miller, Federal Practice & Procedure § 1522.2 (3d ed.) ("When the modification is necessitated by acts of the opposing party or by the opponent's failure to act, relief also has been deemed appropriate."); *cf. Hunting Energy Servs., Inc. v. Kavadas*, No. 3:15-cv-228 JD, 2018 WL 4539818, at *6 (N.D. Ind. Sept. 20, 2018) (noting that parties cannot "avoid producing … relevant materials just because they were able to run out the clock on the discovery period through their own neglect").

14

Because "the pretrial schedule could not reasonably have been met despite [Defendants'] diligence," an extension is proper. *Nobles v. Rural Cmty. Ins. Servs.*, 303 F. Supp. 2d 1279, 1284 (M.D. Ala. 2004).

## III. Plaintiffs and the United States would suffer no undue prejudice.

Last, Plaintiffs and the United States would suffer no undue prejudice from an extension. *See Batton v. Oak Inv. Grp. Corp.*, No. 2:18-cv-1361-JEO, 2019 WL 13131388, at *2 (N.D. Ala. May 1, 2019) (considering potential prejudice). The extension would merely require them to fully produce information that the Court has already ruled they must produce. And given that a preliminary injunction is in place, a delay in the trial date and ultimate adjudication will not unduly prejudice Plaintiffs or the United States. To be sure, that delay will prejudice *Defendants*, who maintain that the Act is critical to protecting Alabama children. But Defendants would rather this case be tried with the benefit of a full record than based on a lopsided record resulting from inadequate discovery.

## CONCLUSION

For the foregoing reasons, the Court should reset the trial date for March 2024 or as soon thereafter as the Court is available. The Court should also adjust the interim deadlines in this case by approximately six months in accordance with the proposed order attached to this motion.

Date: May 10, 2023

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*
Bethany C. Lee (ASB-9480-R46Z)
  *Assistant Solicitor General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Bethany.Lee@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

16

**CERTIFICATE OF SERVICE**

I certify that I electronically filed this document using the Court's CM/ECF system on May 10, 2023, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
*Counsel for Defendants*