UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| and | ) |
| | ) |
| United States of America, | ) |
| | ) |
| *Plaintiff-Intervenor*, | ) |
| | ) |
| v. | ) No. 2:22-cv-00184-LCB-CWB |
| | ) |
| Hon. Steve Marshall, in his official capacity as Attorney General of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

### PLAINTIFF-INTERVENOR UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER

The United States does not oppose the dates set forth in Defendants' Proposed Fifth Amended Scheduling Order, except for the proposed date for Defendants' disclosure of their expert reports.[1] However, in order to make the discovery process more efficient and to allow for a quicker resolution of this

---

[1] Defendants, who have disclosed eight experts, have proposed disclosing their expert reports on November 20, 2023, more than nine months after Private Plaintiffs and the United States disclosed their reports on February 13, 2023. The United States respectfully suggests that Defendants disclose their expert reports under the current schedule, on May 19, 2023, and be permitted to supplement them at a later date, if necessary. This will allow the Plaintiffs to conduct discovery on these opinions with sufficient time before trial.

litigation, the United States respectfully requests that the Court set parameters on the document production from the U.S. Department of Health and Human Services ("HHS").

In order to fully brief the Court on these critical issues, HHS's counsel and two representatives from HHS's Office of the Chief Information Officer ("OCIO") will attend the May 22, 2023 hearing, in addition to counsel of record for the United States. The undersigned request that these agency representatives be permitted to address the Court should questions arise related to HHS document production.

## BACKGROUND

On March 27, 2023, the Court ordered the United States to produce documents on behalf of HHS in response to 13 requests for production.[2] Since then, and as Defendants acknowledge in their motion, the parties have worked cooperatively, held numerous phone conferences, oftentimes with counsel for HHS, and devised a plan for producing documents. Because HHS is a large federal agency employing over 80,000 individuals that is comprised of 14 staff divisions within the Office of the Secretary, 12 operating divisions, and 10 regional offices—all of which essentially operate as separate companies—the United States

---

[2] This response does not address the Court's separate March 27, 2023 order (ECF No. 262) granting in part Defendants' motion to compel responses to interrogatories from HHS. The United States served HHS's responses on May 12, 2023.

and HHS opened the discussion by suggesting that the parties attempt to limit the search to only the divisions that were the most likely to have responsive documents based on their area of focus. In response, Defendants agreed to take all regional offices, 12 staff divisions, and four operating divisions off the table. While this narrowed the scope to a degree, nine divisions remain, including some of HHS's largest components, such as the National Institutes of Health ("NIH"), Centers for Medicare and Medicaid Services ("CMS"), and the Food and Drug Administration ("FDA"), which have a sizable number of employees. These nine divisions employ approximately 47,000 of HHS's 80,000 employees.

Around the same time, the parties began exchanging a draft list of search terms. The parties disagreed about whether the search terms should be used to search the network drives of each of the divisions of HHS in addition to email servers. The United States and HHS explained that collecting and processing the documents sought by Defendants using search terms for both emails and network drives will result in several terabytes[3] of data comprising multiple millions of pages of documents, and therefore will likely not only take months to collect, but

---

[3] "It is estimated that 85,899,345 pages of Word documents would fill one terabyte." *A Terabyte of Storage Space: How Much Is Too Much?*, The Information Umbrella, https://aimblog.uoregon.edu/2014/07/08/a-terabyte-of-storage-space-how-much-is-too-much/ (last visited May 19, 2023).

3

also additional months following collection to review.[4] As an alternative approach, the United States and HHS proposed that HHS use a method for collecting documents similar to the one it uses when it compiles an administrative record. Under that approach, HHS would manually collect documents directly from the individuals who have responsive information. HHS would still use search terms to search the email servers for the agreed-upon custodians' accounts. Defendants initially rejected this idea out of hand, expressing a concern that the United States would fail to turn over responsive documents. After some additional negotiation, Defendants finally agreed on May 16 to a manual collection of responsive data from three divisions: CMS, Indian Health Service ("IHS"), and Agency for Healthcare Research and Quality ("AHRQ"). HHS will begin a rolling production of documents manually collected from these divisions as soon as possible, and no later than June 30, 2023.

The parties have, since these discussions began on March 31, disagreed regarding the use of search terms. The United States initially suggested that Defendants provide a *few* proposed search strings to assist HHS in identifying custodians. Instead, Defendants sent the United States a list of 78 terms, some of which extended beyond the issues involved in this litigation and implicated serious

---

[4] HHS's Chief Information Officer submitted a declaration in opposition to Defendants' Motion to Compel describing the search process, practical issues, and heavy burden associated with the scope of the collection requested by Defendants. (ECF No. 247-5.)

privacy concerns, including "LGBTQI+," as well as "transphobi!."[5] HHS explained to Defendants the long and overly broad list of terms could not be used to identify custodians or run test searches because the terms were too general and running such a large number of broad terms through the network drive of even one division would take months. Instead, the United States attempted to negotiate with Defendants to narrow the terms, both in scope and number. Through numerous exchanges and hours spent on the phone, the parties have managed only to decrease the number of terms to 52. Generally, as the United States attempts to narrow the terms on the list, Defendants respond by broadening them again. Finally, to break the loggerhead, on May 8, HHS took five terms that had been provided to Defendants and began running test searches through the personal network drives of 15 custodians from three divisions: AHRQ, Office of the Assistant Secretary for Health ("OASH"), and Office for Civil Rights ("OCR"). Based on this test search, HHS estimates that Defendants' approach would result in more than 165,000 documents, exclusive of emails and agency shared network drives, which will take approximately 5,500 attorney hours to review. When added with emails and documents from agency shared network drives, the millions of

---

[5] The Court's March 27 Order denied Defendants' motion to compel with respect to Request for Production ("RFP") 6 ("[a]ll Communications and Documents since January 1, 2017, concerning Transitioning or the treatment of Minors for Gender Dysphoria or a Related Condition") stating that it was "neither tailored to the issues presented in this case nor proportional to the needs of Defendants."

pages that HHS will need to review will vastly increase the review time. The United States and HHS also provided a list of 10 proposed custodians most likely to have responsive information to Defendants on May 12 and are still waiting for their response.

**THE UNITED STATES' PROPOSED DISCOVERY PLAN**

In order to ensure that it complies with the Court's expectations, the United States proposes a bifurcated plan for producing documents on behalf of HHS:

**<u>Network Drives</u>**

- The parties have agreed that the network drives of the following HHS divisions are the ones that are most likely to have documents responsive to the 13 requests at issue: OASH, OCR, AHRQ, CMS, FDA, Health Resources and Services Administration ("HRSA"), IHS, NIH, and Substance Abuse and Mental Health Services Administration ("SAMHSA").

- The parties have agreed that HHS will perform a manual collection for documents and data from CMS, IHS, and AHRQ.

- For the remaining divisions, HHS will designate an agency employee from each of the identified divisions who will be responsible for collecting the documents.

- Each designee will communicate with managers and staff of their division to ensure that all documents within their files that are responsive to the 13 requests are collected.

- An attorney or team of attorneys will begin conducting a review for responsiveness and privilege simultaneous to the collection of documents.

- The designee will document all steps taken during the collection and review process and certify that every effort has been made to collect all responsive documents.

- HHS will continue to produce all responsive, non-privileged documents on a rolling basis. At this point, HHS anticipates it can complete that production within four months. By July 31, 2023, the United States will be in a better position to provide an estimated date by which the production will be complete and can provide the Court with an update at that time.

- The United States and HHS anticipate that this document production will provide to Defendants the documents that they have asserted they need the most.

**Emails**

- The parties will agree upon a reasonable list of no more than 11 custodians. The parties will agree upon a reasonable list of no more than 10 narrow search terms to be used to search the email folders of the 11 custodians. For

each search term, Defendants will specify which RFP(s) formulate the basis for that search term. HHS will use an iterative process to test search terms, and the United States and HHS will work in good faith with Defendants to arrive at the search terms that are mutually agreeable to the parties. By July 31, the United States can provide the Court with an update on the progress the parties have made.

- HHS will produce all responsive, non-privileged emails and attachments on a rolling basis, with rolling productions to begin within a reasonable time after the parties have agreed upon custodians and search terms.

Even under this more efficient plan for responding to Defendants' discovery requests, HHS is unable to provide an estimate of when it would be able to complete production of emails since, even with 11 custodians and 10 search terms, the "narrowed" search terms the parties will initially agree to might still take several attempts at running test searches to refine. Additionally, without knowing the volume of documents and emails that will be collected using the process described above, HHS cannot estimate how long it will take to review the collection. However, HHS believes that it is reasonable to begin a rolling production no later than June 30. By July 31, 2023, the United States and HHS will be in a better position to assess the scope of the production, and can provide the

Court an update on the timeline and any other recommendations about how to complete the production in a timely manner.

## ARGUMENT

I.  **The United States' Proposed Discovery Plan Is Proportional to the Needs of the Case.**

The plan the United States proposes for the production of documents is not unusual and contains more assurances of reliability than what is required by the Federal Rules of Civil Procedure. HHS customarily follows a similar procedure when compiling an administrative record, which it is required to do when met with a challenge to one of its rules.

There are three distinct advantages to the United States's proposed plan over the one Defendants propose. First, the process for compiling network documents can begin immediately, and will not be held up by the iterative process that the parties must follow to develop search terms specific for each division. Currently, the parties are negotiating the initial list of search terms and, once that list is agreed upon, each of the divisions must run test searches so the parties can further refine the terms.

Second, directly compiling network documents implicitly removes privileged documents and duplicates from the collection at the front end. For instance, the deliberative process privilege protects drafts from production, but search terms are incapable of distinguishing between a draft and a final version.

9

When conducted by HHS personnel, privileged documents and duplicates can simply be set aside and logging could begin *during* the collection process instead of after the collection is complete. This will expedite the review and production process.

Third, the HHS personnel who actually work in these areas know where to look for documents and can collect those that they know relate to the underlying subject matter. Relying on search terms is more imprecise, since computers are likely to "hit" upon a large number of false positives which, when dealing with such a large volume of documents, exponentially increases the amount of time it takes to review them after they are collected.

In sum, adding back the human element to the document collection process will allow for all steps—collection, quality control, deduplication, and privilege review—to be run simultaneously by people who already have some familiarity with the subject and the documents. The process can also be run in parallel with the email collection, making the United States' proposed plan more efficient and less likely to result in undue delays in the scheduling for this case than the one proposed by Defendants.

II.     **Defendants' Insistence on Using Search Terms to Search Network Drives Will Cause Undue Delay and Burden.**

Relying primarily on the use of search terms to scour entire network drives, some of which consist of many terabytes of data, will cause undue delay and

burden in this case. Courts consider burden in terms of proportionality, which means that considerations "include the importance of the requested discovery, the parties' relative access to the information, and 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Taylor v. Farm Credit of N. Fla. ACA*, No. 21-13807, 2022 WL 4493044, at *3 (11th Cir. Sept. 28, 2022). A court must weigh these proportionality factors "in conjunction with the potential relevance of the requested information." *Garber v. Nationwide Mut. Ins. Co.*, No. 5:21-cv-00546, 2022 WL 1420916, at *9 (N.D. Ala. Mar. 24, 2022). The lesser an information's relevance, the more likely its discovery will be found disproportionate. *Cf. id*.

As explained in its Response in Opposition to Defendants' Motion to Compel (ECF No. 227), according to HHS's Chief Information Officer, HHS cannot conduct one single HHS-wide search because every division has their own data storage systems run by their own technical personnel, so this endeavor is akin to running searches of seven separate companies (plus the three that will use manual searches). The collection process will likely result in multiple millions of pages of documents, which will then need to be followed by attorney review for responsiveness and any applicable privileges.

In contrast, the plan set forth by the United States is much more efficient because quality control (elimination of non-responsive documents), deduplication,

and privilege review can occur simultaneous to the collection. Using search terms for network drives casts an incredibly wide net, is likely to result in thousands of false positives (as well as false negatives), and will take far longer to review once it is collected.

Any suggestion by Defendants that the United States's method is insufficient because machine-run searches are more reliable is misplaced. In fact, district courts have recognized the many "well-known limitations and risks" of using keyword searches in ESI productions. *See Venturedyne v. Carbonyx*, No. 2:14-cv-351, 2016 WL 6694946, at *1 (N.D. Ind. Nov. 15, 2016) (citing *Victor Stanley v. Creative Pipe*, 250 F.R.D. 251, 260 (D. Md. 2008)). Defendants can offer no proof that turning the collection over to computers makes it any more reliable than if conducted by HHS personnel, the very people that are likely to have created, reviewed, and discussed the documents that are at issue. Chief among the concerns with keyword searches are that they "necessarily result[] in false positives (irrelevant documents flagged because they contain a search term) and false negatives (relevant documents *not* flagged since they do not contain a search term)," *Makowski v. SmithAmundsen*, Case No. 08-c-6912, 2012 WL 1634832, at *1 (N.D. Ill. May 9, 2012), a problem that can be avoided when the collector can make subjective decisions about what constitutes a "hit," a practice that is impossible for a computer.

## CONCLUSION

For all the foregoing reasons, the United States does not oppose Defendants' motion to amend the scheduling order, except for the deadline for Defendants' expert disclosures. The United States also requests that the Court set the parameters set forth above by the United States for HHS's document production.

Dated: May 19, 2023

SANDRA J. STEWART
United States Attorney
Middle District of Alabama

PRIM F. ESCALONA
United States Attorney
Northern District of Alabama

/s/ Jason R. Cheek
JASON R. CHEEK
Chief, Civil Division

MARGARET L. MARSHALL
Assistant U.S. Attorney
U.S. Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, AL 35203
Tel.: (205) 244-2104
Margaret.Marshall@usdoj.gov

STEPHEN D. WADSWORTH
Assistant United States Attorney
U.S. Attorney's Office
Middle District of Alabama
Post Office Box 197
Montgomery, AL 36101-0197
Tel.: (334) 223-7280

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

JOHN POWERS (DC Bar No. 1024831)
Counsel to the Assistant Attorney General
Civil Rights Division

CHRISTINE STONEMAN
Chief, Federal Coordination and Compliance Section

/s/ Coty Montag
COTY MONTAG (DC Bar No. 498357)
Deputy Chief, Federal Coordination and Compliance Section

RENEE WILLIAMS (CA Bar No. 284855)
KAITLIN TOYAMA (CA Bar No. 318993)
Trial Attorneys
United States Department of Justice
Civil Rights Division
Federal Coordination and Compliance Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 305-2222
Renee.Williams3@usdoj.gov
Kaitlin.Toyama@usdoj.gov

Stephen.Wadsworth@usdoj.gov

AMIE S. MURPHY (NY Bar No. 4147401)
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 353-1285
Amie.Murphy2@usdoj.gov

*Attorneys for Plaintiff-Intervenor United States of America*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Respectfully submitted,

*/s/ Coty Montag*
Deputy Chief, Federal Coordination
and Compliance Section
Civil Rights Division
U.S. Department of Justice