IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| United States of America, | ) |
| | ) |
| *Intervenor Plaintiff*, | ) |
| | ) |
| v. | ) Civil Action No. 2:22-cv-184-LCB |
| | ) |
| Hon. Steve Marshall, in his official capacity as Attorney General, of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO AMEND SCHEDULING ORDER (DOC. 279)**

This reply will be brief given that it is being filed shortly before the hearing on Defendants' motion to amend the scheduling order. But a few points may be useful in charting a possible path forward.

*First*, no party objects to amending the scheduling order. The Private Plaintiffs "do not object to a modest extension of the current deadlines," Doc. 283 at 2, while the United States "does not oppose the dates set forth in Defendants' Proposed Fifth Amended Scheduling Order," Doc. 284 at 1. Both parties object to an extension of the deadline for Defendants' disclosure of their expert reports, but those objections are moot: Defendants disclosed their expert reports on Friday, May 19, and plan to

1

have their experts create supplemental reports as needed. As for the Private Plaintiffs' concerns over a six-month extension, Defendants share their frustration with the current situation; Defendants requested discovery *eight months ago* from the United States and *seven months ago* from WPATH, yet still have not received *any* of the discovery this Court has ordered. Without that discovery, Defendants do not believe a full and fair adjudication is possible. Defendants thus request a schedule that allows for a complete production of the discovery Defendants are entitled to and time enough for Defendants and their experts to review and make use of that discovery. It would be manifestly unfair if time exigencies *caused by the United States and WPATH* allowed those entities to avoid producing the complete discovery Defendants need to try the case fully and fairly.

*Second*, though WPATH insists it "has been busy collecting, reviewing, and preparing to produce many hundreds of documents that are directly responsive to the State's subpoena," Doc. 280 at 1, WPATH has produced *none* of the documents this Court ordered it to produce—not even the hard drive WPATH told the Court was ready to go back in March. *See* 3/21 Tr.11. And though WPATH seems to have taken some steps to collect documents responsive to *some* of Defendants' discovery requests, *see* Doc. 280 at 4-5, it has not explained what it is doing to respond to the *other* requests the Court ordered. So far as Defendants are aware, WPATH has only taken steps to collect documents responsive to requests related to its Standards of

2

Care 8, but the Court ordered WPATH to produce documents on several additional topics. Those include requests related to "WPATH's reaction to members' concerns about pediatric transitioning care in America; WPATH's involvement, if any, in the creation of standards of care or diagnostic standards for other organizations related to pediatric transitioning; WPATH's cancellation of Dr. Zucker's talk; … and WPATH's knowledge of pediatric transitioning treatments in Alabama." Doc. 263 at 2 (internal quotation marks omitted).

Instead, as WPATH notes, it has rejected Defendants' proposal to use custodians and search terms to find the relevant information. The first reason WPATH offers is that its board members and contributing authors use personal email accounts that WPATH has no control over. Doc. 280 at 5. Of course, this excuse would mean that a corporation could avoid producing responsive discovery simply by having its leadership use Gmail accounts rather than company ones. Fortunately, "[c]ontrol is defined not only as possession, but as the legal right to obtain documents upon demand," *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1983), and there is no reason to think WPATH could not ask its board members and other leaders for WPATH-related emails. If WPATH will not do this, or WPATH leaders disregard WPATH, Defendants can send third-party subpoenas to those individual WPATH leaders as needed.

WPATH's second objection to the use of custodians and search terms is that it thinks that its administrative personnel—who *do* have WPATH email accounts—are unlikely to have responsive materials. This claim is hard to credit given that two of the custodians Defendants proposed—Sue O'Sullivan, WPATH's managing director; and Jamison Green, a former president of WPATH and the communications director for WPATH's administrative agency—are seen on video discussing WPATH's response to the cancelation of Dr. Zucker's talk, to give just one example. *See* Doc. 219-6. Again, this excuse is merely an attempt to artificially narrow if not entirely evade this Court's order for WPATH to produce responsive materials.

*Third*, when Defendants filed their motion to amend the scheduling order, they explained that they thought they were near an agreement with the United States "on which search terms to use for an initial search." Doc. 279 at 8. The United States' response to the motion on Friday afternoon is the first time Defendants have been told that, based on a test search, HHS estimates that "Defendants' approach would result in more than 165,000 documents." Doc. 284 at 5. Defendants are of course willing to work with the United States to narrow search terms and chart a path forward, and they believe it is premature for the Court to limit the discovery parameters when the parties are still working to reach a compromise. Defendants thus suggest another hearing in 3-4 weeks should the parties need the Court's guidance on search terms and custodians.

With that said, Defendants do not think the United States' suggestions of (1) eschewing search terms for network drives, and (2) using only 11 custodians and "10 narrow search terms to be used to search the email folders of the 11 custodians" is likely to result in a fair path forward. Doc. 284 at 6-7. Eschewing search terms for network drives means relying solely on agency employees to subjectively interpret the requests, determine what categories of documents are responsive, recall where responsive documents might be stored, and voluntarily provide those documents—even though those employees might not have been at the agency when those documents were created. There is no objective check, and no objective way to ensure that unfavorable or simply forgotten documents are being reviewed and produced.

As for the United States' proposal of "10 narrow search terms," it is important to understand that the number of search terms is not directly related to burdensomeness or efficiency. It is often the case that 20 precise search terms, designed to target specific materials, will be *less* burdensome than 10 broader search terms. The question is whether the searches result in the right universe of documents that will then be reviewed for responsiveness. A mix of search terms, some broader, some narrower, is usually a good way to find this universe. Artificially limiting the number to 10 search terms is not.

Defendants attach the parties' back-and-forth regarding the proposed search terms, from Defendants' initial proposal on April 6 through Defendants' last

proposal on May 10, so the Court can see the kinds of discussions the parties are still having. To take just one example, consider the evolution of one of the proposed search terms. To respond to HHS's invitation for a list of proposed search terms to use to determine a possible universe of documents—i.e., to determine the number of "hits" for a specific term, which is helpful for then refining the terms as needed—Defendants suggested the search <gender /3 dysphoria>. *See* Ex. A. That search would target documents in which the word "gender" appeared within three words of "dysphoria." The United States responded by suggesting changing the search to <gender /3 dysphoria AND (youth or children) AND transition!>. *See* Ex B. This search would return documents that used the word "gender" within three words of "dysphoria," *and* contained the words "youth" or "children," *and* used a word that began with the prefix "transition" (such as "transitioned" or "transitioning"). Defendants then suggested further refining the search to <gender /3 dysphoria AND (youth or child! or adolescent! or minor! or kid! or teen! or boy! or girl! or student!)> to encompass various ways in which a minor might be discussed. They also suggested removing the limiter <transition!> because a document that discusses gender dysphoric minors is *already* likely to be responsive. Adding the limiter <transition!> would inappropriately *exclude* documents that discuss providing hormones to a child suffering from gender dysphoria unless the document also included a word

6

beginning with "transition." There is no reason for such a limitation, yet the United States added the limiters <transition! or treat!> back into the search term. *See* Ex. E.

This is just one example, and the point isn't that the Court should resolve the dispute now. The point is simply that the parties are still working to negotiate how the United States can efficiently produce the complete production Defendants are entitled to, and it is premature for the Court to impose a specific limit of search terms or custodians.

For these reasons, Defendants suggest that the Court (1) reset the trial date for March 2024 or as soon thereafter as the Court is available; (2) impose a deadline specific to HHS and WPATH for their production so there is sufficient time remaining in the discovery period for Defendants and their experts to review that production and follow-up as needed (Defendants suggest October 1); and (3) set a status conference for 3-4 weeks from now to work through any specific discovery issues that remain.

Date: May 21, 2023

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina 29413
(843) 606-0640
CMills@Spero.law

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

s/ A. Barrett Bowdre
A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*

7

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Bethany C. Lee (ASB-9480-R46Z)
  *Assistant Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Bethany.Lee@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on May 21, 2023, which will serve all counsel of record.

s/ A. Barrett Bowdre  
*Counsel for Defendants*