# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 30, 2023

Noah S. Goldberg
Covington & Burling, LLP
850 10TH ST NW
WASHINGTON, DC 20001-4956

William Isasi
Covington & Burling, LLP
850 10TH ST NW
WASHINGTON, DC 20001-4956

Cortlin Hall Lannin
Covington & Burling, LLP
415 MISSION ST STE 5400
SAN FRANCISCO, CA 94105

Barry Alan Ragsdale
Dominick Feld Hyde, PC
1130 22ND ST S STE 4000
BIRMINGHAM, AL 35205

Dylan M. Silva
Covington & Burling, LLP
415 MISSION ST STE 5400
SAN FRANCISCO, CA 94105

Robert Smith Vance III
Dominick Feld Hyde, PC
1130 22ND ST S STE 4000
BIRMINGHAM, AL 35205

Jean Veta
Covington & Burling, LLP
850 10TH ST NW
WASHINGTON, DC 20001-4956

Appeal Number:  23-11753-J

Case Style:  In re: World Professional Association for Transgender Hea
District Court Docket No:  2:22-cv-00184-LCB-CWB

Please use the appeal number for all filings in this Court.

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Certificate of Interested Persons and Corporate Disclosure Statement ("CIP")
Every motion, petition, brief, answer, response, and reply must contain a CIP. See FRAP 26.1; 11th Cir. R. 26.1-1. In addition:

- Appellants/Petitioners must file a CIP within 14 days after this letter's date.
- Appellees/Respondents/Intervenors/Other Parties must file a CIP within 28 days after this letter's date, regardless of whether Appellants/Petitioners have filed a CIP.
- Only parties represented by counsel must complete the web-based CIP. Counsel must complete the web-based CIP, through the Web-Based CIP link on the Court's website, on the same day the CIP is first filed.

The failure to comply with 11th Cir. Rules 26.1-1 through 26.1-4 may result in dismissal of the case or appeal under 11th Cir. R. 42-1(b), no action taken on deficient documents, or other sanctions on counsel, the party, or both. See 11th Cir. R. 26.1-5(c).

Attorney Admissions
Attorneys who wish to participate in this appeal must be properly admitted either to the bar of this court or for this particular proceeding, See 11th Cir. R. 46-1; 46-3; 46-4. In addition, all attorneys (except court-appointed attorneys) who wish to participate in this appeal must file an appearance form within fourteen (14) days after this letter's date. The Application for Admission to the Bar and Appearance of Counsel Form are available on the Court's website. **The clerk generally may not process filings from an attorney until that attorney files an appearance form.** See 11th Cir. R. 46-6(b).

Obligation to Notify Court of Change of Addresses
Each pro se party and attorney has a continuing obligation to notify this Court of any changes to the party's or attorney's addresses during the pendency of the case. See 11th Cir. R. 25-7.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

DKT-1 Appeal NO Deficiency

**No. _____**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

*In re World Professional Association for Transgender Health,*
Petitioner

On Petition from the U.S. District Court for the Middle District of Alabama
No. 2:22-cv-00184
(Hon. Liles C. Burke)

---

## PETITION FOR WRIT OF MANDAMUS

---

Barry A. Ragsdale (ASB 2958A23B)
Robert S. Vance III (ASB 9916B11Q)
DOMINICK FELD HYDE, P.C.
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Phone: (205) 536-8888

D. Jean Veta (D.C. Bar No. 358980)*
Cortlin H. Lannin (CA Bar No. 266488)
William Isasi (D.C. Bar No. 470878)*
Michael J. Lanosa (CA Bar No. 301241)*
José Girón (MD Bar No. 2211280185)*
Emile J. Katz (D.C. Bar No. 90006190)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000

*Counsel for Petitioner*
**Pro Hac Vice* application forthcoming

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for the World Professional Association for Transgender Health ("WPATH") certifies that WPATH has no parent corporation, and no corporations hold any stock in WPATH.

Counsel certifies that the following persons and parties, in addition to WPATH, that may have an interest in the outcome of this case:

1.     Academic Pediatric Association – Amicus Curiae;

2.     Aderholt, Caroline M. – Amicus Curiae;

3.     Aderholt, Robert B. – Amicus Curiae;

4.     Advancing American Freedom, Inc. – Amicus Curiae;

5.     Alabama Center for Law and Liberty – Amicus Curiae;

6.     Alabama Ch. of the American Academy of Pediatrics – Amicus Curiae;

7.     Alaska, State of – Amicus Curiae;

8.     Am. Academy of Child and Adolescent Psychiatry – Amicus Curiae;

9.     Am. Academy of Family Physicians – Amicus Curiae;

10.    Am. Academy of Pediatrics – Amicus Curiae;

11.    Am. Academy of Nursing – Amicus Curiae;

12.     Am. Ass'n of Physicians for Human Rights, Inc. – Amicus

Curiae;

13.     Am. Coll. of Obstetricians & Gynecologists – Amicus Curiae;

14.     Am. Coll. of Osteopathic Pediatricians – Amicus Curiae;

15.     Am. College of Physicians – Amicus Curiae;

16.     Am. Family Ass'n, Inc. – Amicus Curiae;

17.     Am. First Legal Foundation – Amicus Curiae;

18.     Am. Med. Ass'n – Amicus Curiae;

19.     Am. Pediatric Soc'y – Amicus Curiae;

20.     Am. Psychiatric Ass'n – Amicus Curiae;

21.     Ams. United for Life – Amicus Curiae;

22.     Ass'n of Am. Med. Colls. – Amicus Curiae;

23.     Ass'n of Med. School Pediatrics Dep't Chairs – Amicus Curiae;

24.     Anderson, Tom – Defendant;

25.     Arizona, State of – Amicus Curiae;

26.     Arkansas, State of – Amicus Curiae;

27.     Baia, Elizabeth – Counsel for Medical Amici;

28.     Bailey, Daryl D. – Defendant;

29.     Baylock, C. Wilson – Defendant;

30.     Boe, Brianna (pseudonym) – Plaintiff;

31.    Bowdre, Alexander Barrett – Counsel for the Defendants;

32.    Brooks, Mo  – Amicus Curiae;

33.    Brown, Chip  – Amicus Curiae;

34.    Buckeye Institute – Amicus Curiae;

35.    Burke, Liles C. – U.S. District Court Judge;

36.    Cantrell, Michael A. – Counsel for Amici States

37.    Cardinal Institute for West Virginia  Policy – Amicus Curiae;

38.    Carl, Jerry L. – Amicus Curiae;

39.    Carr, Danny – Defendant;

40.    Center for Arizona Policy  – Amicus Curiae;

41.    Center for Family and Human Rights – Amicus Curiae;

42.    Cheek, Jason R. – Counsel for Intervenor – Plaintiff;

43.    Citizens United – Amicus Curiae;

44.    Citizens United Foundation – Amicus Curiae;

45.    Commonwealth Foundation for Public Policy Alternative –

Amicus Curiae;

46.    Concerned Women for America – Amicus Curiae;

47.    Davis, James William – Counsel for Defendants;

48.    Doss, Jeffrey P. – Counsel for Plaintiffs;

49.    Dunbar, John Mark – Counsel for Amicus Curiae;

50.   Eagan, Melody Hurdle – Counsel for Plaintiffs;

51.   Eagle Forum of Alabama  – Amicus Curiae;

52.   Elliot, T. Christopher – Amicus Curiae;

53.   Endocrine Society – Amicus Curiae;

54.   Escalona, Elizabeth Prim Formby – Counsel for Intervenor –
Plaintiff;

55.   Faith & Freedom Coalition – Amicus Curiae;

56.   Family Action Council of Tennessee, Inc., – Amicus Curiae;

57.   Foundation for Government Accountability – Amicus Curiae;

58.   Foundation for Moral Law – Amicus Curiae;

59.   Free Speech Coalition – Amicus Curiae;

60.   Frontline Policy Council –  Amicus Curiae;

61.   Georgia, State of – Amicus Curiae;

62.   Goldberg, Noah S.

63.   Gray, C. Boyden– Counsel for Amicus Curiae;

64.   Independent Women's Forum – Amicus Curiae;

65.   Indiana, State of – Amicus Curiae;

66.   Isasi, William  – Counsel for WPATH and Medical Amici
Curiae;

67.   Jauregui, Phillip Leo – Counsel for Amicus Curiae;

68.     John Locke Foundation – Amicus Curiae;

69.     Jordan, Albert Linch– Counsel for Amicus Curiae; Judicial

Watch, Inc. – Amicus Curiae;

70.     Koe, Rachel (pseudonym) – Plaintiff;

71.     Lannin, Cortlin H. – Counsel for WPATH and Medical Amici

Curiae;

72.     Lanosa, Michael – Counsel for WPATH and Medical Amici

Curiae;

73.     Lareau Alyssa C. – Counsel for Intervenor – Plaintiff;

74.     Levi, Jennifer L. – Counsel for Plaintiffs;

75.     Liberty Justice Center – Amicus Curiae;

76.     Louisiana Family Forum  – Amicus Curiae;

77.     Louisiana, State of – Amicus Curiae;

78.     Marshall, Steve – Defendant;

79.     Manhattan Institute – Amicus Curiae;

80.     McCotter, R. Trent – Counsel for Amicus Curiae;

81.     McCoy, Scott D. – Counsel for Plaintiffs;

82.     Medical Ass'n of Pediatric Nurse Practitioners – Amicus

Curiae;

83.     Mendenhall, Allen   – Amicus Curiae;

84.    Michigan Family Forum  – Amicus Curiae;

85.    Mills,  Christopher E. – Counsel for Defendants;

86.    Mississippi, State of – Amicus Curiae;

87.    Missouri, State of – Amicus Curiae;

88.    Montag, Coty Rae – Counsel for Intervenor – Plaintiff;

89.    Montana, State of – Amicus Curiae;

90.    Mooney, Arnold – Amicus Curiae;

91.    Moore, Barry – Amicus Curiae;

92.    Mountain States Legal Foundation – Amicus Curiae;

93.    Nebraska, State of – Amicus Curiae;

94.    Nat'l Ass'n of Pediatric Nurse Practitioners – Amicus Curiae;

95.    Nat'l Republican Redistricting Trust  – Amicus Curiae;

96.    Nat'l Right to Work Committee – Amicus Curiae;

97.    Noe, Kathy (pseudonym) – Plaintiff;

98.    Oklahoma Council of Public Affairs – Amicus Curiae;

99.    Oklahoma, State of – Amicus Curiae;

100.    Oladeinbo, Gilbert – Counsel for Plaintiffs;

101.    Olson, William J. – Counsel for Amicus Curiae;

102.    Orr, Asaf – Counsel for Plaintiffs;

103.    Palmer, Gary  – Amicus Curiae;

104.   Parental Rights Foundation – Amicus Curiae;

105.   Pediatric Endocrine Soc'y – Amicus Curiae;

106.   Pennsylvania Family Council – Amicus Curiae;

107.   Peterson, Misty L. – Counsel for Plaintiffs;

108.   Poe, Megan (pseudonym) – Plaintiff;

109.   Powers, John Michael – Counsel for Intervenor – Plaintiff;

110.   Pratt, James Andrew – Counsel for Plaintiffs;

111.   Private Citizen – Amicus Curiae;

112.   Protect Our Kids – Amicus Curiae;

113.   Public Interest Legal Foundation – Amicus Curiae;

114.   Ragsdale, Barry Alan – Counsel for Medical Amici;

115.   Ray, Brent P. – Counsel for Plaintiffs;

116.   Reinke, Adam – Counsel for Plaintiffs;

117.   The Religious RoundTable, Inc. – Amicus Curiae;

118.   Roe, Rebecca – Plaintiff;

119.   Rogers, Mike – Amicus Curiae;

120.   Seiss, Benjamin Matthew – Counsel for Defendants;

121.   Shortnacy, Michael B. – Counsel for Plaintiffs;

122.   Simpson, Matt – Amicus Curiae;

123.   Societies for Pediatric Urology – Amicus Curiae;

124.  Soc'y of Adolescent Health & Medicine – Amicus Curiae;

125.  Soc'y for Pediatric Research – Amicus Curiae;

126.  Soc'y of Pediatric Nurses – Amicus Curiae;

127.  Soto, Diego Armando – Counsel for Plaintiffs;

128.  Southeast Law Institute  – Amicus Curiae;

129.  South Carolina, State of – Amicus Curiae;

130.  Spakovsky, Hans von  – Amicus Curiae;

131.  Stewart, Sandra Jean – Counsel for Intervenor – Plaintiffs;

132.  Stone, Jessica L. – Counsel for Plaintiffs;

133.  Susan B. Anthony Pro-Life America – Amicus Curiae;

134.  Tea Party Patriots Action, Inc. – Amicus Curiae;

135.  Tea Party Patriots Foundation, Inc. – Amicus Curiae;

136.  Tennessee Eagle Forum – Amicus Curiae;

137.  Terry, Abigail Hoverman – Counsel for Plaintiffs;

138.  Texas Public Policy Foundation – Amicus Curiae;

139.  Texas, State of – Amicus Curiae;

140.  Thornton, Joel H. – Counsel for Detransitioner Amici Curiae;

141.  Toyama, Kaitlin – Counsel for Intervenor – Plaintiff;

142.  Trevor Project, Inc. – Amicus Curiae

143.  United States of America – Intervenor – Plaintiff;

144.   Utah, State of – Amicus Curiae;

145.   Wadsworth, Stephen D. – Counsel for Intervenor – Plaintiff;

146.   Wagoner, J.T. – Amicus Curiae;

147.   Warbelow, Sarah – Counsel for Plaintiffs;

148.   Wadsworth, Tim R. – Amicus Curiae;

149.   Waver, Cynthia Cheng-Wun – Counsel for Plaintiffs;

150.   West Virginia, State of – Amicus Curiae;

151.   Wilkerson, Mark Douglas – Counsel for Amici States;

152.   Williams, Renee – Counsel for Intervenor – Plaintiff;

153.   Woodke, Lane Hines – Counsel for Intervenor – Plaintiff;

154.   Vague, Amie A. – Counsel for Plaintiffs;

155.   Vance, Robert S. – Counsel for Medical Amici;

156.   Ventiere, Jessica – Defendant;

157.   Veta, D. Jean – Counsel for Medical Amici.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument would assist the Court in its

consideration of the significant First Amendment issues raised in this petition.

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ..................................................................i

STATEMENT REGARDING ORAL ARGUMENT .........................................x

INTRODUCTION AND RELIEF SOUGHT ....................................................1

ISSUE PRESENTED ....................................................................................4

STATEMENT OF FACTS............................................................................5

    A.    The Underlying Litigation...........................................................5

    B.    The State of Alabama's Subpoena.................................................6

    C.    WPATH's Motion to Quash.........................................................7

REASONS FOR GRANTING THE WRIT ......................................................9

I.    WPATH Has No Other Adequate Means to Attain Relief.........................9

II.    WPATH's Right to the Writ Is Clear and Indisputable Because the
    District Court Abused Its Discretion in Denying WPATH's Motion to
    Quash...............................................................................................11

    A.    WPATH Established a *Prima Facie* Case That Enforcement of
        the State's Subpoena Would Infringe Its First Amendment
        Rights..................................................................................12

    B.    The State Does Not Have a Compelling Need for the Requested
        Discovery Sufficient to Justify Infringement of WPATH's First
        Amendment Rights. ...............................................................18

III.    Mandamus Is Appropriate Under the Circumstances.............................20

CONCLUSION .........................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adolph Coors Co. v. Movement Against Racism & the Klan*,
    777 F.2d 1538 (11th Cir. 1985) ................................................................. 11

*AFL-CIO v. FEC*,
    333 F.3d 168 (D.C. Cir. 2003) ........................................................ 3, 4, 14

*Apple Inc. v. Match Grp., Inc.*,
    2021 WL 3727067 (N.D. Cal. Aug. 19, 2021) ........................................ 13

*Buckley v. Valeo*,
    424 U.S. 1 (1976) .................................................................................... 14

*In re Burlington Northern, Inc.*,
    822 F.2d 518 (5th Cir. 1997) .................................................................. 23

*Cate v. Oldham*,
    707 F.2d 1176 (11th Cir. 1983) .............................................................. 21

*Drummond Co., Inc. v. Terrance P. Collingsworth, Conrad & Scherer,
LLP*,
    816 F.3d 1319 (11th Cir. 2016) .......................................................... 9, 11

*In re Fink*,
    876 F.2d 84 (11th Cir. 1989) ........................................................ 9, 20, 22

*In re Fosamax Prods. Liab. Litig.*,
    2009 WL 2395899 (S.D.N.Y. Aug. 4, 2009) .......................................... 22

*In re Itron, Inc.*,
    883 F.3d 553 (5th Cir. 2018) .................................................................. 10

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2009) ......................................................... *passim*

*In re Sec'y, Fla. Dep't of Corr.*,
    2020 WL 1933170 (11th Cir. Mar. 30, 2020) ..................................... 9, 10

*In re Subpoenas Served on Am. Acad. of Pediatrics*,
    2023 WL 2351729 (D.D.C. Mar. 3, 2023) ................................................... 17

*In re Subpoenas Served On Am. Acad. of Pediatrics*,
    2023 WL 2442223 (D.C. Cir. Mar. 8, 2023) .............................................. 17

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ............................................................... 15, 22

## Statutes

Alabama Vulnerable Child Compassion and Protection Act ............................... 5

## <u>INTRODUCTION AND RELIEF SOUGHT</u>

Petitioner World Professional Association for Transgender Health ("WPATH") is a non-profit organization that promotes evidence-based care and related public policies for transgender individuals. Consistent with its mission, WPATH develops and publishes a set of clinical guidelines for the treatment of individuals diagnosed with the clinical condition known as gender dysphoria (the "Guidelines").[1] Last year, the State of Alabama banned certain of the medical treatments for adolescents with gender dysphoria that are indicated in WPATH's Guidelines. After several individuals filed a lawsuit challenging that ban, the State served a third-party subpoena on WPATH seeking a broad swath of materials that would reveal, among other things, the substance of the internal deliberative process that WPATH used to develop the Guidelines, in addition to materials that have little if anything to do with the Guidelines.

After meet-and-confer efforts failed to resolve WPATH's objections to this third-party discovery, including its First Amendment objections, WPATH sought to quash the subpoena in the District Court. The District Court denied WPATH's motion to quash and denied WPATH's subsequent petition to certify that order for

---

[1] Gender dysphoria is a clinical condition that is marked by distress due to an incongruence between a patient's gender identity (*i.e.*, the innate sense of oneself as being a particular gender) and sex assigned at birth.

interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  As a result, WPATH is now under a court order to produce materials responsive to the State's sweeping subpoena, including documents that reveal WPATH's confidential internal deliberations.  As the District Court summarized, the State is seeking, among other things, documents reflecting the "process WPATH used to create, review, and adopt their position statements, treatment guidelines, and standards of care regarding transitioning treatments."  Doc. 263 at 2.[2]  The State has made no secret of the purpose of this discovery: instead of defending the legitimacy of its ban, it hopes to put WPATH—which it accuses of "quashing dissent and prioritizing ideology or financial interest over science"—on trial.  *See* Doc. 219 at 25.

As WPATH explained in its motion to quash and supported with evidence, compelled production of the subpoenaed material would squarely infringe its First Amendment rights.  Disclosure of these materials to the State will chill members' participation in the organization, stifle the candid internal discussions that are necessary to generate well-vetted work product, and ultimately undermine the organization's effectiveness.  As many courts have recognized, "disclosure of an association['s] confidential internal materials," as is imminent here, "intrudes on the 'privacy of association and belief guaranteed by the First Amendment,' as well

---

[2]     "Doc." citations reference docket entries from the district court action below.

as seriously interferes with internal group operations and effectiveness." *AFL-CIO v. FEC*, 333 F.3d 168, 177–78 (D.C. Cir. 2003) (citation omitted).  In fact, just months ago the D.C. Circuit stayed enforcement of a third-party subpoena that would have required WPATH to produce to the State of Florida the *same materials* that are at issue here—discovery to which WPATH had also asserted First Amendment objections.

Notwithstanding this evidence and authority, the District Court concluded that WPATH had failed to establish a *prima facie* case that compelled production of the subpoenaed materials would infringe its First Amendment rights.  That conclusion rested on the premise that WPATH was required to "set forth a 'reasonable probability' that disclosure will result in 'threats, harassment, or reprisals'" but could not do so, because the State was not seeking member names and WPATH could redact such details or produce the compelled material subject to a protective order.  Doc. 263 at 8.

The District Court's construction of the First Amendment privilege was impermissibly narrow.  Neither the Supreme Court nor this Court have ever *required* evidence of "threats, harassment, or reprisals" to make out a *prima facie* showing of a First Amendment infringement, and the District Court failed to consider ample authority that the disclosure ordered here, which would "seriously interfere[] with internal group operations and effectiveness" even with the benefit

3

of redactions, tramples on WPATH's First Amendment rights. *AFL-CIO*, 333 F.3d at 177–78. Compounding this error, the District Court failed to consider whether the requested material meets the heightened relevance standard that applies in the First Amendment context; it does not.

This is not a pedestrian discovery dispute. Rather, this dispute implicates important Constitutional principles in a case that has attracted national attention, and that is being closely watched by the many other states that are currently defending, or may soon be defending, the constitutionality of their own bans on gender affirming care. These issues would benefit from this Court's careful review. Having exhausted its other options to correct the District Court's order, WPATH now petitions this Court for a writ of mandamus to reverse that order. WPATH respectfully requests that this Court act on the petition by **June 16, 2023**, as the District Court has suggested it may soon order WPATH to produce the compelled materials by a date certain.

## ISSUE PRESENTED

Whether the District Court abused its discretion by compelling WPATH to produce materials reflecting its internal deliberative process, which would infringe WPATH's First Amendment rights by chilling members' participation in the organization, stifling internal deliberations, and undermining the organization's effectiveness.

4

## STATEMENT OF FACTS

### A.    The Underlying Litigation

On April 8, 2022, the Governor of Alabama signed into law the "Alabama Vulnerable Child Compassion and Protection Act," which prohibits any person from obtaining or providing certain medical treatments for transgender adolescents with gender dysphoria.  Subsequently, plaintiffs in the underlying action filed a complaint against the State for declaratory and injunctive relief, Doc. 1, followed by a motion for a preliminary injunction, Doc. 7.

WPATH is not, and never has been, a party to the underlying litigation. Founded in 1979, WPATH is a 501(c)(3) non-profit interdisciplinary professional and educational organization whose mission is to promote evidence-based care, education, research, and public policy with regards to transgender health.  *See* Doc. 208-4 (Declaration of WPATH ("WPATH Decl.")), ¶ 4.  WPATH is one of 23 national and state professional medical and mental health organizations that submitted an *amicus* brief in support of plaintiffs' motion for a preliminary injunction.  Doc. 91-1.  The *amicus* brief explained that gender affirming care is the widely-accepted standard of care for gender dysphoria.  *Id.* at 6-19.  Gender affirming care is indicated in WPATH's Guidelines, which are primarily intended for health professionals and set forth clinical guidance for the treatment of gender dysphoria.

B.      The State of Alabama's Subpoena

On October 13, 2022, a few months after the District Court granted the plaintiffs' motion for a preliminary injunction, the State issued a third-party subpoena to WPATH that contained 47 document requests. *See* Doc. 208-2 at Ex. 4 (WPATH subpoena). The State withdrew several of those requests during the course of meet-and-confer efforts, but the 29 requests that remain seek two broad categories of materials: (i) materials reflecting the internal deliberative process through which WPATH developed the Guidelines; and (ii) materials reflecting other aspects of WPATH's work.[3]

As to the first category, the State seeks, for example, "all Communications and Documents" related to "the applications and selection process for WPATH Guideline Steering Committee," "the decision regarding what chapters to include and not include in" WPATH's Guidelines," and "the development and approval" of various chapters of the Guidelines. *See* Ex. A at RFP Nos. 1-3. As the District Court summarized, these types of requests collectively seek materials evidencing the "process WPATH used to create, review, and adopt their position statements, treatment guidelines, and standards of care regarding transitioning treatments." Doc. 263 at 2.

───────────────

[3]     A list of the document requests that the District Court has enforced as written is attached to this Petition as Exhibit A.

6

As to the second category, the State seeks materials that probe other aspects of WPATH's work but have little or nothing to do with the Guidelines. For example, the State seeks "all Communications and Documents" related to position statements and other published materials regarding gender affirming care that WPATH has released, signed on to, or endorsed. *See* Ex. A at RFP Nos. 16, 19, 31-32, & 47.

### C.    WPATH's Motion to Quash

On December 27, 2022, after WPATH and the State reached an impasse, WPATH moved to quash the State's subpoena on the grounds that the requested discovery was irrelevant to the litigation, complying with the subpoena would impose an undue burden on WPATH, and producing the requested material would infringe on WPATH's First Amendment rights by chilling members' participation in the organization and ultimately the effectiveness of the organization. *See* Doc. 208.

On March 27, 2023, the District Court denied WPATH's motion. Doc. 263 (the "Order"). The Court concluded that WPATH's Guidelines were relevant to plaintiffs' case and that complying with the subpoena would not impose an undue burden on WPATH. *See id.* at 8. The Court also stated that WPATH had failed to make a *prima facie* showing that compliance with the subpoena would infringe its First Amendment rights, because it had not "set forth a 'reasonable probability'

that disclosure will result in 'threats, harassment, or reprisals from either Government officials or private parties.'" *Id.* at 8 (citation omitted). The Court observed that the subpoena did not seek to reveal the identities of WPATH members or donors, *see id.* at 9, and the Court provided that WPATH could redact personal identifying information in any responsive materials it produced, *see id.* at 10.

On April 7, 2023, WPATH filed a motion requesting that the District Court certify the Order for immediate appeal pursuant to 28 U.S.C. § 1292(b). Doc. 271. On May 15, 2023, the District Court denied that motion. Doc. 281 (the "1292(b) Order"). In the 1292(b) Order, the Court stated that its earlier conclusion that WPATH had not made out a *prima facie* case of First Amendment infringement did not present a "pure question of law" suitable for interlocutory appeal. *Id.* at 5-7. In addition, the Court stated that an interlocutory appeal would not materially advance the litigation because "[h]owever an appeals court might resolve the *prima facie* issue, WPATH's motion to quash would be denied once again on remand." *Id.* at 8. On this point, the Court stated that the State had "unquestionably proffered a compelling governmental interest, and that interest is substantially related to the requested documents," and as such the State was "entitled to the documents—even assuming WPATH made a *prima facie* showing of First Amendment infringement." *Id.* This petition followed.

8

## REASONS FOR GRANTING THE WRIT

For a writ of mandamus to issue, the party seeking the writ must show that it has no other adequate means to attain the relief it desires and its right to issuance of the writ is clear and indisputable, and the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. *See In re Sec'y, Fla. Dep't of Corr.*, 2020 WL 1933170, at *1 (11th Cir. Mar. 30, 2020) (citing *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004)). As this Court has recognized, mandamus "is often an appropriate method of review of orders compelling discovery." *In re Fink*, 876 F.2d 84, 84 (11th Cir. 1989). "If there has been a clear abuse of discretion in allowing discovery, mandamus is an appropriate remedy." *Id.*; *see also Dep't of Corr.*, 2020 WL 1933170, at *1 ("A district court's discovery orders are reviewed for an abuse of discretion.").

The conditions for issuing the writ are satisfied here.

## I.     WPATH Has No Other Adequate Means to Attain Relief.

WPATH has no adequate means to attain relief other than mandamus. The District Court's denial of WPATH's motion to quash is an interlocutory order, the District Court denied WPATH's motion to certify the Order for immediate appeal, and this Court's precedent forecloses resort to the collateral order doctrine. *See Drummond Co., Inc. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1326–27 (11th Cir. 2016) (concluding "we … never exercised

jurisdiction under the collateral order doctrine to review any discovery order involving any privilege").

Furthermore, waiting to appeal until there is a final judgment in the underlying litigation is not a viable option under the circumstances. If this Court does not grant the petition, WPATH will be compelled to disclose the privileged material at issue, and the harm to WPATH will have been done well before final judgment. This Court and others use the writ to protect privileged material from disclosure in similar circumstances. *See, e.g.*, *Dep't of Corr.*, 2020 WL 1933170, at *1 (in dispute over production of "highly sensitive information," recognizing that "petitioner has no other adequate means of relief" because "[i]f we do not grant the petition, the information at issue will be disclosed and the harm to prison staff, prisoners, and the general public will have been done"); *In re Itron, Inc.*, 883 F.3d 553, 567 (5th Cir. 2018) (issuing the writ where "an interlocutory appeal is not available in attorney-client privilege cases" and "appeal after final judgment will come too late because the privileged communications will already have been disclosed"). In sum, petitioning for a writ of mandamus is WPATH's only viable appellate option.[4]

---

[4]     WPATH could refuse to comply with the District Court's order and then appeal after being cited for contempt, but this Court's precedent shows that the

## II.     WPATH's Right to the Writ Is Clear and Indisputable Because the District Court Abused Its Discretion in Denying WPATH's Motion to Quash.

A party invoking the First Amendment privilege must make a *prima facie* showing of "arguable First Amendment infringement"—in other words, that compelled disclosure would result in a "chilling" of a protected right.  *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009).  Once the burden is met, the requesting party must demonstrate "the [discovery] is rationally related to a compelling governmental interest ... [and] the 'least restrictive means' of obtaining the desired information."  *Id.* (citation omitted).

In denying WPATH's motion to quash, the District Court concluded that WPATH had failed to make a *prima facie* showing of First Amendment infringement.  However, and as discussed below, the District Court adopted an unduly narrow construction of the First Amendment privilege and therefore applied an incorrect legal standard in requiring a showing that disclosure might result in "threats, harassment, or reprisals."  Order at 8.  The Court's denial of

---

ability to pursue such a fraught course does not preclude resort to mandamus.  *See also Drummond*, 816 F.3d at 1326 (explaining that petitioning for a writ of mandamus and appealing a citation for contempt are both "appellate options").

WPATH's motion was thus an abuse of discretion, and this Court should issue the writ to correct that error.

### A.   WPATH Established a *Prima Facie* Case That Enforcement of the State's Subpoena Would Infringe Its First Amendment Rights.

WPATH's motion to quash explained how enforcement of the State's subpoena would impede WPATH's freedom of association and speech and thus its effectiveness, including by frustrating its ability to communicate within the organization and generate work product that is useful to the public.  For example, a representative of WPATH described how "staff and members will communicate less if the State's subpoena is enforced," and observed that WPATH staff is "already more cautious about sending written communications for fear that they will be produced and taken out-of-context in an attempt to misuse and harm the persons [WPATH is] trying help."  Doc. 208-4 at 6.  Relatedly, the WPATH representative attested that many of the medical professionals whose volunteer efforts are "essential to the accuracy of [WPATH's] work" will "think twice before volunteering their expertise if their confidential feedback could be shared with the world."  *Id.* at 8–9.

As WPATH explained, the risk of disclosing individual members' identities and exposing members to potential harassment and threats is certainly one concern arising from the State's subpoena.  But an equally fundamental problem is that the disclosure of the substance of WPATH's internal deliberative process—especially

to a State that has accused WPATH of "quashing dissent and prioritizing ideology or financial interest over science" (Doc. 219 at 25)—will profoundly chill participation in the organization, impede members' willingness to voice unpopular or critical views that could be disclosed and used against the organization by its opponents, and damage the organization's ability to do its work and operate effectively. *See, e.g., Apple Inc. v. Match Grp., Inc.*, 2021 WL 3727067, at *8 (N.D. Cal. Aug. 19, 2021) (refusing to enforce request for advocacy group's internal documents on First Amendment grounds and observing "[w]ho in their right mind would want to participate in a public advocacy organization, knowing that all their internal communications about strategy, lobbying, planning, and so on, would be turned over to their principal opponent?"). Neither the redaction of member names nor the production of information subject to a protective order would mitigate these harms of Constitutional scope.

Notwithstanding this evidence and argument, the District Court concluded that WPATH had "failed to make a *prima facie* showing that compliance with [the State's] subpoena infringes its First Amendment rights." Order at 8. Citing *Buckley v. Valeo*, 424 U.S. 1, 74 (1976), the Court reasoned that WPATH was required to "set forth a 'reasonable probability' that disclosure will result in 'threats, harassment, or reprisals from either Government officials or private parties.'" Order at 8. The Court concluded that WPATH had failed to carry that

13

burden because the State was not seeking the names of any WPATH members, and because any such information could be redacted or produced subject to a protective order. *See id.* at 9-10.

The District Court's reasoning was in error. The Supreme Court has never held that a party invoking the First Amendment *must* establish that "threats, harassment, or reprisals" will result from disclosure of the requested material.[5] To the contrary, multiple courts have recognized that the First Amendment protects not only against disclosing member names, but also against disclosures revealing an organization's internal deliberations and communications. For example, the D.C. Circuit has recognized that "public disclosure of an association's confidential internal materials . . . intrudes on the privacy of association and belief guaranteed by the First Amendment, as well as seriously interferes with internal group operations and effectiveness." *AFL-CIO v. FEC*, 333 F.3d 168, 177-78 (D.C. Cir. 2003) (citing *Buckley v. Valeo*, 424 U.S. at 656).

The Fifth Circuit has also recognized that compelled disclosure of an organization's internal policy deliberations raises serious First Amendment

---

[5]   In *Buckley v. Valeo*, the Supreme Court was not addressing harms from disclosure of an organization's internal deliberations; rather, it was specifically addressing arguments that compelled disclosure of the names of contributors to political parties could harm the parties by exposing contributors to threats, harassment, and reprisals. *See Buckley v. Valeo*, 424 U.S. at 69–74.

concerns, regardless of whether members might be exposed to harassment as a result of the disclosure. In *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), the Fifth Circuit reversed a district court's order denying a motion to quash and compelling production of the internal communications of the Texas Conference of Catholic Bishops ("TCCB"). The Fifth Circuit concluded that the district court "failed to afford sufficient scope to rights that should protect the inner workings of TCCB when it engages in activity in the public square." *Id.* at 372. The court criticized the district court for "limit[ing] the associational rights to the 'chilling' of membership and tangible harassment," and observed that First Amendment associational rights also protected broader interests. *Id.* at 372.

Similarly, the Ninth Circuit had held that a district court erred by concluding that the First Amendment privilege is limited to the disclosure of the identify of an organization's members. In *Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2010), the Ninth Circuit explained that "[t]he first Amendment privilege . . . has never been limited to the disclosure of the identities of rank-and-file members." *Id.* at 1141. The court explained that the scope of the privilege "turns not on the type of information sought, but on whether the disclosure of the information will have a deterrent effect on the exercise of protected activities." *Id.* The court specifically recognized that neither an agreement allowing redaction of members' names nor a protective order limiting dissemination of the information would

15

eliminate the threatened harms.  *See id.* at 1153 (redaction); *id.* at 1165 (protective order).

Finally, recent developments in the Court of Appeals for the D.C. Circuit are directly on point.  In that matter, the District Court for the District of Columbia denied a motion brought by WPATH and several other organizations to quash third-party subpoenas issued by the State of Florida.  It ordered WPATH to produce to Florida the same types of materials at issue here, including materials reflecting WPATH's internal deliberative process.[6]  For example, WPATH was ordered to produce documents reflecting "the substantive materials and opinions that were considered and relied upon, as well as the materials and opinions that were considered and rejected," in adopting the Guidelines, as well as "documents that would be sufficient to show whether any dissenting views were otherwise acknowledged, whether such views were considered in adopting guidelines  or policy positions, and why such views were rejected."  Doc. 255-2 at 1.

While the D.C. district court acknowledged that the First Amendment "protection also extends to internal communications that, if disclosed, may chill the exercise of First Amendment rights," and that WPATH had "a First Amendment

---

[6]    Florida issued identical third-party subpoenas to WPATH and several other organizations.  All were noticed for compliance in the District of Columbia, which is why the dispute over those subpoenas occurred in that forum.

interest in their internal communications," it concluded that interest should yield to Florida's purported need for the information. *See In re Subpoenas Served on Am. Acad. of Pediatrics*, 2023 WL 2351729, at *1, *3 (D.D.C. Mar. 3, 2023). However, days later, the D.C. Circuit granted emergency relief and stayed that discovery. *See In re Subpoenas Served On Am. Acad. of Pediatrics*, 2023 WL 2442223, at *1 (D.C. Cir. Mar. 8, 2023). Significantly, the D.C. Circuit granted the stay even though Florida asserted and the district court adopted the *exact same argument* that the District Court found dispositive here: that the ability to redact member names and produce materials subject to a protective order "substantially mitigate[s] [WPATH's] fear of harassment and interference with First Amendment rights." *In re Subpoenas*, 2023 WL 2351729, at *3.[7]

In sum, the District Court erred in holding that a *prima facie* case of infringement requires evidence that disclosure of the challenged materials will result in "threats, harassment, or reprisals." Order at 8. In its subsequent 1292(b) Order, the District Court asserted that it made no such holding. *See* 1292(b) Order

---

[7]     The District Court concluded that the D.C. Circuit proceedings were inapposite because "the Florida-law litigation in no way turns upon WPATH's guidelines." Order at 3 n.2. To the contrary, Florida strenuously sought information from WPATH about its Guidelines and internal deliberative process, arguing those materials went to the heart of its case. That dispute ultimately necessitated an appeal and the emergency stay. *See In re Subpoenas*, 2023 WL 2351729, at *1 (reasoning information sought by Florida "goes to the heart of the lawsuit").

at 6 ("The Court did not decide, as a matter of law, that First Amendment infringement results only from threats, harassment, or reprisals."). Rather, the Court asserted that it "simply found that WPATH presented insufficient evidence of threats, harassment, reprisals, or any other sort of chill." *Id.* Respectfully, WPATH suggests that the Court's Order speaks for itself. The Court's after-the-fact characterization of the Order is not consistent with the Order's plain text. This Court should issue the writ to correct the District Court's application of an incorrect legal standard to WPATH's profound prejudice.

### B.   The State Does Not Have a Compelling Need for the Requested Discovery Sufficient to Justify Infringement of WPATH's First Amendment Rights.

Having concluded that WPATH failed to establish a *prima facie* case of infringement, the District Court did not conduct the second step of the First Amendment privilege test and analyze whether the State had a sufficient need for the requested information to justify infringement of WPATH's constitutional rights. *See Perry*, 591 F.3d at 1140. While the District Court said the requested information was "relevant," *see* Order at 5-6, that is not the correct inquiry. "The second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for discovery…." *Perry*, 591 F.3d at 1140. That analysis requires courts to engage in a balancing of interests that imposes on the party seeking discovery "a

more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1141 (emphasis added); *see also id.* at 1144 ("The Rule 26 standard, however, fails to give sufficient weight to the First Amendment interests at stake.").  "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.* at 1141.

In its 1292(b) Order, the District Court stated that even if this Court determines WPATH had made out a *prima facie* case of First Amendment infringement, it would *still* deny the motion to quash on remand because "Defendants have unquestionably proffered a compelling governmental interest, and that interest is substantially related to the requested documents."  1292(b) Order at 8.  The Court did not elaborate on this reasoning, but it does not appear to have considered whether the requested discovery satisfies the heightened relevance standard required by the First Amendment.  It does not.

There is no dispute that the WPATH Guidelines are relevant to the underlying case, and that the State intends to challenge their scientific validity. However, the State has various means of attacking the Guidelines that would not require infringement of WPATH's Constitutional rights.  For example, the Guidelines cite every study and piece of evidence on which they rely, and the State could attack the validity of those studies.  Alternatively, it could put up its own

contrary scientific evidence. Instead of litigating the merits of the Guidelines, however, the State is attempting to litigate the internal process and supposedly self-interested motives of WPATH. As the State told the District Court, this discovery seeks evidence that WPATH is motivated not by science but rather "ideology, self-interest, organizational politicking, or other considerations[.]" Doc. 219 at 3. In other words, the State wants to put WPATH on trial. Discovery in service of that sideshow is not relevant—much less "highly relevant," as it must be to justify infringing WPATH's First Amendment rights. *Perry*, 591 F.3d at 1141.

## III. Mandamus Is Appropriate Under the Circumstances.

In deciding whether the writ is appropriate to correct discovery orders that would compromise a claim of privilege, this Court considers "the importance of the privilege, the seriousness of the injury if discovery is obtained, and the difficulty of obtaining effective review once the privileged information has been made public." *In re Fink*, 876 F.2d at 84. All three factors indicate that the writ is appropriate under the circumstances.

*First*, this case does not involve a routine discovery dispute. Rather, it concerns "a privilege of constitutional dimensions," and raises an important question about the scope of the First Amendment privilege against compelled disclosure of an organization's internal deliberations. *Perry*, 591 F.3d at 1135 (recognizing mandamus is appropriate "to review discovery orders raising

particularly important questions of first impression, especially when called upon to define the scope of an important privilege"). The District Court applied an unduly narrow construction of the First Amendment, and failure to correct that error will potentially chill participation and debate in matters involving issues ranging far beyond those presented in the immediate lawsuit. Constitutional privileges of the type at issue here are inherently "important" ones, rendering mandamus appropriate under the circumstances. *See Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983) (noting that the public has a "strong … interest in protecting First Amendment values").

*Second*, both WPATH and the public interest will be seriously injured if the State obtains the requested material. As discussed above (pp. 12-15), disclosure of WPATH's internal deliberations to the State will imperil WPATH's effectiveness, necessarily injuring the organization. In addition, this discovery is already chilling WPATH's educational and scientific efforts, which ultimately benefit the public at large. As a WPATH representative explained, the organization works with dozens of volunteer medical experts every year to "understand the latest science, and to review and edit our publications, educational materials, curriculum, and public statements." Doc. 208-4 at 8. These experts would "think twice before volunteering their expertise if their confidential feedback could be shared with the world," which would also undermine "confidence that peer reviews and

communications within WPATH will not be publicly disclosed." *Id.* at 9. As a result, enforcing the subpoenas would "greatly hinder the quality and accuracy of [WPATH's] work product, which in turn will worsen the care that our members provide to their patients across all health domains." *Id.* This is a quintessential injury to the public interest.

In similar contexts, courts have recognized the public interest in protecting third-party experts from compelled discovery. "Compelling testimony from a third party researcher risks chilling participation in beneficial public research." *In re Fosamax Prods. Liab. Litig.*, 2009 WL 2395899, at *4 (S.D.N.Y. Aug. 4, 2009). Permitting such discovery "'inevitably tend[s] to check the ardor and fearlessness of scholars, qualities at once so fragile and so indispensable for fruitful academic labor.'" *Id.* (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957) (Frankfurter, J., concurring)).

*Finally*, and as discussed above (at p. 10), there are no realistic options for "effective review" of the District Court's Order "once the privileged information has been made public." *In re Fink*, 876 F.2d at 84. As the Fifth Circuit recognized, "forced discovery" targeting a non-party is "effectively unreviewable on appeal from the final judgment." *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018) (internal quotations omitted). "[A] new trial can hardly avail a third-party witness who cannot benefit directly from such relief." *Id.* at

367–68.  Moreover, if plaintiffs ultimately prevail in the District Court, there would likely be no appeal at all of the District Court's construction of the First Amendment privilege, leaving unaddressed an important issue that is likely to recur in future cases. *See Perry*, 591 F.3d at 1138; *see also In re Burlington Northern, Inc.*, 822 F.2d 518, 523 (5th Cir. 1997).

## **CONCLUSION**

For the foregoing reasons, the Court should issue a writ of mandamus reversing the District Court's Order and instructing it to grant WPATH's motion to quash.

Dated: May 26, 2023

D. Jean Veta (D.C. Bar No. 358980)*
William Isasi (D.C. Bar No. 470878)*
José Girón (MD Bar No. 2211280185)*
Emile J. Katz (D.C. Bar No. 90006190)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000
jveta@cov.com
wisasi@cov.com

Barry A. Ragsdale
DOMINICK FELD HYDE, P.C.
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Phone: (205) 536-8888
BRagsdale@dfhlaw.com

Robert S. Vance, III
DOMINICK FELD HYDE, P.C.
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Phone: (205) 536-8888
RVance@dfhlaw.com

Respectfully submitted,

*/s/ Cortlin H. Lannin*

Cortlin H. Lannin
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-6000
clannin@cov.com

Michael J. Lanosa (CA Bar No.
301241)*
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Phone: (424) 332-4800
mlanosa@cov.com

*pro hac vice* applications
forthcoming

24

## CERTIFICATE OF COMPLIANCE

1.      I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B)(i).  This brief contains 5117 words, including all headings, footnotes, and quotations, and excluding the parts of the response exempted under Fed. R. App. P. 32(f).

2.      In addition, this response complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


*/s Cortlin H. Lannin*_____
Cortlin H. Lannin

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s Cortlin H. Lannin* _____
Cortlin H. Lannin