# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| Brianna Boe, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Intervenor Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-184-LCB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General, | ) | |
| of the State of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' MOTION TO COMPEL DESIGNATION OF
## ONE ADDITIONAL HHS CUSTODIAN: ADMIRAL RACHEL LEVINE

# TABLE OF CONTENTS

Table of Contents ............................................................................... i

Table of Authorities ........................................................................... ii

Introduction ........................................................................................1

Background ..........................................................................................3

Legal Standard ....................................................................................6

Argument..............................................................................................7

    I.   Admiral Levine Has Highly Relevant Communications And Documents ....................................................................................7

    II.  Making Admiral Levine A Custodian Is Proportional To The Needs Of The Case ..........................................................................15

    III. Admiral Levine's Emails Likely Contain Unique Information.................17

Conclusion ........................................................................................20

Certificate of Service .......................................................................22

# TABLE OF AUTHORITIES

## Cases

*Baine v. Gen. Motors Corp.*,
  141 F.R.D. 328 (M.D. Ala. 1991)..........................................................................17

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
  297 F.R.D. 99 (S.D.N.Y. 2013) ...........................................................................18

*Garcia Ramirez v. U.S. Immigr. & Customs Enf't*,
  331 F.R.D. 194 (D.D.C. 2019) ...................................................................... 16, 17

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
  2020 WL 4501794 (N.D. Fla. Aug. 5, 2020).........................................................18

*In re Arby's Rest. Grp. Inc. Litig.*,
  No. 1:17-CV-0514-AT, 2018 WL 8666473 (N.D. Ga. Aug. 16, 2018)..............7

*In re Facebook, Inc. Consumer Privacy User Profile Litig*,
  No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213
  (N.D. Cal. Nov. 14, 2021)....................................................................................18

*Marical, Inc. v. Cooke Aquaculture, Inc.*,
  No. 1:14-cv-00366-JDL, 2016 WL 9459260 (D. Me. Aug. 9, 2016) ...............19

*Moore v. Armour Pharm. Co.*,
  927 F.2d 1194 (11th Cir. 1991) ...........................................................................7

*Oppenheimer Fund v. Sanders*,
  437 U.S. 340 (1978)..............................................................................................6

*Oxbow v. Carbon & Minerals LLC v. Union Pacific R.R. Co.*,
  322 F.R.D. 1 (D.D.C. 2017)............................................................................7, 16

*Rosen v. Provident Life & Accident Ins. Co.*,
  308 F.R.D. 670 (N.D. Ala. 2015) ................................................................. 15, 17

*Sable Commc'ns of Cal., Inc. v. FCC*,
  492 U.S. 115 (1989)............................................................................................15

*Sec. Pest Control, Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
    532 F. Supp. 3d 1221 (M.D. Ala. 2020) ............................................................15

*Thomas v. City of New York*,
    336 F.R.D. 1 (E.D.N.Y. 2020) ...........................................................................14

*Williams v. City of Dothan*,
    745 F.2d 1406 (11th Cir. 1984) ...........................................................................6

## Rules

Fed. R. Civ. P. 26 ..................................................................................... 16, 17

Fed. R. Civ. P. 26(b) .................................................................................6, 15

Fed. R. Civ. P. 26(b)(1) ......................................................................... 6, 7, 15

Fed. R. Civ. P. 26(b)(2)(B) ...........................................................................6

Fed. R. Civ. P. 34(a) .....................................................................................6

Fed. R. Civ. P. 37(a)(1) .................................................................................6

Fed. R. Evid. 406 .........................................................................................6

## Other Authorities

ABC News, *Identity Denied: Trans in America* (July 14, 2023),
    https://www.youtube.com/watch?v=_aGlPq2FUzA .............................................1

Address by Admiral Rachel L. Levine to Federation of State Medical Boards,
    May 27, 2022 (FSMB Address),
    https://www.youtube.com/watch?v=97lAi5VmkAA ....................................9, 12

Address by Admiral Rachel Levine to WPATH Symposium
    (Sept. 17, 2022), https://rumble.com/v1kostf-september-19-2022.html............. 11

ADM Rachel Levine (@HHS_ASH), Twitter (June 12, 2023, 10:28 AM),
    https://twitter.com/HHS_ASH/status/1668264004492328961 ................... 11, 16

Admiral Rachel L. Levine, MD, U.S. Dep't of Health and Human Servs.,
    https://perma.cc/9JLL-XGC5 ..............................................................................2

Becky Sullivan & Ari Shapiro, *Dr. Rachel Levine: Transgender Health Care
    Is an Equity Issue, Not a Political One*, NPR (April 1, 2021),
    https://perma.cc/KVN4-87WP......................................................................8, 12

Chad Terhune et al., *As More Transgender Children Seek Medical Care,
    Families Confront Many Unknowns*, Reuters (Oct. 6, 2022),
    https://perma.cc/98F6-AD9E...................................................................... 10, 13

Center for Medicare and Medicaid Services, 2023 Health Insurance Marketplace
    Open Enrollment Period Stakeholder Webinar (Dec. 13, 2022),
    https://perma.cc/YN23-MT2E ...........................................................................19

Connecticut Children's Grand Rounds, *Social Roles in Medicine: Improving
    Public Health Through Engagement Beyond the Clinical Setting*,"
    ADM Rachel Levine, MD (Feb. 7, 2023), https://tinyurl.com/3mr9pjmx.. 10, 12

Interview of Admiral Rachel Levine with Ryan Cassata
    (June 21, 2023), https://www.youtube.com/watch?v=EVs8V1x01sM..............16

Letter from Sen. Murphy to Asst. Sec'y Levine (Sep. 30, 2021),
    https://perma.cc/9XU3-95SP ................................................................................8

NIMH, *Understanding Suicide Risk Among Children and Preteens: A Synthesis
    Workshop* (Aug. 4, 2021), https://tinyurl.com/37enfauf ........................ 9, 12, 19

OASH Office of Population Affairs, *Gender-Affirming Care and Young People*,
    https://perma.cc/5BWR-FTHE .....................................................................8, 13

*Remarks by HHS Assistant Secretary for Health ADM Rachel Levine for the 2022
    Out For Health Conference* (Apr. 30, 2022) (OFH Remarks),
    https://perma.cc/624V-EG9F ...................................................................... 11, 12

Science Friday, *Biden's New Assistant Secretary of Health on Protecting Trans
    Youth* (June 11, 2021), https://perma.cc/CSP5-PKV4............................... 8, 9, 11

Selena Simmons-Duffin, *Rachel Levine Calls State Anti-LGBTQ Bills Disturbing and Dangerous to Trans Youth*, NPR (Apr. 29, 2022), https://tinyurl.com/4ykvwccp ............................................................................10

WPATH, 27th Scientific Symposium Schedule at a Glance, https://perma.cc/TE4C-ERTB ..........................................................................11

Zachary Rogers, *Rachel Levine Says Biden Admin Backs Gender Change Therapies for Kids*, ABC (Mar. 17, 2023), https://perma.cc/FCZ3-GDMZ ......12

**INTRODUCTION**

Whether puberty blockers and cross-sex hormones safely and effectively treat gender dysphoria in minors is a key issue in this case. Doc. 261 at 4-5. That is why the Court required the United States to produce responsive documents from the Department of Health and Human Services (HHS). There are several relevant components of HHS, and the parties have agreed to search terms and custodians for most of them. But the United States refuses to designate one of the most obvious custodians: Admiral Rachel Levine, the Assistant Secretary for Health.

It is not hyperbole to say that Admiral Levine is *the* leading public-facing official in the United States government when it comes to transitioning treatments for minors. When ABC Nightline recently did a national segment on "Trans in America," Levine was the only federal official interviewed.[1] "The treatment options for gender-affirming care for transgender youth really are evidence based," Levine boasted. "Gender affirming care is medical care. Gender affirming care is mental health care. Gender affirming care is literally suicide prevention."[2]

Levine is not simply a spokesperson. Before being appointed Assistant Secretary for Health, Levine served as Pennsylvania's Secretary of Health and Physician General, a Professor of Pediatrics and Psychiatry at Penn State College of Medicine,

---

[1] *See* ABC News, *Identity Denied: Trans in America* (July 14, 2023), https://www.youtube.com/watch?v=_aGlPq2FUzA (at 2:42–3:48).
[2] *Id.*

and a practicing pediatrician who specialized in LGBTQ medicine "and the intersection between mental and physical health."[3] Levine is also a four-star admiral in the U.S. Public Health Service Commissioned Corps and, according to HHS, the "author of numerous publications on … LGBT medicine."[4] Levine routinely endorses puberty blockers and cross-sex hormones as proper treatments for minors suffering from gender dysphoria, gives lectures to physicians discussing the scientific literature concerning such treatments, and oversees the division within the Office of the Assistant Secretary for Health (OASH) that published the federal guidance Defendants asked about in RFP 30: "Gender-Affirming Care and Young People." To top it off, Levine is a member of WPATH and was the keynote speaker at a recent WPATH symposium—where Levine spoke about "gender-affirming care."

So if one were putting together a list of potential custodians at HHS concerning transitioning treatment for minors, Levine would be at the top. Levine obviously has communications and documents relevant to this litigation. Yet when Defendants requested that Levine be made a custodian, the United States refused. First it offered Levine's former subordinate, Maura Calsyn, to serve as Levine's proxy. But Calsyn is a lawyer with no medical expertise—much less involvement in treatment for gender dysphoric minors—and as a lower-level staffer, would not be privy to all relevant

---

[3] Admiral Rachel L. Levine, MD, U.S. Dep't of Health and Human Servs., https://perma.cc/9JLL-XGC5.
[4] *Id.*

communications. Then, even more oddly, the United States said that rather than make Levine a custodian, it would send Defendants a copy of its responses to an unrelated third-party FOIA request seeking different information using different search terms over a different timespan related to Levine's office. Defendants again tried to compromise, agreeing to the proposal if the United States would (1) expand the FOIA search timeframe by seven months to encompass Levine's tenure, and (2) add eight of the 20 search terms the parties had agreed to use for the other nine custodians in this litigation. The United States refused again.

Defendants are thus left with no choice but to come to this Court. Defendants are entitled to full discovery of responsive documents this Court has already held are relevant, using search terms the parties have already agreed to use (Doc. 285-1), from a custodian who obviously has relevant materials. The Court should compel the United States to designate Admiral Rachel Levine as a document custodian.

## BACKGROUND

Since Plaintiffs and the federal government put the evidentiary basis of transitioning treatments at the center of this case, Defendants served tailored document requests on the United States for materials from HHS. The United States refused to adequately respond, requiring Defendants to move to compel production of HHS materials in response to 14 RFPs. Doc. 227. The Court granted that motion as to 13 requests, explaining that "[t]his case, at least in part, turns on whether puberty

blockers and hormone therapies are a safe and effective way to treat gender dysphoria in minors." Doc. 261 at 4-5. The Court found that Defendants' requests are "reasonably likely to reveal evidence" from HHS "pertaining to that issue." *Id.*

After prolonged negotiations regarding search terms, *see* Doc. 285-1 at 1-29, on May 12, 2023, the United States sent Defendants a list of nine proposed custodians within the various HHS sub-agencies. *See* Ex. A, 5/12 Email; Ex. B. Defendants asked the United States to add one additional custodian: Levine. Ex. A, 5/22 Email. The United States refused, asserting that, "[a]s the Assistant Secretary, [Levine's] work is too broad and high level for searches of her email account or documents to result in relevant information." *Id.*, 5/23 Email.[5]

Shortly thereafter, HHS concluded that some of the agreed-upon search terms were returning too many results. Ex. A, 6/8 Email. The agency thus crafted narrower terms and informed Defendants on June 8 that it was using those terms instead. *Id.* Defendants replied that they were concerned the "process [was] becoming unilateral" and asked how HHS had determined it needed to narrow the search terms. Defendants also raised concerns about HHS's rejection of Levine as a custodian, noting that "Levine is often the face of HHS regarding transitioning treatments for youth" and "has spoken publicly, *as the Assistant Secretary for Health*, in favor of the safety

---

[5] The United States did add an unrelated custodian in a difference sub-agency, bringing the total number of custodians to ten. *See* Ex. C.

and efficacy" of transitioning treatments. *Id.*, 6/15 Email. Defendants thus proposed a compromise: Defendants would "agree to the narrowed search terms if HHS agree[d] to make Admiral Levine a custodian for searching emails at OASH." *Id.*, 6/20 Email. HHS rejected the offer, asserting that "giving speeches isn't relevant to the underlying subject matter of the litigation." *Id.*, 6/21 Email.

HHS then attempted a compromise of its own: in lieu of designating Levine a custodian, HHS would turn over documents it produces in response to a third-party FOIA request regarding certain of Levine's communications since October 19, 2021. *Id.*; *see* Ex. D. As Defendants previously explained, "[t]his was not the 'compromise' HHS purport[ed] it to be." Doc. 293 at 10. "For one, the search terms would not be tailored to Defendants' RFPs, nor would they be [the] same terms HHS is using for the other custodians. They would be someone else's search terms tailored for someone else's search." *Id.* For another, as Defendants told HHS, the FOIA request was missing about seven months of Levine's tenure as Assistant Secretary. Ex. A, 6/28 Email. In an effort to move things forward, though, Defendants agreed to accept the FOIA documents if HHS would (1) extend the timeline to capture Levine's entire time at HHS, and (2) add eight of the 20 search terms the parties had agreed to use for the other custodians to target subjects not encompassed by the FOIA search terms. *Id.* HHS again said no. *Id.*, 6/29 Email.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(a)(1) permits a party to move for an order compelling discovery.[6] When requesting electronically stored information under Rule 34(a), parties "may serve on any other party a request within the scope of Rule 26(b)." Courts have "broad discretion in shaping the scope of discovery under Rule 26(b)." *Williams v. City of Dothan*, 745 F.2d 1406, 1415 (11th Cir. 1984). Rule 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Evidence is relevant if it has "any tendency to make a fact more or less probable" "and the fact is of consequence in determining the action." Fed. R. Evid. 401. The standard for relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue" in the case. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).

"On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). The proportionality factors are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

---

[6] Pursuant to Rule 37(a)(1), and as described above, undersigned counsel certifies that Defendants have in good faith conferred with counsel for the United States before filing this motion.

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see Oxbow v. Carbon & Minerals LLC v. Union Pacific R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017) (compelling additional custodian after weighing proportionality factors); *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 8666473, at *3 (N.D. Ga. Aug. 16, 2018) (finding addition of two custodians consistent with "the Rule 26 proportionality principle"). The Rules "strongly favor full discovery whenever possible." *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).

## ARGUMENT

### I.   Admiral Levine Has Highly Relevant Communications And Documents.

This Court has already found "all Communications and Documents" in HHS's possession concerning "the effects of Transitioning or the treatment of Minors for Gender Dysphoria or a Related Condition on the well-being of Minors" to be relevant. Doc. 261 at 4-5. Same for communications and documents "concerning the informed consent process for treating Minors for Gender Dysphoria," "relating to the appropriate age for beginning Transitioning treatment in Minors," and "concerning reports on the quality of care for the treatment of Minors for Gender Dysphoria." *Id*. at 5-9. There is every reason to believe that Admiral Levine has documents and communications responsive to these requests.

Levine was appointed Assistant Secretary for Health in March 2021. Since then, the Admiral has taken the lead on issues implicated by Alabama's law. Immediately, Levine "questioned" laws like Alabama's and said such laws implicate "health equity, which is part of [the Assistant Secretary's] portfolio"—making Levine's "involvement" "appropriate" "as a top public health official."[7] According to Levine, responding to such laws forms a core part of OASH's work:

> I want to work *in my capacity as the assistant secretary for health*, both from raising awareness point of view, from an advocacy point of view, as well as *internally*, within the Department of Health and Human Services, on policy changes to try to address these issues.[8]

Reflecting this focus, lawmakers routinely direct inquiries concerning transitioning treatments to Levine. In September 2021, seven Senators urged Levine to issue federal guidance on the "mental health needs for transgender and gender expansive (TGE) adolescents."[9] OASH did so a few months later, issuing guidance endorsing "gender-affirming care"[10] "[f]or transgender and nonbinary children and adolescents." This guidance document is the subject of RFP 30.

Levine has also explained what distinguishes the Assistant Secretary from other HHS officials:

---

[7] Becky Sullivan & Ari Shapiro, *Dr. Rachel Levine: Transgender Health Care Is an Equity Issue, Not a Political One*, NPR (April 1, 2021), https://perma.cc/KVN4-87WP.

[8] Science Friday, *Biden's New Assistant Secretary of Health on Protecting Trans Youth* (June 11, 2021), https://perma.cc/CSP5-PKV4 (click "Read Transcript") (emphases added).

[9] Letter from Sen. Murphy to Asst. Sec'y Levine (Sep. 30, 2021), https://perma.cc/9XU3-95SP.

[10] OASH Office of Population Affairs, *Gender-Affirming Care and Young People*, https://perma.cc/5BWR-FTHE.

> My field is pediatrics and, specifically, my specialty is adolescent medicine.… I saw many youth and young adults that were trans for evaluation and for gender-affirming medical treatment.[11]

Accordingly, Levine has repeatedly spoken about the safety and efficacy of transitioning treatments for youth, particularly as it relates to purported mental health improvements. To participants at a workshop on adolescent suicide prevention at the National Institute of Mental Health in August 2021, Levine commented:

> [T]here is significant evidence that trans youth that are treated with well-established guidelines that are accepted by the American Academy of Pediatrics, the American Psychiatric Association, the American Psychological Association, the Endocrine Society, etc., their evaluation and treatment according to well-established standards of care … those youth do absolutely great. They do well socially. They do well in their communities. They do well in their schools. And they have very little mental health issues.[12]

To the Federation of State Medical Boards, Levine asserted that "the positive value of gender-affirming care for youth and adults is not in scientific or medical dispute."[13] Levine continued: "A paper just published two months ago in the journal of the American Medical Association found that receiving gender-affirming care … was associated with 60% lower odds of moderate or severe depression and 73% lower odds of suicidality over a 12-month follow up."[14] Levine criticized

---

[11] Science Friday, *supra*, note 8.
[12] NIMH, *Understanding Suicide Risk Among Children and Preteens: A Synthesis Workshop* (Aug. 4, 2021), https://tinyurl.com/37enfauf.
[13] Address by Admiral Rachel L. Levine to Federation of State Medical Boards, at 8:18-10:01, May 27, 2022 (FSMB Address), https://www.youtube.com/watch?v=97lAi5VmkAA.
[14] *Id.*

"substantial misinformation about gender-affirming care for transgender and gender-diverse individuals" and encouraged state medical boards to investigate "actions you can take about this misinformation that's causing so much harm."[15]

To NPR, Levine claimed that "there is no argument among medical professionals—pediatricians, pediatric endocrinologists, adolescent medicine physicians, adolescent psychiatrists, psychologists, etc.—about the value and the importance of gender-affirming care."[16] To Reuters, Levine asserted that robust informed consent procedures at gender clinics ensure "that no American children are receiving drugs or hormones for gender dysphoria who shouldn't."[17]

And to physicians at a Pediatric Grand Rounds at Connecticut Children's Hospital, Levine highlighted "[a] recent NIH-funded study" that supposedly "conclusively demonstrated that gender-affirming care and hormone therapy improves the lives of non-binary and transgender adolescents."[18]

Levine also routinely promotes the WPATH Standards of Care as evidence based. In June 2021, Levine discussed the then-forthcoming Standards of Care 8,

---

[15] *Id.*

[16] Selena Simmons-Duffin, *Rachel Levine Calls State Anti-LGBTQ Bills Disturbing and Dangerous to Trans Youth*, NPR (Apr. 29, 2022), https://tinyurl.com/4ykvwccp.

[17] Chad Terhune et al., *As More Transgender Children Seek Medical Care, Families Confront Many Unknowns*, Reuters (Oct. 6, 2022), https://perma.cc/98F6-AD9E.

[18] Connecticut Children's Grand Rounds, *Social Roles in Medicine: Improving Public Health Through Engagement Beyond the Clinical Setting*, ADM Rachel Levine, MD, at 12:46-14:32 (Feb. 7, 2023) (Grand Rounds), https://tinyurl.com/3mr9pjmx.

emphasizing that "I am a member of WPATH and USPATH."[19] Ten months later, in April 2022, Levine gave an update:

> The World Professional Association for Transgender Health published evidence-based standards of care more than a decade ago, in 2011, and is planning to release a full update this year. Rather than relying on a few cherry-picked reports to make a political argument, WPATH assesses the full state of the science and provides substantive, rigorously analyzed, peer-reviewed recommendations to the medical community on how best to care for patients who are transgender or gender nonbinary. There is nothing one-sided about their approach. It is founded on a vast body of medical literature. It is free of any agenda other than to ensure that medical decisions are informed by science.[20]

Five months after that, in September, Levine gave the keynote address at the WPATH conference in Canada, once again extolling the purported safety and efficacy of transitioning treatments for youth.[21]

> Levine continued the theme just weeks ago in another interview:

> Banning gender-affirming care is not based on science or medicine. Gender-affirming care is medical care. It is mental health care. It is, in some cases, suicide prevention care. It improves quality of life. It is supported by the [American Medical Association] and many other medical groups.… As a pediatrician and adolescent medicine specialist, I am urging all of us to base medical decisions on science.[22]

---

[19] Science Friday, *supra*, note 8.

[20] *Remarks by HHS Assistant Secretary for Health ADM Rachel Levine for the 2022 Out For Health Conference* (Apr. 30, 2022) (OFH Remarks), https://perma.cc/624V-EG9F.

[21] WPATH, 27th Scientific Symposium Schedule at a Glance, https://perma.cc/TE4C-ERTB; Address by Adm. Rachel Levine to WPATH Symposium, at 6:15-6:18 (Sep. 17, 2022), https://rumble.com/v1kostf-september-19-2022.html.

[22] ADM Rachel Levine (@HHS_ASH), Twitter (June 12, 2023, 10:28 AM), https://twitter.com/HHS_ASH/status/1668264004492328961.

Perhaps Admiral Levine summed it up best: "I talk about this topic, everywhere I go, to get the word out."[23]

Given that these issues are, according to Levine, "part of [the Assistant Secretary's] portfolio," making the Admiral's personal "involvement" "appropriate,"[24] it is hard to imagine how Levine would *not* have relevant information to this case and communications and documents responsive to Defendants' RFPs. There is no other federal official that has been as active as Levine in this space.

To break down just a few examples, documents about how "gender-affirming care for youth" is purportedly "not in scientific or medical dispute" are relevant to the United States's equal protection claim,[25] as is OASH's consideration of the supposed "vast body of medical literature" supporting WPATH's Standards of Care to which Levine has so often referred.[26] OASH's documents about studies purportedly showing that transitioning treatments improve "the lives of non-binary and transgender adolescents," including the "recent NIH-funded study" that Levine has relied on,[27] would also be relevant. Any emails discussing the "well-established standards of care"[28] preceding WPATH SOC 8—including to or from WPATH

---

[23] Zachary Rogers, *Rachel Levine Says Biden Admin Backs Gender Change Therapies for Kids*, ABC (Mar. 17, 2023), https://perma.cc/FCZ3-GDMZ.
[24] Sullivan & Shapiro, *supra* note 7.
[25] FSMB Address, *supra* note 13, at 8:18-10:01.
[26] OFH Remarks, *supra* note 20.
[27] Grand Rounds, *supra* note 18, at 13:33-13:43.
[28] NIMH, *supra* note 12.

member Levine—could reasonably lead to relevant documents that may, for instance, show that the evidence base for transitioning treatments is weak. Any documents bearing on the informed consent process, also specifically addressed by Levine,[29] are relevant too. And Levine's office itself published the guidance at issue in RFP 30.[30] Given all the public statements by Levine, it beggars belief for the government to claim that discovery is unlikely to lead to relevant material.

In its prior notice to the Court, the United States protested that Admiral Levine, as Assistant Secretary for Health, "is not herself conducting studies related to gender-affirming care nor is she employed at HHS as a researcher." Doc. 294 at 4. But performance of research is beside the point. Presumably, *none* of the other policy advisors within HHS—including the lawyer offered up by the government as Levine's stand-in—are "conducting" studies. What matters is that Levine has relevant communications and documents, including studies—wherever they might originate.

On the other hand, the United States asserts that Levine's work is too "high level" to have relevant documents. Ex. A, 5/23 Email. But it is obvious that Levine is personally engaged on this issue, which (according to Levine) falls within the Assistant Secretary's "portfolio." Levine's speeches are not simply stump speeches by a political appointee; many are medical and scientific presentations in academic

---

[29] Terhune, *supra* note 17.
[30] *Gender-Affirming Care and Young People*, *supra* note 10.

settings purportedly informed by the research disputed in this case. And as the United States told Defendants regarding a different custodian, "information flows up the chain of command" at HHS, so senior personnel "are the personnel that are most likely to have relevant emails/documents regarding the work within their sphere." *Id.* If anything, the government said, "[i]t is unnecessary to add anyone *less* senior." *Id.* (emphasis added).

The United States also claims that Defendants will get "substantially the same" documents through the present custodians, Doc. 294 at 5-6, and has assured Defendants that the emails from Maura Calsyn and a manual collection from another individual, Sarah Boateng, will approximate the contents of Levine's files. This contradicts the notion that Levine is too highly ranked to have relevant documents. More importantly, Defendants need not rely on HHS's assurances. "This kind of splicing—collecting emails from one [individual], [non-emails] from another—with the hope that the amalgam of information is the universe of relevant discovery is an inappropriate collection and production methodology." *Thomas v. City of New York*, 336 F.R.D. 1, 3 (E.D.N.Y. 2020). If Admiral Levine possesses enough relevant documents to require three sources (including the FOIA request) to (partially) satisfy "the universe of relevant discovery," *id.*, then the United States is obligated to search the Admiral's files. Admiral Levine should be a custodian.

## II.   Making Admiral Levine A Custodian Is Proportional To The Needs Of The Case.

When defining the scope of discovery, courts consider factors such as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Sec. Pest Control, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 532 F. Supp. 3d 1221, 1233 (M.D. Ala. 2020) (citing Fed. R. Civ. P. 26(b)(1)). "The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information." *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680 (N.D. Ala. 2015) (cleaned up). These factors favor making Levine a custodian.

No one disputes that the constitutionality of S.B. 184 is of immense public importance. Defendants maintain that the law prevents vulnerable minors from being subjected to irreversible body-altering treatments with serious known (and unknown) health risks. "[T]he physical and psychological well-being of minors" is at stake. *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). As for the United States, the Attorney General personally had to certify that the case was of "public importance" for the United States to intervene. Doc. 58. This factor is met.

Next, "there is a large information disadvantage between" the United States and Defendants. *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 194,

199 (D.D.C. 2019). Information asymmetry arises when "one party has very little discoverable information while the other party has vast amounts of discoverable information." *Oxbow Carbon & Minerals LLC*, 322 F.R.D. at 8 (quoting Fed. R. Civ. P. 26 advisory committee's notes). HHS has "vast amounts of discoverable information," *id.*, and obviously a monopoly on the communications and documents underlying Admiral Levine's public endorsements of gender transitioning treatments. Though Defendants may read Admiral Levine's many public statements, only the United States has access to the data and inputs for those statements.

Admiral Levine's communications and documents go to a core issue in this case: whether transitioning treatments are safe and effective for gender dysphoric minors. Doc. 261 at 4-5. Levine's files reflect the evidentiary basis for transitioning treatments being, in Levine's repeated words, "literally, suicide-prevention care."[31] Searching the Assistant Secretary's communications and documents could uncover evidence demonstrating that the treatment regimen is not "evidence-based" at all.

Finally, searching the records of the most prominent public health advocate for transitioning treatments outweighs the financial cost of performing the search. The United States is *already* performing a search of Levine's documents pursuant to a third-party FOIA request, and it has claimed that the FOIA search plus other

---

[31] *E.g.*, Interview of Admiral Rachel Levine with Ryan Cassata, at 6:17-6:21 (June 21, 2023), https://www.youtube.com/watch?v=EVs8V1x01sM (statement of Admiral Levine); ADM Rachel Levine (@HHS_ASH), *supra* note 22, at 0:14-0:18.

searches of other custodians will approximate the search for Levine's documents. Given this, the United States cannot specifically show that it is "not feasible" for HHS to expand the search of one official's records to add a mere *seven months* and *eight* search terms. *Rosen*, 308 F.R.D. at 681. Additionally, the United States stipulated to "deduplicate (i.e., within and across custodians) using commercially acceptable e-Discovery software." Doc. 245 at 12. Thus, any overlap of documents procured from Calsyn and Levine will be mitigated by automatic software. *See Garcia Ramirez*, 331 F.R.D. at 197-98 (emphasizing that "'de-dupe' technology," "which is designed to automatically remove duplicate documents from review," "will greatly reduce the number of documents to be reviewed"). In all events, "[t]he mere fact" that searching Levine's documents could "be burdensome and expensive … is not inherently a reason to refuse an otherwise legitimate discovery request." *Baine v. Gen. Motors Corp.*, 141 F.R.D. 328, 331 (M.D. Ala. 1991) (collecting cases). Given the relevance of Levine's documents, the United States cannot show that slightly expanding an existing search is disproportional to the needs of the case.

## III.    Admiral Levine's Emails Likely Contain Unique Information.

As discussed, Rule 26's broad "scope of discovery" standard controls and requires the United States to make Admiral Levine a custodian. But some district courts have applied a "unique relevant information" standard to assess whether an additional custodian is necessary. *See Fort Worth Emps.' Ret. Fund v. J.P. Morgan*

*Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 4501794, at *1 (N.D. Fla. Aug. 5, 2020). Given the uniqueness of Levine's position, involvement in the relevant issues, and expertise in adolescent medicine, Levine should be made a custodian even under this standard.

Compared to other custodians, Levine has unique credentials and medical expertise in adolescent medicine and gender dysphoria. It appears that Levine is the only proposed custodian who is a pediatrician that specializes in adolescent and LGBTQ medicine—with membership in WPATH to boot. At minimum, it is likely that Levine receives more medical literature than HHS's proposed alternative custodian, Calsyn, an attorney with no medical expertise. Decades of medical experience also make it likely that Levine interprets and reacts differently to medical literature than Calsyn does. This expertise makes it likely that Levine's communications contain unique, relevant information. And Levine, as head of OASH, almost certainly receives relevant communications from people *other than Calsyn.*

Additionally, Levine's position as Assistant Secretary for Health is unique. Unlike Calsyn, Levine is a "key decision-maker related to issues" of transitioning gender-dysphoric minors. *In re Facebook, Inc. Consumer Privacy User Profile Litig*, 2021 WL 10282213, at *2 (N.D. Cal. Nov. 14, 2021). While Defendants have no reason to doubt that Calsyn was involved in preparing some of Levine's remarks on "gender-affirming care," Levine as the head of OASH is the *unique* recipient of all

18

relevant inputs. Levine "maintain[s] a position of prominence" in HHS and certainly "was involved in discussions regarding" the evidence-base for transitioning treatments. *Marical, Inc. v. Cooke Aquaculture, Inc.*, 2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016). Calsyn's secondary role is exemplified by her description of "pinch-hitting" for Levine at a meeting Levine could not attend.[32] Defendants are entitled to discovery from the leadoff batter, not a pinch-hitter.

Expanding the FOIA search by seven months and eight search terms will produce unique, relevant information. As noted, Levine was appointed Assistant Secretary seven months before October 19, 2021—the beginning date for the FOIA request. *See* Ex. D. Levine made numerous relevant public statements during that timeframe.[33] The United States cannot simply unilaterally conclude that responsive documents from that period are not worth retrieving. Without searching documents from Levine's tenure at HHS, responsive documents will be omitted.

Last, it is plainly inappropriate for the United States to ignore Defendants' search terms in favor of a third-party FOIA requester's search terms. Keywords like "Littman," "Consent," "Finland," "Sweden," "UK," and "adverse"—with appropriate connectors—are related to the factual issues in this case and would retrieve documents responsive to Defendants' RFPs, but are not present in the FOIA request. Ex.

---

[32] Center for Medicare and Medicaid Services, 2023 Health Insurance Marketplace Open Enrollment Period Stakeholder Webinar (Dec. 13, 2022), https://perma.cc/YN23-MT2E.
[33] *E.g.*, NIMH, *supra* note 12.

A, 6/28 Email; Ex. D. And these terms were *already* agreed upon by Defendants and HHS as targeting documents responsive to Defendant's RFPs.

* * *

Ultimately, Defendants do not believe this is a close question. Based on publicly available information, we *know* that Levine has documents and communications responsive to Defendants' RFPs. And this Court has already held that those requests seek relevant information. That shifts the burden to the United States to prove that making Levine a document custodian is unduly burdensome. The United States cannot make that showing. The United States intervened because it determined that this case is one of public importance. Having done so, it cannot now shirk its discovery obligations by offering to produce documents it collects in response to a third-party FOIA request when that collection is bound to be incomplete for the needs of this case. But that document collection shows that it would not be unduly burdensome for HHS to expand the FOIA search by a mere seven months and eight search terms to retrieve relevant communications and documents from the leading governmental official on issues of transitioning treatments for minors.

## CONCLUSION

The Court should compel the United States to add Admiral Levine as a document custodian.

Date: July 31, 2023

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Respectfully submitted,

Steve Marshall
 *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
 *Solicitor General*

s/ A. Barrett Bowdre
A. Barrett Bowdre (ASB-2087-K29V)
*Principal Deputy Solicitor General*

Bethany C. Lee (ASB-9480-R46Z)
 *Assistant Solicitor General*

James W. Davis (ASB-4063-I58J)
 *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
 *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Bethany.Lee@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on July 31, 2023, which will serve all counsel of record.

s/ A. Barrett Bowdre
*Counsel for Defendants*