## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| Brianna Boe, *et al.,* | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Plaintiff-Intervenor*, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00184-LCB-CWB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General of the | ) | |
| State of Alabama, *et al.,* | ) | |
| | ) | |
| *Defendants*. | ) | |

## <u>PLAINTIFF-INTERVENOR UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DESIGNATION OF ADMIRAL RACHEL LEVINE AS A CUSTODIAN</u>

The United States opposes the designation of Admiral Rachel Levine, the

Assistant Secretary for Health for the U.S. Department of Health and Human

Services (HHS), as a custodian for discovery purposes. The Court should reject

Defendants' attempts to obtain all material remotely related to transgender people

by searching the files of a high-ranking HHS official—who happens to be

transgender—for at least three reasons. First, HHS's custodian designations, which

include key agency officials other than Admiral Levine, are reasonable and

sufficient. Second, based on HHS's investigation into her emails and records, designating Admiral Levine as a custodian will not yield unique information not included in the records of already-designated individuals. Finally, Defendants' demand to designate Admiral Levine as a custodian is disproportionate to the needs of the case. The Court should therefore deny Defendants' motion.

## **BACKGROUND**

### A.   **HHS'S COLLECTION AND PRODUCTION PROCESS AND ITS SELECTION OF CUSTODIANS**

The United States and HHS have been working diligently with Defendants so that documents can be produced in accordance with the Court's Fifth Amended Scheduling Order, ECF No. 292. As an initial matter, HHS designated nine custodians, all of whom are leaders or play key roles in their division. For instance, five of the custodians bear the title Director, and the remaining four are Team Leader, Deputy Assistant Secretary, Senior Advisor, and Psychologist.[1] These custodians are more than sufficient to meet HHS's discovery obligations.

---

[1] The custodians are: Janet Maynard, Director, Office of Rare Diseases, Pediatrics, Urologic and Reproductive Medicine, FDA; Christian Cao, Team Leader, Division of Pharmacovigilance I, FDA; Diana Bianchi, Director, National Institute of Child Health and Human Development, National Institutes of Health (NIH); Rohan Hazra, Director, National Institute of Child Health and Human Development – Division of Extramural Research, NIH; Karen Parker, Director, Sexual & Gender Minority Research Office, NIH; Joshua A. Gordon, Director, National Institute of Mental Health, NIH; Maura Calsyn, Deputy Assistant Secretary for Health Policy, Office of the Assistant Secretary for Health; Dylan Nicole de Kervor, Senior Advisor, Office for Civil Rights; and Arlin Hatch, Psychologist, Center for Mental Health Services, Substance Abuse and Mental Health Services Administration.

HHS has already produced approximately 2.3 million pages of documents to Defendants, in rolling productions in March and June 2023. In terms of the remaining production, HHS has completed the email and manual collections for all the Operating Divisions and Staff Divisions that the parties agreed are likely to have responsive information. Attorney review of these documents has been ongoing and the next set of documents, mostly comprised of the emails collected from the custodian designee for the Office of the Assistant Secretary for Health (OASH), will be produced shortly. This production includes emails from the account of Deputy Assistant Secretary for Health Policy Maura Calsyn.

HHS selected Ms. Calsyn as the email custodian for OASH because she was the member of Admiral Levine's Immediate Office team who was most likely to have the most complete repository of OASH emails responsive to Defendants' discovery requests.[2] In her role, Ms. Calsyn advised "[Admiral Levine] on all aspects of legislation, policy, research, evaluation, and intergovernmental matters." HHS, *Maura Calsyn* (Aug. 30, 2022), https://www.hhs.gov/about/leadership/maura-calsyn.html [https://perma.cc/5HLZ-ERV6]. Ms. Calsyn's portfolio included health policy issues related to transgender youth. Exhibit A, Declaration of Sarah Boateng (Boateng Decl.), ¶ 9.

---

[2] Deputy Assistant Secretary Calsyn departed OASH for another HHS division just a week before emails were collected. Her records have been preserved pursuant to a litigation hold.

For non-email documents from OASH, HHS used a manual collection process and collected documents directly from individuals who have responsive information. Another member of Admiral Levine's team, Sarah Boateng, the Principal Deputy Assistant Secretary for Health, led this document collection process. Ms. Boateng "shares responsibility with the Assistant Secretary for Health, Admiral Rachel Levine, for planning, coordinating, and directing substantive program matters; policy and program development; and determining and setting legislative and program priorities covering the full range of public health activities within the Office of the Assistant Secretary for Health ("OASH") to promote healthy people, healthy communities, healthy nation." *Id.* ¶ 2; HHS, *Sarah Boateng, MHA* (Sept. 6, 2022), https://www.hhs.gov/about/leadership/sarah-boateng.html [https://perma.cc/7V52-87D2]. The entirety of the OASH Immediate Office reports to Ms. Boateng on substantive issues. Boateng Decl., ¶ 7. HHS has collected non-email files from multiple high-ranking staff members within OASH, including Ms. Boateng, Ms. Calsyn; the Director, Executive Secretariat of OASH Celinda Franco; Chief of Staff Captain Eun (Kathy) J. Oh; OASH Communications Director Adam Sarvana; OASH Senior Advisor on LGBTQI+ Health Equity Adrian Shanker; and Deputy Assistant Secretary, Office of Population Affairs Jessica Swafford Marcella. *Id.* ¶ 14. HHS also reviewed

Admiral Levine's non-email files and found that her files do not contain responsive information that is different from the files that will be produced. *Id.* ¶¶ 15, 32.

## B.   ADMIRAL LEVINE'S EMAILS AND OTHER RECORDS

Admiral Rachel Levine serves as the Assistant Secretary for Health after being nominated and confirmed in 2021. HHS, *Admiral Rachel L. Levine, MD* (Oct. 31, 2022), https://www.hhs.gov/about/leadership/rachel-levine.html [https://perma.cc/NK4L-VH4L]. As part of HHS's leadership team, her role is to lead the agency's efforts to "improve the health and well-being of all Americans." *Id.* Admiral Levine favors in-person communications over email. Boateng Decl., ¶¶ 20, 37. As such, she sends relatively few emails, on average 11, in any given day. *Id.* ¶ 22. Approximately 80% of the emails she sends are emails that she has forwarded to Ms. Boateng or Chief of Staff Captain Kathy Oh without comment, who then forward them on to the appropriate personnel, including Deputy Assistant Secretary Calsyn. *Id.* ¶ 23. While approximately 10% of the emails she sends are a simple, non-substantive response such as "thank you," it is still her practice to copy appropriate members of her staff. *Id.* ¶ 25. The remaining approximate 10% are substantive responses that she usually asks a member of her Immediate Office team to draft for her to send or to send on her behalf. For those emails, it is her practice to copy members of her team for their awareness. *Id.* ¶ 27. If any of those emails involved the subject matter of this litigation, it would be

Admiral Levine's practice to copy Ms. Boateng or Deputy Assistant Secretary Calsyn, which means those emails would necessarily be collected when searching the already-designated individual's email accounts. *Id.*

With respect to non-email files, Admiral Levine does not draft her own speeches. Moreover, it is not her practice to edit documents electronically, but instead discusses her edits with her staff, who implement the changes for her. *Id.* ¶¶ 31, 36. It is for this reason that Ms. Boateng determined that Admiral Levine's non-email files would be unlikely to include unique responsive information. *Id.* ¶ 15.

## ARGUMENT

Admiral Levine should not be designated as a custodian in this matter. First, HHS's designation of Deputy Assistant Secretary Calsyn as a custodian is reasonable and will not result in a deficient production. Second, Admiral Levine's records do not contain information that is unique and that will not otherwise be collected. Third, Defendants' insistence on designating Admiral Levine as a custodian is disproportionate to the needs of the case.

## A.   HHS'S CUSTODIAN SELECTION IS REASONABLE AND WILL NOT RESULT IN A DEFICIENT PRODUCTION.

Defendants are not entitled to dictate who HHS names as a custodian, given that the designee for OASH is reasonable and the production will not be deficient. As one district court has observed, "[u]nless [the] choice [of custodians] is

6

manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or . . . designating custodians." *Mortg. Resol. Servicing v. J.P. Morgan Chase Bank, N.A.*, No. 15 Civ. 0293, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017); *see also Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) ("Asking a court to compel a party to search the ESI of additional custodians is similar to asking a court to compel a party to undertake additional efforts to search for paper documents. In either case, the requesting party is second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information . . . ."). Absent agreement by the parties, the party responding to the discovery requests chooses the custodians it deems "most likely to possess responsive information." *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. Civil Action 13-373-SDD-EWD, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) (quoting *Mortg. Resol. Servicing*, 2017 WL 2305398, at *2).

HHS is a large government agency with many operating and staff divisions and, as the responding party, it selected custodians from each of the divisions that were most likely to have responsive information. This was no small task. The selections were made with input from key decision-makers in each of the divisions based on their intimate knowledge of how their office operates, the type of

functions that are performed, and their subject area of expertise. HHS aimed to select people who were in the "sweet spot" of the flow of information. As HHS explained to Defendants during negotiations regarding custodians, information flows upward within each division; however, that notion was balanced against the fact that emails received by the individuals at the very top are filtered through someone whose role it is to be the information gatekeeper. Exhibit B.

For OASH, the person at the optimal point in the email information flow was Deputy Assistant Secretary Calsyn. Working with counsel, OASH determined that Ms. Calsyn was the individual who was most likely to have the largest repository of emails that were responsive to Defendants' discovery requests. Boateng Decl. ¶ 9. As part of the leadership team within OASH, she was responsible for developing and directing policy initiatives across the Office, including policy initiatives involving the subject of transgender rights, and advising Admiral Levine on all aspects of legislation, policy, research, evaluation, and intergovernmental matters. *Id.* HHS's designation of Ms. Calsyn as the email custodian for OASH was based on the sound discretion of personnel in the best position to know who within their division was most likely to have responsive information. Given that Ms. Calsyn worked closely with Admiral Levine, Defendants will receive responsive emails that the two of them exchanged with one another and that Admiral Levine sent out. Defendants should not be permitted

to second-guess HHS's decision based on pure speculation—particularly because they have not yet seen the entirety of Ms. Calsyn's emails.

Defendants cannot establish that HHS's designation of Deputy Assistant Secretary Calsyn as the email custodian for OASH is unreasonable or that the agency's production will be deficient. Defendants claim that Ms. Calsyn is insufficient because she is "a lawyer with no medical expertise—much less involvement in treatment for gender dysphoric minors—and as a lower-level staffer, would not be privy to all relevant communications." ECF 302 at 2-3. When choosing a custodian, the responding party is bound to designate the individual who is most likely to have responsive information. Whether there is someone within the organization who has a *personal* background that is more related to the subject matter is immaterial. Moreover, Defendants' bare claim that Ms. Calsyn would not be privy to all relevant communication is unsupported and contradicts HHS's own statements regarding Ms. Calsyn's role in the organization.

HHS's procedures for non-email documents within OASH are also reasonable. Ms. Boateng led the search of OASH's network drives to find responsive documents. Boateng Decl., ¶ 15. Ms. Boateng "cast a broad net to ensure that OASH sufficiently collected unique, non-email files that are responsive to Defendants' discovery requests." *Id.* In addition, certain studies, speeches, and other documents that were identified by Defendants were specifically pulled to

ensure they would be included in the production. There is no reason to doubt that

HHS has conducted a thorough search for responsive documents and that, to the

extent Admiral Levine may have relied on research in HHS's custody or control in

support of the content of her remarks that gender-affirming care is safe and

effective, it has been collected.

Accordingly, HHS's procedures for identifying responsive documents,

including the designation of Ms. Calsyn as the email custodian for OASH, are

reasonable and will not result in a deficient production.

## B.   DESIGNATING ADMIRAL LEVINE AS A CUSTODIAN WILL NOT RESULT IN UNIQUE INFORMATION.

Designating Admiral Levine as a custodian will not result in unique

information that HHS would not otherwise identify. *See* Fed. R. Civ. P.

26(b)(2)(C) (stating a court "must limit the . . . extent of discovery otherwise

allowed by these rules" if the court determines that "discovery sought is

unreasonably cumulative or duplicative"). To justify an order compelling HHS to

search the records of an additional custodian, Defendants, "as the requesting party,

must demonstrate each custodian would provide 'unique relevant information not

already obtained.'" *In re 3M Combat Arms Earplug Products Liability Litigation*,

No. 3:19-md-2885, 2020 WL 4501794, at *1 (N.D. Fla. Aug. 5, 2020) (quoting

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107-08

(S.D.N.Y. 2013) (refusing to compel a party to search the records of additional

custodians even though each had some connection to the events of the case)).

HHS selected Deputy Assistant Secretary Calsyn as the email custodian for

OASH because she was a member of Admiral Levine's Immediate Office team

and, as such, advised the Assistant Secretary on all aspects of legislation, policy,

research, evaluation, and intergovernmental matters. Boateng Decl., ¶ 9. The two

officials worked closely together, and to the extent that one of Admiral Levine's

emails related to the subject matter underlying this litigation, it is almost certain

that Ms. Calsyn—who directed policy on transgender issues—would have received

a copy of it. *Id.* ¶¶ 23, 25, 27. In designating Ms. Calsyn as the OASH email

custodian, OASH determined that the email files of Admiral Levine, and other

members of OASH, which relate to the underlying subject matter of this litigation

were likely to be substantively duplicative of Ms. Calsyn's files. *Id.* ¶ 10.

For the manual collection of documents, Principal Deputy Assistant

Secretary Boateng tasked the OASH staff who would have documents responsive

to Defendants' discovery requests with collecting those documents. *Id.* ¶¶ 15, 32.

This collection is expected to retrieve any hard-copy documents that Admiral

Levine worked on—including public statements and speeches—particularly given

that she does not draft her own speeches, and due to her practice of not marking up

hard copies of documents and communicating edits orally to her staff. *Id.* ¶¶ 31,

35-37. In manually collecting non-email documents for this litigation, OASH explicitly considered Admiral Levine's files to determine whether they would contain unique responsive documents. *Id.* ¶ 15. OASH determined, however, that the review and collection of non-email documents from other custodians rendered Admiral Levine's documents duplicative of what was already collected for the litigation. *Id.*

Defendants' argument that Admiral Levine's position and public prominence warrant her inclusion as a custodian should be rejected. While Admiral Levine has discussed gender-affirming care for minors in her public role as a high-ranking, openly transgender HHS official, her role alone does not make her records subject to search. *See Mortg. Resol. Servicing,* 2017 WL 2305398, at *3 (noting that "speculation that [a desired custodian's] position as a senior executive might increase the relevance of [their] files is not a basis for designating [them] as a custodian") (citing *Assured Guar. Mun. Corp. v. UBS Real Estate Securities, Inc.*, Nos. 12 Civ. 1579(HB)(JCF), 12 Civ. 7322(HB)(SN), 2013 WL 1195545, at *3-4 (S.D.N.Y. Mar. 25, 2013)); *see also In re Morgan Stanley Mortgate Pass-through Certificates Litigation*, No. 09-CV-02137 (LTS)(SN), 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013). Again, Admiral Levine is serving at HHS as a public official, not as a practicing doctor or researcher. Admiral Levine's files do not differ from Ms. Calsyn's emails or the documents collected by OASH staff.

Defendants' focus on Admiral Levine's "unique credentials and medical expertise in adolescent medicine and gender dysphoria," ECF 302 at 18, is misleading. To justify requiring HHS to designate Admiral Levine as a custodian, Defendants must show that the *discovery sought* is unique, not that the custodian herself has unique credentials. *See Fort Worth Emps.' Ret. Fund*, 297 F.R.D. at 107 (noting that the requesting party provided "no evidence that there are *unique responsive documents* being missed in the current search scheme that would justify the inclusion of additional custodians from this subgroup") (emphasis added). To the extent that her prior experience as a pediatrician informs her statements on the safety and efficacy of gender-affirming care, it neither changes the nature of the role she was appointed to fill at the agency nor the documents in her possession. Finally, Defendants provide examples of documents they believe will be produced if Admiral Levine were to be made a custodian, however each of these examples are types of documents that are already being collected within the scope of the existing agreed-upon search terms and custodians. ECF No. 302 at 12-13. For example, "[d]ocuments about how 'gender-affirming care for youth' is purportedly 'not in scientific or medical dispute,'" (ECF No. 302 at 12), will already be captured through the parties' agreed-upon search terms including "gender," "affirm," "youth," "treat," and "adverse." Ex. B at 9-10. Likewise, "[a]ny documents bearing on the informed consent process," (ECF No. 302 at 13), will

13

also be captured through those search terms as well as the term "consent."  Ex. B at 9-10.

The bottom line is Admiral Levine's records are not unique and, as HHS has said repeatedly, Admiral Levine's work is supported by her Immediate Office team and any responsive, non-privileged files will be produced. Ex. B. Defendants have failed to show any evidence to suggest otherwise and, instead, simply disregard HHS's own explanation, given over emails and a series of calls, of how the office— and Admiral Levine—operate.

## C. DEFENDANTS' DEMAND TO MAKE ADMIRAL LEVINE A CUSTODIAN IS DISPROPORTIONATE TO THE NEEDS OF THE CASE.

Any marginal benefit that could be gained from searching Admiral Levine's records is not proportional to the needs of the case. While courts construe relevance broadly, much of what Defendants are seeking by adding Admiral Levine as a custodian fails even this low bar. Relevance is considered within the context of proportionality. Specifically, proportionality concerns "include the importance of the requested discovery, the parties' relative access to the information, and 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Taylor v. Farm Credit of N. Fla. ACA*, No. 21-13807, 2022 WL 4493044, at *3 (11th Cir. Sept. 28, 2022) (quoting Fed. R. Civ. P. 26(b)(1)). Defendants "do not need, and are not entitled under the rules of

proportionality, to every single document related to" the issues in this case. *In re Morgan Stanley*, 2013 WL 4838796, at *2.

This Court has rightly stated that the "fundamental issue in this case . . . is whether Section 4(a)(1)-(3) of [VCAP] is constitutional under the Fourteenth Amendment," ECF 192 at 5, and made clear in its ruling on Defendants' first motion to compel that the focus of discovery should be on the safety and efficacy of the treatments. ECF 261 at 4 (denying Defendants' motion with regard to RFP 6 that sought all documents concerning "transitioning" as opposed to "the effects of transitioning."). Defendants' demand for the records of one high-ranking official within a large organization simply because they believe she is a "leading official" on transgender issues goes well beyond that scope.

Defendants' fixation with Admiral Levine ignores the nature of her role within HHS—where a completely separate operating division (NIH) has funded *some* research on the subject of gender-affirming care. Admiral Levine does not oversee NIH and is a consumer of the research it funds, just like the public.

The *Garcia Ramirez* case, cited by Defendants, illustrates the difference between when individual agency officials' records may be determinative and, as here, when they are not. *Garcia Ramirez v. U.S. Immigr. Customs Enf't,* 331 F.R.D. 194 (D.D.C. 2019). There, the communications of individuals within the federal agencies were central to the case because whether those agencies had

15

considered less restrictive placements determined the outcome of the core legal analysis.[3] By contrast, Admiral Levine's actions, speeches, or public statements in her role as an HHS official *will not* resolve the question of whether SB 184 is constitutional.

As a last resort, Defendants speculate that "[s]earching the Assistant Secretary's communications and documents could uncover evidence demonstrating that the treatment regimen is not 'evidence-based' at all." ECF 302, at 16. *But see In re Blue Cross Blue Shield*, No. 2:13-CV-20000-RDP, 2017 WL 11681948, at *2 (N.D. Ala. Aug. 30, 2017) ("mere suspicion," without more, "is not enough to meet the proportionality factors in Rule 26(b)(1)"). A single HHS official, who is not conducting original research, or even overseeing the operating division that funds that research, cannot have the sort of evidence that would warrant collection of documents that are not unique from those that have already been collected and will soon be produced.

In this litigation, Defendants currently have or will have access to: a large body of published scientific and medical literature on gender-affirming care; discovery Defendants have obtained from WPATH; discovery from HHS

---

[3] Plaintiffs were young adult immigrants who arrived in the United States as unaccompanied minors and, upon their eighteenth birthdays, were transferred into the custody of Immigration and Customs Enforcement (ICE). *Id.* at 196. Plaintiffs sued ICE and other federal agencies claiming that they failed to consider transferring the immigrants to the least restrictive placements, as required by law. *Id.*

components, including the FDA and NIH; expert depositions and reports; news stories; and records from Admiral Levine's Immediate Office colleagues. Adding Admiral Levine to the list of custodians is not proportional to the needs of the case and will simply inhibit HHS's ability to meet the October 20, 2023, discovery deadline.[4]

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Compel the United States to add Admiral Levine as a document custodian.

Dated: August 21, 2023                    Respectfully submitted,

SANDRA J. STEWART                    KRISTEN CLARKE
United States Attorney               Assistant Attorney General
Middle District of Alabama           Civil Rights Division

PRIM F. ESCALONA                     JOHN POWERS (DC Bar No. 1024831)
United States Attorney               Counsel to the Assistant Attorney General
Northern District of Alabama         Civil Rights Division

JASON R. CHEEK                       CHRISTINE STONEMAN
Chief, Civil Division                Chief, Federal Coordination and Compliance
                                     Section

MARGARET L. MARSHALL
Assistant U.S. Attorney              COTY MONTAG (DC Bar No. 498357)
U.S. Attorney's Office               Deputy Chief, Federal Coordination and
Northern District of Alabama         Compliance Section
1801 Fourth Avenue North

---

[4] As described in Ms. Boateng's Declaration, less than 4% of Admiral Levine's sent emails hit on the search terms proposed by Defendants. Boateng Decl. ¶ 22. Despite this small percentage of communications—all of which would be duplicated in other files already being produced—this proposed additional collection from Admiral Levine's emails would require OASH to collect and review an additional 6,559 documents solely from Admiral Levine's Outlook files. *Id.*

Birmingham, AL 35203
Tel.: (205) 244-2104
Margaret.Marshall@usdoj.gov

STEPHEN D. WADSWORTH
Assistant United States Attorney
U.S. Attorney's Office
Middle District of Alabama
Post Office Box 197
Montgomery, AL 36101-0197
Tel.: (334) 223-7280
Stephen.Wadsworth@usdoj.gov

RENEE WILLIAMS (CA Bar No. 284855)
KAITLIN TOYAMA (CA Bar No. 318993)
Trial Attorneys
United States Department of Justice
Civil Rights Division
Federal Coordination and Compliance Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 305-2222
Renee.Williams3@usdoj.gov
Kaitlin.Toyama@usdoj.gov

*/s/ Amie S. Murphy*
AMIE S. MURPHY (NY Bar No. 4147401)
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 353-1285
Amie.Murphy2@usdoj.gov

*Attorneys for Plaintiff-Intervenor United
States of America*

18

CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Respectfully submitted,

*/s/ Amie S. Murphy*
Trial Attorney
Civil Rights Division
U.S. Department of Justice

19