# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, <br><br> *Plaintiffs,* <br><br> United States of America, <br><br> *Plaintiff-Intervenor,* <br><br> v. <br><br> Hon. Steve Marshall, in his official capacity as Attorney General of the State of Alabama, *et al.*, <br><br> *Defendants.* | Case No. 2:22-cv-184-LCB-CWB |

## DECLARATION OF SARAH BOATENG

I, Sarah Newman Boateng, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1. I am employed in the position of Principal Deputy Assistant Secretary for Health ("P-DASH") for the U.S. Department of Health and Human Services ("HHS" or "Department").

2. I have held the position of P-DASH since July 2022. In this role, I share responsibility with the Assistant Secretary for Health, Admiral Rachel Levine, for planning, coordinating, and directing substantive program matters; policy and program development; and determining and setting legislative and program priorities covering the full range of public health activities within the Office of the Assistant Secretary for Health ("OASH") to promote healthy people, healthy communities, healthy nation.

1

3. Prior to assuming my current position, I served as the OASH Chief of Staff from February 2021 through July 2022, where I organized and prioritized critical issues to support OASH's mission to lead America to a healthier future. Prior to that I served as the Executive Deputy Secretary at the Pennsylvania Department of Health, the Special Assistant to the Physician General at the Pennsylvania Department of Health, the Director of Public Affairs at Planned Parenthood Keystone and a constituent advocate/LGBT Affair Advisor for U.S. Senator Robert P. Casey, Jr.

4. I hold a master's degree in Healthcare Administration from the Colorado State University. I am also a graduate of the University of Pittsburgh and the Robert Morris University.

5. This declaration is based upon personal knowledge, information acquired by me in the course of performing my official duties, and my review of HHS records, systems, and information maintained by HHS in the regular course of my employment.

6. I understand that, as part of the above-captioned litigation, Defendants filed on July 31, 2023 a document entitled "Defendants' Motion To Compel Designation Of One Additional HHS Custodian: Admiral Rachel Levine" ("Motion"). I understand that Defendants' Motion asks the Court to require HHS to search Admiral Levine's files for emails and documents responsive to certain search terms.

**OASH's Document Collection to Date for this Litigation**

7. In my role as P-DASH, the entirety of the OASH Immediate Office reports to me directly or through one of my direct reports on substantive issues. Therefore, I have personal knowledge as to which OASH personnel are working on issues related to the subject matter

2

underlying this litigation.

8. I understand that HHS has already collected emails from the Outlook files of former Deputy Assistant Secretary for Health Policy Maura Calsyn.

9. OASH considered each member of the OASH Immediate Office, including Admiral Levine, in determining whose emails to collect in order to comply with its discovery obligations in this litigation. Working with counsel, OASH determined that Deputy Assistant Secretary for Health Policy Maura Calsyn was the individual who was most likely to have the largest repository of emails that were responsive to Defendants' discovery requests. As the Deputy Assistant Secretary for Health Policy, Maura Calsyn advised Admiral Levine on all aspects of legislation, policy, research, evaluation, and intergovernmental matters. As part of the leadership team within the Office of the Assistant Secretary for Health, she was also responsible for developing and directing policy initiatives across the Office. Substantively, Maura Calsyn's portfolio included health policy issues related to transgender youth.

10. OASH also determined that the email files of other members of the OASH Immediate Office, including Admiral Levine, that relate to the underlying subject matter of this litigation were likely to be substantively duplicative of Maura Calsyn's email files. Therefore, it was determined that collecting other individuals' email files, including Admiral Levine's email files, would be unlikely to yield unique email documents that would be responsive to Defendants' discovery requests.

11. I also understand that HHS has offered to produce emails that OASH has collected in response to a FOIA request that is closely related to the subject matter underlying this litigation. Attached hereto as Exhibit A is a copy of the FOIA request that HHS received

from America First Legal on March 23, 2023. This FOIA request seeks "[a]ll records of communications, including e-mail and Microsoft Teams messages, to or from Rachel Levine" that contain specific search terms outlined in the FOIA request.

12. I understand that the search terms included in the FOIA request are substantively the same as the search terms Defendants want HHS to run across Admiral Levine's files. In particular, the FOIA request includes the following search terms: "WPATH," "gender-affirming care," "puberty blockers," "testosterone," "hormone replacement therapy," "HRT," "transgender clinics," "gender dysphoria," "transition surgery," "gender identity," "detransitioning," "detranistioned," "destransitioner," "medically transitioned," "medically necessary," "parental rights," and "parental consent."

13. I understand that documents have already been collected in response to this FOIA request and are being actively reviewed by the FOIA office within HHS. I understand that HHS has offered to produce to Defendants any of the documents released in response to this FOIA request because the burden of doing so will be very small for the Agency since they are already being collected, reviewed, and released.

14. I also understand that HHS has already collected non-email files from multiple members of the OASH Immediate Office, including at least myself; former Deputy Assistant Secretary for Health Policy Maura Calsyn; the Director, Executive Secretariat of OASH Celinda Franco; Chief of Staff Captain Eun (Kathy) J. Oh; OASH Communications Director Adam Sarvana; and OASH Senior Advisor on LGBTQI+ Health Equity Adrian Shanker. I additionally understand that HHS has already collected non-email files from Deputy Assistant Secretary, Office of Population Affairs Jessica Swafford Marcella.

15. I led OASH's efforts to collect non-email files from within and throughout the agency. In doing so, I cast a broad net to ensure that OASH sufficiently collected unique, non-email files that are responsive to Defendants' discovery requests. Admiral Levine's non-email files were considered to be part of that wide net. However, I determined that Admiral Levine's non-email files were unlikely to contain unique responsive documents that were not duplicative of the files of the other individuals from whom documents were collected. I will explain the reasons for that below.

### Role as P-DASH

16. The entire OASH Immediate Office reports to me directly or through one of my direct reports on substantive issues being handled by the Immediate Office. Therefore, I have direct knowledge as to which OASH personnel are working on which issues and oversee that work where appropriate.

17. I understand that Defendants have expressed an interest in work done by the OASH Office of Population Affairs ("OPA"). OPA reports to Admiral Levine through me. While Admiral Levine meets with each OASH office—including OPA—quarterly, I am either involved in those meetings or kept abreast as to important issues that are covered therein. When available, the Deputy Assistant Secretary for Health Policy would also participate in those meetings to the extent that the meeting's subject matter warranted her participation.

### Admiral Levine's Email and Document Practices

18. I have worked closely with Admiral Levine for the last eight years, including in my roles as P-DASH where I serve as Admiral Levine's Principal Deputy, as Admiral Levine's

Chief of Staff, as the Executive Deputy Secretary at the Pennsylvania Department of Health (Admiral Levine was the Secretary), and as the Special Assistant to the Physician General at the Pennsylvania Department of Health (Admiral Levine was the Physician General).

19. Because of these many years of close contact and work, I am familiar with Admiral Levine's email and document practices.

20. For many years prior to coming to public service, Admiral Levine served as a practicing pediatrician. While her office had a personal computer, she spent the majority of her day seeing patients and not working at an office desk. Therefore, Admiral Levine did not use computers and email as her primary communication tool until late in her career. As a result, Admiral Levine handles email and electronic documents differently than most other personnel in the OASH Immediate Office.

21. First, Admiral Levine clears her inbox every day. The emails are saved but by the end of the day each email that has come into her inbox has been reviewed and dispensed with, as appropriate.

22. Secondly, Admiral Levine sends relatively few emails in a given day. OASH polled a three-month period from March 1, 2023 to May 1, 2023 to determine how many emails Admiral Levine sends on a daily and monthly average. On average, Admiral Levine sends approximately 11 emails each day, or 346 emails per month. Less than 4% of those emails (approximately 12 per month) hit on the search terms proposed by Defendants. Despite this paucity of potentially relevant communications—all of which would be duplicated in other custodians' files as described below—I understand that Defendants' proposed additional collection from Admiral Levine's emails would require OASH to collect and review an

6

additional 6,559 documents solely from Admiral Levine's Outlook files. This would be in addition to the 12,716 documents that OASH has already collected and reviewed as part of this litigation. And few, if any, of those 6,559 documents would be expected to provide information unique from what OASH has already collected, reviewed, and will shortly produce.

23. Approximately 80% of Admiral Levine's sent emails are emails that she has forwarded to me and to Acting Chief of Staff Kathy Oh without comment. If Admiral Levine believes that an email is important (i.e., if it is not "spam"), she will forward it at least to Kathy Oh and me. Kathy and I will then forward those emails to the appropriate personnel within the OASH Immediate Office. To the extent that one of these emails related to the subject matter underlying this litigation, it is almost certain that the OASH Deputy Assistant Secretary for Health Policy would receive a copy of the email due to that person's role.

24. Therefore, searching Maura Calsyn's emails as well as the files of the appropriate OASH Immediate Office Personnel identified above would collect any of these documents that are responsive to Defendants' discovery requests.

25. Approximately 10% of Admiral Levine's sent emails are non-substantive responses to an email that she has received. Admiral Levine will often reply "thank you" or something similar to an email she receives. She rarely provides a more substantive response. Even when she provides these types of non-substantive responses, it is Admiral Levine's practice to copy members of the Immediate Office whose work intersects with the subject matter underlying the initial email. To the extent that one of these non-substantive response emails related to the subject matter underlying this litigation, it would be Admiral Levine's practice to copy myself and/or the OASH Deputy Assistant Secretary for Health Policy.

26. Therefore, searching Maura Calsyn's emails as well as the files of appropriate OASH Immediate Office Personnel identified above would collect any of these documents that are responsive to Defendants' discovery requests.

27. Finally, approximately 10% of Admiral Levine's sent emails are substantive responses to an email that she has received. In many instances, Admiral Levine asks a member of the OASH Immediate Office to draft a response for her to send or to send on her behalf. Whenever Admiral Levine sends substantive emails, it is her practice to copy members of the OASH Immediate Office for their awareness. Therefore, to the extent that one of these substantive response emails related to the subject matter underlying this litigation, it would be Admiral Levine's practice to copy at least myself and/or the OASH Deputy Assistant Secretary for Health Policy.

28. Therefore, searching Maura Calsyn's emails as well as the files of appropriate OASH Immediate Office Personnel identified above would collect any of these documents that are responsive to Defendants' discovery requests.

29. Accordingly, while Defendants are correct that "[Admiral] Levine, as head of OASH, almost certainly receives relevant communications from people *other than Calsyn*," (Motion at 18), their assumption that "[Admiral] Levine's communications contain unique, relevant information" is incorrect based on Admiral Levine's practice of forwarding emails to her Immediate Office team.

30. It is for this reason that OASH designated Maura Calsyn as the most appropriate custodian for email files given her position as Deputy Assistant Secretary for Health Policy.

31. Admiral Levine typically reviews documents in hard copy and does not edit documents with comments and redlines. Instead, to the extent that Admiral Levine believes that a draft document needs to be edited or changed, she would discuss the document with the appropriate member of the Immediate Office who would then implement Admiral Levine's edits.

32. Thus, searching the files of the appropriate OASH staff identified above would be expected to collect any non-email documents that are responsive to Defendants' discovery requests. As noted above, this is why no documents that "belong" to Admiral Levine were collected as part of OASH's manual collection of responsive documents: Admiral Levine does not have unique, responsive documents in her possession that are not duplicative of the files of the OASH staff identified above.

33. It is for this reason that OASH sought non-email documents from the entirety of the OASH Immediate Office and collected all unique, responsive documents that OASH was able to locate.

### Admiral Levine's Speeches and Public Statements

34. I understand that Defendants have asserted that "Admiral Levine is *the* leading public-facing official in the United States government when it comes to transitioning treatments for minors." Motion at 1. In support of this statement, Defendants have pointed to Admiral Levine's public statements on the subject matter underlying the litigation, noting that "[Admiral] Levine has repeatedly spoken about the safety and efficacy of transitioning treatments for youth, particularly as it relates to purported mental health improvements." Motion at 9.

35. While Defendants are correct that Admiral Levine has made multiple public statements regarding the relevant subject matter, they are incorrect that "Admiral Levine's emails likely contain unique information" (Motion at 17) for all of the reasons I have noted above. Admiral Levine's public statements are no different than the other types of documents that I have already discussed. Admiral Levine's files are unlikely to contain many, if any, documents that are unique from what OASH has already collected to fulfill its discovery obligations in this litigation.

36. As an initial matter, Admiral Levine does not draft her own speeches. Rather, members of the OASH Immediate Office—who have already collected responsive documents for the litigation—draft Admiral Levine's speeches. And as discussed above regarding non-email documents, Admiral Levine reviews those draft speeches with the Immediate Office.

37. If Admiral Levine has proposed changes or revisions to those draft speeches, those changes and revisions are communicated orally to the Immediate Office, who in turn implement them into the draft speech. Thus, the documents that Defendants purport to seek are actually stored in the electronic files of the individuals from whom OASH has already collected documents.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 21, 2023.

Sarah Boateng
Principal Deputy Assistant Secretary for Health
Office of the Assistant Secretary for Health