## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| Brianna Boe, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Intervenor Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-184-LCB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General, | ) | |
| of the State of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL
## DESIGNATION OF ADMIRAL RACHEL LEVINE

# TABLE OF CONTENTS

Table of Contents ....................................................................................... i

Table of Authorities .................................................................................. ii

Introduction ............................................................................................... 1

Argument .................................................................................................... 2

    I.   Admiral Levine Has Highly Relevant, Unique Communications ............... 2

   II.  Making Admiral Levine A Custodian Is Proportional To The Needs
        Of The Case ............................................................................................ 7

Conclusion ............................................................................................... 10

Certificate of Service .............................................................................. 12

# TABLE OF AUTHORITIES

## Cases

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
  297 F.R.D. 99 (S.D.N.Y. 2013) ..............................................................4

*Garcia Ramirez v. U.S. Immigr. & Customs Enf't*,
  331 F.R.D. 194 (D.D.C. 2019) .........................................................10

*In re Arby's Rest. Grp. Inc. Litig.*,
  No. 1:17-cv-0514-AT, 2018 WL 8666473 (N.D. Ga. Aug. 16, 2018)................6

*In re Facebook, Inc. Consumer Privacy User Profile Litig*,
  No. 3:18-md-02843, 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021) ................3

*In re Ford Motor Co.*,
  345 F.3d 1315 (11th Cir. 2003) ............................................................3

*MariCal, Inc. v. Cooke Aquaculture, Inc.*,
  No. 1:14-cv-00366-JDL, 2016 WL 9459260 (D. Me. Aug. 9, 2016) .............3, 4

*Moore v. Armour Pharm. Co.*,
  927 F.2d 1194 (11th Cir. 1991) ............................................................6

*Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*,
  322 F.R.D. 1 (D.D.C. 2017)..................................................................6

*Philips Elecs. N. Am. Corp. v. BC Tech.*,
  773 F. Supp. 2d 1149 (D. Utah 2011)....................................................3

*Rosen v. Provident Life & Accident Ins. Co.*,
  308 F.R.D. 670 (N.D. Ala. 2015) .........................................................8

*Sec. Pest Control, Inc. v. Wells Fargo Bank, Nat'l Assoc.*,
  532 F. Supp. 3d 1221 (M.D. Ala. 2020)..................................................8

*Thomas v. City of New York*,
  336 F.R.D. 1 (E.D.N.Y. 2020).............................................................6

**Rules**

Fed. R. Civ. P. 26(b)(2)(B) .....................................................................4, 6

**Other Authorities**

8B Wright & Miller, *Federal Practice & Procedure* § 2218 (3d ed.) .....................4

# INTRODUCTION

The United States refuses to turn over emails that it has apparently already searched and that are responsive to search terms it agreed on from an indisputably relevant HHS leader. Why? The United States' opposition offers no good reason. It cannot be explained by the substitution of a subordinate's emails—that subordinate departed months ago, before emails were even initially collected, the subordinate was not privy to all emails before her departure, and adding a custodian would ensure that all relevant, ongoing communications are captured. It cannot be explained by the number of custodians—the United States proposed at least 10, Doc. 284 at 7, and now has only 9. It cannot be explained by the official's position—with respect to custodians outside the Office of the Assistant Secretary for Health (OASH), the United States trumpets that it designated "leaders" with positions in the organizational hierarchy equivalent to that of Admiral Levine. Doc. 307 ("Opp.") at 2 & n.1. It cannot be explained by any burden—again, the United States attests that it has *already* pulled and searched emails at issue, which the United States says are few. Yet the United States refuses to designate Admiral Rachel Levine, who has taken the lead for the federal government on gender transition issues, even though it does not dispute the relevance of Levine's communications. Because Admiral Levine's emails are practically certain to contain relevant information not available from a

subordinate's inbox that has lain dormant for months, the Court should grant the motion and compel the United States to add Levine as an email custodian.

## ARGUMENT

### I. Admiral Levine Has Highly Relevant, Unique Communications.

The United States does not dispute that Admiral Rachel Levine "has taken the lead on issues implicated by Alabama's law" on behalf of the federal government. Doc. 302 ("Motion") at 14. Nor does the United States dispute that the issues here are "part of [Levine's] portfolio," that Levine's trained "specialty is adolescent medicine," or that Levine is a WPATH member and presenter. *Id.* at 14, 15, 17. Last, the United States does not dispute that Levine has studied and repeatedly addressed relevant issues. *Id.* at 7-8, 14-19; *see* Opp. 12.

Though the United States tries to dismiss these facts because "Admiral Levine is serving at HHS as a public official, not as a practicing doctor" (Opp. 12-13), the point is that Admiral Levine's medical experience (and WPATH membership) will inform that work—and, by extension, communications with others. *See* Motion 24 ("Decades of medical experience also make it likely that Levine interprets and reacts differently to medical literature than [attorney Maura Calsyn] does.").

Relatedly, the United States says that the Admiral Levine's "role alone does not make [the emails] subject to search." Opp. 12. But Admiral Levine's "position of prominence" makes it more "likely" that email searches would reveal responsive

2

information. *MariCal, Inc. v. Cooke Aquaculture, Inc.*, No. 1:14-cv-00366-JDL, 2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016); *see In re Facebook, Inc. Consumer Privacy User Profile Litig*, No. 3:18-md-02843, 2021 WL 10282213, at *2 (N.D. Cal. Nov. 14, 2021) ("key decision-makers" "are likely to possess unique, relevant information"). The United States agrees that the "nine custodians" it designated are "all" "leaders or play key roles in their division." Opp. 2. And the United States has already agreed that both OASH in general and Admiral Levine in particular have relevant, responsive documents. It just wants to use the emails of a lower-ranking former employee as a second-tier stand-in for Levine's own emails.

Indeed, the United States' only real argument is that substituting a subordinate who departed the office even before the *initial* email collection months ago for Admiral Levine "is reasonable." Opp. 6. That substitution is manifestly *not* reasonable.

First, the United States relies on a few unpublished, out-of-circuit cases to argue that "the court should play no role in dictating the design of the search" for relevant materials absent "manifest[] unreasonable[ness]." Opp. 7. But a party facing discovery may have an incentive *not* "to search in the right places for [responsive] records." *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1196 (D. Utah 2011).[1] So a responding party's choice of custodians cannot rest in its sole

---

[1] *See, e.g.*, *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) ("[A]t times—perhaps due to improper conduct on the part of the responding party—the requesting party itself may need to

discretion—as the above cases compelling the addition of custodians show. *See supra* pp. 2-3.[2] Instead, under Rule 26(b)(2)(B), the United States must show "that the information" sought from custodians "is not reasonably accessible because of undue burden or cost." As discussed below, it fails to do so, all but conceding that the added search is not burdensome because it has already been performed.

Regardless, the United States' substitution of former employee Calsyn for Admiral Levine flunks any standard of reasonableness. As the United States' own case explains, custodians should be added if "their inclusion in ESI searches is reasonably calculated to lead to relevant evidence that might not be captured if they were excluded." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106 (S.D.N.Y. 2013) (cited at Opp. 10-11, 13). Here, the United States never acknowledges that the Defendants seek to *add* Admiral Levine as a custodian—not remove Calsyn—so it makes no difference if Calsyn would have a large "repository of emails that [a]re responsive to Defendants' discovery requests." Opp. 8. The question for relevance is whether Calsyn would have all the responsive documents that

---

check the [responsive electronic document] compilation."); 8B Wright & Miller, *Federal Practice & Procedure* § 2218 (3d ed.) (noting cases in which "the opposing party had been less-than-forthcoming" with electronic materials).

[2] The United States practically concedes the point, saying it "is *bound* to designate the individual who is most likely to have responsive information." Opp. 9 (emphasis added). What *binds* the United States is "the Court's authority." *MariCal*, 2016 WL 9459260, at *2. And there is no need to choose a single OASH custodian—both Calsyn and Levine can be custodians, as Defendants ask.

Admiral Levine would. The United States does not argue that the answer is yes. And for good reason. The United States concedes that:

1. Calsyn left her position before the first batch of emails was even collected. Opp. 3 n.2.

2. Calsyn left her position *months* ago, apparently in late May or early June, meaning that batches of emails after that date will include *nothing*. *See* Doc. 294 at 5; *see also* Doc. 227-1 at 5 (noting "continuing nature" of Defendants' document requests).

3. Even during her time at OASH, Calsyn did not receive all emails that Admiral Levine received or sent. Opp. 5.

Thus, it is hard to understand how the United States could claim that Admiral Levine would not have at least some responsive, relevant emails not captured by searches of Calsyn's old inbox. At a bare minimum, Calsyn's emails since her departure in early June are a null set; Levine *must* have responsive emails from that timeframe, when many relevant developments in this area have occurred.

According to the United States, "[g]iven that Ms. Calsyn worked closely with Admiral Levine, Defendants will receive responsive emails that the two of them exchanged with one another and that Admiral Levine sent out." Opp. 8. But the United States will not say that this production will include *all* responsive emails involving Admiral Levine, even during Calsyn's employment. That "80% of the emails" Admiral Levine sent were forwards to other individuals, who may have then forwarded some unknown percentage of those emails on to Calsyn, Opp. 5, establishes neither that Calsyn received all the responsive emails that Admiral Levine received nor that

5

she was forwarded all the responsive emails that Admiral Levine sent. As other courts have held, the "kind of splicing" proposed here "with the hope that the amalgam of information is the universe of relevant discovery is an inappropriate collection and production methodology." *Thomas v. City of New York*, 336 F.R.D. 1, 3 (E.D.N.Y. 2020).

In sum, any production that substitutes a former subordinate's emails for the ongoing, responsive communications of the key leader who all agree is the *most* relevant communicator will be both "unreasonable" and "deficient." Opp. 9.[3]

For similar reasons, designating Admiral Levine is likely to result in unique information. The Defendants do not concede that Rule 26 entails a heightened "uniqueness" standard here, as some overlapping disclosure in the interest of "full discovery" is common. *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).[4] And before obtaining responsive documents, the requesting party has no way to *prove* that "each custodian" has "unique relevant information." Opp. 10. But even applying a uniqueness standard, Admiral Levine must be designated. As just

---

[3] The United States dwells on its "procedures for non-email documents within OASH." Opp. 9-10; *id.* at 11-12 (discussing "the manual collection of documents"). Those procedures are not the subject of this motion so are irrelevant. Those documents do not substitute for Admiral Levine's emails. And the United States did not manually collect "documents that 'belong' to Admiral Levine" anyway. Declaration of Sarah Boateng, Doc. 307-1 ¶ 32.

[4] *See Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017) ("[w]eighing the six Rule 26 proportionality factors" in deciding whether to add a custodian); *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-cv-0514-AT, 2018 WL 8666473, at *3 (N.D. Ga. Aug. 16, 2018) (same).

explained, it is a certainty that Calsyn will not have all of Admiral Levine's responsive emails. Thus, adding Admiral Levine as a custodian will result in unique information—from all the emails Calsyn did not receive, including during the times when she has not been working at OASH.

## II.   Making Admiral Levine A Custodian Is Proportional To The Needs Of The Case.

The United States' proportionality argument is also meritless. The United States starts off broadly contesting the relevance or importance of OASH communications, noting for example the irrelevant fact that "a completely separate operating division (NIH)" funds "research." Opp. 15; *see id.* at 15-16. Yes, and that is why NIH is a relevant HHS component. The United States has already agreed that OASH is *also* a relevant HHS component, *see, e.g.*, Doc. 302-1 at 8, and under Levine's leadership, OASH itself issued relevant guidance. *See* Motion 14 & n.10. The only question is whether the United States may search only select emails from a former employee or must include all relevant emails from OASH's head. As shown, omitting those emails would deprive the Defendants of relevant, important information that cannot be obtained elsewhere.

The United States' accusation that Defendants are somehow "fixat[ed]" on Admiral Levine or targeting an individual "who happens to be transgender" (Opp. 1, 15) is far off the mark. Only the United States put Admiral Levine's personal status at issue. And only the United States is treating this situation differently: It agrees

7

that for other relevant HHS divisions, it designated the "leaders," almost entirely "Directors." Opp. 2 & n.1; *see* Motion 19-20. But for OASH, the United States is trying to substitute a lower-tier former employee.

The United States' proportionality argument also fails because it makes no effort to show that "the burden or expense of the proposed discovery outweighs its likely benefit." *Sec. Pest Control, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 532 F. Supp. 3d 1221, 1233 (M.D. Ala. 2020). Indeed, the United States makes nary a peep about burden, other than the unsupported assertion that designating Admiral Levine would "inhibit HHS's ability to meet the October 20, 2023, discovery deadline." Opp. 17; *contra Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680 (N.D. Ala. 2015) ("The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information." (cleaned up)).

The United States' own declaration mocks this threat of delay. First, the declaration says that "the burden of" producing all of Admiral Levine's emails responsive to the third-party FOIA request would be "very small." Boateng Decl. ¶ 13. Considering that the United States views Defendants' requests as interchangeable with the third-party FOIA request, *see* Doc. 302-1 at 2 ("the search terms in the

FOIA request are sufficiently broad enough to unearth all responsive documents"), how could the burden here be so different?[5]

Second, the United States' declarant says that "[o]n average, Admiral Levine sends approximately 11 emails each day," and "[l]ess than 4% of those emails" "hit on the search terms proposed by Defendants." Boateng Decl. ¶ 22. Still, the declarant insists, the government would have to "review an additional 6,559 documents solely from Admiral Levine's Outlook files." *Id.* In the context of modern e-discovery, that is not a large number. It is half the number "that OASH has already collected and reviewed." *Id.* And the United States does not say how many of these documents it has already reviewed for Calsyn's production or under the FOIA request—and thus would incur no added burden to review. Nor does the United States address its prior stipulation that it would "deduplicate (i.e., within and across custodians) using commercially acceptable e-Discovery software," which "mitigate[s]" "any overlap of documents procured from Calsyn and Levine." Motion 23. If the United States' declarant is right that "few" of the 6,559 documents would be "unique," Boateng Decl. ¶ 22, then a few clicks of a mouse would largely accomplish the "review" of which the United States frets (in a footnote, Opp. 17 n.4). *See Garcia Ramirez v.*

---

[5] After making this third-party FOIA request a centerpiece of negotiations, the United States now abandons it. The United States does not contest that "[e]xpanding the FOIA search by seven months and eight search terms will produce unique, relevant information" or that any burden of this expansion is slight. Motion 25-26.

*U.S. Immigr. & Customs Enf't*, 331 F.R.D. 194, 198 (D.D.C. 2019) (finding no undue burden when the responding party "d[id] not respond to [the] assertion that the 'de-dupe' technology will greatly reduce the number of documents to be reviewed").

Given the relevance of Admiral Levine's ongoing, responsive emails and the conceded lack of burden in producing those emails, designating Admiral Levine as a custodian is proportional to the needs of the case.

## CONCLUSION

For these reasons, the Court should compel the United States to add Admiral Levine as a document custodian.

Date: August 25, 2023

Respectfully submitted,

Steve Marshall
  *Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on August 25, 2023, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Defendants*
