UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:22-cv-184-LCB |
| | ) **UNDER SEAL** |
| STEVE MARSHALL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## SEALED BRIEF IN SUPPORT OF EMERGENCY MOTION TO STAY DISSEMINATION OF SEALED FINAL REPORT

Come now James Esseks, Carl Charles, and LaTisha Faulks (the "Movant Attorneys"), and respectfully submit this Sealed Brief in compliance with this Court's Order of October 11, 2023 (doc. 324).

### Factual Background

**Procedural Posture:** After months of confidential *in camera* and tightly controlled proceedings, the three-judge Panel in *In re Vague*[1] issued its Final Report of Inquiry on October 3, 2023. (*Vague*, doc. 70). The sealed Final Report indicated that it would be served on this Court, as well as the Chief Judges of the Northern and Middle Districts of Alabama (*Id.* at 52). The Final Report also directed the Clerk of Court to close that miscellaneous proceeding. (*Id.*).

---

[1] No. 2:22-mc-03977-WKW (M.D. Ala.) ("*Vague*").

1

On October 4, 2023, this Court entered a sealed Order in this case (*Boe*), *sua sponte* directing that the Panel's sealed Final Report be shared with the lawyers representing the State of Alabama, among others. (*Boe*, doc. 318).[2] The undersigned replied to the transmittal email from this Court's Case Administrator (copying all 62 other recipients) that the Movant Attorneys were in the process of filing a motion to stay dissemination of the Panel's sealed Final Report. The Movant Attorneys then promptly filed their Emergency Motion to Stay requesting that this Court give them "the opportunity to submit argument and authorities to this Court as to why such dissemination [of the sealed Final Report] would be improper." (doc. 319).

In response to the Emergency Motion to Stay, this Court issued an order later on October 4 requiring the Movant Attorneys to file by the next day a sealed memorandum providing precise record citations supporting the statements in the Motion to Stay (1) that "[s]ome of the testimony and evidence" cited in the Panel's sealed Final Report "was gathered by the panel under assurances that it would not be shared with the Alabama Attorney General's office or other adverse parties" (doc.

---

[2] Movant Attorneys are not (and never have been) parties to or counsel of record in *Boe*, so they did not receive the CM/ECF notice of the Court's October 4 order, nor did they receive that order when it was distributed by email from this Court's Case Administrator later that day. Undersigned counsel received that later email, however, presumably because they are counsel of record for an unrelated non-party in *Boe*. As far as is known, neither the State of Alabama or any other party or counsel in *Boe* has requested (or moved) for the disclosure of the sealed Final Report. As noted in the Sealed Memorandum (*Boe*, doc. 321), it appears that the Clerk of the Court may have already complied with this Court's dissemination directive before counsel for Movant Attorneys received notice of this Court's order, but neither Movant attorneys or their counsel were copied on any such dissemination.

2

319 at 1-2; doc. 320 at 1); and (2) that the Panel's sealed Final Report "contains testimony and other evidence of privileged matter and other information protected by the work product doctrine." (doc 319 at 1; doc. 320 at 2). Movant Attorneys complied with this Court's order and submitted the Sealed Memorandum on October 5, 2023 (doc. 321).

On October 11, 2023, this Court entered an order directing the Movant Attorneys to file this brief in support of the motion to stay dissemination of the Final Report of Inquiry to the lawyers representing the State of Alabama in this case (*Boe*, doc. 324).

**History of the Panel's Inquiry:** As the Court is aware, the Chief Judges of the Northern, Middle, Southern Districts of Alabama opened a miscellaneous proceeding entitled *In re Vague* "to inquire about the issues raised by counsel's actions" in three cases that challenged Alabama's "Vulnerable Child Compassion and Protection Act."[3] (*Vague*, doc. 1). The Panel's inquiry began with an order entered on May 10, 2022 directing 31 attorneys to appear before them on May 20, 2022 in order for the Panel to investigate a suggestion of "judge shopping" contained in this Court's order of April 18, 2022 in *Walker*. (*Id.*). The Panel's initial order states: "[T]his proceeding will not be adversarial in nature." (*Id.* at 6).

---

[3] Those three cases are *Ladinsky v. Ivey*, 5:22-cv-447-LCB (N.D. Ala.), *Walker v. Marshall*, 5:22-cv-480-LCB (N.D. Ala.), and *Eknes-Tucker v. Ivey*, 2:22-cv-184-LCB (M.D. Ala.). Movant Attorneys were only counsel in *Walker*, and never appeared in *Ladinsky* or *Ecknes-Tucker/Boe*.

3

In all, the three-judge Panel in *Vague* took testimony *in camera* from thirty-nine lawyers involved in *Walker*, *Ladinsky*, and *Eknes-Tucker* through live testimony in five evidentiary hearings and sealed written declarations.

At the conclusion of the last hearing on November 4, 2022, the Panel requested written submissions from Respondents and directed counsel to promptly submit a proposed briefing schedule (Nov. 4 Tr. at 72-85). Respondents filed their Report Regarding Post-Hearing Procedure and Briefing on November 8, 2022 (*Vague*, doc. 69). The Respondents' Report proposed a post-hearing briefing schedule tied to the Respondents' receipt of the transcripts of the November 3-4, 2022 hearings. (*Id.*).[4]

No further order, filing, or other communication occurred until the Panel's entry of its sealed Final Report eleven months later on October 3, 2023 (*Vague*, doc. 70).

---

[4] Respondents requested the transcripts at the November 4, 2022 hearing and again in the Respondents' November 8, 2022 Report. Respondents had not been provided those transcripts at the time that the Final Report was submitted and were only provided with them on October 12, 2023 after Respondents filed additional requests with the Panel and the Panel entered an order on October 10, 2023 (*Vague*, doc. 73).

4

## Argument

The sealed Final Report should not be disseminated to the lawyers for the State of Alabama, or any other persons who are not court personnel or parties or counsel in the *Vague* proceeding.

### I.    The Final Report Remains Under Seal.

As stated in the style of the Final Report, it is "under seal." (*Vague*, doc. 70, at 1). *See also* Order of Oct. 4, 2023 (*Boe*, doc. 318) ("The Final Report of Inquiry was placed under seal by the three-judge panel..."). The Panel obviously had the discretion to keep the Final Report sealed. *See Perez-Guerrero v. U.S. Atty. Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013) ("Courts have discretion to determine which portions of the record, if any, should remain under seal, and this discretion is to be exercised in light of the relevant facts and circumstances of the particular case."). Preserving and protecting the attorney-client privilege is a proper justification for maintaining filings under seal. *See Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) ("A party may overcome the presumption of access by demonstrating that sealing will further other substantial interests such as ... preservation of attorney-client privilege."). The Panel chose to share the Final Report only with this Court and the Chief Judges, **while keeping it under seal.** (*Id.* at 52). *See Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1363

5

(11th Cir. 2021) (court that made the decision to seal a filing is in best position to decide whether it should be unsealed).

Unless and until the Panel unseals the Final Report, this Court should maintain it under seal and not share it with third parties, particularly the lawyers for the State of Alabama.[5]

## II. The Lawyers for the State of Alabama have no Legitimate Interest in the Sealed Final Report.

The sealed Final Report, of course, was created and filed in *Vague* and is not a part of the record or docket in this case (*Boe*). *Vague* and this case are two separate and discrete cases.[6] The matters addressed in the sealed Final Report are not matters involving the merits of this case. Further, the State of Alabama was not a party to, nor was the Attorney General counsel in, the *Vague* miscellaneous proceeding that resulted in the sealed Final Report. As Judge Proctor observed in *Vague*, the State of Alabama had no right to hear or read the testimony of the Respondents. (May 20, 2022 Tr. at 37, lines 8-21).

---

[5] Although this Court's October 4, 2023 order noted that "counsel are reminded not to disseminate the filing as long as it remains sealed" (*Boe*, doc. 318), sharing the sealed Final Report with the dozens of attorneys involved in this high-profile and hotly-contested case, including the Attorney General's office and other lawyers with interests and agendas vigorously at odds with the interests of the Movant Attorneys and other Respondents (and their clients), defeats the purpose of maintaining the document under seal.

[6] As the Panel noted in *Vague*: "This is not an adversarial proceeding. This is an inquiry. ...[S]ince its not an adversarial proceeding, it's an M[iscellaneous] C[ase]. **It's not related to any of the dockets that ... we've received this inquiry from.**" (May 20, 2022 Tr. at 15-16 (Emphasis added)).

6

Nor do the lawyers for the State of Alabama have any role to play in any potential future proceedings or actions resulting from the sealed Final Report.[7]

There is simply no legitimate justification for sharing the sealed Final Report with anyone other than court personnel.

### III. The Sealed Final Report Contains Privileged and Work-Product Information.

The Panel's sealed Final Report contains a lengthy section entitled "Facts" that it states was "gleaned from the oral and written testimony elicited in this inquiry." (*Vague*, doc. 70 at 16). The Panel's recitation of facts includes numerous references to the Movant Attorneys' and other Respondents' strategic decisions and mental impressions regarding the underlying litigation in which the State of Alabama is adverse to the interest of Respondents' clients and interests. This includes internal discussions among the lawyers regarding whether to mark the initial *Walker* case as related to another case (*Id.* at 70 at 17-18), whether or in what manner to contact judicial chambers to provide notification of impending filings (*Id.* at 18-22), counsel's strategic decisions regarding how to respond to Judge Marks' show-cause order and subsequent transfer of *Walker* to the Northern District (*Id.* at 22-28), counsel's deliberations and discussions surrounding Judge Axon's order

---

[7] This Court can take judicial notice that the Alabama Attorney General's office is frequently adverse to the civil rights and other advocacy groups that the Respondents represent, and is currently adverse to the plaintiffs' lawyers and their clients in *Boe*.

7

transferring *Ladinsky* to this Court (*Id.* at 28-31), counsel's mental impressions and conversations regarding voluntarily dismissing *Walker* (*Id.* at 31-42), and the *Walker* lawyers' consideration and decision to not refile a case following the dismissal (*Id.* at 42-50).

"Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334–35 (11th Cir. 2018) (citations omitted). The doctrine originated from the Supreme Court's recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947). Thus, the work product doctrine "prevents most inquiries into an attorney's work files and mental impressions." *Drummond*, 885 F.3d at 1335 (citation omitted).

"Greater protection is given to the attorney's opinion work product—that is, materials containing 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" *Id.* at 1335 (quoting Fed. R. Civ. P. 26(b)(3)(B)). "Such materials 'enjoy[ ] a nearly absolute immunity and can be discovered only in very rare and extraordinary

circumstances.'" [8] *Id.* (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.) (alteration in original)).

Such protection is appropriate, as "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman*, 329 U.S. at 510. Thus, the work product doctrine provides a necessary "zone of privacy in which a lawyer can prepare and develop legal theories and strategy . . . free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (citation omitted). Both the *Hickman* Court and others have recognized the deleterious effects of requiring attorneys to produce their opinion work product:

> Were the attorney's work accessible to an adversary, the *Hickman* court cautioned, "much of what is now put down in writing would remain unwritten" for fear that the attorney's work would redound to the benefit of the opposing party. Legal advice might be marred by "[i]nefficiency, unfairness and sharp practices," and the "effect on the legal profession would be demoralizing." Neither the interests of clients nor the cause of justice would be served, the court observed, if work product were freely discoverable.

---

[8] Several circuits have held that the protection afforded to opinion work product is absolute protection, not just "nearly absolute." *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) ("[Rule 26], however, only allows discovery of 'factual' or 'non-opinion' work product[.]"); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir. 1974) ("In our view, no showing of relevance, substantial need or undue hardship should justify compelled disclosure of [opinion work product]."); *In re Grand Jury Proc.*, 473 F.2d 840, 848 (8th Cir. 1973) ("[T]he [opinion] work product sought in this case is absolutely, rather than conditionally, protected.").

9

*Adlman*, 134 F.3d at 1197 (2d Cir. 1998) (quoting *Hickman*, 329 U.S. at 511) (alterations in original).

> If attorneys are to feel free to commit to writing the mental processes by which they sift and evaluate various possible theories on which they will base their cases, they must feel confident that such material will be protected from disclosure. Otherwise, the freedom of thought essential to carefully reasoned trial preparation would be inhibited.

*Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 593 (3d Cir. 1984).

Virtually all of the testimony and other evidence cited by the Panel involved the mental impressions and strategy of the Movant Attorneys and other Respondents regarding extremely contentious litigation in which the opponent is the State of Alabama. This is paradigmatic work product and common interest materials that should not be disclosed to adverse parties. As the Panel repeatedly recognized, the State of Alabama has no right to see that testimony and evidence. It is also true that the State of Alabama has no right to see the Panel's detailed descriptions and (sometimes verbatim) recitations of that privileged testimony and evidence.[9] It is literally none of their business, as the Panel repeatedly assured the Respondents.

---

[9] *See Taylor v. Teledyne Techs., Inc.*, 338 F. Supp. 2d 1323 (N.D. Ga. 2004) (Counsel violated sealing order when he paraphrased its contents in subsequent defamation complaint).

10

## IV. The Privileged and Work-Product Information in the Sealed Final Report was Disclosed without Waiver and Under Assurances that Those Protections Would be Preserved.

On May 19, 2022, the twenty-one attorneys who had filed and voluntarily dismissed *Walker* (including the Movant Attorneys) filed a Pre-Hearing Submission in which, among other things, the attorneys requested that any inquiry by the Panel into matters "which implicate attorney-client and work product" be conducted *in camera*. (*Vague*, doc. 3, at 8).[10]

### A. The May 20, 2022 Hearing.

At the very beginning of the very first hearing with the Panel on May 20, 2022, the Panel recognized that "[s]ome of the parties have already raised issues of attorney-client privilege and work product, and we feel like we should go ahead and address those issues at the beginning of the hearing." (May 20 Hearing Tr. at 10, lines 19-22). The Panel then conducted an *in camera* session with counsel for the Respondents (but without anyone from the Attorney General's office) at which Judge Proctor stated:

> [W]e realize we're asking about – we're going to be asking about things that could implicate work product and attorney-client privilege perhaps. Certainly work product. But we're not doing this in an adversarial

---

[10] The term "*in camera*" is used rather than "*ex parte*" because, as the Panel repeatedly emphasized, *Vague* was not an adversarial proceeding so there was no "adverse party" to cause the submissions to be *ex parte*. (*Vague*, doc. 41: "[T]he Panel is comprised of judges, not party-opponents"); *see United States v. Ellis*, 154 F.R.D. 697, 700 (M.D. Fla. 1993) ("'*in camera*' is routinely used to mean review by the court alone or with the party producing the documents or other material at issue, to the exclusion of opposing counsel.").

11

> proceeding, we're not doing this in litigation, so the question in our mind is, what is the best way to navigate through that? **We certainly expect that any answers to our questions involving work product matters would be in a situation where the State of Alabama is not a party or present in those conversations ...**

(*Id.* at 12, lines 2-10 (Emphasis added)). In response to a query, the undersigned told the Panel that while our clients "stand ready, willing, and able to answer any questions" from the Panel, "we wanted the [Panel], obviously, to at least flag those [privilege and work product] issues so that they could be presented in an *in camera* type setting where the [Panel] gets its answers, but we don't have to necessarily share that." (*Id.* at 13, lines 12-18). Counsel continued: "So to the extent that we're asked to disclose strategic decision making, we would respectfully request that we do that only amongst our own group" and without "the Attorney General's office ... present." (*Id.* at 13-14, lines 22-25, 1-3). Judge Proctor then stated that "[t]hat seems a fair way to navigate the road." (*Id.* at 14, line 24-25).

When the Panel returned from the *in camera* session, the Attorney General's representatives were invited to make a presentation to the Panel (May 20 Tr. at 22-45). At the conclusion of the presentation by the Attorney General's office, Judge Proctor told the assembled Assistant Attorneys General:

> [Y]ou and your colleagues are welcome to be in the courtroom during any public matter. **There may be matters related to work product and/or privilege that we will exclude you and others from**, but we're going to stay in public sessions. It's just that if we're dealing with work product matters, it's appropriate to do that in a way that would not prejudice any party or any lawyer's position in actual litigation.

12

(*Id.* at 45, lines 10-17 (Emphasis added)).

After the Panel identified the different levels of involvement of the thirty-eight Respondents, the Panel directed that the younger, less-involved Respondents would be questioned by Special Master Harwood without counsel present, but with an assurance that "there's going to be a record made of this proceeding, **it's not going to be available to anyone else**, and counsel will have a chance to review it and ask to redact any such question or answer that invades on an attorney-client privilege." (*Id.* at 83, lines 2-5 (Emphasis added)). As the Panel and Respondents' counsel continued to discuss the very unusual procedure to be utilized in questioning the Respondents, Judge Proctor reiterated:

> **If we get into a privileged or work product matter**, and we expect that you'll help us with that, then **you have the right to have others leave the courtroom** who are not court staff. ... In other words, if you think we're getting into something that [the State of] Alabama or just the public doesn't need to know about, work product matters or ... privilege matters, please help us.

(*Id.* at 94, lines 21-24, 95, lines 1-4 (Emphasis added)).

The Panel then proceeded to excuse all Respondents from the courtroom except the first Respondent to be questioned. (*Id.* at 96-97).[11] At that point, the following exchange took place:

---

[11] Throughout this "unique proceeding" (*Vague*, doc. 41), Respondents were sequestered from hearing each other's testimony or reading each other's declarations, and placed under an onerous gag order that prevented them from discussing their testimony or any other aspect of these

13

> MR. RAGSDALE: Your Honor, although they're not under oath, we have **representatives of the Attorney General's office here**, and we really would like them to leave. ... They not only add nothing, but they literally are our competition in these cases. I don't think there's any reason for them to be in this courtroom. So we would ask that they be excused.
>
> JUDGE PROCTOR: **Your request is granted.**
>
> MR. RAGSDALE: Thank you.
>
> JUDGE PROCTOR: And I'm sure our friends from [the State of] Alabama understand that we're probably – **it will probably be very difficult to examine a witness on things that are not work product related**, and you really don't have an interest in hearing that. Might be an interest, but **you don't have a right to hear that.** So **we're going to excuse you.**

(*Id.* at 37, lines 8-21 (Emphasis added)). At that point, the representatives from the Attorney General's office were excused and were not permitted to return for any future hearing in this matter.[12]

In other words, the Panel heard the Respondents' initial objections based on privilege and work product, but assured all involved that any such evidence or

---

proceedings with anyone other than their own counsel. *See In re Paradyne Corp.*, 803 F.2d 604, 608 (11th Cir. 1986) ("In our view, this unprecedented program of *in camera, ex parte* inquisitions is so clearly at odds with the principles of the open, adversarial system of justice guaranteed by our Constitution that the district court's contemplated actions without question endanger the defendants' rights.").

[12] Despite the fact that the proceedings were supposed to be confidential, a person with interests antagonistic to the Respondents improperly leaked preliminary details about the May 20, 2022 hearing to conservative media outlets and sympathetic members of Congress who were pointing to the allegations against the Respondents in an (ultimately unsuccessful) effort to derail the nomination of Eleventh Circuit Judge Nancy Abudu. *See* https://www.frc.org/updatearticle/20220520/splc-judge. It is partly out of concern for similar strategic leaks that the Movant Attorneys object to the dissemination of the Panel's sealed Final Report.

testimony would only be produced *in camera* and not shared with others, particularly not with the State of Alabama. Based on those assurances, Respondents were compelled to testify at length about matters involving privilege and work product.

**B.     The June 17, 2022 Status Conference and Subsequent Motions.**

At the request of the Respondents, the Panel conducted a virtual status conference on June 17, 2022 (*Vague*, doc. 16). Following the status conference, the Panel directed the Respondents to submit a proposed procedure for concluding the matter (*Vague*, doc. 19). Because of the Respondents' submission, the Panel entered an Order on July 8, 2022 requiring the remaining Respondents to file sealed sworn declarations *in camera* addressing eight specific topics regarding the strategic analysis and decisions of the Respondents in crafting, filing, pursuing, and dismissing the original civil actions (*Vague*, doc. 22). The Panel's July 8 Order also addressed the Respondents' "multiple requests" for copies of the transcripts of the May 20, 2022 hearing. In denying the requests for transcripts, the Panel noted that it had "notified counsel that, prior to publicly releasing the transcripts, they would have the opportunity to designate portions of the transcripts that relate to either attorney work product or privileged matters so that those portions could be placed under seal." (*Id.* at n.3).

In response to the Panel's July 8, 2022 Order, Respondents filed motions for a protective order on the grounds that it required the lawyers to "disclose information

15

that is protected by attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine." (*Vague*, doc. 27 at 1; *see also* doc. 34).

On July 25, 2022, the Panel issued an Order that was in part in response to the motions for protective order and other objections filed by the Respondents. (*Vague*, doc. 41). In that Order, the Panel dismissed Respondents' concerns about disclosing work product by assuring Respondents: "To the extent that the materials that must be disclosed to the Panel are work product, all disclosures are to be made *in camera*." (*Id.* at 4).

### C. Submission of Declarations for *In Camera* Review.

When the Respondents submitted their compulsory declarations, they expressly preserved all objections based on privilege and work product. (*Vague*, doc. 42 at 3: "*Walker* Counsel continue to maintain their objection to the forced disclosure of attorney work product, whether *in camera* or otherwise.").

### D. The August 3-4, 2022 Hearing.

The Panel reconvened on August 3-4, 2022. At the beginning of the hearing, counsel for some of Respondents requested "[t]hat any questions that pertain to the declarations or otherwise that call for work product, mental operations, the opinions, thought processes of any of these declarants, should be taken only by the Court *in camera* – by the panel *in camera*." (Aug. 3 Tr. at 9, lines 12-16). In addition, the undersigned asked "that any observers from the Attorney General's office be

16

excluded" noting that, "[o]bviously, part of my concern is we're not aligned with the Attorney General's office." (*Id.* at 10, lines 21-24, 11, lines 15-16). Judge Proctor responded: "Yes. If you recall, in our last hearing we heard from them and excused the. That's how we're proceeding here." (*Id.* at 11, lines 17-19).

At the commencement of the third day of the hearing on August 4, counsel for Respondents again raised and preserved issues regarding privilege, including common interest privilege, and work product, and a discussion was had with the Panel (Aug. 4 Tr. at 3-6). During that discussion, Judge Proctor observed:

> I think what we heard [from Respondents] from day one ... was, we're not hiding anything. **There are some work product privileges we would normally object to, and we will present those *in camera* to the [Panel]. But we're not going to discuss those in front of the State of Alabama**, and we don't want our work product being penetrated as to a party opponent, for example.

(*Id.* at 8-9, lines 21-25, 1-3). Judge Proctor continued: "[W]e did hear counsel [for Respondents] on May 20 explain, the State of Alabama is sitting in here. They don't need to hear what our work product was, **And we totally agreed with that**." (*Id.* at 10, lines 17-20 (Emphasis added)).

E.   **The November 3-4, 2022 Hearing.**

The strict preservation of objections based on privilege and work product continued when the proceedings resumed on November 3-4, 2022. (Nov. 3 Tr. at 4-6).

17

It should be apparent, therefore, that the privileged and work product information that was compelled from Respondents as a part of this *in camera* inquiry and incorporated into the sealed Final Report, was extracted by the Panel under repeated assurances that it would not be shared with third parties, particularly the State of Alabama. This Court should not disregard those judicial assurances without a compelling need to do so. *See Hassoun v. Searls*, 524 F. Supp. 3d 101, 108 (W.D.N.Y. 2021) ("The information requested by the Court necessarily required Respondent's counsel to divulge privileged information, including confidential communications between government counsel and their agency clients and attorney work product. … It would not be appropriate for the Court to require that this privileged information be provided to Petitioner nor made available to the public.").[13]

## Conclusion

The Final Report was placed under seal by the Panel that created it. That seal has not been lifted by the Panel, nor has anyone requested that the Final Report be unsealed. There is no legitimate reason for any third parties – particularly the

---

[13] *Cf. U.S. ex rel. Tiesinga v. Dianon Sys., Inc.*, No. 3:02CV1573 (MRK), 2006 WL 2860606, at *2 (D. Conn. Oct. 3, 2006) ("It is in the interests of courts and parties to encourage the Government to be as candid as possible about the status of its investigation in any request for an extension of its time to intervene. To that end, it may on occasion be necessary for the Government to disclose information that would otherwise be protected by the work product privilege in connection with extension requests. When that occurs, courts should be vigilant to ensure that the Government is not penalized for its commendable candor with the court, at least while the action is still pending.").

attorney for the State of Alabama in this hotly-contested case – to be provided with a copy of the Panel's sealed Final Report. The State of Alabama is not a party to the Panel's nonadversarial inquiry and **was expressly excluded** from those proceedings by the Panel.

As noted in detail above, the Movant Attorneys and other Respondents were repeatedly assured by the Panel that their compelled disclosure of privileged and work product material would not be shared with the State of Alabama. Respondents relied on those assurances when they testified candidly and openly about matters that would have otherwise been protected from disclosure. This Court should rescind its October 4, 2023 Order and, if necessary, direct that any copies already disseminated be immediately returned.[14]

Respectfully submitted,

Barry A. Ragsdale (RAG003)
Robert S. Vance (VAN069)
**Dominick Feld Hyde, PC**
1130 22nd Street South, Suite 400
Birmingham, AL 35205
Tel.: (205) 536-8888
bragsdale@dfhlaw.com
rvance@dfhlaw.com

---

[14] If the sealed Final Report has indeed already been disseminated to non-parties (including the State of Alabama), Movant Attorneys respectfully request that it be clawed back by this Court and that any recipients be required to attest that it has not been further disseminated.

## CERTIFICATE OF SERVICE

  I hereby certify that on October 16, 2023, I filed the foregoing with the Clerk of the Court **UNDER SEAL** and served a copy on counsel in the miscellaneous *Vague* action (Case No. 2:22-mc-3977-WKW) by email. **THIS BRIEF IS NOT BEING SERVED ON THE LAWYERS REPRESENTING THE PARTIES IN *BOE*.**

            /s/
            Of Counsel