## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **BRIANNA BOE, et al.,** | } | |
| | } | |
| *Plaintiffs*, | } | |
| | } | |
| **and** | } | |
| | } | |
| **UNITED STATES OF AMERICA,** | } | **Case No. 2:22-CV-184-LCB** |
| | } | |
| *Plaintiff-Intervenor*, | } | |
| | } | |
| **v.** | } | |
| | } | |
| **STEVE MARSHALL, et al.,** | } | |
| | } | |
| *Defendants*. | } | |

## RESPONDENTS' POST-HEARING BRIEF

Respondents Melody H. Eagan and Jeffrey P. Doss ("Respondents") look forward to the opportunity to appear before the Court to discuss the facts and their intentions surrounding their dismissal of *Ladinsky, et al. v. Ivey, et al.* ("*Ladinsky*") and their filing of *Eknes-Tucker, et al. v. Ivey, et al.* ("*Eknes-Tucker*").  This brief addresses the law relevant to the decisions they made and how the law impacts the Court's inquiry going forward.[1]

**A.**    **Respondents made litigation decisions that they believed complied with the law.**

This inquiry concerns (1) Respondents' decision to voluntarily dismiss *Ladinsky,* a one-week-old lawsuit in the Northern District of Alabama, before an answer or responsive pleading was filed by the defendants, and (2) Respondents' decision to file *Eknes-Tucker*, a new lawsuit with new plaintiffs, in the Middle District of Alabama.

---

[1]    Respondents are filing a copy of this brief in both *Boe, et al. v. Marshall, et al.*, Case No. 2:22-CV-184-LCB (M.D. Ala.) and *In re: Vague, et al.*, Case No. 2:22-MC-3977-LCB (M.D. Ala.).

Respondents made their first decision late on a hectic Good Friday afternoon.  Based on the information that they had at the time, including an unexpected docket text order that appeared to transfer *Ladinsky* outside of the random case assignment system, Respondents voluntarily dismissed *Ladinsky* through Federal Rule of Civil Procedure 41(a)(1)(A)(i).  They believed that Rule 41(a)(1)(A)(i) conferred an unfettered right to dismiss.  And then, four days later, they filed a new action, *Eknes-Tucker*, with similar (but not identical) claims on behalf of a new set of plaintiffs.  Respondents made these decisions with the good faith belief that they were not violating any court order, statute, case, or rule.

Respondents chose to file *Ladinsky* in the Northern District, understanding full well that the case could be assigned to any Northern District judge.  *Ladinsky* was first randomly assigned to Judge Anna Manasco.  When Judge Manasco recused, the case was randomly reassigned to Magistrate Judge Staci Cornelius.  The case was then randomly reassigned to Judge Annemarie Axon.  Respondents did not try to manipulate or influence these random assignments.  Judge Axon's April 15, 2022, text order reassigning the case to Your Honor, however, appeared—at least to Respondents—to not be a random assignment.  It appeared to be contrary to Respondents' understanding of and experience with the Northern District's practice: either (1) cases are randomly assigned if an assigned judge cannot handle the case (e.g., as was the case when Judge Manasco recused or when Magistrate Judge Cornelius had the case reassigned), or (2) in the case of similar cases to be consolidated, the judge assigned to the first-filed case would consolidate and handle all of them (as was anticipated by counsel for all *Ladinsky* parties, with the intent to file a joint consolidation motion before Judge Axon on April 15, 2022).

Against this backdrop, Respondents participated in the decision after business hours on Good Friday to dismiss *Ladinsky* in accordance with how they interpreted Rule 41(a)(1)(A)(i).

They then chose to file *Eknes-Tucker* in the Middle District where venue was proper, understanding that the case would be randomly assigned to any Middle District judge. They did so without knowing about Your Honor's order, entered on April 18, 2022, in *Walker, et al. v. Marshall, et al.* in the Northern District. If they had believed that these decisions violated a court order, statute, case, or rule, they never would have made them, nor would they have publicized their intentions to the media. Respondents deeply regret that the Court has thought otherwise.

## B.   Respondents believed that they had the unconditional right to dismiss under Federal Rule of Civil Procedure 41(a)(1)(A)(i).

Underlying this Court's proceedings concerning the Report of Inquiry is a threshold question: Does a lawyer violate the law when voluntarily dismissing a case under Rule 41(a)(1)(A)(i) if the lawyer considers, at least in part, the identity of the judge to whom the case is assigned? Respondents believed that the answer is no. Both Federal Rule of Civil Procedure 41(a)(1)(A)(i) and the case law interpreting the rule make clear that (1) the right to dismiss, prior to a defendant's answer or motion for summary judgment, is absolute and unfettered, and (2) the subjective reasons underlying a decision to dismiss are not a basis for finding misconduct or imposing a sanction. When Respondents decided to dismiss *Ladinsky*, they were aware of no controlling order, statute, case, or rule that precluded them from considering the judicial assignment when deciding whether to voluntarily dismiss a case.

"The plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). This straightforward and unrestricted procedure has been available to litigants for over fifty years:

> Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable. So long as plaintiff has not been served with his adversary's answer or motion for summary judgment he need do no more than file a notice of dismissal

> with the Clerk. That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone. He suffers no impairment beyond his fee for filing.

*Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963).

To curb potential abuse, Rule 41 has limits.  Those limits are found in the Rule itself:

(1)   <u>Timing:</u> Once the defendant serves either an answer or a summary judgment motion, the plaintiff's right to voluntarily dismiss is extinguished. Fed. R. Civ. P. 41(a)(1)(A)(i).

(2)   <u>Repeat Use:</u> Rule 41(a)(1)(A)(i) can be invoked only once, as the second invocation is with prejudice. Fed. R. Civ. P. 41(a)(1)(B).

(3)   <u>Cost Shifting:</u> In its discretion, the court "may order the plaintiff to pay all or part of the costs of the previous action" if "a plaintiff . . . previously dismissed an action" and then "files an action based on or including the same claim against the same defendant." Fed. R. Civ. P. 41(d)(1).

The principal safeguard is the prohibition against repeat use: "[T]he primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading." *ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1268 (11th Cir. 1999). "But this quick and ready tool may be used once, and only once, if clear consequences are to be avoided. A second notice of dismissal not only closes the file, it also closes the case with prejudice to the bringing of another. The reason for this arbitrary limitation, pointed out in numerous decisions, is to prevent unreasonable abuse and harassment." *Am. Cyanamid Co.*, 317 F.2d at 297.

Apart from those safeguards, Rule 41(a)(1)(A)(i) imposes no other restriction on its use. To the contrary, "[i]t is well established that Rule 41(a)(1)(i) grants a plaintiff an unconditional right to dismiss his complaint by notice and without an order of the court at any time prior to the defendant's service of an answer or a motion for summary judgment." *Matthews v. Gaither*, 902

F.2d 877, 880 (11th Cir. 1990).  For that reason, no court action is needed: "[t]he dismissal is effective immediately upon the filing of a written notice of dismissal."  *Id.* (citing Moore's Federal Practice 41.02(2) (1988)).  The rule, therefore, preserves a plaintiff's "unconditional right to dismiss" while limiting only when—not why—that right may be exercised.  *See, e.g.*, *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 397 (1990) (Rule 41(a)(1) "was designed to limit a plaintiff's ability to dismiss an action" during "the brief period before the defendant had made a significant commitment of time and money."); Absolute Dismissal under Federal Rule 41(a): The Disappearing Right of Voluntary Nonsuit, 63 Yale L.J. 738, 738 (1954) (noting that, at common law, "a plaintiff had an absolute right to dismiss his suit without prejudice at any time before verdict or judgment," but that Rule 41(a) "limits absolute dismissal to an earlier point").

Because the right is unconditional, "[t]he plaintiff's reason for the dismissal is immaterial." 1 Federal Rules of Civil Procedure, Rules & Commentary – Rule 41 (Feb. 2023).  "One doesn't need a good reason, or even a sane or any reason, to dismiss a suit voluntarily.  The right is absolute, as Rule 41(a)(1) and the cases interpreting it make clear, until, as the rule states, the defendant serves an answer or a motion for summary judgment."  *Marques v. Fed. Reserve Bank of Chi.*, 286 F.3d 1014, 1017 (7th Cir. 2002) (citations omitted).  Other courts have expressed similar views. *See, e.g.*, *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1080 (8th Cir. 2017) ("The reason for the dismissal is irrelevant under Rule 41(a)(1)"); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009) ("[If] the plaintiff has brought himself within the requirements of Rule 41, his reasons for wanting to do so are not for us to judge.") (quoting *Thorp v. Scarne*, 599 F.2d 1169, 1177 n.10 (2d Cir. 1979)).

The Fifth Circuit recognized this principle in *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters*, 506 F.2d 914 (5th Cir. 1975), which remains precedential in the

Eleventh Circuit.  The *Pilot Freight* defendants argued that a plaintiff should not be permitted to voluntarily dismiss a complaint after unsuccessfully seeking injunctive relief.  506 F.2d at 915-16.  The Fifth Circuit rejected the defendants' invitation to rewrite Rule 41(a)(1): "Rule 41(a)(1) means precisely what it says."  *Id.* at 916.  Importantly, the Fifth Circuit reached that conclusion despite the defendants' warning that "the construction [the court] place[s] on the Rule permits forum shopping in the sense that a litigant may be able to choose a 'friendly judge.'"  *Id.* at 917.

The Eleventh Circuit has not overruled the Fifth Circuit's precedent, which consistently recognizes that, "[a]s the plain terms of Rule 41(a)(1)(i) establish, a plaintiff has an absolute right to dismiss a lawsuit before the defendant has filed an answer or summary judgment motion." *Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977); *see also id.* (collecting cases where the Fifth Circuit held that "Rule 41(a)(1) means what it says").

Because the right is unconditional and absolute, Circuit Courts have rejected efforts to scrutinize—or punish through sanctions—the reasons for a voluntary dismissal. The Circuit Courts have reached these decisions even when attorneys were attempting to evade a particular judge after adverse rulings.  For example, in *Wolters Kluwer*, 564 F.3d at 110, the attorneys filed a lawsuit in the Southern District of New York, voluntarily dismissed the case, and re-filed the same lawsuit in the District of Massachusetts.  The Southern District of New York found that the attorneys' "main purpose in filing a Rule 41 voluntary dismissal . . . was to judge-shop in order to conceal from [their] client 'deficiencies in counsel's advocacy.'"  *Id.* at 114.  To the district court, "this sort of judge-shopping was an improper purpose and was accordingly sanctionable."  *Id.*  The Second Circuit, however, reversed: "[The lawyers were] entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that [they] did so to flee the jurisdiction or the judge does

not make the filing sanctionable." *Id.* at 115.  Because the attorneys were "entitled by law to dismiss the case," there was no basis to sanction them.  *Id.*

The Eighth Circuit reached a similar result in *Adams v. USAA Casualty Insurance Co.*, 863 F.3d 1069 (8th Cir. 2017).  The district court found that the attorneys had voluntarily dismissed one case and then "[r]efil[ed] in a more favorable forum [to] avoid[] an adverse decision" of the district court.  863 F.3d at 1074.  The district court sanctioned the attorneys.  *Id.* at 1075. The Eighth Circuit reversed: "The reason for the dismissal is irrelevant under Rule 41(a)(1).  Therefore, we hold that the district court erred in concluding that counsel engaged in sanctionable conduct by stipulating to a dismissal under Rule 41(a)(1) for the purpose of forum shopping and avoiding an adverse result." *Id.* at 1080-81; *see also id.* at 1083 (finding that the district court abused its discretion in determining that counsel had "abused the judicial process by stipulating to the dismissal of the federal action for the purpose of seeking a more favorable forum and avoiding an adverse decision").

No Circuit Court has held that a dismissal under Rule 41(a)(1) could be a basis on which to find subjective bad faith, let alone sanctionable misconduct.[2]  To the contrary, courts have acknowledged that "plaintiffs are permitted to engage in a certain amount of forum-shopping." *In re TikTok, Inc.*, --- F.4th ---- (5th Cir. 2023).  According to the Fifth Circuit in *McCuin v. Texas*

---

[2]      Two cases should be addressed.  In *Hernandez v. City of El Monte*, 138 F.3d 393 (9th Cir. 1998), the district court dismissed a lawsuit after finding that the litigants were engaged in "judge shopping."  The Ninth Circuit reversed.  138 F.3d at 398-400.  Although a local rule expressly forbade dismissing one case for the purpose of re-filing to obtain a different judge, there had been no prejudice to the defendants, nor did public policy favor dismissal of the second case.  *Id.* at 399-400.  Considering the balance of factors, the Ninth Circuit held that the district court abused its discretion in dismissing the case.  *Id.* at 400.  In *In re Fieger*, 191 F.3d 451 (6th Cir. 1999), meanwhile, the Sixth Circuit affirmed a disciplinary decision against an attorney who (i) filed thirteen complaints in the same district court; (ii) failed to mark any of those cases as "related" to any of the others, in violation of a local rule; (iii) dismissed all but one of his lawsuits; and (iv) informed the media that he took those steps "so that he could select the judge."  On appeal, the attorney challenged procedural aspects of his disciplinary process.  Accordingly, the Sixth Circuit—in this unpublished decision—did not analyze whether to impose a limitation on a litigant's absolute right to dismiss under Rule 41.

*Power & Light Co.*, a decision cited by the Panel in the Report of Inquiry, so-called forum-shopping or judge-shopping is inherent in the judicial system:

> Forum-shopping is sanctioned by our judicial system. It is as American as the Constitution, peremptory challenges to jurors, and our dual system of state and federal courts. The extension in Article III of federal judicial power to "controversies between citizens of different states," implemented by statute continuously since 1789, permits a plaintiff who might sue in a state court to select a federal forum for the claim. The statutory provision for removal to federal courts of such diversity cases filed in state court permits the defendant to opt for a federal forum. Virtually all causes of action created by federal law may be asserted in either a state or a federal court. Many claims that may be asserted in the courts of one state may also be asserted in the courts of another. Not only may a litigant frequently select among several jurisdictions, he may, within a jurisdiction, lay venue in more than one court.
>
> The existence of these choices not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.
>
> Even in a particular forum, other tactical measures are available to determine who will be the trier of fact. For most causes of action, the plaintiff in a federal court may seek either a jury trial or a bench trial. In these cases, if the plaintiff waives trial by jury, the defendant may veto the bench trial by demanding a jury trial. Finally, the very existence of the peremptory challenge in jury cases bespeaks regard for some latitude in selection of the trier-of-fact on the basis of getting rid of those whom the lawyer considers unfavorably predisposed.
>
> In a perfect judicial system forum-shopping would be paradoxical. The same results would obtain in every forum and after every type of trial. But the actual litigation process is not a laboratory in which the same result is obtained after every test. In some situations, such as when a statute of limitations is involved, the choice of forum may determine the rule of law that will be applied. Even when legal rules are identical, justice can be obtained only through human beings, and neither judges nor jurors are fungible. In recognition both of this and of the nature of the adversary, client-serving process, we tolerate a certain amount of manipulation without inquiry into motive.

714 F.2d 1255, 1261-62 (5th Cir. 1983).

Closely related, a court may not impose a re-filing requirement on a Rule 41(a)(1)(A)(i) dismissal.  *See, e.g.*, 9 Federal Practice & Procedure – Civil § 2366 (4th ed.) ("The district court has no power to impose terms and conditions if a plaintiff properly dismisses by notice under Federal Rule of Civil Procedure 41(a)(1).").  For example, in *Bechuck v. Home Depot U.S.A., Inc.*, the plaintiff voluntarily dismissed under Rule 41(a)(1)(A)(i).  814 F.3d 287, 290 (5th Cir. 2016). The plaintiff did so after the district court had entered adverse rulings against him.  *Id.*  After the plaintiff filed his dismissal notice, the district court entered an order requiring the plaintiff, "[i]f [he] sues [the defendants] again for the same cause of action, [to] do so before this court."  *Id.* at 290-91.  Consistent with its prior decisions, the Fifth Circuit reversed:

> Although forum-shopping is not a trivial concern, Rule 41(a)(1) essentially permits forum-shopping.  It is not uncommon for plaintiffs to use voluntary dismissal to secure their preferred forum, such as when they seek to undo removal and return to state court.  While this may seem distasteful to opposing parties, we have consistently held that Rule 41(a)(1) means what it says and defendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss actions under Rule 41(a)(1) may do so by taking the simple step of filing an answer.
>
> The effect of a Rule 41(a)(1) dismissal is to put the plaintiff in a legal position as if he had never brought the first suit.  Therefore, the plaintiff is free to return to the dismissing court or other courts at a later date with the same claim.  By placing him back into the situation as though he had never brought suit, Rule 41(a)(1)(A)(i) necessarily allows him to choose his forum anew.

*Id.* at 293 (cleaned up).

 "Court-ordered sanctions"—such as restricting future actions after a voluntary dismissal —"should be neither 'a consequence' of a voluntary dismissal without prejudice nor a 'condition' placed upon such a dismissal."  *Id.* at 292-93 (quoting *Cooter & Gell*, 496 U.S. at 396-97).  If Rule 41(a)(1)(A)(i) "means what it says," then a litigant, following a voluntary dismissal, may file anew in any forum where venue is proper.  Upon dismissal, the plaintiff is "put . . . in a legal position as if he had never brought the first suit."  *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip.,*

*Inc.*, 434 F.3d 320, 324 (5th Cir. 2005) (quoting *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976)). Following dismissal, therefore, "[t]he plaintiff is free to return to the dismissing court or other courts at a later date with the same claim." *Id.* (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001)). Even in the context of Rule 41(a)(2) dismissals, which require court approval, district courts abuse their discretion by placing future filing restrictions on litigants. *See, e.g.*, *Frank v. Crawley Petrol. Corp.*, 992 F.3d 987, 1003 (10th Cir. 2021) (absent prejudice to defendant, district court abuses its discretion by requiring, as part of Rule 41(a)(2) dismissal, that plaintiff's counsel re-file any future lawsuit, alleging similar matters, in the same court and before the same judge).

After a case has been voluntarily dismissed and then re-filed, courts generally are free to reassign the second-filed case to the judge assigned to the first-filed case. *See, e.g.*, *Garcia v. Int'l Constr. Equip., Inc.*, 765 Fed. App'x 109, 110 (5th Cir. 2019) ("Any district court . . . is free . . . to require that a re-filed action assigned to the original judge, or to require that if a re-filed case is assigned to a different judge, that judge shall transfer the case to the original judge.") (quoting *Int'l Driver Training, Inc. v. J-BJRD Inc.*, 202 Fed. App'x 714, 716 (5th Cir. 2006)). But courts are not required to do so. *Compare Alvarado v. Bank of Am.*, N.A., No. 08-2862, 2009 WL 720875, at *4 (E.D. Cal. Mar. 17, 2009) (after concluding that a plaintiff had engaged in "judge shopping," reassigning case to first-file case's judge), *with Union Gas System, Inc. v. East Cent. Gas & Pipeline Corp.*, No. 88-2565, 1989 WL 45373, at *1 (D. Kan. Apr. 12, 1989) (denying motion to reassign case to first-filed case's judge, despite allegation plaintiff had engaged in "judge shopping"). To the extent a remedy is needed for a plaintiff who voluntarily dismisses under Rule 41(a)(1) and then re-files, the remedy is reassignment.

\*     \*     \*     \*

The Eleventh Circuit has not held that a voluntary dismissal, pursuant to Rule 41(a)(1)(A)(i), may be the basis for a sanction or a finding of misconduct.  Nor has the Eleventh Circuit suggested that an attorney's motivations should be scrutinized.  If Rule 41(a)(1)(A)(i) can be used only for particular reasons and not for others, then—contrary to binding Fifth Circuit precedent—the Rule does not "mean[] what it says."

As one court observed in denying a defendant's motion to strike a Rule 41(a)(1)(A)(i) dismissal due to concerns about potential, future "forum-shopping," "[d]ismissal under Rule 41(a)(1) is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court."  *Kyzar v. Am. Nat'l Prop. & Cas. Co.*, No. 15-527, 2016 WL 3277449, at *1 (M.D. La. May 19, 2016) (quoting *Bailey v. Shell W.E. & P. Inc.*, 609 F.3d 710, 719 (5th Cir. 2010)).  As the Eleventh Circuit—and its predecessor Fifth Circuit—consistently recognized, Rule 41(a)(1) "means what it says," and "[d]efendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss . . . may do so by taking the simple step of filing an answer."  *Carter*, 547 F.2d at 259.  Until then, however, the right remains unfettered.  *Id.*

## C.   *In re: BellSouth Corp.* is not a Rule 41 case.

The Panel suggested that the Eleventh Circuit's decision in *In re: BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003), should apply.  Respondents respectfully submit that *Bellsouth* is not applicable here.[3]  *BellSouth* addressed a "[longstanding] matter of concern that parties in the Northern District of Alabama might be taking strategic advantage of the recusal statute to, in effect, 'judge-shop'" away from Chief Judge U.W. Clemon by retaining his nephew's law firm despite a Standing Order governing the appearance of counsel that raised a conflict with the assigned judge.  *Id*. at 944-46.  The district court, following an evidentiary hearing, noted how the "long history of

---

[3]      Respondents are generally familiar with *BellSouth*, but they do not intend to suggest that they analyzed it before dismissing *Ladinsky* and filing *Eknes-Tucker*.

forced recusal of Judge Clemon in this District" reflected deliberate, systemic "manipulation of the random assignment of judges system." *Id.* at 948.  The Eleventh Circuit evaluated the conduct of BellSouth and its counsel against this backdrop and concluded that BellSouth's right to counsel of its choice was overridden when that choice had the "sole or primary purpose of causing the recusal of the judge." *Id.* at 956.  After a lengthy discussion about the "obvious concern with respect to the effects of such manipulation and judge-shopping on the proper administration of justice," the Eleventh Circuit held that the district court's decision to disqualify the nephew's firm was not clearly erroneous. *Id.* at 960.[4]

There are some notable distinctions between *BellSouth* and what this Court is now considering:

(1)    *BellSouth* did not involve a plaintiff's "unconditional right to dismiss his complaint by notice and without an order of the court at any time prior to the defendant's service of an answer or a motion for summary judgment" under Rule 41(a)(1)(A)(i). *Matthews*, 902 F.2d at 880; *see also Carter*, 547 F.2d at 259 (describing Rule 41(a)(1) as an "unfettered right to dismiss actions"); Fed. R. Civ. P. 41 advisory committee note (a litigant has an "unlimited dismissal" right absent a defendant's answer or motion for summary judgment).

(2)    The *BellSouth* action, as far as the litigants knew, was randomly assigned to Judge Clemon when Judge Clemon's nephew was engaged as counsel. *Ladinsky* was transferred to Your Honor outside the random case assignment process.

(3)    *BellSouth* involved the premeditated selection of counsel "with the sole or primary purpose of causing the recusal of the judge." *BellSouth*, 334 F.3d at 956.[5]  The dismissal of *Ladinsky*, in contrast, involved lawyers—in the pandemonium of a chaotic afternoon and an information vacuum about why the case was transferred

---

[4]    The District Court did not sanction BellSouth's attorney, so the Eleventh Circuit did not consider the matter in the context of an attorney sanction.

[5]    In *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 (5th Cir. 1983), which was cited by the Panel, the originally assigned judge's brother-in-law was hired as counsel by the defendant six years after the case had been filed.  The original judge recused, and the new judge found that the "defendant had engaged the judge's relative as a stratagem in order to disqualify the judge and that the employment was a sham." *Id.* at 1257. He concluded, "The practice is fast becoming epidemic." *Id.* at 1258.

outside the random case assignment process—exercising their professional judgment and unconditional right under Rule 41.

In sum, Respondents do not believe that anything in *BellSouth* overrules or even diminishes the Eleventh Circuit's clear precedent that Rule 41 confers an absolute and unfettered right to dismiss. Unlike the litigant in *BellSouth*, Respondents (1) did not attempt to manipulate the random case assignment process, and (2) did not have a known "history" of attempting to do so.

**D.**   **A Court may sanction an attorney pursuant to its inherent authority only after a finding of subjective bad faith.**

Respondents submit the following discussion, if the Court chooses to consider moving forward with a disciplinary inquiry. The Court's "inherent power should be exercised with caution and its invocation requires a finding of bad faith." *Kornhauser v. Comm'r of Soc. Sec.*, 685 F.3d 1254, 1257 (11th Cir. 2012) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)); *see also Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power is a finding of bad faith."). In "exercising its inherent power to impose sanctions, a court must 'comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.'" *Id.* (quoting *Chambers*, 501 U.S. at 50). For there to be due process, "the attorney must, first, be afforded 'fair notice that [his or her] conduct may warrant sanctions and the reasons why,' and, second, 'be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify [his or her] actions.'" *Id.* (quoting *Mroz*, 65 F.3d at 1575-76).

Before the Court may use its inherent power, it must find that an attorney has engaged in "subjective bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) ("[T]he inherent-powers standard is a subjective bad-faith standard."). Without "direct evidence of subjective bad faith," this standard is met "if an attorney's conduct is so

egregious that it could only be committed in bad faith." *Id.* at 1224-25 (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)).   The power to impose sanctions "must be exercised with restraint and discretion." *Roadway Exp., Inc.*, 447 U.S. at 764.

To that end, "[c]ourts considering whether to impose sanctions . . . should look for disobedience . . . ." *Purchasing Power, LLC*, 851 F.3d at 1225; *see also id.* (inherent power is "for rectifying disobedience").   Courts have found "bad faith" in only a narrow class of cases.  *See, e.g.*, *Agudelo v. Padron*, No. 18-22612, 2019 WL 4694145, at *2 (S.D. Fla. July 8, 2019) (noting that there could be bad faith when "an attorney knowingly or recklessly raises a frivolous argument," "raises a meritorious claim to harass the opposing party," "delay[s] or disrupt[s] the litigation," or "hamper[s] the enforcement of a court order") (citing *Chambers*, 501 U.S. at 45-46; *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002); *Barnes*, 158 F.3d at 1214).

If the Court were to find subjective bad faith, it is required to give an attorney advance notice of the reasons why his or her conduct may be sanctionable.  *Mroz*, 65 F.3d at 1575 ("Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why.").   "The charge must be known before the proceedings commence." *United States v. Shaygan*, 652 F.3d 1297, 1318 (11th Cir. 2011) (quoting *In re Ruffalo*, 390 U.S. 544, 550 (1968)).   "An attorney charged with misconduct is entitled . . . to know the precise rule, standard, or law that he or she is alleged to have violated and how he or she allegedly violated it." *Id.* at 1319.  Providing that notice complies with fundamental fairness.  *See, e.g.*, *Baker v. 3M Co.*, No. 21-12393, 2023 WL 3734013, at *3 (11th Cir. May 31, 2023) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is

notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Closely related, in explaining why the conduct is sanctionable, the Court must ensure that the attorney was on notice, before the act was committed, that the conduct is prohibited.  For example, in *In re Finkelstein*, 901 F.2d 1560 (11th Cir. 1990), the district court disciplined an attorney for sending a letter that was "threatening and disruptive to the judicial process."  The district court rooted its sanction in its inherent authority.  901 F.2d at 1564.  According to the district court, the attorney's conduct did not violate a "written canon of ethics, a code provision, or a case which proscribed the conduct," *id.* at 1565, but it found that the attorney's conduct was contrary to a "code by which an attorney practices which transcends any written code of professional conduct."  *Id.*

The Eleventh Circuit explained, however, that "[i]n order to satisfy traditional notions of due process, the conduct prohibited must be ascertainable."  *Id.* (citing *NAACP v. Button*, 371 U.S. 415, 432-33 (1963)).  "Specific guidance is provided by case law, applicable court rules, and the 'lore of the profession' as embodied in the codes of professional conduct."  *Id.* at 1564-65.  "The fatal flaw with this transcendental code of conduct is that it existed only in the subjective opinion of the court, of which [the attorney] had no notice, and was the sole basis of the sanction administered after the conduct had occurred."  *Id.* at 1565.  Accordingly, the Eleventh Circuit will not "deprive an attorney of the opportunity to practice his profession on the basis of a determination after the fact that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct."  *Id.* (quoting *Ruffalo*, 390 U.S. at 556 (White, J., concurring)).

Other courts have reached similar conclusions.  As the First Circuit observed, it is "unfair for the court to use the case [in which the sanction is imposed] as the first step in adopting a new

rule." *United States v. 789 Cases of Latex Surgeon Gloves*, 13 F.3d 12, 15 (1st Cir. 1993).  To comply with due process, "[t]he law forbids the imposition of a new rule without prior notice." *Id.* (quoting *Boettcher v. Hartford Ins. Group*, 927 F.2d 23, 26 (1st Cir. 1991)); *see also In re Richardson*, 793 F.2d 37, 41 (1st Cir. 1986) (reversing sanction premised on violation of an "unwritten rule"); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 571 (3d Cir. 1985) ("[F]undamental fairness may require some measure of prior notice to an attorney that the conduct that he or she contemplates undertaking is subject to discipline or sanction by a court.").

The Federal Rules of Civil Procedure endorse this framework.  Where there is no controlling law, the District Court may impose additional obligations on litigants and attorneys through local rules and standing orders. Fed. R. Civ. P. 83(b).  But Rule 83(d) limits any sanction for noncompliance: "No sanction . . . may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement." *Id.*; *see also* Fed. R. Civ. P. 83 advisory committee note (1995) ("[T]his rule disapproves imposing any sanction or other disadvantage on a person for noncompliance with . . . an internal directive, unless the alleged violator has been furnished actual notice of the requirement in a particular case.").

Accordingly, unless the conduct violates an ascertainable standard imposed on attorneys before the conduct occurred, the conduct is not sanctionable.  Before an attorney may be sanctioned, the Court must (i) articulate which rule the attorney has violated and (ii) identify how the attorney has violated the rule. *See, e.g.*, *Shaygan*, 652 F.3d at 1319 ("We do not mean to suggest or even hint that the district court should consider sanctions against either [attorney].  It is not apparent to us that either attorney necessarily violated any ethical rule or any constitutional or statutory standard.").

If a court chooses to conduct a sanctions proceeding, then the attorneys must be afforded an opportunity to be heard. *Shaygan*, 652 F.3d at 1318. In *Shaygan*, the Eleventh Circuit found that the district court, in conducting a sanctions proceeding, "violated the civil rights of" two prosecutors. *Id.* In particular, the attorneys (1) were sequestered, which precluded them from "know[ing] about the testimony of the other witnesses at the proceeding," (2) "had no opportunity to cross-examine any witnesses," and (3) "did not know that the district court might rely on [their] testimony to impose an individual sanction." *Id.* Nor did the district court announce, before the proceeding began, what potential sanctions were being considered. *Id.* The proceeding "did not constitute an opportunity to be heard in the Anglo-American tradition." *Id.* Accordingly, while the Court has some flexibility in how it may conduct a sanctions proceeding, at a constitutional minimum, the Court must give the attorneys an opportunity to defend themselves and to be heard, and the Respondents are confident that Your Honor will do so if a disciplinary inquiry is initiated.

Date: <u>November 10, 2023</u>

Respectfully Submitted,

*/s/ M. Christian King*
One of the Attorneys for
Melody H. Eagan and Jeffrey P. Doss

OF COUNSEL:
Samuel H. Franklin
*sfranklin@lightfootlaw.com*
M. Christian King
*cking@lightfootlaw.com*
Harlan I. Prater, IV
*hprater@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, Alabama 35203
(205) 581-0700

17

## CERTIFICATE OF SERVICE

I certify that, on <u>November 10, 2023</u>, I electronically filed a copy of the foregoing with the Clerk of Court through the CM/ECF system, which will provide notice of the filing to all counsel of record.

<u>*/s/ M. Christian King*</u>
OF COUNSEL