# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| Brianna Boe, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Intervenor Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-184-LCB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General, | ) | |
| of the State of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' BRIEF REGARDING WHETHER THE FINAL REPORT OF INQUIRY SHOULD REMAIN UNDER SEAL

# TABLE OF CONTENTS

Table of Contents .................................................................................. i

Table of Authorities .............................................................................. ii

Introduction ......................................................................................... 1

Argument ............................................................................................. 1

    I.   The Court Should Consider Whether Respondents Have Demonstrated "Good Cause" To Overcome The Ordinary Presumption In Favor Of Public Access. ...................................... 1

         A.  "Whether Allowing Access Would Impair Court Functions or Harm Legitimate Privacy Interests." .................................... 3

         B.  "The Degree of and Likelihood of Injury If Made Public." ............... 5

         C.  "The Reliability of the Information." .................................. 6

         D.  "Whether There Will Be an Opportunity to Respond to the Information." .......................................................... 7

         E.  "Whether the Information Concerns Public Officials or Public Concerns." ........................................................... 7

         F.  "The Availability of a Less Onerous Alternative to Sealing the Documents." ........................................................... 8

         G.  Additional Concerns the Court May Wish to Consider. ................... 9

    II.  Given That The Report Was Created By The Judiciary Itself, The Court Should Also Consider Whether There Are "Especially Strong" Reasons To Keep It Sealed. ...................................... 10

    III. Courts Generally Have Discretion To Keep The Early Stages Of Disciplinary Proceedings Confidential. .................................. 11

Conclusion ......................................................................................... 16

Certificate of Service ........................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*101 Lofts Condominium Association, Inc. v. CF West Palm Beach Office, L.P.*,
   No. 07-81183-CIV, 2008 WL 11387132 (S.D. Fla. May 15, 2008) ...................8

*Baugh v. Jud. Inquiry and Rev. Comm'n*,
   907 F.2d 440 (4th Cir. 1990) ...........................................................................15

*Callahan v. United Network for Organ Sharing*,
   17 F.4th 1356 (11th Cir. 2021) .......................................................................2, 3

*Carr v. Forbes, Inc.*,
   121 F. Supp. 2d 485 (D.S.C. 2000) ..................................................................10

*Chicago Trib. v. Bridgestone/Firestone*,
   263 F.3d 1304 (11th Cir. 2001) .......................................................................1, 2

*Classic Soft Trim, Inc. v. Albert*,
   No. 6:18-cv-1237, 2020 WL 6734407 (M.D. Fla. Sept. 22, 2020) ....................9

*Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media*,
   918 F.3d 1161 (11th Cir. 2019) .........................................................................9

*Cowley v. Pulsifer*,
   137 Mass. 392 (1884) .........................................................................................2

*Doe v. Doe*,
   127 S.W.3d 728 (Tenn. 2004) ..........................................................................15

*Doe v. State of Fla. Jud. Qualifications Comm'n*,
   748 F. Supp. 1520 (S.D. Fla. 1990) .................................................................15

*Doe v. Sup. Ct. of Fla.*,
   734 F. Supp. 981 (S.D. Fla. 1990) ...................................................................15

*Drummond Co. v. Conrad & Sherer, LLP*,
   885 F.3d 1324 (11th Cir. 2018) .........................................................................4

*EEOC v. Nat'l Children's Center*,
   98 F.3d 1406 (D.C. Cir. 1996)..............................................................10

*El-Ad Residences at Miramar Condo. Ass'n v. Mt. Hawley Ins. Co.*,
   716 F. Supp. 2d 1257 (S.D. Fla. 2010)................................................5

*Encyclopedia Brown Prods. v. Home Box Off., Inc.*,
   26 F. Supp. 2d 606 (S.D.N.Y. 1998) ...................................................10

*Gibson v. JetBlue Airways Corp.*,
   No. 6:18-cv-1742, 2019 WL 3310691 (M.D. Fla. July 23, 2019) ......................8

*Goesel v. Boley Intern. (H.K.) Ltd.*,
   738 F.3d 831 (7th Cir. 2013) ...............................................................2

*Goldstein v. Comm'n on Prac. of Sup. Ct.*,
   995 P.2d 923 (Mont. 2000)...............................................................16

*Hamm v. Dunn*,
   No. 2:17-CV-02083-KOB, 2018 WL 2431340 (N.D. Ala. May 30, 2018),
   *aff'd sub nom. Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media*,
   918 F.3d 1161 (11th Cir. 2019) ..........................................................9

*In re Auerhahn*,
   650 F. Supp. 2d 107 (D. Mass. 2009)...................................................12

*In re Demetriades*,
   58 F.4th 37 (2d Cir. 2023) ..................................................................5

*In re McKay*,
   191 So. 2d 1 (Ala. 1966).....................................................................8

*In re Vague*,
   2:22-mc-3977-WKW (M.D. Ala.) ...................................... 3, 4, 7, 14

*In re Warner*,
   21 So. 3d 218 (La. 2009) ...................................................................15

*Kamasinski v. Jud. Rev. Council*,
   44 F.3d 106 (2d Cir. 1994) .................................................................15

*Landmark Commc'ns, Inc. v. Virginia*,
   435 U.S. 829 (1978) ................................................................................ 1, 7, 15

*Lind v. Grimmer*,
   859 F. Supp. 1317 (D. Haw. 1993) ....................................................................15

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006) .............................................................................11

*Matter of Krynicki*,
   983 F.2d 74 (7th Cir. 1992). ..............................................................................1

*Newman v. Graddick*,
   696 F.2d 796 (11th Cir. 1983) ............................................................................9

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) .......................................................................................1, 9

*Moody v. I.R.S.*,
   654 F.2d 795 (D.C. Cir. 1981) ............................................................................4

*Parrott v. Wilson*,
   707 F.2d 1262 (11th Cir. 1983) ..........................................................................4

*Petition of Brooks*,
   678 A.2d 140 (N.H. 1996) ................................................................................15

*Providence J. Co. v. Newton*,
   723 F. Supp. 846 (D.R.I. 1989) .........................................................................15

*R.M. v. Supreme Court*,
   883 A.2d 369 (N.J. 2005) .................................................................................15

*Romero v. Drummond Co.*,
   480 F.3d 1234 (11th Cir. 2007) ................................................................. *passim*

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ...............................................................................6

*United States v. Nejad*,
    521 F. Supp. 3d 438 (S.D.N.Y. 2021) ...................................................11

*Wilson v. Am. Motors Corp.*,
    759 F.2d 1568 (11th Cir. 1985) .............................................................6

**Rules**

11th Cir. R. Governing Attorney Disc. 2(E) .............................................13

11th Cir. R. Governing Attorney Disc. 3(C)(1) ........................................13

25 Law. Man. Prof. Conduct 423 (Aug. 5, 2009) ....................................12

ABA Model R. Lawyer Discipl. Enf. 16(A) .............................................13

ABA Model R. Lawyer Discipl. Enf. 16(C) .............................................13

Ala. R. Disc. P. 12(g) ..............................................................................13

Ala. R. Disc. P. 30 ..................................................................................13

Ga. R. Prof. Conduct, 4-204.4(a) ............................................................13

M.D. Ala. L.R. 83.1(h) (2010) .................................................................14

M.D. Ala. L.R. 83.1(j)(1)-(2) ...................................................................14

N.D. Ala. L.R. 83.1(g)(5) .........................................................................14

N.D. Ala. L.R. 83.1(k) (2019) ..................................................................14

R. Regulating Fla. Bar, 3-7.1(a)(3) (amended 2023) ................................13

S.D. Ala. L.R. 83.4(a) (2015) ..................................................................14

S.D. Ala. L.R. 83.4(c)(1)-(2) ...................................................................14

**Other Authority**

7 Am. Jur. 2d Attorneys at Law § 30.........................................................................8

**INTRODUCTION**

This Court ordered all parties to brief "whether the Final Report of Inquiry should remain under seal." Doc. 349. Defendants do not take a position on whether the Final Report should be unsealed at this time, but set out their understanding of the law and the factors that the Court should consider.

**ARGUMENT**

**I.    The Court Should Consider Whether Respondents Have Demonstrated "Good Cause" To Overcome The Ordinary Presumption In Favor Of Public Access.**

Because the "operations of the courts and the judicial conduct of judges are matters of utmost public concern," *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978), members of the public possess "a general right to inspect and copy public records and documents, including judicial records and documents," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). This "common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chicago Trib. v. Bridgestone/Firestone*, 263 F.3d 1304, 1311 (11th Cir. 2001). Thus, "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat" and "requires rigorous justification." *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992).

Our common-law tradition of openness respects the rights of "interested members of the public, including lawyers, journalists, and government officials," "to know who's using the courts, to understand judicial decisions, and to monitor the judiciary's performance of its duties." *Goesel v. Boley Intern. (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013); *see also Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.) ("[T]hose who administer justice should always act under the sense of public responsibility, and … every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.").

Nevertheless, the right of access "may be overcome by a showing of good cause." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007). Because neither the three-judge Panel nor this Court required an initial showing of good cause, the burden would fall upon the Respondents to show that the Final Report should remain sealed. *See Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1363 n.2 (11th Cir. 2021) (assuming that, absent an initial showing of good cause, the party seeking to keep document under seal bears the burden of showing that good cause persists).

"[W]hether good cause exists" is "decided by the nature and character of the information in question." *Chicago Tribune*, 263 F.3d at 1315. To make this decision, courts consider the following factors, among others, when balancing "the asserted

right of access against the other party's interest in keeping the information confidential":

> [1] whether allowing access would impair court functions or harm legitimate privacy interests, [2] the degree of and likelihood of injury if made public, [3] the reliability of the information, [4] whether there will be an opportunity to respond to the information, [5] whether the information concerns public officials or public concerns, and [6] the availability of a less onerous alternative to sealing the documents.

*Romero*, 480 F.3d at 1246. "Concerns about trade secrets or other propriety information" are also relevant, as is the possibility that the records might be "sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage." *Callahan*, 17 F.4th at 1363 (quoting *Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media*, 918 F.3d 1161, 1169 (11th Cir. 2019)).

### A.   "Whether Allowing Access Would Impair Court Functions or Harm Legitimate Privacy Interests."

As applied here, the first *Romero* factor asks (1) whether public knowledge of the Panel's investigation into suspected attorney misconduct would in any way impair court functions and (2) whether public disclosure of the Final Report would harm legitimate privacy interests.

As for court functions, the Panel investigated possible judge-shopping, "a practice that has the propensity to create the appearance of impropriety in the judicial system." *In re Vague*, Doc. 1 at 2 (citation omitted). Shedding light on the results of the Panel's investigation would be unlikely to impair court functions and, if

anything, would presumably improve them by providing guidance and information to lawyers and the broader public.

Turning to "legitimate privacy interests," Respondents may invoke attorney work product and their reputational interests. While Respondents might argue that the Final Report should not be made public because it contains information they claim to be protected by the work-product doctrine, *cf. In re Vague*, Doc. 81, "in cases of attorney misconduct there is no protection for the attorney's work product," *Drummond Co. v. Conrad & Sherer, LLP*, 885 F.3d 1324, 1337 (11th Cir. 2018); *see also Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983). "An attorney should not be able to exploit [work product protection] for ends outside of and antithetical to the adversary system any more than a client who attempts to use the privilege to advance criminal or fraudulent ends." *Drummond*, 885 F.3d at 1337 (quoting *Moody v. I.R.S.*, 654 F.2d 795, 800 (D.C. Cir. 1981)). Accordingly, if the Court concludes that the "litigation strategy" the Respondents wish to keep secret is their strategy to engage in judge-shopping, claims of work product protection would have far less force here and Respondents would need to point to other privacy interests to support keeping the Final Report under seal. Whether other considerations may apply in the early stages of an inquiry into an attorney's potential wrongdoing is discussed further in Section III, *infra*.

## B.     "The Degree of and Likelihood of Injury If Made Public."

Next, the Court should consider the degree and likelihood of any injury before unsealing the report. Notably, for this factor to favor permanent sealing, courts have indicated that Respondents must show more than mere "reputational harm" that would result from unsealing. For example, just earlier this year the Second Circuit refused to place under seal the appeal of an attorney who was found to have violated various provisions of the New York Rules of Professional Conduct. *See In re Deme-triades*, 58 F.4th 37, 45-47 (2d Cir. 2023). Although the allegations against the attorney were serious, the court ruled that the attorney's interest in avoiding "reputational harm" could not "meet the 'weighty' standard for overriding the presumptions of open records and public access." *Id.* at 46. The court saw "no meaningful public value that would be served by filing [the] Opinion under seal," and instead emphasized that it had "repeatedly found public censure or reprimand to be an appropriate and valuable corrective measure in attorney-misconduct cases, in order to protect the public, other attorneys and litigants, the Court, and the administration of justice." *Id.* (internal quotation marks omitted and alteration adopted).[1]

---

[1] *See also Romero*, 480 F.3d at 1247 (denial of allegations "is not a legitimate basis for sealing the evidence"); *El-Ad Residences at Miramar Condo. Ass'n v. Mt. Hawley Ins. Co.*, 716 F. Supp. 2d 1257, 1264 n.12 (S.D. Fla. 2010) ("[H]arm to reputation is not sufficient to overcome the strong presumption in favor of public access to the courts." (citing *Wilson v. Am. Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985)).

A showing of harm can support keeping the Final Report under seal temporarily, depending on its likelihood and significance. However, courts typically require that harm to be something other than "reputational harm" for a filing to remain under seal for good. *See also* Section III, *infra*.

### C.   "The Reliability of the Information."

The third *Romero* factor concerns the reliability of the Panel's Final Report of Inquiry. This factor can come into play early in the proceedings before allegations are fully investigated. For example, in *United States v. Amodeo*, the Second Circuit reversed a district court's decision to release a redacted report concerning allegations of corruption within the Hotel Employees & Restaurant Employees International Union. 71 F.3d 1044, 1047 (2d Cir. 1995). The court determined that the first part of the report should be sealed entirely because of the extensive redactions rendering much of the report unintelligible and the "strong possibility" that the report contained "untrustworthy or simply incorrect" material. *Id.* at 1052. Specifically, the first part of the report involved "hearsay," "misinformation," and various unsworn accusations "of doubtful veracity, possibly stemming in part from apparent personality conflicts." *Id.* Further, the accusations could not "be tested by the interested public because the sources and much of the subject matter" were "shrouded by the redactions." *Id.*

Here, while the Panel's Final Report is not "final" in the sense that this Court can still review it and make further factual determinations, *see In re Vague* Doc. 99, the Report does bear considerable markers of reliability: It is the product of three highly experienced federal judges following a year-and-a-half of factfinding and deliberation.

### D. "Whether There Will Be an Opportunity to Respond to the Information."

As for the next *Romero* factor—whether there will be an opportunity for Respondents to respond to the information in the Report—the Court has made it clear that it intends for Respondents to have meaningful opportunities to respond to the Panel's Report and even to challenge its factual findings. Thus, if the Panel's Report is unsealed, the public would not be left with the Report as the last word on the matter (assuming Respondents' challenges are also made public).

### E. "Whether the Information Concerns Public Officials or Public Concerns."

The fifth *Romero* factor is whether the Final Report concerns public officials or matters of public concern. As noted above, courts have routinely recognized that "[t]he operations of the courts … are matters of utmost public concern." *Landmark Commc'ns, Inc.*, 435 U.S. at 839. The public thus has a strong interest in the integrity of the legal profession, particularly when it comes to potential wrongdoing by attorneys attempting to circumvent a court's random case assignment process. Indeed,

the "purpose of lawyer discipline … is to maintain appropriate standards of professional conduct to *protect the public* and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or are likely to be unable to properly discharge their professional duties." Preamble, ALA. R. DISC. P. (emphasis added); *see also In re McKay*, 191 So. 2d 1, 5 (Ala. 1966) (A disciplinary "proceeding is an inquiry into the conduct of an attorney to determine whether action should be taken by a court to protect the public or the dignity of the court."); 7 Am. Jur. 2d Attorneys at Law § 30, "Purpose of attorney discipline." If the Court determines that the public has an interest in the integrity of the judicial system, this factor weighs in favor of openness, at least at some point in the process.

## F.    "The Availability of a Less Onerous Alternative to Sealing the Documents."

As for the final *Romero* factor, courts typically find that there are no less-onerous alternatives to sealing when the documents at issue are so voluminous that redaction would be impracticable, *e.g.*, *101 Lofts Condominium Association, Inc. v. CF West Palm Beach Office, L.P.*, No. 07-81183-CIV, 2008 WL 11387132, at *4 (S.D. Fla. May 15, 2008), or when highly confidential information falling outside of the public interest is involved, *e.g.*, *Gibson v. JetBlue Airways Corp.*, No. 6:18-cv-1742, 2019 WL 3310691, at *2 (M.D. Fla. July 23, 2019), *Classic Soft Trim, Inc. v. Albert*, No. 6:18-cv-1237, 2020 WL 6734407, at *2-3 (M.D. Fla. Sept. 22, 2020).

If the Court concludes that the Respondents meet their burden to keep at least portions of the Final Report sealed at this time, it may wish to consider whether a redacted version should be unsealed.

### G. Additional Concerns the Court May Wish to Consider.

In addition to the factors listed in *Romero*, caselaw establishes that the Court may also consider whether access to the Final Report is "sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage." *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983). The Supreme Court in *Nixon*, for instance, noted that courts have declined to permit the common-law right of inspection to be used as a tool for publicizing "the painful and sometimes disgusting details of a divorce case," "libelous statements for press consumption," or "business information that might harm a litigant's competitive standing." 435 U.S. at 598.

Importantly, "[p]ublic *discussion* is not the same as public *scandal*." *Hamm v. Dunn*, No. 2:17-CV-02083-KOB, 2018 WL 2431340, at *9 (N.D. Ala. May 30, 2018), *aff'd sub nom. Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media*, 918 F.3d 1161 (11th Cir. 2019). And nothing in the Final Report gives the *Boe* Defendants an "unfair advantage," such as insight into Plaintiffs' views on the substantive claims, the evidence they intend to present, plans for cross-examinations, or anything that could help the State Defendants defend the merits of the Due Process and Equal Protection claims.

## II.   Given That The Report Was Created By The Judiciary Itself, The Court Should Also Consider Whether There Are "Especially Strong" Reasons To Keep It Sealed.

In addition to the general presumption of public access to all documents parties file with the court, courts have recognized that the presumption is "especially strong" for decisions, opinions, orders, and other documents created by the court itself. *EEOC v. Nat'l Children's Center*, 98 F.3d 1406, 1409 (D.C. Cir. 1996); *see also Carr v. Forbes, Inc.*, 121 F. Supp. 2d 485, 497 (D.S.C. 2000). That is because a "court's decrees, its judgments, its orders, are the quintessential business of the public's institutions." *Nat'l Children's Center*, 98 F.3d at 1409. "Other portions of the record … often have a private character, diluting their role as public business." *Id.* But the "Court's decisions are adjudications—direct exercises of judicial power the reasoning and substantive effect of which the public has an important interest in scrutinizing," *Encyclopedia Brown Prods. v. Home Box Off., Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998).

A recent case from the District of Massachusetts provides a useful analogy. In *Arkansas Teacher Retirement System v. State Street Bank & Trust Co.*, the court refused to seal the Special Master's Report Regarding Class Funds despite the media's scrutiny of the case. 523 F. Supp. 3d 181, 188 (D. Mass. 2018). The court noted that the "Master's Report, while not submitted under oath, result[ed] from a lengthy investigation, by a former federal judge, and cite[d] evidence in the voluminous

record to support its recommended findings." *Id.* at 191. The Report was "a quintes-sential judicial record that the public has a presumptive right to see." *Id.* at 187.

Here, if the Court concludes that the Panel's Final Report is more like a judi-cial decision or opinion, as opposed to a party's pleading, that finding would weigh in favor of unsealing the Final Report.

## III.   Courts Generally Have Discretion To Keep The Early Stages Of Disciplinary Proceedings Confidential.

There are some additional considerations specific to attorney discipline pro-ceedings that this Court should also consider. Most notably, courts have recognized that there can be an appropriate period of confidentiality in the early stages of attor-ney disciplinary proceedings. But while attorney disciplinary proceedings are typi-cally *commenced* behind closed doors, they are often *concluded* in the open. *Cf. United States v. Nejad*, 521 F. Supp. 3d 438, 452 (S.D.N.Y. 2021) ("[T]he "public right of access to judicial documents does not evaporate when attorney misconduct is involved. To the contrary, it is in these circumstances that it is most important 'to have a measure of accountability and for the public to have confidence in the admin-istration of justice.'" (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)).

The line between secrecy and openness in attorney discipline proceedings is typically drawn at the determination of probable cause. Before that point, during the preliminary investigation, secrecy is the norm. But after an ethics commission or

11

judge has determined there to be probable cause of attorney misconduct, openness is often mandated.

The court in *In re Auerhahn*, for example, commenced disciplinary proceedings against an Assistant United States Attorney and appointed a senior district court judge to prosecute the matter. 650 F. Supp. 2d 107, 108 (D. Mass. 2009). The prosecuting judge planned to file a petition requesting a show cause order why the attorney should not be disciplined. *Id.* The attorney asked for the petition to be sealed "until its merits [had] been decided in proceedings that would be closed to the public." *Id.* While surveying the practices of other jurisdictions concerning the timing of opening attorney disciplinary matters to the public, the court learned that, as of 2009, "[t]hirty-five states and the District of Columbia open their records to the public once there has been a finding of probable cause, or a formal complaint has been filed." *Id.* at 110 (citing 25 Law. Man. Prof. Conduct 423 (Aug. 5, 2009)). Likewise, the court noted, the American Bar Association's Model Rules for Lawyer Disciplinary Enforcement provided that disciplinary proceedings should be made public once there is a "determination that probable cause exists to believe that misconduct has occurred" and formal charges have been filed and served. *Id.* (citing ABA Model R. Lawyer Discipl. Enf. 16(A), (C)). Accordingly, the court ruled that it would keep the petition under seal only until the prosecuting judge found probable cause of attorney misconduct and then would make the petition publicly available. *Id.* at 113.

In the Eleventh Circuit, Georgia's and Florida's rules of professional conduct follow the majority rule. In Georgia, once the "Investigative Panel" finds probable cause of attorney misconduct, "it may refer the matter to the Supreme Court of Georgia," Ga. R. Prof. Conduct 4-204.4(a), at which point "all documents and pleadings filed of record shall be public documents," *id.* 4-221.1(2). In Florida, "[a]ny disciplinary case that has a finding of probable cause for further disciplinary proceedings is public information." R. Regulating Fla. Bar 3-7.1(a)(3) (amended 2023).

In Alabama, disciplinary proceedings by the State Bar become public once the Disciplinary Board "makes a finding of guilty." Ala. R. Disc. P. 30. The attorney's subsequent appeal as of right to the Alabama Supreme Court appears to be public. *Id.* 12(g). In the Eleventh Circuit, disciplinary proceedings remain confidential "until otherwise ordered by the Court through the Chief Judge." 11th Cir. R. Governing Attorney Disc. 2(E); *id.* 3(C)(1).

The Local Rules of the Northern, Middle, and Southern Districts of Alabama also address the issue of confidentiality in attorney discipline proceedings. When presented with allegations of attorney misconduct, a district court may do any of the following: "[1] dispose of the matter through the use of its inherent, statutory, or other powers; [2] refer the matter to an appropriate state bar agency for investigation and disposition; [3] refer the matter to the local grievance committee as hereinafter defined; [4] or take any other action the Court deems appropriate." M.D. Ala. L.R.

13

83.1(h) (2010); *accord* S.D. Ala. L.R. 83.4(a) (2015); N.D. Ala. L.R. 83.1(k) (2019). In the Middle and Southern Districts, if the court elects to refer the matter to a local grievance committee, the written report produced by the committee remains confidential. M.D. Ala. L.R. 83.1(j)(1)-(2); S.D. Ala. L.R. 83.4(c)(1)-(2). In the Northern District, the written report remains confidential "until otherwise directed by the court." N.D. Ala. L.R. 83.1(g)(5).

Here, the three-judge Panel elected not to assign the case to a grievance committee of local lawyers and instead relied upon and exercised its "inherent authority to address lawyer conduct that abuses the judicial process." *In re Vague*, Doc. 1 at 5. Accordingly, the local rules requiring confidentiality of a written report by a grievance committee do not apply, though they may be persuasive authority.

In addition, while the local rules may give the Court discretion about *when* in the process the Court decides to unseal the Final Report (or any subsequent factual finding or report by this Court), it is important to note that the rules should not be read to *require* permanent sealing. Among other things, such a reading would raise significant constitutional concerns. Nearly every court over the past half-century to hear a constitutional challenge to a state's statute, constitutional provision, or bar rule mandating confidentiality in disciplinary proceedings has determined that the rule facially violates the First Amendment. *See Landmark*, 435 U.S. at 841 ("[N]either the Commonwealth's interest in protecting the reputation of its judges, nor its

14

interest in maintaining the institutional integrity of its courts is sufficient to justify the substantial punishment of speech at issue here."); *Doe v. Sup. Ct. of Fla.*, 734 F. Supp. 981, 985 (S.D. Fla. 1990) (Marcus, J.) (holding unconstitutional as a content-based restriction of speech a provision of the Florida Bar Rules that forbade "claimants who file[d] disciplinary complaints with the Florida Bar from speaking or publishing about the nature of a pending or past claim"); *In re Warner*, 21 So. 3d 218 (La. 2009); *R.M. v. Supreme Court*, 883 A.2d 369 (N.J. 2005); *Doe v. Doe*, 127 S.W.3d 728 (Tenn. 2004); *Petition of Brooks*, 678 A.2d 140 (N.H. 1996); *Kamasinski v. Jud. Rev. Council*, 44 F.3d 106 (2d Cir. 1994) (holding that public disclosures of allegations of judicial misconduct can be barred before a probable cause determination but not after); *Lind v. Grimmer*, 859 F. Supp. 1317 (D. Haw. 1993); *Doe v. State of Fla. Jud. Qualifications Comm'n*, 748 F. Supp. 1520 (S.D. Fla. 1990); *Providence J. Co. v. Newton*, 723 F. Supp. 846 (D.R.I. 1989); *see also Baugh v. Jud. Inquiry and Rev. Comm'n*, 907 F.2d 440 (4th Cir. 1990) (remanding for district court to subject challenged rule requiring confidentiality of papers filed with Virginia Judicial Inquiry and Review Commission to strict scrutiny). *But see Goldstein v. Comm'n on Prac. of Sup. Ct.*, 995 P.2d 923, 930 (Mont. 2000) (distinguishing *Doe v. Supreme Court of Florida* to uphold as constitutional provision of Montana's Rules of Lawyer Disciplinary Enforcement).

## CONCLUSION

Caselaw establishes clear factors for this Court to consider as it decides whether the public's right of access to judicial documents requires it to unseal the Final Report.

Date: November 10, 2023

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

16

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on November 10, 2023, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Defendants*

17