## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **BRIANNA BOE,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:22-cv-0184-LCB** |
| | ) | |
| **STEVE MARSHALL,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>POST-HEARING MEMORANDUM OF LAW</u>

Respondents **James Esseks, Carl Charles, and LaTisha Faulks** ("*Walker* Counsel")[1] respectfully submit this Memorandum of Law regarding "the various charges of misconduct in the final report," Nov. 2, 2023, Tr. at 60:19–23, and the "differences in conduct between [*Walker* Counsel] and others," *id.* at 82:14–25. Although this Memorandum focuses primarily on the legal basis for *Walker* Counsel's conduct, *Walker* Counsel welcome the opportunity to further address the Court regarding the evidence and testimony presented to the Panel, as well as the specific facts and circumstances of each member of *Walker* Counsel's participation in the events that gave rise to this inquiry.

---

[1] Respondent Kathleen Hartnett was also part of the *Walker* team, but is represented by separate counsel. This Memorandum is submitted only on behalf of lawyers Esseks, Charles, and Faulks.

## **INTRODUCTION**

"Judge shopping" is universally condemned . . . except where it is allowed.

Certainly, there are well-recognized examples of judge shopping that are disallowed, such as intentionally hiring counsel related to the judge in order to manufacture a recusal (*In re Bellsouth*), or filing multiple, virtually identical lawsuits and then dismissing all but the one assigned to a particular judge (*In re Fieger*). However, not all efforts by litigants or their counsel to increase or decrease the chances of having their case heard (or not heard) by a particular judge or court are against the rules or labeled as misconduct.[2]

---

[2] *See McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261–62 (5th Cir. 1983):

> Forum-shopping is sanctioned by our judicial system. It is as American as the Constitution, peremptory challenges to jurors, and our dual system of state and federal courts. . . .

> The existence of these choices not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, **or the judge who presides in that forum is thought more likely to rule in the litigant's favor.** . . .

> [J]ustice can be obtained only through human beings, and neither judges nor jurors are fungible. In recognition both of this and of the nature of the adversary, client-serving process, **we tolerate a certain amount of manipulation without inquiry into motive.**

(Emphasis added). This Court's April 18, 2022 Order cited *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 1001 (10th Cir. 2021), for the proposition that "judge shopping" is "a particularly pernicious form of forum shopping." N.D. Ala. No. 22-cv-480-LCB, Doc. 24 at 3. But *Frank* also made clear that judge shopping is ***permissible***: "Judge shopping may be a particularly pernicious form of forum shopping, ***but it too is a necessary consequence of Bayer***," *Frank*, 992 F.3d at 1001 (citing *Smith v. Bayer Corp.*, 564 U.S. 299 (2011) (emphasis added)).

For example, strategic decisions regarding where to file a new case regularly take into account the judge or judges likely to be assigned the case. Picking the venue with an eye toward the likely judge is a long-standing and recognized practice. Some initial filings are even intentionally directed to a particular division of a United States District Court because the likelihood of drawing a particular judge is unusually high. So long as it does not violate the existing rules, that kind of blatant judge shopping is permitted.[3]

Similarly, decisions whether to remove a case from state to federal court and whether to seek to have it remanded back often turn on the prospects for securing or avoiding a particular judge or group of judges, yet removal and remand are expressly permitted by the law. Further, routine motions to transfer or reassign cases from or to a particular judge or court are permitted and commonplace.[4]

It is only when a lawyer's strategic conduct in working to increase their client's odds of securing a more favorable/less unfavorable forum or judge crosses

---

[3] *See* Alex Botoman, *Divisional Judge-Shopping*, 49 COLUM. HUM. RTS. L. REV. 297, 320 (2018) ("In districts that assign judges by divisions, have loose divisional venue rules, and designate only one or two judges to hear cases in each division, plaintiffs can choose their judge simply by choosing the division of a court in which they file their case."); *see also Texas v. United States Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2023 WL 2457480, at *6 (S.D. Tex. Mar. 10, 2023) (Quoting plaintiffs State Attorneys General asserting that, "[i]f single judge divisions (or districts) are permitted to exist, then plaintiffs are permitted to file lawsuits in them[.]" (alteration in original)).

[4] As this Court is aware, *Walker* Counsel filed, but later withdrew, a Motion to Reassign *Walker* to Judge Thompson before consenting to the transfer to the Northern District. The Panel did not find any fault with counsel's filing of that motion.

the clear lines established by the rules, statutes and well-recognized case law that it becomes subject to potential sanctions—and even then, only when the conduct is the product of bad faith and egregious.

Exhaustive research has failed to uncover any reported instance in which a lawyer was sanctioned or even admonished for "judge shopping" for (1) filing and voluntarily dismissing a single case (without refiling a similar one), or (2) indicating that a newly filed case was related to a previously filed case on the Civil Cover Sheet. Yet, the Report of Inquiry states (without citation of authority) that both are misconduct. Controlling law does not support the Report's tentative legal finding of misconduct on the part of *Walker* Counsel.

## **BACKGROUND**

This inquiry of *Walker* Counsel concerns (1) *Walker* Counsel's decision to mark *Walker* as "related" to another case on the Civil Cover Sheet when it was initially filed, and (2) *Walker* Counsel's decision to voluntarily dismiss *Walker* five days later.[5] The inquiry of *Walker* Counsel does **not** include any claim or contention

---

[5] As *Walker* Counsel have previously argued, including in this inquiry counsel's telephone call to Judge Thompson's chambers that occurred prior to the transfer of *Walker* to the Northern District raises serious due process concerns because neither this Court's April 18, 2022 order in *Walker* nor the Panel's initial May 10, 2022 order in *Vague* gave any advance notice that the brief, innocuous phone call could potentially serve as the basis for sanctions. *See United States v. Shaygan*, 652 F.3d 1297, 1318 (11th Cir. 2011) ("The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused." (quoting *In re Ruffalo*, 390 U.S. 544, 550 (1968))). Had Mr. Charles been given notice that his telephone call was the subject of potential concern by the Panel, he

related to the filing of *Ladinsky* or *Eckness-Tucker* or that *Walker* Counsel made any public announcement that they intended to file a second, similar action after *Walker* was dismissed. Instead, *Walker* Counsel filed only a single case, which they subsequently dismissed, and did not re-file.

All of the events giving rise to this inquiry as it relates to *Walker* Counsel took place in the week leading up to Easter and Passover weekend in April 2022. Two separate groups of civil rights lawyers and *pro bono* law firms raced to be the first to file lawsuits challenging the constitutionality of a newly enacted Alabama law that would deny access to gender affirming health care for transgender youth. Working independently, one team of lawyers (*Ladinsky* Counsel) decided to file their case in the Northern District, while the other team (*Walker* Counsel) decided to file in the Middle District. The *Ladinsky* team won the race to the courthouse and filed their case after hours on that Friday. The *Walker* team, unaware that they had lost the race, filed their case in the Middle District on the following Monday.

When the *Walker* team of lawyers filed their case in the Middle District, they filled out the required Civil Cover Sheet (Form JS44) and, in the section that asks for "**Related Cases, If Any**," they listed a case that was currently on appeal that also involved a constitutional challenge to restrictions on transgender rights under

---

would have had the opportunity to refresh his recollection about the call prior to being asked about it, instead of having to rely on his memory.

Alabama law.[6] After being informed that the Civil Cover Sheet had no effect on the assignment of related cases, *Walker* Counsel filed a Motion to Reassign *Walker* to Judge Thompson on the basis that it involved "overlapping and often identical issues of law and fact" with a previously filed case handled by him that was currently pending on appeal. (doc. 8).

Before ruling on the Motion to Reassign, Chief Judge Marks entered an order to show cause why *Walker* should not be transferred to the Northern District where *Ladinsky* was the first-filed case. (doc. 3). *Walker* Counsel withdrew the Motion to Reassign and consented to the transfer to the Northern District. (doc. 18).

Following the transfer to the Northern District, the assignment of *Walker* to this Court, and the scheduling of a status conference for the following Monday morning, *Walker* Counsel voluntarily dismissed *Walker* pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), prior to Defendants filing an answer. (doc. 23).

The voluntary dismissal of *Walker*, together with the contemporaneous dismissal of *Ladinsky* and public statements by *Ladinsky* counsel that they intended to promptly file a similar case, resulted in this Court's entry in *Walker* of an order the following Monday noting that the dismissals "give the appearance of judge

---

[6] *Corbitt v. Taylor*, No. 2:18-cv-91-MHT. *Corbitt* involves a constitutional challenge to an Alabama policy that prevents transgender people from changing the gender marker on a driver's license without first undergoing surgical procedures. The case remains pending on appeal.

shopping."[7] (doc. 24). The three-judge panel was subsequently convened and proceedings were held over the following months, culminating in the issuance of a Report of Inquiry on October 3, 2023. (doc. 70 Sealed).

## ARGUMENT

The Panel has stated that it was acting pursuant to its inherent authority in this matter, and not pursuant to any other rule or statute. (doc. 70 at 2-4). There are, of course, well-established limits on a court's power to impose sanctions pursuant to its inherent authority. "Because the exercise of an inherent power in the interest of promoting efficiency may risk undermining other vital interests related to the fair administration of justice, a district court's inherent powers must be exercised with restraint." *Dietz v. Bouldin*, 579 U.S. 40, 48 (2016); s*ee Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion"); *Graham v. Wells Fargo Bank, N.A.*, No. 1:12CV1034-MHT, 2013 WL 3212296, at *14 (M.D. Ala. June 24, 2013) ("This court's inherent power to impose sanctions for actions taken in 'bad faith, vexatiously, wantonly, or for oppressive reasons' must be exercised with great caution, restraint and discretion." (quoting *Chambers*, 501 U.S. at 43-46)).

---

[7] To be clear, *Walker* Counsel made no such public statements suggesting that they intended to file another case.

Because the exercise of inherent authority "is for rectifying disobedience," a court may exercise the power only "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013)). A court exercising its inherent authority must "explain how its employment of those powers falls within the 'narrowly defined circumstances' that warrant their use." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 n.5 (11th Cir. 1997).

## I. *WALKER* COUNSEL DID NOT VIOLATE ANY RULE, STATUTE, OR CONTROLLING CASE LAW.

A court's inherent authority cannot be used to sanction a lawyer for conduct that is not prohibited by a specific rule, law, or controlling case law. *See In re Finklestein*, 901 F.2d 1560, 1565 (11th Cir. 1990); *see also In re BellSouth Corp.*, 334 F.3d 941, 959 n.13 (11th Cir. 2003) (noting "the due process notion that an attorney should not be sanctioned for conduct determined after the fact to have been unethical without fair notice to the attorney that such conduct was prohibited"). "An attorney charged with misconduct is entitled to notice of the charge: that is, the attorney is entitled to know the precise rule, standard, or law that he or she is alleged to have violated and how he or she allegedly violated it." *United States v. Shaygan*, 652 F.3d 1297, 1319 (11th Cir. 2011); *see also United States v. 789 Cases of Latex*

*Surgeon Gloves*, 13 F.3d 12, 15 (1st Cir. 1993) (it is "unfair for the court to use the case [in which a sanction is imposed] as the first step in adopting a new rule").

Nowhere in the Panel's Report of Inquiry or any of its orders does it cite the "precise rule, standard, or law" that *Walker* Counsel are alleged to have violated leading to the finding that they engaged in misconduct.

### A. Marking *Walker* As Related To *Corbitt* Is Not Misconduct.

When *Walker* Counsel filed their complaint in the Middle District, they indicated on the Civil Cover sheet that it was "related" to a previous case that was then on appeal.[8] Without citing any authority, the Panel labeled this misconduct. It is not.

Exhaustive research has failed to uncover any reported instance in which a lawyer was sanctioned or even admonished for "judge shopping" for indicating that a newly filed case was related to a previously filed case on the Civil Cover Sheet.[9] In marking their case as related to *Corbitt*, *Walker* Counsel breached no rule or established requirement of federal law.[10] *See* Fed. R. Civ. P. 83(d).

---

[8] *Corbitt v. Taylor*, No. 2:18-cv-91-MHT (M.D. Ala.).

[9] There are, however, numerous cases in which lawyers have been sanctioned and admonished for **failing** to indicate that a case was related on the Civil Cover Sheet. In *In re Fieger*, 191 F.3d 451 (6th Cir. 1999), for example, the lawyer was sanctioned under Rule 11 for failing to indicate on the Civil Cover Sheets that the thirteen identical actions that he simultaneously filed were related to one another.

[10] Unlike the Northern and Southern Districts, there is no Local Rule in the Middle District setting forth a standard for marking a case as "related" on the Civil Cover Sheet. Instead, Local Rule 3.1(a) states:

The Eleventh Circuit spoke to this issue in *In re Bellsouth*, 334 F.3d 941 (11th Cir. 2003).[11] Although most of the Eleventh Circuit's decision is devoted to upholding the disqualification of BellSouth's counsel for manufacturing a conflict involving Chief Judge UW Clemon's nephew, the court also addressed BellSouth's claim that the plaintiffs' listing of another case as "related" on the Civil Cover Sheet was impermissible "judge shopping."[12] According to the court:

> Petitioners argue that their own judge-shopping should be excused because, they argue, the plaintiffs are guilty too. Petitioners contend that the plaintiffs' reference on the civil cover sheet to the *Wright* case as a related matter constituted a misrepresentation because, they argue, the cases are not sufficiently related. The district court, after a full evidentiary hearing and briefing by all parties, found no wrongful judge-shopping by the plaintiffs. The court found as a fact that the *Wright* case—which involved the same principal defendant, the same cause of action, and similar factual allegations regarding the use of promotional tests—was related to this matter, so that its listing on the intake sheet was **plausible**. We see no basis on which to reject that finding as clearly erroneous.

---

(a) Completed Civil Cover Sheet Required. A completed civil cover sheet (Form JS-44) shall be submitted to the Clerk with the initial civil complaint or notice of removal filed in this Court by a litigant represented by counsel. This requirement is solely for administrative purposes, and matters appearing in the civil cover sheet have no legal effect in the action.

In addition, there is no controlling case law defining whether to mark a case as "related" or "pending" on the Civil Cover Sheet.

[11] The Panel's Report discusses *Bellsouth* at length, but not on this issue.

[12] In the underlying case, *Jenkins v. BellSouth*, No. 2:02-cv-01507 (N.D. Ala.), the District Court addressed a claim that the plaintiffs had engaged in judge shopping by indicating on the Civil Cover Sheet that their case was related to *Wright v. South Central Bell Telecommunications, Inc.*, No. CV-93-1530-S (N.D. Ala.), a case which had previously been tried by Chief Judge U.W. Clemon, but was awaiting a final judgment, in an effort to have *Jenkins* assigned to Judge Clemon outside of the random assignment process.

*Id.* (Emphasis added). In so holding, the court noted that "plaintiffs are required by local rule to file the civil cover sheet, and its instructions asked the plaintiffs to reveal any related case." *Id.* at n.5.

The Panel's Report does not take issue with the claim that *Walker* and *Corbitt* were plausibly related, noting that the lawyers "each testified that *Walker* counsel had a good faith belief that *Walker* was related to *Corbitt* because of overlapping legal and factual issues between the two cases." (Report at 17). Instead, the Panel found that designating the cases as related was misconduct because *Corbitt* "was a closed case." (*Id.*).

The Report cites no authority for the finding that a case that is on appeal cannot be "related" to a newly filed case, or that such a case cannot be considered "pending." As noted, there is no Local Rule in the Middle District setting forth a standard for marking a case as "related" or "pending" on the Civil Cover Sheet. In addition, the Civil Cover Sheet itself only directs the filer to "instructions" on the back of the form which simply state:

> This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Neither the term "related" nor "pending" are defined anywhere in the instructions or in the Middle District Local Rules. Further, there are no Supreme Court, Eleventh Circuit, or Middle District court decisions on the subject.

The standard for whether two cases are sufficiently "related" varies widely across the district courts and is governed heavily by local rules. *See* Marcel Kahan & Troy A. McKenzie, *Judge Shopping*, 13 J. Legal Analysis 341, 342 (2021) ("No single model governs local rules for related case assignment. Different federal districts have adopted divergent approaches to the definition of 'relatedness' as well as to the decision maker who determines whether a case satisfies the definition.").[13]

Likewise, the Middle District has no written rule or published standard for who makes the determination of whether a case is related. Other district courts in this Circuit expressly provide that the judge presiding over the purportedly related case determines whether the newly-filed case is related. *See, e.g.*, S.D. Ala. L.R. 3(c) ("[T]he new civil action will be assigned to the same Judges as the pending action. . . . The Judge to whom the action with the lower case number is assigned will resolve any dispute as to whether the actions are related."); S.D. Fla. IOP 2.15 ("[T]he Judges involved shall determine whether the higher-numbered action or proceeding shall be transferred to the Judge assigned to the lower-numbered action."); M.D. Fla. L.R. 1.07 ("[A] party may move to transfer a later-filed action to the judge assigned

---

[13] Professors Kahan and McKenzie found that of the ninety-four (94) judicial districts, only forty-six (46) have a written rule providing for the assignment of a new case "related" to a prior case to the judge who hears (or heard) the prior case. *Id.* at 346. Thirty-nine (39) of the forty-six (46) districts with a written local rule (and thirteen of the other districts) have "a rule providing at least some 'definition' of when a case is related." *Id.* at 347.

to the fist-filed action. . . . The proposed transferor judge must resolve the motion to transfer but can transfer the action only with the consent of the transferee judge.").[14]

In the absence of a controlling rule or other definition of what it means for a case to be "related," "pending," or who decides those issues, *Walker* Counsel made the good faith determination that because *Corbitt* was: (1) currently pending on appeal; (2) likely to return to Judge Thompson on remand; and (3) still subject to an attorney's fee determination, that it could properly be the subject of a related case designation. Further, *Walker* Counsel had a reasonable basis to believe that *Walker* would be initially assigned to Judge Thompson, and that Judge Thompson would determine the issue of relatedness.

*Walker* Counsel's decisions are supported by established case law in other contexts holding that an action is considered "pending" even if it is on appeal. *See Knights of the Ku Klux Klan of Louisiana v. E. Baton Rouge Par. Sch. Bd.*, 679 F.2d 64, 67 (5th Cir. 1982) (**"Absent any legislative history to the contrary, an action is 'pending' so long as a party's right to appeal has not yet been exhausted or expired. . . . The fact that a motion for attorneys' fees is the only matter pending**

---

[14] Indeed, to the extent district courts have rules governing the relatedness determination, a substantial majority provide that the related case judge determines or assists in determining relatedness. *See* Kahan & McKenzie at 374-76 (thirty-two of forty-four such districts in their study follow this practice).

**before a court does not mean that court lacks jurisdiction or that the case is not 'pending.'"** (Emphasis added)).[15]

Further, some district courts have relied on the same language on the Civil Cover Sheet to require counsel to disclose "related cases" that have been closed:

> The primary purpose of [the Civil Cover Sheet] is to facilitate the statistical record-keeping of the Judicial Conference. It is not inclusive of all the instances of related cases that, in the practice and procedure of this Court, are included in the definition of related cases. **It is not inclusive because the civil action cover sheet only mentions "pending cases," not prior cases. It has been the long-standing practice of this Court to consider both related pending and prior cases as "related cases."**

*Obert v. Republic W. Ins. Co.*, 190 F. Supp. 2d 279, 287–88 (D.R.I. 2002) (emphasis added). Among those Districts that have Local Rules regarding "related cases," some expressly include closed or terminated cases within the applicable definition. *See* Kahan & McKenzie at n.14 ("Some districts explicitly treat a recently closed case as an earlier filed case for which related case status should be asserted.").

---

[15] *See also Mayhew v. Int'l Mktg. Grp.*, 6 F. App'x 277, 280 (6th Cir. 2001) ("As IMG acknowledges, 'an action is "pending" so long as a party's right to appeal has not yet been exhausted or expired.'"); *All. to End Repression v. City of Chicago*, No. 74 C 3268, 1985 WL 3300, at *7 (N.D. Ill. Oct. 24, 1985); *Doe v. Sec'y of Air Force*, 587 F. Supp. 1540, 1542 (D.D.C. 1984); *Mendoza v. Blum*, 560 F. Supp. 284, 286–87 (S.D.N.Y. 1983) ("The definition of the term 'pending' includes those cases in which the appeal is still pending. By analogy, cases in which the right to appeal has not yet been exhausted or expired also should be considered pending." (citations omitted)); *L.A. Draper & Son, Inc. v. Wheelabrator-Frye, Inc.*, 454 So. 2d 506, 508 (Ala. 1984) ("An action is deemed pending in federal court so long as a party's right to appeal has not yet been exhausted or expired.").

In the absence of a Local Rule, federal law, or controlling court decision holding that a case pending on appeal cannot be marked as "related" on the Civil Cover Sheet, *Walker* Lawyers' marking *Corbitt* as related to *Walker* cannot be labeled as misconduct or subject *Walker* Counsel to sanction. *See* Fed. R. Civ. P. 83(d).

### B. Filing And Then Dismissing A Single Case Is Not Misconduct.

The Panel's Report finds fault with the fact that *Ecknes-Tucker* was filed shortly after *Walker* and *Ladinsky* were dismissed, and then proceeds to "collectively" accuse *Walker* Counsel (along with the other Respondents) of improper judge shopping without acknowledging that none of the lawyers who filed and dismissed *Walker* participated in the filing of *Ecknes-Tucker*. The record is clear that *Walker* Counsel filed a single case on a Monday and voluntarily dismissed it the following Friday, without ever filing a second case raising the same or similar claims.

Exhaustive research has failed to uncover any reported instance in which a lawyer has been sanctioned or found to have engaged in improper judge shopping for filing and voluntarily dismissing a single case, without refiling a second, similar one. To the contrary, Federal Rule of Civil Procedure 41 gives plaintiffs an unrestricted and unconditional right to voluntarily dismiss their case. *See Pilot Freight Carriers, Inc. v. Int'l Brotherhood of Teamsters*, 506 F.2d 914, 915 (5th Cir.

1975) ("[Rule] 41(a)(1) on its face grants a plaintiff an unconditional right to dismiss his complaint . . . . [We decline] to narrow the express parameters of this right . . . ."); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114–15 (2d Cir. 2009) ("Dismissal of a suit may be disruptive and annoying, but it is permitted by the rules . . . It follows that [plaintiff] was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that it did so to flee the jurisdiction or the judge does not make the filing sanctionable."). Indeed, it was the filing of a second, similar case by other counsel that served as the threshold event for initiating this inquiry.[16]

At the recent hearing and conference, this Court raised concerns about litigants using "an expansive view" of Rule 41 to "just dismiss, re-file, dismiss, refile until you get the right judge." (Tr. Nov. 2, 2023 at 72). As has been pointed out, however, the Federal Rules of Civil Procedure contain built-in safeguards to prevent that kind of conduct. For example, Rule 41(a)(1)(A)(i) provides that the second dismissal is with prejudice. *See ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1268 (11th Cir. 1999) ("[T]he primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading." (alteration in original) (quoting

---

[16] By arguing that *Walker* Counsel's nonparticipation in the filing of *Ecknes-Tucker* precludes a finding of misconduct, *Walker* Counsel certainly do not suggest that those lawyers who did file *Eckness-Tucker* did anything improper or subject to sanction.

*Poloron Products, Inc. v. Lybrand Ross Bros. and Montgomery*, 534 F.2d 1012, 1017 (2d Cir. 1976))). In addition, Rule 41(d)(1) allows for the recovery of costs upon the filing of a second, similar action. *See Andrews v. America's Living Ctrs., LLC*, 827 F.3d 306, 309 (4th Cir. 2016) ("[T]he purpose of Rule 41(d) is 'to serve as a deterrent to forum shopping and vexatious litigation.'" (quoting *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir. 1992))).

These safeguards, of course, are premised on the filing of **a second action** following a plaintiff's voluntary dismissal. For example, the courts have uniformly held that costs may not be imposed pursuant to Rule 41(d) unless a second, similar action is filed after the dismissal of a case pursuant to Rule 41(a). *See Sargeant v. Hall*, 951 F.3d 1280, 1287 (11th Cir. 2020) ("[T]he conduct that Rule 41(d) seeks to deter is the filing of the second action."); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987) ("Rule 41(a)(1)(i) prevents an award of 'costs' against the party who dismisses the suit voluntarily. Only the filing of a second suit on the same claim allows the court to award the costs of the first case."); 8 James Wm. Moore *et al.*, Moore's Federal Practice—Civil § 41.70 (3d ed. 2019) ("Rule 41(d) does not permit an award of costs unless a second action has been commenced.").

Similarly, where a dismissal is not followed by the filing of a second, similar case—as with *Walker*—there are no concerns that a party used Rule 41(a) to engage

in impermissible judge shopping. "One instance of an action that complied with [Rule 41] cannot, on its own, amount to judge-shopping." *Fried v. Town of Vienna*, No. 1:11CV992 JCC/TRJ, 2011 WL 5326050, at *2 (E.D. Va. Nov. 4, 2011); *see also id.* ("Here Plaintiff properly exercised her right to voluntarily dismiss the action under Fed.R.Civ.P. 41(a)(1).").[17]

*Walker* Counsel filed a single case without knowing that they had already lost the race to the courthouse to the competing team of lawyers who filed *Ladinsky*. After briefly contemplating opposing the transfer of *Walker* to the Northern District, they consented to that transfer. They then exercised their absolute and unfettered right to dismiss *Walker* pursuant to Rule 41(a)(1)(A)(i) and made the decision not to file (or refile) a second case. This was entirely within their rights under the rules and is not misconduct. *Walker Counsel* cannot have engaged in improper "judge-shopping" where they decided not to "shop" at all, but voluntarily left the courthouse and never returned.

## II.   *WALKER* COUNSEL DID NOT ACT IN BAD FAITH.

In addition to not having violated any rule, law, or precedent, *Walker* Counsel also did not act in bad faith. An unquestioned prerequisite for the exercise of inherent

---

[17] *Walker* Counsel do not dispute that, when they voluntarily dismissed *Walker*, they were considering the possibility of filing another case challenging the Alabama law, but it is undisputed that they quickly (the next day) abandoned any such efforts and left it to the other team of lawyers to pursue on their own.

authority to sanction a lawyer is a finding of subjective bad faith. *See Baker v. 3M Co.*, No. 21-12393, 2023 WL 3734013, at *4 (11th Cir. May 31, 2023) ("[T]he inherent-powers standard is a subjective bad-faith standard."); *Purchasing Power*, 851 F.3d at 1223 ("As a starting point, the inherent-powers standard is a subjective bad-faith standard."); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("The key to unlocking a court's inherent power is a finding of bad faith." (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998))). As a result, "the subjective nature of the inherent powers standard restricts a court's ability to impose sanctions." *Purchasing Power,* 851 F.3d at 1224.

Further, proof of counsel's subjective bad faith must be established by clear and convincing evidence. *See JTR Enters., LLC v. Columbian Emeralds*, 697 F. App'x 976, 988-89 (11th Cir. 2017) (stating that a party failed to meet its "burden to prove sanctionable conduct . . . by clear and convincing evidence"); *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, No. 1:19-CV-560-KOB, 2021 WL 3421394, at *2 (N.D. Ala. Aug. 5, 2021) ("This court has previously applied the clear and convincing evidence standard . . . in a case involving bad-faith behavior . . . ."); *Robinson v. Akal Sec., Inc.*, No. 1:17-CV-03658-WMR, 2020 WL 13746173, at *2 (N.D. Ga. Mar. 20, 2020) ("A district court may use its inherent power to impose severe sanctions such as the dismissal of a complaint or the striking of an answer

and the entry of default judgment only if the court finds by clear and convincing evidence that the sanctionable conduct occurred.").

The Panel made no finding that *Walker* Counsel acted with subjective bad faith, nor could it. A demonstration of bad faith requires either "direct evidence of subjective bad faith" or "conduct [that] is so egregious that it could only be committed in bad faith." *Baker*, 2023 WL 3734013, at *4; *see also United States v. Shaygan*, 652 F.3d 1297, 1312 (11th Cir. 2011) ("[B]ad faith' 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" (quoting *Black's Law Dictionary* 139 (6th ed. 1990))). *Walker* Counsel did not engage in any misconduct at all, *see supra*, and certainly not conduct that was so egregious that it amounted to bad faith. Instead, *Walker* Counsel voluntarily dismissed a case—after having *consented to* its transfer—and did not re-file. That conduct was both within the bounds of law and taken in good faith.

Nor could the Panel permissibly rely on the acts of other lawyers to find bad faith on the part of *Walker* Counsel. When deciding whether a lawyer acted in subjective bad faith sufficient to invoke a court's inherent authority, only that lawyer's individual actions may be considered in order to justify the imposition of potential sanctions. *See JTR Enters.*, 697 F. App'x at 987 ("Bad faith is personal to

the offender. One person's bad faith may not be attributed to another by operation of legal fictions or doctrines such as respondeat superior or vicarious liability." (quoting Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 27 (4th ed. 2012))); *see also Wolters Kluwer*, 564 F.3d at 114 (lawyer's bad faith could not be "visited" upon his employer law firm); *Browning Debenture Holders' Comm. v. DASA Corp.,* 560 F.2d 1078, 1089 (2d Cir. 1977) ("Bad faith is personal" and "may not automatically be visited" on others); *cf. Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 124 (1989) (Rule 11 sanctions may be imposed only upon individual attorney who signs paper and not on attorney's law firm).

This means, of course, that, at a minimum, *Walker* Counsel cannot be sanctioned for actions taken by the lawyers who filed *Ladinsky* or *Ecknes-Tucker*, and, likewise, the lawyers who filed those cases cannot be held responsible for acts taken by *Walker* Counsel.

## CONCLUSION

Any exercise of this Court's inherent authority to sanction lawyers requires, at a minimum, that the lawyers have violated a rule or clearly articulated legal standard and that they have done so in a manner that establishes their subjective bad faith by clear and convincing evidence. Here, *Walker* Counsel violated no rule or clearly articulated standard and did not act in bad faith. As a result, this Court should find that *Walker* Counsel did not engage in misconduct in this matter. Further, *Walker*

Counsel welcome the opportunity to address the Court individually, or through counsel, regarding the facts and circumstances that gave rise to this inquiry, and their role therein.

Respectfully submitted,

 /s/ Barry A. Ragsdale
Barry A. Ragsdale (RAG003)
Robert S. Vance (VAN069)
**Dominick Feld Hyde, PC**
1130 22nd Street South, Suite 400
Birmingham, AL 35205
Tel.: (205) 536-8888
bragsdale@dfhlaw.com
rvance@dfhlaw.com

W. Neil Eggleston
Eugene F. Assaf, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: (202) 879-5000
neil.eggleston@kirkland.com
eassaf@kirkland.com

Byron Pacheco
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
byron.pacheco@kirkland.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on November 17, 2023, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will provide notice of such filing to all counsel of record.

/s/ *Barry A. Ragsdale*
OF COUNSEL