# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| United States of America, | ) |
| | ) |
| *Intervenor Plaintiff*, | ) |
| | ) |
| v. | ) Civil Action No. 2:22-cv-184-LCB |
| | ) |
| Hon. Steve Marshall, in his official | ) |
| capacity as Attorney General, | ) |
| of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

## DEFENDANTS' RESPONSE TO PLAINTIFF-INTERVENOR UNITED STATES OF AMERICA'S MOTION TO STAY ALL DISTRICT COURT PROCEEDINGS (DOC. 387)

# TABLE OF CONTENTS

Table of Contents ................................................................................ i

Table of Authorities ............................................................................ ii

Introduction ........................................................................................1

Legal Standard ....................................................................................4

Argument.............................................................................................6

   I.   The United States Demands An Indefinite Stay.........................6

   II.  The United States Shows No Likelihood Of Success ...............9

   III. The United States Points To No Practical Relevance To
       Discovery Or Trial In This Case Of Its Desired Equal Protection-
       Only Appeals .........................................................................13

   IV. A Stay Will Severely Prejudice Defendants And The Public,
       While The United States Points To Scant Harm From Continuing
       Proceedings...........................................................................15

   V.  The United States' Motion Is Untimely ..................................18

Conclusion .........................................................................................20

Certificate of Service .........................................................................22

# TABLE OF AUTHORITIES

## Cases

*Arkin v. Innocutis Holdings, LLC,*
    176 F. Supp. 3d 1313 (M.D. Fla. 2016).............................................................14

*Brandt v. Rutledge,*
    No. 21-2875, 2022 WL 16957734 (8th Cir. Nov. 16, 2022)..............................13

*CFTC v. Chilcott Portfolio Mgmt., Inc.,*
    713 F.2d 1477 (10th Cir. 1983) ............................................................................5

*Chelius v. Becerra,*
    No. 17-cv-00493 JAO-RT, 2023 WL 5041616 (D. Haw. Aug. 8, 2023).............8

*Childress v. DeSilva Auto. Servs., LLC,*
    No. CIV 20-0136 JBJHR, 2020 WL 3572909 (D.N.M. July 1, 2020)........ 15, 19

*Clinton v. Jones,*
    520 U.S. 681 (1997)...............................................................................................5

*Crimson Yachts v. M/Y Betty Lyn II,*
    No. 08-cv-0334-WS-C, 2010 WL 2683341
    (S.D. Ala. July 1, 2010) ................................................................... 6, 10, 14, 17

*CTI-Container Leasing Corp. v. Uiterwyk Corp.,*
    685 F.2d 1284 (11th Cir. 1982) ............................................................................6

*Democratic Exec. Comm. of Fla. v. Lee,*
    915 F.3d 1312 (11th Cir. 2019) ..........................................................................10

*Dobbs v. Jackson Women's Health Org.,*
    597 U.S. 215 (2022).................................................................................. 2, 12, 13

*E.I. du Pont de Nemours & Co. v. Train,*
    430 U.S. 112 (1977)..............................................................................................11

*Eknes-Tucker v. Governor of Alabama,*
    80 F.4th 1205 (11th Cir. 2023) ....................................................... 10, 13, 14, 16

*Franklin v. Nat'l Gen. Assur. Co.*,
    No. 2:13-cv-103-WKW, 2013 WL 3854486 (M.D. Ala. July 25, 2013) ............5

*Gissendaner v. Comm'r, Ga. Dep't of Corr.*,
    779 F.3d 1275 (11th Cir. 2015) ........................................................14

*Grayson v. Allen*,
    491 F.3d 1318 (11th Cir. 2007) ........................................................18

*Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*,
    240 U.S. 251 (1916)........................................................................11

*Hand v. Scott*,
    888 F.3d 1206 (11th Cir. 2018) ........................................................16

*K.C. v. Individual Members of the Med. Licensing Bd. of Ind.*,
    No. 23-cv-595 (S.D. Ind.)................................................................19

*L.W. v. Skrmetti*,
    83 F.4th 460 (6th Cir. 2023) ...........................................................20

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936)........................................................... 5, 8, 9, 18

*Marti v. Iberostar Hoteles y Apartamentos S.L.*,
    54 F.4th 641 (11th Cir. 2022) ..........................................................16

*Martin v. Singletary*,
    965 F.2d 944 (11th Cir. 1992) .........................................................10

*Maslenjak v. United States*,
    582 U.S. 335 (2017)........................................................................11

*Mims v. Wal-Mart Stores, Inc.*,
    No. 1:12-cv-244-VEH, 2012 WL 12893691 (N.D. Ala. Apr. 13, 2012) ............4

*Nat'l Football League v. Ninth Inning, Inc.*,
    141 S. Ct. 56 (2020)........................................................................11

*Ortega Trujillo v. Conover & Co. Commc'ns*,
221 F.3d 1262 (11th Cir. 2000) ........................................................5, 8

*Rescue Army v. Mun. Ct. of City of Los Angeles*,
331 U.S. 549 (1947)..........................................................................11

*Rice v. Sioux City Mem'l Park Cemetery*,
349 U.S. 70 (1955)............................................................................12

*Robinson v. Nationstar Mortg., LLC*,
220 F. Supp. 3d 1353 (S.D. Ga. 2016) ..............................................19

*Rutherford v. McDonough*,
466 F.3d 970 (11th Cir. 2006) ..........................................................14

*Sanders v. Wal-Mart Stores E., LP*,
No. 2:16-cv-637-WKW-GMB, 2017 WL 11747471
(M.D. Ala. May 18, 2017) ................................................................17

*Schwab v. Sec'y, Dep't of Corr.*,
507 F.3d 1297 (11th Cir. 2007) ....................................................9, 10

*SEC v. Spinosa*,
No. 13-62066-cv, 2015 WL 11181929 (S.D. Fla. Jan. 8, 2015) .........5

*Swain v. Junior*,
958 F.3d 1081 (11th Cir. 2020) ........................................................16

*Taylor v. Illinois*,
484 U.S. 400 (1988)..........................................................................20

*Tollefson v. Bergaila & Assocs., Inc.*,
No. 21-CV-171-DC-RCG, 2022 WL 2782809
(W.D. Tex. Jan. 19, 2022).................................................. 6, 9, 13, 17

*United States v. Mendoza*,
464 U.S. 154 (1984)..........................................................................12

*United States v. Skrmetti*,
No. 23-477 (U.S. Nov. 6, 2023) ........................................................13

iv

*W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*,
   82 F.4th 1068 (11th Cir. 2023) ............................................................7

*Waithaka v. Amazon.com, Inc.*,
   No. C19-01320-RSM, 2020 WL 7028945 (W.D. Wash. Nov. 30, 2020)......6, 10

*Wedgeworth v. Fibreboard Corp.*,
   706 F.2d 541 (5th Cir. 1983) ...............................................................9

## Rules

11th Cir. R. 36-3, Internal Operating Procedure 2 ...................................10

Fed. R. App. P. 35(a) ............................................................................12

Sup. Ct. R. 10(a), (b)............................................................................12

## INTRODUCTION

When the United States voluntarily intervened in this action, it pledged up and down not "to delay the case." Doc. 65 at 2. It told this Court that its "intervention will not unduly delay or prejudice the original parties' rights." Doc. 58-1 at 9 n.2. "[I]ncluding the United States in this process does not change the status quo," it said. Doc. 65 at 3. It "by no means intends to delay these proceedings," it said. PI Tr. 9 (Docs. 104 & 105).

The United States' foot-dragging in discovery and meritless third-party subpoenas—requiring this Court's repeated intervention—cast ample doubt on these pledges. *See* Docs. 192, 261, 262, 368 (all rejecting the United States' efforts to prolong or avoid discovery). But the United States' latest effort to delay takes the cake. Now it demands that all litigation be halted for an indefinite time, even as Defendants remain bound by this Court's preliminary injunction.

What could justify this sudden halt in the fourth quarter of discovery? According to the United States, the answer is its own pending petition for a writ of certiorari challenging a preliminary injunction in a separate case that raises only *one* of the issues involved in this case. This extraordinary demand from a party that voluntarily interjected itself in this litigation fails, for many reasons.

First, in the unlikely event the United States is successful in its petition, any Supreme Court decision would not come in the ordinary course until at least the

spring, and more likely the summer, of 2025. And in the unlikely event the United States is successful in its case, the best it could hope for is a ruling that intermediate scrutiny applies to Plaintiffs' equal protection claim. This litigation would then pick up just where it left off, having lost nearly two years (if not more) for little reason. The Eleventh Circuit has repeatedly rejected such years-long stays as immoderate and indefinite.

Second, far more likely is that the Supreme Court will deny the United States' petition in the spring or summer of 2024. In that event, this case would pick up where it left off, having lost half-a-year for *no* reason at all. The United States does not even attempt to argue that it is likely to succeed in obtaining certiorari, much less to prevail on the merits. That's understandable. The Supreme Court generally rejects cases in an interlocutory posture without a developed trial record; the United States' claimed circuit split appears transitory; and there is very little chance that a Supreme Court that *just* held that regulating "a medical procedure that only one sex can undergo" generally "does not trigger heightened constitutional scrutiny" would buy the United States' opposite argument now. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 236 (2022).

Third, the only question posed by the United States' petition and addressed by its motion—the appropriate level of scrutiny under the Equal Protection Clause—will have little practical relevance to discovery and trial proceedings here. Though

binding precedent establishes that rational-basis review applies, Defendants will be prepared to try the case under heightened scrutiny if necessary. Plaintiffs have asserted—and this Court agreed at the preliminary injunction stage—that heightened scrutiny also applies to Plaintiffs' parental-rights claim under the Due Process Clause. The United States does not raise that issue. So even if the Supreme Court granted the United States' premature petition, the Court's resolution would not control all the proceedings here. Similarly, Plaintiffs and the United States contend that the law fails even rational basis review. Ongoing discovery is relevant on Plaintiffs' and the United States' own theories, and the United States does not contend otherwise.

Fourth, the balance of harms weighs decisively against a stay. The United States never addresses the extreme prejudice a stay would cause Defendants, who remain under this Court's preliminary injunction. Even if the Eleventh Circuit stays that injunction or issues its mandate, Defendants will be prejudiced by the cloud of litigation over the State's full enforcement of a law that protects children from sterilizing sex-modification procedures. And the United States cannot adequately explain what prejudice it faces by completing what it describes as minimal remaining discovery tasks while its certiorari petition is pending. The public's interest, meanwhile, is in prompt judicial resolution, clarity about the legal regime that applies in Alabama, and enforcement of a democratically approved law.

Fifth and finally, the United States' motion is untimely. All its arguments about an "unsettled" "legal landscape" could have been made 18 months ago, before the parties and the Court devoted substantial resources to fact discovery while the preliminary injunction appeal was decided. Given this delay—and sudden need by the United States to pause discovery—it is hard to avoid the conclusion that the federal government sees the medical landscape shifting further against its position in these cases, so is rushing to get the Supreme Court to decide these significant issues on an incomplete factual record. That the United States appears scared of what discovery is producing here is a reason to complete this case, not indefinitely delay.

Fact discovery is almost finished, and trial is set. Alabama is entitled to finish its years-long defense of a challenge that the United States voluntarily joined, freeing the State to enforce a valid law enacted by the people's representatives. The United States' motion for an indefinite stay should be denied.

## LEGAL STANDARD

The United States' motion misstates the appropriate legal standard. Though a district court has power to stay a case "pending resolution of other litigation," "'the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Mims v. Wal-Mart Stores, Inc.*, No. 1:12-cv-244-VEH, 2012 WL 12893691, at *2 (N.D. Ala. Apr. 13, 2012) (quoting *Landis v.*

*North Am. Co.*, 299 U.S. 248, 255 (1936)). "The decision whether to grant a stay pending resolution of other litigation requires balancing the competing interests of the parties." *Id.* "'Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.'" *Id.* (quoting *Landis*, 299 U.S. at 255). "The right to proceed in court should not be denied except under the most extreme circumstances." *SEC v. Spinosa*, No. 13-62066-cv, 2015 WL 11181929, at *1 (S.D. Fla. Jan. 8, 2015) (quoting *CFTC v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)).

Further, "'[a] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits.'" *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000) (quoting *Landis*, 299 U.S. at 257). A stay that "is immoderate" is "an abuse of discretion." *Id.*

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see Franklin v. Nat'l Gen. Assur. Co.*, No. 2:13-cv-103-WKW, 2013 WL 3854486, at *3 (M.D. Ala. July 25, 2013) (same). The United States recites four factors that it says apply to a stay or injunction "pending appeal." Motion 6. But those factors are typically applied when the movant has appealed *in the same case*. Here, the United States did not file a petition for rehearing en banc in the Eleventh Circuit, and it has not petitioned for certiorari. So to the extent its motion is based on petitions in separate cases, the more relevant factors

are those that courts "determining whether a stay is proper pending the outcome of a separate, unrelated case weigh": "(1) the potentiality of another case having a dispositive effect on the case to be stayed; (2) the judicial economy to be saved by waiting on a dispositive decision; (3) the public welfare; and (4) the hardship/prejudice to the party opposing the stay, given its duration." *Tollefson v. Bergaila & Assocs., Inc.*, No. 21-CV-171-DC-RCG, 2022 WL 2782809, at *1 (W.D. Tex. Jan. 19, 2022) (cleaned up) (collecting cases).[1] Defendants discuss all the above factors, none of which supports the United States' demanded indefinite stay of litigation.

## ARGUMENT

### I.   The United States Demands An Indefinite Stay.

The United States demands a stay of "all district court proceedings until final resolution of available appellate remedies and resolution of the pending petitions for certiorari before the Supreme Court." Motion 2-3. Before turning to the other stay factors, and keeping in mind the Eleventh Circuit's repeated admonishments that stays cannot be "indefinite or immoderate," *e.g.*, *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982), Defendants outline the status

---

[1] Still other courts apply the Supreme Court's stay factors when a party "seeks a stay pending the U.S. Supreme Court's decision on its petitions for writ of certiorari": "(1) a reasonable probability that four Justices would vote to grant certiorari; (2) a significant possibility that the [Supreme] Court would reverse the judgment below; and (3) a likelihood of irreparable harm, assuming the correctness of the applicant's position, if the judgment is not stayed." *Waithaka v. Amazon.com, Inc.*, No. C19-01320-RSM, 2020 WL 7028945, at *2 (W.D. Wash. Nov. 30, 2020); *see Crimson Yachts v. M/Y Betty Lyn II*, No. 08-cv-0334-WS-C, 2010 WL 2683341, at *1 (S.D. Ala. July 1, 2010). These too are addressed in Defendants' discussion below.

of the "appellate remedies" that are the predicate for the United States' motion. These remedies show that the United States seeks an indefinite, immoderate stay.

In this case, the United States has not filed a petition for rehearing en banc before the Eleventh Circuit. It has not petitioned for certiorari from the Eleventh Circuit's panel decision. It has not filed a motion for a stay pending such a petition from the Eleventh Circuit *or* the Supreme Court. The United States has pursued *no* appellate remedies here.

Instead, the United States invokes "Private Plaintiffs' petition for rehearing en banc by the Eleventh Circuit." Motion 2. If this Court were to stay all proceedings until, as the United States demands, all "available appellate remedies" are exhausted with respect to that petition, the stay could be years and years. Say the Eleventh Circuit takes a year to act on the petition, as the Court is wont to do. *See W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*, 82 F.4th 1068, 1072 n.3 (11th Cir. 2023) (Rosenbaum, J., dissenting from the denial of rehearing en banc). If the Eleventh Circuit denies the petition in December 2024, and an appellant files a certiorari petition that takes several months to brief, the case would likely be scheduled for October Term 2025 with no decision before summer 2026. If the Eleventh Circuit decided to grant the petition, took another year to decide the case, then subsequent Supreme Court action happened, we're looking at summer 2027. That's a stay of up to four years for an appeal that the United States itself is not pursuing.

The United States also invokes several "pending cert petitions to the Supreme Court" from the Sixth Circuit, noting that its petition (and the others) "seek[] review on the standard of review under the Equal Protection Clause." Motion 6. Though the United States does not bother to inform this Court, its pending petition does *not* ask the Supreme Court to review the Sixth Circuit's determination about substantive due process. Indeed, the United States' motion here says nothing at all about Plaintiffs' lead theory of this case, focused on the Due Process Clause. Regardless, even if the equal protection question were accepted by the Court (the unlikelihood of which is discussed next), "the Supreme Court is unlikely to issue a decision until the latter half of the 2024-2025 term, between March and July 2025." *Chelius v. Becerra*, No. 17-cv-00493 JAO-RT, 2023 WL 5041616, at *4 (D. Haw. Aug. 8, 2023). It does not appear that the United States (or any petitioner) has asked the Supreme Court to expedite its consideration. Nor does it appear that the United States (or any petitioner) has asked the Supreme Court to grant an injunction pending appeal.

That "[t]he scope of the stay" demanded by the United States "seems indefinite" is reason enough to deny the stay. *Ortega Trujillo*, 221 F.3d at 1264; *see Landis*, 299 U.S. at 256-57 (holding that a stay into "a second year or even more" is "so drastic and unusual" that it "overpasses the limits of any reasonable need"); *Chelius*, 2023 WL 5041616, at *5 ("[W]aiting to adjudicate [the case] until March 2025 at the earliest, or until July 2025 at the latest, is an unreasonable period of delay.");

*Tollefson*, 2022 WL 2782809, at *3 (finding that "the requested stay would be 'immoderate or of an indefinite duration' because there is no guaranteed estimate of how long the [party's] appeal to the Supreme Court will take" (quoting *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983))). In all events, as explained next, the United States has not come close to carrying its burden on any stay factor, much less "ma[d]e out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

## II.   The United States Shows No Likelihood Of Success.

On likelihood of success, it is tempting to say only that the United States (1) has not appealed here and (2) has asked no court for an injunction pending appeal from the Sixth Circuit cases, so it evidently does not consider itself likely to succeed. If, as the United States says, "[t]he standard for granting a stay of trial court proceedings pending appeal and for granting an injunction pending appeal is generally the same," Motion 6, it is telling that the United States apparently does not think it can obtain a stay or injunction pending appeal from the appellate courts. As the Eleventh Circuit has said, "it is not our role to preempt Supreme Court action on motions requesting stays pending decisions that Court will make in the future." *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1301 (11th Cir. 2007).

It is also tempting to say only that the United States' bare-bones argument—there is a "disagreement" so its position has "a likelihood" of "prevail[ing]" (Motion

7)—is grossly deficient. The United States' burden is to show that *its* position is the one that is *likely* to succeed. *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019) ("the party seeking the stay must show more than the mere possibility of success on the merits"). But the United States "does not even repeat for the Court's benefit whatever argument it made to the Supreme Court as to why its petition should survive the winnowing process that results in the rejection of most such petitions." *Crimson Yachts*, 2010 WL 2683341, at *2. As long as "the law in this circuit" rejects the United States' position, it cannot show a likelihood of success. *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992); *see Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205, 1230 (11th Cir. 2023) ("reject[ing] the United States' view" that heightened scrutiny applies under the Equal Protection Clause); *see also Schwab*, 507 F.3d at 1299 ("a grant of certiorari is not authority to the contrary of binding circuit precedent"); 11th Cir. R. 36-3, Internal Operating Procedure 2 ("Under the law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect this result.").

Yet the United States' likelihood-of-success problems run deeper still. Its motion depends on pending (or future) certiorari petitions, but "[i]t is well-established that the Supreme Court rarely grants certiorari." *Waithaka*, 2020 WL 7028945, at *3. The Court is especially unlikely to do so in a preliminary injunction posture, where the question is only whether a party has shown a sufficient likelihood of

success. Plus, without a developed record, the Court would not have the "benefit of the precision which would be afforded by proof … made upon trial." *Rescue Army v. Mun. Ct. of City of Los Angeles*, 331 U.S. 549, 575 (1947); *see Nat'l Football League v. Ninth Inning, Inc.*, 141 S. Ct. 56, 57 (2020) (Kavanaugh, J., statement respecting the denial of certiorari) ("[T]he interlocutory posture is a factor counseling against this Court's review at this time."); *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 258 (1916) ("[E]xcept in extraordinary cases, the writ is not issued until final decree.").

The Supreme Court is even more unlikely to grant certiorari to resolve an issue that is still being considered by multiple circuits. In its certiorari decisions, the Court has long recognized "the wisdom of allowing difficult issues to mature through full consideration by the courts of appeals." *E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 135 n.26 (1977). This percolation promotes "the crucible of adversarial testing on which [the Supreme Court] usually depend[s], along with the experience of our thoughtful colleagues on the district and circuit benches," all of which "could yield insights (or reveal pitfalls) [the Court] cannot muster guided only by [its] own lights." *Maslenjak v. United States*, 582 U.S. 335, 354 (2017) (Gorsuch, J., concurring in part). When it comes to laws protecting minors from sex-modifications procedures, that lower court process remains very much ongoing, with most cases still in the early stages. *See Rice v. Sioux City Mem'l Park Cemetery*, 349 U.S. 70,

77 (1955) (The Court "should not risk inconclusive and divisive disposition of a case when time may further illumine or completely outmode the issues in dispute.").

Relatedly, the Court has a settled "practice of waiting for a conflict to develop" among appellate courts before granting certiorari to resolve an issue. *United States v. Mendoza*, 464 U.S. 154, 160 (1984); *see* Sup. Ct. R. 10(a), (b). The United States (in its Background section) points out that, at the preliminary injunction stage, the Eighth Circuit had reached a different conclusion on equal protection scrutiny from the Sixth and the Eleventh Circuits. But it also acknowledges that the "[t]he Eighth Circuit recently granted the defendants' petition for initial hearing en banc" from the appeal of the final judgment (Motion 4)—a good sign that the Eighth Circuit may be changing its position. *See* Fed. R. App. P. 35(a). There is minimal likelihood that the Supreme Court would grant certiorari in a preliminary injunction case involving issues that continue to percolate in the courts of appeals and on which any circuit split seems likely to disappear shortly. The United States does not contend otherwise, or offer any reasoned argument on this point at all.

But pretend for a moment that the Court *were* to grant certiorari in one of the pending cases. Does the United States show that it is likely to convince five Justices that, contrary to what they *just* said in *Dobbs*, regulating sex-modification procedures "that only one sex can undergo" triggers equal protection "heightened constitutional scrutiny"? 597 U.S. at 236. Does the United States show that the Supreme

Court is *likely* to reject the reasoning of the Eleventh Circuit, the Sixth Circuit, and apparently at least five members of the Eighth Circuit[2]? Of course not—the United States says nothing about it, and that outcome is *not* "likely." Hence (presumably) the United States' refusal to ask the Supreme Court for an injunction pending appeal, even as its certiorari petition speaks of the purported "harm suffered by adolescents … denied critical medical care." Pet. for Writ of Cert. 32, *United States v. Skrmetti*, No. 23-477 (U.S. Nov. 6, 2023).[3]

In sum, and especially since the United States "has not articulated what the likelihood is that the Supreme Court grants certiorari, or that the Supreme Court will rule in its favor if certiorari is granted," "judicial economy will not be served by waiting an indeterminate amount of time for the Supreme Court to make a decision regarding [its] petition." *Tollefson*, 2022 WL 2782809, at *2.

## III. The United States Points To No Practical Relevance To Discovery Or Trial In This Case Of Its Desired Equal Protection-Only Appeals.

Even if the Supreme Court were to grant certiorari to decide the equal protection issue raised by the United States, that decision would not resolve the due process issue raised by Plaintiffs here. The United States "points to no authority for staying

---

[2] *See Brandt v. Rutledge*, No. 21-2875, 2022 WL 16957734, at *1 (8th Cir. Nov. 16, 2022) (Stras, J., dissenting from denial of rehearing en banc on the previous preliminary injunction appeal).

[3] *Dobbs* also means that due process claims raised by other litigants are unlikely to succeed at the Supreme Court. *See Eknes-Tucker*, 80 F.4th at 1224 (applying *Dobbs*, there is no parental "deeply rooted," "fundamental right to obtain a particular medical treatment for their children as long as a critical mass of medical professionals approve").

trial court proceedings while a litigant pursues certiorari review on a single issue in the case." *Crimson Yachts*, 2010 WL 2683341, at *1.

Putting that aside, "[t]he Eleventh Circuit disfavors the granting of a stay based on the Supreme Court's grant of certiorari." *Arkin v. Innocutis Holdings, LLC*, 176 F. Supp. 3d 1313, 1314 (M.D. Fla. 2016) (citing *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015)). A "grant of certiorari does not change the law." *Rutherford v. McDonough*, 466 F.3d 970, 977 (11th Cir. 2006). "Until the Supreme Court issues a decision that actually changes the law," courts "are duty-bound to apply [the Eleventh Circuit's] precedent and to use it and any existing decisions of the Supreme Court to measure the likelihood of a plaintiff's success on the merits." *Gissendaner*, 779 F.3d at 1284. Once again, *that* precedent holds that rational basis review applies. *Eknes-Tucker*, 80 F.4th at 1226, 1230.

That point brings us to an even more fundamental flaw with the United States' motion: all parties, including the United States, believe that they can prevail no matter the level of scrutiny, on equal protection or due process. At the preliminary injunction, the United States argued that "[e]ven if this Court were to apply only rational-basis review, S.B. 184's ban on gender-affirming medical care could not survive." Doc. 62-1 at 34. Conversely, Defendants have argued that the law survives any level of scrutiny. *See Eknes-Tucker*, 80 F.4th at 1234 (Brasher, J., concurring) ("[E]ven if Alabama's statute triggered intermediate scrutiny, it would likely survive

14

that heightened scrutiny."). Given that—and given that ongoing discovery could be pertinent to Plaintiffs' and the United States' own claims—it is hard to see why the level of scrutiny has much meaningful effect on factual development that will happen in the next few months. Certainly the United States' skeletal motion does not provide an answer. *Cf. Childress v. DeSilva Auto. Servs., LLC*, No. CIV 20-0136 JB\JHR, 2020 WL 3572909, at *15 (D.N.M. July 1, 2020) (denying stay motion where pending Supreme Court decision would not affect "other claims," so a stay would, "at best, only procrastinate the Court's work")

Again, that alone is reason to deny the motion: if the United States cannot explain how the Supreme Court's resolution of the narrow equal protection question would have *any* practical effect on the rest of discovery and trial, it is not entitled to a stay. And there is no need for the potentiality of Supreme Court review to complicate this case, particularly when binding Eleventh Circuit precedent answers the scrutiny question and the Court has the option of alternative holdings.

## IV.   A Stay Will Severely Prejudice Defendants And The Public, While The United States Points To Scant Harm From Continuing Proceedings.

The balance of harms and public interest also weigh strongly against the United States' stay. First, Defendants would be harmed in multiple ways by the United States' desired indefinite stay. Most obviously, given that this Court denied a stay of the preliminary injunction, absent intervention by another court, Defendants would labor for an indefinite period of time—years potentially—under an injunction

against enforcement of a state law ruled valid by binding circuit precedent. This is not just prejudice but an irreparable harm to both the State and vulnerable children who will be unlawfully sterilized without this law's enforcement. *See Eknes-Tucker*, 80 F.4th at 1225 ("[S]tates have a compelling interest in protecting children from drugs, particularly those for which there is uncertainty regarding benefits, recent surges in use, and irreversible effects."); *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018) (holding that State "would be harmed if it could not apply its own laws").

Defendants will also suffer harm from delay, even if the Eleventh Circuit (or Supreme Court) stays the preliminary injunction. "When evaluating stays, courts must also consider 'the danger of denying justice by delay.'" *Marti v. Iberostar Hoteles y Apartamentos S.L.*, 54 F.4th 641, 651 (11th Cir. 2022). Defendants (and Plaintiffs, for that matter) would "suffer[] an ever-mounting harm from each passing month without an opportunity to present [their] arguments in court." *Id.* There is a significant danger of mootness from a years-long delay in this case involving minors, risking a restart of the entire case. And the case itself casts doubt on the State's enforcement powers and its ability to enact and enforce related legislation.

Second, for similar reasons, the public interest is in clarity in the law—and enforcement of a valid law enacted by the public's representatives. *See Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (noting that state defendants' "interest and harm merge with the public interest."). "[S]tay[ing] proceedings every time

there is a relevant case pending before the Supreme Court or the [Eleventh] Circuit would not benefit the public welfare." *Tollefson*, 2022 WL 2782809, at *3. "Rather, litigation would often be delayed months or even years, resulting in prejudice to litigants and a significant backlog in the federal docket." *Id.* (cleaned up).

Third, the United States points to hardly any harm of its own from proceeding. To begin, the United States "chose to bring this lawsuit, and it is [its] responsibility to prosecute [its] claims." *Sanders v. Wal-Mart Stores E., LP*, No. 2:16-cv-637-WKW-GMB, 2017 WL 11747471, at *2 (M.D. Ala. May 18, 2017). Being required to prosecute a suit with "fact and expert discovery" (Motion 7) is not clear hardship. *See Crimson Yachts*, 2010 WL 2683341, at *3 ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." (cleaned up)).

In any event, the United States says it "will complete its production of documents" "regardless of whether the Court grants this motion" (Motion 2), so its only complaint is ongoing "expert discovery." Motion 8. According to the United States, "if uncertainty remains about the applicable standard of review," "this could necessitate additional expert discovery." *Id.* But there is no uncertainty: binding Eleventh Circuit precedent provides the applicable standard of review. And whatever the Supreme Court were to say about the only issue raised by the United States—equal protection scrutiny—there would still be any "uncertainty" about *due process scrutiny*. So the "substantial harm" invoked by the United States (*id.*) would be the same

even if we wait four years to continue this case. Nor even does the United States explain why its burden on expert discovery would be significant: the United States presents only two experts, whose reports are already submitted.

In short, the United States does not show "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. It cannot identify a single hardship that would be resolved by a stay, much less one that outweighs the prejudice to the parties and the judicial inefficiencies entailed by its indefinite stay.

## V.   The United States' Motion Is Untimely.

A final reason to deny the United States' motion is that it is untimely. Stays are matters of equity, and the Eleventh Circuit mandates a "strong presumption against the grant of dilatory equitable relief." *Grayson v. Allen*, 491 F.3d 1318, 1322, 1326 (11th Cir. 2007). The United States' arguments for a stay of litigation could have been made in near-identical fashion when the preliminary injunction here was initially appealed over 18 months ago. *See* Doc. 108. Then too, the "exceptional legal landscape [wa]s quickly evolving" and "the appropriate standard of review" was "unsettled and subject to active and ongoing appellate review." Motion 2. Only now, after Defendants have engaged in 18 months of discovery (and repeated motion practice to deal with the United States' evasive tactics), has the United States suddenly decided that the "landscape" requires a stay of all litigation.

That dilatory behavior disentitles the United States from a stay. It also distinguishes this case from those cited by the United States in Oklahoma, Tennessee, and Georgia, all of which were paused by the parties' agreement before discovery started and pending direct appeal (or, in Georgia, the Eleventh Circuit's resolution of this case)—and where the states' laws could be enforced in the meantime. Motion 10-11; *cf. Childress*, 2020 WL 3572909, at *12 (Courts "generally hesitate[] to stay discovery unless both parties agree to the stay.").[4]

Here, by contrast, discovery is nearing completion, the United States has not sought further review, and the only issue raised elsewhere by the United States would not meaningfully change discovery or trial. The more analogous case (though still far behind this case) would be Indiana's, where a preliminary injunction was entered six months ago and is on appeal before the Seventh Circuit, but no stay of proceedings has been entered (or sought). *K.C. v. Individual Members of the Med. Licensing Bd. of Ind.*, No. 23-cv-595 (S.D. Ind.).

What could explain the United States' sudden demand for a stay here, while it pushes the Supreme Court to take up a Sixth Circuit case in an interlocutory posture? The most apparent answer is that the United States *wants* the Supreme Court

---

[4] The other case cited by the United States is irrelevant: the stay there was not pending discretionary review in another case but instead was predicated on an already-argued appeal that was potentially dispositive. *See Robinson v. Nationstar Mortg., LLC*, 220 F. Supp. 3d 1353, 1354-55 (S.D. Ga. 2016).

to decide the issue on an incomplete record because the medical evidence is turning even more against the United States' position. Discovery in this very case continues to reveal uncomfortable facts about the scant evidentiary basis of sex-modification procedures in minors, American medical organizations' half-baked gender transitioning guidelines, and the federal government's own involvement. *See, e.g.*, Docs. 302, 325. From the United States' view, then, better to shut down discovery and hope for a quick ruling without a fulsome record. That, of course, is contrary to our system of justice, which depends on "full and truthful disclosure of critical facts" to reduce "the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony." *Taylor v. Illinois*, 484 U.S. 400, 411-12 (1988). This disclosure "is all the more critical in view of two realities": "the concept of gender dysphoria as a medical condition is relatively new and the use of drug treatments that change or modify a child's sex characteristics is even more recent." *L.W. v. Skrmetti*, 83 F.4th 460, 472 (6th Cir. 2023).

## CONCLUSION

The United States' gambit to avoid the facts via its motion for an indefinite stay of all litigation here should be denied.

Date: December 13, 2023

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF

system on December 13, 2023, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Defendants*
