## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| BRIANNA BOE, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Intervenor Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-184-LCB |
| | ) | |
| HON. STEVE MARSHALL, | ) | |
| in his official capacity as | ) | |
| Attorney General of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTIONS TO QUASH FILED BY NON-PARTIES EAGLE FORUM OF ALABAMA (DOC. 402) AND ALABAMA CITIZEN'S ACTION PROGRAM (DOC. 407)

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION .................................................................................1

BACKGROUND ..................................................................................2

LEGAL STANDARD............................................................................9

ARGUMENT .....................................................................................10

The Subpoenas Should Be Quashed Because They Seek Information That Is Not Relevant "To Any Party's Claim Or Defense."......................................10

I.    Plaintiffs Have Not Pled Allegations Of A Discriminatory Intent Claim ...........................................................................10

II.   Plaintiffs Cannot Amend Their Complaint At This Late Stage.............13

    A.   Plaintiffs Have Unduly Delayed ...................................14

    B.   Late Amendment Would Prejudice Defendants ...........................16

    C.   An *Arlington Heights* Amendment Would Be Futile ...................17

CONCLUSION....................................................................................20

CERTIFICATE OF SERVICE ............................................................21

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez*,
   585 U.S. 579 (2018) ............................................................................18

*Andrews v. Radiancy, Inc.*,
   No. 6:16-cv-1061, 2017 WL 552873 (M.D. Fla. Feb. 10, 2017) ......................16

*Blackburn v. Shire*,
   18 F.4th 1310 (11th Cir. 2021) ....................................................13, 14

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993)............................................................................15

*Brnovich v. Democratic Nat'l Comm.*,
   141 S. Ct. 2321 (2021)................................................................ 18, 19

*Burger King Corp. v. Weaver*,
   169 F.3d 1310 (11th Cir. 1999) ........................................................16

*Burgin v. Burlington Coat Factory*,
   No. 11-cv-753-JHH, 2013 WL 2444038 (N.D. Ala. June 4, 2013) ..................13

*Cardelle v. Miami Beach Fraternal Ord. of Police*,
   No. 11-cv-24273, 2013 WL 12077496 (S.D. Fla. Sept. 30, 2013),
   *aff'd*, 593 F. App'x 898 (11th Cir. 2014) ...........................................12

*Chavis v. Clayton Cnty. Sch. Dist.*,
   300 F.3d 1288 (11th Cir. 2002) ........................................................13

*Dep't of Com. v. New York*,
   139 S. Ct. 2551 (2019)........................................................................18

*DHS v. Regents of the Univ. of Cal.*,
   140 S. Ct. 1891 (2020)................................................................ 11, 17

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022)................................................................ 15, 17

*Easley v. Cromartie*,
    532 U.S. 234 (2001) .......................................................................................18

*Eknes-Tucker v. Governor of Ala.*,
    80 F.4th 1205 (11th Cir. 2023) .....................................................................15

*Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC*,
    710 F.3d 1221 (11th Cir. 2013) ....................................................................11

*Geduldig v. Aiello*,
    417 U.S. 484 (1974) .......................................................................................15

*GeorgiaCarry.Org, Inc. v. Georgia*,
    687 F.3d 1244 (11th Cir. 2012) ....................................................................11

*Gilmour v. Gates*,
    382 F.3d 1311 (11th Cir. 2004) ....................................................................12

*Greater Birmingham Ministries v. Sec'y of State for State of Ala.*,
    992 F.3d 1299 (11th Cir. 2021) ....................................................... 11, 16, 18, 19

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,
    439 F.3d 1286 (11th Cir. 2006) ....................................................................16

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
    No. 20-MD-2924, 2021 WL 2685605 (S.D. Fla. June 30, 2021) .......................16

*Jackson v. BellSouth Telecomms.*,
    372 F.3d 1250 (11th Cir. 2004) ....................................................................12

*Johnson v. Governor of State of Fla.*,
    405 F.3d 1214 (11th Cir. 2005) ....................................................................20

*Joiner v. Mason*,
    No. 2:09-cv-243-TFM, 2011 WL 2142768 (M.D. Ala. May 23, 2011) .............13

*L.W. v. Skrmetti*,
    83 F.4th 460 (6th Cir. 2023) .........................................................................19

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
    32 F.4th 1363 (11th Cir. 2022) ............................................................................18

*Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel.
    Univ. of S. Fla.*,
    342 F.3d 1281 (11th Cir. 2003) ............................................................................17

*Miller v. Johnson*,
    515 U.S. 900 (1995).............................................................................................18

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022)................................................................................................11

*Nolin v. Douglas Cnty.*,
    903 F.2d 1546 (11th Cir. 1990) ............................................................................16

*Parks v. City of Warner Robins*,
    43 F.3d 609 (11th Cir. 1995) ...............................................................................17

*Pernell v. Fla. Bd. of Governors of State Univ.*,
    84 F.4th 1339 (11th Cir. 2023) .........................................................................9, 18

*Tindol v. Ala. Dep't of Revenue*,
    No. 213-CV-92-WKW, 2015 WL 350623 (M.D. Ala. Jan. 23, 2015),
    *aff'd*, 632 F. App'x 1000 (11th Cir. 2015) .........................................................13

*Townson v. Garland*,
    No. 1:22-cv-00251-KD, 2023 WL 3183311 (S.D. Ala. May 1, 2023) ........16, 17

*Trask v. Olin Corp.*,
    298 F.R.D. 244 (W.D. Pa. 2014) ............................................................................9

*United Oil Co. v. Parts Assocs., Inc.*,
    227 F.R.D. 404 (D. Md. 2005) ...............................................................................9

*Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*,
    429 U.S. 252 (1977).............................................. 1, 4, 5, 11, 12, 14-18

*Weiner v. Carnival Cruise Lines*,
    No. 11-cv-22516, 2012 WL 5199604 (S.D. Fla. Oct. 22, 2012)........................13

**Acts**

Alabama Vulnerable Child Compassion and Protection Act ....................................6

**Rules**

Fed. R. Civ. P. 26 ...............................................................................9, 10

Fed. R. Civ. P. Rule 26(b)(1) ........................................................ 9, 10, 13

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................10

**Other Authorities**

World Health Org., *WHO development of a guideline on the health of trans and gender diverse people* 3 (2024), https://perma.cc/HR4L-B4GD.......................19

# INTRODUCTION

For nearly two years now, the parties have litigated this case based on the Plaintiffs' claims that Alabama's law protecting children from sex-modification procedures violates the Fourteenth Amendment based on the law's textual commands. Never have the Plaintiffs offered allegations suggesting that the law is unconstitutional because the Alabama legislature had a supposedly discriminatory intent. They told the Eleventh Circuit they were making no such claim. And when the United States sent out third-party subpoenas in search of an apparent discriminatory intent theory, Defendants explained that the United States had expressly limited itself to Plaintiffs' claims—and that Plaintiffs were not asserting a discriminatory intent claim. Plaintiffs did not disagree—they said nothing. The Court quashed the subpoenas, and the United States has not pursued the matter further. The Plaintiffs amended their complaint several times, never offering allegations related to an *Arlington Heights* claim.

Now, after 18 months of discovery, Plaintiffs seem to be aiming at a new claim based on hidden discriminatory legislative intent, using copycat subpoenas directed at even more private citizens. It is far, far too late in the game for Plaintiffs to seek discovery to advance a completely new claim. Plaintiffs have not amended their complaint with any new factual allegations to support a discriminatory intent theory, nor would they be entitled to at this late stage. Discovery is nearly over, and

Defendants have had no opportunity to gather evidence to rebut Plaintiffs' claim because it has never been alleged. And amending would be futile because Plaintiffs cannot meet the extraordinarily high standard to establish discriminatory intent of the Legislature as a whole—particularly since nearly half of the States now have similar laws protecting children.

As a result, the discovery Plaintiffs seek is wholly irrelevant to the merits of this case. The Court should quash the subpoenas.

## BACKGROUND

On April 19, 2022, Plaintiffs filed their first complaint, which alleged that the law "intrud[es] upon parents' fundamental right to direct the upbringing of their children" and "prohibits [transgender minors] from obtaining medically necessary treatment based on their sex and transgender status." Doc. 1 ¶¶ 97, 102. The complaint said nothing about hidden intent, motive, or pretext. Neither did Plaintiffs' preliminary injunction papers, which emphasized the text and effects of Alabama's law—not intent or pretext. *E.g.*, Doc. 8 at 19, 22 ("The Act's discrimination against transgender people is apparent on its face."); *see* Doc. 89.

The United States intervened, and its complaint too alleged no facts supporting a supposed discriminatory legislative intent. Doc. 58-3; Doc. 92. In its preliminary injunction motion, it vaguely alluded to a purported theory about "an intent to target transgender minors." Doc. 62-1 at 13. Plaintiffs said nothing about this theory.

Indeed, on appeal of the preliminary injunction, Plaintiffs told the Eleventh Circuit in no uncertain terms that "[t]here is no need to do a pretext analysis; the intention is clear on the face of the Act." Corrected Response Brief for Appellees 56, *Eknes-Tucker v. Governor of the State of Ala.*, No. 22-11707(11th Cir. Aug. 17, 2022). They emphasized this point even as the United States again briefly suggested a pretext analysis. *See* Brief for the United States as Intervenor-Appellee 48-49, *id.*, (11th Cir. Aug. 10, 2022) ("Several of the law's proponents made comments reflecting moral disapproval of transgender persons….").

At about the same time, the United States sent out third-party subpoenas to groups of private citizens, including Eagle Forum of Alabama and Southeast Law Institute, in apparent pursuit of a discriminatory intent claim against the law. Docs. 151, 152. Seeking to forestall this intrusive discovery about an unpled claim, Defendants moved for partial judgment on the United States' pleadings. The opening line of that motion explained the issue: "Looming on the horizon in this case is a discovery battle involving significant questions of government privilege, First Amendment rights, and principles of federalism—all due to the federal government's apparent, yet unpled, theory that the legislators of Alabama enacted the Vulnerable Child Compassion and Protection Act with the subjective intent of discriminating against transgender persons." Doc. 157 at 1. As that motion explains in detail, "the federal government promised that its claim was 'based on the same facts' as

3

Plaintiffs' claims, Doc. 58-1 at 9 n.2, and that it would 'not raise any new claims,' Doc. 65 at 3." *Id.* at 4. And "the entirety of the federal government's complaint, like Plaintiffs' complaint, rested on the effect of the Act based on the face of the law." *Id.* "After the preliminary-injunction briefing, both Plaintiffs and the federal government amended their complaints," and still neither "make any reference to 'pretext' or intentional discrimination." *Id.* at 5-6. The complaints "allege no facts related to the motives—public or private—of Alabama's legislators or government officials. And they do not even mention the public statements the federal government cited in its preliminary-injunction memorandum or allege any comparable facts." *Id.* at 6. The Defendants explained that "the only claim that would arguably justify the discovery requests propounded by the federal government is a claim that no party has alleged"—"an *Arlington Heights* claim." *Id.* at 11.

The Defendants' brief in support of the Eagle Forum and SLI's motion to quash reiterated the point: "neither Plaintiffs nor the federal government has plausibly alleged intentional discrimination by the Alabama Legislature." Doc. 158-1 at 16. Eagle Forum and SLI too pointed out that "the private plaintiffs in this case on whose behalf the DOJ purportedly intervened have already acknowledged to the Eleventh Circuit that '[t]here is no need to do a pretext analysis.'" Doc. 176 at 16.

Plaintiffs did not oppose any of these arguments. They did not disagree with Defendants' explanation of their claims and allegations. They did not claim that they

had pled a discriminatory intent claim. They did not try to point to allegations in their complaint that would have supported such a claim. Instead, they sat silent. And the United States—whose own claim depended on what the Plaintiffs had pled since it had limited itself to such a claim when it intervened—did not argue that Plaintiffs had pled such a claim, either.

On notice that Defendants were definitely *not* on notice about any *Arlington Heights*-type claim, Plaintiffs then filed a second amended complaint that still alleged no facts suggesting a discriminatory legislative intent claim. *See* Doc. 159. Like the initial complaints, this operative complaint and the United States' amended complaint (Doc. 92) rest exclusively on the effect of the Act based on its plain text. Neither complaint alleges any facts related to the motives—public or private—of Alabama's legislators or government officials. They do not even mention the public statements that the federal government cited at the preliminary-injunction stage or allege any comparable facts.

At the hearing on Eagle Forum's and SLI's motions to quash, this Court noted its "initial reaction" to the United States' subpoenas: "[H]ow in the world could what the Department of Justice is asking for possibly be relevant to this case and its outcome?" Doc. 191 at 9:17-19. Counsel for Eagle Forum and SLI explained in detail why "all the things in our file have nothing whatsoever to do with the ultimate issue." *Id.* at 20-21. And counsel for Defendants explained that "the subjective motivations

of any one of the 140 members of the Legislature or the Governor, or of her staff," simply did not matter to the legal question at issue. *Id.* at 36:16-18.

As for counsel for Plaintiffs, they sat mum. Counsel appeared at the hearing and did nothing to dispute Defendants' characterization of the legal question put before the Court by Plaintiffs' complaint. Certainly they did not suggest that the documents the United States had sought were relevant to their case, much less that they would be sending their own subpoenas seeking the same materials.

The Court granted the motions to quash. Doc. 192. As the Court explained, the requested "materials are unlikely to reveal or lead to any information that would help resolve the fundamental issue in this case, which is whether Section 4(a)(1)-(3) of the Alabama Vulnerable Child Compassion and Protection Act is constitutional under the Fourteenth Amendment." *Id.* at 5. Though the Court's order left open the possibility that the United States could "issu[e] a new subpoena that is far more narrowly tailored," *id.* at 6, the United States never did so. Neither did Plaintiffs then serve any third-party subpoenas in pursuit of a discriminatory legislative intent claim. This order was entered *16 months ago*, on October 24, 2022.

The Court later held a hearing on Eagle Forum and SLI's motion for sanctions. The United States averred that it had "taken [the Court's ruling] to heart" and "are not seeking to challenge or have this Court reconsider its prior ruling in any way." Doc. 246 at 10:15-19. The Court also denied Defendants' motion for partial

judgment on the pleadings, finding that Defendants' concern that "the federal government has alleged no facts supporting a theory that would justify the[] discovery requests" had in essence become moot by the United States' promise that it "d[id] not intend to make" requests "directed toward Alabama legislators and their constituents" "moving forward." Doc. 278 at 1-2. With no discovery "request before the Court" left pending, the Court found that "Defendants' motion—at its core—present[ed] no judiciable issue." *Id.* at 2.

Since then, discovery has proceeded on the claims pled by Plaintiffs and the United States, without suggestion of a return to an unpled discriminatory intent theory. The initial scheduling order required amended pleadings to be filed by August 5, 2022 (Doc. 135), and the first amended scheduling order did not change that deadline but prescribed deadlines for discovery, expert testimony, and trial. Doc. 199. Under the operative order, discovery must be completed in less than two months, by April 14, and all dispositive motions filed by May 12. Doc. 386. Expert witness disclosures were already due. *Id.* Trial is scheduled to begin August 12. *Id.*

Out of the blue and without explanation, on January 31, 2024—16 months after the Court rejected the United States' effort to intrusively subpoena two citizen groups' private communications with legislators—Plaintiffs tried exactly what this Court strongly told the United States that it could not do. Plaintiffs provided Defendants with notices of subpoenas on *eight* private organizations, including Eagle Forum

of Alabama.[1] Each subpoena demands "[c]ommunications (including any attachments thereto) sent or received between" the group, anyone "affiliate[d]" with the group, or anyone "acting or purporting to act for" the group "and any of (i) a current or former member of the Alabama Legislature, (ii) his or her staff, or (iii) any other Alabama public official, regarding SB184, HB266, or any related or predecessor legislative bill in Alabama, sent or received between January 1, 2018 and April 7, 2022." Doc. 402-1 at 4, 9. The demand is no different from the ones quashed by this Court. *E.g.*, Doc. 151-1 at ¶ 4 (seeking "[a]ny documents provided to the Alabama State Legislature or any employee or member thereof in support of VCAP, SB 184, HB 266, or any predecessor bills"); ¶ 5 ("demanding "[a]ny communications between Eagle Forum of Alabama and any employee, agent, assign, or member of the Alabama State Legislature, Alabama Governor's Office," etc.).

Once again, Eagle Forum—now joined by a new group, Alabama Citizens Action Program (ALCAP)—has been forced to move to quash. Docs. 402 & 407. Defendants support these motions, for all the same reasons articulated at length with respect to the similar subpoenas issued by the United States and quashed by this

---

[1] Other groups targeted were Alabama Citizens Action Program; Alabama Policy Institute; American College of Pediatricians; American Principles Project; Independent Women's Forum; Moms for Liberty; and Society for Evidence Based Gender Medicine.

Court. *See generally* Doc. 158-1.[2] Defendants write separately to explain why none of the discovery Plaintiffs seek is relevant to the claims they have pled.

## LEGAL STANDARD

Under Rule 26(b)(1), discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26 thus ties relevance directly to the "party's claim or defense." *See Trask v. Olin Corp.*, 298 F.R.D. 244, 263 (W.D. Pa. 2014) ("To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings."). And "[t]he commentary to the 2000 amendments to Fed. R. Civ. P. 26 admonishes courts to 'focus on the actual claims and defenses involved in the action' in determining relevance." *United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 410 (D. Md. 2005). Thus, if a matter is not directly tied to a party's pleaded claim, then it is

---

[2] As explained in Defendants' prior brief, these subpoenas should be quashed for at least three reasons. *First*, "subjecting private citizens to compulsory process merely for joining to speak out on matters of public concern is a stark infringement of First Amendment rights," as Plaintiffs "cannot show any compelling need" for information irrelevant to their claims. Doc. 158-1 at 10. *Second*, "the legislative privilege would block these subpoenas' demands for legislative communications even if the evidence sought were relevant to any claim." *Id.* at 11; *see generally Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1343-45 (11th Cir. 2023) (explaining that "any material, documents, or information that goes to legislative motive is covered by the legislative privilege" and "reject[ing] the plaintiffs' argument that the privilege must give way when the claim depends on proof of legislative intent" (cleaned up)). And Plaintiffs may not "obtain indirectly—via third-party subpoena—information that [they] cannot obtain directly from a legislator." Doc. 158-1 at 13. *Third*, as explained below, the subpoenas seek information that is not relevant to the claims pled.

not relevant under Rule 26. And the Court "must limit" discovery that is not relevant or is otherwise "outside the scope" of the parameters set by the Rule. Fed. R. Civ. P. 26(b)(2)(C).

## ARGUMENT

**The Subpoenas Should Be Quashed Because They Seek Information That Is Not Relevant "To Any Party's Claim Or Defense."**

The Court should quash Plaintiffs' subpoenas to Eagle Forum, ALCAP, and the other six private organizations because the information Plaintiffs seek in the subpoenas—communications with Alabama legislators and other government officials—is not relevant to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This is so for two primary reasons. First, Plaintiffs have never pled factual allegations that would support a claim of discriminatory intent by the Alabama Legislature, and that is the only kind of claim for which the evidence Plaintiffs seek could possibly be relevant. And second, Plaintiffs cannot amend their complaint now to include such a claim because doing so comes far too late in this litigation, would prejudice Defendants, and would be futile. The Court should thus quash the subpoenas.

## I.   Plaintiffs Have Not Pled Allegations Of A Discriminatory Intent Claim.

In all their complaints, Plaintiffs have never alleged facts that would put Defendants on notice that they must defend against a claim of discriminatory legislative intent. That is the only kind of claim that would even arguably support discovery requests like those propounded by Plaintiffs. *See Vill. of Arlington Heights v. Metro.*

10

*Housing Dev. Corp.*, 429 U.S. 252 (1977). Under this type of claim, potentially "relevant evidentiary factors for determining whether" "discriminatory intent existed" include "'[t]he historical background of the decision,' '[t]he specific sequence of events leading up [to] the challenged decision,' '[d]epartures from the normal procedural sequence,' and 'contemporary statements by members of the [Legislature], minutes of its meetings, or reports.'" *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1321 (11th Cir. 2021) ("*GBM*") (quoting *Arlington Heights*, 429 U.S. at 267-68). "To plead" an *Arlington Heights* claim, "a plaintiff must raise a plausible inference that an 'invidious discriminatory purpose was a motivating factor' in the relevant" law. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020) (quoting *Arlington Heights*, 429 U.S. at 266).

The Eleventh Circuit has admonished district courts *not* "to ignore what the respective parties alleged in their complaint and answer." *Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227 (11th Cir. 2013). Yet here, one "searche[s] the Amended Complaint to no avail in an attempt to find factual allegations that could possibly be construed as alleging" a discriminatory legislative intent theory. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 (11th Cir. 2012).[3] Plaintiffs' complaint—amended multiple times—does not even offer the

---

[3] Abrogated on other grounds by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

bare legal conclusion that the Alabama Legislature passed the Act with a discriminatory motive or animus. It says nothing about the legislative process except that "[o]n April 8, 2022, Governor Kay Ivey signed the Act into law." Doc. 159 ¶ 37. That's it.

"Pleadings must be something more than an ingenious academic exercise in the conceivable," and "[t]he liberal standard of notice pleading still requires a plaintiff to provide the defendant with fair notice of the factual grounds on which the complaint rests." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1271 (11th Cir. 2004). To the extent Plaintiffs meant to bring a discriminatory intent claim, the facts and "claims set forth in the complaint" provided Defendants "no notice" of that, nor of the factual grounds on which that claim would rest. *Gilmour v. Gates*, 382 F.3d 1312, 1315 (11th Cir. 2004). And "[i]f Plaintiffs believed that their complaint was insufficient in stating all claims for relief, Rule 15 clearly sets forth the process of amending, which the Plaintiffs surely realize, as they took advantage of this process in amending their original complaint." *Cardelle v. Miami Beach Fraternal Ord. of Police*, No. 11-cv-24273, 2013 WL 12077496, at *2 n.3 (S.D. Fla. Sept. 30, 2013), *aff'd*, 593 F. App'x 898 (11th Cir. 2014); *see* Doc. 143.

Having failed to amend their complaints to include allegations for an *Arlington Heights* claim, Plaintiffs cannot now seek evidence that would only be relevant for such a claim. And they have no basis to seek communications of legislators, their

staff, or other officials within the Alabama government. It would be improper to consider evidence on this unpled claim at summary judgment or trial,[4] so the Court should not allow Plaintiffs to burden third parties to provide it. It is not relevant to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

## II.   Plaintiffs Cannot Amend Their Complaint At This Late Stage.

Plaintiffs cannot make the information they seek relevant by "amending [their] complaint through argument at this stage in the proceedings." *Tindol v. Ala. Dep't of Revenue*, No. 213-CV-92-WKW, 2015 WL 350623, at *13 (M.D. Ala. Jan. 23, 2015), *aff'd*, 632 F. App'x 1000 (11th Cir. 2015). Nor should they be allowed to formally amend their complaint. "When deciding whether to grant leave to amend, a court considers five factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, and (5) futility." *Blackburn v. Shire*, 18 F.4th 1310, 1317-18 (11th Cir. 2021). All disfavor allowing Plaintiffs to amend their complaint on the eve of dispositive motions.

---

[4] *See, e.g.*, *Joiner v. Mason*, No. 2:09-cv-243-TFM, 2011 WL 2142768, at *6 n.6 (M.D. Ala. May 23, 2011) ("[T]o the extent Plaintiff presents new claims for relief or factual allegations … and/or additional theories of liability," "such claims are not properly before the court" because the Plaintiff "'did not seek to amend his complaint to add a claim based on the asserted conduct.'" (quoting *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002))); *Burgin v. Burlington Coat Factory*, No. 11-cv-753-JHH, 2013 WL 2444038, at *11 (N.D. Ala. June 4, 2013) (Because the "Complaint does not include a claim of disability discrimination," "any and all claims regarding her alleged disability is not before the court."); *Weiner v. Carnival Cruise Lines*, No. 11-cv-22516, 2012 WL 5199604, at *5 (S.D. Fla. Oct. 22, 2012) ("Even if such a theory were viable, [the plaintiff] never pled it.").

### A.     Plaintiffs Have Unduly Delayed.

Two circumstances establish undue delay and potential dilatory motives here: (1) Plaintiffs had "ample opportunity" to plead an *Arlington Heights* claim, and (2) they instead "sat idly by" as Defendants pointed to Plaintiffs' *lack* of an *Arlington Heights* claim to argue against the United States' discovery efforts on this theory. *Blackburn*, 18 F.4th at 1318. It would be inequitable to allow Plaintiffs to amend their complaint now.

First, if Plaintiffs wished to offer allegations supporting an *Arlington Heights* claim, nothing prevented them from doing so. Plaintiffs cannot say that the facts underlying the law's development changed. The latest subpoenas confirm the point, seeking evidence before the bill's passage. Doc. 402-1 at 6 (seeking evidence "between January 1, 2018 and April 7, 2022"). Yet even after amending their complaint multiple times, Plaintiffs (like the United States) have never offered allegations going toward an *Arlington Heights* claim. Nor can Plaintiffs claim that an *Arlington Heights* claim is hidden somewhere within their existing Equal Protection Clause claim, as though every claim brought under the Equal Protection Clause houses all sorts of derivative claims, be it *Arlington Heights* or alleged race discrimination.

Factual allegations in pleadings matter, and Plaintiffs have alleged no facts support-

ing a claim of discriminatory intent by the Alabama Legislature.[5]

*Second*, as detailed above, Plaintiffs sat silent when Defendants said over and

over that the United States could not seek evidence related to an (unpled) *Arlington*

*Heights* claim because (1) the federal government limited its intervention to Plain-

tiffs' claims and (2) Plaintiffs did not have any claim under *Arlington Heights*. Doc.

157 at 4-6; Doc. 158-1 at 16; Doc. 200 at 1. Plaintiffs saw all this briefing. They

were at the hearings. And they never once objected. They never supported the United

States' intrusive demands. They never said they wanted the same information. They

said nothing about Defendants' understanding of their claims and allegations. They

said and did *nothing*. Then, 16 months later and without discussion with Defendants,

they served *eight* materially identical third-party subpoenas, apparently in pursuit of

---

[5] Nor can the Plaintiffs say that the relevant *Arlington Heights* legal framework has changed in any way. The Eleventh Circuit's decision in this case confirms that. In its opinion vacating the preliminary injunction, the Eleventh Circuit emphasized that "the regulation of a course of treatment that only gender nonconforming individuals can undergo would not trigger heightened scrutiny unless the regulation were a pretext for invidious discrimination against such individuals. And the district court did not find that Alabama's law was based on invidious discrimination." *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1229-30 (11th Cir. 2023). The Eleventh Circuit broke no new ground in its ruling. *See, e.g.*, *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 236 (2022) ("The regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny unless the regulation is a 'mere pretex[t] designed to effect an invidious discrimination against members of one sex or the other.'" (quoting *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974))); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271-72 (1993) (explaining burden of proving "discriminatory purpose" in Equal Protection Clause challenge). Plaintiffs have *always* been on notice of this longstanding rule and had ample time to plead facts if they wanted to bring a "discriminatory purpose" claim. They chose not to.

an *Arlington Heights* claim. At minimum, this conduct shows undue and inexplicable delay.[6]

## B.    Late Amendment Would Prejudice Defendants.

"The introduction of new legal theories at a later stage of proceedings amounts to undue prejudice." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 2685605, at *11 (S.D. Fla. June 30, 2021). That is because Defendants have had "no notice whatsoever that [Plaintiffs] believed [they] w[ere] entitled to" relief based on an *Arlington Heights* theory. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). Absent that notice—and particularly given that the United States dropped its similar discovery efforts 16 months ago, and nothing has changed since then—the Defendants had no reason to seek or develop evidence related to an *Arlington Heights* claim. "The *Arlington Heights* factors" often "require a fact intensive examination of the record." *GBM*, 992 F.3d at 1322 n.33. Thus, a late amendment could well necessitate "more attempts at discovery"—including reopening the depositions of Plaintiffs at a time when the parties have 11

---

[6] *See Nolin v. Douglas Cnty.*, 903 F.2d 1546, 1551 (11th Cir. 1990) ("This court has found delay to be undue where both the parties and the court were fully prepared for trial and the addition of a new claim would have re-opened the pretrial process and delayed the trial and [where the plaintiff's] attorney had sufficient opportunity to request a timely amendment before the pretrial order had been submitted." (cleaned up)); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (similar); *Townson*, 2023 WL 3183311, at *4 (emphasizing that "the proposed amendment is not based on newly discovered facts," and "Plaintiff has made no effort to explain the failure to include the new theories/claims in the original complaint"); *Andrews v. Radiancy, Inc.*, No. 6:16-cv-1061, 2017 WL 552873, at *2 (M.D. Fla. Feb. 10, 2017) ("An inference of bad faith sufficient to deny leave to amend may arise when a movant fails to include known facts in an initial complaint as a 'tactical maneuver[] to force the court to consider various theories seriatim.'").

expert depositions scheduled—and a "delayed disposition of the case," both amounting to prejudice to Defendants. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003); *see Townson v. Garland*, No. 1:22-cv-00251-KD, 2023 WL 3183311, at *4 (S.D. Ala. May 1, 2023).

### C.   An *Arlington Heights* Amendment Would Be Futile.

Most fundamentally, Plaintiffs cannot adequately allege an *Arlington Heights* claim. The Supreme Court "has long disfavored arguments based on alleged legislative motives." *Dobbs*, 597 U.S. at 253 (collecting cases). It "has recognized that inquiries into legislative motives are a hazardous matter"; "[e]ven when an argument about legislative motive is backed by statements made by legislators who voted for a law," courts "have been reluctant to attribute those motives to the legislative body as a whole." *Id.* at 253-54 (cleaned up). "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Id.* at 254 (cleaned up); *see generally* Doc. 171 at 17-19 (collecting cases).

"To plead" an *Arlington Heights* claim, "a plaintiff must raise a plausible inference that an 'invidious discriminatory purpose was a motivating factor' in the relevant decision." *Regents*, 140 S. Ct. at 1915 (quoting *Arlington Heights*, 429 U.S. at 266); *see Parks v. City of Warner Robins*, 43 F.3d 609, 617-18 (11th Cir. 1995). Only in "extraordinary instances" "might" a plaintiff go beyond publicly available

documents in discovery, *Arlington Heights*, 429 U.S. at 268, on a "strong showing of bad faith or improper behavior," *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573-74 (2019). And even then, the legislative privilege would protect much of the hypothetical evidence that could undergird any such claim. *See Pernell*, 84 F.4th at 1345 (rejecting argument "that the privilege must give way when the claim depends on proof of legislative intent"); *supra* n.2; Doc. 158-1 at 11-15.

Crucially, "when a court assesses whether a duly enacted statute is tainted by discriminatory intent, 'the good faith of the state legislature must be presumed.'" *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1373 (11th Cir. 2022) (per curiam) (quoting *Abbott v. Perez*, 585 U.S. 579, 603 (2018)). This presumption applies at every stage of litigation. *Miller v. Johnson*, 515 U.S. 900, 917 (1995). Under the "demanding" "burden of proof," *Easley v. Cromartie*, 532 U.S. 234, 241 (2001), a plaintiff must allege and then show that "the intent of the legislature" as a whole was discriminatory—a showing that is "near-impossible" given a body the size of the Alabama Legislature. *GBM*, 992 F.3d at 1324; *see id.* at 1325 (focusing on "*the* legally dispositive intent of the entire body of the Alabama legislature"). It is not enough to prove the motives of only a handful of the bill's backers, for "the legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021). The same is even more true of the motivations of third-party organizations

that may have lobbied for a particular bill. "It is insulting to suggest that [legislators] are mere dupes or tools." *Id.*

Thus, even if Plaintiffs amended their complaint, they could not adequately allege invidious legislative discrimination, much less show the extraordinary circumstances necessary for discovery beyond public materials. The United States already took a run at briefing a simulacrum of a discriminatory intent claim in its preliminary injunction motion. *See* Doc. 62-1 at 6-8, 18. And as Defendants showed, that cursory effort to mischaracterize the quotes of one legislator and the Governor did not suggest any invidious discrimination, much less Legislature-wide discrimination. *See* Doc. 74 at 93-94 & n.63; *see also GBM*, 992 F.3d at 1324 ("The vote of a sponsor is only one vote of the 105 votes in the Alabama House of Representatives."). Alabama's law was passed in the ordinary course, and at least 20 other states have similar laws protecting children. *See L.W. v. Skrmetti*, 83 F.4th 460, 471 (6th Cir. 2023). Any claim that these laws were all the result of discriminatory legislative intent blinks reality. *Cf. id.* at 478 ("Neither risk aversion nor a fair-minded policy dispute about the best way to protect children shows animus.").[7] In short, neither Plaintiffs nor the United States can "allege[] facts that, if true, would be sufficient to

---

[7] As just one example, even the World Health Organization recently concluded that "the evidence base for children and adolescents is limited and variable regarding the longer-term outcomes of gender affirming care for children and adolescents." World Health Org., *WHO development of a guideline on the health of trans and gender diverse people* 3 (2024), https://perma.cc/HR4L-B4GD.

establish intentional discrimination" by the Alabama Legislature. *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1218 (11th Cir. 2005). That makes the discovery Plaintiffs now seek irrelevant.

## CONCLUSION

For these reasons, the Court should quash Plaintiffs' third-party subpoenas.

Date: February 23, 2024

Respectfully submitted,

Steve Marshall
   *Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
   *Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
   *Principal Deputy Solicitor General*

James W. Davis (ASB-4063-I58J)
   *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
   *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF

system on February 23, 2024, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Defendants*
