**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

BRIANNA BOE, et al.,                              :
:
     Plaintiffs,                               :
:
and                                               :
:
UNITED STATES OF AMERICA,                          :    CIVIL ACTION NO.
:    2:22-CV-000184-LCB-SRW
     Plaintiff-Intervenor,                    :
:
v.                                                :
:
Hon. STEVE MARSHALL, in his                       :
official capacity as Attorney General of          :
the State of Alabama, et al.                      :
:
     Defendants.                              :

---

**PRIVATE PLAINTIFFS' OPPOSITION TO NON-PARTY EAGLE FORUM
OF ALABAMA'S MOTION TO QUASH AND MOTION FOR SANCTIONS**

Private Plaintiffs submit this Opposition to Non-Party Eagle Forum of

Alabama's ("Eagle Forum") Motion to Quash and Motion for Sanctions (ECF No.

402), respectfully showing the Court as follows:[1]

In granting Eagle Forum's motion to quash a broad, eleven-category subpoena

that the United States served on it earlier in this case, this Court expressly stated that

"[n]othing in this order prohibits the Government," or presumably another party,

"from issuing a new subpoena that is far more narrowly tailored" than the subpoena

---

[1] Because the subpoena at issue required compliance in the Northern District of Alabama, Eagle Forum should have filed its motion there. *See* Fed. R. Civ. P. 45(d)(3). Nevertheless, because the matter then could have been transferred to this Court pursuant to Fed. R. Civ. P. 45(f), Private Plaintiffs do not oppose Eagle Forum's motion on jurisdictional grounds.

the United States had served. ECF No. 192 at 6. That is precisely what Private Plaintiffs did on February 6, when they served a "far more narrowly tailored" subpoena on Eagle Forum, consisting of just a single document request seeking communications sent or received between Eagle Forum and any Alabama legislator or Alabama public official, over a limited time period, that relate to the specific legislation Private Plaintiffs challenge in this case.

Despite Private Plaintiffs' attempts to minimize the burden on Eagle Forum by serving a single, narrowly tailored document request, Eagle Forum contends that the Court should quash the subpoena at issue "for the same basic reasons as the previous subpoena issued by the U.S." Mot. at 5. But Eagle Forum's attempt to equate the United States' eleven-category subpoena with Private Plaintiffs' single document request ignores significant differences that weigh in favor of the Court reaching a different result here:

- Unlike the United States, Private Plaintiffs first sought the documents at issue from Defendants, but Defendants have refused to produce them, claiming they are not within their possession, custody, or control;

- Unlike the United States, Private Plaintiffs seek only communications with public officials, not internal Eagle Forum communications or other internal Eagle Forum documents; and

- Unlike the United States, Private Plaintiffs served their subpoena after the

Eleventh Circuit issued its opinion reversing this Court's Order granting

Plaintiffs' motion for preliminary injunction, which adopted a different

analysis of the standard of review than this Court had previously adopted,

and thereby materially changed the evidence Plaintiffs will need to present

to support their claims.

Eagle Forum's motion does not grapple with any of these differences and instead contends that Private Plaintiffs' subpoena should be quashed for the same reasons that the Court quashed the United States' much broader subpoena. For the reasons explained below, Eagle Forum's motion should be denied.

## **BACKGROUND AND PROCEDURAL HISTORY**

### A.    *Plaintiffs' Claims*

Private Plaintiffs and the United States challenge the constitutionality of Alabama's Vulnerable Child Compassion and Protection Act (the "Act"), which was passed by the Alabama Legislature on April 7, 2022, and signed into law by the Governor on April 8, 2022. Second Am. Compl. ("SAC"), ECF No. 159, ¶ 1. Plaintiffs allege that the Act—which criminalizes certain medical treatments that are widely accepted as the standard of care for treatment of gender dysphoria in minors—violates guarantees of due process and equal protection, which are protected by the Fourteenth Amendment to the United States Constitution.

B.    *The Preliminary Injunction and Defendants' Appeal*

This Court preliminarily enjoined Defendants from enforcing much of the Act in an Order dated May 13, 2022. ECF No. 107. Among other things, the Court concluded that the Act was subject to heightened scrutiny, that Defendants failed to show an "exceedingly persuasive justification" for the Act's sex-based classification, and that Plaintiffs were "substantially likely to succeed on their Equal Protection Claim." *Id.* at 21–24.

Defendants appealed the Court's Order on May 16, 2022. ECF No. 108. On August 21, 2023, the Eleventh Circuit reversed, concluding that the Act "is best understood as a law that targets specific medical interventions for minors, not one that classifies on the basis of any suspect characteristic." *Eknes-Tucker v. Gov. of Ala.*, 80 F.4th 1205, 1227 (11th Cir. 2023). Accordingly, the Eleventh Circuit found that the Act is "subject only to rational basis review" unless Plaintiffs can prove that the Act is "a pretext for invidious discrimination against [gender nonconforming] individuals." *Id.* at 1229–30 (*quoting Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228, 2245–46 (2022)).

C.    *Discovery Undertaken to Date*

While Defendants' appeal was pending, Private Plaintiffs served requests for production on Defendants seeking, among other things, documents related to the Act, including communications between Alabama legislators and third parties, and

documents the Alabama Legislature "received, reviewed, considered, or relied on …
in contemplating, drafting, proposing, debating, amending, modifying, or enacting"
the Act. Ex. A, Defs.' Resp. and Obj. to Private Plaintiffs' Requests for Production
of Documents Nos. 2, 5–7. Defendants objected to these requests on various
grounds, including that Defendants "do not have 'control,' within the meaning of the
Federal Rules of Civil Procedure, over documents that are held by" the Alabama
Legislature. *Id.* at 3. Despite Private Plaintiffs' attempts to obtain the documents
they now seek from Eagle Forum by serving discovery on Defendants, Defendants
have not produced a single document responsive to those specific requests and have
produced only 113 documents consisting of 2,018 pages.

By contrast, Defendants have received extensive discovery from Private
Plaintiffs, the United States, and various third parties. Private Plaintiffs have
produced at least 519 documents consisting of 5,660 pages. The United States
Department of Health and Human Services has produced at least 6,096 documents
consisting of 168,972 pages. And various non-parties have also made substantial
document productions in response to third-party subpoenas issued by Defendants,
including the World Professional Association for Transgender Health, which has
produced at least 4,138 documents consisting of 101,726 pages.

D.    *The United States' Prior Subpoena to Eagle Forum*

On August 9, 2022, the United States served a subpoena on Eagle Forum

seeking production of documents responsive to eleven broad requests. In addition to communications with legislators and other public officials, the United States' subpoena sought documents responsive to ten additional categories, including: (1) draft and proposed legislation; (2) materials Eagle Forum considered when proposing such legislation; (3) documents concerning Eagle Forum's legislative or policy goals; (4) documents provided to the Alabama legislature; (5) communications between Eagle Forum and other non-governmental organizations; (6) meeting minutes and other records; (7) polling and public opinion data; (8) documents relating to presentations, videos, interviews, and speeches given by Eagle Forum's representatives; (9) internal letters, newsletters, and email; and (10) social media posts. *See* ECF No. 192 at 2-3; ECF No. 151-1 at 6–7.

Eagle Forum moved to quash the United States' subpoena and, on October 24, 2022, the Court entered an Order granting that motion, finding that the subpoena's "eleven broad categories of evidence" sought "material outside the scope of discovery" and that the "burden of the requested material greatly outweighs any slight relevance it may have." ECF No. 192 at 5. But the Court expressly stated that "[n]othing in this order prohibits the Government from issuing a new subpoena that is far more narrowly tailored." *Id.* at 6–7.[2]

---

[2] While Eagle Forum's motion to quash was pending, the United States purported to narrow the scope of its request. *See* ECF No. 186. But, in ruling on the motion to quash, the Court considered only the subpoena as it was served. *See generally* ECF No. 192.

E.    *The Subpoena at Issue*

In contrast to the United States' subpoena, Private Plaintiffs' subpoena is limited to **a single document request**: "Communications (including any attachments thereto) sent or received between Eagle Forum of Alabama and any of (i) a current or former member of the Alabama Legislature, (ii) his or her staff, or (iii) any other Alabama public official, regarding SB184, HB266, or any related or predecessor legislative bill in Alabama, sent or received between January 1, 2018 and April 7, 2022." ECF No. 402-1. This request encompasses a subset of the documents Private Plaintiffs previously requested of Defendants, but that Defendants have refused to search for or produce. *See* Ex. A at 3. And unlike the United States' document requests, Private Plaintiffs' single document request is limited to communications between Eagle Forum and public officials; it does not seek any internal Eagle Forum documents or communications or communications between Eagle Forum and non-governmental groups or entities.

Even though Private Plaintiffs' subpoena is substantially narrower than the United States' prior subpoena, on February 13, 2024, Eagle Forum's counsel spoke with counsel for Private Plaintiffs and requested that Private Plaintiffs withdraw the subpoena based on "the same basic objections which [Eagle Forum] had to the U.S.'s previous subpoena that this Court quashed." Mot. at 5. Eagle Forum did not attempt to negotiate the scope of Private Plaintiffs' single document request to address its

purported concerns about burden. Instead, Eagle Forum apparently interprets the Court's prior ruling to mean that it is not required to produce any documents in this case, regardless of the scope of the request. And, although Eagle Forum's counsel did not inform Private Plaintiffs' counsel of Eagle Forum's intent to move for sanctions, Eagle Forum now asserts that Private Plaintiffs should be sanctioned for refusing to withdraw a single document request that is indisputably narrower than the subpoena the Court previously quashed.

<u>**ARGUMENT AND CITATIONS OF AUTHORITY**</u>

**A. The Communications Private Plaintiffs Seek Are Relevant to Plaintiffs' Equal Protection Claim.**

"The scope of discovery that may be sought through a Rule 45 non-party subpoena is the same permissible scope under [Rule] 26(b)." *Steven v. Johnson Bros. Corp.*, 2019 WL 1083781, at *2 (N.D. Ala. Mar. 7, 2019). That is, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance, for purposes of discovery, is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of discovery is broad "in order to provide parties with information essential to the proper litigation of all relevant facts." *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (citations omitted).

The person or entity "resisting production of information"—in this case, Eagle Forum—"bears the burden of establishing lack of relevancy or undue burden." *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680 (N.D. Ala. 2015). Courts within this Circuit have described this burden as "heavy." *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*, 2007 WL 9701863, at *3 (S.D. Fla. Mar. 30, 2007) (collecting cases). Thus, "[w]here there is a doubt over relevancy, the court should still permit discovery." *Coker*, 177 F.R.D. at 685.

As the Eleventh Circuit explained in reversing this Court's preliminary injunction Order, the rational basis standard governs unless Plaintiffs can show that the Act is "a pretext for invidious discrimination against [gender nonconforming] individuals." *Eknes-Tucker*, 80 F.4th at 1229–30 (*quoting Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 142 S.Ct. 2228, 2245–46 (2022)).[3] To determine whether government action reflects intentional discrimination, courts consider the factors the Supreme Court first articulated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S. Ct. 555 (1977). The Eleventh Circuit elaborated on these factors in *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State,* 66 F.4th 905, 922 (11th Cir. 2023), identifying

---

[3] Even under the rational basis standard, the documents Private Plaintiffs seek from Eagle Forum could provide relevant evidence of discriminatory intent. "On the few occasions" where the Supreme Court has struck "down a policy as illegitimate under rational basis scrutiny," "a common thread has been that the laws at issue lack any purpose other than a 'bare … desire to harm a politically unpopular group.'" *Trump v. Hawaii*, 138 S.Ct. 2392, 2420 (2018).

eight relevant areas of inquiry: (1) the impact of the challenged law; (2) the historical background; (3) the specific sequence of events leading to its passage; (4) procedural and substantive departures from past or typical practices; (5) contemporary statements of key decisionmakers; (6) the foreseeability of the disparate impact; (7) knowledge of that impact; and (8) the availability of less discriminatory alternatives.

The documents Private Plaintiffs seek are directly relevant to virtually all these factors. For example, Eagle Forum might have sent Alabama legislators information reflecting the intended impact of the Act on transgender youth, its historical background relative to other proposed or enacted laws addressing transgender people, and the impact the Act would have on transgender youth and their families, including whether it would have a disparate impact on this group. Similarly, communications sent by Alabama legislators to Eagle Forum might reflect contemporary statements of key decisionmakers about the Act.

Indeed, the Supreme Court stated in *Arlington Heights* that "contemporary statements by members of the decision-making body," are "highly relevant" to this inquiry. 429 U.S. at 268. And courts analyzing the *Arlington Heights* factors routinely consider statements made by legislators in analyzing whether government action is a pretext for invidious discrimination—including at least one court that has done so in the context of a challenge to a law banning certain medical treatments for transgender youth. *See Dekker v. Weida*, ___ F. Supp. 3d ___, 2023 WL 4102243,

at *14, 16 (N.D. Fla. June 21, 2023) (referring to "a Florida legislator's remarkable reference to transgender witnesses at a committee meeting as 'mutants' and 'demons'" and concluding that "[t]he rule and statute at issue were motivated in substantial part by the plainly illegitimate purposes of disapproving transgender status and discouraging individuals from pursuing their honest gender identities"). And while "'[t]he purpose of a single legislator is normally too slim a reed upon which to rest a determination regarding the legislature as a whole,' the fact that statements by individual lawmakers may alone be insufficient to establish the motivation of the legislature does not eliminate the relevance of such statements." *Mi Familia Vota v. Hobbs*, ___ F. Supp. 3d ___, 2023 WL 4595824, at *10 (D. Ariz. July 18, 2023) (quoting *Fla. v. U.S.*, 885 F. Supp. 2d 299, 354 (D.D.C. 2012)).

In arguing that the documents Private Plaintiffs seek are not relevant, Eagle Forum's motion does not address the *Arlington Heights* factors and instead points to a single statement from Private Plaintiffs' response brief in the Eleventh Circuit, which argued that "[t]here is no need to do a pretext analysis; the [Legislature's] intent is clear on the face of the Act." Mot. at 8 (quoting Private Plaintiffs' Resp. Br., at 56). Of course, Private Plaintiffs' statement was made in the context of Private Plaintiffs' argument that heightened scrutiny applies to the Act notwithstanding an analysis of the *Arlington Heights* factors, which is what this Court had found when it granted Plaintiffs' motion for a preliminary injunction. But the Eleventh Circuit

has since rejected Private Plaintiffs' argument, concluding that the Act does not facially discriminate on the basis of a protected classification. As the Eleventh Circuit recognized, however, the Act would still be subject to heightened scrutiny if Private Plaintiffs can prove that it is pretext for invidious discrimination. *Eknes-Tucker*, 80 F.4th at 1229. That is precisely what Private Plaintiffs seek to do now, including through their efforts to seek documents relevant to such a theory by serving the subpoena at issue on Eagle Forum.

For their part, Defendants yet again attempt to thwart Private Plaintiffs' attempts to obtain evidence relevant to their equal protection claim by contending that "the discovery Plaintiffs seek is wholly irrelevant to the merits of this case." ECF No. 411 at 8. Defendants' arguments are not properly before the Court, as it is well-established that only the third-party to whom a subpoena is directed has standing to raise objections based on relevance, burden, and proportionality. *See, e.g.*, *E.A. Renfroe & Co., Inc. v. Rigsby*, 2008 WL 11376585, at *3–4 (N.D. Ala. June 24, 2008) (citing 9 *Moore's Federal Practice* § 45.50[3] (3d ed. 2008)). But even if the Court were to consider Defendants' arguments, they are not well founded.

Defendants contend that Private Plaintiffs have not sufficiently pled that the Act was the product of invidious discrimination. But "[a] complaint need not specify in detail the precise theory giving rise to recovery." *Sams v. United Food & Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989). "All that is required is

that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Id.*

The SAC easily meets this standard. On the very first page, the SAC alleges that the Act unconstitutionally "targets transgender minors." SAC ¶ 3. It also alleges that the Act "singles out transgender minors," treats them "differently and less favorably" than non-transgender minors, and it refers to the "historical discrimination" faced by transgender people and the fact that transgender people "have been unable to secure equality through the political process." *Id.* ¶¶ 105, 106, 109. Until now, Defendants have never challenged the adequacy of these allegations.

In any event, Defendants can hardly claim that they have not been on notice of the factual bases for Plaintiffs' claims, including a potential theory that the Act is pretext for invidious discrimination against transgender individuals. After all, Defendants **expressly recognized** that Plaintiffs might pursue such a theory when they filed their opening brief in their appeal of the Court's preliminary injunction, stating as follows:

> Even if the district court were right that only transgender minors seek these procedures, it would not matter. "The regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny **unless the regulation is a 'mere pretex[t] designed to effect an invidious discrimination against members of one sex or the other.**'" *Dobbs*, slip op. 11 (quoting *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974)).

Defs.' Opening Br. at 46 (emphasis added). The Eleventh Circuit recognized this

possibility as well, expressly stating that "the regulation of a course of treatment that only gender nonconforming individuals can undergo would not trigger heightened scrutiny **unless the regulation were a pretext for invidious discrimination against such individuals**," but recognizing that "the district court did not find that Alabama's law was based on invidious discrimination" because Private Plaintiffs did not present evidence of invidious discrimination during the preliminary injunction hearing. *Eknes-Tucker*, 80 F.4th at 1229–30 (emphasis added). Private Plaintiffs' position at the preliminary injunction stage is not a basis to prevent Private Plaintiffs from conducting discovery for this evidence now, particularly in light of the changed landscaped following the Eleventh Circuit's opinion.[4]

## B. The Documents Private Plaintiffs Seek Are Not Privileged.

Eagle Forum also contends that the documents Private Plaintiffs seek are protected by the legislative privilege and a First Amendment privilege. Mot. at 8–9, 11. Both of these arguments fail and do not justify Eagle Forum's wholesale refusal to produce documents in response to Private Plaintiffs' subpoena.

As to Eagle Forum's claim of legislative privilege, it is telling that although Defendants likely would have standing to assert such a privilege, they have not done so. *See E.A. Renfroe & Co.*, 2008 WL 11376585, at \*3. And Eagle Forum's position

---

[4] Should the Court conclude that Private Plaintiffs must amend their Complaint to plead additional facts in support of an invidious discrimination claim, Private Plaintiffs plan to seek leave to do so. But because this issue is not properly before the Court on Eagle Forum's motion to quash, Private Plaintiffs save these arguments for another day.

that it can assert the legislative privilege is inconsistent with its admission that Eagle Forum "itself has no legislative capacity, as it is a completely private association." Mot. at 9. After all, the legislative privilege is rooted in "'[t]he privilege of legislators,'" not private citizens, "'to be free from arrest or civil process for what they do or say in legislative proceedings.'" *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951)); *see also Mi Familia Vota*, 2023 WL 4595824, at *11 (suggesting that while the legislative privilege might preclude subpoenas issued to legislators that seek communications with third parties, subpoenas to the third parties themselves "would not raise" the same concerns). "One of the privilege's principal purposes is to ensure that lawmakers are allowed to 'focus on their public duties.'" *In re Hubbard*, 803 F.3d at 1310 (quoting *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (2011)). "That is why the privilege extends to discovery requests" served on legislators—"complying with such requests detracts from the performance of official duties." *Id.* But these same concerns are not implicated when a party serves a document subpoena on a self-described "completely private association" that admittedly "has no legislative capacity." Mot. at 9. Eagle Forum cites no authority extending the privilege to documents in the possession of such an association. Indeed, the only case Eagle Forum cites is *Pernell v. Fla. Board of Governors*, 84 F. 4th 1339 (11th Cir. 2023), which addressed subpoenas served on state legislators.

Eagle Forum further contends that Private Plaintiffs' subpoena is "objectionable because it seeks materials which are privileged under the First Amendment." Mot. at 11. The First Amendment "associational privilege protects against compelled disclosure that would adversely affect an organization by 'induc[ing] members to withdraw … and dissuading others from joining because of fear of exposure.'" *Fla. State Conference of Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021) (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958)). "The privilege is primarily invoked when a party seeks disclosure of an association's member or donor list," not when a subpoena is limited to seeking communications with public officials, as Private Plaintiffs' subpoena is here. *See id.*

The party asserting the privilege "must demonstrate a 'reasonable probability that the compelled disclosure … will subject them to threats, harassment, or reprisals from either Government officials or private parties.'" *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)). In attempting to meet this standard, Eagle Forum raises concerns that relate primarily to disclosing internal Eagle Forum documents, revealing names of Eagle Forum members, and producing documents to the United States. *See generally* ECF Nos. 151-3, 151-4. None of these concerns are implicated by Private Plaintiffs' subpoena, in which private litigants seek only communications between Eagle Forum and public officials—communications that, by their very

nature, were not intended to be private or confidential. *Compare Perry v. Schwarzenegger*, 591 F.3d 1147, 1159–61 (9th Cir. 2010) (internal campaign communications and internal strategy memos are privileged) *with Fla. State Conference of Branches & Youth Units of NAACP*, 568 F. Supp. 3d at 1307 (a subpoena seeking an organization's "external communications with government officials" did not infringe on the privilege).[5]

## C. Eagle Forum's Concerns About Burden Do Not Justify Quashing Private Plaintiffs' Subpoena.

Private Plaintiffs are sympathetic to Eagle Forum's concerns about the burden that responding to a subpoena might impose on a private organization consisting mostly of volunteers that may not have the resources to engage in extensive discovery. Indeed, it is precisely because of these concerns that Private Plaintiffs have chosen the course that they have—namely, first seeking the documents from Defendants through party discovery and serving a third-party subpoena on Eagle Forum only after Defendants refused to search for or produce them and only after the Eleventh Circuit's ruling made such discovery necessary. It is also because of these concerns that Private Plaintiffs served just a single, narrowly tailored document

---

[5] Even if the Court were to conclude that certain communications sent by Eagle Forum are privileged, Eagle Forum provides no argument that statements made by Alabama legislators and other Alabama public officials are similarly protected. Thus, while the Court should reject Eagle Forum's First Amendment privilege argument for the reasons explained above, any First Amendment concerns can be addressed by ordering Eagle Forum to produce documents with appropriate redactions rather than by quashing the subpoena in its entirety.

request that seeks only external communications with Alabama legislators and public officials.[6]

Moreover, the concerns Eagle Forum expresses about the burden of responding to Private Plaintiffs' subpoena are not implicated by the single, narrowly tailored document request Private Plaintiffs served. Eagle Forum's argument on this point seems to conflate Private Plaintiffs' limited subpoena with the broad requests served by the United States, focusing on the burden that would be imposed on its volunteer general counsel, Margaret Clarke, who would need to "open and read through each of the thousands of the documents in her personal files" to identify which documents may have been provided at some point to a legislator. Mot. at 10. But Private Plaintiffs' subpoena **does not seek** all documents that Eagle Forum provided to an Alabama legislator at some point in time. It seeks **only the communications themselves** (including any attachments thereto).

Eagle Forum does not attempt to explain why it would be unduly burdensome to conduct a simple search of its email system for emails sent to or received from an Alabama government email address. This simple search would go a long way toward identifying documents that are potentially responsive to Private Plaintiffs' single document request and would undoubtedly narrow the universe of documents for

---

[6] As discussed above, while Private Plaintiffs could have served subpoenas directly on Alabama legislators, such subpoenas would have implicated the legislative privilege in a way that serving a subpoena on a private, non-legislative organization does not.

review. To the extent Eagle Forum possesses responsive hard-copy communications that are not captured by an email search, Private Plaintiffs are willing to meet and confer with Eagle Forum's counsel about minimizing the burden of producing such communications, including extending the time for compliance if necessary.

**D. Eagle Forum's Motion for Sanctions Should Be Denied.**

Notwithstanding that the Court's Order granting Eagle Forum's motion to quash the United States' subpoena expressly contemplated that a party might issue another subpoena on Eagle Forum, Eagle Forum contends that Private Plaintiffs' single document request is so egregious that sanctions are warranted. Eagle Forum's argument is based solely on its assertion that Private Plaintiffs "were fully aware that this Court had already quashed similar subpoenas issued by the U.S." Mot. at 12. But, as explained throughout this brief, the Private Plaintiffs' subpoena is not "similar" to the subpoena that the United States served. The United States' subpoena included eleven separate document requests, including not only communications with Alabama legislators and public officials, but also internal Eagle Forum communications and other internal Eagle Forum documents. By contrast, Private Plaintiffs' limited subpoena seeks only communications between Eagle Forum and Alabama legislators and public officials over a relatively narrow time period that are related to the specific legislation Private Plaintiffs challenge.

While Eagle Forum selectively quotes portions of the Court's Order granting

its motion to quash the United States' prior subpoena, it conspicuously omits the Court's express language stating that "[n]othing in this order prohibits the Government from issuing a new subpoena that is far more narrowly tailored." That is precisely what Private Plaintiffs have done here. Private Plaintiffs made substantial efforts to minimize any burden on Eagle Forum, including by: (1) first seeking the documents at issue through discovery directed at Defendants; (2) waiting until after the Eleventh Circuit's ruling before pursuing third-party discovery of discriminatory intent; (3) considering serving subpoenas directly on Alabama legislators; and (4) serving the subpoena at issue only upon realizing that doing so was the only option to obtain the documents Private Plaintiffs seek. Under these circumstances, Private Plaintiffs have taken "reasonable steps to avoid imposing undue burden and expense" on Eagle Forum, *see* Fed. R. Civ. P. 45(d)(1), and have not "proceeded unreasonably, in bad faith, or with an improper purpose," so as to justify sanctions. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 5578428, at *9 (N.D. Fla. Feb. 18, 2020); *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 11425554, at *2 (N.D. Ala. Oct. 24, 2018).

## **CONCLUSION**

For the foregoing reasons, this Court should deny Eagle Forum's Motion to Quash and Motion for Sanctions.

Dated: February 29, 2024

Respectfully submitted,

*/s/ DRAFT*
_____

Melody H. Eagan
Jeffrey P. Doss
Amie A. Vague
LIGHTFOOT, FRANKLIN &
WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
meagan@lightfootlaw.com
jdoss@lightfootlaw.com
avague@lightfootlaw.com

J. Andrew Pratt
Adam Reinke
Misty L. Peterson
KING & SPALDING LLP
1180 Peachtree Street Northeast, Suite
1600
Atlanta, GA 30309
apratt@kslaw.com
mpeterson@kslaw.com
areinke@kslaw.com

Brent P. Ray
Abigail Hoverman Terry
KING & SPALDING LLP
110 North Wacker Drive, Suite 3800
Chicago, IL 60606
bray@kslaw.com
ahoverman@kslaw.com

Scott D. McCoy
SOUTHERN POVERTY LAW
CENTER
P.O. Box 12463
Miami, FL 33101
scott.mccoy@splcenter.org

Sarah Warbelow
Cynthia Weaver
HUMAN RIGHTS CAMPAIGN
FOUNDATION
1640 Rhode Island Ave., NW
Washington, DC 20036
sarah.warbelow@hrc.org
cynthia.weaver@hrc.org

Jennifer L. Levi
GLBTQ LEGAL ADVOCATES &
DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
jlevi@glad.org

Jessica L. Stone
SOUTHERN POVERTY LAW
CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
jessica.stone@splcenter.org

Diego A. Soto
SOUTHERN POVERTY LAW
CENTER
400 Washington Avenue
Montgomery, AL 36104
diego.soto@splcenter.org

*Counsel for Private Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record in this case.

_____

*Counsel for Private Plaintiffs*