## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **BRIANNA BOE**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:22-cv-0184-LCB** |
| | ) | |
| **STEVE MARSHALL**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>SUPPLEMENTAL MOTION FOR LEAVE TO SUBMIT ADDITIONAL EVIDENCE</u>

Respondent Carl Charles hereby moves for leave to submit additional evidence to this Court pursuant to this Court's Order to Show Cause (doc. 406 at 11). As grounds in support of this motion, Respondents state as follows:

1.    This Court has ordered Respondent Carl Charles ("Mr. Charles") to show cause why he should not be sanctioned "for deliberately misleading the three-judge panel in violation of 18 U.S.C. § 1623 and the rules of professional conduct applicable in the Northern and Middle Districts of Alabama, the Oaths of Admission for the Northern and Middle Districts of Alabama, and his sworn oath, specifically with respect to his testimony about his phone call to Judge Myron Thompson's chambers on April 12, 2022." (doc. 406 at 9-10).

2.     Respondents respectfully move this Court for leave to submit the declaration of Jennifer C. Pizer, the Chief Legal Officer of Lambda Legal, regarding Mr. Charles' reputation for honesty and integrity (attached as Exhibit A).

3.     This Court may properly consider evidence of Mr. Charles' character in making its determination. *See Bolton v. Tesoro Petroleum Corp.*, 871 F.2d 1266, 1277 (5th Cir. 1989) ("[Federal] Rule [of Evidence] 404(a)(1) allows evidence of relevant character traits of an 'accused' individual. Such evidence can be admissible in a civil trial raising quasi-criminal allegations against a defendant."); *In re Justice*, No. 20-5479, 2021 WL 3808965, at *3 (6th Cir. Aug. 26, 2021) ("We have recognized that attorney disciplinary proceedings are quasi-criminal . . .); *Matter of Liotti*, No. 2021-01409, 2024 WL 1081172, at *3 (N.Y. App. Div. Mar. 13, 2024) ("In determining an appropriate measure of discipline, we have considered in mitigation, inter alia, evidence of the respondent's good character . . .); *see also Matter of Calvo*, 88 F.3d 962, 967 (11th Cir. 1996) ("[R]elaxed rules of evidence apply" in disciplinary hearings).

4.     Respondents previously filed a Sealed Motion for Leave to Submit Additional Evidence on March 8, 2024, in which they requested that they be permitted to supplement the motion if necessary. (doc. 437). Because the filings related to *In re Vague* were under seal at the time the motion was filed, Respondents did not contact Attorney Pizer regarding a declaration until after the filings in *Vague*

were unsealed by this Court and the underlying facts could be disclosed.

Accordingly, Respondents now seek leave to submit Attorney Pizer's declaration.

Respectfully submitted,

*/s/ Barry A. Ragsdale*
Barry A. Ragsdale
Robert S. Vance
Dominick Feld Hyde, PC
1130 22nd Street South, Suite 4000
Birmingham, AL 35205
Tel.: (205) 536-8888
bragsdale@dfhlaw.com
rvance@dfhlaw.com

/s/ *W. Neil Eggleston*
W. Neil Eggleston
Byron Pacheco
Kirkland & Ellis LLP
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Tel.: (202) 389-5016
neil.eggleston@kirkland.com
byron.pacheco@kirland.com

*Counsel for Respondents*

3

## __CERTIFICATE OF SERVICE__

I certify that, on April 5, 2024, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will provide notice of such filing to all counsel of record.

/s/ *Barry A. Ragsdale*
OF COUNSEL

# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

BRIANNA BOE, *et al.*,                    )
                                          )
    Plaintiffs,            )
                                          )
v.                                        )    Case No. 2:22-cv-0184-LCB
                                          )
STEVE MARSHALL, *et al.*,                 )
                                          )
    Defendants.            )

**DECLARATION OF JENNIFER C. PIZER**

I, Jennifer C. Pizer, declare:

1.    I am providing this Declaration in response to the February 22, 2024 Order to Show Cause in the above-captioned case and specifically the questions raised about the character of Carl S. Charles. As described below, I have known Mr. Charles since 2016 and in my experience he has distinguished himself without exception as a dedicated young attorney, and as a person of integrity, sincerity, and forthrightness. The matters stated herein are based upon my personal knowledge and are true and correct to the best of my recollection.

2.    I am the Chief Legal Officer and Eden/Rushing Chair of Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal"). I have been in this role for approximately one and a half years following three months serving as the Acting Chief Legal Officer from June 2022 until mid-September 2022.  My tenure on the

1

staff of Lambda Legal began in January 1996 as Managing Attorney of our Western Regional Office in Los Angeles. I served in various roles within our legal department until April 2011, when I left to serve as the Legal Director of the Williams Institute at UCLA School of Law. I returned to Lambda Legal in October 2012 to direct a new initiative on law and public policy, and since then have served in multiple roles. In total, I have spent more than 25 years working with and for Lambda Legal. During my years on Lambda Legal's staff, I also have served as an adjunct law professor at multiple law schools in the Los Angeles area and in Europe.

3.      I am licensed to practice law in the State of New York and have been in good standing in that state without exception since my admission to practice in 1990. I also am licensed to practice law in the State of California and have been in good standing in that state without exception since my admission to practice in 1991. In addition, I have been admitted to practice before numerous federal district courts and U.S. Circuit Courts of Appeal, as well as the United States Supreme Court, and have never been denied admission to practice in any court. I have never had an ethical complaint or professional misconduct claim of any kind filed against me.

4.      Lambda Legal is the oldest and largest nonprofit legal advocacy organization in the United States dedicated to achieving full civil rights for lesbian, gay, bisexual, and transgender ("LGBT") people and everyone living with HIV/AIDS. The organization was founded in 1973 in New York City and currently

2

also has offices in Atlanta, Chicago, Dallas, Los Angeles, and Washington, D.C.

5.     During its fifty-year history, Lambda Legal has challenged discrimination against LGBT people in public and private employment, housing and public accommodations, educational settings, health care services, family law, policing practices, and other areas. Currently, more than half of our litigation docket addresses the pervasive, intentional, and deeply harmful discrimination against transgender youth and adults in many aspects of daily life, including education, employment, housing, public services, and access to healthcare.

6.     During my more than 25 years as a practicing attorney with Lambda Legal, I have collaborated with attorneys at all levels of experience on our staff, at other nonprofit organizations, in private law practice, and in government roles. I have mentored many law students and young lawyers and have supervised the work of dozens of lawyers in various stages of their legal careers.

7.     I met Carl Charles in the summer of 2016, when I interviewed him for a staff attorney position to work with me in our Los Angeles office. He was concluding a two-year Skadden Fellowship with the National ACLU LGBT and HIV Project, and his supervisors recommended him to me unsolicited and with great enthusiasm as exceptionally hardworking, kind, and conscientious. I still remember being impressed at how well Mr. Charles interviewed for the position, especially for someone as junior as he was, just two years out of law school. His thoughtfulness

3

and dedication to service were obvious. I did not hire Mr. Charles at that time, instead hiring a lawyer with 14 years more experience than he had. But I did express to him that I hoped that we would have many chances to work together in the future.

8.     That chance came the following year thanks to a financial donation which allowed us to create internal fellowships for very junior lawyers. One of these was in our then-named Transgender Rights Project. We were delighted when Mr. Charles applied and we were able to hire him for a one-year fellowship to help us expand our work on behalf of transgender people at a time when overt discrimination and violence against this small minority population were escalating dramatically.

9.     I recall that one of the cases on which Mr. Charles worked was our challenge to the Trump administration policy to require United States military service members who are transgender to conceal their gender identity, and to discharge and to prevent enlistment of those who already were open about their transgender identity. I remember that, when this policy was announced, Mr. Charles worked around the clock for many weeks responding to desperate calls for help from transgender people who had been serving openly in the military for years and who felt the rug had suddenly been pulled out from under them. And I saw not just from that case-related work but also from his interactions during Legal Department meetings, public education efforts, and countless routine moments that he was a serious, dedicated, trustworthy, and honorable person.

10.     Because Mr. Charles so distinguished himself in his work and as a colleague during his 2017-2018 fellowship, we were pleased when he applied for an open staff attorney position with us in late 2018. We were seeking candidates with at least five to seven years of lawyering experience due to the increased needs of our community members—especially our transgender community members—for protection against discriminatory laws and policies.  Mr. Charles just barely met the minimum years of experience, and we knew his then-current job involved minimal, if any, litigation.  However, we knew him to be a person of talent, dedication, and exceptional character, and we were delighted to have him rejoin us as a staff attorney.

11.     Over the next three years, Mr. Charles' work was excellent. He participated on various case teams, focusing especially on challenges to laws and policies that limit the rights and opportunities of transgender young people. That work has been personal as well as professional for Mr. Charles, a transgender man himself. Among the many qualities I have appreciated about him over these years has been his commitment to being a reliable, helpful, compassionate colleague and team member, especially when the work is overwhelmingly stressful.

12.     Our legal department operates with a four-tier promotions ladder for practicing attorneys: Staff Attorney, Senior Attorney, Counsel, and Senior Counsel. Staff Attorneys are eligible to be considered for promotion when they have at least

six years of experience. Senior Attorneys may be considered for promotion when they have at least nine years of experience, and so on.

13.     Mr. Charles was promoted from Staff Attorney to Senior Attorney in early 2022, having achieved the required six years of experience, which in his case had been a mix of litigation, legislative lawyering, and know-your-rights education of community members. His promotion was based on his having performed very well consistently, with steady development of his substantive knowledge and law practice skills, and with unfailing professionalism, integrity, and good character.

14.     When Mr. Charles called me last summer to tell me he had accepted a position with the U.S. Department of Justice, I understood why he wished to try a different area of practice but was deeply disappointed. Against my decades as a practicing lawyer and a supervisor of junior lawyers, he had distinguished himself as an unusually talented and dedicated young attorney, and as a person of kindness, sincerity, and candor.  I consider him an exceptional human being.

Signed under penalty of perjury under the laws of the United States this fourth day of April, 2024.

_____
Jennifer C. Pizer