```
 1                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE MIDDLE DISTRICT OF ALABAMA
 2                            NORTHERN DIVISION

 3

 4        BRIANNA BOE, et al.,          *
                                        *
 5              Plaintiffs,             *   2:22-cv-00184-LCB
                                        *   March 19, 2024
 6        vs.                           *   Montgomery, Alabama
                                        *   9:00 a.m.
 7        STEVE MARSHALL, et al.,       *
                                        *
 8              Defendants.             *
          *****************************

 9

10

11                 TRANSCRIPT OF MOTION TO QUASH HEARING
                   BEFORE THE HONORABLE LILES C. BURKE
12                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22    Proceedings recorded by OFFICIAL COURT REPORTER, Qualified
      pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies
23      and Procedures Vol. VI, Chapter III, D.2.  Transcript
                   produced by computerized stenotype.
24

25
```

*CHRISTINA K. DECKER, RMR, CRR*
Federal Official Court Reporter
256-506-0085/ChristinaDecker.rmr.crr@aol.com

```
 1                          APPEARANCES

 2
        FOR THE PLAINTIFFS:
 3      Jeffrey P. Doss, Esq.
        LIGHTFOOT, FRANKLIN & WHITE, LLC
 4      The Clark Building
        400 20th Street North
 5      Birmingham, Alabama 35203

 6      Adam Reinke, Esq.
        KING & SPALDING
 7      1180 Peachtree St
        Atlanta, Georgia
 8      404-572-4600
        Areinke@kslaw.com
 9
        Coty Rae Montag, Esq.
10      DOJ-Crt
        Civil Rights Division
11      150 M Street NE
        4con
12      Washington, DC 20002
        202-598-1580
13      Coty.montag@usdoj.gov

14      Jason R. Cheek, Esq.
        U S Atty Office - NDAL
15      1801 Fourth Ave N
        Birmingham, AL 35203
16      205-244-2104
        Jason.cheek@usdoj.gov
17
        Kaitlin N Toyama, Esq.
18      United States Department of Justice
        Civil Rights Division
19      950 Pennsylvania Avenue, NW
        Washington, DC 20530
20      202-353-5311
        Kaitlin.toyama@usdoj.gov
21
        Margaret Lester Marshall, Esq.
22      DOJ-USAO
        1801 Fourth Avenue North
23      Birmingham, AL 35203
        205-244-2121
24      Margaret.marshall@usdoj.gov

25
```

1 FOR THE DEFENDANT:
 James W. Davis, Esq.
2 Edmund LaCour, Esq.
 Alexander Barrett Bowdre, Esq.
3 OFFICE OF THE ATTORNEY GENERAL
 501 Washington Avenue
4 P.O. Box 300152
 Montgomery, Alabama 36130-0152
5 (334) 242-7300

6

7 RESPONDENTS:
 Barry Alan Ragsdale, Esq.
 Robert Smith Vance, Esq.
8 Dominick Feld Hyde, P.C.
 Litigation
9 1130 22nd St S - Ste 4000
 Birmingham, AL 35205
10 205-536-8888
 BRagsdale@dfhlaw.com

11

12 FOR EAGLE FORUM OF ALABAMA AND SOUTHEAST LAW
 INSTITUTE:
13 John Graham, Esq.
 PHELPS DUNBAR LLP
14 2025 3rd Avenue North
 Suite 1000
15 Birmingham, AL 35203

16

17 FOR ALABAMA CITIZEN'S ACTION PROGRAM:
 Robert Brett Adair, Esq.
 ADAIR LAW FIRM, LLC
18 1200 Corporate Drive
 Ste. 107
19 Birmingham, AL 35242
 205-995-5080
20
 Alan Eric Johnston, Esq.
21 ATTORNEY AT LAW
 1200 Corporate Dr
22 1200 Corporate Drive
 Suite 107
23 Birmingham, AL 35242
 205-408-8893

24

25

1          COURTROOM DEPUTY:  Deena Harris

2


3

          COURT REPORTER:  Christina K. Decker, RMR, CRR
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1
2          (In open court.)

3        THE COURT:  Good morning.

4    Give me just a moment to get my case pulled up.

5    All right.  Let's take up our substantive motions to quash

6 first.  And then we will take up the rest of it second.

7    So I guess we will just start with Eagle Forum.

8        MR. GRAHAM:  Yes, sir.

9        THE COURT:  Good morning.

10       MR. GRAHAM:  Good morning, Judge.  Thank you.

11    If I'm quoting Yogi Berra right, it's like deja vu all

12 over again.  We're here back again on a matter that I believe

13 Your Honor -- your order recently recognized the Court has

14 already addressed, squarely addressed.

15       THE COURT:  I thought I squarely addressed it.

16       MR. GRAHAM:  I believe you did.  And so I won't

17 belabor the point.

18    But we were here in 2022, when the U.S. federal

19 government's subpoena that sought, I believe, 11 categories of

20 documents from Eagle Forum, two of which were essentially

21 identical to the topic that's now put in one topic by the

22 private plaintiffs; that is, communications to and from between

23 Eagle Forum and the Legislature and the staff members, or the

24 Governor, or any other public official about VCAP, or the

25 proposed bills over a four-plus year period.

1    That subpoena Your Honor quashed in its entirety back in

2  2022, finding it was not relative to the issues in the case.

3  Any slight arguable relevance was really outweighed by the

4  burden on Eagle Forum as a private party, a grassroots

5  organization of volunteers.  So Your Honor addressed all of

6  that.

7    The plaintiffs have, trying to justify coming before you

8  again on this same matter, have seized on one sentence from the

9  end of your order, your written order, where you said the Court

10  is not -- basically not opposed to -- or would consider a far

11  more narrowly tailored subpoena.  And they're saying that this

12  subpoena they're now doing is far more narrowly tailored.  I

13  don't think that's at all what your order was intended to

14  address.

15    You recall prior, just the Friday evening before the

16  hearing on that motion to quash in 2022, the federal government

17  after all that time had withdrawn its subpoena essentially, and

18  all of a sudden was asking for medical articles, medical

19  journals in Eagle Forum's possession that would be relevant to

20  what the Legislature was considering when it passed the VCAP

21  statute.

22    And Your Honor verbally addressed that toward the end of

23  the hearing, and said, you know, that that's something that

24  might be potentially relevant.  And there's some ways you could

25  do that to be -- to lessen the burden on Eagle Forum if you

1  want to pursue that.  That subpoena was not really before you,

2  but you were just addressing it because they were -- they

3  were -- they had purported to narrow it at that point.

4      The federal government did not pursue that subpoena.

5  Never asserted or served such a subpoena.  Nor did the private

6  plaintiffs, okay?  That's 2022.  Nothing had changed until

7  January 31st of this year, when all of a sudden, we're back at

8  it, and they're issuing the exact -- a subpoena -- the two of

9  the exact same topics that Your Honor has already ruled.

10 Basically we're out of bounds.  So you have squarely addressed

11 this.

12      In terms of -- like I say, this is relevant to an

13 Arlington Heights type -- well, first I guess I would say the

14 same basic reasons apply as before that we argued, you know, A,

15 not -- it's not relevant to any claim or defense in the case;

16 B, it's not proportional, given the resources of this non-party

17 volunteer organization.  And the pleadings in the case.  And

18 that it is unduly burdensome on a non-party.  And it's as also,

19 we believe, protected by First Amendment privilege.  You did

20 not address that last time, but we believe that applies here,

21 as well.

22      But in terms of the Arlington Heights claim that they say

23 that they have -- and I will defer to the state on whether

24 that's actually in the case or not.  I have read their brief on

25 that.

1    From what I can tell as an outsider looking in, it's not
2  in the case and never has been.  But I would also say if they
3  have the claim they had in 2022 -- because that's what they
4  were seeking back then -- nothing has changed in that.
5    And this is -- this is a -- unlike Arlington Heights,
6  where there was, you know, a race-neutral thing, a denial of a
7  zoning application, or whatever, I think that was about.
8    The Alabama Legislature was very clear when they passed
9  this statute what their intent was.  It is not a statute that
10 is neutral, and doesn't mention sex, or gender, or gender
11 dysphoria, or those kinds of things.  It was very clear they
12 intended, as a positive matter, to prohibit these kinds of
13 procedures for minors, for children.  So, I mean, the intent's
14 clear.
15   You know, this idea that somehow they're going to get
16 something these -- from whatever documents that Eagle Forum
17 sent to the Legislature, or perhaps received from the
18 legislators, I mean, there's just no basis to think that it is
19 going to lead to admissible evidence in this case.
20   They talk about one of the factors from Arlington Heights
21 cases, if there's such a claim in the case, is that
22 contemporaneous statements by legislators could be relevant in
23 those kind of cases.
24   Well, but they're asking for all -- they're basically
25 asking for correspondence from a private party to legislators.

1  That's not even that.  Even if there is such an Arlington

2  Heights claim.  So that's -- again, it does not speak to what

3  they claim they want.

4      In the Dobbs case, a 2022 Supreme Court case, which I

5  believe most of us are very familiar with, they completely

6  ignored that that case said, among other things, that inquiry

7  into legislative motive is a hazardous matter.  Basically, you

8  know, it's long been disfavored.  You know, even if you can

9  show some intent by one or more individual legislators, you are

10  not going to be able to show that as the intent of the

11  Legislature past the statute.

12          THE COURT:  I have a feeling the state is going to

13  want to address that issue, too, before this day is over.

14          MR. BOWDRE:  Yes.

15          THE COURT:  Am I correct?

16      Go ahead.

17          MR. GRAHAM:  I defer to them.  But that case was cited

18  by us in 2022.  It was cited by us in our motion to quash.

19  This time it's been ignored by both sets of plaintiffs.

20      Your Honor, I think all those issues are more than enough

21  to quash the subpoena.

22      But I also believe that these documents that go to

23  legislative privilege matters that would be covered by

24  legislative privilege -- we cited the Pernell case from the

25  Eleventh Circuit last year in Florida.  And that subpoena

1  sought basically the same kind of things -- documents that

2  legislators were provided with, considered, reviewed.  And the

3  Eleventh Circuit ruled all that went to -- the purpose of it

4  was to get to legislative motive.  That was at the heart of

5  legislative privilege.  They struck that from that basis.

6      The plaintiff argued, well, that -- in that case those

7  were legislators filing the motion to quash.  This time it's --

8  you're the private party.

9      Well, I don't think the Eleventh Circuit opinion

10 distinguished on that basis.  But I also say there is a recent

11 Fifth Circuit case you may be familiar with from February of

12 this year, La Union Del Pueblo Entero vs. Abbott, Fifth

13 Circuit, February 16th of this year.  And it was very much the

14 same situation, where subpoenas for depositions were sought of

15 a non-party or third-party legislative process.  And the Fifth

16 Circuit said those third parties could assert the legislative

17 privilege for those documents that were in their possession.

18 So I believe that's well within our rights to do that.

19     In terms of this being an undue burden.  Again, it's not

20 relevant, not proportional, but also an undue burden on Eagle

21 Forum.  And we cited the declarations that were filed before

22 back in 2022 from Becky Gerritson, as well as Margaret Clarke.

23 And those, if you read them, the documents that the private

24 plaintiffs are now seeking are essentially -- would all be in

25 the personal possession and personal computer of Ms. Clarke.

1    By the way, she's not here today.  She's had a recent

2  shoulder surgery.

3    But all those communications that she set out in her

4  declarations were there.  And so she's got hard copies.  She's

5  got, I think she said about 2,000 e-mails related to VCAP.

6    And so for her to comply with this latest subpoena would

7  be the same thing as she said before.  She's still going to

8  have to go through every one of those documents, read all the

9  e-mails, read the documents, see what would be responsive to

10  the subpoena.  And then as well as go through her hard copies,

11  which are voluminous, as well.

12    So that's -- it is an undue burdensome on a -- on a

13  volunteer to a third party that's not the legislator.  And for

14  no good purpose.  I mean, these documents are just not going to

15  speak to anything relevant ultimately in this case.

16         THE COURT:  So what do you think an appropriate

17  sanction is?

18         MR. GRAHAM:  Well, I would -- I believe at a minimum,

19  you know, attorneys' fees, and probably something punitive

20  beyond that would be my thought about it.

21         THE COURT:  And as we stand here today, what are your

22  attorneys' fees?

23         MR. GRAHAM:  I don't have those calculated.  It's not

24  near as much this time as it would have been last time.  But I

25  certainly can get that to you, though.

1          THE COURT:  Got an estimate?

2          MR. GRAHAM:  I apologize for not having this --

3   prepared for this as I should have.

4          THE COURT:  Well, this is the hearing where you're

5   asking for attorneys' fees, so this would be the time to prove

6   those up.

7          MR. GRAHAM:  Well, yes, sir.

8       So part of the course would be the fees involved in

9   preparing for this and showing up today.  And so we had said in

10  our motion we prepared to provide you that.

11         THE COURT:  Understood.

12         MR. GRAHAM:  I can give you just an off the top of my

13  head, if that's helpful.

14         THE COURT:  I'll take it.

15         MR. GRAHAM:  I can give you more definitive.

16         THE COURT:  Give me off the top of your head, and we

17  will narrow that as we need to as we go forward today.

18         MR. GRAHAM:  I would venture to say 50 hours.  Some of

19  those being our associates' rates, and then most of them being

20  my rate.  $25,000.

21         THE COURT:  All right.  Anything else you want to tell

22  me?

23         MR. GRAHAM:  That's all.  Thank you.

24         THE COURT:  All right.

25       All right.  Something I neglected to do when we came in,

1  and should have, just to keep my record clean.  Why don't we go

2  around and let every attorney state who they are and who they

3  represent for the record.

4          MR. GRAHAM:  John Graham for Eagle Forum of Alabama.

5          MR. REINKE:  Thank you, Your Honor.

6      Adam Reinke of King and Spalding on behalf of the private

7  plaintiffs.

8          MR. DOSS:  Jeff Doss for the private plaintiffs.

9          MS. TOYAMA:  Good morning, Your Honor.

10      Kaitlin Toyama for the United States.

11          MR. JOHNSTON:  Eric Johnston for the Alabama Citizens

12  Action Program.

13          MR. ADAIR:  Brett Adair for Alabama Citizens Action

14  Program.

15          MR. BOWDRE:  Barrett Bowdre on behalf of the state

16  defendants.

17          MR. DAVIS:  Jim Davis for the state defendants.

18          MR. LACOUR:  Edmund LaCour for state defendants.

19          THE COURT:  All right.  Well, let me ask Citizens

20  Action:  Do we just want to treat these as a package and let

21  y'all argue, then the state argue, then the plaintiffs; or do

22  we want to do these separately?

23          MR. JOHNSTON:  Your Honor, I don't want to be

24  redundant of what's already been said, both before and today

25  and in the pleadings.  I think it's all well spoken.

1        But I do want to speak on behalf of Alabama --

2            THE COURT:  What are your attorneys' fees to date?

3            MR. JOHNSTON:  On this motion at this time, maybe

4    10 hours.  Before we had already submitted on --

5            THE COURT:  What's your hourly rate?

6            MR. JOHNSTON:  400 an hour.

7            THE COURT:  Go ahead.

8            MR. JOHNSTON:  All right.  ALCAP, as we pointed out in

9    our pleadings, is a 501(c)(4) organization.  That means they

10   are authorized by the IRS to engage in lobbying.

11       They have an opinion on many issues that they deal with.

12   They have been in the Alabama Legislature for longer than

13   anybody in this room's been alive.  I have represented them for

14   over 30 years.  Never had an occasion where they're dragged

15   into court saying What do you stand for?  What do you talk

16   about?

17       They are one of many voices in the statehouse.  And we

18   don't want to quell the voices in the statehouse on issues.

19       There's a difference of opinion, obviously, on this law.

20   But the plaintiffs are suggesting that because ALCAP took a

21   position different than theirs, it's pretext for

22   discrimination.

23       Well, ALCAP didn't write the law.  ALCAP is not the

24   Alabama Legislature.

25       They have an opinion on it.  A lot of people have an

1  opinion on this law.  And so they should not be penalized for

2  speaking out.

3      They should not be afraid to speak up and think about,

4  well, if I speak up, am I going to be subpoenaed to come to

5  federal court and answer for myself.  It's hard enough to get

6  people to engage in the public square.

7      ALCAP speaks mainly for churches.  They have a Biblical

8  standpoint that they speak from.  And so they have a difference

9  of opinion on a lot of issues.

10     When churches don't like to get involved in politics, you

11  don't want to chill the rights of people to speak.  And I think

12  if you permit subpoenas to organizations that speak, then you

13  chill those rights.

14     I think I probably disagree with the plaintiffs on their

15  interpretation of the Eleventh Circuit opinion.  And I'm not

16  arguing the merits of that.  That's for the Court to decide

17  later.

18     But what ALCAP said on this issue is just their difference

19  of opinion than what the plaintiffs feel.  And there is no

20  pretext on their part that would indicate that they should be

21  subpoenaed to produce anything to this Court.

22     So that -- unless Your Honor has questions.

23         THE COURT:  I don't.  I don't.

24     Does the state want to be heard?

25         MR. JOHNSTON:  Thank you.

1          MR. BOWDRE:  Very briefly, Your Honor.

2      Good morning.  Barrett Bowdre on behalf of the state

3  defendants.

4      I agree with everything that both of these gentlemen just

5  said.  And I don't want to belabor the point.

6      Just briefly, three main points, and we raised this in our

7  brief.  One, we don't think that there's an Arlington Heights

8  claim in this case, and so the evidence of legislative

9  communications would only be relevant towards such a claim.

10 And we don't think there is a claim.  So those communications

11 are simply not relevant.

12     The plaintiffs say that the Eleventh Circuit opinion

13 changed things.  And the answer is that the Eleventh Circuit

14 cannot change what was pleaded a year and a half before that

15 decision came out.

16     And so if plaintiffs read the Eleventh Circuit decision

17 and said, oh, we need to prove an Arlington Heights claim in

18 light of this decision, the answer would have been for them to

19 move to amend their complaint at that time seven months ago.

20 They did not do that.

21     Finally, we think amendment or any -- any of this evidence

22 not only would not be relevant because there is no Arlington

23 Heights claim, but it would also be futile, given that to prove

24 legislative intent in a legislative body with 140 members, plus

25 the Governor, is, as the Eleventh Circuit has recognized, a

1    near impossible task.

2         And so the burden to these organizations when weighed with

3    the minute possible relevance, even if there were an Arlington

4    Heights claim, we agree that the motions to quash should be

5    granted.

6         Unless the Court has any questions, I'll be happy to leave

7    you with that.

8              THE COURT:  I don't.  Who is going to argue this for

9    the plaintiffs?

10             MR. REINKE:  I am, Your Honor.

11             THE COURT:  All right.  So I rarely say anything like

12   this, but I think these three attorneys have very succinctly

13   and accurately stated what the law of the case is, what my

14   previous orders are.

15        And I just have to say I'm amazed that we are here today.

16   I'm amazed that y'all didn't wave a flag, and call them and

17   say, you know what?  We've re-read his order, we've looked back

18   at this, we have absolutely missed this, why don't we write a

19   check for attorneys' fees and call it a day.

20             MR. REINKE:  Yes, Your Honor.

21             THE COURT:  And I don't even think this is a close

22   call.

23        So I am going to give you a shot right now to say, you

24   know what?  We just blew this, Judge.

25        Do you want to take that shot, or do you want to argue?

1          MR. REINKE:  Your Honor, may I have a moment to confer

2    with my co-counsel?

3          THE COURT:  Certainly.

4          MR. REINKE:  Thank you.

5          THE COURT:  In fact, I will give you several moments.

6    I'm going to take a short break, and I'll be right back.

7          (Recess.)

8          THE COURT:  All right.  Where do we stand?

9          MR. REINKE:  Thank you, Your Honor.  Adam Reinke on

10   behalf of the private plaintiffs.

11        For the reasons we explained in our papers, we did not

12   view the Court's prior order as foreclosing the subpoenas that

13   we served.  That said, we hear where you're coming from, Your

14   Honor, and we respect your decision on that.

15        And in light of the arguments made at this hearing and

16   your comments, we will go ahead and withdraw the subpoenas, and

17   we will work with counsel for the organizations at issue on the

18   attorneys' fees issue.

19        THE COURT:  All right.  Why don't we do this:  I would

20   prefer -- and, number one, I very much appreciate the attitude

21   that you have just taken --

22        MR. REINKE:  Thank you, Your Honor.

23        THE COURT:  -- very much.

24        Why don't we do this -- why don't I let you confer with

25   these two gentlemen for a two or three minutes, and let's just

1  come to an agreement on what those attorneys' fees are, and I

2  will enter an order based on that agreement.

3          MR. REINKE:  Yes, Your Honor.

4          THE COURT:  Based on what you have said, I think both

5  of them are very reasonable men, and we can come to a number.

6      So let's just take a minute, and I will let y'all talk.

7          MR. REINKE:  Sure.  Thank you, Your Honor.

8          (Recess.)

9          THE COURT:  All right.  I understand we have an

10 agreement; is that correct?

11         MR. REINKE:  Yes, Your Honor.

12         THE COURT:  Who wants to state that agreement?

13         MR. REINKE:  I am happy to do it.

14         THE COURT:  All right.

15         MR. REINKE:  Your Honor, the private plaintiffs have

16 agreed to resolve the attorneys' fees for Eagle Forum for

17 $25,000.  And for the Alabama Citizens Action Program, for

18 $5,000.

19     And I also just want to state for the record that I did

20 apologize to counsel for the inconvenience of having to come

21 back here this morning.  And I apologize to the Court, as well.

22         THE COURT:  Accepted.

23     And I appreciate what you have said.  I appreciate that we

24 came to an agreement on this.

25     Hopefully, this issue will be foreclosed now and we won't

1   have to go down this road again.

2        Anything else we ought to take up on this issue today?

3           MR. REINKE:   Nothing from my perspective, Your Honor.

4   Thank you.

5           THE COURT:   All right.   So, then, obviously, I will

6   grant ALCAP's motion and Eagle Forum's motion.

7      I will adopt the agreement of the parties.   I'm grateful

8   to the parties.   I'm grateful for your arguments and position

9   you took on behalf of your organization.

10     And also, again, I thank you for recognizing that you were

11   in error, and paying these gentlemen's fees.

12     So, all right.   We are adjourned on this issue.   I know we

13   have several other issues to take up.

14     Let's take about a 15-minute break, let the courtroom

15   clear out.   And then we will take up these other motions.

16           MR. REINKE:   Thank you, Your Honor.

17

18           (Whereupon, the above proceedings were concluded at

19           9:56 a.m.)

20

21

22

23

24

25

```
 1                        CERTIFICATE

 2

 3

 4        I certify that the foregoing is a correct

 5   transcript from the record of proceedings in the

 6   above-entitled matter.

 7

 8

 9

10

11                                            04-8-2024

12   Christina K. Decker, RMR, CRR              Date

13   Federal Official Court Reporter

14   ACCR#:  255

15

16

17

18

19

20

21

22

23

24

25
```