UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:22-cv-184-LCB |
| | ) |
| STEVE MARSHALL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### SUPPLEMENTAL ORDER TO SHOW CAUSE:

### MELODY EAGAN

In May of 2022, the chief judges of the United States District Courts for the Northern, Middle, and Southern Districts of Alabama convened a three-judge panel to investigate the propriety of certain filing activity and public statements that had given the appearance of impermissible judge shopping. The activity under investigation concerned three related cases—*Walker v. Marshall*, 5:22-cv-480-LCB (N.D. Ala. 2022); *Ladinsky v. Ivey*, 5:22-cv-447-LCB (N.D. Ala. 2022); and this one—and implicated thirty-nine lawyers. Seventeen months later, the Panel closed its investigation with an exhaustive 53-page final report, concluding "without hesitation" that eleven of the lawyers ("the Respondents") had "purposefully attempted to circumvent the random case assignment procedures" for the U.S. District Courts for the Northern and Middle Districts of Alabama—they had, in other words, impermissibly judge shopped. (Doc. 339 at 51). Given this "misconduct," the

1

Panel directed the Clerk of Court to close the case and serve its report on this Court to "proceed as appropriate." *Id.* at 51-52.

The Court reviewed the Panel's Final Report of Inquiry, the evidentiary record and sworn testimony before the Panel, the Respondents' arguments before the undersigned at the hearings of November 2 and 21, 2023, the Respondents' briefing, and the relevant authorities, and found it appropriate to proceed as to all Respondents. On February 21, 2024, the Court ordered Melody Eagan, Jeffrey Doss, Scott McCoy, Jennifer Levi, Shannon Minter, James Esseks, Kathleen Hartnett, Michael Shortnacy, LaTisha Faulks, Asaf Orr, and Carl Charles to show cause why they should not be sanctioned for the misconduct outlined in the Panel's Final Report of Inquiry and further detailed in the order to show cause. (Doc. 406).

All Respondents objected to the show-cause order. (Docs. 423, 425, 432, 441, 444 & 447). In their view, the show-cause order infringed each Respondent's right to due process by failing to give each one "fair notice that his [or her] conduct may warrant sanctions and the reasons why," *United States v. Shaygan*, 652 F.3d 1297, 1318 (11th Cir. 2011), and by applying a "collective" approach to the charge of misconduct, (*see* Docs. 423 at 2 & 425 at 2, 4). Michael Shortnacy, Melody Eagan, Jeffrey Doss, Scott McCoy, and Asaf Orr (Doc. 423), later joined by Kathleen Hartnett (Doc. 441) and Jennifer Levi and Shannon Minter (Doc. 444), asked for

2

clarification, moving the Court to issue each Respondent a separate, individualized show-cause order.

After briefing on the objections and argument on March 19, 2024, the Court concluded that the objections were meritless: the show-cause order gave the Respondents ample notice of the charges against them and satisfied the mandates of due process under the governing law. (Doc. 466). Even so, in recognition of the "great weight" of the professional reputations and institutional matters at stake, the Court agreed to clarify its order and provide unique notice to each Respondent by issuing eleven separate, individualized show-cause orders. *Id.* at 21.

Having found it appropriate to proceed as to all Respondents and clarify by separate order "the precise rule, standard, or law that he or she is alleged to have violated and how he or she allegedly violated it," *Shaygan*, 652 F.3d at 1319, the Court hereby **ORDERS** Melody Eagan to show cause why she should not be sanctioned for the misconduct set forth below.

I.  **LEGAL STANDARDS**

District courts are vested with the inherent power to sanction attorneys for bad faith conduct that "abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991). This inherent power is "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *id.* at 43, and it "is both broader and narrower than other means of imposing

sanctions." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Chambers*, 501 U.S. at 46). It is broader in that other authorities limit the court's sanction power to "certain individuals or conduct," while "the inherent power extends to a full range of litigation abuses"; it is narrower in limiting sanctions to bad faith conduct. *Id.* at 1314.

A court may invoke its inherent power to sanction attorneys "even if procedural rules exist which sanction the same conduct." *Chambers*, 501 U.S. at 49. Courts may also "rely on a variety of other sources of judicial power" to impose sanctions, including those prescribed by Rule 11 of the Federal Rules of Civil Procedure and the district court's local rules. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1336 (4th ed. 2023).

Before a court can impose sanctions against an attorney for misconduct, it "must comply with the mandates of due process" by giving the attorney "fair notice that his [or her] conduct may warrant sanctions and the reasons why." *United States v. Shaygan*, 652 F.3d 1297, 1318 (11th Cir. 2011) (internal quotation marks omitted). The notice may come by motion from a party seeking sanctions, or it may come "from the court, or from both." *Id.* The notice itself must apprise the attorneys charged with misconduct of "the precise rule, standard, or law that he or she is alleged to have violated and how he or she allegedly violated it." *Id.* at 1319. Once

4

on notice, "the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his [or her] actions." *Id.* at 1318.

## II. RULES, STANDARDS, AND CODES OF PROFESSIONAL CONDUCT APPLICABLE TO MELODY EAGAN

Ms. Eagan's misconduct implicates the following rules, standards, and codes of professional conduct. Where only part of a rule, standard, or code applies to Ms. Eagan's conduct, the relevant language is set forth in bold.

- **Prohibition Against Judge-Shopping.** Courts throughout the country prohibit attempts to manipulate or circumvent the random assignment of judges. This is as true in the Eleventh Circuit as it is anywhere in the nation. *See, e.g.*, *In re BellSouth Corp.*, 334 F.3d 941, 959 (11th Cir. 2003) (holding "that a contrivance to interfere with the judicial assignment process constitutes a threat to the orderly administration of justice" and that "attempts to manipulate the random assignment of judges . . . constitute[s] a disruption of the orderly administration of justice.").

- **Federal Rule of Civil Procedure 11(b).** Federal Rule of Civil Procedure 11(b) prohibits attorneys from presenting any signed paper to the court for an improper purpose:

> **By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:**

5

> (1) **it is not being presented for any improper purpose**, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

- **Local Rule 83.1(f) of the Northern District of Alabama Local Rules.**

Local Rule 83.1(f) prescribes the standards for professional conduct and obligations applicable to attorneys in the Northern District of Alabama and provides as follows:

> Each attorney who is admitted to the bar of this court or who appears in this court pursuant to subsection (b) or (c) of this Rule is required to be familiar with, and shall be governed by, the Local Rules of this court; and, to the extent not inconsistent with the preceding, the Alabama Rules of Professional Conduct adopted by the Alabama Supreme Court; and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct, except Rule 3.8(f) thereof. **Acts and omissions by any such attorney which violate such standards, individually or in concert with any other persons, shall constitute misconduct, whether or not occurring in the course of an attorney-client relationship, and shall be grounds for discipline**, as shall the commission by an attorney of any serious crime. **Discipline under this Rule may consist of disbarment, suspension, censure, reprimand, removal from a particular case, ineligibility for appointment as court-appointed counsel, ineligibility to appear under subsections (b) and (c), monetary sanctions, or any other sanction the court may deem appropriate.**

- **Local Rule 83.1(g) of the Middle District of Alabama.** Local Rule 83.1(g) prescribes the standards for professional conduct and obligations applicable to attorneys in the Middle District of Alabama and provides as follows:

> Attorneys admitted to practice before this Court shall adhere to this Court's Local Rules, the Alabama Rules of Professional Conduct, the Alabama Standards for Imposing Lawyer Discipline, and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct. **Attorney misconduct, whether or not occurring in the course of an attorney/client relationship, may be disciplined by disbarment, suspension, reprimand, monetary sanctions, removal from this Court's roster of attorneys eligible for practice before this Court, or such other sanction as the Court may deem appropriate.**

- **Alabama Rules of Professional Conduct.** Alabama Rule 3.3 requires candor toward the tribunal:

> **(a) A lawyer shall not knowingly:**
>
> **(1) Make a false statement of material fact or law to a tribunal**;
>
> **(2) Fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client**;
>
> (3) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.
>
> (b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.
>
> (c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

**(d) In an ex parte proceeding other than a grand jury proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.**

- **The American Bar Association Model Rules of Professional Conduct.** Model Rule 3.3 requires candor toward the tribunal:

    **(a) A lawyer shall not knowingly:**

    **(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;**

    (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

    (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

    (b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

    (c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

    **(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.**

- **Oath of Admission to the Northern District of Alabama.** To practice in United States District Court for the Northern District of Alabama, all attorneys must take the district's oath of admission, which provides as follows:

  > I do solemnly swear or affirm that I will support the Constitution of the United States and the Constitution of the State of Alabama; **I will maintain the respect due to courts of justice and judicial officers**; I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land; **I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by an artifice or false statement of fact or law**; I will maintain the confidence and preserve inviolate the secrets of my clients, and will accept no compensation in connection with their business except from them or with their knowledge and approval; I will abstain from all offensive conduct and advance no fact prejudicial to the honor or reputation of a party or witness unless required by the justice of the cause with which I am charged; and I will never reject for any consideration personal to myself the cause of the defenseless or oppressed, or delay any person's cause for lucre or malice.

- **Oath of Admission to the Middle District of Alabama.** To practice in United States District Court for the Middle District of Alabama, all attorneys must take the district's oath of admission, under which each attorney must swear or affirm that he or she will:

  > support and defend the constitution and laws of the United States of America; **that [he or she] will at all times maintain the respect due to courts of justice and judicial officers**; that [he or she] will, when assigned as counsel for indigent litigants, conscientiously and fairly represent said litigants to the best of [his or her] professional ability; that [he or she] will never reject for any consideration personal to [him

9

or herself] the cause of the defenseless or oppressed, **and that [he or she] will at all times maintain a professional conduct in accordance with the rules and orders of this court, the cannons of the American Bar Association and the Code of Ethics of the Alabama State Bar Association.**

- **Sworn Oath.** On May 20, 2022, the Respondents all swore or affirmed that the testimony they were about to give to the panel would "be the truth, **the whole truth**, and nothing but the truth."

### III.  SANCTIONABLE CONDUCT

Ms. Eagan must show cause why she should not be sanctioned for violating these rules, standards, and codes of professional conduct for each of the following reasons:

**a.  Judge-Shopping**

Ms. Eagan must show cause why she should not be sanctioned for attempting to manipulate the random case assignment procedures for the U.S. District Courts for the Northern and Middle Districts of Alabama in violation of controlling precedent, Rule 11 of the Federal Rules of Civil Procedure, and the rules of professional conduct applicable in the Northern and Middle Districts of Alabama. Ms. Eagan's response must account for the Panel's findings, set forth in Section V of its Report, that it was misconduct for

- All counsel, including Ms. Eagan, to coordinate the dismissal of the *Walker* and *Ladinsky* cases after their assignment to the Court, and then make clear that the new case would be refiled when commenting to the media about re-filing;

10

- All counsel, including Ms. Eagan, to engage in numerous and wide-ranging discussions about how judges were favorable or unfavorable in the context of deciding whether to dismiss and refile *Walker* and *Ladinsky*;

- All counsel, including Ms. Eagan, to suddenly dismiss *Walker* and *Ladinsky* after a series of phone conferences in which counsel discussed a number of matters, including their prospects in front of the Court and how the Court was a bad draw;

- All counsel, including Ms. Eagan, to abruptly stop the pursuit of emergency relief and dismiss and refile a case in the Middle District with brand new plaintiffs, even though time was of the essence and counsel's stated goal was to move quickly to enjoin what they viewed as an unconstitutional law;

- *Ladinsky* counsel, including Ms. Eagan, to decide over the weekend to file *Eknes-Tucker* in the Middle District, even though the plan for years had been to file suit in the Northern District; and

- *Ladinsky* counsel, including Ms. Eagan, to decide to file a new case with new plaintiffs in the Middle District to avoid the appearance of judge shopping and to avoid the Court.

(Doc. 339 at 51-52).

### b. Misrepresentation and Non-Disclosure

Ms. Eagan must also show cause why she should not be sanctioned for misrepresenting or otherwise failing to disclose key facts during the Panel's inquiry in violation of controlling precedent, Rule 11 of the Federal Rules of Civil Procedure, the rules of professional conduct applicable in the Northern and Middle Districts of Alabama, the Oaths of Admission for the Northern and Middle Districts of Alabama, and her sworn oath.

Ms. Eagan's response must address any findings in Section IV of the Panel's Report implicating either her credibility or any discrepancies between her own oral and written testimony and the oral and written testimony of all other attorneys who testified before the Panel.

Her response must also address the related finding set forth in Section V that it was misconduct for all counsel, including Ms. Eagan, to claim "that the dismissal was because Judge Axon did not explain the reassignment of *Ladinsky* and [the Court] set *Walker* for a status conference in Huntsville on April 18." (Doc. 339 at 52).

## IV.   POSSIBLE SANCTIONS FOR MELODY EAGAN

For the acts and omissions described above, Ms. Eagan is hereby notified that the Court may consider one or more of several possible sanctions, as appropriate, including suspension from practice in the Northern and Middle Districts of Alabama; censure; public or private reprimand; disqualification; ineligibility for appointment as court-appointed counsel; ineligibility to appear pro hac vice or on behalf of the United States in the Northern and Middle Districts of Alabama; and monetary sanctions.

## V.   CONCLUSION

The Court therefore **ORDERS** as follows:

Ms. Eagan must show good cause, if any there may be, why she should not be sanctioned for the conduct identified in this order, in Section II of the Court's previous order to show cause, and the Panel's Final Report of Inquiry.

As the Court has emphasized throughout these proceedings, if Ms. Eagan accepts full or partial responsibility for her misconduct, she may explain with specificity the misconduct for which she accepts responsibility and comment on the appropriate sanction in her response to this order.

Ms. Eagan's show-cause brief is due by **May 11, 2024**.

In a separate filing, Ms. Eagan must identify those portions of all other Respondents' briefs with which she agrees or disagrees by **May 21, 2024**.

Any submissions in response to this order must be filed by **May 8, 2024**.

The Court will hold a hearing **on May 23, 2024 at 9:30 a.m. in Courtroom 2F of the U.S. Courthouse in Montgomery, Alabama** to discuss factual and procedural issues for the show-cause hearing. The May 22 hearing, however, is **CANCELLED**. Given the objections and motion practice that followed the first show-cause order and the volume of work that these entailed, the show-cause hearing is **RESET** for **9:30 a.m. on June 27 and 28, 2024 in Courtroom 2F of the U.S. Courthouse in Montgomery, Alabama**. Ms. Eagan must appear with counsel on all three dates.

**DONE** and **ORDERED** this May 1, 2024.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE