**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **BRIANNA BOE, et al.,** | } | |
| | } | |
| *Plaintiffs*, | } | |
| | } | |
| **and** | } | |
| | } | |
| **UNITED STATES OF AMERICA,** | } | **Case No. 2:22-CV-184-LCB** |
| | } | |
| *Plaintiff-Intervenor*, | } | |
| | } | |
| **v.** | } | |
| | } | |
| **STEVE MARSHALL, et al.,** | } | |
| | } | |
| *Defendants*. | } | |

<u>**SUPPLEMENTAL DECLARATION OF JEFFREY P. DOSS**</u>

1.      I am over the age of nineteen and am otherwise competent to make this declaration, which is based on my personal knowledge.  I am providing this declaration in response to the Court's Order to Show Cause ("Order") as well as its Supplemental Order to Show Cause ("Supplemental Order").

2.      I am a partner at Lightfoot, Franklin & White, LLC ("Lightfoot") in Birmingham, Alabama.  I have been a member in good standing of the Alabama State Bar continuously since September 2009.  I am admitted to practice before the U.S. Supreme Court, the U.S. Court of Appeals for the Sixth Circuit, and the U.S. Court of Appeals for the Eleventh Circuit.  I am also admitted to practice before the U.S. District Courts for the Northern, Middle, and Southern Districts of Alabama (as well as their corresponding Bankruptcy Courts).  I have appeared *pro hac vice* before several courts, including the U.S. District Court for the Northern District of Georgia,

the U.S. District Court for the Middle District of Tennessee, the U.S. District Court for the Northern District of New York, and the U.S. District Court for the District of Colorado.

3.      For one year before joining Lightfoot in 2010, I clerked for the Hon. James H. Hancock and the Hon. R. David Proctor.

4.      I have never been disciplined by any bar association or court.  Before the three-judge panel's inquiry in *In re Vague, et al.*, Case No. 2:22-MC-3977 ("*Vague*"), and this Court's Order and Supplemental Order, I have never been investigated for any potential violation of a rule of professional conduct or rule of court.

5.      On July 27, 2022, I submitted a declaration to the three-judge panel in *Vague*.  Case No. 2:22-MC-3977, Doc. 80-2.  I have reviewed the contents of that declaration, and I stand behind it.  Then and now, my declaration was honest, truthful, and forthright in response to the questions that the panel asked me to address.  My declaration did not misrepresent or omit any fact the panel asked me to address.

6.      On August 4, 2022, I testified before the panel in *Vague*.  (*Vague*, Case No. 2:22-MC-3977, Doc. 78 at 236-69).  I have reviewed the transcript of the answers that I provided to the panel, and I stand behind those answers.  Then and now, my answers were honest, truthful, and forthright in response to the questions that the panel asked. My answers did not misrepresent or omit any fact the panel asked me to address.

**<u>Identified Actions</u>**

7.      In the Supplemental Order, the Court identified six acts that the panel referenced in its report.  (Doc. 483 at 10-11).  I address each act in this section.

8.     "All counsel, including Mr. Doss, to coordinate the dismissal of the *Walker* and *Ladinsky* cases after their assignment to the Court, and then for lead counsel to make clear that the new case would be refiled when commenting to the media about re-filing."  (Doc. 483 at 10).

> Response: First, I was not aware in April 2022, nor am I aware now, of any rule, statute, order, or case that precludes parties from "coordinat[ing] the dismissal" of one or more lawsuits.  In April 2022, I was aware of Federal Rule of Civil Procedure 41, which I understand confers an "absolute" and "unconditional" right to dismiss.  Second, I did not "comment[] to the media about re-filing" a lawsuit.  I am aware that Melody Eagan commented in response to a reporter's inquiry after the Attorney General tweeted about *Ladinsky*'s dismissal.  I am not aware of anything improper regarding Ms. Eagan's comment to the media.

9.     "All counsel, including Mr. Doss, to engage in numerous and wide-ranging discussions about how judges were favorable or unfavorable in the context of deciding whether to dismiss and refile *Walker* and *Ladinsky*."  (Doc. 483 at 10).

> Response:  I was not aware in April 2022, nor am I aware now, of any rule, statute, order, or case that precludes attorneys from expressing their opinions in "discussions about how judges [are] favorable or unfavorable," regardless of the discussion's context.  Judicial evaluation is commonplace.  Second, I did not engage "in numerous and wide-ranging discussions" with anyone regarding judicial assignments in the Northern District or the Middle District.  I was on the April 15, 2022, telephone call about which I have testified truthfully, and I provide additional testimony below.  During that telephone call, I expressed opinions about Your Honor.  Additionally, over the weekend after *Ladinsky*'s dismissal, I conferred with

Ms. Eagan regarding my opinions of the judges in the Middle District.  The panel
did not ask me about these discussions.

10.     "All counsel, including Mr. Doss, to suddenly dismiss *Walker* and *Ladinsky* after a
series of phone conferences in which counsel discussed a number of matters, including their
prospects in front of the Court and how the Court was a bad draw."  (Doc. 483 at 11).

> Response: First, I was not aware in April 2022, nor am I aware now, of any rule,
> statute, order, or case that precludes the voluntary dismissal of a case, whether
> "suddenly" or otherwise.  To the contrary, I believed then, and believe now, that
> Rule 41 conferred an absolute and unconditional right to dismiss *Ladinsky*.  Second,
> as I testified to the panel, the decision to dismiss was a complicated one in the face
> of a transfer of *Ladinsky* that was contrary to my experience in the Northern
> District.  As I testified, the totality of the circumstances was considered.

11.     "All counsel, including Mr. Doss, to abruptly stop the pursuit of emergency relief
and dismiss and refile a case in the Middle District with brand new plaintiffs, even though time
was of the essence and counsel's stated goal was to move quickly to enjoin what they viewed as
an unconstitutional law."  (Doc. 483 at 11).

> Response: First, I was not aware in April 2022, nor am I aware now, of any rule,
> statute, order, or case that precludes the voluntary dismissal of one case and the
> filing of a new case, with new plaintiffs, in another district, whether emergency
> relief is sought or not.  Second, at dismissal, the *Ladinsky* plaintiffs had not sought
> emergency relief.  No motion for an injunction had been filed.  Within one or two
> days of *Eknes-Tucker* being filed, a motion for a preliminary injunction was filed.

The dismissal of *Ladinsky* and the filing of *Eknes-Tucker* did not cause a material delay in seeking a preliminary injunction.

12.     "*Ladinsky* counsel, including Mr. Doss, to decide over the weekend to file *Eknes-Tucker* in the Middle District, even though the plan for years had been to file suit in the Northern District."  (Doc. 483 at 11).

> Response: First, I was not aware in April 2022, nor am I aware now, of any rule, statute, order, or case that requires the filing of a new case in one district instead of another when venue is proper in both districts.  For *Eknes-Tucker*, venue was proper in both the Northern District and the Middle District.  Second, I believed that filing in the Middle District was the best path to obtain a randomly assigned judge.

13.     "*Ladinsky* counsel, including Mr. Doss, to decide to file a new case with new plaintiffs in the Middle District to avoid the appearance of judge shopping and to avoid the Court."  (Doc. 483 at 11).

> Response: I address this allegation in the following section.

### Concerns About Perceived "Judge Shopping"

14.     Before filing *Eknes-Tucker*, I was concerned about whether there would be a public accusation that we were engaged in "judge shopping."  As I told the panel, I wanted to "eliminate any appearance of impropriety."  (Aug. 4, 2022, Trans. at 245).

15.     To be clear, though, I was not concerned that we had violated or were about to violate a rule, statute, case, or order.  I did not think that anything we had done or were about to do ran afoul of any rule.  Instead, I was concerned that opponents of gender-affirming care—generally, some politicians in Alabama—could use a public allegation of so-called "judge shopping" to bring the legitimacy of our lawsuit into question.

16.     Before filing *Eknes-Tucker*, I understood that gender-affirming care was considered controversial among politicians (and the public) in Alabama.   I also understood that some politicians had strong feelings regarding the medical treatment.   I did not want to do anything that could be used publicly by the opponents of gender-affirming care to undermine our efforts.

17.     Those concerns were confirmed following the *Ladinsky* dismissal.   Wes Allen, one of the sponsors of the law that we were challenging, made public comments suggesting that we were engaged in "judge shopping," even before we filed *Eknes-Tucker*.   Those comments were reported by *The Washington Post*.   *See* Anne Branigin, *For Alabama families with trans kids, a countdown to decide their futures*, Apr. 19, 2022 ("In a statement shared with *The Washington Post*, Alabama state Rep. Wes Allen (R), one of the champions of the health-care ban, accused the groups of trying to 'judge-shop'—refile in a district where the judge may be more likely to rule against the law.").   They were also reported by the *Alabama Political Reporter*.   *See* Jacob Holmes, *Lawsuits designed to block new law criminalizing transgender medical treatment dropped*, Apr. 19, 2022 ("'If they refile this suit in a different district, it will show they are attempting to judge-shop,' [Wes] Allen said.").

18.     I recall reading those statements before or around the time we filed *Eknes-Tucker*, which confirmed in my mind that we were making the right decision—again, from a public perception standpoint, not an ethical consideration—by filing a new lawsuit with new plaintiffs.

### April 15, 2022, Conference Call Details

19.     On April 15, 2022, I participated in a conference call with various members of the *Ladinsky* team.   Based on the panel's report, I am aware that one participant, Abigail Terry, testified that Ms. Eagan expressed an opinion that there was a "zero percent chance" of success before Your Honor.

20.     The panel did not ask me what was said during that conference call or whether I recalled Ms. Eagan having made that statement.  I have no recollection of Ms. Eagan having said— during that conference call or otherwise—that there was a "zero percent chance" of success before Your Honor.

21.     That conference call was chaotic and fast-paced. The call began with participants expressing confusion about why *Ladinsky* had been assigned by Judge Axon to Your Honor.  I shared that the transfer was contrary to my experience in the Northern District.  Others agreed, based on their experiences in the Northern District and other courts.

22.     The conversation shifted to whether there were any procedural options available, such as a motion to reconsider.  Ultimately, the consensus was that there would be no way to seek reconsideration.

23.     During the conversation, discussion included what effect, if any, the assignment had on *Ladinsky*'s lead case status.  Your Honor had set *Walker* for a status conference on the following Monday but had not correspondingly set *Ladinsky*.

24.     In the context of those discussions, the conversation included opinions about Your Honor.  Various participants expressed an opinion that Your Honor would likely not be receptive to the claims in this case.  Two years later, I do not recall exactly what was said or who said what. Similar opinions had been shared before filing *Ladinsky*.

25.     Following these discussions, one participant raised the idea of voluntarily dismissing the case.  I remember that everyone paused and seemed to consider the option.  No one expressed any reason why voluntarily dismissing the case would be improper.  I recall that another participant read Federal Rule of Civil Procedure 41 to the others.  By its plain terms, my judgment was that Rule 41 provided an unconditional right to dismiss *Ladinsky*.

26.     The decision was reached that *Ladinsky* should be voluntarily dismissed, provided our clients agreed.  Although the team agreed on the course of action—voluntary dismissal—there was not a discussion regarding the reason for doing so.  No one, for example, suggested that *Ladinsky* should be dismissed for one reason rather than another, with the team then expressing assent to a stated rationale.  No one, as another example, said that the dismissal would violate any rule, statute, order, or case, but that we should proceed with dismissal anyway.  Each team member's reasons were his or her own (and, for that reason, each lawyer may have placed different emphasis on different factors).

27.     If I had believed that there was any prohibition on voluntarily dismissing *Ladinsky*, I would not have agreed to do it.  I did not agree to the decision to dismiss *Ladinsky* with knowledge that the dismissal would violate a rule, statute, order, or case.  By the same token, if *Ladinsky* had been randomly assigned to Your Honor, I also would not have agreed to voluntarily dismiss it.

28.     When *Ladinsky* was filed, there was no plan to take any action in response to whichever judge was randomly assigned.  No action was taken upon the random assignments to the first three judges (Judge Manasco, Magistrate Judge Cornelius, and Judge Axon).  There had been no consideration of a voluntary dismissal until the unexpected event, late Friday afternoon, when *Ladinsky* lost its randomly assigned judge due to a direct reassignment without advance notice to the parties or opportunity to be heard.  After that reassignment occurred, I stand behind my testimony to the panel: There was a combination of concerns and opinions that led to my professional judgment that dismissal was the best option.

29.     As I testified to the panel, I considered "everything" when deciding whether voluntary dismissal was the best option. Rather than deceitfully "claiming" reasons to support my conclusion that dismissal was the best course for our clients, I truthfully told the panel the things

I considered, including (i) the direct assignment of *Ladinsky*, rather than a random assignment, to Your Honor; (ii) the perception that *Walker* was inching ahead of *Ladinsky* in terms of precedence; and (iii) my opinion regarding whether Your Honor would be amenable to the claims asserted in *Ladinsky*.  Based on my review of the transcript of the panel's hearings, every lawyer involved in the decision to dismiss *Ladinsky*—even though sequestered and some of whom were dismissed by the panel—independently confirmed under oath that the assignment of the action to Your Honor was only one of several factors that influenced the decision.

### Case Assignment Procedures

30.     I am generally familiar with the procedures for how cases are assigned in the Northern District.  My familiarity stems from two sources: (i) having continuously practiced in the Northern District since 2010, and (ii) having clerked for Judge Proctor.

31.     During my clerkship for Judge Proctor, I do not recall a case that was directly assigned from one judge to another.  Before *Ladinsky*, I do not recall a case where one judge directly reassigned a case to another judge.

32.     Before *Ladinsky*, it was my experience that cases could be reassigned (i) when a magistrate judge is assigned to a case and not all parties consent to the magistrate judge's jurisdiction, or (ii) when the assigned judge enters an order of recusal.  In both situations, the Clerk is responsible for randomly reassigning the case to another judge.

33.     Before *Ladinsky*, I was familiar with one procedure by which a judge could directly assign cases.  When two or more cases shared common questions of fact or law, that procedure was triggered by the filing of a motion to consolidate before the judge assigned to the earliest-filed action.  That judge would then decide the motion to consolidate.  If the motion to consolidate was granted, then the earliest-filed action's judge would reassign all related cases to himself or herself.

34.     For example, approximately six months before *Ladinsky* was dismissed, I represented Apple Inc. in several lawsuits filed in the Northern District and the Middle District. On September 8, 2021, we filed a motion to consolidate all Northern District cases before Judge Proctor, to whom the Clerk had randomly assigned the earliest-filed action. *Morgan, et al v. Apple Inc.*, Case No. 6:21-CV-973-RDP (N.D. Ala. Sept. 8, 2021). That motion was granted, and Judge Proctor reassigned the related cases to himself. *Morgan, et al. v. Apple Inc.*, Case No. 6:21-CV-973-RDP, Doc. 16 (N.D. Ala. Sept. 17, 2021) (reassigning eight cases—randomly assigned to Judge Haikala, Judge Maze, Judge Manasco, and Judge Coogler—to Judge Proctor). We then moved to transfer the Middle District cases to the Northern District. Those motions were granted, and the cases were randomly assigned to various judges in the Northern District. We notified Judge Proctor that the cases had been transferred, and Judge Proctor reassigned those cases to himself. *Morgan, et al. v. Apple Inc.*, Case No. 6:21-CV-937-RDP, Doc. 18 (N.D. Ala. Oct. 21, 2021) (reassigning newly transferred cases, which had been randomly assigned to Judge Maze and Judge Manasco, to Judge Proctor).

35.     In April 2022, I expected *Ladinsky* and *Walker* to follow the procedure that I had observed six months earlier—a procedure that was consistent with my experience clerking for Judge Proctor and with litigating in the Northern District since 2010. When those cases deviated and followed a process I had not seen before, I was concerned.

36.     To test my understanding and as part of responding to the Order and the Supplemental Order, I reviewed all cases (i) filed in the Northern District (ii) for the one-year period preceding the dismissal of *Ladinsky* that (iii) involved a judicial reassignment. For that universe, which included hundreds of cases, I found the following:

a.   <u>Recusals:</u> 21 cases where an order of recusal was entered, and the Clerk's Office then randomly reassigned the case.  *See* Exhibit A (list of cases).

b.   <u>Magistrate Judge to District Judge:</u> 253 cases where the Clerk's Office randomly reassigned a case to a district judge after the case was initially assigned to a magistrate judge.  *See* Exhibit B (list of cases).

c.   <u>Consolidations:</u> 12 sets of cases (44 total cases) where the judge assigned to the earliest-filed case consolidated two or more related cases and then reassigned to himself or herself all later-filed cases.  *See* Exhibit C (list of cases).  These cases confirmed my understanding that, in the Northern District, reassignments due to cases' relatedness typically follow that pattern.

d.   <u>Sua Sponte Reassignments:</u> I found no cases, before the *Ladinsky* dismissal, where one judge directly assigned a case to another judge or where the judge assigned to the first-filed case assigned that case to a judge assigned to a related, later-filed case.

37.   As I testified to the panel, the procedural oddity was not the sole reason for the voluntary dismissal, but neither was *Ladinsky*'s assignment to Your Honor.  Using my experience and professional judgment, the totality of the factors, in my mind, weighed in favor of voluntarily dismissing.

<b><u>Propriety of Voluntary Dismissal of <i>Ladinsky</i> and<br>Filing <i>Eknes-Tucker</i></u></b>

38.   Before *Ladinsky* was dismissed, I was unaware of any rule, statute, or case that limited when a voluntary dismissal under Federal Rule of Civil Procedure 41 could be exercised. I am still not aware of any rule, statute, or case.

39.     The panel and this Court's Order and Supplemental Order indicate that *In re BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003), limits when a case can be voluntarily dismissed. Although I do not recall reading *BellSouth* before the *Ladinsky* dismissal, I read it after the panel's inquiry began.  *BellSouth* does not mention Rule 41.  If I had searched on WestLaw or LexisNexis for "Federal Rule of Civil Procedure 41" or "Rule 41"—or searched for citing references to Rule 41 in the Eleventh Circuit—the day that *Ladinsky* was voluntarily dismissed, *BellSouth* would not have appeared in the results.

40.     Regarding where to file *Eknes-Tucker*, I was not aware in April 2022, and am still not aware, of any rule, statute, or case that would have required us to file *Eknes-Tucker* in the Northern District rather than the Middle District.  Venue was proper in the Middle District. Applying my professional judgment, I do not view *BellSouth* as overriding the discretion a lawyer has in deciding where to file a lawsuit when two or more venues are proper.

## Potential Discrepancies

41.     I have reviewed the transcripts and declarations from *Vague*.  I have not located any factual discrepancies between my testimony and the testimony of other attorneys.  Certainly, attorneys might have different recollections of the same events, but I have not found any discrepancies.  The only two examples that I have found—and I am not certain they even qualify as discrepancies—are addressed below.

42.     The first is how I answered a hypothetical question and how Scott McCoy answered a similar one.  On November 3, 2022, the panel had the following exchange with Mr. McCoy:

> JUDGE PROCTOR: Let's say the case had been randomly assigned to Burke off the bat and Walker got transferred in and went to Axon and you got this glowing report about Cornelius and Axon. And out of the blue, as far as you're concerned, this case was transferred by Burke to Axon, even though Burke was first filed.

MR. MCCOY: Yeah.

JUDGE PROCTOR: Are we dismissing on Friday at six o'clock?

MR. MCCOY: You know, it's hard to know without being in that circumstance. But, I mean, that seems like a bank error in your favor, and --

JUDGE PROCTOR: That's a great Monopoly line.

MR. MCCOY: I mean, I don't want to be flippant. It's -- the circumstances are different. It's hard to know in the moment what would have been going on.

(Nov. 3, 2022, Trans. at 214).

43.     On August 4, 2022, the panel asked me a similar question, and I answered as follows:

JUDGE PROCTOR: Okay. Can you tell us that if Judge Axon had ruled, instead of transferring her case to Judge Burke, she had sent this to another judge in the Southern Division of the Northern District, excluding me -- I'm not going to put you on the spot -- that you would have had the same reaction?

MR. DOSS: I've thought about that hypothetical for the past three months since this proceeding began, and the honest answer is I don't know what we would have done. I don't know what we would have done because this was such an unprecedented scenario that we found ourselves in. And if you change even one variable -- had this been an insurance coverage dispute, I'm not sure we would have had the same reaction, because it didn't have the same political sensitivities and finding ourselves where the procedure is not being -- appearing to us as not being followed. So if one variable is changed, if it's a different judge, I don't know what our judgment would have been. If it's a different type of case, I don't know what our judgment would have been. If it was a different judge -- I mean, that's the difficulty. I mean, I can say had the case been randomly assigned to Judge Burke, had *Ladinsky* been randomly assigned to Judge Burke, we would not have dismissed. And I base that off of my 12 years practice, never once having dismissed a case because I didn't like the judge. I can say that. I know that. But this unprecedented situation, if one variable is changed -- a different judge, for example -- I don't know what we would have done. And that's the most truthful answer I can give to that question.

(Aug. 4, 2022, Trans. at 264-65).

44.     Our answers to that hypothetical were not identical, but they were not incompatible. Both Mr. McCoy and I applied our experience and professional judgment to answer a hypothetical question as best we could. Mr. McCoy explained that it would be "hard to know" exactly what choice he would have made.  Likewise, I testified that, "if one variable is changed . . . I don't know what we would have done."  In that regard, although the answers were different, there was no discrepancy between them.  To me, though, how we answered a hypothetical, months after *Ladinsky* was dismissed, does not necessarily speak to how we would have decided an issue earlier.

45.     The other example is what Ms. Terry told the panel about the telephone conference on April 15, 2022, my recall of which I state in paragraphs 19-29.  Again, I have no recollection of Ms. Eagan having expressed an opinion—during that conference call or otherwise—that there was a "zero percent chance" of success before Your Honor.  In addition, having reviewed the testimony of the other participants in the call, none of them have corroborated Ms. Terry's recollection about that specific statement.  By the same token, Ms. Terry's testimony about the various reasons the decision was made to dismiss *Ladinsky*—reasons in addition to the case having been assigned to Your Honor—is consistent with the sequestered and independent testimony of the other participants, some of whom were dismissed by the panel and accused of no misconduct.

**Additional Information**

46.     The practice of law has been one of my true passions.  For fifteen years, I have tried my best to follow the rules, tell the truth, and treat others with respect.  My professional goal has been to develop a reputation where, although one may disagree with me, no one doubts that I am telling the truth, being candid, and never misrepresenting the law or the facts.

47.     It is deeply upsetting to me that any judge, let alone multiple judges, would question my honesty or adherence to the rules.  I sincerely apologize that there was even a question raised.

48.     Being accused of misconduct—and then being effectively found guilty of it by three federal judges, including one for whom I previously clerked, and all of whom I respect—has been devastating.  I feel like I have let them down, and for that, I apologize.

49.     The panel's report has been shared with the federal judges of Alabama and now, with its public release, is available to any judge, lawyer, or potential client.  Whether Your Honor ultimately decides to sanction me, I believe that my reputation with the bench and bar has been tainted and will remain tainted for a very long time.

50.     In addition, there has been national coverage of the panel's report.  I have seen social media posts covering it, many of which have been viewed by thousands of users.

51.     Setting my own reputation aside, there is nothing I regret more than bringing dishonor to my firm.  I have the utmost respect for the attorneys with whom I practice.  They are professional, ethical, and honest people.  They are dedicated to mentoring young lawyers and instilling in them a commitment to integrity.  Lightfoot's culture has always been to not only play by the rules but play well within them.  Though the articles covering the report do not always mention me by name, they always reference Lightfoot.  I deeply regret that I have done anything that could shame Lightfoot and the exceptional people who have spent their careers solidifying its reputation.

52.     At the time that I agreed to dismiss *Ladinsky* and file *Eknes-Tucker*, I sincerely did not believe that I was violating any rule, statute, order, or case—and I still do not know of any rule, statute, order, or case violated.

\*       \*       \*       \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Jeffrey P. Doss

Date: _____ May 8, 2024 _____

# EXHIBIT A

**Exhibit A to Doss Declaration**

Recusals in the
U.S. District Court for the Northern District of Alabama

(for cases filed between April 15, 2021, and April 15, 2022)

| |
|---|
| 1:21-CV-01023 |
| 1:21-CV-01226 |
| 2:21-CV-00687 |
| 2:21-CV-01010 |
| 2:21-CV-01205 |
| 2:21-CV-01302 |
| 2:22-CV-00021 |
| 2:22-CV-00214 |
| 2:22-CV-00388 |
| 4:21-CV-00655 |
| 5:21-CV-00950 |
| 5:21-CV-01310 |
| 5:21-CV-01511 |
| 5:21-CV-01620 |
| 5:21-CV-01646 |
| 5:21-CV-01707 |
| 5:22-CV-00392 |
| 7:21-CV-00643 |
| 7:21-CV-00890 |
| 7:22-CV-00135 |
| 7:22-CV-00374 |

# EXHIBIT B

**Exhibit B to Doss Declaration**

Reassignments from Magistrate Judges to District Judges in the
U.S. District Court for the Northern District of Alabama

(for cases filed between April 15, 2021, and April 15, 2022)

| |
|---|
| 1:21-CV-00914 |
| 1:21-CV-00937 |
| 1:21-CV-01292 |
| 1:21-CV-01312 |
| 1:22-CV-00036 |
| 1:22-CV-00129 |
| 1:22-CV-00250 |
| 2:21-CV-00554 |
| 2:21-CV-00604 |
| 2:21-CV-00627 |
| 2:21-CV-00640 |
| 2:21-CV-00641 |
| 2:21-CV-00659 |
| 2:21-CV-00662 |
| 2:21-CV-00664 |
| 2:21-CV-00669 |
| 2:21-CV-00677 |
| 2:21-CV-00686 |
| 2:21-CV-00701 |
| 2:21-CV-00751 |
| 2:21-CV-00759 |
| 2:21-CV-00768 |
| 2:21-CV-00785 |
| 2:21-CV-00786 |
| 2:21-CV-00787 |
| 2:21-CV-00800 |
| 2:21-CV-00802 |
| 2:21-CV-00814 |
| 2:21-CV-00852 |
| 2:21-CV-00854 |
| 2:21-CV-00859 |
| 2:21-CV-00875 |
| 2:21-CV-00895 |

| |
|---|
| 2:21-CV-00896 |
| 2:21-CV-00905 |
| 2:21-CV-00924 |
| 2:21-CV-00940 |
| 2:21-CV-00955 |
| 2:21-CV-01001 |
| 2:21-CV-01006 |
| 2:21-CV-01007 |
| 2:21-CV-01009 |
| 2:21-CV-01017 |
| 2:21-CV-01024 |
| 2:21-CV-01028 |
| 2:21-CV-01039 |
| 2:21-CV-01043 |
| 2:21-CV-01044 |
| 2:21-CV-01121 |
| 2:21-CV-01150 |
| 2:21-CV-01161 |
| 2:21-CV-01175 |
| 2:21-CV-01181 |
| 2:21-CV-01182 |
| 2:21-CV-01184 |
| 2:21-CV-01219 |
| 2:21-CV-01225 |
| 2:21-CV-01254 |
| 2:21-CV-01259 |
| 2:21-CV-01284 |
| 2:21-CV-01291 |
| 2:21-CV-01293 |
| 2:21-CV-01304 |
| 2:21-CV-01305 |
| 2:21-CV-01358 |
| 2:21-CV-01363 |
| 2:21-CV-01373 |
| 2:21-CV-01381 |
| 2:21-CV-01383 |
| 2:21-CV-01392 |
| 2:21-CV-01393 |
| 2:21-CV-01417 |

| |
|---|
| 2:21-CV-01430 |
| 2:21-CV-01454 |
| 2:21-CV-01461 |
| 2:21-CV-01487 |
| 2:21-CV-01493 |
| 2:21-CV-01496 |
| 2:21-CV-01505 |
| 2:21-CV-01522 |
| 2:21-CV-01572 |
| 2:21-CV-01573 |
| 2:21-CV-01574 |
| 2:21-CV-01580 |
| 2:21-CV-01608 |
| 2:21-CV-01627 |
| 2:21-CV-01631 |
| 2:21-CV-01633 |
| 2:21-CV-01645 |
| 2:21-CV-01654 |
| 2:21-CV-01675 |
| 2:21-CV-01683 |
| 2:21-CV-01687 |
| 2:21-CV-01691 |
| 2:21-CV-01703 |
| 2:21-CV-01720 |
| 2:22-CV-00016 |
| 2:22-CV-00048 |
| 2:22-CV-00054 |
| 2:22-CV-00056 |
| 2:22-CV-00058 |
| 2:22-CV-00063 |
| 2:22-CV-00073 |
| 2:22-CV-00075 |
| 2:22-CV-00079 |
| 2:22-CV-00084 |
| 2:22-CV-00088 |
| 2:22-CV-00097 |
| 2:22-CV-00111 |
| 2:22-CV-00123 |
| 2:22-CV-00124 |

| |
|---|
| 2:22-CV-00132 |
| 2:22-CV-00137 |
| 2:22-CV-00138 |
| 2:22-CV-00171 |
| 2:22-CV-00172 |
| 2:22-CV-00177 |
| 2:22-CV-00182 |
| 2:22-CV-00192 |
| 2:22-CV-00193 |
| 2:22-CV-00194 |
| 2:22-CV-00195 |
| 2:22-CV-00206 |
| 2:22-CV-00221 |
| 2:22-CV-00227 |
| 2:22-CV-00236 |
| 2:22-CV-00248 |
| 2:22-CV-00255 |
| 2:22-CV-00264 |
| 2:22-CV-00277 |
| 2:22-CV-00299 |
| 2:22-CV-00302 |
| 2:22-CV-00307 |
| 2:22-CV-00313 |
| 2:22-CV-00316 |
| 2:22-CV-00338 |
| 2:22-CV-00348 |
| 2:22-CV-00362 |
| 2:22-CV-00366 |
| 2:22-CV-00386 |
| 2:22-CV-00387 |
| 2:22-CV-00409 |
| 2:22-CV-00416 |
| 2:22-CV-00431 |
| 2:22-CV-00439 |
| 2:22-CV-00448 |
| 2:22-CV-00477 |
| 3:21-CV-00880 |
| 3:21-CV-01086 |
| 3:21-CV-01096 |

| |
|---|
| 3:21-CV-01109 |
| 3:21-CV-01230 |
| 3:21-CV-01263 |
| 3:21-CV-01281 |
| 3:21-CV-01331 |
| 3:21-CV-01377 |
| 3:21-CV-01727 |
| 3:22-CV-00020 |
| 3:22-CV-00322 |
| 3:22-CV-00342 |
| 3:22-CV-00391 |
| 4:21-CV-00555 |
| 4:21-CV-00570 |
| 4:21-CV-00600 |
| 4:21-CV-00865 |
| 4:21-CV-01129 |
| 4:21-CV-01140 |
| 4:21-CV-01357 |
| 4:21-CV-01446 |
| 4:21-CV-01540 |
| 4:21-CV-01552 |
| 4:21-CV-01657 |
| 4:21-CV-01728 |
| 4:22-CV-00223 |
| 4:22-CV-00435 |
| 5:21-CV-00535 |
| 5:21-CV-00704 |
| 5:21-CV-00713 |
| 5:21-CV-00811 |
| 5:21-CV-00812 |
| 5:21-CV-00841 |
| 5:21-CV-00864 |
| 5:21-CV-00872 |
| 5:21-CV-00887 |
| 5:21-CV-00917 |
| 5:21-CV-00988 |
| 5:21-CV-01035 |
| 5:21-CV-01038 |
| 5:21-CV-01050 |

| |
|---|
| 5:21-CV-01067 |
| 5:21-CV-01107 |
| 5:21-CV-01122 |
| 5:21-CV-01144 |
| 5:21-CV-01159 |
| 5:21-CV-01206 |
| 5:21-CV-01325 |
| 5:21-CV-01367 |
| 5:21-CV-01421 |
| 5:21-CV-01432 |
| 5:21-CV-01478 |
| 5:21-CV-01482 |
| 5:21-CV-01509 |
| 5:21-CV-01550 |
| 5:21-CV-01584 |
| 5:21-CV-01590 |
| 5:21-CV-01619 |
| 5:21-CV-01668 |
| 5:21-CV-01689 |
| 5:21-CV-01717 |
| 5:21-CV-01719 |
| 5:21-CV-01722 |
| 5:22-CV-00010 |
| 5:22-CV-00035 |
| 5:22-CV-00062 |
| 5:22-CV-00181 |
| 5:22-CV-00208 |
| 5:22-CV-00237 |
| 5:22-CV-00320 |
| 5:22-CV-00380 |
| 5:22-CV-00381 |
| 5:22-CV-00385 |
| 5:22-CV-00414 |
| 5:22-CV-00470 |
| 6:21-CV-00738 |
| 6:21-CV-01058 |
| 6:21-CV-01333 |
| 6:21-CV-01586 |
| 6:22-CV-00094 |

| |
|---|
| 6:22-CV-00187 |
| 6:22-CV-00428 |
| 6:22-CV-00436 |
| 7:21-CV-00618 |
| 7:21-CV-00688 |
| 7:21-CV-00692 |
| 7:21-CV-00780 |
| 7:21-CV-00792 |
| 7:21-CV-00842 |
| 7:21-CV-00898 |
| 7:21-CV-00912 |
| 7:21-CV-00945 |
| 7:21-CV-00963 |
| 7:21-CV-01048 |
| 7:21-CV-01405 |
| 7:21-CV-01437 |
| 7:21-CV-01477 |
| 7:21-CV-01514 |
| 7:21-CV-01578 |
| 7:21-CV-01596 |
| 7:22-CV-00005 |
| 7:22-CV-00025 |
| 7:22-CV-00093 |
| 7:22-CV-00310 |
| 3:21-CV-00764 |

# EXHIBIT C

**Exhibit C to Doss Declaration**

Consolidations of Related Cases in the
U.S. District Court for the Northern District of Alabama
(for cases filed between April 15, 2021, and April 15, 2022, and
involving consolidations before April 15, 2022)

- **Consolidation Group One**

  Related Cases:          1:21-CV-00539-ACA
                          1:21-CV-01243-CLM
                          1:21-CV-01355-CLM

  A motion to consolidate was filed in the earliest-filed case.  Doc. 74, Case No. 1:21-CV-00539-ACA (Nov. 4, 2021).  Judge Axon granted that motion and directed the Clerk to reassign the later-filed cases (1:21-CV-01243-CLM and 1:21-CV-01355-CLM, both assigned to Judge Maze) to Judge Axon.  Doc. 75, Case No. 1:21-CV-00539-ACA (Nov. 8, 2021).

- **Consolidation Group Two**

  Related Cases:          4:21-CV-00838-ACA-HNJ
                          4:21-CV-01250-AMM-HNJ

  A motion to consolidate was filed in the earlier-filed case.  Doc. 28, Case No. 4:21-CV-00838 (Feb. 1, 2023).  Judge Axon granted that motion and directed the Clerk to reassign the second-filed case (4:21-CV-01250-AMM-HNJ, assigned to Judge Manasco) to Judge Axon.  Doc. 30, Case No. 4:21-CV-00838 (May 15, 2023).

- **Consolidation Group Three**

  Related Cases:          2:19-CV-02099-LCB
                          2:21-CV-01424-RDP

  A motion to consolidate was filed in the second-filed case.  Doc. 6, Case No. 2:21-CV-01424-RDP (Jan. 26, 2023).  Judge Burke, who had the earlier-filed case (2:19-CV-02099-LCB), granted that motion and directed the Clerk to reassign the second-filed case (2:21-CV-01424-RDP, assigned to Judge Proctor), to Judge Burke.  Doc. 7, Case No. 2:21-CV-01424-RDP (Jan. 30, 2023).

- **Consolidation Group Four**

  Related Cases:          5:22-CV-00027-LCB
                          5:22-CV-00038-HNJ
                          5:22-CV-00148-SGC

A motion to consolidate was filed in the earliest-filed case.  Doc. 10, Case No. 5:22-CV-00027-LCB (Mar. 11, 2022).  Judge Burke granted that motion and directed the Clerk to reassign the later-filed cases (5:22-CV-00038-HNJ, assigned to Judge Johnson; and 5:22-CV-00148-SGC, assigned to Judge Cornelius) to Judge Burke.  Doc. 13, Case No. 5:22-CV-00027-LCB (Apr. 1, 2022).

- **Consolidation Group Five**

    Related Cases:        2:22-CV-00029-LSC
                          2:22-CV-00852-NAD

A motion to consolidate was filed in the earlier-filed case.  Doc. 34, Case No. 2:22-CV-00029-LSC (Aug. 25, 2022).  Judge Coogler granted that motion and directed the Clerk to reassign the later-filed case (2:22-CV-00852-NAD, assigned to Judge Danella) to Judge Coogler.  Doc. 35, Case No, 2:22-CV-00029-LSC (Aug. 31, 2022).

- **Consolidation Group Six**

    Related Cases:        2:22-CV-00309-MHH
                          2:22-CV-00405-AMM

Judge Haikala was assigned the earlier-filed case. Case No. 2:22-CV-00309-MHH.  Judge Haikala determined that consolidation was appropriate.  Doc. 10, Case No. 2:22-CV-00405-AMM (May 5, 2022).  Judge Haikala directed the Clerk to reassign the later-filed case (2:22-CV-00405-AMM) to Judge Haikala.  *Id.*

- **Consolidation Group Seven**

    Related Cases:        2:21-CV-00859-AMM
                          2:21-CV-01177-CLM

A motion to consolidate was filed in the earlier-filed case.  Doc. 26, Case No. 2:21-CV-00859-AMM (Mar. 1, 2022).  Judge Manasco granted that motion and directed the Clerk to reassign the later-filed case (2:21-CV-01177-CLM, assigned to Judge Maze) to Judge Manasco.  Doc. 31, Case No. 2:21-CV-00859-AMM (May 26, 2022)

- **Consolidation Group Eight**

    Related Cases:        7:21-CV-01602-CLM
                          7:21-CV-01659-RDP
                          7:21-CV-01660-MHH
                          7:21-CV-01708-CLM
                          7:21-CV-01714-LSC
                          7:21-CV-01715-AKK
                          7:21-CV-01716-AMM
                          7:22-CV-00089-AMM

7:22-CV-00091-RDP

A motion to consolidate was filed in the earliest-filed case.  Doc. 3, Case No. 7:21-CV-01602-CLM (Jan. 18, 2022).  Judge Maze granted that motion and directed the Clerk to reassign the later-filed cases (7:21-CV-01659-RDP, assigned to Judge Proctor; 7:21-CV-01660-MHH, assigned to Judge Haikala; 7:21-CV-01708-CLM, assigned to Judge Maze; 7:21-CV-01715-AKK, assigned to Judge Kallon; 7:21-CV-01716-AMM, assigned to Judge Manasco; 7:21-CV-01714-LSC, assigned to Judge Coogler; 7:22-CV-00091-RDP, assigned to Judge Proctor; 7:22-CV-00089-AMM, assigned to Judge Manasco) to Judge Maze.  Doc. 10, Case No. 7:21-CV-01602-CLM (Feb. 7, 2022).

- **Consolidation Group Nine**

  Related Cases:        2:21-CV-00725-RDP
                        6:21-CV-00726-LSC
                        6:21-CV-00727-GMB
                        6:21-CV-00728-LSC

A motion to consolidate was filed in the earliest-filed case.  Doc. 10, Case No. 2:21-CV-00725-RDP (June 9, 2021).  Judge Proctor granted that motion and directed the Clerk to reassign the later-filed cases (6:21-CV-00726-LSC, assigned to Judge Coogler; 6:21-CV-00727-GMB, assigned to Judge Borden; and 6:21-CV-00728-LSC, assigned to Judge Coogler) to Judge Proctor.  Doc. 11, Case No. 2:21-CV-00725-RDP (June 10, 2021).

- **Consolidation Group Ten**

  Related Cases:        2:22-CV-00166-RDP
                        2:22-CV-00167-SGC

A motion to consolidate was filed the earlier-filed case.  Doc. 3, Case No. 2:22-CV-00166-RDP (Mar. 28, 2022).  Judge Proctor granted that motion and directed the Clerk to reassign the later-filed case (2:22-CV-00167-SGC, assigned to Judge Cornelius) to Judge Proctor.  Doc. 6, Case No. 2:22-CV-00166-RDP (Apr. 11, 2022)

- **Consolidation Group Eleven**

  Related Cases:        6:21-CV-00973-RDP
                        7:21-CV-00974-LSC
                        5:21-CV-00975-MHH
                        4:21-CV-00976-CLM
                        3:21-CV-00977-MHH
                        2:21-CV-00978-AMM
                        1:21-CV-00979-CLM
                        2:21-CV-01232-CLM
                        2:21-CV-01233-AMM
                        2:21-CV-01379-CLM

2:21-CV-01386-AMM

A motion to consolidate was filed in the earliest-filed case.  Doc. 13, Case No. 6:21-CV-00973-RDP (Sept. 8, 2021).  Judge Proctor granted that motion and directed the Clerk to reassign the later-filed cases (7:21-CV-00974-LSC, assigned to Judge Coogler; 5:21-CV-00975-MHH, assigned to Judge Haikala; 4:21-CV-00976-CLM, assigned to Judge Maze; 3:21-CV-00977-MHH, assigned to Judge Haikala; 2:21-CV-00978-AMM, assigned to Judge Manasco; 1:21-CV-00979-CLM, assigned to Judge Maze; 2:21-CV-01232-CLM, assigned to Judge Maze; 2:21-CV-01233-AMM, assigned to Judge Manasco) to Judge Proctor.  Doc. 16, Case No. 6:21-CV-00973-RDP (Sept. 17, 2021).  Additional cases were then transferred to the Court, and Judge Proctor assigned those cases (2:21-CV-01379-CLM, assigned to Judge Maze; 2:21-CV-01386-AMM, assigned to Judge Manasco) to Judge Proctor.  Doc. 18, Case No. 6:21-CV-00973-RDP (Oct. 21, 2021).

- **Consolidation Group Twelve**

  Related Cases:        1:21-CV-01094-CLM
                        1:22-CV-00666-RDP

  A motion to consolidate was filed in the earlier-filed case.  Doc. 35, Case No. 1:21-CV-01094 (June 24, 2022).  Judge Maze granted that motion and directed the Clerk to reassign the later-filed case (1:22-CV-00666-RDP, assigned to Judge Proctor) to Judge Maze.  Doc. 36, Case No. 1:21-CV-01094 (July 7, 2022).