## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

BRIANNA BOE, et al.,

     Plaintiffs,

vs.

STEVE MARSHALL, et al.,

     Defendants.

2:22-CV-00184-LCB

## <u>DECLARATION OF GREGORY P. JOSEPH</u>

1.     I am the author of SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE (6th ed. 2020, Supp. 2024), which has been cited in close to 200 federal and state judicial decisions (including by the Eleventh Circuit and district courts in this Circuit[1]), more than 200 law review articles, many treatises, and the Advisory Committee Note to Federal Rule of Civil Procedure 11. My book has been described as "[t]he leading authority on sanctions law" (*Sec. Nat'l Bank v. Jones Day*, 800 F.3d 936, 944 (8th Cir. 2015)).

2.     For the last 30 years, I have served on the Board of Editors of MOORE'S FEDERAL PRACTICE (3d ed.).  My responsibilities include editing Chapter 41, which deals with Federal

---

[1]     *See JTR Enters., LLC v. Colombian Emeralds*, 697 F. App'x 976, 987 (11th Cir. 2017) (unpublished); *Andrews v. Autoliv Japan, Ltd.*, 2020 WL 10969020, at *2 (N.D. Ga.. May 4, 2020); *Regions Bank v. Kaplan*, 2018 U.S. Dist. LEXIS 68283, at *34, *35, 2018 WL 1833045, *10 (M.D. Fla. Mar. 1, 2018) (report and recommendation); *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 979 F. Supp. 2d 1270, 1279 (M.D. Fla. 2013); *Merritt v. Lake Jovita Homeowner's Ass'n*, 2010 WL 11507746, at *1 n. 2 (M.D. Fla. May 10, 2010).

Rule of Civil Procedure 41. The Eleventh Circuit has cited MOORE'S more than 350 times, including Chapter 41's analysis of Rule 41(a).[2]

3.        I have practiced in the federal and state courts since 1975 and have served as President of the American College of Trial Lawyers, Chair of the Section of Litigation of the American Bar Association, President (and currently Chair) of the Supreme Court Historical Society, a member of the Advisory Committee on the Federal Rules of Evidence, a member of the Council of the American Law Institute and Chair of the Professional Responsibility Committee of the New York City Bar Association. I have spoken at the Judicial Conferences of the First, Second, Third, Fifth, Sixth, Seventh, Eighth and Ninth Circuits, the U.S. Tax Court and the U.S. Court of Claims, and have lectured for the Federal Judicial Center and, by invitation, made presentations to the Standing Committee of Practice and Procedure of the U.S. Judicial Conference. Additional professional background may be found in the attached CV.

4.        I have been retained as an expert, not as counsel, by Lightfoot, Franklin & White LLC, counsel to Respondents Melody H. Eagan and Jeffrey P. Doss. I understand that Ms. Eagan and Mr. Doss have been ordered "to show cause why they should not be sanctioned for the misconduct outlined in the Final Report of Inquiry and detailed further" in Section II of this Court's Order to Show Cause entered on February 21, 2024 (the "Order to Show Cause") (ECF No. 406 at 2).

5.        It is not my place to instruct this Court on the law. This Declaration is intended to provide an opinion on the fact question of what a reasonable lawyer in the position of Ms. Eagan

---

[2]        *See, e.g., Esteva v. UBS Fin. Servs. Inc. (In re Esteva)*, 60 F.4th 664, 676 (11th Cir. 2023); *Sargeant v. Hall*, 951 F.3d 1280, 1286 (11th Cir. 2020); *Campbell v. Altec Indus.*, 605 F.3d 839, 841 .1 (11th Cir. 2010); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004); *ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1268 n.6 (11th Cir. 1999).

and Mr. Doss would understand that he or she was permitted to do under Federal Rule of Civil Procedure 41(a)(1)(A)(i), in the circumstances presented in April 2022 in *Ladinsky v. Ivey*, No. 5:22-cv-00447-LCB (N.D. Ala.), including the fact question whether a reasonable lawyer in their position would be aware or on notice that filing a Rule 41(a)(1) dismissal in those circumstances would constitute misconduct, and to provide perspectives that may be useful to the Court in exercising its discretion as to whether to impose sanctions.  To the extent I cite rules or authorities, it is to provide a framework for the perspective and opinions I express and not to purport to tell the Court what the law is.

6.      In framing this opinion, I am accepting the finding in the Final Report of Inquiry that, in their *pro bono* representation of the *Ladinsky* plaintiffs, "Eagan [and] Doss ... purposefully attempted to circumvent the random case assignment procedures of the United States District Courts for the Northern District of Alabama and the Middle District of Alabama" by "intentionally attempt[ing] to direct their cases to a judge they considered favorable and, in particular, to avoid Judge Burke" (Final Report of Inquiry (ECF No. 339) at 51, 52).  In other words, the Final Report of Inquiry finds that Ms. Eagan and Mr. Doss engaged in judge-shopping to avoid Your Honor.

7.      Your Honor is considering whether, in the circumstances presented to Ms. Eagan and Mr. Doss in April 2022, sanctions are appropriate for filing the Rule 41(a)(1)(A)(i) notice of dismissal in *Ladinsky* under the inherent power of the court, pursuant to *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), and its progeny (Order to Show Cause at 2-3), or Federal Rule of Civil Procedure 11(b)(1) (Order to Show Cause at 4).  My focus in what follows is the dilemma a reasonable lawyer in fact faces given the duty of zealous representation in the particular procedural setting Ms. Eagan and Mr. Doss found themselves in.

8.     *First*, a reasonable lawyer in Ms. Eagan's and Mr. Doss's shoes in April 2022 would understand that Rule 41(a)(1)(A)(i) conferred on them an absolute right to dismiss *Ladinsky*.  A reasonable lawyer in their position would, if they researched the point, look first to Eleventh Circuit law and *see, e.g.*, *Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir. 1990) ("It is well established that Rule 41(a)(1)(A)(i) grants a plaintiff an unconditional right to dismiss his complaint by notice and without an order of the court at any time prior to the defendant's service of an answer or a motion for summary judgment.");[3] *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1264-66 (11th Cir. 2021) ("Relevant here is Rule 41(a)(1)(A)(i), which means precisely what it says.  The Rule's text plainly grants a plaintiff the right to dismiss— without a court order—'an action' prior to a defendant serving 'either an answer or a motion for summary judgment.'"); *Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977) ("As the plain terms of Rule 41(a)(1)(i) establish, a plaintiff has an absolute right to dismiss a lawsuit before the defendant has filed an answer or summary judgment motion.").  *Accord, e.g.*, *King v. Benton*, 2023 U.S. Dist. LEXIS 58298, at *1 (S.D. Ga. April 3, 2023) ("A plaintiff's right to file a notice of dismissal under Rule 41(a)(1) before the service of an answer or a motion for summary judgment is 'absolute' and 'unconditional.'") (citing *Matthews*); *Ambrosia Coal & Constr. Co. v. Morales*, 2007 WL 9710667, *2 (S.D. Fla. Aug. 2, 2007) ("A plaintiff's right to file a notice of dismissal under Rule 41(a)(1) before the service of an answer or a motion for summary judgment is 'absolute' and "unconditional.'") (citing *Matthews*).  Consulting a treatise, they would *see, e.g.*, 8 MOORE'S FEDERAL PRACTICE at § 41.33[2] ("Subject to the specific provisions of other rules or statutes [none of which is relevant]..., a plaintiff's right to file a notice of dismissal under

---

[3]     Throughout this Declaration, citations, internal brackets, ellipses and quotations are omitted from, and emphasis is added to, quotations in this Declaration, unless otherwise indicated.

Rule 41(a)(1)(A)(i) before the service of an answer or motion for summary judgment is absolute and unconditional"). This is the law that reasonable lawyers in Ms. Eagan's and Mr. Doss's shoes would understand in April 2022.

9.      **_Second_**, reasonable lawyers in Ms. Eagan's and Mr. Doss's position would understand that they had this absolute right to dismiss _Ladinsky_ under Rule 41(a)(1) even if the prime purpose of doing so was to avoid adjudication by this Court—in other words, judge-shopping—and would further understand that this was not sanctionable. That is because every Circuit decision that has considered this question has so concluded, and there is no Eleventh Circuit law to the contrary. _See_:

- _Wolters Kluwer Fin. Servs. v. Scivantage_, 564 F.3d 110, 114-15 (2d Cir. 2009) (reversing sanctions):

  > With regard to the Rule 41 dismissal, a plaintiff who has not been served with an answer or motion for summary judgment has an unfettered right voluntarily and unilaterally to dismiss an action. Dismissal of a suit may be disruptive and annoying, but it is permitted by the rules. It follows that [plaintiff's counsel] was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, _and the fact that it did so to flee the jurisdiction or the judge does not make the filing sanctionable._"[4]

- _Adams v. USAA Cas. Ins. Co._, 863 F.3d 1069, 1080-81 (8th Cir. 2017) (reversing sanctions):

  > Rule 41(a)(1) cases require no judicial approval or review as a prerequisite to dismissal; in fact, the dismissal is effective upon filing, with no court action required. _The reason for the dismissal is irrelevant under Rule 41(a)(1)._ Therefore, we hold that the district court erred in concluding that counsel engaged in sanctionable conduct by stipulating to a dismissal under Rule 41(a)(1) for the purpose of forum shopping and avoiding an adverse result.

_See also Thorp v. Scarne_, 599 F.2d 1169, 1177 n.10 (2d Cir. 1979) ("As long as the plaintiff has

---

[4]      The Eleventh Circuit cited and relied upon _Wolters_ in _JTR Enters._, 697 F. App'x at 987 without addressing this holding.

brought himself within the requirements of Rule 41, his reasons for wanting to do so are not for

us to judge."), quoted with approval in *Farkash v. Five Star Travel Inc.*, 841 F. App'x 278, 280

(2d Cir. 2021); *accord* 8 MOORE'S FEDERAL PRACTICE at § 41.33[2] ("The plaintiff's motive for

filing the [Rule 41(a)(1)] notice is irrelevant."); *Genovesi v. Nelson*, 2011 WL 5909625, *1 (D.

Mass. Nov. 28, 2011) ("a plaintiff who has not been served with an answer or motion for

summary judgment has an unfettered right voluntarily and unilaterally to dismiss an action. '

[T]he fact that [he] did so to flee the jurisdiction or the judge does not make the filing

sanctionable'" (quoting *Wolters*)); *RSF Partners, LLC v. Silvermine Opportunity Funding, LLC*,

2014 WL 12707544, at *1 (N.D. Okla. July 31, 2014) ("A plaintiff's right to file a notice of

dismissal under Rule 41(a)(1)(A)(i) before the service of an answer or motion for summary

judgment is absolute and unconditional.... The plaintiff's motive for filing the notice is

irrelevant.") (quoting MOORE'S); *Ambrosia Coal*, 2007 WL 9710667 at *2 ("the plaintiff's

motive for filing the notice is irrelevant").

10.     ***Third***, a reasonable lawyer in Ms. Eagan's and Mr. Doss's shoes would not have

understood that the absolute right to dismiss under Rule 41(a)(1)—even for purposes of judge-

shopping—was affected by the Eleventh Circuit's decision in *In re BellSouth Corp.*, 334 F.3d

941, 943, 949, 955, 956 (11th Cir. 2003).  The Final Report of Inquiry cites *BellSouth* for the

proposition that "judge shopping ... abuses the judicial process" (Final Report of Inquiry at 2).

11.     Lawyers understand that the term "judge-shopping" has multiple meanings, and

many are perfectly permissible.  In *BellSouth*, "judge-shopping" referred to an impermissible

practice, hiring a lawyer for purpose of forcing the District Judge to recuse.  That practice is not

authorized by any rule or statute.  In contrast, a reasonable lawyer would understand that

dismissing an action under Rule 41(a)(1) is specifically permitted by rule, and existing law

permits it to be done regardless of motive.

12.     A reasonable lawyer would note that *BellSouth* relies on decisions from the

Second and Fifth Circuits—specifically, *In re FCC*, 208 F.3d 137 (2d Cir. 2000), and *McCuin v.*

*Tex. Power & Light Co.*, 714 F.2d 1255 (5th Cir. 1983).  Both of those decisions properly

condemn the noxious practice that was before the *BellSouth* Court—hiring a lawyer to force

recusal of a presiding judge.  But a reasonable lawyer would also observe that the Second and

Fifth Circuits explicitly recognize that plaintiffs may dismiss their suits under Rule 41(a)(1) even

if the purpose is forum shopping.  In addition to the Second Circuit's decisions in *Wolters*,

*Thorpe* and *Farkash*, *supra*, *see* the Fifth Circuit's discussion in *Bechuck v. Home Depot U.S.A.,*

*Inc.*, 814 F.3d 287, 292-93 (5th Cir. 2016):

> Court-ordered sanctions should be neither a consequence of a voluntary dismissal without prejudice nor a condition placed upon such dismissal.... Although forum-shopping is not a trivial concern, Rule 41(a)(1) essentially permits forum shopping. It is not uncommon for plaintiffs to use voluntary dismissal to secure their preferred forum, such as when they seek to undo removal and return to state court.  While this may seem distasteful to opposing parties, we have consistently held that Rule 41(a)(1) means what it says ... and defendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss actions under Rule 41(a)(1) may do so by taking the simple step of filing an answer.

13.     A reasonable lawyer would also note that *BellSouth* relies on the *McCuin* decision

of the Fifth Circuit, and that *McCuin* recognizes that, in contexts other than hiring a lawyer to

disqualify a judge, forum shopping is permissible:

> Forum-shopping is sanctioned by our judicial system. It is as American as the Constitution.... [T]he actual litigation process is not a laboratory in which the same result is obtained after every test.... Even when legal rules are identical, justice can be obtained only through human beings, and neither judges nor jurors are fungible.

714 F.2d at 1261-62.  In prohibiting the specific practice of hiring counsel for the purpose of

forcing recusal of a presiding judge, *McCuin* stressed that prohibiting this pernicious conduct was

consistent with the intentions of the drafters of the recusal statute, 28 U.S.C. § 455:

> If a party who is offended by a judge's ruling could disqualify the judge by employing new counsel after the case had been pending before that judge for years, he could force on other litigants and the courts the penalty of starting over before a new judge.... The drafters of § 455 warned that "each judge must be alert to avoid the possibility that those who would [seek his disqualification] are in fact seeking to avoid the consequences of his expected adverse decision."

*Id.* at 1263-64 (brackets in original). Rule 41(a)(1) has no similar drafting history.

14.     Further, with respect to the Final Report of Inquiry's statement that *BellSouth* stands for the proposition that "judge shopping ... abuses the judicial process" (Final Report of Inquiry at 2), a reasonable lawyer in Ms. Eagan's and Mr. Doss's position would know that there are various other meanings of "judge-shopping" apart from the conduct barred by *BellSouth* and the dismissal of a case in accordance with Rule 41(a)(1).  They would know, for example, that "judge-shopping" may refer to a lawyer's choosing to file a case in a single-judge division of a District Court to get a particular judge.  The Judicial Conference recently adopted a policy precluding filing in single-judge divisions in very limited circumstances—where the case "seek[s] to bar or mandate state or federal actions, 'whether by declaratory judgment and/or any form of injunctive relief.'  In such cases, if this policy is enforced, judges would be assigned through a district-wide random selection process." [Conference Acts to Promote Random Case Assignment | United States Courts (uscourts.gov)](#).  But in all other cases, judge-shopping by filing in single-judge divisions remains permissible—and it was permissible in the limited category addressed by the new policy before that policy was adopted in March of 2024.  As Judge Proctor stated during the inquiry:  "I was not born yesterday.  I understand that that's an important factor.  Every case that comes in, you evaluate your judge.  You try to assess the judge.  And there's nothing wrong with filing in a particular division to get a judge is my personal view."  Aug. 4, 2022, Hearing Transcript at 254:20-24, *In re Vague*, No. 2:22-mc-03977-LCB (M.D. Ala. Oct. 10, 2023), ECF No. 78.

15.     ***Fourth***, a reasonable lawyer in Ms. Eagan and Mr. Doss's position would know that the judges of the Alabama District Courts had not promulgated a local rule forbidding them from using of Rule 41(a)(1) for purposes of judge-shopping, in contrast to other federal district courts.  A number of federal district courts have enacted local rules providing that, if a case is refiled after it has been dismissed, it will be reassigned to the same District Judge.  *See, e.g.,* Local Rule 40.1 of the Local Rules of the United States District Courts for the Eastern and Western Districts of Arkansas:

> (c) **Voluntary Nonsuits**. When the plaintiff takes a voluntary nonsuit in a case and subsequently refiles that same case, the Clerk will assign it to the judge who handled it at the time of the entry of the nonsuit order.  To assist the Court and the Clerk's office in carrying out the provision of this rule, the refiled complaint shall contain a brief paragraph identifying, by style and case number, the former proceeding in which the voluntary nonsuit was entered and the name of the judge handling the case at the time of the entry of said voluntary nonsuit order

Many other federal district courts have similar rules.  *See, e.g.*:

- S.D. Ohio Local Rule 41.1:

  **Assignment of Previously Dismissed Action.** If an action is filed or removed to this Court and subsequently discontinued, dismissed without prejudice, or remanded to a state court and is then subsequently refiled or removed, the new case shall be assigned or transferred to the same District Judge and Magistrate Judge who were assigned the initial case. Counsel or a pro se party shall be responsible for bringing to the attention of the Court by notation on the civil cover sheet or otherwise any relationship between a new case and an earlier one. The Chief District Judge has authority, pursuant to 28 U.S.C. § 137, to approve such exceptions to this assignment policy as are in the interests of justice.

- D.N.J. Local Rule 40.1(c):

  **Related Cases.** When a civil action, whether filed by counsel or a pro se party: ... (2) grows out of the same transaction as any case ... previously pending in this Court..., counsel or the pro se party shall at the time of filing the action inform the Clerk of such fact. Whenever possible, such action shall be assigned to the same Judge to whom the pending or previously related action is or was assigned.

- C.D. Cal. Local Rules 83-1.2.1 and 83-1.2.2:

    **L.R. 83-1.2.1.  Improper Refiling of Actions**.  It is not permissible to dismiss and thereafter refile an action for the purpose of obtaining a different judge.

    **L.R. 83-1.2.2.  Duty on Refiling of Actions.**  Whenever an action is dismissed by a party or by the Court before judgment and thereafter the same or essentially the same claims, involving the same or essentially the same parties, are alleged in another action, the later-filed action shall be assigned to the judge to whom the first-filed action was assigned. It shall be the duty of every attorney in any such later-filed action to bring those facts to the attention of the Court in the Civil Cover Sheet and by the filing of a Notice of Related Case(s) pursuant to L.R. 83-1.3.

- D.R.I. Local Rule 105(a) (3):

    **Re-filed Cases**. A civil or criminal case that appears to involve substantially the same parties and issues as a case or proceeding that previously was brought in this Court and dismissed or otherwise terminated shall be provisionally assigned to the judge who originally was assigned the prior case or proceeding, or if already assigned, shall be transferred to the judge who originally was assigned the prior case or proceeding.

- S.D.N.Y. Rules for the Division of Business Among District Judges, Rule 4:

    **(b) Assignment by the Clerk by Lot.** ... An action, case, or proceeding may not be dismissed and thereafter refiled for the purpose of obtaining a different judge. If an action, case, or proceeding, or one essentially the same, is dismissed and refiled in this court, or removed or transferred to this court, it shall be assigned to the same judge. It is the duty of every attorney appearing to bring the facts of the refiling to the attention of the clerk.

16.     *Fifth*, a reasonable lawyer filing a Rule 41(a)(1) notice of dismissal for purposes of judge-shopping, in the circumstances presented in the *Ladinsky* case in April 2022, would not think that he or she was doing so for an "improper purpose" within Rule 11(b)(1) or in bad faith. A reasonable lawyer would conclude that there was no "improper purpose" because the purpose—judge-shopping—has been expressly upheld as non-sanctionable by the Second and Eighth Circuits, and no Circuit has disagreed.  A reasonable lawyer would also conclude that it is not an act of bad faith to take an action that has been judicially vindicated each time it has been challenged in any United States Court of Appeals, especially when the lawyer was taking that

action for the sole purpose of benefiting his or her clients.

17.     ***Sixth,*** a reasonable lawyer would understand that the purpose of imposing a sanction under Rule 11 is deterrence, and that once the goal of deterrence has been achieved, the imposition of sanctions is unnecessary, and no sanction should be imposed. *See* Rule 11(c)(1)(4) ("A sanction imposed under this rule *must be limited to what suffices to deter* repetition of the conduct or comparable conduct by others similarly situated."). A reasonable lawyer would also understand that the two purposes of inherent power sanctions are deterrence and punishment. *Peer v. Lewis*, 571 F. App'x 840, 846 (11th Cir. 2014) (unpublished) ("A court employs its inherent power to sanction an attorney to punish and deter untoward conduct") (citing *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002)).

18.     It is for Your Honor to determine whether deterrence and punishment have already been achieved given that:

> a.   Ms. Eagan and Mr. Doss have been subjected to two years of proceedings challenging their conduct, with their professional reputations at stake—proceedings brought at the instance of all of the federal judges in the State of Alabama (May 20, 2022, Hearing Transcript at 3:24-4:3, *In re Vague*, No. 2:22-mc-03977-LCB (M.D. Ala. Oct. 10, 2023), ECF No. 75 (Proctor, D.J.)).
>
> b.   They have spent days drafting Declarations, attending hearings, and being cross-examined by distinguished federal judges.
>
> c.   They are the subject of a public Final Report of Inquiry which states that they have committed "misconduct" and otherwise portrays them in a highly unfavorable light and tarnishes their professional reputations with

findings that include:

    i.    "Counsel's misconduct in the three cases (both individual and collective) included ..." (*id.* at 51),

    ii.    "There are ... a number of holes in counsel's various explanations about the decision" to file the Rule 41(a)(1) notice of dismissal (*id.* at 40),

    iii.    There are "major problems with Doss's explanation" of events (*id.* at 48), and

    iv.    Contrary to their testimony, "Eagan [and] Doss ... purposefully attempted to circumvent the random case assignment procedures of the United States District Courts for the Northern District of Alabama and the Middle District of Alabama" by "intentionally attempt[ing] to direct their cases to a judge they considered favorable and, in particular, to avoid Judge Burke" (*id.* at 51, 52).

d.    Ms. Eagan and Mr. Doss are also the subject of Your Honor's public February 21, 2024, Order to Show Cause, which states that they have committed misconduct, ordering them "to show cause why they should not be sanctioned for the misconduct outlined in the Final Report of Inquiry and detailed further below" (ECF 406 at 2). *See also id.* at 3 ("The misconduct described and findings made in [the] panel's Final Report of Inquiry implicate the rules, standards, and codes of professional conduct set forth below"), 4 ("These rules, standards, and codes cover all misconduct described in the Final Report of Inquiry....").

e.    Ms. Eagan and Mr. Doss are also the subject of Your Honor's public Order of April 5, 2024 (ECF 466), which states that they committed "misconduct" and repeats the same conclusion from the Final Report of Inquiry:

    i.    "In these proceedings, eleven attorneys (the 'Respondents') have been ordered to show cause why they should not be sanctioned for

misconduct first set forth in a 53-page report and amplified in the show-cause order" (*id.* at 1)

    ii. "The panel articulated ten specific findings of misconduct, capturing in these the pith of the full blow-by-blow narrative recounted in the body of the Report" (*id.* at 7).

f. Ms. Eagan and Mr. Doss are also the subject of Your Honor's public Orders to Show Cause dated May 1, 2024 (ECF 483 and 484), both of which state that they committed "misconduct" and repeats the same conclusion from the Final Report of Inquiry in multiple places, including the following:

    i. "In May of 2022, the chief judges of the United States District Courts for the Northern, Middle, and Southern Districts of Alabama convened a three-judge panel to investigate the propriety of certain filing activity and public statements that had given the appearance of impermissible judge shopping.... Seventeen months later, the Panel closed its investigation with an exhaustive 53-page final report, concluding 'without hesitation' that eleven of the lawyers [including Ms. Eagan and Mr. Doss] ... had impermissibly judge shopped. Given this 'misconduct,' the Panel directed the Cloerk of Court to closed th case and serve its report on this Court to 'proceed as appropriate'" (ECF 483 at 1; ECF 484 at 1).

    ii. "On February 21, 2024, the Court ordered Melody Eagan, Jeffrey Doss [and others] to show cause why they should not be sanctioned for the misconduct outlined in the Panel's Final Report of Inquiry... (ECF 483 at 2; ECF 484 at 2).

    iii. "The Court hereby **ORDERS** [Melody Eagan/Jeffry Doss] to show cause why [she/he] should not be sanctioned for the misconduct set forth below" (ECF 483 at 3; ECF 484 at 3).

    iv. "[Ms. Eagan's/Mr. Doss's] misconduct implicates the following rules, standards, and codes of professional conduct" (ECF 483 at 4; ECF 484 at 5).

    v. "As the Court has emphasized throughout these proceedings, if [Ms. Eagan/Mr. Doss] accepts full or partial responsibility for [her/his] misconduct, [she/he] may explain with specificity the misconduct for which [she/he] accepts responsibility ..." (ECF 483 at 13; ECF 484 12-13).

19.     It is also for Your Honor to determine whether deterrence and punishment have already been achieved, given that the Final Report of Inquiry containing these findings was sent to this Court and the Chief Judges of the Northern and Middle Districts of Alabama (the Chief Judge of the Southern District is one of the authors of the Final Report of Inquiry).  Those are the judges before whom Ms. Eagan and Mr. Doss practice.

20.     A reasonable lawyer in Ms. Eagan's and Mr. Doss's shoes would also be acutely aware that, since the Final Report of Inquiry was unsealed by Your Honor on March 19, 2024, it has been made public by the media, attached to stories about Your Honor's Order to Show Cause.  *See, e.g.*:

- REUTERS:  Raymond, ***LGBTQ rights lawyers face potential sanctions over Alabama 'judge shopping'*** (March 20, 2024 at 7:53 p.m.) (attaching report) https://www.reuters.com/legal/government/lgbtq-rights-lawyers-face-potential-sanctions-over-alabama-judge-shopping-2024-03-20/

  Eleven attorneys at major LGBTQ rights groups and law firms engaged in impermissible judge-shopping to steer litigation challenging Alabama's ban on gender-affirming medical care for transgender youth away from a conservative judge, a three-judge panel concluded in a newly unsealed report.....

  [Lawyers] worked at three law firms who litigated the cases pro bono: Melody Eagan of Jeffrey Doss of Lightfoot, Franklin & White....

  Those attorneys face potential sanctions that range from suspension from practicing in the Northern and Middle Districts of Alabama to monetary sanctions. ...

- **NBC NEWS** (March 20, 2024) — reprinting the Reuters story and attaching the report.  https://www.nbcnews.com/nbc-out/out-news/lgbtq-rights-lawyers-face-potential-sanctions-alabama-judge-shopping-rcna144324

- LAW360: ***Trans Kids' Attys May Face Sanctions Over Ala. Judges' Probe*** (March 20, 2024, 11:14 p.m.) (attaching Final Report of Inquiry), https://www.law360.com/articles/1815736/trans-kids-attys-may-face-sanctions-over-

ala-judges-probe:[5]

> Eleven attorneys, including lawyers from ... Lightfoot Franklin & White LLC ... have been ordered to show why they should not be sanctioned after a judicial report concluded they engaged in judge-shopping when challenging an Alabama law banning certain medical procedures for transgender youth according to a newly unsealed order....
>
> Those lawyers include Melody Eagan and Jeffrey Doss of Lightfoot Franklin....
>
> In addition to the judge-shopping claims, Judge Burke said the attorneys should explain why they should not be sanctioned for allegedly misrepresenting or failing to disclose key facts during the judicial inquiry. In addition, he also asked that certain attorneys respond to claims they breached attorney-client duties....
>
> Judge Burke's order said potential sanctions in the matter include monetary sanctions, censure, public or private reprimand, disqualification, a suspension from being able to practice in the Northern and Middle Districts of Alabama; and ineligibility to appear pro hac vice or on behalf of the United States in the districts. ...

- NATIONAL REVIEW: Whelan, ***Ruling on 'Judge Shopping' in Transgender Cases Finds 11 Lawyers Guilty of Misconduct*** (March 20, 2024 at 2:07 p.m.) (attaching report), https://www.nationalreview.com/bench-memos/ruling-on-judge-shopping-in-transgender-cases-finds-11-lawyers-guilty-of-misconduct/:

> A few months ago, I discussed the effort by plaintiffs' lawyers to block disclosure of a three-judge panel's report on their improper judge-shopping in several cases in which they challenged an Alabama law that bars providing puberty blockers or cross-sex hormones to minors as treatment for gender dysphoria. The panel's report has now been unsealed....
>
> The exhaustive 53-page report "concludes without reservation" that various lawyers for the plaintiffs "purposefully attempted to circumvent the random case assignment procedures" of the federal courts in Alabama. Of the 39 plaintiffs' lawyers involved in the cases, the report determines that eleven lawyers committed various acts of "misconduct" as they "intentionally attempted to direct their cases to a judge they considered favorable and, in particular, to avoid Judge Burke." In the order in which the report lists them, these lawyers are:

---

[5] This Law360 article was emailed to all of the lawyers who subscribe to Law360 newsletters. It appeared in the March 21 issues of all six Law360 that I receive: *Trial*, *Appellate*, *Legal Ethics*, *Securities*, *Class Action*, and *Bankruptcy*.

Melody Eagan, Lightfoot, Franklin & White

Jeffrey Doss, Lightfoot, Franklin & White....

- **AL.com**: Koplowitz, ***11 lawyers challenging Alabama's transgender care ban for minors 'judge shopped,' panel finds*** (March 19, 2024 at 6:36 p.m.) (not attaching report)

> Eleven attorneys representing plaintiffs challenging Alabama's transgender care ban for minors are being asked by a federal judge why they should not face discipline after a three-judge panel found the lawyers engaged in "judge shopping." ...
>
> In their report, Senior U.S. District Court Judge W. Keith Watkins, U.S. District Court Judge R. David Proctor and Chief U.S. District Court Judge for the Southern District of Alabama Jeffrey Beaverstock, said their 1 1/2-year investigation into the judge shopping allegations showed "counsel intentionally attempted to direct their cases to a judge they considered favorable and, in particular, to avoid Judge Burke."
>
> The panel also said there was "no doubt" that the lawyers for two of the cases would not have dismissed their cases "if Judge Burke was never assigned" to one of them.
>
> In an order sent to the attorneys, Burke said they have until Friday "to show cause why they should not be sanctioned for the misconduct." ...

Other stories have appeared so far,[6] and more are virtually certain.

21.     It is for Your Honor to consider whether the process that culminated in the Final Report of Inquiry, the findings about Ms. Eagan and Mr. Doss in the Report itself, and the adverse publicity and circulation of the Final Report of Inquiry serve the same purpose that any

---

[6]     Reason.com: Blackman, *Progressive Lawyers Engage In Actual Judge Shopping In Alabama* (https://reason.com/volokh/2024/03/20/progressive-lawyers-engage-in-actual-judge-shopping-in-alabama/); WASHINGTON STANDARD: Arnold, *Court Cites 11 Left-Wing Lawyers for Judge Shopping against Alabama's Vulnerable Child Protection Act,* Court Cites 11 Left-Wing Lawyers for Judge Shopping against Alabama's Vulnerable Child Protection Act (washingtonstand.com); 19th Century News:  *Alabama judge unseals report accusing top LGBTQ+ rights attorneys of improper judge shopping* (Top LGBTQ+ lawyers accused of judge shopping in Alabama (19thnews.org)); ABA JOURNAL:  Weiss, *Lawyers representing transgender plaintiffs face possible sanctions for alleged 'judge shopping.'*. Lawyers representing transgender plaintiffs face possible sanctions for alleged 'judge shopping' (abajournal.com).

sanction would—deterrence and punishment.  *See, e.g.*, *Sec. Nat'l Bank v. Jones Day*, 800 F.3d at 945:  "Once information about an unusual sanction appears in public, the damage to the subject's career, reputation, and future professional opportunities can be difficult if not impossible to repair.... Assuming without deciding that there was sanctionable conduct here, defense counsel has already suffered 'inevitable financial and personal costs,' *see Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 143 (2d Cir. 2000), and any additional sanction proceeding so long after the disputed conduct would not usefully serve the deterrent purpose of Rule 30(d)(2)...."

22.     ***Seventh,*** in light of the decisions stating that lawyers may file a Rule 41(a)(1) notice of dismissal regardless of motive—decisions rendered by the Second and Eighth Circuits, the Eleventh Circuit district court decision in *Ambrosia Coal* (*see* ¶9, *supra*), the decisions of other district courts,[7] and echoed in the MOORE'S  treatise—and in the absence of any Circuit authority to the contrary—a reasonable lawyer in Ms. Eagan's and Mr. Doss's position in April 2022 would not, as a factual matter, be on notice that filing a Rule 41(a)(1)(A)(i) notice to dismiss *Ladinsky* in the circumstances presented would constitute "misconduct," even if the purpose was to avoid adjudication by Your Honor.

23.     ***Eighth,*** a reasonable lawyer would appreciate that sanctions of any sort are

---

[7]     In addition to the district court cases cited in ¶ 9, *see also, e.g.*, *Kelly v. Cmty. Protestant Church*, 2022 WL 16574166, at *3 (D. Mont. Nov. 1, 2022) ("the reason for the dismissal is irrelevant under Rule 41(a)(1)") (quoting the Eighth Circuit's decision in *Adams*); *G&G Closed Circuit Events, LLC v. Davila*, 2015 WL 300737, at *3 (W.D. Tex. Jan. 22, 2015) ("A dismissal by notice is 'self-effectuating;' no judicial action or approval is necessary. Plaintiff's reasons for dismissal are immaterial.") (quoting the Second Circuit's decision in *Wolters*).

devastating.  They live forever on the Internet.[8]  They require disclosure in annual insurance

applications and renewals,[9] *pro hac vice*[10] and bar applications.[11]  "In this day and age, sanctions

are a badge of reprobation that can haunt an attorney throughout his or her career."  *In re Plaza-*

*Martínez*, 747 F.3d 10, 14 (1st Cir. 2014).  "Sanctions carry much more than a pecuniary impact:

Reputations are at stake and licenses to practice are in danger."  *Schlaifer Nance & Co. v. Estate*

*of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999).  Sanctions "act as a symbolic statement about the

quality and integrity of an attorney's work—a statement which may have tangible effect upon the

attorney's career."  *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994).[12]  It is for Your Honor

to consider whether the conduct before this Court is of a character that warrants imposing these

consequences on Ms. Eagan or Mr. Doss.

---

[8]     *Adams v. Ford Motor Co.*, 653 F.3d 299, 309 (3d Cir. 2011) ("[T]he internet, modern search engines and web sites oriented toward allowing consumers to voice displeasure about experiences they have had exponentially increase the impact of ... sanctions on a professional's reputation and career").

[9]     For example, the 2024 renewal application for malpractice insurance that CNA sent to my firm asked:  "(a) Within the past five years, has any attorney been subject to any disciplinary inquiry, complaint or proceeding for any reason...?  (b) Has any attorney *ever* been refused admission to practice, disbarred, suspended, formally reprimanded, or sanctioned in any other way?" (Emphasis in original.)

[10]     For example, the Motion and Order for Admission *Pro Hac Vice* for the Southern District of Texas asks:  "Has applicant been sanctioned by any bar association or court? ... On a separate sheet for each sanction, please supply the full particulars."  P:\ADR, CT.ADMN, BAR Assns\Pro Hac Vice App. Form\pro hac vice.form.revised.4.wpd (uscourts.gov)

[11]     For example, question 2(a) of the application for admission to the Eleventh Circuit asks: "Have you ... been admonished, sanctioned, or reprimanded by any [bar or any court, department, bureau or commission of any State or the United States] pertaining to your conduct or fitness to practice?"  Application_for_Admission_to_the_Bar_DEC23.pdf (uscourts.gov)

[12]     *See also 1-10 Indus. Assocs., LLC v. United States*, 528 F.3d 859, 861 (Fed. Cir. 2008) ("Justice Stevens observed in *Cooter & Gell* ... that the most precious asset of an attorney is his professional reputation.  A formal order of sanction of any kind imposed by a court necessarily tarnishes an attorney's professional reputation.") (reversing sanction).

24.     As the Court knows, it is within this Court's discretion to decline to impose any sanction, even if a violation is found.  I offer this opinion to provide the Court with perspectives that may be useful to the Court in exercising that discretion.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 6, 2024

_____
Gregory P. Joseph

911746

**GREGORY P. JOSEPH**

Curriculum Vitae
May 2024

## PROFESSIONAL EMPLOYMENT

Joseph Hage Aaronson LLC
(Formerly, Gregory P. Joseph Law Offices LLC)
800 Third Avenue, 30th Floor
New York, New York 10022
Tel.  (212) 407-1210
Email: gjoseph@jhany.com
        Managing Member
        March 17, 2001 - present

Fried, Frank, Harris, Shriver & Jacobson
One New York Plaza
New York, New York 10004
        Chair, Litigation Department, New York
        Partner, 1982-2001
        Associate, 1979-1982

Office of the United States Special Prosecutor
Investigation of U.S. Secretary of Labor Raymond Donovan
New York and Washington, D.C.
        Assistant United States Special Prosecutor, 1981-1982, 1985

James R. Schwebel & Associates P.A. (now Schwebel, Goetz & Sieben P.A.)
5120 IDS Center
Minneapolis, Minnesota 55402
        Trial lawyer, 1975-1978

## EDUCATION

University of Minnesota
        College of Liberal Arts (1969-72)
        B.A. summa cum laude; Phi Beta Kappa

        Law School (1972-75)
        J.D. cum laude; Law Review

i

PROFESSIONAL ACTIVITIES

**President, American College of Trial Lawyers (2010-11)**
Executive Committee (2007-12)
Board of Regents (since 2002, with a six month hiatus)
Formerly: Chair, Federal Rules of Civil Procedure Committee
Chair, Task Force on the Vanishing Trial
Chair, Downstate New York Committee

**Chair, American Bar Association Section of Litigation (1997-98)**
Litigation Section Council (1992-2001)
Principal Drafter, ABA CIVIL TRIAL PRACTICE STANDARDS (1998)
Principal Drafter, STANDARDS AND GUIDELINES FOR PRACTICE UNDER RULE 11 OF
THE FEDERAL RULES OF CIVIL PROCEDURE, 121 F.R.D. 101 (1988)
Chair, Trial Evidence Committee (1985-88)
ABA Advisor to National Conference of Commissioners on Uniform State Laws,
Uniform Rules of Evidence Drafting Committee (1985-87)
Liaison to ABA Coordinating Committee on RICO (1992-95)
Editorial Board Member, HUMAN RIGHTS Magazine (1987-1993)
Fellow, American Bar Foundation

**Chair, U.S. Supreme Court Historical Society (2018-)**
**President** (2011-17)

**Member, United States Judicial Conference Advisory Committee on the Federal
Rules of Evidence (1993-99)**

**American Law Institute**
Council (2016-2021)
Member (1987-present)

**Association of the Bar of the City of New York**
Executive Committee (1999-2003)
Chair, Committee on Professional Responsibility (1993-96)

**Co-Chair, Third Circuit Task Force on Selection of Class Counsel (2001-02)**

**Chair, N.Y. State Courts' Committee of Lawyers to Enhance the Jury Process
(1998-99)**

**New York State Bar Association**
Executive Committee, Section of Commercial & Federal Litigation (1989-94)
Chair, Trial Evidence Committee (1989-94)
Fellow, New York State Bar Foundation

**COLUMBIA UNIVERSITY LAW SCHOOL**
Lecturer in Law, *Professional Responsibility: Representing Business
Organizations* (Fall 2019)

## BOOKS

Author, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE (6th ed. 2020, Supp. 2024))

Author, CIVIL RICO: A DEFINITIVE GUIDE (5th ed. 2018)

Author, MODERN VISUAL EVIDENCE (1984; Supp. 2018)

Board of Editors, MOORE'S FEDERAL PRACTICE (3d ed.) (1994 - present)

Co-Author and Editor, EVIDENCE IN AMERICA: THE FEDERAL RULES IN THE STATES (4 vols. 1987; Supp. 1994)

General Editor/Reporter, EMERGING PROBLEMS UNDER THE FEDERAL RULES OF EVIDENCE (1st ed. 1983; 2d ed. 1991)

Co-Editor and contributor, SANCTIONS: RULE 11 AND OTHER POWERS (1st ed. 1986; 2d ed. 1988)

Co-Editor, PREPARING FOR AND TRYING THE CIVIL LAWSUIT (1st ed. 1987)


## ARTICLES

*Foundations of U.S. Federalism* (with Hon. Lee H. Rosenthal), 101 JUDICATURE 38 (2017)

*Authenticating Digital Evidence* (with Hon. Paul W. Grimm and Prof. Daniel J. Capra), 69 BAYLOR L. REV. 1 (2017)

*2016-17 Supreme Court Civil Procedure Decisions,* 63 PRACTICAL LAWYER, No. 5 at 33 (October 2017)

*Admissibility and Authentication of Digital Evidence*, PRACTICAL LAW February/March 2017.

*Manual on Best Practices for Authenticating Digital Evidence*, by Judge Paul Grimm, Professor Dan Capra and Greg Joseph (West Academic 2016)

*Rule 37(e): The New Law of Electronic Spoliation*, 99 JUDICATURE No. 3 at 35 (Winter 2015)

*Authentication:  What Every Judge and Lawyer Needs to Know About Electronic Evidence*, 99 JUDICATURE No. 2 at 48 (Autumn 2015)

*Social Media and Internet Evidence*, LITIGATION (Summer 2015, vol. 41, issue 4)

*Judicial Notice of Internet Evidence*, U.S. LAW WEEK, Vol. 82, No. 34 (March 11, 2014)

*The Temptation to Depose Every Expert*, 40 LITIGATION, No. 2 at 35 (Winter 2014)

*Major Changes in Federal Subpoena Practice,* 82 U.S.L.W. 584 (Oct. 22, 2013)

*We Need to Do Something about Arbitration*, 39 LITIGATION, No. 3 at 7 (Summer 2013)

*Practical Issues Arising in U.S., Foreign Arbitration*, NATIONAL LAW JOURNAL, May 6, 2013

*Notable Circuit Splits on Federal Procedural Issues*, NATIONAL LAW JOURNAL, November 26, 2012

*An Instinct for the Capillary*, 38 LITIGATION No. 4, at 9 (Summer/Fall 2012)

*Experts, Privilege and Civil Procedure*, NATIONAL LAW JOURNAL, July 2, 2012, at 14

*Internet & Email Evidence (Part 2)*, PRACTICAL LITIGATOR, April 2012, at 17

*Internet & Email Evidence (Part 1)*, PRACTICAL LITIGATOR, February 2012, at 19

*Recent Developments in Rulings on Sanctions*, NATIONAL LAW JOURNAL, February 6, 2012, at 12

*Sanctions: The Lawsuit Abuse Reduction Act of 2011*, 38 LITIGATION No. 1 at 8 (2011)

*Developments in Federal Arbitration Law So Far This Year*, NATIONAL LAW JOURNAL, Sept. 5, 2011, at 13

*Supreme Court on Civil Practice 2011*, 80 U.S.L.W. 250 (Aug. 23, 2011)

*Developments in the Federal Law of Sanctions*, 79 U.S.L.W. 2347 (April 12, 2011), reprinted in 27 LAWYERS' MANUAL ON PROFESSIONAL CONDUCT, No. 9 at 1 (April 27, 2011)

*The Lawsuit Abuse Reduction Act of 2011*, NATIONAL LAW JOURNAL, April 11, 2011, at 13

*Privilege and Work-Product Rulings in 2010*, NATIONAL LAW JOURNAL, Nov. 8, 2010, at 13

*2010 Expert Witness Rule Amendments*, PRACTICAL LITIGATOR, November 2010, at 51

*Recent Developments in Federal Practice,* NATIONAL LAW JOURNAL, June 21, 2010, at 20.

*Key Federal Practice Developments in 2009,* NATIONAL LAW JOURNAL, Jan. 18, 2010 at 16.

*A RICO Enterprise Must Have a Structure*, NATIONAL LAW JOURNAL, Aug. 10, 2009, at 14.

*Supreme Court on Federal Practice 2009*, 77 U.S. LAW WEEK 2787 (June 30, 2009)

*Circuit Splits*, NATIONAL LAW JOURNAL, April 13, 2009, at 18

*RICO Developments 2009*, NATIONAL LAW JOURNAL, March 2, 2009, at 17

*Internet and Email Evidence* and *A Simplified Approach to Computer-Generated Evidence and Animations*, reprinted in part in Shira A. Scheindlin, Daniel J. Capra & The Sedona Conference, ELECTRONIC DISCOVERY AND DIGITAL EVIDENCE (West 2009).

*Impact of Rule 502(d)*, NATIONAL LAW JOURNAL, Nov. 17, 2008, at 13

*Expert Witness Rules*, NATIONAL LAW JOURNAL, Sept. 8, 2008, at 13

*Federal Litigation: Where Did It Go Off Track?* 34 LITIGATION No. 4 at 5 (2008)

*Arbitration 2008*, NATIONAL LAW JOURNAL, June 30, 2008

*Privilege Developments II*, NATIONAL LAW JOURNAL, April 21, 2008, at 14

*Privilege Developments I,* NATIONAL LAW JOURNAL, Feb. 11, 2008, at 15.

*RICO Developments 2007,* NATIONAL LAW JOURNAL, Nov. 19, 2007, at 13, reprinted in 46 RICO LAW REPORTER 778 (Dec. 2007).

*Pleading Requirements,* NATIONAL LAW JOURNAL, Sept. 3, 2007, at 13.

*Spoliation:  Truth or Consequences,* PRACTICAL LITIGATOR, vol. 18, no. 5, at 13 (Sept. 2007).

*International Arbitration,* NATIONAL LAW JOURNAL, June 18, 2007, at 14.

*Rulemaking 2007,* NATIONAL LAW JOURNAL, Jan. 29, 2007 at 7.

*Rule 5(d) and Public Access to Discovery Materials in Federal Court*, PRACTICAL LITIGATOR, January 2007 at 45.

*Privilege Developments 2006*, NATIONAL LAW JOURNAL, Nov. 13, 2006 at 14.

*Terrorism and the Alien Tort Statute*, NATIONAL LAW JOURNAL, Sept. 11, 2006 at 14

*Privilege Waiver: Proposed Federal Rule of Evidence 502—Part II*, NATIONAL LAW JOURNAL, July 10, 2006 at 12

*Privilege Waiver: Proposed Federal Rule of Evidence 502—Part I*, NATIONAL LAW JOURNAL, May 8, 2006 at 15

*Federal Class Action Jurisdiction after CAFA, Exxon Mobil and Grable,* 8 DEL. L. REV. No. 2 (2006)

*Sanctions 2006,* NATIONAL LAW JOURNAL, March 6, 2006 at 13

*CAFA Amendment Issues,* NATIONAL LAW JOURNAL, January 2, 2006, at 17, reprinted in 20 SECURITIES REFORM ACT LITIG. RPTR. 747 (March 2006)

*Post-Settlement Sanctions,* NATIONAL LAW JOURNAL, Oct. 24, 2005, at 16

*Jurisdiction Expanded,* NATIONAL LAW JOURNAL, Aug. 22, 2005 at 12.

*Revised Electronic Discovery Rules,* NATIONAL LAW JOURNAL, June 20, 2005 at 12.

*A Simplified Approach to Computer-Generated Evidence and Animations,* 22 COMPUTER & INTERNET LAWYER No. 6 at 17 (June 2005)

*Proposed Electronic Discovery Amendments to the Federal Rules of Civil Procedure*, 6 FIFTH CIRCUIT CIVIL NEWS No. 1 at 1 (April 2005)

*Engaging Experts,* NATIONAL LAW JOURNAL, April 18, 2005 at 12.

American College of Trial Lawyers Ad Hoc Committee on the Future of the Civil Trial, *The "Vanishing Trial:" The College, The Profession, The Civil Justice System,* 226 F.R.D. 414 (April 2005) (principal author)

*The Class Action Fairness Act of 2005: A Preliminary Analysis,* 20 BNA TOXICS LAW RPTR. 264 (Mar. 10, 2005)

*Sanctions 2005*, NATIONAL LAW JOURNAL, Feb. 14, 2005, at 10

*Electronic Discovery II*, NATIONAL LAW JOURNAL, Dec. 6, 2004, at 16

*Expert Spoliation*, PRACTICAL LITIGATOR, vol. 15, No. 6 at 7 (Nov. 2004)

*Electronic Discovery I,* NATIONAL LAW JOURNAL, Oct. 4, 2004, at 12

*International Discovery,* NATIONAL LAW JOURNAL, August 2, 2004, at 12

*Rulemaking Activity,* NATIONAL LAW JOURNAL, May 31, 2004, at 17

*Privilege Trends,* NATIONAL LAW JOURNAL, March 29, 2004, at 12

*Transnational Litigation,* NATIONAL LAW JOURNAL, January 26, 2004, at 15

*Rule Traps,* 30 LITIGATION No. 1 at 6 (Fall 2003)

*Electronic Discovery Standards,* NATIONAL LAW JOURNAL, Nov. 24, 2003, at 30

*New Class Action Rules,* NATIONAL LAW JOURNAL, Sept. 15, 2003 at 21

*Electronic Spoliation,* 20 COMPUTER & INTERNET LAWYER No. 7 at 16 (July, 2003)

*2003 Sanctions Update,* NATIONAL LAW JOURNAL, June 23-30, 2003, at 30

*Reevaluation of the Private Securities Litigation Reform Act in Light of Recent Corporate Scandals,* THE DELAWARE LAWYER (April 2003)

*Sua Sponte Sanctions,* NATIONAL LAW JOURNAL, April 14, 2003

*Expert Spoliation,* NATIONAL LAW JOURNAL, Feb. 3, 2003

*Electronic Spoliation,* NATIONAL LAW JOURNAL, Dec. 9, 2002

*Complex Litigation,* NATIONAL LAW JOURNAL, September 30, 2002

*Civil Litigation Impact of the New Corporate Fraud Legislation,* 4 INSTITUTIONAL INVESTOR ADVOCATE (3rd Quarter 2002)

*Expert Approaches,* 28 LITIGATION No. 4, 20 (Summer 2002)

*Corporate Fraud Act,* NATIONAL LAW JOURNAL, August 5, 2002

*Action on Class Actions,* NATIONAL LAW JOURNAL, June 24-July 1, 2002

*Internet & Email Evidence,* 19 COMPUTER & INTERNET LAWYER, No. 4, April 2002

*Sanctions 2002, Part II,* NATIONAL LAW JOURNAL, April 15, 2002

Symposium, American Association of Law Schools Evidence Section, *The Politics of Evidence Rulemaking*, 53 HASTINGS L.J. 733 (2002) (transcript)

*Internet & Email Evidence,* PRACTICAL LITIGATOR, March 2002, at 45

*Sanctions 2002,* NATIONAL LAW JOURNAL, Feb. 4, 2002

*Internet Evidence,* INTERNET LAW & BUSINESS, Sept. 2001, at 949

*Internet Evidence II,* NATIONAL LAW JOURNAL, July 30, 2001

*Internet Evidence I,* NATIONAL LAW JOURNAL, June 11, 2001, at A14

*Innovative Comprehension Initiatives Have Enhanced Ability of Jurors to Make Fair Decisions,* N.Y. STATE BAR J., June 2001, at 14

*2000 Sanctions Update II,* NATIONAL LAW JOURNAL, Mar. 12, 2001, at A12.

*A Preliminary Analysis of the 2000 Amendments to the Federal Rules of Civil Procedure and Evidence,* PRACTICAL LITIGATOR, January 2001, at 64

*2000 Sanctions Update,* NATIONAL LAW JOURNAL, Dec. 18, 2000, at A17.

*New Expert Rules,* NATIONAL LAW JOURNAL, Oct. 9, 2000, at A12.

*A Simplified Approach to Computer-Generated Evidence and Animations,* 43 NEW YORK LAW SCHOOL LAW REVIEW 875 (1999/2000).

*New Rules of Evidence,* NATIONAL LAW JOURNAL, July 31, 2000, A12.

*Expert Depositions,* NATIONAL LAW JOURNAL, June 5, 2000, A14.

*Civil Rules Amendments II,* NATIONAL LAW JOURNAL, Apr. 24, 2000, A17.

*Civil Rules Amendments,* NATIONAL LAW JOURNAL, Mar. 13, 2000, at A19.

*1999 Sanctions Update II,* NATIONAL LAW JOURNAL, Jan. 31, 2000, at A16.

*Lawyers and Jurors,* NEW YORK LAW JOURNAL, Jan. 13, 2000, at 2.

*1999 Sanctions Update,* NATIONAL LAW JOURNAL, Dec. 13, 1999, at A18.

*RICO Causation,* NATIONAL LAW JOURNAL, Nov. 1, 1999, at B19.

*The Clinton Sanction,* NATIONAL LAW JOURNAL, Oct. 4, 1999, at B20.

*RICO "Conduct,"* NATIONAL LAW JOURNAL, July 26, 1999, at B11.

*Civil RICO Conspiracy,* NATIONAL LAW JOURNAL, June 28, 1999, at B16.

*ABA Discovery Standards,* NATIONAL LAW JOURNAL, May 31, 1999, at B8.

*Computer Evidence II,* NATIONAL LAW JOURNAL, April 5, 1999, at B14.

*Computer Evidence,* NATIONAL LAW JOURNAL, March 8, 1999, at B6.

*Experts & Privilege,* NATIONAL LAW JOURNAL, Feb. 8, 1999, at B6.

*Expert-Related Rules,* NATIONAL LAW JOURNAL, Jan. 11, 1999, at B13.

*Ethical Issues,* NATIONAL LAW JOURNAL, Dec. 14, 1998, at B17.

*Securities Pleading,* NATIONAL LAW JOURNAL, Nov. 9, 1998, at B15.

*Imposing Sanctions,* NATIONAL LAW JOURNAL, Oct. 19, 1998, at B6.

*Sanctions Update,* CORPORATE COUNSEL, Oct. 1998, at 1.

*ABA Trial Standards,* NATIONAL LAW JOURNAL, Sept. 14, 1998, at B8.

*The Litigation Section at 25 and The ABA at 120,* 24 LITIGATION No. 3 at 1 (Spring 1998)

*Contours of Professionalism: Guidelines for Conduct,* 24 LITIGATION No. 2 at 1 (Winter 1998).

*Civil Trial Practice Standards: 21st Century Litigation,* 24 LITIGATION No. 1 at 1 (Fall 1997).

*Judicial Imperfection & Judicial Independence,* 23 LITIGATION No. 4 at 1 (Summer 1997).

*Civil Trial Practice Standards Augment Existing Trial Rules,* NATIONAL LAW JOURNAL, Aug. 4, 1997, at C11.

*A Premature Deadline for Disclosure,* NATIONAL LAW JOURNAL, April 22, 1996 at B11.

*Virtual Reality Evidence,* 2 BOSTON UNIV. JOURNAL OF SCIENCE & TECHNOLOGY LAW (1996) (CD Rom).

*Emerging Expert Issues under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure,* 164 F.R.D. 97 (Feb. 1996).

*Computer Evidence,* 22 LITIGATION No. 1 at 13 (Fall 1995).

*A Simplified Approach to Computer-Generated Evidence and Animations,* 156 F.R.D. 327 (Oct. 1994)

*The Jury: The Ideal and the Reality of an American Institution,* 80 ABA JOURNAL 83 (Sept. 1994) (book review).

*A New Look at Removal, Jurisdiction,* NATIONAL LAW JOURNAL, Aug. 1, 1994, at B9.

*The Lawyer Gag Rule Goes Too Far,* NATIONAL LAW JOURNAL, February 21, 1994 at 13.

*In Court, One Imaging System Is Worth a Thousand Documents,* NEW YORK LAW JOURNAL, July 19, 1993 at S-4.

*A Complete Guide to Deposition Practice,* 4 PRACTICAL LITIGATOR 59 (Jan. 1993).

*Assessing Federal Rule 45,* NATIONAL LAW JOURNAL, Dec. 28, 1992/Jan. 4, 1993 at 23.

*Practical Problems in RICO Litigation,* 28 TRIAL 33 (Dec. 1992).

*Circuits in Disarray on Six Key [RICO] Issues,* NATIONAL LAW JOURNAL, Oct. 26, 1992, at 17.

*Discovery Should Not Be Abolished,* 47 ARBITRATION JOURNAL 61 (Sept. 1992).

*Technology Brings New Legal Issues,* NEW YORK LAW JOURNAL, July 27, 1992, at S2.

Second Circuit Judicial Conference Proceedings, *The Lawyer at Risk,* 136 F.R.D. 243 (July 1991) (transcript).

*Redrafting Rule 11,* NATIONAL LAW JOURNAL, Oct. 1, 1990 at 13.

*Supreme Court Shapes Rule 11,* 26 TRIAL 65 (Sept. 1990).

*Keeping Child Witnesses Out of Court,* 16 HUMAN RIGHTS 22 (Summer 1989).

*The Law of Sanctions,* 24 TRIAL 40 (May 1988).

*Rule 11 Is Only the Beginning,* 74 ABA JOURNAL 62 (May 1, 1988).

*The Trouble with Rule 11,* 73 ABA JOURNAL 87 (Aug. 1, 1987)

*Jury Trials: The Psychology of Winning Strategy,* 73 ABA JOURNAL 104 (Feb. 1, 1987) (book review).

*Federal Rules of Evidence Manual,* 72 ABA JOURNAL 68 (June 1, 1986) (book review).

*Demonstrative Videotape Evidence,* 22 TRIAL 60 (June 1986).

*Social Science Research Methods for Litigation,* 71 ABA JOURNAL 92 (Oct. 1985) (book review).

*What Makes Juries Listen,* 71 ABA JOURNAL 90 (March 1985) (book review).

*Videotape Evidence in the Courts—1985,* 26 SOUTH TEXAS LAW JOURNAL 453 (1985).

*Videotapes as Evidence,* NATIONAL LAW JOURNAL, Sept. 6, 1982 at 15.

*Speedy Trial Rights in Application,* 48 FORDHAM LAW REVIEW 611 (1980).

*Less Than "Certain" Medical Testimony,* 14 TRIAL 50 (Jan. 1978), reprinted in 25 MEDICAL TRIAL TECHNIQUE QUARTERLY 10 (1978).


## LECTURES, CONTINUING LEGAL EDUCATION, CONTINUING JUDICIAL EDUCATION

More than 200 professional lectures, speeches and presentations, including:

- First Circuit Judicial Conference

- Second Circuit Judicial Conference

- Third Circuit Judicial Conference

- Fifth Circuit Judicial Conference

- Sixth Circuit Judicial Conference

- Seventh Circuit Judicial Conference

- Eighth Circuit Judicial Conference

- Ninth Circuit Judicial Conference

- U.S. Tax Court Judicial Conference

- U.S. Court of Claims Judicial Conference

- Standing Committee on Rules of Practice and Procedure of the U.S. Judicial Conference

- Advisory Committee on the Federal Rule of Civil Procedure of the U.S. Judicial Conference

- Judges of the United States District Court for the Southern District of New York

- Judges of the United States District Court for the Eastern District of New York

- American Arbitration Association

- American Association of Law Schools

- American Bar Association

- American College of Trial Lawyers

- American Law Institute

- American Law Institute-American Bar Association

- Association of the Bar of the City of New York

- Association of the Federal Bar of New Jersey

- Association of Trial Lawyers of America

- Columbia University Law School

- Duke Law School

- Federal Bar Association

- Federal Bar Council

- Federal Judicial Center

- Fordham Law School

- Georgia Institute of Continuing Legal Education

- Georgetown University Law School

- Kentucky Academy of Trial Lawyers

- Law Society of Upper Canada

- Minnesota Institute of Legal Education

- Minnesota Trial Lawyers Association

- National Conference of Bankruptcy Judges

- National Foundation for Judicial Excellence

- National Judicial College

- New York County Lawyers Association

- New York Law School

- New York State Courts

- New York State Bar Association

- New York University Law School, Brennan Center

- Philadelphia Bar Association

- Philadelphia Patent Law Association

- Practising Law Institute

- Renmin University, Beijing

- Shanghai Jiang Tao Law School

- The Advocates' Society

- Union Internationale des Avocats

- University of Houston Law School

- University of Nebraska Law School

- University of Pennsylvania Law School

- University of Virginia Trial Advocacy Institute

- Wayne State University Law School

- West Virginia Defense Trial Lawyers

- Yale Law School

## RECOGNITION

- ONE OF AMERICA'S TOP 100 BET-THE-COMPANY LITIGATORS (2023-24)

- 2024 LAWDRAGON 500 LEADING LITIGATORS IN AMERICA

- ONE OF TOP 10 LAWYERS IN NEW YORK CITY
  - NEW YORK SUPER LAWYERS (2020, 2019, 2018, 2017, 2016, 2015, 2014)

- ONE OF TOP 30 TRIAL LAWYERS IN THE UNITED STATES
  - THE BEST OF THE BEST (2020, 2019, 2017, 2015)

- ONE OF THE 100 TOP TRIAL LAWYERS IN U.S. (2020, 2018, 2016, 2014)
  - BENCHMARK LITIGATION

- ONE OF TOP 30 LITIGATORS IN THE WORLD
  - THE BEST OF THE BEST 2013

- ONE OF TOP 25 LITIGATION LAWYERS
  - THE BEST OF THE BEST 2011

- LAWYER OF THE YEAR—BET-THE-COMPANY LITIGATION—NEW YORK
  - BEST LAWYERS 2011

- ONE OF THE 10 "MOST HIGHLY REGARDED INDIVIDUALS – GLOBAL"
  - WHO'S WHO LEGAL—COMMERCIAL LITIGATION (2009)

- NEW YORK SUPERLAWYERS cover story (2009)

- INTERNATIONAL WHO'S WHO OF COMMERCIAL LITIGATORS (2008)
  - One of the 10 "Most Highly Regarded Individuals" in the world

- INTERNATIONAL WHO'S WHO OF COMMERCIAL LITIGATION LAWYERS (2006)
  - One of the 10 "Most Highly Regarded Individuals—Global"

- THE BEST OF THE U.S. BEST (2009, 2008, 2006)
  - One of the "25 top practitioners in the U.S." in litigation

- INTERNATIONAL COMMERCIAL LITIGATION Magazine (May 1996)
  - One of the 10 best commercial litigators in the United States

- WHO'S WHO IN THE WORLD

- WHO'S WHO IN AMERICA

- WHO'S WHO IN AMERICAN LAW

- WHO'S WHO IN THE EAST

- William J. Brennan, Jr., Award of the University of Virginia Trial Advocacy Institute

- From the opinion in *Sec. Nat'l Bank v. Jones Day*, 800 F.3d 936, 944 (8th Cir. 2015): "The leading authority on sanctions law"

- From the opinion in *Gregory v. Oliver*, 2002 U.S. Dist. LEXIS 24730 at *5 & n.1, 2002 WL 31972165 at *2 & n.1 (N.D. Ill. Dec. 27, 2002) (Shadur, J.):

  > "One of the *true* experts on federal practice, Gregory Joseph ... is one of this country's leading litigators (a few years ago he served as chairman of the Section on Litigation of the American Bar Association) and is an extraordinarily prolific author in addition to maintaining an active law practice: Each year he updates his excellent works on SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE ... and on MODERN VISUAL EVIDENCE ... and he is a regular contributor to the NATIONAL LAW JOURNAL with his periodic columns on Federal Practice). This Court and Greg were fellow members of the Judicial Conference's Advisory Committee on Rules of Evidence from the time of its reconstitution by Chief Justice Rehnquist during the early 1990s through the bulk of this Court's service as chairman of that Committee, which has just been completed on September 30, 2002."

**JUDICIAL CITATIONS TO BOOKS AND ARTICLES**

- [Recognition - Joseph Hage Aaronson (jhany.com)](Recognition - Joseph Hage Aaronson (jhany.com))

**BAR ADMISSIONS**

- Minnesota 1975

- New York 1979

- United States Supreme Court 1983

- United States Court of Appeals for the First Circuit

- United States Court of Appeals for the Second Circuit

- United States Court of Appeals for the Fifth Circuit

- United States Court of Appeals for the Sixth Circuit

- United States Court of Appeals for the Seventh Circuit

- United States Court of Appeals for the Eighth Circuit

- United States Court of Appeals for the Ninth Circuit

- United States Court of Appeals for the Eleventh Circuit

- United States Court of Appeals for the District of Columbia Circuit

- United States Court of Appeals for the Federal Circuit

- United States District Courts, including the Southern District of New York, Eastern District of New York, District of Minnesota and others.

- United States Tax Court