# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

BRIANNA BOE, *et al.*,                  )
     Plaintiffs,                      )
                     )
v.                                      )        **Case No. 2:22-cv-0184-LCB**
                     )
STEVE MARSHALL, *et al.*,               )
     Defendants.                      )

## <u>DECLARATION OF BRUCE A. GREEN</u>

## <u>Table of Contents</u>

**I.      *Walker* Counsel Did Not Engage in Impermissible, Sanctionable Judge Shopping Outside the Bounds of a Responsible Attorney's Practice or Standards within the Legal Profession.** ...................................................................4

    A.    "Judge Shopping" Allegations and Facts. .......................................................4

    B.    "Judge Shopping" Legal Background. ............................................................6

    C.    "Related Case" Allegations. ..........................................................................14

    D.    Contacting Judge's Thompson's Chambers. .................................................15

    E.    Dismissal of Walker Under Rule 41 ..............................................................17

    F.    Fair Process and Notice Concerns. ...............................................................20

**II.      *Walker* Counsel Reasonably and Adequately Communicated with Their Clients, Consistently with the Expectations and Practices of a Responsible Attorney and the Standards of the Legal Community.** ......................................21

I, Bruce A. Green, declare as follows:

1.      I am the Stein Chair of Law at Fordham Law School, where I direct the Stein Center for Law and Ethics.  I have been retained by Kirkland & Ellis LLP on behalf of James Esseks, Carl Charles, and LaTisha Gotell Faulks (collectively, along with other lawyers from their respective organizations, "*Walker* Counsel"), who served as counsel for the plaintiffs in *Walker v. Marshall*.  I was tasked with providing an expert opinion in this case on the issues identified in the Court's Order to Show Cause, dated February 21, 2024 (the "Order"), and the Court's Supplemental Orders to Show Cause, dated May 1, 2024.[1]

2.      My qualifications to provide expert opinions on questions of lawyers' professional conduct in this case are set forth more fully in my curriculum vitae, which is attached hereto as **Appendix A**.  Other than the legal authorities cited herein, the materials that I relied upon in reaching my conclusions are listed in **Appendix B**.  My recent expert testimony is provided in **Appendix C**.

3.      I have been a law professor at Fordham University since 1987.  I have served as a law clerk to both Justice Thurgood Marshall of the Supreme Court of the United States and Judge James L. Oakes of the United States Court of Appeals for the Second Circuit.  I was also Assistant United States Attorney for the Southern

---

[1]      Because the Supplemental Orders to Show Cause as to James Esseks, LaTisha Gotell Faulks, and Carl Charles concern the same conduct and legal issues identified in the original Order to Show Cause, my citations are to the original Order and I have not distinguished between them.

District of New York, eventually serving as Deputy Chief and then Chief of the Criminal Division's appeals unit.

4.      At Fordham, I have regularly taught courses on lawyers' professional responsibility.  I currently teach courses on both Professional Responsibility and Ethics in Criminal Advocacy.   Additionally, I co-authored a casebook on professional responsibility for contemporary legal practice.  *See* Jefferson, Pearce, Green, et al., *Professional Responsibility: A Contemporary Approach* (5th ed. 2023).

5.      I have organized or co-organized numerous conferences and other programs for legal academics and practitioners on issues of lawyers' professional responsibility, and I speak frequently at Continuing Legal Education programs and academic programs on this subject.

6.      I have written extensively on lawyers' professional conduct in both academic and professional publications, a list of which is set forth in **Appendix A**.

7.      I have engaged extensively in professional work relating to lawyers' professional conduct, much of it involving the drafting, interpreting or enforcement of professional conduct rules.  On the national level, I currently chair both the American Bar Association Standing Committee on Ethics and Professional Responsibility and the Multistate Professional Responsibility Examination drafting committee.  I previously chaired the ethics committees of both the American Bar Association Litigation Section and the American Bar Association Criminal Justice

2

Section as well as the Section on Professional Responsibility of the Association of American Law Schools.  Further, I am a past chair of the New York City Bar's Committee on Professional Ethics, and I am a past chair and current member of the New York State Bar Association's Committee on Professional Ethics.

8.     I occasionally testify as an expert witness, give advice, draft amicus briefs, and render other professional services on issues of lawyers' professional conduct.  When serving as an expert witness, in this case and others, I render opinions in my individual capacity and do not speak on behalf of any of the entities with which I am, or have been, associated.

9.     I have been asked to address two questions – (1) whether *Walker* Counsel engaged in sanctionable misconduct by allegedly seeking to avoid the random judicial assignment; and (2) whether they engaged in sanctionable misconduct by dismissing the action under Rule 41 without first communicating with or obtaining the approval of their clients.

10.     I have reached the following opinions on these questions:

   1. *Walker* Counsel did not engage in impermissible, sanctionable judge shopping outside the bounds of a responsible attorney's practice or standards within the legal profession.

   2. *Walker* Counsel reasonably and adequately communicated with their clients, consistent with the expectations and practices of a reasonable attorney and consistent with standards in the legal profession.

3

I. ___*Walker* Counsel Did Not Engage in Impermissible, Sanctionable Judge Shopping Outside the Bounds of a Responsible Attorney's Practice or Standards within the Legal Profession.___

A. "Judge Shopping" Allegations and Facts.

11.     On information and belief, including based on my review of the record materials, following Alabama's adoption of the Vulnerable Child Compassion and Protection Act (SB 184) in April 2022, a number of legal advocacy organizations and their clients initiated litigation in Alabama's federal courts seeking to preserve healthcare options in Alabama for transgender children and their families.  The *Walker* plaintiffs, represented by lawyers from the ACLU, ACLU of Alabama, Lambda Legal, the Transgender Law Center, and Cooley LLP filed suit in the Middle District of Alabama on Monday, April 11, 2022.  In response to the "Related Case(s) If Any" question on the civil cover sheet (a standard form called the "JS-44"), *Walker* Counsel disclosed that their lawsuit was "related" to *Corbitt v. Taylor*, an action before Judge Thompson challenging a state policy requiring transgender people to disclose medical information to obtain a driver's license, which was then on appeal in the United States Court of Appeals for the Eleventh Circuit.  After *Walker* was initially randomly assigned to Chief Judge Marks, *Walker* Counsel moved to have it reassigned to Judge Thompson upon learning that the related case designation did not mean that the related case determination would be initially reviewed by Judge Thompson.

4

12.     On Friday, April 8, 2022, the business day prior to the filing of *Walker*, a different group of legal advocacy organizations and their clients seeking to pursue a similar objective filed *Ladinsky v. Ivey* in the Northern District of Alabama, which was ultimately, randomly assigned to Judge Axon.  Because *Ladinsky* was the first-filed case, Chief Judge Marks issued an order to show cause why *Walker* should not be transferred to the Northern District where *Ladinsky* was pending.  *Walker* Counsel thereafter withdrew their motion to reassign their case to Judge Thompson and instead consented to transfer to the Northern District on Thursday, April 14, 2022.  The following day, Friday, April 15, 2022, both *Walker* and *Ladinsky* were reassigned to Judge Burke, who issued an order requiring the parties to appear for a court conference the next business day, Monday, April 18, 2022.  Confused by the process of judicial assignments, uncertain about their judicial draw, and concerned that there was limited time in which to dismiss the action under Fed. R. Civ. P. 41(a)(1)(A)(i)[2] before the State served an answer, as well as potential logistical hurdles in appearing for the court-ordered conference on short notice on the Monday following a major holiday weekend, *Walker* Counsel filed a notice of voluntary dismissal on Friday April, 15, 2022.  *Ladinsky* Counsel did the same soon after. Thereafter, with the understanding that the *Ladinsky* group likely intended to refile

---

[2]   This provision generally provides that "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."

a lawsuit, *Walker* Counsel in discussions with their clients decided not to refile the *Walker* action.  The *Ladinsky* group filed a new lawsuit, *Eknes-Tucker v. Marshall*, on Tuesday, April 19, 2022, which was assigned to Judge Burke.[3]

### B. "Judge Shopping" Legal Background.

13.    The term "judge shopping" has no fixed meaning.  The panel's Final Report of Inquiry uses the term to refer to lawyers' "attempt[] to circumvent a court's random case assignment" (Report at 2), that is, to lawyers' efforts to have a case heard by a judge whom they favor or to avoid one whom they disfavor.  However, conduct that might be characterized as judge shopping is not necessarily improper, much less punishable.  As discussed below, judge shopping is not always sanctionable and can be permissible and legitimate in some circumstances.

14.    Courts rarely sanction lawyers who engage in judge shopping.  In many instances, it is professionally permissible—indeed, an aspect of competent advocacy—for lawyers to employ available judicial procedures to make it more likely that a favorable judge presides over the lawsuit that they filed or are defending. The conventional judicial response to concerns about judge shopping has not been punishment of individual lawyers for pursuing an objective that courts may consider undesirable but to alter judicial procedure to prevent (or tolerate) judge shopping.

---

[3]    *Eknes-Tucker v. Marshall* has since been restyled as *Boe v. Marshall*, which I understand, based on the Order, is also the present docket related to the allegations against *Walker* Counsel.

This is, in part, because lawyers are permitted, if not professionally obligated, to use lawful means to achieve their clients' objectives, including by judge shopping when doing so is not contrary to law, rules or decisions.  *Cf.* Alabama Rules of Pro. Conduct ("Alabama Rules"), Rule 1.3, cmt. ("A lawyer . . . may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor.  A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.").  Responsible attorneys may differ in whether they undertake particular procedures to influence judicial assignments when judges have not clarified whether those measures are or are not forbidden.

15.     Even when lawyers engage in conduct that could, retrospectively, be considered impermissible judge shopping, those lawyers have not necessarily done so with an awareness that the conduct in question is wrongful, as is required to establish "bad faith."  As explained in *Fletcher v. Ben Crump Law, PLLC*, No. 5:21-cv-1433-LCB, 2023 U.S. Dist. LEXIS 72672, *12-13 (N.D. Ala. Apr. 26, 2023) (Burke, J.) (citations and internal quotation marks omitted), "'[b]ad faith' is defined as not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will."  Given the uncertainty of the law regulating judge shopping, as discussed below, and the imperative that lawyers engage in zealous advocacy in pursuit of the best result for

their clients, it should be rare that efforts to secure a favorable judge will be undertaken in bad faith, as required to justify the imposition of sanctions pursuant to a court's inherent authority.

16. Recently, the United States Judicial Conference took highly publicized action illustrating both that judge shopping within the law and rules is not punishable by the federal courts and that, to prevent this conduct, courts must ordinarily change the rules. Since the last presidential election, the federal government has documented that the Attorney General of Texas has repeatedly circumvented random case assignment by filing actions challenging federal law and federal government action in divisions in which there is a single judge to whom the case will almost assuredly be assigned.[4] The state's Attorney General acknowledged that this procedural course was designed to contravene the random judicial assignment process.[5] Throughout the time that state government lawyers persistently and openly exploited the procedural opportunity afforded them to select a favored judge to preside over nationally important lawsuits, no court or disciplinary authority held that these lawyers were acting in bad faith or engaged in sanctionable misconduct. In March 2024, evidently in response, the Judicial Conference adopted a policy designed to prevent judge shopping as undertaken by lawyers for the State. The new

---

[4]   Supplemental Brief in Support of Motion to Transfer, *State of Texas v. Dep't of Homeland Sec.*, No. 6:23-cv-00007, ECF No. 74 (S.D. Tex.), Feb. 28, 2023.

[5]   Supplemental Brief, *supra* n.4, at 1.

policy calls for district-wide random selection of federal district judges in cases in which the plaintiff seeks declaratory judgment or injunctive relief to bar or mandate federal or state action.  In response, some members of Congress have discouraged the federal district court from adopting the prescribed procedural change, evidently believing that judge shopping should continue in certain kinds of cases.

17.     To give a related example, Chief Justice Roberts noted in his 2021 Year End Report on the State of the Judiciary that plaintiffs' lawyers had been exploiting a similar opportunity to select a favored judge in patent cases.  The Chief Justice acknowledged that "Senators from both sides of the aisle have expressed concern that case assignment procedures allowing the party filing a case to select a division of a district court might, in effect, enable the plaintiff to select a particular judge to hear a case."[6]  No court or disciplinary authority held that exploiting this opportunity constituted impermissible conduct, much less sanctionable misconduct.  Instead of employing the disciplinary process, the federal court adopted measures to eliminate this opportunity.

18.     To give a third notorious example of judge shopping that was never held to be sanctionable and that, indeed, was judicially facilitated: For many years, class counsel negotiated settlements before filing a class action and then filed their cases

---

[6]     Chief Justice John G. Roberts, Jr., *2021 Year-End Report on the Federal Judiciary* (Dec. 31, 2021), at 5, https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf.

in jurisdictions where a particular judge, who was likely to approve the proposed settlements, would be assigned.[7]

19.     Finally, to offer an example from my own professional experience: In the Southern District of New York in the early 1980s, prior to the adoption of the Federal Sentencing Guidelines, indicted defendants were arraigned in Part I, where district judges generally sat in two-week shifts that were announced weeks in advance.  If a defendant pled guilty at arraignment, the Part I judge kept the case for sentencing rather than assigning it randomly to a judge in the district.  As part of a plea bargain, federal prosecutors in the district customarily allowed the defense lawyer to choose when, over a six-week period, the defendant would be arraigned. In other words, the defendant, as an inducement to plead guilty, was permitted to select which of three judges would impose sentence and could select the judge who was perceived to be the most lenient.  Before the procedure changed, no court proposed sanctioning federal prosecutors and defense lawyers for exploiting the Part I procedure for the purpose of judge shopping.

20.     In some of these examples and others, one might reasonably perceive that some judges not only tolerate judge shopping but welcome it.  For example, as an exception to the random assignment of federal district judges, different federal

---

[7]    Edwin Lamberth, Comment, *Injustice by Process: A Look at and Proposals for the Problems and Abuses of the Settlement Class Actions*, 28 Cumb. L. Rev. 149, 159-62 (1997-1998).

district courts have adopted varying rules for when an action will be assigned to a particular judge because it is "related" to a case over which that judge is currently presiding or has previously presided. This procedure may be explained by the institutional interest in judicial economy, by the interest in avoiding inconsistent legal decisions, or by other institutional interests. As a result, particularly in jurisdictions where application of the standard is uncertain or highly discretionary, lawyers and judges may be selective in whether to characterize a case as "related" to an earlier one, depending on whether the lawyer wants the earlier judge or the judge wants the new case. When lawyers or judges adopt a debatable or erroneous interpretation of "related case," it does not follow that they have engaged in impropriety. For example, in *Ligon v. City of New York (In re Reassignment of Cases)*, 736 F.3d 118, 125-26, 129 (2d Cir. 2013), the court of appeals found that the district judge unjustifiably accepted an action as a related case after inviting it to be filed, but there was no suggestion that the lawyers acted improperly by accepting the judge's invitation to designate the case as related.

21. Just as it may be legitimate to judge shop through legally permissible processes when a lawyer first files a case, a lawyer may employ legally available processes to attempt to avoid a randomly assigned judge after a case has been filed. At times, doing so may be professionally obligatory. The obvious example is non-frivolous motions for judicial recusal. A judicial recusal motion is generally

11

permissible as long as it has a basis in law and fact as required by Fed. R. Civ. P. 11 and Rule 3.1 of the professional conduct rules, even though its very purpose is to replace the judge assigned to the case. *See, e.g.*, *Obert v. Republic W. Ins. Co.*, 398 F.3d 138, 144 (1st Cir. 2005) ("[W]hile 'judge shopping' may be improper in some contexts, the very purpose of a motion to recuse is to secure a different judge."). Indeed, lawyers as officers of the court may sometimes be obligated to call the court's attention to potentially disqualifying facts or may sometimes have a competence duty to the client to move to disqualify a judge with a clearly impermissible bias. Federal judges may sanction lawyers under Rule 11 for filing frivolous recusal motions. *Id.* at 144-45. Additionally, courts have criticized lawyers, and have put them on notice that they can now be sanctioned, for manufacturing an infirmity for the purpose of forcing a judge's recusal, such as by retaining a lawyer with a close relationship to the assigned judge, *see, e.g.*, *In re Bellsouth Corp.*, 334 F.3d 941 (11th Cir. 2003); *Valley v. Phillips Cnty. Election Comm'n*, 183 S.W.3d 557, 559 (Ark. 2004), or by filing an unmeritorious civil action against the assigned judge. *See Jones v. City of Buffalo*, 867 F. Supp. 1155, 1162-63 (W.D.N.Y. 1994). But non-frivolous recusal motions based on established facts, brought for the purpose of removing the case from the assigned judge, are proper. Courts can adopt some procedures to reduce lawyers' ability to succeed in judge shopping through recusal motions. *See, e.g.*, *AVPM Corp. v. Childers*, 583 S.W.3d

216, 218 (Tex. Ct. App. 2018) (observing "that withholding a motion to recuse, meritorious or otherwise, until a judgment is rendered is indicative of judge shopping," and that in such cases another court requires the movant to "affirmatively explain why he was unable, with reasonable diligence, to inform himself of the grounds for recusal until after the opinion was released").  Or judges can avoid disqualifying biases.  *See* Code of Conduct for United States Judges, Canon 4 ("a judge should not participate in extrajudicial activities that . . . lead to frequent disqualification").

22.    In the *Walker* case, for the reasons discussed below, the procedural steps addressed in the Final Report of Inquiry were legally permissible, regardless of the lawyers' motivation.  Going forward, courts might change the relevant procedural rules, or otherwise proscribe aspects of the conduct in question if they consider it undesirable, and thereafter subject lawyers to sanctions for violating the newly announced requirements.  But *Walker* Counsel engaged in procedurally permissible conduct without notice that any of it might, for the first time, be sanctionable. Although the Final Report of Inquiry lists a series of acts (Report at 51-52), some of those listed, insofar as relevant to *Walker* Counsel, are not arguable instances of judge shopping but simply evidence of the lawyers' intent or desire to have a favorable judicial assignment.  *See, e.g.*, Report at 51 (characterizing it as "misconduct" that lawyers "engag[ed] in numerous and wide-ranging discussions

about how judges were favorable or unfavorable <u>in the context</u> of deciding whether to dismiss or refile their cases"); *but see id.* at 50 ("[T]he panel does not condemn the lawyers for fretting about their chances of success before a particular judge.").

### C. "Related Case" Allegations.

23.    *Walker* Counsel characterized their action as related to *Corbitt v. Taylor*, 2:18-cv-00091-MHT-GMB (M.D. Ala.), first in the Civil Cover Sheet that accompanied the *Walker* Complaint and then in a Motion to Reassign that they later withdrew before it was decided.   Report at 6-7, 17-18.   Unlike the Northern and Southern Districts of Alabama, the Middle District had no Local Rule explaining the standard for designating a case as "related" on the Civil Cover Sheet.   Middle District Local Rule 3.1(a) states that marking a case as related "is solely for administrative purposes, and matters appearing in the civil cover sheet have no legal effect in the action."   The motion to reassign required a good faith basis in law and fact under Fed. R. Civ. P. 11 and Rule 3.1 of the Alabama Rules.   *Cf. In re Bellsouth*, *supra*, 334 F.3d at 951 (upholding the district court's determination that the listing of a related case "was plausible," and did not constitute a misrepresentation).

24.    The panel evidently regarded the related case rule as inapplicable, whether because *Corbitt* was on appeal, or because they believed the issues in the case were insufficiently related to those in *Walker*.   But the panel did not find that *Walker* Counsel's motion to reassign was frivolous or implausible. I assume they did

14

not find that the motion was frivolous because, given the absence of a written standard in the Middle District of Alabama and that both cases related to healthcare for transgender individuals, there was a plausible basis for characterizing the cases as related.

25.     *Walker* Counsel acknowledged, and the panel concurred, that counsel "wanted Walker assigned to Judge Thompson" because "they considered [him] a favorable draw."  Report at 18.  But, other than in cases where the relationship between a pending case and a newly filed case is so obviously related that the application of the related case rule is undebatable, it is unsurprising that plaintiffs' lawyers who invoke the rule are motivated to draw a favorable judge.  That motive for invoking the related case rule, where there is a nonfrivolous basis to do so, does not mean that the application constitutes bad faith conduct or sanctionable misconduct, even if the application is ultimately denied.

**D. Contacting Judge's Thompson's Chambers.**

26.     The panel recounted that *Walker* Counsel decided to call Judge Thompson's chambers, "mistakenly believ[ing] that, by marking *Walter* related to *Corbitt*, Judge Thompson would review the *Walker* complaint to determine whether it was indeed related to *Corbitt*."  *Id.*  Carl Charles then made the call, "inform[ing] the clerk that *Walker* had been filed and marked related to *Corbitt* and that the *Walker* team would soon file a motion for preliminary injunction."  *Id.*  *Walker* Counsel

15

believed their information to be accurate, and it appears from the panel's description to have been so.  However, *Walker* Counsel misunderstood the process that the case would initially be assigned to Judge Thompson for a determination whether the cases were related.

27.    There is nothing in the Final Report to say that, given the lawyers' understanding, the call was impermissible under Rule 3.5 of the Alabama Rules, which restricts *ex parte* communications with judges, or under any other established rule or judicial standard.  Although Rule 3.5 does not delineate when ex parte communications with judges are permitted or forbidden, it is well understood that the rule targets ex parte communications "about the merits of the case," Gregory C. Sisk, et al., *Legal Ethics, Professional Responsibility, and the Legal Profession* 590 (2018), not calls to chambers for administrative or scheduling purposes, to ask about the judge's procedure, or, as here, as a courtesy to alert the judge's chambers that a filing is on its way.  *See* Report at 19 ("Calling chambers to alert a judge to an upcoming motion for emergency relief might be innocent and even helpful.").

28.    Like *Walker* Counsel's application to have *Walker* assigned to Judge Thompson as a case related to *Corbitt*, the call to Judge Thompson's chambers was animated by *Walker* Counsel's acknowledged desire to have the case assigned to a favored judge.  But, as discussed, taking otherwise permissible procedural measures toward that end is not bad faith or sanctionable misconduct.

16

**E. Dismissal of *Walker* Under Rule 41.**

29.     *Walker* Counsel filed the *Walker* action independently of *Ladinsky* and in good faith, albeit in the hope of being assigned a favorable judge whether through designation of the case as related to *Corbitt* or through random selection.   Later, dissatisfied with the judicial assignment, among other reasons, *Walker* Counsel voluntarily dismissed the case in order to buy time to decide what to do.   The panel made lengthy findings about the voluntary dismissal of the *Walker* and *Ladinsky* actions, many applicable exclusively to the counsel in the *Ladinsky* action, who ultimately refiled their lawsuit.   With respect to the *Walker* action, the panel found that *Walker* Counsel shared *Ladinsky* counsel's concern that the *Ladinsky* action was transferred to Judge Burke, Report at 29, and timed the voluntary dismissal with counsel in *Ladinsky.*

30.     *Walker* Counsel's dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i) was not factually or legally frivolous; rather, it was well founded.   The statutory grounds for voluntarily dismissing the action—namely, that the State had not yet filed an answer or a summary judgment motion—were satisfied.   That principal motivations were displeasure with the assignment of the action to Judge Burke and the desire for time to consider their procedural options does not make the motion improper or sanctionable.   On the contrary, counsel may voluntarily dismiss an action under this Rule for any reason, even a bad one such as forum shopping.   *See Adams v. USAA*

*Cas. Ins. Co.*, 863 F.3d 1069, 1080 (8th Cir. 2017); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114-15 (2d Cir. 2009).

31.     A lawyer who judge shops by filing multiple actions in the same forum on behalf of different plaintiffs with the intention of dismissing all but one deserves judicial disdain, and possible punishment, for this strategy, which courts have condemned. *See, e.g., Harsman v. Cin. Children's Hosp. Med. Ctr.*, 2022 U.S. Dist. LEXIS 170334, *11 (S.D. Ohio Sept. 20, 2022) (sanctioning lawyers "pursuant to 28 U.S.C. § 1927, based solely on their abuse of the judicial system through their strategic dismissal and re-filing of claims to thwart potentially unfavorable rulings by engaging in confessed judge shopping"). But that is not what happened here. Based on information and belief, including my review of the record, my understanding is that the filing and dismissal of the *Walker* action was not part of a coordinated effort with counsel in the *Ladinsky* action to file multiple lawsuits with the intention of maintaining one before a favored judge and dropping the other. The respective lawyers did not coordinate at the outset, and when they spoke to each other after the lawsuits were filed to discuss "refiling a single case together," the panel found, "[t]he call was fruitless and acrimonious." Report at 43. Although the panel found that the respective lawyers "coordinat[ed]" the dismissal of the two cases, *id.* at 51, meaning that they decided to dismiss the cases at the same time, the cases were not initially filed with the expectation that one (or both) would be

dismissed—indeed there is direct testimony on this issue suggesting that the two groups were competing to file first.[8]  *Walker* Counsel did not refile their action, and had no expectation that if they did so, the action would be assigned to a particular judge (given that *Ladinsky* had also been dismissed).  *Walker* Counsel dismissed the action to enable them to decide whether to resume the action, and they ultimately decided (in consultation with their clients), not to resume the action at all.[9]

32.     That said, courts have recognized that even when lawyers "judge shop" by filing and dismissing successive actions in different fora until they are assigned a favorable judge, the conduct is not invariably sanctionable, but may simply constitute zealous advocacy within the procedural rules.   Federal courts have acknowledged this with regard to class action lawsuits that can be filed in any of multiple districts.  For example, in *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 1001 (10th Cir. 2021), the court of appeals noted that although "[j]udge shopping" by class counsel who file in multiple fora in coordinated fashion "may be . . . particularly pernicious," it "is a necessary consequence of" the Supreme Court's

---

[8]     *See, e.g.* May 8, 2024 James Esseks Suppl. Decl. ¶¶ 14-22; Aug. 3, 2022 Hr'g Tr. at 18 (Hartnett testimony); July 26, 2022 Shannon Minter Decl. ¶ 1; Aug. 4, 2022 Hr'g Tr. at 65 (Eagan testimony); *see also* Report at 39 (noting *Ladinsky* team "won the race to the courthouse").

[9]     Further, this was not a situation where lawyers judge shopped by filing and dismissing multiple related actions without acknowledging that the cases were related as required by court rules. *Compare Disability Advocs. & & Counseling Grp., Inc. v. Betancourt*, 379 F. Supp. 2d 1343 (S.D. Fla. 2005).  Lawyers could justifiably be sanctioned for violating their duty of candor to the courts in this manner.

decision in *Smith v. Bayer Corp.*, 564 U.S. 299 (2011).  Other federal courts have made similar observations about class counsel's strategic use of voluntarily dismissals to avoid random judicial selections.  *See id.* at 1001-02 (citing authority).

### F. Fair Process and Notice Concerns.

33.    *Walker* Counsel did not engage in professional misconduct by judge shopping in violation of established standards of professional conduct.  They pursued a legitimate objective by attempting to take advantage of available procedures in lawful ways.  Unlike certain conduct, such as law breaking, there was nothing inherently unethical in the lawyers attempt to obtain a procedural advantage.

34.    Courts have inherent authority to establish new standards of conduct going forward.  To the extent the Court regards any of the conduct in the *Walker* case to be undesirable, it might exercise its inherent authority to put lawyers on notice that specified conduct is no longer permissible.  Or the Court might adopt new procedures to close off existing avenues for judge shopping.  But it would raise serious fair process concerns to sanction *Walker* Counsel for conduct that was permissible at the time they undertook it.  *See* Nancy J. Moore, *Mens Rea Standards in Lawyer Disciplinary Codes*, 23 Geo. J. Legal Ethics 1, 53 (2010) ("Another way that some courts take into account a reasonable mistake of law is to provide that clarifying interpretations of unclear disciplinary rules will be applied prospectively

only.  In some circumstances, such an approach might be constitutionally required . . . ." (citations omitted)).

## II.   *Walker* **Counsel Reasonably and Adequately Communicated with Their Clients, Consistently with the Expectations and Practices of a Responsible Attorney and the Standards of the Legal Community.**

35.   The panel noted that the plaintiffs in *Walker* were not informed in advance that their cases were being dismissed, but were told shortly afterwards. Report at 41-42.  This Court then asked whether *Walker* Counsel should "be sanctioned for failing to seek or secure their clients' consent in violation of Federal Rule of Civil Procedure 11 and the rules of professional conduct."  Order at 10.  The Court's Order made earlier reference to the requirements of Rule 1.2(a) of the Alabama Rules that lawyers "abide by a client's decisions concerning the objectives of representation" and "consult with the client as to the means by which they are to be pursued," and to the requirements of Rule 1.4 of the Alabama Rules that lawyers keep their clients "reasonably informed about the status of a matter" and explain matters "to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  Order at 6.[10]

---

[10]   The Order also made earlier reference to two other provisions of the Alabama Rules, Rules 1.3 and 3.3.  Order at 6.  These do not appear to me to be potentially applicable to *Walker* Counsel's "fail[ure] to seek or secure their clients' consent."  I assume the Court considered them potentially applicable to other aspects of the alleged conduct of the *Walker* lawyers and/or the *Ladinsky* lawyers.

36.     In response, *Walker* Counsel has presented further information regarding their clients' objective and regarding the lawyer-client communications, which I have reviewed.[11]   In brief, *Walker* Counsel understood that their clients' objective was to advance the cause of protecting healthcare for transgender children. Accordingly, *Walker* Counsel believed they were authorized by their clients to make decisions to advance that cause.  *Walker* Counsel understood that their clients agreed to serve as plaintiffs in a lawsuit challenging the Alabama law (SB 184) as a means of achieving that objective.  In addition to communicating with the clients before filing the lawsuit, from April 11, when *Walker* was filed, until April 15, when it was voluntarily dismissed, *Walker* Counsel communicated with their clients by phone and email regarding the procedural developments.  And although *Walker* Counsel spoke with their clients shortly after filing the notice of voluntary dismissal on the evening of April 15, they did not consult their clients immediately before filing the notice of dismissal.  *Walker* Counsel believed that it was necessary to move quickly, before the opportunity to move under Rule 41(a)(1)(A)(i) was foreclosed by the State's filing of an Answer.  They understood that dismissing the action would not bar them from refiling but would afford an opportunity to consider procedural options, including possibly filing a new lawsuit.  Later in the evening on April 15 and over the weekend, *Walker* Counsel consulted with their clients regarding the

---

[11]   *See* Carl Charles Suppl. Decl. (May 7, 2024), ¶¶ 116-127.

22

dismissal that had been filed and the path forward, and chose to dismiss without refiling, believing that others would challenge the Alabama law in court.

37.    Under the Alabama Rules, *Walker* Counsel had authority to dismiss the action without the clients' prior authorization, because the decision was one of strategy or "means," and was undertaken for the purpose of furthering the clients' overall objective, which was not to bring a lawsuit per se but to protect transgender children's healthcare.  Rule 1.2(a) of the Alabama Rules provides in pertinent part: "A lawyer shall abide by a client's decisions concerning the objectives of representation, . . . and shall consult with the client as to the means by which they are to be pursued."  After working with their clients for approximately two years, *Walker* Counsel was aware of their clients' objectives and made strategic decisions to advance those objectives.

38.    Even in an ordinary case where a plaintiff retains a lawyer specifically to pursue litigation as a means of recovering damages or achieving another remedy, the lawyer may make a strategic decision to move to dismiss a lawsuit as a means of achieving the plaintiff's ultimate objective.  The Restatement (Third) of the Law Governing Lawyers confirms this.  Titled "Allocating the Authority to Decide Between a Client and a Lawyer," Section 21 provides in pertinent part:

> As between client and lawyer: . . . a lawyer may take any lawful measure within the scope of representation that is reasonably calculated to advance a client's objectives as defined by the client, consulting with the client as required by § 20.

23

The accompanying Comment explains in part:

> A lawyer has authority to take any lawful measure within the scope of representation . . . that is reasonably calculated to advance a client's objectives as defined by the client . . . unless there is a contrary agreement or instruction and unless a decision is reserved to the client . . .. *A lawyer, for example, may decide whether to move to dismiss a complaint* and what discovery to pursue or resist.

Restatement (Third) of the Law Governing Lawyers, § 21, cmt. e (emphasis added).

39.    That the motion was a "means" by which the lawyers pursued the clients' objective is especially clear inasmuch as the lawsuit could have been refiled. The motion did not impede, much less thwart, the plaintiffs' opportunity to pursue their objective through litigation, although it may have delayed the injunctive relief initially sought.  At a time when a quick strategic decision was perceived to be necessary, the motion was an exercise of the lawyers' best professional judgment about how to achieve the clients' objective and a decision well within the confines of a responsible attorney's options to advance their clients' interest in a time-pressed situation.

40.    Further, for the reasons discussed below, *Walker* Counsel adequately communicated with their clients, consistent with the standards of the legal community, illustrated by the professional conduct rules for lawyers practicing in

Alabama, which are largely based on the American Bar Association's Model Rules of Professional Conduct.[12]

41.   Because the decision whether to move for voluntary dismissal was a decision that the lawyers were permitted to make, not one reserved to their clients, Rule 1.4(b) was not applicable.  Rule 1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  This provision calls on lawyers to give advice about an offer of settlement or, in a criminal case, a plea bargain, before the client decides whether to accept it.  But because *Walker* clients did not have to make an "informed decision[]" whether to file the voluntary dismissal motion – that was the lawyers' decision—Rule 1.4(b) did not require an explanation "to permit the client to make [an] informed decision[]."  Order at 6.

42.   Further, *Walker* Counsel satisfied Rule 1.4(a), which provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."  The accompanying Comment explains in part:

> Adequacy of communication depends in part on the kind of advice or assistance involved.  For example, in negotiations *where there is time to explain a proposal*, the lawyer should review all important provisions with the client before proceeding to an agreement.  In litigation a lawyer should explain

---

[12]   Although the Court's Order referred to Federal Rules of Civil Procedure Rule 11, I do not address it here because I do not perceive how it might be applicable to the adequacy of the lawyers' communications.

the general strategy and prospects of success and ordinarily should consult the
client on tactics that might injure or coerce others.  On the other hand, a lawyer
ordinarily cannot be expected to describe trial or negotiation strategy in detail.
The guiding principle under this Rule is that the lawyer should fulfill the
reasonable expectation of the client for information.  In determining what is
reasonable, the lawyer must consider that the lawyer has a duty to act in the
client's best interests.  However, each client will have different levels of
willingness, ability, and desire to participate intelligently in the representation.
These levels are often dependent upon the kind of representation.  Thus, the
guiding principle is contingent upon the client's reasonable expectation but is
limited or expanded by the client's willingness, ability and desire to participate
in the particular representation, *and by the practicability* of the lawyer's
meeting the client's expectations.

Alabama Rules, Rule 1.4, cmt. (emphasis added).  *See also* Ellen J. Bennett et al.,

*ABA Annotated Model Rules of Professional Conduct* 76 (10th ed. 2023) ("ABA

Model Rule 1.4(a)(2) . . . adds the word 'reasonably,' to preclude an interpretation

that the lawyer would always be required to consult, even when a particular act is

impliedly authorized.").

43.    The relevant provision of the Restatement (Third) of the Law

Governing Lawyers is to like effect.  Titled "A Lawyer's Duty to Inform and Consult

with a Client," Section 20 provides in pertinent part: "A lawyer must keep a client

reasonably informed about the matter and *must consult with a client to a reasonable*

*extent concerning decisions to be made by the lawyer*."  Restatement (Third) of the

Law Governing Lawyers, § 20(1) (emphasis added).  An accompanying Comment

explains in part: "To the extent that the parties have not otherwise agreed, a standard

of reasonableness under all the circumstances determines the appropriate measure

of consultation.  Reasonableness depends upon such factors as the importance of the information or decision, the extent to which disclosure or consultation has already occurred, the client's sophistication and interest, and the time and money that reporting or consulting will consume.  *So far as consultation about specific decisions is concerned, the lawyer should also consider . . . the time available*."  Id., § 20(1), cmt. c (emphasis added).  *See also* Gregory C. Sisk et al., *supra*, at 221 ("What is 'reasonable' turns of course on circumstances (*including time-constraints* and setting) and significance (the likely importance of the matter to the client)." (emphasis added)).

44.    As these provisions make clear, lawyers are not required to consult with clients in advance regarding each and every specific decision entrusted to a lawyer, but must engage in reasonable communications, guided by clients' expectations. Here, *Walker* Counsel sought to fulfill their clients' objectives, and overall, their regular communications with their clients were reasonable and within the confines of a responsible attorney's practice under the circumstances.  Further, the voluntary dismissal, which was discussed almost immediately after it was filed, was not mandated as a discussion with clients that needed to occur in advance of this strategy decision.  The above-quoted authorities suggest just the contrary insofar as they permit lawyers to take account of time constraints.  Here, the lawyers perceived that the voluntary dismissal had to be filed quickly, or the opportunity might be lost.

Given their knowledge of the clients' objectives, it was consistent with the responsible practice of law for them to make the decision, rather than delaying in order to confer with the clients.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  May 8, 2024
New York, New York

                                        */s/ Bruce A. Green*
                                        Bruce A. Green

28

## Appendix A

**BRUCE A. GREEN**
**Louis Stein Chair**
**Fordham University School of Law**
**150 West 62nd Street**
**New York, NY 10023**
**(212) 636-6851; (212) 636-6899 (FAX)**
**bgreen@law.fordham.edu**

### Bar Admissions

New York State (since 1982)
U.S. District Courts for the Southern and Eastern Districts of New York
U.S. Supreme Court

### Education

**Columbia University School of Law**:  J.D. 1981
          Honors: James Kent Scholar; Harlan Fiske Stone Scholar
          Associate Editor, *Columbia Law Review*

**Princeton University**:  A.B. 1978, *summa cum laude*

### Current Legal Employment

**Fordham University School of Law**:
          Louis Stein Chair of Law, since 1997
          Professor, 1996-97; Associate Professor, 1987-96
          Director, Louis Stein Center for Law and Ethics, since 1997
          Director, Stein Center for Ethics and Public Interest Law, 1992-97

### Prior Full-time Legal Employment

**New York University School of Law**: Visiting Professor: January-May 2007

**Office of the United States Attorney for the Southern District of New York**:
          October 1983 to August 1987, Assistant United States Attorney
          Deputy Chief Appellate Attorney, 1986-87; Chief Appellate Attorney, 1987

**U.S. Supreme Court**:  Law clerk to Justice Thurgood Marshall, 1982-83

**U.S. Court of Appeals for the Second Circuit**:  Law clerk to Judge James L. Oakes, 1981-82

A-1

## Appendix A

### Other Legal Positions

**Departmental Disciplinary Committee, App. Div., 1st Department**: Member, 1997-2002

**New York City Conflicts of Interest Board**: Member, Nov. 1995 to March 2005

**Handschu Authority**: Civilian member, July 1994 to Nov. 1995

**Office of Investigations Officer (U.S. v. I.B.T.)**: Special Counsel (part-time), 1991

**Office of Independent Counsel Lawrence Walsh**, Associate Counsel (part-time), 1988-91

**N.Y.S. Commission on Government Integrity**: Consultant and special investigator, 1988-90

**Columbia University School of Law**: Adjunct Professor (part-time), 1990

**Office of the United States Attorney for the Southern District of New York**: Special Assistant United States Attorney (part-time), September 1987 to June 1988

**Fordham University School of Law**: Adjunct Assoc. Professor (part-time), 1985-87

### Compensation

**Expert Compensation**: My ordinary hourly rate for expert services is $1400/hr. I am providing services in this matter at a discounted rate of $1100/hr.

## Appendix A

### Professional Service

**American Bar Association**:
    Commission on the American Jury Project: member, 2006-2008
    Commission on Multijurisdictional Practice: reporter, 2000-2002
    Coordinating Group on Bioethics and the Law: member, 1997-2003
    Criminal Justice Section:
        Chair: 2010-2011
        Chair-elect: 2009-2010
        Council: member, 2011-2017
        Criminal Justice Standards Committee: chair, 2017-2021; member, 2013-2017
        Criminal Justice Standards Task Force on Victims, member, 2020-present
        First Vice Chair: 2008-2009
        Ethics, Gideon and Professionalism Committee: co-chair, 2006-09
    Death Penalty Representation Project: member, 2006-09, 2014-17
    Section of Individual Rights and Responsibilities:
        Chair, Committee on Privacy and Information Protection, 2014-15
    Section of Litigation:
        Task Force on Sound Advice, 2012-13
        Task Force on Implicit Bias: member, 2011-12
        Task Force on the Litigation Research Fund: Chair, 2007-2011
        Division VII (Task Forces): Co-Director, 2007-2008
        Council member, 2004-07
        Committee on Law Faculty Involvement: co-chair, 1998-2001, 2003-2004
        Civil Justice Institute: member, 2001-03
        Task Force on Ethical Guidelines for Settlement Negotiations: member, 2000-02
        Ethics 2000 Task Force: member, 1999-2000
        Committee on Ethics and Professionalism: co-chair, 1995-1998
        Task Force on the Independent Counsel Act: reporter, 1997-1999
        Rep. to Sec./Div. Committee on Professionalism and Ethics, 1996-2003
        Committee on Amicus Curiae Briefs: chair, 1991-1995
    Standing Committee on Ethics and Professional Responsibility: chair, August 2023 to date; member, 2008-2011; liaison from the Criminal Justice Section, 2020-2023
    Standing Committee on Professionalism: reporter, 2000-2001
    Steering Committee for the Symposium on the Multijurisdictional Practice of Law: reporter, 1999-2000
    Task Force on the Attorney-Client Privilege: reporter, 2004-2010
    Task Force on Law Schools and the Profession: consultant, 1991-92

## Appendix A

**Association of American Law Schools:** Chair, Section of Professional Responsibility, 1999-2000

**Criminal Law Bulletin**: Contributing editor, 1988-1998

**Evan B. Donaldson Adoption Institute**: Ethics Advisory Committee: member, 1998-2001

**Federal Bar Council**:
    Board of Trustees, member, 2018 to present
    Second Circuit Courts Committee: member, 1994-1997; chair, Subcommittee on Criminal Law and Ethics
    *Federal Bar Council News*: member of the Editorial Board, 1995-2005
    Inn of Court: master, 2000-2002

**International Association of Legal Ethics:** Treasurer, 2019-2022; Chair, Conference Planning Advisory Committee, 2014-16; Director, 2010-13

**Legal Ethics**: Member of Advisory Board, 2008 to present

**National Conference of Bar Examiners, MPRE Drafting Committee**, Chair, 2018 to present; Member, 2001-2018

**New York City Bar:**
    Committee on Professional and Judicial Ethics: chair, 2016-2020; member, 1994-1997, 2003-2006, 2015-16
    Litigation Funding Working Group: member, 2018-2020
    Executive Committee: member, 2010-14
    Working Group on the NYS Bar Exam: member, 2014
    White Collar Crime Committee: member, 2013-16
    Council on Criminal Justice: member, 2009-13
    Delegate to NYS Bar Association, 2003-07
    Nominating Committee: member, 2005
    Ethics 2000 Committee: member, 1999-2001
    Jt. Committee on the Legal Referral Service: chair, 1993-96; member, 1996-2000
    Committee on International Access to Justice: member,1999-2000
    Committee on Disaster Plan: member, 1996-1997
    Marden Lecture Committee: member, 1991-1994
    Criminal Law Committee: member, 1991-1994
    Task Force on Lawyer Training: member, 1992-1994
    Corrections Committee: member, 1988-1991

## Appendix A

**New York County Lawyers' Association**:
>Director, 2004-2007, 2008-2012, 2013-2017
>Delegate to NYS Bar Association, 2009-2011
>Member, Committee on Professional Ethics, 2014 to present

**New York State Bar Association:**
>Committee on Professional Ethics: Chair, 1998-2001; member, 1991 to present
>Committee on Standards of Attorney Conduct: member, 1997 to present
>House of Delegates member, 2003-2007, 2009-2015
>Task Force on Attorney Client Privilege, 2006-2008
>Task Force on "Pay to Play" Concerns, member, 1998-2000

**New York State Continuing Legal Education Board:** Member, 2008-2011

**New York State Task Force on Attorney Professionalism and Conduct:** Member, 1996-1998

## Awards

Michael Franck Professional Responsibility Award, given by the ABA Center for Professional Responsibility, May 31, 2018

Powell Pierpont Award, given by the N.Y.C. Conflicts of Interest Board "for outstanding service to the New York City Conflicts of Interest Board," May 23, 2006

New York State Bar Association Criminal Justice Section Award for "outstanding contribution in the field of criminal law education," Jan. 23, 2003

Sanford D. Levy Award, given by New York State Bar Association Committee on Professional and Judicial Ethics, 1990

# Appendix A

## PUBLICATIONS

### Articles in Law Journals

Public Confidence, Judges, and Politics On and Off the Bench, forthcoming in Law & Contemporary Problems (2024), SSRN-id4745943.pdf (with Rebecca Roiphe)

Good Lawyers, Good Sports?: The Professional Identity of Sports Lawyers Representing Not-for-Profit Entities, forthcoming in Texas A&M L. Rev. (2024), SSRN-id4751700.pdf

Should State Trial Courts Become Laboratories of UPL Reform?, 92 Fordham L. Rev. 1285 (2024)

Foreword: The Legal Profession and Social Change, 92 Fordham L. Rev. 1239 (2024) (with Atinuke O. Adediran)

Depoliticizing Federal Prosecution, 100 Denver L. Rev. 817 (2023) (with Rebecca Roiphe)

Should Prosecutors Be Expected to Rectify Wrongful Convictions?, 10 Tex. A&M L. Rev. 167 (2023)

Civil Justice at the Crossroads: Should Courts Authorize Nonlawyers to Practice Law?, 75 Stanford L. Rev. Online 104 (June 2023), https://www.stanfordlawreview.org/online/civil-justice-at-the-crossroads/

A Fiduciary Theory of Progressive Prosecution, 60 Am. Crim. L. Rev. 1431 (2023) (with Rebecca Roiphe)

De-Weaponizing the Federal Government, Voting Rights & Democracy Forum, Feb. 28, 2023 (with Rebecca Roiphe), https://fordhamdemocracyproject.com/2023/02/28/de-weaponizing-the-federal-government/

Why State Courts Should Authorize Non-Lawyers to Practice Law, Fordham Law Review, 91 Fordham L. Rev. 1249 (2023)

For Deborah L. Rhode, Legal Ethics Scholar, 91 Fordham L. Rev. 1105 (2023)

Can the Fourth Amendment Keep People "Secure in their Persons?", 102 B.U. L. Rev. Online 92 (2022)

Lawyers and the Lies They Tell, 69 Wash. U. J. Law & Pol'y 37 (2022) (with Rebecca Roiphe)

Impeaching Legal Ethics, 49 Fla. St. Univ. L. Rev. 447 (2022) (with Rebecca Roiphe)

A-7

## Appendix A

ABA Model Rule 8.4(g), Discriminatory Speech and the First Amendment, 50 Hofstra L. Rev. 543 (2022) (with Rebecca Roiphe)

Should Victims' Views Influence Prosecutors' Decisions?, 87 Brooklyn L. Rev. 1127 (2022) (with Brandon P. Ruben)

Foreword: Subversive Lawyering, 90 Fordham L. Rev. 1945 (2022) (with Bennett Capers)

Selectively Disciplining Advocates, 54 Conn. L. Rev. 151 (2022)

Who Should Police Politicization of the DOJ?, 35 Notre Dame J. L. Ethics & Pub. Pol'y 671 (2021) (with Rebecca Roiphe)

Mental Health and the Legal Profession: Foreword and Dedication, 89 Fordham L. Rev. 2415 (2021) (with Deborah Denno)

Technocapital@Biglaw.com, 18 Nw. J. Tech. & Intell. Prop. 265 (2021) (with Carole Silver)

The Judicial Role in Professional Regulation: Foreword, 89 Fordham L. Rev. 1099 (2021)

When Prosecutors Politick: Progressive Law Enforcers Then and Now, 110 J. Crim. L. & Criminology 719 (2020) (with Rebecca Roiphe)

May Class Counsel Also Represent Lead Plaintiffs?, 72 Florida L. Rev. 1083 (2020) (with Andrew Kent)

Victims' Rights from a Restorative Perspective, 17 Ohio St. J. Crim. L. 293 (2020) (with Lara Bazelon)

Restorative Justice from Prosecutors' Perspective, 88 Fordham L. Rev. 2287 (2020) (with Lara Bazelon)

Should Criminal Justice Reformers Care About Prosecutorial Ethics Rules?, 58 Duq. L. Rev. 249 (2020) (with Ellen Yaroshefsky)

A Fiduciary Theory of Prosecution, 69 Am. U. L. Rev. 805 (2020) (with Rebecca Roiphe)

The Supreme Court's Supervisory Authority over Federal Criminal Cases: The Warren Court Revolution That Might Have Been, 49 Stetson L. Rev. 241 (2020)

## Appendix A

Punishment Without Process: "Victim Impact" Proceedings for Dead Defendants, Fordham Law Review Online, vol. 88 (2019) (with Rebecca Roiphe), http://fordhamlawreview.org/wp-content/uploads/2019/11/Green-Roiphe_November_FLRO_4.pdf

Regulating Prosecutors' Courtroom Misconduct, 50 Loy. U. Chi. L.J. 797 (2019)

Foreword: In Honor of Prof. Bennett L. Gershman, 16 Ohio St. J. Crim L. 291 (2019) (with Peter Joy & Ellen Yaroshefsky)

Prosecutorial Discretion: The Difficulty and Necessity of Public Inquiry, 123 Dickinson L. Rev. 589 (2019)

Prosecutors in the Court of Public Opinion, 57 Duquesne L. Rev. 271 (2019)

Judicial Activism in Trial Courts, 74 N.Y.U Ann. Survey of Am. Law 365 (2019) (with Rebecca Roiphe)

May Federal Prosecutors Take Direction from the President?, 87 Fordham L. Rev. 1817 (2019) (with Rebecca Roiphe)

Lawyers in Government Service – A Foreword, 87 Fordham L. Rev. 1791 (2019)

Can the President Control the Department of Justice?, 70 Ala. L. Rev. 1 (2018) (with Rebecca Roiphe)

Case Study 2: Advising Grassroots Organizations, 47 Hofstra L. Rev. 33 (2018) (with Marci Seville)

Learning to Live with Judicial Partisanship: A Response to Cassandra Burke Robertson, 70 Fla. L. Rev. F. 114 (2018) (with Rebecca Roiphe), http://www.floridalawreview.com/wp-content/uploads/GreenRoiphe_published.pdf

May Lawyers Assist Clients in Some Unlawful Conduct?: A Response to Paul Tremblay, 70 Fla. L. Rev. F. 1 (2018), http://www.floridalawreview.com/wp-content/uploads/Green_Published.pdf

Foreword, Symposium, Can a Good Person Be a Good Prosecutor in 2018?, Fordham Law Review Online, vol. 87 (2018), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3257914

The price of judicial economy in the US, International Journal of the Legal Profession (2018), https://doi.org/10.1080/09695958.2018.1516841

The Right to Two Criminal Defense Lawyers, 69 Mercer L. Rev. 675 (2018)

## Appendix A

Urban Policing and Public Policy – the Prosecutor's Role, 51 Georgia L. Rev. 1179 (2017)

Prosecutorial Ethics in Retrospect, 30 Geo. J. Legal Ethics 461 (2017)

The Price of Judicial Economy in the US, 7 Oñati Socio-Legal Series no.4, 790-808 (2017), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3035295

Rethinking Prosecutors' Conflicts of Interest, 58 Boston College L. Rev. 463 (2017) (with Rebecca Roiphe)

Prosecutorial Accountability 2.0, 92 Notre Dame L. Rev. 51 (2016) (with Ellen Yaroshefsky)

Disciplinary Regulation of Prosecutors as a Remedy for Abuses of Prosecutorial Discretion: A Descriptive and Normative Analysis, 14 Ohio St. J. Crim. L. 143 (2016) (with Samuel Levine)

Should There Be a Specialized Ethics Code for Death-Penalty Defense Lawyers?, 29 Geo. J. Legal Ethics 527 (2016)

Candor in Criminal Advocacy, 44 Hofstra L. Rev. 1105 (2016)

Access to Criminal Justice: Where Are the Prosecutors?, 3 Tex. A&M L. Rev. 515 (2016)

The Lawyer as Lover: Are Courts Romanticizing the Lawyer-Client Relationship?, 32 Touro L. Rev. 139 (2016)

Legal Discourse and Racial Justice: The Urge to Cry "Bias!", 28 Georgetown J. Legal Ethics 177 (2015)

Prosecutors' Disclosure Obligations in the U.S., 42 Hitotsubashi J. L. & Politics 51 (2014) (with Peter Joy)

Judicial Regulation of US Civil Litigators, 16 Legal Ethics 306 (2013)

Gideon's Amici: Why Do Prosecutors So Rarely Defend the Rights of the Accused?, 122 Yale L.J. 2336 (2013)

The Right to Plea Bargain With Competent Counsel After Cooper and Frye: Is the Supreme Court Making the Ordinary Criminal Process "Too Long, Too Expensive, and Unpredictable . . . in Pursuit of Perfect Justice"?, 51 Duquesne L. Rev. 735 (2013)

Lawyers' Professional Independence: Overrated or Undervalued?, 46 Akron L. Rev. 599 (2013)

## Appendix A

The Attorney-Client Privilege – Selective Compulsion, Selective Waiver and Selective Disclosure: Is Bank Regulation Exceptional?, 2013 Journal of the Professional Lawyer 85 (2013)

Unregulated Corporate Internal Investigations: Achieving Fairness for Corporate Constituents, 54 B.C. L. Rev. 73 (2013) (with Ellen S. Podgor)

Federal Criminal Discovery Reform: A Legislative Approach, 64 Mercer L. Rev. 639 (2013)

Rehabilitating Lawyers: Perceptions of Deviance and its Cures in the Lawyer Reinstatement Process, 40 Fordham Urb. L.J. 139 (2012) (with Jane Moriarty)

The Flood of U.S. Lawyers: Natural Fluctuation or Professional Climate Change?, 19 Int' J. Legal Prof. 193 (2012)

Prosecutors and Professional Regulation, 25 Georgetown J. Legal Ethics 873 (2012)

The Community Prosecutor: Questions of Professional Discretion, 47 Wake Forest L. Rev. 285 (2012) (with Alafair S. Burke)

Foreword, Globalization and the Legal Profession, 80 Fordham L. Rev. 2305 (2012)

Developing Standards of Conduct for Prosecutors and Criminal Defense Lawyers, 62 Hastings L.J. 1093 (2011)

Prosecutors' Ethical Duty of Disclosure *In Memory of Fred Zacharias*, 48 San Diego L. Rev. 57 (2011)

The Legal Ethics Scholarship of Ted Schneyer: The Importance of Being Rigorous, 53 Ariz. L. Rev. 365 (2011)

The Civil Government Lawyer: A View From the Jury Box, 38 Hofstra L. Rev. 883 (2010) (with Karen Bergreen).

Beyond Training Prosecutors About Their Disclosure Obligations: Can Prosecutors' Offices Learn From Their Lawyers' Mistakes, 31 Cardozo L. Rev. 2161 (2010)

Ethically Representing a Lying Cooperator: Disclosure as the Nuclear Deterrent, 7 Ohio St. J. of Crim. L. 639 (2010)

Fear of the Unknown: Judicial Ethics After *Caperton*, 60 Syracuse L. Rev. 229 (2010)

ABA Ethics Reform from "MDP" to "20/20": Some Cautionary Reflections, 2009 Journal of the Professional Lawyer 1 (2009)

## Appendix A

Rationalizing Judicial Regulation of Lawyers, 70 Ohio St. L.J. 73 (2009) (with Fred C. Zacharias)

Regulating Federal Prosecutors: Let There Be Light, 118 Yale L.J. Pocket Part TK (2009), http://thepocketpart.org/2009/TK/TK/green.html.

The Duty to Avoid Wrongful Convictions: A Thought Experiment in the Regulation of Prosecutors, 89 Boston University L. Rev. 1 (2009) (with Fred C. Zacharias)

"Public Service Must Begin at Home": The Lawyer as Civics Teacher in Everyday Practice, 50 Wm. & Mary L. Rev. 1207 (2009) (with Russell Pearce)

Regulating Discourtesy on the Bench: A Study in the Evolution of Judicial Independence, 64 N.Y.U Ann. Survey of Am. Law 497 (2009) (with Rebecca Roiphe) (symposium on judicial transparency)

Prosecutorial Discretion and Post-Conviction Evidence of Innocence, 6 Ohio St. J. of Crim. L. 467 (2009) (with Ellen Yaroshefsky)

Foreword, The Lawyer's Role in a Contemporary Democracy, 77 Fordham L. Rev. 1229 (2009)

Remembering Mary Daly: A Legal Ethicist Par Excellence, 83 St. John's L. Rev. 23 (2009)

The Market for Bad Legal Scholarship: William H. Simon's Experiment in Professional Regulation, 60 Stanford L. Rev. 1605 (2008)

"The U.S. Attorneys Scandal" and the Allocation of Prosecutorial Power, 69 Ohio St. L.J. 187 (2008) (with Fred C. Zacharias)

Some Realism About Bar Associations, 57 DePaul L. Rev. 425 (2008) (with Elizabeth Chambliss)

Criminal Defense Lawyering at the Edge – A Look Back, 36 Hofstra Law Rev. 353 (2007)

Teaching Lawyers Ethics, 51 St. Louis L.J. 1091 (2007)

Permissive Rules of Professional Conduct, 91 Minn. L. Rev. 265 (2006) (with Fred C. Zacharias)

Taking Cues: Inferring Legality from Others' Conduct, 75 Fordham L. Rev. 1429 (2006)
The Religious Lawyering Critique, 21 J. of Law & Religion 283 (2006)

## Appendix A

Representing Children in Families – Foreword, 6 Nevada L. Rev. 571 (2006) (with Annette R. Appell)

"Anything Rather Than a Deliberate and Well-Considered Opinion"–Henry Lord Brougham, Written by Himself, 19 Georgetown J. Legal Ethics 1221 (2006) (with Fred C. Zacharias)

Reconceptualizing Advocacy Ethics, 74 George Washington L. Rev. 1 (2005) (with Fred C. Zacharias)

Foreword, Professional Challenges in Large Firm Practices, 33 Fordham Urb. L.J. 7 (2005)

Prosecutorial Neutrality, 2004 Wisconsin L. Rev. 837 (with Fred C. Zacharias)

Foreword, Colloquium, Deborah Rhode's *Access to Justice*, 73 Fordham L. Rev. 841 (2004)

Federal Court Authority to Regulate Lawyers: A Practice in Search of a Theory, 56 Vand. L. Rev. 1303 (2003) (with Fred C. Zacharias)

Prosecutorial Ethics as Usual, 2003 Illinois L. Rev. 1573

Criminal Neglect: Indigent Defense from an Ethics Perspective, 52 Emory Law Review 1169 (2003)

Regulating Federal Prosecutors' Ethics, 55 Vand. L. Rev. 381 (2002) (with Fred C. Zacharias)

Bar Association Ethics Committees: Are They Broken?, 30 Hofstra L. Rev. 731 (2002)

May Judges Attend Privately Funded Educational Programs?  Should Judicial Education Be Privatized?: Questions of Judicial Ethics and Policy, 29 Fordham Urb. L.J. 941 (2002)

John D. Feerick: The Dean of Ethics and Public Service, 70 Fordham L. Rev. 2165 (2002)

Judicial Rationalizations for Rationing Justice: How Sixth Amendment Doctrine Undermines Reform, 70 Fordham L. Rev. 1729 (2002)

Thoughts About Corporate Lawyers After Reading *The Cigarette Papers*: Has the "Wise Counselor" Given Way to the "Hired Gun"?, 51 DePaul L. Rev. 407 (2001)

Reflections on the Ethics of Legal Academics: Law Schools as MDPs; or, Should Law Professors Practice What They Teach?, 42 S. Tex. L. Rev. 301 (2001)

Public Declarations of Professionalism, 52 S. Car. L. Rev. 729 (2001)

A-13

## Appendix A

The Disciplinary Restrictions on Multidisciplinary Practice: Their Derivation, Their Development, and Some Implications for the Core Values Debate, 84 Minn. L. Rev. 1115 (2000)

The Uniqueness of Federal Prosecutors, 88 Georgetown L.J. 207 (2000) (with Fred C. Zacharias)

Must Government Lawyers "Seek Justice" in Civil Litigation?, 9 Widener J. Pub. L. 235 (2000)

There But for Fortune: Real-Life vs. Fictional "Case Studies" in Legal Ethics, 64 Fordham L. Rev. 977 (2000)

Rationing Lawyers: Ethical and Professional Issues in the Delivery of Legal Services to Low-Income Clients, 67 Fordham L. Rev. 1713 (1999)

Why Should Prosecutors "Seek Justice"?, 26 Fordham Urb. L.J. 609 (1999)

The Criminal Regulation of Lawyers, 67 Fordham L. Rev. 327 (1998)

Lawyers as Nonlawyers in Child-Custody and Visitation Cases: Questions From a "Legal Ethics" Perspective, 73 Ind. L.J. 665 (1998)

Lawyer Discipline: Conscientious Noncompliance, Conscious Avoidance, and Prosecutorial Discretion, 66 Fordham L. Rev. 1307 (1998)

Less is More: Teaching Legal Ethics in Context, 39 Wm. & Mary L. Rev. 357 (1998)

Conflicts of Interest in Legal Representation: Should the Appearance of Impropriety Rule Be Eliminated in New Jersey--Or Revived Everywhere Else?, 28 Seton Hall L. Rev. 315 (1997)

The Role of Personal Values in Professional Decisionmaking, 11 Geo. J. of Legal Ethics 19 (1997)

Conflicts of Interest in Litigation: The Judicial Role, 65 Fordham L. Rev. 71 (1996)

Whose Rules of Professional Conduct Should Govern Lawyers in Federal Court and How Should the Rules Be Created?, 64 George Washington L. Rev. 460 (1996)

Foreword: Children and the Ethical Practice of Law, in Ethical Issues in the Legal Representation of Children, 64 Fordham L. Rev. 1281 (1996) (with Bernardine Dohrn)

Contextualizing Professional Responsibility: A New Curriculum for a New Age, 58 Law & Contemp. Probs. 193 (1995) (with Mary Daly & Russell Pearce)

## Appendix A

Policing Federal Prosecutors: Do Too Many Regulators Produce Too Little Enforcement?, 8 St. Thomas L. Rev. 69 (1995)

Of Laws and Men: An Essay on Justice Marshall's View of Criminal Procedure, 26 Ariz. St. L.J. 369 (1994) (with Daniel Richman)

Foreword, Ethical Issues in Representing Older Clients, 62 Fordham L. Rev. 961 (1994) (with Nancy Coleman)

Foreword, Urban Environmental Equity, 21 Fordham Urb. L.J. 425 (1994)

Lethal Fiction: The Meaning of "Counsel" in the Sixth Amendment, 78 Iowa L. Rev. 433 (1993) [reprinted in 6 Crim. Prac. L. Rev. 183 (1994)]

"The Whole Truth?": How Rules of Evidence Make Lawyers Deceitful, 25 Loyola of Los Angeles L. Rev. 699 (1992)

"Power, Not Reason": Justice Marshall's Valedictory and the Fourth Amendment in the Supreme Court's 1990-91 Term, 70 N.C.L. Rev. 373 (1992)

After the Fall: The Criminal Law Enforcement Response to the S&L Crisis, 59 Fordham L. Rev. S155 (1991)

Zealous Representation Bound: The Intersection of the Ethical Codes and the Criminal Law, 69 N.C.L. Rev. 687 (1991) [reprinted in 4 Crim. Prac. L. Rev. 323 (1992)]

"Hare and Hounds": The Fugitive Defendant's Constitutional Right to Be Pursued, 56 Brooklyn L. Rev. 439 (1990) [reprinted in 4 Crim. Prac. L. Rev. 67 (1992)]

The Good-Faith Exception to the Fruit of the Poisonous Tree Doctrine, 26 Crim. L. Bull. 509 (1990)

*Doe v. Federal Grievance Committee*: On the Interpretation of Ethical Rules, 55 Brooklyn L. Rev. 485 (1989)

"Through a Glass, Darkly": How the Court Views Motions to Disqualify Criminal Defense Lawyers, 89 Colum. L. Rev. 1201 (1989) [reprinted in 2 Crim. Prac. L. Rev. 551 (1990)]

Her Brother's Keeper: The Prosecutor's Responsibility When Criminal Defense Counsel Has a Conflict of Interest, 16 Am. J. Crim. L. 323 (1989)

"Package" Plea Bargaining and the Prosecutor's Duty of Good Faith, 25 Crim. L. Bull. 507 (1989)

## Appendix A

Limits on a Prosecutor's Communications With Prospective Defense Witnesses, 25 Crim. L. Bull. 139 (1989)

A Prosecutor's Communications With Represented Defendants: What Are the Limits?, 24 Crim. L. Bull. 283 (1988)

The Ethical Prosecutor and the Adversary System, 24 Crim. L. Bull. 126 (1988)

Note, Court Appointment of Attorneys in Civil Cases: The Constitutionality of Uncompensated Legal Assistance, 81 Colum. L. Rev. 366 (1981)

Note, A Functional Analysis of the Effective Assistance of Counsel, 80 Colum. L. Rev. 1053 (1980)

# Appendix A

## Articles in Legal Periodicals

"Attorney Discipline, the First Amendment, and You!", NYCLA, Nov. 29, 2022

"Let's Not Condemn All the Lawyers: How Lawyers in the Trump Administration Protected Democracy," National Law Journal, March 4, 2022, https://www.law.com/nationallawjournal/2022/03/04/lets-not-condemn-all-the-lawyers-how-lawyers-in-the-trump-administration-protected-democracy/

"The Objectionable Client," Litigation, vol. 48, no. 2, Winter 2022, p. 8

"A January Massacre Averted and the Lawyers Who Helped Avert It," NYLJ, Jan. 28, 2021, https://www.law.com/newyorklawjournal/2021/01/28/a-january-massacre-averted-and-the-lawyers-who-helped/?slreturn=20210028120632 (with Rebecca Roiphe)

"Resolving Ethics Questions in Good Faith," Litigation, vol. 46, no. 2, Winter 2020, p. 39

"The Judge in Epstein's Case Should Not Turn the Dismissal Into a Drama for the Victims," LAW.COM/NYLJ, Aug. 26, 2019, https://www.law.com/newyorklawjournal/2019/08/26/the-judge-in-epsteins-case-should-not-turn-the-dismissal-into-a-drama-for-the-victims/ (with Rebecca Roiphe)

"Should We Let Funders Invest in Law Firms?," Litigation, vol. 45, no. 4, Summer 2019, p. 10

"The Challenges and Rewards of Teaching Legal Ethics," The Professional Lawyer, vol. 25, no. 2 (2018), p. 3, https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/green_tpl_25_2.authcheckdam.pdf

"Threatening Litigation," Litigation, vol. 44, no. 1, Fall 2017, p. 13

"Balancing Act," ABA Journal, Nov. 2017, p. 24, available at: http://www.abajournal.com/magazine/article/opinion_gives_guidance_for_legal_services_lawyers_on_advising_with_nonlawye

"Handle With Care," Litigation, vol. 42, no. 4, Summer 2016, p. 9

"The Ethics of Global Litigation," Litigation, vol. 41, no. 4, Summer 2015, p. 9

"The Litigator's Monopoly," Litigation, vol. 40, no. 4, Summer 2014, p. 10

"Experiential Learning: Practice Makes Perfect," NYLJ, Apr. 21, 2014

## Appendix A

"Two Wrongs Make it Worse in Cops' Retrial," Nat'l L.J., Sept. 13, 2013

"The Ethics-Procedure Dichotomy," Litigation, vol. 39, no. 3, Summer 2013, p. 11

"Federal Litigation: A "No-Contact" Sport?," Litigation, vol. 38, no. 4, Summer/Fall 2012, p. 11

"Prosecutors for Sale," Nat'l L.J., Oct. 1, 2012, p. 43

"Balancing Conscience and Confidentiality for Attorney Whistleblowers," Corporate Counsel, June 6, 2012 (with Jordan Thomas), available at: http://www.law.com/jsp/cc/PubArticleFriendlyCC.jsp?id=1202557377777

"The Perils of Sloppy Engagement Agreements," Litigation, vol. 38, no. 1, Fall 2011, p. 7

"The Perils of New Technology," Litigation, vol. 37, no. 4, Summer 2011, p. 6

"Criminal Justice: There's Always More to Learn," Criminal Justice, Summer 2011, p. 1

"What Use Are Legal Academics?," Criminal Justice, Spring 2011, p. 1

"Criminal Justice–What's Ahead?  Roadblocks and New Directions," Criminal Justice, Winter 2011, p. 1

"Thinking About White-Collar Crime and Punishment," Criminal Justice, Fall 2010, p. 1

"Question of the Week – Unauthorized Practice of Law," BNA's Corporate Counsel Weekly 372 (Dec. 9, 2009) [reprinted in BNA, "Legal Ethics for In-House Corporate Counsel," B-2601 (2010)]

Book Review [Peter A. Joy & Kevin C. McMunigal, Do No Wrong  - Ethics for Prosecutors and Defense Lawyers], The Champion 59-60 (Feb. 2009)

"Prosecutors' Professional Independence: Reflections on *Garcetti v. Ceballos*," Criminal Justice, Summer 2010, p. 4

"Deceitful Silence," Litigation, Winter 2007, p. 24

"Feeling a Chill," ABA Journal, Dec. 2005, p. 61 (with David C. Clifton)

"Prosecuting Means More Than Locking Up Bad Guys," Litigation, Fall 2005, p. 12

"Interviewing Corporate Client Officers and Employees: Ethical Considerations," ABA Section of Litigation, Committee on Corporate Counsel Newsletter, vol. 19, no. 1, p. 1 (Fall 2004)

## Appendix A

[reprinted in ABA Section of Litigation, Professional Liability Litigation [Newsletter], vol. 3, no. 1, p. 1 (Winter 2005)]

Client Confidences: Should Lawyers Be Allowed to Reveal Them to Prevent Death or Serious Bodily Harm?: Yes, New York Lawyer, Oct. 2001, p. 20

Adventures in the Mortgage Trade: A Case Study in Legal Ethics, 27 N.Y. Real Property Law Journal 49 (Spring, 1999) (with Joshua Stein) [also published in Commercial Real Estate Financing: What Borrowers and Lenders Need to Know 1999 vol. 2, p. 749 (PLI 1999)]

Lying Clients: An Age-Old Problem, Litigation, Fall 1999, p. 19 [updated and reprinted in Priscilla Anne Schwab, ed., *The Litigation Manual, First Supplement* 1105 (2007)]
When Conflicts of Interest Arise Unexpectedly, Litigation Ethics, Spring/Summer 1998, p. 11

The "No-Contact" Rule in New York State--Some Less Contentious Questions, N.Y. Professional Responsibility Report, Aug. 1998, p.1

The Ten Most Common Ethical Violations, Litigation, Summer 1998, p. 48 [reprinted in Trial (March 1999), p. 70; updated and reprinted in Priscilla Anne Schwab, ed., *The Litigation Manual, First Supplement* 1077 (2007)]

Teaching Legal Ethics in Context, 70 N.Y.S.B.J. 6 (May/June 1998) (with Mary Daly)

Ethical Issues in Representing Children, 7 The Professional Lawyer 9 (1996)

Federal Prosecutors' Ethics: Who Should Draw the Lines?, 7 The Professional Lawyer 1 (1995)

Ethical Issues in Representing Older Clients, 5 The Professional Lawyer 18 (1994)

Crime and Punishment After the S&L Crisis, 46 Consumer Finance L.Q. Rep. 195 (1992)

Conflicts of Interest in Corporate Criminal Cases, 1 Corp. Crim. & Const'l L. Rptr. 98 (1990)

"Judge Kennedy Might Not Meet Expectations of Administration," Nat'l L.J., Dec. 21, 1987, p. 20

Articles in *Federal Bar Council News*: "Privileges in the Corporate Context," vol. 12, no. 1, p. 4 (2005); "Ethics Reform in New York," vol. 11, no. 2, p. 11 (2004); "MJP for Litigators," vol. 10, no. 4, p. 14 (2003); "Privately-Funded Seminars for Judges," vol. 9, no. 5, p. 1 (2002); "Multijurisdictional Issues," vol. 7, no. 4, p. 11 (2000); "Moral Ambiguity/Ambiguous Morals: Morgan Stanley and the $10,000 Payment," vol. 6, no. 4, p. 1 (1999); "When Prosecutors Accuse Criminal Defense Lawyers of Wrongdoing," vol. 5, no. 5, p. 1 (1998); "Prosecuting Lawyers," vol. 5, no. 4, p. 11 (1998); "A View From The 'Ethics' Front," vol. 5, no. 3, p. 7 (1998);

## Appendix A

"Professional Detachment," vol. 4, no. 4, p. 8 (1997); "The Philosophy of Our Ethical Rules," vol. 4, no. 3, p. 23 (1997); "The President vs. Mrs. Jones," vol. 4, no. 1, p. 11 (1997); "Should Judges Promote Professionalism?," vol. 3, no. 4, p. 4 (1996); "Bad Arguments," vol. 3, no. 1, p. 7 (1996); "The Sins of the Lawyer (and the Procedural Consequences)," vol. 2, no. 4, p. 9 (1995); "Attorney Discipline in the Second Circuit," vol. 2, no. 2, p. 11 (1995)

### Books

*Professional Responsibility: A Contemporary Approach* (West Publ. 5th ed. 2023) (with Renee Knake Jefferson, Russell G. Pearce, Peter A. Joy, Sung Hui Kim, M. Ellen Murphy, Laurel S. Terry, Lonnie S. Brown, Jr. & Swethaa S. Ballakrishnen)

*Professional Responsibility: A Contemporary Approach* (West Publ. 4th ed. 2020) (with Renee Knake Jefferson, Russell G. Pearce, Peter A. Joy, Sung Hui Kim, M. Ellen Murphy, Laurel S. Terry & Lonnie S. Brown, Jr.)

*Professional Responsibility: A Contemporary Approach* (West, 3d ed. 2017) (with Russell G. Pearce, Renee Newman Knake, Peter A. Joy, Sung Hui Kim, M. Ellen Murphy & Laurel S. Terry)

*Professional Responsibility: A Contemporary Approach* (West, 2d ed. 2014) (with Russell G. Pearce, Daniel J. Capra, Renee Newman Knake & Laurel S. Terry)

*Professional Responsibility: A Contemporary Approach* (West, 2011) (with Russell G. Pearce & Daniel J. Capra)

*Tax Fraud and Money Laundering* (The John Marshall Publ. Co., 1993) (with Robert H. Hishon & Richard A. Westin)

Editor, *Government Ethics for the 1990's: The Collected Reports of the New York State Commission on Government Integrity* (Fordham Univ. Press, 1991)

### Book Chapters

Bar Authorities and Prosecutors (Chapter 15), in *Oxford Handbook on Prosecutors and Prosecution* (Ronald W. Wright et al., ed. 2021)

The flood of US lawyers: natural fluctuation or professional climate change?, in *Too Many Lawyers?  The future of the legal profession* 71-86 (Eyal Katvan et al., ed.) (Routledge 2017)

## Appendix A

Attorneys' Conflicts of Interest in International Arbitrations, in *Contemporary Issues in International Arbitration and Mediation: The Fordham Papers 2014* 73-89 (Arthur W. Rovine, ed.) (Brill Nijhoff 2015)

Prosecutors' Ethics in Context: Influences on Prosecutorial Disclosure," in *Lawyers in Practice: Ethical Decision Making in Context* 269-92 (Leslie C. Levin & Lynn Mather, ed.) (University of Chicago Press 2012) (with Ellen Yaroshefsky)

"Rule 1.10: Imputation of Conflicts of Interest," in The New York Rules of Professional Conduct: Rules and Commentary 235-66 (2010) (NYCLA Ethics Inst., ed.)

"Rule 1.11: Special Conflicts of Interest for Former and Current Government Officers and Employees," in The New York Rules of Professional Conduct: Rules and Commentary 267-86 (2010) (NYCLA Ethics Inst., ed.)

"Rule 1.12: Specific Conflicts of Interest for Former Judges, Arbitrators, Mediators or Other Third-Party Neutrals," in *The New York Rules of Professional Conduct: Rules and Commentary* 287-95 (2010) (NYCLA Ethics Inst., ed.)

"Ethical Issues in Dealing with Experts," in *Litigators on Experts* 126 (ABA 2010) (with Lawrence J. Fox)

"Ethics in Criminal Advocacy," in The State of Criminal Justice 181 (2009) (with Ellen Yaroshefsky)

"Ethics in Criminal Advocacy," in *The State of Criminal Justice* 123 (2007-2008) (with Ellen Yaroshefsky)

"The Ethics of Marketing Legal Services," in *Effective Marketing for Lawyers* (N.Y.S. Bar Ass'n 1996) (with Russell Pearce), and *Effective Marketing for Lawyers* (N.Y.S. Bar Ass'n 2d ed. 2005) (with Russell Pearce)

Reporter to *Evidence in America*: The Federal Rules in the United States (1989-91 supp., Fed. R. Evid. 801, 802, and 804)

## Other Legal Writings

"When the Prosecutor Becomes the Judge," ACSblog, Feb. 25, 2016, https://www.acslaw.org/acsblog/when-the-prosecutor-becomes-the-judge

"A Professional Responsibility Perspective on Turner v. Rogers," Concurring Opinions, June 2, 2011, http://concurringopinions.com/archives/author/bruce-green

## Appendix A

"Interviewing Corporate Client Officers and Employees: Ethical Considerations," in ABA Section of Litigation, 2004 Annual Conference

Report of the Commission on Multijurisdictional Practice (Aug. 2002)

"Representing Corporations Under Fire: Ethical Considerations – A Hypothetical," and "Representing Corporations Under Fire: Ethical Considerations," in MCLE Marathon 2002 521, 527 (PLI 2002)

Interim Report of the Commission on Multijurisdictional Practice (Nov. 2001)

"A Guide to Professionalism Commissions" report of the ABA Standing Committee on Professionalism (2001)

"Recent Federal Court Decisions in Professional Responsibility," in Current Developments in Federal Civil Practice 2001 413 (PLI 2001) (with Mary Lu Bilek)

Editor, *Litigation Ethics: Course Materials for Continuing Legal Education* (ABA Section of Litigation 2000) (with John Q. Barrett)

"Assisting Clients with Multi-State and Interstate Legal Problems: The Need to Bring the Professional Regulation of Lawyers into the 21st Century" (report summarizing the proceedings of the Symposium on the Multijurisdictional Practice of Law) (June 2000)

"Recent Federal Court Decisions in Professional Responsibility," in Current Developments in Federal Civil Practice 1999 311 (PLI 1999)

"The Duty to Report Ethical Misconduct," in ABA Section of Family Law, *1998 Annual Meeting* 17 (July 31-Aug. 3, 1998)

"Local Rules Limiting Attorney Speech in Criminal Proceedings" (Federal Bar Council, June 1996) (principal author)

"Establishing Ethical Standards for Federal Prosecutors and Defense Attorneys," 49 The Record of the Assn. of the Bar of the City of New York 21 (1994) (principal author)

"Ex Parte Contacts With Employees of a Corporate Party in Civil Litigation," in ABA Section of Litigation, *Best Evidence Seminar* 41 (Apr. 19, 1991)

"Use of an Attorney's Statements Against His or Her Client," in ABA Section of Litigation, Best Evidence Seminar 35 (Mar. 9-10, 1990)

## <u>Appendix A</u>

### <u>Articles in Non-legal Publications</u>

"Opinion: Defendants in the Georgia election case have no reason to complain — even if the Fani Willis allegations are true," CNN, Jan. 25, 2024, https://edition.cnn.com/2024/01/24/opinions/fani-willis-trump-georgia-election-case-green/index.html

Letter to the Editor, NY Times, June 1, 2023 (with Nora Freeman Engstrom)

"What's Wrong With Getting a Little Free Legal Advice?", NY Times, March 17, 2023 (with David Udell)

"Congress must protect DOJ's independence," NY Daily News, Oct. 14, 2021, Congress must protect DOJ's independence - New York Daily News (nydailynews.com) (with Rebecca Roiphe)

"As the Giuliani case goes forward, courts should think deeply about the First Amendment," Washington Post, June 25, 2021, Opinion | As the Giuliani case goes forward, courts should think deeply about the First Amendment - The Washington Post (with Rebecca Roiphe)

"Is Jeffrey Clark's Secret Conversation With Trump 'Privileged'?", Just Security, Feb. 5, 2021, Is Jeffrey Clark's Secret Conversation With Trump "Privileged"? (justsecurity.org) (with Rebecca Roiphe)

"Trump's lawsuits are good for American democracy," The Hill, Nov. 9, 2020, https://thehill.com/opinion/white-house/525008-trumps-lawsuits-are-good-for-american-democracy (with Rebecca Roiphe)

"Congress Needs to Empower DOJ IG to Hold Prosecutors Accountable," Bloomberg Law, Oct. 2, 2020 (with Rebecca Roiphe), https://news.bloomberglaw.com/us-law-week/congress-needs-to-empower-doj-ig-to-hold-prosecutors-accountable?context=search&index=3

"A Lawyer's Client was Abused by his Father. But he also Paid the Lawyer's Fees. Now the Client is on Death Row."  Newsweek, Mar. 11, 2019, https://www.newsweek.com/acklin-alabama-lawyer-fee-conflict-scotus-1358937

"Pardoning Paul Manafort might not be such a bad idea if Donald Trump wants to take a risk," USA Today, Aug. 27, 2018, https://www.usatoday.com/story/opinion/2018/08/27/paul-manafort-convicted-trump-pardon-obstruction-justice-column/1083646002/ (with Rebecca Roiphe)

"Judge Kavanaugh and Justice Kennedy do not have conflicts of interest," The Hill, July 13, 2018 (with Rebecca Roiphe), http://thehill.com/opinion/judiciary/396922-judges-kavanaugh-and-justice-kennedy-do-not-have-conflicts-of-interest

A-23

## Appendix A

"The president is the chief executive, but does not control the Mueller probe," The Hill, March 26, 2018, http://thehill.com/opinion/white-house/380036-the-president-is-the-chief-executive-but-does-not-control-the-mueller (with Rebecca Roiphe),

"Third Party Legal Fee Payments – A Problem for Trump But Not for Corporations (Perspective)," Oct. 3, 2017, https://biglawbusiness.com/third-party-legal-fee-payments-a-problem-for-trump-but-not-for-corporations-perspective/

"Are Systemic Legal Problems Like Public Health Problems? (Perspective)," Bloomberg Law, June 9, 2017, https://bol.bna.com/are-systemic-legal-problems-like-public-health-problems-perspective/

"Trump Should Hire His Own Lawyers to Defend Emoluments Suit (Perspective)," Bloomberg Law, May 3, 2017, https://bol.bna.com/trump-should-foot-legal-bill-to-defend-emoluments-suit-perspective/

"Justice Gorsuch Should Take Inspiration From John Adams (Perspective)," Bloomberg Law, April 13, 2017, https://bol.bna.com/justice-gorsuch-should-take-inspiration-from-john-adams-perspective/

"Michael Flynn Should Listen to a Lawyer (Perspective)," Bloomberg Law, April 3, 2017, https://bol.bna.com/michael-flynn-should-listen-to-a-lawyer-perspective/

"Trump Loves 'Fake Judges,' Can't Stand Real Judges (Perspective)", Bloomberg Law, March 28, 2017, https://bol.bna.com/trump-loves-fake-judges-cant-stand-real-judges-perspective/

"Bharara Firing Shows Trump's Ethics Problem, Says Law Professor (Perspective)," Bloomberg Law, March 13, 2017, https://bol.bna.com/bharara-firing-shows-trumps-ethics-problem-says-law-professor-perspective/

"What Michael Bloomberg can teach Donald Trump about ethics," Newsday, Jan. 21, 2017, http://www.newsday.com/opinion/commentary/what-michael-bloomberg-can-teach-donald-trump-about-ethics-1.12991254

## Appendix A

### Participation in Professional and Academic Programs (since January 2010)

Moderator, "The Role of the Legal Profession in a Time of Crisis – Part 2: Democracy and Insurrection," online program co-sponsored by Hofstra Law's Freedman Institute and Fordham Law's Stein Center for Law and Ethics, Apr. 11, 2024

Panelist, "This Just In!  Annual Highlights from the ABA Center for Professional Responsibility," ABACLE webinar, Mar. 18, 2024

Panelist, "Cutting Edge Ethics Issues When Dealing With New Technologies," NYSBA Dispute Resolution Section, Mar. 5, 2024

Panelist, "Criticizing and Baiting Judges: The Limits of Aggressive Advocacy," The Eastern District Association, Brooklyn, NY, Feb. 16, 2024

Moderator, Panel on "the Movement Toward Democratizing the Law, Symposium, "With People Struggling and the Law Failing, What are the Solutions to the Access to Justice Crisis in America?", Fordham Law School, Feb. 9, 2024

Panelist, "Ethics for Mediators and Counsel," 18th Annual Conference on International Arbitration and Mediation, Fordham Law School, Nov. 17, 2023

Panelist, "Hot Topics in Ethics," Federal Bar Council Fall Bench and Bar Retreat, Westbrook, Connecticut, Nov. 5, 2023

Panelist, "Ethical Considerations for Corporate Investigations," New York City Bar, Oct. 4, 2023

Panelist, "More than Sports: What Comes After NIL," Texas A&M Schol of Law, Sept. 29, 2023

Presenter, "Prosecutorial Independence," Research Committee on Sociology of Law Annual Conference, Lund University, Sept. 1, 2023

Speaker and moderator, conference on "Oversight of prosecutorial decision making and conduct," Georgia State University School of Law, Aug. 18, 2023

Panelist, "Lawyers Behaving Badly: Sanctions, Suspensions and General Shenanigans," New York Women's Bar Ass'n, April 25, 2023

Panelist, "Ethical Challenges for Government Lawyers," Denver Law Review Symposium on The Watergate State, Denver Law School, Apr. 14, 2023

Moderator and discussant, "The Future of Prosecution," Fordham Law School, March 3, 2023

## Appendix A

Speaker, "Should Courts Authorize Nonlawyers to Practice Law?," Access to Justice: 2023 Stanford Law Review Symposium, Stanford Law School, Feb. 10, 2023

Moderator, "Outside Counsel Guidelines: Fair or Foul?," Association of Professional Responsibility Lawyers 2023 Midyear Meeting, New Orleans, LA, Feb. 3, 2023

Panelist, "Ethics in Criminal Advocacy," Federal Bar Council, Jan. 27, 2023

Panelist, "Witness Ethics: Avoiding the Minefields," ABA Section of Litigation, Dec. 14, 2022

Panelist, "How new technologies are transforming the provision of legal services: analysis and strategy," Third Symposium on Technology, Legal Services, and Legal Education, Fordham Law School, Dec. 9, 2022

Panelist, "The Latest Changes to New York's Law of Lawyering," NYS Bar Ass'n, Dec. 7, 2022

Panelist, "Ethics for Corporate Counsel 2022," NYS Bar Ass'n Corporate Counsel Section, Nov. 3, 2022

Panelist, Symposium on Reform-Minded Prosecution, Georgetown Law School, Oct. 31, 2022

Panelist, Short Circuit Live in NYC, Institute for Justice, NY, NY, Oct. 30, 2022

Speaker, "Why State Courts Should Authorize Non-lawyers to Practice Law," Stein Center colloquium, Fordham Law School, Oct. 21, 2022

Speaker, "Should Prosecutors Be Expected to Rectify Wrongful Convictions?", Texas A&M Law School, Sept. 30, 2022

Panelist, "Ethical Considerations for Corporate Investigations: Views from All Sides," NY City Bar, Sept. 14, 2022

Panelist, "Conflicts of Interest: Evaluating the Current Framework," International Legal Ethics Conference IX, UCLA, Aug. 15, 2022

Panelist and Chair, "Prosecution amid Political Contestation and Polarization," International Legal Ethics Conference IX, UCLA, Aug. 13, 2022

Speaker, "Cutting Edge Ethical Dilemmas in Criminal Defense," NY County Defender Services, July 12, 2022

Co-presenter, "A Progressive Theory of Progressive Prosecution," Criminal Justice Ethics Schmooze, NY Law School, June 10, 2022

## Appendix A

Presenter, "Why State Courts Should Authorize Non-lawyers to Practice Law," A2J Roundtable, Fordham Law School, May 20, 2022

"Should You Have to Be a Lawyer to Do That?," Howard Lichtenstein Distinguished Professorship in Legal Ethics Lecture, Hofstra Law School, April 21, 2022

Moderator, panel on "Lawyering in Private: Privilege and Confidentiality – Sacred Protection or Overused Cloak of Secrecy?," Symposium on Lawyering for the President: Testing the Limits of Ethics and Professionalism, University of Georgia School of Law (virtual), Feb. 25, 2022

Panelist, "Ethical Considerations for Corporate Investigations: Views from All Sides," N.Y. City Bar, Sept. 23, 2021

Moderator, "Lawyering in the DC Spotlight," ABA National Conference on Professional Responsibility, June 4, 2021

Co-moderator, "Ethical Issues in Crisis Lawyering," Fordham Law School, March 16, 2021

Presenter, symposium on "The Ethics of Government Service," Notre Dame Law School, Feb. 13, 2021

Panelist, "From Rudy Giuliani to Josh Hawley: What is the Role of Lawyer Discipline?," Hofstra Law School, Jan. 27, 2020

Panelist, Report by the Working Group on Litigation Funding, N.Y. City Bar, Jan. 26, 2020

Co-speaker, "Ethical Obligations in Misdemeanor Courts," ABA Public Defense Summit, Jan. 22, 2020

Co-interviewee, "Prosecutorial Discretion: Police Killings and Sexual Abuse," Talks on Law, recorded Dec. 8, 2020, available at:: https://www.talksonlaw.com/talks/prosecutorial-discretion-police-killings-and-sexual-abuse

Panelist, "The Next 50: Looking to the Future of Criminal Justice Ethics," Hofstra Law School, Nov. 16, 2020

Moderator, "The Problem of Lawyers' Mental Health in the Decade of the 2020s," symposium on Mental Health and the Legal Profession, Fordham Law School, Nov. 6, 2020

Panelist, "Lawyer Discipline and Executive Branch Lawyers," Cardozo Law School, Oct. 29, 2020

## <u>Appendix A</u>

Panelist, "Ethical Considerations for Corporate Investigations in the World of Covid-19," N.Y. City Bar, Sept. 17, 2020

Co-speaker, "CJS History: The History of the CJS Standards Project," The JustPod, Aug. 20, 2020, https://www.buzzsprout.com/252350/4970960-cjs-history-the-history-of-the-cjs-standards-project

Commenter, "Discussion Group: State Your Case: The Influence of State Court Decisions, Tribal Courts, and State and Local Level Reforms on Criminal Practice," Southeastern Association of Law Schools 2020 Annual Conference, Aug. 3, 2020

Speaker, "Discussion Group: Prosecution: Implications of the Progressive Prosecution Movement," Southeastern Association of Law Schools 2020 Annual Conference, Aug. 2, 2020

Faculty, "Are Outside Counsel Guidelines a Threat to the Practice?," ABA webinar, April 20, 2020

Co-speaker, "Ethical Issues in the Practice of the Attorney General's Office," Office of the NYS Attorney General, Feb. 13, 2020

Panelist, "Ethical Considerations for Corporate Lawyers in 2020," Cardozo Law School, Feb. 5, 2020

Panelist, "Achieving Access to Justice Through ADR: Fact or Fiction?," Fordham Law School, Nov. 1, 2019

Panelist, discussion of Lonnie T. Brown, Jr., Defending the Public's Enemy: The Life and Legacy of Ramsay Clark, University of Georgia School of Law, Oct. 3, 2019

Panelist, "Ethical Considerations for Corporate Investigations: Views from All Sides," N.Y. City Bar, Sept. 18, 2019

Moderator, "Risky Business: The Mueller Minefield and Ethical Dilemmas for Lawyers Involved in Government Investigations," ABA 2019 Annual Meeting, San Francisco, California, Aug. 9, 2019

Panelist, "'Less fast, Less Furious'?: Protecting Clients & the Public in an Era of Regulatory Reform," Association of Professional Responsibility Lawyers 2019 Annual Meeting, San Francisco, California, Aug. 9, 2019

Moderator, "Discussion Group: A 2020 Vision of Criminal Prosecution and Defense," Southeastern Association of Law Schools 2019 Annual Conference, Boca Raton, Florida, July 30, 2019

## Appendix A

Speaker, "Discussion Group: Vulnerable People, Fragile Rights, Criminal Justice," Southeastern Association of Law Schools 2019 Annual Conference, Boca Raton, Florida, July 28, 2019

Presenter, Legal Ethics and Fiduciaries Workshop, Kylemore Abbey Global Center, University of Notre Dame, Connemara, County Galway, Ireland, June 20-21, 2019

Moderator, "Hard Legal Ethics Questions – How to Resolve Them or, Even Better, Avoid Them," NY City Bar, May 16, 2019

Panelist, "Litigators and Witnesses: Ethical Considerations and Limitations," NELA/NY Spring Conference, NY, NY, May 10, 2019

Panelist, "Conversations on the Warren Court's Impact on Criminal Justice – After 50 Years," Stetson University College of Law, April 5, 2019

Co-panelist, "Legal Ethics and Professional Responsibility," Legal Issues in Museum Administration 2019, ALI-CLE, Washington, DC

Speaker, "Prosecutorial Discretion: The Difficulty and Necessity of Public Inquiry," Symposium on Discretion and Misconduct: Examining the Roles, Functions, and Duties of the Modern Prosecutor, Penn State - Dickinson Law School, March 15, 2019

Panelist, "Avoiding Ethical Pitfalls in a Complicated Business Environment," Cardozo Law School, Feb. 27, 2019

Panelist, "Special Counsel Investigations and Legal Ethics," Duquesne University School of Law, Feb. 8, 2019

Speaker, "Current Developments in internal investigations in US Criminal Law and Procedure," Internal Investigations – Comparative Workshop on US, UK and German Law, House of Finance, Goethe University, Frankfurt, Germany, Jan. 31, 2019

Panelist, "The Ethical Obligations of a Lawyer to Learn the True Facts," NYS Bar Ass'n Annual Meeting, Jan. 15, 2019

Panelist, "Refresher Ethics: Steering Clear of Witness Minefields," ABA Webinar, Dec. 18, 2018

Panelist, "The Ethics of Copyright Trolling (And More): A Game Show," the Copyright Society of America, NY, NY, Dec. 13, 2018

## Appendix A

Panelist, "Ethics for Corporate Counsel," NYSBA Corporate Counsel Section, NY, NY, Nov. 30, 2018

Co-presenter, "May Federal Prosecutors Take Direction from the President?," Faculty workshop, Rutgers Law School (Newark), Nov. 29, 2018

Moderator, "Lies, Damned Lies and 'Alternative Facts,'" ABA Center for Professional Responsibility, Webinar, Oct. 11, 2018

Panelist, "Ethical Considerations for Corporate Investigations: Views from All Sides," N.Y. City Bar, Oct. 4, 2018

Panelist, "Polish Your Ethics: Legal Sand Traps Trial Lawyers Should Avoid," 2018 Annual Meeting, American College of Trial Lawyers, New Orleans, Louisiana, Sept. 27, 2018

Discussant, "Discussion Group: The Ethics of Legal Education," 2018 Annual Conference, Southeastern Association of Law Schools, Ft. Lauderdale, Florida, August 9, 2018

Moderator, "Discussion Group: Judging – 50 Years After the Chicago Seven Trial," al Defense," 2018 Annual Conference, Southeastern Association of Law Schools, Ft. Lauderdale, Florida, August 7, 2018

Discussant, "Discussion Group: Conversations on the Warren Court's Impact on Criminal Justice," 2018 Annual Conference, Southeastern Association of Law Schools, Ft. Lauderdale, Florida, August 6, 2018

Panelist, "Litigators' Ethics CLE," 2018 Second Circuit Judicial Conference, Saratoga Springs, NY, June 14, 2018

Presenter, "More than a Stern Rebuke: A 'Broken Windows' Strategy for Judges Policing Prosecutors," Criminal Justice Ethics Schmooze, Brooklyn Law School, June 11, 2018

Panelist, "Ethics of Working with Witnesses, ABA Webinar, recorded June 6 2018, to be aired Aug. 15, 2018

Moderator, "Lies, Damned Lies and 'Alternative Facts,'" 44th ABA National Conference on Professional Responsibility, Louisville, Kentucky, May 31, 2018

Panelist, "Social Media: Legal, Ethical and Practical Considerations for Lawyers," Federal Bar Council, Bridgeport, Connecticut, May 21, 2018

Moderator, "An Ounce of Prevention: How to Reduce Liability, Disciplinary and Reputational Risks, N.Y. City Bar, May 16, 2018

## Appendix A

Panelist, "Ethics: Financing Mass Torts," 2018 Drug & Medical Device Seminar, Defense Research Institute, NY, NY, May 11, 2018

Presenter, "Professional Discipline of US Advocates," Workshop on "Regulating Lawyers Through Disciplinary Systems," International Institute for the Sociology of Law, Oñati, Spain, April 26, 2018

Panelist, "Sentencing Reform from the Bench: The Emerging Role of District Court Judges," NYU Annual Survey of American Law, NYU School of Law, March 26, 2018

Panelist, "Ethical Pitfalls and Pratfalls in Corporate Representations: Conflicts, Waivers, and Common Interest and Joint Defense Agreements," Cardozo Law School, March 7, 2018

Panelist, "Prying Eyes: Think Confidential and Privileged Client Information is Safe at the Border: Think Again," 32nd Annual National Institute on White Collar Crime, ABA, San Diego, CA, March 2, 2018

Moderator, "Creating Groundbreaking Research on Neuroscience and Law," conference on The Future of Neuroscience and Law, Fordham Law School, Feb. 21, 2018

Panelist, Litigation Ethics and New Technology, Federal Bar Council 2018 Winter Bench & Bar Conference, Nevis, Feb. 16, 2018

Speaker, "Love in the Time of Cholera or Ethics in the Time of Trump?," McInerney Inn of Court, U.S. Courthouse, SDNY, NY NY, Feb. 7, 2018

Panelist, "Whistleblowers, Reporting Up, and the Professional Rules of Ethics, NYS Bar Ass'n Annual Meeting, NY, NY, Jan. 24, 2018

Co-chair and co-moderator, "Ethical Issues in Pro Bono Representation," PLI, Dec. 14, 2017

Organizer and commentator, "Regulation of Legal and Judicial Services Conference: Comparative and International Perspectives," Stein Center for Law and Ethics, Fordham Law School, Dec. 8-9, 2017

Panelist, "Ethics in Legal Practice: An Update and Review of Recent Ethics Opinions in 2017," NYS Bar Ass'n, Albany, NY, Dec. 6, 2017

Moderator, "Ethics and Criminal Justice Hypotheticals," Appellate Division, Third Department, Albany, NY, Oct. 31, 2017

## Appendix A

Panel moderator, "Access to Justice and the Legal Profession in an Era of Contracting Civil Liability," Fordham Law School, Oct. 27, 2017

Panelist, "The Death of Conflicts," Federal Bar Council Fall Bench & Bar Retreat, New Paltz, NY, Oct. 22, 2013

Speaker, "The Right to Two Criminal Defense Lawyers," Symposium on Disruptive Innovation in Criminal Defense, Mercer University School of Law, Oct. 6, 2017

Panelist, "Ethical Considerations for Corporate Investigations: Views from All Sides," N.Y. City Bar, Sept. 27, 2017

Presenter, "Comparative Approaches to Regulation and Protection of Lawyers," 2017 Seasonal Meeting of the NYSBA International Section, Antigua, Guatemala, Sept. 14, 2017

Panelist, "Prying Eyes: Think Confidential and Privileged Client Information is Safe at the Border? Guess Again.," ABA CLE Showcase Program, ABA 2017 Annual Meeting, NY, NY, Aug. 11, 2017

Panelist, "Defending the Public's Enemy: The Journey of Ramsay Clark," 2017 Annual Conference, Southeastern Association of Law Schools, Boca Raton, Florida, August 3, 2017

Discussant, "Discussion Group: Reflections on the 2016 ABA Report on the Future of Legal Services in the United States," 2017 Annual Conference, Southeastern Association of Law Schools, Boca Raton, Florida, August 3, 2017

Discussant, "Discussion Group: Incorporating Developments in Forensic Science and Technology into the Criminal Justice System," 2017 Annual Conference, Southeastern Association of Law Schools, Boca Raton, Florida, August 2, 2017

Discussant, "Discussion Group: Criminal Justice and Technology: Changes in Law, Practice, and Culture," 2017 Annual Conference, Southeastern Association of Law Schools, Boca Raton, Florida, August 1, 2017

Moderator & organizer, "Discussion Group: Disruptive Innovation in Criminal Defense," 2017 Annual Conference, Southeastern Association of Law Schools, Boca Raton, Florida, July 31, 2017

Co-presenter, "The President, the Department of Justice, and Prosecutorial Independence" (work-in-progress), Legal Ethics Schmooze, UCLA, July 21, 2017

Panelist, "Ethics for OAG Lawyers," Office of the NYS Attorney General, June 20, 2017

A-32

## Appendix A

Moderator, "A Difference of Opinion: Federal-State Conflict in Lawyer Ethics Matters," ABA 43rd National Conference on Professional Responsibility, St. Louis, Missouri, June 2, 2017

Presenter, work-in-progress, "Academic Scholarship Roundtable," ABA 43rd National Conference on Professional Responsibility, St. Louis, Missouri, June 2, 2017

Presenter on Legal Ethics, Office of the Public Defender, Tel Aviv, Israel, May 22, 2017

"Candor to the Court and Client," Annual Lecture on Legal Ethics, The David Weiner Center for Lawyers' Ethics and Professional Responsibility, The Haim Striks School of Law - The College of Management and Academic Studies, Rishon LeZion, Israel, May 21, 2017

Moderator, "Ethical Issues in Criminal Defense and Prosecution: the Role of Rules, Standards, Case Law and Professional Judgment," ABA Criminal Justice Section Spring Meeting, Jackson Hole, Wyoming, May 5, 2017

Co-presenter, ethics training, Federal Defender - Eastern District of Pennsylvania, Philadelphia, PA, May 2, 2017

Panelist, "Common Ground on Criminal Discovery and the Future of Brady v. Maryland, 2017 Spring Symposium: Finding Common Ground: Preventing Errors in Criminal Justice, Quattrone Center for the Fair Administration of Justice, University of Pennsylvania Law School, April 21, 2017

Moderator, "Working Ethically with Non-Lawyer Professionals in Public Interest Settings," Fordham Law School, March 30, 2017

Panelist, "Ethical Considerations for the Business and Corporate Attorney," Cardozo Law School, March 7, 2017

Panelist, "Timely Ethics Issues: Interacting With Witnesses, Firm General Counsel," 2017 Winter Bench & Bar Conference, Federal Bar Council, Palm Springs, California, Feb. 24, 2017

Presenter, "The Challenges and Rewards of Teaching Legal Ethics," 2017 Legal Ethics Conference – New Challenges in Legal Ethics, California Western School of Law, Feb. 11, 2017

Presenter, Symposium, "Protect and Serve: Perspectives on 21st Century Policing," Univ. of Georgia School of Law, Jan. 27, 2017

Panelist, "The Attorney's Role in Promoting a Strong Corporate Culture," NYSBA Annual Meeting, Business Law Section & Corporate Counsel Section, NY, NY, Jan. 25, 2017

## Appendix A

Co-presenter, "Immigration Ethics," Justice AmeriCorps Year 3 National Training, Potomac, Maryland, Jan. 11, 2017

Co-chair and co-moderator, "Ethical Issues in Pro Bono Representation," PLI, Dec. 15, 2016

Panelist, "Managing Your Client's Image in the Court of Public Opinion," NYCLA, Nov. 16, 2016

Panelist, "Wearing Two Hats as a Neutral and an Attorney: How to deal with inconsistent mandates in the ethical codes for lawyers and neutrals," NYSBA Dispute Resolution Section Fall Meeting, NY Law School, Oct. 28, 2016

Co-panelist, "Ethical considerations when representing clients with, or defending actions brought by individuals with, mental disabilities and impairments," Disability Law Forum, N.Y. City Bar, Oct. 13, 2016

Panelist, "Ethical Considerations for Corporate Investigations: Views from All Sides," N.Y. City Bar, Sept. 21, 2016

Moderator & organizer, "Discussion Group: Re-imagining the Ideal Role of Prosecutors," 2016 Annual Conference, Southeastern Association of Law Schools, Amelia Island, Florida, August 6, 2016

Discussant, "The Future of Legal Ethics Scholarship: Are We in the End Days or Just Getting Started?" 2016 Annual Conference, Southeastern Association of Law Schools, Amelia Island, Florida, August 5, 2016

Organizer, The Ethics and Regulation of Lawyers Worldwide: Comparative and Interdisciplinary Perspectives, Seventh biannual International Legal Ethics Conference, International Association of Legal Ethics, New York, July 14-16, 2016

Co-presenter, "Rethinking Prosecutors' Conflicts of Interest," CrimFest, Cardozo Law School, July 12, 2016

Presenter, "The Price of Judicial Economy in the US," Workshop on "Too Few Judges? Regulating the Number of Judges in Society," International Institute for the Sociology of Law, Oñati, Spain, July 1, 2016

Panelist, "Corruption Scandals, the Panama Papers, and the Transnational Lawyer in Latin America: Strengthening the Profession through Better Ethics Standards," NY City Bar, June 6, 2016

## Appendix A

Moderator, "The Decision-Making Conundrum When Representing a Child or Mentally Impaired Adult," ABA National Conference on Professional Responsibility, Philadelphia, PA, June 3, 2016

Panelist, "Litigators' Ethics: An Interactive Discussion of Problems of Confidentiality and Disclosure," 2016 Second Circuit Judicial Conference, Saratoga, NY, May 25, 2016
Moderator, "Ethics Gumbo: First You Make a Roux," ABA National Legal Malpractice Conference, New Orleans, Louisiana, April 28, 2016

Panelist, "Surveillance and the Attorney-Client Relationship: Recent International Developments," Seventh International Professional Responsibility Conference, Association for Professional Responsibility Lawyers, Paris, France, April 13, 2016

Presenter, "Ethics in Class Actions: 2015-16 Update," Institute for Law & Economic Policy, 22nd Annual Symposium, April 8, 2016, Miami Beach, Florida

Moderator, "Brandeis and Lawyering (II)," Conference on Louis D. Brandeis: An Interdisciplinary Perspective, Touro Law Center, Mar. 31, 2016

Speaker, Georgetown Journal of Legal Ethics Symposium on "Remaining Ethical Lawyers in a Changing Profession," Georgetown Univ. Law Center, Mar. 18, 2016

Panelist, "Current Issues in Corporate Representation," Cardozo Law School, Feb. 9, 2016

Panelist, "Watch Out Below! Avoiding Ethical Pitfalls in Class Action Litigation," NYSBA Antitrust Law Section, Annual Meeting, NY, NY, Jan. 28, 2016

Moderator, "Ethics in Criminal Practice, The Hardest Questions Today: A Conversation in Honor of Monroe Freedman," AALS Annual Conference, NY, NY, Jan. 7, 2016

Co-chair and co-moderator, "Ethical Issues in Pro Bono Representation," PLI, Dec. 11, 2015

Panelist, "Social Responsibility of Corporations," CJS Global White Collar Crime Institute, ABA Criminal Justice Section & KoGuan Law School, Shanghai, China, Nov. 20, 2015

Presenter & Facilitator, Professional Responsibility and Ethics in the Global Legal Market, Moscow State University Law School, Moscow, Russia, Oct. 28-31, 2015

Panelist, "What Line? Reining in Prosecutorial Excesses: The Ethics and Strategy of Negotiations," NACDL's 11th Annual White Collar Crime Seminar, Fordham Law School, Oct. 22, 2015

## Appendix A

Panelist, "Ethical Considerations for Corporate Investigations: Views from All Sides," N.Y. City Bar, Sept. 11, 2015

Discussant, "Keeping the Conversation Going on Intractable Problems in the Criminal Justice System," 2015 Annual Conference, Southeastern Association of Law Schools, Boca Raton, Florida, August 1, 2015

Commentator, "Defense Attorneys," CrimFest 2015, Cardozo Law School, July 20, 2015
Presenter, "Rethinking Prosecutors' Conflicts of Interest," 2015 Legal Ethics Schmooze, Stanford Law School, June 25, 2015

Moderator, "Attorney Privilege and Work Product," New York State-Federal Judicial Counsel & the Second Circuit Judicial Counsel, Brooklyn, NY, June 18, 2015

Moderator, "Ethics and Corporate Social Responsibility," Corporate Social Responsibility Leadership Course, Fordham Law School, June 11, 2015

Organizer, moderator and presenter, "Criminal Justice Ethics Schmooze," Fordham Law School June 8-9, 2015

Moderator, "Ineffective Assistance of Counsel and Forensic Evidence," 6th Annual Prescription for Criminal Justice Forensics, ABA Criminal Justice Section & Louis Stein Center for Law and Ethics, Fordham Law School, June 5, 2015

Panelist, "Ethics and Professionalism: Best Practices for Attorneys," N.Y. City Bar, May 18, 2015

Panelist, "Ethical Issues in FCPA Compliance & Investigations," Practical Advice from the Front Lines," Fordham Law School, May 12, 2015

Panelist, "Negotiation Ethics: Pitfalls and Rules," NYSBA Committee on Women in the Law, NYC, May 5, 2015

Speaker, Conference on "Reconsidering Access to Justice," Texas A&M Law School, May 1, 2015

Co-interviewee, "The Power of the Prosecutor," Talks on Law, recorded April 22, 2015, available at: http://www.talksonlaw.com/talks/26

Moderator, Panel discussion: Thurgood Marshall's Legacy, NYCLA, April 15, 2015

Moderator, "Hot Topics: Ethical Issues in Public Interest Lawyering," Fordham Law School, March 31, 2015

## Appendix A

Speaker, "Lawyers as Lovers: Are We Romanticizing the Lawyer-Client Relationship?," Conference on Billy Joel & the Law, Touro Law School, March 22, 2015

Moderator, "Ethical Issues in Insurance Law: 2015 Update," NYCLA, March 18, 2015

Panelist, "Developments in Ethics for Antitrust Lawyers," ABA teleseminar, Feb. 24, 2015

Presenter, "Prosecutorial Accountability in the Information Age" (work-in-progress), faculty workshop, Notre Dame Law School, Feb. 21, 2015

Panelist, "The Ethics of Conflicts of Interest," Clifford Law Offices Continuing Legal Education Program, Chicago, IL, Feb. 20, 2015

Panelist, "Current Ethical Issues in Corporate Representation," Cardozo Law School, Feb. 11, 2015

Panelist, "The Ethical Minefields of Witnesses: A Refresher," ABA Webinar, Dec. 19, 2014

Co-chair and co-moderator, "Ethical Issues in Pro Bono Representation," PLI, Dec. 16, 2014

Panelist, "Ethical Considerations for Corporate Investigations: Views from All Sides," N.Y. City Bar, Sept. 30, 2014

Panelist, "Taz, Morality & Ethics," The Taslitz Galaxy: A Gathering of Scholars at Howard, Howard University School of Law, Sept. 19, 2014

Panelist, "Supreme Court Update and Other Notable Developments in Criminal Law," Southeastern White Collar Crime Institute, ABA Criminal Justice Section, Braselton, Georgia, Sept. 12, 2014

Co-presenter, "Regulation of U.S. Prosecutors in the Information Age," International Legal Ethics Conference VI, London, England, July 11, 2014

Presenter, "Reforming the regulation of the prosecutors: A slightly comparative perspective," Conference of the International Working Group for Comparative Studies of the Legal Professions, Frauenchiemsee, Germany, July 7, 2014

Panelist, "International Ethics," Ninth Annual Fordham Law School Conference on International Arbitration and Mediation," June 12, 2014

Panelist, "Fifth Annual Prescription for Criminal Justice Forensics," ABA Criminal Justice Section, NY, NY, June 6, 2014

## Appendix A

Panelist, "Ethics of Working With Witnesses," Professional Education Broadcast Network, May 16, 2014

Panelist, "Plenary: Twenty Years After the MacCrate Report: Revisiting the Continuum," NCBE Annual Admissions Conference, Seattle, WA, May 3, 2014

Moderator, "Conflicts: The Basics and Recent Developments," Ethics for In-House Counsel: New Developments & Future Challenges, Fordham Law School, March 20, 2014

Panelist, "Race and Access to Justice," Georgetown Univ. Law Center, Washington, D.C., March 18, 2014

Co-speaker, "Professional Ethics for Public Interest Lawyers," Brennan Center for Social Justice, NY, NY, Feb. 28, 2014

Panelist, "Attorney Client Privilege and Selective Waiver in Bank Regulation," Cardozo Law School, Feb. 24, 2014

Panelist, "Who Are They to Judge?  Ethical and Professionalism Issues Facing the Bench," 1tth Annual Legal Ethics & Professionalism Symposium, Univ. of Georgia Law School, Feb. 21, 2014

Panelist, "Bridge the Gap" C.L.E. Orientation Program, Committee on Character & Fitness (Supreme Court, Appellate Division, First Judicial Department), NYCLA, Feb. 19, 2014

Moderator, "Ethical Choices in Dealing with Crime Victims: What is a Prosecutor, Defender and Judge to Do?," 2014 ABA Midyear Meeting, Chicago, IL, Feb. 7, 2014

Panelist, "Stop, Frisk & Judicial Independence: An Ethics CLE," NY Chapters of the Puerto Rican Bar, Federal Bar and National Bar Associations, U.S. Courthouse, NY, NY, Jan. 8, 2014

Commentator, "The Lost Lawyer and the Lawyer-Statesman Ideal: A Generation Later – the Shifting Sands of Professional Identity," AALS Annual Meeting, NY, NY, Jan. 4, 2014

Co-presenter, Workshop on Prosecutorial Ethics, Hitotsubashi Univ., Tokyo, Japan, Dec. 18, 2013

Co-presenter, Workshop on Prosecutorial Ethics, Japan Federation of Bar Associations, Tokyo, Japan, Dec. 17, 2013

Presenter, "Comparing the Honesty and Candor Obligations of U.S. Prosecutors and Defense Lawyers," Chukyo Univ., Nagoya, Japan, Dec. 16, 2013

## Appendix A

Moderator, panel on "Unbundled Legal Services," "Until Civil Gideon: Expanding Access to Civil Justice," Fordham Law School, Nov. 1, 2013

Moderator, "Ripped from the Headlines," 9th Annual White Collar Seminar, NACDL, Washington, D.C., Oct. 24, 2013

Panelist, Federal Criminal Practice Institute, New York County Lawyers' Association, Oct. 19, 2013

Panelist, "Ethical Considerations for Corporate Investigations: Views from All Sides," Association of the Bar of the City of New York, Sept. 25, 2013

Moderator, "Criminal Discovery Under Brady v. Maryland: Current Developments,  Association of the Bar of the City of New York, Sept. 19, 2013

Moderator, "Navigating the Ethical Challenges in Counseling Unaccompanied Minors," DCS Legal Access Project Managers' Meeting, Vera Institute of Justice, July 31, 2013

Presenter, Ethics Workshop, Annual Capital Defense Training Program, New York City Bar, July 15, 2013

Panelist, "Culpability and White Collar Crime," 2013 AALS Midyear Meeting, San Diego, CA, June 10, 2013

Panelist, "The Ethics of Sub-Prime Lending," conference on The Mortgage Crisis–Five Years Later, Coalition for Debtor Education, Fordham Law School, June 3, 2013

Moderator, "Prosecutors' Ethical and Professional Decision Making – Is it Unique?," 39th ABA National Conference on Professional Responsibility, San Antonio, TX, May 30, 2013

Co-presenter, "Hot Topics in Legal Ethics," Fordham Law School, May 20, 2013

Panelist, "Criminal Law and Ethics," NYCLA, April 23, 2013

Panelist, "Religion and the Practice of Law," 2013 Conference on Religious Legal Theory, Touro Law Center, April 11, 2013

Commentator, Conference on "The Ethical Infrastructure and Culture of Law Firms," Hofstra Law School, April 5, 2013

Presenter, "The Gideon Effect: Rights, Justice and Lawyers Fifth Years After Gideon v. Wainwright," Yale Law Journal Symposium, Yale Law School, March 9, 2013

## Appendix A

Panelist, "Complying with Brady and Strategies for Defense Counsel," 27th Annual National Institute on White Collar Crime, Las Vegas, Nevada, March 8, 2013

Panelist, "Ethics in White Collar Cases," 27th Annual National Institute on White Collar Crime, Las Vegas, Nevada, March 7, 2013

Presenter, "Imagining Plea Bargaining Without Competent Counsel: Justice Scalia's Pursuit of Less Perfect Justice," conference on Plea Bargaining After Lafler and Frye, Duquesne Univ. School of Law, March 1, 2013

Moderator, "The Business and Ethics of Managing a 21st Century Law Firm: New, Smart and Ethical Business Models," Fordham Law School, Feb. 26, 2013
Panelist, "Representing Financial Institutions and their Employees in SEC Enforcement Actions," ABA Section of Business Law, White Collar Crime Committee, NY, NY, Feb. 13, 2012

Speaker, "New Developments in Attorney-Client Privilege," AALS 2013 Annual Meeting, New Orleans, LA, Jan. 5, 2013

Chair and moderator, "Ethical Issues in Pro Bono Representation 2012," PLI, Dec. 18, 2012

Panelist, "Ethical Issues for the Modern Day Prosecutor," Kings County District Attorney's Office, Nov. 20, 2012

Panelist, "Navigating Ethical Waters: Obstruction of Justice, Destruction of Evidence and False Statements," 8th Annual White-Collar Seminar, NACDL, Fordham Law School, NY, NY, Nov. 15, 2012

Lecture, "Lawyers' Professional Independence: Overrated or Undervalued?," Miller-Becker Center for Professional Responsibility Distinguished Lecture Series, Akron Law School, Nov. 9, 2012

Speaker, "Federal Criminal Discovery Reform: A Legislative Approach," symposium on Defining and Enforcing the Federal Prosecutor's Duty to Disclose Exculpatory Information, the 13th Annual Georgia Symposium on Ethics and Professionalism, Mercer Law School, Oct. 5, 2012

Moderator, "Ethical Issues for Criminal Practitioners," National Law Journal/Legal Times & Fordham Law School, recorded webinar broadcast on Oct. 2, 2012

Panelist, "Ethical Considerations for Corporate Investigations: Updates 2012," Association of the Bar of the City of New York, Sept. 12, 2012

## Appendix A

Speaker, "Lawyers' Professional Independence: Is it undervalued or overrated?," International Legal Ethics Conference V, Banff, Alberta, July 13, 2012

Panelist, "Law Without Walls," International Legal Ethics Conference V, Banff, Alberta, July 13, 2012

Presenter, "Ethical Practice in the Criminal Justice System: Finding Common Ground," National Institute for Teaching Ethics & Professionalism, Seattle, WA, June 22-24, 2012

Panelist, "Parallel Proceedings: Emerging Issues & Best Practices," Association of the Bar of the City of New York, June 13, 2012

Presenter, "Rehabilitating Lawyers: Perceptions of Deviance and Its Cures in the Lawyer Disciplinary Process," 2012 International Conference on Law & Society, Honolulu, HA, June 5, 2012

Panelist, "So You Think You're Up-to-Date on Attorney Client Privilege & Confidentiality," 38th ABA National Conference on Professional Responsibility, Boston, MA, June 1, 2012

Panelist, "Conflicts in the Face of Corporate Representations and Government Investigative Techniques," 1st Annual White Collar Crime Institute,  Association of the Bar of the City of New York, May 14, 2012

Panelist, "Conflicts and Choice of Law Updates," Professional Responsibility and Legal Ethics: Exploring the Similarities and the Differences Across Legal Systems, Association of Professional Responsibility Lawyers International Conference, Istanbul, Turkey, May 4, 2012

Co-speaker, "Rehabilitating Lawyers: Perceptions of Deviance and its Cures in the Lawyer Reinstatement Process," The Law: Business or Profession? - The Continuing Relevance of Julius Henry Cohen for the Practice of Law in the Twenty-First Century, Fordham Law School, April 24, 2012

Speaker, "The Flood of U.S. Lawyers: Natural Fluctuation or Professional Climate Change?," Too Many Lawyers? - Facts, Reasons, Consequences, and Solutions, International Institute for the Sociology of Law, Oñati, Spain, April 20, 2012

Presenter, "Prosecutors and Professional Regulation," faculty workshop, Fordham Law School, March 22, 2012

Speaker, "Ethics," Counseling Clients in the Entertainment Industry 2012, PLI, March 12, 2012

Panelist, "Ethics for Government Lawyers 2012," PLI, March 9, 2012

## Appendix A

Speaker, "Ethics for Government Lawyers," U.S. Environmental Protection Agency, Region 2, Office of Regional Counsel, March 8, 2012

Moderator, "Top Ten Reasons You'll Wish You had Become a Trust & Estates Lawyer: Ethical Pitfalls and Blunders in White Collar Practice," 26th National Institute on White Collar Crime, ABA, Miami, Florida, March 1, 2012

Panelist, "Developments in Ethics for Antitrust Lawyers," live webinar and teleconference, ABA Section of Antitrust Law, Feb. 16, 2012

Panelist, "Prosecutorial Accountability in the Post-Connick v. Thompson Era: Reforms and Solutions," ABA Death Penalty Representation Project et al., New Orleans, Louisiana, Feb. 4, 2012

Speaker, "Ethical Issues in Federal Practice," Current Developments in Federal Civil Practice 2012, PLI, Feb. 1, 2012

Panelist, "Technology in Your Practice - Trends, Tools and Ethics Rules,"  NYSBA Annual Meeting, Jan. 26, 2012

Panelist, "Rules of Professional Conduct and the Government Lawyer," NYSBA Annual Meeting, Jan. 24, 2012

Panelist, "Ethical Considerations in Setting Attorney Fees," NYSBA Annual Meeting, Jan. 24, 2012

Speaker, "Government Lawyering," 2012 Annual Meeting, AALS, Washington, D.C., Jan. 5, 2012

Chair and moderator, "Ethical Issues in Pro Bono Representation 2010," PLI, Dec. 21, 2010

Panelist, "Ethical Issues with Group Representation," LEAP conference on Civil Justice as bedrock value in Difficult Times, Nov. 29, 2011

Panelist, "The Watergate CLE," U.S. District Court - EDNY, Nov. 15, 2011

Panelist, "Future Ethics: Who Will Regulate Lawyers in 2020?," New York Law School, Nov. 14, 2011

Panelist, "Community Prosecution & Community Defense," Wake Forest Univ. School of Law, Nov. 4, 2011

## Appendix A

Panelist, "Multi-jurisdictional rules of ethics and professional conduct: Coping with conflicting legal rules and privileges in a global business environment," German-American Lawyers' Association, NY, Oct. 25, 2011

Panelist, "What to Do?  Has the Potential Client (Who Will Not Disclose) Intentionally Misrepresented?", Working Group on Legal Opinions Fall 2011 Seminar, NY, Oct. 25, 2011

Panelist, "Sentencing Advocacy," 2011 Federal Criminal Practice Institute, NYCLA, Oct. 15, 2011

Moderator, "Representing Clients With Diminished Capacity," Association of the Bar of the City of New York, Oct. 13, 2011

Moderator, "The ABCs of D-efense in an E-lectronic Age: Ethics and Strategies," 7th Annual White Collar Seminar, NACDL, Fordham Law School, Sept. 22, 2011

Panelist, "Ethical Considerations for Corporate Investigations: Updates 2011,"  Association of the Bar of the City of New York, Sept. 15, 2011

Panelist, "Alternative Litigation Financing: A New Way to Help Pay for Lawsuits and Stay Out of Trouble While Doing It," NYCLA, Sept. 14, 2011

Panelist, "The Ethical and Practical Challenges of Representing a Controversial Client," Federal Bar Council & Stein Center, E.D.N.Y. federal courthouse, June 29, 2011

Panelist, "What is Good Lawyering?," Conference on Padilla and the Future of the Defense Function, NACDL, Cardozo Law School, June 20, 2011

Luncheon speaker, "Staying Ahead of the Curve: What Every Criminal Defense Lawyer Needs to Know," NYSBA, Albany, NY, June 17, 2011

Panelist, "Tackling Ethical Issues Arising in Criminal Cases," NYCLA, June 16, 2011

Panelist, "Third Party Funding of International Arbitration Claims: The Newest 'New New Thing,'" NYSBA Dispute Resolution Section & Fordham Law School ADR and Conflict Resolution Program, June 15, 2011

Panelist, "How the Rules of Professional Conduct Apply to Government Lawyers," Seventeenth Annual Seminar on Ethics in New York City Government, NYC COIB & Center for New York City Law, New York Law School, May 17, 2011

Panelist, "Hypothetically Speaking II: Issues in the Attorney-Client Relationship under the Rules of Professional Conduct," Association of the Bar of the City of New York, May 16, 2011

A-43

## Appendix A

Moderator, "Ethics Update: Perspectives from the Federal and State Judiciary," N.Y.S. Federal Judicial Council - Advisory Group, E.D.N.Y. federal courthouse, May 11, 2011

Moderator, "Ethics Update: Perspectives from the Federal and State Judiciary," N.Y.S. Federal Judicial Council - Advisory Group, S.D.N.Y. federal courthouse, May 10, 2011

Panelist, "An Overview of Attorney Error: Malpractice, Breach of Ethical Rules and Ineffective Assistance of Counsel," Mental Hygiene Legal Service, May 3, 2011 (videotape)

Panelist, "The Top Five Ethical Violations and Resulting Claims for Legal Malpractice," Spring 2011 National Legal Malpractice Conference, ABA Standing Committee on Lawyers' Professional Liability, Boston, MA, April 28, 2011

Panelist, "Anatomy of a Trial: Young Lawyer Trial Skills Training," ABA Section of Litigation & Criminal Justice Section Annual CLE Conference," Miami, Florida, April 14, 2011

Panelist, "Ethics," IP Enforcement and Litigation 2011: Civil and Criminal Update, PLI, March 30, 2011

Panelist, "Ethical Implications of Legal Aid and Pro Se Assistance," Legal Aid Society, March 18, 2011

Speaker, "Criminal Defense Ethics," 25th Annual Metropolitan New York Trainer, NYS Defenders Ass'n, March 12, 2011

Moderator, "Criminal Defense?: The Ethical and Legal Line Between Zealous Advocacy and Obstruction of Justice ," 25th National Institute on White Collar Crime, ABA Criminal Justice Section, Mar. 3, 2011, San Diego, CA

Panelist, "2011 Ethical Issues," 2011 Winter Bench & Bar Conference, Federal Bar Council, Los Cabos, Mexico, Feb. 21, 2011

Keynote Speaker, "Ted Schneyer's Impact on Legal Ethics Scholarship," The Ted Schneyer Ethics Symposium: Lawyer Regulation for the 21st Century, Univ. Of Arizona, James E. Rogers College of Law, Jan. 28, 2011

Panelist, "Ethical Pitfalls for Business Lawyers," Business Law Section, NYSBA Annual Meeting, Jan. 26, 2011

Co-speaker, "Legal Ethics & Professionalism," Nineteenth Annual London MCLE Fair, CLE Europe Limited, Jan. 15, 2011

## Appendix A

Chair and moderator, "Ethical Issues in Pro Bono Representation 2010," PLI, Dec. 21, 2010

Moderator, "Ethical and Privilege Issues for Pharmaceutical Whistleblowers Counsel," Institutional Investor Educational Foundation, New York, NY, Dec. 9. 2010

Moderator, program on ethics and professionalism in criminal prosecution and defense, Multnomah County Courthouse, Portland, OR, Dec. 3, 2010

Panelist, "Ethics and the Construction Lawyer," NYCLA, Nov. 30, 2010

Speaker, "Ethical Practices for the Modern Prosecutor," Brooklyn District Attorney's Office. Oct. 26, 2010

Speaker, "Prosecutive Ethics," annual conference, National Association of Former United States Attorneys, Oct. 9, 2010

Moderator, "A Prosecutor's Brady/Discovery Obligations For Production of Documents," ABA Criminal Justice Section White Collar Crime Mid-Atlantic Regional Committee, Widener Law School, Wilmington, DE, Oct. 7, 2010

Panelist, ""Ethics and Litigation for Today's Trial Counsel," 2nd Annual Litigation Summit, Oct. 6, 2010

Panelist, "Ethical Considerations for Corporate Investigations: Updates 2010," Association of the Bar of the City of New York, September 15, 2010
Panelist, "Hot Ethics Issues for Young Trial Lawyers (and the Young at Heart)," ABA ANNUAL Meeting 2010, San Francisco, CA, August 7, 2010

Speaker, "Criminal; Defense Ethics," New York State Defenders Association 43rd Annual Meeting & Conference, Saratoga Springs, NY, July 27, 2010

Panelist, "Lawyers in Context: Ethical Decision Making in Practice," International Legal Ethics Conference IV, Stanford Law School, July 17, 2010

Moderator, "Prosecutors and their Disclosure Duties: A Regulatory Conundrum," 36rd National Conference on Professional Responsibility, ABA, June 3, 2010

Panelist, "Hypothetically Speaking: Considering Issues for the Practitioner under the New Rules of Professional Conduct," Association of the Bar of the City of New York, May 17, 2010

Panelist, "Bloomberg Corporate Internal Investigations: Ethical Considerations Seminar 2010," Bloomberg, NY, March 11, 2010

## **<u>Appendix A</u>**

Panelist, "Protecting the Attorney-Client Privilege and Attorney Work Product," 24th Annual National Institute on White Collar Crime, Miami, Florida, Feb. 25, 2010

Panelist, "Half a Century of Advice," Committee on Professional Ethics, NYSBA Annual Meeting, Jan. 29, 2010

## Appendix B

**Court Orders**

2022.05.10 (Dkt. 001, *In re Vague*) Order re Apr. 18, 2022 Order by Judge Burke

2022.05.19 (Dkt. 006, *In re Vague*) Order re Sequestration of Proceedings

2022.06.17 (Dkt. 019, *In re Vague*) Order re June 17 Status Conference

2022.07.08 (Dkt. 022, *In re Vague*) Order re Preliminary Proceeding

2022.07.25 (Dkt. 040, *In re Vague*) Order re Gag Order

2022.07.25 (Dkt. 041, *In re Vague*) Order re Protective Order

2022.09.23 (Dkt. 059, *In re Vague*) Order re Termination of Certain Parties

2023.10.03 (Dkt. 070, *In re Vague*) Final Report of Inquiry

2023.11.03 (Dkt. 099, *In re Vague*) Order Reopening Case

2023.10.04 (Dkt. 318, *Boe v. Marshall*) Order re Dissemination of Final Report

2023.10.04 (Dkt. 319, *Boe v. Marshall*) Our Emergency Motion to Stay Dissemination

2023.10.04 (Dkt. 320 *Boe v. Marshall*) Order re Transcript Citations for Motion to Stay Dissemination

2023.10.27 (Dkt. 338, *Boe v. Marshall*) Order re Filing of Final Report

2023.10.27 (Dkt. 340, *Boe v. Marshall*) Order Unsealing Filings

2024.02.21 (Dkt. 406, *Boe v. Marshall*) Order to Show Cause

2024.03.29 (Dkt. 459, *Boe v. Marshall*) Order Unsealing Report and Filings

2024.04.05 (Dkt. 466, *Boe v. Marshall*) Order re Joint Motion for Clarification

2024.05.01 (Dkt. 478, *Boe v. Marshall*) Supplemental Order to Show Cause: LaTisha Faulks

2024.02.21 (Dkt. 481, *Boe v. Marshall*) Supplemental Order to Show Cause: Carl Charles

2024.02.21 (Dkt. 486, *Boe v. Marshall*) Supplemental Order to Show Cause: James Esseks

**Court Filings**

2022.05.19 (Dkt. 003, *In re Vague*) Pre-Hearing Submission of Walker Counsel

2022.06.07 (Dkt. 013, *In re Vague*) Motion to Obtain Transcripts

2022.06.24 (Dkt. 021, *In re Vague*) Joint Submission of the Parties

## Appendix B

2022.07.13 (Dkt. 023, *In re Vague*) Motion to Modify Gag Order

2022.07.13 (Dkt. 024, *In re Vague*) Motion to Release Transcript

2022.07.15 (Dkt. 025, *In re Vague*) Motion to Release Transcript

2022.07.18 (Dkt. 026, *In re Vague*) Joinder to Motion to Release Transcript

2022.07.19 (Dkt. 027, *In re Vague*) Joint Motion for Protective Order

2022.07.20 (Dkt. 028, *In re Vague*) Motion to Clarify Scope of the Panel's Gag Order

2022.07.21 (Dkt. 032, *In re Vague*) Motion to Terminate Inquiry

2022.07.21 (Dkt. 034, *In re Vague*) Motion for Protective Order

2022.07.22 (Dkt. 035, *In re Vague*) Joint Motion to Stay Proceedings

2022.07.22 (Dkt. 037, *In re Vague*) Motion for Reconsideration of Order Denying Counsel
   Access to Court Transcripts

2022.07.22 (Dkt. 038, *In re Vague*) Joinder to Motion to Terminate Inquiry

2022.07.22 (Dkt. 039, *In re Vague*) Joinder to Motion to Stay Proceedings

2022.08.12 (Dkt. 054, *In re Vague*) Motion for Access by Counsel Only to Transcript

2022.11.08 (Dkt. 069, *In re Vague*) Respondents' Report Regarding Post-Hearing Procedure

2023.10.16 (Dkt. 321, *Boe v. Marshall*) Brief in Support of Motion to Stay Dissemination

2023.10.23 (Dkt. 328, *Boe v. Marshall*) Motion to Stay Proceedings Related to In Re Vague

2023.10.24 (Dkt. 329, *Boe v. Marshall*) Motion to Stay Proceedings Relating to In Re Vague

2023.10.25 (Dkt. 331, *Boe v. Marshall*) Joinder in Emergency Motion to Stay Dissemination

2023.10.25 (Dkt. 332, *Boe v. Marshall*) Motion to Stay Proceedings Related to In re Vague

2023.10.26 (Dkt. 333, *Boe v. Marshall*) Joinder to Emergency Motion to Stay Dissemination of
   Report

2023.10.26 (Dkt. 336, *Boe v. Marshall*) State's Response to Motion to Stay Dissemination of
   Report

2023.11.10 (Dkt. 356, *Boe v. Marshall*) Respondents' Post-Hearing Brief

2023.11.10 (Dkt. 359, *Boe v. Marshall*) Memorandum of Law in Support of Maintaining Seal

## Appendix B

2023.11.17 (Dkt. 370, *Boe v. Marshall*) Post-Hearing Memorandum of Law

2024.03.06 (Dkt. 421, *Boe v. Marshall*) Motion to Lift Sequestration

2024.03.06 (Dkt. 423, *Boe v. Marshall*) Joint Motion to Clarify Order to Show Cause

2024.03.06 (Dkt. 425, *Boe v. Marshall*) Objection to Order to Show Cause

2024.03.08 (Dkt. 437, *Boe v. Marshall*) Motion for Leave to Submit Additional Evidence

**Hearing Transcripts**

2022.05.20 Evidentiary Hearing Transcript (Justice R. Bernard Hardwood)

2022.05.20 Evidentiary Hearing Transcript (United States District Judges W. Keith Watkins, R. David Proctor, Jeffrey U. Beaverstock)

2022.06.17 Status Conference Transcript (United States District Judges W. Keith Watkins, R. David Proctor, Jeffrey U. Beaverstock)

2022.08.03 Evidentiary Hearing Transcript (United States District Judges W. Keith Watkins, R. David Proctor, Jeffrey U. Beaverstock)

2022.08.04 Evidentiary Hearing Transcript (United States District Judges W. Keith Watkins, R. David Proctor, Jeffrey U. Beaverstock)

2022.11.02 Evidentiary Hearing Transcript (United States District Judges W. Keith Watkins, R. David Proctor, Jeffrey U. Beaverstock)

2022.11.03 Evidentiary Hearing Transcript (United States District Judges W. Keith Watkins, R. David Proctor, Jeffrey U. Beaverstock)

**Declarations**

2022.07.25 Declaration of Sarah Warbelow

2022.07.26 Declaration of Shannon Minter

2022.07.26 Declaration of Diego A. Soto

2022.07.27 Declaration of Tara Borelli

2022.07.27 Declaration of Jeffrey P. Doss

2022.07.27 Declaration of Melody H. Eagan

2022.07.27 Declaration of James Esseks

2022.07.27 Declaration of Lynly S. Egyes

## Appendix B

2022.07.27 Declaration of Kathleen Hartnett

2022.07.27 Declaration of Jennifer Levi

2022.07.27 Declaration of Scott D. McCoy

2022.07.27 Declaration of Asaf Orr

2022.07.27 Declaration of Valeria M. Pelet del Toro

2022.07.27 Declaration of Brent P. Ray

2022.07.27 Declaration of Michael B. Shortnacy

2022.07.27 Declaration of Julie Veroff

2022.07.27 Declaration of Cynthia Cheng-Wun Weaver

2022.07.28 Declaration of Amie A. Vague

2022.07.29 Declaration of Milo R. Inglehart

2022.08.01 Declaration of Carl S. Charles

2022.08.01 Declaration of Abigail Hoverman Terry

2022.08.01 Supplemental Declaration of Julie Veroff

2024.05.07 Supplemental Declaration of Carl S. Charles

2024.05.07 Declaration of LaTisha ("Tish") Gotell Faulks

2024.05.08 Supplemental Declaration of James D. Esseks

**Client Materials**

ACLU Agreement for Legal Representation

**Secondary Sources**

8 James Wm. Moore *et al.*, Moore's Federal Practice—Civil § 41.70 (3d ed. 2019)

Alex Botoman, *Divisional Judge-Shopping*, 49 COLUM. HUM. RTS. L. REV. 297, 320 (2018)

Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 27 (4th ed. 2012)

Marcel Kahan & Troy A. McKenzie, *Judge Shopping*, 13 J. Legal Analysis 341 (2021)

# Appendix C

**Recent Testimony**

- *Ad Astra Recovery Services, Inc. v. Heath et al.*, Case No. 18-1145-JWB-ADM, D. Kan., Nov. 28, 2021 Hearing

- *Curtis James Jackson III v. Reed Smith LLP & Peter Raymond*, Bankr. Ct., (D. Conn., New Haven Div., Case No. 17-02005 (AMN), July 18, 2022 Hearing

- *Halperin v. Arawak IX et al.*, Adv. Proc. Case No. 21-51412-BLS, Bankr. Ct., D. Del., Nov. 30, 2022 Deposition

- *Becker Organization v. Sharp Office Holdings, LLC*, Case No. ESX-L-1882-18, NJ Superior Court, Dec. 13, 2022 Deposition

- *Roche Freedman LLP v. Cyrulnik*, Case No. 1:21-cv-01746-JGK (SDNY), March 14, 2023 Deposition

- *Timothy Saunders v. John Q. Hamm, et al.*, Case No. 2:20-CV-00456-WKW-JTA, M.D. Ala., May 9, 2023 Deposition

- *United States v. David Kapone Williams et al.*, Case No. 4:18-01695-JAS-EJM, D. Ariz., April 24, 2024 Evidentiary Hearing