IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> and ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff-Intervenor, ) <br> ) <br> v. ) <br> ) <br> STEVE MARSHALL, in his official ) <br> capacity as Attorney General of the ) <br> State of Alabama, et al., ) <br> ) <br> Defendants. ) | Case No.: 2:22-cv-00184-LCB |

## RESPONDENT KATHLEEN HARTNETT'S JOINDER IN OBJECTION TO SUPPLEMENTAL ORDERS TO SHOW CAUSE

Respondent Kathleen Hartnett hereby joins in the Objection to Supplemental Orders to Show Cause by James Esseks, Carl Charles, and Latisha Faulks (Doc. 493) and adopts the objections pertinent to the Supplemental Order to Show Cause: Kathleen Hartnett (Doc. 479) ("Show Cause"). Respondent also supplements the objections set forth in (Doc. 493) as follows:

1. In addition to the due process issues raised in Doc. 493, Section III(a) of the Show Cause continues to allege misconduct against Respondent based on

collective rather than individual allegations of misconduct, as it simply inserts "including Ms. Hartnett" into each of the undifferentiated "individual and collective" findings of misconduct made by the Panel on pages 51-52 of the Panel Report and thus does not cure the lack of notice to her about any conduct specific to her. Section III(a) and a portion of Section II also allege the misconduct of "judge shopping," which is a vague and undefined term that does not provide fair notice of what conduct is allegedly barred and under what authority.

    2.    Neither Section III(b) of the Show Cause nor the Panel's Report provide reasonable notice of a purported misrepresentation or nondisclosure by Respondent. Section III(b) requires Respondent to "address any findings in Section IV of the Panel's Report implicating her credibility or any discrepancies between her own oral and written testimony and the oral and written testimony of all other attorneys who testified." Doc. 479 at 14. This directive does not provide fair notice regarding what the Court may consider to be "matters impacting her credibility" or "discrepancies" between her testimony and that of the other Respondents and thus does not satisfy due process. Section III(b) also requires Respondent to "address the Panel's finding in Section V that it was misconduct for all counsel, including Ms. Hartnett, to claim 'that the dismissal was because Judge Axon did not explain the reassignment of *Ladinsky* and [the Court] set *Walker* for a status conference in Huntsville on April 18,'" which repeats the Panel's improper undifferentiated finding of "individual and

collective" misconduct; simply adding in "including Ms. Hartnett" does not cure the lack of notice to her about any conduct specific to her.

3. Section III(c) of the Show Cause, for the first time, requires Respondent to "show cause why she should not be sanctioned for failing to seek or secure her clients' consent in violation of Federal Rule of Civil Procedure 11 and the rules of professional conduct applicable in the Northern and Middle Districts of Alabama before dismissing *Walker v. Marshall*." Doc. 479 at 15. This charge was not levied against Respondent in the prior show cause order, in the Panel's Report, or at any time before. The Supreme Court and Eleventh Circuit have both held that in attorney discipline proceedings, "[t]he charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh." *United States v. Shaygan*, 652 F.3d 1297, 1318 (11th Cir. 2011) (quoting *In re Ruffalo*, 390 U.S. 544, 550 (1968)). Because this charge was made against Respondent only after (1) the inquiry was established and (2) she gave sworn testimony, it fails due process.

4. Doc. 493 identifies certain due process deficiencies with the hearings conducted by the Panel where testimony was taken from the Respondents. In addition to excluding the Respondents from the portion of those proceedings where the Panel took testimony, the Panel also excluded the Respondents from critical,

3

preliminary process discussions (*see* May 20 Tr. at 11-29), as well as other non-evidentiary portions of the hearings during the course of the inquiry during which procedural and substantive issues were discussed.  The exclusion of the Respondents from nearly all of the Panel's proceedings precluded Respondents' counsel from having the benefit of the Respondents' knowledge of the underlying cases and other input which impeded the representation of the Respondents, particularly in the early stages of the inquiry which was opened only ten days before the Panel started examining the Respondents under oath on May 20-21, 2022.

5.  For purposes of making and preserving an accurate record, Respondent also notes the following additional due process deficiencies in the Panel's process:

   a. disallowing Respondents' counsel from making opening statements (claiming that such statements would be permitted only if they included no actual detail based on an unfounded fear that Respondents would change their testimony after hearing others' testimony, *see* May 20 Tr. at 21-24);

   b. disallowing presentation of witnesses or evidence by Respondents;

   c. engaging in a factual investigation (including about alleged contacts with the Court and the case assignment process) without permitting Respondents to review the evidence gathered in that investigation;

4

d. sequestering Respondents throughout the Panel proceedings so that they could not meaningfully communicate about their defense;

e. imposing a wide-ranging gag order that further impeded Respondents' understanding of the proceedings and ability to defend themselves, including by prohibiting all "parti[es]" and "attorney[s]" from even disclosing the "*questions* asked to him or her at the 5/20/2022 hearing" (*see* Doc. 40);

f. failing to provide adequate notice of the process to be undertaken by the Panel at the May 20, 2022 proceeding prior to that proceeding;

g. compelling Respondents into disclosing confidential work product and attorney-client privileged materials to the Court (*see, e.g.*, May 20 Tr. at 12 ("The first is we realize we're asking about – we're going to be asking about things that could implicate work product and attorney-client privilege perhaps. Certainly work product."));

h. publicly releasing confidential work product and attorney-client privileged materials after stating that such materials would be protected from public disclosure (*see* May 20 Tr. at 12 ("We certainly expect that any answers to our questions involving work product matters would be in a situation where the State of Alabama is not party or not present in those conversations"); *id.* at 83 ("Isn't

5

that concern addressed by this? That there's going to be a record made of this proceeding, it's not going to be available to anyone else, and counsel will have a chance to review it and ask to redact any such question or answer that you think invades on an attorney-client privilege?"); *id.* at 94 ("If we get into a privileged or work product matter, and we expect that you'll help us with that, then you have the right to have others leave the courtroom who are not court staff."));

i. describing the Panel's work as "nonadversarial" and "not related" to the underlying case but permitting the adverse party, the State, to present evidence and merging the Panel's proceedings with the underlying case (*see, e.g.*, May 20 Tr. at 16 ("since it's not an adversarial proceeding, it's not – we're making a record of this case just so there will be a record, but it's an MC case. It's not related to any of the dockets that we are – we've received this inquiry from."); *id.* at 28-29 ("I just want to emphasize that this is not an adversarial proceeding, so we don't expect the lawyers to lawyer as much as just have an honest and forthright discussion about what happened so that we can just conduct the inquiry.")); and

j. stating to Respondents that they would not face serious sanction if they simply told the truth during the Panel's proceedings (*see* May

6

20 Tr. at 18 ("We're not thinking at this point that anyone is in such trouble that a law license or jail time or anything like that. You know, what a lawyer gets trained in law school to think of worst-case scenario, that's not what we're looking at, unless there is a cover-up and there's a lack of candor with us. In that case, all bets are off. Okay?"); *id.* at 19 ("The other thing is candor and transparency will help us greatly and, we suggest, would help you and your lawyers greatly. All right? That's all we're expecting here.")).

Respectfully submitted this the 8th day of May 8, 2024.

      */s/ Brannon J, Buck*
Brannon J. Buck (ASB-5848-K56B)
bbuck@badhambuck.com
Christopher B. Driver (ASB-9178-G39B)
cdriver@badhambuck.com
BADHAM & BUCK, LLC
2001 Park Place North, Ste. 500
Birmingham, Alabama 35203
(205) 521-0036 (Phone)
(205) 521-0037 (Facsimile)
*Counsel for Kathleen Hartnett*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the foregoing has been served on all parties of record via the CM/ECF electronic filing system, electronic mail, and/or U.S. Mail on this the 8th day of May, 2024.

                                          */s/ Brannon J. Buck*
                                          OF COUNSEL