# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **BRIANNA BOE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | **Case No.: 2:22-cv-184-LCB** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Intervenor,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **STEVE MARSHALL, in his official** | ) | |
| **capacity as Attorney General of the** | ) | |
| **State of Alabama, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## RESPONDENT ASAF ORR'S RESPONSE TO SUPPLEMENTAL ORDER TO SHOW CAUSE

# <u>TABLE OF CONTENTS</u>

I.     Introduction.................................................................................6

II.    The Panel's Findings Regarding Mr. Orr and the Court's
       Supplemental Order to Show Cause................................................8

       A.     The Panel Found that Mr. Orr Was a Non-Decision-Maker...............8

       B.     The Panel Did Not Find that Mr. Orr Engaged in the Decision-
              Making Conduct Identified in the Court's Supplemental Order
              to Show Cause ......................................................................12

III.   Mr. Orr Apologizes and Deeply Regrets His Actions.....................15

IV.    While Mr. Orr Accepts Responsibility for His Actions, Those Actions
       Do Not Meet the Legal Standard for Sanctionable Conduct........................17

       A.     As a Non-Decision-Maker, Mr. Orr's Conduct Does Not Meet
              the Subjective Bad Faith Required to Impose Sanctions ...................17

       B.     To the Extent Decision-Makers Acted in Bad Faith in
              Dismissing *Ladinsky* and Filing *Eknes-Tucker*, Their Bad Faith
              Cannot Be Imputed to Mr. Orr ...........................................22

       C.     Mr. Orr Did Not Sign Any Frivolous Papers in Violation of
              Rule 11..............................................................................23

       D.     The Panel Did Not Identify Any Misrepresentations or
              Omissions by Mr. Orr...........................................................25

       E.     If the Court Determines Sanctions Are Warranted, It Should
              Find the Consequences Already Imposed on Mr. Orr Sufficient........28

V.     Conclusion ...............................................................................30

## __TABLE OF AUTHORITIES__

**Page(s)**

### FEDERAL CASES

*Adams v. USAA Cas. Ins. Co.*,
   863 F.3d 1069 (8th Cir. 2017) ........................................................................21

*In re Amie Adelia Vague, et al.*,
   2:22-mc-3977-LCB (M.D. Ala. 2022) ...........................................................6, 8

*Amlong*, 500 F.3d at 1240 ..................................................................................22

*Barnes v. Dalton*,
   158 F.3d 1212 (11th Cir. 1998) .....................................................................17

*In re BellSouth Corp.*,
   334 F.3d 941 (11th Cir. 2003) ..................................................................29, 30

*Divane v. Krull Elec. Co.*,
   200 F.3d 1020 (7th Cir. 1999) .......................................................................28

*Eknes-Tucker v. Marshall*,
   5:22-cv-184-LCB (M.D. Ala. 2022) ("*Eknes-Tucker*") ................................. *passim*

*In re Fieger*,
   191 F.3d 451 (6th Cir. 1999) (unpublished) ...............................................19, 30

*Harvey Specialty & Supply, Inc. v. Anson Flowtime Equip., Inc.*,
   434 F.3d 320 (5th Cir. 2005) .........................................................................20

*Hyde v. Irish*,
   962 F.3d 1306 (11th Cir. 2020) .....................................................................17

*JTR Enters., LLC v. Columbian Emeralds*,
   697 F. App'x 976 (11th Cir. 2017) ............................................................22, 23

*Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) ...................................24

*King v. Whitmer*,
   71 F.4th 511 (6th Cir. 2023), *cert. denied sub nom. Powell v. Whitmer*, No.
   23-486, 2024 WL 674733 (U.S. Feb. 20, 2024) ...........................................24

*Ladinsky v. Ivey*,
   5:22-cv-447-LCB (N.D. Ala.) ...................................................................... *passim*

*In re Moore*,
   739 F.3d 724 (5th Cir. 2014) .....................................................................17, 23

*Peer v. Lewis*,
    606 F.3d 1306 (11th Cir. 2010) ..................................................................23

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997) ....................................................................22

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
    851 F.3d 1218 (11th Cir. 2017) ...................................................... *passim*

*Robinson v. Boeing Co.*,
    79 F.3d 1053 (11th Cir. 1996) ..................................................................29

*In re Ruffalo*,
    390 U.S. 544 (1968).....................................................................................25

*Scaife v. Associated Air Ctr. Inc.*,
    100 F.3d 406 (5th Cir. 1996) ....................................................................28

*Schlumberger Techs., Inc. v. Wiley*,
    113 F.3d 1553 (11th Cir. 1997) ............................................................8, 29

*Shepherd v. Am. Broad. Cos., Inc.*,
    62 F.3d 1469 (D.C. Cir. 1995)...................................................................17

*Spallone v. United States*,
    493 U.S. 265 (1990).......................................................................................8

*Thomas v. Tenneco Packaging Co.*,
    293 F.3d 1306 (11th Cir. 2002) ................................................................17

*United States v. Gilbert*,
    198 F.3d 1293 (11th Cir. 1999) ..........................................................17, 19

*United States v. Shaygan*,
    652 F.3d 1297 (11th Cir. 2011) ..........................................................14, 25

*In re Vague*,
    2:22-mc-3977-WKW, ECF No. 79, Nov. 3, 2022 ....................................9

*Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*,
    341 F. Supp. 2d 69 (D.P.R. 2004)......................................................21, 22

*Walker v. Marshall*,
    5:22-cv-480-LCB (N.D. Ala. 2022) ("*Walker*")................................ *passim*

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
    564 F.3d 110 (2d Cir. 2009)..........................................................20, 21, 23

## FEDERAL RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 11 ..............................................................................................23, 24, 28
    Rule 11(b) ..............................................................................................23
    Rule 41 ..............................................................................................7, 20, 21, 23
    Rule 41(a)(i) ..............................................................................................20
    Rule 41(a)(1) ..............................................................................................20, 21

## OTHER AUTHORITIES

Alabama Rules of Disciplinary Procedure, Rule 19(a) ...............................................18

Alabama Rule of Professional Conduct 3.3 ...............................................27

American Bar Asociation Model Rules for Lawyer Disciplinary Enforcement,
    Rule 18(c) ...............................................18

American Bar Association Model Rules of Professional Conduct,
    Rule 3.3 ...............................................27
    Rule 5.2(b) ...............................................21

Black's Law Dictionary (6th ed. 1990) ...............................................17

Middle District of Alabama Local Rules
    Rule 83.1(g) ...............................................27

Northern District of Alabama Local Rules
    Rule 83.1(f) ...............................................27

## RESPONDENT ASAF ORR'S RESPONSE TO SUPPLEMTNAL ORDER TO SHOW CAUSE

### I.    Introduction

Respondent Asaf Orr ("Mr. Orr") deeply regrets that his actions and statements suggested a lack of faith in the impartiality of the judiciary.  But Mr. Orr should not be sanctioned further for the conduct outlined in the Supplemental Order to Show Cause:  Asaf Orr, ECF No. 482 ("Supplemental Order") because the conduct attributed to Mr. Orr by the Panel's Final Report of Inquiry ("Final Report") does not amount to judge shopping or the subjective bad faith required to impose sanctions under Eleventh Circuit precedent.  There are three independent reasons for this.

First, the Panel's findings do not support the charges in the Supplemental OSC.  The Panel did not attribute to Mr. Orr any direct or circumstantial evidence of subjective bad faith.  *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224-25 (11th Cir. 2017).  Instead, it found that Mr. Orr was not a decision-maker or leader for the team in *Ladinsky v. Ivey*, 5:22-cv-447-LCB (N.D. Ala. 2022) ("*Ladinsky*") and *Eknes-Tucker v. Marshall*, 5:22-cv-184-LCB (M.D. Ala. 2022) ("*Eknes-Tucker*").  *See In re Amie Adelia Vague, et al.*, 2:22-mc-3977-LCB (M.D. Ala. 2022), ECF No. 70 ("Final Report") at 12.  Mr. Orr also would not have recommended dismissing *Ladinsky* if he was.  Supplemental Declaration of Respondent A. Orr ¶ 12 ("Orr Suppl. Decl.").  The conduct attributed to Mr. Orr by

the Panel was limited to (1) sharing his concerns that dismissing *Ladinsky* and filing *Eknes-Tucker* could be perceived as an attempt at judge-shopping, and (2) sharing his impressions and the impressions of other attorneys that certain judges constituted "good" or "bad draws."  Mr. Orr regrets assessing his clients' likelihood of success by considering the judicial officer assigned to the case as opposed to focusing solely on the strength of the legal claims and the legal precedent on which they rest.  However, this conduct was not an attempt to influence the random case assignment procedures, did not violate Federal Rule of Civil Procedure 41, or constitute the kind of "egregious" conduct needed to satisfy the subjective bad faith standard.  *Id.*

Second, bad faith cannot be *imputed* to Mr. Orr as a matter of law.  As a non-decision-maker, Mr. Orr did not decide to dismiss *Ladinsky* and file *Eknes-Tucker*—those decisions were made by others.  If those decisions were found to have been made in bad faith, that bad faith cannot be imputed to Mr. Orr or form the basis for sanctions against him.

Third, this Court's Supplemental Order requested that each Respondent address any misrepresentations or non-disclosures of key facts during the Panel's inquiry.  The Panel did not identify any misrepresentations or failures to disclose key facts by Mr. Orr; to the contrary, it relied on his testimony sixteen times in its Final Report.  The Supplemental Order cites to the Final Report's findings and also

does not identify any specific alleged misrepresentations or failures to disclose key facts by Mr. Orr.

If the Court deems it necessary to sanction Mr. Orr, even as a non-decision-maker, Eleventh Circuit precedent requires the Court to impose the least severe sanction adequate to achieve its desired result.  Here, the reassignment of *Eknes-Tucker* to this Court, the proceedings before the Panel and this Court, and the unsealing of the documents related to this inquiry have already been more than enough to deter similar future conduct.  As the Court knows well, even the existence of an inquiry into "dishonesty and bad faith could well hang over an attorney's name and career for years to come."  *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1562 (11th Cir. 1997) (cleaned up).

## II.   The Panel's Findings Regarding Mr. Orr and the Court's Supplemental Order to Show Cause

### A.     The Panel Found that Mr. Orr Was a Non-Decision-Maker

Mr. Orr served as counsel for the Plaintiffs in *Ladinsky* and the Private Plaintiffs in *Eknes-Tucker*, while working as a lawyer at the National Center for Lesbian Rights ("NCLR").  At NCLR, he reported to NCLR's Legal Director, Shannon Minter, who was the sole decision-maker for NCLR in the *Ladinsky* and *Eknes-Tucker* cases.  *See* Final Report at 12.

The Panel presiding over the *In re Amie Adelia Vague, et al.*, 2:22-mc-3977-LCB (M.D. Ala. 2022) ("*In re Vague*") proceedings made certain findings

regarding the actions of the lawyers in *Ladinsky*, *Eknes-Tucker*, and *Walker v. Marshall*, 5:22-cv-480-LCB (N.D. Ala. 2022) ("*Walker*") as set forth in the Final Report.  Most notably, the Panel "divided the lawyers" into categories based on their roles and found that Mr. Orr was not a decision-maker on the *Ladinsky*/*Eknes-Tucker* team and, therefore, did not make the decision to (1) dismiss the *Ladinsky* case or (2) file the *Eknes-Tucker* case with new plaintiffs in the Middle District.[1] Final Report at 11-12; *see also In re Vague*, 2:22-mc-3977-LCB, ECF No. 79, Nov. 3, 2022 Transcript at 11:8-17 ("Test. A. Orr"); *In re Vague*, 2:22-mc-3977-LCB, ECF No. 79, Nov. 3, 2022 Transcript at 160:20-23 ("Test. S. Minter").  Other than Mr. Orr, the Panel excused all non-decision-makers from both the *Ladinsky/Eknes-Tucker* team and the *Walker* team, the one exception being a non-decision-maker who was accused of misleading the Panel.  Moreover, the Panel also excused three decision-makers.  Final Report at 16.

It is not entirely clear from the Final Report or the Supplemental Order why Mr. Orr was treated differently from other non-decision-makers who were excused. But what is clear is that the Panel's particular findings regarding Mr. Orr's conduct do not constitute judge shopping or rise to the level of "subjective bad faith"

---

[1]  Mr. Orr was instead one of two "[i]ndividuals who have knowledge and had input" on the *Ladinsky/Eknes-Tucker* team.  Final Report at 12.

required to justify sanctions against him.  The Panel found that he engaged in the following conduct:

- Mr. Orr participated in calls on April 13, 2022, with *Walker* and *Ladinsky* team members, where the *Walker* team discussed its strategy for responding to Chief Judge Marks's order to show cause why *Walker* should not be transferred to the Northern District, where *Ladinsky,* the first-filed action, was pending.  Final Report at 23, 25-26.  Neither the Final Report nor the Supplemental Order indicate that Mr. Orr's participation in this call was improper.

- Mr. Orr and the *Ladinsky* team were concerned that *Ladinsky* would lose its first-filed case status after it was transferred to this Court, which at the time was presiding over the second-filed case (*Walker*).  *Id.* at 29-30.

- Mr. Orr participated in a one-on-one call with Mr. Minter on April 15, 2022, where "[Mr.] Minter brought up the idea of dismissing *Ladinsky*," Mr. Orr told Mr. Minter that "dismissing *Ladinsky* could be perceived as judge shopping[,]" and they "discussed their concerns about how Judge Burke would analyze their claims[.]"  *Id.* at 32, 42.

- Mr. Orr participated in discussions where "[a]ttorneys compared their impressions of Judge Axon and Judge Burke."  *Id.* at 34.  During those discussions, Mr. Orr generally expressed that Judge Axon was a good

draw and Judge Burke was not.  *Id.* at 35-36.  In particular, Mr. Orr "communicat[ed] to the *Walker* team . . . that he did not have positive impressions of Judge Burke 'based on an initial review of some of his opinions prior to joining the federal bench and information regarding his political affiliations prior to becoming a judge.'"  *Id.* at 34 (citing the Declaration of A. Orr in Response to this Court's Order, *In re Vague*, 2:22-mc-3977-LCB, ECF No. 80-6 ("Orr Decl.") ¶ 17).  Mr. Orr also sent an email to "[Mr.] Charles indicating that someone at Lightfoot believed Judge Axon was a good draw."  *Id.* at 25.  Notably, the conversations with the *Walker* team occurred around the time *Walker* was transferred to the Northern District of Alabama and before *Ladinsky* was reassigned to this Court.  *Id.* at 25, 36; Orr Suppl. Decl. ¶ 22; Orr Decl. ¶¶ 13, 17.

- Mr. Orr contacted the *Ladinsky* Plaintiffs and received their consent to dismiss.  *Id.* at 42.

As he previously testified and reiterates in his Supplemental Declaration filed as Exhibit A with this response, Mr. Orr, in fact, cautioned against dismissing *Ladinsky*.  Orr Suppl. Decl. ¶¶ 12-13; Orr Decl. ¶ 20.  During the one-on-one call with Mr. Minter identified by the Panel, Mr. Orr shared his view and recommendation that *Ladinsky* should not be dismissed.  Orr Suppl. Decl. ¶ 13.  However, Mr. Orr ultimately understood through his call with Mr. Minter that there

were substantive reasons to dismiss *Ladinsky*, unrelated to the judicial assignment. Orr Suppl. Decl. ¶¶ 14-15; Orr Decl. ¶ 20.  These reasons related to risks of the current posture of the separate *Walker* and *Ladinsky* cases, which risked undermining the *Ladinsky* team's ability to present their clients' claims and legal theories in the most effective manner possible.  Orr Suppl. Decl. ¶¶ 14-16.

But, at the end of the day, as the Panel found, it was not Mr. Orr who made the decision to dismiss the *Ladinsky* case or file the *Eknes-Tucker* case with new plaintiffs in the Middle District.  Final Report at 12.

**B.    The Panel Did Not Find that Mr. Orr Engaged in the Decision-Making Conduct Identified in the Court's Supplemental Order to Show Cause**

The Court ordered that Mr. Orr account for six findings made by the Panel related to judge-shopping.  But the Panel's specific findings regarding Mr. Orr's actions and non-decision-maker role on the *Ladinsky/Eknes-Tucker* team demonstrate that the six factual findings identified by the Supplemental Order do not apply to Mr. Orr.

Five of the six factual findings are litigation strategy decisions that are not attributable to Mr. Orr because the Panel found Mr. Orr was not a decision-maker. Final Report at 12.  As a non-decision-maker, Mr. Orr did not (1) "coordinate the dismissal of the *Walker* and *Ladinsky* cases . . . [or] comment[] to the media about re-filing;"; (2) decide to "dismiss *Walker* and *Ladinsky*"; (3) decide to "stop the

pursuit of emergency relief and dismiss and refile a case in the Middle District with brand new plaintiffs"; (4) "decide over the weekend to file *Eknes-Tucker* in the Middle District"; or (5) "decide to file a new case with new plaintiffs in the Middle District." Supplemental Order to Show Cause: Asaf Orr, ECF No. 482 ("Suppl. Order") at 10–11 (citing Final Report at 51–52). The conduct described in these factual findings turns on ***decisions*** made about litigation strategy, and ***Mr. Orr was not a decision-maker and made none of these decisions***. Final Report at 12; Orr Suppl. Decl. ¶ 21; Orr Decl. ¶ 20.

As to the remaining finding identified by the Court in its Supplemental Order, Mr. Orr also did not "engage in wide-ranging discussions about how judges were favorable or favorable ***in the context*** of deciding whether to dismiss and refile *Walker* and *Ladinsky*." Suppl. Order at 10 (emphasis added). The Panel did find and Mr. Orr has acknowledged that he engaged in discussions about judges and whether they were favorable or unfavorable draws. Final Report at 34–36. But Mr. Orr did not engage in such discussions "***in the context*** of deciding whether to dismiss and refile," because Mr. Orr, as a non-decision-maker, was not "deciding whether to dismiss and refile." Final Report at 51 (emphasis in original). In addition, these discussions largely occurred before the *Ladinsky* team was considering dismissal. *See* Final Report at 25, 36; Orr Suppl. Decl. ¶ 22; Orr Decl.

¶¶ 13, 17.  Moreover, when the *Ladinsky* team did consider dismissal, Mr. Orr cautioned against dismissing.  Orr Suppl. Decl. ¶¶ 12-13; Orr Decl. ¶ 20.

Mr. Orr thus did not engage in discussions regarding the favorability of judges in the context of deciding to dismiss *Ladinsky*.  The decision-making context was key.  The Panel did not consider such discussions inherently suggestive of misconduct, and it did not "condemn the lawyers for fretting about their chances of success before a particular judge." *Id.* at 50.  As the Panel noted, "counsel and parties are permitted to have opinions about (and even gauge their likelihood of) success before different judges." *Id.*

The Court also ordered Mr. Orr to address the "misrepresentation" concerning the "claim 'that the dismissal was because Judge Axon did not explain the reassignment of *Ladinsky* and [the Court] set *Walker* for a status conference in Huntsville on April 18.'"[2]  Suppl. Order at 12 (quoting Final Report at 52). But the Panel did not find that Mr. Orr, in his written or oral testimony, ever misrepresented why dismissal was sought.  Instead, the Panel cited Mr. Orr's Declaration regarding the Ladinsky team's "concerns" and "confusion" regarding the reassignment process, and the Panel cited Mr. Orr's Declaration as being

---

[2]As noted below in Section IV(D), *infra*, the Final Report did not identify any misrepresentations or omissions by Mr. Orr.  Mr. Orr maintains that any disciplinary decision based on alleged misrepresentations or omissions not specifically identified in the Supplemental Order would violate due process.  *See United States v. Shaygan*, 652 F.3d 1297, 1319 (11th Cir. 2011) ("An attorney charged with misconduct . . . is entitled to know the precise rule, standard, or law that he or she is alleged to have violated and ***how*** he or she allegedly violated it." (emphasis added)).

consistent with the testimony of other respondents on this point. Final Report at

29–30 (citing Orr Dec. at 53, ¶ 19 and declarations of five other respondents as

being consistent). Further, Mr. Orr did not make the decision to dismiss, and he

testified truthfully as to his understanding of the decision-makers' reasons for

dismissing. Orr. Suppl. Decl. ¶ 25; *see also* Orr. Decl. ¶ 20. None of the

respondents ever testified that concerns regarding the reassignment process were

pretextual explanations given for dismissal.

Accordingly, the Panel's findings set forth in the Final Report confirm that

that Mr. Orr did not engage in conduct the Supplemental Order identifies as

supporting potential sanctions.

## III.   Mr. Orr Apologizes and Deeply Regrets His Actions

Mr. Orr regrets that his actions and statements suggested a lack of faith in

the impartiality of the federal judiciary in Alabama.

As described in detail in Mr. Orr's Supplemental Declaration, Mr. Orr takes

his ethical obligations to his clients and his duties as an officer of the court in

earnest and with the utmost seriousness. Orr Suppl. Decl. ¶ 5. These values are a

source of personal pride, which were instilled in him early in his career, serving as

a law clerk to the Honorable Virginia Long of the Supreme Court of New Jersey.

*Id.* ¶¶ 5-6.

The Panel's inquiry and the proceedings before this Court have had a profound effect on Mr. Orr personally and professionally. *Id.* ¶ 11.  For twenty-three months, Mr. Orr has lived with the burden of the proceedings and the knowledge that his conduct did not reflect his own values and faith in the federal judicial system.  *Id.*  Mr. Orr is concerned that the unsealing of the Panel's Final Report and these proceedings may negatively impact his future professional opportunities regardless of the ultimate outcome of these proceedings.  *Id.*  The fact that Mr. Orr has never been the subject of any prior disciplinary hearings in the more than fifteen years he has practiced law has only made these impacts more acute.  *Id.* ¶ 4.  Mr. Orr is even more committed and vigilant about to ensuring that his actions as an officer of the court reflect the highest values and ideals of the judicial system because of these proceedings, irrespective of the outcome.

Mr. Orr accepts full responsibility for the conduct the Panel found he engaged in, as set forth in detail in Section II, *supra*.  Mr. Orr welcomes the opportunity to discuss these issues further with the Court at the May 23, 2024, and June 27 and 28, 2024 hearings.

IV.    **While Mr. Orr Accepts Responsibility for His Actions, Those Actions Do Not Meet the Legal Standard for Sanctionable Conduct**

    A.    **As a Non-Decision-Maker, Mr. Orr's Conduct Does Not Meet the Subjective Bad Faith Required to Impose Sanctions**

A court may only impose sanctions against a lawyer under its inherent power after it finds "the lawyer's conduct constituted or was tantamount to bad faith." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002); *see also Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power is a finding of bad faith.").

The standard is subjective and requires either (1) "direct evidence of the attorney's subjective bad faith" or (2) "evidence of conduct 'so egregious that it could only be committed in bad faith.'" *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (quoting *Purchasing Power*, 851 F.3d at 1224–25). "Bad faith" requires more than "simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (quoting Bad Faith, Black's Law Dictionary (6th ed. 1990)) (internal quotation marks omitted).

To impose punitive sanctions, clear and convincing evidence must support the finding of subjective bad faith. *See In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014); *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995); *see*

*also* ABA Model Rules for Lawyer Disciplinary Enforcement, Rule 18(c) ("Formal charges of misconduct . . . shall be established by clear and convincing evidence."); Alabama Rules of Disciplinary Procedure, Rule 19(a) ("Clear and convincing evidence shall be the standard of proof required in all disciplinary proceedings[.]").

"Recklessness alone does not satisfy the inherent powers standard[,]" and a lawyer's reckless disregard of a rule or duty to the court by itself does not constitute subjective bad faith. *Purchasing Power*, 851 F.3d at 1225. For example, in *Purchasing Power*, the Eleventh Circuit reversed sanctions imposed for failing to disclose the complete citizenship of an LLC: although the lawyer's investigation into the citizenship of LLC members was "lacking," he had not "acted with bad intentions," and the "damage done to the parties' credibility, finances, and time" was sanction enough. *Id.* at 1228.

"[I]n the absence of direct evidence of subjective bad faith," the Eleventh Circuit has required evidence of "conduct . . . so egregious that it could only be committed in bad faith." *Purchasing Power*, 851 F.3d at 1224–25. Thus, for example, where an attorney filed ***thirteen*** duplicative complaints in the same district, immediately dismissed all but one of them in order to ensure assignment to his preferred judge, and ***boasted publicly about his efforts and intentions*** to circumvent the random assignment process, such conduct merited sanctions. *See*

*In re Fieger*, 191 F.3d 451 (6th Cir. 1999) (unpublished) (upholding public reprimand and monetary sanction).

Here, the Panel's findings confirmed that Mr. Orr did **not** decide to dismiss *Ladinsky* or file *Eknes-Tucker* with new plaintiffs in the Middle District.[3]  As a result, Mr. Orr could not have engaged in the "conscious" wrongful conduct for a "dishonest purpose or moral obliquity" necessary to demonstrate subjective bad faith.  *Gilbert*, 198 F.3d at 1299.

The Panel instead found that Mr. Orr was a non-decision-maker, who only had knowledge and input on those decisions.  Although Mr. Orr engaged in discussions about whether certain judges were a "good" or "bad" draw, such discussions alone do not constitute an attempt to circumvent the random case assignment procedures.  Final Report at 32, 42 (call with Mr. Minter); *Id.* at 35-36 (discussions with other attorneys).  Neither does Mr. Orr expressing his concern that *Ladinsky* would lose its first-filed case status after it was transferred to this Court, which was then presiding over the second-filed case (*Walker*).  *Id.* at 29-30.  Such discussions do not rise to the level of conduct "so egregious that it could only be committed in bad faith."  *Purchasing Power*, 851 F.3d at 1224–25.

---

[3] Further, when *Eknes-Tucker* was filed, Mr. Orr was not aware of this Court's April 18, 2022 order in *Walker* expressing concerns about judge-shopping.  Orr Suppl. Decl. ¶ 23; *Walker*, 5:22-cv-00480-LCB (N.D. Ala. 2022), ECF No. 24.

Further, Mr. Orr's conduct implementing the leaders' decision to dismiss *Ladinsky* and file *Eknes-Tucker* does not evidence a subjective bad faith to attempt to circumvent the random case assignment procedures.[4]

First, Mr. Orr believed the leaders could reasonably conclude that dismissing *Ladinsky* allowed them to present their clients' claims and legal theories in the most effective manner possible, even if that was through different plaintiffs. Orr Suppl. Decl. ¶¶ 14, 16.

Second, Mr. Orr reasonably trusted the leaders' analysis that voluntarily dismissing *Ladinsky* under Rule 41(a)(1) was permissible under the Federal Rules of Civil Procedure, the Northern District of Alabama's Local Rules, and their ethical duties as officers of the Court. In particular, the Eleventh Circuit has not sanctioned attorneys for judge-shopping under Rule 41. Out-of-circuit authority on this issue is split. The Second Circuit, Fifth Circuit, and Eighth Circuit have all held that plaintiffs are free to use Rule 41(a)(1) voluntary dismissals to secure their preferred forum. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114–15 (2d Cir. 2009) (holding the fact that a plaintiff dismissed under Rule 41 "to flee the jurisdiction or the judge does not make the filing sanctionable"); *Harvey Specialty & Supply, Inc. v. Anson Flowtime Equip., Inc.*, 434 F.3d 320, 324 n.15

---

[4] This conduct includes contacting the *Ladinsky* Plaintiffs to seek their consent to dismiss (Final Report at 42), helping to identify plaintiffs for *Eknes-Tucker*, and appearing as counsel in *Eknes-Tucker*.

(5th Cir. 2005); *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1080–81 (8th Cir. 2017).

The courts that have held that dismissal under Rule 41(a)(1) is sanctionable have done so based on egregious conduct not present here.  For example, the District of Puerto Rico held that plaintiffs' voluntary dismissal under Rule 41(a)(1) after the denial of a preliminary injunction and refiling of essentially the same claim constituted sanctionable judge-shopping, as they had "us[ed] Rule 41 as a loophole to circumvent an unfavorable ruling." *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp. 2d 69, 71 (D.P.R. 2004).  The *Vaqueria* court transferred the action back to the original judge and imposed monetary sanctions of $1,000 each on plaintiffs' attorneys. *Id.* at 73.

Here, Mr. Orr did not willfully abuse judicial processes or willfully disobey an order or rule because he believed that dismissing *Ladinsky* under Rule 41 was a reasonable and permissible decision for the leaders to make.  Given the circuit split on this issue, Mr. Orr had reasonable grounds for this belief.  *See Wolters Kluwer*, 564 F.3d at 114–15; *see also* ABA Model Rules of Professional Conduct, Rule 5.2(b) ("A subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty."). And unlike the sanctioned attorneys in *Vaqueria*, the *Ladinsky* team did not "us[e] Rule 41 as a loophole to circumvent an

unfavorable ruling," as they dismissed *before* any ruling was issued.  *See Vaqueria,* 341 F. Supp. 2d at 71.

Although Mr. Orr would have made a different decision had he been a decision-maker, Mr. Orr's conduct in implementing the leaders' decision to dismiss *Ladinsky* and file *Eknes-Tucker*, even in the least favorable light, does not constitute clear and convincing evidence of subjective bad faith.  *See Purchasing Power*, 851 F.3d at 1225.  Moreover, given that Mr. Orr believed that the leaders had legitimate reasons for making their decisions, his conduct does not rise to the level of recklessness warranting sanction, which requires a "gross deviation from what a reasonable person would do."  *Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1240 (11th Cir. 2007) (internal citation omitted).

**B.    To the Extent Decision-Makers Acted in Bad Faith in Dismissing *Ladinsky* and Filing *Eknes-Tucker*, Their Bad Faith Cannot Be Imputed to Mr. Orr**

"Bad faith is personal to the offender.  One person's bad faith may not be attributed to another[.]"  *JTR Enters., LLC v. Columbian Emeralds*, 697 F. App'x 976, 987–88 (11th Cir. 2017) (affirming district court's denial of sanctions against a party who participated in but "did not control the litigation").  "[A]ny sanctions imposed against [an attorney] should be based solely on his own improper conduct without considering the conduct of the parties or any other attorney."  *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 650 (9th Cir. 1997) (internal citation

omitted); *cf. In re Moore*, 739 F.3d 724, 733 (5th Cir. 2014) ("Neither imputed bad faith nor suspicion alone justifies the invocation of the inherent power.").

As the Panel determined in the Final Report, Mr. Orr did not have decision-making authority and thus did not "control" the litigation.  *See JTR Enters.*, 697 F. App'x at 987.  To the extent he "failed to prevent" misconduct on the part of others, this failure is not tantamount to bad faith—particularly where he did not have the decision-making authority necessary to prevent the misconduct.  *See Wolters Kluwer*, 564 F.3d at 114 (reversing award of sanctions against a firm for alleged judge-shopping under Rule 41 and holding that an attorney's bad faith may not be imputed to others on the grounds that those others "failed to prevent" misconduct).

## C.    Mr. Orr Did Not Sign Any Frivolous Papers in Violation of Rule 11

Mr. Orr's actions also do not meet the standard for potential sanctions under Federal Rule of Civil Procedure 11.  Rule 11 is limited to "pleading[s], written motion[s] and other paper[s]" filed with the court and does not apply to other litigation conduct.  Fed. R. Civ. P. 11(b).  The Eleventh Circuit assesses "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (emphasis added).  Here, the

conduct at issue falls outside the scope of Rule 11 because Mr. Orr's conduct did not involve the filing and signing of frivolous pleadings or motion papers.

Even if the conduct at issue here were governed by Rule 11, Rule 11 sanctions are not warranted for a non-signing attorney whose name is included on papers unless the attorney was in some other way responsible for the violation, *e.g.*, through their control of the litigation. *See King v. Whitmer*, 71 F.4th 511, 531 (6th Cir. 2023), *cert. denied sub nom. Powell v. Whitmer*, No. 23-486, 2024 WL 674733 (U.S. Feb. 20, 2024) (reversing sanctions against a non-signing attorney whose name was included on the frivolous complaint but who played a limited role in the litigation; affirming sanctions against a non-signing attorney who "spearheaded" the entire litigation).

Here, Rule 11 sanctions are not warranted against Mr. Orr because he did not sign any frivolous papers in *Ladinsky* or *Eknes-Tucker*, and he was a non-decision-maker.[5]  *See* Pls.' Notice of Voluntary Dismissal, *Ladinsky*, 5:22-cv-447-LCB (N.D. Ala. 2022), ECF No. 15; Complaint for Declaratory and Injunctive Relief, ECF No. 1

---

[5] Further, because Mr. Orr was a non-decision-maker, his conduct does not meet the "higher . . .'akin to contempt'" standard or the necessary *mens rea* for court-initiated sanctions.  *See Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

### D.     The Panel Did Not Identify Any Misrepresentations or Omissions by Mr. Orr

The Supplemental Order to Show Cause requests that each Respondent address any misrepresentations or non-disclosures of key facts during the Panel's inquiry.[6]  The Panel did not identify any misrepresentations or failures to disclose key facts by Mr. Orr during the Panel's inquiry.[7]  Indeed, the Panel's Final Report repeatedly relied on Mr. Orr's testimony, citing it *sixteen* times.  *See* Final Report at 18, 23, 27, 30-32, 34, 36, 39, 41-42 (citing Mr. Orr's testimony during the Nov. 3, 2022 hearing and the Orr Decl.).

Mr. Orr's Supplemental Declaration reaffirms that he understands the gravity of these proceedings and has endeavored to be as truthful and forthcoming as possible in his July 27, 2022 Declaration, testimony before the Panel, and

---

[6] As set forth in the Objection to the Supplemental Orders to Show Cause by James Esseks, Carl Charles, and LaTisha Faulks, ECF No. 493, joined by Mr. Orr, ECF No. 503, the Panel's failure to provide notice of the specific charge against Mr. Orr before the Panel's proceedings commenced violated due process.  *See In re Ruffalo*, 390 U.S. 544, 551 (1968) ("[The proceedings] become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused.").  The Panel's framing of the proceedings as an inquiry and not a disciplinary proceeding further exacerbates these due process violations.  *See In re Vague*, 2:22-mc-3977-LCB, ECF No. 75, May 20, 2022 Transcript at 16:17-19:10.

[7] The Supplemental Order also did not identify any specific misrepresentations or failures to disclose key facts by Mr. Orr, beyond the Court's order that Mr. Orr address the Panel's finding that "it was misconduct . . . to claim 'that the dismissal was because Judge Axon did not explain the reassignment of Ladinsky and [the Court] set Walker for a status conference in Huntsville on April 18.'" Suppl. Order at 12 (citing Final Report at 52).  As described above, Mr. Orr testified truthfully regarding the *Ladinsky* team's concerns and confusion regarding the reassignment process, and his testimony was consistent with the testimony of the other respondents. *See* Final Report at 29–30.  As noted above in footnote 2, *supra*, Mr. Orr maintains that any disciplinary decision based on alleged misrepresentations or omissions not specifically identified in the Supplemental Order would violate due process.  *See Shaygan*, 652 F.3d at 1319.

Supplemental Declaration.  Orr Suppl. Decl. ¶ 10.  Mr. Orr recognizes that during his November 3, 2022 testimony, the Panel appeared to be concerned with his lack of recollection of the *Ladinsky* team call in the late afternoon or early evening on April 15, 2022, and his inability to corroborate one Respondent's testimony about a specific statement made by another team member regarding the perceived prospects of a preliminary injunction motion before this Court.  *Id.* ¶ 17.  As he previously testified, Mr. Orr does not recall that statement, but he does not dispute the testimony of the one *Ladinsky* team member on the call who remembered it. *Id.*

Reviewing the testimony and declarations of his former co-counsel and colleagues has refreshed Mr. Orr's recollection of the key takeaways and themes of the call, including the *Ladinsky* team's general impressions and reactions to the reassignment of *Ladinsky* to this Court.  *Id.* ¶ 18.  Mr. Orr also acknowledges the that the inartful wording in his July 27, 2022 Declaration's discussion of that call, which stated that he did not recall much other than paying attention to be able to accurately convey information to the *Ladinsky* Plaintiffs.  *Id.* ¶ 17; *see also* Orr Decl. ¶ 21.  However, Mr. Orr's ability to recall the key takeaways and themes from the call, but not a specific statement remembered by one team member, reflects the natural limits of a person's recollection over a year later—not a lack of candor.

For Mr. Orr, that afternoon and evening were "very harried and emotionally taxing."  Orr Suppl. Decl. ¶ 18.  It involved multiple difficult and emotional calls in very short succession with each of the *Ladinsky* Plaintiffs, followed by a hurried seventy-two hours finding the plaintiffs and preparing the pleadings for *Eknes-Tucker*, which involved many more phone calls with potential plaintiffs.  *Id.*  This understandably contributed to his incomplete recollection—his ability to remember the act of paying attention but not all the details of the call.

Mr. Orr has affirmed his testimony is complete to the best of his recollection. *Id.* ¶ 19.  The Panel agreed because its Final Report relied on Mr. Orr's recollection of another statement made on the call (Final Report at 31 (citing Nov. 3 Hearing Tr. at 61), and did not otherwise find issue with Mr. Orr's testimony on this subject.

Further, reviewing the declarations filed by other Respondents before the Panel did not further refresh Mr. Orr's recollection, and Mr. Orr is not aware of any material discrepancies between his testimony and the testimony of the other Respondents.[8]  *Id.* ¶ 19.

---

[8] Because Mr. Orr did not engage in misconduct or make any misrepresentations or omissions of material fact, he did not violate Local Rule 83.1(f) of the Northern District of Alabama, Local Rule 83.1(g) of the Middle District of Alabama, Alabama Rule of Professional Conduct 3.3, the American Bar Association Model Rule of Professional Conduct 3.3, the Oath of Admission to the Northern District of Alabama, Oath of Admission to the Middle District of Alabama, or his sworn oath.

**E.**     **If the Court Determines Sanctions Are Warranted, It Should Find the Consequences Already Imposed on Mr. Orr Sufficient**

A court imposing a sanction under its inherent power must exercise the "least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 280 (1990).  Appellate courts routinely overturn sanctions that exceed the least severe measure adequate to deter similar conduct in the future. *See, e.g., Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1030-31 (7th Cir. 1999) (vacating attorneys' fees award under Rule 11 as going beyond the "least severe [sanction] adequate to serve the purposes of deterrence"); *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 412 (5th Cir. 1996) (vacating sanctions order imposing prefiling requirement on attorney where district court exceeded the "least severe sanction adequate to achieve the desired result[]").  "The inherent power must be exercised with restraint and discretion." *Purchasing Power*, 851 F.3d at 1225.

As discussed above, Mr. Orr recommended against dismissing *Ladinsky*, but regardless, deterrence of judge-shopping has already been served here.  First, the instant action was transferred to this Court.  Second, Mr. Orr and the other Respondents have participated in a long and difficult process, which has taken a personal and professional toll and given them the opportunity to reflect on their conduct.  The unsealing of the Final Report and these proceedings has raised that personal and professional toll.

The Panel previously excused three decision-makers and all of the other non-decision-makers, except for one non-decision-maker who—unlike Mr. Orr—was accused of misleading the Panel.  For the other excused individuals, participation in this process served as the reprimand.  That form of reprimand is likewise sufficient to deter any future misconduct by Mr. Orr.  *See Schlumberger*, 113 F.3d at 1562 (affirming that even the existence of an inquiry into "dishonesty and bad faith could well hang over [an attorney's] name and career for years to come[]").

In considering sanctions for judge-shopping through abuse of the federal judicial recusal statute, the Eleventh Circuit has affirmed sanctions limited to ensuring that the case remained before the assigned judge.  *See Robinson v. Boeing Co.*, 79 F.3d 1053, 1055 (11th Cir. 1996) (affirming the denial of a motion to associate additional counsel); *In re BellSouth Corp.*, 334 F.3d 941, 946 (11th Cir. 2003) (denying mandamus relief following the disqualification of an attorney who was retained to force the recusal of the assigned judge).  In neither case was an additional sanction, such as a monetary sanction or a reprimand, imposed.  *Robinson*, 79 F.3d at 1054; *In re BellSouth*, 334 F.3d at 965.  Ensuring the assigned judge retained the case was sufficient to thwart and deter judge-shopping.  Here,

the return of the proceedings to this Court and the Panel's inquiry and Final Report have already been more than enough to deter any similar future conduct.[9]

Further sanctions for violating the random case assignment process would only be appropriate if Mr. Orr's conduct had been flagrant and egregious. *See, e.g. In re Fieger*, 191 F.3d 451 (upholding public reprimand and monetary sanction where an attorney filed thirteen duplicative complaints in the same district, immediately dismissed all but one of them in order to ensure assignment to his preferred judge, and boasted publicly about his efforts and intentions to circumvent the random assignment process). As demonstrated above, Mr. Orr's conduct did not rise to that level.

## V.     **Conclusion**

For the foregoing reasons, Mr. Orr respectfully requests that the Court excuse him from these disciplinary proceedings without further sanction. To the extent applicable to him, Mr. Orr also hereby adopts the arguments made and law cited by the other Respondents in response to the Court's Supplemental Orders to Show Cause.

---

[9] In addition, the facts in *In re BellSouth* are egregious: the district court opinion recited a detailed history of suspicious "forced recusals" including two prior cases involving the *BellSouth* defendant. *In re BellSouth*, 334 F.3d at 946.

Respectfully submitted this 10th day of May, 2024,

/s/ John M. Ugai

John M. Ugai (CA Bar No. 318565)
(*admitted pro hac vice*)
Anthony P. Schoenberg (CA Bar No. 203714)
(*admitted pro hac vice*)
Katherine Balkoski (CA Bar. No. 353366)
(*admitted pro hac vice*)
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
Phone:  (415) 954-4400
Fax:  (415) 954-4480
Email:  tschoenberg@fbm.com
Email:  jugai@fbm.com
Email:  kbalkoski@fbm.com

Robert D. Segall (ASB-7354-E68R)
Shannon L. Holliday (ASB-5440-Y77S)
COPELAND FRANCO SCREWS & GILL, P.A.
Post Office Box 347
Montgomery, AL  36101-0347
Phone:  (334) 834-1180
Fax:  (334) 834-3172
Email:  segall@copelandfranco.com
Email:  holliday@copelandfranco.com

*Counsel for Respondent Asaf Orr*

## CERTIFICATE OF SERVICE

I certify that, on May 10, 2024, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will provide notice of such filing to all counsel of record.

/s/ John M. Ugai