# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **BRIANNA BOE, et al.,**  )<br>)<br>)<br>    **Plaintiffs,** )<br>)<br>**and** )<br>)<br>**UNITED STATES OF AMERICA,** )<br>)<br>    **Plaintiff-Intervenor,** )<br>)<br>**v.** )<br>)<br>**STEVE MARSHALL, in his official** )<br>**capacity as Attorney General of the** )<br>**State of Alabama, et al.,** )<br>)<br>    **Defendants.** )  | Case No.: 2:22-cv-184-LCB |

## SUPPLEMENTAL DECLARATION OF RESPONDENT ASAF ORR

1.  I am currently employed as an attorney for the State of California.

2.  The following statements are true and to the best of my knowledge, information, and belief, formed after a reasonable inquiry under the circumstances. If called to testify about them, I would competently testify the same.

1

3. I have been a member in good standing of the California Bar since 2008. I have also been admitted to practice in the United States District Court for the Central District of California since 2010, the United States District Court for the Northern District of California since 2013, and the United States District Court for the Southern District of California since 2016. And I am admitted to practice in the United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits. I was previously admitted to the United States Court of Appeals for the Eleventh Circuit but allowed that admission to lapse because I no longer practice in that Circuit, and unlike other circuits, it requires attorneys to renew their membership every five years. I have also been granted *pro hac vice* admission to approximately a dozen state and federal courts across the United States over the course of my career.

4. In my entire career, no complaints have been filed against me, and except for these proceedings, I have not been the subject of any disciplinary proceedings in California or any other court where I have been admitted.

5. I take my ethical obligations to my clients and my duties as an officer of the court very seriously. They are a source of personal pride. Those values were instilled in me early in my career during my clinical work in law school and as a law clerk to the Honorable Virginia Long on the Supreme Court of New Jersey. I was fortunate enough to have many other mentors throughout my career

whose example further reinforced the importance of those values and taught me how to incorporate them into my practice.

6. Those values have guided me outside the courtroom as well. For example, while at NCLR, I regularly presented on legal issues affecting the transgender community. Because of the reputation I developed as a presenter on those topics, I was invited to conduct trainings for the judges and court personnel of the United States District Court for the Northern District of California, the United States District Court for the Western District of Washington, the United States Court of Appeals for the Sixth Circuit, and the Superior Court of California, San Francisco County. Likewise, those values have helped me navigate thorny ethical issues that have arisen in my career.

7. From February 2012 to February 2023, I was a lawyer at the National Center for Lesbian Rights ("NCLR"). During my time at NCLR, I was counsel to the Plaintiffs in *Ladinsky v. Ivey* and the Private Plaintiffs in *Eknes-Tucker v. Marshall*.

8. Following its inquiry, the Panel found that I was not a leader or decision-maker in *Ladinsky* and *Eknes-Tucker*—my role was limited to an individual who had knowledge and input. This is consistent with my testimony and the testimony of Shannon Minter, NCLR's Legal Director, who confirmed that he was the sole decision-maker from NCLR in *Ladinsky* and *Eknes-Tucker*. To the

3

extent that other attorneys from *Ladinsky* and *Walker v. Marshall* suggested that I was a decision-maker for NCLR, I believe they misspoke or were not privy to the allocation of decision-making authority at NCLR.

9. Although I was not a leader or decision-maker, I regret that my actions and statements while carrying out the decision to dismiss *Ladinsky* and file *Eknes-Tucker* suggested a lack of faith in the impartiality of the federal bench in Alabama. I sincerely apologize to the Court for that conduct and its effects, and while I did not act in bad faith, I accept full responsibility for my actions.

10. I understand the gravity of the Panel's inquiry, and I endeavored to be as truthful and forthcoming as possible in my July 27, 2022 declaration, testimony before the Panel, and this supplemental declaration.

11. The Panel's inquiry and these proceedings have had a profound effect on me personally and professionally. For twenty-three months, I have lived with the burden of them and the knowledge that my conduct did not reflect my own values and faith in the federal judicial system. And after the unsealing of the Panel's Final Report of Inquiry, I have been the subject of media scrutiny, and my employer and I have received multiple media inquiries. I am also deeply concerned these proceedings may negatively impact my future professional opportunities regardless of the ultimate outcome. Because of these proceedings, I

am even more committed to and vigilant about ensuring that my actions as an officer of the court reflect the highest values and ideals of our judicial system.

12. Although I was not asked this question during the hearings before the Panel and believed dismissal to be a reasonable and permitted option under Federal Rule of Civil Procedure 41, I would not have recommended to our clients that they dismiss the *Ladinsky* case if I had been the decision-maker.

13. In particular, the Honorable Judge Proctor questioned me during the November 2, 2022 hearing about a telephone call with Mr. Minter following the order transferring *Ladinsky* to this Court. This call was consistent with our regular practice in these cases and others of having internal NCLR calls to discuss events and prepare for larger meetings with co-counsel. During this particular one-on-one call with Mr. Minter, I shared my view and recommendation that we should not dismiss *Ladinsky*. While I am unsure whether I communicated them to Mr. Minter, I had several reasons for that position:

- First, I was concerned that dismissing and refiling could be perceived as an attempt at forum shopping.

- Second, when we filed *Ladinsky*, we were prepared to litigate in front of whomever the case was assigned to and would have done so if the case had been assigned to this Court in the first instance.

5

44943\16708481.9

- Third, I was confident that any new case we filed would have been reassigned to this Court.

- Fourth, I was concerned that the delay caused by dismissing and refiling would shorten the already compressed timeframe for obtaining an injunction before the Alabama Vulnerable Child Compassion and Protection Act ("Act") went into effect and that the State Defendants would argue that the delay evidenced a lack of exigency when opposing our preliminary injunction motion, which they did.

14. Even though it was not the decision I would have made, I knew from my conversation with Mr. Minter that there were substantive and even dispositive reasons for dismissing *Ladinsky* that were unrelated to the judicial assignment. As I testified previously, those reasons primarily included: (1) *Walker* and *Ladinsky* were two different cases in their framing and the claims asserted, and we were concerned that the motion for preliminary injunction already filed in *Walker* would detract focus from the *Ladinsky* Plaintiffs' claims and interests; (2) relatedly, it was unclear whether *Ladinsky* still retained lead case status, which was of particular importance to the *Ladinsky* team in ensuring our clients' claims were presented in the most strategically advantageous manner; and (3) the various groups of lawyers

6

who had not planned on working together were suddenly in a situation where coordination was paramount.

15. At the time of that conversation, I had worked with Mr. Minter for over ten years. He is a very experienced litigator and legal tactician who exercises tremendous caution and care when making strategic decisions. As a result, I gave significant credence to his assessment of the situation and his analysis of Rule 41, particularly given that the decision was made within hours and my other responsibilities for the *Ladinksy* team precluded me from conducting independent research.

16. Obtaining an order enjoining the Act before it took effect was of significant importance to our clients, but a critical element of obtaining that relief was demonstrating a "likelihood of success on the merits." Based on my experience, it was reasonable to determine that dismissing and filing a new lawsuit would have addressed that important interest by allowing us to file a single, coordinated lawsuit that ensured the legal claims and theories in our client's best interest would be put on equal footing before the Court, even if they were brought by new representative plaintiffs.

17. During my testimony, the Panel appeared to be concerned with my lack of recollection of the *Ladinsky* team call in the late afternoon or early evening on April 15, 2022, and in particular, my inability to corroborate one Respondent's

7

testimony about a specific statement made by another team member regarding the perceived prospects of a preliminary injunction motion before this Court. As I previously testified, although I do not recall that statement, I do not dispute the testimony of the one *Ladinsky* team member who remembered it. Further, as I did during my testimony, I acknowledge that my prior declaration's inartful wording suggested an inconsistency in my recollection of that call, namely that I did not recall much other than paying attention to be able to accurately convey information to the *Ladinsky* Plaintiffs.

18.  Prior to preparing this supplemental declaration, I reviewed the unsealed declarations filed in this matter and the transcripts of the proceedings before the Panel. Although that process did not refresh my recollection of the specific comments by the participants, it did refresh my recollection of the primary takeaways and themes from the call. These included the participants' concern about the reassignment of *Ladinsky* to this Court and how it came to pass. I also recall that afternoon/evening and the following days being very harried and emotionally taxing, which I believe contributed to my incomplete recollection of the call. In particular, immediately following the call, I had calls with each of the *Ladinsky* Plaintiffs in very short succession. Each of these calls was challenging, given the immense pressure the Plaintiffs were under from the Act's impacts on their personal freedoms and their role as plaintiffs in the litigation. And the fact

8

that our clients could face significant criminal charges if we were unsuccessful in challenging the Act compounded my own concerns for them. Following the calls, I had little sleep over the next seventy-two hours as we set out to identify new plaintiffs—including countless phone calls with potential plaintiffs—and prepare the pleadings for *Eknes-Tucker*.

19. While I believe these events contributed to my incomplete recollection of the call, I want to reiterate that my testimony—then and now—is as forthcoming and accurate as I can be, as my sole purpose was to provide the Panel and this Court with the information it needed to complete this inquiry. Further, I am not aware of any material discrepancies between my testimony and the testimony of the other Respondents during the Panel's proceedings.

20. Once the team turned their attention to *Eknes-Tucker*, nothing in the structure and functioning of the NCLR team changed. As with other matters of litigation strategy, I was not a decision-maker regarding the final selection of plaintiffs or the venue for filing the *Eknes-Tucker* case. Further, I was not aware of this Court's April 18, 2022 order in *Walker* expressing concerns about judge-shopping when *Eknes-Tucker* was filed (*Walker*, 5:22-cv-480-LCB (N.D. Ala.), ECF No. 24).

21. The Court's Supplemental Order to Show Cause (ECF No. 482) orders that I account for six findings in the Panel's Final Report. As discussed

9

above, the Panel found that I was an individual who had knowledge and input in *Ladinsky* and *Eknes-Tucker*—not a leader or decision-maker. As a result, I did not make any decisions to voluntarily dismiss *Ladinsky* under Rule 41, coordinate the dismissal with the *Walker* team, or comment to the media about that decision. *See* Supplemental Order at 10–11 (citing Final Report at 51–52). I also did not make any decisions to file *Eknes-Tucker* or to do so with new plaintiffs in the Middle District of Alabama. *See id.* (citing Final Report at 51–52).

22. Although I participated in "discussions about how judges were favorable or unfavorable," I did not do so "in the context" of me deciding whether to recommend dismissing *Ladinsky* and filing *Eknes-Tucker*. *Id.* at 10 (citing Final Report at 51–52). First, most of these discussions, including the discussions with the *Walker* team and my email to Carl Charles described in the Final Report, occurred before the reassignment of *Ladinsky* to this Court. *See* Final Report at 25, 36. Second, as a non-decision-maker, I was not responsible for making the decision to dismiss *Ladinsky* and file *Eknes-Tucker*. Third, the input that I provided on this issue to Mr. Minter was to recommend that the team not dismiss *Ladinsky*.

23. The Court also ordered that I address the "claim 'that the dismissal was because Judge Axon did not explain the reassignment of *Ladinsky* and [the Court] set *Walker* for a status conference in Huntsville on April 18.'" *Id.* at 12

10

(quoting Final Report at 52). Because I was not a leader or decision maker, I can only testify to my understanding of the decision-makers' reasons for dismissing *Ladinsky*, which I did truthfully and to the best of knowledge.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This declaration was executed on the 10th day of May, 2024, in San Francisco, California.

_____
Asaf Orr, Esq.
California Bar No. 261650

11