UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, *et al.*, <br>     Plaintiffs, <br> and <br> UNITED STATES OF AMERICA, <br>     Plaintiff-Intervenor, <br> v. <br> STEVE MARSHALL, *et al.*, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 2:22-cv-184-LCB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## RESPONSE TO ORDER TO SHOW CAUSE AND MOTION TO DISMISS MICHAEL SHORTNACY

COMES NOW Respondent Michael Shortnacy ("Shortnacy"), in response to the Court's May 1, 2024 Supplemental Order to Show Cause (doc. 480), and respectfully offers the reasons why he should not be sanctioned for the acts outlined in the Panel's Final Report of Inquiry ("Report of Inquiry"). The evidence presented to the Panel, including Respondents' *in camera* declarations and oral testimony, does not support an individual finding of bad faith misconduct against Shortnacy. Shortnacy therefore respectfully requests that the Court dismiss and release him from any further proceedings resulting from or related to the preliminary factual findings in the Report of Inquiry. In support, Shortnacy states as follows:

Case 2:22-cv-00184-LCB-CWB   Document 515   Filed 05/13/24   Page 2 of 17


## **LEGAL STANDARDS**

In its Supplemental Order to Show Cause, this Court outlined several legal standards implicated by the Panel's Report of Inquiry. Doc. 480 at 5-10. Shortnacy supplements those standards to note the following:[1]

The inherent powers standard is a subjective bad-faith standard. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). Subjective bad faith "is not the same as simple recklessness, which can be a starting point but requires something more to constitute bad faith." *Id*. at 1225. Inherent powers sanctions are appropriate "'to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously wantonly, or for oppressive reasons.'" *Id*. at 1224 (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 383 (2013)). A finding of subjective bad faith is warranted "'where an attorney

---

[1] Shortnacy also adopts and incorporates as if fully set forth herein Respondents' Post-Hearing Brief filed by Respondents Eagan and Doss (doc. 356), which Shortnacy joined (doc. 366). The Post-Hearing Brief argues that Respondents' actions were based on the well-founded belief that Rule 41(a)(1)(A)(i) conferred an unfettered right to dismiss. It also demonstrates why *In re: BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003) is not applicable to the Court's consideration of alleged judge-shopping. Many of these arguments were raised before the Panel in a Motion to Terminate Inquiry. *In re Amie Adelia Vague, et al.*, 2:22-mc-3977-WKW, Doc. 32. The Panel denied that motion without fully addressing what Shortnacy and other Respondents believe to be dispositive decisional authorities. As a result, neither the Panel nor this Court has addressed the dispositive impact of Rule 41 on these proceedings.

Additionally, Rule 11 imposes a different standard than the subjective bad faith standard applicable under the inherent powers doctrine. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). Any distinction is irrelevant with respect to Shortnacy because he did not present any signed paper to the Court for an improper purpose, which is required under a Rule 11 analysis.

knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Id*. at 1225 (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). "The inherent power must be exercised with restraint and discretion," and a court considering sanctions "should look for disobedience." *Id*. at 1225.

Although the Eleventh Circuit has not explicitly addressed the appropriate evidentiary standard to apply in considering sanctions under the subjective bad faith standard, courts within the Eleventh Circuit have applied the clear and convincing standard.[2] Clear and convincing evidence "falls on the spectrum between preponderance of the evidence and beyond a reasonable doubt." *J.C. Penney*, 2021 WL 3421394 at *2 (citing *Nejad v. AG, Ga.*, 830 F.3d 1280, 1289 (11th Cir. 2016)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *JTR Enterprises*, 697 Fed. Appx. at 387.

---

[2] *See e.g.*, *JTR Enterprises*, 697 Fed. Appx. 976 (11th Cir. 2017) (declining to impose sanctions where bad faith was not established by clear and convincing evidence); *Fletcher v. Ben Crump Law, PPLC*, Case No. 5:21-cv-01433-LCB, 2023 WL 3095571 (N.D. Ala. April 26, 2023) (finding clear and convincing evidence that attorney acted in bad faith and violated certain Alabama Rules of Professional Conduct); *J.C. Penney Corporation, Inc. v. Oxford Mall, LLC*, Case No. 1:19-cv-560-KOB, 2021 WL 3421394 (N.D. Ala. Aug. 5, 2021) (noting the lack of guidance from the Eleventh Circuit, but applying the clear and convincing standard out of an abundance of caution), *aff'd,* No. 22-12461, 2024 WL 1904569 (11th Cir. May 1, 2024) (noting that neither party challenged the clear and convincing standard on appeal); *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, Case No. 2:18-cv-01479-KOB, 2020 WL 2308319 (N.D. Ala. May 8, 2020) (same).

## ARGUMENT

The Court's Supplemental Order to Show Cause directs Shortnacy to show cause why he should not be sanctioned for impermissible judge-shopping and for misrepresenting or otherwise failing to disclose key facts during the Panel's inquiry.[3] Doc. 480 at 10-12. The Panel's Report of Inquiry did not make <u>any</u> specific findings of bad faith misconduct against Shortnacy—much less any findings that were supported by clear and convincing evidence. *In re Amie Adelia Vague, et al.*, 2:22-mc-3977-WKW, Doc. 70. As the Panel stated in its November 3, 2023 order, the Report of Inquiry contained only preliminary findings of fact that this Court may "accept[], reject[], or modify[] in whole or in part…." Doc. 99. Below, Shortnacy demonstrates that the evidence presented to the Panel does not warrant any finding of bad faith misconduct or sanctions against him. Shortnacy therefore respectfully urges this Court to release him from any further proceedings.

---

[3] Shortnacy and other Respondents filed a Joint Motion for Clarification and Objection to Order to Show Cause, which asserted that the Court's original Order to Show Cause (doc. 406) did not give each Respondent notice of what specific rule he or she has allegedly violated and how he or she violated it. Doc. 423. The Court's Supplemental Order to Show Cause suffers from the same infirmity because it describes the potentially sanctionable conduct in vague, collective terms. For example, Section III(b) still impermissibly requires Shortnacy to guess at which portions of the Panel's report "implicat[e] either his credibility or any discrepancies between his own oral and written testimony and the oral and written testimony of all other attorneys who testified before the Panel." Doc. 480 at 12. Shortnacy adopts and incorporates that motion as if fully set forth herein. Shortnacy also adopts and incorporates the due process arguments asserted in Respondents' Post-Hearing Brief (doc. 356) and the Objection to Supplemental Orders to Show Cause (doc. 493) as if fully set forth herein.

## I. THE EVIDENCE BEFORE THE PANEL DOES NOT SUPPORT A FINDING OF BAD FAITH MISCONDUCT OR SANCTIONS AGAINST SHORTNACY FOR ENGAGING IN JUDGE-SHOPPING.

Shortnacy should be dismissed from further disciplinary proceedings because he was not a decision-maker driving any of the alleged acts underlying the Panel's concerns about impermissible judge-shopping—namely, the voluntary dismissal of *Ladinsky v. Ivey*, 5:22-cv-447-LCB (N.D. Ala.) ("*Ladinsky*") and the filing of *Ecknes-Tucker v. Ivey*, 2:22-cv-184-LCB (M.D. Ala.) ("*Ecknes-Tucker*") in the Middle District of Alabama. Further, he testified that from his perspective the reasoning behind the decision to voluntarily dismiss *Ladinsky* after the *Walker* dismissal was motivated by multiple factors beyond counsel's assumed prospects of success before this Court. Those factors included the following: (a) what he and other *Ladinsky* counsel perceived as an irregular case reassignment, (b) the desire to retain their status as the first-filed case in light of the transfer to the judge presiding over the second-filed case, and (c) the good faith belief that counsel had a right to voluntary dismissal under Rule 41 of the Federal Rules of Civil Procedure.[4]

The Panel did not make any individual findings of misconduct against Shortnacy or categorize him as a leader or decision-maker. Report of Inquiry at 50-

---

[4] The Panel compelled testimony from Respondents concerning counsel's private discussions, despite objections that those discussions are confidential and subject to the attorney-client privilege and the work product doctrine. *See In re Amie Adelia Vague, et al.*, 2:22-mc-3977-WKW, Motion for Protective Order (doc. 27) and Order denying the same (doc. 41).

52. Instead, the evidence indicates that he is an out-of-state attorney, who in good faith, relied on the judgment of co-counsel more familiar with local judges and procedures. The actions of others, if wrongful, cannot and should not be imputed to Shortnacy. *See United States v. Shaygan*, 652 F.3d 1297, 1319 (11th Cir. 2011); *see also JTR Enterprises, LLC v. Columbian Emeralds*, 697 Fed. Appx. 976, 987 (11th Cir. 2017) ("Bad faith is personal to the offender. One person's bad faith may not be attributed to another….").

### A. Shortnacy Was Not a Decision-Maker Behind the Voluntary Dismissal of *Ladinsky* or the Filing of *Ecknes-Tucker* in the Middle District.

The Panel recognized that respondents had different "roles in the decision-making process" and categorized several as "leaders and decision-makers" in the topic areas underlying its preliminary findings of misconduct. Report of Inquiry at 11-12. The Panel correctly omitted Shortnacy from this category. *Id*. at 12. The following evidence presented to the Panel supports the conclusion that Shortnacy was not a decision-maker behind the alleged grounds of misconduct identified in the Report of Inquiry:

- At all relevant times, Shortnacy was a partner at King & Spalding LLP's ("K&S") Los Angeles office. Shortnacy Declaration ¶ 1.[5] Along with K&S

---

[5] On December 12, 2023, Shortnacy left K&S to join Shook, Hardy & Bacon, L.L.P in Los Angeles, California. Doc. 389, Motion to Withdraw. This Court granted his motion to withdraw as counsel for the *Ecknes-Tucker* plaintiffs on February 21, 2024. Doc. 404.

6

partner Brent Ray and associate Abigail Hoverman Terry,[6] Shortnacy represented the *Ladinsky* plaintiffs and then the *Ecknes-Tucker* plaintiffs on a pro bono basis. *Id.* ¶¶ 1, 4. The K&S lawyers are not admitted to practice law in Alabama, and Shortnacy had never appeared in any Alabama court. *Id.* ¶¶ 5, 9(h). Unlike some other members of *Ladinsky* counsel who regularly practiced civil rights litigation, Shortnacy's law practice was "focused on the defense of consumer class actions and regulatory enforcement actions relating to consumer protection statutes, primarily in the automotive and consumer product industries." *Id.* ¶ 4; August 4, 2022 Tr. at 226:1-7 (referencing his experience defending MDL litigation and class actions "that are filed by competing plaintiffs' firms routinely and…fighting with each other for primacy").

- Because Shortnacy grew up in Birmingham, he was involved in proposing and selecting Lightfoot Franklin & White ("Lightfoot") as co-counsel. *Id.* ¶ 7(a); August 4, 2022 Tr. at 209-10. K&S lawyers described Lightfoot as "local counsel plus" and "equal partners" in the litigation. August 4, 2022 Tr. at 152:8-21, 191:10-14.

- Shortnacy and other Respondents testified that Lightfoot, and sometimes the advocacy groups, acted as the primary leaders and decision-makers with regard to the following: (a) sharing information and opinions of judges in the Northern District of Alabama,[7] (b) the decision to dismiss

---

[6] Ray and Terry have already been released from further proceedings. *See In re Amie Adelia Vague, et al.*, Case No. 2:22-mc-3977-WKW, Doc. 70 at 50-52 (omitting Ray from its preliminary findings of fact) and Doc. 59 (terminating its inquiry against Terry and releasing her from further proceedings). They continue to represent the *Ecknes-Tucker* plaintiffs.

[7] Shortnacy Declaration ¶ 6(h) ("After the *Ladinsky* case was assigned to Judges Cornelius and Axon, I asked Abigail Terry to work with K&S library staff to pull background information on each of the judges. We also pulled this background information on Judge Burke, but not until after *Ecknes-Tucker* was filed and transferred to Judge Burke. It is my standard practice to pull this information for any judge to whom my cases are assigned."); *Id.* ¶ 9(h) ("Because I have not practiced in Alabama or in its federal courts before, I did not have any opinion of Judge Burke and deferred to the advice and knowledge from the lawyers at Lightfoot and the Advocacy Groups that were more experienced in practicing there."); Terry Declaration ¶ 13(g) (same); August 4, 2022 Tr. at 179-82 (Ms. Terry's recollection of Lightfoot's assessment of certain judges in the Northern District of Alabama); November 3, 2022 Tr. at 32:7-16, 61:6-9 (Respondent Orr's recollection of the same); *Id.* at 80-81 (Ms. Stone's recollection of the same); *Id.* at 118-19 (Respondent McCoy's recollection of the same).

7

*Ladinsky*,[8] and (c) whether to file *Ecknes-Tucker* in the Southern Division of the Northern District of Alabama or the Middle District of Alabama and who to name as plaintiffs.[9] Because Shortnacy and the other K&S lawyers were not admitted to practice law in Alabama and had never appeared in any Alabama court, they testified that they relied on local counsel's assessments regarding the assigned judges and the operation of the random case assignment process and the first-filed rule. Shortnacy did not have any independent knowledge of Judge Burke outside the opinions of co-counsel. August 4, 2022 Tr. at 179-82, 205:7-15, 218:13-23 (Shortnacy testified: "I don't practice here. I don't know—now I do—several judges in the State of Alabama on the federal bench. I didn't before. And so I…have [in Lightfoot] a very strong and capable and reputable firm whose legal judgment I trust").

- Shortnacy's declaration and the K&S lawyers' oral testimony demonstrates that Shortnacy did not assume a decisional role on the April 13 call involving *Walker* counsel. On that day, he participated in a video call between *Walker* and *Ladinsky* counsel to discuss *Walker* counsel's response to Judge Marks' Order to Show Cause why *Walker* should not be transferred to the Northern District of Alabama. Shortnacy Declaration ¶ 8. He took no position on where *Walker* should have been assigned or transferred. *Id*. ¶ 8(c); August 4, 2022 Tr. at 213-14.

- Additional evidence confirms he did not assume a decisional role on the Good Friday, April 15 call. While standing on a street corner in Los

---

[8] August 4, 2022 Tr. at 218:13-23 (Shortnacy's testimony regarding his reliance on local counsel); November 3, 2022 Tr. at 270:16-23 (Ms. Warbelow's recollection that Respondents Levi, Minter, and Lightfoot were the primary decision-makers behind the dismissal of *Ladinsky*); November 3, 2022 Tr. at 158-59 and Minter Declaration ¶ 6 (Respondent Minter's testimony that he suggested dismissal and the K&S attorneys were not driving these decisions); *Id*. at 49:13-19 (Respondent Orr's testimony that Respondent Minter initially suggested dismissal).

[9] Shortnacy Declaration ¶ 7(d) (stating he was not involved "in the final decision-making process regarding which parties to name or where to file that case. I did not make the decision regarding who to include as plaintiffs."); August 4, 2022 Tr. at 183-84 (Ms. Terry's recollection that the original intent was to file *Ecknes-Tucker* in the Northern District, but others decided to file in the Middle District); *Id*. at 197:3-7 (Mr. Ray's recollection that Lightfoot "wanted to seek a random judge assignment in a new case with new plaintiffs because they felt that something was amiss"); *Id*. at 232:8-21 (Shortnacy's recollection of the same); November 3, 2022 Tr. at 158-59 (Respondent Minter's testimony that the K&S attorneys were not driving these decisions).

Angeles, he participated by telephone in a video call to discuss Judge Axon's order transferring *Ladinsky* to Judge Burke. Shortnacy Declaration ¶ 9(c)-(d). Shortnacy, the other K&S lawyers, and the Lightfoot lawyers testified that Shortnacy suggested filing a motion to reconsider the transfer before Judge Axon, but other *Ladinsky* counsel declined under the belief that Judge Axon no longer had jurisdiction. *Id.* ¶ 9(g); August 4, 2022 Tr. at 80:1-17, 169:12-24, 229:11-16, 241:13-20. Shortnacy followed and abided by the opinions and judgment of co-counsel.

- Shortnacy was not involved in the alleged coordination of the *Walker* and *Ladinsky* dismissals. Shortnacy Declaration ¶ 9(k) ("Lightfoot and the Advocacy Groups spoke with *Walker* counsel and our clients…I was not involved in any conversation with *Walker* counsel or with our clients about the dismissal."); August 4, 2022 Tr. at 220:24-25 – 221:1-4 ("I had none of those discussions directly with the coordinating of that fact, but that was a concern that…was expressed in our *Ladinsky* group: That we had an agreement with *Walker* that they would, in fact, dismiss their case for that very reason, that we wouldn't find ourselves with no case and with them with the lead."). Additionally, he was not involved in any post-dismissal comments to the media regarding filing a new lawsuit.

- Shortnacy was not involved in any decision-making process surrounding where to file *Ecknes-Tucker*. August 4, 2022 Tr. at 222:4-13; Shortnacy Declaration ¶ 10 ("I later learned, based on the location of the plaintiffs and defendants named in *Ecknes-Tucker*, Lightfoot and the Advocacy Groups made the decision to file *Ecknes-Tucker* in the Middle District. I was not involved in that decision. That decision was communicated to me after it was made"). Respondent Minter later informed him of the decision to file *Ecknes-Tucker* in the Middle District of Alabama. *Id.* Nevertheless, Shortnacy had a good faith basis to believe venue was proper in the Middle District because he learned from others that the newly named plaintiffs resided in the Middle District. To this day, venue has not been challenged in this lawsuit. Further, Shortnacy did not believe the decision to dismiss and file *Ecknes-Tucker* in the Middle District delayed their pursuit of emergency injunctive relief. On Good Friday, *Ladinsky* counsel was already working on an amended pleading with additional claims and a motion for a preliminary injunction, all with the goal to file early the following week. August 4, 2022 Tr. at 229:19-25. *Ecknes-Tucker* was electronically docketed on Wednesday, April 20, 2022, and the motion for preliminary injunction was filed the following day. This means counsel did

9

- not lose more than a day or two by dismissing and filing a new lawsuit in the Middle District.

- Shortnacy was never admitted *pro hac vice* in *Ladinsky* (Shortnacy Declaration ¶ 5), therefore he did not sign the voluntary dismissal (*id*. ¶ 9(k); *Ladinsky v. Ivey*, Case No. 5:22-cv-00447-LCB, Doc. 15).

The above evidence demonstrates that Shortnacy was not a decision-maker driving the alleged acts related to impermissible judge-shopping identified the Panel's Report of Inquiry. The record conclusively indicates that Shortnacy did not assume a decisional role in these events. Not a single Respondent testified to the contrary. There is no clear and convincing evidence that Shortnacy acted in bad faith, therefore sanctions are not warranted under Section III(a) of this Court's Supplemental Order to Show Cause.

**B.   Shortnacy and Other *Ladinsky* Counsel Consistently Testified that the Decision to Voluntarily Dismiss *Ladinsky* Was Based on Multiple Factors Beyond their Assumed Prospects of Success Before Judge Burke.**

There was no clear and convincing evidence presented to the Panel indicating that Shortnacy acted in bad faith in allowing the voluntary dismissal to proceed. Shortnacy testified that based on his recollection of the Good Friday afternoon group call, the dismissal was motivated by the following: (1) counsel did not "understand the sua sponte transfer [of *Ladinsky*] by Judge Axon to Judge Burke" (August 4, 2022 Tr. at 215:15-232; *see also* Shortnacy Declaration ¶ 9(f)); (2) counsel was concerned they would lose their position as the first-filed case and as lead counsel

10

in light of the transfer (*id.* at 217-218, 228-29; *id.*); (3) counsel believed voluntary dismissal was appropriate under Rule 41 of the Federal Rules of Civil Procedure (*id.* at 217:11-17; *id.*); and (4) other counsel on the call had reservations about how Judge Burke would receive the "politically charged issue on [their] hands" (*id.* at 218:3-6; *id.*).

Shortnacy also discussed several other considerations that influenced his personal view of the decision to dismiss *Ladinsky* on April 15. For example, he testified that "at the time we were making this decision, while Mr. Ray is in Paris, I really relied on my co-counsel. I don't practice here. I don't know—now I do—several judges in the State of Alabama on the federal bench. I didn't before. And so I had in Lightfoot…have a very strong and capable and reputable firm whose legal judgment I trust." August 4, 2022 Tr. at 218:13-20. Brent Ray is Shortnacy's law partner, but he did not have the benefit of Ray's input over the Easter holiday weekend. Shortnacy also testified that the late Friday afternoon timing of Judge Axon's transfer order required counsel to make a quick decision: "We were on a Friday night, on Good Friday, without a lot of good options because we believed that dismissal was an available remedy for us…." *Id.* at 217:11-13.

From Shortnacy's perspective, counsel had a good faith belief that voluntary dismissal of both *Walker* and *Ladinsky* was an available remedy to preserve *Ladinsky*'s status as the first filed case in light of what counsel at the time perceived

11

to be an irregular case reassignment. Because there is no clear and convincing evidence that Shortnacy attempted to manipulate the random case assignment procedures for the U.S. District Courts for the Northern and Middle Districts of Alabama, Shortnacy respectfully requests that he be dismissed and released from further proceedings.

## II. SHORTNACY DID NOT MISREPRESENT OR OTHERWISE FAIL TO DISCLOSE KEY FACTS DURING THE PANEL'S INQUIRY.

The Court ordered Shortnacy to show cause why he should not be "sanctioned for misrepresenting or otherwise failing to disclose key facts during the Panel's inquiry." Doc. 480 at 11, Section III(b). In doing so, Respondents must address "any findings in Section IV of the Panel's Report implicating either his credibility or any discrepancies between his own oral and written testimony and the oral and written testimony of all other attorneys who testified before the Panel." *Id*. at 12. The Court did not specifically identify any discrepancies between Shortnacy's and other Respondents' testimony, but asked Shortnacy to address the Panel's preliminary finding that it was misconduct for all counsel "to claim that the dismissal was because Judge Axon did not explain the reassignment of *Ladinsky* and [the Court] set *Walker* for a status conference…." *Id*.

As an initial matter, Shortnacy truthfully testified on all matters to the best of his recollection both in his written and oral testimony. As stated in Shortnacy's Motion for Leave to Submit Additional Evidence, "Shortnacy's prior declaration and

testimony accurately represents his recollection of his limited role in the events and circumstances outlined in the Panel's Report of Inquiry." Doc. 434. Other Respondents' testimony is consistent with his own. *See* Section I. For the reasons explained below, there is no (much less clear and convincing) evidence supporting a sanction against Shortnacy for misrepresenting or otherwise failing to disclose facts to the Panel.

Shortnacy and other *Ladinsky* counsel consistently testified that the reasons explained in Section I(B) contributed to the decision to dismiss *Ladinsky* the evening of Good Friday, April 15, 2022. Respondents were subject to a modified version of Federal Rule of Evidence 615, yet they testified that each of these reasons factored into the decision to voluntarily dismiss *Ladinsky*. *See* August 4, 2022 Tr. at 77:8-22, 80-81, 93:10-25, 135:25 – 136:1-18 (Respondent Eagan); *Id*. at 241:7-12, 242-243, 256:14-22 (Respondent Doss); November 3, 2022 Tr. at 54:11-17, 55:1-8, 69:23-25-70:1-3 (Respondent Orr); *Id*. at 107:20-25, 186:12-20, 187:4-19, 189:18-25-190:1-5 (Respondent McCoy); *Id*. at 139:18-23, 147:1-19, 150:5-11, 156:14-24, 162:77-22, 172:7-22 (Respondent Minter); November 4, 2022 Tr. at 19-21, 42:15-23 (Respondent Levi).

The Panel imposed the sequestration order "to get unrehearsed, unvarnished testimony from each person of what their recollection was and not have that

recollection blurred by what they hear[d] from someone else." August 4, 2022 Tr. at 271:3-6. That is exactly what the Panel received.

Nevertheless, the Panel discredited and rejected Respondents' testimony and instead found that the sudden reassignment order from Judge Axon to Judge Burke (which threatened the first-filed priority of *Ladinsky*) played no role in the conversations resulting in the voluntary dismissals of both *Walker* and *Ladinsky*. In other words, all Respondents must have misled the Panel. Specifically, the Report of Inquiry states "[t]hat counsel wanted to avoid Judge Burke is the only logical explanation of these and the other events discussed in this opinion, including the degree, speed, and substance of counsel's reaction to the transfer order." Report of Inquiry at 42. Respectfully, that finding is not supported by any evidence, particularly in light of all Respondents' consistent testimony to the contrary.

Additionally, the Court indicated at the March 19, 2024 hearing that it was concerned about the testimony of a "junior associate" who told "the panel things…that none of the respondents happened to mention…." March 19, 2024 Tr. at 10:5-8. Shortnacy believes the Court was referring to the oral testimony of K&S associate Terry, who testified that she recalled Lightfoot indicating "there was a zero percent chance that Judge Burke would grant" the plaintiffs' preliminary injunction motion. August 4, 2022 Tr. at 179:21-23-180:7-8. Although the other Respondents

14

did not frame this opinion in terms of numerical odds,[10] Respondents consistently testified that the lawyers who frequently practiced in the Northern District of Alabama viewed Judge Burke to be a less desirable draw for the case than Judge Axon. The Panel also noted the consistency of Respondents' testimony on this point:

> The attorneys' testimony was consistent: Judge Axon was viewed as a good draw for their cases and Judge Burke was not. (*See, e.g.*, Shortnacy Dec. at 10, ¶ 9.f; Hoverman Terry Dec. at 9-10, ¶ 13.e; Levi Dec. at 12-13, ¶ 9; Warbelow Dec. at 78, ¶ 18; Soto Dec. at 60, ¶ 4; Aug. 4 Hearing Tr. at 77-79, 179, 218, 249; Nov. 3 Hearing Tr. at 151, 185-87, 191-94, 269).

Doc. 70 at 34. Ms. Terry is the only individual that recalled the "zero percent chance" statement, yet the Panel appears to have credited her testimony over other Respondents to establish a fact. The percentage characterization is immaterial because all Respondents who were asked consistently conceded in their testimony that local counsel viewed Judge Burke to be a less desirable draw.[11]

Shortnacy reviewed his and other Respondents' written and oral testimony and did not identify any material discrepancies. If the Court perceived any specific

---

[10] The Panel asked Respondents Orr (November 3, 2022 Tr. at 59-60), Minter (*id.* at 149:22-25-150:1-11, 151:3-17), McCoy (*id.* at 195:1-10), Ms. Warbelow (*id.* at 269:4-17; 276:3-11), and Respondent Levi (November 4, 2022 Tr. at 33:16-23) some variation of this question. They all testified they did not recall anyone characterizing the odds of winning a preliminary injunction motion before Judge Burke. The Panel asked Respondent Doss to assign a percentage to his assessment, but he stated simply that the concern was Judge Burke would be "less receptive." (August 4, 2022 Tr. at 248:12-25-249:1-10).

[11] The Panel never asked Shortnacy whether he recalled a "zero percent chance" statement. To avoid any doubt, he does not.

inconsistencies during its own review or if the Court requires additional information, Shortnacy will respond accordingly.

## CONCLUSION

There is no evidence, much less clear and convincing evidence, before this Court suggesting that Shortnacy acted with subjective bad faith in any respect or misrepresented any fact to the Panel or the Court. Sanctions against Shortnacy are therefore not supported by the record. Shortnacy respectfully requests that he be dismissed and released from further proceedings resulting from or related to the preliminary factual findings in the Panel's Report of Inquiry.

Respectfully submitted,

*/s/ Bruce F. Rogers*
Bruce F. Rogers
Elizabeth N. Terenzi

BAINBRIDGE, MIMS, ROGERS & SMITH, LLP
600 Luckie Drive, Suite 415
Birmingham, Alabama 35223
Telephone: (205) 879-1100
Facsimile: (205) 879-4300
Email:      brogers@bainbridgemims.com
            bterenzi@bainbridgemims.com

*Counsel for Michael Shortnacy*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.

*/s/ Bruce F. Rogers*
OF COUNSEL