# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> and ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff-Intervenor, ) <br> ) <br> v. ) <br> ) <br> STEVE MARSHALL, in his official ) <br> capacity as Attorney General of the ) <br> State of Alabama, et al., ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:22-cv-00184-LCB <br> FILED UNDER SEAL |

### KATHLEEN HARTNETT'S SUPPLEMENTAL DECLARATION

I, Kathleen Hartnett, declare:

1. I submit this Declaration in connection with my Response to the Supplemental Order to Show Cause in this matter.

2. I repeat and reaffirm the testimony in my prior Declaration and oral testimony before the Panel and do not repeat it here. Rather, this Supplemental Declaration is intended to further elaborate upon and/or clarify certain factual issues

raised by the Panel's Report and this Court's Supplemental Order to Show Cause ("Show Cause").

3. The matters stated herein are based upon my personal knowledge and are true to the best of my knowledge.

**Call to Judge Thompson's Chambers (Show Cause at 12-13)**

4. I learned that Carl Charles called Judge Thompson's chambers on April 12 because I was following email traffic among *Walker* counsel about the status of *Walker* while I was in a deposition preparation session that day with a witness in a different case. However, I did not (1) participate in this call, (2) direct or advise Mr. Charles to make this call, or (3) provide any input on whether to make the call or what to say. (In stating these facts, I do not mean to suggest that Mr. Charles's call was improper in any way.)

**April 13 Conference Call (Show Cause at 13)**

5. The Final Report of Inquiry describes "a conference call that started at 5:00 p.m. on April 13, 2022" that, according to the Panel, potentially involved a discussion of "an argument that *Ladinsky* should be transferred to the Middle District and consolidated with *Walker* before Judge Thompson." *Vague*, Doc. 70 at 23.

6. I was not on this April 13, 2022 call, and I have reviewed contemporaneous records to confirm that I was not on this call. I was in a deposition that day in a different case. Because I was not on the call, I do not have any direct

Page **2** of **7**

knowledge about what was discussed on the call, including the purported discussion of *Ladinsky* being transferred to the Middle District of Alabama to be consolidated with *Walker* in front of Judge Thompson.

**April 15 Call(s) (Show Cause at 13)**

7. The Final Report of Inquiry describes another "conference call" that occurred "[l]ess than one-half hour after Judge Axon's transfer order was entered" among members of both the *Walker* and *Ladinsky* teams. *Vague*, Doc. 70 at 31; *see* Show Cause at 13 (alleging "numerous and wide-ranging discussions about how judges were favorable or unfavorable in the context of deciding whether to dismiss and refile their cases" and "series of phone conferences in which counsel discussed a number of matters, including their prospects in front of the Court and that the Court was a bad draw."). The Final Report of Inquiry states that I was on this call. I was not on a call that included multiple members of both the *Walker* and *Ladinsky* teams after Judge Axon transferred *Ladinsky* to Judge Burke. Nor am I aware of any such call occurring. I was unable to locate any statement in the testimony cited in the Final Report of Inquiry that says that I was on a call that included multiple members of both the *Walker* and *Ladinsky* teams after Judge Axon transferred *Ladinsky* to Judge Burke on April 15.

8. I was not involved in any calls with lawyers from the *Ladinsky* and *Walker* teams on April 15 that involved discussions "about how judges were

Page **3** of **7**

favorable or unfavorable <u>in the context</u> of deciding whether to dismiss and refile" or about the "prospects in front of Judge Burke and that he was a bad draw." *Vague*, Doc. 70 at 51 (emphasis in original).

9. Specifically, I was not on a call where someone reportedly said that there was a "zero percent chance" of success in front of Judge Burke. Nor did I ever hear anyone make such a comment.

10. As I stated in my prior declaration, I spoke to *Ladinsky* counsel twice on April 15. These two calls were the first time that I spoke to *Ladinsky* counsel at any time during this litigation. First, "[o]n April 15, 2022, at around 2:00 PM CT, I and other representatives of *Walker* Counsel participated in a call with representatives of *Ladinsky* Counsel where we discussed filing a motion to consolidate our cases in *Ladinsky* and potential coordination of our strategies going forward." Hartnett Decl. at 27. This was prior to Judge Burke's Order setting a Monday morning hearing and prior to Judge Axon's transfer Order. *See id.* Potential dismissal was not discussed on this call. *See id.*

11. Later on April 15, I participated in a Zoom call with members of the *Walker* team. The call was originally about a different case (a case also involving several *Walker* team members), but morphed into a call about the emerging circumstances in *Walker*. During that call, *Walker* counsel, among themselves, eventually discussed potential dismissal.

12. At some point during our *Walker* Zoom call that Friday afternoon, I stepped out of the Zoom call and had a one-on-one phone call with Shannon Minter from *Ladinsky* Counsel. As I previously testified, this call occurred after the transfer of *Ladinsky* and prior to both teams' dismissals. Hartnett Decl. at 29.

13. I stated in my prior Declaration that "I reported this information [about the transfer of *Ladinsky*] back to counsel in both *Ladinsky* and *Walker*, in light of our discussions that day about consolidating our cases before Judge Axon." Hartnett Decl. at 29. I reported this information to *Ladinsky* and *Walker* counsel via email, not on a conference call. I was not on any conference call after the transfer of *Ladinsky* with both the *Walker* and *Ladinsky* counsel.

14. Jennifer Levi testified that she and I also had a discussion on that Friday afternoon about dismissing the two cases. I do not recall having a discussion with Ms. Levi, but her description of the purported discussion is materially similar to the discussions I had with Shannon Minter. While I have no direct recollection of talking to Ms. Levi, it is possible that she may have been on my call with Mr. Minter.

**Voluntary Dismissal (Show Cause 13, 14)**

15. In both my first Declaration and my testimony before the Panel, I discussed my thought process and reasoning for voluntarily dismissing *Walker*. I have reviewed my Declaration and testimony, and I reaffirm that they accurately describe my honestly-held beliefs and opinions on April 15, 2022.

**Client Communication (Show Cause 14)**

16.     Within the *Walker* team, I did not have the role of communicating directly with our clients. Other members of the team, primarily from the advocacy groups, took on that role.

17.     My understanding is that members of the *Walker* team consulted with our clients the evening of Friday, April 15, 2022 about the voluntary dismissal.

18.     To date, none of the clients have filed bar complaints against me, sued me for malpractice, or otherwise made any type of complaint about the propriety of the voluntary dismissal of *Walker*.

19.     When the *Walker* team decided to voluntarily dismiss, I believed that we needed to act quickly because of the exigency of the circumstances. The defendants could have filed an answer at any time and removed our ability to file a voluntary dismissal.

**Concluding Statement**

20.     In closing, I accept responsibility for my actions and deeply regret that my actions created an appearance to the Court of impropriety and judge shopping. At no time did I engage in anything I believed to be misconduct, let alone intentional or bad faith misconduct. Rather, at all times I acted in good faith, sought to advance the best interests of my clients in an extremely chaotic and condensed period of litigation, and believed that I was acting well within existing rules and standards. I

also have told the truth at all times in these proceedings, which have taken a significant toll on me, my family, and my practice of law.  I apologize to the Court for what has resulted from my conduct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: May 8, 2024.
Oakland, California

/s/ Kathleen Hartnett
Kathleen Hartnett