# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

BRIANNA BOE *et al.*,                  )
                                       )
    *Plaintiffs*,                  )
                                       )
and                                    )
                                       )
UNITED STATES OF AMERICA,              )
                                       )
    *Plaintiff-Intervenor*,        )
                                       )
v.                                     )   No. 2:22-cv-00184-LCB-CWB
                                       )   Hon. Liles C. Burke
STEVE MARSHALL, in his official        )
capacity as Attorney General of the    )
State of Alabama, *et al.*,            )
                                       )
    *Defendants*.                  )

## DEFENDANTS' REDACTED RESPONSE TO
## PRIVATE PLAINTIFFS' MOTION TO STAY (DOC. 489)

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... i

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ............................................................................... 1

LEGAL STANDARD .......................................................................... 4

ARGUMENT ...................................................................................... 6

    I.    Plaintiffs Show No Likelihood of Success ................................... 6

    II.   Plaintiffs' Indefinite Stay Will Impede Judicial Economy ........... 8

    III.  A Stay Will Severely Prejudice Defendants And The Public, While Plaintiffs Point To Scant Harm From Continuing Proceedings .................11

    IV.  Proceeding To Final Judgment Would Assist Appellate Courts ............... 13

CONCLUSION ................................................................................... 20

CERTIFICATE OF SERVICE .............................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Arkin v. Innocutis Holdings, LLC*,
    176 F. Supp. 3d 1313 (M.D. Fla. 2016)..............................................................8

*Crimson Yachts v. M/Y Betty Lyn II*,
    No. 08-cv-0334-WS-C, 2010 WL 2683341 (S.D. Ala. July 1, 2010)............5, 13

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
    685 F.2d 1284 (11th Cir. 1982) .........................................................................10

*Democratic Exec. Comm. v. Lee*,
    915 F.3d 1312 (11th Cir. 2019) ............................................................................6

*E.I. du Pont de Nemours & Co. v. Train*,
    430 U.S. 112 (1977)..............................................................................................7

*Gissendaner v. Comm'r, Ga. Dep't of Corr.*,
    779 F.3d 1275 (11th Cir. 2015) ........................................................................7, 8

*Kadel v. Folwell*,
    No. 22-1721, 2024 WL 1846802 (4th Cir. Apr. 29, 2024)...................................6

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936)................................................................................ 4, 10, 13

*Marti v. Iberostar Hoteles y Apartamentos S.L.*,
    54 F.4th 641 (11th Cir. 2022) ............................................................................12

*Martin v. Singletary*,
    965 F.2d 944 (11th Cir. 1992) .............................................................................8

*Mims v. Wal-Mart Stores, Inc.*,
    No. 1:12-cv-244-VEH, 2012 WL 12893691 (N.D. Ala. Apr. 13, 2012) .............4

*Nat'l Football League v. Ninth Inning, Inc.*,
    141 S. Ct. 56 (2020)..............................................................................................7

*Ortega Trujillo v. Conover & Co. Commc'ns*,
 221 F.3d 1262 (11th Cir. 2000) .........................................................................10

*Rescue Army v. Mun. Ct. of City of Los Angeles*,
 331 U.S. 549 (1947)...........................................................................................7

*Rutherford v. McDonough*,
 466 F.3d 970 (11th Cir. 2006) ...........................................................................7

*Sanders v. Wal-Mart Stores E., LP*,
 No. 2:16-cv-637-WKW-GMB, 2017 WL 11747471
 (M.D. Ala. May 18, 2017) .................................................................................13

*Schwab v. Sec'y, Dep't of Corr.*,
 507 F.3d 1297 (11th Cir. 2007) .........................................................................8

*SEC v. Spinosa*,
 No. 13-62066-cv, 2015 WL 11181929 (S.D. Fla. Jan. 8, 2015) .........................4

*Taylor v. Illinois*,
 484 U.S. 400 (1988)...........................................................................................20

*Tollefson v. Bergaila & Assocs., Inc.*,
 No. 21-CV-171-DC-RCG, 2022 WL 2782809
 (W.D. Tex. Jan. 19, 2022).................................................................. 5, 8, 10, 12

*United States v. Skrmetti*,
 No. 23-477 (U.S. Feb. 2, 2024) .........................................................................3

*W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*,
 82 F.4th 1068 (11th Cir. 2023) ..........................................................................9

*Waithaka v. Amazon.com, Inc.*,
 No. C19-01320-RSM, 2020 WL 7028945
 (W.D. Wash. Nov. 30, 2020) ..............................................................................5

*Wyatt ex rel. Rawlins v. Sawyer*,
 190 F.R.D. 685 (M.D. Ala. 1999).......................................................................5

**Rules**

11th Cir. R. 35-6. ....................................................................................6

## INTRODUCTION

A few months ago, this Court rejected a stay of litigation sought by the United States. The Court said that "if the Eleventh Circuit grants the Private Plaintiffs' petition for a rehearing en banc or the Supreme Court grants certiorari in *L.W. v. Skrmetti* or *Doe v. Kentucky*, then a stay may well be appropriate. But as long as those petitions remain pending, this case will move forward." Doc. 399 at 1-2. Thus, the Court denied the United States' motion to stay "without prejudice to re-urging" if any of those events happened. *Id.* at 2.

Those events have not happened, but Private Plaintiffs re-urge a stay all the same. What justifies their renewed demand? That "the parties are nearing the end of discovery" and "the dispositive motions deadline and trial-related deadlines" "are now becoming imminent." Doc. 489 at 4. What that has to do with a stay is left unexplained, and was inevitable when the Court denied the last stay motion (and when all parties jointly proposed the deadlines). If anything, that discovery is concluding suggests that the Court should proceed, at least with dispositive motions.

The Court should once again deny a stay. As Plaintiffs point out (at 2), binding Eleventh Circuit precedent sets the standard of review, so there is even less potential legal uncertainty here than in an ordinary case. That standard—rational basis—also makes it likely that the case can be resolved without trial. Proceeding on dispositive motions also resolves Plaintiffs' primary concerns: Getting the case to final

1

judgment quickly and efficiency is in the interest of judicial economy and efficiency and will allow the parties to seek appellate review should they so desire.

Plaintiffs note that higher courts may already be considering the issue. But the Eleventh Circuit's rehearing timeline suggests no grant is forthcoming, but at most non-binding separate writings. And if the appellate court did want to reconsider its recent decision, it could grant initial hearing en banc from an appeal of final judgment. That is no reason to pause these proceedings indefinitely.

As for the Supreme Court, it is true that there are currently petitions pending from appeals of preliminary injunctions. The Court has not acted on those petitions. It is also true that more petitions are likely to follow, perhaps for years to come. Is it Plaintiffs' position that this case must be stayed until all of them have been resolved? Such an indefinite stay would clearly violate Eleventh Circuit precedent. The same is true of an indefinite stay dependent on current petitions. And the Court may even be waiting for a case that has proceeded to final judgment, meaning that a stay here could contribute to delays in hearing from the Supreme Court.

Moreover, even if the Supreme Court were to grant certiorari soon in a similar case, it almost certainly would not issue a decision before next summer. If that happens, discovery in this case would need to be reopened; Private Plaintiffs may have aged out or otherwise encountered changed circumstances, and the science in this area will continue to evolve. Yet even Plaintiffs do not contend that it is *likely* that

the Supreme Court would change the applicable standards. A stay would not be in the interest of judicial economy and efficiency, and it would harm Defendants.

A stay could also hinder development of the law. Alabama has urged the Supreme Court to deny review in the cases pending before it precisely because those cases arise from preliminary injunctions with scant factual records. *See* Br. of Alabama as Amicus Curiae, *United States v. Skrmetti*, No. 23-477 (U.S. Feb. 2, 2024). The defendants in those cases did not receive discovery from WPATH that reveals just how untrustworthy their standards are. They did not depose the President of WPATH, who when asked ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████[1] Indeed, it appears that the *lack* of a factual record in the Sixth Circuit cases is just what makes them so attractive to the United States and other plaintiffs seeking review. But as the State told the Supreme Court, "if and when the Court decides one of these cases, it shouldn't do so based on euphemisms about 'affirming care' and unsupported appeals to 'expert' organizations." Amicus Br. 2. It should do so only once it has a full evidentiary record before it.

That record could be from this case. Plaintiffs brought their case over two years ago, casting uncertainty over Alabama's law while Plaintiffs and the United

---

[1] Ex. 3, Bowers Depo. 252:9-19.

States publicly accused the State of putting children's lives at risk. Now that it's time to support their claims with evidence, Plaintiffs seek an indefinite time-out. It would be easy to view the request as an attempt to hide evidence they don't like from prompt judicial airing. The Court should deny the request. The parties are rounding third base; discovery has finally finished. It is time to end the case.

## LEGAL STANDARD

Like the United States' motion before it, Plaintiffs' motion misstates the legal standard, omitting the relevant stay factors. Though a court has power to stay a case "pending resolution of other litigation," "'the supplicant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Mims v. Wal-Mart Stores, Inc.*, No. 1:12-cv-244-VEH, 2012 WL 12893691, at *2 (N.D. Ala. Apr. 13, 2012) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)). "'Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.'" *Id.* (quoting *Landis*, 299 U.S. at 255). "The right to proceed in court should not be denied except under the most extreme circumstances." *SEC v. Spinosa*, No. 13-62066-cv, 2015 WL 11181929, at *1 (S.D. Fla. Jan. 8, 2015) (cleaned up).

"Because a stay pending appeal would interrupt the ordinary process of judicial review and postpone even further the final resolution of this litigation, it is

considered extraordinary relief for which the moving party bears a heavy burden."
*Wyatt ex rel. Rawlins v. Sawyer*, 190 F.R.D. 685, 689 (M.D. Ala. 1999) (cleaned up). To the extent Plaintiffs base their motion to stay on the Eleventh Circuit's consideration of the petition for rehearing, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (cleaned up).

To the extent Plaintiffs' motion is based on petitions in other cases, courts "determining whether a stay is proper pending the outcome of a separate, unrelated case weigh": "(1) the potentiality of another case having a dispositive effect on the case to be stayed; (2) the judicial economy to be saved by waiting on a dispositive decision; (3) the public welfare; and (4) the hardship/prejudice to the party opposing the stay, given its duration." *Tollefson v. Bergaila & Assocs., Inc.*, No. 21-CV-171-DC-RCG, 2022 WL 2782809, at *1 (W.D. Tex. Jan. 19, 2022) (cleaned up) (collecting cases).[2] None of these factors support Plaintiffs' demanded stay of litigation.

---

[2] Still other courts apply the Supreme Court's stay factors when a party "seeks a stay pending the U.S. Supreme Court's decision on its petitions for writ of certiorari": "(1) a reasonable probability that four Justices would vote to grant certiorari; (2) a significant possibility that the [Supreme] Court would reverse the judgment below; and (3) a likelihood of irreparable harm, assuming the correctness of the applicant's position, if the judgment is not stayed." *Waithaka v. Amazon.com, Inc.*, No. C19-01320-RSM, 2020 WL 7028945, at *2 (W.D. Wash. Nov. 30, 2020); *see Crimson Yachts v. M/Y Betty Lyn II*, No. 08-cv-0334-WS-C, 2010 WL 2683341, at *1 (S.D. Ala. July 1, 2010). These too are addressed in Defendants' discussion below.

# ARGUMENT

## I.   Plaintiffs Show No Likelihood of Success.

To begin, Plaintiffs do not even attempt to show a likelihood that the Eleventh Circuit or the Supreme Court would change the applicable standard. Given that they have the burden of proving the stay factors, that failure is disqualifying. *See Democratic Exec. Comm. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019) ("the party seeking the stay must show more than the mere possibility of success on the merits").

Plaintiffs have no such likelihood. The Eleventh Circuit's decision was issued in August 2023; Plaintiffs' petition for rehearing has been pending for over eight months. The Eleventh Circuit has not even called for a response. *See* 11th Cir. R. 35-6. Instead, the Court granted Defendants' request for a stay of the preliminary injunction. *See* Doc. 147. Given this timeframe, it is highly unlikely that the Eleventh Circuit will grant the petition for rehearing and far more likely that a denial will be accompanied by non-binding separate writings.

As for the pending Supreme Court petitions from other cases, Plaintiffs do not show that it is likely either that the Court will grant any petition *or* that the Court will depart from the Eleventh Circuit's analysis. Plaintiffs allude to a recent Fourth Circuit decision about state health insurance plan coverage, arguing that it shows a "conflict[]." Doc. 489 at 2 (citing *Kadel v. Folwell*, No. 22-1721, 2024 WL 1846802 (4th Cir. Apr. 29, 2024)). But the majority opinion in that case did not even *cite* any

of the cases involving laws like Alabama's. And the Eighth Circuit is rehearing en banc its decision cited by Plaintiffs as the other case giving rise to a conflict. In any event, the Supreme Court has long recognized "the wisdom of allowing difficult issues to mature through full consideration by the courts of appeals." *E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 135 n.26 (1977).

The Supreme Court's inaction on the pending petitions makes sense in light of its preference to consider cases after final adjudication—like this one would soon be. Without a developed record, the Court would not have the "benefit of the precision which would be afforded by proof … made upon trial" or summary judgment. *Rescue Army v. Mun. Ct. of City of Los Angeles*, 331 U.S. 549, 575 (1947); *see Nat'l Football League v. Ninth Inning, Inc.*, 141 S. Ct. 56, 57 (2020) (Kavanaugh, J., statement respecting the denial of certiorari) ("[T]he interlocutory posture is a factor counseling against this Court's review at this time."). As discussed below, Plaintiffs' stay gambit looks like an effort to *deprive* the Supreme Court of a robust record.

Even if the Court did grant certiorari, that action by itself would not warrant a stay. Rather, under Eleventh Circuit precedent, "[u]ntil the Supreme Court issues a decision that actually changes the law," courts "are duty-bound to apply [the Eleventh Circuit's] precedent and to use it and any existing decisions of the Supreme Court." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015); *see Rutherford v. McDonough*, 466 F.3d 970, 977 (11th Cir. 2006) (a "grant

of certiorari does not change the law"). So long as "the law in this circuit" rejects Plaintiffs' position, they cannot show a likelihood of success. *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992); *see also Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007) ("a grant of certiorari is not authority to the contrary of binding circuit precedent"). The Eleventh Circuit thus "disfavors the granting of a stay based on the Supreme Court's grant of certiorari." *Arkin v. Innocutis Holdings, LLC*, 176 F. Supp. 3d 1313, 1314 (M.D. Fla. 2016) (citing *Gissendaner*, 779 F.3d at 1284). As the Eleventh Circuit explained, "it is not our role to preempt Supreme Court action on motions requesting stays pending decisions that Court will make in the future." *Schwab*, 507 F.3d at 1301.

In sum, and especially since Plaintiffs "ha[ve] not articulated what the likelihood is that the Supreme Court grants certiorari, or that the Supreme Court will rule in [their theories'] favor if certiorari is granted," "judicial economy will not be served by waiting an indeterminate amount of time for the Supreme Court to make a decision regarding [the] petition[s]"—or for the Eleventh Circuit to issue what will likely be a denial of rehearing. *Tollefson*, 2022 WL 2782809, at *2.

## II.   Plaintiffs' Indefinite Stay Will Impede Judicial Economy.

Rather than address any of the stay factors specifically, Plaintiffs focus generally on "efficiency and judicial economy." Doc. 489 at 5. But a stay would *threaten* those objectives. If Plaintiffs' stay were granted, consider these scenarios:

1) The Eleventh Circuit takes months—perhaps years—to deny the petition for rehearing en banc. *See W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*, 82 F.4th 1068, 1072 n.3 (11th Cir. 2023) (Rosenbaum, J., dissenting from the denial of rehearing en banc). No change in the law would occur. Most likely, discovery would have to be reopened to address changes in the scientific literature and in Private Plaintiffs' circumstances. Plaintiffs may continue to exit the lawsuit, perhaps threatening the case itself. *See* Doc. 474. Witnesses or counsel may become unavailable. The only result would be inefficiency, more backlog in the federal judicial system, and continued uncertainty about Alabama's law. And if Plaintiffs would then demand that the stay continue until the Supreme Court considered a petition for certiorari from *Eknes-Tucker*, these inefficiencies could mount for years.

2) The Eleventh Circuit grants the petition for hearing and eventually agrees with the panel decision. (Again, Plaintiffs do not even suggest that *disagreement* is likely.) Once again, no change in the law would result, but a practical restart of this case in several years with no "efficiency" benefit at all.

3) Similarly, the Supreme Court grants some pending petition and decides next summer that it agrees with the Eleventh Circuit. Again, no legal change, but years of backtracking and inefficiencies.

4) The Supreme Court denies the pending petitions eventually. A stay here would impose a pointless delay for no reason—and, depending on the timing of the denial, could still require new discovery and motions practice. Perhaps Plaintiffs would then demand a stay each time some case from one of the other 24 states to have passed a similar law involves a petition to the Supreme Court—underscoring the absurdity of their request to subordinate this case at its final stages to other cases still in their infancy.

As these scenarios show, Plaintiffs are wrong to claim without elaboration that "once these petitions are resolved," "the parties will be able to proceed expeditiously with

briefing summary judgment and preparing for trial." Doc. 489 at 7. In reality, a stay would postpone this case and likely send it backwards many months once it restarts.

It is likely for reasons like these that the Eleventh Circuit has expressly admonished that "the interests of judicial economy alone are insufficient to justify" "an indefinite stay." *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1265 (11th Cir. 2000). And a stay is "indefinite or immoderate," *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982), unless it is "so framed in its inception that its force will be spent within reasonable limits" that are known at the time the stay is entered. *Ortega Trujillo*, 221 F.3d at 1264; *see Landis*, 299 U.S. at 256-57 (holding that a stay into "a second year or even more" is "so drastic and unusual" that it "overpasses the limits of any reasonable need"); *Tollefson*, 2022 WL 2782809, at *3 (finding that "the requested stay would be 'immoderate or of an indefinite duration' because there is no guaranteed estimate of how long the [party's] appeal to the Supreme Court will take").

Plaintiffs also warn that "the Court would need to decide summary judgment under a standard of review that is subject to potential change." Doc. 489 at 6. But that is always true. Every case this Court adjudicates is subject to review. If courts routinely paused cases because of "the possibility of a change" in law, *id.*, the judicial system would grind to a halt. Plaintiffs fail to—do not even *try* to—meet their burden of distinguishing this case from the mine run of cases that are decided in the

shadow of "potential" decisions elsewhere. Nor can they show that any change of law is *likely*, so their concerns about judicial economy tied to such a change are unfounded. And again, judicial economy is likely to be *disserved* by a stay that would send this case backwards into repeat discovery and motions practice.

At a minimum, the Court should proceed with dispositive motions, which are due in just weeks. Defendants recently emphasized that the case should proceed at least through summary judgment motions, and this Court agreed: "Right … I don't want to change one thing about our trial track. I still want us to be done on the schedule we are … with the knowledge that … it may be futile and impractical to actually have that trial in August." Doc. 460 at 81 (Mar. 19, 2024 hearing). (Plaintiffs leave out that context from their quotation. Doc. 489 at 5.) Considering summary judgment motions on the standard required by circuit precedent would be straightforward. And moving forward with at least those motions would permit continued assessment of any need to stay trial in light of any actions by the appellate courts, without triggering a premature stay that would disserve judicial economy.

## III.  A Stay Will Severely Prejudice Defendants And The Public, While Plaintiffs Point To Scant Harm From Continuing Proceedings.

The balance of harms and public interest also weigh strongly against an immediate stay of litigation. First, Defendants would be harmed by Plaintiffs' desired indefinite stay. "When evaluating stays, courts must also consider 'the danger of denying justice by delay.'" *Marti v. Iberostar Hoteles y Apartamentos S.L.*, 54 F.4th

641, 651 (11th Cir. 2022). Defendants would "suffer[] an ever-mounting harm from each passing month without an opportunity to present [their] arguments in court." *Id.* There is also a significant danger of mootness from a years-long delay in this case involving minors, risking a restart of the entire case. Witnesses (and knowledgeable counsel) may depart, and the underlying scientific literature will continue to evolve—requiring reconsideration and likely more discovery if the case were stayed. Moreover, the case's very existence casts doubt on the State's enforcement powers and its ability to enact and enforce related legislation. Defendants are already briefing dispositive motions, an effort that would be nullified if the case must restart with discovery and motions practice months or years from now. Defendants deserve their day in court to defend this important law.

Second, for similar reasons, the public interest is in clarity in the law—and prompt federal adjudication. "[S]tay[ing] proceedings every time there is a relevant case pending before the Supreme Court or the [Eleventh] Circuit would not benefit the public welfare." *Tollefson*, 2022 WL 2782809, at *3. "Rather, litigation would often be delayed months or even years, resulting in prejudice to litigants and a significant backlog in the federal docket." *Id.* (cleaned up).

Third, Plaintiffs point to hardly any harm of their own from proceeding. They "chose to bring this lawsuit, and it is [their] responsibility to prosecute [their] claims." *Sanders v. Wal-Mart Stores E., LP*, No. 2:16-cv-637-WKW-GMB, 2017

12

WL 11747471, at *2 (M.D. Ala. May 18, 2017). Briefing dispositive motions and going to trial *on a schedule they agreed to after their petition for rehearing and the pending Supreme Court petitions were filed* is not clear hardship. *See Crimson Yachts*, 2010 WL 2683341, at *3 ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." (cleaned up)). Though Plaintiffs assert that "trial presentations will differ" "depending on" the "standard of review," Doc. 489 at 6, they do not articulate how or why that would matter, or why, if the case does proceed to trial, the same record could not be used to decide the case under any standard of review. And, of course, Plaintiffs conveniently leave out the fact that the current standard mandated by precedent—rational basis review—makes this case easy for the Court to dispose of at summary judgment.

In short, Plaintiffs do not show "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. They cannot identify any hardship that would be resolved by a stay, much less one that outweighs the prejudice to Defendants and the public or the judicial inefficiencies entailed by an indefinite stay.

## IV.    Proceeding To Final Judgment Would Assist Appellate Courts.

It is hard to see the United States' and now the Plaintiffs' stay requests as anything other than an effort to deprive the appellate courts of the ample evidence that accumulated against their positions in discovery in this case. *See* Doc. 393 at 25-26. Discovery has severely undermined Plaintiffs' reliance on the purported

expertise of American medical organizations like WPATH. That body of evidence, unavailable in any other case so far, is critical to proper development of the law in this area. If the Supreme Court decides one of these cases, it should at least have the option to do so on a fulsome record following final judgment.

From the start, Defendants were concerned that the supposed consensus Plaintiffs painted at the preliminary injunction hearing was not as it seemed. Defendants thus sought discovery from WPATH and others, seeking to answer this key question: "Is there evidence indicating that the alleged 'consensus' is not actually based on best scientific practices but, at least in part, on ideology, self-interest, organizational politicking, or other considerations?" Doc. 219 at 10. As Defendants said at the time, "[b]ased on public reporting, there *is* such evidence—or at the very least, there is enough smoke to raise the serious prospect of fire." *Id.* at 11. Granting this discovery, the Court agreed that this evidence "will likely have an immensely important effect on resolution of th[e] central issues" in this case. Doc. 263 at 8.

From discovery, we now know there *was* a fire, at WPATH and elsewhere. The extensive evidence that the positions of WPATH and the others are not based on the best science and warrant no deference will be detailed in Defendants' forthcoming summary judgment motion. For now, Defendants highlight just some of the evidence obtained through discovery proving the point—evidence that is critical to a full airing of the legal issues in any court considering those issues.

From the start, the development of WPATH's vaunted Standards of Care 8 (SOC8) was infected with political and ideological pressures. The scientific evidence played second-fiddle to those pressures. For instance, WPATH engaged a Johns Hopkins evidence team to do a systematic review of the literature for SOC8. The results were poor. ████████████████████████████

████████████████████████████████ ████████████████████

████████████████████████████████████

████████[4] Days earlier, WPATH had rejected the team's request to publish two manuscripts based on systematic reviews it had conducted for SOC8 for failing to comply with WPATH's policy.[5] Among other things, that policy required the Johns Hopkins team to seek "final approval" of the proposed article from an SOC8 leader and "at least one member of the transgender community."[6] According to the WPATH executive council, it was of "paramount" importance "that any publication based on WPATH SOC8 data … not negatively affect the provision of transgender healthcare in the broadest sense"—as defined by WPATH.[7] ████████████

████████████████████ ███████████████████

---

[3] Ex. 2 at 3, 5.
[4] Ex. 2 at 5.
[5] Ex. 1 at 1-2.
[6] Ex. 1 at 6.
[7] Ex. 1 at 13.



---

[8] Ex. 2 at 10.
[9] Ex. 2 at 14.
[10] Ex. 2 at 17.
[11] *Id.*
[12] Ex. 2 at 33 (emphasis added).



---

[13] *Id.*
[14] Ex. 2 at 34.
[15] Ex. 2 at 37; *see id.* at 39.
[16] Ex. 2 at 39.
[17] *Id.*
[18] Ex. 2 at 43.
[19] Ex. 2 at 46.



[20] Ex. 2 at 52.
[21] Ex. 2 at 54.
[22] Ex. 2 at 59.
[23] Ex. 2 at 72.
[24] Ex. 2 at 98.
[25] Ex. 2 at 62.
[26] Ex. 2 at 76.
[27] Ex. 2 at 100.

[REDACTED] 28 [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] 29 [REDACTED]

[REDACTED]

Much else obtained in discovery is troubling. Well after this case was filed,

[REDACTED]

[REDACTED] 30 [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] 32 [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] 33 [REDACTED]

[REDACTED]

---

[28] *See* Ex. 2 at 102.
[29] Ex. 2 at 105.
[30] Ex. 2 at 111.
[31] Ex. 2 at 162.
[32] Ex. 2 at 165.
[33] Ex. 2 at 169-170.

████████████████████████████████████████████████████████

███████████████████████████████[34]

    There is much more to say. █████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ And on and on, in one shocking episode after another that reveals just how empty are WPATH's—and Plaintiffs'—promise that transitioning treatments for minors are safe and effective.

    The point now is that the evident reason for these stay requests is that Plaintiffs and the United States do not want this information to come to light. They appear to *want* to shut down their own case so that other courts will adjudicate these issues in the dark. That is contrary to our system of justice, which depends on "full and truthful disclosure of critical facts." *Taylor v. Illinois*, 484 U.S. 400, 411-12 (1988). It is time to proceed so that this case can progress onto the appellate track and contribute to the full consideration of these issues implicating laws in half the States.

## CONCLUSION

    The Court should deny Plaintiffs' motion to stay.

---

[34] *Id.*

Dated: May 16, 2024

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina
29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Roger G. Brooks (*pro hac vice*)
Henry W. Frampton, IV (*pro hac vice*)
Philip A. Sechler (*pro hac vice*)
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0200
rbrooks@adflegal.org
hframpton@adflegal.org
psechler@adflegal.org

Respectfully submitted,

Steve Marshall
   *Attorney General*

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
   *Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
   *Principal Deputy Solicitor General*

James W. Davis (ASB-4063-I58J)
   *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
   *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF

system on May 16, 2024, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Defendants*
