# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **BRIANNA BOE**, *et al.*, | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| v. | )     **Case No. 2:22-cv-184-LCB** |
| | ) |
| **STEVE MARSHALL**, *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

## <u>ORDER</u>

These are ancillary proceedings for attorney misconduct rooted in findings of judge shopping in the Northern and Middle Districts of Alabama. It has come to the Court's attention that early in these proceedings, when the matter was pending before a three-judge panel, an attorney named Milo Inglehart was ordered to produce a document he described as a "Q & A," which had been circulated to Respondents James Esseks, LaTisha Faulks, Carl Charles, Kathleen Hartnett and the rest of *Walker v. Marshall*'s litigation team. At the advice of his attorney, Barry Ragsdale, Mr. Inglehart refused to produce the document.

Respondents James Esseks, LaTisha Faulks, Carl Charles, and Kathleen Hartnett, and non-respondent Milo Inglehart are **ORDERED** to produce the Q & A document by **May 20, 2024 at 5:00 p.m.** or show cause why they should not be sanctioned for violating a court order.

**I.    BACKGROUND**

On April 18, 2018, in its order closing *Walker v. Marshall*, the Court observed that the plaintiffs' "course of conduct could give the appearance of judge shopping," warning that such a practice risked creating an "appearance of impropriety in the judicial system." Order at 3, 5:22-cv-480-LCB (N.D. Ala. April 18, 2022), ECF 24. With this admonition, the Court directed that its order be served on the chief judges of each district in the State of Alabama, *id.* at 3-4, who then independently empaneled three judges to investigate the conduct flagged in the Court's order. On May 10, 2022, the three-judge panel ordered counsel for *Walker* and *Ladinsky v. Ivey,* 5:22-cv-447-LCB (N.D. Ala. April 18, 2022)—all told, thirty-nine attorneys—to appear on May 20 for the purpose of "inquir[ing] about the issues raised by counsel's actions" and whether they had purposefully sought to subvert the random case-assignment procedures for the Northern and Middle Districts of Alabama, Order at 5, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. May 10, 2022), ECF 1.

On the first day of hearings, the Panel divided the responding attorneys into three categories based on their knowledge of and roles in the decision-making behind *Walker* and *Ladinsky*: (1) attorneys with knowledge but no input; (2) attorneys with knowledge and input; and (3) leaders and decision-makers. (Doc. 339 at 11). To streamline the inquiry, the Panel charged the Honorable Justice R. Bernard Harwood with taking testimony from the first group of attorneys, including testimony on

2

whether they had "received any instructions or special coaching on what [they were] supposed to say in [the] hearing." Tr. Evidentiary Hr'g at 75-76, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. October 10, 2023), ECF 75. During this questioning, Mr. Inglehart testified that he and others had been given a "Q & A" document by counsel as part of preparations for the inquiry:

> JUSTICE HARWOOD: Okay. You heard me earlier on say that one of the questions the judges had wanted me to ask, has anyone coached you or suggested to you any testimony you should give? That is, if you were asked a certain question, here's what you should say?
>
> MILO INGLEHART: I don't think so. Not quite like that. We met with our counsel, Barry, a few times who sort of explained to us what he thought might generally—
>
> JUSTICE HARWOOD: Barry Ragsdale?
>
> MILO INGLEHART: Barry Ragsdale, yeah. Sorry, sir. We didn't get specific things to say. There was a sort of Q and A document that was circulated, I think, last night for us or maybe a draft was circulated earlier in the week, but the final version was circulated last night that kind of walked through, like, things they think might come up or like—yeah, just to sort of prep folks.
>
> And beyond that, Lynly and Dale and I were going to have a meeting on Thursday night—no. Sorry—on Wednesday night, but it ended up getting canceled. So I just ended up going to the group calls and looking over the document.
>
> JUSTICE HARWOOD: Okay. When you say "Q and A," "A" would be the answers. Was there a suggestion, all right. If you're asked this question, here's the answer to use?
>
> MILO INGLEHART: Usually it was sort of like—I'm trying to remember. I just looked over it last night—like, outlining, like—like, general—it wasn't like a word-for-word thing, but like things that might be useful to touch on or like—yeah.

3

JUSTICE HARWOOD: All right.

Tr. Evidentiary Hr'g at 54-55, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. November 2, 2023), ECF 98.

Two months later, the Panel ordered twenty-one of the respondents to file *in camera* declarations and "make full, complete, and transparent disclosure[s] of [their] participation in and knowledge of" the eight topics listed in the order, one of which concerned those respondents' preparations for the inquiry's first hearing. Order at 2-3, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 8, 2022), ECF 22. Specifically, each respondent was ordered to disclose "[a]ny knowledge [he or she] [has] that relates to (1) preparation for the hearing in this matter (including circulation of any Q & A document), and (2) the questions expected to be asked or that were actually asked by the court at the May 20, 2022 hearing." *Id.* at 3. On top of these disclosures, Mr. Inglehart was expressly ordered to "attach a copy of the Q & A sheet referenced at the May 20 proceeding." *Id.* at 2 n.1.

*Walker* counsel did not immediately comply. Instead, they moved "for an order preventing the disclosure of any information related to their preparations with counsel for the May 20, 2022 hearing that is protected by the attorney-client privilege and the attorney work product doctrine, including the 'Q & A' document referenced in the Panel's July 8, 2022 Order." Mot. Protective Order at 1, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. July 21, 2022), ECF 34. That motion, which

piggybacked on the reasoning of a separate protective-order motion filed by *Ladinsky* counsel, objected to disclosing the document on the grounds that it was protected by attorney-client privilege and the work-product doctrine. *See id.*

In ruling on the motion, the Panel reminded the Respondents of two points that had been made at the May 20 hearing. First, the proceedings were "not adversarial." Order at 1, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. July 25, 2022), ECF 41. Its purpose, rather, was "to inquire about the issues raised by counsel's actions" in *Walker*, *Ladinsky*, and *Eknes-Tucker v. Ivey*[1] and to "address lawyer conduct that potentially abuses the judicial process." *Id.*

Second, the *Walker* Respondents themselves had expressly suggested conducting parts of the inquiry *in camera* in their pre-submission brief. *Id.* at 2. As Mr. Ragsdale said on that first day, the *Walker* Respondents stood "ready, willing, and able to answer any questions that the Court [had]" and would not "use either [attorney–client privilege or the work-product doctrine] to refuse to answer" the Court's questions. Tr. Evidentiary Hr'g at 13, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. October 10, 2023), ECF 75. Counsel addressed the privilege doctrines "so that [information] could be presented in an *in camera*-type setting," and the Court could get its answers without disclosure to other parties. *Id.*

---

[1] That is, this case.

5

Then, a volte-face. After the Panel's order, the *Ladinsky* and *Walker* Respondents moved for protective orders preventing the disclosure of privileged information, and claimed, for the first time in the proceedings, that submitting *in camera* declarations would be improper. Mot. Protective Order, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 19, 2022), ECF 27; Mot. Protective Order, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 21, 2022), ECF 34. Both motions rested on the premises that the Panel was "not acting as a 'neutral referee'" and that *in camera* review of privileged information "'would be inconsistent with the core function of the attorney client privilege, the attorney work product doctrine, as well as basic norms of due process and fairness.'" Order at 3, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 25, 2022), ECF 41.

The Panel rejected these new arguments as "(1) simply wrongheaded," because "the Panel [was] comprised of judges, not party-opponents," and "(2) at odds with the subject attorney's prior positions." *Id.* at 3. The motions were denied, and counsel remained under a court order to produce the materials, including the Q & A. *Id.* at 4.

Yet "upon advice and direction of counsel," Mr. Ragsdale, and "in accordance with the Notice filed by [Mr. Ragsdale] on July 27, 2022," Mr. Inglehart did not attach the Q & A document to his declaration. Decl. Milo R. Inglehart at 10, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. October 11, 2023), ECF 80-15. The Q & A,

6

Mr. Ragsdale argued, "qualifie[d] as a 'privileged communication' exempt from disclosure" under the Panel's order. Notice and Obj. Regarding Decl. at 2, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. July 27, 2022), ECF 42.

To date, the document has never been produced.

## II. DISCUSSION

When Mr. Inglehart first refused to produce the "Q & A document" in July of 2022, these proceedings were in their infancy. The Panel was gathering facts and requesting testimony and declarations.

After considering the voluminous materials submitted by the Respondents, and after argument and testimony taken over multiple hearings, the Panel found on October 3, 2022 that eleven attorneys (the "Respondents"), including four members of the *Walker* team, had participated in misconduct by purposefully attempting to subvert the random case-assignment procedures for the Northern and Middle Districts of Alabama. (Doc. 339 at 51-52). The Panel referred its findings to the Court to "proceed as appropriate," *id.* at 52, imposing sanctions if necessary, and the Court has ordered the Respondents to show cause why they should not be sanctioned for the judge-shopping misconduct identified by the Panel and for the misrepresentations and non-disclosures described in the Panel's Report, (Docs. 406, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487 & 488).

For that reason, the Q & A document is even more relevant now than it was when the Panel ordered its disclosure. The unpleasant task of assessing whether *Walker* counsel simply recollected events differently or coordinated their testimony to mislead the Panel about their motive now falls to this Court. Put differently, the Court's assessment of whether each *Walker* Respondent acted in good faith or bad faith requires an *in camera* review of the Q & A document the Respondents were ordered to produce before.

Since Mr. Ragsdale has already instructed his clients to defy an order to produce the document, the Court anticipates that the *Walker* Respondents will either renew their motion for a protective order or object on the grounds raised two years ago. But those grounds will not shield the document from *in camera* review: Even if the document otherwise enjoyed the protections of attorney–client privilege or the work-product doctrine, the document loses those protections if the crime–fraud exception applies—a determination the Court can only make by reviewing the materials *in camera*.

### A. Given the Panel's findings of misconduct, the "Q & A document" is relevant to the Court's task of imposing appropriate sanctions.

Against the backdrop of misconduct, misrepresentations, and non-disclosure set forth in the Panel's Report and the Court's show-cause orders, the Q & A document is now highly relevant to the task of determining whether sanctions are

warranted. The Court cannot know how much weight to assign the document until it has reviewed its contents *in camera*, but there can be no question about its relevance. According to Mr. Esseks's description of the document in support of the *Walker* Respondents' motion for protective order, "*Walker* counsel worked closely with Mr. Ragsdale to provide information regarding the facts and circumstances" concerning the Panel's order to appear and "to assist Mr. Ragsdale in preparing for the May 20, 2022 hearing." Decl. James D. Esseks Supp. *Walker* Counsel's Mot. Protective Order at 1-2, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 21, 2022), ECF 34-1. As part of those preparations, "Mr. Ragsdale directed *Walker* Counsel to prepare a document containing answers to potential questions they believed the Panel may ask about the events described in the May 10 Order." *Id.* Mr. Esseks understood the document to have been designed in part "to ensure that Mr. Ragsdale could prepare any senior members of *Walker* Counsel who might be required to address the Panel." *Id.* at 3. And to that end, "the senior members of *Walker* Counsel generated a list of potential questions and answers *based on their collective knowledge* of the events leading up to the May 20 hearing," after which they discussed the document with counsel and shared it with junior members of the team. *Id.* (emphasis added).

It's every litigator's duty to prepare his clients for questioning under oath, and that task invariably calls for predicting questions and considering prudent responses.

But it is improper for any witness to testify to facts he or she doesn't personally remember, coordinate omissions with other witnesses, or agree to stick to a particular story that is not the truth, the whole truth, and nothing but the truth. Mr. Esseks's declaration explains that the Q & A document was based on counsel's "collective knowledge" and designed to "prepare any senior members of *Walker* Counsel who might be required to address the Panel," and it was reviewed by all members of the team before the first day of testimony. *Id.* Ultimately, the Panel did not credit much of the story that *Walker* counsel told in their testimony. Whether the *Walker* Respondents coordinated materially omissive or otherwise misleading testimony to the Panel matters as this Court now works to fix an appropriate sanction. Until the Court reviews the document, the Court cannot know whether it reflects a good faith attempt to prepare for a hearing, an orchestrated attempt to distract or mislead the Panel, or something else entirely. Whatever it might show, the document is highly relevant to the Court's task.

> **B. Neither attorney–client privilege nor the work-product doctrine shields the "Q & A document" from *in camera* review.**

In July of 2022, with an eye to the Q & A, the *Walker* Respondents moved the Panel for a protective order that would "prevent[] the disclosure of any information related to the preparations with counsel for the May 20, 2022 hearing" that was protected either by attorney-client privilege or the attorney work product doctrine.

10

Mot. Protective Order at 1, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 21, 2022), ECF 34. This document, they claimed, was privileged as "a confidential communication with their counsel made for the purpose of obtaining legal advice," and it was protected as work product "prepared in anticipation of litigation . . . by or for a party or for a party's representative." *Id.* at 5. Alleging an "irreconcilable conflict" in the Panel's interests, they argued that "*in camera* review . . . would be inconsistent with the core function of the attorney client privilege, the attorney work product doctrine, as well as basic norms of due process and fairness.'" *Id*. at 7-8.

As the Panel aptly concluded, this rationale is "simply wrongheaded." Order at 3, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 25, 2022), ECF 41.

### 1. If applicable, the crime-fraud exception will defeat any protections the Q & A would otherwise enjoy under attorney–client privilege or the work-product doctrine.

The Respondents claim that the Q & A document is "plainly protected" by both the attorney-privilege and the work-product doctrine. Mot. Protective Order at 5, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 21, 2022), ECF 34. But even if the Respondents are right and this presumption holds, those privileges yield if the crime-fraud exception applies. *See Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324 (11th Cir. 2018). And "in cases of attorney misconduct[,]" the crime-fraud exception means that "there is no protection for the attorney's work product." *Id.* at 1337.

The attorney-client privilege applies "to confidential communications between an attorney and client for the purposes of securing legal advice or assistance." *Drummond Co., Inc.*, 885 F.3d at 1334. Its purpose "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* (internal quotation marks omitted).

Similarly, the work product of attorneys is generally protected against "inquiries" from the opposing side "into an attorney's work files and mental impressions." *Id.* at 1335; *see also Hickman v. Taylor*, 329 U.S. 495, 510 (1947). This protection extends to materials that counsel obtains or prepares "in the course of their legal duties," as long as "the work was done with an eye toward litigation." *Drummond Co., Inc.*, 885 F.3d at 1334-35. The rule is meant "to protect the integrity of the adversary process by allowing a lawyer to work 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Id.* at 1335 (citing *Hickman v. Taylor*, 329 U.S. at 510).

But these protections are "not absolute." *Id.* "The crime-fraud exception," for instance, "removes the 'seal of secrecy' from attorney-client communications or work product materials when they are made in furtherance of an ongoing or future crime or fraud." *Id.* Though typically arising in cases of crime or fraud by a client, the Eleventh Circuit has expressly extended the crime-fraud exception to cases of an

12

attorney's fraud as well, so long as there's a prima facie showing that (1) the attorney was engaged in or planning to engage in criminal or fraudulent conduct; and (2) "the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *See id.* at 1335-38. Put simply, "in cases of attorney misconduct[,] there is no protection for the attorney's work product," *id.* at 1337, because no attorney should "be able to exploit work product protection for ends outside of and antithetical to the adversary system any more than a client who attempts to use the privilege to advance criminal or fraudulent ends," *id.* at 1338.

The Panel found the *Walker* Respondents' candor to be "on the whole" concerning, (Doc. 339 at 18 n.3), and each of them has been issued a show-cause order "for misrepresenting or otherwise failing to disclose key facts during the Panel's inquiry in violation of . . . [his or her] sworn oath." (Docs. 478 at 13, 479 at 13-14, 481 at 14 & 486 at 13). Together, these findings support a prima facie showing that the *Walker* Respondents were engaged in or planning to engage in fraudulent conduct, while Mr. Esseks's declaration suggests the Q & A document was produced in furtherance of that conduct.

To determine whether the crime–fraud exception applies to the Q & A document, the Court must review it *in camera*. *See* Fed. R. Civ. P. 104(a); *United States v. Zolin*, 491 U.S. 554 (1989).

Although it is standard practice, amply supported by the law, for courts to review documents *in camera* to determine whether they are privileged and, if so, whether an exception applies, the Respondents have nevertheless suggested that such a review would be inappropriate here. Relying on *Zolin*, 491 U.S. at 572, 574-75, the Respondents contend that "[f]ederal courts conduct *in camera* reviews **only** when there has been a threshold showing of 'a factual basis adequate to support a good faith belief by a reasonable person' that an exception to the attorney-client privilege applies." Mot. Protective Order at 5, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 21, 2022), ECF 34. But this statement mischaracterizes the law. Under *Zolin*, district courts may properly review documents *in camera* "to determine whether allegedly privileged attorney–client communications fall within the crime–fraud exception," but if it does so "at the request of [a] party opposing [attorney-client] privilege," then the party opposing the privilege must first "present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *Zolin*, 491 U.S. at 574-75. And "[o]nce that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.* at 572.

The wrongheadedness of the Respondents' contention begins with the fact that there's no party here to oppose the privilege and raise the crime–fraud exception, and hence, no one to present evidence sufficient to make that threshold showing.

14

The Court, of course, can raise the exception itself, for "when rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." *Peer v. Lewis*, 606 F.3d 1306, 1315 (2010) (cleaned up). Even so, considering the Panel's findings and the Court's show-cause orders, Mr. Esseks's declaration amounts to just such evidence.

More to the point, the protections of attorney–client privilege and the work-product doctrine won't justify a refusal to submit the Q & A document for *in camera* review. It's true, as the Respondents have argued, that district courts must consider "the facts and circumstances of the particular case" when deciding whether to review materials *in camera*. Mot. Protective Order at 7-8, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 21, 2022), ECF 34 (citing *Zolin*, 491 U.S. at 572). It's false, however, that the circumstances here "present an irreconcilable conflict." *Id.* at 8. As the Respondents have been continually reminded, this is not an adversarial proceeding, and the Court is a "neutral decisionmaker." Order at 3, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 July 25, 2022), ECF 41.

What's more, when evaluating the propriety of *in camera* review, "the facts and circumstances of the particular case" that the Court is meant to consider include "the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available

15

evidence then before the court, will establish that the crime–fraud exception does apply." *Zolin*, 491 U.S. at 572. All these factors weigh in favor of reviewing the Q & A *in camera*.

### III. CONCLUSION

For the reasons given above, the Court **ORDERS** Respondents James Esseks, Carl Charles, LaTisha Faulks, and Kathleen Hartnett to produce the "Q & A document" in its native format, along with all metadata for *in camera* review **by 5:00 p.m. on May 20, 2024**.

The Court further **ORDERS** non-Respondent Milo Inglehart to produce the "Q & A document" in its native format, along with all metadata for *in camera* review **by 5:00 p.m. on May 20, 2024**. The Court is mindful that when Mr. Inglehart was released from these proceedings, the Panel found that "[t]he inquiry ha[d] produced no evidence of intent by [Mr. Inglehart] to circumvent the practice of random case assignment in the District Courts for the Northern and Middle Districts of Alabama." Order at 1, *In re Vague*, 2:22-mc-3977-LCB (M.D. Ala. 2022 September 23, 2022), ECF 59. Nothing since then has led to the Court to believe that Mr. Inglehart has engaged in any misconduct, or that the Panel erred in releasing him from its inquiry. Given the information currently in its possession, the Court indeed has no intention of drawing Mr. Inglehart back into these proceedings—as long as he complies with this order.

The Q & A document must be sent to the Court's chambers' address, burke_chambers@alnd.uscourts.gov. The Court, of course, will review these materials *in camera*. If it determines that the document is irrelevant or privileged, it will not consider it for any purpose.

The Court anticipates that the *Walker* Respondents will object to the production of the Q & A document on the grounds discussed in this order. Counsel for the Respondents is warned that the Court will not tolerate any further contumacious refusals to disclose court-ordered materials, which *must* be produced by the deadline. **Any Respondent or non-Respondent who fails to comply must appear at the U.S. Courthouse in Montgomery, Alabama on May 23, 2024 at 9:30 a.m.** to show cause why the Court should not impose monetary sanctions for non-compliance and remand him or her to the custody of the U.S. Marshals Service until he or she complies.

**DONE** and **ORDERED** this May 17, 2024.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE