IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| and | ) |
| | ) Case No.: 2:22-cv-00184-LCB |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|    Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, et al., | ) |
| | ) |
|    Defendants. | ) |

### KATHLEEN HARTNETT'S RESPONSE TO THE COURT'S MAY 17, 2024 ORDER AND EMERGENCY MOTION FOR STATUS CONFERENCE AND STAY OF PRODUCTION DEADLINE

Respondent Kathleen Hartnett responds to the Court's May 17, 2024 Order and moves for a Status Conference as early as practicable in the morning of May 20, 2024, as well as a stay of the court-ordered production deadline of 5:00 p.m. on May 20, 2024.

***Response to Show Cause***.  In its May 17, 2024 Order (the "Order"), the Court directs Ms. Hartnett and certain other Respondents "to produce the Q & A document

1

by May 20, 2024 at 5:00 p.m. or show cause why they should not be sanctioned for violating a court order." Doc. 527 at 1.  The Order states that Respondents have been under court order since 2022 to produce the privileged Q & A document and have flouted that order.  *See, e.g.*, *id.* at 4 (citing Panel's initial order to produce); *id.* at 6 (stating that after Respondents' protective order motion was denied, "counsel remained under a court order to produce the materials, including the Q & A"); *id.* at 17 (referring to "contumacious refusals to disclose court-ordered materials").

However, the Panel explicitly stated on the record that it was not requiring the production of the Q&A document:

> MR. SEGALL:  …. I would also, Your Honor, like for today's purposes to have a continuing objection on the basis of all the privileges that have been mentioned, work product, attorney-client, common interest, joint client, et cetera.
>
> JUDGE PROCTOR:  …. ***[W]e certainly understand we've not made you provide us documents, the Q and A sheet***, the talking points that Doss was going to use either here or before Judge Burke at the hearing.  So we're all right with y'all asserting anything we're not actually saying is work product we're reserving our work product objection.  But I thought that there had been a decision to be somewhat candid with the Court about why these decisions were made.  Am I missing the boat on my recollection here?
>
> MR. SEGALL:  Well, you're correct that I didn't say anything during May 20 at all about that.  But if I understand the Court's ruling –and, of course, we gave declarations.  And in those declarations, we've, in my judgment, violated one or more privileges.
>
> JUDGE PROCTOR:  Well, you – I wouldn't say you violated it.  ***I would say there was a limited waiver* of the work product privilege, not the attorney-client privilege but the work product privilege**….

2

November 3, 2022 Transcript, 22-mc-3977, *Vague* Doc. 79, pp. 4:17–5:22 (emphases added) (attached hereto as Exhibit A).

Ms. Hartnett has not violated a court order. To the contrary, the Panel expressly acknowledged that Respondents (1) were under no continuing order to produce the privileged Q & A document and (2) had not waived the attorney-client privilege with respect to that document or otherwise. The Panel did not require production of the Q&A document because, as made clear in its July 25, 2022 Order, it was "not seeking the disclosure of privileged *communications*." Doc. 41 at 4. Mr. Ragsdale and Mr. Inglehart notified the Panel that the Q&A document was being withheld on attorney-client privilege grounds, consistent with the Panel's Order that it was not seeking production of privileged, attorney-client communications. Doc. 527 at 6-7.

The context of the creation of the Q&A document not only confirms that it is attorney-client privileged material, but also belies any notion that the document was nefarious or improper. After the entry of the initial order instituting the *Vague* proceedings on May 10, 2022 and setting a hearing in 10 days (*Vague* Doc. 1), members of the *Walker* team prepared the Q&A document at the direction of their newly retained counsel, Barry Ragsdale, to assist him with understanding the facts and history of the *Walker* case and to prepare him for questions that might be asked by the Panel at the May 20 hearing. *See* Esseks Decl., *Vague* Doc. 34-1; Hartnett

3

Decl. at 32-35, Doc. 521-1. Mr. Ragsdale had been retained just days before the May 20 hearing, and there was limited time for Mr. Ragsdale to learn all the relevant information and ensure that his representations to the Court were informed and accurate; the Q&A document was part of that preparation. *Id*.

Furthermore, the Panel's instruction to Respondents in advance of the May 20, 2022 hearing was as follows: "Each counsel is ORDERED to appear before a three-judge panel in Courtroom 2F of the Frank M. Johnson Jr. U.S. Courthouse on May 20, 2022 at 9:30 A.M. to allow the panel to inquire about the issues raised by counsel's actions." The Panel did not inform the Respondents that sworn testimony would be taken at the May 20 hearing. Therefore, the Respondents and their counsel mistakenly believed that the hearing would involve only a presentation by their counsel, Mr. Ragsdale, and perhaps presentations by certain senior lawyers from the *Walker* and *Ladinsky* teams—not testimony. *Vague*, Doc. 75 at 76–77. In fact, Mr. Ragsdale stated on the record at the May 20 hearing that he did not expect any of the Respondents to be called to testify during the hearing. *See* Doc. 75 at 76:23–77:12. That neither Respondents nor their counsel had any expectation that Respondents would be testifying on May 20 underscores that the Q&A document was not a tool to synthesize testimony but rather a means to educate Mr. Ragsdale and prepare him for questioning during argument.

4

Ms. Hartnett testified about the Q&A document in her July 27, 2022 Declaration. *See* Doc. 521-1, Hartnett Decl. at 32-35. She was forthcoming with the Panel about the existence of, reasons for, and use of the Q&A document. And this testimony only confirms that the Panel was fully informed about the existence and nature of the Q&A document when Judge Proctor stated on the record at the November 3 hearing that "we certainly understand we've not made you provide us documents, the Q and A sheet," as the Panel had not sought attorney-client privileged information. *Vague* Doc. 79 at pp. 4:17–5:22.

Simply put, Ms. Hartnett has not failed to comply with any court order.

***Request for Status Conference and Stay of the Production Deadline***. Ms. Hartnett respectfully requests a telephonic status conference as early as practicable in the morning of Monday, May 20, in light of the 5:00 p.m. Monday deadline to produce the Q&A document, so that the parties can discuss with the Court potential alternatives to address the issues raised by the Court. Ms. Hartnett also respectfully requests a stay of the deadline for producing the Q&A document so that the matters addressed by the Order can be properly briefed as necessary.

Critically, the question of whether any exception to the attorney-client privilege warrants this Court's *in camera* review of the Q&A document **has never previously been briefed in this matter** by Ms. Hartnett or any Respondent. In particular, the Court's *sua sponte* invocation of the crime-fraud exception is the first

5

time that this serious allegation against Ms. Hartnett has been raised as a basis for breaching her attorney-client privilege in these proceedings. As explained above, the Panel allowed Respondents to withhold the Q&A document as privileged and, in explaining that it did not view these proceedings as adversarial, expressly stated that "[t]here is no opposing party to raise potential exceptions to privilege or protection: for example, waiver or the crime-fraud exception." *Vague,* Doc. 41 at 3.

In addition to raising the crime-fraud exception *sua sponte*, the Court apparently has already made a determination there is a *prima facie* showing of its applicability. Ms. Hartnett should be permitted to brief the issue of whether the crime-fraud exception applies in these circumstances. As the Third Circuit has held, "[W]here a fact finder undertakes to weigh evidence in a proceeding seeking an exception to the privilege, the party invoking the privilege has the absolute right to be heard by testimony and argument." *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 97 (3d Cir. 1992), as amended (Sept. 17, 1992).

If allowed to brief this issue, Ms. Hartnett will show that there is no basis for invoking the crime-fraud exception against her. Indeed, the Panel repeatedly praised Ms. Hartnett for being candid and helpful. *See* Doc. 521 at 3 (quoting Judge Proctor's comments to Ms. Hartnett on four different occasions during her testimony on August 3, 2022, including: "One of the things I was impressed with with your

6

declaration is its clarity, its organization, and its candor. So I want to give you that compliment as we stand here.").

Finally, that Your Honor will be the finder of fact and decision-maker in this proceeding fundamentally distinguishes these circumstances from the typical scenario where the judge determines the validity of a claim of privilege before a document is produced to an opposing party or shown to the jury. A potential alternative to producing the Q&A document to Your Honor could be the appointment of a special master to evaluate the applicability of any potential exception to the attorney-client privilege.[1] There may also be other potential alternatives. Ms. Hartnett and her counsel believe that a discussion of these matters before the 5:00 PM production deadline, and a stay of that deadline pending further briefing, could help the Respondents and the Court avoid either a waiver of the privilege or the possibility of an emergency petition to the Eleventh Circuit for the sole purpose of avoiding a waiver.

* * *

---

[1] Because of the prior involvement in this proceeding of all the judges from the federal districts in Alabama, *see* Aug. 3, 2022 Hrg. Trans. at 9–10, any special master appointed for the purpose of deciding the applicability of the crime-fraud exception would need to be from a federal court outside Alabama or a private attorney with no prior connection to this or the underlying proceedings.

For these reasons, Ms. Hartnett respectfully submits that she has violated no court order, and she respectfully requests a status conference on the morning of Monday, May 20, 2024, as well as a stay of the 5:00 p.m. production deadline.

Respectfully submitted, May 18, 2024

/s/ Brannon J. Buck
Brannon J. Buck (ASB-5848-K56B)
bbuck@badhambuck.com
Christopher B. Driver (ASB-9178-G39B)
cdriver@badhambuck.com
BADHAM & BUCK, LLC
2001 Park Place North, Ste. 500
Birmingham, Alabama 35203
(205) 521-0036 (Phone)
(205) 521-0037 (Facsimile)

*Counsel for Kathleen Hartnett*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served on all parties of record via the CM/ECF electronic filing system, electronic mail, and/or U.S. Mail on this the 18th day of May, 2024.

/s/ Brannon J. Buck
OF COUNSEL