# Exhibit A

```
                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF ALABAMA
                              NORTHERN DIVISION



     BRIANNA BOE, et al.,           *
                                    *
              Plaintiffs,           *   2:22-cv-00184-LCB
                                    *   May 20, 2024
     vs.                            *   Montgomery, Alabama
                                    *   10:00 a.m.
     STEVE MARSHALL, et al.,        *
                                    *
              Defendants.           *
     ****************************



                 TRANSCRIPT OF STATUS CONFERENCE
                       VIA VIDEOCONFERENCE
              BEFORE THE HONORABLE LILES C. BURKE
                   UNITED STATES DISTRICT JUDGE
```

Proceedings recorded by OFFICIAL COURT REPORTER, Qualified pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies and Procedures Vol. VI, Chapter III, D.2.  Transcript produced by computerized stenotype.

*CHRISTINA K. DECKER, RMR, CRR*
Federal Official Court Reporter
256-506-0085/ChristinaDecker.rmr.crr@aol.com

```
                        APPEARANCES


    FOR THE PLAINTIFFS:
    Kaitlin N Toyama, Esq.
    United States Department of Justice
    Civil Rights Division
    950 Pennsylvania Avenue, NW
    Washington, DC 20530
    202-353-5311
    Email: Kaitlin.toyama@usdoj.gov



    RESPONDENTS:
    Brannon Buck, Esq.
    Christopher Driver, Esq.
    BADHAM & BUCK, LLC
    2001 Park Place North, Suite 500
    Birmingham, AL 35203

    Samuel H. Franklin, Esq.
    Harlan I. Prater, IV, Esq.
    LIGHTFOOT, FRANKLIN & WHITE, LLC
    The Clark Building
    400 20th Street North
    Birmingham, Alabama 35203

    Robert D. Segall, Esq.
    Shannon Holliday, Esq.
    COPELAND FRANCO
    444 South Perry Street
    P.O.Box 347
    Montgomery, Alabama 36101

    April A. Otterberg, Esq.
    JENNER & BLOCK
    353 N. Clark Street
    Chicago, IL 60654-3456
    (312) 222 9350

    Barry Alan Ragsdale, Esq.
    Robert S. Vance, III, Esq.
    Dominick Feld Hyde, P.C.
    Litigation
    1130 22nd St S - Ste 4000
    Birmingham, AL 35205
    205-536-8888
    BRagsdale@dfhlaw.com
```

```
         W. Neil Eggleston, Esq.
         KIRKLAND & ELLIS, LLP
         1301 Pennsylvania Avenue, N.W.
         Washington, D.C. 20004

         Bruce F. Rogers, Esq.
         BAINBRIDGE, MIMS, ROGERS & SMITH LLP
         The Luckie Building, Suite 415
         600 Luckie Drive
         Birmingham, Alabama 35223
         Phone: 205-879-1100

         John M. Ugai, Esq.
         FARELLA BRAUN AND MARTEL
         One Bush Street
         Suite 900
         San Francisco, CA 94104
         415.954.4400


         FOR THE DEFENDANT:
         James W. Davis, Esq.
         OFFICE OF THE ATTORNEY GENERAL
         501 Washington Avenue
         P.O. Box 300152
         Montgomery, Alabama 36130-0152
         (334) 242-7300




         COURTROOM DEPUTY:  Deena Harris


         COURT REPORTER:  Christina K. Decker, RMR, CRR
                          Federal Official Court Reporter
                          101 Holmes Avenue, NE
                          Huntsville, Alabama 35801
                          (256) 506-0085
```

**P R O C E E D I N G S**

THE COURT: All right. Good afternoon. Can everybody hear me?

All right. Several things, obviously, to cover today.

I will start with the first question here, which is, is anybody going to turn this document over today?

MR. BUCK: Your Honor, this is Brannon Buck on behalf of Kathleen Hartnett.

As our filings over the weekend indicated, we are in the process of, if not already, have filed -- I haven't gotten confirmation yet -- a request in the Eleventh Circuit seeking emergency relief.

As the notice of intent indicated that we filed last night, it is our hope to have a discussion today that can maybe lead to an alternative course here in this Court. But I do want to be up front with Your Honor and let you know that's, you know, that's where we are, as far as the respondents are concerned.

THE COURT: I understand.

I do want to say I feel like the record has been misrepresented. I have read it with care, and read it with care before I entered my order.

The three-judge panel never excused anybody from producing this. In fact, Judge Proctor actually says that. He says, I know we haven't made you, but I have to say that it's very

1  clear that that order still stands.
2       But on top of that -- and I would love to have your
3  thoughts on that -- if you read my order, my order references
4  that you were ordered to produce it and that you did not
5  produce it.  But it also says, hey, independently and for all
6  these reasons, I'm now ordering you to produce it myself.
7       So I'm not here to enforce the panel's order.  I'm
8  enforcing my own order, where I ordered this document to be
9  produced.
10      Now, why did I go ahead and set a show cause date for
11 this?  I went ahead and set it because it didn't get produced
12 the last time, and the one person who was required to produce
13 it said he wasn't going to produce it.
14      So, you know, with that said, tell me what your
15 alternative method is, Mr. Buck.
16           MR. BUCK:  Yes.
17      So, Your Honor, I mean, let me start by saying we respect
18 the Court's authority here.  And I hope that nothing that we
19 have filed portrays anything different.  And we appreciate Your
20 Honor accommodating our request to have this conference.
21      In our view, and in our read of the transcript, and our
22 understanding of that November 3rd comment on the record by
23 Judge Proctor was that the respondents were, in fact, excused.
24 That was our view of it, our reading of it.
25           And it appeared to us from your order that perhaps the

1  Court, you know, was not aware that that statement had been
2  made, or that the respondents had relied upon that statement in
3  not filing the document up to this point.
4       I don't think -- you know, it -- it was our impression
5  that the panel recognized that the Q&A document is privileged.
6  And from reviewing your order, I don't necessarily think Your
7  Honor disputes that.  I think the question we have is whether
8  or not the crime-fraud exception applies, at least that's our
9  read of the situation at this point.
10      And the reason we wanted to have this conference was,
11 number one, to talk about the fact that the respondents have
12 never had an opportunity to brief the application of the
13 crime-fraud exception, specifically the prima facie issue that
14 Your Honor speaks about in the order from Friday afternoon.
15      And we would like the opportunity to brief that, Your
16 Honor, before a decision, a final decision -- although we
17 certainly understand the finding in your order.  But we would
18 like the opportunity to brief that, and have Your Honor
19 consider that briefing on the prima facie case relating to that
20 document before a decision is made about an in camera
21 inspection since that's -- you know, step one of the process,
22 as you know, Your Honor, from the Drummond case and the Zolin
23 case, is a determination as to whether there is a showing that
24 the client was engaged in criminal or fraudulent conduct when
25 he or she sought the advice of counsel, that he or she was

1  planning on such conduct when the advice was sought, or that he
2  or she committed a crime or fraud subsequent to receiving the
3  benefit of counsel's advice.
4         And so, Your Honor, we haven't briefed that issue before,
5  but we would like the opportunity to brief that issue.
6         We don't think the record -- and we obviously understand
7  that Your Honor disagrees -- but we don't think the record
8  supports that or that the panel's report supports a prima facie
9  showing of that initial step in the analysis for a prima facie
10 case.
11        And so that would be the first part of our ask, that if
12 the Court wants to continue to pursue this -- and it sounds
13 like Your Honor does -- that we be given the opportunity to
14 brief that.  And we would also like to discuss, because Your
15 Honor is the ultimate finder of fact in this case, that we
16 would propose the invocation of a special master here, which I
17 noted --
18            THE COURT:  I noticed that.  My first question would
19 just be I've been at this for 30 years and a judge for more
20 than half of that, and every single case I have ever read says
21 that when a judge sits as a finder of fact, you know, if I
22 review this in camera, and I find that it should not be
23 considered, then I don't consider it, and I say I have not
24 considered this.  And the appellate court assumes that I have
25 not considered it.

1          Do you have one case that suggests that I should do this?
2  Because that would literally change the way federal and state
3  judges handle everything in the world.  All the time judges in
4  divorces, civil litigation, et cetera, et cetera, et cetera,
5  they look at something to determine whether it's admissible or
6  not.  And if they determine it's not admissible, you don't have
7  to get a special master to make evidentiary ruling.
8          So tell me, is there a case that says this?
9              MR. BUCK:  Well, Your Honor, I noted in the Drummond
10 case Judge Proctor appointed a special master to conduct the
11 analysis there.  And so we picked up on that from that case,
12 that that was the procedure followed in the Drummond case.
13             THE COURT:  But my question to you is, is there a case
14 that requires it?  Or did Judge Proctor just do that because
15 he's a good-natured guy and a good judge?
16             MR. BUCK:  Your Honor, I candidly don't have an answer
17 to that question.  I don't know.  And I can't tell you I have
18 researched the issue of whether or not it's required in the
19 context of the situation where a judge is serving as the
20 ultimate, you know, fact finder.
21      Our thought is more of a practical one, which, you know,
22 it's hard to unsee something that you have seen.  We
23 understand, you know, the notion that the Court won't consider
24 it, but it's a little bit like trying to put the toothpaste
25 back in the bottle.

1      THE COURT:  Well, is there something so bad in here
2 it's going to shock my conscious, Mr. Buck?
3      MR. BUCK:  No, Your Honor.
4    I mean, this is -- this is really about the
5 attorney-client privilege and the sanctity of that privilege,
6 Your Honor.
7    I think the document has been described at some length in
8 the filings, in the declarations that have been filed.  I mean,
9 it is admittedly a Q&A document.  I think the title or the
10 description of the document accurately describes it.
11    It was prepared during that ten-day period leading up to
12 that first hearing, as you know, from reading our filings.  And
13 it was -- the purpose of it was to prepare primarily
14 Mr. Ragsdale to be ready to answer questions from the panel at
15 that very first hearing at a time when he was, you know, having
16 to learn a whole lot of background information and a lot of
17 facts and history in getting ready for that hearing at the very
18 outset, you know, with less than ten days' notice.
19      THE COURT:  Okay.  So next question:  So in my review
20 of the record, obviously, when this issue arose in front of the
21 panel, there was a request for a protective order, there was
22 heavy briefing on behalf of the Walker respondents.
23    You know, certainly crime-fraud could have been briefed at
24 that time had it been desired.  But is there somebody who's not
25 had a full opportunity to raise any of these issues at the time

1 the panel considered all this?

2       MR. BUCK: Well, Your Honor, I think at that point in
3 time -- and I can certainly let Mr. Ragsdale speak to this --
4 but I believe at that point in time, based on the statement in
5 the order from the panel that it was not requiring the
6 production of attorney-client privileged communications, that
7 counsel and the respondents thought that that ended the inquiry
8 at that point. And we just haven't revisited it since then.

9    And the issue of whether or not the crime-fraud exception
10 applies has never been raised again until, or I think for the
11 first time in your -- I know there's been mention of it, but
12 it's really been raised for the first time in Your Honor's
13 order from Friday afternoon.

14       THE COURT: Well, you know, I understand your
15 position. But, again, I have read the record.

16    You know, the panel never said the Q&A was privileged.
17 They just generally said we're not seeking privileged
18 communication, you know.

19    And Judge Proctor remarked from the stand that, you know,
20 this was a reversal, and that he did not understand why all of
21 a sudden there was a lack of candor on this issue.

22    So, you know, and I'll tell you I have skimmed your writ
23 of mandamus. And, again, I would just say I believe it's a
24 misrepresentation of what the panel's words were. So I just
25 put that out there.

1         If I were to give you time to brief this issue, exactly
2    what are you seeking?
3              MR. BUCK:  Well, Your Honor, we recognize that we've
4    got the final show cause hearings set in just over a month.
5    And so we would ask for seven to ten days -- I haven't
6    conferred with other counsel -- for an opportunity to brief the
7    prima facie question.
8         And, then, you know, beyond that, if -- you know, once
9    that issue is briefed and decided finally after briefing, then
10   I think we move to the second step.  And, you know, then the
11   question becomes can we fit all of that in within the 30 or so
12   days that we have.
13        Does Your Honor feel compelled to finally adjudicate this
14   issue before those hearings in June, or if -- you know, can
15   that go beyond those hearing dates?
16        But we're certainly willing to work with the Court on
17   timing, as far as briefing and hearing on that.
18             THE COURT:  Well, you know, another way that we could
19   consider this issue is everybody could just go ahead and comply
20   with my order.  I will do an in camera review.  You know, hey,
21   I may look at this and say no, this is not coming in.  I don't
22   need to consider this.  And then it doesn't even matter.
23        On the other hand, if I did look at it and decide, hey, I
24   do need to consider this, why could I not just allow you to
25   brief it at that point?

Case 2:22-cv-00184-LCB-CWB   Document 552-1   Filed 05/24/24   Page 13 of 19

12

1     MR. BUCK: Well, Your Honor, again, at that point, the
2  privilege has been breached, you know --
3     THE COURT: Has the privilege been breached by an in
4  camera review if I determine that it's, you know, not
5  procedurally in front of me, that I don't need consider it?
6     MR. BUCK: Well, Your Honor, I understand your point
7  about that the Court will decide whether to consider it or not.
8     But, at that point, the ultimate fact finder has seen the
9  communications at that point. And so, you know, we consider
10 that to be -- at that point, the attorney-client privilege has
11 been breached, because the ultimate fact finder has, therefore,
12 been privy to and been provided with those communications.
13    And that's truly our concern about that.
14    THE COURT: So are you saying that I would not be
15 capable of not considering something even if I found that I
16 shouldn't consider it and I said I didn't?
17    MR. BUCK: Your Honor, I'm not questioning your word
18 or your judgment. I just know that, you know, once you've
19 reviewed a document, you've reviewed a document. And that's
20 really our point.
21    THE COURT: Let me see if I have any other questions
22 to ask.
23    MR. BUCK: And, Your Honor, may I speak to just one
24 other thing, one other point that you brought up a moment ago?
25    You know, I think there has perhaps been some confusion or

1  miscommunication on our part about the applicability of the
2  privilege and the work-product doctrines through the course of
3  this proceeding.  And I think that arises from the fact that
4  you have got really two proceedings, right?
5      You have got the underlying proceeding, the Walker and
6  Ladinsky cases, where you have got, you know, attorney-client
7  and work-product privileges between the Walker and Ladinsky
8  counsel and their clients in those underlying proceedings.
9      And my understanding is that throughout this, counsel and
10 the respondents have been very forthcoming, particularly about
11 work product as to the underlying proceeding.
12     I think the -- where the confusion lies is I believe that
13 counsel and the respondents have tried to be more restrictive,
14 in terms of their disclosure relating to their relationship
15 with their counsel as the clients in this, you know, Vague, and
16 now sanctions proceeding.
17     And so I think perhaps there's been a situation where the
18 waiver or disclosure of work-product information, in
19 particular, has been more readily made as to the underlying
20 proceeding, and then a distinction drawn between the underlying
21 proceedings and this sanctions inquiry.
22     And I don't -- I don't know if that makes sense.  I'm not
23 doing a great job of explaining it.  But I do think we see a
24 distinction here, Your Honor.
25              THE COURT:  Is there anything else we need to talk

1  about, or have we talked about all the issues today?

2       MR. RAGSDALE: Yes, sir, Your Honor. This is Barry
3  Ragsdale.

4     We filed a motion asking that Milo Ingelhart be excused
5  from this order. He is not the custodian of this document. If
6  it gets produced, there are other people that can produce it.
7  He doesn't have it in the native format, and, frankly, is not
8  sure he's got it at all at this point.

9     But he's a nonparty. And he's not necessary for
10 compliance with the production.

11    And we ask that -- it's not an attempt to duck compliance
12 by excusing him. There, as I said, there are other lawyers on
13 here who can do that.

14    But it would present a hardship for him if he is -- again,
15 I don't know that he has to come to Montgomery, but we just ask
16 that as a nonparty he be released from the purview of this
17 order.

18       THE COURT: Right. You know, that's something I can
19 take up at a later time.

20    I think what my inclination is, is to give Mr. Buck until
21 Monday to brief this, and to stay the hearings -- not
22 Thursday's hearing. Thursday's hearing will still go ahead as
23 scheduled.

24    But I will continue -- I will give him five days to brief
25 it. Let me see what that would be. This is Monday. I'll give

1  you until Friday at 5:00 p.m. to brief the crime fraud.  I
2  think that's all you wanted to brief; is that correct,
3  Mr. Buck?
4         MR. BUCK:  Yes, Your Honor.
5     We were specifically -- I was specifically referring to
6  the first step in that analysis, that two-step analysis, which
7  is the prima facie case.
8         THE COURT:  All right.  Well, I will stay this
9  production deadline for seven days.
10     I will reset the show cause hearing on the production
11  for -- I will have to look at my schedule -- for one of those
12  days following that.
13     I will give you until 5:00 p.m. on Friday to brief
14  whatever issues that you want to additionally brief.
15     Fair enough?
16         MR. BUCK:  Yes, Your Honor.  We appreciate the
17  accommodation.
18         THE COURT:  All right.  Am I leaving anything out
19  here?
20     I've got your motion to stay.  I've done that.
21     You wanted briefing.  I've done that.
22     Am I leaving anything out?
23         MR. BUCK:  I don't think so, Your Honor.
24     We're still on for Thursday, correct?
25         THE COURT:  Still on for Thursday, yes.  Not only do

1   we have some things -- housekeeping with this matter, we have
2   got to take up the issue of the stay of the whole case.  But we
3   won't get into that now.
4        Mr. Ragsdale, as to your request regarding Mr. Ingelhart,
5   I would suggest that since I have stayed it, we'll just take
6   that issue up after the briefing is done.
7             MR. RAGSDALE:  Thank you, Your Honor.
8             THE COURT:  We will figure out where we need to go.
9        Anybody else have anything that we ought to take up?  Or
10  have we covered everything that this call was supposed to be
11  about?
12       All right.  I will get a paper order out in the next day
13  or two regarding the stay, but, obviously, I've done it orally
14  and on the record.  So that's where we are.
15       New production day of the document is a week from today at
16  5:00 o'clock.  Briefing due by Friday.  And then, obviously,
17  that will give me the weekend to read your briefing.
18       And what I think we would just likely do is probably
19  reconvene by Zoom again on Monday morning and let you orally
20  argue it.
21       Does that seem to work?
22            MR. BUCK:  Yes, Your Honor.  That works for us.
23            THE COURT:  All right.  Mr. Prater looks like
24  something is about to come out of his mouth.
25       You have to unmute.  You're muted, Mr. Prater.

1           MR. PRATER:  I just wanted to note, Your Honor, that
2  Monday is Memorial Day.
3           THE COURT:  It sure is Memorial Day.  I'm glad you
4  pointed that out.
5           MR. PRATER:  Thank you.
6           THE COURT:  Then let's see here.  All right.  We'll
7  make it Tuesday.  And I will get an order out to that effect.
8       Good catch, Mr. Prater.  You saved me a lot of trouble and
9  trouble with my wife when I decided to go in to work on
10 Memorial Day.
11      All right.  I think that covers us.  And I'll get an order
12 out, but I'll see you all again on Tuesday.
13          MR. BUCK:  Thank you, Judge.
14          THE COURT:  All right.  Have a good one.
15
16          (Whereupon, the above proceedings were concluded at
17      1:59 p.m.)
18
19
20
21
22
23
24
25

```
 1                        CERTIFICATE

 2

 3

 4          I certify that the foregoing is a correct

 5   transcript from the record of proceedings in the

 6   above-entitled matter.

 7

 8

 9

10
     _____
11                                                    05-21-2024

12   Christina K. Decker, RMR, CRR                    Date

13   Federal Official Court Reporter

14   ACCR#:   255

15

16

17

18

19

20

21

22

23

24

25
```