# EXHIBIT 1

ACT #2022 - 289

1    SB184

2    216600-4

3    By Senators Shelnutt and Allen

4    RFD: Healthcare

5    First Read: 03-FEB-22



SB184

SB184

ENROLLED, An Act,

Relating to public health; to prohibit the performance of a medical procedure or the prescription of medication, upon or to a minor child, that is intended to alter the minor child's gender or delay puberty; to provide for exceptions; to provide for disclosure of certain information concerning students to parents by schools; and to establish criminal penalties for violations; and in connection therewith would have as its purpose or effect the requirement of a new or increased expenditure of local funds within the meaning of Amendment 621 of the Constitution of Alabama of 1901, as amended by Amendment 890, now appearing as Section 111.05 of the Official Recompilation of the Constitution of Alabama of 1901, as amended.

BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

Section 1. This act shall be known and may be cited as the Alabama Vulnerable Child Compassion and Protection Act (V-CAP).

Section 2. The Legislature finds and declares the following:

(1) The sex of a person is the biological state of being female or male, based on sex organs, chromosomes, and

SB184

1    endogenous hormone profiles, and is genetically encoded into a
2    person at the moment of conception, and it cannot be changed.
3            (2) Some individuals, including minors, may
4    experience discordance between their sex and their internal
5    sense of identity, and individuals who experience severe
6    psychological distress as a result of this discordance may be
7    diagnosed with gender dysphoria.
8            (3) The cause of the individual's impression of
9    discordance between sex and identity is unknown, and the
10   diagnosis is based exclusively on the individual's self-report
11   of feelings and beliefs.
12           (4) This internal sense of discordance is not
13   permanent or fixed, but to the contrary, numerous studies have
14   shown that a substantial majority of children who experience
15   discordance between their sex and identity will outgrow the
16   discordance once they go through puberty and will eventually
17   have an identity that aligns with their sex.
18           (5) As a result, taking a wait-and-see approach to
19   children who reveal signs of gender nonconformity results in a
20   large majority of those children resolving to an identity
21   congruent with their sex by late adolescence.
22           (6) Some in the medical community are aggressively
23   pushing for interventions on minors that medically alter the
24   child's hormonal balance and remove healthy external and

SB184

internal sex organs when the child expresses a desire to appear as a sex different from his or her own.

(7) This course of treatment for minors commonly begins with encouraging and assisting the child to socially transition to dressing and presenting as the opposite sex. In the case of prepubertal children, as puberty begins, doctors then administer long-acting GnRH agonist (puberty blockers) that suppress the pubertal development of the child. This use of puberty blockers for gender nonconforming children is experimental and not FDA-approved.

(8) After puberty blockade, the child is later administered "cross-sex" hormonal treatments that induce the development of secondary sex characteristics of the other sex, such as causing the development of breasts and wider hips in male children taking estrogen and greater muscle mass, bone density, body hair, and a deeper voice in female children taking testosterone. Some children are administered these hormones independent of any prior pubertal blockade.

(9) The final phase of treatment is for the individual to undergo cosmetic and other surgical procedures, often to create an appearance similar to that of the opposite sex. These surgical procedures may include a mastectomy to remove a female adolescent's breasts and "bottom surgery" that removes a minor's health reproductive organs and creates an

SB184

artificial form aiming to approximate the appearance of the genitals of the opposite sex.

(10) For minors who are placed on puberty blockers that inhibit their bodies from experiencing the natural process of sexual development, the overwhelming majority will continue down a path toward cross-sex hormones and cosmetic surgery.

(11) This unproven, poorly studied series of interventions results in numerous harmful effects for minors, as well as risks of effects simply unknown due to the new and experimental nature of these interventions.

(12) Among the known harms from puberty blockers is diminished bone density; the full effect of puberty blockers on brain development and cognition are yet unknown, though reason for concern is now present. There is no research on the long-term risks to minors of persistent exposure to puberty blockers. With the administration of cross-sex hormones comes increased risks of cardiovascular disease, thromboembolic stroke, asthma, COPD, and cancer.

(13) Puberty blockers prevent gonadal maturation and thus render patients taking these drugs infertile. Introducing cross-sex hormones to children with immature gonads as a direct result of pubertal blockade is expected to cause irreversible sterility. Sterilization is also permanent for those who undergo surgery to remove reproductive organs, and

SB184

1    such persons are likely to suffer through a lifetime of
2    complications from the surgery, infections, and other
3    difficulties requiring yet more medical intervention.
4         (14) Several studies demonstrate that hormonal and
5    surgical interventions often do not resolve the underlying
6    psychological issues affecting the individual. For example,
7    individuals who undergo cross-sex cosmetic surgical procedures
8    have been found to suffer from elevated mortality rates higher
9    than the general population. They experience significantly
10   higher rates of substance abuse, depression, and psychiatric
11   hospitalizations.
12        (15) Minors, and often their parents, are unable to
13   comprehend and fully appreciate the risk and life
14   implications, including permanent sterility, that result from
15   the use of puberty blockers, cross-sex hormones, and surgical
16   procedures.
17        (16) For these reasons, the decision to pursue a
18   course of hormonal and surgical interventions to address a
19   discordance between the individual's sex and sense of identity
20   should not be presented to or determined for minors who are
21   incapable of comprehending the negative implications and
22   life-course difficulties attending to these interventions.
23        Section 3. For the purposes of this act, the
24   following terms shall have the following meanings:

1           (1) MINOR. The same meaning as in Section 43-8-1,
2     Code of Alabama 1975.
3           (2) PERSON. Includes any of the following:
4           a. Any individual.
5           b. Any agent, employee, official, or contractor of
6     any legal entity.
7           c. Any agent, employee, official, or contractor of a
8     school district or the state or any of its political
9     subdivisions or agencies.
10          (3) SEX. The biological state of being male or
11    female, based on the individual's sex organs, chromosomes, and
12    endogenous hormone profiles.
13          Section 4. (a) Except as provided in subsection (b),
14    no person shall engage in or cause any of the following
15    practices to be performed upon a minor if the practice is
16    performed for the purpose of attempting to alter the
17    appearance of or affirm the minor's perception of his or her
18    gender or sex, if that appearance or perception is
19    inconsistent with the minor's sex as defined in this act:
20          (1) Prescribing or administering puberty blocking
21    medication to stop or delay normal puberty.
22          (2) Prescribing or administering supraphysiologic
23    doses of testosterone or other androgens to females.
24          (3) Prescribing or administering supraphysiologic
25    doses of estrogen to males.

1    (4) Performing surgeries that sterilize, including
2    castration, vasectomy, hysterectomy, oophorectomy,
3    orchiectomy, and penectomy.
4    (5) Performing surgeries that artificially construct
5    tissue with the appearance of genitalia that differs from the
6    individual's sex, including metoidioplasty, phalloplasty, and
7    vaginoplasty.
8    (6) Removing any healthy or non-diseased body part
9    or tissue, except for a male circumcision.
10   (b) Subsection (a) does not apply to a procedure
11   undertaken to treat a minor born with a medically verifiable
12   disorder of sex development, including either of the
13   following:
14   (1) An individual born with external biological sex
15   characteristics that are irresolvably ambiguous, including an
16   individual born with 46 XX chromosomes with virilization, 46
17   XY chromosomes with under virilization, or having both ovarian
18   and testicular tissue.
19   (2) An individual whom a physician has otherwise
20   diagnosed with a disorder of sexual development, in which the
21   physician has determined through genetic or biochemical
22   testing that the person does not have normal sex chromosome
23   structure, sex steroid hormone production, or sex steroid
24   hormone action for a male or female.
25   (c) A violation of this section is a Class C felony.

SB184

1     Section 5. No nurse, counselor, teacher, principal,
2  or other administrative official at a public or private school
3  attended by a minor shall do either of the following:
4     (1) Encourage or coerce a minor to withhold from the
5  minor's parent or legal guardian the fact that the minor's
6  perception of his or her gender or sex is inconsistent with
7  the minor's sex.
8     (2) Withhold from a minor's parent or legal guardian
9  information related to a minor's perception that his or her
10 gender or sex is inconsistent with his or her sex.
11    Section 6. Except as provided for in Section 4,
12 nothing in this act shall be construed as limiting or
13 preventing psychologists, psychological technicians, and
14 master's level licensed mental health professionals from
15 rendering the services for which they are qualified by
16 training or experience involving the application of recognized
17 principles, methods, and procedures of the science and
18 profession of psychology and counseling.
19    Section 7. Nothing in this section shall be
20 construed to establish a new or separate standard of care for
21 hospitals or physicians and their patients or otherwise
22 modify, amend, or supersede any provision of the Alabama
23 Medical Liability Act of 1987 or the Alabama Medical Liability
24 Act of 1996, or any amendment or judicial interpretation of
25 either act.

SB184

1   Section 8. If any part, section, or subsection of
2   this act or the application thereof to any person or
3   circumstances is held invalid, the invalidity shall not affect
4   parts, sections, subsections, or applications of this act that
5   can be given effect without the invalid part, section,
6   subsection, or application.
7   Section 9. This act does not affect a right or duty
8   afforded to a licensed pharmacist by state law.
9   Section 10. Although this bill would have as its
10  purpose or effect the requirement of a new or increased
11  expenditure of local funds, the bill is excluded from further
12  requirements and application under Amendment 621, as amended
13  by Amendment 890, now appearing as Section 111.05 of the
14  Official Recompilation of the Constitution of Alabama of 1901,
15  as amended, because the bill defines a new crime or amends the
16  definition of an existing crime.
17  Section 11. This act shall become effective 30 days
18  following its passage and approval by the Governor, or its
19  otherwise becoming law.

SB184

_[Signature]_
President and Presiding Officer of the Senate

_Mac McCutcheon_
Speaker of the House of Representatives

SB184
Senate 23-FEB-22
I hereby certify that the within Act originated in and passed the Senate, as amended.

                Patrick Harris,
                Secretary.

House of Representatives
Passed: 07-APR-22

By: Senator Shelnutt

APPROVED 4-8-2022
TIME 2:10 pm
_Kay Ivey_
GOVERNOR

Alabama Secretary Of State
Act Num....: 2022-289
Bill Num...: S-184
Recv'd 04/08/22   02:23pmSLF

| SPONSOR | 1 | Shelnutt |
|---|---|---|
| CO-SPONSORS | 2 | Allen |
| | 3 | |
| | 4 | |
| | 5 | |
| | 6 | |
| | 7 | |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |
| | 26 | |
| | 27 | |
| | 28 | |
| | 29 | |
| | 30 | |
| | 31 | |
| | 32 | |
| | 33 | |
| | 34 | |
| | 35 | |

---

DATE: 2-24

RD 1 RFD Jud

I hereby certify that the Resolution as required in Section C of Act No. 81-889 was adopted and is attached to the Bill,

SB 184

yeas 24 nays 4 abstain 0

**PATRICK HARRIS,**
Secretary

I hereby certify that the notice & proof is attached to the Bill, SB _____ as required in the General Acts of Alabama, 1975 Act No. 919.

**PATRICK HARRIS,**
Secretary

**CONFERENCE COMMITTEE**

Senate Conferees _____

_____ Chairperson

---

DATE: 2-24

RD 2

**REPORT OF STANDING COMMITTEE**

This bill having been referred by the House to its standing committee on _____ was acted upon by such committee in session, and returned therefrom to the House with the recommendation that it be Passed, w/amend(s) _____ w/sub _____

This 2 day of March, 20 22

_____ Chairperson

DATE: 3-2

RF _____

RE-REFERRED ☐   RE-COMMITTED ☐
Committee _____

DATE: _____

I hereby certify that the Resolution as required in Section C of Act No. 81-889 was adopted and is attached to the Bill,

SB _____

YEAS _____ NAYS _____

**JEFF WOODARD,**
Clerk

**FURTHER HOUSE ACTION (OVER)**