# EXHIBIT 6

Case 2:22-cv-00184-LCB-CWB   Document 592-6   Filed 06/24/24   Page 2 of 8

# Combating Scientific Disinformation on Gender-Affirming Care

Meredithe McNamara, MD, MSc,[a] Hussein Abdul-Latif, MD,[b] Susan D. Boulware, MD,[a] Rebecca Kamody, PhD,[c] Laura E. Kuper, PhD,[d] Christy L. Olezeski, PhD,[e] Nathalie Szilagyi, MD,[a] Anne Alstott, JD[f]

abstract

Scientific disinformation is false and misleading information that is used intentionally by legal and political actors to sway public opinion and oppose facts. In recent years, disinformation has become a tool for authorities to limit gender-affirming health care (GAC) for transgender and gender-expansive youth who experience gender dysphoria. Existing modes of expert intervention in health policy may not be sufficient to match the pace of these quickly unfolding health care bans. A cross-disciplinary team of academics in medicine, psychology, and law assembled to challenge scientific disinformation on GAC with 2 rapid-response rebuttal reports. Reports were produced in 3 to 10 weeks after the passage of GAC bans in Texas, Alabama, and Florida in 2022. They were posted online to facilitate dissemination and engage litigators, judges, policy experts, advocates, parents, and others. The team's efforts complemented public statements by medical societies and lawsuits brought by national LGBTQ litigators. The team's reports were cited in legal challenges to GAC bans in Texas, Alabama, and Florida. The team also filed amicus briefs for direct consideration by the courts and public comments to health care agencies in Florida. The reports received coverage in local and national media outlets in broadcast and print media. This advocacy case study describes the process used to challenge disinformation about GAC with rapid-response rebuttal reports, as well as the impact of this work and associated challenges. In an increasingly polarized political climate, this process may be adapted to other areas of health policy in which scientific disinformation takes root.



[a]Department of Pediatrics, Yale School of Medicine, New Haven, Connecticut; [b]University of Alabama-Birmingham, Birmingham, Alabama; [c]Yale Child Study Center, Yale School of Medicine, New Haven, Connecticut; [d]Childrens' Health Systems of Texas, University of Texas Southwestern Medical Center, Houston, Texas; [e]Department of Psychiatry, Yale School of Medicine, New Haven, Connecticut; and [f]Yale Law School, New Haven, Connecticut

Dr McNamara conceptualized and drafted the initial manuscript and critically reviewed and revised subsequent versions of the manuscript; Drs Abdul-Latif, Boulware, Kamody, Kuper, Olezeski, and Szilagyi critically reviewed and revised the manuscript; Ms Alstott drafted the initial manuscript and critically reviewed and revised subsequent versions of the manuscript; and all authors conceptualized the work described in this Advocacy Case Study, approved the final manuscript as submitted, and agree to be accountable for all aspects of the work.

**DOI:** https://doi.org/10.1542/peds.2022-060943

Accepted for publication Apr 20, 2023

Address correspondence to Meredithe McNamara, MD, MSc, Department of Pediatrics, Yale School of Medicine, 15 York St, New Haven, CT 06512. E-mail: meredithe.mcnamara@yale.edu

PEDIATRICS (ISSN Numbers: Print, 0031-4005; Online, 1098-4275).

Copyright © 2023 by the American Academy of Pediatrics

**FUNDING:** No external funding.

**CONFLICT OF INTEREST DISCLOSURES:** The authors have indicated they have no potential conflicts of interest to disclose.

**To cite:** McNamara M, Abdul-Latif H, Boulware SD, et al. Combating Scientific Disinformation on Gender-Affirming Care. *Pediatrics.* 2023;152(3): e2022060943

Transgender and gender-expansive (TGE) is an umbrella term that describes those whose gender identity is different from their assigned sex at birth and not necessarily binary male or female. In 2021 and 2022, state legislatures and other legal authorities proposed and enacted an unprecedented number of actions that discriminate against TGE youth (Fig 1).[1–4] Some prohibit children and adolescents from participating in sports aligned with their gender and using an appropriate school bathroom. Anti-LGBTQ policy actions also target gender-affirming medical care (GAC) for TGE youth, thus interfering in the physician-patient relationship and overriding private medical decisions.[5] Several of these laws threaten health care providers with prison time, malpractice liability, and loss of licensure, whereas others penalize parents and guardians who consent to this care (Table 1). We refer to these measures collectively as "GAC bans" because all seek to prohibit or limit care for TGE youth or adults. Most of these bans have been blocked temporarily by courts, but litigation is ongoing, and some are currently in force. The intimidation of such actions has disrupted clinical services at children's hospitals throughout the country.[6]

Medical evidence establishes that transgender and gender-diverse identities are valid, that gender dysphoria is real, and that GAC is safe and effective when provided in accordance with guidelines issued by, among others, the World

Downloaded from http://publications.aap.org/pediatrics/article-pdf/doi/10.1542/peds.2022-060943/1524046/peds.2022-060943.pdf by Alabama Department of Public Health user



**FIGURE 1**
Number of US states with statewide legal measures targeting transgender and gender-expansive youth per year. Legal measures include legislation adopted by US states; proposed but not-yet-adopted measures are excluded. Also excluded are (1) local rules (eg, school district policies) that restrict sports participation or bathroom access and (2) statewide laws (colloquially known as "Don't Say Gay or Trans") that exclude mentions of gender identity and sexual orientation in school curricula.

Professional Association for Transgender Health (WPATH) and the Endocrine Society.[7,8] GAC for youth is supported by every relevant major medical association, including the American Academy of Pediatrics (AAP), American Psychological Association, and the American Academy of Child and Adolescent Psychiatry.[9–11] Although legal authorities have the resources to consult the science and draft health policy that aligns with medical consensus, promoters of GAC bans have ignored or mischaracterized the scientific evidence.[12,13] These legal authorities have erroneously contended that transgender identities are the product of mental illness and social contagion, that gender dysphoria in adolescence resolves spontaneously, that GAC is forced onto patients by physicians, and that it is experimental and dangerous.

Scientific disinformation is distinct from misinformation. Whereas misinformation can be unwittingly spread by those without access to the facts, disinformation is used by those who know, or have the resources to know, that it is false or misleading. Such disinformation has recently been deployed to justify GAC bans in legislation, court filings, and administrative agency actions.[12,13] For example, legislation in Alabama includes the statement that "[s]ome in the medical community are aggressively pushing for interventions on minors."[1] The legislation also states that "[m]inors, and often their parents, are unable to comprehend and fully appreciate the risk and life implications, including permanent sterility, that result from the use of puberty blockers, cross-sex hormones, and surgical procedures."[1] In fact, WPATH Standards of Care and Endocrine Society Clinical Practice Guidelines establish a careful process for psychosocial assessment and interdisciplinary medical counseling, with the expressed goal of providing individualized care guided by informed consent and assent.[7,8]

| TABLE 1 GAC Bans Adopted in 2021 and 2022 in US States | | | |
|---|---|---|---|
| **State** | **Year of Action** | **Patients Targeted** | **Type of Action and Consequences** |
| Arkansas | 2021 | Youth | Legislation passed over governor's veto<br>    Imposes loss of licensure on physicians who provide GAC |
| Texas | 2022 | Youth | Governor's directive based on state attorney general legal opinion that GAC is "child abuse"<br>    Texas DFPS directed to investigate parents who consent to GAC |
| Alabama | 2022 | Youth | Legislation<br>    Imposes criminal penalties including prison sentences of up to 10 y on physicians and other providers of GAC, as well as those who consent to care |
| Florida | 2022 | All ages | State Medicaid regulations<br>    Deny coverage for GAC to patients of any age |
| Florida | 2022 | Youth | Standard of care adopted by Florida Board of Medicine and Board of Osteopathic Medicine<br>    Prohibit GAC for youth |

Downloaded from http://publications.aap.org/pediatrics/article-pdf/doi/10.1542/peds.2022-060943/1524046/peds.2022-060943.pdf
by Alabama Department of Public Health user

Disinformation about GAC often includes attacks on medical authority.[1,2,4,12,13] Medical societies that support GAC have become a target for disinformation attacks that reject the societies' expertise and dismiss them as biased. For example, a legal brief filed by the state of Alabama contends that "organizations like the American Medical Association and the American Academy of Pediatrics continue to follow the popular zeitgeist when it comes to unproven gender-affirming interventions," whereas a brief filed by the state of Arkansas urged, in reference to WPATH and the Endocrine Society, that "[n]othing requires the [Food and Drug Administration], Arkansas, or any governmental entity to defer to the policy judgements of an advocacy organization."[1,4,14,15]

Legal documents justifying GAC bans often ignore or mischaracterize clinical practice guidelines and offer cherry-picked criticisms of individual studies without addressing the preponderance of evidence establishing the benefits and risks of GAC for patients with gender dysphoria.[12,13] For example, the state of Florida's Agency for Health Care Administration (AHCA) recommended a GAC ban for Medicaid patients on the basis of an unpublished, non-peer-reviewed literature review by authors with no subject-matter expertise who commented on a truncated sample of available studies.[3] The Florida agency also relied on unpublished, non-peer-reviewed reports by authors whose expertise has been successfully challenged in court (ie, their testimony was questioned or disallowed by judges), as well as some with ties to antitransgender groups.[13]

The authors of this Advocacy Case Study have documented and rebutted this disinformation at length in 2 reports with voluminous citations to published and peer-reviewed scientific evidence.[12,13] This piece is focused on the process by which these reports were developed, their impact, lessons learned, and implications for future work.

### RESPONSE TO DISINFORMATION

In response to the growing number of GAC bans, the authors assembled an interdisciplinary group of subject matter experts to craft a written product, a "rapid-response rebuttal report," to document and rebut scientific disinformation about GAC. Our goal was to contribute to the complex ecosystem of legal and scientific information about GAC. National and regional LGBTQ groups, including the American Civil Liberties Union, Lambda Legal, and GLBTQ Legal Advocates and Defenders, have filed lawsuits to protect access to GAC and oppose bans. Medical societies have publicly endorsed GAC and opposed GAC bans.[16] Individual researchers and clinicians have provided information to litigators and the public via expert witness testimony and peer-reviewed scholarship.

Our team's objective was to combine legal and medical expertise to complement these efforts in 2 ways. First, we aimed to craft written reports that would make sound scientific information accessible to lawyers, who typically are not trained to analyze medical research. An important feature of these reports is the inclusion of thorough citations to the scientific literature. Second, the team sought to identify and rebut in detail the false and misleading claims made about GAC by state authorities. As the team's work developed, we found that these reports could support additional efforts to combat disinformation via media engagement and direct participation in legal and policy processes.

### OUR TEAM

We formed a cross-disciplinary team, consisting of a legal scholar and 7 clinicians with academic affiliations from 3 institutions. The legal scholar, who is a lawyer capable of both practice and academic research, organized and helmed the project (AA). Her knowledge helped pinpoint where, among evolving legal controversy, this work would have the greatest impact. She also played a translational role by distilling key questions from legal sources and ensuring that our written work would be accessible to a nonscientific audience. All clinicians treat transgender youth and 2 practice in jurisdictions of GAC bans. Two are pediatric endocrinologists (HAL, SB), 1 is an adolescent medicine physician (MM), 1 is a child and adolescent psychiatrist (NS), and 3 are pediatric psychologists (RK, LK, CO). Many conduct research in this field and provide training that is relevant to this work. Collectively, our group has 57 years of experience in treating >2100 TGE youth.

### COMBATTING DISINFORMATION: EXISTING AND NEW MODES FOR EXPERT INTERVENTION

Existing modes of scientific expert intervention in health policy include published scholarship, testimony in litigation, and media engagement. All of these are critical avenues for communicating scientific information but also have limitations in addressing the rapid spread of disinformation in an evolving legal landscape of GAC bans. Peer-reviewed journal publications cannot be quickly produced and are not easily accessible to nonexperts. Expert testimony in litigation provides accurate information to courts but occurs only after enacted bans are challenged and is not easily accessible to the public. Medical society policy statements are impactful and can be quickly responsive, but they are typically concise and provide affirmative portrayals of medical knowledge rather than specific rebuttals of disinformation. Media engagement by experts is also effective but cannot convey the in-depth analysis needed to rebut disinformation claims. After reviewing these options, the team concluded that a comprehensive, evidence-based,

Downloaded from http://publications.aap.org/pediatrics/article-pdf/doi/10.1542/peds.2022-060943/1524046/peds.2022-060943.pdf by Alabama Department of Public Health user

and quickly produced document could provide a critical resource for legal and public discourse.

### PREPARATION AND PROCESS

Our rapid-response rebuttal reports used the expertise of all team members. Pediatric psychologists and a psychiatrist addressed false and misleading claims that cooccurring mental health disorders and social contagion are responsible for gender dysphoria. Pediatric endocrinologists and the adolescent medicine physician analyzed misinformation about standard practice and the safety of gender-affirming medications. Those with experience in clinical research exposed the mischaracterization of existing data and engaged with misleading claims about the strength of evidence on GAC. The legal scholar clarified technical points and strengthened arguments. Together, the team developed clinically relevant analogies that would clarify issues for judges, litigators, and journalists.

Members of our group contributed as much as they were able, with individuals working from 5 to 25 hours per week. The first report took ∼80 hours of combined effort and went through 5 drafts. The second report took 70 hours of combined effort and went through 3 drafts. All authors approved the final versions of each report before public dissemination.

With lead times of 3 to 10 weeks, the team produced 2 freely accessible written products that rebutted disinformation claims in 3 GAC bans. A 28-page report rebutting disinformation in the Texas and Alabama actions was issued on April 28, 2022.[12] This was 2 months after the Texas Attorney General opinion and Governor directive for the Department of Family and Protective Services (DFPS) to investigate parents of TGE youth and 20 days after the enactment of the Alabama GAC ban. A 47-page report was submitted as a formal comment letter to Florida 3 weeks after the state issued its proposed Medicaid ban on GAC.[13,17]

Dissemination of findings was achieved with a multimodal strategy. We made our reports freely available on a Web site hosted by an academic institution and on an open-access research platform (Social Science Research Network). We circulated the reports within our respective professional networks via e-mail list-serves. One institution's communications office issued press releases to relevant local and national outlets. Members of the group also prepared an opinion piece and pitched it to various news outlets. The results of this dissemination strategy are discussed below.

To approximate an element of peer review, we approached medical societies with expertise relevant to GAC. Our first report received formal endorsement from 6 medical societies, including the Endocrine Society, the United States Professional Association of Transgender Health, WPATH, the Society of Adolescent Health and Medicine, the North American Society of Pediatric and Adolescent Gynecology, and Health Professionals Advancing LGBTQ Equality. In each written product, team members clearly stated that we received no financial compensation for this work and had no other conflicts of interest. After the release of each report, 1 institution's communications offices disseminated press releases nationally and to news outlets in the jurisdictions of GAC bans, with subsequent media coverage.

### OUTCOMES IN ENGAGEMENT WITH LEGAL PROCESSES

In litigation challenging GAC bans, defendants are the states whereas plaintiffs are usually doctors, parents, and patients denied care. Plaintiffs first ask a court to preliminarily enjoin, or block, enforcement of the law so that care can proceed until a full trial is conducted. At all stages of litigation, courts consider evidence via briefs presented by the plaintiffs and defendants. Courts also consider amicus briefs, which are submitted by individuals or groups with relevant expertise and a special interest in the outcome of the case. Thus far, our team's reports have been cited in legal briefs in challenges to GAC bans in Texas, Alabama, and Florida (Table 2).[15,18,19] In addition, the team submitted amicus briefs in the court of appeals in the Alabama case and in the trial court in the Florida case.[20,21] These briefs argued that GAC bans in Alabama and Florida did not rest on scientific knowledge and should be enjoined pending litigation.

In Florida, the team also submitted comments to oppose proposed GAC bans. Like many states and the federal government, Florida agencies provide a public comment period before the adoption of any proposed rule. After the Florida AHCA proposed to deny Medicaid coverage for GAC, we submitted a timely formal comment letter and attached our second report.[17] The second report was also cited by other organizations in their own formal comments.[22] Although the Florida Medicaid ban was adopted in September 2022, the team's comments and those of others are part of an official legal record that will be relevant to the plaintiff's lawsuit challenging the rule. When Florida's Board of Medicine shortly thereafter considered a broader ban on GAC for youth, 1 member of our group provided expert testimony in a public hearing, and the team submitted formal written comments which were broadly cited as well.[23,24] The Florida Board of Medicine and Board of Osteopathic Medicine are expected to adopt this rule, but once again, these comments and testimony will serve as relevant information for future litigation.

### OUTCOMES IN PUBLIC ENGAGEMENT

Our work was covered >30 times in at least 19 media outlets. Members of our group were contacted by

Downloaded from http://publications.aap.org/pediatrics/article-pdf/doi/10.1542/peds.2022-060943/1524046/peds.2022-060943.pdf
by Alabama Department of Public Health user

| State | Legal Action Interfering With GAC (Corresponding Report) | Legal Challenge to Action; Plaintiffs | Status of Action | Direct Participation by Our Team | Citations of Reports |
|---|---|---|---|---|---|
| Texas | Based on Attorney General Opinion, Governor directed the DFPS to investigate families[a] | PFLAG v Abbott,* families investigated by the DFPS | Enjoined; pending trial | None | Plaintiff's Original Petition, Application for Temporary Restraining Order*[16] |
| Alabama | Vulnerable Child and Compassion Act[a] | Eknes-Tucker v Governor of Alabama,* Minister, doctors, parents, and patients deprived of care | Enjoined; pending trial | Amicus brief*[19] | Reply brief in support of Plaintiff's Motion for Temporary Restraining Order*[13] |
| Florida | AHCA adopted rule that terminated Medicaid coverage of GAC for all ages[3][b] | Dekker v Weida;* Patients denied Medicaid coverage by the AHCA | Rule struck down | Comment letter**[16] Amicus brief*[21] | Comment letter from the AAP and Florida Chapter of the AAP**[22] Complaint and Plaintiff's Motion for Preliminary Injunction, Dekker v Weida*[19] |
|  | Board of Medicine and Board of Osteopathic Medicine proposed rule to ban GAC for youth[23][b] | Doe v Ladapo*; Minor patients and denied GAC and their parents | Enjoined; pending trial | Comment letter**[24] Expert testimony**[23] | Comment letters from the AAP, Florida Chapter of the AAP, Human Rights Campaign, and others**[24] |

TABLE 2 Our Team's Direct Participation and Citation in Addressing GAC Bans by State

[a] A Critical Review of the June 2022 Florida Medicaid Report on the Medical Treatment of Gender Dysphoria.
[b] Biased Science: The Texas and Alabama Measures Criminalizing Medical Treatment of Transgender Children and Adolescents Rely on Inaccurate and Misleading Scientific Claims.
* Litigation.
** Regulatory comments.

journalists for interviews, which allowed key points about scientific disinformation challenges to be distilled and conveyed in print, radio, and televised media. Team members also prepared shorter pieces with clear cross-references to the reports, including an op-ed in a major national newspaper and 3 commentaries in high-impact medical journals.[25–28]

## LESSONS LEARNED

Rapid-response rebuttal reports are 1 way to bring expert knowledge to bear in the legal processes that shape health policy. The team's reports and related materials have been included in the legal record for GAC bans in litigation and regulatory processes that lead to the adoption of GAC bans. In this sense, the team achieved its goals formed at the project's inception in producing documents that were included in the legal, policy, and public discourse on essential health care for TGE youth. We cannot yet know the longer-term impacts of this work, as litigation challenging GAC bans is now proceeding in several states.

Challenges arose in producing and amplifying this work. First, the quick pace of legal actions imposed inflexible deadlines, which can be difficult for clinicians with patient care responsibilities. We were motivated by the looming harm that these bans imposed on our patients and colleagues. We sketched out, in advance, the timeline for each project and kept our group small to ensure participation and accountability. Active leadership and clear assignments of responsibility for specific subtopics helped us work quickly and make the best use of our multidisciplinary expertise. Second, a rapid-response rebuttal report cannot be formally peer-reviewed. We addressed this by convening a diverse group of subject-matter experts from different institutions. Medical organization endorsement afterward enhanced the credibility of this nontraditional work. Third, our work proceeded in a harsh political climate. Some members of our group faced harassment, and some faced legal interference in their clinical practice from bans. We provided support and solidarity to one another, and those receiving threats used institutional safety procedures.

Downloaded from http://publications.aap.org/pediatrics/article-pdf/doi/10.1542/peds.2022-060943/1524046/peds.2022-060943.pdf
by Alabama Department of Public Health user

Rapid response rebuttal reports complement other efforts to address disinformation about GAC. Medical societies have become active participants in litigation challenging GAC bans, and their interventions have had positive effects. In Alabama, for example, a federal judge gave weight to an amicus brief filed by 22 medical societies, including the AAP, the American Medical Association, the Society of Adolescent Health and Medicine, and others.[16] The AAP has submitted public comments opposing Florida GAC bans, and WPATH has used its members' expertise to issue public statements that target disinformation.[22,24,29] Individual researchers have published reviews and commentaries in medical journals challenging GAC misinformation as well.[30,31]

## CONCLUSIONS

Rapid-response rebuttal reports may provide a template for confronting disinformation and misinformation in other areas of health policy. Disinformation is rampant in areas of policy that particularly impact children and adolescents, including vaccinations, climate change, tobacco use, HIV prevention, and reproductive health care, among others. Although it is challenging to assemble cross-disciplinary experts and produce legally relevant written products on a tight time schedule, these reports can be useful in disseminating sound scientific information to litigators, policymakers, journalists, and the public.

### ABBREVIATIONS

AAP: American Academy of Pediatrics
AHCA: Agency for Health Care Administration
DFPS: Department of Family and Protective Services
GAC: gender-affirming care
TGE: transgender and gender-expansive
WPATH: World Professional Association for Transgender Health

## REFERENCES

1. US Department of Justice. S.B. 184, Vulnerable Child Compassion and Protection Act, 2022 Ala. Laws 289. Available at: https://www.justice.gov/opa/pr/justice-department-challenges-alabama-law-criminalizes-medically-necessary-care-transgender. Accessed February 2, 2023

2. Paxton K. Re: whether certain medical procedures performed on children constitute child abuse. Feb. 18, 2022, Opinion No. KP-0401. Available at: https://texasattorneygeneral.gov/sites/default/files/global/KP-0401.pdf. Accessed November 15, 2022

3. Florida Department of State. Fl. Dep't of Health Board of Med., notice of proposed rule 64b8-9.019, standards of practice for the treatment of gender dysphoria in minors (Nov. 14, 2022), at 59G-1.050 General Medicaid Policy. Available at: https://www.flrules.org/gateway/RuleNo.asp?id=64B8-9.019. Accessed December 6, 2022

4. Arkansas State Legislature. S H.B. 1570, save adolescents from experimentation (SAFE) Act. A.R. Legis. Assemb. Act 626. Reg. Sess. 2021-2022 (2021). Available at: https://www.arkleg.state.ar.us/Bills/Detail?id=HB1570&ddBienniumSession=2021%2F2021R. Accessed February 2, 2023

5. Conron KJ, O'Neal K, Vasquez L. Prohibiting gender-affirming medical care for youth. Available at: https://williamsinstitute.law.ucla.edu/publications/bans-trans-youth-health-care/. Accessed July 13, 2022

6. Letter from the American Academy of Pediatrics. American Medical Association and Children's Hospital Association to Merrick Garland, Attorney General of the United States, October 3, 2022. Available at: https://downloads.aap.org/DOFA/DOJ%20Letter%20Final.pdf. Accessed January 25, 2023

7. World Professional Association for Transgender Health. Standards of care for the health of transsexual, transgender, and gender nonconforming people. Available at: https://www.wpath.org/publications/soc8. Accessed December 6, 2022

8. Hembree WC, Cohen-Kettenis PT, Gooren L, et al. Endocrine treatment of gender-dysphoric/gender-incongruent persons: an Endocrine Society clinical practice guideline. *J Clin Endocrinol Metab.* 2017;102(11):3869–3903

9. Rafferty J; Committee on Psychosocial Aspects of Child and Family Health; Committee on Adolescence; Section on Lesbian, Gay, Bisexual, and Transgender Health and Wellness. Ensuring comprehensive care and support for transgender and gender-diverse children and adolescents. *Pediatrics.* 2018;142(4):e20182162

10. American Psychological Association. Guidelines for psychological practice with transgender and gender nonconforming people. *Am Psychol.* 2015;70(9):832–864

11. Adelson SL; American Academy of Child and Adolescent Psychiatry (AACAP) Committee on Quality Issues (CQI). Practice parameter on gay, lesbian, or bisexual sexual orientation, gender nonconformity, and gender discordance in children and adolescents. *J Am Acad Child Adolesc Psychiatry.* 2012;51(9):957–974

12. Boulware S, Kamody R, Kuper L, et al. Yale University. Biased science: the Texas and Alabama measures criminalizing medical treatment for transgender children and adolescents rely on inaccurate and misleading scientific claims. Available at: https://medicine.yale.edu/lgbtqi/research/gender-affirming-care/report%20on%20the%20science%20of%20gender-affirming%20care%20final%20april%2028%202022_442952_55174_v1.pdf. Accessed December 10, 2022

13. McNamara M, Abdul-Latif H, Boulware S, et al. Yale University. A critical review of the June 2022 Florida Medicaid Report on the medical treatment of gender dysphoria. Available at: https://medicine.yale.edu/lgbtqi/research/gender-affirming-care/florida%20report%20final%20july%208%202022%20accessible_443048_284_55174_v3.pdf. Accessed December 10, 2022

14. US Department of Justice. Reply in support of plaintiffs' motion for temporary restraining order and preliminary injunction, Eknes-Tucker v. Governor of Alabama, May 4, 2022. Available at: https://www.justice.gov/crt/case-document/file/1526016/download. Accessed February 2, 2023

15. ACLU. Defendants' combined brief in opposition to plaintiffs' motion for preliminary injunction; and reply in support of defendants' motion to dismiss, Brandt v. Rutledge, E.D. Ark. July 9, 2021. Available at:

Downloaded from http://publications.aap.org/pediatrics/article-pdf/doi/10.1542/peds.2022-060943/1524046/peds.2022-060943.pdf
by Alabama Department of Public Health user

Case 2:22-cv-00184-LCB-CWB   Document 592-6   Filed 06/24/24   Page 8 of 8

https://www.aclu.org/legal-document/brandt-et-al-v-rutledge-et-al-defendants-opposition-motion-preliminary-injunction. Accessed December 6, 2022

16. GLAD. Brief of amicus curiae American Academy of Pediatrics and additional national and state medical and mental health organizations in support of plaintiffs' motion for temporary restraining order and preliminary injunction. Eknes-Tucker v. Ivey [later renamed Eknes-Tucker v. Governor of Alabama] May 4, 2022. Available at: https://www.glad.org/wp-content/uploads/2022/05/medical-organizations-amicus-brief.pdf. Accessed December 6, 2022

17. Yale University. Letter from Anne Alstott, et al., to Simone Marstiller, Secretary, Florida Agency for Health Care Administration, July 8, 2022. Available at: https://medicine.yale.edu/lgbtqi/research/gender-affirming-care/alstott%20et%20al%20full%20comment%20proposed%20rule%20re%20gender%20dysphoria_443049_284_55174_v3.pdf. Accessed December 4, 2022

18. Lambda Legal. Plaintiffs' original petition, application for temporary restraining order, temporary and permanent injunction, and request for declaratory relief, PFLAG v. Abbott, June 8, 2022. Available at: https://www.lambdalegal.org/sites/default/files/legal-docs/downloads/pflag_v._abbott_-_filed_petition.pdf. Accessed December 6, 2022

19. National Health Law Program. Complaint for declaratory, injunctive, and other relief, Dekker v. Marstiller, N.D. Fl. Sept. 7, 2022. Available at: https://healthlaw.org/wp-content/uploads/2022/09/FILED-Complaint-against-AHCA.pdf. Accessed December 6, 2022

20. Yale University. Brief of amicus curiae Hussein Abdul-Latif et al. in support of affirmance of the district court's order granting a preliminary injunction, Eknes-Tucker v. Governor, State of Alabama, 11th Cir. (2022). Available at: https://medicine.yale.edu/lgbtqi/research/gender-affirming-care/defending-gender-affirming-care-in-alabama/. Accessed December 6, 2022

21. Justia. Motion for leave to file brief of amici curiae and memorandum in support of the motion by Anne Alstott. Susan D. Boulware, Abdul-Latif Hussein, Rebecca Kamody, Laura Kuper, Meredithe McNamara, Christy Olezeski, Nathalie Szilagyi, Dekker v. Marstiller, N.D. Fl. Nov. 30, 2022. (Not considered solely for reasons of timing). Available at: https://dockets.justia.com/docket/florida/flndce/4:2022cv00325/443916. Accessed December 10, 2022

22. National Health Law Program. Letter from the American Academy of Pediatrics and Florida Chapter of the American Academy of Pediatrics to Tom Wallace. 2022. Available at: https://downloads.aap.org/DOFA/AAP-FCAAP%20Comment%20Letter_Medicaid%20Coverage%20for%20Gender-Affirming%20Care.pdf. Accessed December 10, 2022

23. Florida Board of Medicine and Board of Osteopathic Medicine. Meeting minutes. Available at: https://ww10.doh.state.fl.us/pub/medicine/Agenda_Info/Public_Information/Public_Minutes/2022/October/10282022_RL_Minutes.pdf. Accessed December 10, 2022

24. AAP. Letter to Dr. David Diamond, Chair of the Florida Board of Medicine, from Moira Szilagyi, MD and Teresa Gwynn, DO - July 29, 2022. Available at: https://downloads.aap.org/DOFA/JointAAPFCAAPLettertoFLBoardofMedicine.pdf. Accessed December 10, 2022

25. Lepore C, Alstott A, McNamara M. Scientific misinformation is criminalizing the standard of care for transgender youth. *JAMA Pediatr.* 2022;176(10):965–966

26. McNamara M, Lepore C, Alstott A, et al. Scientific misinformation and gender affirming care: tools for providers on the front lines. *J Adolesc Health.* 2022;71(3):251–253

27. McNamara M, Lepore C, Alstott A. Protecting transgender health and challenging science denialism in policy. *N Engl J Med.* 2022;387(21):1919–1921

28. Olezeski C, McNamara M, Alstott A; Los Angeles Times. Op/Ed: denying trans youth gender affirming care is an affront to science and medical ethics. Available at: https://www.latimes.com/opinion/story/2022-06-13/trans-youth-healthcare-state-bans. Accessed December 10, 2022

29. USPATH, WPATH. USPATH and WPATH respond to NY Times article "They Paused Puberty, But Is There a Cost?". Available at: https://www.wpath.org/media/cms/Documents/Public%20Policies/2022/USPATHWPATH%20Statement%20re%20Nov%2014%202022%20NYT%20Article%20Nov%2022%202022.pdf?_t=1669173834. Accessed December 10, 2022

30. Kraschel KL, Chen A, Turban JL, Cohen IG. Legislation restricting gender-affirming care for transgender youth: politics eclipse healthcare. *Cell Rep Med.* 2022;3(8):100719

31. Gordon CM. Caught in the middle: the care of transgender youth in Texas. *Pediatrics.* 2022;149(6):e2022057475

Downloaded from http://publications.aap.org/pediatrics/article-pdf/doi/10.1542/peds.2022-060943/1524046/peds.2022-060943.pdf by Alabama Department of Public Health user