## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| BRIANNA BOE *et al*., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Intervenor*, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00184-LCB-CWB |
| | ) | Hon. Liles C. Burke |
| STEVE MARSHALL, in his official | ) | |
| capacity as Attorney General of the | ) | |
| State of Alabama, *et al*., | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' COMBINED MOTIONS IN LIMINE TO EXCLUDE TESTIMONY OF I. GLENN COHEN AS AN IMPROPER REBUTTAL WITNESS AND AS CONTRARY TO RULE 702

# TABLE OF CONTENTS

Table of Contents ..................................................................................... i

Table of Authorities ............................................................................... ii

Introduction ............................................................................................1

Background .............................................................................................2

Argument.................................................................................................3

    I.   Cohen's Testimony Should Be Excluded Because, As A Non-Rebuttal Witness, His Testimony Was Not Timely Disclosed...................3

        A.   Cohen Does Not Provide Proper Rebuttal Testimony.......................4

        B.   Disclosing Cohen Over a Year Late, on the Eve of the Close of Discovery, Requires Exclusion. ...................................................7

    II.  Cohen's Testimony Should Be Excluded Because It Flunks The Requirements Of Rule 702 And *Daubert*. ....................................................9

        A.   Cohen is Not Qualified to Testify About the Frequency of Off-Label Prescribing. ...................................................10

        B.   Cohen's Methodology is Insufficient. ...........................................12

        C.   Cohen's Testimony is Not Relevant or Helpful. .............................18

Conclusion .............................................................................................20

Certificate of Service .............................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Bell v. Progressive Select Ins. Co.*,
___ F. Supp. 3d ___, 2023 WL 5940306 (M.D. Fla. Sept. 13, 2023) .............. 4-9

*Blake v. Securitas Sec. Servs., Inc.*,
292 F.R.D. 15 (D.D.C. 2013) ............................................................... 5, 8

*Buland v. NCL (Bahamas) Ltd.*,
992 F.3d 1143 (11th Cir. 2021) ............................................................ 15

*City of Tuscaloosa v. Harcros Chemicals, Inc.*,
158 F.3d 548 (11th Cir. 1998) ............................................................. 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ................................................... 2, 9, 10, 12-15

*Eknes-Tucker v. Gov. of Ala.*,
80 F.4th 1205 (11th Cir. 2023) ............................................................ 17

*Heller v. Doe by Doe*,
509 U.S. 312 (1993) ............................................................................ 20

*In re Trasylol Prod. Liab. Litig.*,
2010 WL 4065436 (S.D. Fla. Aug. 6, 2010) ..................................... 4, 5

*Kirksey v. Schindler Elevator Corp.*,
2016 WL 5213928 (S.D. Ala. Sept. 21, 2016) ...................................... 4

*Knight ex rel. Kerr v. Miami-Dade Cnty.*,
856 F.3d 795 (11th Cir. 2017) .............................................................. 8

*Lebron v. Royal Caribbean Cruises, Ltd.*,
2018 WL 3583002 (S.D. Fla. July 26, 2018) ....................................... 7

*Lebron v. Secretary of Fla. Dep't of Children & Families*,
772 F.3d 1352 (11th Cir. 2014) ................................................... 11, 19

*Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*,
    558 F.3d 1301 (11th Cir. 2009) .............................................................6

*McDowell v. Brown*,
    392 F.3d 1283 (11th Cir. 2004) ................................................... 12, 13

*Morgan v. Com. Union Assur. Cos.*,
    606 F.2d 554 (5th Cir. 1979) ...............................................................4

*Nelson v. Ipalco Enters., Inc.*,
    2005 WL 1924332 (S.D. Ind. Aug. 11, 2005) .......................................9

*Prosper v. Martin*,
    989 F.3d 1242 (11th Cir. 2021) .........................................................18

*Rider v. Sandoz Pharmaceuticals, Corp.*,
    295 F.3d 1194 (11th Cir. 2002) .........................................................14

*Schoen v. State Farm Fire & Cas. Co.*,
    638 F. Supp. 3d 1323 (S.D. Ala. 2022) .............................................13

*Stallworth v. E-Z Serve Convenience Stores*,
    199 F.R.D. 366 (M.D. Ala. 2001).......................................................8

*Timber Pines Plaza, LLC v. Kinsale Ins. Co.*,
    192 F. Supp. 3d 1287 (M.D. Fla. 2016)..............................................8

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) (en banc) ........................... 10, 18, 20

*United States v. Pon*,
    963 F.3d 1207 (11th Cir. 2020) .......................................................14

**Statutes**

21 U.S.C. §333 .................................................................... 17, 20

**Rules**

Fed. R. Civ. P. 16(f)(1)(C) ...................................................................7

Fed. R. Civ. P. 26 Advisory Comm. Note (1993) ...................................8

Fed. R. Civ. P. 26(a)(2)(D)(ii) ...............................................................4

Fed. R. Civ. P. 702 ................................................................ 1, 2, 9, 15, 18

M.D. Ala. L.R. 26.1 ...............................................................................7

**Acts**

Federal Food, Drug, and Cosmetic Act ..............................................1, 20

# INTRODUCTION

Glenn Cohen is a Harvard Law School professor who specializes in health and food and drug law. Over a year after the deadline to disclose initial experts, the United States disclosed Cohen as a purported rebuttal expert witness. Cohen seeks to offer two opinions: that off-label prescribing is common, especially in pediatric populations, and that States rarely use criminal sanctions to enforce laws about drug prescriptions. Both opinions are improper rebuttal testimony. No defense expert testified on either point. And to the extent either opinion is relevant, Cohen's testimony would belong in the United States' case in chief. Thus, Cohen's testimony cannot constitute rebuttal testimony and should be excluded.

Cohen's testimony should also be excluded because it flunks Rule 702. First, Cohen is not qualified to opine about the frequency of off-label prescribing. He is a law professor, not a prescriber, and has never surveyed off-label prescribing practices. At his deposition, Cohen practically conceded his lack of expertise in off-label prescribing by disclaiming any opinion about the *safety* of off-label prescribing.

Second, Cohen's methodology underlying both opinions is unreliable. For his off-label prescribing opinion, that method consists of listing studies that he regurgitates, which is not enough by itself to qualify as expert opinion. For his criminal sanctions opinion, Cohen's methodology seems to be relying on his own background intuitions, while defining the inquiry so that it excludes relevant data points about federal law *and* state law before passage of the Federal Food, Drug, and Cosmetic Act of 1938. These methods cannot be established as reliable: they have no error rates, they have not been used by others in the field, they have not been peer

1

reviewed, and they were designed for this litigation only.

Third, both opinions would be irrelevant and unhelpful. As Cohen agreed at his deposition, that some "drugs are used widely" "for some other off-label indications" does not "imply[] in the least that off-label use of" the drugs here is "safe." *Daubert*.DX24:48:4-15 (Cohen Dep.).[1] Then he *disclaimed* expertise in off-label prescribing *safety*—in the face of studies showing that such prescribing is more likely to be dangerous. Absent an opinion on *that* question, and without any connection between the opinion he offers and the drugs at issue, his opinion is irrelevant.

On criminal sanctions, the type of liability imposed by Alabama's Act is not pertinent to any issue before the Court. Nor, then, is the frequency of such sanctions by other States in other contexts. And in all events, federal law imposes criminal sanctions for unlawful prescribing practices, so even if such sanctions were relevant, Alabama's law has no shortage of relevant analogues.

Both because Cohen's testimony is improper rebuttal evidence and because it cannot satisfy Rule 702's standards, it should be excluded.

## BACKGROUND

Professor I. Glenn Cohen is a professor, deputy dean, and faculty director at Harvard Law School. *Daubert*.DX23:¶3 (Cohen Rebuttal Rep.). He asserts experience in the fields of "health law, bioethics, and food and drug law." *Id.* ¶¶5-6.

Cohen's testimony consists of two main opinions: (1) off-label prescribing is

---

[1] Defendants use two main citations form in their *Daubert* briefing. The first—*Daubert*.DX#:##—refers to exhibits Defendants submit in support of their *Daubert* motions, where the first "#" refers to the exhibit number and the second "##" refers to the page numbers within that exhibit. The second citation form—SJ.DX#:##—refers to the exhibits Defendants submitted in support of their motion for summary judgment. *See* Docs. 557-60 (public exhibits) & 564 (sealed exhibits).

common, especially in pediatric patients, and (2) "[t]he use of criminal law relating to a licensed practitioner prescribing an FDA-approved drug is exceedingly rare," and other "mechanisms" "protect the safety of patients." *Id.* ¶14.

On his first opinion, Cohen claims that "[i]n several instances, Defendants' witnesses intimate that there is something nefarious or unusual about the fact that drugs are being prescribed and used off-label to treat the minors relevant in this case." *Id.* ¶16. He then quotes portions of testimony noting in passing that puberty blockers and cross-sex hormones are used off-label for transitioning. *Id.* Cohen does not rebut any factual or scientific assertion in those quotes. Cohen then provides studies about off-label prescribing in the United States and abroad, focusing on the pediatric population. *Id.* ¶¶35-59.

On his second opinion about regulatory mechanisms to protect patients, he provides a broad overview of regulatory mechanisms: licensure and discipline; accreditation; health care fraud and abuse laws; medical malpractice liability; and liability for breach of informed consent. *Id.* ¶¶60-72. Though he claims that "attaching criminal penalties to the actions of physicians" "to ensure patient safety" "is uncommon," he acknowledges that such penalties have been used for "the FDA-approved drug mifepristone" and for other medical related crimes such as "sexual abuse" and "intentionally ending the life of a patient." *Id.* ¶62.

## ARGUMENT

I. **Cohen's Testimony Should Be Excluded Because, As A Non-Rebuttal Witness, His Testimony Was Not Timely Disclosed.**

As with the United States' other "rebuttal" expert, Devin Caughey, Cohen is

not a proper rebuttal witness. The United States did not disclose Cohen until March 8, 2024, the deadline for rebuttal expert disclosure, and it did not disclose his testimony until April 1, 2024—413 days after the initial expert disclosure deadline of February 13, 2023. *See* Docs. 225, 422; *Daubert*.DX22:2 (U.S. Rebuttal Expert Witness Disclosure). The United States' dilatory disclosure deprived Defendants of any opportunity to obtain *actual* rebuttal testimony to Cohen's opinions. Thus, Cohen's testimony should be excluded.

### A.   Cohen Does Not Provide Proper Rebuttal Testimony.

Rebuttal testimony must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). Generally, "a rebuttal expert opinion must address new, unforeseen evidence in the other party's case or must address matters on which the opposing party bears the burden of proof, such as an affirmative defense." *Bell v. Progressive Select Ins. Co.*, ___ F. Supp. 3d ___, ___, 2023 WL 5940306, at *3 (M.D. Fla. Sept. 13, 2023) (citing *Morgan v. Com. Union Assur. Cos.*, 606 F.2d 554, 555 (5th Cir. 1979)). Thus, for instance, "[a] plaintiff's rebuttal expert may not simply raise evidence that goes to the plaintiff's prima facie case and logically belongs in his case in chief." *Id.* Further, "[r]ebuttal testimony is permitted only when it directly addresses an assertion raised by an opponent's experts." *In re Trasylol Prod. Liab. Litig.*, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010); *see Kirksey v. Schindler Elevator Corp.*, 2016 WL 5213928, at *17 (S.D. Ala. Sept. 21, 2016).

"Where a party attempts to designate as a 'rebuttal' expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be

viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a) and the Court's governing scheduling order." *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 18 (D.D.C. 2013).

Here, Cohen's testimony is not proper rebuttal testimony because it does not address "unforeseen" testimony, but is intended to help the United States' case in chief. *Bell*, 2023 WL 5940306, at *3.

### 1.    Cohen's off-label prescribing testimony is not rebuttal testimony.

The bulk of Cohen's testimony is about the purported generalized frequency of off-label prescribing, including within pediatrics. Cohen Rebuttal Rep. ¶¶15-59. But none of Defendants' initial experts provided testimony about the *frequency* of off-label prescribing in other contexts. Cohen's report fails to identify any such testimony, instead listing various quotes that, in Cohen's view, contain "intimat[ions] that there is something nefarious or unusual about the fact that [these] drugs are being prescribed and used off-label." *Id.* ¶16 (listing quotes). But those quotes provide only the (undisputed) factual assertion that the drug uses regulated by Alabama's Act are off-label. *See id.*; *see also, e.g.*, Cohen Dep. 37:10-12 ("I don't think there's anything here about the factual statements that I disagree with."); *id.* at 41:4-23 ("he's correct in saying it has not been approved"), 45:13-16 ("There's not a factual inaccuracy"). Responding to a purported "tone" in other witness reports is different from "directly addresses[ing] an assertion raised by an opponent's experts." *Trasylol*, 2010 WL 4065436, at *2.

In any event, even "disagreeing with a defense expert, alone, does not render

a plaintiff's expert one sounding in rebuttal." *Bell*, 2023 WL 5940306, at *2. Defendants' experts' passing references to the fact that using gender transition drugs in minors is off-label were "hardly surprising." *Id.* at *3. After all, one of the legislative findings was that these drugs are "not FDA-approved." SJ.DX1:3 (Act). At his deposition, Cohen detected the same objectionable "intimation" in this finding as he did in the Defendants' experts' testimonies he purported to respond to. Cohen Dep. 69:22–70:22, 75:11-21. And he summarized his testimony as "disagreeing with any attempt to characterize the fact that these drugs are used off-label as being particularly relevant for the attention of the State." *Id.* at 49:8-11. But the Act itself drew the connection between these drugs and their off-label use. So the United States cannot contend that Defendants' testimony was "unforeseen" such that Cohen's testimony could constitute proper rebuttal testimony. *Bell*, 2023 WL 5940306, at *3.

Further, Cohen's testimony about off-label prescribing "speaks to issues that [the United States] must prove in [its] case in chief," not any "affirmative defense." *Id.* The United States is challenging the Act and must, under governing precedent, "negate every conceivable basis that might support it." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) (cleaned up). So any attack on the connection between off-label prescribing and the Act belongs in the United States' case in chief—confirming that Cohen is not a proper rebuttal witness.

### 2.    Cohen's criminal sanctions testimony is not rebuttal testimony.

For similar reasons, Cohen's other line of testimony—about the purported frequency or necessity of using criminal sanctions to protect patients—is also not proper rebuttal testimony. Again, Cohen cites no defense expert who addresses that

specific issue. *See* Cohen Rebuttal Rep. ¶60. Even if there had been such defense testimony, it would not have been unforeseen, since the Act facially imposes criminal penalties. And even if the type of penalty attached to a violation were relevant to any question before the Court—and it is not, as explained below—that issue would belong in the United States' case in chief.

Thus, it cannot be said that Cohen's opinions about criminal sanctions "directly address an assertion raised by an opponent's experts" that was not foreseen and focused on an affirmative defense. *Lebron v. Royal Caribbean Cruises, Ltd.*, 2018 WL 3583002, at *2 (S.D. Fla. July 26, 2018). If Defendants "asked for a limiting instruction" at trial that Cohen's testimony about criminal sanctions should be considered "solely to contradict" Defendants' experts—as would be appropriate— any fact-finder "would struggle to understand why and how" Cohen's testimony could be used for that purpose. *Bell*, 2023 WL 5940306, at *2. No defense expert addresses criminal sanctions versus other regulatory mechanisms. Thus, both lines of Cohen's testimony are improper rebuttal testimony.

### B. Disclosing Cohen Over a Year Late, on the Eve of the Close of Discovery, Requires Exclusion.

The proper remedy for the United States' belated disclosure of non-rebuttal expert testimony is exclusion. Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a)," "the party is not allowed to use that information or witness to supply evidence … unless the failure was substantially justified or is harmless." *Accord* M.D. Ala. L.R. 26.1; Fed. R. Civ. P. 16(f)(1)(C). "[F]ailing to disclose an expert witness by a court-ordered deadline

results in an automatic and mandatory exclusion of the witness, unless the nondis-closure was justified or harmless." *Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, 192 F. Supp. 3d 1287, 1291-92 (M.D. Fla. 2016) (cleaned up). The "burden" is on the United States to "show[] a substantial justification" for its "tardiness" or harmless-ness. *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017); *see Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 368 (M.D. Ala. 2001); *see also Blake*, 292 F.R.D. at 19 ("The overwhelming weight of authority is that preclusion is *required* and *mandatory* absent some unusual or extenuating cir-cumstances—that is, a substantial justification." (cleaned up)).

The United States cannot show either harmlessness or a substantial justifica-tion. As the Advisory Committee Notes to Rule 26 explain, "effective rebuttal re-quires advance knowledge of the line of testimony of the other side." Fed. R. Civ. P. 26 Advisory Comm. Note (1993). Without that knowledge, "the narrowing of issues and elimination of surprise which discovery normally produces are frustrated." *Id.* "[I]n most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclo-sures with respect to that issue." *Bell*, 2023 WL 5940306, at *4. Allowing a plaintiff to do otherwise "would reverse the order of proof at trial," "undermine the attendant sequencing of discovery," and effectively "requir[e] the defendants to put in their evidence before the plaintiff[s] put in [theirs]." *Id.* at *3-4 (cleaned up).

Here, Cohen's testimony should have been provided (if at all) with the United States' initial disclosures. If Defendants had then been confronted with a purported expert on the frequency of off-label prescribing or criminal sanctions, they could

have obtained their own rebuttal testimony—and would have, if the testimony were relevant. *But see infra* pp. 18-20. Defendants also could have developed more evidence related to the issues on which Cohen opines.

Instead, the United States waited until about two months before the close of discovery—and long after Defendants' window to provide rebuttal expert testimony closed—to even *disclose* Cohen's existence. And it waited until a month before the close of discovery to disclose his report. This last-minute disclosure of new expert opinion testimony not even hinted at by any other witness deprived Defendants of a fair chance to develop their case appropriately. That prejudice requires exclusion. *See, e.g.*, *Bell*, 2023 WL 5940306, at *4 (explaining similar prejudice); *Nelson v. Ipalco Enters., Inc.*, 2005 WL 1924332, at *8 (S.D. Ind. Aug. 11, 2005) (plaintiffs' delayed expert disclosure could not "be deemed harmless because it gave the plaintiffs the opportunity to wait for defendants to show their expert cards," even though the defendants had "ample time" to take the expert's deposition before trial).

The United States has no good reason for this late disclosure. The Act's reference to off-label prescribing and its use of criminal sanctions were apparent at its enactment (April 8, 2022), yet Cohen was not even *contacted* by the United States until 2024—long after the United States' initial expert reports were due. Cohen Dep. 21:1-8. Cohen's testimony should be excluded.

## II.    Cohen's Testimony Should Be Excluded Because It Flunks The Requirements Of Rule 702 And *Daubert*.

Even if Cohen provided proper rebuttal testimony, his testimony should still be excluded. Both parts of that testimony flunk Rule 702, which requires an expert

witness (1) be "qualified to testify competently," (2) use a "sufficiently reliable" methodology to "reach[] his conclusions," and (3) provide testimony that "assists the trier of fact." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562-63 (11th Cir. 1998).[2] Here, Cohen is not qualified to testify about the frequency of off-label prescribing. His methodology for devising his opinions about off-label prescribing and criminal sanctions is unreliable. And his testimony on both issues is neither relevant nor helpful to any issue before the Court.

### A.   Cohen is Not Qualified to Testify About the Frequency of Off-Label Prescribing.

Cohen is unqualified to be an expert witness offering testimony about the frequency of off-label prescribing. Cohen lacks the "scientific training or education" or the "experience" to be qualified as an expert in off-label prescribing use. *United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004) (en banc). No doubt, Cohen has a lengthy resumé: he is "trained as a bioethicist and a legal scholar," and he claims to be "an expert about the FDA." Cohen Rebuttal Rep. Appx. A; Cohen Dep. 19:21-23. But he is not an expert in prescribing practices. He has "never prescribed a drug off or on label." *Id.* at 24:5-7. He has "never conducted a study looking at prescriber behavior relating to off-label drugs." *Id.* at 24:8-16. He has never "conducted a study looking at prescriber behavior relating to off-label prescription of puberty blockers." *Id.* at 24:17–25:1. He has "never conducted a study on prescriber use [of] off-label … cross-sex hormones." *Id.* at 25:8-11. He has "never conducted a systematic review of the literature on off-label drug use." *Id.* at 28:2-22.

---

[2] *See also* Defs' Mot. to Exclude Selected Testimony of Dr. Ladinsky, Doc. 593 at 2-8 (discussing *Daubert* standard).

Indeed, when asked questions about off-label prescribing *safety*, he adamantly affirmed that he was *not* an expert. When asked repeatedly about the safety of off-label use, Cohen gave answers like: "The question about the safety of off-label use is outside the expert opinions I was asked to formulate." *Id.* at 131:13-17. Asked to interpret a table relating to the increased risk of off-label prescriptions, Cohen said: "You know, it's sort of outside my expertise, to be perfectly honest." *Id.* at 132:5–133:13. Confronted with studies about "whether most off-label uses are safe or sound or appropriate," Cohen said: "I'm not sure I would be the best expert" to discuss the issue. *Id.* at 144:21–146:3. He even gave a similar answer when looking at documents that *he had cited in his report*. Asked whether he agreed with his own supporting study's statement that "[o]ff-label prescribing has been associated with higher rates of adverse events in children," he said: "I don't think I have the expertise to answer the question one way or the other." *Id.* at 114:17–116:18; *see Daubert*.DX27:6 (Cohen Dep. Ex. 6, *Trends in Off-Label Drug Use*).

"Expertise in one field does not qualify a witness to testify about others." *Lebron v. Secretary of Fla. Dep't of Children & Families*, 772 F.3d 1352, 1368-69 (11th Cir. 2014). In *Lebron*, the Eleventh Circuit affirmed the district court's ruling that the expert witness failed the qualification prong. *Id.* at 1367. That expert witness, Dr. Mack, was a "professor of clinical psychiatry at Georgetown University School of Medicine." *Id.* at 1368. "[T]he crux of Dr. Mack's testimony was a claim about the rates of drug use among the TANF population." *Id.* at 1369. The district court excluded this testimony, and the Eleventh Circuit affirmed: "while Dr. Mack had authored articles and books about drug-related issues, and taught about drug-related

disorders, he had never studied, surveyed, or collected any information on the TANF population in any context, much less TANF applicants in Florida." *Id.* at 1368. Instead, his testimony "was based solely on publications from other researchers," showing "that Dr. Mack was not an expert in the relevant field." *Id.*

Likewise, Cohen's off-label prescribing frequency opinion solely relies on the studies of others. And it appears impossible for him to be an expert in off-label prescribing frequency if he cannot answer basic questions about off-label prescribing safety—the two inquiries go together. As discussed below, the latter is the only possibly relevant inquiry here anyway, and Cohen has nothing to say about it. Cohen is thus unqualified to opine about off-label prescribing frequency.

### B.    Cohen's Methodology is Insufficient.

*Daubert* sets out several factors for courts to consider whether an expert's methodology is reliable, including "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993)).

Here, each part of Cohen's expert opinion flunks *Daubert*'s reliability requirements. His opinion about off-label prescribing frequency is based on no methodology at all—it simply regurgitates studies he found, while excluding anything from those studies that speaks to the more relevant question of off-label prescribing *safety*. And his opinion about the frequency of criminal sanctions for drug prescription is

not founded on a sound methodology either, but seems to stem from his impressionistic views about state laws. Both opinions are unreliable.

**1.    Cohen's opinion about off-label prescribing use is not reliable because it simply regurgitates cherry-picked studies.**

Cohen's opinion about off-label prescribing frequency is not founded in a methodology at all. Cohen does not provide any study of his own—having never studied the issue, and having no background in prescribing research. Cohen Dep. 24:5-7, 24:17–25:1; 25:8-11. Cohen instead "review[ed] [the] relevant scholarly research." Cohen Rebuttal Rep. ¶7; *id.* Appx. B. But Cohen admitted that he has "never conducted a systematic review of the literature on off-label drug use." Cohen Dep. 28:2-22. Instead, his opinion simply regurgitates the findings of others' studies. Cohen Rebuttal Rep. ¶¶35-58.

But "[a] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Schoen v. State Farm Fire & Cas. Co.*, 638 F. Supp. 3d 1323, 1334 (S.D. Ala. 2022) (cleaned up). And "[m]erely adopting another expert's conclusions is not a methodology that satisfies *Daubert* standards." *Id.* at 1339. Whatever it consisted of, Cohen's review is not something that could be tested, peer reviewed, given an error rate, or accepted in the scientific community, as it was not a methodology but merely a presentation of the conclusion of others' studies.

Further, there is too great a "distance between the data and opinion proffered." *McDowell*, 392 F.3d at 1300. Cohen claims that "[p]rescribing FDA-approved drugs 'off-label' … is extremely common," and "is very common in pediatric

populations." Cohen Rebuttal Rep. ¶14 ("In all the studies I have reviewed there is a significant amount of off-label prescribing in pediatric populations."). Cohen uses this claim to conclude that "there is nothing nefarious or unusual about the fact that drugs relevant to this case are being prescribed 'off-label.'" *Id.*

Cohen's methodology is inadequate to support this conclusion, failing every *Daubert* factor because it is the kind of unscientific inference forbidden by *Daubert*. *See Rider v. Sandoz Pharmaceuticals, Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002) ("Courts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles."). Even if off-label prescribing might be common for other drugs in pediatric populations, that does not mean it is common for the "drugs relevant to this case." Cohen Rebuttal Rep. ¶14. More importantly, even if off-label prescribing might be common broadly, that does not mean such prescribing is *safe* or "usual" for the "drugs relevant to this case." *Id.*

This "analytical gap" makes Cohen's testimony "unreliable." *United States v. Pon*, 963 F.3d 1207, 1221 (11th Cir. 2020). Cohen repeatedly said that he could not speak to the safety or efficacy of off-label prescribing, so whatever his methodology might have been in cherry-picking studies, it cannot justify the leap to his conclusion about puberty blockers and cross-sex hormones. When it came to the relevant question of off-label prescribing *safety*, Cohen (when he wasn't disclaiming expertise on the issue) *agreed* that "[o]ff-label uses are risky because they are not supported by the same level of evidence as approved uses." Cohen Dep. 121:4-23. He did not dispute the claim that "[o]ff-label use increases the chance of adverse events." *Id.* at 126:14–127:11. He admitted "that there are instances where some off-label use

might expose people to risks without knowing whether a drug is safe and effective." *Id.* at 128:18–129:19. He did not dispute that one of his own sources showed that there is generally a greater chance of adverse reactions when using off-label prescriptions, especially in pediatric patients. *Id.* at 129:20–131:17; *see* Daubert.DX30:59-60 (Cohen Dep. Ex. 38, *Off-label Prescribing*). Nor did he dispute that another "article [he] rel[ied] on says that off-label prescribing has been associated with higher levels of adverse events in children." Cohen Dep. 116:12-19, 118:17–119:9; *see Daubert*.DX27:6 (Cohen Dep. Ex. 6, *Trends in Off-Label Drug Use*). Cohen agreed that there are "some long-established off-label uses [that] have been shown to be either ineffective or harmful." Cohen Dep. 141:1-7. Cohen further agreed that "[p]rescriptions for off-label uses of FDA-approved drugs are made without the benefit of an FDA-reviewed analysis of safety and effectiveness data." *Id.* at 86:23–87:11. And he agreed that "the lack of FDA approval means the off-label uses are not scrutinized scientifically as closely." *Id.* at 98:23–99:17.

Thus, by Cohen's own admissions, whether other drugs are prescribed off-label does not speak to whether it is usual or appropriate or *safe* for puberty blockers and cross-sex hormones to be. "To be admissible under *Daubert*, an expert's opinion must be supported by good grounds for each step in the analysis." *Buland v. NCL (Bahamas) Ltd.*, 992 F.3d 1143, 1150 (11th Cir. 2021) (cleaned up). Cohen's leap of faith from his claims about the *frequency* of *other* drugs' off-label use to his conclusion about the *safety* of using *these* drugs off-label is supported by nothing but his own *ipse dixit*. Because his methodology fails the *Daubert* factors, Cohen's testimony about off-label prescribing flunks Rule 702's reliability requirement.

### 2.    Cohen's opinion about the frequency of criminal sanctions for unlawful prescribing is unreliable.

Cohen's other line of testimony is not reliable either. Cohen contends that "[t]he use of criminal law relating to a licensed practitioner prescribing an FDA-approved drug is exceedingly rare." Cohen Rebuttal Rep. ¶14; Cohen Dep. 33:3-19. He states in his report that he is "not aware of any instance where a state has sought to criminalize a physician's prescribing of an FDA-approved drug as Alabama has done here." Cohen Rebuttal Rep. ¶¶9, 14. But there is little methodology involved beyond Cohen's background assumptions.

Cohen neglects to explain the methodology he used to determine that criminal penalties for drug prescriptions are "exceedingly rare." He does not discuss any standard for what constitutes rare or provide any metanalysis of the relevant criminal statutes that apply to physicians. It seems, then, his methodology consisted of one of two things. Cohen may have perused some statutes, articles, or studies discussing similar criminal laws and concluded that the number of laws provided deserved the description "exceedingly rare." If this was what Cohen did, then his methodology is subjective and unreliable, as confirmed by his ignorance of relevant criminal prosecutions discussed below. *Or* Cohen was simply provided the label of "exceedingly rare" by one of his sources, once more parroting another expert's opinion. Either way, Cohen's methodology cannot be tested and has no error rate. Cohen provides no standard for what quantity of legislation constitutes "exceedingly rare," and he does not provide an objective method to find all the relevant prosecutions.

Cohen sweeps too broadly in claiming that "attaching criminal penalties to the

actions of physicians is uncommon." Cohen Rebuttal Rep. ¶14. Cohen does not explain how he came to this conclusion, and it appears unfounded. As Cohen conceded, federal law imposes criminal punishments for improper prescribing. Cohen Dep. 228:17–229:21; 21 U.S.C. §333. Further, Cohen admitted that a doctor who improperly prescribed a scheduled drug may face criminal liability under many States' laws. Cohen Dep. 226:2–227:5. As he also conceded, States impose criminal punishments on physicians related to their practice of medicine, including under general criminal statutes. *See* Cohen Dep. 231:1–232:22; *Daubert*.DX29:6-8 (Cohen Dep. Ex. 16, *Doctor Gets 6 Months in Abortion Patient Death*); *Daubert*.DX29:11-12 (Cohen Dep. Ex. 17, *Doctor in Badly Botched Abortion is Tried for Manslaughter*).

Even if criminal sanctions for doctors in general may be "uncommon" otherwise, Cohen did not establish that such sanctions are uncommon when *children* are harmed. His report concedes, for instance, that States have legislated criminal penalties when doctors sexually abuse children. Cohen Rebuttal Rep. ¶¶14, 62. And Alabama's Act reflects a judgment that, as currently used, medical gender transition procedures harm children. *See Eknes-Tucker v. Gov. of Ala.*, 80 F.4th 1205, 1211-12 (11th Cir. 2023). Thus, at best, Cohen's methodology for deciding that criminal sanctions are generally uncommon is detached from his proffered opinion that they are uncommon when children are harmed.

More narrowly, Cohen opines that "states attaching criminal penalties to physicians *prescribing an FDA-approved drug*" is "rarer still." Cohen Rebuttal Rep. ¶62. As discussed below, narrowing the opinion to States and FDA-approved drugs makes it especially irrelevant, since *federal* law imposes criminal liability for

unlawful prescription practices, making that liability hardly "rare." And Cohen conceded that he did not review state laws before the FDA started regulating prescription drugs, acknowledging that States historically had "attempt[ed] to restrict certain kinds of practice of medicine." Cohen Dep. 227:6-21.

Even within the realm of FDA-approved drugs, though, Cohen agreed that physicians regularly face criminal liability for prescribing controlled substances such as opioids. *Id.* at 233:6–234:8. He also acknowledged that there is a history of States regulating FDA-approved drugs. *Id.* at 251:7-12. He acknowledged that another scholar wrote in a published work that "a state's ban of a drug after FDA approval is hardly unprecedented." *Id.* at 243:22–245:2; *see id.* at 245:6–246:11 (acknowledging examples); *see generally Daubert*.DX27:58, 74-77 (Cohen Dep. Ex. 11, *State Affronts*). And his own report discusses potential criminal liability imposed by States for drugs that end unborn life, such as mifepristone. Cohen Rebuttal Rep. ¶62. This evidence shows that Cohen's generalized impression about the frequency of criminal sanctions lacks a proper methodology.

Because Cohen's testimonies about off-label prescribing frequency and criminal penalties do not have an adequate connection between his data and any independent opinion, they are unreliable and should be excluded.

## C.    Cohen's Testimony is Not Relevant or Helpful.

Finally, Rule 702's helpfulness inquiry requires both that the expert witness' testimony be relevant and that "it concern[] matters that are beyond the understanding of the average lay person." *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021); *see Frazier*, 387 F.3d at 1262-63. Cohen's opinions about off-label

prescription frequency and criminal sanctions fail this third prong, as they are not relevant and would not require expert testimony even if they were.

### 1. Cohen's opinion about off-label prescribing frequency generally says nothing about the safety or efficacy of these drugs.

As explained above, the prevalence of off-label prescribing generally is not relevant for determining whether off-label prescribing of puberty blockers and cross-sex hormones for children is safe or effective. Again, Cohen admitted that "it is factually correct" that "the fact that some of the drugs are used widely and safely for some other off-label indications is not implying in the least that off-label use of this drug, puberty blockers, for this use, preventing normal, healthy puberty in children, is safe." Cohen Dep. 48:4-15. The same is true of cross-sex hormone use.

As Cohen did not dispute, different drugs and patient populations cannot reliably determine the safety of these drugs in *this* patient population. *See id.* Only scientific or medical evidence about the drugs and patient population in question can do that—and Cohen provides no such evidence. His testimony about off-label prescribing frequency for other drugs is therefore irrelevant and unhelpful to the trier of fact. *Cf. Lebron*, 772 F.3d at 1369 (testimony about "the general population" did not shed light on "Florida TANF recipients").

### 2. Cohen's opinion about the frequency of criminal sanctions is also irrelevant and unhelpful.

Cohen's testimony about the use of criminal sanctions also would not assist the trier of fact. The nature of the Act's penalty is not relevant to any issue before the Court. Rational basis is the governing standard for the claims at issue, and it "is irrelevant in rational-basis review" whether a state "could have chosen a less

restrictive means." *Heller v. Doe by Doe*, 509 U.S. 312, 313 (1993).

In all events, Cohen conceded that "criminal law [is] a regulatory mechanism that can protect citizens' health and safety." Cohen Dep. 220:11-20. He also agreed that "there are definitely instances where criminal sanctions result in greater deterrence than noncriminal sanctions." *Id.* at 256:10-17. Whether "attaching criminal penalties in the actions of physicians is uncommon" *generally* (Cohen Rebuttal Rep. ¶14) does not speak to the appropriateness of using those sanctions for the unlawful sterilizing medical procedures at issue in this case on children. Cohen's testimony about criminal sanctions is irrelevant.

Cohen's report elides one of the most important examples of criminal sanctions for unlawful prescribing: the Federal Food, Drug, and Cosmetic Act. In his deposition, Cohen seemed to agree that the federal government "uses criminal penalties to, in part, protect patient safety" across all fifty States. Cohen Dep. 229:12–230:23; *Daubert*.DX28:56 (Cohen Dep. Ex. 14, 21 U.S.C. §333). But in his report, Cohen focuses only on state law. Cohen Rebuttal Rep. ¶¶14, 60-77. His two references to the FDCA have nothing to do with criminalization. *Id.* ¶¶19, 31 n.28.

Given that federal law governing all fifty States imposes criminal sanctions for improper prescribing, Cohen's uninformed opinion that *state* criminal sanctions for such prescribing are "rare" could only "serve to confuse" the issues before the Court. *Frazier*, 387 F.3d at 1267. Cohen's testimony should be excluded.

## CONCLUSION

For these reasons, the Court should exclude Cohen's testimony.

Dated: June 24, 2024

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, SC 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Roger G. Brooks (*pro hac vice*)
Henry W. Frampton, IV (*pro hac vice*)
Philip A. Sechler (*pro hac vice*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0200
rbrooks@adflegal.org
hframpton@adflegal.org
psechler@adflegal.org

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

s/ A. Barrett Bowdre
A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

*Counsel for Defendants*

21

**CERTIFICATE OF SERVICE**

I certify that on June 24, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Defendants*