# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| Brianna Boe, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Plaintiff-Intervenor*, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00184-LCB-CWB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General of the | ) | |
| State of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PRIVATE PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF DR. JAMES CANTOR, PH.D; MICHAEL LAIDLAW, M.D.; KRISTOPHER KALIEBE, M.D., PAUL HRUZ, M.D., PH.D; AND PATRICK LAPPERT, M.D.**

The State of Alabama has tendered five experts – (1) James Cantor, Ph.D., a clinical psychologist and neuroscientist; (2) Michael K. Laidlaw, M.D., an endocrinologist; (3) Kristopher Kaliebe, M.D., a professor of psychiatry; (4) Paul W. Hruz, M.D., Ph.D., a professor of pediatric endocrinology; and (5) Patrick W. Lappert, M.D., a retired plastic surgeon – to offer testimony about what various organizations allegedly knew or should have known.  They are not percipient witnesses, and they have no personal knowledge regarding the subject matter of their opinions.  Their methodology or lack thereof is straightforward: they have reviewed documents, and based on their review, they purport to divine the knowledge of others.  Although these individuals may have expertise in certain areas, "science has not yet invented a way to read minds."  *AU New Haven, LLC v. YKK Corp.*, No. 15-3411, 2019 WL 1254763, at *12 (S.D.N.Y. Mar. 19, 2019).

Courts agree that experts may not "assume[] the role of [an] advocate" by "regurgitat[ing]" facts and "reaching conclusory opinions that are purportedly based on these facts," including "conclusory opinions regarding [corporate] state of mind and knowledge based on [their] reading of internal . . . correspondence." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010).  Because Defendants' experts stray beyond the permissible bounds of expert testimony, their opinions should be excluded.

# I.    Background

Section 4(a)(1)–(3) of Alabama's Vulnerable Child Compassion and Protection Act makes it a crime in the State of Alabama to provide puberty blockers or cross-sex hormone treatment to a minor for purposes of treating a discordance between the minor's biological sex and sense of gender identity. The central question in this case is whether these aspects of the Act withstand constitutional scrutiny under the Due Process and Equal Protection Clauses. The State argues that the Act is substantially or at least rationally related to a compelling state interest – protecting minors from allegedly dangerous medical interventions – and thus is constitutional.

As part of this argument, the State seeks to undermine the Standards of Care of the World Professional Association for Transgender Health (WPATH) and the 2017 Endocrine Society Guidelines, which endorse the use of puberty blockers and cross-sex hormone treatment for minors when certain criteria are met. To that end, the State has retained several expert witnesses to offer opinions about the safety of puberty blockers and cross-sex hormone treatment for minors and the integrity of WPATH's current Standards of Care (known as "SOC 8") and the Endocrine Society Guidelines. Those experts include: (1) James Cantor, Ph.D., a clinical psychologist and neuroscientist; (2) Michael K. Laidlaw, M.D., an endocrinologist; (3) Kristopher Kaliebe, M.D., a professor of psychiatry; (4) Paul W. Hruz, M.D.,

Ph.D., a professor of pediatric endocrinology; and (5) Patrick W. Lappert, M.D., a retired plastic surgeon.

Many of their opinions, however, fall outside the scope of their specialized medical knowledge and cross the line into unabashed, unscientific advocacy in favor of the Defendants' position in this litigation. As such, these facts and opinions are unhelpful to the trier of fact and should be excluded.

## II. Expert testimony cannot be used to spoon-feed Defendants' theory of the case to the trier of fact.

Federal Rule of Evidence 702 governs the admissibility of expert testimony at trial.[1] Under Rule 702(a), expert testimony is inadmissible unless it "will help the trier of fact to understand the evidence or to determine a fact in issue." This is commonly called the "helpfulness" requirement. *Prosper v. Martin*, 989 F.3d 1242, 1248 (11th Cir. 2021). The burden of establishing helpfulness rests on the

---

[1] Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

proponent of the expert testimony. *United States v. Frazier*, 387 F.3d 1244, 1260

(11th Cir. 2004). The proponent must meet its burden "by a preponderance of the

evidence." *Boca Raton Cmty. Hosp., Inc v. Tenet Health Care Corp.*, 582 F.3d

1227, 1232 (11th Cir. 2009).

### A. Expert testimony is unhelpful if it is irrelevant or only marginally relevant.

"The touchstone" of the helpfulness inquiry "is the concept of relevance."

*Prosper*, 989 F.3d at 1249 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

579, 591 (1993)). Thus, irrelevant expert testimony is inadmissible under Rule 702

as well as Rule 402 of the Federal Rules of Evidence. Even relevant opinions may

be excluded if they are too "marginal" to be helpful. *In re Trasylol Prods. Liab.*

*Litig.*, 709 F. Supp. 2d 1323, 1338 n.26, 1339 (S.D. Fla. 2010).

### B. Common-sense inferences, conclusory opinions, speculation, and argument are unhelpful and inadmissible under Rule 702.

Assuming the threshold requirement of relevance is satisfied, expert

testimony is helpful if it "concerns matters that are beyond the understanding of the

average lay person." *Prosper*, 989 F.3d at 1249 (quoting *Frazier*, 387 F.3d at

1262). Expert testimony is not helpful if it "offers nothing more than what lawyers

for the parties can argue in closing arguments." *Id.* (quoting *Frazier*, 387 F.3d at

1262–63). Thus, an expert witness provides improper testimony by "speculat[ing],"

"summarizing evidence, interpreting plain language, and drawing inferences from

the evidence that the [factfinder] must draw (or not draw) for itself." *United States*

*v. Hawkins*, 934 F.3d 1251, 1265–66 (11th Cir. 2019); *accord United States v. Perry*, 14 F.4th 1253, 1265 (11th Cir. 2021). Likewise, an expert witness provides improper testimony when she "regurgitates" certain facts in evidence "and reaches conclusory opinions that are purportedly based on these facts." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010). In other words, experts may not "be permitted to stray into unfettered, wholesale interpretation of the evidence or to testify to simple inferences drawn from uncomplicated facts that serve only to buttress [one party's] theory of the case." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, at *132 (N.D. Fla. Feb. 28, 2021) (cleaned up).[2]

### C. Factual narratives and compilations of cherry-picked evidence are unhelpful and inadmissible under Rule 702.

Expert testimony also is not helpful if it simply states facts that the factfinder can "discern on its own" from record evidence or other available sources. *Prosper*, 989 F.3d at 1249; *Hibiscus Assocs. v. Bd. of Trs. of the Policemen & Firemen Ret. Sys.*, 50 F.3d 908, 917 (11th Cir. 1995). It is generally "inappropriate for experts to become a vehicle for factual narrative." *FTC v. Fleetcor Techs., Inc.*, No. 1:19-cv-

---

[2] The same helpfulness requirement also applies to lay opinion testimony. *See* Fed. R. Evid. 701(b) (requiring that lay opinions be "helpful to clearly understanding the witness's testimony or to determining a fact in issue"); *United States v. Jayyousi*, 657 F.3d 1085, 1125 (11th Cir. 2011) ("Lay opinion testimony is not 'helpful' for purposes of admissibility under Rule 701 when it does nothing more than give one side's understanding of the evidence."); *see also Hawkins*, 934 F.3d at 1265 (explaining that inadmissible expert testimony would also be "improper as lay testimony" if offered as such).

5727-AT, 2022 U.S. Dist. LEXIS 143169, at *42-43 (N.D. Ga. Aug. 9, 2022)

(quoting *Pledger v. Reliance Trust* Co., 2019 U.S. Dist. LEXIS 45668, 2019 WL

4439606, at *12 (N.D. Ga. Feb. 25, 2019)).

Thus, courts must exclude expert testimony that merely restates or

summarizes facts or selectively quotes certain documents. *See In re Trasylol Prods.*

*Liab. Litig.*, 709 F. Supp. 2d 1323, 1345–46 (S.D. Fla. 2010).[3] "Such evidence is

properly presented through fact witnesses and documentary evidence, not expert

testimony." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885,

2021 U.S. Dist. LEXIS 47275, at *33 (N.D. Fla. Mar. 13, 2021); *see also Hibiscus*

*Assocs.*, 50 F.3d at 917 (upholding exclusion of expert testimony because "if the

Fund had desired to prove that [a loan document] was not received, it could have

evoked testimony from one of the participants in the loan transaction"); Fed. R.

Evid. 602 (requiring personal knowledge for factual testimony).

Of course, an expert may testify about the factual basis for their admissible

opinions. *See* Fed. R. Evid. 705; *Arevalo v. Coloplast Corp.*, No. 3:19cv3577-

TKW-MJF, 2020 U.S. Dist. LEXIS 124417, at *65 (N.D. Fla. July 7, 2020). But

even in that circumstance, the expert witness is not permitted to offer a narrative of

---

[3] *See also, e.g.*, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 U.S. Dist. LEXIS 47275, at *33 (N.D. Fla. Mar. 13, 2021); *Cason v. C.R. Bard, Inc.*, No. 1:12-CV-1288-MHS, 2015 U.S. Dist. LEXIS 58918, at *40-41 (N.D. Ga. Feb. 9, 2015); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV-UNGARO, 2010 U.S. Dist. LEXIS 142547, at *19-21 (S.D. Fla. Sep. 8, 2010).

select events "through the summary or selective quotation" of documentary evidence. *Cason v. C.R. Bard, Inc.*, No. 1:12-CV-1288-MHS, 2015 U.S. Dist. LEXIS 58918, at *40 (N.D. Ga. Feb. 9, 2015). Rather, the expert is "limited to explaining technical terminology, drawing inferences that would not be apparent to the lay person, and explaining the basis of admissible opinions through commentary on documents and exhibits in evidence." *Arevalo*, 2020 U.S. Dist. LEXIS 124417, at *65; *Cason*, 2015 U.S. Dist. LEXIS 58918, at *41 (similar). A "lengthy narrative" that "synthesiz[es] the evidence" for the factfinder is inappropriate. *Hawkins*, 934 F.3d at 1263.

In sum, courts must exclude expert testimony—whether presented as opinion or fact—if it "effectively spoon-fe[eds]" one party's "theory of the case" to the factfinder. *Id.* at 1265.

### III. Drs. Cantor, Laidlaw, Kaliebe, and Hruz Offer Opinions that Should Be Excluded Under Rule 702(a)

Drs. Cantor, Laidlaw, Kaliebe, and Hruz, each overstep the confines of their medical expertise and offer opinions that are irrelevant, speculative, conclusory, argumentative, or based on inferences that are well within the common understanding of the average layperson. In addition to, or as a supplement for the reasons outlined in the Motion to Exclude filed by the United States, these opinions and the factual narratives constructed to support them should be excluded as unhelpful under Rule 702(a).

7

**A. Dr. Kaliebe's testimony, outlined in his Supplemental Expert Report, should be excluded in its entirety.**

Dr. Kaliebe's Supplemental Expert Report is a quintessential example of expert testimony that is unhelpful to the trier of fact. The "opinions" outlined in his supplemental report are based on his review of internal corporate documents produced in discovery by WPATH and HHS. DX16:¶ 1 (Kaliebe Supp. Rep.) (sealed). The first substantive paragraph begins:



*Id.* ¶ 3. These opening sentences make clear that his opinions offered in the report are not based on the application of medical principles or any specialized knowledge. Dr. Kaliebe does not purport to offer a scientific analysis or test for determining whether a medical organization is ████████████████████████ *Id.* Rather, he transparently uses commonly understood concepts ████████ ███████████████████████████████████████████ to interpret the internal corporate documents he reviewed.

After the introduction, the supplemental report is broken into three substantive sections, each with multiple subsections. Under each subsection heading, Dr. Kaliebe spends several paragraphs reciting and summarizing facts gleaned from the internal corporate documents he reviewed, as well as news

articles, press releases, YouTube videos, organizational and government websites, and the occasional medical journal. Interspersed throughout are bare conclusions about the significance of the quotes and facts summarized.

For example, in a subsection entitled ███████████████ Dr. Kaliebe quotes selected plain-language statements from internal emails produced by WPATH. *Id.* ¶¶ 65–71, 75. Based on these quotes, he makes multiple conclusory arguments about ████████████████████, including the following:



- ████████████████████████████
  ████████████████████████████
  █████████████████████████████
  ███████████████████████
  ██████ *Id.* ¶ 64.

- █████████████████████████████
  ██████████████████████████
  ████████████████████████████
  ███████████████████████████
  ██████████████ *Id.* ¶ 65.

- ███████████████████████
  █████████████████████████████
  █████████████████████████████



*Id.* ¶ 66.

*Id.* ¶ 72.

*Id.* ¶ 73.

In making these speculative and conclusory assertions about WPATH's motives,

Dr. Kaliebe does not rely on any medical or scientific principles. He does not cite

any medical sources, nor does he purport to rely on specialized knowledge gained

over the course of his career as a psychiatrist and professor. In fact, other than the

quotes from WPATH's internal emails, Dr. Kaliebe cites nothing at all. His testimony can be excluded on this basis alone. *See Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1326-27 (M.D. Fla. 2015) (excluding an opinion because "the experts do not appear to rely on any of their scientific expertise in drawing conclusions about the import of the cited memorandum").

Put differently, Dr. Kaliebe's testimony on ███████████████████ ████████ offers "unfettered, wholesale interpretation of the evidence" and "inferences drawn from uncomplicated facts that serve only to buttress the [State's] theory of the case." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, at *132 (N.D. Fla. Feb. 28, 2021). In this way, "[t]he report reads more like a legal brief," or a "mix of legal argument" and Dr. Kaliebe's personal opinions. *Prof'l Tank Cleaning, Inc. v. JAG Indus. Servs., Inc.*, No. 19-62045-CIV-SMITH, 2020 U.S. Dist. LEXIS 268818, at *23 (S.D. Fla. June 4, 2020). This provides another basis for excluding Dr. Kaliebe's Supplemental Expert Report and his opinions contained therein as unhelpful. As the Eleventh Circuit has repeatedly explained, expert testimony is not helpful if it "offers nothing more than what lawyers for the parties can argue in closing arguments." *Prosper*, 989 F.3d at 1249 (quoting *Frazier*, 387 F.3d at 1262). Dr. Kaliebe improperly "assumes the role of [an] advocate" by "regurgitat[ing]" facts and "reaching conclusory opinions that are purportedly based on these facts," including "conclusory opinions regarding

[corporate] state of mind and knowledge based on [his] reading of internal . . . correspondence." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010). Dr. Kaliebe, as a psychiatry expert, "is neither able nor allowed to assist the [factfinder] in this regard." *Id.*

The rest of Dr. Kaliebe's Supplemental Expert Report suffers from the same defects and should be excluded for the same reasons. *See Coquina Investments v. Rothstein*, No. 10-60786, 2011 U.S. Dist. LEXIS 120267, at *15-16 (S.D. Fla. Oct. 18, 2011) (excluding expert testimony that "consist[ed] almost entirely of a summary of evidence such as e-mails, . . . and provid[ed] a general conclusion that the evidence indicates . . . fraud"); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV-UNGARO, 2010 U.S. Dist. LEXIS 142547, at *20 (S.D. Fla. Sep. 8, 2010) (finding an expert's testimony inadmissible because it did nothing but "recite[] at some length" certain facts and then make "a bare conclusion based on the rehashed information").

### B. Opinions about intent, motive, knowledge, or other state of mind are unscientific and do not assist the trier of fact.

Like his Supplemental Expert Report, Dr. Kaliebe's initial Expert Report at times includes unhelpful factual narrative, speculation, and argument. The same is true for the reports offered by Drs. Cantor, Laidlaw, and Hruz. Specifically, each expert constructs defense-slanted factual narratives from documentary evidence and then offers bare, conclusory opinions about the same topic: the intent, goals,

motives, knowledge, purpose, reasons, or other state of mind of WPATH and its authors and supporters with respect to the development of the SOC 8 and the evidence supporting SOC 8. *See* DX2: ¶101 (Cantor Rep.) (last sentence); DX4: ¶¶ 121–23 (Cantor Supp. Rep. App. A) (sealed); *id.* ¶¶ 128–34, 135 ███████ ████████████████████████████████████████████████, 137–40, 141 (first sentence and quote), 142–45, 148, 150–53, 154 (first three sentences); DX7:¶¶ 178–81, 187, 188, 191, 201–02 (Laidlaw Rep.); DX9:¶¶ 7–16 (Laidlaw Second Supp. Rep.) (sealed); *id.* ¶¶ 19, 31, 32 (word ███████████), 33, 36 (words ████████████████████████████ ████████████████████████ and ████████████████), 38, 41 (last sentence), 50 (word ████████████ and third sentence up to dash), 51 (word ████████████), 58, 60–63, 76, 95 (████████████████████ and ███ ████████████████████ and last sentence), 98 (third sentence), 112 (second and third sentences), 114, 117 (last sentence), 118–24, 126–134, 138–58, 159 (first sentence), 160– 61, 162 (second half of sentence after ███); DX15:¶¶ 120–23, 150–51 (Kaliebe Rep.); DX16:¶¶ 6–31, 33, 36–75, 77–161 (Kaliebe Supp. Rep.) (sealed); DX5:¶ 104 (Hruz Rep.) (sentences referring to WPATH's "agenda" and "ideological positions"); *id.* ¶ 151 (the words "politically influenced, non-science associations").

These opinions are inadmissible because they are not based on specialized knowledge or capable of assisting the trier of fact. "The question of (corporate) intent or motive is a classic jury question and not one for experts." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1338 (S.D. Fla. 2010); *see also In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 U.S. Dist. LEXIS 36950, at *133-34 (N.D. Fla. Feb. 28, 2021) (collecting authorities). Testimony that a corporate entity had "actual notice" or "knew or should have known" of certain information and data is "also improper." *Redding v. Coloplast Corp.*, No. 6:19-cv-1857-CEM-GJK, 2022 U.S. Dist. LEXIS 246079, at *41-42 (M.D. Fla. Mar. 26, 2022); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 U.S. Dist. LEXIS 36950, at *133-34 (excluding expert opinions about "what Defendants 'knew'").

Thus, Defendants' expert opinions that ███████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████ are inadmissible. DX9:¶ 161 (Laidlaw Second Supp. Rep.) (sealed); *see also, e.g., id.* ¶¶ 19, 76; DX4:¶¶ 133–40, 150–54 (Cantor Supp. Rep. App. A) (sealed); DX7:¶¶ 178, 187 (Laidlaw Rep.); DX15:¶ 150 (Kaliebe Rep.); DX16:¶ 110 (Kaliebe Supp. Rep.) (sealed). The "nature of the law" is "clear": courts must exclude expert testimony that comments on a defendant's

"subjective intent, directly or indirectly." *Barnett v. Sun Life Assurance Co. of Canada*, No. 3:20-cv-01879-LCB, 2022 U.S. Dist. LEXIS 128796, at *8 (N.D. Ala. June 21, 2022).

Relatedly, the Court should preclude Defendants' experts from offering opinions that ███████████████████████████████████ ███████████████████████████ based on WPATH documents. *See, e.g.*, DX16:¶ 77 (Kaliebe Supp. Rep.) (sealed); DX4:¶¶ 139, 144 (Cantor Supp. Rep. App. A) (sealed); DX9:¶ 161 (Laidlaw Second Supp. Rep.) (sealed). Ordinary inferences of causation are "not grounded on any reliable technique, theory, or method." *Abbott v. Mega Trucking, LLC*, No. 2:20-CV-776-WKW [WO], 2023 U.S. Dist. LEXIS 50767, at *14 (M.D. Ala. Mar. 25, 2023). Here, they are indistinguishable from questions of intent and motive, which are "unrelated to any . . . expertise." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010). As such, it is the responsibility of the trier of fact—not an expert—to "reason[] logically from cause to effect." *Thomas v. Evenflo Co.*, 205 F. App'x 768, 772-73 (11th Cir. 2006) (quoting *Benefit Ass'n of Ry. Employees v. Bell*, 46 F.2d 225, 226 (5th Cir. 1931)).

In addition, Defendants' expert opinions that ██████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████

15

████████████████████████████████████████████ are

inadmissible. DX9:¶ 95 (Laidlaw Second Supp. Rep.) (sealed); *see also, e.g.*, *id.*

¶ 36 (similar); DX16:¶ 161 (Kaliebe Supp. Rep.) (sealed) (similar); DX4:¶ 144

(Cantor Supp. Rep. App. A) (sealed) (███████████████████████████

██████████████████████████). These opinions are "improper

speculation and conjecture." *Thomas v. Auto-Owners Ins. Co.*, No. 1:16-cv-542-

RAH-JTA, 2022 U.S. Dist. LEXIS 12124, at *19-20 (M.D. Ala. Jan. 24, 2022)

(excluding expert opinion that a corporation was "intentionally deceitful"); *see*

*also Tardiff v. GEICO Indem. Co.*, 481 F. App'x 584, 587 (11th Cir. 2012)

(excluding expert opinion that the defendant "acted in bad faith").

  Finally, the Court should preclude Defendants' experts from testifying about

the "facts" upon which these inadmissible opinions are based. As explained above,

expert witnesses may only testify to facts available from other sources "for the

purpose of explaining the basis for the expert's *admissible* opinions." *Redding v.*

*Coloplast Corp.*, No. 6:19-cv-1857-CEM-GJK, 2022 U.S. Dist. LEXIS 246079, at

*40 (M.D. Fla. Mar. 26, 2022) (emphasis in original); *see also* Fed. R. Evid. 703,

705. They may not simply narrate cherry-picked facts to bolster one party's theory

of the case. *See Hawkins*, 934 F.3d at 1263, 1265. Allowing them to do so would

introduce unreliable factual testimony into the trial and work an end-run around the

fundamental requirement of personal knowledge. Fed. R. Evid. 602.

### C. Opinions about the politicization of medical organizations, journals, and research institutions are well within the common understanding of the ordinary layperson.

In addition to improperly speculating about the goals of WPATH and other medical organizations, Drs. Kaliebe and Laidlaw offer impermissible opinions that the field of gender medicine or certain medical organizations are "politicized," "not scientifically neutral," and hostile to free speech.

For example, Dr. Laidlaw opines that WPATH, the Endocrine Society, the American Academy of Pediatrics, and the American Medical Association have engaged in "political advocacy" on issues like race relations and climate change, "rais[ing] concerns that their views regarding gender affirming therapy may not be based on a full debate of the scientific evidence and may instead be influenced, perhaps unintentionally, by their desire to be on a particular side of another social issue of the day." DX7:¶ 202 (Laidlaw Rep.). Unsurprisingly, Dr. Laidlaw provides no authority to support this conclusion. He relies on no scientific or medical methodology in reaching his conclusion, but instead engages in unchecked speculation and argument.[4]

---

[4] For the same reasons, the Court should also exclude Dr. Laidlaw's characterization of the Endocrine Society as "a vassal organization of WPATH's social-political advocacy group rather than an independent medical society generating its own scientific opinions." DX7:¶ 201 (Laidlaw Rep.). Dr. Laidlaw's expertise does not allow him to opine that any alleged weaknesses in the guidelines are the result of political influence or advocacy. Nor may he properly opine on the nature of the relationship between WPATH and the Endocrine Society, which falls outside his expertise as an endocrinologist and within the province of the factfinder.

Dr. Kaliebe takes aim more broadly, arguing that various institutions that support gender-affirming care are "politicized" and lack "respect" for dissenting viewpoints such as his own. *See, e.g.*, DX15:¶ 93 (Kaliebe Rep.); *see also id.* ¶ 94, 96–98, 100–06, 111, 120–28, 131, 137–38, 141–42, 144–45, 147, 150–51. Yet, these conclusory assertions rely on commonly understood inferences rather than specialized medical knowledge.

For example, Dr. Kaliebe objects to a medical conference's decision to exclude a researcher's presentation that questioned gender-affirming healthcare due to "'concerns' about the methods employed in several of the presentations." *Id.* ¶ 100. The next sentence reads: "It defies logic that the only time methods are a 'concern' is when the results of the research raises questions about affirmative care." *Id.* Dr. Kaliebe does not offer any opinion on whether the researcher's methods were in fact problematic. Nor does he purport to analyze different rates of rejection from medical conferences. He simply assumes that the methodological concerns raised were a pretext for viewpoint discrimination. Indeed, the paragraphs that follow, reveal why he jumps to this conclusion: his own research presentations on similar topics have been rejected from multiple conferences. *Id.* ¶¶ 103–05. His bias-motivated reasoning and naked appeals to "cancel culture" are based on pure

conjecture.[5] They are unhelpful and inadmissible. *See FTC v. Fleetcor Techs., Inc.*, No. 1:19-cv-5727-AT, 2022 U.S. Dist. LEXIS 143169, at *42-43 (N.D. Ga. Aug. 9, 2022) (excluding from a bench trial "conclusory statements []supported by no analysis, and nothing tied to [the expert's] experience").

Likewise, for the reasons discussed above, Dr. Kaliebe should not be allowed to testify about the facts on which his inadmissible opinions are based. If such "facts" are admissible, they should be presented through percipient witnesses or documents in evidence. *See Hibiscus Assocs.*, 50 F.3d at 917.

## IV.   Conclusion

For all these reasons, the Court should exclude the portions of Defendants' expert testimony cited in this motion, in addition to the grounds and reasons raised in the Motion to Exclude filed by the United States. Defendants' experts should not be allowed to  (1) interpret plain language, speculate, argue, or draw inferences that serve only to buttress the Defendants' theory of the case, including by testifying about any person or entity's intent, motives, knowledge, or state of mind; nor (2) offer factual narrative testimony about events referenced in discovery documents or any other source that can be understood without special expertise.

---

[5] His citations to a paper published by a potential decisionmaker, DX15:¶ 101, and to the academy's statement opposing Florida's "Don't Say Gay or Trans" bill, *id.* ¶ 106, are equally speculative and unhelpful.

Respectfully submitted,

_/s/ Amie A. Vague_

Melody H. Eagan
Jeffrey P. Doss
Amie A. Vague
LIGHTFOOT, FRANKLIN &
WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
meagan@lightfootlaw.com
jdoss@lightfootlaw.com
avague@lightfootlaw.com

J. Andrew Pratt
Adam Reinke
Misty L. Peterson
KING & SPALDING LLP
1180 Peachtree Street Northeast, Suite
1600
Atlanta, GA 30309
apratt@kslaw.com
mpeterson@kslaw.com
areinke@kslaw.com

Brent P. Ray
Abigail Hoverman Terry
KING & SPALDING LLP
110 North Wacker Drive, Suite 3800
Chicago, IL 60606
bray@kslaw.com
aterry@kslaw.com

Abby Parsons
KING & SPALDING LLP

Sarah Warbelow
Cynthia Weaver
HUMAN RIGHTS CAMPAIGN
FOUNDATION
1640 Rhode Island Ave., NW
Washington, DC 20036
sarah.warbelow@hrc.org
cynthia.weaver@hrc.org

Jennifer L. Levi
GLBTQ LEGAL ADVOCATES &
DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
jlevi@glad.org

Jessica L. Stone
SOUTHERN POVERTY LAW
CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
jessica.stone@splcenter.org

Christopher F. Stoll
Amy E. Whelan
Rachel H. Berg
NATIONAL CENTER FOR LESBIAN
RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
cstoll@nclrights.org
awhelan@nclrights.org

1100 Louisiana Street                    rberg@nclrights.org
Houston, TX 77002
aparsons@kslaw.com

Scott D. McCoy
SOUTHERN POVERTY LAW
CENTER
P.O. Box 12463
Miami, FL 33101
scott.mccoy@splcenter.org

Diego A. Soto
SOUTHERN POVERTY LAW
CENTER
400 Washington Avenue
Montgomery, AL 36104
diego.soto@splcenter.org

*Counsel for Private Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record in this case.


*/s/ Amie A. Vague*
*Counsel for Private Plaintiffs*