# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| and ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff-Intervenor*, ) | |
| ) | |
| v. ) | No. 2:22-cv-00184-LCB-CWB |
| ) | Hon. Liles C. Burke |
| STEVE MARSHALL, in his official ) | |
| capacity as Attorney General of the ) | |
| State of Alabama, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## DEFENDANTS' RESPONSE TO UNITED STATES' MOTION TO STAY (DOC. 604)

Defendants oppose the United States' request "to stay all district court proceedings." *See* Doc. 604 at 2. While it might make sense to postpone trial, that is in large part because under binding circuit precedent there is no need for one. This case can be resolved quickly and easily at summary judgment. And it is precisely *because* the Supreme Court granted certiorari review in *United States v. Skrmetti* that the Court should do just that. As just one example, the Supreme Court could benefit from the record in this case—which could be presented if any party in this case (including a prevailing party) obtains final judgment here and then seeks immediate Supreme Court review. *See* Sup. Ct. R. 11. A stay would foreclose that possibility.

The Supreme Court deserves to know the full story, but the United States seems intent on telling just a piece of it. When the United States sought Supreme Court review, it chose its vehicle carefully: a case arising out of a preliminary injunction with a very limited evidentiary record. Then it told the Supreme Court that "overwhelming evidence establishes that … puberty blockers and hormones directly and substantially improve[] the physical and psychological wellbeing of transgender adolescents with gender dysphoria." *See* Cert. Pet. at 7, *United States v. Skrmetti*, No. 23-477 (U.S. filed Nov. 6, 2023). And it placed at the center of *that* claim the purported reliability of WPATH's "evidence-based practice guidelines for the treatment of gender dysphoria." *Id.* at 4-7.

As discovery in this case has revealed, these claims are false. *See generally* Doc. 561 (Defs' Motion for Summary Judgment). As discovery has also revealed, the United States has long known these claims are false. Among much else that was uncovered is the undisputed fact that the United States *itself* pressured WPATH to make changes to its Standards of Care 8 (SOC-8) based purely on political considerations. *See* Doc. 591-24 ¶¶138-140 (App. A to Supp. Cantor Report). The United States has also long known that the authors of SOC-8 themselves were making decisions about what to include (or not) in their vaunted "evidence-based practice guidelines" based purely on political and legal considerations. *E.g.*, *id.* ¶134 (WPATH author expressing "concern[]" "from the perspective of current legal challenges in the US" and "two recent federal cases in which I am an expert witness" about including "language such as 'insufficient evidence,' 'limited data,' etc." in SOC-8).

Given this discovery, it is no wonder the United States rushed to the Supreme Court with a case without a robust evidentiary record—and then immediately tried to shut this case down. *See* Doc. 387 (United States stay motion filed two months before there had even been a response to its cert petition).[1] Nor is it any wonder that Plaintiffs—having initially rushed to this Court demanding emergency injunctive relief—now seem content with the status quo for at least another year.

---

[1] *See* Respondents' Br. in Opp., *United States v. Skrmetti*, No. 23-477 (U.S. filed Feb. 2, 2024).

3

This Court should not reward the United States' gambit just because the Supreme Court granted review. Indeed, a full airing of the evidence is all the more important now that the Supreme Court has granted cert. That Court should at least be aware of what discovery has revealed in a case with full discovery as it considers ruling on a case with limited discovery. And if this Court grants Defendants summary judgment quickly—which, under binding Eleventh Circuit law, it should—the parties here (including Defendants[2]) would be well positioned to petition the Supreme Court for certiorari review before judgment so that this case can be heard along with Tennessee's. Proceeding at least through summary judgment will thus help develop the law, while shutting the case down now—when the case is so close to final adjudication—can only hinder it.

It is also worth emphasizing how simple the summary judgment question is for the Court. Everyone agrees that this case is governed by rational-basis review. *See Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1224, 1230, 1210 (11th Cir. 2023). "Under this deferential standard, the question" "is simply whether the challenged legislation is rationally related to a legitimate state interest." *Id.* at 1224-25 (cleaned up). And as the Eleventh Circuit found, Alabama has many rational bases

---

[2] *See Camreta v. Greene*, 563 U.S. 692, 700 (2011) ("The relevant provision confers unqualified power on this Court to grant certiorari 'upon the petition of *any* party.' 28 U.S.C. § 1254(1) (emphasis added). That language covers petitions brought by litigants who have prevailed, as well as those who have lost, in the court below.").

for its law. *Id.* at 1225. Unless Plaintiffs and the United States can "negate every conceivable basis that might support" the law, *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009), they cannot demonstrate a genuine dispute of *material* fact. And given the Supreme Court's "longstanding instruction that the good faith of the state legislature must be presumed," *Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. 1221, 1251 (2024), there is no way they can meet their burden here. *See id.* at 1235-36 ("This presumption of legislative good faith directs district courts to draw the inference that cuts in the legislature's favor when confronted with evidence that could plausibly support multiple conclusions."). It is a "near-impossible challenge." *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1324 (11th Cir. 2021). The Court can issue a short summary judgment order and then—very possibly—be done with this case.

Other reasons also warrant denying the stay.[3] First, under Eleventh Circuit precedent, "[u]ntil the Supreme Court issues a decision that actually changes the law," courts "are duty-bound to apply [the Eleventh Circuit's] precedent and to use it and any existing decisions of the Supreme Court." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015); *see Rutherford v. McDonough*, 466 F.3d 970, 977 (11th Cir. 2006) (a "grant of certiorari does not change the law").

---

[3] Here, as in its previous briefing, the United States largely ignores the relevant stay factors. The factors are briefed in Defendants' earlier response to Plaintiffs' stay motion. *See* Doc. 523 at 4-5.

5

So long as "the law in this circuit" rejects the United States' position, it cannot show a likelihood of success warranting a stay. *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992); *see also Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007) ("a grant of certiorari is not authority to the contrary of binding circuit precedent"). The Eleventh Circuit "disfavors the granting of a stay based on the Supreme Court's grant of certiorari." *Arkin v. Innocutis Holdings, LLC*, 176 F. Supp. 3d 1313, 1314 (M.D. Fla. 2016) (citing *Gissendaner*, 779 F.3d at 1284).

Second, if the Court stays the case now, a decision in *Skrmetti* could very well put this case right back where we are now—just a year later. And one can expect that this Court will be asked to reopen discovery for new requests, additional expert reports, and more depositions. This would be the world we'd be in if the Supreme Court affirms the Sixth Circuit's decision (and thus agrees with the Eleventh Circuit's holding in this case). It could also occur if the Tennessee case is resolved in some other fashion, either because of the potential standing issues lurking[4] or because of a change in the Department of Justice's position. After two years of discovery, the parties have the case ready for a merits determination. Those efforts could very well be for naught if the Court stays the case now.

Third, judicial economy—the only stay factor that the United States addresses—does not support a stay. The worst-case scenario from a judicial economy

---

[4] *See* Respondents' Br. in Opp., *supra*, at 39-40.

perspective from *not* granting a stay is that the Court grants Defendants' summary judgment motion, Plaintiffs and the United States appeal, and the Supreme Court's ruling in *Skrmetti* affects the standard of review in a way that causes this case to be remanded for further proceedings. But given where things stand—with Defendants' summary judgment motion and evidentiary submissions already on the docket, responses due in just three business days, and binding precedent making the summary judgment motion a simple one for the Court to decide—there is not much cost to proceeding. The potential upside—being done with this case without the need to revisit anything in a year—makes the minimal cost worth it.

Last, the Supreme Court has granted certiorari to consider only one issue that could affect this case: the equal protection question. But Plaintiffs here still have their Due Process claim. At least that claim can and should be decided now.

* * *

Defendants understand the Court's desire to avoid having two trials on the merits and agree that should be avoided. But that is no reason to stay the case now. Proceeding with summary judgment would help develop the law by making crucial evidence available to the Supreme Court; resolve issues in the case that will be left unaffected by any decision in *Skrmetti*; and avoid the prospect of re-opening discovery and re-doing summary judgment and *Daubert* briefing if the Supreme Court's decision does not affect the standard in this case.

7

## CONCLUSION

The Court should deny the United States' motion to stay.

Dated: June 26, 2024

Respectfully submitted,

Steve Marshall
　*Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, SC 29413
(843) 606-0640
CMills@Spero.law

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
　*Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
　*Principal Deputy Solicitor General*

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

James W. Davis (ASB-4063-I58J)
　*Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
　*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

Roger G. Brooks (*pro hac vice*)
Henry W. Frampton, IV (*pro hac vice*)
Philip A. Sechler (*pro hac vice*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0200
rbrooks@adflegal.org
hframpton@adflegal.org
psechler@adflegal.org

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I certify that on June 26, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Defendants*
