# EXHIBIT 20

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BRIANNA BOE, et al.,

   Plaintiffs,

      v.

STEVE MARSHALL, et al.,

   Defendants.

No. 2:22-cv-00184-LCB-CWB

## DECLARATION OF ELI COLEMAN, PhD

I, Eli Coleman, declare as follows:

1.    I am a professor *emeritus* and former director of the Eli Coleman Institute for Sexual and Gender Health (formerly the Program in Human Sexuality) in the Department of Family Medicine and Community Health at the University of Minnesota. I am a former president of the World Professional Association for Transgender Health ("WPATH") and was chair of the Guideline Steering Committee for WPATH's Standards of Care Version 8 ("SOC8"). If called upon to testify as to the facts set forth herein, I could and would testify competently thereto.

2.    WPATH hired Johns Hopkins University to lead a rigorous process to identify the evidence base for treatment of gender dysphoria. That process included carrying out systematic reviews of the scientific literature relating to the treatment of gender

1

dysphoria, including identifying any research evaluating the efficacy and safety of the use of puberty blockers and hormone therapy in adolescents. It also included identifying any scientific literature evaluating the outcomes of use of puberty blockers and hormone therapy to treat gender dysphoria in adolescents.

3. I have reviewed portions of the State of Alabama's summary judgment briefing in this case and do not agree with the assertions made in it.

4. First, it is not true that the development of SOC8 turned on any ideological or political considerations. Development of SOC8 followed the rigorous methodology designed by Johns Hopkins University to approve recommendations through the Delphi Method, a well-established methodology to develop clinical practice guidelines.

5. In order to ensure transparency of the process, the development of the guidelines included publicly distributing a draft for review and feedback from stakeholders, medical professional organizations, and any other interested parties. WPATH received significant feedback after public release of the draft document. That included feedback from the United States Assistant Secretary for Health. It also included feedback from the American Academy of Pediatrics. Such feedback was anticipated as part of the public review process.

6. WPATH took all feedback into account in evaluating whether any additional information should be included in the SOC8 or whether any of the recommendations

2

should be reconsidered or re-evaluated. WPATH's review and revisions based on public feedback after the transparent review process was not ideological or political. It rested on the same measured, scientific basis as did the earlier development of the draft.

7. In addition, WPATH did not suppress publication of any of the systematic reviews developed by Johns Hopkins University. In fact, at least two of the articles that Johns Hopkins wanted to publish, were published.

8. WPATH did dispute the timing of when Johns Hopkins could publish their systematic reviews because WPATH wanted to include the information gleaned from the systematic reviews in its publication of SOC8. WPATH did not want Johns Hopkins University to publish its research prior to WPATH's opportunity to release SOC8. This was not because WPATH had any interest in suppressing Johns Hopkins' research. To the contrary, WPATH wanted to ensure that its release of SOC8 would be the first publication of the research.

9. The recommendations included in SOC8 were based on the rigorous process set up by Johns Hopkins and supported by the scientific evidence base provided to us by Johns Hopkins and upon which the members of the chapter committees voted through the Delphi process.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Budapest, Hungary on July 1, 2024.

*Eli Coleman*

Eli Coleman, PhD