# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

BRIANNA BOE *et al.*,

   *Plaintiffs*,

and

UNITED STATES OF AMERICA,

   *Plaintiff-Intervenor*,

v.

STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, *et al.*,

   *Defendants*.

No. 2:22-cv-00184-LCB-CWB
Hon. Liles C. Burke

**REDACTED COPY; ORIGINAL SUBMITTED UNDER SEAL**

### DEFENDANTS' RESPONSE TO PLAINTIFFS' AND THE UNITED STATES' MOTIONS TO EXCLUDE CERTAIN TESTIMONY OF MICHAEL LAIDLAW, M.D. (DOCS. 590, 602, 605)

## TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Introduction ........................................................................................................ 1

Background ........................................................................................................ 2

Argument ............................................................................................................ 5

    I.    Dr. Laidlaw Is Qualified By Knowledge, Training, Experience, And Education To Opine On Treatments For Gender Dysphoria And Clinical Guidelines ............................................................................... 5

    II.   Dr. Laidlaw's Testimony About Plaintiffs' Interventions Is Based On Sufficient Facts ........................................................................... 7

    III.  Dr. Laidlaw's Opinions About American Medical Organizations And Their Guidelines Are Admissible ................................................ 9

Conclusion ........................................................................................................ 12

Certificate of Service ....................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*C.P. v. Blue Cross Blue Shield of Illinois*,
   2022 WL 17092846 (W.D. Wash. Nov. 21, 2022) ............................................. 7

*Doe v. Snyder*,
   28 F.4th 103 (9th Cir. 2022) ............................................................................. 7

*Giusto v. Int'l Paper Co.*,
   571 F. Supp. 3d 1346 (N.D. Ga. 2021) ............................................................ 8

*Hennessy-Waller v. Snyder*,
   529 F. Supp. 3d 1031 (D. Ariz. 2021) .............................................................. 7

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
   2021 WL 765019 (N.D. Fla. Feb. 28, 2021) .................................................. 12

*In re Takata Airbag Prod. Liab. Litig.*,
   No. 15-MD-02599, 2022 WL 4594123 (S.D. Fla. July 19, 2022) ................. 12

*In re Trasylol Prods. Liab. Litig.*,
   709 F. Supp. 2d 1323 (S.D. Fla. 2010) .......................................................... 12

*Kadel v. Folwell*,
   620 F. Supp. 3d 339 (M.D.N.C. 2022) .......................................................... 11

*Karr v. Celadon Trucking Servs., Inc.*,
   2017 WL 10942181 (N.D. Ga. Dec. 21, 2017) ................................................ 8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ...................................................................................... 11

*McDowell v. Brown*,
   392 F.3d 1283 (11th Cir. 2004) ....................................................................... 6

*State Farm Mut. Auto. Ins. Co.*,
   2017 WL 2959060 (M.D. Fla. July 11, 2017) .................................................. 8

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC,*
  2019 WL 3207803 (W.D. Tex. July 16, 2019) ...................................................... 12

*United States v. Frazier,*
  387 F.3d 1244 (11th Cir. 2004) ........................................................................... 5

## Rules

Fed. R. Civ. P. 26(a)(2)(B) ......................................................................................... 11

Fed. R. Evid. Rule 702 .................................................................................. 5, 7, 11, 12

Fed. R. Evid. 703 .................................................................................................. 1, 11

## Other Authorities

29 Wright & Miller, *Federal Practice and Procedure* § 6264.1 (2d ed.) .................. 5

## INTRODUCTION

Dr. Michael Laidlaw has been a practicing endocrinologist for over 20 years, was a longtime member of the Endocrine Society, regularly evaluates clinical guidelines, and has published extensively on gender dysphoria. He opines here on the risks of puberty blockers and cross-sex hormones as treatments for gender dysphoria in minors, as well as the poor evidence base of those interventions and the deficiencies of the clinical guidelines about them. In his supplemental report, he opines on the individual Plaintiffs' treatments in light of his primary opinions. Last, in his second supplemental report, he presents corroborating facts based on discovery documents to support his opinions about the advocacy orientation of American medical organizations on this issue and the resulting deficiencies in their clinical guidelines.

Repeating the same arguments they have directed at Defendants' other expert witnesses, Plaintiffs and the United States move to exclude three portions of Dr. Laidlaw's testimony. All three challenges fail for the reasons largely articulated elsewhere, which are incorporated here. *First*, Dr. Laidlaw is qualified to opine on medical gender transition interventions and clinical guidelines about them based on his long experience as a practicing endocrinologist with extensive knowledge of these drugs—and as someone who evaluates clinical guidelines and has published in the field. *Second*, Dr. Laidlaw's testimony about the individual Plaintiffs is based on sufficient facts—the medical records that the Plaintiffs themselves were ordered to fully provide. *Third*, Dr. Laidlaw's use of internal documents to confirm his opinions about the deficiencies with WPATH's (and the Endocrine Society's) guidelines is proper under Rule 703, and those opinions are helpful because a lay observer lacks

1

Dr. Laidlaw's expertise and knowledge about the operations of American medical organizations and guideline creation.

Finally, and once again, the United States and Plaintiffs also seek to exclude a few paragraphs from Dr. Laidlaw's testimony about gender transition surgeries as irrelevant. The relevance of that testimony is explained in—and Defendants incorporate here—pp. 6-11 of Defendants' response to the plaintiffs' motions to exclude Dr. Lappert's testimony.

## BACKGROUND

Dr. Michael K. Laidlaw has been a board-certified endocrinologist for over 20 years. SJ.DX7:¶2 (Laidlaw Rep.). In his private endocrinology practice, Dr. Laidlaw will "frequently assess and treat patients demonstrating psychiatric symptoms and determine whether their psychiatric symptoms are being caused by a hormonal issue, gland issue, or something else." *Id.* ¶4. He was a member of the Endocrine Society from 2006 until 2023, and is presently a member of the National Board of Physicians and Surgeons-Endocrinology, Diabetes, & Metabolism and the National Board of Physicians and Surgeons-Internal Medicine. *Id.* Curriculum Vitae. In 2010, Dr. Laidlaw was given the Endocrine Society's Harold Vigersky Practicing Physician Travel Award. *Id.*

Dr. Laidlaw has extensive research experience. He has authored eight publications about gender dysphoria. *Id.* He has been certified by the University of Southern California in the "Responsibilities and Requirements for the Protection of Human Subjects in Research." *Id.*; SJ.DX9:¶5 (Laidlaw 2d Supp. Rep.). He has "firsthand personal experience in human research as a physician, having been involved in

2

two studies" over several years. *Id.*; *see* Laidlaw Rep. Curriculum Vitae. Further, Dr. Laidlaw has given a speech before the House of Lords in which he discussed the "medical harms associated with the hormonal and surgical therapy of child and adolescent gender dysphoria." *Id.*

Dr. Laidlaw's expert opinions in this case are based on his "clinical experience as an endocrinologist … dealing with hormone excess, hormone deficiency, and hormone balance," his "clinical experience" caring for those "who have or have had gender incongruence including a detransitioner," his "knowledge of research and studies regarding the treatment of gender dysphoria, including for minors and adults," and his "first-hand personal experience in human research as a physician." *Id.* ¶8; Laidlaw 2d Supp. Rep. ¶4.

In his initial report, Dr. Laidlaw explains the difference between biological sex and gender identity, opining on the role of sex in human development. Laidlaw Rep. ¶¶14-55. He next discusses medical gender transition interventions as a treatment for the psychological diagnosis of gender dysphoria. Based on his experience in endocrinology, he opines about the risks of puberty blockers and sex hormones when used in this context. *Id.* ¶¶56-175. He explains why the use of puberty blockers here is not the same as their use to treat central precocious puberty. *Id.* ¶¶203-06. He also opines about the lack of evidence supporting these interventions as treatments for gender dysphoria, including the substitution of social-political advocacy for evidence-based medicine by organizations supporting these interventions and the resulting deficiencies in their guidelines. *Id.* ¶¶176-237. He explains the international retreat from these interventions. *Id.* ¶¶238-45. Ultimately, Dr. Laidlaw concludes:

3

"[I]n my professional opinion as an endocrinologist, no child or adolescent should receive puberty blockers to block normal puberty, nor should they receive supraphysiologic doses of opposite sex hormones to attempt to alter secondary sex characteristics, nor should they have surgeries to remove or alter the breasts, genitalia, or reproductive tracts as part of GAT." *Id.* ¶250.

Dr. Laidlaw's supplemental report ███████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

Last, in Dr. Laidlaw's second supplemental report, he ███████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

The United States seeks exclusion of Dr. Laidlaw's opinions about gender dysphoria, clinical guidelines, the individual Plaintiffs, and non-scientific influences

4

on WPATH and relevant guidelines. Doc. 591 at 24-29 (U.S. Mot.). Plaintiffs parrot the last argument about WPATH. Doc. 605 at 13-17 (Plfs' Mot.).

## ARGUMENT

I. **Dr. Laidlaw Is Qualified By Knowledge, Training, Experience, And Education To Opine On Treatments For Gender Dysphoria And Clinical Guidelines.**

Dr. Laidlaw is qualified to opine about treatments for gender dysphoria in children and those treatments' clinical guidelines. As the Eleventh Circuit has explained, under "the plain language of Rule 702," "experts may be qualified in various ways," including "based on 'knowledge, skill, experience, training, *or* education.'" *United States v. Frazier*, 387 F.3d 1244, 1260–61 (11th Cir. 2004) (emphasis altered) (quoting Fed. R. Evid. 702). "[A] background in just one of these five may be sufficient." 29 Wright & Miller, *Federal Practice and Procedure* § 6264.1 (2d ed.).

Dr. Laidlaw is an expert in endocrinology with extensive knowledge and experience prescribing and managing care using puberty blockers and sex hormones. Laidlaw Rep. ¶8. Beyond this direct experience, as described above, Dr. Laidlaw "frequently review[s] medical studies conducted by others and ha[s] experience assessing the strengths and weaknesses of such studies," and he has many publications about gender dysphoria. *Id.*; *id.* Curriculum Vitae.

Given this background, Dr. Laidlaw "is qualified to testify competently regarding" medical gender transition interventions and their clinical guidelines. *Frazier*, 387 F.3d at 1260. Dr. Laidlaw is qualified to discuss these issues based on his experience. He is an endocrinologist and longtime member of the Endocrine Society. Laidlaw Rep. ¶192. He testified that, "as an endocrinologist, I have to be able to

5

evaluate the guidelines": "the substance of the guidelines; how are those guidelines produced; was there transparency in the guideline production; … is the guideline production sufficient for me to use to make a clinical decision." Doc. 591-13 at 88:13-25 (Laidlaw Dep.). He called this "an important part of what I do every day." *Id.* at 89:1; *see id.* at 93:3-23 (explaining that this is part of his practice).

Dr. Laidlaw is also qualified to discuss issues related to medical gender transition interventions based on his knowledge and education. He has studied those issues for many years, with multiple publications about them. *See* Laidlaw Rep. Curriculum Vitae.

The United States' core objection to Dr. Laidlaw's gender dysphoria testimony is practically the same as it was to Dr. Hruz's: "he has neither provided gender-affirming care to individuals under 19 nor received formal specialized training in such treatment," and has not "personally" "develop[ed] clinical guidelines." U.S. Mot. 25. The problem with this objection, as explained in detail in Defendants' Response supporting Dr. Hruz (which Defendants incorporate here), is that "[t]he proffered physician need not be a specialist in the particular medical discipline to render expert testimony relating to that discipline." *McDowell v. Brown*, 392 F.3d 1283, 1297 (11th Cir. 2004); *see* Defs' Hruz Resp. at 7-10. So it makes no difference that Dr. Laidlaw has not personally provided treatments *that he has determined are unsafe* to minors, or that he has not written guidelines recommending their use. He is an endocrinologist with long experience and knowledge about these interventions, and he regularly evaluates clinical guidelines of the sort at issue here.

6

Take it from the United States' own case, which the United States cites while omitting the court's conclusion (U.S. Mot. 25): Dr. Laidlaw "is sufficiently qualified to testify as an expert" in this area. *C.P. v. Blue Cross Blue Shield of Illinois*, 2022 WL 17092846, at *4 (W.D. Wash. Nov. 21, 2022); *see id.* ("[A]s an endocrinologist, his opinion regarding puberty blockers and hormones is sufficiently reliable."); *see also Hennessy-Waller v. Snyder*, 529 F. Supp. 3d 1031, 1042 (D. Ariz. 2021) (referring to Dr. Laidlaw and others as "well-qualified experts"), *aff'd sub nom. Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022).

Dr. Laidlaw is qualified by knowledge, experience, and education to opine about medical gender transition interventions in minors and related clinical guidelines.

## II. Dr. Laidlaw's Testimony About Plaintiffs' Interventions Is Based On Sufficient Facts.

The United States and Plaintiffs also seek exclusion of Dr. Laidlaw's opinions about the treatment of individual Plaintiffs "because he did not review a complete set of records or interview the Private Plaintiffs." U.S. Mot. 26. Defendants have explained at length elsewhere why their experts' comprehensive review of the medical records provided by Plaintiffs—who presumably fulfilled their discovery obligations to provide all their relevant records—is sufficient to enable them to opine on the Plaintiffs' treatments. *See* Defs' Nangia Resp. at 14-19; *see also* Defs' Hruz Resp. at 13-18. Incorporating those detailed arguments here, Defendants emphasize again that Rule 702 requires only "sufficient facts," and courts routinely allow medical experts to testify based on medical record reviews. The United States quotes

only one opinion from Dr. Laidlaw that it contends is unreliable, but it omits Dr. Laidlaw's qualifier that the opinion is "[b]ased on the available evidence." Laidlaw Supp. Rep. ¶63; *see* U.S. Mot. 26. Necessarily, Dr. Laidlaw's opinion is precisely tailored to that "available evidence."

Otherwise, the only new point that the United States makes here is that Dr. Laidlaw's report "notes" "documents he did not review." U.S. Mot. 26. That is a matter for cross-examination, not admissibility.[1] And the United States' argument wouldn't even help it there, for at least two reasons. First, the only supposedly "missing" medical records the United States alludes to are from Plaintiff Noe—whose family voluntarily dismissed their claim four months ago—so are irrelevant. *See* Doc. 474.[2]

Second, that any records appear to be "missing" only supports Dr. Laidlaw's overarching opinion that the treatments being provided to the Plaintiffs are too risky.

 that only heightens the concerns with those

---

[1] *See, e.g.*, *State Farm Mut. Auto. Ins. Co.*, 2017 WL 2959060, at *3 (M.D. Fla. July 11, 2017) (calling challenge that the expert did not "review[] every available medical record in making his determination" an issue of "cross-examination"); *Giusto v. Int'l Paper Co.*, 571 F. Supp. 3d 1346, 1363 (N.D. Ga. 2021) ("If [the expert's] review of the [medical records] is somehow insufficient, it is [Defendant's] prerogative to point that out during cross-examination."); *Karr v. Celadon Trucking Servs., Inc.*, 2017 WL 10942181, *6 (N.D. Ga. Dec. 21, 2017) (finding that a party's arguments that the opposing expert's testimony was based on insufficient information were "better explored through cross examination as opposed to wholesale exclusion," even though the expert had "prepared his opinion before properly reviewing [a relevant individual's] medical records").

[2] In any event, that too goes to weight, not admissibility.

providers embarking on medical gender transition interventions absent a full medical and psychiatric history. U.S. Mot. 26 (quoting Laidlaw Supp. Rep. ¶38). Likewise,

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

is an indictment of those providers, not Dr. Laidlaw's review. Laidlaw Supp. Rep. ¶¶42, 46, 56.

Last, though Defendants have made this point elsewhere, it bears repeating that Plaintiffs either provided all the medical records as ordered by this Court, or they didn't and should do so immediately. *See generally* Defs' Nangia Resp. 18-19.

Dr. Laidlaw's opinions in his supplemental report are based on sufficient facts.

### III. Dr. Laidlaw's Opinions About American Medical Organizations And Their Guidelines Are Admissible.

Last, the United States and Plaintiffs challenge several opinions about American medical organizations and their guidelines, mostly in Dr. Laidlaw's second supplemental report, "as a mere conduit for introducing hearsay" and otherwise unhelpful. U.S. Mot. 28; *see* Pltfs' Mot. 13-17. These challenges fail, largely for the reasons addressed in Defendants' Response about Dr. Kaliebe's report. *See* Defs' Kaliebe Resp. 13-20.

First, Dr. Laidlaw is qualified to opine about American medical organizations and their gender transitioning guidelines. As discussed, he commonly evaluates clinical guidelines in endocrinology in his regular practice and was a longtime member

9

of the Endocrine Society, which publishes one set of guidelines relevant here. Further, he is qualified by experience and knowledge to testify about treatments of gender dysphoria generally, which includes the guidelines for those treatments.

Second, Dr. Laidlaw reliably applies his expertise to opine about American medical organizations and their guidelines. The United States does not appear to challenge on reliability grounds the opinions in Dr. Laidlaw's primary report, in which he opines that "WPATH SOC 8 is the work of advocacy, not science, and should not be followed by any physician, mental health care provider, or other medical professionals." Laidlaw Rep. ¶191. Likewise, he opines that "the Endocrine Society's guidelines do not provide a standard of care that any physician should follow." *Id.* ¶201.

Then, in his second supplemental report, Dr. Laidlaw considers the additional evidence provided by WPATH and HHS documents, concluding that he "stand[s] by [his] opinion that WPATH SOC 8" "should not be followed." Laidlaw 2d Supp. Rep. ¶163. The United States' effort to segregate the opinions in Dr. Laidlaw's second supplemental report from his original opinions makes little sense. He used the new evidence available to assess his original opinions. That new evidence came in the form of documents directly from WPATH and HHS. Reading primary sources and assessing his opinion in light of them are not unreliable approaches to confirm an expert opinion. *See* Defs' Kaliebe Resp. 13-16 & n. 3 (collecting cases approving similar approaches). The plaintiffs' complaints about hearsay are also red herrings: Experts may rely on inadmissible evidence, and they *must* disclose the facts

10

underlying their opinions. *See id.* at 16-17 (discussing Fed. R. Evid. 703 and Fed. R. Civ. P. 26(a)(2)(B)).

Third, Dr. Laidlaw's opinions about American medical organizations and their guidelines are helpful to the trier of fact. Again, the reasons for that are fully briefed in Defendants' Kaliebe Response, *id.* at 17-20, which are incorporated here. District courts have admitted similar testimony in other cases "to provide background and critique the WPATH Standards of Care." *Kadel v. Folwell*, 620 F. Supp. 3d 339, 371-72 (M.D.N.C. 2022).

As a member of relevant industry groups and a practitioner who has studied and published about their guidelines, Dr. Laidlaw has specialized knowledge that a layperson would not. His specialized knowledge is directed at a critical issue: the integrity of the guidelines and purported consensus that the plaintiffs have built their case around. Because Dr. Laidlaw's "expert testimony focuses upon specialized observations[ and] the specialized translation of those observations into theory" different from an ordinary factfinder's "own" observations, this testimony satisfies Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

The plaintiffs primarily point to snippets from Dr. Laidlaw's second supplemental report that frame the documentary evidence, and they say that this is impermissible "motive or intent" testimony. U.S. Mot. 28-29; Pltfs' Mot. 12-17. But the point of Dr. Laidlaw's testimony is not to impute scienter or intent to a party, but to opine on the reliability of the guidelines and consensus at issue. *See* Defs' Kaliebe Resp. 17-20. And Dr. Laidlaw's explanatory or summarizing phrases are hardly "conjecture" anyway. U.S. Mot. 28. For instance, the United States complains that

11

Dr. Laidlaw "alleg[ed]" that SOC-8 had a goal "'of protect[ing] clinicians from liability.'" *Id.* (quoting Laidlaw 2d Supp. Rep. ¶6). But Dr. Laidlaw is merely summarizing what many documents said: that SOC-8 authors said they "needed a tool for our attorneys to use in defending access to care." Laidlaw 2d Supp. Rep. ¶129 (quoting BOEAL_WPATH_037220); *see id.* ¶¶127-33; SJ.DX181:33 (WPATH 8).

This characterization of a document is a question of weight, not admissibility: "[A] motion regarding what words an expert … may use at trial is not properly raised in a Rule 702 motion." *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 2019 WL 3207803, at *2 (W.D. Tex. July 16, 2019); *see In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 765019, at *41 (N.D. Fla. Feb. 28, 2021) (Plaintiffs' own case explaining that "passing reference[s]" need not be excluded). At most, though, any exclusion would be of passing words, not Dr. Laidlaw's testimony about the organizations and their guidelines writ large. Dr. Laidlaw "relies on his professional experience and factual testimony to lay the groundwork to provide his own expert opinion"—that the guidelines of American medical organizations are unreliable—and that is "entirely permissible under *Daubert*." *In re Takata Airbag Prod. Liab. Litig.*, No. 15-MD-02599, 2022 WL 4594123, at *4 (S.D. Fla. July 19, 2022) (distinguishing the plaintiffs' lead case, *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323 (S.D. Fla. 2010)).

## CONCLUSION

For these reasons, the Court should deny the United States' and Plaintiffs' motions to exclude certain testimony of Dr. Michael Laidlaw.

12

| | |
|---|---|
| Dated: August 12, 2024 | Respectfully submitted, |
| | Steve Marshall<br>  *Attorney General* |
| Christopher Mills (*pro hac vice*)<br>SPERO LAW LLC<br>557 East Bay Street, #22251<br>Charleston, SC 29413<br>(843) 606-0640<br>CMills@Spero.law | Edmund G. LaCour Jr. (ASB-9182-U81L)<br>  *Solicitor General*<br><br>s/ A. Barrett Bowdre<br>A. Barrett Bowdre (ASB-2087-K29V)<br>  *Principal Deputy Solicitor General* |
| David H. Thompson (*pro hac vice*)<br>Peter A. Patterson (*pro hac vice*)<br>Brian W. Barnes (*pro hac vice*)<br>John D. Ramer (*pro hac vice*)<br>COOPER & KIRK, PLLC<br>1523 New Hampshire Ave., NW<br>Washington, D.C. 20036<br>(202) 220-9600<br>dthompson@cooperkirk.com<br>ppatterson@cooperkirk.com<br>bbarnes@cooperkirk.com<br>jramer@cooperkirk.com | James W. Davis (ASB-4063-I58J)<br>  *Deputy Attorney General*<br><br>Benjamin M. Seiss (ASB-2110-O00W)<br>Charles A. McKay (ASB-7256-K18K)<br>  *Assistant Attorneys General*<br><br>OFFICE OF THE ATTORNEY GENERAL<br>STATE OF ALABAMA<br>501 Washington Avenue<br>Post Office Box 300152<br>Montgomery, Alabama 36130-0152<br>Telephone: (334) 242-7300<br>Facsimile: (334) 353-8400<br>Edmund.LaCour@AlabamaAG.gov<br>Barrett.Bowdre@AlabamaAG.gov<br>Jim.Davis@AlabamaAG.gov<br>Ben.Seiss@AlabamaAG.gov<br>Charles.McKay@AlabamaAG.gov |
| Roger G. Brooks (*pro hac vice*)<br>Henry W. Frampton, IV (*pro hac vice*)<br>Philip A. Sechler (*pro hac vice*)<br>ALLIANCE DEFENDING FREEDOM<br>15100 N. 90th Street<br>Scottsdale, AZ 85260<br>(480) 444-0200<br>rbrooks@adflegal.org<br>hframpton@adflegal.org<br>psechler@adflegal.org | *Counsel for Defendants* |

13

## CERTIFICATE OF SERVICE

I certify that on August 12, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Defendants*
