# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| BRIANNA BOE *et al*., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Intervenor*, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00184-LCB-CWB |
| | ) | Hon. Liles C. Burke |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, *et al.*, | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

# DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE SELECTED TESTIMONY OF DR. JENIFER LIGHTDALE (DOC. 595)

# TABLE OF CONTENTS

Table of Contents ................................................................................. i

Table of Authorities ............................................................................ ii

Introduction ........................................................................................ 1

    I.    Dr. Lightdale Lacks Knowledge, Expertise, And Reliable Methodology To Opine On The Adequacy Of Methodologies For Development Of Clinical Practice Guidelines, Including SOC-8 ........... 1

        A.    Dr. Lightdale Is Now Explicitly Disqualified From Offering Any Testimony About the Substance or Adequacy of the Methodology Used To Develop SOC-8 ........................................... 1

        B.    Dr. Lightdale's Proffered Testimony About the Merits of a Methodology That WPATH Did Not Follow Will Not Be Useful to the Court ........................................................................... 2

        C.    Dr. Lightdale Does Not Have the Expertise Appropriate To Evaluate Any Methodology for Development of a Clinical Practice Guideline ........................................................................... 3

        D.    Plaintiffs' Discussion of GRADE Is Irrelevant ................................. 5

    II.    Dr. Lightdale Lacks Expertise And Knowledge To Opine On WPATH's Compliance With Accepted Conflict-Of-Interest Principles In The Development Of SOC-8 ............................................. 5

Conclusion ........................................................................................ 8

Certificate of Service ......................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Bradley v. Armstrong Rubber Co.*,
   130 F.3d 168 (5th Cir. 1997) ...................................................................3

*Casas Office Machines Inc. v. MITA Copystar America*,
   42 F.3d 668 (1st Cir. 1994) ....................................................................3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)....................................................................... 1, 3, 6

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000) ...................................................................3

*Harvey v. Novartis Pharmaceutical Corp.*,
   895 F. Supp. 2d 1206 (N.D. Ala. 2012)..............................................3, 4

*Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*,
   772 F.3d 1352 (11th Cir. 2014) ..............................................................3

# INTRODUCTION

Defendants moved to exclude Dr. Lightdale's proffered testimony concerning the methodology used to develop WPATH's SOC-8 and the compliance of that methodology with accepted standards, and concerning whether or to what extent WPATH complied with conflict-of-interest principles in the course of that development. Plaintiffs' response makes important concessions, attempts to substitute a vague and general expertise for the specific expertise required under *Daubert*, and wades into factual disputes to distract from the disqualifying problem that Dr. Lightdale has failed to demonstrate that her opinions rest on reliable foundations and reliable methodology. Defendants' motion should be granted in all respects.

I.   **Dr. Lightdale Lacks Knowledge, Expertise, And Reliable Methodology To Opine On The Adequacy Of Methodologies For Development Of Clinical Practice Guidelines, Including SOC-8.**

A.   **Dr. Lightdale Is Now Explicitly Disqualified From Offering Any Testimony About the Substance or Adequacy of the Methodology Used To Develop SOC-8.**

Dr. Lightdale claimed "actual knowledge" and proffered testimony concerning "[t]he methodology *used* to establish the development of the WPATH SOC8." *Daubert*.DX9:¶¶2, 20 (Lightdale Reb. Decl.) (emphasis added). As to that supposed method, Dr. Lightdale affirmatively asserted that "An Evidence team *was* secured to conduct systematic reviews and to present an 'evidence table'"; that all SOC8 recommendations "*were* … submitted to the entire SOC8 membership for evaluation"; that "chapter members *graded* each statement using GRADE"; that all final recommendations "*were approved* by at least 75 percent of the SOC8

1

members"; that the development process "*was* transparent and rigorous"; and more. Lightdale Reb. Decl. ¶¶19-20, 29 (emphases added). This is not potential "future testimony" (Doc. 671 at 6 (Opp.)); this is what Dr. Lightdale stated in her expert report.

Defendants demonstrated in their opening brief that Dr. Lightdale had no "actual knowledge" of these or any other aspect of the development of SOC-8 and undertook no investigation whatsoever of WPATH's development process, and that her factual assertions about that real-world process quoted above are flatly wrong. Doc. 595 at 4-9 (Mot.).

Plaintiffs now concede this rather large point, declaring that Dr. Lightdale "does not offer factual testimony about how WPATH implemented its methodology," and instead "simply presents this court with evidence and examples of how other clinical guidelines are developed and how WPATH's publicly stated development processes for SOC8 … compare." Opp. 6. But as reviewed below, Dr. Lightdale cannot provide reliable, useful testimony even on this narrowed and theoretical scope.

## B. Dr. Lightdale's Proffered Testimony About the Merits of a Methodology That WPATH Did Not Follow Will Not Be Useful to the Court.

Given the undisputed testimony of SOC-8 Chair Dr. Coleman that on point after point the SOC-8 team did *not* follow the "publicly stated development processes" (Mot. 5-7), hypothetical and abstract testimony about the adequacy of a methodology that WPATH did not follow will not be useful to the Court. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo,

non-helpful." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993). For this reason, multiple courts have held that expert testimony should be excluded where "the testimony has no foundation or rests on obviously incorrect assumptions or speculative evidence." *Casas Office Machines Inc. v. MITA Copystar America*, 42 F.3d 668 (1st Cir. 1994); *see also Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) ("assumption absent sufficient factual predicates [is] a castle made of sand" (cleaned up)); *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 177 (5th Cir. 1997) ("an opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant").

    **C.**    **Dr. Lightdale Does Not Have the Expertise Appropriate To Evaluate Any Methodology for Development of a Clinical Practice Guideline.**

    Plaintiffs fail to demonstrate that Dr. Lightdale has the expertise appropriate to an evaluation of the strength of any methodology, including the methodology falsely claimed by WPATH. Of course it is true that Dr. Lightdale's own disclaimer of expertise in the methodology of guideline development (*see* Mot. 3) is not the end of the inquiry, but it is a starting point that leaves a stiff uphill climb for Plaintiffs to meet their burden to establish that her proposed testimony is actually within her expertise. Mot. 3-4. The Eleventh Circuit has warned that there must be careful examination of expertise with reference to the specific opinions offered, as "[e]xpertise in one field does not qualify a witness to testify about others." *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368-69 (11th Cir. 2014). Plaintiffs cite *Harvey v. Novartis Pharmaceutical Corp.*, 895 F. Supp. 2d 1206, 1211 (N.D. Ala. 2012), but that case illustrates rather than tempering the Eleventh

Circuit's teaching: the *Harvey* court emphasized the necessity of a precise examination of expertise, and the burden on the proponent to establish directly on-point expertise, and as a result precluded an expert in maxillofacial surgery from testifying about the *cause* of maxillofacial bone disease that is treated by surgery. *Id.* at 1211-12.

A similarly focused examination of Dr. Lightdale's credentials confirms that she does not have the expertise to testify as to whether a particular guideline development methodology (actual or hypothetical) is "transparent, rigorous, and methodologically sound." Lightdale Reb. Decl. ¶19. Dr. Lightdale denied being an expert in guideline development methodology. Mot. 3; SJ.DX69:26:16 (Lightdale Dep.) In theory, that might reflect mere modesty, but she said more. She repeatedly testified that when in the course of her own guideline-related work she needed to evaluate a proposed methodology or know what methodology to follow, she would consult an expert in methodology. Mot. 3. This is in-the-trenches, objective evidence that when it matters in the real world, Dr. Lightdale knows that she herself does not possess that expertise.

Plaintiffs respond by arguing that Dr. Lightdale has *participated* in multiple guideline development projects. So she has. But even platinum status as a frequent flyer does not make one an expert in how to fly an airplane. Dr. Lightdale has adjacent rather than on-point expertise. Plaintiffs admit that guideline methodology is a sufficiently distinct expertise that both the WHO and the IoM recommend involvement of a methodologist in the development of clinical practice guidelines. Opp. 4. Consistent with this, Dr. Lightdale testified that the guideline projects in

4

which she participated always included a methodologist (*see* Mot. 3)—and it was not her.

Dr. Lightdale's disclaimer of expertise appropriate to evaluate a guideline development methodology was correct. Her proffered testimony on that topic should be excluded.

### D.    Plaintiffs' Discussion of GRADE Is Irrelevant.

Plaintiffs argue that Dr. Lightdale is competent to explain the GRADE evidence-rating system to the Court. Opp. 5. Given that Dr. Lightdale testified that she was not familiar with the series of papers published by the team that developed GRADE, which Plaintiffs' expert Dr. Antommaria rightly described as an "authoritative explanation of the GRADE methodology" (SJ.DX43:46:19-47:22 (Antommaria Dep.); Lightdale Dep. 68:4-11, 93:4-6, 101:6-9), Defendants doubt that Dr. Lightdale is the best source for a useful and reliable tutorial on that topic, but Defendants did not move to preclude Dr. Lightdale from offering such testimony.

## II.   Dr. Lightdale Lacks Expertise And Knowledge To Opine On WPATH's Compliance With Accepted Conflict-Of-Interest Principles In The Development Of SOC-8.

Defendants moved to exclude Dr. Lightdale's proffered testimony that "there is no basis in medical ethics or science" to conclude that a physician who makes his living from procedures that will be governed by a guideline faces a conflict of interest in participating in that guideline development process, on the grounds that Dr. Lightdale does not have appropriate expertise and followed no reliable methodology in reaching that conclusion. Mot. 10. Plaintiffs attempt to change the topic by arguing that "Dr. Lightdale … reliably testified that clinicians should not

5

be excluded from the guideline development process." Opp. 9. But this is a straw man; neither Defendants nor any expert of Defendants has ever suggested any such categorical exclusion. As Dr. Cantor carefully explains, conflicts of interest are to be *managed* and *disclosed* in a guideline development process, such that those with relevant clinical experience are not "bar[red] altogether from participation." SJ.DX3:¶¶114, 120 (Cantor Sup. Rep.). But before conflicts of interest can be managed and disclosed, they must be recognized and acknowledged. Dr. Lightdale's proffered testimony would simply deny their existence—while ignoring both common sense and the leading relevant authorities.

In any case, the question at the *Daubert* stage is not who is right, but whether the proffered expert has the appropriate expertise and has followed an accepted methodology to enable a reliable opinion. Dr. Lightdale does not and has not.

Again, Plaintiffs plead that Dr. Lightdale has participated in multiple guideline development projects. But not only did she testify that she is not an expert in conflict-of-interest principles, Lightdale Dep. 182:23–183:1, she nowhere claims—and Plaintiffs nowhere claim on her behalf—that she was responsible for identifying and managing conflicts of interest in *any* of those projects. Dr. Lightdale disclaims on-point expertise, and Plaintiffs point to no evidence to contradict her.

As to methodology, Dr. Lightdale demonstrates none. She contradicts the express teaching of the IoM that a conflict of interest exists where a doctor derives "a substantial portion of his or her income" from "clinical services" covered by the guidelines, *see* Mot. 10, and does so without citing any supporting authority whatsoever. There is no "reliable foundation" for this opinion, *Daubert*, 509 U.S. at

6

580, and for a witness to simply assert "I don't think the words could possibly mean that" is not a methodology. *See* Lightdale Dep. 173:20-24, 176:14-20, 177:23–178:3. The fact that Dr. Lightdale's "I don't see any conflict here" testimony directly contradicts the testimony of SOC-8 Chair Dr. Coleman and the contemporaneously recorded understanding of the guideline methodologist retained by WPATH[1] simply underscores Dr. Lightdale's lack of foundation and lack of relevant expertise.

Bizarrely, given their earlier insistence that Dr. Lightdale "does not offer factual testimony about how WPATH implemented its methodology," Plaintiffs conclude by asserting that "To the extent Defendants imply that WPATH failed to adequately manage conflicts of interest among clinicians, *Dr. Lightdale reliably rebuts that argument ....*" Opp. 10 (emphasis added). Defendants do not "imply" that ethical failure; they assert it expressly based on the evidentiary record. *See* Doc. 561 at 12-14 (Defs' MSJ Br.); Cantor Sup. Rep. ¶¶ 96-120. And since Dr. Lightdale knows nothing "factual" about "how WPATH implemented its methodology," and testified that she had "no idea" whether conflicts of interest in fact existed, or whether any conflicts of interest were disclosed by WPATH, Lightdale Dep. 183:2–184:17, she cannot rebut it. In the complete absence of relevant factual information or investigation, she should not be permitted to attempt to do so from the stand.

---

[1] *See, e.g.*, SJ.DX21:230:17-23 (Coleman Dep.) (SOC-8 Chair Dr. Eli Coleman agreed that "most participants in the SOC-8 process had financial and/or nonfinancial conflicts"; SJ.DX174:7 (WPATH 1) (author opining that "[e]veryone involved in the SOC process has a non-financial interest"); SJ.DX166:1 (JHU 1) (Dr. Karen Robinson, the chair of the Johns Hopkins evidence review team, wrote that "[w]e would expect many, if not most, SOC-8 members to have competing interests").

**CONCLUSION**

For the reasons given above and in Defendants' Motion to Exclude Selected Testimony of Dr. Jennifer Lightdale, Defendants' motion should be granted in its entirety.

Dated: September 9, 2024

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, SC 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Roger G. Brooks (*pro hac vice*)
Henry W. Frampton, IV (*pro hac vice*)
Philip A. Sechler (*pro hac vice*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0200
rbrooks@adflegal.org
hframpton@adflegal.org
psechler@adflegal.org

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

s/ A. Barrett Bowdre
A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on September 9, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Defendants*