## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff-Intervenor*, | ) |
| | ) |
| v. | ) No. 2:22-cv-00184-LCB-CWB |
| | ) Hon. Liles C. Burke |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE SELECTED TESTIMONY OF DR. KENNETH GOODMAN (DOC. 596)**

## TABLE OF CONTENTS

Table of Contents ............................................................................................... i

Table of Authorities .......................................................................................... ii

Introduction ........................................................................................................1

Argument ............................................................................................................1

    I.    Plaintiffs Concede Two Of The Three Topics Addressed In Defendants' Motion ...............................................................................1

    II.   Dr. Goodman Has No Expertise And Deployed No Reliable Methodology To Opine On Conflict-Of-Interest Principles Governing The Development Of Clinical Practice Guidelines ..................2

        A.   Lack of Relevant Personal Experience ...............................................3

        B.   Lack of Knowledge Concerning Intellectual and Associational Conflicts of Interest ......................................................3

        C.   Lack of Knowledge Concerning Financial Conflicts of Interest ................................................................................................3

        D.   Failure To Conduct a Meaningful Inquiry .........................................6

        E.   Reliance On Off-Point Sources .........................................................7

Conclusion .........................................................................................................8

Certificate of Service .......................................................................................10

## TABLE OF AUTHORITIES
**Cases**

*Abarca v. Franklin Cnty. Water Dist.*,
    761 F. Supp. 2d 1007 (E.D. Cal. 2011) ..............................................................8

*Boca Raton Cmty Hosp., Inc. v. Tenet Health Care Corp.*,
    582 F.3d 1227 (11th Cir. 2009) ......................................................................2, 5

*Chapman v. Procter & Gamble Distrib., LLC*,
    766 F.3d 1296 (11th Cir. 2014) .........................................................................8

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)............................................................................................5

**Other Authorities**

Conflicts of Interest, Nat. Instit. of Health ("NIH") Ethics Program,
    https://ethics.od.nih.gov/coi ..............................................................................7

Financial Conflict of Interest, NIH Grants & Funding,
    https://grants.nih.gov/grants/policy/coi/index.htm#highlights,
    (last accessed Aug. 28, 2024) ............................................................................7

National Science Foundation, NSF Manual Number 15,
    Conflicts of Interest and Standards of Ethical Conduct 2
    (rev. Oct. 20, 2022)............................................................................................7

## INTRODUCTION

Defendants moved to exclude Dr. Goodman's proffered testimony on three specific and clearly defined topics. Private Plaintiffs offer no response in defense of two of these topics, and instead spend much of their brief in opposition arguing that Dr. Goodman is qualified to discuss topics that Defendants do not seek to exclude him from discussing. With respect to the one category of testimony that they do attempt to dispute—the substance of conflict-of-interest principles applicable to the development of clinical practice guidelines—Plaintiffs cannot cure Dr. Goodman's lack of expertise and his non-existent methodology.

## ARGUMENT

**I.      Plaintiffs Concede Two Of The Three Topics Addressed In Defendants' Motion.**

Defendants recognize that Dr. Goodman possesses certain expertise, and moved only to exclude his proffered testimony on three specific and focused topics as falling far short of the reliability requirements of *Daubert*. These topics were:

1. Substantive assertions about transgender medicine;

2. The actual procedures followed by WPATH or any organization in the course of developing WPATH's "Standards of Care Version 8" (SOC-8) or any set of guidelines relating to treatment of gender dysphoria; and

3. Conflict-of-interest principles applicable to the development of clinical practice guidelines.

*See* Doc. 596 at 2,3 (Mot.).

Plaintiffs offer no response at all on the first topic,[1] so Dr. Goodman should

---

[1] Plaintiffs try to mask this climb-down by asserting that "Defendants misconstrue[d] the scope and substance of Dr. Goodman's proffered testimony." Opp. 1. But Defendants did not misconstrue that proffered testimony—they quoted it. Mot. 2.

1

not be permitted to offer any testimony concerning any aspect of the medical treatment of gender dysphoria, including harms, benefits, and "medical necessity." *See Boca Raton Cmty Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) ("offering party must show that the opinion meets the *Daubert* criteria ... by a preponderance of the evidence").

Plaintiffs likewise offer no defense to the second topic, but rather concede the point by assuring the Court that Dr. Goodman will not "proffer an opinion on the actual way in which WPATH implemented a methodology in developing the Standards of Care." Doc. 667 at 3 (Opp.). But Dr. Goodman's expert report *does* proffer opinions concerning what WPATH and the Endocrine Society did and "would have done." *See* Mot. 3. The Court should exclude all such testimony from Dr. Goodman.

## II. Dr. Goodman Has No Expertise And Deployed No Reliable Methodology To Opine On Conflict-Of-Interest Principles Governing The Development Of Clinical Practice Guidelines.

Plaintiffs attempt to end on a strong note by devoting an entire section of their brief to "defending" Dr. Goodman's testimony on topics against which Defendants did not move. Quoting nothing from Defendants' motion, Plaintiffs devote two pages to arguing that Dr. Goodman is qualified to opine on "the purposes of clinical practice guidelines" and the nature of "parental consent to care for their minor children." Opp. 8-10. The discussion is irrelevant to Defendants' motion.

Only one topic is disputed. Plaintiffs argue that Dr. Goodman is qualified to testify regarding conflict-of-interest principles applicable to the development of clinical practice guidelines. Here, Plaintiffs attempt to dismiss as "factual disputes" what are disqualifying deficiencies of expertise and methodology as a matter of law (Opp.

2

6, 7, 8), and attempt to distract from those decisive deficiencies by digressing into factual disputes. As it turns out, even here the decisive facts are undisputed.

### A. Lack of Relevant Personal Experience

Defendants established that Dr. Goodman "has not participated in the development of any guidelines, nor in the development of a conflict-of-interest policy for any guideline development project, nor in the review of any such conflict-of-interest policy." Mot. 4-5. Plaintiffs do not dispute that. They say only that Dr. Goodman "studies and advises on the implementation of pediatric clinical practice guidelines." Opp. 2. But *implementation* of guidelines is a clinical activity very different than their *development*, and Dr. Goodman's proffered testimony about the latter. Dr. Goodman lacks on-point expertise. *See* Mot. 8.

### B. Lack of Knowledge Concerning Intellectual and Associational Conflicts of Interest

Defendants established that Dr. Goodman was entirely unaware that the "widely respected" Institute of Medicine ("IoM") and World Health Organization ("WHO") guidelines on guideline development *expressly* address identification and management of intellectual and associational conflicts of interest when he opined that intellectual and associational conflicts of interest are "not recognized" in the literature. Mot. 4-7. Dr. Goodman lacks on-point knowledge.

### C. Lack of Knowledge Concerning Financial Conflicts of Interest

Defendants established that Dr. Goodman has no knowledge and deployed no reliable methodology to support his opinion that the fact that a doctor derives his livelihood from performing a procedure creates no recognized conflict of interest relevant to participation in developing guidelines that might encourage or forbid that

3

procedure. Mot. 3-6. And in fact, Plaintiffs now concede that such income *does* create a conflict, admitting that "Dr. Goodman *does not disagree* with IoM's statement that direct financial activities include clinical services from which a committee member derives a substantial portion of their income." Opp. 5 (emphasis added). That is the end of the matter, since receipt of a "direct financial benefit" from clinical services covered by the guideline is *by definition* a conflict of interest according to the IoM guideline. SJ.DX76:79 (Goodman Dep. Ex. 5 – IoM *Clinical Practice Guidelines We Can Trust*).

Plaintiffs would distract from that admission by fabricating factual disputes about lesser details, such as precisely how and in how much detail financial conflicts of interest should be disclosed. Opp. 4-6. But since Dr. Goodman opined that "being a treating physician … *cannot* … create a conflict of interest" with respect to participating in a guideline development process (*Daubert*.DX10:¶19 (Goodman Reb. Rep.) (emphasis added)), he proffered no opinion as to how and in how much detail a financial conflict should be disclosed in that setting. It is too late for counsel to substitute such opinions now for the "no conflict" opinion that Dr. Goodman actually provided.

More, Dr. Goodman thoroughly disqualified himself from offering any opinion as to accepted means and degrees of disclosure of financial conflicts in a guideline-development process. He "do[es] not know what [conflicts], generally speaking, medical practice guidelines groups query their members about in advance." SJ.DX74:105:22-25 (Goodman Dep.). He does not know whether it is standard for guideline development committees to collect information on the amount of income

4

that committee members receive from treatments being evaluated. *Id.* at 66:8-13. ("I do not know, for example, if cardiologists need to disclose their annual income to participate in a guidelines development group. I actually do not know that."); *id.* at 67:1-19 (same for American Heart Association, American Thoracic Society, American College of Chest Physicians, and World Health Organization). He makes no claim to have investigated the question. Given this ignorance, Dr. Goodman's bare arguments as to what disclosures he might think appropriate are mere *ipse dixit* or speculation not founded on any reliable methodology.

 Plaintiffs argue that Dr. Goodman's repeated admissions of ignorance as to actual practice do not matter because (Dr. Goodman asserts) a conflict is a conflict "whether you're developing a practice guideline, doing an empirical study, or practicing any number of professions." Opp. 2. (citing Goodman Dep. 38:21-24). But neither Dr. Goodman nor Plaintiffs cite any authority for this sweeping denial that distinct "professions" present distinct ethical and conflict-of-interest questions. *See Boca Raton Cmty. Hosp., Inc.*, 582 F.3d at 1282 (proponent bears burden of establishing reliability of proffered expert evidence); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). Instead, the WHO and IoM documents ignored by Dr. Goodman demonstrate on their face that this is not so, containing as they do extensive discussions of questions of disclosure, committee membership and chairmanship, and other conflict topics that simply do not arise in the course of seeing patients in ordinary clinical practice. *See* SJ.DX3:¶¶96-120 (Cantor Sup. Rep.)

5

Indeed, the very fact that Dr. Goodman was ignorant of and surprised by the fact that the IoM guidelines recognize "intellectual" and "associational" conflicts of interest as important categories that must be addressed in the course of a guideline development project (*supra* at 3) highlights the lack of foundation of his "conflicts is conflicts" testimony.

### D. Failure To Conduct a Meaningful Inquiry

Defendants established that Dr. Goodman did no meaningful investigation prior to preparing his opinions. As noted above, he did not even bother to pick up the respected IoM and WHO sources that were in a very real sense right in front of his nose. *See also* Goodman Dep. 29:19–30:2. Plaintiffs do not dispute this. Dr. Goodman's failure is inexplicable given that these are the two and only two sources cited by WPATH in the SOC-8 Methodology Appendix as providing the "recommendations" concerning "transparency" and "conflict-of-interest policy" that were "incorporated" into the SOC-8 development process, and were the authorities quoted and explicated in detail in the expert report of Dr. Cantor which Dr. Goodman purports to "rebut." *See* Cantor Sup. Rep. ¶¶96-120. Indeed, the WHO *Handbook for Guideline Development* contains an entire chapter on the subject of identification, management, and disclosure of conflicts of interest, explaining that "[t]he declaration and management of conflicts of interest is *essential* to the development of unbiased and credible recommendation and guidelines." SJ.DX77:263 (Goodman Dep. Ex. 7 – WHO *Handbook for Guideline Development*). But Dr. Goodman knew and considered none of this.

6

Nor did Dr. Goodman ignore these two leading sources because he had identified and preferred some other policies that "deal with conflicts in the development of clinical practice guidelines"; he "c[ould] not think of any." Goodman Dep. 39:19-25. Utter failure to investigate the relevant literature is not an accepted methodology for arriving at reliable scientific conclusions.

E.     **Reliance On Off-Point Sources**

Defendants established that the three web-pages that Dr. Goodman *did* cite are off-point; as Dr. Goodman admitted, they do not "address conflicts of interest in the development of clinical practice guidelines." Goodman Dep. 37:12-21; Mot. 6.[2] Plaintiffs do not deny this. Instead, they attempt to shift the burden. Opp. 3. But there is no suggestion anywhere in the record that any of these three brief sources has *ever* been considered relevant to identifying, evaluating, or managing conflicts in the development of clinical practice guidelines. "Absence of evidence" cannot satisfy Plaintiffs' burden to demonstrate the reliability of Dr. Goodman's proffered opinion evidence. Dr. Goodman has "cite[d] papers that do not provide the support asserted," while "ignor[ing] the contrary data" contained in the directly on-point WHO and

---

[2] The three webpages cited by Dr. Goodman nowhere refer to clinical practice guideline development. The first is a single-page definition of "conflict of interest" as it pertains to NIH employees in the course of their duties. *See* Conflicts of Interest, Nat. Instit. of Health ("NIH") Ethics Program, https://ethics.od.nih.gov/coi. The second applies to the "design, conduct or reporting of NIH-funded research." *See* Financial Conflict of Interest, NIH Grants & Funding, https://grants.nih.gov/grants/policy/coi/index.htm#highlights, (last accessed Aug. 28, 2024). The third contains "conflict-of-interest rules ... for employees of the National Science Foundation." *See* National Science Foundation, NSF Manual Number 15, Conflicts of Interest and Standards of Ethical Conduct 2 (rev. Oct. 20, 2022).

7

IoM guidelines. *See Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007, 1066 n.60 (E.D. Cal. 2011); Mot. 7.

* * * * *

Rather than being "genuinely scientific," Dr. Goodman's proffered opinions on conflicts of interest applicable to the development of clinical practice guidelines constitute "unscientific speculation," *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014), and should therefore be excluded from trial.

## CONCLUSION

Because Dr. Goodman lacks both the expertise and a reliable basis to opine on (1) any aspect of the medical treatment of gender dysphoria; (2) what procedures any organization followed in developing clinical practice guidelines; and (3) conflict-of-interest principles applicable to the development of clinical practice guidelines, he should be precluded from offering opinion testimony on those topics at trial.

| | |
|---|---|
| Dated: September 9, 2024 | Respectfully submitted, |
| | Steve Marshall<br>  *Attorney General* |
| Christopher Mills (*pro hac vice*)<br>SPERO LAW LLC<br>557 East Bay Street, #22251<br>Charleston, SC 29413<br>(843) 606-0640<br>CMills@Spero.law | Edmund G. LaCour Jr. (ASB-9182-U81L)<br>  *Solicitor General*<br><br>s/ A. Barrett Bowdre<br>A. Barrett Bowdre (ASB-2087-K29V)<br>  *Principal Deputy Solicitor General* |
| David H. Thompson (*pro hac vice*)<br>Peter A. Patterson (*pro hac vice*)<br>Brian W. Barnes (*pro hac vice*)<br>John D. Ramer (*pro hac vice*)<br>COOPER & KIRK, PLLC<br>1523 New Hampshire Ave., NW<br>Washington, D.C. 20036<br>(202) 220-9600<br>dthompson@cooperkirk.com<br>ppatterson@cooperkirk.com<br>bbarnes@cooperkirk.com<br>jramer@cooperkirk.com | James W. Davis (ASB-4063-I58J)<br>  *Deputy Attorney General*<br><br>Benjamin M. Seiss (ASB-2110-O00W)<br>Charles A. McKay (ASB-7256-K18K)<br>  *Assistant Attorneys General*<br><br>OFFICE OF THE ATTORNEY GENERAL<br>STATE OF ALABAMA<br>501 Washington Avenue<br>Post Office Box 300152<br>Montgomery, Alabama 36130-0152<br>Telephone: (334) 242-7300<br>Facsimile: (334) 353-8400<br>Edmund.LaCour@AlabamaAG.gov<br>Barrett.Bowdre@AlabamaAG.gov |
| Roger G. Brooks (*pro hac vice*)<br>Henry W. Frampton, IV (*pro hac vice*)<br>Philip A. Sechler (*pro hac vice*)<br>ALLIANCE DEFENDING FREEDOM<br>15100 N. 90th Street<br>Scottsdale, AZ 85260<br>(480) 444-0200<br>rbrooks@adflegal.org<br>hframpton@adflegal.org<br>psechler@adflegal.org | Jim.Davis@AlabamaAG.gov<br>Ben.Seiss@AlabamaAG.gov<br>Charles.McKay@AlabamaAG.gov<br><br><br>*Counsel for Defendants* |

9

## CERTIFICATE OF SERVICE

    I certify that on September 9, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Defendants*
