# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff-Intervenor*, | ) |
| | ) |
| v. | ) No. 2:22-cv-00184-LCB-CWB |
| | ) Hon. Liles C. Burke |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE SELECTED TESTIMONY OF DR. DAN KARASIC (DOC. 597)**

## TABLE OF CONTENTS

Table of Contents ..................................................................................................... i

Table of Authorities ................................................................................................ ii

Introduction ..............................................................................................................1

Argument..................................................................................................................2

 I. Dr. Karasic Lacks Expertise For Several Of The Opinions He Offers......2

  A. Dr. Karasic Lacks the Expertise Needed to Testify Reliably About Most of SOC-8................................................................................... 2

  B. Dr. Karasic Lacks Expertise in How Transitioning Treatments Are Provided in Alabama .........................................................................4

  C. Dr. Karasic Lacks Expertise in Endocrinology ................................5

  D. Dr. Karasic Lacks Expertise In Fertility Preservation.......................6

 II. Dr. Karasic's Testimony Regarding The State Of Scientific Evidence Lacks A Reliable Basis .......................................................................7

  A. Dr. Karasic's Proffered Testimony That Medicalized Transition Is "Safe" Is Unreliable............................................................................7

  B. Dr. Karasic's Proffered Testimony About GRADE Is Not Reliable. ...........................................................................................8

  C. Dr. Karasic's Theories Regarding Populations Suffering From Gender Dysphoria Are Unreliable.....................................................9

 III. Dr. Karasic's Proffered Testimony About WPATH's Suppression Of Dissenting Views Is Unreliable..................................................................9

Conclusion ..............................................................................................................10

Certificate of Service ..............................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*In re Seroquel Prods. Liab. Litig.*,
   2009 WL 3806434 (M.D. Fla. June 18, 2009) ........................................................8

*Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*,
   772 F.3d 1352 (11th Cir. 2014) ............................................................................6

*Obrycka v. City of Chicago*,
   792 F. Supp. 2d 1013 (N.D. Ill. 2011) ..................................................................4

*Perry v. United States*,
   755 F.2d 888 (11th Cir. 1985) ..............................................................................8

*Reese v. Herbert*,
   527 F.3d 1253 (11th Cir. 2008) ............................................................................5

*Rink v. Cheminova, Inc.*,
   400 F.3d 1286 (11th Cir. 2005) ............................................................................8

*Travelers Indemnity Co. v. Broan-Nutone, LLC*,
   2008 WL 11381927 (N.D. Ala. Mar. 26, 2008) ....................................................8

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) .........................................................................2, 9

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) .........................................................................................5

Fed. R. Civ. P. 26(a)(2)(D)(ii) ....................................................................................7

Fed. R. Civ. P. 702 ............................................................................................... 4-6, 9

Fed. R. Civ. P. 702(a) ............................................................................................7, 8

Fed. R. Civ. P. 702(b) ..................................................................................... 4, 8, 9

Fed. R. Civ. P. 702(c) ........................................................................................ 9

# INTRODUCTION

Defendants moved to preclude Dr. Karasic from offering specific opinions that lay outside his expertise as a psychiatrist or for which he has not demonstrated a reliable basis or methodology. The specific areas Defendants seek to exclude are:

1) The evidence and methodology underpinning the adolescent chapter of the SOC-8 because Dr. Karasic did not have anything to do with that chapter;

2) The practices of providers in Alabama because Dr. Karasic has never practiced in Alabama and knows nothing about those who do;

3) The endocrinological effects of puberty blockers and cross-sex hormones because Dr. Karasic is a psychiatrist, not an endocrinologist, and has not demonstrated any specialized knowledge in the subject;

4) Fertility preservation because Dr. Karasic is a psychiatrist, not an endocrinologist or OB/GYN; and before Plaintiffs' *Daubert* response Dr. Karasic had not explained the basis for his broad statements on the subject: anecdotal accounts;

5) The "safety" of medicalized transition for minors because Dr. Karasic admits he has little to no knowledge about the potential effects of such treatments on brain development;

6) The GRADE methodology because Dr. Karasic demonstrated in his deposition his lack of knowledge about the subject;

7) The cause behind the shift in patient demographics because Dr. Karasic has offered nothing but conjecture and speculation unconnected to any reliable methodology; and

8) WPATH's welcoming of dissenting viewpoints because Dr. Karasic has demonstrated himself to be unreliable on the subject.

In their response, Plaintiffs basically argue that because Dr. Karasic is an expert in some things, he must be allowed to testify about everything. *See* Doc. 670 ("Opp."). That is not the law. Though Dr. Karasic may be qualified by his experience as a psychiatrist to testify about subjects within his wheelhouse—psychiatry—that

1

"does not mean that [his] experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion [he] may express." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (en banc). Dr. Karasic's limited experience as a psychiatrist in California provides no foundation on which he may testify about any of the subjects Defendants have sought to exclude him from testifying about.

## ARGUMENT

**I.  Dr. Karasic Lacks Expertise For Several Of The Opinions He Offers.**

   **A.  Dr. Karasic Lacks the Expertise Needed to Testify Reliably About Most of SOC-8.**

Dr. Karasic admitted in his deposition that his knowledge of the processes used to craft the various chapters of SOC-8 was confined to the mental health chapter. His testimony was clear on that point. Over and over he iterated that "I don't know the process in the other—for the other chapters," *Daubert*.DX39:66:2-17 (Karasic Dep.), and "my experience was really contained to my—the chapter that I was chapter lead on … and not the process that was going on in the other chapters," *id.* at 68:18-25. Defendants took Dr. Karasic at his word and sought to confine his testimony to the area of SOC-8 he knows ("the chapter that [he] was chapter lead on") and to prohibit his testimony in areas he doesn't know ("the process[es] in the other—for the other chapters").

Plaintiffs argue two points in their attempt to broaden Dr. Karasic's testimony beyond his personal knowledge. First, they rely on the generalized assurances offered by WPATH in SOC-8 regarding the "standardized methodology" it supposedly undertook in crafting "all SOC-8 chapters" to claim that "Dr. Karasic's experience

2

as a WPATH committee member, former WPATH board member, and lead author of the SOC-8 mental health chapter permits him to testify broadly regarding the drafting process of SOC-8." Opp. 2-3 (citing SOC-8 S248). Plaintiffs do not explain how these experiences could impart Dr. Karasic with knowledge that he expressly disclaimed possessing.

Nor can Dr. Karasic simply rely on the assurances in SOC-8 to testify about the methodology for chapters he was not involved in because part of what is at issue is whether WPATH did what it said it did. For example, while SOC-8 assures that every recommendation from every chapter went through the Delphi process,[1] we know that statement is false: the finalized age recommendations in the adolescent chapter did not go through Delphi.[2] So if Dr. Karasic were to assume with Plaintiffs that WPATH instituted a "standardized methodology" and that what was (supposedly) true for the single chapter he worked on was true of all the chapters he did not work on, Dr. Karasic would not be providing reliable or accurate testimony to this Court. Hence Defendants' request: limit Dr. Karasic's testimony to topics he knows about (such as his personal experience as an author of the mental health chapter) and exclude his testimony regarding topics he does not know about (such as how every other chapter of SOC-8 was crafted and the reliability of SOC-8 generally).

Plaintiffs' second argument is to emphasize that "Dr. Karasic has a deep and comprehensive understanding of the relevant research underpinning much of SOC-8 as a whole, including the adolescent chapter." Opp. 3. But Defendants do not seek

---

[1] SJ.DX116:S250 (SOC-8).
[2] SJ.DX21:293:25–295:16 (Coleman Dep.).

3

to preclude Dr. Karasic from testifying about the "relevant research" that falls within his limited areas of expertise; they seek to limit Dr. Karasic from testifying about how—for instance—SOC-8 authors of chapters he was not involved in went about searching for the research, evaluating it, and basing their recommendations on it. This limitation is necessary for the simple reason that Dr. Karasic expressly testified that he does not know what those authors did. *See, e.g.*, Karasic Dep. 66:8-11 (Q. "Do you know how the other chapters in SOC-8 selected the studies that they cite?" A. "No."); *id.* at 13-17 (Q. "Do you have any reason to think they did it differently?" A. "I don't know the process in the other – for the other chapters."). Yet Plaintiffs seek to have him "testify broadly regarding the drafting process of SOC-8" and even to venture "specific details of the drafting process for the adolescent chapter." Opp. 3. Such testimony would be nothing but speculation, which Rule 702 prohibits.

### B. Dr. Karasic Lacks Expertise in How Transitioning Treatments Are Provided in Alabama.

Nothing suggests that Dr. Karasic could reliably opine on the administration of transitioning treatments to minors in Alabama. He has never practiced in Alabama, he is not "aware of any gender clinics in Alabama," and he has not reviewed the Plaintiffs' medical records in this case. Karasic Dep. 258:17–259:1. He thus lacks "sufficient facts or data" to explain how medicalized gender transition occurs in practice in Alabama. Fed. R. Evid. 702(b); *see Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013, 1028 (N.D. Ill. 2011) (excluding opinions about practices of police department where "the foundation" for opinions "heavily relied on [expert's] general knowledge of policing" and "research conducted in other police departments").

4

Plaintiffs don't dispute that Dr. Karasic knows nothing about gender clinics in Alabama. Instead, they rely on the unsupported speculation of another of their witnesses—Dr. Marci Bowers—to assert without any other foundation that "[t]he vast majority of mental health providers in the country … follow the WPATH standards of care." Opp. 4. But subbing out one witness's unreliable testimony for another's does not satisfy Rule 702. And Dr. Karasic of all people should know the dangers of such baseless assumptions: He conducted a survey showing that over *half* of WPATH-affiliated surgeons in America were *not* following the WPATH standards of care.[3] That survey might provide him reason to think that Alabama's surgeons are similarly flippant with the standards, but it cannot give him any basis to omnisciently testify that all clinicians in Alabama are *following* the standards. He just doesn't know—and shouldn't be able to testify as though he does.[4]

### C. Dr. Karasic Lacks Expertise in Endocrinology.

Dr. Karasic proffers an opinion on the effects of testosterone at certain doses, even though he is not an endocrinologist and has provided no evidence of any experience providing testosterone to his patients for the purpose of transitioning. *See* Karasic Rep. ¶¶100-01. After moving to exclude Dr. Cantor's testimony regarding the safety and efficacy of providing supraphysiologic doses of testosterone to

---

[3] SJ.DX19:7 (Karasic, *Age is Just a Number*).
[4] Plaintiffs also assert that Dr. Karasic could base his opinions on the testimony of Alabama's providers. Opp. 5. If such testimony is the basis of his opinion, Dr. Karasic did not disclose it to Defendants and should thus be barred from offering it now. *Compare Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) ("'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing 'a complete statement of all opinions' and 'the basis and reasons therefor.'" (quoting Fed. R. Civ. P. 26(a)(2)(B))), *with Daubert*.DX11:¶¶17-21 (Karasic Rep.) (listing "Bases for Opinions"—and not including the "testimony of Alabama's providers").

5

females for the purpose of transitioning because Dr. Cantor "does not prescribe" testosterone, Doc. 591 at 9,[5] Plaintiffs now argue that *Dr. Karasic* can testify about those same matters because "[h]e does not need to be an endocrinologist to testify what the research actually shows," Opp. 6. Plaintiffs can't have it both ways.

Under Rule 702, an expert may be qualified "by knowledge, skill, experience, training, *or* education." Fed. R. Civ. P. 702 (emphasis added). So Plaintiffs are right that a witness need not be "an endocrinologist to testify what the research actually shows," because one could instead be—like Dr. Cantor—an expert in research methodology and in the evaluation of research. But Plaintiffs don't argue that Dr. Karasic has similar qualifications, instead relying on his experience "personally treat[ing] thousands of transgender patients" as the basis for his opinion about "what the research" shows. Opp. 6. "Expertise in one field does not qualify a witness to testify about others." *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368 (11th Cir. 2014). Plaintiffs haven't explained why Dr. Karasic's experience providing mental health care to patients imbues him with expertise in evaluating the literature on the effects of endocrinological treatments. His opinions dependent on such expertise should thus be excluded.

### D. Dr. Karasic Lacks Expertise In Fertility Preservation.

Dr. Karasic also does not purport to be an expert in fertility preservation, either by "knowledge, skill, experience, training, or education." Fed. R. Civ. P. 702. That has not stopped him from offering opinions on the matter, which Defendants have sought to exclude. Mot. 9-10. Plaintiffs respond by belatedly disclosing the

---

[5] *See* Doc. 602 (Plaintiffs joining the United States' motion to exclude).

basis for Dr. Karasic's opinions. Opp. 6-7. In a declaration authored well after the close of discovery, Dr. Karasic now says that the basis for his opinions is that he has "been acquainted with transgender individuals over the years who have had biological children after receiving hormone therapy." Opp. Ex. 1 at 1. If that is indeed the basis and extent of Dr. Karasic's opinion, then it was untimely and improper "rebuttal" testimony since none of Defendants' expert witnesses have opined that any amount of transitioning hormones will always and everywhere render the patient permanently infertile. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (explaining that an expert's "rebuttal report"—like Dr. Karasic's—must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party"). And if Dr. Karasic's opinion turns on his being "acquainted with transgender individuals over the years," then it does *not* turn on his "scientific, technical, or other specialized knowledge" and is thus improper expert opinion. Fed. R. Civ. P. 702(a). Either way, it must be excluded.

## II. Dr. Karasic's Testimony Regarding The State Of Scientific Evidence Lacks A Reliable Basis.

### A. Dr. Karasic's Proffered Testimony That Medicalized Transition Is "Safe" Is Unreliable.

Dr. Karasic's proffered testimony is that transitioning treatments for minors are "safe." Karasic Rep. ¶¶31, 84, 98-99, 103. But Dr. Karasic admits that he has no idea what effects pubertal suppression may have on brain development and that this is "an area certainly that requires more research." Karasic Dep. 155:7-24. The disconnect should be obvious. "Safe except we have no idea if the interventions will lead to permanent harm in cognitive development" is not "safe."

7

Courts must exclude expert testimony unless it is "properly grounded, well-reasoned, and not speculative." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 (11th Cir. 2005). Plaintiffs' response of "factual dispute" thus misses the point. Opp. 8-10. Dr. Karasic simply *ignored* the scientific dispute and the significant data showing cause for alarm (*see* Mot. 10-11) to opine that the treatments are "safe." That is not just a factual problem, but a *Daubert* one: Dr. Karasic failed to base his testimony "on sufficient facts or data," Fed. R. Civ. P. 702(b), because he "merely cherry-picked evidence favorable to [his] opinion" and ignored everything else, *In re Seroquel Prods. Liab. Litig.*, 2009 WL 3806434, at *5 (M.D. Fla. June 18, 2009) (citing *Perry v. United States*, 755 F.2d 888, 892 (11th Cir. 1985)); *see Travelers Indemnity Co. v. Broan-Nutone, LLC*, 2008 WL 11381927, at *8 (N.D. Ala. Mar. 26, 2008) (testimony unreliable when expert "ignored pertinent data"). His testimony must therefore be excluded.

## B.    Dr. Karasic's Proffered Testimony About GRADE Is Not Reliable.

Dr. Karasic made clear in his deposition that he does not understand the GRADE methodology. Defendants accordingly moved to exclude his testimony that would depend on such knowledge. *See* Mot. 12-13. Plaintiffs concede the point and argue that "Dr. Karasic does not need specialized training in the intricacies of GRADE scoring to understand these studies or to explain their reported results to the trier of fact." Opp. 10. But if Dr. Karasic lacks "specialized training" or knowledge, he is no expert, Fed. R. Civ. P. 702(a); and if he cannot explain when GRADE allows for "discordant recommendations"—strong recommendations based on low-quality evidence—then his testimony regarding studies looking at guideline

8

recommendations based on low "GRADE scores" cannot be said to be "based on sufficient facts or data," be the "product of reliable principles and methods," or "reflect[] a reliable application of the principles and methods to the facts of the case," *id.* 702(b)-(d), and it is likely to be misleading. It must be excluded.

### C. Dr. Karasic's Theories Regarding Populations Suffering From Gender Dysphoria Are Unreliable.

Defendants moved to exclude Dr. Karasic's unsupported speculation that the increase in adolescents suffering from gender dysphoria can be chalked up to decrease in stigma and "increase in awareness." *See* Mot. 15. Dr. Karasic cites nothing in support of his theory, and Plaintiffs don't point to any studies that Defendants missed. *See* Opp. 11-12. They just join in the fun, repeating Dr. Karasic's conjecture for "why some clinics may be seeing more referrals." Opp. 11. That is not enough. Expert testimony must be "based on sufficient facts or data" and be the "product of reliable principles and methods." Fed. R. Civ. P. 702(b)-(c). Neither Dr. Karasic nor Plaintiffs have identified what facts or data Dr. Karasic purports to rely on, nor what principles and methods he purports to use in support of his new theories. Dr. Karasic's "bald assurance of validity is not enough." *Frazier*, 387 F.3d at 1261 (citation omitted). Rule 702 requires that his speculative testimony be excluded.

### III. Dr. Karasic's Proffered Testimony About WPATH's Suppression Of Dissenting Views Is Unreliable.

Dr. Karasic opines in his expert report that WPATH welcomes a "diversity of views." Karasic Rep. ¶62. Defendants sought to exclude the testimony as without foundation or basis and contradicted by Dr. Karasic's own personal involvement suppressing dissenting viewpoints. Mot. 15-19. Plaintiffs now clarify that Dr.

9

Karasic's testimony in this regard is "lay testimony." Opp. 13. Defendants accept the concession. If Dr. Karasic wishes to appear in court as a lay witness to testify about how welcoming WPATH is by cancelling speakers who offer unpopular viewpoints and censuring members for going public with concerns about transitioning "care" for adolescents, Dr. Karasic is free to do so. He may not, however, provide any opinions in this regard as an expert.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion to exclude selected testimony of Dr. Karasic.

| | |
|---|---|
| Dated: September 9, 2024 | Respectfully submitted, |
| | Steve Marshall<br>  *Attorney General* |
| Christopher Mills (*pro hac vice*)<br>SPERO LAW LLC<br>557 East Bay Street, #22251<br>Charleston, SC 29413<br>(843) 606-0640<br>CMills@Spero.law | Edmund G. LaCour Jr. (ASB-9182-U81L)<br>  *Solicitor General*<br><br>s/ A. Barrett Bowdre<br>A. Barrett Bowdre (ASB-2087-K29V)<br>  *Principal Deputy Solicitor General* |
| David H. Thompson (*pro hac vice*)<br>Peter A. Patterson (*pro hac vice*)<br>Brian W. Barnes (*pro hac vice*)<br>John D. Ramer (*pro hac vice*)<br>COOPER & KIRK, PLLC<br>1523 New Hampshire Ave., NW<br>Washington, D.C. 20036<br>(202) 220-9600<br>dthompson@cooperkirk.com<br>ppatterson@cooperkirk.com<br>bbarnes@cooperkirk.com<br>jramer@cooperkirk.com | James W. Davis (ASB-4063-I58J)<br>  *Deputy Attorney General*<br><br>Benjamin M. Seiss (ASB-2110-O00W)<br>Charles A. McKay (ASB-7256-K18K)<br>  *Assistant Attorneys General*<br><br>OFFICE OF THE ATTORNEY GENERAL<br>STATE OF ALABAMA<br>501 Washington Avenue<br>Post Office Box 300152<br>Montgomery, Alabama 36130-0152<br>Telephone: (334) 242-7300<br>Facsimile: (334) 353-8400<br>Edmund.LaCour@AlabamaAG.gov<br>Barrett.Bowdre@AlabamaAG.gov<br>Jim.Davis@AlabamaAG.gov<br>Ben.Seiss@AlabamaAG.gov<br>Charles.McKay@AlabamaAG.gov |
| Roger G. Brooks (*pro hac vice*)<br>Henry W. Frampton, IV (*pro hac vice*)<br>Philip A. Sechler (*pro hac vice*)<br>ALLIANCE DEFENDING FREEDOM<br>15100 N. 90th Street<br>Scottsdale, AZ 85260<br>(480) 444-0200<br>rbrooks@adflegal.org<br>hframpton@adflegal.org<br>psechler@adflegal.org | *Counsel for Defendants* |

11

12

## CERTIFICATE OF SERVICE

    I certify that on September 9, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

                                              <u>s/ A. Barrett Bowdre</u>
                                              A. Barrett Bowdre
                                              *Counsel for Defendants*