# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff-Intervenor*, | ) |
| | ) |
| v. | ) No. 2:22-cv-00184-LCB-CWB |
| | ) Hon. Liles C. Burke |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE SELECTED TESTIMONY OF DR. ARON JANSSEN (DOC. 598)**

## TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Introduction ......................................................................................................... 1

Argument ............................................................................................................. 2

    I.    Dr. Janssen Disclaims The Expertise Necessary To Assess The Strength Of Research On Transitioning Treatments For Minors ............. 2

    II.   Dr. Janssen's Limited Contributions To Two Chapters In SOC-8 Do Not Qualify Him To Opine On The Overall Reliability Of SOC-8 Or The Reliability Of Specific Chapters ..................................................... 5

    III.  Plaintiffs Cite No Scientific Basis For Dr. Janssen's Opinion That Gender Identity Is "Fixed" And Has A Biological Basis ......................... 7

    IV.  Dr. Janssen Should Not Be Permitted To Testify About Transitioning Care In Alabama ................................................................ 8

Conclusion ......................................................................................................... 10

Certificate of Service ........................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Bloodsworth v. Smith & Nephew, Inc.*,
  476 F. Supp. 2d 1348 (M.D. Ala. 2006) .................................................................9

*Day, LLC v. Plantation Pip Line Co.*,
  315 F. Supp. 3d 1219 (N.D. Ala. 2018) ..................................................................5

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................8

*Hendrix ex re. G.P. v. Evenflo Co., Inc.*,
  609 F.3d 1183 (11th Cir. 2010) ...............................................................................8

*Moore v. Intuitive Surgical, Inc.*,
  995 F.3d 839 (11th Cir. 2021) .................................................................................7

*Obrycka v. City of Chicago*,
  792 F. Supp. 2d 1013 (N.D. Ill. 2011) ....................................................................9

*Reese v. Herbert*,
  527 F.3d 1253 (11th Cir. 2008) ...............................................................................9

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ...............................................................................2

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ..........................................................................................9

## INTRODUCTION

A fair reading of Dr. Janssen's deposition testimony demonstrates that he is not an expert in research methodology or study design and does not hold himself out to be one. Taking him at his word, Defendants moved to prohibit Dr. Janssen from testifying about topics for which he would need to be such an expert, such as his critique based in research methodology and study design of Dr. Cantor's assessment of the threadbare research supporting transitioning treatments for minors.

Dr. Janssen likewise testified that he was not part of the broader process in drafting or compiling SOC-8, but instead had only limited involvement in the drafting of two chapters. Taking him at his word, Defendants moved to prohibit Dr. Janssen from testifying about the evidence and methodology underpinning the parts of SOC-8 that he was not involved in.

Continuing the theme, Dr. Janssen testified that he was not familiar with how transitioning care is provided in Alabama. Once again taking him at his word, Defendants moved to prohibit Dr. Janssen from testifying about such care. Defendants also moved to exclude any testimony from Dr. Janssen that gender identity is "fixed" or has a biological basis because Dr. Janssen has not provided a reliable methodology or basis for those opinions.

Plaintiffs are unwilling to take Dr. Janssen at his word. Rather than agreeing to limit his testimony to areas in which he is an expert, Plaintiffs stretch Dr. Janssen's experience and faulty methodology into areas about which he clearly disclaimed knowledge or expertise. In so doing, they read Dr. Janssen's deposition testimony to mean something other than what it says and generally appeal to Dr. Janssen's

credentials as a catchall for any opinion he may offer. But the deposition transcript speaks for itself, and *Daubert* bars well-credentialed professionals from offering unreliable speculation as scientific opinion. Dr. Janssen's testimony at trial should be strictly limited to his clinical experience recommending transitioning treatments for minors outside of Alabama and to his specific experience as a contributing author to two SOC-8 chapters largely unrelated to the issues at hand.

## ARGUMENT

### I. Dr. Janssen Disclaims The Expertise Necessary To Assess The Strength Of Research On Transitioning Treatments For Minors.

In his original and supplemental reports, Dr. Janssen purports to interpret the existing literature on transitioning treatments as justifying such interventions for minors. *See* Doc. 598 at 2-3 ("Mot."). For instance, he claims that Dr. Cantor's analysis of the safety and efficacy of puberty blockers, cross-sex hormones, and surgeries for adolescents rests on a "fundamental misreading" of systematic reviews and "not on any meaningful review of the substantial body of research" on transitioning treatments for minors. *Daubert*.DX13:¶¶5 (Janssen Supp. Rep.). This "critique" requires expertise in evaluating the available scientific literature, including systematic evidence reviews. Yet, as he has readily admitted, Dr. Janssen is not "qualified to testify competently regarding" the assessment of systematic reviews, study design, or research methodology. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). The Court should thus exclude such testimony.

Dr. Janssen's disclaimer of expertise in this area was clear. When asked "How does one determine whether a systematic literature review is possible?", he

2

responded: "I would not be testifying here as an expert in study design or methodology." SJ.DX66:57:14-17 (Janssen Dep.). He even told Defendants they "would to have ask" an expert in methodology "what those specific criterion are." *Id*. at 57:20-21. Plaintiffs point out that Dr. Janssen also said that he had tried to review "in a systematic way all of the extant literature on the impacts of gender care on childhood" when he was an author of the SOC-8 chapter on childhood, Doc. 665 at 5 ("Opp.") (quoting Janssen Dep. at 58:12-14), but they leave out Dr. Janssen's next qualification: that he used the term "systematic" only in a "colloquial sense." Janssen Dep. 58:4–59:4. His review has nothing in common with the formal systematic evidence reviews at the center of Dr. Cantor's report.

Indeed, Dr. Janssen was insistent about his lack of expertise in this area. When asked how the Delphi process is used to develop clinical guidelines, Dr. Janssen was quick to disclaim expertise: "Again, I'm not testifying as an expert in study methodology." *Id.* at 60:7-11. Asked whether he "agree[s] that the evidence quality for the use of puberty blockers to treat gender dysphoria is very low on the [GRADE] scale," he made the same disclaimer: "I'm not testifying as an expert on the [GRADE] scale or on research methodology." *Id.* at 250:11-15. Asked whether there are "tools that are used to assess bias in individual studies," Dr. Janssen admitted: "I'm not – I don't know." *Id.* at 70:19-21. Asked whether he "use[d] any tools to assess the bias of the studies in your chapter," Dr. Janssen replied: "I did not use a tool to assess bias in those studies in my chapter." *Id.* at 71:2-6. Asked whether he had "ever heard of the Cochran Methods Group," Dr. Janssen answered: "I have heard of them, but I'm not familiar with those processes." *Id.* at 70:22–71:1. The Court should take Dr. Janssen

3

at his word and strictly limit his testimony to areas unrelated to "study design or methodology."

That would include excluding much of Dr. Janssen's response to Dr. Cantor's assessment of the evidence regarding the safety and efficacy of transitioning treatments for minors. Unlike Dr. Janssen, Dr. Cantor *is* testifying as an expert in study design and methodology. *See* SJ.DX2:¶¶9-15 (Cantor Rep.). As part of his proffered testimony, Dr. Cantor analyzes the research base concerning transitioning treatments for minors by using systematic evidence reviews (the formal, non-colloquial kind Dr. Janssen disclaimed expertise regarding), *id.* ¶¶71-88, and explains and applies the GRADE criteria for evaluating risk of bias in research (the very tool for evaluating bias that Dr. Janssen said he was "not testifying as an expert" regarding), *id.* ¶44-45. Yet Dr. Janssen attacks Dr. Cantor for his purported "fundamental misreading" of systematic evidence reviews, Janssen Supp. Rep. ¶5, and purports to comment on the methodology and reliability of certain studies Dr. Cantor discusses, *id.* ¶¶7-22. But it is just this kind of critique that Dr. Janssen himself said over and over he was not qualified to offer.

Plaintiffs' response ignores Dr. Janssen's candid admissions that he does not use, and lacks expertise regarding, tools to assess the quality of research. *See* Opp. 3-6. Instead, Plaintiffs simply lean on Dr. Janssen's "extensive credentials in" "the field of transgender health," *id.* at 4, as though that rehabilitates his expertise in the areas he expressly said he was *not* an expert: research methodology, study design, GRADE, and tools for assessing bias.

Dr. Janssen "is by his own admission unqualified to testify" on the strength of the research literature supporting transitioning treatments for minors. *Day, LLC v. Plantation Pip Line Co.*, 315 F. Supp. 3d 1219, 1228 (N.D. Ala. 2018). Accordingly, he should not be allowed to opine about what "the substantial body of research" shows.

## II. Dr. Janssen's Limited Contributions To Two Chapters In SOC-8 Do Not Qualify Him To Opine On The Overall Reliability Of SOC-8 Or The Reliability Of Specific Chapters.

Plaintiffs misunderstand the basis for limiting Dr. Janssen's opinions on the methodological and evidentiary reliability of WPATH SOC-8 to those chapters to which he contributed. It is not "that chapters of WPATH SOC-8 bear no relationships to one another." Opp. 7. Rather, it is simply that Dr. Janssen possesses no expertise or personal knowledge on the supposedly "standardized methodology across all SOC-8 chapters" or "rigorous drafting process" of SOC-8. *Id*. at 7-8. While Dr. Janssen can testify about his knowledge about the two chapters he worked on, he cannot extrapolate from that knowledge to speculate about what other authors of other chapters may have done.

Dr. Janssen was "involved in two of the chapters, the child and adult mental health chapters." Janssen Dep. at 46:4-5. He "was not involved in the other chapters." *Id*. at 46:15-16. He is not even certain that the authors for the other chapters are experts. Mot. 7. Within the two chapters to which he contributed, he was "not privy to" the "review process" for "the final recommendations." Janssen Dep. at 71:11-14. Because he "was not involved" and "lost visibility" on the grading process for *all* of SOC-8's recommendations, *id*. at 75:3-4, he has no basis by which to

5

reliably opine about the reliability of those recommendations for chapters (like the adolescent chapter) that he did not help draft or edit. *Id*. at 76:16–77:13. Without relevant expertise or experience, Dr. Janssen's opinions endorsing SOC 8 are inadmissible.

Plaintiffs fall back on the generalized assurances offered by WPATH in SOC-8 regarding the "standardized methodology" it supposedly undertook in crafting "all SOC-8 chapters" to claim that "Dr. Janssen's experience as a WPATH committee member and lead author of two SOC-8 chapters permit him to testify broadly as to the rigorous drafting process of SOC-8." Opp. 8 (citing SOC-8 S248).[1] But part of what is at issue is whether WPATH did what it said it did.

For example, while SOC-8 assures that every recommendation from every chapter went through the Delphi process,[2] we know that statement is false: the finalized age recommendations in the adolescent chapter did not go through Delphi.[3] So if Dr. Janssen were to assume with Plaintiffs that WPATH instituted a "standardized methodology" and that what was (supposedly) true for the child chapter he worked on was true also of all the other chapters he did not work on, Dr. Janssen would not be providing reliable or accurate testimony to this Court. Hence Defendants' request: limit Dr. Janssen's testimony to topics he knows about (such as his personal experience as an author of the child and mental health chapters) and exclude his testimony regarding topics he does not know about (such as how every other chapter of SOC-

---

[1] It's unclear what Plaintiffs mean by "lead author"; Dr. Janssen testified that he "was not a chapter lead for either of" the chapters for which he served as an author. Janssen Dep. 67:16.
[2] SJ.DX116:S250 (SOC-8).
[3] SJ.DX21:293:25–295:16 (Coleman Dep.).

8 was crafted, or the reliability of SOC-8 generally). Dr. Janssen's admitted lack of expertise on research methodology and study design combined with his ignorance about the formulation of SOC-8 recommendations prevent him from being the "the type of person who should be testifying" about whether SOC-8 is the product of evidence-based research principles. *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 852 (11th Cir. 2021).

**III.   Plaintiffs Cite No Scientific Basis For Dr. Janssen's Opinion That Gender Identity Is "Fixed" And Has A Biological Basis.**

Rather than defend the reliability of Dr. Janssen's opinion about the biological foundation of gender identity, Plaintiffs generalize his opinion to be "that gender identity is *deep-seated*." Opp. 11 (emphasis added).  Whatever may be said about "the deep-seatedness of a person's gender identity," *id.*, Dr. Janssen opined that "[g]ender identity has a *biological* basis and cannot be altered through medical or psychological interventions," Janssen Rep. 5 (emphasis added). Dr. Janssen was obliged to ground *this* opinion in scientifically valid reasoning or methodology. He did neither. Plaintiffs point to unspecified "papers and articles" in Dr. Janssen's appendix, Opp. 11, none of which purport to explain the origin of gender identity, *see* Mot. 8-10. His only other rationale—distinguishing supposedly immutable gender identity from a person's evolving gender expression and understanding—is completely unscientific and unfalsifiable. Mot. 9-10. Plaintiffs don't even bother defending it.

Dr. Janssen's credentials and experience treating gender dysphoria do not open the door for his conclusory assertion. "Merely demonstrating that an expert has

7

experience … does not automatically render every opinion and statement by that expert reliable." *Hendrix ex re. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1201 (11th Cir. 2010). Plaintiffs finally protest that Dr. Janssen's opinion need not be correct so long as it is based on the preponderance of the evidence. Opp. 12. But the problem is that his opinion is not even *connected* to the evidence. How do clinical observations of a patient's "gender expression" and "understanding of their gender," Janssen Dep. 107:13-15, or the appendix at the back of Dr. Janssen's report constitute evidence that gender identity is biologically fixed? Dr. Janssen certainly hasn't explained. Presented with a conclusion "connected to existing data only by the *ipse dixit* of the expert," *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), the Court must exclude Dr. Janssen's opinions about the biological, unalterable nature of gender identity.

**IV. Dr. Janssen Should Not Be Permitted To Testify About Transitioning Care In Alabama.**

Nothing suggests Dr. Janssen can opine on the administration of transitioning treatments to children and adolescents in Alabama. Dr. Janssen does not practice in Alabama, he hasn't visited any gender clinics in Alabama, he doesn't know how those clinics operate, and he hasn't reviewed the Plaintiffs' medical records in this case. Mot. 10-12. Dr. Janssen plainly lacks "sufficient facts or data" to explain how medicalized gender transition occurs *in practice* in Alabama. Fed. R. Evid. 702(b).

Again, Plaintiffs don't (and can't) dispute that Dr. Janssen knows almost nothing about gender clinics in Alabama. So instead they appeal to Dr. Janssen's general experience, asserting that he is "sufficiently qualified" to opine about "the practice

of care in Alabama based on his review of other witnesses' testimony in this case." Opp. 10-11. First, Dr. Janssen should be barred from offering any undisclosed Alabama-specific opinions based on unspecified witnesses' testimony. "'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing 'a complete statement of all opinions' and 'the basis and reasons therefor.'" *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (quoting Fed. R. Civ. P. 26(a)(2)(B)). The time for disclosing such opinions and the basis for them has long passed.

Second, Dr. Janssen's education and experience in different regions of the country are not a reliable foundation for opining about the practices of gender clinics in Alabama. *See Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013, 1028 (N.D. Ill. 2011) (excluding opinions about practices of police department where "the foundation for his expert report heavily relied on his general knowledge of policing, culled from research conducted in other police departments"). It is irrelevant that Dr. Janssen is familiar with a "large number of mental health providers across the country treating gender dysphoria." Opp. 10. He is *unfamiliar* with the providers relevant to this case. Janssen Dep. 12:13-17 ("Q.: Are you aware of any gender clinics in Alabama?" A.: "I know of the existence of one at the University of Alabama, but I'm not familiar with its workings."). Dr. Janssen's "experience simply do[es] not answer the question of what" occurs in practice in Alabama. *Bloodsworth v. Smith & Nephew, Inc.*, 476 F. Supp. 2d 1348, 1355 (M.D. Ala. 2006).

9

Dr. Janssen's musings about clinical practices in the abstract are unhelpful, and any speculation as to whether and how his own practices materialize in Alabama are inadmissible.

## CONCLUSION

For these reasons, the Court should prohibit Dr. Janssen from offering testimony regarding (1) scientific research studies, (2) the evidence and methodology underpinning the Adolescent Chapter of the SOC-8, (3) the source of an individual's gender identity, and (4) the practice of medicine in Alabama.

Dated: September 9, 2024

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, SC 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Roger G. Brooks (*pro hac vice*)
Henry W. Frampton, IV (*pro hac vice*)
Philip A. Sechler (*pro hac vice*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0200
rbrooks@adflegal.org
hframpton@adflegal.org
psechler@adflegal.org

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

s/ A. Barrett Bowdre
A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

*Counsel for Defendants*

11

12

## CERTIFICATE OF SERVICE

    I certify that on September 9, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

                                      s/ A. Barrett Bowdre
                                      A. Barrett Bowdre
                                      *Counsel for Defendants*