# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

BRIANNA BOE *et al.*,                )
                                     )
    *Plaintiffs*,               )
                                     )
and                                  )
                                     )
UNITED STATES OF AMERICA,            )
                                     )
    *Plaintiff-Intervenor*,     )
                                     )
v.                                   )   No. 2:22-cv-00184-LCB-CWB
                                     )   Hon. Liles C. Burke
STEVE MARSHALL, in his official      )
capacity as Attorney General of the  )
State of Alabama, *et al.*,          )
                                     )
    *Defendants*.               )

## DEFENDANTS' REPLY IN SUPPORT OF MOTIONS IN LIMINE TO EXCLUDE TESTIMONY OF DEVIN CAUGHEY AS AN IMPROPER REBUTTAL WITNESS, AS IRRELEVANT UNDER RULE 402, AND AS CONTRARY TO RULE 702 (DOC. 601)

# TABLE OF CONTENTS

Table of Contents ................................................................................ i

Table of Authorities ......................................................................... iii

Introduction ..................................................................................... 1

Argument ......................................................................................... 1

I.    Caughey's Testimony Should Be Excluded Because, As A Non-Rebuttal Witness, His Testimony Was Not Timely Disclosed ................. 1

    A.    Caughey Does Not Provide Proper Rebuttal Testimony ................... 1

    B.    Disclosing Caughey Over a Year Late, on the Eve of the Close of Discovery, Requires Exclusion ............................................ 5

II.   Caughey's Testimony Should Be Excluded Because It Is Irrelevant ...... 10

    A.    Intentional Discrimination Claims Require Allegations of Intent ...................................................................................... 11

    B.    The United States Did Not Allege Intentional Discrimination ........................................................................... 13

    C.    This Court Has Not Held That the United States Adequately Pleaded an *Arlington Heights* Claim ............................ 14

    D.    Caughey Disclaimed Offering an Opinion About Legislative Intent ...................................................................... 15

III.  Caughey's Testimony Should Be Excluded Because It Flunks Rule 702 ......................................................................................... 16

    A.    Caughey's Indices Are Unreliable and Unhelpful ........................... 16

    B.    Caughey's Reference to Purported "Anti-LGBT Legislation" is Based Only on His Own *Ipse Dixit* ............................. 18

    C.    Caughey's Cherry-picking of the Legislative History is Error-filled and Unscientific ...................................................... 19

Conclusion ................................................................................................20

Certificate of Service ..............................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) ..............................................................14

*Ahmed v. Johnson & Johnson Healthcare Sys., Inc.*,
  2024 WL 693078 (S.D. Ala. Feb. 20, 2024) ....................................2, 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................13

*Bell v. Progressive Select Ins.*,
  692 F. Supp. 3d 1121 (M.D. Fla. 2023)......................................... 2, 4, 9

*DHS v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020)..................................................................................12

*E & T Realty v. Strickland*,
  830 F.2d 1107 (11th Cir. 1987) ............................................................11

*Edwards v. Fla. Dep't of Corr.*,
  2015 WL 11109376 (N.D. Fla. Nov. 18, 2015)................................3, 8

*Fla. State Conf. of NAACP v. Lee*,
  566 F. Supp. 3d 1262 (N.D. Fla. 2021) ...............................................12

*Fuller v. SunTrust Banks, Inc.*,
  2019 WL 5448206 (N.D. Ga. Oct. 3, 2019) ..........................................3

*Hall v. Thomas*,
  753 F. Supp. 2d 1113 (N.D. Ala. 2010)................................................17

*Haves v. City of Miami*,
  52 F.3d 918 (11th Cir. 1995) ...............................................................13

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010) ................................................................12

*Home Oil Co. v. Sam's E., Inc.*,
  199 F. Supp. 2d 1236 (M.D. Ala. 2002) ................................................................6

*In re Lipitor (Atorvastatin Calcium) Mktg.*,
  174 F. Supp. 3d 911 (D.S.C. 2016) ........................................................... 18, 20

*J.D.P. v. Montgomery Cnty.*,
  2022 WL 291608 (M.D. Ala. Jan. 31, 2022) .............................................. 11, 12

*Jabil Cir., Inc. v. Speedline Techs., Inc.*,
  2010 WL 11629048 (M.D. Fla. Nov. 19, 2010) ..................................................10

*Jones v. White*,
  992 F.2d 1548 (11th Cir. 1993) ........................................................................12

*Knight ex rel. Kerr v. Miami-Dade Cnty.*,
  856 F.3d 795 (11th Cir. 2017) ............................................................................5

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999).........................................................................................16

*Lamonica v. Hartford Ins.*,
  336 F.R.D. 682 (N.D. Fla. 2020) ...................................................................9, 10

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
  66 F.4th 905 (11th Cir. 2023) ...........................................................................14

*Leaks v. Target Corp.*,
  2015 WL 4092450 (S.D. Ga. July 6, 2015).........................................................2

*Lebron v. Royal Caribbean Cruises, Ltd.*,
  2018 WL 3583002 (S.D. Fla. July 26, 2018) ......................................................2

*McDowell v. Brown*,
  392 F.3d 1283 (11th Cir. 2004) ........................................................................18

*Nelson v. Ipalco Enters., Inc.*,
  2005 WL 1924332 (S.D. Ind. Aug. 11, 2005) ......................................................9

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*,
2020 WL 1666763 (S.D. Fla. Apr. 3, 2020) ..........................................................3

*Pandya v. Marriott Hotel Servs*,
552 F. Supp. 3d 1364 (N.D. Ga. Aug. 5, 2021) ...................................................3

*Parks v. City of Warner Robins*,
43 F.3d 609 (11th Cir. 1995) .............................................................................12

*Prosper v. Martin*,
989 F.3d 1242 (11th Cir. 2021) ..........................................................................16

*Reese v. CSX Transp., Inc.*,
2020 WL 5740253 (S.D. Ga. Sept. 24, 2020) ..................................................3, 5

*Romero v. Drummond Co.*,
552 F.3d 1303 (11th Cir. 2008) ..........................................................................10

*Tigrett v. Cooper*,
855 F. Supp. 2d 733 (W.D. Tenn. 2012) ............................................................12

*Timber Pines Plaza, LLC v. Kinsale Ins.*,
192 F. Supp. 3d 1287 (M.D. Fla. 2016)...............................................................5

*United States v. Koziy*,
728 F.2d 1314 (11th Cir. 1984) ..........................................................................10

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)........................................................................ 1, 7, 9-15, 20

*Williams v. Mallet*,
2023 WL 8769726 (S.D. Fla. Dec. 19, 2023).....................................................13

*Wright v. Hyundai Motor Mfg. Alabama, LLC*,
2010 WL 4739486 (M.D. Ala. Nov. 16, 2010) ....................................................6

**Rules**

Fed. R. Civ. P. 12(b) ................................................................13

Fed. R. Civ. P. 26(a)(2)(D)(ii) ...............................................2, 8

Fed. R. Civ. P. 37(c)(1)........................................... 5, 8, 10, 20

Devin Caughey's testimony should be excluded. *First*, Caughey is an improper rebuttal witness. The United States identifies *no* defense expert who opined on the intent of the Alabama Legislature in enacting SB184, which is the only focus of Caughey's testimony. The United States' 413-day late disclosure had no justification other than a desire to change claims mid-case—to one that has been available for over 50 years, but the United States failed to plead. The late disclosure as discovery was about to close kept Defendants from developing counter-evidence.

*Second*, Caughey's testimony is irrelevant to any claim pleaded here. The United States cannot identify one allegation of discriminatory intent—the critical component of every intentional discrimination claim under *Arlington Heights*.

*Third*, Caughey's testimony is unreliable and unhelpful. The United States does not dispute that no out-of-court analysis has ever used the indices Caughey does, which are all founded on the unsupportable assumption that each law was passed solely for the reason Caughey desires. The remainder of his testimony—cherry-picked bills and legislative history snippets—is equally unreliable and also unhelpful, as the fact-finder can review this history and draw any intent conclusions.

## ARGUMENT

**I.  Caughey's Testimony Should Be Excluded Because, As A Non-Rebuttal Witness, His Testimony Was Not Timely Disclosed.**

### A.  Caughey Does Not Provide Proper Rebuttal Testimony.

The United States' response ignores governing legal principles and makes no effort to show that any defense expert testified about the purpose of the Alabama Legislature in enacting SB184—the sole focus of Caughey's testimony.

The United States does not dispute that "a rebuttal expert opinion must address new, unforeseen evidence in the other party's case or must address matters on which the opposing party bears the burden of proof." *Bell v. Progressive Select Ins.*, 692 F. Supp. 3d 1121, 1124-25 (M.D. Fla. 2023) (Doc. 601 at 5 (Mot.)). "A plaintiff's rebuttal expert may not simply raise evidence that goes to the plaintiff's prima facie case and logically belongs in his case in chief." *Id.* at 1125. Nor may a rebuttal expert be used to "contradict an expected and anticipated portion of the other party's case-in-chief." *Leaks v. Target Corp.*, 2015 WL 4092450, at *3 (S.D. Ga. July 6, 2015).

The United States disputes *none* of Defendants' legal propositions. Mot. 5-6. Rather, it repeats that some courts have "construe[d] the phrase 'same subject matter'" in Rule 26 "broadly." *E.g.*, Opp. 12. But Rule 26(a)(2)(D)(ii) is confined, as the United States' own cases emphasize: rebuttal evidence must be "intended *solely* to *contradict* or *rebut* evidence on the *same subject matter*." *Ahmed v. Johnson & Johnson Healthcare Sys., Inc.*, 2024 WL 693078, at *13 (S.D. Ala. Feb. 20, 2024). Even courts that construe "same subject matter" broadly hold that "a rebuttal opinion should not be used to advance new arguments." *Lebron v. Royal Caribbean Cruises, Ltd.*, 2018 WL 3583002, at *2 & n.2 (S.D. Fla. July 26, 2018).

That makes sense, especially when it comes to testimony supporting a plaintiff's case-in-chief: "Otherwise the plaintiff could reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in his." *Bell*, 692 F. Supp. 3d at 1125. So it is not Defendants who are trying to "impos[e] additional limitations" on Rule 26's "plain language," Opp. 7, but the United States trying to disregard the rule's text and structure—in service of its belated efforts to

2

switch legal theories mid-case without amending the complaint.

The United States' cases only confirm Rule 26's text and structure. Those cases prohibit rebuttal experts from "testify[ing] in plaintiff's case-in-chief," limiting them to rebuttal. *Ahmed*, 2024 WL 693078, at *14; *see Pandya v. Marriott Hotel Servs*, 552 F. Supp. 3d 1364, 1375 (N.D. Ga. Aug. 5, 2021). And they explain that "[i]f the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *Reese v. CSX Transp., Inc.*, 2020 WL 5740253, at *12 (S.D. Ga. Sept. 24, 2020). To the extent that the United States' cases permit rebuttals, it is on case-specific grounds—typically, that the rebuttal addresses underlying assumptions or methodology of damages calculations.[1]

These decisions have no purchase here. Caughey's testimony is not rebuttal evidence for three reasons, none of which the United States meaningfully disputes.

*First*, his testimony does not respond to Defendants' experts. Caughey's testimony does not respond to an assumption or underlying methodology in Defendants' experts' reports, for none of them assume anything about the Alabama Legislature's purpose in enacting the law. As Caughey conceded, "Defendants' expert reports make almost no reference to the State of Alabama or to SB184 specifically." *Daubert*.DX35:¶61 (Caughey Rebuttal Rep.). The Legislature's purpose is simply

---

[1] *See Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 2020 WL 1666763, at *9 (S.D. Fla. Apr. 3, 2020); *Fuller v. SunTrust Banks, Inc.*, 2019 WL 5448206, at *22 (N.D. Ga. Oct. 3, 2019); *Reese*, 2020 WL 5740253, at *14 ("underlying assumptions of" rainfall methodology); *cf. Edwards v. Fla. Dep't of Corr.*, 2015 WL 11109376, at *1 (N.D. Fla. Nov. 18, 2015) (allowing rebuttal where "[t]he scope of the [initial] expert's opinion" was "extremely broad"); *Pandya*, 552 F. Supp. 3d at 1376 (rebuttal after the other party introduced a new theory of the case).

irrelevant to Defendants' experts' testimonies, and it is not a "premise" of their testimonies. Opp. 19. The United States' own description of Defendants' experts' reports says that their "central premise [is] that the prohibitions of S.B. 184 are warranted." Opp. 17. But that's exactly what Caughey said he *wasn't* responding to, as he disclaimed any view about the propriety of laws regulating medical transition of minors. *E.g.*, SJ.DX79:270:10-13 (Caughey Dep.). Though the United States quotes Caughey's self-serving claim that Defendants' experts "advanced a justification for S.B. 184" (Opp. 20), it omits his follow-up concessions that those experts "do not state that the legislature adopted their justifications." Caughey Dep. 19:16-23.

Caughey's testimony, by contrast, focuses on "the primary purpose of the [Alabama] legislation." *E.g.*, Caughey Rebuttal Rep. ¶¶84-88 (conclusions opining as to "the primary purpose of the legislation"). Though the United States does its best now to obscure that focus with out-of-context snippets from his deposition, even its narrative agrees that Caughey's testimony is about "the motivations and purposes of the bill." Opp. 18-19 (cleaned up). As Caughey conceded, that does not rebut defense testimony.[2] Thus, as Defendants already explained—and the United States does not question—"if Defendants 'asked for a limiting instruction' at trial that Caughey's testimony should be considered 'solely to contradict' Defendants' experts—as would be appropriate for true 'rebuttal' witnesses—any fact-finder 'would struggle to understand why and how' Caughey's testimony could be used for that purpose." Mot. 8 (quoting *Bell*, 692 F. Supp. 3d at 1124). Because Caughey does not solely

---

[2] *See* Mot. 7-8 (collecting repeated concessions that Caughey is not rebutting non-existent Defendants' experts' views about the Alabama Legislature's purpose—all ignored by the United States).

contradict Defendants' experts, he does not offer rebuttal testimony.

*Second*, even if one pretends that Caughey responds to Defendants' experts, those experts' generalized characterizations of SB184 as necessary to protect children were foreseeable. As the United States' case explains, "rebuttal expert testimony is limited to new unforeseen facts brought out in the other side's case." *Reese*, 2020 WL 5740253, at *12. And *of course* Defendants' experts were going to generally opine in favor of the law as protecting children. Because the United States does not even try to argue that those opinions were unforeseen, Caughey's testimony is not proper rebuttal evidence even if it directly addressed Defendants' experts.

*Third* and independently, the United States does not dispute Defendants' showing that Caughey's testimony about supposed legislative purpose belongs in the United States' case-in-chief. *See* Mot. 6-7. That alone makes it improper rebuttal testimony. The United States has no response. For each of these reasons, Dr. Caughey's testimony is improper rebuttal evidence under Rule 26.

## B. Disclosing Caughey Over a Year Late, on the Eve of the Close of Discovery, Requires Exclusion.

The United States does not dispute that under Rule 37(c)(1), "failing to disclose an expert witness by a court-ordered deadline results in an automatic and mandatory exclusion of the witness, unless the nondisclosure was justified or harmless." *Timber Pines Plaza, LLC v. Kinsale Ins.,* 192 F. Supp. 3d 1287, 1291 (M.D. Fla. 2016) (cleaned up). It also does not dispute that it bears the "burden" to "show[] a substantial justification" for its "tardiness" or harmlessness. *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017). According to the United

States' own case, Rule 37 "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion." *Wright v. Hyundai Motor Mfg. Alabama, LLC*, 2010 WL 4739486, at *4 (M.D. Ala. Nov. 16, 2010). The United States fails to show that the Court should depart from this default rule.

The United States advances two reasons its 413-day late disclosure was "substantially justified": that the Eleventh Circuit applied rational basis review, and because of supposed "ambiguity in the law of whether their testimony is proper rebuttal." Opp. 21. Neither works.

First, the United States notes that this Court applied intermediate scrutiny, then the Eleventh Circuit applied rational basis "absent 'pretext for invidious discrimination.'" Opp. 23. But it was not unforeseen that an ongoing dispute here would be the level of scrutiny. Presumably that's why the United States has, from the beginning, pleaded both intermediate scrutiny and rational basis claims. *See* Doc. 92 ¶¶59-60 (alleging "[i]n the alternative" that "S.B. 184 cannot survive heightened scrutiny" or "any level of scrutiny"). And it relied on the same factual allegations in support of both claims. *See id.* So if the United States believed that Caughey's testimony were relevant under any of the theories it pleaded, it should have disclosed his testimony from the get-go. No one could have thought that this Court's preliminary injunction opinion would necessarily be the final word on the standard of review. Even setting aside the appellate process, "conclusions of law made in deciding [a] motion for preliminary injunction are not binding at a trial on the merits." *Home Oil Co. v. Sam's E., Inc.*, 199 F. Supp. 2d 1236, 1239 (M.D. Ala. 2002). In all events,

the United States never explains why Caughey's testimony would have been irrelevant under intermediate scrutiny yet relevant under rational basis.

The reason it does not explain that, of course, is that it can't say what's obviously going on: after the only intermediate scrutiny theory the United States pleaded lost at the Eleventh Circuit, it decided to switch legal theories mid-stream. Though the United States implies that the Eleventh Circuit's passing mention of a separate intermediate scrutiny basis for laws that are a "pretext for invidious discrimination" was somehow a "significant change in circumstances," Opp. 23-24, it was not. As Defendants already explained several times—and the United States does not rebut— "neither the Eleventh Circuit opinion in this case nor any other recent precedent changed the state of the law respecting discriminatory intent claims." Mot. 12. The rules governing such claims are "at least 50 years old." *Id.* at 17-18; *see* Doc. 411 at 21 n.5. This claim was available to the United States when it filed its complaint. It just failed to plead any facts supporting it.

Further, the United States does not dispute that it "*knew* that Defendants did not consider any *Arlington Heights* claim properly pled" well before its initial expert disclosures were due. Mot. 10 (citing Docs. 158-1 at 15-17, 171 at 13-16, and 200 at 15-17). Yet the United States remained silent, neither seeking to amend its complaint nor disclosing someone like Caughey as a purported expert on its unpled claim. Instead, over a year later, it tried to sandbag Defendants and shoehorn Caughey in as a purported rebuttal witness. The United States has no justification at all, much less a substantial one. It merely botched a litigation decision—one that could have been corrected by a timely motion to amend the complaint, which it never

filed. Courts are clear that litigants may not try to add new legal theories via expert testimony, *see* Mot. 10 n.3 (collecting cases), so the United States' effort to do just that is far from a "justification"—it's another reason to exclude Caughey.

Next, in a two-sentence argument that is so under-developed it should be considered forfeited, the United States baldly asserts that it "believes" that Caughey is "offering proper rebuttal opinion," so this "ambiguity" is substantial justification. Opp. 24. Unsurprisingly, the United States cites no case holding that improper rebuttal evidence may be admitted as substantially justified because the party proffering that evidence "believed" it was ok.[3] Such a rule would swallow Rules 26 and 37: every party trying to introduce late evidence "believes" it is ok. In all events, as shown, there is no ambiguity: no defense expert opines about the purpose of the Alabama Legislature here, and that is the *only* topic Caughey opines about. No matter how one reads Rule 26's reference to the "same subject matter," his testimony does not "solely … contradict" any defense expert. Fed. R. Civ. P. 26(a)(2)(D)(ii).

Next, the United States claims that Defendants were not harmed by the 413-day late disclosure a month before discovery closed because Defendants were still able to depose Caughey. Opp. 24-25. Yes, Defendants took his deposition, on an artificially compressed timeframe with far less time to prepare than for timely disclosed witnesses. But that's not nearly enough to show harmlessness. The United

---

[3] The only case cited by the United States held that the testimony was proper rebuttal evidence, but even if it were not, it could be admitted because the court gave the other party "the opportunity to file an amended expert report to address any new issues and events addressed in the rebuttal report." *Edwards*, 2015 WL 11109376, at *2. Here, by contrast, Caughey's testimony is not rebuttal evidence, and Defendants had no opportunity to develop other experts or evidence because of the United States' extreme delay in disclosing his testimony.

States quotes one case as saying that "[w]hen a party has 'ample time to depose' a witness ... any tardiness in disclosing the witness typically is harmless." Opp. 23 (quoting *Lamonica v. Hartford Ins.,* 336 F.R.D. 682, 687 (N.D. Fla. 2020)). But it omits the crucial material: and "otherwise seek discovery with respect to the witness and his likely testimony." *Lamonica*, 336 F.R.D. at 687 (cleaned up).

As already explained, had the United States timely disclosed Caughey, Defendants "could—and would—have obtained their own rebuttal testimony" and also "developed more evidence related to the *Arlington Heights* issues on which Caughey opines." Mot. 11. Giving "plaintiffs the opportunity to wait for defendants to show their expert cards" before disclosures is prejudicial even if there is time for a deposition. *Nelson v. Ipalco Enters., Inc.*, 2005 WL 1924332, at *8 (S.D. Ind. Aug. 11, 2005); *see Bell*, 692 F. Supp. 3d at 1126 (similar). The United States asserts that this opportunity would be "vague and speculative," Opp. 26, but it is not too "speculative" to think that Defendants would have obtained a rebuttal witness or evidence—as they have responded to every witness. The United States also claims that "[i]f Defendants believe Prof. Caughey offers no relevant testimony then there would be nothing worth rebutting." *Id.* Nonsense. Caughey's testimony is irrelevant because the United States did not plead facts underlying an *Arlington Heights* claim, but Defendants would have prepared to rebut him in case the United States disagreed.

Last, the United States' absurd assertion of no prejudice based on Defendants' own early effort to establish that no *Arlington Heights* claim was before the Court (Opp. 26-27) fails. Defendants' argument was that the United States presented no *Arlington Heights* claim. Consistent with this argument, five months later the United

States failed to disclose any expert witness on such a claim. Defendants could hardly have known that the United States would sandbag them over a year later with a putative "rebuttal" witness with no time for Defendants to gather their own evidence on this non-existent claim. If the United States believed in September 2022 that *Arlington Heights* "was at issue in the case," its "failure to obtain [Caughey] before the court's deadline" is not just unjustified, but "displays bad faith." *United States v. Koziy*, 728 F.2d 1314, 1321 (11th Cir. 1984).

In sum, all relevant factors show that the United States has failed to establish substantial justification and harmlessness. *See Lamonica*, 336 F.R.D. at 686 (listing factors); *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008) (emphasizing "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party").[4] The late-disclosed evidence introduces a new legal theory, it is critical to that theory, and it was disclosed over a year late for strategic reasons. That late disclosure deprived Defendants of an opportunity to develop their case in the month before discovery closed. Caughey should be excluded, along with any *Arlington Heights* claim. *See* Fed. R. Civ. P. 37(c)(1).

## II.   Caughey's Testimony Should Be Excluded Because It Is Irrelevant.

The United States also cannot show that it pleaded facts underlying an *Arlington Heights* claim of intentional discrimination. This issue has been well-briefed,[5]

---

[4] The cases relied on by the United States (Opp. 25) only underscore that *this* is not a case involving some minor, harmless late disclosure. *See Lamonica*, 336 F.R.D. at 685-87 (late disclosure harmless when the expert reports were properly transmitted but lacked some disclosures, no trial had been scheduled, and the disclosures "did not interject an additional … legal theory into the case" (cleaned up)); *Jabil Cir., Inc. v. Speedline Techs., Inc.*, 2010 WL 11629048, at *1 (M.D. Fla. Nov. 19, 2010) (late disclosure harmless when it was "one day late").

[5] Mot. 13-19; Doc. 411 at 8-19; Doc. 158-1 at 15-17; Doc. 171 at 13-16; Doc. 200 at 15-17.

yet the United States still cannot muster any factual allegation about *intentional* discrimination. So instead it first claims there is no such thing as an "*Arlington Heights* claim." Opp. 35. Of course, no case supports this strange understanding of equal protection claims: intentional or purposeful discrimination claims (like the one the United States did not plead) come into play when there is no facial discrimination—and they require a showing (and allegations) of *intent*. That's exactly what the United States failed to plead. The United States tries to divert attention from its pleading failure by mischaracterizing Defendants' argument as about the absence of a "legal theory." Opp. 37-38. That is not the problem. The problem is the utter absence of *factual allegations* that would, if true, prove a claim of intentional discrimination. Because no intentional discrimination claim is before the Court, Caughey's testimony is irrelevant.

### A.    Intentional Discrimination Claims Require Allegations of Intent.

To begin, the United States oddly argues that a "discrete '*Arlington Heights*' claim" does not exist because "[a]ll equal protection claims … ultimately require proof of discriminatory intent." Opp. 30. The United States cites nothing for this strange constitutional understanding, which circuit precedent squarely rejects. "Equal protection claims can be divided into three broad categories," with "[t]he first and most common type" being "that a statute discriminates on its face." *J.D.P. v. Montgomery Cnty.*, 2022 WL 291608, at *3 (M.D. Ala. Jan. 31, 2022) (quoting *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987)). "[I]f 'the statute facially discriminates against certain groups," heightened scrutiny may apply. *Id.* A facial discrimination claim like this is the only claim pleaded here, and the Eleventh

Circuit held that heightened scrutiny does *not* apply to the Act's age classification.

The "second type of equal protection claim is that neutral application of a facially neutral statute has a disparate impact," and "[i]n such a case, a plaintiff must prove purposeful discrimination." *J.D.P*, 2022 WL 291608, at *3 (quoting *Strickland*, 830 F.2d at 1112 n.5). *That* is an *Arlington Heights* claim.[6] And as this explanation shows, it requires something beyond what would be necessary in a facial discrimination claim: evidence of purposeful discrimination. *See Jones v. White*, 992 F.2d 1548, 1572 (11th Cir. 1993) ("A showing of discriminatory intent is not necessary when the equal protection claim is based on an [facially] discriminatory classification." (cleaned up)). So "[t]o plead" an *Arlington Heights* claim, "a plaintiff must raise a plausible inference that an 'invidious discriminatory purpose was a motivating factor' in the relevant" law. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34 (2020) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)); *see Jones*, 992 F.2d at 1572-73 (explaining this distinction).[7]

The United States' own argument implicitly recognizes the differences between these two types of claims. The United States announces that "[s]hould the Supreme Court conclude that" these laws do not have "sex-based classifications," it

---

[6] The third type of claim—"that defendants are unequally administering a facially neutral statute" (*J.D.P*, 2022 WL 291608, at *3))—is not relevant here.

[7] *Compare Parks v. City of Warner Robins*, 43 F.3d 609, 618 (11th Cir. 1995) (describing allegations that "fall[] short of the showing of discriminatory purpose or intent necessary to support a disparate impact claim"), *Hayden v. Paterson*, 594 F.3d 150, 167 (2d Cir. 2010) ("there are simply no non-conclusory allegations of any kind as to discriminatory intent"), *and Tigrett v. Cooper*, 855 F. Supp. 2d 733, 753 (W.D. Tenn. 2012) (refusing to "permit Plaintiffs to go on a fishing expedition in search of discriminatory intent, purpose, or animus" absent complaint allegations of intent), *with Fla. State Conf. of NAACP v. Lee*, 566 F. Supp. 3d 1262, 1296 (N.D. Fla. 2021) ("Plaintiffs have pleaded at least some facts addressing every *Arlington Heights* factor").

"would seek to present evidence at trial to establish" "invidious discrimination." Opp. 36. That the United States recognizes that these are separate claims, with different evidentiary needs, makes Defendants' point. And it underscores the deep unfairness of letting the United States get away with *not* pleading intentional discrimination but then submitting late rebuttal testimony on it. The United States' complaint failed "to give the [D]efendant[s] fair notice" that any evidence pertaining to intentional discrimination by the Legislature would be relevant—or need rebutting. *Williams v. Mallet*, 2023 WL 8769726, at *9 (S.D. Fla. Dec. 19, 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see id.* at *10 ("Courts in our Circuit" "routinely exclude evidence—and refuse to consider arguments—that weren't included in a party's pleadings.").

Though the United States tries to justify Caughey's testimony in the alternative by asserting that intent is "relevant" under "rational basis review," Opp. 35-36, that's wrong. "[T]he actual purposes of [the Act] are not relevant to a rational-basis equal protection inquiry." *Haves v. City of Miami*, 52 F.3d 918, 923 (11th Cir. 1995). Caughey's testimony could thus only be relevant if the United States pleaded factual allegations that would establish an intentional discrimination claim—but it did not.

## B.   The United States Did Not Allege Intentional Discrimination.

Perhaps the easiest way to see the failure of the United States to plead facts underlying an *Arlington Heights* claim is to consider the world in which all factual allegations in the United States' complaint were presumed true (like on a Rule 12(b) motion). In that world, could the United States prevail on an *Arlington Heights* claim? No. That's because its complaint says nothing about legislative intent. And

proof of "discriminatory intent or purpose" is the *sine qua non* of an *intentional* discrimination claim. *Arlington Heights*, 429 U.S. at 265. However much the United States trots out its complaint subheading and two allegations about "Impact of S.B. 184" (Opp. 37), impact is not enough. On an *Arlington Heights* claim, the United States "b[ears] the burden of proving both discriminatory impact and discriminatory intent." *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 941 (11th Cir. 2023) (cited at Opp. 30); *see Arlington Heights*, 429 U.S. at 264-65. And "the Supreme Court has long held that 'discriminatory purpose' implies more than intent as volition or intent as awareness of consequences." *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 810 (11th Cir. 2022) (en banc) (cleaned up).

The United States' complaint pleaded no facts about any discriminatory intent of the Legislature. So even if all allegations in the complaint were true, the United States could not prevail on such a claim—meaning that the claim is not adequately pleaded and not before the Court. And *that* means Caughey's testimony, which the United States does not dispute is directed entirely at such a claim, is irrelevant.

## C.    This Court Has Not Held That the United States Adequately Pleaded an *Arlington Heights* Claim.

Last, the United States claims that the "Court already rejected Defendants' arguments that the United States 'pleaded no *Arlington Heights* claim.'" Opp. 38-39. Not so. When Defendants moved for partial judgment on the pleadings based on a failure of the United States to allege intentional discrimination, the Court denied that motion "for two reasons." Doc. 278 at 1. The first was that the motion "in substance" "attempt[ed] to contest prospective nonparty subpoenas," and the United

States promised it would stop propounding such subpoenas. *Id.* at 1-2. (Though that didn't stop Plaintiffs from issuing copycat subpoenas. *See* Doc. 469.)

The second reason was that "the motion d[id] not seek to dismiss the [United States'] Equal Protection Claim entirely." *Id.* at 2. And that was true—it was a motion for "partial" judgment—but only because the Eleventh Circuit had not yet rejected the United States' facial discrimination heightened scrutiny claim. *See* Mot. 15. That this branch of the United States' claim remained in no way suggests that the Court decided that the United States had adequately pleaded facts underlying a separate intentional discrimination *Arlington Heights* claim. To the contrary, the Court rightly rejected the United States' and Plaintiffs' repeated attempts to propound subpoenas seeking evidence of intentional legislative discrimination as lacking "relevance" to the claims before the Court. Mot. 14-15 (collecting statements). The United States pleaded no facts of intentional discrimination, and it is too late to do so now. Caughey's testimony is thus irrelevant.

### D.    Caughey Disclaimed Offering an Opinion About Legislative Intent.

Even if an *Arlington Heights* claim were before the Court, Caughey's testimony would be mostly irrelevant. The United States concedes that he will not opine on "intent" by the Legislature or "any individual." Opp. 40. If he's not offering an opinion on intent, then much of his testimony is unhelpful. He offers one-sided descriptions of unrelated laws, along with cherry-picked excerpts from a few hearings on SB184 or other bills. Caughey Rebuttal Rep. ¶¶ 47-83. As discussed below, this evidence is unreliable and unhelpful. Here, it suffices to say that if Caughey is offering no opinion on intent, the fact-finder "d[oes] not need [Caughey] to tell [him]

15

what [he] could plainly see for [himself]" from bill texts and hearings. *Prosper v. Martin*, 989 F.3d 1242, 1250 (11th Cir. 2021). His testimony should be excluded.

### III.   Caughey's Testimony Should Be Excluded Because It Flunks Rule 702.

Caughey also flunks Rule 702's requirements of reliability and helpfulness.

### A.   Caughey's Indices Are Unreliable and Unhelpful.

The United States agrees that experts in court must employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Opp. 43 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). But in his academic work, Dr. Caughey relies on a comprehensive study with a dataset of 186 policies, which has been relied on by other experts, and he does not use it to predict individual policies. Here, by contrast, his indices include between 1 and 13 policies, cherry-picked to lead him to his desired outcomes—and no other analysis *at all* uses these policies, much less to predict another policy. *See* Mot. 30-32. The United States has no response. And it fails to address the separate overarching problem of "Caughey's unsupported assumption that all the relevant laws were passed only for the single purpose he wants to use them for." Mot. 21; *see* Mot. 23-35.

The United States' opposition largely regurgitates Caughey's report—but that is no defense of its reliability. Opp. 43-46. When the United States finally mentions reliability, it asserts, without citation to Caughey's work or anything else, that "Caughey did not need to assume that the laws in those indices were exclusively motivated by" the purpose he used them for. Opp. 46. But neither the United States nor Caughey explains how the enactment (or non-enactment) of policies for reasons potentially having nothing to do with Caughey's desired conclusions could, by crude

mashing together, prove or reliably support those conclusions.

To take a simple example, if a State declined to enact a religious vaccine exemption, Caughey would count it as healthcare paternalism—even if the undisputed *sole* reason for that decision was that the State already had a broader personal vaccine exemption. Caughey acknowledged this overlap in his categories, and more broadly that vaccine exemptions, like other policies, might be adopted or rejected for "significant" reasons apart from paternalism. Caughey Dep. 212:19–213:16. Yet he simply sums that policy with a few others, equally potentially based on "significant" other reasons (*id.*), and announces Alabama's score of paternalism. He uses the same trick for his other indices—mash policies he picks together, exclude ones that might muddy his conclusion (*e.g.*, *id.* at 217:1–219:6; Mot. 29-33 & nn.10, 12), and present his conclusion as a "celebrated" MIT professor (Opp. 47): Alabama is motivated by "X." *See* Caughey Dep. 288:8–289:3 ("I don't consider other reasons for—that they might have been [adopted]."); *id.* at 131:20-21, 140:12-21 (similar). Rule 702 exists to exclude evidence like this.

The United States admits that Caughey did not control for any of these other explanations, or any other variables. Opp. 47. Though it parrots Caughey and declares that the indices can nonetheless "inform" an "inference[]" about the "explanation[]" for the law, *id.*, it never explains how an analysis that does not control for other variables could be reliable. Without controls, "any interrelationship" "is highly likely to be spurious." *Hall v. Thomas*, 753 F. Supp. 2d 1113, 1147 (N.D. Ala. 2010).

In sum, "failing to adequately account for contrary evidence is not reliable or scientifically sound." *In re Lipitor (Atorvastatin Calcium) Mktg.*, 174 F. Supp. 3d

911, 932 (D.S.C. 2016). Caughey's unscientific assumptions—assumptions that he agreed were *wrong* (Mot. 24-25, 27-29)—make his analysis unreliable. And the United States makes no effort to defend those assumptions or show that anyone in the field—including Caughey—has ever relied on these indices to draw the conclusions Caughey uses them for here. *See* Mot. 29-35; *id.* at 35 (explaining, without rebuttal, that "[n]o one else has used Caughey's indices, and they have never been subjected to peer review or published").  "[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions." *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004).

**B.    Caughey's Reference to Purported "Anti-LGBT Legislation" is Based Only on His Own *Ipse Dixit.***

The United States does not seem to dispute that Caughey's characterization of various Alabama legislation—much of which does not even mention gender identity—as "anti-LGBT" is based entirely on his own personal suppositions. *See* Mot. 35-38. Rather than defend the reliability of that approach, the United States simply restates it. For instance, "conscience laws," it tells us, "evince hostility toward LGBT rights and transgender people," no matter if "the legislature may have been motivated by religious interests." Opp. 49-50. Repeating Caughey's illogic does not justify it; protecting religious rights is not the same as hostility toward others. *See* Mot. 36. And laws classifying individuals by biological sex do not "limit [transgender people's] ability to engage with the state according to their identity in the same way non-transgender people do" (Opp. 49): gender identity has no relevance to a sex-based law. Last, the United States claims that Caughey's testimony

18

shows "predictabl[e] harm" from these laws, *id.*, but Caughey never addresses the outcomes of these laws (much less *bills*), what harms (or benefits) were supposedly "predicted" before their passage, or how he knows that any predictions came true.

The critical question for the United States' unpleaded claim is legislative intent, so if Caughey cannot present a method by which his review of cherry-picked legislation reliably speaks to intent with some expertise, that review is inadmissible. The fact-finder can consider public bills and does not need a biased narrative from a partisan to do so. Caughey's review of other bills is unreliable and unhelpful.[8]

### C. Caughey's Cherry-picking of the Legislative History is Error-filled and Unscientific.

The United States' discussion of Caughey's cherry-picked retelling of legislative history snippets is non-responsive to Defendants' arguments. Defendants presented "six problems with this part of Caughey's testimony." Mot. 38-40. The United States ignores the first: Caughey botched the language of SB184, a "cornerstone" of his analysis. Mot. 38. It also ignores the second: Caughey's unsupported assumptions about the purpose of bills he dislikes. Mot. 38-39. It concedes the third, the absence of a comprehensive review, claiming that this deficiency should be disregarded because Caughey could only find "three hearings." Opp. 52. Whatever the

---

[8] The United States pulls three words out of context to attack Rep. Butler. Opp. 49. But the United States ignores that Caughey backtracked from his assessment of Rep. Butler's comments—because Caughey had not bothered to review the incident he editorialized about—and also ignores that Rep. Butler *did not vote on SB184*. *See* Mot. 37-38. The United States appears aggrieved that Rep. Butler accurately stated that transgender identity was listed as a mental disorder until 2012. SJ.DX82:204; *see* Caughey Dep. 316:19–317:7. How that shows "contempt" is unknown. Rep. Butler concluded: "You know, we absolutely love these people. We don't want to hurt anybody or offend anybody." SJ.DX82:175. As with so much else, Caughey left that out: it did not "convey the meaning" that he "wished to convey." Caughey Dep. 312:16–314:6.

reason for Caughey's failure, it makes his opinion unreliable.

The United States also concedes the fourth problem—the systematic omission of all evidence contrary to Caughey's conclusion (Mot. 39-40)—saying only "the purpose of that discussion was to illustrate that the legislators had knowledge of the foreseeable harm that the law would cause." Opp. 52. Whatever that might mean, it's wrong. Again, "failing to adequately account for contrary evidence is not reliable or scientifically sound." *Lipitor*, 174 F. Supp. 3d at 932. The United States ignores Caughey's admission that "legislators also 'had opportunity to hear about the potential benefits'"—which he omitted—as well as his admission that "he did not know if the opponents' prediction of 'harm' was correct." Mot. 40.

Last, the United States has no answer to the point that "edited snippets from *two* legislators are unhelpful to the trier of fact" given the United States' burden to prove "'the legally dispositive intent of the entire body of the Alabama legislature.'" Mot. 40.[9] Caughey's legislative history narrative is both unreliable and unhelpful; the fact-finder can review that history and come to a conclusion about intent.

## CONCLUSION

For these reasons, the Court should exclude Caughey's testimony and any assertion of an *Arlington Heights* claim. *See* Fed. R. Civ. P. 37(c)(1).

---

[9] The United States' assertion that "sponsors of S.B. 184" "claim[ed] that gender dysphoria is not a real condition" (Opp. 32) is wrong. The United States purports to quote Rep. Allen as denying a "medical condition." *Id.* Putting aside that the quotation comes from Sen. Shelnutt, the distinction is between an endocrine disorder and a mental health diagnosis; gender dysphoria is the latter. The source Caughey drew this quote from has a long discussion of Sen. Shelnutt explaining what gender dysphoria is, per the Mayo Clinic. SJ.DX82:222. The United States' only other quotation has nothing to do with whether gender dysphoria is "real," but focuses on how to address it. *See* Opp. 32-33. The United States should stop its baseless smears of public officials.

Dated: September 9, 2024

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, SC 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Roger G. Brooks (*pro hac vice*)
Henry W. Frampton, IV (*pro hac vice*)
Philip A. Sechler (*pro hac vice*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0200
rbrooks@adflegal.org
hframpton@adflegal.org
psechler@adflegal.org

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

s/ A. Barrett Bowdre
A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on September 9, 2024, I electronically filed this document using the Court's CM/ECF system, which will serve counsel of record.

s/ A. Barrett Bowdre
A. Barrett Bowdre
*Counsel for Defendants*