# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| Brianna Boe, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Plaintiff-Intervenor*, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00184-LCB-CWB |
| | ) | |
| Hon. Steve Marshall, in his official | ) | |
| capacity as Attorney General of the | ) | **REDACTED** |
| State of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

# PRIVATE PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN TESTIMONY (ECF NO. 605)

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.  Experts' summaries and characterizations of plain-language internal documents
    are unreliable and unhelpful. .................................................................................1

II. Inferences of corporate motive, intent, knowledge, and state of mind are
    reserved for the factfinder. ................................................................................7

III. Speculative and conclusory opinions regarding politicization of medical
     organizations are not based on any reliable methodology and are not helpful to
     the trier of fact. .........................................................................................12

CONCLUSION ...................................................................................................16

## INTRODUCTION

Despite devoting 16 pages over four briefs to the helpfulness of Dr. Kaliebe, Dr. Laidlaw, Dr. Cantor, and Dr. Hruz's challenged testimony, Defendants do not address the core concern raised by Private Plaintiffs' motion to exclude (ECF No. 605): that Rule 702 requires every expert opinion to offer something beyond what trial counsel can argue in closing or what the factfinder could infer from documents in evidence. Nor do they meaningfully grapple with the consistent holdings of authorities within this Circuit that support Plaintiffs' objections. Instead, Defendants cite irrelevant caselaw and unpublished district court decisions from outside this Circuit—or sometimes no caselaw at all—and tout their experts' alleged knowledge of background concepts related to this litigation. Rule 702 requires more. The Court should grant Plaintiffs' motion to exclude.

## ARGUMENT

To show that the challenged opinions offered by Drs. Kaliebe, Laidlaw, Cantor, and Hruz are both reliable and helpful to the trier of fact, Defendants must carry "a substantial burden." *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1107 (11th Cir. 2005). As explained below, Defendants have not met this burden.

### I. Experts' summaries and characterizations of plain-language internal documents are unreliable and unhelpful.

In connection with their speculative "expert opinions" regarding the development of SOC-8 and the alleged politicization of medical organizations, Dr.

Kaliebe, Dr. Cantor, and Dr. Laidlaw[1] selectively parrot hearsay statements made in a small subset of internal WPATH and HHS documents—many of which are internal emails written by unidentified individuals reflecting their personal beliefs or concerns. Defendants admit that the only "methodology" these witnesses applied to such documents was to "read[]" them and "note" any passages that appeared to "confirm" their opinions. ECF No. 663 at 14–15; ECF No. 658 at 15–16; ECF No. 661 at 10. Defendants further admit that these witnesses' supplemental reports merely "summariz[ed]" or "characteriz[ed]" those passages rather than applying any specialized expertise to them. ECF No. 661 at 11–12; ECF No. 663 at 16.[2]

Reading documents and identifying plain-language quotes that support one view of the evidence yields "nothing more than what lawyers for the parties can argue in closing argument." *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (quoting *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004)). Dr. Kaliebe, Dr. Laidlaw, and Dr. Cantor's "observations" about the consistency or inconsistency of the evidence "could be made by defense counsel" and do not

---

[1] As outlined in Plaintiffs' Motion and discussed *infra*, Plaintiffs challenge the admissibility of speculative opinions offered by Drs. Kaliebe, Laidlaw, Cantor, and Hruz about the intent, motives, and state of mind of WPATH and other medical associations. Drs. Kaliebe, Laidlaw, and Cantor—but not Dr. Hruz—relatedly comment on certain internal emails produced by WPATH and HHS emails as part of their improper advocacy and argument.

[2] *See also, e.g.*, SJ.USX23:180:5–181:14 (███████████████████████████████████████████████████████████████████████████████████████████████████████████████; SJ.PX23:172:20–174:10 (Dr. Laidlaw reading an email into the record as the sole basis for his opinion and applying no expert knowledge); SJ.USX30:27:22–28:6 ████████████████████████████████████████████████████████████████████████████████████████████).

"involve any scientific, technical, or specialized information that require[]
explanation by an expert." *United States v. Hoang*, 560 F. App'x 849, 851 (11th Cir.
2014) (per curiam). It is unhelpful for an expert to "cherry pick[]" evidence "that is
consistent with Defendant[s'] theory of the case rather than merely supplying the
record evidence [the expert] necessarily relied on in conducting his analysis." *Ohio
State Troopers Ass'n v. Point Blank Enters.*, No. 18-CV-63130, 2020 U.S. Dist.
LEXIS 58984, at *43–44 (S.D. Fla. Apr. 3, 2020). By doing so, Dr. Kaliebe, Dr.
Laidlaw, and Dr. Cantor "improperly and unnecessarily attempt[] to bolster . . . the
Defendant[s'] version of the case." *Id*. at *44 (excluding expert's statement that
"certain evidence is consistent" with other testimony).

Defendants' argument that "[e]xpert testimony is often based partly on an
expert's review of documents uncovered in discovery"[3] is inapposite. The cases cited
by Defendants all involved the application of specialized knowledge and reliable
principles and methods.[4] By contrast, Dr. Kaliebe, Dr. Laidlaw, and Dr. Cantor

[3] ECF No. 658 at 15; ECF No. 661 at 1, 10–11; ECF No. 663 at 17.
[4] *See In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 369–374 (M.D. Fla. 2018)
(explicitly limiting its analysis to antitrust cases and stating an expert's review of documents is
only helpful if he applied his "specialized knowledge and skill"); *Southwire Co. v. J.P. Morgan
Chase & Co.*, 528 F. Supp. 2d 908, 934–35 (W.D. Wis. 2007); *In re Mentor Corp. ObTape
Transobturator Sling Products Liability Litigation*, 711 F. Supp. 2d 1348, 1374–75 (M.D. Ga.
2010) (finding an expert's opinion reliable based on scientific testing, examination of the product
with an electron microscope, and research; and refusing to credit defendant's argument for
exclusion because the defendant's own documents contradicted that argument); *Knight v.
Boehringer Ingelheim Pharmaceuticals, Inc.*, 323 F. Supp. 3d 837, 852 (S.D. W. Va. 2018)
(explaining that "experts' deciphering of the *complicated internal documents* of a sophisticated
pharmaceutical company will assist the jury in determining the relevant issues in this case" but

3

applied no methodology beyond "reading," "summarizing," and "characteriz[ing]" plain-language internal documents that can be interpreted without special expertise. *See* ECF No. 661 at 10, 12. Even Defendants' cases recognize that experts may not testify about internal documents in this manner. *See, e.g.*, *City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 565 (11th Cir. 1998) (excluding an expert's "characterizations of documentary evidence" because "the trier of fact is entirely capable of determining whether or not to draw such conclusions without any technical assistance"); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 U.S. Dist. LEXIS 126995, at *206–08 (M.D. Fla. July 17, 2009) (allowing expert witnesses to explain highly technical and scientific information in a company's internal documents but precluding them from "provid[ing] a narrative history" or "mak[ing] points that are within the province of counsel").

To the extent Defendants contend that Dr. Kaliebe applied scientific principles to interpret the internal documents in question, *see* ECF No. 658 at 18, his deposition testimony tells a different story. Dr. Kaliebe repeatedly admitted that his only methodology in preparing various opinions was ███████████████████████

███████████████████████████████████████████████████

---

still excluding expert opinions on "the inferences of motive and intent" (emphasis added)); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 U.S. Dist. LEXIS 126995, at *206–07 (M.D. Fla. July 17, 2009); *Smith v. Pfizer Inc.*, 714 F. Supp. 2d 845, 856 (M.D. Tenn. 2010); *Broussard-Wadkins v. Maples*, 895 F. Supp. 2d 1159, 1172–73 (N.D. Ala. 2012).

SJ.USX30:27:22–28:6.[5] Dr. Kaliebe also admitted that ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████ *Id.* at

16:12-17:13.[6] ██████████████████████████████

███████████████████████████████████████

██████████ *Id.* at 12:10–21. On further questioning, he revealed that these so-called

principles of evidence-based medicine were little more ████████████████

███████████████████████████████████████

███████████████████████ *Id.* at 176:14–180:9 (███████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████).

---

[5] *See also, e.g., id.* at 38:1–15 (████████████

███████████████████████); *id.* at 48:12–51:4

███████████ ; *id.* at 75:15–76:1 ███

███████████████

████████████); *id.* at 77:22–79:17 (

██████████████████ ; *id.* at 82:6–83:5 (similar); *id.* at 118:8–

119:1 (similar); *id.* at 85:7–8 ████████

██████████).

[6] Upon further questioning, Dr. Kaliebe abruptly changed course and claimed that ███

██████████████

SJ.USX30:17:14-18:13 (Kaliebe Dep.). Of course, clinical psychiatry practice does not depend on
reviews of emails. *Id.* at 120:18–121:7.

Defendants also suggest that Dr. Cantor may properly narrate and characterize his preferred passages from internal WPATH documents simply because he has knowledge "about the rules of evidence-based medicine, conflicts of interest, guideline creation, and systematic evidence reviews" that a layperson would not. ECF No. 663 at 18. But that would only be correct if Dr. Cantor applied his alleged specialized knowledge to the passages in question. In the challenged testimony, he does no such thing. Instead, he recites and characterizes selected quotes from plain-language internal emails. *See generally* SJ.DX4:¶¶ 121–54. In doing so, he crosses the line from witness to advocate and offers unhelpful testimony. *See United States v. Hawkins*, 934 F.3d 1251, 1262–63 (11th Cir. 2019) (holding that qualified expert with specialized knowledge of drug trafficking exceeded the scope of appropriate expert opinion when he went beyond "interpreting code [words] and explaining drug trafficking practices" to "interpret ordinary language" and offer "narrative responses and summaries of the evidence") (cleaned up). Any expertise Dr. Cantor has does not give him a free pass to circumvent the Rule 702 requirement that each opinion be helpful to the trier of fact. *See City of Tuscaloosa*, 158 F.3d at 565 (admitting a statistician's analysis of statistics but finding his "characterizations" of documentary evidence unhelpful and inadmissible); *United States v. Hoang*, 891 F. Supp. 2d 1355,

1361 (M.D. Ga. 2012) ("work[ing] through each opinion separately" and excluding as unhelpful three of four opinions offered by an expert), *aff'd*, 560 F. App'x at 851.[7]

Without proffering any admissible opinions based on the WPATH and HHS documents, Defendants' experts cannot testify in narrative form about the contents of those documents. *See Hawkins*, 934 F.3d at 1263, 1266 (holding that expert witnesses may not "summariz[e] evidence," "synthesiz[e] evidence," or offer "lengthy narratives" about facts in evidence). Absent any admissible opinions, Defendants' reliance on Rule 703 and cases applying that rule[8] is misplaced.

## II.  Inferences of corporate motive, intent, knowledge, and state of mind are reserved for the factfinder.

Dr. Kaliebe, Dr. Laidlaw, Dr. Cantor, and Dr. Hruz each offer opinions about WPATH's motive and state of mind in developing SOC-8. *See* ECF No. 605 at 13–16 (identifying objectionable paragraphs in experts' reports). As an initial matter, and as Defendants implicitly recognize, these opinions are marginally relevant at best: "Whatever WPATH's knowledge or motives may have been," the relevant question is whether "the resulting *guidelines*" are reliable. ECF No. 658 at 19; *see also, e.g.*, SJ.USX23:180:5–181:1 (██████████████████████████████

████████████████████████████████████████████

---

[7] To the extent Defendants argue that other expert witnesses' background knowledge guarantees that all their testimony is automatically helpful, *see, e.g.*, ECF No. 658 at 17–18, that argument fails for the same reasons.

[8] *See* ECF No. 658 at 16–17; ECF No. 663 at 17.

███████████████████████████████████████████████████). Private

Plaintiffs do not object to the helpfulness of reliable expert testimony by qualified

witnesses regarding the scientific evidence underlying SOC-8. On the other hand,

expert witnesses' speculation and personal beliefs[9] about WPATH's motives and

intentions are neither relevant nor helpful. *See In re Trasylol Prods. Liab. Litig.*, 709

F. Supp. 2d 1323, 1339 (S.D. Fla. 2010) (excluding an expert's statement about

alleged corporate motive due in part to its "marginal relevance"); *see generally*

*Prosper*, 989 F.3d at 1249 (explaining that testimony must be relevant to be helpful).

In any event, these experts' opinions about WPATH's motive, intent,

knowledge, and state of mind are unhelpful because such testimony improperly

invades the province of the factfinder. *See* ECF No. 605 at 14–16 (collecting

authorities). Even cases cited by Defendants recognize as much. *See In re Takata*

*Airbag Prod. Liab. Litig.*, MDL No. 2599, 2022 U.S. Dist. LEXIS 185488, at *12,

*18 (S.D. Fla. July 18, 2022) (excluding expert testimony about "intent, motives, or

state of mind"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No.

3:19md2885, 2021 U.S. Dist. LEXIS 36950, at *133–35, *147–48 (N.D. Fla. Feb.

28, 2021); *Knight v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 323 F. Supp. 3d

---

[9] Defendants unpersuasively suggest that their witnesses did not speculate but simply repeated statements of motive and intent that they read in internal WPATH documents. *See* ECF No. 661 at 11–12. Contrary to Defendants' far-fetched suggestion, extrapolating corporate motive or causation from individual isolated statements—especially statements taken out of context and often made by unidentified declarants—necessarily involves conjecture.

837, 852 (S.D. W. Va. 2018); *Smith v. Pfizer, Inc.*, 714 F. Supp. 2d 845, 857 (M.D. Tenn. 2010).

Indirect references to corporate motive and intent are no exception. *Barnett v. Sun Life Assurance Co. of Canada*, No. 3:20-cv-01879-LCB, 2022 U.S. Dist. LEXIS 128796, at *8 (N.D. Ala. June 21, 2022); *see also, e.g.*, *In re 3M Combat Arms*, 2021 U.S. Dist. LEXIS 36950, at *147–48 (excluding as improper motive testimony expert's "suggestion that there was 'pressure' on . . . employees" to sell more products and that the employer "only stopped selling" the product in question "when it was caught"). Thus, Defendants' attempt to disguise Dr. Kaliebe's unhelpful corporate state-of-mind testimony as helpful testimony about "the role of advocacy" in SOC-8's development[10] is unpersuasive. In his written reports, Dr. Kaliebe plainly references the alleged corporate intent of WPATH and other medical organizations insofar as he asserts that these organizations try to silence debate and support gender transition treatments only because of politics or ideology.[11]

Defendants claim that their experts make only "passing references" to corporate state of mind and that the Court cannot dictate experts' word choices at trial. *See* ECF No. 657 at 19 & n.9; ECF No. 658 at 19; ECF No. 661 at 12; *cf.* ECF

---

[10] ECF No. 658 at 19.

[11] *See, e.g.*, SJ.DX15:¶ 123 ("I conclude that USPATH and WPATH are not scientific organizations that prioritize the search for truth and the safeguarding of vulnerable children, but instead are organizations that seem to prioritize preserving their image and enforcing their advocacy positions"); *id.* ¶¶ 150–51 (opining that medical organizations have "chosen advocacy over science" and are motivated by "a tribal mentality" to support SOC-8); *see generally* SJ.DX16.

No. 663 at 16 (suggesting that Plaintiffs' objections go only to "details of phrasing"). This argument is misguided for two reasons. First, Defendants' experts make more than "passing reference" to WPATH and other medical associations' states of mind. In fact, direct or indirect assertions about WPATH's motives pervade the challenged portions of their testimony—and in Dr. Kaliebe's case, his entire supplemental report. Second, courts routinely limit experts' word choices when necessary to conform to the Federal Rules of Evidence. For example, a court in this Circuit recently allowed experts to testify that internal company documents indicated certain risks to consumers while prohibiting them from testifying that the company "knew" about those risks. *In re 3M Combat Arms*, 2021 U.S. Dist. LEXIS 36950, at *133–34. Similarly, although the experts could opine as to whether the company "adhered to industry standards of care," they could not "couch their opinions in terms" such as "defective," "duty," "unreasonably dangerous," or "failed to warn." *Id*. at *133.[12]

This Court should likewise prohibit Defendants' experts from offering unhelpful and unreliable opinions about WPATH and other medical associations'

---

[12] The cases cited by Defendants are inapposite. First, in *UMG Recordings, Inc. v. Grande Commc'ns Networks, Inc.*—an unpublished, out-of-circuit decision—the court rejected the argument that expert witnesses should never be allowed to refer to the word "infringe" in a copyright infringement action. No. A-17-CA-365-LY, 2019 U.S. Dist. LEXIS 117953, at *5 (W.D. Tex. July 16, 2019). Here, Plaintiffs object not to the use of specific words but to the substance of the motive opinions offered by Defendants' experts. Second, *In re 3M Combat Arms* only allowed experts offering otherwise helpful opinions to make "passing reference" to legal principles. 2021 U.S. Dist. LEXIS 36950, at *131. Because helpfulness was a prerequisite to the admission of such "passing reference[s]," and because it dealt only with an objection to improper legal conclusions, that case does not support admitting unhelpful motive opinions.

states of mind. Take Dr. Hruz as an example. Defendants say Dr. Hruz's opinions are limited to explaining why SOC-8 and AAP's medical guidelines "are deficient." ECF No. 657 at 20. But Dr. Hruz does not stop there. He goes on to offer a bare conclusory opinion about the reasons for this alleged deficiency—namely, that WPATH and AAP were motivated by ideology and politics. *See* SJ.DX5:¶ 104.[13] This is a conceptually distinct opinion that must be analyzed separately for reliability and helpfulness. *See Hoang*, 891 F. Supp. 2d at 1361 ("work[ing] through each opinion separately[,] guided by the helpfulness requirement"), *aff'd*, 560 F. App'x at 851; *Dewit v. UPS Ground Freight, Inc.*, No. 1:16cv36-MW/CAS, 2017 U.S. Dist. LEXIS 183017, at *8–9 (N.D. Fla. July 21, 2017) (analyzing expert witness's biomechanical opinions separately from his opinions criticizing an opposing party's expert). Because this aspect of Dr. Hruz's report applies no reliable methodology and draws lay inferences regarding WPATH and AAP's state of mind in developing their clinical guidelines, it should be excluded as unhelpful. The same analysis applies with even more force to the challenged portions of Dr. Kaliebe, Dr. Laidlaw, and Dr. Cantor's reports. *See* ECF No. 605 at 12–16.

Defendants next contend that their experts' speculative motive opinions are helpful as long as they do not seek to impute liability on any party. *See* ECF No. 658

---

[13] He recalls this opinion in his conclusion, referring to WPATH as a "politically influenced, non-science association." *Id*. ¶ 151.

at 18; ECF No. 661 at 11. But they cite no authority for this proposition. And their argument does not make sense. Expert opinions on corporate motive are not excluded because they bear on an ultimate issue in the case such as liability. Indeed, expert testimony is not objectionable "just because it embraces an ultimate issue." *United States v. Sotis*, 89 F.4th 862, 876 (11th Cir. 2023) (quoting *United States v. Duldulao*, 87 F.4th 1239, 1269 (11th Cir. 2023)); Fed. R. Evid. 704(a). Rather, the rationale for excluding improper motive opinions is that they require "inferential leaps" that can and should be made by the factfinder, *Redding v. Coloplast Corp.*, No. 6:19-cv-1857-CEM-GJK, 2022 U.S. Dist. LEXIS 246079, at *41 (M.D. Fla. Mar. 26, 2022) (quoting *Knight*, 323 F. Supp. 3d at 852), because they are "unrelated to any . . . expertise," *In re Trasylol*, 709 F. Supp. 2d at 1347 & n.32.

## III. Speculative and conclusory opinions regarding politicization of medical organizations are not based on any reliable methodology and are not helpful to the trier of fact.

Defendants argue that Dr. Kaliebe and Dr. Laidlaw's opinions about the politicization of WPATH and other medical organizations are helpful because the "untrained layman" does not know about "the inner workings of WPATH and the other medical organizations," "how clinical practice guidelines are created, the role of systematic reviews in that creation, how medical organizations are constituted, what role they play in guideline creation, how organizations can be interrelated and subject to biases, and how guidelines can flunk principles of evidence-based

medicine." ECF No. 658 at 17–18; ECF No. 661 at 11. According to Defendants, this kind of "background" or "structural" information will help the factfinder understand the evidence and the issues. ECF No. 658 at 19–20; ECF No. 661 at 11.

But Dr. Kaliebe and Dr. Laidlaw do not simply offer background testimony on the topics listed by Defendants. They do not merely explain in general terms how WPATH and other medical organizations work and how bias could influence medical organizations or clinical practice guidelines. Rather, they offer a personal belief that political bias is the driving force behind SOC-8, the Endocrine Society Guidelines, major medical associations' support for gender-transition treatments, and medical journals' publication decisions, and that dissenting viewpoints are silenced. *See, e.g.*, SJ.DX15:¶¶ 93, 94, 96–98, 100–06, 111, 120–28, 131, 137–38, 141–42, 144–45, 147, 150–51 (Kaliebe Rep.) (opining at length about these personal beliefs); SJ.DX7:¶ 202 (Laidlaw Rep.).

As described in Plaintiffs' motion, Dr. Laidlaw's opinion is based on a simple, if unreliable, lay inference. *See* ECF No. 605 at 17. Dr. Kaliebe's opinions are based on an unreliable compilation of alleged facts, most of which he did not observe firsthand, combined with similarly unreliable and often hyperbolic lay inferences. *See id*. For example, he opines: "Research that runs counter to the prevailing orthodoxy causes panic among gender ideologues and activist scholars. Again, a mob has arrived to attempt to undermine credible research." SJ.DX15:¶ 141. On its

face, nothing about this opinion indicates that it is the product of reliable principles and methods or other reliable specialized knowledge.[14] As support, Dr. Kaliebe cites an excerpt of a single listserv email noting ethical concerns about a recently published article. *Id*. He does not identify or analyze those ethical concerns before concluding that the email was an illegitimate ideological attack, which only reinforces that his analysis is unreliable and unhelpful.[15] Failing to consider obvious alternative explanations is a pattern throughout the challenged portions of Dr. Kaliebe's report. *See* ECF No. 605 at 18 (illustrating another example).[16] At bottom, his politicization opinions are nothing more than bare conclusory inferences reflecting his personal beliefs about the field of gender medicine. These are not appropriate bases for expert testimony.

---

[14] Other opinions offered by Dr. Kaliebe suffer from the same defect. *See, e.g.*, SJ.USX30:41:3–42:1 (                                                              ; *id*. at 77:22–79:17, 84:25–88:14                                                              ).

[15] *See also* SJ.USX30:92:19–93:20, 105:25–106:22 (Kaliebe Dep.) (                                                              ).

[16] *See also, e.g.*, SJ.USX30:125:2–23 (Kaliebe Dep.) (                                                              ; *id*. at 212:3–20                                                              ; *id*. at 224:23–229:17 (                                                              ).

Defendants' analogy to *Kadel v. Folwell*, 620 F. Supp. 3d 339 (M.D.N.C. 2022) does not change the result. In *Kadel*, the district court considered the admissibility of testimony by Dr. Stephen B. Levine, including his opinion that WPATH was a "private, activist, non-science, organization." *Id.* at 371. The district court admitted this general "background" testimony only because it found Dr. Levine had reliably based his opinion on his extensive personal experience as a member of WPATH and the Chair of the WPATH Standards of Care Committee that developed SOC-5. *Id.* at 371–72. By contrast, Dr. Kaliebe and Dr. Laidlaw have never been members of WPATH or many of the other organizations they criticize;[17] they go far beyond offering general "background" testimony; and their opinions are not reliable as set forth above. Accordingly, *Kadel* does not support the admission of their sweeping opinions about the politicization of gender medicine as a field.[18]

---

[17] *See* SJ.USX30:202:23–203:1 (Kaliebe Dep.); *id.* at 28:7–9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; SJ.DX15:85 (Kaliebe C.V.) (not listing any affiliation with the American Academy of Pediatrics, the American Psychological Association, WPATH, or the Endocrine Society, which he criticizes in his report); SJ.PX23:135:21–24 (Laidlaw Dep.); SJ.DX7:68 (Laidlaw C.V.) (not listing any affiliation with the American Medical Association, the American Academy of Pediatrics, or WPATH, which he criticizes in his report).

[18] Defendants' analogy to *United States v. Van Dorn*, 925 F.2d 1331, 1338 (11th Cir. 1991) is outlandish at best. *See* ECF No. 658 at 19. That case involved a Rule 403 objection to reliable expert testimony by an experienced investigator about the general structure of an organized crime family to help jurors understand crimes charged against members of the crime family. 925 F.3d at 1338–39. In addition to arising in a remarkably different factual context, this case involves a Rule 702 objection; the challenged testimony is largely based on a review of documents rather than professional experience; the challenged testimony applies unreliable lay inferences rather than relaying reliable information or opinions; and the expert witnesses in question offer specific testimony attacking the integrity of medical organizations rather than general testimony about their

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant

Private Plaintiffs' motion to exclude certain testimony by Drs. Kaliebe, Laidlaw,

Cantor, and Hruz.

---

structure. The other "structural evidence" cases cited by Defendants are inapposite for many of the same or similar reasons. *See* ECF No. 658 at 20 & n.6.

Respectfully submitted this 9th day of September 2024.


*/s/ Amie A. Vague*
_____
Melody H. Eagan
Jeffrey P. Doss
Amie A. Vague
LIGHTFOOT, FRANKLIN &
WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
meagan@lightfootlaw.com
jdoss@lightfootlaw.com
avague@lightfootlaw.com


J. Andrew Pratt
Adam Reinke
Misty L. Peterson
KING & SPALDING LLP
1180 Peachtree Street Northeast, Suite
1600
Atlanta, GA 30309
apratt@kslaw.com
mpeterson@kslaw.com
areinke@kslaw.com


Brent P. Ray
Abigail Hoverman Terry
KING & SPALDING LLP
110 North Wacker Drive, Suite 3800
Chicago, IL 60606
bray@kslaw.com
aterry@kslaw.com


Abby Parsons
KING & SPALDING LLP
1100 Louisiana Street
Houston, TX 77002
aparsons@kslaw.com

Sarah Warbelow
Cynthia Weaver
HUMAN RIGHTS CAMPAIGN
FOUNDATION
1640 Rhode Island Ave., NW
Washington, DC 20036
sarah.warbelow@hrc.org
cynthia.weaver@hrc.org


Jennifer L. Levi
Sarah K. Austin
GLBTQ LEGAL ADVOCATES &
DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
jlevi@glad.org
saustin@glad.org


Jessica L. Stone
SOUTHERN POVERTY LAW
CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
jessica.stone@splcenter.org


Christopher F. Stoll
Amy E. Whelan
Rachel H. Berg
NATIONAL CENTER FOR LESBIAN
RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
cstoll@nclrights.org
awhelan@nclrights.org
rberg@nclrights.org

Scott D. McCoy
SOUTHERN POVERTY LAW
CENTER
P.O. Box 12463
Miami, FL 33101
scott.mccoy@splcenter.org

Diego A. Soto
SOUTHERN POVERTY LAW
CENTER
400 Washington Avenue
Montgomery, AL 36104
diego.soto@splcenter.org

*Counsel for Private Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of September 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record in this case.

<u>/s/ Amie A. Vague</u>
Counsel for Private Plaintiffs