UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRIANNA BOE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No:2:22-cv-0184-LCB |
| | ) |
| STEVE MARSHALL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

The World Professional Association for Transgender Health ("WPATH") touts its guidelines and standards of care for treating transgender children as the product of rigorous science and broad consensus. Given this wide acceptance of what WPATH claims to be reliable evidence, one would think it would be willing and eager to demonstrate as much. It is not.

Before the Court is the Defendants' Time-Sensitive Motion for Relief Under [the] Protective Order. (Doc. 740). Upon consideration of the parties' submissions and oral argument, and for the reasons explained below, the Defendants' motion is due to be granted

I. **Background**

This case began in 2022 when the Plaintiffs filed their complaint and moved for a preliminary injunction to block enforcement of an Alabama law restricting the

use of certain medications in children diagnosed with gender dysphoria. Over the course of three days, the Court heard testimony from multiple expert witnesses who touted WPATH as the leading authority responsible for developing the prevailing guidelines and standards of care for physicians treating children with gender dysphoria. In an affidavit, one of the Plaintiffs' medical experts stated that WPATH "has been recognized as the standard-setting organization for the treatment of gender dysphoria for more than forty years." (Doc. 8-3 at 10). Another expert witness stated in an affidavit that WPATH had developed "comprehensive standards of care governing the treatment of gender dysphoria" that are now "recognized as the prevailing standard of care by the major associations of medical professionals, including the American Medical Association, American Academy of Pediatrics, and the Society for Adolescent Health and Medicine, to name a few." (Doc. 8-2 at 4). During the hearing on the preliminary injunction, that same expert witness agreed that the "level of evidence supporting" WPATH's guidelines was "comparable to the level of evidence for other treatments in pediatrics." (Doc. 105 at 14-15). Additional testimony and affidavits similarly portrayed WPATH as the authoritative lodestar in all aspects of the treatment of gender dysphoria in children.

      WPATH is by no means modest in its own self-assessment. In an amicus brief to which WPATH is a signatory, the organization's guidelines are described as being developed through a "robust and transparent process, employing the same scientific

rigor that underpins other medical guidelines." (Doc. 91-1 at 12). It went on to state that "WPATH standards are the result of a drafting, comment, and review process that took five years. The draft guidelines went through journal peer-review and were publicly available for discussion and debate, including multiple rounds of feedback from experts in the field as well as from transgender individuals." *Id.* at 13. In other words, the Plaintiffs and many of the amici believe that WPATH is the preeminent leader in the field of transgender medicine for children.

Unsurprisingly, the Defendants sought discovery from WPATH regarding, among other things, the evidence it used to develop its guidelines and standards of care. But surprisingly, the organization allegedly responsible for creating the benchmark for gender dysphoria treatment was not so keen on turning over the evidence it used to develop that standard. WPATH resisted the Defendants' subpoena at every turn. Given its own characterization of its guidelines and standards, one would expect WPATH to welcome the opportunity to put the supporting evidence on display.

WPATH initially filed a motion to quash the subpoena arguing, among other things, that the information the Defendants sought was somehow not relevant to the case. Given that "WPATH's guidelines are part and parcel of Plaintiffs' proposed constitutional standard in this case" this Court found that argument preposterous and denied the motion. (Doc. 263). WPATH then moved to certify that order for an

3

interlocutory appeal and to stay its obligation to produce any discovery until that appeal was resolved. (Docs. 271 & 272). When those motions were denied, WPATH unsuccessfully petitioned the United States Court of Appeals for the Eleventh Circuit for mandamus relief. In denying the petition for a writ of mandamus, the Eleventh Circuit found that the Defendants "demonstrated a compelling need for the information" WPATH sought to suppress. Although this Court denied WPATH's motion to stay, WPATH nevertheless delayed production, prompting the Court to remind its counsel of that fact at a hearing three months after the motion to quash was denied. (Doc. 298 at 32) ("I also hear you say, hey, Judge, you know, the minute you tell us to start producing, we will. I really have already said to start producing.").

So, it comes as no surprise that the Court is again resolving a discovery dispute involving WPATH. Before the Court is the Defendants' motion to remove the "Confidential—Attorney's Eyes Only" designation from hundreds of video recordings produced by WPATH during discovery pursuant to a stipulated protective order. Under that protective order (Doc. 137), these videos, which depict various symposia on transgender healthcare held in recent years, are required to be destroyed

within 60 days of the case's termination. Because the parties dismissed the case on May 1, 2025[1], the deadline for destruction is June 30, 2025.

In their motion, the Defendants argue that the recordings should not be considered confidential under the protective order because they were made available to the public by WPATH and its affiliate, USPATH. The recordings are from presentations and panel discussions from WPATH and USPATH symposia in 2021, 2022, and 2023, and a 2023 medical training course. The Defendants emphasize that access to these events was not limited to WPATH members but was open to anyone who registered and paid a fee. Moreover, the videos were made available to attendees after the event. The Defendants further argue that the recordings do not meet any of the criteria for confidentiality under the protective order. Accordingly, they request that the Court find the videos at issue do not qualify as confidential under the protective order and were improperly designated as such during discovery.

**II. Legal Standard**

Federal Rule of Civil Procedure 26(c) allows a court to issue a protective order upon a finding of good cause. *See* FED. R. CIV. P. 26(c) ("The court may, for good cause, issue [a protective order]."). This Court entered a stipulated protective order

---

[1] Curiously, the Plaintiffs agreed to dismiss their case just two days after the Eleventh Circuit issued a jurisdictional question to three former plaintiffs' attorneys who are currently appealing a disciplinary sanctions order entered by this Court. In the jurisdictional question, the Eleventh Circuit asked the parties to address whether their appeals were "taken from a final or otherwise appealable order, given that the private plaintiffs' claims are still pending." Forty-eight hours later, that question appeared moot.

on July 19, 2022 (Doc. 137), which provides that the parties may, in good faith, designate any item as confidential if it

    (i)      Qualifies for protection under Federal Rule of Civil Procedure 5.2(a) or 26(c);

    (ii)     Constitutes, includes, or is contained in 'records' subject to the Privacy Act, 5 U.S.C. § 552a;

    (iii)    Contains personal identifying information, including names of any pseudonymous witness or party (as well as the names of other individuals that would reveal the identity of any pseudonymous witness or party), social security numbers, or financial account information;

    (iv)    Contains any individual's privacy-protected personal health information; or

    (v)     is other information the confidentiality of which the Producing Party is under a legal duty to protect.

The Eleventh Circuit has held that when faced with a motion to modify a stipulated protective order, "the party seeking the stipulated order's protection must satisfy Rule 26(c)'s good cause standard." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1250 (11th Cir. 2020). Accordingly, WPATH has the burden of demonstrating Rule 26(c)'s applicability.

### III. The Defendants' Motion

The Defendants assert that WPATH has no good cause under Rule 26(c) to suppress the videos. They contend that the materials do not contain personal identifying information, private health information, or proprietary data protected by statute. The videos are merely recordings of educational presentations that were, by

6

design, broadly disseminated to paying members of the public. The Defendants also note that the videos don't meet any of the other confidentiality requirements listed in the protective order and assert there is no legal duty for WPATH to protect the videos.

WPATH does not argue that sections (ii), (iii), or (iv) of the protective order apply. Its argument focuses on whether the Defendants have a common-law right of access to the videos in question and whether there exists good cause under Rule 26(c) to protect the information. The Court will address each argument in turn.

### A. Common-law Right of Access

WPATH correctly points out that courts generally do not allow public access to discovery materials that have not been filed with the Court or otherwise made part of the judicial record. Where "judicial records" are at issue, such as "material filed in connection with pretrial motions that require judicial resolution of the merits," there may exist a "common law right of access" that requires a court to balance the "asserted right of access against the other party's interest in keeping the information confidential." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007). Implicit in that definition is that the item of discovery at issue has been properly designated as confidential. In other words, a Court would have no need to determine whether any such right of access exists with respect to materials that are not confidential.

7

WPATH's argument puts the cart before the horse by presuming that the videos are confidential. While the general proposition of law WPATH states is correct, the cases it cites are factually distinguishable because the parties in those cases were not disputing whether the item sought was confidential. *See e.g.*, *Lohr v. Zehner*, No. 2:12CV533-MHT, 2014 WL 12742197, at *2 (M.D. Ala. Mar. 6, 2014) (plaintiff did not dispute "that the information UPS seeks to protect represents trade secret or other confidential research, development, or commercial information for purposes of Rule 26."). Here, the parties dispute whether the videos at issue were properly marked as confidential in the first instance.

Furthermore, the Defendants agree that these videos were never filed with any of their motions.² Therefore, no common-law right of access to the videos would exist with respect to the Defendants—or anyone else, for that matter—and any further discussion would be pointless. To the extent WPATH contends that *any* item produced in discovery acquires a special status precluding disclosure absent judicial filing and a favorable balancing of the right of access against confidentiality, that argument is without merit.

---

² The Defendants claimed that WPATH did not produce all the videos until six months past the Court's discovery deadline. At that point, the Defendants say, many of their experts had already submitted their reports and had been deposed. Thus, WPATH's delay prevented the Defendants from using these videos in their dispositive motions.

8

## B. Rule 26(c)

That leaves Rule 26(c). As noted above, it is WPATH's burden to demonstrate that there is good cause to keep the videos confidential. *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1250 (11th Cir. 2020) ("When faced with a motion to modify to a stipulated protective order, the party seeking the stipulated order's protection must satisfy Rule 26(c)'s good cause standard."). Rule 26(c) provides in pertinent part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." WPATH argues that good cause exists to maintain the videos' confidentiality designation for several reasons.

First, WPATH contends that it has a legal duty to protect the confidentiality and use of the videos because the "[p]resenters granted WPATH and USPATH a limited license to use the recordings for educational purposes only, [and] [a]ttendance at the events was limited to paying participants who agreed not to record or reproduce the material without the explicit consent of the presenters." (Doc. 743 at 5). This assertion appears to have roots in two documents: a "Code of Conduct" (Doc. 743-2 at 7) that WPATH imposes on all attendees at its conferences and a "Speaker Release Form," *id* at 10, that presenters at WPATH's conferences sign regarding the use of their work. According to WPATH, these documents mean that neither the presenters nor the attendees "had any expectation that videos of them

9

could one day be made available to the public at large." (Doc. 743 at 5). WPATH thus claims it has a legal duty to these people to maintain the confidentiality of the videos.

Having reviewed both documents, the Court sees no legal duty binding WPATH in any way. In its brief, WPATH asserted that its presenters granted them "only a narrow license to use their 'name, voice, likeness, presentation slides and biographic information' only for 'educational purposes.'" (Doc. 743 at 10), quoting (Doc. 743-2 at 4). However, the license begins to widen a few lines down. Presenters at WPATH conferences also grant WPATH a "perpetual, royalty-free worldwide license to use, copy, modify, publicly display, publicly perform, broadcast and distribute in any format, including without limitation via the Internet, intranets, CD-ROM and other technologies, the materials and your presentation of the materials at this conference." (Doc. 743-2 at 10). The Court strains to see how that release would lead anyone expect that videos of their presentations couldn't one day be made available to the public. Nevertheless, the Court finds no duty of confidentiality on WPATH's part.

Next, WPATH argues that "[w]idespread dissemination of these videos to the public could subject WPATH, USPATH, their members, and unaffiliated individuals who happened to attend these conferences to harassment, particularly given the highly charged atmosphere surrounding issues related to gender-affirming

care." (Doc. 743 at 16), citing *Looney v. Moore*, 2014 WL 1364509, *2 (N.D. Ala. Apr. 7, 2014).

The Defendants point out that a party seeking the court's protection under Rule 26(c) must make a "particular and specific demonstration of fact" and cannot rely on "stereotyped or conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). "[G]eneralized, subjective assertions of fear … without a distinct concrete harm justifying good cause," are insufficient. Aside from the conclusory statement quoted above, WPATH gives no detail about why the release of these videos could cause such harassment.

WPATH also claims that, because it charges a registration fee for its symposia, making the videos publicly available would harm their economic interests. It also claims that public release of the videos could chill the exercise of protected First Amendment rights by making people less likely to present or contribute at a conference. But beyond these vague suppositions, WPATH offers nothing to substantiate its position. Even WPATH's declarations fail to provide more than a few conclusory statements about any of these issues. The only support for these last two assertions is a single sentence in an affidavit from WPATH's Associate Executive Director stating that "[s]peakers and presenters would be less willing to contribute to symposia and training events if their presentations would be made public, and WPATH and USPATH would be less likely to incur the costs of

organizing symposia and training events if the public could obtain access to presentations without paying the costs of attendance or paying to access recordings."). Without more, the Court finds that WPATH has failed to meet its burden of demonstrating that the videos in question were properly designated as confidential under Rule 26(c).

## IV. Conclusion

For the foregoing reasons, the Defendants' Time-Sensitive Motion for Relief Under [the] Protective Order (Doc. 740) is **GRANTED**.

**DONE** and **ORDERED** June 9, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE